# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM America, LLC,<br>Plaintiff,<br>v.<br>The United States of America<br>Defendant,<br>and<br>Donjon Marine Company, Inc.<br>Interested Party. | Civil Action No. 06-472-C<br>Judge Thomas C. Wheeler |

## DECLARATION OF MICHAEL A. ADLER IN SUPPORT OF TDM'S CROSS-MOTION FOR SANCTIONS AND/OR TO COMPEL PURSUANT TO RCFC 37

I, **MICHAEL A. ADLER**, under penalty of perjury, state:

1. I am an attorney of record on behalf of plaintiff in the above referenced litigation.

2. I am senior counsel with the law firm of Davidoff Malito & Hutcher LLP located at 605 Third Avenue, 34 floor, New York, NY 10158.

3. I make this declaration in support of TDM's cross-motion for sanctions and/or to compel pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC").

4. By letter dated January 30, 2007, the US' counsel, Erica Franklin, advised TDM's counsel, David Denenberg, that documents requested on November 6, 2006

would first be made available for TDM's inspection beginning on February 6, 2007 at the Caven Point Marine Terminal, 3 Chapel Avenue, Jersey City in New Jersey ("Caven Point"). The inspection was to take place in the field office at that location. The letter also stated that the US would produce all documents by February 28, 2007.

5. Subsequent to receipt of the January 30, 2007 letter, two TDM officers, located in Texas, arranged to be present at Caven Point for the document inspection to assist and direct TDM's counsel during the inspection. These officers have extensive knowledge of dredging activities and contracts and other information that would have been critical to TDM for a meaningful inspection.

6. On or about February 5, 2007, the US notified TDM's counsel that TDM's officers would not be allowed to participate in the inspection. Despite TDM's counsel explaining that it was important that TDM's officers be present during the inspection, Ms. Franklin still refused to allow TDM's officers to be present during the inspection. Ms. Franklin advised that, because she had not reviewed the documents for proprietary information, she did not want TDM's officers to be present at the inspection. Because the US did not agree to having TDM's officers present during the document inspection at Caven Point, TDM's counsel contacted this Court to schedule a conference to resolve this dispute. (Ex. 14, p. 11).

7. On February 6, 2007, Dimitra Tzortzatos, an associate at the Davidoff firm, and I visited the field office at Caven Point to begin the document inspection without the benefit of the TDM officers.

8. There were about 40 file drawers full of documents which comprised documents located in file cabinets, on shelves and in boxes.

9. Prior to commencing the inspection, the US' representative at Caven Point instructed Dimitra Tzortzatos and me that we were expected to perform the inspection while standing so as not to remove the documents from the file drawers. After negotiations, I convinced her of the impracticalities of this idea.

10. The US' representative also instructed Dimitra Tzortzatos and me not to take notes about any of the documents that either of us would be reviewing during our inspection of the documents.

11. The US did not advise us prior to the inspection of any of the restrictions set forth above in paragraphs 6, 9 and 10 herein.

12. On February 6, 2007, this Court heard arguments from TDM and the US regarding the US' refusal to allow TDM's officers to be present at the inspection. Ms. Franklin told the court the reason for her refusal, namely:

> Our objection stems wholly from the fact that this document collection contains proprietary information…

(Ex. 14, p. 8). But nothing was so designated because she had not reviewed the documents. (*Id.*, p. 9). The court noted that "plaintiff is certainly entitled to have its officers examine documents produced under Rule 34" (Ex. 14, p. 11), and that a single tier protective order should resolve any issues. (*Id.*, p. 17).

13. Despite this Court's decision that TDM's officers are entitled to be present during the document inspection, the US advised that it would be filing a motion for reconsideration of the court's decision, emphasizing the reason for the motion was that

the US had not reviewed the documents for proprietary information. To proceed with discovery and avoid needless motion practice, counsel for the US and TDM agreed to a two-tiered protective order. However, the two-tiered protective order was not sufficient for the US and the US still refused TDM's officers to be present at the inspection. The basis for this refusal, again, was because the US still had not reviewed the documents to designate proprietary information.

14. Since the US would not allow TDM's officers to be present during the inspection, even though TDM agreed to a two-tiered protective order, Mr. Denenberg and Ms. Franklin agreed that the US would designate its documents and then produce them to TDM to avoid the issue of, and need for, inspection. In order to facilitate this process, TDM offered to identify, in a letter, categories of documents to be produced by the US. The US accepted this offer.

15. On February 13, 2007, in accordance with the agreement reached with the US as set forth in paragraph 14 herein, TDM's counsel wrote a very detailed letter that identified categories of documents to be produced. These categories were particularized requests based upon my inspection of the US documents at Caven Point. The February 13, 2007 letter also confirmed that the US agreed to produce documents responsive to the particularized requests within two (2) weeks. (A copy of this letter is annexed hereto as Exhibit 15).

16. By letter faxed February 28, 2007 to David Denenberg, Ms. Franklin denied that the US would produce documents within a two week period beginning February 13, 2007 despite the previous agreement and Ms. Franklin's January 30, 2007 letter. (Exs. 13, 15 and 16).

17. On or about February 28, 2007, I called Ms. Franklin to ascertain when documents would be produced to TDM. Ms. Franklin immediately retorted that "if you are looking for a date by which documents will be produced, this will be a short conversation because the US was not providing such a date." Indeed, the conversation was short.

18. To this date, process, volume, amounts and cost documents are not produced or identified even though I saw them and relevant photographs during my inspection on February 6 and 7, 2007 at Caven Point.

19. Pursuant to RCFC 37(a)(2)(A), TDM, by its attorneys, hereby certifies that it has in good faith conferred with the US in an effort to secure the discovery responses and disclosures without court action, but was unable to do so.

20. Exhibit 1 is a true and accurate copy of an excerpt from contract W912DC-06-B-0007, bearing bates nos. TDM003088-TDM003094.

21. Exhibit 2 is a true and accurate copy of an excerpt entitled, "Section 00800 Special Contract Requirements" bearing bates nos. TDMG011499-G011504.

22. Exhibit 3 is a true and accurate copy of an excerpt from IFB No. W912DS-05-B-0010, section 00800, Special Contract Requirements, bearing bates nos. G012760-G012764.

23. Exhibit 4 is a true and accurate copy of a May 16, 2006 letter from Alan P. Klein to Robert G. Fryling, counsel for TDM, bearing bates nos. TDM005114-TDM005120.

24. Exhibit 5 is a true and accurate copy of plaintiff's first set of interrogatories to defendant pursuant to RCFC 33.

25. Exhibit 6 is a true and accurate copy of plaintiff's first set of requests for production of documents and things to defendant pursuant to RCFC 34.

26. Exhibit 7 is a true and accurate copy of initial disclosures of the United States pursuant to RCFC 26(a).

27. Exhibit 8 is a true and accurate copy of defendant's responses to plaintiff's first set of interrogatories (nos. 1-14).

28. Exhibit 9 is a true and accurate copy of defendant's responses to plaintiff's first set of requests for production of documents and things (nos. 1-30).

29. Exhibit 10 is a true and accurate copy of a January 5, 2007 letter from Mr. Denenberg to Ms. Franklin.

30. Exhibit 11 is a true and accurate copy of a January 16, 2007 letter from Ms. Franklin to Mr. Denenberg.

31. Exhibit 12 is a true and accurate copy of a January 17, 2007 letter from Mr. Denenberg to Ms. Franklin.

32. Exhibit 13 is a true and accurate copy of a January 30, 2007 letter from Ms. Franklin to Messrs. Denenberg and Campbell.

33. Exhibit 14 is a true and accurate copy of a transcript of proceedings before Hon. Thomas C. Wheeler dated February 6, 2007.

34. Exhibit 15 is a true and accurate copy of a February 13, 2007 letter from Mr. Denenberg to Ms. Franklin.

35. Exhibit 16 is a true and accurate copy of a transcript of proceedings before Hon. Thomas C. Wheeler dated February 15, 2007.

36. Exhibit 17 is a true and accurate copy of a February 28, 2007 faxed letter from Ms. Franklin to Mr. Denenberg.

37. Exhibit 18 is a true and accurate copy of a transcript of proceedings before Hon. Thomas C. Wheeler dated March 6, 2007.

38. Exhibit 19 is a true and accurate copy of a March 20, 2007 letter from Ms. Franklin to Mr. Denenberg.

39. Exhibit 20 is a true and accurate copy of defendant US' first amended responses to plaintiff's first set of interrogatories (nos. 1-14).

40. Exhibit 21 is a true and accurate copy of plaintiff's second set of interrogatories (nos. 15-16) pursuant to RCFC 33.

41. Exhibit 22 is a true and accurate copy of defendant US' responses to plaintiff's second set of interrogatories (nos. 15-16).

42. Exhibit 23 are true and accurate copies of excerpts from US Army Corps of Engineers' websites bearing bates nos. TDM004391-TDM004420 and TDM005324-TDM005330.

43. Exhibit 24 are true and accurate copies of deposition notices served on the US pursuant to RCFC 30(b)(1) and 30(b)(6).

44. Exhibit 25 are true and accurate copies of amended notices of depositions served on the US pursuant to RCFC 30(b)(1) and 30(b)(6).

45. Exhibit 26 are true and accurate copies of second amended notices of depositions served on the US pursuant to RCFC 30(b)(1) and 30(b)(6).

46. Exhibit 27 is a true and accurate copy of an April 13, 2007 letter from Ms. Franklin to Mr. Denenberg.

47. Exhibit 28 is a true and accurate copy of an April 18, 2007 letter from Mr. Denenberg to Ms. Franklin.

48. Exhibit 29 is a true and accurate copy of a notice of deposition for Alan P. Klein served on the US.

49. Exhibit 30 is a true and accurate copy of a document bearing bates no. G011581.

50. Exhibit 31 is a true and accurate copy of an excerpt from Contract KVK II-CONTRACT 1 bearing bates nos. G010149-G010154.

51. Exhibit 32 is a true and accurate copy of an excerpt entitled "Section 01451 Inspection and Acceptance Contractor Quality Control" bearing bates nos. G011608-G011611.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 20, 2007

s/Michael A. Adler
Michael A. Adler

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>The United States of America<br><br>Defendant,<br>and<br><br>Donjon Marine Company, Inc.<br><br>Interested Party. | ) | Civil Action No. 06-472-C<br>Judge Thomas C. Wheeler |

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2007, I served true and accurate copies of the following documents:

1. TDM'S Cross-Motion for Sanctions and/or to Compel pursuant to RCFC 37;
2. TDM'S Memorandum of Law in Opposition to the US' Motion to Quash the Subpoena of Alan P. Klein and for a Protective Order and in Support of TDM'S Cross-Motion for Sanctions and/or to Compel pursuant to RCFC 37; and
3. Declaration of Michael A. Adler in Support of TDM'S Cross-Motion for Sanctions and/or to Compel pursuant to RCFC 37.

by using the Court's CM/ECF system so that a copy was sent to the following persons automatically via email:

Erica A. Franklin
US Department of Justice
Civil Division
1100 L Street, NW
Suite 1100
Washington, DC 20001

and on counsel for Donjon Marine Company, Inc. by electronic filing at the following address:

Gary J. Campbell
McCarter & English LLP
265 Franklin Street
Boston, MA 02110

s/David W. Denenberg
David W. Denenberg