**Exhibit 7**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**INITIAL DISCLOSURES OF THE UNITED STATES PURSUANT TO RCFC 26(a)**

Pursuant to Rule 26(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant United States (the "government") hereby makes the following disclosure:

**A. "[T]he name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." RCFC 26(a)(1)(A).**

The following individuals are likely to have discoverable information that the United States may use to support its claims or defenses (other than information solely for impeachment). All of these individuals are current or former employees of the United States and any contact with them must be made through counsel for the United States:

1. Bryce Wisemiller
Project Manager
United States Army Corps of Engineer, New York District
Programs and Project Management Division, Harbor Programs Branch
26 Federal Plaza
New York, NY 10278

Subject of information: USACE Dredged Material Management Plan.

2. Harold J. Hawkins
Project Manager
United States Army Corps of Engineer, New York District
Programs and Project Management Division, Harbor Programs Branch
26 Federal Plaza
New York, NY 10278

Subject of information: USACE Kill Van Kull and Newark Bay Navigation Improvement Project.

3. Thomas J. Shea, III
Project Manager
United States Army Corps of Engineer, New York District
Programs and Project Management Division, Harbor Programs Branch
26 Federal Plaza
New York, NY 10278

Subject of information: USACE New York and New Jersey Harbor Navigation Project.

4. Michael Millard
Project Manager
United States Army Corps of Engineer, New York District
Programs and Project Management Division, Harbor Programs Branch
26 Federal Plaza
New York, NY 10278

Subject of information: USACE Arthur Kill Channel Navigation Project.

5. Darin Damiani
Project Planner
United States Army Corps of Engineer, New York District
Programs and Project Management Division, Harbor Programs Branch
26 Federal Plaza
New York, NY 10278

Subject of information: USACE Dredged Material Management Plan.

6. Ella Snell
Contracting Officer
New York District
United States Army Corps of Engineers

Subject of information: USACE maintenance and management dredging contracts.

7. Doug Clarke, Ph.D.
Program Manager
Dredging Operations Technical Support Program
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

8. Robert Engler, Ph.D.
Program Manager
Dredging Operations and Environmental Research
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

9. Paul Schroeder, Ph.D.
Dredging Operations and Environmental Research
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

10. Richard Price, Ph.D.
Dredging Operations and Environmental Research
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

11. Tommy Myers, Ph.D.
Dredging Operations and Environmental Research
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

12. Michael Channell, Ph.D.
Dredging Operations and Environmental Research
United States Army Engineer Research and Development Center
3909 Halls Ferry Road, Vicksburg, MS 39180

Subject of information: Soil remediation and processing of dredged material.

In addition, the United States may call witnesses from the following groups:

13. One or more current or former employees of OENJ Cherokee Corporation, P.O. Box 190 Middletown, New Jersey 07748, who may have knowledge regarding the disputed facts alleged in this case.

14. One or more current or former employees of Clean Earth Dredging Technologies, Inc., One Linden Avenue East Jersey City, New Jersey 07305, who may have knowledge regarding the disputed facts alleged in this case.

15. One or more current or former employees of Donjon Marine Company, Inc., 1250 Liberty Avenue Hillside, New Jersey 07205, who may have knowledge regarding the disputed facts alleged in this case.

16. Any witness necessary for authentication of documents and records.

17. Any witness necessary for rebuttal.

**B. "[A] copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Fed. R. Civ. P. 26(a)(1)(B).**

The United States may use the following documents and things in support of its claims or defenses (other than solely for impeachment):

1. United States Patent No. 5,542,614;

2. Prosecution History of United States Patent No. 5,542,614;

3. Record of Assignments for United States Patent No. 5,542,614;

4. United States Patent No. 6,293,731;

5. Prosecution History of United States Patent No. 6,293,731;

6. Record of Assignments for United States Patent No. 6,293,731;

7. U.S. Army Corps of Engineers, New York District, *Dredged Material Management Plan for the Port of New York and New Jersey, Draft Implementation Report* (September 1999);

8. U.S. Army Corps of Engineers, New York District, *Draft Implementation Strategy of the Dredged Material Management Plan for the Port of New York and New Jersey, Technical Appendix* (September 1999);

9. U.S. Army Corps of Engineers, New York District, *Dredged Material Management Plan for the Port of New York and New Jersey, Progress Report* (December 1997);

10. U.S. Army Corps of Engineers, New York District, *Dredged Material Management Contaminant Reduction and Decontamination* (undated);

11. U.S. Army Corps of Engineers, Engineering and Design, *Beneficial Uses of Dredged Material*, EM-1110-2-5026 (June 1987);

12. Dredging Contracts Awarded in the New York District of the United States Army Corps of Engineers during FY 2000-2006.

Documents (1) - (6) are readily available from the United States Patent and Trademark Office and need not be produced. Documents (7) - (11) are publicly available from the United States Army Corps of Engineers website. Copies of the remaining documents (12) are provided in electronic format under separate cover.

**C. "[A] computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(C).**

The United States does not have a claim for damages at this time.

**D. "[F]or inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(D).**

There are no insurance agreements between the United States and any insurance business meeting the requirements of this provision.

The above stated disclosures are complete and correct as of the time they are made and will be supplemented as additional information becomes available. These disclosures are based on Plaintiff's allegations of patent infringement as they relate to dredging contracts involving Donjon Marine Co., OENJ- Cherokee Corporation, and Clean Earth Dredging Technologies, Inc. in the New York District of the United States Army Corps of Engineers. Because Plaintiff's recent discovery requests indicate that Plaintiff's allegations reach beyond the activities of these contractors and this district, the United States will supplement the above disclosures with additional information as it becomes available.

DATED: November 22, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

Erica A. Franklin

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22th day of November 2006, a copy of the foregoing UNITED STATES' RULE 26 (a) INITIAL DISCLOSURES was sent to the following counsel of record, via electronic mail and Federal Express:

Michael A. Adler
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158
maa@dmlegal.com

ERICA A. FRANKLIN

**Exhibit 8**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14)**

Pursuant to Rule 33 of the Rules of the Court of Federal Claims ("RCFC"), defendant United States ("the Government') hereby responds to plaintiff TDM America, LLC's ("TDM") first set of interrogatories (Nos. 1-14), served on the United States on November 6, 2006. The following responses are based upon present information and belief. The Government reserves the right to amend and supplement these responses if it learns of new information relevant hereto, through discovery or otherwise.

**GENERAL OBJECTIONS**

Each response set forth below is subject to the general objections set forth in this section. Where a specific interrogatory is particularly objectionable on one or more grounds, the Government may explicitly state or restate an objection in its response to the interrogatory. Such specific objections are not intended to waive any of the following general objections, which apply to each interrogatory.

The Government hereby makes the following General Objections to TDM's interrogatories:

1. The Government objects to TDM's interrogatories to the extent that the information requested is protected by the following privileges, exemptions, and restrictions:

(a) the attorney-client privilege;

(b) the attorney work product privilege;

(c) the community of interest privilege;

(d) the deliberative process privilege;

(e) the state secrets privilege;

(f) the "FOR OFFICIAL USE ONLY" (FOUO) restriction;

(g) the Trade Secrets Act, 18 U.S.C. § 1905, or documents containing proprietary or other commercial information provided to the Government on a pledge of secrecy and confidentiality.

With respect to responses which contain information proprietary to the Government, or another third party, or information subject to the "FOR OFFICIAL USE ONLY," or Privacy Act restrictions, such responses will be subject to a protective order which is stipulated to by the parties and is entered by the Court.

2. The Government objects to each and every Instruction and Definition in TDM's interrogatories to the extent that they exceed the permissible scope of discovery under the RCFC and/or seek to impose upon defendant duties and responsibilities beyond those required by those Rules.

3. The Government objects to TDM's interrogatories to the extent that they seek legal conclusions or opinions, the mental impressions of Government counsel and the Government's legal theories. RCFC 26(b)(3).

4. The Government objects to the indefinite time period governing some of the interrogatories because it renders such interrogatory overly broad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence in this action. The Government generally limits its answers relating to its processing of dredged material by contractor to the United States Army Corps of Engineers to the period beginning six years before the filing of the complaint in this action.

5. The Government objects to TDM's interrogatories to the extent that they are premature. Further, the Government's responses are based upon information that is known or reasonably believed by the Government at the time of its responses to these interrogatories. It is anticipated that further discovery, independent investigation, and analysis may supply additional facts, give new meaning to known facts, or entail new factual conclusions. The Government therefore reserves the right to amend and/or supplement these responses if it learns of new information relevant hereto, through discovery or otherwise.

6. The Government reserves the right to challenge the relevance, materiality, and admissibility at trial, or in any subsequent proceeding, of this or any other action, of any of the information it provides in response to these interrogatories.

7. The Government objects to TDM's interrogatories to the extent that they seek information relating to allegations of willful infringement because the intent of the Government and its contractors is irrelevant in an action brought under 28 U.S.C. § 1498 in the United States

Court of Federal Claims. Likewise, the existence or lack of opinions and/or advice of counsel is irrelevant to any issue in this litigation.

8. The Government objects to TDM's interrogatories to the extent that they seek information or documents that are generated or created by or for the use of counsel after the filing of TDM's Complaint.

9. The Government objects that TDM's definition and use of the term "defendant" and "US" incorporated into TDM's Interrogatories to the United States by Paragraph "B" thereof, is overly broad to the extent that it purports to include the Legislative Branch and the Judicial Branch, and every agency of the Executive Branch of the federal government as the defendant in this litigation. Plaintiff's definition is overly broad and unduly burdensome in that requiring Government counsel to request information from every goverment entity would be cumbersome and would require a substantial amount of time. Further, under RCFC 11, plaintiff bears the burden of comparing the accused item or process with the construed patent claims, and making a good faith assertion of infringement as to each accused item or process. *See Antonious v. Spaulding & Evenflo Cos.*, 275 F.3d 1066, 1072-73 (Fed. Cir. 2002). Plaintiff's Complaint contains averments only as to the activities of the United States Army Corps of Engineers ("USACE") and only to activity in or around the Port of New York and New Jersey. Thus, the USACE is the only federal entity accused of infringement as a defendant in this litigation. The Government therefore limits its responses to interrogatories referencing the terms "defendant" and "US" as such terms relate to the USACE and to those activities reasonably related to remediation and processing of harbor dredging materials.

10. The Government objects that TDM's definition and use of the term "contractor" incorporated into TDM's Interrogatories to the United States by Paragraph "C" thereof, is overly broad to the extent that it purports to include any contractors and/or subcontractors without any limitation. Plaintiff's Complaint contains averments only as to any contractors or subcontractors of the USACE relating to the subject of the patents-in-suit, i.e., remediation and processing of dredged materials. For the reasons stated in the foregoing paragraph, the Government limits its responses to these interrogatories by limiting the term "contractor" to contractors awarded contracts by the USACE for dredging activities and the subcontractors selected by those contractors.

11. The Government objects to TDM's interrogatories to the extent that they call for the production of expert opinions prior to the time called for under Rule 26(a)(2) and the Court's scheduling order.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving its general objections, the Government hereby objects and responds to each interrogatory of TDM as set forth below.

**INTERROGATORY NO. 1**

State when and how the US first learned of the patents-in-suit including identifying the persons, dates and documents involved.

**RESPONSE TO INTERROGATORY NO. 1**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

Further, in General Objection 9, the Government has objected to TDM's use of a broad definition for US that includes ever agency and all branches of the federal government.

Subject to these general and specific objections, the Government responds, if TDM's broad definition of "US" is employed, the United States Patent and Trademark Office was the first government agency to learn of the patents-in-suit, in that on August 6, 1996, it issued patent number 5,542,614 ("the '614 patent"), and on September 25, 2001, it issued patent number 6,293,731 B1 ("the '731 patent").

The Government further responds, utilizing the Government's narrow definition of "US" in General Objection 9, the patents-in-suit were brought to the attention of the United States Army Corps of Engineers when United States Senator Orrin Hatch, by letter dated May 24, 2005, forwarded materials from counsel for UTEX Environmental Services, dated April 4, 2005, to the USACE.

**INTERROGATORY NO. 2**

Separately, for each claim of the patents-in-suit, state with particularity the factual basis for the US' contention that it has not infringed any claims of the patents-in-suit.

**RESPONSE TO INTERROGATORY NO. 2**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and interview of potential witnesses, investigation of the facts, and identification and review of documents in this case. Although discovery has just begun and the Government believes that it is too early to fully address contention interrogatories relating to issues of patent infringement, the Government provides the following general statement of its contentions as to non-infringement.

Subject to these specific objections and the General Objections, the Government responds that the basis for the assertion that neither the USACE nor its contractors have infringed any claims of the '731 patent is that processing of dredged material for the USACE does not include one or more of the following limitations contained in each of the independent claims of the '731 patent: "creating an additive slurry in a mixing container"; "pumping the additive slurry from the mixing container to a mixing assembly disposed within the containment receptacle"; "mixing the additive slurry into the dredged material to form a substantially homogenous mixture"; and "curing the substantially homogenous mixture in the containment receptacle."

Similarly, the basis for the assertion that neither the Government nor its contractors have infringed any claims of the '614 patent is that processing of dredged material for the USACE does not include at least one of the following limitations contained in both of the independent claims of the '614 patent: "receiving said waste material in a vibrating screen box;" "vibrating

said vibrating screen box;" "weighing said batch of waste material to determine an amount of additive to be added to said waste material."

The remediation processes at issue in this case are performed by contractors (or their subcontractors) of the USACE, and the Government has not had adequate opportunity to thoroughly evaluate the processes of these contractors and/or subcontractors. Consequently, the Government reserves the right to review, develop, and evaluate additional and/or different positions as its investigation continues.

**INTERROGATORY NO. 3**

Separately, for each claim of the patents-in-suit, state with particularity the factual basis for the US' contention that the patents-in-suit are invalid.

**RESPONSE TO INTERROGATORY NO. 3**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts relating to the invalidity of the patents-in-suit. Given that discovery has just begun, the Government believes that it is too early to fully address contention interrogatories relating to issues of patent invalidity. Consequently, the Government reserves the right to review, develop, and evaluate additional and/or different

positions as its investigation continues. In light of the foregoing general and specific objections, the Government provides the following statement of its contentions.

Subject to these specific objections and the General Objections, the Government responds that there are several bases for the assertion that the '731 patent is invalid. Under 35 U.S.C. § 102(b), at least claims 3, 4, 6, 7, 8, 9, 10, 11, and 12 of the '731 patent are invalid as having been first disclosed in a non-provisional application filed more than one year after the invention was on sale in this country. The non-provisional application was filed on May 15, 1998, and the invention was offered for sale prior to May 15, 1997, the date that performance of a contract with the New York Harbor Authority began, which involved using the process claimed in the '731 patent. May 15, 1997 was also the date that the provisional application for the invention was filed.

Under 35 U.S.C. § 103, each claim of the '731 patent is invalid because it would have been obvious to a person having ordinary skill in the art at the time the invention was made. The prior art identified in response to Interrogatory No. 7 below discloses the process of mixing additives with de-watered dredged material, adding water and curing the product for use as a structural fill. The use of a mixing container during the creation of the additive slurry, as required by the claims of the '731 patent, rather than mixing the additives directly with the dredged material without use of a container, would have been well within the general knowledge to the person of ordinary skill in the art at the time the invention was made and therefore the claims are obvious and lack patentability.

Under 35 U.S.C. § 112, at least independent claims 1, 5, 7 and 9 of the '731 patent are not enabled because the claimed process does not include a step for removing large objects to enable the production of a "homogenous mixture."

**INTERROGATORY NO. 4**

Separately, for each of the patents-in-suit, state whether the US is contending that one or more claims of the patents-in-suit are unenforceable and, if so, identify each such claim and state with particularity the factual basis therefor.

**RESPONSE TO INTERROGATORY NO. 4**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. RCFC 25 (b)(3). The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts relevant to the patents-in-suit. Given that discovery has just begun, the Government believes that it is too early to fully address contention interrogatories relating to whether the patents-at-issue are enforceable.

Subject to these specific objections and the General Objections, the Government responds that its contentions regarding its defenses to TDM's assertion of infringement of the patents-in-suit are fully set forth in its Answer and that the Government will move to amend its answer or otherwise provide notice to TDM should it develop additional defenses relating to the validity or enforceability of the patents in suit.

**INTERROGATORY NO. 5**

Identify all persons with any relevant knowledge of the matters alleged in the answer.

**RESPONSE TO INTERROGATORY NO. 5**

The Government objects to this interrogatory on the grounds that it is premature in that the Government's investigation of this matter continues. Subject to this specific objection and the General Objections, the Government responds that persons believed to have relevant knowledge of the matters alleged in the Answer were properly listed in the Initial Disclosures of the United States submitted on November 22, 2006.

**INTERROGATORY NO. 6**

State with particularity all grounds in support of each denial made in the answer to this action.

**RESPONSE TO INTERROGATORY NO. 6**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government responds that paragraph 1 of the Answer explains that it denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. The denied averments contained in paragraph 2 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. Paragraph 3 of the Answer

explains that it denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. The denied averments contained in paragraphs 4, 10, and 14 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. Paragraph 5, 7, and 13 of the Answer explains that the Government denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. Paragraph 9 of the Answer explains that the Government denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. Paragraph 11 of the Answer explains that the denied averments are based on the fact that UTEX and not TDM provided notice to the Government prior to the filing of the Complaint relating to allegations of infringement involving the patents-at-issue. The remaining denied averments contained in paragraph 11 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. The denied averments contained in paragraph 12 of the Answer are based on the fact that TDM did not advise the USACE of alleged infringement of the patent-in-suit as early as April 2005. The first such notice that the USACE received from TDM occurred with the service of its Complaint filed on June 21, 2006. Similarly, the USACE did not engage in "numerous exchanges" with TDM regarding the patents prior to the filing of the Complaint. The first communication that the USACE received regarding infringement allegations involving the patents-in-suit came from Senator Orrin Hatch on or about May 24, 2005. The first communication that the USACE had with UTEX counsel regarding infringement allegations involving the patents-in-suit occurred on or about June 7-8, 2005. The remaining denied averments contained in paragraph 12 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. The denied averments contained in paragraph 15 of the Answer

are based on the fact that TDM is not entitled to reasonable and entire compensation from the Government for reasons set forth in response to Plaintiff's Interrogatory No. 2 and that Plaintiff's assertion that such compensation is "no less than $300 million" is unsupported.

**INTERROGATORY NO. 7**

Separately, for each of the patents-in-suit, identify all prior art to the patents-in-suit.

**RESPONSE TO INTERROGATORY NO. 7**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and review of documents that may be categorized as prior art.

Subject to these specific objections and to the General Objections, the Government responds that the prior art cited in the prosecution histories of the patents-in-suit are relevant. Further, the following prior art documents are presently known to be relevant to the patents-in-suit: USACE, Engineering and Design, *Beneficial Uses of Dredged Material,* EM-1110-2-5026 (June 1987); Fleming, Elizabeth, et al., *An Evaluation of Solidification/Stabilization Technology for Buffalo River Sediment*, Miscellaneous Paper-EL-91-11 (May 1991); Channell, Michael, et al., *An Evaluation of Solidification/Stabilization for Treatment of New York/New Jersey Harbor Sediments*, Technical Report-EL-97-10 (June 1997).

**INTERROGATORY NO. 8**

Identify all opinions, reports and evaluations concerning the patents-in-suit.

**RESPONSE TO INTERROGATORY NO. 8**

The Government objects to this interrogatory to the extent that it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature and to the extent that it calls for the production of expert opinions prior to the time established under Rule 26(a)(2) and the Court's scheduling order.

Subject to these specific objection and to the General Objections, the Government responds that following non-privileged, discoverable documents are deemed responsive to this interrogatory:

(a) the letter sent by David W. Denenberg to Senator Orrin Hatch, dated April 4, 2005, and the material accompanying that letter; and

(b) the letter from the Department of the Army, United States Army Legal Services Agency, dated May 16, 2006, denying the administrative claim of UTEX's claim for alleged infringement of patents including the patents-at-issue.

**INTERROGATORY NO. 9**

Identify the US' proposed construction for each claim of the patients-in-suit and all intrinsic and extrinsic evidence supporting that construction.

**RESPONSE TO INTERROGATORY NO. 9**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it prematurely calls for the production of claim constructions and supporting material prior to the time established by the Court's scheduling order.

**INTERROGATORY NO. 10**

Identify each and every specific contract, and identify each and every contractor retained by the US for dredging activities at any port, harbor and/or waterway since 1997 to the present and for each such contract specify all contract information and processing information relevant to those contracts and the dredging activities, including specifically the treatment, processing, stabilization, retention, staging, handling, curing, reuse, remediation, solidification and/or disposal of the dredged materials.

**RESPONSE TO INTERROGATORY NO. 10**

The Government objects to this interrogatory to the extent it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel regarding what contracts are relevant to this litigation and which information is relevant to those contracts. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to this interrogatory to the extent that the "contract information" requested is readily located in the listed contracts. Additionally, the Government objects to the extent that the requested "processing information relevant to those contracts and the dredging activities" is not in the possession of the Government and such request is best directed to the contractors.

The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds with Attachment A, hereto, and will provide copies of those contracts listed in Attachment A as they become available.

**INTERROGATORY NO. 11**

Identify all processes and methods utilized by each of the respective contractors identified in the response to Interrogatory No. 10, and all documents, specifications, data, and other writings that describe and set forth the methods, processes and/or manner utilized for the dredging activities.

**RESPONSE TO INTERROGATORY NO. 11**

The Government objects to this interrogatory to the extent it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel as the process and methods used by parties other than the USACE. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to "all processes and methods utilized by each of the ... contractors" is not in the possession of the Government and such request is best directed to the contractors. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the

Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and to the General Objections, the Government responds that the information requested in this interrogatory is not in the possession of the Government and such request is best directed to the contractors identified in response to Interrogatory No. 10.

**INTERROGATORY NO. 12**

For each contract that the US was or is a party to since 1997 for any dredging activity at any port, harbor and/or waterway, complete the chart below either confirming that the contractor is performing the referenced element of the patent claim for the '731 patent or describe the manner in which the particular dredging activity and/or processing activity is performed and how the activity differs from referenced one.

**RESPONSE TO INTERROGATORY NO. 12**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to activities of contractors is not in the possession of the Government and such request is

best directed to the contractor. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds that the information sought by this interrogatory is available from the response to Interrogatory number 2.

**INTERROGATORY NO. 13**

For each contract that the US was or is a party since 1997 for any dredging activity at any port, harbor and/or waterway, complete the chart below either confirming that the contractor is performing the referenced element of the patent claim for the '614 patent or describe the manner in which the particular dredging activity and/or processing activity is performed and how the activity differs from the referenced one.

**RESPONSE TO INTERROGATORY NO. 13**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to activities of contractors is not in the possession of the Government and such request is best directed to the contractor. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds that the information sought by this interrogatory is available from the response to Interrogatory number 2.

**INTERROGATORY NO. 14**

State the amount, in percentage and dollar terms, that the US believes is a reasonable royalty for each of the patents-in-suit, explain the basis therefor and identify the documents relied upon to support that basis.

**RESPONSE TO INTERROGATORY NO. 14**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and interview of potential witnesses, investigation of the facts, and identification and review of documents in this case. The Government also objects to this interrogatory to the extent that it calls for the production of expert opinions prior to the time established under Rule 26(a)(2) and the Court's scheduling order.

At present, the Government has not formed a belief as to what is a reasonable royalty.

DATED: December 15 , 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345

OF COUNSEL:

GARY L. HAUSKEN
Assistant Director
Department of Justice

# Attachment A

| District | Contract # | Project | Contractor |
|---|---|---|---|
| New York | W912DS-06-C-0018 | Mnt Newark Bay | GLDD |
| | W912DS-05-C-0002 | Minish #4 | EIC Associates |
| | W912DS-05-C-0003 | AK 2/3 | Don Jon |
| | W912DS-05-C-0004 | S-KVK-2 | Bean |
| | W912DS-05-C-0020 | Maint AK | DonJon |
| | W912DS-04-C-0008 | Port Jersey 2 | GLDD |
| | W912DS-04-C-0016 | Mnt Seguine Point | DonJon |
| | DACW51-03-C-0001 | Port Jersey 1 | DonJon |
| | DACW51-03-C-0012 | AK #1 | DonJon |
| | DACW51-03-C-0014 | KVK Area 8 | Jay Cashman |
| | DACW51-03-C-0021 | Maint AK | DonJon |
| | DACW51-02-C-0001 | KVK Area 5 | Bean |
| | DACW51-02-C-0002 | Minish #2 | Cruz Contruction |
| | DACW51-02-C-0019 | KVK Area 6 | Bean |
| | DACW51-02-C-0022 | Mnt Newark Bay | DonJon |
| | DACW51-01-C-0006 | KVK Area 7 | DonJon |
| | DACW51-01-C-0023 | Mnt Eliz Pierhead | GLDD |
| | DACW51-01-C-0025 | KVK Area 3 | GLDD |
| | DACW51-01-C-0030 | Mnt Red Hook | Weeks |
| | DACW51-00-C-0006 | KVK Area 4A | Weeks |
| Detroit | DACW35-02-C-0004 | | |
| | DACW35-02-C-0013 | | |
| | W911XK-04-C-0013 | | |
| | W911XK-05-C-0005 | | |
| | W911XK-06-D-0001-0001 | | |
| | W911XK-06-D-0001-0002 | | |
| | W911XK-06-D-0003-0001 | | |
| Los Angeles | DACW09-D-0010-0003 | LA River Estuary Dredging/Stabiliz Study | |
| Jacksonville | W912EP-04-C-0021 | Miami River | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of December 2006, a copy of the foregoing DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14) was sent to the following counsel of record, via electronic mail and Federal Express:

Michael A. Adler
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158
maa@dmlegal.com

GARY L. HAUSKEN