**Exhibit 9**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-30)**

Pursuant to Rule 34 of the Rules of the Court of Federal Claims ("RCFC"), defendant United States ("the Government') hereby responds to plaintiff TDM America, LLC's ("TDM") first set of requests for production of documents and things (Nos. 1-30), served on the United States on November 6, 2006. The following responses are based upon present information and belief.

**GENERAL OBJECTIONS**

Each response set forth below is subject to the general objections set forth in this section. When a specific request is particularly objectionable on one or more grounds, the Government may explicitly state or restate an objection in its response to the request. Such specific objections are not intended to waive any of the following general objections, which apply to each request.

The Government hereby makes the following General Objections to TDM's requests:

1. The Government objects to TDM's requests to the extent that the information requested is protected by the following privileges, exemptions, and restrictions:

(a) the attorney-client privilege;

(b) the attorney work product privilege;

(c) the community of interest privilege;

(d) the deliberative process privilege;

(e) the state secrets privilege;

(f) the "FOR OFFICIAL USE ONLY" (FOUO) restriction;

(g) the Trade Secrets Act, 18 U.S.C. § 1905, or documents containing proprietary or other commercial information provided to the Government on a pledge of secrecy and confidentiality. With respect to responses which contain information proprietary to the Government, or another third party, or information subject to the "FOR OFFICIAL USE ONLY," or Privacy Act restrictions, such responses will be subject to a protective order which is stipulated to by the parties and is entered by the Court.

2. The Government objects to each and every Instruction and Definition in TDM's requests to the extent that they exceed the permissible scope of discovery under the RCFC and/or seek to impose upon defendant duties and responsibilities beyond those required by those Rules.

3. The Government objects to the indefinite time period governing some of the requests because they are overly broad, unduly burdensome, and seek information that is not reasonably calculated to lead to the discovery of admissible evidence in this action.

4. The Government objects to TDM's requests to the extent that they are premature. Further, the Government's responses are based upon information that is known or reasonably believed by the Government at the time of its responses to these requests. It is anticipated that further discovery, independent investigation, and analysis may supply additional facts, give new

meaning to known facts, or entail new factual conclusions. The Government therefore reserves the right to amend and/or supplement these responses if it learns of new information relevant hereto, through discovery or otherwise.

5. The Government reserves the right to challenge the relevance, materiality, and admissibility at trial, or in any subsequent proceeding, of this or any other action, of any of the information it provides in response to these requests.

6. The Government objects to TDM's requests to the extent that they seek information relating to allegations of willful infringement because no such claim exists for an action brought under 28 U.S.C. § 1498 in the United States Court of Federal Claims. Likewise, no asserted defense in this case relies upon opinions and/or advice of counsel.

7. The Government objects to each interrogatory to the extent that it seeks documents not in the possession of the Government.

8. The Government objects to TDM's requests to the extent that they seek information or documents that are generated or created after the filing of TDM's Complaint.

9. The Government objects to TDM's requests to the extent that they call for the production of expert opinions prior to the time called for under Rule 26(a)(2) & (b)(4) and the Court's scheduling order.

10. The Government objects to TDM's requests to the extent that they call for the creation of compilations that do not exist.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving its general objections, the Government hereby objects and responds to each request of TDM as set forth below.

**REQUEST NO. 1**

All documents and things referred to in defendant's initial disclosures pursuant to Rule 26(a) of the Rules of the United States Court of Federal Claims.

**RESPONSE TO REQUEST NO. 1**

The documents identifies as numbers 1-11 in the Government's initial disclosures are readily available from public sources and need not be provided. The item numbered 12 in the Government's initial disclosures has been previously provided.

**REQUEST NO. 2**

Separately, for each of the patents-in-suit, all documents and things that constitute or support the factual basis for defendant's defense that the inventions of the patents-in-suit have not been used or manufactured by or for the US.

**RESPONSE TO REQUEST NO. 2**

The Government objects to this request to the extent that it seeks a specific manner of production not required by RCFC 34, specifically by arranging documents according to each

patent-in-suit. To the extent not previously provided, the documents are provided with this response or will provided as the documents become available.

**REQUEST NO. 3**

Separately, for each of the patents-in-suit, all documents and things that constitute or support the factual basis for defendant's defense that the patents-in-suit are invalid for failure to comply with 35 USC § 102.

**RESPONSE TO REQUEST NO. 3**

The Government objects to this request to the extent that it seeks a specific manner of production not required by RCFC 34, specifically by arranging documents according to each patent-in-suit. To the extent not addressed in response to Request No. 1, above, the documents are provided with this response or will provided as the documents become available.

**REQUEST NO. 4**

Separately, for each of the patients -in-suit, all documents and things that constitute or support the factual basis for defendant's defense that the patients-in-suit are invalid for failure to comply with 35 USC § 103.

**RESPONSE TO REQUEST NO. 4**

The Government objects to this request to the extent that it seeks a specific manner of production not required by RCFC 34, specifically by arranging documents according to each

patent-in-suit. To the extent not addressed in response to Request No. 1, above, the documents are provided with this response or will provided as the documents become available.

**REQUEST NO. 5**

Separately, for each of the patients-in-suit, all documents and things that constitute or support the factual basis for defendant's defense that the patents-in-suit are invalid for failure to comply with 35 USC § 112.

**RESPONSE TO REQUEST NO. 5**

The Government objects to this request to the extent that it seeks a specific manner of production not required by RCFC 34, specifically by arranging documents according to each patent-in-suit. To the extent not addressed in response to Request No. 1, above, the documents are provided with this response or will provided as the documents become available.

**REQUEST NO. 6**

All documents and things that constitute and/or support defendant's position that defendant is barred from a damages recovery pursuant to 31 USC § 3727.

**RESPONSE TO REQUEST NO. 6**

The Government does *not* contend that *defendant* is barred by 31 U.S.C. § 3727, the Government contends that *plaintiff* is barred, in whole or in part by that statute. All such

documents responsive to this request are either available to the public from the Patent and Trademark Office or are already in the possession of TDM.

**REQUEST NO. 7**

All documents and things that comprise an/or support defendant's defense that TDM did not own the patents-in-suit during any time relevant to this litigation.

**RESPONSE TO REQUEST NO. 7**

The Government never made such an assertion, rather the Government asserted: "There exists a question as to the ownership of the '731 and '614 patents during the relevant time period. See Answer at ¶ 9 supra. To the extent that Plaintiff did not own the patents during the relevant time period, Plaintiff is not entitled to assert patent rights for that time period." See the Response to Request No. 6, *supra*.

**REQUEST NO. 8**

All prior art, patentability studies and/or invalidity studies pertaining to the patents-in-suit.

**RESPONSE TO REQUEST NO. 8**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel *per se*. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects that any such documents are also protected by the Attorney-Client Privilege.

**REQUEST NO. 9**

All documents and things that show or explain the organizational, working and/or economic relationship between defendant and the US Army Corps of Engineers regarding dredging activities.

**RESPONSE TO REQUEST NO. 9**

The Government objects to this request because it is nonsensical. The only accused agency of the United States is the U.S. Army Corps of Engineers. Thus, the Corps of Engineers is indistinguisable from "the defendant."

**REQUEST NO. 10**

All document and things that the US will rely upon to support its construction of any term of any claim of the patents-in-suit.

**RESPONSE TO REQUEST NO. 10**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects that this request is premature. The parties have not yet addressed what claim terms may require construction, and the time for adopting positions regarding claim construction has not yet arrived. Thus, at the present time, what documents the Government may rely on to support a disputed claim term is speculative, at best. Further, the disclosure of claim construction and related information is specifically addressed by the court's Pretrial Scheduling Order, which is controlling on the parties. The Government will supply its claim construction and related authorities at the time specified in the Pretrial Scheduling Order.

**REQUEST NO. 11**

All documents and things that the US will rely upon to support what the US believe is a reasonable royalty for the invention of the patents-in-suit.

**RESPONSE TO REQUEST NO. 11**

The Government objects to this request because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine. Further, the Government objects to this request to the extent that it seeks expert opinion. Any such expert opinions will be provided in accordance with RCFC 26(a)(2) and (b)(4).

The Government further objects that this request is premature. The time for identifying trial exhibits and serving trial contentions are controlled by this court's Rules and will be further addressed by the court. The Government knows of no authority by which plaintiff can compel such disclosures at an earlier date.

Subject to the foregoing objections, the Government will supplement its production should it obtain documents that it believes may evidence a reasonable royalty for use of the patents in suit.

**REQUEST NO. 12**

For each contract since 1997 for dredging activities at any port, harbor and/or waterway, please produce:

a) all bid documents;

b) all contracts; and

c) all materials data specification sheets, specifications, process sheets, data and/or the processes used by the US and/or any of its contractors.

**RESPONSE TO REQUEST NO. 12**

The Government objects to this request on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000. To the extent that such documents have not been previously

provided, copies are provided with this response or will provided as the documents become available.

The Government objects to producing any materials submitted by unsuccessful bidders, as such proposals and related material are likely to contain proprietary and sensitive business information and are irrelevant to any issue in this litigation.

Finally, the Government will only produce those documents in its possession, custody or control. The Government is not required to obtain materials data specification sheets, specifications, process sheets, data relating to processes used by its contractors where such documents are not within its possession, custody or control.

**REQUEST NO. 13**

All documents and things, including all documents derived from or compiled by the US, its contractors and/or subcontractors, that comprise or constitute any of the below listed items that are related to the dredging activities conducted at any port, harbor and/or waterway, for the years 1997 to the present.

a) progress management reports;

b) requests for proposals;

c) solicitation documents;

d) pre-bid meeting questions that are posted for the public and all answer or other responses relating thereto;

e) addendums to any proposals;

f) bids;

g) amendments to any bids or proposals;

h) contracts with third-party contractors including all amendments;

i) quality control sampling date sheets;

j) job cost information including, but not limited to, any requests for increased payments by third party contractors;

k) contractors' proposals;

l) technical sheets, and data binders;

m) contractors' invoices, bills time management sheets and other documents submitted in connection with reimbursement or being paid for dredging activities

n) listings of all bidders, bids and bid awards for any US contract;

o) quality assurance/quality control data related to dredging activities at all ports, harbors and/or waterways;

p) manifests for the disposal of materials that was dredged from ports, harbors and/or waterways;

q) waterfront development permits for dredging activities at all ports, harbor and/or waterways;

r) physical description of the processes and/or plans fro dredging activities;

s) documents that indicate certain dredging processes were not meeting required specifications, including but not limited to, any documents that requested additional payments or modifications to the methods for any dredging activities;

t) engineering specifications, reports and evaluations;

u) pre-filling communications regarding the patents-in-suit

v) opinions regarding the prior art; and

w) photographs and/or tapes

**RESPONSE TO REQUEST NO. 13**

The Government objects to this request on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this request on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000. To the extent that such documents have not been previously provided, copies are provided with this response or will provided as the documents become available.

The Government objects to producing any materials submitted by unsuccessful bidders, as such proposals and related material are likely to contain proprietary and sensitive business information and are irrelevant to any issue in this litigation.

Finally, the Government will only produce those documents in its possession, custody or control. The Government is not required to obtain materials data specification sheets, specifications, process sheets, data relating to processes used by its contractors where such documents are not within its possession, custody or control.

**REQUEST NO. 14**

All documents and things that constitute, comprise and/or show any relationship between any contractors and the US with respect to dredging activities at any port, harbor and/or waterway.

**RESPONSE TO REQUEST NO. 14**

The Government objects to this request on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000. To the extent that such documents have not been previously provided, copies are provided with this response or will provided as the documents become available.

**REQUEST NO. 15**

To the extent not previously requested, all documents and things that relate to the following contracts and/or entities with respect to dredging activities for the US:

a. the Port Authority of the New York and New Jersey -maintenance Dredging Contract MF-207A (March 1997);

b. Donjon Marine Co., Inc. -Berth Deepening Contract HH-934.553 (May 2006);

c. New York and New Jersey Harbor Kill Van Kill Channel Navigation Improvements 50 Ft. Project, IFB No. W912DS-05-B-003;

d. all written contracts within the W912DS bidding codes, including;

(i) Bid #W912DS-04-B-0003-0008;

(ii) Bid #W912DS-05-B-0003 (NY & NJ Harbor, Kill van Kill, 12/1/04);

(iii) Bid #W912DS-06-B-0007; and

(iv) Bid #W912DS-04B-0006

e. all contracts for dredging activities with ECDC Environmental, LLC;

f. all contracts for dredging activities with Clean Earth Dredging Technologies, Inc.;

g. all contracts for dredging activities with OENJ Cherokee Corporation;

h. all contracts for dredging activities with Bean Stuyvesant, LLC;

i. all contracts for dredging activity with Great Lakes Dredge and Dock Co.;

j. all contracts for dredging with J. Cashman Inc.;

k. all contracts for dredging activities with Weeks Marine inc.;

l. all contracts for the years 1997 to the present that comprise and/or refer to the US Army Corps of Engineers Contract Dredging Program; and

m. any other federal contract for dredging activities

**RESPONSE TO REQUEST NO. 15**

The Government objects to producing any materials submitted by unsuccessful bidders, as such proposals and related material are likely to contain proprietary and sensitive business information and are also irrelevant to any issue in this litigation. No unsuccessful bids will be produced.

The Government further objects to this request on the ground that the phrases "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrases "all contracts," "dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000. To the extent that any remaining documents have not been previously provided, copies are provided with this response or will be provided when located.

**REQUEST NO. 16**

All documents and things that constitute and/or refer to the organizational structure, including the responsibilities of all US personnel and/or consultants, of the division of the US that is responsible and/or oversees dredging activities, including but not limited to, the US Army Corps of Engineers.

**RESPONSE TO REQUEST NO. 16**

The Government objects to this request as unduly burdensome and not calculated to lead to the discovery of admissible evidence. The potential number of persons whose duties include "responsibility" for "dredging activity" is probably in the thousands. Even within the United States Army Corps of Engineers ("USACE"), there are at least 28 organizations that conduct dredging activities of some form or another, but not all of those organizations perform dredging where the dredged material is remediated or processed.

Further, under RCFC 11, plaintiff bears the burden of comparing the accused item or process with the construed patent claims, and making a good faith assertion of infringement as to each accused item or process. *See Antonious v. Spaulding & Evenflo Cos.*, 275 F.3d 1066, 1072-73 (Fed. Cir. 2002). Plaintiff's Complaint contains averments only as to the activities of the USACE and only to activity in or around the Port of New York and New Jersey. Thus, the USACE is the only federal entity accused of infringement as a defendant in this litigation. The Government therefore limits its responses to the activity of USACE and to those activities reasonably related to remediation and processing of harbor dredging materials.

**REQUEST NO. 17**

All documents and things that constitute and/or refer to the relationship between the US and any port authority, such as the Port Authority of New York and New Jersey.

**RESPONSE TO REQUEST NO. 17**

The Government objects that this request is too indefinite, and therefore unduly burdensome, in that documents "referring" to the relationship between the USACE and "any port authority" could easily number in the millions of documents because the USACE is generally responsible for a number of federally conducted programs that affect ports. The Government therefore limits its responses to the activity of USACE and to those activities reasonably related to remediation and processing of harbor dredging materials occurring during or after 2000.

**REQUEST NO. 18**

To the extent not previously requested, all documents and things, for fiscal years 1998 through 2006, that comprise, refer or relate to the US Army Corps of Engineers contract dredging programs for dredging activities.

**RESPONSE TO REQUEST NO. 18**

The Government objects to this request on the ground that period consisting of "fiscal years 1998 through 2006" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000. To the extent that such

documents have not been previously provided, copies are provided with this response or will provided as the documents become available.

**REQUEST NO. 19**

All documents and things that show the basis for the US' position that the below listed parties are interested parties:

(i) Clean Earth Dredging Technologies, Inc.;

(ii) Donjon Marine Company, Inc.; and

(iii) OENJ Cherokee Corporation

**RESPONSE TO REQUEST NO. 19**

The Government objects to this request because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government's requests for notice to each of the three parties listed in Request No. 19 have been previously served on TDM. No further response is required.

**REQUEST NO. 20**

To the extent not previously requested, all documents and things, that show, comprise or relate to the processes, methods, treatment, stabilization, retention, staging, handling, curing, reuse, remediation, fixation, solidification and/or disposal used for dredging activities at any port, harbor and/or waterway.

**RESPONSE TO REQUEST NO. 20**

The Government believes that most documents responsive to this request would be in the possession of the contractors or subcontractors who perform the activities addressed by the request. To the extent that such document are in the possession of the Government, they have been previously provided or are provided with this response or will provided as the documents become available.

**REQUEST NO. 21**

All documents and things that refute or tend to refute the analysis contained in David W. Denenberg's letter to the Honorable Orrin G. Hatch, dated April 4, 2005 re: analysis of certain patents assigned to UTEX and/or its subsidiaries.

**RESPONSE TO REQUEST NO. 21**

Any documents responsive to this request are undiscoverable Attorney Work Product or attorney-client communications. *See also* RCFC 26(b)(3). The request seeks the mental impressions, conclusions, opinions or legal theories of Government counsel *per se*. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine. No further response will be provided.

**REQUEST NO. 22**

All documents and things that show any of the processes, methods, handling and cost associated with any dredging activities at any port, harbor and/or waterway.

**RESPONSE TO REQUEST NO. 22**

This request duplicates at least Requests Nos. 12, 13, 15 and 20. No further response will be provided.

**REQUEST NO. 23**

To the extent not previously requested, all documents and things that comprise or otherwise show the manner in which dredging activities are performed at any port, harbor and/or waterway.

**RESPONSE TO REQUEST NO. 23**

This request does not differ in any significant degree from Request No. 22. No further response is required.

**REQUEST NO. 24**

All documents and things that constitute, refer and/or reflect any concerns or issues concerning the patents-in-suit.

**RESPONSE TO REQUEST NO. 24**

As we understand the request, the only documents that may be responsive are undiscoverable as being protected by the Attorney Work Product doctrine, RCFC 26(b)(3), the Attorney-Client Privilege or the Deliberative Process Privilege.

**REQUEST NO. 25**

All documents and things that constitute or refer to any consultants retained or otherwise engaged on behalf of the defendant with respect to dredging activities at any port, harbor and/or waterway.

**RESPONSE TO REQUEST NO. 25**

The Government objects because this request is not designed to lead to the discovery of relevant evidence. Whether or not the Government has engaged consultants is irrelevant. Nor is the provision of any information responsive to this request likely to lead to the discovery of admissible evidence since the Government has or will provide documents and things relating to more relevant sources of information, namely the contractors. To be sure, the term "consultants" excludes the contractors who performed the work and, therefore, any knowledge that possessed by such consultants is likely to be inadmissible hearsay.

Further, the Government objects to this request on the ground that the request is not limited in time and, therefore, overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. It is also overly broad in that the request is not limited by the subject matter of the consultancy. For example, it could include consultants relating to economic impacts of the project and those who address environmental issues. Additionally, the Government objects to this request on the ground that the phrase "dredging activities at any port, harbor and/or waterway" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged materials and do not claim processes for dredging itself. Accordingly, the Government

limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

**REQUEST NO. 26**

All documents and things that the US will rely upon during the trial of this case.

**RESPONSE TO REQUEST NO. 26**

This request is not designed to seek discoverable evidence, rather it is designed to discover the conclusion and legal theories of opposing counsel. The identification of documents on which the Government will rely at trial will be produced in accordance with the Court's scheduling order and/or the Rules of this court. No further response will be provided.

**REQUEST NO. 27**

All documents that comprise and/or refer to the earliest date that defendant became aware of the patents-in-suit.

**RESPONSE TO REQUEST NO. 27**

This request is not reasonably calculated to lead to the discovery of admissible evidence and is irrelevant to all issues in this case. Further, TDM is already in possession of the documents identified in response to TDM's Interrogatory No. 1, and any further documents relating to the first knowledge of USACE are believed to be protected from disclosure by the

Attorney Work Product doctrine, RCFC 26(b)(3), the Attorney-Client Privilege and/or the Deliberative Process Privilege. No further response will be provided.

**REQUEST NO. 28**

All documents and things that thee US relies upon, or which constitutes and supports any of the US' responses to plaintiff's first set of interrogatories.

**RESPONSE TO REQUEST NO. 28**

All discoverable documents have been produced in response to Requests Nos. 1-27, 29 and 30. To the extent that this request seeks correspondence between defendant's employees and/or other notes, memoranda and papers generated for the purpose of assisting in responding to the interrogatories, such documents are protected from discovery by the Attorney Work Product Doctrine, RCFC 26(b)(3) and the Attorney-Client Privilege. No further response will be provided.

**REQUEST NO. 29**

To the extent not previously requested, documents and things that mention and/or refer to the patents-in-suit.

**RESPONSE TO REQUEST NO. 29**

This request is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. First, in order to literally comply with this request would require

combing through all government documents in every agency[1] looking for any document which mentions or refers to that patent. Such a search is unwarranted by TDM's Complaint in this action since TDM has only accused activities of the USACE and has made no showing that such a broad search is required in this case. Further, TDM cannot show that such a search, even of just the USACE records, is warranted. Merely because a document "mentions" or "refers" to a patent would not demonstrate any relation to the claims at issue here. At best, it appears that TDM is searching for a cause of action, rather than attempting to perfect its information regarding a claim already made.

**REQUEST NO. 30**

With respect to the patents-in-suit, all documents and things that were relied upon for the opinion contained in the letter dated May 16, 2006 from Alan P. Klein, Intellectual Property Counsel for the Army addressed to Robert G. Fryling, Esq., Blank Rome, L.L.P., One Logan Square, 18th & Cherry Streets, Philadelphia PA 19103-6998.

**RESPONSE TO REQUEST NO. 30**

All relevant responsive documents and things are protected by the Attorney Work Product Doctrine, RCFC 26(b)(3), the Attorney-Client Privilege and/or the Deliberative Process Privilege. Since a privilege log is only required for documents withheld by reason of the

---

[1] TDM defines "defendant" and "US" as "the executive, legislative and/or judicial branches of the federal government of the United States of America, including the Department of the Army, the United States Army Corps of Engineers ... and any other federal department, agency, commission, bureau and/or office." Pl. 1st Set of Requests for Prod. of Docs. & Things to Def. Pursuant to R. 34 of the R. of the U.S. Ct. of Fed. Cl. at 2, ¶ B.

Attorney-Client Privilege, the Government will produce a log only if ordered by the court or if the remaining asserted privileges and exclusions are found to inapplicable.

DATED: December 22, 2006

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

Erica Franklin /by Gary Hausken

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345

OF COUNSEL:

GARY L. HAUSKEN
Assistant Director
Department of Justice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22d day of December 2006, a copy of the foregoing DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-30) was sent to the following counsel of record, via Federal Express:

Michael A. Adler
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158
maa@dmlegal.com

GARY L. HAUSKEN