**Exhibit 10**

DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

January 5, 2007

**BY EMAIL AND FIRST CLASS MAIL**

Erica A. Franklin, Esq.
US Department of Justice
Civil Division
1101 L Street, NW - Suite 1100
Washington DC 20001

**Re: TDM America, LLC v. United States of America**
**Civil Action No. 06-472-C (Judge Thomas C. Wheeler)**
**Our Ref; 7683.001**

Dear Ms. Franklin:

Pursuant to the United States Court of Federal Claims Rules ("RCFC") 37(a)(2)(A) and 37(d)(2) and (3), this letter sets forth deficiencies in the responses of the United States of America (the "US") to plaintiff's first set of requests for production of documents and things in an attempt to resolve these deficiencies without court intervention.

Throughout the US' responses to TDM's document requests, the US unjustifiably refuses to produce documents on the grounds that (i) the requests are overly broad even though they are not; (ii) the definitions set forth by TDM should be arbitrarily limited; (iii) documents were produced or will be produced, but fails to specify which of these two alternative apply and (iv) documents may be produced without specifying documents that correspond to the specific requests. In this regard, RCFC (34)(b) states in part:

> If no objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.
>
> A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.

Thus, the US must respond to each document request as to the portions that cannot be objected to and must organize the documents to correspond to the requests. The US has not done any of the above. Further, TDM printed the documents produced to date, but the documents were not produced in numerical bates number order. This required TDM to invest substantial resources to place the US' production in order. TDM's seeks an explanation for the disorderly production.

Also, it should be noted that the rules of the United States Court of Federal Claims provide guidance as to the proper manner and extent of objecting to discovery based on privilege. RCFC 26(b)(5) states:

> **Claims of Privilege or Protection of Trial Preparation Materials**
>
> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability or the privilege or protection.

Thus, the US is obligated to provide an appropriate privilege log that conforms to the requirements set forth in RCFC Rule 26(b)(5). To date, this has not been done. If the US does not confirm that a privilege log will be produced. TDM will seek court intervention.

Prior to turning to the specific requests, it is often the case that there are several additional deficiencies that are not mentioned in any of the specific responses discussed below, but, nevertheless, apply. This omission is not intended as a waiver as the discussion below is intended as a general guide to efficiently resolve the discovery deficiencies.

**<u>Response to Request No. 1</u>**

The US refuses to produce publicly available documents. However, the sole fact that documents are publicly available is not a sufficient basis to refuse their production. The responsive documents must be produced.

**<u>Response to Request Nos. 2, 3, 4 and 5</u>**

The US refuses to produce documents separated by patent and fails to clarify which documents already have been produced, if any, and which documents will be produced. As stated in the first part of this letter, the US is obligated to identify the documents responsive to each document request. Further, TDM's requests to produce documents separately for each of the patents-in-suit is not seeking a specific manner of production. Rather, TDM merely provided

a single document request to cover each of the patents to streamline the number of requests for the US. Because the US is obligated to identify the responsive documents, there is no resultant burden to the US in identifying the documents by patent number.

Further, the US is obligated to advise and identify those documents that have been produced and are responsive to each of these requests and to apprise TDM when additional documents, that have not yet been produced, will be produced. TDM does not believe that any documents responsive to these requests have been produced. Please identify all responsive documents and supplement the US' production.

**Response to Request No. 6**

With respect to the availability of documents to the public, please see the discussion in response to request no. 1. In addition, no documents have been identified that are responsive to this request. TDM requests that the responsive documents be designated.

**Response to Request No. 7**

Please identify which documents the US is relying upon.

**Response to Request No. 8**

The US objected to this request on the grounds of privilege, and in doing so, subsumed too much in that privilege. Although actual opinions, studies and work product done by counsel and in defense of this litigation may be privileged, other studies in possession of the US must be provided. Moreover, prior art must be provided as it is not privileged in its own right as are any opinions on which the US will rely upon and use at trial. As shown above, to date, no prior art has been provided, including the prior art referenced in response to interrogatory no. 7.

**Response to Request No. 9**

The response argues that this request does not make sense. It does. It seeks documents that explain the relationship between US Army Corps of Engineers with other bodies of the US. Specifically, the US itself admits in its response to request no. 16, that there are at least twenty-eight organizations that conduct dredging activities of some form or another. Accordingly, plaintiff has the right to seek documents that indicate, show or otherwise explain the relationship of the US Army Corps of Engineers with respect to those other agencies or organizations of the US with respect to dredging activities.

Likewise, the plaintiff seeks to understand the organizational operation, including management and the working and economic relationship between the US and the US Army Corps of Engineers, which would include other agencies. This looks to management of projects, decision making, funding, the role of the US, the US Army Corps of Engineers, other US

agencies and individuals within various agencies and departments of the US with respect to dredging activities.

Now that this request has been clarified, TDM expects an appropriate response accompanied with responsive documents.

**Response to Request Nos. 10 and 11**

Objections have been made based upon privilege and because these requests are allegedly premature. However, the US already answered the complaint denying the allegations of patent infringement which means that it must have undertaken, at least, an initial claim construction and a comparison of the accused processes to the claims of the patents in suit as construed by the US. Thus, documents supporting that claim construction and documents showing the dredging processes must be must be produced.

Similarly, if responsive documents exist that are related to reasonable royalty, they also must be produced now as reasonable royalty is an issue in this litigation which has not been bifurcated into liability and damages phases . Pointedly, the US' request to bifurcate the damages portion of the trial was not granted by the Court. As a result, this request for documents relating to reasonable royalty is not premature and the US' contrary position is a ploy to, *de facto*, bifurcate the trial.

**Response to Request Nos. 12 and 13**

The US avoids producing documents by interposing loose allegations of broadness and business sensitivity, imposing its own time constrains and definitions, and alleging that it is not in possession or control of responsive documents. Plaintiff has a right to discover all documents that may reasonably lead to the discovery of admissible evidence. In its response, the US, on its own, decides the earliest date for a damages recovery, even though that date is contested, Any conclusions regarding the date the US had notice of the patents is to be decided by the Court and not by the US. Limiting the time period in which the plaintiff may recover to 2000, unreasonably limits the discovery of documents that may reasonably lead to the discovery of other admissible evidence. Clearly, documents may show earlier knowledge by the US of the patents in suit and documents from 1997 to 2000 may reasonably lead to the discovery of admissible evidence. Moreover, after asserting that the government will "only produce" certain documents, none have been produced. Similarly, the US' narrow and self-imposed definition of dredging activities is inappropriate.

The objection that the government may withhold material likely to contain proprietary and sensitive business information is inappropriate for several reasons. First, material "likely to contain proprietary and sensitive business information" is never a valid objection and is not a basis to withhold information. Second, if the material, in fact, contains proprietary and sensitive business information, the information should still be produced because the parties have agreed

that proprietary and sensitive business information, among other confidential information, will be produced on an "attorney's eyes only" basis and then, pursuant to the protective order, when entered. Plaintiff is waiting for the US' comments on the protective order which will then be executed and submitted to the Court to be "So Ordered."

The US is required to produce all documents in its possession or control. These include data specification sheets, specifications, process sheets, data relating to processes used by its contractors and other documents requested herein where such documents are within the US' possession, custody or control, or should be within its possession, custody or control.

To date, the US has not identified any responsive documents. TDM requests that it immediately do so.

**Response to Request No. 14**

The US' response improperly limits the time and definition of dredging activity. The definition provided clearly covers matter which is reasonably likely to lead to the discovery of admissible evidence. See the discussion regarding responses to request nos. 12 and 13. Further, the US has not identified which documents are responsive to this request and whether additional ones will be forthcoming.

**Response to Request No. 15**

See responses to requests nos. 12-14 above.

**Response to Request No. 16**

The US has limited its responses to USACE and further limits its responses only to particularized activities. Once again, requests that are likely to lead to the discovery of admissible evidence is wholly proper. Also, after inappropriately limiting its responses, the US produces no responsive documents. Further, see the discussion with respect to the response to request no. 9 above.

**Response to Request No. 17**

After inappropriately limiting its responses, no responsive documents have been produced or identified. Further, see the discussions with respect to responses to requests nos. 9 and 16 above.

**Response to Request No. 18**

See responses to request nos. 12-17 above.

**Response to Request No. 19**

The factual basis for the US asserting that parties are interested clearly relates to specific contracts and are discoverable as the contracts themselves are not mental impressions.

**Response to Request No. 20**

The US avoids responding to this request by alleging that third parties have these documents or that a portion of these documents were or will be produced. TDM first requests confirmation from the US that all responsive documents in its possession or control will be produced. Then, TDM requests that the US identify all responsive documents that have already bee produced and advise TDM when it can expect the remaining documents.

**Response to Request Nos. 21 and 24**

To state that all documents responsive to a request for "documents and things that refute or tend to refute the analysis", on the basis of attorney work product or attorney-client communications, is misguided. It may be that there is a written opinion or correspondence between attorneys and clients evaluating the infringement. That is not what is sought. Rather, TDM seeks the underlying documents that refute or tend to refute the analysis and provide the factual basis for such denial. These documents are not privileged and must be produced.

**Responses to Request Nos. 22 and 23**

The response to request nos. 22 and 23 refers to prior responses and until such time that documents responsive to the prior responses have been produced, this request must be responded to.

**Response to Request to Request No. 25**

To the extent that the US interprets this request to refer to irrelevant evidence, which it does not, the US is required to produce all documents responsive to the non-objectionable portion of this request. The US has not done so. Again, the time limitation since 2000 is unilaterally imposed by the US and prevents plaintiff from obtaining information reasonably likely to lead to the discovery of admissible evidence. As in many other responses, after the objections, no documents have been produced.

**Response to Request No. 26**

This request seeks documents which will provide the factual basis for the US' position at trial. To the extent these documents have been identified, they must be produced.

**Response to Request No. 27**

This request seeks documents that comprise and/or refer to the earliest date that the US became aware of the patents in suit. It is hard to imagine documents more likely to lead to the discovery of admissible evidence. Plaintiff is entitled to all documents that show when the US became aware of the patents in suit.

**Response to Request No. 28**

The response refers to previously produced documents. Yet, the documents have not been produced or identified.

**Response to Request No. 30**

The privileges asserted simply do not exist as the letter itself provides the opinion of counsel and vitiates any privilege that may have existed prior to its production. Documents relied upon for that opinion must be produced.

Please provide adequate responses and documents within seven (7) days.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh

**Exhibit 11**

**U.S. Department of Justice**

Civil Division

EAF
154-06-472

Telephone: (202) 353-0517
Facsimile: (202) 307-0345

*Washington, D.C. 20530*

January 16, 2007

**VIA E-MAIL & FIRST CLASS MAIL**

David W. Denenberg, Esq.
Michael A. Adler, Esq.
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158

Re: *TDM v. UNITED STATES,*
Court of Federal Claims No. 06-472

Dear Counsel:

This letter is to memorialize our discussions during our telephone conference on Friday, January 12, 2007. That conference was scheduled to address concerns relating to the United States' responses to interrogatories, as set forth in your letter dated December 27, 2007, and the United States' responses to document requests, as set forth in your letter dated January 5, 2007.

During the conference, you agreed that discovery in this case should be limited to dredging activity that involves treatment/processing of dredged material. Also during this teleconference, I clarified that the United States did not refuse to produce non-privileged documents relating to the contracts listed in Attachment A of the Defendant's Responses to Plaintiff's First Set of Interrogatories (Nos. 1-14). The United States is working to provide or otherwise make available for inspection, such documents, with the exception of documents relating to unsuccessful bidders. You stated some concern that the list in Attachment A was incomplete. You specifically questioned dredging activity in Seattle and Los Angeles. I agreed to share your concern with our client agency. We additionally discussed providing declaratory or testimonial confirmation that the contracts listed in Attachment A represent all relevant USACE dredging contracts that involve processing dredged material.

I also agreed to provide copies of the publicly available documents listed at numbers 7-11 in category B of the United States' Initial Disclosures and the two additional documents listed in response to Interrogatory No. 7.

We discussed the depositions noticed for the end of the month and early February. I explained that Mr. Thomas Shea is serving in Iraq and provided the name of a witness that will likely be able to address the topic of information for which Mr. Shea was listed in the United States' Initial Disclosures. I also provided dates that the named deponents are available for deposition. You indicated that you would inform me this week whether you intend to go forward with the noticed 30(b)(1) depositions prior to the Status Conference scheduled for February 13, 2007. You agreed to postpone the 30(b)(6) depositions until after the Status Conference to allow time to gather and review documents relevant the depositions.

In discussing document production, deposition notices and the addition of Donjon Marine Company, Inc. as a third party, we discussed my interest in revising the scheduling order. You stated that you were amenable to this request and suggested the possibility of submitting a joint request for revision of the order prior to the upcoming Status Conference. We may find it efficient to discuss proposed revisions with counsel for Donjon, as they have a JPSR and proposed schedule due one day prior to our scheduled Status Conference.

You mentioned that you will amend your complaint to include one or two additional patents that should not extend the scope of discovery beyond dredging contracts that involve processing dredged material. Your plan is to forward a draft amended complaint for my review and comment as to whether I will oppose the filing. You also indicated that you will be filing a second motion to substitute counsel that will name Mr. David Denenberg as counsel of record. I stated that I would not oppose this motion to substitute counsel.

We also discussed the draft protective order that I forwarded to you and that you have returned with your edits. I have reviewed your edits and have will forward my concerns relating to a few of your edits today. The revised draft should be ready to circulate to counsel for Donjon this week.

I agree with your assertion during the call that the key to productive discovery in this case will require on-going communication between counsel for the parties. Please keep in mind that if you are not able to reach my by telephone, I am readily available via e-mail.

Very truly yours,

Erica A. Franklin

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Civil Division

**Exhibit 12**

DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: 646-428-3210
E-MAIL: dwd@dmlegal.com

January 17, 2007

**BY EMAIL AND FIRST CLASS MAIL**

Erica A. Franklin, Esq.
US Department of Justice`
Civil Division
1100 L Street, NW - Suite 1100
Washington, DC 20001

**Re: TDM America, LLC v. United States of America**
**Civil Action No. 06-472C (Judge Thomas C. Wheeler)**
**Our Ref: 7683.001**

Dear Erica:

This letter responds to your January 16, 2007 letter and confirms our January 12, 2007 telephonic conference.

On Friday, January 12, 2007, we had a telephone conference to resolve the discovery deficiencies outlined in this office's letters dated December 27, 2006 (with respect to interrogatories) and January 5, 2007 (with respect to document requests).

**A. Documents**

In resolution of the dispute, it was agreed:

1. The discovery being sought by plaintiff relates to those dredging contracts or activities which involve the treatment/processing/stabilization/ remediation (collectively "treatment") of the dredged material. The discovery would include all activities with respect to those contracts including details of the dredging procedure, treatment and disposal/reuse thereof, including dredging, dewatering, treatment, processing, interim storage, rehandling and upland disposal of the dredged material, and the amounts (i.e., cubic yardage) thereof.

2. As an example, this office noted, using Bates stamp numbers G012760-G012764, that each contract has a section for "Special Contract Requirements" wherein the contractor must identify off-loading, processing and disposal site compliance. The contractor is required to submit documentation of the off-loading, processing and disposal site construction activity schedule, project construction schedule, a synopsis of the proposed operation which has a detailed description of the dredging and treatment process which includes identification of processing, transportation and operating procedures and a requirement that supplemental information be submitted within seventy (70) days. The supplemental information specifically includes a detailed description of the proposed processing technology including dewatering . . ., material treatment, specifying the method of treatment, additives used during the processing, the mechanical processing used, decontamination and stabilization methods incorporated, chemical treatment, interim storage . . ., the method of storage required and rehandling of material used in the processing of dredged material. The supplemental information further includes permits and licenses, plant availability and quality control/quality assurance documentation. You confirmed that defendant will provide this documentation and that you were already working to gather that information.

3. This office noted that plaintiff's requests seek details regarding the amount of material treated for each contract. Moreover, each contract would have documentation showing the total amount of dredged material, amount of dredged material treated, amount of additives required, and amount of treated dredged material beneficially reused or disposed upland. It is this cubic yardage, and related costs and prices, that is particularly pertinent. Therefore, documentation showing the amounts, prices, etc. are critical. Again, you stated that these documents are being produced by defendant and that you were already working to gather that information.

4. With respect to attachment A to the defendant's responses to TDM's first set of interrogatories, it is our information and belief that the list is incomplete. As an example, I noted plaintiff's belief that there are more contracts for relevant dredging activities in the Seattle, Los Angeles, the Gulf of Mexico and the Port of New York and New Jersey. This was further confirmed in your letter emailed to our offices on this date. As I stated, plaintiff seeks identification of all contracts for dredging activities which included the treatment of dredged material. You stated that you would look into this further. It was requested that this search be for all regions, not just Seattle and Los Angeles. At your suggestion, it was agreed that declarations from each region be provided as to the fact that the contracts listed in attachment A represent all relevant dredging contracts involving treatment of dredging material.

5. As to documents listed, referenced or relied upon in defendant's responses, including prior art documents, plaintiff noted that these documents must be produced rather than simply state that they are public documents. You stated that these documents, notably the prior art documents, would be produced. The documents were listed in the initial disclosures and in response to interrogatory no. 7.

6. Plaintiff seeks documents showing costs for the treatment and disposal of dredged materials. You stated that you were working to produce such documents. These documents would show, for any dredging contract, what portion of the dredged material was subject to treatment and what amounts were disposed upland or beneficially reused.

Your January 16, 2007 letter does not provide a date as to when these documents will be produced. In our discussions, a two (2) week time period was discussed which would be January 26, 2007. For plaintiff, this timing is important to allow for preparation for depositions.

**B. <u>Depositions</u>**

1. At this time, this office intends to take 30(b)(1) depositions on February 6, 2007. That date is based upon your representation that two (2) witnesses would be available on that date.

2. At your request, this office agreed to adjourn the 30(b)(6) depositions until after the February 13, 2007 status conference. I note that the following issues were discussed regarding depositions to which we await your response:

    a. How many 30(b)(6) witnesses would be necessary given the topics?

    b. As this office assessed, the topics could be broken into a few distinct areas:

        i. Overall dredging management plan, and the contract writing, bidding, letting and award process;

        ii. Details of the process for dredging activities involving treatment of dredged materials including details of the treatment, additives, decontamination, stabilization, remediation, transportation, disposal and beneficial reuse;

        iii. Quantity of the dredging activities in terms of cubic yardage, dollar amounts, and those amounts dredged, treated and/or disposed upland or beneficially reused; and

iv. Legal issues including notice, opinions, liability.

3. You were to advise whether the 30(b)(6) witness or witnesses would be able to get into sufficient detail on these topics so that it may not be necessary to take the 30(b)(1) witnesses. At this time, until we discuss this issue, it is our intention to take the 30(b)(1) witnesses because, based upon defendant's initial disclosures and our telephone conversation, the witnesses identified have knowledge of the dredging activity management plan, the treatment and amounts of dredged materials with respect to, at least, the contracts for the Port Authority of New York and New Jersey, and the contracting process itself.

**C. Timing/JPSR**

You stated that you would seek time extensions in the JPSR at the status conference scheduled for February 13, 2007. This office understood your reasons for seeking extensions, but requested that you call us when you have more detail to review proposed changes you may have to the JPSR. In this way, plaintiff and defendant may agree on proposed amendment of the JPSR. It was agreed that it makes sense for Donjon's counsel to participate in those discussions. It may also make sense to call the court even before February 13, 2007 for a status conference. The court did not seem set on that particular date, although the date was set down as what appeared to be more of a control date at our request. I am confident that the court would entertain earlier discussions which would advise the court of requested amendment to the JPSR and the complaint sooner rather than later.

I agree with your statement that ongoing communications between counsel and parties should prevent further disputes. As such, please keep us advised as to when the documents discussed above will be produced and your thoughts with respect to the depositions and deponents.

By the end of this week, we will forward a draft amended complaint to you and seek your consent for plaintiff to move to amend the complaint. Likewise, as it is your stated intention to seek amendment to the JPSR, please call us with your suggested changes so that we can review your suggestions in the context of the entire JPSR.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh
00350554

**Exhibit 13**

**U.S. Department of Justice**

Civil Division

EAF
154-06-472

Telephone: (202) 353-0517
Facsimile: (202) 307-0345

*Washington, D.C. 20530*

January 30, 2007

**VIA E-MAIL & U.S. MAIL**

David W. Denenberg, Esq.
Michael A. Adler, Esq.
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158

Gary J. Campbell, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, Massachusetts 02110

RECEIVED
FEB -2 2007

Re: *TDM v. UNITED STATES,*
Court of Federal Claims No. 06-472

Dear Counsel:

During our conference call on January 25, 2007, plaintiff's counsel indicated that they would like to delay the three noticed 30(b)(1) depositions of Mr. Bryce Wisemiller, Ms. Ella Snell, and Mr. Thomas Shea until the last week of February. I have learned that Mr. Wisemiller is available for deposition on February 7, 2007, and Ms. Ella Snell is available for deposition on February 8, 2007. As indicated previously, Mr. Thomas Shea is serving in Iraq pursuant to an order dated May 1, 2006, from the Department of the Army. Also as indicated previously, Mr. Harold Hawkins is knowledgeable regarding the topic of information for which Mr. Thomas Shea was listed in the United States Initial Disclosures. Mr. Hawkins is available for deposition on February 9, 2007. Please let me know whether these dates will work for you so that I may request the witnesses to reserve their respective dates for deposition.

During this call, I mentioned again that the United States will be making available for your inspection documents relating to contracts from the New York District of the United States Army Corps of Engineers ("USACE") involving processing of dredged materials. These documents are maintained in two locations: (1) Caven Point Marine Terminal, 3 Chapel Avenue, Jersey City, and (2) Jacob K. Javits Federal Building, 26 Federal Plaza, New York City.

The documents at Caven Point will be available for your inspection on February 6-9, 2007. This document collection is contained in approximately 22 file cabinet drawers. During your inspection, you will be permitted to indicate which document pages you would like to have copied. The government will then make arrangements for the selected pages to be copied, assigned production numbers, and produced to you in a timely fashion. The fee for this copying service will be provided shortly. Inspection of these documents requires advance arrangement, so please inform me by the end of this week the date(s) on which you would like to inspect documents at Caven Point.

The documents at the Federal Building are being reviewed and prepared for your inspection. They should be available for your inspection during mid-February. We will confirm the date that these documents are available as soon as it is known. The documents collection at the Federal Building is contained in approximately 70 boxes. Inspection of these documents will occur in the same manner and at the same cost as those located at Caven Point.

As discussed during the conference call, I am in receipt of supplemental contract documents from the Detroit, Jacksonville and Los Angeles Districts of the USACE. These documents are being processed with production numbers and will be produced to you after they have been reviewed for privileged material. I anticipate that this production will be complete prior to February 28, 2007.

It is important that we finalize the circulated draft protective order as soon as practicable. During the collection and preparation of the above-mentioned materials, it is apparent that a number of the documents contain proprietary information that must be afforded clear protection.

Very truly yours,

Erica A. Franklin

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Civil Division