DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

February 13, 2007

**BY EMAIL AND FEDERAL EXPRESS**

Erica A. Franklin, Esq.
US Department of Justice
Civil Division
1100 L Street, NW - Suite 1100
Washington, DC 20001

Re: **TDM America, LLC v. United States of America**
**Civil Action No. 06-472C (Judge Thomas C. Wheeler)**
**Our Ref: 7683.001**

Dear Ms. Franklin:

This letter confirms our February 6-7, 2007 agreement and resolution of discovery disputes pertaining to the proposed protective order, the timing and manner of document production and inspections, verifications to interrogatory responses and completeness of discovery responses.

## I. February 6, 2007 Rulings

On Tuesday, February 6, 2007, Hon. Judge Thomas C. Wheeler heard argument on a discovery dispute that arose in connection with an imminent document inspection of defendant US' documents being produced at Caven Point, New Jersey and at 26 Federal Plaza, New York. The US took the position that TDM's officers should not be present at the document inspections even if the officers signed an undertaking, pursuant to a protective order for confidential information. The US also wanted the protective order to be two-tiered (i.e. privileged and attorneys' eyes only) and to provide for more in-house personnel (favoring the US) to see proprietary documents if the personnel are attorneys rather than officers. TDM sought judicial intervention.

Judge Wheeler ruled that (i) plaintiff's officers should be allowed to join in the inspections provided the officers sign an appropriate undertaking, pursuant to a standard protective order, (ii) a protective order should be entered that includes an undertaking for in-house people to protect proprietary information; (iii) the number of in-house personnel having

access to proprietary documents pursuant to the protective order should be equal for all parties, regardless of whether the personnel are officers or attorneys (i.e. the issue is one of resources); and (iv) the protective order should only provide a single tier for designating proprietary documents.

## II. Protective Order and Discovery Dispute Resolution

Subsequent to the hearing, you advised this office that defendant would be filing a motion for reconsideration of Judge Wheeler's rulings. In an effort to resolve this dispute and not burden the court with unnecessary motions, I suggested that a compromise be reached which allows officers to see proprietary documents, the number of in-house personnel who could see documents be equal on all sides, provides a two-tiered proprietary designation and avoids the inspection issue by having the US produce its documents. The US and TDM agreed:

1. A protective order will be entered that provides for a maximum of four (4) in-house officers or attorneys to be able to see proprietary documents provided that each person execute an appropriate undertaking.

2. The protective order will have two-tiers for designating confidential information. The first tier allows in-house officers and attorneys to be able to see privileged or confidential documents, and the second tier would limit such access to outside attorneys only. On behalf of the US, you confirmed that the number of documents designated under the second tier ("outside attorneys eyes only") would be very limited.

3. To limit the need for on-site inspections of documents by TDM's outside counsel together with TDM's officers, the US agreed to produce documents to this office contingent upon this office's providing a letter with a detailed and comprehensive list of the documents that TDM seeks.

4. The US will verify its interrogatory responses and minimize the number of people verifying those responses to one, if possible, but in any event no more than three individuals.

5. The US will name its deponents for the Rule 30(b)(6) depositions noticed by TDM.

6. The US will circulate a revised protective order reflecting the above agreements.

7. This office will circulate a letter containing a detailed and comprehensive list of the documents it seeks production of.

## III. TDM's Document Requests

TDM represents that it has used its best efforts in compiling the below list of documents identifying all categories of documents it seeks. While it is not intended that additional broad categories of requests be made after the U.S. produces the documents responsive to this list, the US and TDM acknowledged that TDM will not be precluded from seeking additional documents that it may become aware of subsequent to this production (i.e. at a deposition). TDM's list, however, is thorough and comprehensive, but not preclusive.

### A. Narrow Scope of Summary Documents and Information Sought by TDM

TDM notes that the documents and information it seeks as set forth herein is intended to streamline the process for the convenience of the US and TDM. Specifically, TDM seeks:

1. Total amounts of dredged material that was treated (defined to include processing, stabilization, treating, remediating, etc.) and total amounts of dredged material that was disposed upland;

2. The detailed description of the treatment process;

3. The amount paid for dredged material treated and for its disposal; and

4. Information relevant to notice issues.

To expedite production, TDM requested responses to these questions in its interrogatory requests. TDM notes summary documents which provide this information should be provided and would render much other information unnecessary. Moreover, to the extent a contract with a particular contractor could, by agreement, represent the process for all treatment by that contractor, then only such contract and associated documents, need be produced.

### B. Documents TDM does not Seek

In accordance with TDM's best efforts to thoroughly identify the documents it seeks, it believes it prudent to first summarize the documents that TDM does not believe need to be produced. The preclusion of these documents should substantially reduce the US' burden in producing the requested documents. In this regard, TDM is not seeking:

1. Accident prevention and reporting documents;

2. Copies of contractor payrolls;

3. Documents related to blasting activities including the numerous binders that contain photos of houses in connection with blasting activities;

4. CDs of hatcheries;

5. Computer software manuals;

6. Hydrographic and fathometric surveys that do not have attachments of dredging volumes;

7. Pipeline removal contracts and manuals; and

8. Protest documents that do not contain substantive dredging process information (these account for virtually all of the protest documents).

## C. <u>Detailed and Comprehensive Document List Sought by TDM</u>

The specific categories and description of documents that TDM seeks are:

1. All documents required to be submitted under the "Special Contract Requirements" such as offloading, processing and disposal site construction activities schedule, project construction schedule, synopsis of proposed operations which contain a detailed description of the dredging and treatment processes including identification of processing, transportation and operating procedures. These documents are supplemental information to contracts which typically must be submitted within seventy (70) calendar days. For example, a reference is made to such documents in documents bearing Bates Stamp Nos. G011499-G011504; and G012760-G012764. For ease of reference, these documents are attached as hereto as Exhibits A and B and request that contractors provide a detailed description of the proposed processing technology including dewatering, material treatment specifying the method of treatment, additives used during the processing, the mechanical processing used, decontamination and stabilization methods incorporated, chemical treatment, interim storage, etc.

2. All beneficial use determination permits (BUDs), waterside development contracts, state water quality permits and/or certificates, processing and disposal permits/requirements for the sites identified by the contractor, dewatering permits, commercial zone permits, CZMs, and any documents submitted to the permit agencies for the issuance of these permits. By way of example, reference is made to the highlighted portions of documents produced by the US bearing Bates Stamp Nos. G011499-G011504 (Exhibit B) and G011581 (Exhibit C).

3. Summaries showing logging of dredging activities for each region and/or district within that region, that may include monthly summary reports of volumes and monthly progress reviews.

4. Publicly disclosed summary and research & development documents related to dredging activities. This includes content found in USACE websites for the years 1999 to the present and documents that contain summaries of dredging activities and/or projected dredging amounts. For example, reference is made to the documents attached as Exhibit D and already sent with my February 1, 2007 letter. This category also includes: (1) publicly available dredged sediment research and development reports that originated with USACE; (2) videos that show the processing of dredged materials carried out by any of USACE's contractors; (3) USACE publications and media that contain segments on the processing and upland disposal of dredged materials; and (4) other documents disseminated by USACE including interviews, that pertain to the processing and upland disposal of dredged materials.

5. Dredge materials processing documents. Reference is made to G012760-G012764.

6. Total volumes and costs incurred by region and by district for the dredging, treatment and upland disposal of dredged materials.

7. Photos of actual dredging activities. Reference is made to the highlighted portions of documents produced by the US bearing Bates Stamp Nos. G010149-G010154 which specifically call for digital photograph submissions. These documents are attached hereto as Exhibit E hereto.

8. Quality control plans and disposal plans. Reference is made to the highlighted portions of documents produced by the US bearing Bates Stamp Nos. G011608-G011611. These documents are attached hereto as Exhibit F. TDM seeks the documents and information that respond to those highlighted portions. TDM also seeks de-watering quality assurance plans. (Not to exclude de-watering documents that are relevant to the dredging processes.)

9. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents.

10. Letters and documents that mention patents, especially the ones that mention patent numbers.

11. USACE transportation logs and replacement documents, upland scow placement documents and summaries of debris removal.

12. Documents that describe the amount of cement to be added to dredged material during the processing thereof and documents that mention Portland Cement.

13. Cornerstone consulting documents.

Thank you for your attention to this matter. Please call with any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh
Enclosures

cc: Gary J. Campbell (w/enclosures)

**Exhibit A**

## SECTION 00800

## SPECIAL CONTRACT REQUIREMENTS

### 1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE)

The Contractor will be required to commence work under this contract within five (5) calendar days after the date of receipt by him of the notice to proceed, to prosecute said work diligently and to complete the entire work ready for use not later than **fifty (50) calendar days** after the of receipt by him of the notice to proceed. Should the total quantity of material exceed the limit established in the clause entitled "Variations in Estimated Quantities," additional time will be allowed at the rate of one (1) calendar day for each 4,000 cubic yards in excess of the established limit. The time stated for completion shall include final clean up. (EFARS 52.2/9110 (a))

The contractor is required to maintain a production rate of 4,000 cubic yards per calendar day.

The work is estimated to cost between $5,000,000.00 and $10,000,000.00.

The estimated volume to be dredged is 144,420 cubic yards, based on the March 2003 survey.

**The contractor will be solely responsible for coordinating, obtaining, and complying with all the offloading, transportation, dewatering, processing and disposal permits/requirements of the site(s) identified by the contractor. A New York State Water Quality Certificate and CZM concurrent will be obtained by the Government for the dredging aspect of the project.**

### 1A. CONTRACTOR IDENTIFIED OFFLOADING, PROCESSING AND DISPOSAL SITE COMPLIANCE

The Apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder, that the contractor identified offloading, processing and disposal site(s) is operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supplies/Services (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

The contractor identified offloading, processing and disposal site(s) must have sufficient

capacity to receive all the dredged material from the project site. The apparent low bidder is required to perform all work to demonstrate that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supply/Service (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material. Offloading, processing and disposal of the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible. Dredging, dewatering and/or other processing (if any), transfer, transportation and material disposal shall be performed in accordance with applicable laws and requirements of all associated permits, approvals and government authorities having jurisdiction.

**1A.1. Information Submitted by the Apparent Low Bidder**

**The Apparent Low Bidder shall be officially notified by the contracting officer and instructed to submit the following information for the site(s):**

The Apparent Low bidder must submit five (5) copies of:

a) Name of the contractor identified offloading, processing and disposal site(s).

b) Location (street address, city, state) of the contractor identified site(s)

c) Point of Contact for the contractor identified site and telephone number

d) Total capacity available at the contractor identified site(s) for offloading, processing and placement of Dredged Material for this contract.

e) Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate, process and/or dispose of dredged material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and others as related to transportation, processing and placement of the dredged material, or any other aspects of the bidder's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.

f) Copies of permits currently issued/approved at the time of submission.

g) Identification of Regulatory Agency required to issue/approve items listed in e) above.

h) Timeline for obtaining the required permits - Bar Chart for Obtaining Permits and Approvals - A bar chart indicating time(s) required for obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule

will detail the major steps (such as time to prepare the permit request, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc).

i) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (CY /day) and the output rates for their proposed integrated system of dredging, offloading, transportation, processing, and placement for each contractor identified site(s).

j) Offloading, processing and disposal Site Elements Information –

1) State the capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the disposal site(s), as well as the average daily production rate and workdays per week that the processing site will operate.

2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

k) Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment...etc). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be completed within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the contractor identified offloading, processing and disposal site(s) that are needed to be completed within 70 calendar days from date the Apparent low bidder is notified of being the low bidder so that the site(s) is operational, capable of processing and disposing of all the dredged material for the in-situ quantity identified in the price schedule.

**1A.1.a Synopsis of proposed operation**

Narrative of no more than seven (7) pages detailing the operation to move the dredged material from the dredging site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The information identified in paragraph 1A.1 shall be attached to the synopsis. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and/or disposal facility including site capacity.

2) Provide a detailed map indicating locations of offloading and loading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.

3) Provide hours of operation, transportation and operating procedures at offloading facilities.

4) Provide Facilities information: Access to offloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges, buckets, scows, tugs and other salient equipments to be used for the project.

6) Submit a detailed description of the loading and transportation procedures to be utilized.

**1A.2 Information to be submitted by the Apparent Low Bidder within 70 calendar days**

The Apparent Low Bidder shall submit five (5) copies of the following information within 70 **Calendar days** from the date the Apparent Low bidder is notified of being the low bidder.

a) Information submitted as directed by Contracting Officer notification - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence Demonstrating that the contractor identified offloading, processing and disposal site(s) is Permitted, Operational, Capable of Offloading, Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government **within 70 calendar days** from the date the Apparent low bidder is notified of being the low bidder that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material for the in-situ quantity as per the Price Schedule **by calendar day 70** from the date the Apparent low bidder is notified of being the low bidder and that the offloading, processing and/or disposal site(s) is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent Low Bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site

to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

c) Copies of Required Permits - The Apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government. Documentation of compliance with any other legal or regulatory requirement must be provided to the Government including Water Quality Certificates (WQC) in accordance with Section 401 of the Clean Water Act, Coastal Zone Management (CZM) consistency determinations, and State agreement pursuant to Section 307 of the Coastal Zone Management Act of 1972 as amended, for activities conducted in a state, which has a federally approved Coastal Zone Management program. WQC and CZM permits related to the dredging (as opposed to dredged material transport, disposal and placement) will be provided by the New York District U.S. Army Corps of Engineers **Section 00900-D.**

d) The Apparent Low Bidder must provide:

1) Proof of the contractor identified Offloading, Processing and/or Disposal Site(s) being licensed for acceptance of dredged material by all appropriate regulatory entities (permits for the site previously provided should be also included in this submission).

2) Proof of Offloading, Processing and Disposal Site(s) Owner's approval granting the apparent low bidder the right to offload, process and/or dispose dredged material at that site.

3) Proof of Disposal Site(s) uncommitted capacity adequate for the project.

4) Certification of the offloading, processing and/or disposal Site's availability corresponding to the current project schedule.

5) Proof of approval by the appropriate regulatory agencies that the dredged material for this contract is compatible for processing and/or disposal at the proposed processing and/or Disposal Site(s).

6) Demonstrate minimum required offloading, processing and disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each contractor identified disposal site(s).

7) Proof of apparent low bidder's experience in the proposed offloading, processing and disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

e) Transportation Capabilities - The Apparent Low Bidder must provide the following:

1) Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment has current permits, licenses, registrations, or other required certifications.

2) Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

f) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed processing technology, including but not limited to, the following stages, if applicable:

   a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

   b. Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

   c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the time frame it will be used, if applicable.

   d. Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent low bidder.

5) Certify processing plant's availability corresponding to the current project schedule.

6) Provide proof of Apparent Low Bidder's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

**SECTION 00800**

***SPECIAL CONTRACT REQUIREMENTS***

**1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE)**

The Contractor will be required to commence work under this contract within five (5) calendar days after the date of receipt by him of the notice to proceed, to prosecute said work diligently and to complete the **basic work** (approx.101,965 CY) ready for use not later than **forty-five (45) calendar days** after the date of receipt by him of the notice to proceed. There are fifteen (15) options (additional 196,100 CY) to the contract ranging from approximately 655 CY to 79,180 CY. The time for contract completion of each additional option will be determined by allowing a rate of one (1) calendar day for each 3,500 cubic yards removed. Options will range from one (1) calendar day to twenty-three (23) calendar days, if exercised.

The Government has 30 days from the date of the receipt by the Contractor of the Notice to Proceed (Basic Work) to exercise the Options (A1, B1, D, E, F, F1, G, G1, H, I, J, K, L, M and N), if they are exercised at all. Even if exercised, the Options listed above may not be exercised in numerical order.

Should the total quantity of material exceed the limit established in the clause entitled "Variations in Estimated Quantities," additional time will be allowed at the rate of one (1) calendar day for each 3,500 cubic yards in excess of the established limit. The time stated for completion shall include final clean up. (EFARS 52.2/9110 (a))

The contractor is required to maintain a production rate of 3,500 cubic yards per calendar day.

The work is estimated to cost between $6,000,000.00 and $16,000,000.00.

The estimated volume to be dredged is 298,065 cubic yards (basic 101,965 CY plus 196,100 CY for options), based on the January/February 2005 survey.

**The contractor will be solely responsible for coordinating, obtaining, and complying with all the offloading, transportation, dewatering, processing and disposal permits/requirements of the site(s) identified by the contractor. The Water Quality Certificate(s) and CZM concurrent(s) will be obtained by the Government for the dredging aspect of the project.**

**1A. CONTRACTOR IDENTIFIED OFFLOADING, PROCESSING AND DISPOSAL SITE COMPLIANCE**

The Apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder; that the contractor identified offloading, processing and disposal site(s) is operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supplies/Services (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

The contractor identified offloading, processing and disposal site(s) must have sufficient capacity to receive all the dredged material from the project site. The apparent low bidder is required to perform all work to demonstrate that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supply/Service (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as

appropriate for the disposal of dredged material. Offloading, processing and disposal of the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible. Dredging, dewatering and/or other processing (if any), transfer, transportation and material disposal shall be performed in accordance with applicable laws and requirements of all associated permits, approvals and government authorities having jurisdiction.

**1A.1. Information Submitted by the Apparent Low Bidder**

**The Apparent Low Bidder shall be officially notified by the contracting officer and instructed to submit the following information, within 5 Calendar days from the date the Apparent Low Bidder is notified of being the low bidder, for the site(s):**

The Apparent Low bidder must submit five (5) copies of

a) Name of the contractor identified offloading, processing and disposal site(s).

b) Location (street address, city, state) of the contractor identified site(s)

c) Point of Contact for the contractor identified site and telephone number

d) Total capacity available at the contractor identified site(s) for offloading, processing and placement of Dredged Material for this contract.

e) Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate, process and/or dispose of dredged material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and others as related to transportation, processing and placement of the dredged material, or any other aspects of the bidder's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.

f) Copies of permits currently issued/approved at the time of submission.

g) Identification of Regulatory Agency required to issue/approve items listed in e) above.

h) Timeline for obtaining the required permits - Bar Chart for Obtaining Permits and Approvals - A bar chart indicating time(s) required for obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule will detail the major steps (such as time to prepare the permit request, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc).

i) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (CY /day) and the output rates for their proposed integrated system of dredging, offloading, transportation, processing, and placement for each contractor identified site(s).

j) Offloading, processing and disposal Site Elements Information –

1) State the capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the disposal site(s), as well as the average daily production rate and workdays per week that the processing site will operate.

2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

k) Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment...etc). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be completed within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the contractor identified offloading, processing and disposal site(s) that are needed to be completed within 70 calendar days from date the Apparent low bidder is notified of being the low bidder so that the site(s) is operational, capable of processing and disposing of all the dredged material for the in-situ quantity identified in the price schedule.

**1A.1.a Synopsis of proposed operation**

Narrative of no more than seven (7) pages detailing the operation to move the dredged material from the dredging site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The information identified in paragraph 1A.1 shall be attached to the synopsis. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and/or disposal facility including site capacity.

2) Provide a detailed map indicating locations of offloading and loading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.

3) Provide hours of operation, transportation and operating procedures at offloading facilities.

4) Provide Facilities information: Access to offloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges, buckets, scows, tugs and other salient equipments to be used for the project.

6) Submit a detailed description of the loading and transportation procedures to be utilized.

**1A.2 Information to be submitted by the Apparent Low Bidder within 70 calendar days**

The Apparent Low Bidder shall submit five (5) copies of the following information within **70 Calendar days** from the date the Apparent Low bidder is notified of being the low bidder.

a) Information submitted as directed by Contracting Officer notification - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence Demonstrating that the contractor identified offloading, processing and disposal site(s) is Permitted, Operational, Capable of Offloading, Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government **within 70 calendar days** from the date the Apparent low bidder is notified of being the low bidder that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material for the in-situ quantity as per

the Price Schedule by calendar day 70 from the date the Apparent low bidder is notified of being the low bidder and that the offloading, processing and/or disposal site(s) is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent Low Bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

c) Copies of Required Permits - The Apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government. Documentation of compliance with any other legal or regulatory requirement must be provided to the Government including Water Quality Certificates (WQC) in accordance with Section 401 of the Clean Water Act, Coastal Zone Management (CZM) consistency determinations, and State agreement pursuant to Section 307 of the Coastal Zone Management Act of 1972 as amended, for activities conducted in a state, which has a federally approved Coastal Zone Management program. WQC and CZM permits related to the dredging (as opposed to dredged material transport, disposal and placement) will be provided by the New York District U.S. Army Corps of Engineers in Section **00900-D.**

d) The Apparent Low Bidder must provide:

1) Proof of the contractor identified Offloading, Processing and/or Disposal Site(s) being licensed for acceptance of dredged material by all appropriate regulatory entities (permits for the site previously provided should be also included in this submission).

2) Proof of Offloading, Processing and Disposal Site(s) Owner's approval granting the apparent low bidder the right to offload, process and/or dispose dredged material at that site.

3) Proof of Disposal Site(s) uncommitted capacity adequate for the project.

4) Certification of the offloading, processing and/or disposal Site's availability corresponding to the current project schedule.

5) Proof of approval by the appropriate regulatory agencies that the dredged material for this contract is compatible for processing and/or disposal at the proposed processing and/or Disposal Site(s).

6) Demonstrate minimum required offloading, processing and disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each contractor identified disposal site(s).

7) Proof of apparent low bidder's experience in the proposed offloading, processing and disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

e) Transportation Capabilities - The Apparent Low Bidder must provide the following:

1) Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment has current permits, licenses, registrations, or other required certifications.

2) Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

f) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed processing technology, including but not limited to, the following stages, if applicable:

   a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

   b. Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

   c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the time frame it will be used, if applicable.

   d. Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent low bidder.

5) Certify processing plant's availability corresponding to the current project schedule.

6) Provide proof of Apparent Low Bidder's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

## 2. PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization and equipment, work equivalent to at least forty (40) percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performance of the work, the Contractor requests a reduction and the Contracting Officer and/or his Representative determines that the reduction would be to the advantage of the Government. (FAR 52.236-01)

## 3. SUBMITTAL OF WORK TO BE PERFORMED BY THE CONTRACTOR

The Contractor shall furnish the Contracting Officer and/or his Representative, within ten (10) days after award, items of work he will perform with his own forces and the estimated cost of those items. The percentage of work that must be performed by the Contractor is stated in paragraph 2, entitled: "PERFORMANCE OF WORK BY THE CONTRACTOR."

**Exhibit C**

Representative. The measure of the "capacity of the plant" shall be its actual performance on the work to which these specifications apply.

All hopper exits shall be kept in good condition to prevent leakage of material.

All scows must be kept in good condition, the coamings repaired and the pockets provided with proper doors or appliances to prevent leakage of material.

All pipelines for hydraulic dredging plant must be kept in good condition at all times and any leaks or breaks along their length shall be promptly repaired.

## 8. PLACEMENT OF DREDGED MATERIAL

a. **General:** The material dredged from the dredging site shall be disposed of at an approved/permitted contractor furnished placement site. After the bid opening and **within seventy (70) calendar days** from the date the Apparent low bidder is notified of being the low bidder, the Apparent Low Bidder must provide proof of approval including permits by the appropriate regulatory agencies of the dredged material for this contract for compatibility with the proposed Disposal Site, with their concurrence for material offloading, transportation, dewatering, processing and placement there. Any sampling and testing required for obtaining permits required for dredged material placement shall also be provided. The procedure used to obtain samples shall be detailed. These test results will be used by the Government as part of the request for a Water Quality Certificate for the dredging.

b. The prime contractor is solely responsible for all financial, technical, and logistical coordination, which would allow dredged material to be offloaded, transported, dewatered, processed and placed at the disposal site.

c. All floatable material excavated shall be disposed of at an existing approved upland disposal area. Should the Contractor encounter floatable material, a copy of a letter granting the permission of appropriate authorities to use an existing approved upland disposal area shall be submitted to the Contracting Officer and/or his representative.

d. Any material that is deposited in areas, which were not intended to be used as disposal areas in this contract, will not be paid for and may be required to be removed and deposited at a location designated by the Contracting Officer or his representative at no additional expense to the Government.

e. Placement of dredged material shall be subject to the following conditions:

1) The material placed shall be free of debris.

2) The Contractor shall be solely responsible for any damage caused by him to buildings, pavement, curbs, signs, lawns, bulkheads, beach grass, or any other property adjacent to the disposal areas, and shall be required to repair at his own expense any such damage caused during the performance of work under this

contract. Prior to the commencement of operations and after completion thereof, a joint inspection by representatives of the contractor, the Contracting Officer and local interests pertaining to the above will be made.

3) The area where filling operations are in progress shall be floodlighted during the hours of darkness. Illumination shall be provided by using portable light equipment such as model No.LDA I6 MTVE manufactured by ALLMAND BROS. INC. of HOLDREIRE, or approved equal. A minimum of 3-foot candles of illumination shall be maintained in the immediate vicinity of the pipe discharge.

4) The contractor must comply with any special requirements set forth by the identified disposal site.

f. **Quality Control:** The Contractor shall establish and maintain quality control for material dredging and placement at the contractor furnished upland disposal site to assure compliance with contract requirements, and maintain records of his quality control for all construction operations, including but not limited to the following:

1) Dredging, including suitability of dredged material.

2) Dredged material processing, as necessary.

3) Offloading, transportation and dewatering of the dredged material,

4) Placement of dredged material, including continuity and order of placement; distribution of material in disposal site area.

5) Any debris encountered during all stages of this project shall be removed and disposed of as directed.

g. The placement operation is to be carried out in conformity with the requirements of all associated permits and approvals by government authorities having jurisdiction over the approved upland disposal site.

h. The Contractor will have a "**NOTICE TO MARINERS**" published by the Coast Guard prior to start of work.

i. Every vessel engaged in the transportation of dredged material of any description shall have its name or number and owner's name printed in letters and numbers, at least fourteen (14) inches high, distinctly legible at all times, and no scow or boat, not so marked, shall be used to transport or place any such material.

j. **Disposal Plan:** The Contractor shall submit for approval his disposal plan at the Preconstruction Conference (Section 00800 - Special Contract Requirements). The disposal plan shall include all special conditions (i.e., CZM and WQC, etc. from the host state) specific to the disposal site being used, contractor access to the site, locations and cross-section of existing and proposed dikes, maximum elevations and quantities of