Exhibit 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TDM AMERICA, LLC,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant,

and

DONJON MARINE COMPANY, INC.,

Third-Party Defendant.

No. 06-472 C

Judge Thomas C. Wheeler

**DEFENDANT UNITED STATES' SECOND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14)**

Pursuant to Rules 26(e) and 33 of the Rules of the Court of Federal Claims ("RCFC"), defendant United States ("the Government') hereby amends its responses plaintiff TDM America, LLC's ("TDM") First Set of Interrogatories (Nos. 1-14), served on the United States on November 6, 2006. This amendment supplements responses to interrogatory numbers 2-5 and 7-14 with newly available information and/or additional objections. The Government reserves the right to amend and supplement these responses as it learns of new information relevant hereto, through discovery or otherwise.

GENERAL OBJECTIONS

Each response set forth below is subject to the general objections set forth in this section. Where a specific interrogatory is objectionable on one or more grounds, the Government may

explicitly state or restate an objection in its response to the interrogatory. Such specific objections are not intended to waive any of the following general objections, which apply to each interrogatory.

The Government hereby makes the following General Objections to TDM's interrogatories:

1. The Government objects to TDM's interrogatories to the extent that the information information requested is protected by the following privileges, exemptions, and restrictions:

(a) the attorney-client privilege;

(b) the attorney work product doctrine;

(c) the community of interest privilege;

(d) the deliberative process privilege;

(e) the "FOR OFFICIAL USE ONLY" (FOUO) restriction;

(f) the Trade Secrets Act, 18 U.S.C. § 1905, or documents containing proprietary or other commercial information provided to the Government on a pledge of secrecy and confidentiality.

With respect to responses which contain information proprietary to the Government, or another third party, or information subject to the "FOR OFFICIAL USE ONLY," or Privacy Act restrictions, such responses will be subject to a protective order which is stipulated to by the parties and is entered by the Court.

2. The Government objects to each and every Instruction and Definition in TDM's interrogatories to the extent that they exceed the permissible scope of discovery under the RCFC

and/or seek to impose upon defendant duties and responsibilities beyond those required by those Rules.

3. The Government objects to TDM's interrogatories to the extent that they seek legal conclusions or opinions, the mental impressions of Government counsel and the Government's legal theories. RCFC 26(b)(3).

4. The Government objects to the indefinite time period governing some of the interrogatories because it renders such interrogatory overly broad, unduly burdensome, and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence in this action. The Government generally limits its answers relating to its processing of dredged material by contractors of the United States Army Corps of Engineers to the period beginning six years before the filing of the complaint in this action.

5. The Government objects to TDM's interrogatories to the extent that they are premature. Further, the Government's responses are based upon information that is known or reasonably believed by the Government at the time of its responses to these interrogatories. It is anticipated that further discovery, independent investigation, and analysis may supply additional facts, give new meaning to known facts, or entail new factual conclusions. The Government therefore reserves the right to amend and/or supplement these responses if it learns of new information relevant hereto, through discovery or otherwise.

6. The Government reserves the right to challenge the relevance, materiality, and admissibility at trial, or in any subsequent proceeding, of this or any other action, of any of the information it provides in response to these interrogatories.

7. The Government objects to TDM's interrogatories to the extent that they seek information relating to allegations of willful infringement because the intent of the Government and its contractors is irrelevant in an action brought under 28 U.S.C. § 1498 in the United States Court of Federal Claims. Likewise, the existence or lack of opinions and/or advice of counsel is irrelevant to any issue in this litigation.

8. The Government objects to TDM's interrogatories to the extent that they seek information or documents that are generated or created by or for the use of counsel after the filing of TDM's Complaint.

9. The Government objects that TDM's definition and use of the term "defendant" and "US" incorporated into TDM's Interrogatories to the United States is overly broad to the extent that it purports to include the Legislative Branch and the Judicial Branch, and every agency of the Executive Branch of the federal government as the defendant in this litigation. Plaintiff's definition is overly broad and unduly burdensome in that requiring Government counsel to request information from every government entity would be cumbersome and would require a substantial amount of time. Further, under RCFC 11, plaintiff bears the burden of comparing the accused item or process with the construed patent claims, and making a good faith assertion of infringement as to each accused item or process. *See Antonious v. Spaulding & Evenflo Cos.*, 275 F.3d 1066, 1072-73 (Fed. Cir. 2002). Plaintiff's Complaint contains averments only as to the activities of the United States Army Corps of Engineers ("USACE") and only to activity involving harbor dredging materials. Thus, the USACE is the only federal entity accused of infringement as a defendant in this litigation. The Government therefore limits its responses to interrogatories referencing the terms "defendant" and "US" as such terms relate to the USACE

and to those activities reasonably related to remediation and processing of harbor dredging materials.

10. The Government objects that TDM's definition and use of the term "contractor" incorporated into TDM's Interrogatories to the United States is overly broad to the extent that it purports to include any contractors and/or subcontractors without limitation. Plaintiff's Complaint contains averments only as to any contractors or subcontractors of the USACE relating to the subject of the patents-in-suit, i.e., remediation and processing of dredged materials. For the reasons stated in the foregoing paragraph, the Government limits its responses to these interrogatories by limiting the term "contractor" to contractors awarded contracts by the USACE for dredging activities and the subcontractors selected by those contractors to conduct remediation and processing of harbor dredging materials.

11. The Government objects to TDM's interrogatories to the extent that they call for the production of expert opinions prior to the time called for under Rule 26(a)(2) and the Court's February 23, 2007 scheduling order.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving its general objections, the Government hereby objects and responds to each interrogatory of TDM as set forth below.

**INTERROGATORY NO. 1**

State when and how the US first learned of the patents-in-suit including identifying the persons, dates and documents involved.

**RESPONSE TO INTERROGATORY NO. 1**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

Further, in General Objection 9, the Government has objected to TDM's use of a broad definition for US that includes every agency and all branches of the federal government.

Subject to these general and specific objections, the Government responds, if TDM's broad definition of "US" is employed, the United States Patent and Trademark Office was the first government agency to learn of the patents-in-suit, in that on August 6, 1996, it issued patent number 5,542,614 ("the '614 patent"), and on September 25, 2001, it issued patent number 6,293,731 B1 ("the '731 patent"). The Government further responds, utilizing the Government's narrow definition of "US" in General Objection 9, the patents-in-suit were brought to the attention of the United States Army Corps of Engineers when United States Senator Orrin Hatch, by letter dated May 24, 2005, forwarded materials from counsel for UTEX Environmental Services, dated April 4, 2005, to the USACE.

**INTERROGATORY NO. 2**

Separately, for each claim of the patents-in-suit, state with particularity the factual basis for the US' contention that it has not infringed any claims of the patents-in-suit.

**AMENDED RESPONSE TO INTERROGATORY NO. 2**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government also objects to this interrogatory because it essentially constitutes at least twenty parts, as it seeks information relating to a number of infringement claims for twenty contracts. The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and interview of potential witnesses, investigation of the facts, and identification and review of documents in this case. Although discovery is in its early stage and the Government believes that it is too early to fully address contention interrogatories relating to issues of patent infringement, the Government provides the following general statement of its contentions as to non-infringement.

Subject to these specific objections and the General Objections, the Government responds that the basis for the assertion that neither the USACE nor its contractors have infringed any claims of the '731 patent is that processing of dredged material for the USACE does not include one or more of the following limitations contained in each of the independent claims of the '731 patent: "creating an additive slurry in a mixing container"; "pumping the additive slurry from the mixing container to a mixing assembly disposed within the containment receptacle"; "mixing the additive slurry into the dredged material to form a substantially homogenous mixture"; and "curing the substantially homogenous mixture in the containment receptacle."

Similarly, the basis for the assertion that neither the Government nor its contractors have infringed any claims of the '614 patent is that processing of dredged material for the USACE

does not include at least one of the following limitations contained in both of the independent claims of the '614 patent: "receiving said waste material in a vibrating screen box;" "vibrating said vibrating screen box;" "weighing said batch of waste material to determine an amount of additive to be added to said waste material."

The remediation processes at issue in this case are performed by contractors (or their subcontractors) of the USACE, and the Government has not had adequate opportunity to thoroughly evaluate the processes of these contractors and/or subcontractors. The USACE generally does not direct nor control what processes used by its contractors. The knowledge of the USACE is based on the casual observations of its employees in the ordinary course of their duties and upon review of documents supplied to USACE by the contractors. Those observations and documents are not directed to specific details of the processes used, but to other matters, such as insuring that the contractor is performing in accordance with the contract terms. As are result, the knowledge of USACE employees is incomplete.

Plaintiff has issued a number of subpoenas to USACE contractors seeking testimony and documents regarding their manner of processing dredged material. While depositions are scheduled for a few of these contractors, no depositions have yet taken place. Consequently, the Government is without the benefit of deposition testimony of the contractors, who are most knowledgeable of the processes they used, to supplement its interrogatory response. Similarly, the Government has only recently received documents responsive to the subpoena requests from only two contractors. By letter dated May 22, 2007, Plaintiff's counsel forwarded documents it received from EIC Associates and documents from Great Lakes Dredge and Dock Company.

Consequently, the Government reserves the right to review, develop, and evaluate additional and/or different positions as its investigation and the discovery process continue.

The Government further responds that to the extent any infringement of the patents-in-suit is demonstrated, any use by the government's contractors of the patents-in-suit in the performance of the USACE contracts was not a use "by" or "for" the Government within the meaning of the 28 U.S.C. § 1498(a). *See Carrier Corp. v. United States*, 534 F.2d 244 (Ct. Cl. 1976).

**INTERROGATORY NO. 3**

Separately, for each claim of the patents-in-suit, state with particularity the factual basis for the US' contention that the patents-in-suit are invalid.

**AMENDED RESPONSE TO INTERROGATORY NO. 3**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts relating to the invalidity of the patents-in-suit. Given that discovery is in its early stage, the Government believes that it is too early to fully address contention interrogatories relating to issues of patent invalidity. Consequently, the Government reserves the right to review, develop, and evaluate additional

and/or different positions as its investigation continues. In light of the foregoing general and specific objections, the Government provides the following statement of its contentions.

Subject to these specific objections and the General Objections, the Government responds that there are several bases for the assertion that the claims of the '731 patent are invalid. Under 35 U.S.C. § 102(b), at least claims 3, 4, 6, 7, 8, 9, 10, 11, and 12 of the '731 patent are invalid as having been first disclosed in a non-provisional application filed more than one year after the invention was on sale in this country. The non-provisional application was filed on May 15, 1998, and the invention was offered for sale prior to May 15, 1997, the date that performance of a contract with the New York Harbor Authority began, which involved using the process claimed in the '731 patent. May 15, 1997 was also the date that the provisional application for the invention was filed.

Under 35 U.S.C. § 103, each asserted claim of the '731 and '614 patents is invalid because it would have been obvious to a person having ordinary skill in the art at the time the invention was made. *See KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (Apr. 30, 2007). The prior art identified in response to Interrogatory No. 7 below discloses the process of mixing additives with de-watered dredged material, adding water and curing the product for use as a structural fill. Additionally, the use of a mixing container during the creation of the additive slurry, as required by the claims of the '731 patent, rather than mixing the additives directly with the dredged material without use of a container, would have been well within the general knowledge to the person of ordinary skill in the art at the time the invention was made and therefore the claims are obvious and lack patentability.

Under 35 U.S.C. § 112, at least independent claims 1, 5, 7 and 9 of the '731 patent are not enabled or are indefinite because the claimed process does not include a step for removing large objects to enable the production of a "homogenous mixture."

**INTERROGATORY NO. 4**

Separately, for each of the patents-in-suit, state whether the US is contending that one or more claims of the patents-in-suit are unenforceable and, if so, identify each such claim and state with particularity the factual basis therefor.

**AMENDED RESPONSE TO INTERROGATORY NO. 4**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. RCFC 25 (b)(3). The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts relevant to the patents-in-suit. Given that discovery is in its early stage, the Government believes that it is too early to fully address contention interrogatories relating to whether the patents-at-issue are enforceable.

Subject to these specific objections and the General Objections, the Government responds that its contentions regarding its defenses to TDM's assertion of infringement of the patents-in-suit are fully set forth in its Answer and that the Government will move to amend its answer or otherwise provide notice to TDM should it develop additional defenses, e.g., based upon the

deposition testimony of TDM employees and/or inventors of the patents-in-suit, relating to the enforceability of the patents in suit.

**INTERROGATORY NO. 5**

Identify all persons with any relevant knowledge of the matters alleged in the answer.

**AMENDED RESPONSE TO INTERROGATORY NO. 5**

The Government objects to this interrogatory on the grounds that it is premature in that the Government's investigation of this matter continues. The Government further objects that this interrogatory is unduly broad and burdensome. Subject to these specific objections and the General Objections, the Government responds that persons believed to be most knowledgeable as to the matters relevant to TDM's claims were properly listed in the Initial Disclosures of the United States submitted on November 22, 2006 and on March 23, 2007. The Government further responds that additional persons believed to have relevant knowledge in this case include: Mr. John Bearce, USACE, Jacksonville District, Jacksonville, Florida; Ms. Virginia Pankow, USACE, National Data Center, Alexandria, Virginia; and Mr. Kent W. Loest, Waste By Rail, Inc., Newport Beach, California.

**INTERROGATORY NO. 6**

State with particularity all grounds in support of each denial made in the answer to this action.

**RESPONSE TO INTERROGATORY NO. 6**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government responds that paragraph 1 of the Answer explains that the Government denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. The denied averments contained in paragraph 2 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. Paragraph 3 of the Answer explains that it denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. The denied averments contained in paragraphs 4, 10, and 14 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. Paragraph 5, 7, and 13 of the Answer explains that the Government denied averments for which the Government was without knowledge or information sufficient to form a belief as to the truth of the such averments. Paragraph 9 of the Answer explains that the Government denied averments for which it was without knowledge or information sufficient to form a belief as to the truth of the such averments. Paragraph 11 of the Answer explains that the denied averments are based on the fact that UTEX and not TDM provided notice to the Government prior to the filing of the Complaint relating to allegations of infringement involving the patents-at-issue. The remaining denied averments contained in paragraph 11 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. The denied averments contained in paragraph 12 of the Answer are based on the fact that TDM did not advise the USACE of alleged infringement of the patent-in-suit as early as April 2005. The first such notice

that the USACE received from TDM occurred with the service of its Complaint filed on June 21, 2006. Similarly, the USACE did not engage in "numerous exchanges" with TDM regarding the patents prior to the filing of the Complaint. The first communication that the USACE received regarding infringement allegations involving the patents-in-suit came from Senator Orrin Hatch on or about May 24, 2005. The first communication that the USACE had with UTEX counsel regarding infringement allegations involving the patents-in-suit occurred on or about June 7-8, 2005. The remaining denied averments contained in paragraph 12 of the Answer are based on the reasons set forth in response to Interrogatory No. 2. The denied averments contained in paragraph 15 of the Answer are based on the fact that TDM is not entitled to reasonable and entire compensation from the Government for reasons set forth in response to Plaintiff's Interrogatory No. 2 and that Plaintiff's assertion that such compensation is "no less than $300 million" is unsupported.

**INTERROGATORY NO. 7**

Separately, for each of the patents-in-suit, identify all prior art to the patents-in-suit.

**AMENDED RESPONSE TO INTERROGATORY NO. 7**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and review of documents that may be categorized as prior art.

Subject to these specific objections and to the General Objections, the Government responds that the prior art cited in the prosecution histories of the patents-in-suit is relevant. Further, the following prior art documents are presently known to be relevant to the patents-in-suit: USACE, Engineering and Design, *Beneficial Uses of Dredged Material,* EM-1110-2-5026 (June 1987); Fleming, Elizabeth, et al., *An Evaluation of Solidification/Stabilization Technology for Buffalo River Sediment*, Miscellaneous Paper-EL-91-11 (May 1991); Channell, Michael, et al., *An Evaluation of Solidification/Stabilization for Treatment of New York/New Jersey Harbor Sediments*, Technical Report-EL-97-10 (June 1997); USACE, Water Resources Support Center, *Management of Bottom Sediments Containing Toxic Substances, Proceedings of the 7th U.S./Japan Experts Mtg 2-4 Nov. 1981* (Oct. 1983); and USACE, New York District, *Dredged Material Management Plan for the Port of New York and New Jersey*, Interim Report (Sept. 1996).

**INTERROGATORY NO. 8**

Identify all opinions, reports and evaluations concerning the patents-in-suit.

**AMENDED RESPONSE TO INTERROGATORY NO. 8**

The Government objects to this interrogatory to the extent that it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it is premature and to the extent that it calls for the production of expert opinions prior to the time established under Rule 26(a)(2) and the Court's February 23, 2007 scheduling order.

Subject to these specific objection and to the General Objections, the Government responds that following non-privileged, discoverable documents are deemed responsive to this interrogatory:

(a) a letter sent by David W. Denenberg to Senator Orrin Hatch, dated April 4, 2005, and the material accompanying that letter; and

(b) a letter from the Department of the Army, United States Army Legal Services Agency, dated May 16, 2006, denying the administrative claim of UTEX for alleged infringement of patents including the patents-at-issue; and

(c) a letter from John A. Witte, President of Donjon Marine Co., Inc., to Raynette H. Gurney, Contracting Officer, New York District, Corps of Engineers, dated December 8, 2005; and

(d) a letter from Richard Steady, Weeks Marine, Inc., to Raynette H. Gurney, Contracting Officer, New York District, Corps of Engineers, dated December 5, 2005.

**INTERROGATORY NO. 9**

Identify the US' proposed construction for each claim of the patients-in-suit and all intrinsic and extrinsic evidence supporting that construction.

**AMENDED RESPONSE TO INTERROGATORY NO. 9**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government objects to this interrogatory on the grounds that it prematurely calls for the production of claim constructions and supporting material prior to the time established by the Court's February 23, 2007 scheduling order.

**INTERROGATORY NO. 10**

Identify each and every specific contract, and identify each and every contractor retained by the US for dredging activities at any port, harbor and/or waterway since 1997 to the present and for each such contract specify all contract information and processing information relevant to those contracts and the dredging activities, including specifically the treatment, processing, stabilization, retention, staging, handling, curing, reuse, remediation, solidification and/or disposal of the dredged materials.

**AMENDED RESPONSE TO INTERROGATORY NO. 10**

The Government objects to this interrogatory to the extent it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel regarding what contracts are relevant to this litigation and which information is relevant to those contracts. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government also objects to this interrogatory because it essentially constitutes at least twenty parts, as it seeks various information relating to each of twenty contracts. The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to this interrogatory to the extent that the "contract information" requested is readily available in the listed contracts. *See* RCFC 33(d) *and* 34. Additionally, the Government objects to the extent that the requested "processing information relevant to those contracts and the dredging activities" is not in the possession of the Government and such request is best directed to the contractors.

The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged and waste materials and do not claim processes for dredging itself.

Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds with Revised Attachment A, hereto. The Government further responds that the Government elects to provide copies of the contracts listed in Revised Attachment A, and such copies have been produced. *See* RCFC 33(d) and 34. Additionally, the Government responds that insofar as the information requested is contained documents in the possession of the Government, other than the contracts themselves, such documents have also been produced to Plaintiff in a manner in which the documents are kept in the usual course of business, pursuant to RCFC 34(b). To the extent that the requested information is not in the possession of the Government, such request is best directed to the contractors identified in the Revised Attachment A.

**INTERROGATORY NO. 11**

Identify all processes and methods utilized by each of the respective contractors identified in the Amended Response to Interrogatory No. 10, and all documents, specifications, data, and other writings that describe and set forth the methods, processes and/or manner utilized for the dredging activities.

**AMENDED RESPONSE TO INTERROGATORY NO. 11**

The Government objects to this interrogatory to the extent it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel as the process and

methods used by parties other than the USACE. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government also objects to this interrogatory because it constitutes at least twenty parts, as it seeks various information relating to twenty contracts. The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to "all processes and methods utilized by each of the ... contractors" is not in the possession of the Government and such request is best directed to the contractors. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing of dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and to the General Objections, the Government responds that insofar as the information requested in this interrogatory is in the possession of the Government, such information is set forth in documents that have been made available for inspection and produced to Plaintiff in a manner in which the documents are kept in the usual course of business, pursuant to RCFC 34(b). To the extent that the requested information is not

in the possession of the Government, such request is best directed to the contractors identified in the Amended Response to Interrogatory No. 10.

**INTERROGATORY NO. 12**

For each contract that the US was or is a party to since 1997 for any dredging activity at any port, harbor and/or waterway, complete the chart below either confirming that the contractor is performing the referenced element of the patent claim for the '731 patent or describe the manner in which the particular dredging activity and/or processing activity is performed and how the activity differs from referenced one.

**AMENDED RESPONSE TO INTERROGATORY NO. 12**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government also objects to this interrogatory because it constitutes at least twenty parts, as it seeks information relating to twenty contracts. The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to activities of contractors is not in the possession of the Government and such request is best directed to the contractor. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation,

if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds that the information sought by this interrogatory is available from the response to Amended Interrogatory number 2.

**INTERROGATORY NO. 13**

For each contract that the US was or is a party since 1997 for any dredging activity at any port, harbor and/or waterway, complete the chart below either confirming that the contractor is performing the referenced element of the patent claim for the '614 patent or describe the manner in which the particular dredging activity and/or processing activity is performed and how the activity differs from the referenced one.

**AMENDED RESPONSE TO INTERROGATORY NO. 13**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government also objects to this interrogatory because it constitutes at least twenty

parts, as it seeks information relating to twenty contracts. The Government objects to this interrogatory on the grounds that it is premature in that the Government has not completed its investigation of the facts and identification and review of documents in this case. The Government also objects to the extent that the requested information relating to activities of contractors is not in the possession of the Government and such request is best directed to the contractor. The Government further objects to this interrogatory on the ground that the phrase "since 1997" is overly broad. TDM has a cause of action for reasonable and entire compensation, if at all, going back only six years from the filing of its Complaint pursuant to 35 U.S.C. § 286. Additionally, the Government objects to this interrogatory on the ground that the phrase "any dredging activity" is overly broad. The patents-in-suit generally relate to treatment and processing dredged and waste materials and do not claim processes for dredging itself. Accordingly, the Government limits its response to contracts involving treatment or processing of dredged material and for which the USACE was a party since 2000.

Subject to these specific objections and the General Objections, the Government responds that the information sought by this interrogatory is available from the response to Amended Interrogatory number 2.

**INTERROGATORY NO. 14**

State the amount, in percentage and dollar terms, that the US believes is a reasonable royalty for each of the patents-in-suit, explain the basis therefor and identify the documents relied upon to support that basis.

**AMENDED RESPONSE TO INTERROGATORY NO. 14**

The Government objects to this interrogatory because it seeks the mental impressions, conclusions, opinions or legal theories of Government counsel. Accordingly, the Government limits its answer as permitted by RCFC 26(b)(3) and the Work Product Doctrine.

The Government further objects to this interrogatory on the grounds that it is premature in that the Government has not completed its identification and interview of potential witnesses, investigation of the facts, and identification and review of documents in this case. The Government also objects to this interrogatory to the extent that it calls for the production of expert opinions prior to the time established under Rule 26(a)(2) and the Court's February 23, 2007 scheduling order.

At present, the Government has not formed a belief as to what is a reasonable royalty.

DATED: May 30, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

Erica A. Franklin by Gary Hausken

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345

OF COUNSEL:

GARY L. HAUSKEN
Assistant Director
Department of Justice

**SIGNATURE AND OATH AS TO AMENDED ANSWERS**

The foregoing amended responses to Interrogatory Numbers 5, 8 and 10-13 are based upon such information as is presently available to the United States Army Corps of Engineers and was derived from sources available to me in the course of my duties and that I deem to be reliable. Upon information and belief, I declare under penalty of perjury that these responses are true and accurate.

Daniel Inkelas
Assistant Counsel for Litigation
Office of the Chief Counsel
United States Army Corps of Engineers
441 G Street, NW
Washington, DC 20314

| District | Contract # | Project | Contractor |
|---|---|---|---|
| **New York** | W912DS-07-C-0003 | Anchorage Channel | Donjon |
| | W912DS-06-C-0018 | Mnt Newark Bay | GLDD |
| | W912DS-05-C-0003 | AK 2/3 | Don Jon |
| | W912DS-05-C-0004 | S-KVK-2 | Bean |
| | W912DS-05-C-0020 | Maint AK | DonJon |
| | W912DS-04-C-0008 | Port Jersey 2 | GLDD |
| | W912DS-04-C-0016 | Mnt Seguine Point | DonJon |
| | DACW51-03-C-0001 | Port Jersey 1 | DonJon |
| | DACW51-03-C-0012 | AK #1 | DonJon |
| | DACW51-03-C-0014 | KVK Area 8 | Jay Cashman |
| | DACW51-03-C-0019 | Mnt Flushing Bay | Bean |
| | DACW51-03-C-0021 | Maint AK | DonJon |
| | DACW51-02-C-0001 | KVK Area 5 | Bean |
| | DACW51-02-C-0002 | Minish #2 | Cruz Construction |
| | DACW51-02-C-0019 | KVK Area 6 | Bean |
| | DACW51-02-C-0022 | Mnt Newark Bay | DonJon |
| | DACW51-01-C-0006 | KVK Area 7 | DonJon |
| | DACW51-01-C-0023 | Mnt Eliz Pierhead | GLDD |
| **Detroit** | None | | |
| **Los Angeles** | DACW09-D-0010-0003 | LA River Estuary Dredging/Stabiliz Study | Buddy's Contracting |
| **Jacksonville** | W912EP-04-C-0021 | Miami River | Weston Bean Jt Venture |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 30th day of May 2007, a copy of the foregoing DEFENDANT UNITED STATES' SECOND AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14) was sent to the following counsel of record, via electronic mail and Federal Express:

David W. Denenberg, Esq.
Michael A. Adler, Esq.
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158
dwd@dmlegal.com
maa@dmlegal.com

Counsel for Plaintiff TDM America, LLC

Gary J. Campbell, Esq.
John E. Flaherty, Esq.
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
gcampbell@mccarter.com
jflaherty@mccarter.com

Counsel for Donjon Marine Company, LLC

Gary L. Hausken
Department of Justice

**Exhibit 2**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

\- - - - - - - - - - - - - - - - - - - - - - -x

TDM AMERICA, LLC, :

Plaintiff, :

:

-against- Index No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant, :

\- and - :

DONJON MARINE COMPANY, INC.,

:

Third-Party Defendant.

:

\- - - - - - - - - - - - - - - - - - - - - - -x

DEPOSITION of ELLA D. SNELL, taken by Plaintiff at the offices of Davidoff, Malito & Hutcher, 605 Third Avenue, New York, New York 10158, on Friday, May 18, 2007, commencing at 9:30 o'clock a.m., before Annette Forbes, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

Snell

A Typically this document remains in the file of my COR, my contracting officer's representative.

9:56:28

Q Do you know whether or not in order to pay these documents, certain information has to be provided by the contractor in order to authorize payment?

A Yes. Certain information has to be provided.

9:56:41

Q What information has to be provided?

A Well, the contractor -- this is submittal of an invoice for payment. And the contractor would have to submit, for example, quantities dredged, the COR considers the percentage of completion and a number of things, then the COR makes the payment.

9:56:56

Remember, earlier I told you I only make the final payment. I only see the final paid document because I have to make that final payment. And it might help if I explain that process to you.

9:57:12

Q Sure.

A The way the process works is once I award a contract, I designate a contracting

9:57:23

officer representative, as well as an administrative contracting officer, called COR and ACO, respectively.

9:57:34 Those people are responsible for complete management of this contract until it's ready to be closed out.

That means that they will have lots of letters. They will be pay estimates. They

9:57:47 will have a lot of documents that I will never see and I don't have a need to see them as long as things are working properly.

At the end of the contract period, what they have to do, according to regulation, is

09:58:01 box up all of those documents and send them to me because I'm responsible for the final pay, as well as the final closeout of the document.

I merge all of their files with my files. They box them, we put them in a storage

09:58:21 area.

That's how the process works.

Q Do you know whether or not the contract number W912DS-07-C-0003 has ended or is it still ongoing?

09:58:45 A I don't know.

Snell

Q Do you know who the COR and ACO are?
A Yes. My initial COR is Salvatore Didato, D-I-D-A-T-O.
Q Who is the ACO?
A Off the top of my head, I don't remember, because what we do, we will appoint a primary ACO and an alternate. We will do the same for the COR, a primary and an alternate. Sometimes they change.
Q Without necessarily distinguishing between primary and alternate, do you know who any of them are with respect to this contract?
A Not off the top of my head.
Q In the event that you are considering making a final payment, which is when it comes to you, do you view any volume surveys or similar information to determine, to make the final payment?
MS. FRANKLIN: Objection. Vague.
Q Do you understand the question?
A Yes.
No, I do not.
Again, just to tell you how the

Snell

system works, we make payments electronically.

For me, I have to go through the E system and I literally go through, well, the system takes me through all of the pay estimates, even though I don't actually see them.

0:00:10

What it tells me is that this one has been completed, payments made, this one completed.

0:00:22

Because there are times when I would get to a pay estimate and I'm trying to get to the final and the system will tell me you cannot go to the next record.

0:00:40

And when that happens, I return the action to, in this case construction division, not the COR, because the CORs work for construction, and I return it to construction saying you need to go into the system and check this out because I can't get to the next and final pay estimate.

0:00:57

So that's how it works. So I don't have to review anything physically because the system will let me know if I have a problem.

Q What was the electronic system you are talking about?

0:01:12

A Corps of Engineers financial

management system, CEFMS, Core of Engineers financial management system.

Q Do you have the ability to print out the information?

0:01:27

You see this information on the computer screen, I take it?

A I don't literally see the pay estimate, again, because I don't have to.

0:01:37

So, in fact, the pay estimate itself is not in the system, just certain information is in the system. I don't have to look at it because if there is a problem, the system will tell me.

What I do, I enter it. As long as it allows me to get to the final pay estimate, I know that everything is okay.

0:01:51

Q Do you know if printouts of the information that you are referring to in the electronic system has been provided to us?

0:02:03

MS. FRANKLIN: Objection. Vague.

A I don't know.

MR. ADLER: If not, I will ask that you produce whatever information relative to the contract.

10:02:13

Snell

MS. FRANKLIN: Sorry. Repeat that.

MR. ADLER: If that information is not provided.

MS. FRANKLIN: Pay estimates, for example, the one we are looking at?

MR. ADLER: Let's not be cute. Not the pay estimates. The information in the electronic system. Is that clear?

Q With respect to the contracts which you have responsibility for, do you know if the contracts are paid in phases or are they paid at once?

MS. FRANKLIN: Objection. Vague.

Q Are payments made at various intervals of time or is one payment made?

A Various intervals.

Q Do you have any responsibility in the event there are amendments to the contract?

A It depends. And, actually, there are, they would be called modifications.

Remember, I told you that I have an ACO. That ACO has authority up to $500,000. And if there is something within the ACO's threshold, that ACO will process the modification.

Q And if it's above $500,000, that's something you would have to process?

A Then it has to be processed by my office, yes.

Q Just to understand, does that mean your CORs approve the interval payments and not you, either for the contract amounts or any additional amounts less than $500,000?

A That's different.

When it comes to pay estimates, paying the contractor, there is no limitation for the COR and the ACO, only when it comes to modifying the contract.

Q With respect to contract W912DS-07-C-0003, do you have any knowledge at all as to where the process with the dredging occurred for this contract?

A No.

MR. ADLER: I will ask the court reporter to please mark as the

**Exhibit 3**

UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

-----------------------------------------x

TDM AMERICA, LLC,

Plaintiff,

- vs -

THE UNITED STATES OF AMERICA,

Defendant, INDEX No. 06-472-C

- and -

DONJON MARINE COMPANY, INC.,

Third-Party Defendant.

-----------------------------------------x

TRANSCRIPT MARKED PROPRIETARY

Deposition of HAROLD HAWKINS, taken by Plaintiff, pursuant to Notice, at the offices of Davidoff, Malito & Hutcher LLP, 605 Third Avenue, New York, New York, on Wednesday, May 16, 2007 commencing at 9:40 a.m., before Linda D. Danelczyk, a Certified Shorthand Reporter, Registered Professional Reporter and a Notary Public of the State of New York.

help the witness.

MR. ADLER: Sure.

A. Okay. 33,000 quantity, it was basically to dredge and process silt. As I said before.

Q. And this would be for upland disposal?

A. For upland disposal.

Q. Now, with respect -- and you had mentioned before that this is an estimated quantity?

A. This is a -- an estimated quantity.

Q. Is there a way to determine actual amounts that were processed -- that was treated for upland disposal?

MS. FRANKLIN: Objection. Vague.

Q. Is there a way to estimate the actual volume, in cubic yards, of dredged material that was treated for upland disposal to date under this contract?

MS. FRANKLIN: Same objection.

A. I would say it's not an estimate at that particular point in time. We would

essentially have an after-dredged survey. The way we work with the contractor is, we would survey an area and the area that was moved, the silt in this particular contract. We have a little bit of another difficulty because he's dredging sand and silty sand and depending upon the siltiness of it, some of it gets processed, some of it doesn't get processed with cement.

0:10:25 So we would probably have to go to the actual records that they submit to DEP as to what the material ended up going to. Or the dredged disposal facility.

So it's -- usually, a little bit easier black and white. This particular case it's not as easy, you know, past.

Q. Do you have copies of those records that were submitted to the DEP?

A. No.

0:11:01 Q. Do you know where the -- under this contract where the dredged material that was treated is disposed?

A. It ended up being now in, I think, two locations. I've kind of lost track. I've dealing with some other issues but FDP and EnCap

volume surveys would be kept?

A. It's a survey which is a map and you have a before dredged survey, which would be like a map with little (indicating) indications of depth on a channel map. And you have one that you do before and then after they've completed the dredge, you do another one, and then what occurs is they process it using a program called TINS (phonetic) and they determine the volume that has been removed between the two surveys.

Q. Do you have copy of those surveys?

A. The Corps has copies of those surveys.

I personally don't.

Q. Do you know which office would have copies of them?

A. Our survey section.

Q. "Survey section."

Do you know if they were produced in this litigation?

A. As far as I know, I believe you've gotten the surveys. I -- I am not privy to all the information you've been provided.

Q. And who conducts those surveys?

A. We do. The Corps survey section.

And maybe during the course of contracts survey, but I would say, you know, 99.9, that's something that we do in-house, surveys.

MR. ADLER: Another contract bearing Bates-numbers G004585 through G004656 marked as Exhibit No. 37.

(Whereupon, Document with Bates-numbers G004585 through G004656, was marked as Exhibit 37 for identification, as of this date.)

MR. ADLER: Let the record reflect that the witness has been provided with what has been marked as Plaintiff's Exhibit 37.

Q. Do you recognize this document?

A. Just give me one second.

(Pause.)

A. It appears to be the contract for area eight of the 45-foot project.

Q. Is that one of them that you had responsibilities for?

A. Yes.

Q. And do you know who the contractor