Exhibit 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------------x

TDM AMERICA, LLC, :

Plaintiff, :

:

-against- Index No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant,

- and - :

DONJON MARINE COMPANY, INC.,

:

Third-Party Defendant.

:

-------------------------------------x

CONTINUED DEPOSITION of BRYCE W. WISEMILLER, taken by Plaintiff at the offices of Davidoff, Malito & Hutcher, 605 Third Avenue, New York, New York 10158, on Tuesday, May 22, 2007, commencing at 9:38 o'clock a.m., before Annette Forbes, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

A This line item refers generally to the same type line items as we discussed earlier when we were talking about removal, transportation, processing as needed and ultimate placement/disposition of this material, presumably silty materials that reside in the shoal areas in the New York/New Jersey channels, Arthur Kill Reach.

Q Do you have any understanding whether most of that material was treated with an additive for upland disposal?

A I would assume that this material was in large part, if not all, treated with an additive prior to upland placement.

Q One more item on this.

A However, the quantities, here's a statement as part of the solicitation.

The actual amount that was dredged and paid to the contract as part of this line item, you have to look at the contract execution documents, pay estimates and such.

Q Referring to the page Bates No. 727, item No. 0005, underneath 0005, it says the word option.

**Exhibit 5**

**Welcome to the US Army Corps of Engineers**
Navigation Data Center

NDC Home
Back
Data

## Dredging Information System

### Number of Contracts, Cubic Yards, and Total Bid Dollars by Type of Material Disposal and Fiscal Year

| | | FY | | | | | |
|---|---|---|---|---|---|---|---|
| DISPTYPE | Data | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
| Beach Nourishment | Contracts | 39 | 28 | 29 | 29 | 30 | 24 |
| | Cubic Yards (Bid) | 25,330,073 | 11,679,137 | 14,697,600 | 15,749,200 | 12,237,200 | 9,380,088 |
| | Dollars (Bid) | $124,321,650 | $73,422,901 | $80,175,527 | $84,845,092 | $109,894,150 | $93,725,974 |
| Confined | Contracts | 18 | 20 | 17 | 15 | 20 | 26 |
| | Cubic Yards (Bid) | 12,310,036 | 22,772,591 | 12,989,979 | 7,661,493 | 10,022,406 | 10,982,272 |
| | Dollars (Bid) | $53,329,854 | $87,857,386 | $56,374,834 | $28,889,219 | $64,543,978 | $75,777,338 |
| Underwater Confined | Contracts | 2 | 3 | 1 | 3 | 1 | 4 |
| | Cubic Yards (Bid) | 1,274,470 | 3,037,400 | 958,000 | 1,985,000 | 125,000 | 3,274,000 |
| | Dollars (Bid) | $6,185,200 | $7,779,120 | $2,417,303 | $13,802,323 | $2,255,000 | $14,725,749 |
| Mixed Modes | Contracts | 16 | 11 | 9 | 8 | 9 | 6 |
| | Cubic Yards (Bid) | 37,690,000 | 20,233,172 | 8,653,414 | 6,167,593 | 8,588,100 | 2,603,658 |
| | Dollars (Bid) | $147,144,105 | $210,342,999 | $71,158,686 | $23,728,237 | $36,527,526 | $19,950,347 |
| Overboard & Open Wate | Contracts | 46 | 47 | 70 | 57 | 28 | 30 |
| | Cubic Yards (Bid) | 86,604,312 | 80,949,400 | 95,889,350 | 72,356,036 | 57,675,032 | 42,523,238 |
| | Dollars (Bid) | $186,674,904 | $130,112,325 | $203,825,575 | $138,699,313 | $98,242,845 | $94,893,077 |
| Open Water & Upland | Contracts | 8 | 10 | 5 | 9 | 5 | 1 |
| | Cubic Yards (Bid) | 6,974,600 | 23,398,000 | 6,907,000 | 7,067,390 | 10,267,091 | 300,000 |
| | Dollars (Bid) | $15,192,496 | $171,630,803 | $44,258,407 | $188,245,002 | $22,898,576 | $0 |
| Beach Nour and Upland | Contracts | 3 | 5 | 6 | 2 | 6 | 2 |
| | Cubic Yards (Bid) | 1,209,430 | 4,520,100 | 2,316,500 | 205,049 | 7,970,710 | 951,000 |
| | Dollars (Bid) | $4,822,771 | $42,670,477 | $8,682,326 | $2,135,132 | $36,492,418 | $9,909,871 |
| Upland | Contracts | 25 | 24 | 25 | 27 | 17 | 14 |
| | Cubic Yards (Bid) | 14,940,173 | 36,000,178 | 18,106,224 | 20,343,146 | 18,315,816 | 13,010,293 |
| | Dollars (Bid) | $93,079,240 | $206,436,689 | $66,795,398 | $141,398,063 | $56,024,244 | $73,715,806 |
| Wetland Nour or Creatio | Contracts | 7 | 5 | 4 | 5 | 5 | 5 |
| | Cubic Yards (Bid) | 28,628,142 | 7,160,000 | 11,425,000 | 11,014,100 | 9,570,000 | 7,895,000 |
| | Dollars (Bid) | $114,727,257 | $16,725,500 | $14,810,000 | $18,476,375 | $32,797,526 | $27,825,900 |
| Undefined | Contracts | 15 | 14 | 12 | 12 | 5 | 19 |
| | Cubic Yards (Bid) | 8,047,540 | 20,404,382 | 10,380,900 | 9,213,300 | 6,031,000 | 22,894,072 |
| | Dollars (Bid) | $49,352,303 | $68,706,842 | $62,392,733 | $36,332,399 | $12,847,345 | $81,443,824 |
| Total Contracts | | 179 | 167 | 178 | 167 | 126 | 131 |
| Total Cubic Yards (Bid) | | 223,038,776 | 230,154,360 | 182,323,967 | 151,762,307 | 140,802,355 | 113,813,621 |
| Total Dollars (Bid) | | $794,829,780 | $1,015,685,043 | $610,890,789 | $676,551,154 | $472,525,608 | $491,967,346 |

TDM006751

**Fiscal Year = 1 October to 30 September**

---

**Material Disposal** - manner in which dredge material is placed.
**Beach Nourishment** - beach restoration in which hydraulically pumped dredge material is directly placed onto an eroded beach.
**Confined** - placement of dredged material within diked nearshore or upland confined placement facilities that enclose and isolate the dredged material from adjacent waters.
**Mixed** - dredging operation that uses more than one dredged material placement alternative.
**Overboard & Open Water** - placement of dredged material in rivers, lakes, estuaries, or oceans via pipeline or surface release from hopper dredges.
**Open Water & Upland** - combination of open water and upland placement of dredged material.
**Upland & Beach Nourishment** - combination of upland placement and beach nourishment using dredged material.
**Upland** - placement of dredge material on land above adjacent water surface elevation.
**Wetland Creation or Nourishment** - wetland restoration in which hydraulically pumped dredge material is directly placed in a wetland area.
**Undefined** - undefined or unknown at the time of data entry.

---

Top

Contact for Additional Information:
U.S. Army Corps of Engineers
CEIWR-NDC
7701 Telegraph Road, Casey Bldg.
Alexandria, Virginia 22315-3868
Point of Contact: NDC (703) 428-9061

This document was last revised: 4/23/2007

TDM006752

Welcome to the US Army Corps of Engineers

NDC Home
Back
Data

## Dredging Information System

Number of Contracts, Cubic Yards, and Total Bid Dollars by Type of Material Disposal and Fiscal Year

| | | FY | | | | | |
|---|---|---|---|---|---|---|---|
| DISPTYPE | Data | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 |
| Beach Nourishment | Contracts | 31 | 39 | 28 | 28 | 29 | 30 |
| | Cubic Yards (Bid) | 13,913,578 | 25,330,073 | 11,679,137 | 11,465.600 | 15,749,200 | 12,237,200 |
| | Dollars (Bid) | $76,278,927 | $124,321,650 | $73,422,901 | $70,604,727 | $84,845,092 | $109,894,150 |
| Confined | Contracts | 22 | 18 | 20 | 17 | 15 | 21 |
| | Cubic Yards (Bid) | 29,577,783 | 12,310,036 | 22,772,591 | 12,989,979 | 7,661,493 | 10,113,112 |
| | Dollars (Bid) | $83,689,515 | $53,329,854 | $87,857,386 | $56,374,834 | $28,682,377 | $64,926,515 |
| Underwater Confined | Contracts | 2 | 2 | 3 | 1 | 3 | 1 |
| | Cubic Yards (Bid) | 422,000 | 1,274,470 | 3,037,400 | 958,000 | 1,985,000 | 125,000 |
| | Dollars (Bid) | $2,815,777 | $6,185,200 | $7,779,120 | $2,417,303 | $13,802,323 | $2,255,000 |
| Mixed Modes | Contracts | 11 | 16 | 11 | 9 | 8 | 9 |
| | Cubic Yards (Bid) | 11,446,158 | 37,690,000 | 20,233,172 | 8,653,414 | 6,167,593 | 8,588,100 |
| | Dollars (Bid) | $39,239,989 | $147,144,105 | $210,342,999 | $71,158,686 | $23,728,237 | $36,527,526 |
| Overboard & Open Wate | Contracts | 45 | 45 | 47 | 70 | 57 | 25 |
| | Cubic Yards (Bid) | 55,427,368 | 86,454,312 | 80,949,400 | 95,889,350 | 72,356,036 | 48,435,032 |
| | Dollars (Bid) | $153,371,744 | $186,228,633 | $130,112,325 | $204,529,441 | $132,693,838 | $86,331,308 |
| Open Water & Upland | Contracts | 15 | 7 | 9 | 4 | 9 | 5 |
| | Cubic Yards (Bid) | 15,758,050 | 6,974,600 | 22,798,000 | 6,407,000 | 7,067,390 | 10,267,091 |
| | Dollars (Bid) | $39,380,925 | $14,339,473 | $169,574,860 | $42,495,259 | $188,245,002 | $22,898,576 |
| Beach Nour and Upland | Contracts | 1 | 2 | 5 | 6 | 2 | 6 |
| | Cubic Yards (Bid) | 400,000 | 1,109,430 | 4,520,100 | 2,316,500 | 205,049 | 7,970,710 |
| | Dollars (Bid) | $2,179,146 | $3,562,381 | $42,670,477 | $8,682,326 | $2,135,132 | $36,492,418 |
| Upland | Contracts | 18 | 24 | 24 | 25 | 26 | 16 |
| | Cubic Yards (Bid) | 12,427,801 | 14,940,173 | 36,000,178 | 18,106,224 | 20,334,446 | 19,217,816 |
| | Dollars (Bid) | $53,200,253 | $90,935,840 | $206,436,689 | $66,795,398 | $137,437,063 | $61,993,568 |
| Wetland Nour or Creatio | Contracts | 3 | 7 | 5 | 4 | 5 | 5 |
| | Cubic Yards (Bid) | 10,700,000 | 28,628,142 | 7,160,000 | 11,425,000 | 11,014,100 | 9,570.000 |
| | Dollars (Bid) | $32,694,260 | $114,727,257 | $16,725,500 | $14,810,000 | $18,476,375 | $32,797,526 |
| Undefined | Contracts | 16 | 15 | 14 | 12 | 12 | 5 |
| | Cubic Yards (Bid) | 7,636,200 | 8,047,540 | 20,404,382 | 10,380,900 | 9,213,300 | 6,031,000 |
| | Dollars (Bid) | $104,968,712 | $49,352,303 | $68,706,842 | $62,392,733 | $36,332,399 | $12,847,345 |
| Total Contracts | | 164 | 175 | 166 | 176 | 166 | 123 |
| Total Cubic Yards (Bid) | | 157,765,938 | 222,758,776 | 229,554,360 | 178,591,967 | 151,753,607 | 132,465,061 |
| Total Dollars (Bid) | | $587,819,249 | $790,126,695 | $1,013,629,099 | $600,260,707 | $666,377,838 | $466,963,933 |



TDM 005329

**Fiscal Year = 1 October to 30 September**

**Material Disposal** - manner in which dredge material is placed.
**Beach Nourishment** - beach restoration in which hydraulically pumped dredge material is directly placed onto an eroded beach.
**Confined** - placement of dredged material within diked nearshore or upland confined placement facilities that enclose and isolate the dredged material from adjacent waters.
**Mixed** - dredging operation that uses more than one dredged material placement alternative.
**Overboard & Open Water** - placement of dredged material in rivers, lakes, estuaries, or oceans via pipeline or surface release from hopper dredges.
**Open Water & Upland** - combination of open water and upland placement of dredged material.
**Upland & Beach Nourishment** - combination of upland placement and beach nourishment using dredged material.
**Upland** - placement of dredge material on land above adjacent water surface elevation.
**Wetland Creation or Nourishment** - wetland restoration in which hydraulically pumped dredge material is directly placed in a wetland area.
**Undefined** - undefined or unknown at the time of data entry.

Top

Contact for Additional Information:
U.S. Army Corps of Engineers
CEIWR-NDC
7701 Telegraph Road, Casey Bldg.
Alexandria, Virginia 22315-3868
Point of Contact: NDC (703) 428-9061

This document was last revised: 7/25/2006



TDM 005330




NDC Home
Back
Data

# Dredging Information System

## Number of Contracts, Cubic Yards, and Total Bid Dollars by Type of Material Disposal and Fisc

| DISPTYPE | Data | FY 2000 | 2001 | 2002 | 2003 | |
|---|---|---|---|---|---|---|
| Beach Nourishment | Contracts | 31 | 39 | 28 | 28 | |
| | Cubic Yards (Bid) | 13,913,578 | 25,330,073 | 11,679,137 | 11,465.600 | |
| | Dollars (Bid) | $76,278,927 | $124,321,650 | $73,422,901 | $70,604,727 | $ |
| Confined | Contracts | 22 | 18 | 20 | 17 | |
| | Cubic Yards (Bid) | 29,577,783 | 12,310,036 | 22,772,591 | 12,989,979 | |
| | Dollars (Bid) | $83,689,515 | $53,329,854 | $87,857,386 | $56,374,834 | $ |
| Underwater Confined | Contracts | 2 | 2 | 3 | 1 | |
| | Cubic Yards (Bid) | 422,000 | 1,274,470 | 3,037,400 | 958,000 | |
| | Dollars (Bid) | $2,815,777 | $6,185,200 | $7,779,120 | $2,417,303 | $ |
| Mixed Modes | Contracts | 11 | 16 | 11 | 9 | |
| | Cubic Yards (Bid) | 11,446,158 | 37,690,000 | 20,233,172 | 8,653,414 | |
| | Dollars (Bid) | $39,239,989 | $147,144,105 | $210,342,999 | $71,158,686 | $ |
| Overboard & Open Wate | Contracts | 45 | 45 | 47 | 70 | |
| | Cubic Yards (Bid) | 55,427,368 | 86,454,312 | 80,949,400 | 95,889,350 | |
| | Dollars (Bid) | $153,371,744 | $186,228,633 | $130,112,325 | $204,529,441 | $1 |
| Open Water & Upland | Contracts | 15 | 7 | 9 | 4 | |
| | Cubic Yards (Bid) | 15,758,050 | 6,974,600 | 22,798,000 | 6,407,000 | |
| | Dollars (Bid) | $39,380,925 | $14,339,473 | $169,574,860 | $42,495,259 | $1 |
| Beach Nour and Upland | Contracts | 1 | 2 | 5 | 6 | |
| | Cubic Yards (Bid) | 400,000 | 1,109,430 | 4,520,100 | 2,316,500 | |
| | Dollars (Bid) | $2,179,146 | $3,562,381 | $42,670,477 | $8,682,326 | |
| Upland | Contracts | 18 | 24 | 24 | 25 | |
| | Cubic Yards (Bid) | 12,427,801 | 14,940,173 | 36,000,178 | 18,106,224 | |
| | Dollars (Bid) | $53,200,253 | $90,935,840 | $206,436,689 | $66,795,398 | $1 |
| Wetland Nour or Creatio | Contracts | 3 | 7 | 5 | 4 | |
| | Cubic Yards (Bid) | 10,700,000 | 28,628,142 | 7,160,000 | 11,425,000 | |
| | Dollars (Bid) | $32,694,260 | $114,727,257 | $16,725,500 | $14,810,000 | $ |
| Undefined | Contracts | 16 | 15 | 14 | 12 | |
| | Cubic Yards (Bid) | 7,636,200 | 8,047,540 | 20,404,382 | 10,380,900 | |
| | Dollars (Bid) | $104,968,712 | $49,352,303 | $68,706,842 | $62,392,733 | $ |
| Total Contracts | | 164 | 175 | 166 | 176 | 1 |
| Total Cubic Yards (Bid) | | 157,765,938 | 222,758,776 | 229,554,360 | 178,591,967 | $6 |
| Total Dollars (Bid) | | $587,819,249 | $790,126,695 | $1,013,629,099 | $600,260,707 | |

Fiscal Year = 1 October to 30 September

**Material Disposal** - manner in which dredge material is placed.
**Beach Nourishment** - beach restoration in which hydraulically pumped dredge material is directly placed onto an eroded beach.
**Confined** - placement of dredged material within diked nearshore or upland confined placement facilities that enclose and isolate the dredged material from adjacent waters.
**Mixed** - dredging operation that uses more than one dredged material placement alternative.

TDM006578

**Overboard & Open Water** - placement of dredged material in rivers, lakes, estuaries, or oceans via pipeline or surface release from hopper dredges.
**Open Water & Upland** - combination of open water and upland placement of dredged material.
**Upland & Beach Nourishment** - combination of upland placement and beach nourishment using dredged material.
**Upland** - placement of dredge material on land above adjacent water surface elevation.
**Wetland Creation or Nourishment** - wetland restoration in which hydraulically pumped dredge material is directly placed in a wetland area.
**Undefined** - undefined or unknown at the time of data entry.

---

Top

Contact for Additional Information:
U.S. Army Corps of Engineers
CEIWR-NDC
7701 Telegraph Road, Casey Bldg.
Alexandria, Virginia 22315-3868
Point of Contact: NDC (703) 428-9061

This document was last revised: 7/25/2006

Exhibit 6

## Adler, Michael A.

**From:** Adler, Michael A.
**Sent:** Tuesday, May 29, 2007 6:51 PM
**To:** 'Franklin, Erica (CIV)'
**Cc:** Denenberg, David W.; Tzortzatos, Dimitra
**Subject:** RE: Additional United States 30(b)(6) Witness

Thank you. I tried to call you today and will try again tomorrow. We should discuss the scheduling as deposition days are becoming very tight.

---

**From:** Franklin, Erica (CIV) [mailto:Erica.Franklin@usdoj.gov]
**Sent:** Tuesday, May 29, 2007 6:39 PM
**To:** Adler, Michael A.; Denenberg, David W.
**Cc:** Tzortzatos, Dimitra; Flaherty, John; Campbell, Gary
**Subject:** Additional United States 30(b)(6) Witness

Mssrs. Adler and Denenberg:

As recently requested, the United States designates the following additional witness for Categories 35 and 37 of TDM America's
Third Amended Notice of Rule 30(b)(6) Deposition, to the extent that those categories relate to the USACE "Dredging Information System."

Ms. Virginia Pankow
Project Manager
USACE Navigation Data Center

Ms. Pankow is available for deposition in Alexandria, Virginia on June 29, 2007.

Please respond confirming your agreement to this date and location.

Sincerely,

Erica A. Franklin
Intellectual Property Attorney
Commercial Litigation Branch
United States Department of Justice
Tel: (202) 353-0517
Fax: (202) 307-0345

Cc: All counsel

*Four Gateway Center*
*100 Mulberry Street*
*Newark, NJ 07102-4056*
*General: 973-622-4444*
*Direct: 973-639-7903*
*FAX: 973-297-3971*
*jflaherty@mccarter.com*

-----Original Message-----
**From:** Adler, Michael A. [mailto:maa@dmlegal.com]
**Sent:** Tuesday, May 29, 2007 1:05 PM
**To:** Flaherty, John
**Cc:** Denenberg, David W.; Tzortzatos, Dimitra
**Subject:** TDM v. US

This confirms my voice message of this date requesting a few dates for the depositions of Kerri Mullins and the 30(b)(6) witness.

********************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Malito & Hutcher LLP at (800) 793-2843, ext. 3281, and destroy all copies of this message and any attachments.
********************************************************************

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s)and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.

**Tzortzatos, Dimitra**

**From:** Tzortzatos, Dimitra
**Sent:** Tuesday, May 29, 2007 3:04 PM
**To:** 'Flaherty, John'; Adler, Michael A.
**Cc:** Denenberg, David W.; erica.franklin@usdoj.gov
**Subject:** RE: TDM v. US dep dates

John:

The following dates for depositions have been confirmed thus far:

May 31, 2007 - 30(b)(6) deposition of the United States (John Bearce) via telephone
June 6, 2007 - 30(b)(6) deposition of the United States (Joseph Ryan) via telephone
June 7, 2007 - 30(b)(6) deposition of the United States (Joseph Fields) via telephone
June 12, 2007 - 30(b)(6) deposition of EIC Associates at DM&H office
June 22, 2007 - 30(b)(6) deposition of Bean Stuyvesant, LLC in PA
June 26, 2007 - 30(b)(6) deposition of the United States (Bryce Wisemiller) at DM&H office

Please confirm the availability of the witnesses for the following dates:

June 11, 2007 - 30(b)(1) deposition of Kerri Mullins at DM&H office
June 21, 2007 - 30(b)(1) deposition of Paul Witte at DM&H office
July 2, 2007 - 30(b)(6) deposition of DonJon Marine, Co.

Best regards,
Dimitra Tzortzatos, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158
(212) 557-7200

---

**From:** Flaherty, John [mailto:JFlaherty@McCarter.com]
**Sent:** Tuesday, May 29, 2007 1:50 PM
**To:** Adler, Michael A.
**Cc:** Denenberg, David W.; Tzortzatos, Dimitra; erica.franklin@usdoj.gov
**Subject:** RE: TDM v. US dep dates

Michael:

This will confirm our talk that you will let me know what dates are free for these depos in the weeks of June 11 and 18 (or later). As we discussed, I find it difficult to know which dates are available with so many outstanding though unconfirmed notices.

Thank you.

JE Flaherty

*John E. Flaherty, Esq.*
*McCarter & English, LLP*

*Four Gateway Center*
*100 Mulberry Street*
*Newark, NJ 07102-4056*
*General: 973-622-4444*
*Direct: 973-639-7903*
*FAX: 973-297-3971*
*jflaherty@mccarter.com*

-----Original Message-----
**From:** Adler, Michael A. [mailto:maa@dmlegal.com]
**Sent:** Tuesday, May 29, 2007 1:05 PM
**To:** Flaherty, John
**Cc:** Denenberg, David W.; Tzortzatos, Dimitra
**Subject:** TDM v. US

This confirms my voice message of this date requesting a few dates for the depositions of Kerri Mullins and the 30(b)(6) witness.

*********************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify us immediately by email reply to sender or by telephone to Davidoff Malito & Hutcher LLP at (800) 793-2843, ext. 3281, and destroy all copies of this message and any attachments.
*********************************************************************

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s)and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.

**Exhibit 7**

DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

May 8, 2007

**BY EMAIL (jflaherty@mccarter.com)**
**AND REGULAR MAIL**

John E. Flaherty, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Re: **TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Jack:

This letter is to follow on my May 2, 2007 letter regarding deposition and discovery issues.

Please confirm the depositions of Ms. Mullins, Mr. Witte and Donjon's 30(b)(6) witness for May 17, 21 and 29, 2007, respectively. TDM noticed these depositions again. By my May 2, 2007 letter and telephone calls last Friday and again today, I have tried to confirm these.

On a separate issue, due to the number of documents that we require at the depositions, we respectfully request that the depositions take place at this office as noticed. I would, of course, provide you the same courtesy. I do note that the depositions were properly noticed for this office, but had the number of documents been far less, we would have gladly conducted the depositions at your office.

I continue to note the issues with Donjon's interrogatory and document responses described in my May 2, 2007 letter. Also, Donjon's interrogatory response (no. 8) refers to a December 8, 2005 letter from Paul Witte, General Counsel to Raynette Gurney, Conracting

Officer, USACE. That letter has not been produced. If I am mistaken, please provide the production numbers. Otherwise, please produce.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh

cc: Erica A. Franklin, Esq. (by email)
Michael A. Adler, Esq.

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

# DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

WASHINGTON, D.C.
444 NORTH CAPITAL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

May 2, 2007

**BY EMAIL (jflaherty@mccarter.com)**
**AND REGULAR MAIL**

John E. Flaherty, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Re: **TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Jack:

This letter responds to your letter dated April 27, 2007.

After my March 20, 23, 28 and April 2, 2007 letters, and based upon discussions in late March and early April, Donjon was to provide additional and supplemental discovery by April 6, 2007. Then, by your April 6, 2007 letter, Donjon took more time to provide discovery by stating that documents would be produced within two weeks. Donjon's document production continued past April 20, 2007. Another six boxes of documents were produced sometime after the close of business on April 27, 2007. Until these documents are reviewed and the depositions rescheduled, I am not sure that another site visit of what your client is doing at present and during inspection, is necessary. As you know, the issue is the processing that Donjon has been doing for the last several years which is determined from the documents, if produced, and other evidence such as photographs, websites, permits, etc.

To date, TDM waited for Donjon to complete its document production. Is that production now complete? The issues from my letters remain.

The interrogatory responses are deficient. Total volumes of dredged materials treated, total volumes of treated dredged materials disposed upland, total payments and total invoices

therefor are not provided nor are there references to specific documents from which the information may be ascertained. (See interrogatory nos. 11, 12 and 13.) Surely, Donjon has this information. The interrogatories do not seek only paper documents, which are not identified in the answers nor would allow the information to be readily ascertained, but they seek summary information which may be maintained electronically for billing, bookkeeping and other financial purposes. The supplemental response to interrogatory no. 1 (seeking when and how Donjon learned of the patents-in-suit) remains insufficient and false. It is exemplary of Donjon's bad faith in responding to these discovery demands. The responses to interrogatories nos. 2 and 6 are conclusory and no documents are provided or identified and, to the extent the responses refer to the response to interrogatory no. 14, are incomplete. Responses to interrogatory nos. 8, 11, 12 and 13 refer to documents that have not been produced or identified and from which responses are not readily ascertainable. These deficiencies must be corrected.

Responses to document demands with generic references to documents that will be produced are improper. If documents are provided, the response should identify and/or categorize responsive documents. Many of these responses still state that the documents should be first requested from the US. That objection, by order of the court, is improper. All documents must be provided. Are they? Please categorize your response.

I would also respond to Donjon's obsession with a photo in a privileged April 2005 White Paper by referencing TDM's discovery responses. Clearly, there are numerous photos, documents and correspondence with the US, information on websites and permits that should be considered in context and in conjunction with claim construction.

I requested that we schedule the depositions of Ms. Mullins and Mr. Witte during the week of May 14, 2007. Having received no dates from you, I am enclosing rescheduled deposition notices for May 17, 2007 for Ms. Mullins, May 21, 2007 for Mr. Witte and May 29, 2007 for Donjon's Rule 30(b)(6) witness. This is in keeping with your request not to conduct the depositions during the week of May 7, 2007.

Thank you for your attention to this matter.

Very truly yours,

David W. Denenberg

DWD/lsh
Enclosures

cc: Erica A. Franklin, Esq.
Michael A. Adler, Esq.

00358651

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

# DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

WASHINGTON, D.C.
444 NORTH CAPITAL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

April 12, 2007

**BY EMAIL (jflaherty@mccarter.com)**
**AND REGULAR MAIL**

John E. Flaherty, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Re: **TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Mr. Flaherty:

I am writing to confirm our telephonic discussion yesterday regarding document production, discovery responses and deposition scheduling.

This office is reviewing Donjon's supplemental discovery responses and documents sent April 6, 2007. With respect to your April 6, 2007 letter, our discussions confirmed that documents listed in your letter will be produced this week or next week. Those items include, among other things, the supplemental submissions referred to in contracts and permits. We hope to obtain processing information in these productions.

As this office waits for Donjon's production, you and I agreed to reschedule the deposition of Donjon's employees, Kerri Mullins and Thomas Witte to April 26 and 27, 2007. Your April 6, 2007 letter confirms Thomas Witte's availability for either of those dates but you are still confirming Kerry Mullins' availability. With this letter, this office is serving a Rule 30(b)(6) notice on Donjon for those dates under the assumption that these two witnesses could also be designated for the 30(b)(6) topics. If that is not the case, please advise and we can schedule another date for the 30(b)(6) deposition.

I requested that Donjon grant TDM an extension in responding to interrogatories and document demands to April 25, 2007 which you granted. I advised that the responses, unlike

Donjon's to date, would properly refer to responsive documents that are produced and not generically to documents that will be produced or documents produced. Likewise, interrogatory responses would be complete and, where appropriate, refer to specific documents.

The inspection of Donjon's facility is still scheduled for April 25, 2007. The depositions will then follow over the next two days.

Please confirm the depositions for April 26 and 27, 2007 in terms of which day for which deponent and whether the deposition would also cover the 30(b)(6) topics.

Thank you for your attention to this matter. Please call me if you have any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh
Enclosure

cc: Erica A. Franklin, Esq. (w/encl.)
Michael A. Adler, Esq. (w/encl.)

DAVIDOFF MALITO & HUTCHER LLP
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158
(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

March 28, 2007

**BY EMAIL**

Gary J. Campbell, Esq.
McCarter & English, LLP
225 Franklin Street
Boston, MA 02110

Re: **TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Mr. Campbell:

This letter is in regard to Donjon's deficient responses to discovery demands which were received today.

As I suspected in my March 23, 2007 letter and numerous previous letters, documents sought are still not provided. Instead, your office only provided equipment manuals that were designated as "attorneys' eyes only". That designation should be immediately removed. Moreover, documents demanded must be provided.

With respect to responses to document demands, numerous demands state that documents will be provided. They have not been. Please provide immediately. With respect to document demands wherein there is no statement that documents would be provided, it is clear that documents will not be provided. Many of those responses state that the documents should be first requested from the US. That objection, by order of the court, is improper. All documents must be provided.

The interrogatory responses are deficient. The response to interrogatory no. 1 (seeking when and how Donjon learned of the patents-in-suit), "when the '731 patent was put up for auction," contains no details at all and is exemplary of Donjon's bad faith in responding to these discovery demands. The responses to interrogatories no. 2 and no. 6 are conclusory and no documents are provided. There is no response to interrogatory no. 3. Responses to interrogatory nos. 4, 8, 11-13 refer to documents that have not been produced. The response to interrogatory no. 5 does not even list the person verifying the interrogatories as a person with knowledge of the

facts asserted in the answer and defenses. Interrogatory no. 9 is not answered. Interrogatory no. 10 sought identification of contracts, but the response just says there are "less than a dozen contracts"; no details are provided. Interrogatory no. 14 has no response. These deficiencies must be corrected.

This letter further confirms that I called you in an attempt to resolve this dispute. This office is available for discussion today and tomorrow. However, this matter already has been discussed repeatedly and the subject of numerous correspondences. You stated, even on record, that documents would be made available for inspection. It is clear that no requested documents, particularly related to Donjon's processing of dredged materials, will be produced or made available. Your statements that the Department of Justice has somehow taken all the documents related to the process is rather strange, particularly where the responses refer to no attempts that were made by Donjon to obtain the documents, no documents taken by the Department of Justice have been described or explained, no copies were retained, no materials were retained, etc. It is obvious that you only produce what you want to produce.

This office will contact Judge Wheeler regarding this dispute. In a final attempt to work this out, this letter is being sent and we have called you. But, as stated above, this has been discussed and correspondence has been exchanged. You refused to produce documents, adequate responses and/or a date upon which such would be produced. The dispute is clear.

Thank you for your attention to this matter.

Very truly yours,

David W. Denenberg

DWD/lsh

cc: Erica A. Franklin, Esq.

00356928

**Exhibit 8**

COPY

McCARTER ENGLISH
ATTORNEYS AT LAW

June 8, 2007

VIA E-MAIL AND REGULAR MAIL

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

John E. Flaherty
Partner
T. 973 639 7903
F. 973 297 3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BALTIMORE
BOSTON
HARTFORD
NEW YORK
NEWARK
PHILADELPHIA
STAMFORD
WILMINGTON

Re: TDM America, LLC v. The United States of America
Case No. 06-472 C
Re: TDM Responses to Donjon Discovery

Dear Mr. Denenberg:

We have reviewed your client's answers (and supplemental answers) to our interrogatories. They are insufficient, incomplete, and otherwise non-responsive.

We request that you provide full and responsive answers within 10 days. This time period is reasonable because:

1) You have been engaged in investigation in this matter since at least 2005;

2) During discovery you have visited the Donjon operation personally and observed its operation and inspected its equipment. We have provided you with blueprints and manuals describing the equipment;

3) In discovery to date, you have deposed representatives of the USACE who have described to you in general the Donjon operation; you know it does not involve the use of a slurry; and

4) You are aware of prior art introduced at the deposition of Mr. Wisemiller, as well as set out in discovery responses from Donjon and the U.S., that demonstrates the prior use of cement to process dredged materials.

It is in this context that we demand responsive answers to discovery. Here are some examples we expect will be corrected in the next 10 days:

Interrogatories:

**Question 1**

**Identify all steps taken by TDM or UTEX to investigate Donjon's dredging activities prior to the filing of the Lawsuit including, but not limited to, the date such investigation commenced and ended, the identity of Persons**

COPY



**participating in that investigation, the identity of all Persons who participated in observing, recording and/or photographing Donjon's dredging activities or site, and the identity of all such observations, recordings and/or photographs.**

One of your objections to this question is that you sued the U.S., not Donjon. This objection is specious and disingenuous in that your action is based in part on alleged infringement by Donjon. You also object saying the requested information is "more appropriately sought through deposition." We have noticed depositions to explore these issues. However, a responsive answer to this interrogatory is required.

Your initial response three times makes reference to photos taken by Messrs. Studer and Redle, and the self-serving "White Paper" as the basis for this action. The correspondence you cite between your representatives and the U.S., including the Klein letter at TDM 005114-5120, does not contain any descriptions of Donjon's operation based on first hand knowledge of that operation.

Also, the documents you refer to in the final paragraph of your initial response to this question consist of patent file wrappers, description of general USACE activities, and other materials that do not support a claim that Donjon activities infringe the patents.

If there are particular documents among the group you have designated in this answer that pertain to Donjon dredging activities that you received prior to bringing this action, they should be identified, not concealed in a mass of irrelevant references.

As to the supplemental answer to Question 1:

You make reference to permits and other materials without identifying the document in question, from whom obtained, when obtained, etc. This information must be supplied.

You also allude to the April 1, 2005 White Paper as having been submitted to Senator Hatch and the U.S. on a confidential basis. That is irrelevant. What is more relevant is your effort to conceal this claim from the contractors upon whose alleged conduct it was based. See your letter of June 6, 2005 (TDM 006490).

Please provide a complete, responsive answer.

**Question 4:**

**If You claim that Donjon or the United States made any statements or admissions as to the subject matter of this Lawsuit, state: (a) the date made; (b) the name of the Person to whom made; (c) the name and address of the**

COPY



**Person to whom made; (d) where made; (e) the name and address of each Person present at the time the admission was made; (f) the contents of the admission; and (g) if in writing, attach a copy.**

This question seeks in part any admission made by the U.S. or Donjon as to the subject matter of this lawsuit. You have provided no responsive answer. If you claim admissions have been made, say so and tell us what they are. Your general listing of documents, including slides, bid documents and web pages does not answer the question. We are not obligated to search documents to find what you may be claiming to be an admission by Donjon.

**Question No. 5**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and set forth Your proposed construction for each such claim and identify all evidence supporting that construction with reference to the claim language, the specification, the prosecution history, and any other source on which You rely for claim construction (including any basis on which You assert a given definition is the plain meaning of an element or limitation).**

**Question No. 6**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and identify with particularity, for each such claim, the factual basis for such allegation, including an element-by-element comparison of each claim element of the asserted patent claims to Donjon's dredging activities.**

You provide no answer to either question. Your answer to No. 6 merely refers back to No. 5.

Among your specious objections is that the request is "broad and harassing" or that the information is "not relevant and/or...not reasonably calculated to lead to the discovery of admissible evidence." You reiterate your assertion that you action is not against Donjon.

You asserted in your response that you were "thwarted" by non-production of documents by the U.S. and Donjon. That is no longer the case, if it ever was. You now have the benefit of visiting the site openly and observing the operation and inspecting the equipment. You can compare photos taken by your client two years ago to those taken by you and others now and with your own observations.

You provide no claim construction and you provide no explanation or factual basis for any allegation that Donjon's dredging activities infringe any of the patents in suit.

COPY



To the extent you rely upon your April 2005 "White Paper" you now know these contentions to be wrong. You have the testimony of Mr. Wisemiller confirming dry cement is delivered to the dredge material. You also are aware of relevant prior art including the work of the USACE on processing dredged materials with cement. Donjon is entitled to a specific, responsive answer to this question now.

As to TDM's response to Donjon's Request for Production of Documents:

**Request 19:**

**All Documents and Things concerning the '731 patent, including, but not limited to, Documents related to the purported invention itself, its purported reduction to practice, the purported date of conception, any inventor notebooks, diaries or logs and all contracts, licenses and agreements referencing the '731 patent.**

This request asks for materials concerning the '731 patent, including, specifically inventor notebooks. None have been produced. Please provide any notebooks or other responsive materials. If you claim they have been provided, please identify them with specificity.

I am available to confer with you on these and related items Monday thru Wednesday next week.

Very truly yours,

John E. Flaherty

McCARTER ENGLISH
ATTORNEYS AT LAW

June 8, 2007

VIA E-MAIL AND REGULAR MAIL

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

John E. Flaherty
Partner
T. 973 639 7903
F. 973 297 3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BALTIMORE
BOSTON
HARTFORD
NEW YORK
NEWARK
PHILADELPHIA
STAMFORD
WILMINGTON

Re: TDM America, LLC v. The United States of America
Case No. 06-472 C
Your Letter of June 6, 2007

Dear Mr. Denenberg:

I have your letter of June 6, 2007 addressing deposition and discovery status.

The deposition of Kerri Mullins for June 27, 2007 is confirmed. However, the deposition should be at our office in Newark, New Jersey. As I discussed with Mr. Adler, we feel the depositions should be in New Jersey as it is more convenient for the witnesses and is closer to their work.

Likewise, Tom Witte's deposition is confirmed for July 2, 2007 and should be at our office in Newark.

Please confirm the depositions of Ms. Mullins and Mr. Witte for my office in Newark. If you don't want to come to New Jersey, you can attend by phone as Mr. Adler did with depositions conducted of USACE witnesses in Florida and California. Your suggestion that the resolution of this issue requires motion practice is not productive.

As to the depositions of Paul Witte and John Arnold Witte, I assume we are looking at dates after July 4. I will check into that and get back to you.

Your June 6 letter refers back to your May 2, 2007 letter, particularly your complaints about interrogatory numbers 11-13. Those complaints are not well founded. As you have learned from at least three witnesses so far, the contractors are not paid for processing alone. We have provided you with the final payment estimates in our possession signed by Tom Witte. We have identified those with particularity in our most recent supplement to answers to interrogatories. These documents were already in your possession. Processing volume data can be derived from the log book copies that were delivered to you on or about April 6, 2007 and I believe are included in pages Donjon 268-3236. The log books are the way that information is maintained at Donjon.

McCARTER ENGLISH



Your suggestion that our response to interrogatories 2, 6, and 14 concerning Donjon operations remain conclusory or incomplete is disingenuous. If you were not familiar with Donjon's operation at the time you filed this action, you most certainly are now. After our repeated invitation to you and your clients, you and Mr. Adler visited the site on April 26, 2007. You were given access to every piece of equipment, watched the operation, took photographs, and stayed as long as you liked. Your clients were invited to attend but chose not to, despite a repeated invitation. Details of the operation have been laid before you in discovery responses and the site visits.

What does need to be addressed is the fact that your April 2005 letter included in a submission to Senator Hatch misstates critical elements of the Donjon operation. For instance, you claimed to see a separate mixing container where none existed. This error and others were apparently based on inadequate research by your clients (Messrs. Studer and Redle) which error was compounded by:1) initiating this action without obtaining first hand confirmation that the operation likely infringes a valid claim of the patent in question and, 2) continuing the action in the face of information and observation confirming the Donjon operation does not infringe the patent.

This deficiency and others is apparent in your incomplete and non-responsive answers to our discovery requests, a subject addressed in my letter sent to you earlier today (also dated June 8, 2007), a copy of which is attached to this letter.

Again, I request that you reconsider your position on the site for the depositions of Donjon witnesses and not require motion practice on this subject.

Very truly yours,

John E. Flaherty

**Exhibit 9**

DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

June 12, 2007

**BY EMAIL (jflaherty@mccarter.com)**
**AND REGULAR MAIL**

John E. Flaherty, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

**Re: TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Jack:

This letter responds to your June 8, 2007 letter addressing deposition and discovery status, which was sent after the close of business last Friday and received yesterday.

With respect to the depositions of your clients, this confirms the depositions of Kerri Mullins and Tom Witte will take place on June 27, 2007 and July 2, 2007, respectively. However, the location remains problematic. Noticing the depositions to occur at our offices is proper. As you know from experience, from having attended several depositions in this case, and as we have explained again and again, the large number of documents (literally boxes upon boxes), makes taking a deposition at a location other than this office cumbersome and burdensome. I am not sure why this needs to be repeated again.

Your comment recommending that we should take the deposition by telephone (and the posture of the entire June 8 letter) is not well taken. As I am sure you can appreciate, because Donjon is/was a contractor for at least half of the New York district contracts identified to date and a subcontractor for others, there is substantially more documentation for the Donjon depositions than the single contract depositions for Los Angeles or Florida. Obviously, the greater number of documents makes a telephonic deposition onerous. Thus, a telephone

deposition is out of the question. Moreover, you provide no justifiable reason why your clients cannot come to this office.

Your finally responding to discovery issues raised in my March, April and May letters, some 40-80 days after they were raised, belies your litigation tactics. Although you demand that TDM responds to the alleged sudden deficiencies in its discovery responses within ten days, Donjon took over six weeks to complain about the alleged discovery responses. You and I both know that Donjon's sudden and abrupt urgency with TDM's allegedly deficient responses comes on the eve of the submission of a joint status report so that Donjon can include the issue in the status report. This office has for months advised of Donjon's discovery deficiencies which remain deficient. Total volumes still cannot be ascertained from the 3000 documents to which you refer. Moreover, interrogatories seeking process should be responded to. To say that we should find the response someplace else is not proper nor does it set forth Donjon's position.

Donjon also continues to complain about one photograph from an April 2005 letter sent to the US Army Corps of Engineers as part of a privileged settlement communication. Your obsession, and your client's obsession, with a privileged photograph from an April 2005 settlement letter which you misconstrue and misinterpret is not shared. Enough already. I appreciate that one of your discovery tactics is to intimidate --your repeated threats that inadequate research was done about your client is misguided and your unrefined intimidation tactics are not working. My client and its counsel attempted to negotiate with the US and that resulted in an administrative claim. I am certain that you are aware of that. Some 14 months later, this action was initiated. During that time, much information was gathered prior to commencing this suit.

As to Donjon's activities, your orchestrated site inspections in 2007 say little about what really takes place. Public records including permits demonstrate Donjon's process and no inspection could demonstrate what takes place inside Donjon's system. Newly revised responses, essentially a self-serving argument and nothing more, that the permits are somehow mistaken contradicts the publicly available information and supports TDM's view. The argument relies upon the strained position that Donjon is committing a continuing fraud (for years) on the permitting agencies because Donjon knowingly has not been in compliance with the permits. Undoubtedly, the court and even the US will evaluate whether Donjon's position is reasonable.. Photographs speak for themselves; permits speak for themselves, and contracts speak for themselves and Donjon's explanations that its permits are somehow mistaken and that it does not really have to comply with legal and contractual requirements will be subject to scrutiny and questions of credibility.

Likewise, Donjon refused to respond to any request not related to the '731 patent. Is that to say that contracts where your client subcontracted for the treatment of dredged materials at land-based facilities are somehow exempt from the suit? They are not. Responses are required.

Depositions noticed for New York will take place in New York. Your client's responses are deficient. Your waiting over two months to complain about TDM's responses and then demand supplementation in ten days should be seen for exactly what it is. As always, in good faith, we will respond.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

David W. Denenberg

DWD/lsh

cc: Erica A. Franklin, Esq. (by email)
Michael A. Adler, Esq.