**Exhibit A**

COPY

McCARTER ENGLISH
ATTORNEYS AT LAW

June 8, 2007

VIA E-MAIL AND REGULAR MAIL

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

John E. Flaherty
Partner
T. 973 639 7903
F. 973 297 3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BALTIMORE
BOSTON
HARTFORD
NEW YORK
NEWARK
PHILADELPHIA
STAMFORD
WILMINGTON

Re: TDM America, LLC v. The United States of America
Case No. 06-472 C
Re: TDM Responses to Donjon Discovery

Dear Mr. Denenberg:

We have reviewed your client's answers (and supplemental answers) to our interrogatories. They are insufficient, incomplete, and otherwise non-responsive.

We request that you provide full and responsive answers within 10 days. This time period is reasonable because:

1) You have been engaged in investigation in this matter since at least 2005;

2) During discovery you have visited the Donjon operation personally and observed its operation and inspected its equipment. We have provided you with blueprints and manuals describing the equipment;

3) In discovery to date, you have deposed representatives of the USACE who have described to you in general the Donjon operation; you know it does not involve the use of a slurry; and

4) You are aware of prior art introduced at the deposition of Mr. Wisemiller, as well as set out in discovery responses from Donjon and the U.S., that demonstrates the prior use of cement to process dredged materials.

It is in this context that we demand responsive answers to discovery. Here are some examples we expect will be corrected in the next 10 days:

<u>Interrogatories</u>:

**<u>Question 1</u>**

**Identify all steps taken by TDM or UTEX to investigate Donjon's dredging activities prior to the filing of the Lawsuit including, but not limited to, the date such investigation commenced and ended, the identity of Persons**

COPY



**participating in that investigation, the identity of all Persons who participated in observing, recording and/or photographing Donjon's dredging activities or site, and the identity of all such observations, recordings and/or photographs.**

One of your objections to this question is that you sued the U.S., not Donjon. This objection is specious and disingenuous in that your action is based in part on alleged infringement by Donjon. You also object saying the requested information is "more appropriately sought through deposition." We have noticed depositions to explore these issues. However, a responsive answer to this interrogatory is required.

Your initial response three times makes reference to photos taken by Messrs. Studer and Redle, and the self-serving "White Paper" as the basis for this action. The correspondence you cite between your representatives and the U.S., including the Klein letter at TDM 005114-5120, does not contain any descriptions of Donjon's operation based on first hand knowledge of that operation.

Also, the documents you refer to in the final paragraph of your initial response to this question consist of patent file wrappers, description of general USACE activities, and other materials that do not support a claim that Donjon activities infringe the patents.

If there are particular documents among the group you have designated in this answer that pertain to Donjon dredging activities that you received prior to bringing this action, they should be identified, not concealed in a mass of irrelevant references.

As to the supplemental answer to Question 1:

You make reference to permits and other materials without identifying the document in question, from whom obtained, when obtained, etc. This information must be supplied.

You also allude to the April 1, 2005 White Paper as having been submitted to Senator Hatch and the U.S. on a confidential basis. That is irrelevant. What is more relevant is your effort to conceal this claim from the contractors upon whose alleged conduct it was based. See your letter of June 6, 2005 (TDM 006490).

Please provide a complete, responsive answer.

**Question 4:**

**If You claim that Donjon or the United States made any statements or admissions as to the subject matter of this Lawsuit, state: (a) the date made; (b) the name of the Person to whom made; (c) the name and address of the**

COPY



**Person to whom made; (d) where made; (e) the name and address of each Person present at the time the admission was made; (f) the contents of the admission; and (g) If in writing, attach a copy.**

This question seeks in part any admission made by the U.S. or Donjon as to the subject matter of this lawsuit. You have provided no responsive answer. If you claim admissions have been made, say so and tell us what they are. Your general listing of documents, including slides, bid documents and web pages does not answer the question. We are not obligated to search documents to find what you may be claiming to be an admission by Donjon.

**Question No. 5**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and set forth Your proposed construction for each such claim and identify all evidence supporting that construction with reference to the claim language, the specification, the prosecution history, and any other source on which You rely for claim construction (including any basis on which You assert a given definition is the plain meaning of an element or limitation).**

**Question No. 6**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and identify with particularity, for each such claim, the factual basis for such allegation, including an element-by-element comparison of each claim element of the asserted patent claims to Donjon's dredging activities.**

You provide no answer to either question. Your answer to No. 6 merely refers back to No. 5.

Among your specious objections is that the request is "broad and harassing" or that the information is "not relevant and/or...not reasonably calculated to lead to the discovery of admissible evidence." You reiterate your assertion that you action is not against Donjon.

You asserted in your response that you were "thwarted" by non-production of documents by the U.S. and Donjon. That is no longer the case, if it ever was. You now have the benefit of visiting the site openly and observing the operation and inspecting the equipment. You can compare photos taken by your client two years ago to those taken by you and others now and with your own observations.

You provide no claim construction and you provide no explanation or factual basis for any allegation that Donjon's dredging activities infringe any of the patents in suit.

COPY



To the extent you rely upon your April 2005 "White Paper" you now know these contentions to be wrong. You have the testimony of Mr. Wisemiller confirming dry cement is delivered to the dredge material. You also are aware of relevant prior art including the work of the USACE on processing dredged materials with cement. Donjon is entitled to a specific, responsive answer to this question now.

As to TDM's response to Donjon's Request for Production of Documents:

**Request 19:**

**All Documents and Things concerning the '731 patent, including, but not limited to, Documents related to the purported invention itself, its purported reduction to practice, the purported date of conception, any inventor notebooks, diaries or logs and all contracts, licenses and agreements referencing the '731 patent.**

This request asks for materials concerning the '731 patent, including, specifically inventor notebooks. None have been produced. Please provide any notebooks or other responsive materials. If you claim they have been provided, please identify them with specificity.

I am available to confer with you on these and related items Monday thru Wednesday next week.

Very truly yours,

John E. Flaherty

Exhibit B

THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM AMERICA, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant<br>and<br>DONJON MARINE COMPANY, INC.<br>Interested Party. | Case No. 06-472 C<br>Judge Thomas C. Wheeler |

**DONJON MARINE COMPANY INC.'S SECOND SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-14)**

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims ("RCFC"), Interested Party Donjon Marine Company, Inc. ("Donjon") hereby supplements its response to Plaintiff TDM America, LLC's ("TDM") First Set of Interrogatories (Nos. 1-14) to Interested Party Donjon.

**GENERAL OBJECTIONS**

The following General Objections apply to each of TDM's Interrogatories. Each response provided below is made subject to these General Objections as well as subject to any specific objection to any Interrogatory, without waiver of any such objection.

1. Donjon objects to these Interrogatories to the extent that they are inconsistent with, or impose obligations beyond that required by the RCFC, any discovery plan that may be agreed to by the parties and approved by the Court, or any other schedule or rulings that may be

Interrogatory to the extent it calls for copies of contracts for its treatment of dredged materials with the United States. Donjon does not enter into contracts with the United States for the treatment of dredged materials. Further, copies of Donjon's dredging contracts are in the possession of the United States. The information requested in this Interrogatory should first be directed to the United States. Donjon further objects to this Interrogatory to the extent it calls for documents or information beyond the six (6) year period for which damages can be claimed. Donjon also objects to this Interrogatory to the extent it calls for contracts and/or financial information prior to the purported issuance of the '731 patent. Contracts and/or financial information prior to 2001 are irrelevant to this action.

Subject to and without waiving its objections, Donjon responds as follows:

Donjon will produce non-privileged documents, if any, from which an answer to this Interrogatory may be derived or ascertained.

**FIRST SUPPLEMENTAL RESPONSE:**

See supplemental response to Interrogatory No. 10. Further, Donjon will provide non-privileged materials from which this information can be obtained. However, Donjon states that it is not in possession of all relevant contracts.

**SECOND SUPPLEMENTAL RESPONSE:**

Response remains the same.

**INTERROGATORY NO. 12**

State separately and with particularity, the total amount of payments invoiced and/or otherwise requested by Donjon of the US or a contractor of the US, and the total amounts paid by the US to Donjon or a contractor of the US, for dredging activities, treatment of dredged materials and upland disposal of dredged materials for each year beginning in 1997 to the present

and, if possible, relate the amounts to each particular contract identified in response to interrogatory no. 10.

**RESPONSE:**

Donjon objects to this Interrogatory as overly broad, unduly burdensome, harassing and not reasonably likely or calculated to lead to the discovery of admissible evidence which subjects Donjon to undue expense. Donjon further objects to this Interrogatory as vague and ambiguous as to the phrase "a contractor of the US." Donjon also objects to this Interrogatory to the extent it calls for the production of documents not in its custody or control. Donjon also objects to this Interrogatory to the extent it calls for copies of contracts for its treatment of dredged materials with the United States. Donjon does not enter into contracts with the United States for the treatment of dredged materials. Further, copies of Donjon's dredging contracts are in the possession of the United States. The information requested in this Interrogatory should first be directed to the United States. Further, to the extent this Interrogatory calls for documents and/or information related to "payments invoiced" or "amounts paid" for Donjon's treatment of dredge materials and/or upland disposal of dredge materials, Donjon states that this information does not exist and is not kept in the ordinary course of business. Donjon further objects to this Interrogatory to the extent it calls for documents or information beyond the six (6) year period for which damages can be claimed. Further, Donjon does not maintain information responsive to this Interrogatory in its regular course of business. Donjon also objects to this Interrogatory to the extent it calls for contracts and/or financial information prior to the purported issuance of the '731 patent. Contracts and/or financial information prior to 2001 are irrelevant to this action.

Subject to and without waiving its objections, Donjon responds as follows:

Donjon will produce non-privileged documents, if any, from which overall payments may be derived or ascertained.

**FIRST SUPPLEMENTAL RESPONSE:**

See supplemental response to Interrogatory No. 10. Further, Donjon will provide non-privileged materials from which this information can be obtained. However, Donjon states that it is not in possession of all relevant contracts.

**SECOND SUPPLEMENTAL RESPONSE:**

Final payment estimates signed by Thomas Witte can be found at:

1. Donjon 006390-91
2. Donjon 007256
3. Donjon 005987
4. Donjon 004370-71
5. Donjon 005202-04
6. Donjon 003771
7. Donjon 005071

**INTERROGATORY NO. 13**

State separately and with particularity, the total amount of payments invoiced and/or otherwise requested by Donjon of the US or a contractor of the US, and the total amounts paid by the US to Donjon or a contractor of the US, by region and by district, for dredging activities, treatment of dredged materials and upland disposal of dredged materials for each year beginning in 1997 to the present.

**RESPONSE:**

Donjon objects to this Interrogatory as overly broad, unduly burdensome, harassing and not reasonably likely or calculated to lead to the discovery of admissible evidence which subjects Donjon to undue expense. Donjon further objects to this Interrogatory as vague and ambiguous

as to the phrase "a contractor of the US." Donjon also objects to this Interrogatory to the extent it calls for the production of documents not in its custody or control. Donjon objects to this Interrogatory as cumulative and duplicative of other Interrogatories. Donjon also objects to this Interrogatory to the extent it calls for copies of contracts for its treatment of dredged materials with the United States. Donjon does not enter into contracts with the United States for the treatment of dredged materials. Further, copies of Donjon's dredging contracts are in the possession of the United States. The information requested in this Interrogatory should first be directed to the United States. Further, to the extent this Interrogatory calls for documents and/or information related to "payments invoiced" or "amounts paid" for Donjon's treatment of dredge materials and/or upland disposal of dredge materials, Donjon states that this information does not exist and is not kept in the ordinary course of business. Donjon further objects to this Interrogatory to the extent it calls for documents or information beyond the six (6) year period for which damages can be claimed. Donjon also objects to this Interrogatory to the extent it calls for contracts and/or financial information prior to the purported issuance of the '731 patent. Contracts and/or financial information prior to 2001 are irrelevant to this action.

Subject to and without waiving its objections, Donjon responds as follows:

See response to Interrogatory No. 12.

**FIRST SUPPLEMENTAL RESPONSE:**

See supplemental response to Interrogatory No. 10. Further, Donjon will provide non-privileged materials from which this information can be obtained. However, Donjon states that it is not in possession of all relevant contracts.

**SECOND SUPPLEMENTAL RESPONSE:**

Response remains the same.

**Exhibit C**

McCARTER ENGLISH
ATTORNEYS AT LAW

June 8, 2007

VIA E-MAIL AND REGULAR MAIL

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

John E. Flaherty
Partner
T. 973 639 7903
F. 973 297 3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BALTIMORE
BOSTON
HARTFORD
NEW YORK
NEWARK
PHILADELPHIA
STAMFORD
WILMINGTON

Re: TDM America, LLC v. The United States of America
Case No. 06-472 C
Re: TDM Responses to Donjon Discovery

Dear Mr. Denenberg:

We have reviewed your client's answers (and supplemental answers) to our interrogatories. They are insufficient, incomplete, and otherwise non-responsive.

We request that you provide full and responsive answers within 10 days. This time period is reasonable because:

1) You have been engaged in investigation in this matter since at least 2005;

2) During discovery you have visited the Donjon operation personally and observed its operation and inspected its equipment. We have provided you with blueprints and manuals describing the equipment;

3) In discovery to date, you have deposed representatives of the USACE who have described to you in general the Donjon operation; you know it does not involve the use of a slurry; and

4) You are aware of prior art introduced at the deposition of Mr. Wisemiller, as well as set out in discovery responses from Donjon and the U.S., that demonstrates the prior use of cement to process dredged materials.

It is in this context that we demand responsive answers to discovery. Here are some examples we expect will be corrected in the next 10 days:

Interrogatories:

**Question 1**

**Identify all steps taken by TDM or UTEX to investigate Donjon's dredging activities prior to the filing of the Lawsuit including, but not limited to, the date such investigation commenced and ended, the identity of Persons**

McCARTER ENGLISH

**participating in that investigation, the identity of all Persons who participated in observing, recording and/or photographing Donjon's dredging activities or site, and the identity of all such observations, recordings and/or photographs.**

One of your objections to this question is that you sued the U.S., not Donjon. This objection is specious and disingenuous in that your action is based in part on alleged infringement by Donjon. You also object saying the requested information is "more appropriately sought through deposition." We have noticed depositions to explore these issues. However, a responsive answer to this interrogatory is required.

Your initial response three times makes reference to photos taken by Messrs. Studer and Redle, and the self-serving "White Paper" as the basis for this action. The correspondence you cite between your representatives and the U.S., including the Klein letter at TDM 005114-5120, does not contain any descriptions of Donjon's operation based on first hand knowledge of that operation.

Also, the documents you refer to in the final paragraph of your initial response to this question consist of patent file wrappers, description of general USACE activities, and other materials that do not support a claim that Donjon activities infringe the patents.

If there are particular documents among the group you have designated in this answer that pertain to Donjon dredging activities that you received prior to bringing this action, they should be identified, not concealed in a mass of irrelevant references.

As to the supplemental answer to Question 1:

You make reference to permits and other materials without identifying the document in question, from whom obtained, when obtained, etc. This information must be supplied.

You also allude to the April 1, 2005 White Paper as having been submitted to Senator Hatch and the U.S. on a confidential basis. That is irrelevant. What is more relevant is your effort to conceal this claim from the contractors upon whose alleged conduct it was based. See your letter of June 6, 2005 (TDM 006490).

Please provide a complete, responsive answer.

**Question 4:**

**If You claim that Donjon or the United States made any statements or admissions as to the subject matter of this Lawsuit, state: (a) the date made; (b) the name of the Person to whom made; (c) the name and address of the**

McCARTER ENGLISH



**Person to whom made; (d) where made; (e) the name and address of each Person present at the time the admission was made; (f) the contents of the admission; and (g) if in writing, attach a copy.**

This question seeks in part any admission made by the U.S. or Donjon as to the subject matter of this lawsuit. You have provided no responsive answer. If you claim admissions have been made, say so and tell us what they are. Your general listing of documents, including slides, bid documents and web pages does not answer the question. We are not obligated to search documents to find what you may be claiming to be an admission by Donjon.

**Question No. 5**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and set forth Your proposed construction for each such claim and identify all evidence supporting that construction with reference to the claim language, the specification, the prosecution history, and any other source on which You rely for claim construction (including any basis on which You assert a given definition is the plain meaning of an element or limitation).**

**Question No. 6**

**If You allege or believe that Donjon dredging activities infringe any of the claims of the Patents in suit identify each such claim and identify with particularity, for each such claim, the factual basis for such allegation, including an element-by-element comparison of each claim element of the asserted patent claims to Donjon's dredging activities.**

You provide no answer to either question. Your answer to No. 6 merely refers back to No. 5.

Among your specious objections is that the request is "broad and harassing" or that the information is "not relevant and/or...not reasonably calculated to lead to the discovery of admissible evidence." You reiterate your assertion that you action is not against Donjon.

You asserted in your response that you were "thwarted" by non-production of documents by the U.S. and Donjon. That is no longer the case, if it ever was. You now have the benefit of visiting the site openly and observing the operation and inspecting the equipment. You can compare photos taken by your client two years ago to those taken by you and others now and with your own observations.

You provide no claim construction and you provide no explanation or factual basis for any allegation that Donjon's dredging activities infringe any of the patents in suit.

McCARTER ENGLISH

To the extent you rely upon your April 2005 "White Paper" you now know these contentions to be wrong. You have the testimony of Mr. Wisemiller confirming dry cement is delivered to the dredge material. You also are aware of relevant prior art including the work of the USACE on processing dredged materials with cement. Donjon is entitled to a specific, responsive answer to this question now.

As to TDM's response to Donjon's Request for Production of Documents:

**Request 19:**

**All Documents and Things concerning the '731 patent, including, but not limited to, Documents related to the purported invention itself, its purported reduction to practice, the purported date of conception, any inventor notebooks, diaries or logs and all contracts, licenses and agreements referencing the '731 patent.**

This request asks for materials concerning the '731 patent, including, specifically inventor notebooks. None have been produced. Please provide any notebooks or other responsive materials. If you claim they have been provided, please identify them with specificity.

I am available to confer with you on these and related items Monday thru Wednesday next week.

Very truly yours,

John E. Flaherty

ME1 6484210v.1

McCARTER ENGLISH
ATTORNEYS AT LAW

June 8, 2007

VIA E-MAIL AND REGULAR MAIL

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

John E. Flaherty
Partner
T. 973 639 7903
F. 973 297 3971
jflaherty@mccarter.com

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
T. 973.622.4444
F. 973.624.7070
www.mccarter.com

BALTIMORE
BOSTON
HARTFORD
NEW YORK
NEWARK
PHILADELPHIA
STAMFORD
WILMINGTON

Re: TDM America, LLC v. The United States of America
Case No. 06-472 C
Your Letter of June 6, 2007

Dear Mr. Denenberg:

I have your letter of June 6, 2007 addressing deposition and discovery status.

The deposition of Kerri Mullins for June 27, 2007 is confirmed. However, the deposition should be at our office in Newark, New Jersey. As I discussed with Mr. Adler, we feel the depositions should be in New Jersey as it is more convenient for the witnesses and is closer to their work.

Likewise, Tom Witte's deposition is confirmed for July 2, 2007 and should be at our office in Newark.

Please confirm the depositions of Ms. Mullins and Mr. Witte for my office in Newark. If you don't want to come to New Jersey, you can attend by phone as Mr. Adler did with depositions conducted of USACE witnesses in Florida and California. Your suggestion that the resolution of this issue requires motion practice is not productive.

As to the depositions of Paul Witte and John Arnold Witte, I assume we are looking at dates after July 4. I will check into that and get back to you.

Your June 6 letter refers back to your May 2, 2007 letter, particularly your complaints about interrogatory numbers 11-13. Those complaints are not well founded. As you have learned from at least three witnesses so far, the contractors are not paid for processing alone. We have provided you with the final payment estimates in our possession signed by Tom Witte. We have identified those with particularity in our most recent supplement to answers to interrogatories. These documents were already in your possession. Processing volume data can be derived from the log book copies that were delivered to you on or about April 6, 2007 and I believe are included in pages Donjon 268-3236. The log books are the way that information is maintained at Donjon.

McCARTER ENGLISH



Your suggestion that our response to interrogatories 2, 6, and 14 concerning Donjon operations remain conclusory or incomplete is disingenuous. If you were not familiar with Donjon's operation at the time you filed this action, you most certainly are now. After our repeated invitation to you and your clients, you and Mr. Adler visited the site on April 26, 2007. You were given access to every piece of equipment, watched the operation, took photographs, and stayed as long as you liked. Your clients were invited to attend but chose not to, despite a repeated invitation. Details of the operation have been laid before you in discovery responses and the site visits.

What does need to be addressed is the fact that your April 2005 letter included in a submission to Senator Hatch misstates critical elements of the Donjon operation. For instance, you claimed to see a separate mixing container where none existed. This error and others were apparently based on inadequate research by your clients (Messrs. Studer and Redle) which error was compounded by:1) initiating this action without obtaining first hand confirmation that the operation likely infringes a valid claim of the patent in question and, 2) continuing the action in the face of information and observation confirming the Donjon operation does not infringe the patent.

This deficiency and others is apparent in your incomplete and non-responsive answers to our discovery requests, a subject addressed in my letter sent to you earlier today (also dated June 8, 2007), a copy of which is attached to this letter.

Again, I request that you reconsider your position on the site for the depositions of Donjon witnesses and not require motion practice on this subject.

Very truly yours,

John E. Flaherty

ME1 6499103v.1

**Exhibit D**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

--------------------------------------------)
TDM AMERICA, LLC )
Plaintiff, )
vs. )
)
THE UNITED STATES )
)
Defendant. )
and )
DONJON MARINE COMPANY, INC., )
Third-Party Defendant. )
--------------------------------------------)

May 10, 2007

9:31 a.m.

**** C O N F I D E N T I A L *****

Contains PROPRIETARY INFORMATION. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose PROPRIETARY INFORMATION is included.

**********************************

DEPOSITION of Defendant by BRYCE W. WISEMILLER, held at the offices of Davidoff, Malito & Hutcher, LLP, 605 Third Avenue, New York, New York, pursuant to Notice, before ELIZABETH SANTAMARIA, a Notary Public of the State of New York.

please. Thank you.

Q. When you visited this facility, Berth 36, did you view the processing of dredged material?

02:27:28

A. Yes.

Q. The process involved, did it involve a land-based system?

A. No.

02:27:34

Q. Was it a barge-based system?

A. Yes.

Q. Did the process occur --

A. May I clarify that statement?

Q. Sure.

.27:46

A. The material is processed in the barge at their facility. Their facility involves -- compounds of their facility involve, of course, storage tanks and room for the excavators to move around on land. It's not all on barge.

02:28:06

Q. Correct. I understand.

A. Sorry.

Q. Now, in your own words, can you then generally describe what you saw?

A. They have at their facility the scows after having been dewatered of excess supernatant.

02:28:21

Wisemiller

The dredged material is brought to the facility, the amount of material in the scow is estimated as per the requirements of their permit with the state at a 02:28:52 number of locations to determine the volume and, therefore, the weight of material, so as to be able to add the proper amount of cement. The cement is held in hopper storage bins and is via, I believe, an air pneumatic system pumped out a chute on a boom 02:29:18 arm, where it is added directly, dry cement, to the dredged material in the scow.

The nozzles described in this section of the requirements on Page 1 of 39 are at the end of that discharge boom and are -- Donjon is required 02:29:43 to operate them as necessary to prevent fugitive emissions, dust, from coming off as the cement is added directly to the dredged material in the scow.

Do you need me to describe the processing of the material either before or after 02:30:01 the addition of cement?

Q. Well, prior to the addition of cement, how does the dredged material get into the scow?

A. The contractor as part of their 02:30:41 submission provides information as to what type of