**Exhibit 5**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

TDM AMERICA, LLC, :

Plaintiff, :

:

-against- Index No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant,

- and - :

DONJON MARINE COMPANY, INC.,

:

Third-Party Defendant.

:

- - - - - - - - - - - - - - - - - - - - -x

CONTINUED DEPOSITION of BRYCE W. WISEMILLER, taken by Plaintiff at the offices of Davidoff, Malito & Hutcher, 605 Third Avenue, New York, New York 10158, on Tuesday, May 22, 2007, commencing at 9:38 o'clock a.m., before Annette Forbes, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

A As I recall, the processing facility that took the material prior to upland placement was OENJ Cherokee facility in Bayonne.
11:15:10 Q Was that a land-based process?
A Yes.
Q Was that like you described in your earlier testimony?
A Yes.
11:15:18 Q I show you Plaintiff's Exhibit No. 64, ask you to review it, whether or not you recognize it?
A Just so it's clear on that point, the taking of the material upland on that last
11:15:33 exhibit was at the request of and with the funds provided by the non-Federal sponsor, the Port Authority, not a Corps decision.
Q Not a, I'm sorry?
A Not a Corps decision to take the
11:15:46 material upland or execute the option.
Q Who issued the contract?
A We.
Q The Corps?
A The Corps issued the contract. It
11:15:55 was the sponsor, a non-Federal sponsor with the

Exhibit 6

UNITED STATES DISTRICT COURT OF FEDERAL CLAIMS

-----------------------------------------x

TDM AMERICA, LLC,

Plaintiff,

- vs -

THE UNITED STATES OF AMERICA,

Defendant, INDEX No. 06-472-C

- and -

DONJON MARINE COMPANY, INC.,

Third-Party Defendant.

-----------------------------------------x

TRANSCRIPT MARKED PROPRIETARY

Deposition of HAROLD HAWKINS, taken by Plaintiff, pursuant to Notice, at the offices of Davidoff, Malito & Hutcher LLP, 605 Third Avenue, New York, New York, on Wednesday, May 16, 2007 commencing at 9:40 a.m., before Linda D. Danelczyk, a Certified Shorthand Reporter, Registered Professional Reporter and a Notary Public of the State of New York.

awarded this contract?

A. This was Donjon Marine.

Q. And do you know whether or not

10:55:56 Donjon Marine -- oh. Do you know whether or not dredged material was treated under this contract?

A. Yes, it was.

Q. Do you know whether or not -- do you know the entity of who actually performed the

10:56:08 treatment of the dredged material under this contract?

A. It was OENJ Cherokee.

Q. Did you ever visit the -- where was the OENJ -- do you know where the OENJ Cherokee

10:56:22 site was located?

A. OENJ is located in Bayonne.

Q. Did you ever visit the site?

A. Yes.

Q. About how many times?

10:56:30 A. Twice. Maybe three times.

Q. And do you know, did you see any treatment of dredged material going on?

A. I saw treatment of dredged material, yes.

10:56:39 Q. And what did you -- about when did

you have -- about what -- in what time period did you visit the site?

A. Sometime shortly after this contract

10:56:48 was awarded --

Q. And what do you recall --

A. -- 2000.

Q. And what do you recall seeing?

A. I saw material being offloaded from

10:56:55 scows, put through a strainer; being fed into a pug mill. Material being offloaded from the pug mill into dump trucks, and being driven off and disposed of onto the site.

Q. Do you recall seeing any type of

1 57:20 screening involved in the OENJ process that separates larger chunks of dredged materials from smaller ones?

A. As I said, they put it through a screen when they offloaded the scow.

10:57:32 Q. Do you know whether or not that screen moves?

A. I don't offhand remember whether it moved or not.

Q. Do you know whether or not there is

10:57:55 anyone at the Army Corps that oversees or

A. No. I don't recall.

Q. On the document that's listed as Exhibit No. 80, the entry under pay says, "Donjon/CTI, a joint venture."

03:29:10

Do you have an understanding of what that is?

A. It's a contract that they, basically they entered into as a joint venture. I mean, you -- you can have more than one contractor bidding a job as a joint venture.

03:29:23

Q. And do you know whether treatment of dredged material was occurring at which site of this contract?

MS. FRANKLIN: Objection. Lacks foundation.

0_.29:36

Q. You were responsible for this contract?

A. Yes.

Area seven, they basically used, I think, Clean Earth for area seven.

03:29:42

Q. Do you know?

A. I take that back. They -- they used area seven was OENJ. No, wait a minute. It gets confusing sometimes.

)3:30:00

**Exhibit 7**

UNITED STATES COURT OF FEDERAL CLAIMS

----------------------X

TDM AMERICA, LLC :
Plaintiff, :
:
-vs- :
:
THE UNITED STATES OF :
AMERICA :
Defendant, :
and :
DONJON MARINE COMPANY, :
INC. :
Interested Party : CASE NO. 06-472-C

----------------------X

COPY

Oral deposition of JAMES P. THOMAS was taken, pursuant to notice, held at the offices of Knipes-Cohen Associates, 400 Market Street, 11th Floor, Philadelphia, Pennsylvania 19106, on Friday, June 22, 2007 beginning at or about 10:30 a.m., before Debra J. Veneziale, Court Reporter and Notary Public, there being present:

- - -

JOB NO. 12824

A. Yes. This is a final pay estimate.

Q. Oh, it includes the $100?

A. Yes.

MR. ADLER: Can we break for about five minutes here.

- - -

(Whereupon, a short break was taken at this time.)

- - -

BY MR. ADLER:

Q. Now, there is one other contract that Bean has with the United States, correct, and that was for S-KVK Area 5?

A. Yes.

Q. And do you -- was there a -- was dredged material processed there also by a subcontractor?

A. Yes.

Q. And who was that?

A. OENJ.

Q. So, let's first go then to the first -- let's just reference then the first three contracts that we discussed this morning with respect to Clean Earth being the processor.

A. Located in the Constable Hook area of Bayonne.

Q. And that was a different location from Clean Earth site?

A. Yes.

Q. Do you know whether or not OENJ itself was doing the processing or did another company do it?

A. I believe that OENJ -- they had somebody doing the processing for them on site. I don't know if they were a separate entity or directly employed by OENJ.

Q. Are you familiar with a company by the name of EIC Associates?

A. It rings a bell, yes.

Q. Do you know whether or not that was the company that was doing the processing for OENJ?

A. I don't know whether or not they were, no. Our contractor was directly with OENJ.

Q. Was OENJ the only processor that was treating dredged material during this contract on behalf of Bean?

A. Yes.

Q. When you visited -- well, was this a

**Exhibit 8**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-------------------------------x

TDM AMERICA, LLC,

Plaintiff,

vs. No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant.

and

DONJON MARINE COMPANY, INC.,

Interested Party.

-------------------------------x

DEPOSITION OF THOMAS WITTE

New York, New York

Monday, July 2, 2007

Reported by:
Jennifer Ocampo-Guzman, RPR, CRR
JOB NO. 12861

David Feldman Worldwide

COPY

From File to Trial™

California | New York | Texas
www.david-feldman.com

T. Witte

A. Yeah, I think the term was a minimum of 8 percent.

Q. How was it determined that OENJ was actually doing that?

A. I have no idea.

Q. So how did you know that were actually doing it properly?

A. That wasn't our problem. The government said we had to use them. I'm not stating one way or the other if they did it properly.

Q. Well, do you know how the cement, do you know where in the pugmill the cement was mixed into the dredged material?

A. I don't know.

Q. Do you know whether or not the elevators there had a certain volume of material in them?

A. I don't know. I couldn't tell you.

Q. So 80 or a hundred times you visited the OENJ site between approximately 2001, and perhaps as late as 2004, you never inquired or were interested in learning how they determined how much Portland cement to

Exhibit 9

# DAVIDOFF MALITO & HUTCHER LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: 646-428-3283
E-MAIL: maa@dmlegal.com


June 22, 2007

**BY EMAIL (cbick@ghclaw.com)**
**AND BY FIRST CLASS MAIL**

Catherine J. Bick
Giordano, Halleran & Ciesla
PO Box 190
Middletown, NJ 07748

**Re: TDM America, LLC v. United States of America**
**Civil Action No. 06-472C (Judge Thomas C. Wheeler)**
**Your Ref: 11971-0016**
**Our Ref: 7683.001**

Dear Ms. Bick:

This letter is in response to your letter dated June 20, 2007, our telephone conversation of June 21, 2007 and your email of this date regarding the subpoena served upon Redevelopment Materials, Inc. and OENJ Cherokee Corporation (collectively "RMI") in connection with the referenced matter.

As discussed during our telephone conversation, there is simply no justification for RMI's position in refusing to produce documents pursuant to the subpoena because of various alleged confidentiality provisions between RMI and third parties. In general, the assertion of a confidentiality clause in a contract between two parties does not absolve either party from producing documents pursuant to a subpoena which is essentially a judicial order.

TDM is amenable to making this process as easy as possible for RMI. TDM is essentially interested in documents that comprise the contracts and subcontracts that pertain to treating dredged material on behalf of the United States, directly or indirectly. In addition, TDM

is seeking documents that describe the treatment process, indicate the volumes of treated dredged materials and the amounts paid to RMI for such treatment.

To the extent that there are any concerns regarding the confidentiality of such information for which RMI has expressed a concern, TDM calls your attention to a detailed protective order that has been entered into in this case and already provided to you. That protective order contains a confidentiality designation which is restricted to outside attorneys eyes only. Therefore, there should not be any hesitancy whatsoever on behalf of RMI or any other party producing documents. Further, as you may appreciate, documents sought include contracts for the treatment of dredged material, volumes, and related information that were required to be submitted to the United States in contractor submittals and as a prerequisite to RMI receiving payment for its treatment services. As such, it is difficult to comprehend the hesitancy of RMI to produce such documents.

We also advised that RMI's scenario of pushing off its actual production of documents by about sixty (60) days is simply not feasible given the discovery schedule. If RMI persists in delaying the production of documents, TDM will have no choice but to bring this issue to the court's attention. We have provided this letter for you to discuss this matter with your client so that document production can be facilitated in an efficient and prompt manner. In this regard, please provide a response and an indication when we can receive documents no later than **June 26, 2007**, or we will submit a motion to the court advising the court of our impasse.

Finally, your proposal to share the cost of hiring someone to review RMI's records fails to fully disclose who would be performing the search, leaves the cost open-ended and rests upon RMI's failure to properly file its documents. Without further clarification as to your proposal, TDM cannot agree to it.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

Michael A. Adler

MAA/lsh

cc: David W. Denenberg, Esq.

00361329

Exhibit 10

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
PLEASE RESPOND TO:
*U.S. POSTAL SERVICE ADDRESS:*
POST OFFICE BOX 190
MIDDLETOWN, NEW JERSEY 07748
OR:
*HAND DELIVERY AND OVERNIGHT SERVICE ADDRESS:*
125 HALF MILE ROAD
RED BANK, NEW JERSEY 07701
**(732) 741-3900**
FAX: (732) 224-6599
**www.ghclaw.com**

JOHN C. GIORDANO, JR.
FRANK R. CIESLA
BERNARD J. BERRY, JR.
JOHN A. AIELLO
MICHAEL J. GROSS
JOHN A. GIUNCO
EDWARD S. RADZELY
SHARLENE A. HUNT
PHILIP D. FORLENZA
MICHAEL J. CANNING □
PAUL H. SCHNEIDER
ELIZABETH CHRISTIAN
ANDREW B. ROBINS
MICHAEL A. BRUNO
KURT E. ANDERSON
PAUL T. COLELLA
-------
TARA PHELAN CARVER
TARA L. BENSON
RACHEL M. RINNINSLAND
LISA MICELI WATERS
GREGORY BANACKI, JR.
DONALD F. CAMPBELL, JR.
BRIAN H. HARVEY
MELISSA V. SKROCKI
AFIYFA H. ELLINGTON

GERALD P. LALLY
SEAN E. REGAN □
JAY S. BECKER
TIMOTHY D. LYONS
J. SCOTT ANDERSON
PETER B. BENNETT
LAURENCE I. ROTHSTEIN
ROBERT J. FEINBERG □
PATRICK S. CONVERY
MICHAEL A. PANE, JR.
MICHAEL J. VITIELLO
STEVEN M. DALTON
PAMELA J. KNAUER
TIMOTHY J. DENGLER
CATHERINE J. BICK
MONICA J. CERES
-------
CRAIG M. GIANETTI
ARI G. BURD
KEVIN B. LEGREIDE
MATTHEW J. CERES
KELLY D. GUNTHER
LOUIS D. TAMBARO
JIN KYOUNG HONG
MICHAEL D. PAWLOWSKI

OF COUNSEL:
JOHN R. HALLERAN
S. THOMAS GAGLIANO
THOMAS A. PLISKIN
RONALD P. HEKSCH
DERRICK A. SCENNA
-------
JOHN C. GIORDANO
(1921-1989)
-------
□ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

DIRECT DIAL NUMBER
(732) 219-5482

DIRECT EMAIL
cbick@ghclaw.com

CLIENT/MATTER NO.
11971-0016

May 29, 2007

RECEIVED
MAY 30 2007

<u>**Via Federal Express**</u>
Michael A. Adler, Esq.
Davidoff Malito & Hutcher, LLP
605 Third Avenue – 34th Floor
New York, NY 10158

**Re: TDM America, LLC v. The United States of America**
**Case No. 06-472-C**

Dear Mr. Adler:

This firm represents Redevelopment Materials, Inc. ("RMI") formerly known as OENJ Cherokee Corporation ("OENJ"). RMI is in receipt of the subpoenas you caused to be issued in the above matter seeking the production of documents by RMI and OENJ at your office in New York on June 1, 2007. The subpoenas also seek the depositions of an RMI representative and an OENJ representative on June 13 and June 19, 2007, respectively. Pursuant to RCFC 45(c)(2)(B) we write to object to the production of the documents set forth on Schedule A of the subpoenas.

Production of the documents requested in the subpoenas on the dates set forth in the subpoenas constitutes an undue burden to RMI. The subpoena to RMI contains forty-six separate categories "upon which the deposition will be taken and request for documents" is made. The subpoena to OENJ contains forty-seven such categories. For some categories of documents, TDM America, LLC seeks documents for the past ten years. For other categories no time limitation is noted at all. The preliminary review of the subpoenas and the information sought therein by our client has led to the conclusion that there are tens of thousands of pages of responsive documents. Many of these documents are contained in an off-site storage facility.

Production by RMI of these tens of thousands of pages of documents cannot proceed without RMI having same reviewed by counsel, after collection of same from various locations. RMI has advised that among the categories of documents to be produced there are certain to be

documents that are subject to the attorney-client privilege that must be reviewed or redacted. Furthermore, there may be contractual confidentiality provisions to which RMI is subject that would require the further removal of documents prior to their production for inspection and copying. Naturally, we assume that you will insist upon the production of a privilege log as to any responsive documents not made available.

It cannot reasonably be disputed that the undertaking that will be required to produce documents responsive to the subpoenas will be time-consuming and costly. RMI employees will need to spend time to collect the documents and attorney and staff time will be necessary for review, redaction and preparation of a privilege log. This is a financial burden that RMI is ill prepared to bear. At the present time RMI is financially distressed and does not have the resources to allocate to such a project. Nor, as a non-party, should it be required to do so.

Should you wish to discuss a narrowed production of documents by RMI or the contents of this letter, please feel free to contact me.

Very truly yours,

CATHERINE J. BICK

CJB/bjs

Exhibit 11

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

PLEASE RESPOND TO:
*U.S. POSTAL SERVICE ADDRESS:*
POST OFFICE BOX 190
MIDDLETOWN, NEW JERSEY 07748
OR:
*HAND DELIVERY AND OVERNIGHT SERVICE ADDRESS:*
125 HALF MILE ROAD
RED BANK, NEW JERSEY 07701
(732) 741-3900
FAX: (732) 224-6599
www.ghclaw.com

JOHN C. GIORDANO, JR
FRANK R. CIESLA
BERNARD J. BERRY, JR
JOHN A. AIELLO
MICHAEL J. GROSS
JOHN A. GIUNCO
EDWARD S. RADZELY
SHARLENE A. HUNT
PHILIP D. FORLENZA
MICHAEL J. CANNING ◻
PAUL H. SCHNEIDER
ELIZABETH CHRISTIAN
ANDREW B. ROBINS
MICHAEL A. BRUNO
KURT E. ANDERSON
PAUL T. COLELLA
GERALD P. LALLY
.......
LARA PHELAN CARVER
TARA L. BENSON
RACHEL M. KINNINSLAND
LISA MICELI WATERS
GREGORY BANACKI, JR.
DONALD F. CAMPBELL, JR
BRIAN H. HARVEY
MELISSA V. SKROCKI
AFIYFA H. ELLINGTON

SEAN E. REGAN ◻
JAY S. BECKER
TIMOTHY D. LYONS ◻
J. SCOTT ANDERSON
PETER B. BENNETT
LAURENCE I. ROTHSTEIN
ROBERT J. FEINBERG ◻
PATRICK S. CONVERY
MICHAEL A. PANE, JR
MICHAEL J. VITIELLO
STEVEN M. DALTON
PAMELA J. KNAUER
TIMOTHY J. DENGLER
CATHERINE J. BICK
MONICA J. CERES
MARC D. POLICASTRO
.......
CRAIG M. GIANETTI
ARI G. BURD
KEVIN R. LEGREIDE
MATTHEW J. CERES
JIN KYOUNG HONG
KELLY D. GUNTHER
LOUIS D. TAMBARO
MICHAEL D. PAWLOWSKI

OF COUNSEL:
JOHN R. HALLERAN
S. THOMAS GAGLIANO
THOMAS A. PLISKIN
RONALD P. HEKSCH
DERRICK A. SCENNA
.......
JOHN C. GIORDANO
(1931-1989)
.......
◻ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

| DIRECT DIAL NUMBER | DIRECT EMAIL | CLIENT/MATTER NO. |
|---|---|---|
| (732) 219-5482 | cbick@ghclaw.com | 11971-0016 |

June 20, 2007

RECEIVED
JUN 21 2007

**VIA FACSIMILE (212) 286-1884**
**AND REGULAR MAIL**
Michael A. Adler, Esq.
Davidoff Malito & Hutcher, LLP
605 Third Avenue – 34th Floor
New York, NY 10158

**Re: TDM America, LLC v. The United States of America**
**Case No. 06-472-C**

Dear Mr. Adler:

I write in follow-up to our telephone conversations to confirm what I related to you about the circumstances that make the production of documents which TDM America, LLC ("TDM") has subpoenaed from Redevelopment Materials, Inc. and OENJ Cherokee Corporation (collectively "RMI") an undue burden, and also to address TDM's recent proposal to narrow the scope of documents sought in its subpoenas. This letter will further confirm that I received on Thursday, June 14, 2007, the protective order in your above matter.

To summarize the information you have already been given as to RMI's operations, during the construction of the Bayonne, New Jersey landfill, approximately 6-8 millions of yards of fill material, including processed dredge material, were utilized. While the fill was not entirely composed of dredge material, dredge was processed and disposed of at this Bayonne facility pursuant to agreements with parties who were performing work for the U.S. Army Corps of Engineers, for a period of years, concluding in December 2003. The entire site was ultimately covered in a cap of processed dredge material two feet thick. The site was sold in December 2005 and is now being operated as an eighteen hole golf course. These facts, alone, should help your client understand the scope of the operations, documents related to which are implicated by its requests. Not only was a tremendous volume of dredge processed and disposed of during the

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW



period of time for which you seek documentation, but the dredge processing at this project has been complete for over three years. As such, as I expressed, your request primarily seeks documents that are now in storage.

Unfortunately, as I also explained, the method of storage of documentation is no more sophisticated than the placement of approximately 250 bankers type-boxes in two 10'x22' storage units at a storage facility in Hasbrouck Heights, New Jersey. While our client advises that the boxes are indexed and somewhat organized by topic, they are not at all organized as to year. Moreover, the documents in the boxes are commingled. Some of the documentation will be related to the narrowed TDM request for documents and some will not. You most recently described the documents TDM desires to obtain copies of as those related to the process used to treat dredge materials, those related to volume processed and documents reflecting amounts paid by each dredger for each cubic yard of material that was processed. Documents in the boxes that we presume you may wish to review include such things as tug logs, price sheets, shipping manifest data, correspondence, maps, DEP and DOT engineering reports and hydrographic surveys. The boxes will also include documents related to disputes and negotiations between RMI and dredging companies related to the measurement of the volume of dredge material, which we also presume fall within your request. Further, there may be computer records responsive to TDM's requests. Moreover, there are certain to be attorney-client privileged communications among the documents, which must be removed from the files prior to production.

Commingled with the foregoing documents are also a host of other unrelated documents, including many documents relating to topics likely not of interest to TDM, such as disputes with owners of neighboring property and personal injury suits stemming from on-site incidents. Further, as I indicated, RMI accepted and disposed of fill material at Bayonne that was brought in by truck. The large volume of documentation relating to this operation is commingled with dredge processing and disposal information and documents. Presumably, the responsive documents would need to be culled from these unrelated documents.

Perhaps the most important issue, which I raised in our telephone conversation, and which warrants further discussion, is the important issue of the confidentiality as it relates to contracts and other agreements between RMI and dredging companies. Most, if not all, of the dozens of contracts between RMI and the dredgers contain confidentiality provisions. There are also other documents that contain confidentiality provisions. Many documents, including, likely, those TDM seeks, are subject to those provisions. Unfortunately, I am advised that there is no one at RMI who has the knowledge to identify, without a review of the documents, just what confidentiality agreements to which RMI is subject exist.

You have proposed that arrangements be made for a TDM attorney to simply review RMI's boxes of documents. This attorney would identify the documents that TDM wants copies of and, thereafter, RMI would be permitted to designate "protected information." The problem with this proposal is that it is necessary that RMI not breach any confidentiality provisions, which, in the case of contracts, typically survive the termination of the contracts themselves. If RMI were to produce documents to TDM for review and only thereafter designate "protected information," the likely scenario, based upon our client's best present information, is that the terms of the confidentiality provisions would already be breached, even with the protective order in place. RMI is burdened with the need to obtain the consent of the other parties to the confidentiality provisions for the disclosure of the documents that these parties deem to be covered by the confidentiality provisions. Under the likely terms of the various confidentiality provisions contained in the various agreements and elsewhere, disclosure to TDM pursuant to the subpoena, even the narrowed group of documents, would cause RMI to breach its responsibilities to keep certain information confidential.

In order that you might have an idea of the breadth of the provisions to which we refer, the following is the confidentiality provision from one agreement into which RMI entered that is implicated by TDM's subpoena:

> 12.10 <u>Confidentiality.</u> (a) Each of the parties hereto acknowledge that it or its employees or Subcontractors may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is deemed by the other party to be both proprietary to and highly confidential (the Confidential Information"). Any and all Confidential Information obtained by a party hereto, its employees or Subcontractors, in the performance of this Agreement shall be deemed to be confidential and proprietary information. Each party hereto agrees to hold such Confidential Information in the strictest of confidence and not to disclose such Confidential Information to third parties ("Third Parties"), as hereinafter defined, or to use such Confidential Information for any purpose whatsoever other than the provision of services as contemplated by this Agreement and to advise each of its employees and Subcontractors who may be exposed to such proprietary and confidential information of their obligations to keep such information confidential. Third parties, as defined herein, shall include, but not be limited to a party's respective parent companies, corporations and/or partnerships, and/or joint ventures and its owned controlled affiliate, associated and subsidiary companies, corporations and partnerships, their agents,

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW



representatives or partners, officers, shareholders, directors and employees.

(b) Contractor, its employees, Subcontractors, and Third Parties shall be prohibited from storing any equipment on the Site without the prior written approval of OENJ.

Each party agrees and acknowledges that the confidentiality terms set forth in Section 12.10 are a material term of this Agreement, the breach of which will result in irreparable harm to the other party. The parties hereto further acknowledge that any breach of the terms and conditions of Section 12.10 may result in irreparable harm to the other party for which money damages would not be sufficient remedy. Accordingly, in the event of a breach or threatened breach of any of the terms and conditions of Section 12.10, and in addition to any other remedy provided herein by law or in equity, the damaged party shall be entitled to seek appropriate equitable relief, including injunctive relief and specific performance, in any court of competent jurisdiction.

This Section shall survive the termination of this Agreement.

While we appreciate your efforts to narrow TDM's document requests to RMI, in light of the forgoing we do not see how we can agree to allow TDM's representatives review RMI documents without the consent of the other parties to the confidentiality provisions that RMI is required to comply with. To do so would subject RMI to liability for monetary and equitable remedies. Further, it must be recalled that RMI contracted with companies that are the competitors of one of the signatories to the protective order, interested party DonJon Marine Company, Inc.

The collection of the foregoing information and its production for TDM's review is quite obviously a massive task. Particularly in light of the fact that RMI is not a party to the suit between TDM and the United States of America, and the contractual rights and responsibilities of RMI and other parties are implicated, the critical questions become who should undertake the task of locating and redacting documents responsive to TDM's subpoenas, how shall this be done and how shall these persons be compensated. In an effort to amicably resolve this matter, RMI proposes the following:

RMI will split evenly with TDM the staff costs required to review RMI's records for documentation responsive to TDM's narrowed document

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW



request and also to identify the confidentiality agreements and provisions to which RMI is subject.

RMI will, within thirty (30) days, provide notice to third parties who have the right to designate information and documents in RMI's custody and control as confidential pursuant to confidentiality provisions. We anticipate this to be an ongoing process, with notices being sent as these parties are identified. As such, this process may be completed sooner than thirty (30) days.

RMI will advise such third parties that they have thirty (30) days within which to advise if they object to the production of documents to TDM pursuant to the subpoenas. RMI, further, will advise the third parties that they must act to protect their rights.

RMI will keep TDM informed on an on-going basis if any third party objects and, if so, who is the objecting third party and why they object.

If within thirty (30) days third parties do not object, waive their rights or act to protect their rights, documentation within RMI's control responsive to the narrowed request will be produced to TDM. RMI will produce same subject to its designation of the protective order.

RMI will then produce to TDM bate stamped copies of all responsive documentation. TDM will pay 100% of the costs of photocopying and bates stamping the documents.

As I previously advised, RMI is financially distressed and its office staff presently consists of four persons, who are assigned and fully utilized in tasks related to the day-to-day operations of RMI. For the these reasons, and those discussed at the time of our telephone conference and in our prior correspondence, RMI continues to object to production of documents as TDM has proposed, as to do so constitutes an undue burden both financially and because to do so exposes RMI to the risk of claims by third parties. We are hopeful, however, that the foregoing proposal will constitute an acceptable "middle ground" to which TDM and RMI can both agree.

Please advise as to your client's position as to the foregoing proposal.

Very truly yours,

Catherine J. Bick

CATHERINE J. BICK

CJB/bjs
::ODMA\PCDOCS\GHCDOCS\590191\1

**Exhibit 12**

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
PLEASE RESPOND TO:
U.S. POSTAL SERVICE ADDRESS:
POST OFFICE BOX 190
MIDDLETOWN, NEW JERSEY 07748
OR:
HAND DELIVERY AND OVERNIGHT SERVICE ADDRESS:
125 HALF MILE ROAD
RED BANK, NEW JERSEY 07701
(732) 741-3900
FAX: (732) 224-6599
www.ghclaw.com

JOHN C. GIORDANO, JR.
FRANK R. CIESLA
BERNARD J. BERRY, JR.
JOHN A. AIELLO
MICHAEL J. GROSS
JOHN A. GIUNCO
EDWARD S. RADZELY
SHARLENE A. HUNT
PHILIP D. FORLENZA
MICHAEL J. CANNING ◘
PAUL H. SCHNEIDER
ELIZABETH CHRISTIAN
ANDREW B. ROBINS
MICHAEL A. BRUNO
KURT E. ANDERSON
PAUL T. COLELLA
GERALD P. LALLY
······
TARA PHELAN CARVER
TARA L. BENSON
RACHEL M. RINNINSLAND
LISA MICALI WATERS
GREGORY BANACKI, JR.
DONALD F. CAMPBELL, JR.
BRIAN H. HARVEY
MELISSA V. SKROCKI
ARIYFA H. ELLINGTON

SEAN E. REGAN ◘
JAY S. BECKER
TIMOTHY D. LYONS ◘
J. SCOTT ANDERSON
PETER B. BENNETT
LAURENCE I. ROTHSTEIN
ROBERT J. FEINBERG ◘
PATRICK S. CONVERY
MICHAEL A. PANE, JR.
MICHAEL J. VITIELLO
STEVEN M. DALTON
PAMELA J. KNAUER
TIMOTHY I. DENGLER
CATHERINE J. BICK
MONICA J. CERES
MARC D. POLICASTRO
······
CRAIG M. GIANETTI
ARI C. BURD
KEVIN B. LEGREIDE
MATTHEW J. CERES
JIN KYOUNG HONG
KELLY D. GUNTHER
LOUIS D. TAMBARO
MICHAEL D. PAWLOWSKI

OF COUNSEL
JOHN R. HALLERAN
S. THOMAS GAGLIANO
THOMAS A. PLISKIN
RONALD P. HEKSCH
DERRICK A. SCENNA
····
JOHN C. GIORDANO
(1921-1989)
· ···
◘ CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY

DIRECT DIAL NUMBER
732-741-3900

DIRECT EMAIL
kanderson@ghclaw.com

CLIENT/MATTER NO.
11971-18

June 26, 2007

**VIA FACSIMILE**
Michael A. Adler, Esq.
Davidoff Malito & Hutcher, LLP
605 Third Avenue – 34th Floor
New York, NY 10158

RE: TDM America, LLC v. The United States of America
Case No. 06-472-C

Dear Mr. Adler:

We are in receipt of your letter of June 22, 2007.

To be clear, Redevelopment Materials, Inc. (RMI) has not refused to produce materials. RMI is quite willing to produce materials. However, in doing so, there are at least three (3) things that must be addressed:

(1) We must reach a clear understanding as to a narrowed description of the specific documents requested;

(2) The rights of third parties cannot be trampled in the process and RMI should not be exposed to potential claims from third parties to whom RMI may owe a duty of confidentiality with respect to the documents you seek; and

(3) TDM must agree to pay all out-of-pocket expenses incurred in connection with the document production as well as a portion of RMI's legal fees, as more particularly set forth below.

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW



Accordingly, in order to address these concerns, we would propose the following.

Scope of Production. Based on your letter, we would propose that the description of the documents produced be as follows:

(a) Contracts to which RMI is a party and under which the treatment of dredge materials is one of the services to be provided;

(b) Daily scow surveys/reports; and

(c) Accounting report showing all amounts paid to RMI for treatment of dredge material under the contracts referenced in (a) above. Note that such amounts may be bundled or commingled with other amounts.

Cost Estimate. RMI is willing to assemble a small team of paralegals (~$100/hr) and associate attorneys (<$200/hr) (total of 2 or 3 people) to spend one day looking through boxes. Based on this test, we will get a feel for how long it will take to go through the boxes and estimate how much it will cost. We can then provide you with an estimate for the review of the boxes. As previously proposed, we again propose that TDM share 50% of all of RMI's legal fees associated with the production of documents (including, without limitation, the review of boxes) and pay 100% of the other out-of-pocket costs. Additionally, we would propose that TDM pay 100% of RMI's legal fees related to any motion addressing relief from any confidentiality restraints to allow production to TDM.

Confidentiality. After reviewing all of the documents RMI would (1) identify any attorney-client or attorney work product privileged documents, (2) identify any third parties to whom a duty of confidentiality may be owed, and (3) identify those documents which may be subject to a third party confidentiality obligation. Any documents not subject to a privilege or third party confidentiality obligation would be promptly, but at TDM's sole cost, bate stamped, copied (or scanned if TDM prefers) and delivered to TDM.

Once the third parties had been identified, RMI would give notice to those third parties to whom a confidentiality obligation was owed and give them a reasonable opportunity to respond (e.g., 30 days). RMI could also provide them with a copy of the existing protective order for their consideration.

For third parties who did not respond or wanted their information to be subject to the existing protective order, any documents previously withheld with respect to such party to protect their confidentiality rights, would, subject to the protective order, be promptly, but at TDM's sole cost, bate stamped, copied (or scanned if TDM prefers) and delivered to TDM.

GIORDANO, HALLERAN & CIESLA
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Michael Adler, Esq.
June 26, 2007
Page 3

TDM would take such steps as may be necessary to ensure that such information would be covered by the protective order.

For third parties who objected to the disclosure, TDM would make a motion to compel and to lift the impediments of the confidentiality agreements and give RMI and such third parties an opportunity to be heard. The outcome of that motion would determine what happened with those documents. Again, we propose that TDM bear 100% of RMI's legal fees associated with any such motion.

Please let us know if this proposal is agreeable to TDM.

Very truly yours,

KURT ANDERSON

KEA/caw

::ODMA\PCDOCS\GHCDOCS\592802\1