**Exhibit 1**

# United States Court of Federal Claims

**TDM America, LLC,**

**Plaintiff,**

**SUBPOENA IN CIVIL CASE No.: 06-472-C**
**Judge Thomas C. Wheeler**

**-against-**

**The United States of America,**

**Defendants,**

**and**

**Donjon Marine Company, Inc.,**

**Interested Party.**

**TO: Redevelopment Materials, Inc.**
**One Meadowlands Plaza, Suite 803**
**East Rutherford, NJ 07073**

1. [ ] **YOU ARE COMMANDED** to appear in the United States Court of Federal Claims at the place, date, and time specified below to testify in the above-captioned case.

*Place of Testimony:* __________
*Date and Time:* __________

2. [X] **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.

*Place of Deposition:* 605 Third Avenue, 34 Fl, New York, NY 10158
*Date and Time:* June 13, 2007 at 10:00 a.m.

3. [X] **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below:
*Place of Inspection:* 605 Third Avenue, 34th Floor, New York, NY 10158
*Day and Time:* June 1, 2007 at 10:00 a.m.

**SEE ATTACHED SCHEDULE " A"** Documents to be produced as required under Rules of the United States Court of Federal Claims, Rule 45.

4. [ ] **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below:

*Premises:*____________________

*Date and Time:*____________________

Any organization not a party to this suit that is subpoenaed for the taking of a deposition "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) MAY 15, 2007 DATE

Michael A. Adler, Davidoff Malito & Hutcher LLP
ATTORNEY FOR PLAINTIFF, TDM AMERICA, LLC

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:
605 Third Avenue, 34 Floor, New York, New York 10158 (212) 557-7200

NOTE: If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: ________________ ____________________
DATE SIGNATURE OF SERVER

____________________
ADDRESS OF SERVER

Rule 45, Rules of the United States Court of Federal Claims

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only on specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

The categories upon which the deposition will be taken and request for documents follow the below "Definitions".

## I. DEFINITIONS

1. In addition to any standard definition, the terms "plaintiff" or "TDM" shall mean TDM America, LLC and (i) all its present and former directors, officers, members, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that are/were in existence during the applicable period of time covered by these requests; (ii) any other person or entity acting on its behalf or on whose behalf it acted; and (iii) any other person or entity otherwise subject to its control or which controls it, or with which it is under common control.

2. In addition to any standard definition, RMI shall mean RMI Redevelopment Materials, Inc. ("RMI") and (i) all its present and former directors, officers, members, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that are/were in existence during the applicable period of time covered by these requests; (ii) any other person or entity acting on its behalf or on whose behalf it acted; and (iii) any other person or entity otherwise subject to its control or which controls it, or with which it is under common control.

3. The terms "defendant" or "US" shall refer to the executive, legislative and/or judicial branches of the federal government of the United States of America, including the Department of the Army, the United States Army Corps of Engineers ("US Army Corps of Engineers"), and any other federal department, agency, commission, bureau and/or office that

was or is involved, participates, administers, oversees, reviews, and/or contracts for the dredging of contaminated materials at any United States waterway.

4. The term "contractor" shall mean any contractors and/or subcontractors.

5. The term "dredging activities" shall mean, in addition to dredging, all activities relating to dredging and/or any treatment of dredged material and/or upland disposal of dredged material.

6. The terms "treat," "treatment," "treated," "treating," "process," "processed," or "processing" shall mean treatment, processing, dewatering, stabilization, retention, staging, handling, curing, reuse, remediation, fixation, solidification and/or disposal (in the past or present).

7. The term "patent-in-suit" or "patents-in-suit" shall mean any one and/or combination of United States patent numbers 6,293,731 B1 (the "'731 patent"), 5,542,614 (the "'614 patent"), 5,794,862 (the "'862 patent") and 5,007,590 (the "'590 patent"), whichever is broader in context and/or any other patent in this lawsuit identified in any amended pleading.

8. The term "document" shall mean its customary broad sense and includes, without limitation, the following items, whether printed, electronic, magnetic, taped, or reproduced by any process including audio and video, or written or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, telegrams, memoranda, summaries of records of telephone conversations, summaries of records of personal conversations, diaries, reports, laboratory and research reports and notebooks, charts, plans, drawings, graphs, photographs, phonorecords, DVDs, CDs, video tapes, minutes or records of meetings, including directors' meetings, reports and/or summaries of interviews, reports and/or investigations, opinions or reports of consultants, reports of intellectual property searches, agreements, reports of summaries of negotiations,

brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, known to or in possession or control of defendant.

9. The term "things" as used herein is any tangible object other than a document and includes objects of every kind and nature including, but not limited to prototypes, models, specimens, and the like.

10. To the extent that a term of a request may be interpreted in a broad sense or in a narrow sense, the term or request shall be interpreted in its broadest sense.

11. "Complaint" means the complaint filed in this action or any amended complaint.

12. "Answer" means the answer filed in this action or any answer to any amended complaint.

13. "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to and encompass "and;" and "and" should be understood to include and encompass "or."

14. "Person" or "persons" means, unless otherwise specified, any individual, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of organization or arrangement, and government and government agency of every nature and type.

15. "Communication" or "communications" means, unless otherwise specified, any of the following: (a) any letter, memorandum, or other document; (b) any telephone call between two or more persons; (c) any conversation or meeting between two or more persons; and (d) any electronic and/or taped transmission including emails, audio and video tapes, CDs, DVDs and the like.

16. The term "date" means the exact date, month and year, if ascertainable, or if not, the best approximation (including relationship to other events).

17. For all purposes herein, spelling, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to the context of each request.

## II. CATEGORIES

### A. General

1. The positions, officers, duties, responsibilities and knowledge of each person and/or employee of RMI regarding dredging activities on behalf of the US;
2. The factual basis of any assertion, allegation and/or averment made or that RMI intends to make in response to the first amended complaint in this action;
3. The basis and nature of any information sought herein and withheld on the grounds of privilege;
4. The organizational structure of RMI;
5. The working and/or economic relationship between RMI and the US Army Corps of Engineers and/or any port authority with respect to dredging activities; and
6. Any business or other relationship between RMI and OENJ Cherokee Corporation.

### B. Contracts (beginning with fiscal year 1997 to the present):

7. Contracts for dredging activities;
8. Amendments to contracts for dredging activities;
9. Requests for proposals for dredging activities;
10. Solicitation proposals for dredging activities;
11. Addenda to proposals for dredging activities;
12. Bids for dredging activities;
13. Amendments to any bids or proposals for dredging activities;
14. Quality control and quality assurance for dredging activities;
15. Technical sheets and other data for dredging activities;

16. Contractors' invoices, payment requests, bills and time management reports related to dredging activities;

17. Summaries showing quantities and qualities of dredging activities for each region and/or district within that region;

18. Total fees requested by RMI by region and by district for dredging and treatment of dredged materials;

19. All documents that must be submitted under "Special Contract Requirements" (usually within 70 calendar days) that pertain to dredging activities; and

20. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents.

C. **<u>Dredging Methods and Processes</u>**

21. The processes and methods used for dredging activities performed on behalf of the US;

22. Processes, methods, manner, treatment, stabilization, retention, staging, handling, curing, remediation, fixation solidification and disposal for dredged materials at any port, harbor and/or waterway within the United States performed on behalf of the US, directly or indirectly;

23. The nature, composition and water content of any additive used for treating dredged material on behalf of the US so that the dredged material is suitable for upland disposal and/or beneficial reuse;

24. If RMI's dredging processes on behalf of the US use or used screen boxes, the nature and purpose of the screen boxes and the specific processing steps that occur after the vibrating screen box is used;

25. If RMI uses paddle-type and/or chopper-type augurs in any of its dredging activities on behalf of the US, where these augurs are used and the reasons for using them;

26. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents;

27. Volume of dredging activities on behalf of the US;

28. On-site inspectors and inspections for dredging activities on behalf of the US;

29. All acceptable use determination permits (AUDs), beneficial use determination permits (BUDs), waterside development contracts, state water quality permits and/or certificates, processing and disposal permits/requirements for the sites identified by a contractor or subcontractor on behalf of the US, dewatering

permits, commercial zone permits, CZMs, and any documents submitted to the permit agencies for the issuance of these permits;

30. Summaries showing logging of dredging activities on behalf of the US including monthly summary reports of volumes and monthly progress reviews (by regions and/or district, if available);

31. Photos and/or videos of actual dredging activities including treatment of dredged materials; and

32. Quality control plans, disposal plans and de-watering quality assurance plans in connection with dredging activities on behalf of the US.

**D. Patents**

33. The patents in suit including claim term construction, all non-infringement invalidity, and unenforceability positions of defendant and the bases therefore;

34. Prior art to the patents in suit;

35. Letters and documents that mention patents, especially the ones that mention patent numbers; and

36. Any other opinions related to infringements of any of the patents in suit.

**E. Costs**

37. The amounts invoices and/or bills for dredging activities on behalf of the US including license fees, if applicable; and

38. Total volumes, amounts billed and amounts paid by the US for the dredging, treatment and upland disposal of dredged materials on behalf of the US;

39. Yearly summaries of volumes, amounts billed and amounts paid by the US for the dredging, treatment and upland disposal of dredged materials on behalf of the US; and

40. Summaries of volumes and costs by contractor and/or subcontractor on behalf of the US for the dredging, treatment and upland disposal of dredged materials.

**F. Other**

41. Publicly disclosed summary and research & development information related to dredging activities for or on behalf of the US;

42. Videos that show the processing of dredged materials carried out by or on behalf of the US;

43. USACE publications and media that contain segments on the processing and upland disposal of dredged materials for or on behalf of the US;

44. Information disseminated by RMI including interviews that pertain to the processing and upland disposal of dredged materials for or on behalf of the US; and

45. Portland cement, Hercules Cement Company, or other cements or cement companies.

**G. Document Requests**

46. All documents and things that constitute, comprise and/or relate to the above categories.

**Exhibit 2**

# United States Court of Federal Claims

**TDM America, LLC,**

**Plaintiff,**

**-against-**

**The United States of America,**

**Defendants,**

**and**

**Donjon Marine Company, Inc.,**

**Interested Party.**

**AMENDED SUBPOENA IN CIVIL CASE No.: 06-472-C**
**Judge Thomas C. Wheeler**

**TO:** **OENJ Cherokee Corporation**
**Valley Brook Avenue**
**Lyndhurst, New Jersey 07071**

**OENJ Cherokee Corporation**
**c/o RMI Redevelopment Materials, Inc.**
**One Meadowlands Plaza, Suite 803**
**East Rutherford, NJ 07073**

1. [ ] **YOU ARE COMMANDED** to appear in the United States Court of Federal Claims at the place, date, and time specified below to testify in the above-captioned case.

*Place of Testimony:* __________
*Date and Time:* __________

2. [X] **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.

*Place of Deposition:* 605 Third Avenue, 34 Fl, New York, NY 10158
*Date and Time:* June 19, 2007 at 10:00 a.m.

3. [X] **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below:
*Place of Inspection:* 605 Third Avenue, 34th Floor, NY, NY 10158

*Day and Time:* June 1, 2007 at 10:00 a.m.

**SEE ATTACHED SCHEDULE " A"** Documents to be produced as required under Rules of the United States Court of Federal Claims, Rule 45.

4. [ ] **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below:

*Premises:* ______________________________

*Date and Time:* ______________________________

Any organization not a party to this suit that is subpoenaed for the taking of a deposition "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE: May 14, 2007

Michael A. Adler, Davidoff Malito & Hutcher LLP

ATTORNEY FOR PLAINTIFF, TDM AMERICA, LLC

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER:

605 Third Avenue, 34 Floor, New York, New York 10158 (212) 557-7200

NOTE: If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |

□ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: ______________ ______________________
DATE SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

Rule 45, Rules of the United States Court of Federal Claims

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only on specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

The categories upon which the deposition will be taken and request for documents follow the below "Definitions".

## I. DEFINITIONS

1. In addition to any standard definition, the terms "plaintiff" or "TDM" shall mean TDM America, LLC and (i) all its present and former directors, officers, members, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that are/were in existence during the applicable period of time covered by these requests; (ii) any other person or entity acting on its behalf or on whose behalf it acted; and (iii) any other person or entity otherwise subject to its control or which controls it, or with which it is under common control.

2. In addition to any standard definition, OENJ shall mean OENJ Cherokee Corporation ("OENJ") and (i) all its present and former directors, officers, members, employees, agents, representatives, accountants, investigators, consultants, attorneys, and predecessors or successors in interest and any parent, subsidiary or affiliated entities that are/were in existence during the applicable period of time covered by these requests; (ii) any other person or entity acting on its behalf or on whose behalf it acted; and (iii) any other person or entity otherwise subject to its control or which controls it, or with which it is under common control.

3. The terms "defendant" or "US" shall refer to the executive, legislative and/or judicial branches of the federal government of the United States of America, including the Department of the Army, the United States Army Corps of Engineers ("US Army Corps of Engineers"), and any other federal department, agency, commission, bureau and/or office that

was or is involved, participates, administers, oversees, reviews, and/or contracts for the dredging of contaminated materials at any United States waterway.

4. The term "contractor" shall mean any contractors and/or subcontractors.

5. The term "dredging activities" shall mean, in addition to dredging, all activities relating to dredging and/or any treatment of dredged material and/or upland disposal of dredged material.

6. The terms "treat", "treatment", "treated", "treating", "process", "processed", or "processing" shall mean treatment, processing, dewatering, stabilization, retention, staging, handling, curing, reuse, remediation, fixation, solidification and/or disposal (in the past or present).

7. The term "patent-in-suit" or "patents-in-suit" shall mean any one and/or combination of United States patent numbers 6,293,731 B1 (the "'731 patent"), 5,542,614 (the "'614 patent"), 5,794,862 (the "'862 patent") and 5,007,590 (the "'590 patent"), whichever is broader in context and/or any other patent in this lawsuit identified in any amended pleading.

8. The term "document" shall mean its customary broad sense and includes, without limitation, the following items, whether printed, electronic, magnetic, taped, or reproduced by any process including audio and video, or written or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, telegrams, memoranda, summaries of records of telephone conversations, summaries of records of personal conversations, diaries, reports, laboratory and research reports and notebooks, charts, plans, drawings, graphs, photographs, phonorecords, DVDs, CDs, video tapes, minutes or records of meetings, including directors' meetings, reports and/or summaries of interviews, reports and/or investigations, opinions or reports of consultants, reports of intellectual property searches, agreements, reports of summaries of negotiations,

brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, known to or in possession or control of defendant.

9. The term "things" as used herein is any tangible object other than a document and includes objects of every kind and nature including, but not limited to prototypes, models, specimens, and the like.

10. To the extent that a term of a request may be interpreted in a broad sense or in a narrow sense, the term or request shall be interpreted in its broadest sense.

11. "Complaint" means the complaint filed in this action or any amended complaint.

12. "Answer" means the answer filed in this action or any answer to any amended complaint.

13. "Any" or "each" should be understood to include and encompass "all," "or" should be understood to and encompass "and," and "and" should be understood to include and encompass "or".

14. "Person" or "persons" means, unless otherwise specified, any individual, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of organization or arrangement, and government and government agency of every nature and type.

15. "Communication" or "communications" means, unless otherwise specified, any of the following (a) any letter, memorandum, or other document; (b) any telephone call between two or more persons; (c) any conversation or meeting between two or more persons; and (d) any electronic and/or taped transmission including emails, audio and video tapes, CDs, DVDs and the like.

16. The term "date" means the exact date, month and year, if ascertainable, or if not, the best approximation (including relationship to other events).

17. The phrase "on behalf of" shall be construed as directly or indirectly on behalf of (e.g., as a contractor or subcontractor).

18. For all purposes herein, spelling, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to the context of each request.

## II. CATEGORIES

### A. General

1. The positions, officers, duties, responsibilities and knowledge of each person and/or employee of OENJ regarding dredging activities on behalf of the US;

2. The factual basis of any assertion, allegation and/or averment made or that OENJ intends to make in response to the first amended complaint in this action;

3. The basis and nature of any information sought herein and withheld on the grounds of privilege;

4. The organizational structure of OENJ;

5. The working and/or economic relationship between OENJ and the US Army Corps of Engineers and/or any port authority with respect to dredging activities;

6. Any relationship between and or among OENJ, Redevelopment Materials, Inc. ("RMI") and/or EIC Associates, Inc. ("EIC");

### B. Contracts (beginning with fiscal year 1997 to the present):

7. Contracts for dredging activities;

8. Amendments to contracts for dredging activities;

9. Requests for proposals for dredging activities;

10. Solicitation proposals for dredging activities;

11. Addenda to proposals for dredging activities;

12. Bids for dredging activities;

13. Amendments to any bids or proposals for dredging activities;

14. Quality control and quality assurance for dredging activities;

15. Technical sheets and other data for dredging activities;

16. Contractors' invoices, payment requests, bills and time management reports related to dredging activities;

17. Summaries showing quantities and qualities of dredging activities for each region and/or district within that region;

18. Total fees requested by OENJ by region and by district for dredging and treatment of dredged materials;

19. All documents that must be submitted to the US under "Special Contract Requirements" (usually within 70 calendar days) that pertain to dredging activities; and

20. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents.

C. **Dredging Methods and Processes**

21. The processes and methods used for dredging activities performed on behalf of the US whether or not OENJ or an entity on behalf of OENJ performed such activities, e.g., EIC;

22. The process and method used for treatment of dredged materials with an additive(s) on behalf of the US, whether or not performed by OENJ directly or by another entity on behalf of OENJ;

23. Processes, methods, manner, treatment, stabilization, retention, staging, handling, curing, remediation, fixation solidification and disposal for dredged materials at any port, harbor and/or waterway within the United States performed on behalf of the US;

24. The nature, composition and water content of any additive used for treating dredged material on behalf of the US so that the dredged material is suitable for upland disposal and/or beneficial reuse;

25. If OENJ's dredging processes on behalf of the US use screen boxes, the nature and purpose of the screen boxes and the specific processing steps that occur after the vibrating screen box is used;

26. If OENJ uses paddle-type and/or chopper-type augurs in any of its dredging activities on behalf of the US, where these augurs are used and the reasons for using them;

27. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents;

28. Volume of dredging activities on behalf of the US;

29. On-site inspectors and inspections for dredging activities on behalf of the US;

30. All acceptable use determination permits (AUDs), beneficial use determination permits (BUDs),waterside development contracts, state water quality permits and/or certificates, processing and disposal permits/requirements for the sites identified by a contractor or subcontractor on behalf of the US, dewatering permits, commercial zone permits, CZMs, and any documents submitted to the permit agencies for the issuance of these permits;

31. Summaries showing logging of dredging activities on behalf of the US including monthly summary reports of volumes and monthly progress reviews (by regions and/or district, if available);

32. Photos and/or videos of actual dredging activities including treatment of dredged materials; and

33. Quality control plans, disposal plans and de-watering quality assurance plans in connection with dredging activities on behalf of the US;

**D. <u>Patents</u>**

34. The patents in suit including claim term construction, all non-infringement invalidity, and unenforceability positions of defendant and the bases therefor;

35. Prior art to the patents in suit;

36. Letters and documents that mention patents, especially the ones that mention patent numbers; and

37. Any other opinions related to infringements of any of the patents in suit.

**E. <u>Costs</u>**

38. The amounts invoices and/or bills for dredging activities on behalf of the US including license fees, if applicable;

39. Total volumes, amounts billed and amounts paid by the US for the dredging, treatment and upland disposal of dredged materials on behalf of the US;

40. Yearly summaries of volumes, amounts billed and amounts paid by the US for the dredging, treatment and upland disposal of dredged materials on behalf of the US; and

41. Summaries of volumes and costs by contractor and/or subcontractor on behalf of the US for the dredging, treatment and upland disposal of dredged materials.

**F. <u>Other</u>**

42. Publicly disclosed summary and research & development information related to dredging activities for or on behalf of the US;

43. Videos that show the processing of dredged materials carried out by or on behalf of the US;

44. USACE publications and media that contain segments on the processing and upland disposal of dredged materials for or on behalf of the US;

45. Information disseminated by OENJ including interviews that pertain to the processing and upland disposal of dredged materials for or on behalf of the US;

46. Portland Cement, Hercules Cement Company, and other cement companies;

**G. <u>Document Requests</u>**

47. All documents and things that constitute, comprise and/or relate to the above categories.

© 1988 JULIUS BLUMBERG, INC., PUBLISHER, NYC 10013

~~XXXXX~~ UNITED STATES COURT OF FEDERAL CLAIMS

~~XXXXXXXXXR~~

TDM AMERICA, LLC,

*Plaintiff(s)*

*against*

THE UNITED STATES OF AMERICA AND DONJON MARINE COMPANY, INC.

*Defendant(s)*

*Index No.* 06-472-C

## *AFFIDAVIT OF SERVICE OF SUBPOENA*

AMENDED IN CIVIL CASE

STATE OF NEW YORK, COUNTY OF NEW YORK SS: The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at WAYNE, NEW JERSEY

That on 5/16/07 at 3:00 P M., at 1 MEADOWLANDS PLAZA, EAST RUTHERFORD, N.J. 8TH FL. deponent served the within subpoena on OENJ CHEROKEE CORPORATION C/O RMI REDEVELOPMENT MATERIALS, INC. witness therein named, AMENDED IN CIVIL CASE

INDIVIDUAL 1. ☐ by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena.

CORPORATION 2. ☒ a DOMESTIC corporation, by delivering thereat a true copy to JIM AARDEMA personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be MANAGING AGENT thereof.

SUITABLE AGE PERSON 3. ☐ by delivering thereat a true copy to a person of suitable age and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

AFFIXING TO DOOR, ETC. 4. ☐ by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there

MAILING TO RESIDENCE USE WITH 3 OR 4 5A. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness at witness' last known residence, at and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO BUSINESS USE WITH 3 OR 4 5B. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to witness at witness' actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

DESCRIPTION USE WITH 1, 2, OR 3 ☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☒ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☒ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☒ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $ the authorized traveling expenses and one day's witness fee.

Sworn to before me on 5/17/07

JOHN DICANIO
Notary Public, State of New York
No. 01DI4977768
Qualified in Westchester County
Commission Expires Feb. 11, 2011

PRINT NAME BENEATH SIGNATURE
PETER FELDMAN

License No. 797824

© 1988 JULIUS BLUMBERG, INC., PUBLISHER NYC 10013

XXXXX UNITED STATES COURT OF FEDERAL CLAIMS

XXXXXXXXXX

TDM AMERICA, LLC,

*Plaintiff(s)*

*against*

THE UNITED STATES OF AMERICA AND DONJON MARINE COMPANY, INC.

*Defendant(s)*

*Index No.* 06-472-C

# AFFIDAVIT OF SERVICE OF SUBPOENA AMENDED IN CIVIL CASE

STATE OF NEW YORK, COUNTY OF NEW YORK SS: The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at WAYNE, NEW JERSEY

That on 5/16/07 at 2:25 P M., at VALLEY BROOK AVENUE, LYNDHURST, NEW JERSEY

deponent served the within subpoena on OENJ CHEROKEE CORPORATION witness therein named, AMENDED IN CIVIL CASE

INDIVIDUAL 1. ☐ by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said subpoena.

CORPORATION 2. ☒ a DOMESTIC corporation, by delivering thereat a true copy to LORI RIPP personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be MANAGING AGENT thereof.

SUITABLE AGE PERSON 3. ☐ by delivering thereat a true copy to a person of suitable age and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

AFFIXING TO DOOR, ETC. 4. ☐ by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there

MAILING TO RESIDENCE USE WITH 3 OR 4 5A. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness at witness' last known residence, at and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO BUSINESS USE WITH 3 OR 4 5B. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to witness at witness' actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

DESCRIPTION USE WITH 1, 2, OR 3 ☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☒ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☒ 36-50 Yrs. | ☒ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $ the authorized traveling expenses and one day's witness fee.

Sworn to before me on 5/17/07

JOHN DICANIO
Notary Public, State of New York
No. 01DI4977768
Qualified in Westchester County
Commission Expires Feb. 11, 2011

PRINT NAME BENEATH SIGNATURE
PETER FELDMAN

License No. 797824

**Exhibit 3**

# In the United States Court of Federal Claims

No. 06-472C

(Filed: October 23, 2006)

****************************************** *
*
TDM AMERICA, LLC, *
*
Plaintiff, *
*
v. *
*
THE UNITED STATES, *
*
Defendant. *
*
****************************************** *

## ORDER

On August 21, 2006, the Defendant filed a Motion to Notice Interested Third Parties pursuant to Rule 14(b) requesting the Court to provide notice of the above captioned action to the three parties listed below.

1. Clean Earth Dredging Technologies, Inc.
   One Linden Avenue East
   Jersey City, New Jersey 07305

2. Donjon Marine Company, Inc.
   1250 Liberty Avenue
   Hillside, New Jersey 07205

3. OENJ Cherokee Corporation
   251 Jersey Gardens Blvd. East
   Elizabeth, New Jersey 07201

Plaintiff TDM America did not oppose the Motion, but requested the Court take notice that its acquiescence should not be seen as limiting TDM's infringement claims only to contracts involving the parties identified in the Motion.

Defendant's Motion for Notice to Interested Third Parties is hereby GRANTED. Pursuant to Rule 14(b), the Clerk of the Court shall issue an original and one copy of the notice of this pending action, and of the opportunity to intervene and assert an interest therein, to the interested third parties listed above. The notice shall contain a statement of the time within which such third party may appear (42 days after service), and shall indicate that it is accompanied by a copy of the pleadings, which shall be attached by the Defendant in accord with Rule 14(b)(4).

The Clerk of the Court shall deliver the notice to the Defendant, who shall cause the same to be served on the person to be notified by registered or certified mail, return receipt requested, with Defendant to file with the Clerk the return of such service, which return shall include the copy of the notice with return receipt attached. Rule 14(b)(5).

**IT IS SO ORDERED.**

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

**Exhibit 4**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
----------------------------------------)
TDM AMERICA, LLC                        )
                    Plaintiff,          )
              vs.                       )
                                        )
THE UNITED STATES                       )
                                        )
                    Defendant.          )
           and                          )
DONJON MARINE COMPANY, INC.,            )
              Third-Party Defendant.    )
----------------------------------------)
```

May 10, 2007

9:31 a.m.

**** C O N F I D E N T I A L *****

Contains PROPRIETARY INFORMATION. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose PROPRIETARY INFORMATION is included.

**********************************

DEPOSITION of Defendant by BRYCE W. WISEMILLER, held at the offices of Davidoff, Malito & Hutcher, LLP, 605 Third Avenue, New York, New York, pursuant to Notice, before ELIZABETH SANTAMARIA, a Notary Public of the State of New York.

A. Subcontractor. They retained a subcontractor.

Q. And who was that?

09:45:09 A. OENJ Cherokee Corporation.

Q. Which years did this occur?

MR. FLAHERTY: Objection. Foundation.

Q. You can answer.

09:45:24 MR. ADLER: Off the record.

(Discussion off the record.)

Q. Go ahead.

A. The question was what years?

MR. ADLER: Repeat it.

09:45:46 (Record read.)

A. 2002 through 2004, I believe.

Q. Let me go back to this.

With respect to the Port Jersey Channel navigation deepening project, you had

09:46:23 mentioned that Donjon was one of the two contractors involved in this project, correct?

A. So far.

Q. How did you learn that Donjon was one of these two contractors?

09:46:44 A. Donjon was the apparent low bidder

Q. In reviewing that submission, do you recollect a description of the process for treating dredged material?

09:52:32 A. Yes.

Q. Do you recall whether or not a subcontractor was processing it or Donjon itself?

A. As I mentioned earlier, OENJ Cherokee as I recall was the subcontractor retained by Donjon

09:52:49 to process the material.

Q. Do you recall where that processing was taking place?

A. Yes. Bayonne, New Jersey.

Q. Do you know whether or not the

09:53:00 Bayonne, New Jersey site was an OENJ site?

A. I do not recall the owner of the site, whether it was OENJ or other companies related to the ultimate development of the site.

Q. Do you generally recall -- do you

09:53:29 recall whether or not the processing occurred in a barge or land base?

A. The processing of dredged material at that site was done through a land-based pugmill.

Q. What is your understanding of a

09:53:49 pugmill?