**UNITED STATES COURT**
**OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM AMERICA, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant.<br>and<br>DONJON MARINE COMPANY, INC.,<br>Interested Party. | Civil Action No. 06-472 C<br><br>Judge Thomas C. Wheeler |

# NON-PARTY REDEVELOPMENT MATERIALS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF TDM AMERICA, LLC'S MOTION TO COMPEL DISCOVERY

**GIORDANO, HALLERAN & CIESLA**
A Professional Corporation
*Mail to*: P.O. Box 190
Middletown, N.J. 07748
*Deliver to*: 125 Half Mile Road
Red Bank, N.J. 07701
(732) 741-3900

Attorneys for Non-Party Redevelopment Materials, Inc.

CATHERINE J. BICK, ESQ.
Of Counsel & On The Brief

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

STATEMENT OF FACTS ........ 1

LEGAL ARGUMENT ........ 7

POINT I

RMI PROPERLY OBJECTED TO THE SUBPOENAS SERVED PURSUANT TO RCFC 45 AND IS ENTITLED TO THE PROTECTION OF THE RULE IN CONNECTION WITH ANY COMPELLED COMPLIANCE ........ 7

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## Cases

Capital Properties, Inc. v. United States of America, 49 Fed.Cl. 607 (2001)................................ 12

First American Corp. v. Price Waterhouse LLP, 184 F.R.D. 234 (S.D.N.Y. 1998)........................ 8

Jade Trading, LLC v. U.S., 65 Fed.Cl. 188 (Ct. Cl. 2005)............................................................ 8

McCabe v. Ernst & Young, LLP, 221 F.R.D. 423 (D.N.J. 2004).................................................. 7

Tuite v. Henry, 98 F.3d 1411 (D.C. Cir. 1996), aff'd, 203 F.3d 53 (D.C. Cir. 1999)..................... 8

Tutor-Saliba Corp. v. U.S., 32 Fed.Cl. 609 (Ct. Cl. 1995)................................................ 8, 12, 13

## Rules

RCFC 45(b)........................................................................................................................ 7

RCFC 45(c)(1)..................................................................................................................... 7

RCFC 45(c)(2)(B)...................................................................................................... 1, 7, 12

## STATEMENT OF FACTS

On or about May 16, 2007, RMI received a subpoena in this matter directed to it and an amended subpoena directed to OENJ Cherokee Corporation "c/o RMI Redevlopment Materials, Inc." (Declaration of Thomas Valenti ("Valenti Dec.") ¶2, Exhibits 1 & 2 to Declaration of Michael Adler ("Adler Dec.")). RMI was formerly known as OENJ Cherokee Corp. Thus, both subpoenas, though not identical, were directed to the same company. The subpoenas sought depositions and documents. RMI was aware of the litigation as it had been noticed as an interested party, although it has chosen not to participate. Within 14 days of receipt of the subpoenas, by letter dated May 29, 2007, RMI wrote to counsel for TDM America, LLC ("TDM") advising that RMI objected to the production of documents set forth on Schedule A of the subpoenas pursuant to RCFC 45(c)(2)(B). (Exhibit 10 to Adler Dec.). As TDM was advised in the May 29, 2007 letter, production by RMI of the documents requested in the subpoenas constitutes an undue burden on RMI. Id.

As explained in RMI's initial RCFC 45(c)(2)(B) correspondence to TDM, a review of the subpoenas to RMI and OENJ, which contained, respectively, forty-six and forty-seven separate categories "upon which the deposition will be taken and request for documents" was made, led RMI to conclude that there are potentially tens of thousands of pages of responsive documents. (Valenti Dec. ¶2). For some categories of documents, TDM seeks documents dating back ten years; for other categories the subpoenas indicated no time limitation whatsoever. TDM was immediately advised of the hurdles to the fast and efficient production of the documents it sought. Not only are many of these documents contained in an off-site storage facility, but commingled among them are documents subject to the attorney-client privilege that must be review or redacted. Id. As such, production by RMI of these tens of thousands of pages of documents cannot proceed without RMI having same reviewed by counsel. Furthermore, RMI

advised TDM, in this letter dated May 29, 2007, that there may be contractual confidentiality provisions to which RMI is subject that would require the further removal of documents prior to their production for inspection and copying. Id. Accordingly, it was clear, and plainly stated to TDM over two months ago, that the undertaking that will be required to produce documents responsive to the subpoenas will be time-consuming and costly. Moreover, and perhaps more importantly, RMI, a non-party to the litigation, candidly stated that it is financially distressed and does not have the resources to allocate to the project of production. Id.

Notwithstanding the obvious undue burden, both in time and cost, that RMI would need to bear, it has never refused to appear for deposition or produce documents, despite what TDM has inaccurately asserted in its motion to compel. In RMI's first contact with TDM after receiving the subpoenas, the May 29, 2007 letter, RMI invited TDM to contact it to discuss a narrowed production of documents. (Exhibit 3 to Adler Dec.). In fact, a dialogue between counsel for RMI and TDM resulted from RMI's May 29, 2007 letter. The discussions continued until June 26, 2007, after which there was a month-long silence by TDM, broken by the filing of this motion. However, it is absurd to contend, as TDM does in its motion, that after RMI "ask[ed]" TDM to narrow its requests, "TDM did so without protestation." (TDM Brf. 3). The documentary evidence cited for this claim, TDM's letter of June 22, was written more than three weeks after RMI first invited TDM to discuss a narrowed scope of production and after three telephone conversations between counsel for TDM and RMI. (Declaration of Catherine J. Bick ("CJB Dec." ¶3). Moreover, the purportedly narrowed request is a representation that TDM is "essentially interested in documents that comprise the contracts and subcontracts that pertain to treating dredge material on behalf of the United States, directly or indirectly" as well as "documents that describe the treatment process, indicate the volumes of treated dredged

materials and the amounts paid to RMI for such treatment." (Exhibit 9 to Adler Dec.). (emphasis added). This attempt to narrow did not address the serious burdensomeness concerns that RMI raised immediately after being subpoenaed. RMI has not refused to produce documents. It is, and has always been, willing to do so. It should not, however, be compelled to shoulder the undue burden of compliance, ignore the rights of third parties and expose itself to penalty, which is what TDM's demands require.

As RMI advised TDM, and as was reiterated in a June 20, 2007 letter (Exhibit 11 to Adler Cert.), the bulk of RMI's documents responsive to TDM's request are located in 250 bankers-type boxes inside two 12' x 20' storage somewhat organized by topic, they are not organized by year. Id. Nor are they organized by whether the documents within pertain to volume or method of process. They are organized by project. Documents related to the narrowed TDM request for documents within the boxes are also commingled with documents unrelated to the requests. Id. at ¶¶7-10. During the remediation and closure of the Bayonne, New Jersey landfill, approximately 6-8 millions of yards of fill material, including processed dredge material from a variety of sources, were utilized. Dredge was processed and disposed of[1] at this Bayonne facility pursuant to agreements with parties who were performing work for the U.S. Army Corps of Engineers, for a period of years, concluding in December 2003. The site was, in fact, sold in December 2005 and is now being operated as an eighteen hole golf course. Id. at ¶¶3-4. Accordingly, what TDM is happy to characterize (without ever having seen the storage facilities) as a "woefully deficient and negligently maintained document storage system", "hapless" and RMI's "sloppiness" is simply the reality of the ordinary cause method for storage of a high volume business that has not been operational for over three years.

[1] RMI denies that the transcript exhibits attached to the Adler Declaration support all of its factual contentions in its brief. In particular, RMI denies it "dredged" material for upland disposal (TDM Brief, p. 2), which assertion is not supported by the record cited.

Confidentiality and privilege are also concerns that RMI expressed to TDM. The wholesale production of documents by RMI of documents, including the numerous contracts between RMI and dredging companies that contain confidentiality provisions (as well as information disclosed under the protection of those provisions), would expose RMI to claims by third parties and would also cause RMI to produce attorney-client privileged documents. As to the former, as TDM knows, there is no one at RMI who has the knowledge to identify, without a review of the documents, just what confidentiality agreements to which RMI is subject exist. (Exhibit 11 to Adler Dec.; Valenti Dec. ¶10). Thus, as RMI expressed, without knowing what are the confidentiality provisions, and their limitations, something that cannot be determined without a review of the documents, it cannot be said that production under the confidentiality order in this matter will insulate RMI from a finding that the provisions were breached or will protect the rights of third parties. RMI is burdened with the need to obtain the consent of the other parties to the confidentiality provisions for the disclosure of the documents that these parties deem to be covered by the confidentiality provisions, which, in the case of contracts, typically survive the termination of the contracts themselves. These third parties are entitled to due process.

TDM suggested during the course of discussion with RMI, and reiterates in its motion to compel, that documents in RMI's possession that are subject to confidentiality provisions have already been produced in this litigation. (See TDM Brf. p. 3). Further, TDM asserted that certain of the documents sought should be produced without review or redaction because they were required to have been submitted to the United States in connection with submissions by the party contracting directly with the United States. RMI, in an email sent on June 22, 2007, which followed a conversation between counsel for RMI and TDM on June 21, 2007, asked TDM to

identify the authority upon which TDM was relying for the proposition that such documents were already freely available, advising that if certain documents were in the "public domain", then one aspect of RMI's concern might be alleviated. (CJB Dec. ¶4). TDM did not respond to this request. Rather, on June 22, 2007, it sent a letter demanding that RMI provide "a response and an indication when [TDM] can receive documents no later than **June 26, 2007**, or [TDM] will submit a motion to the court advising the court of our impasse." (Exhibit 9 to Adler Dec.)(emphasis in original).

Not only did TDM not respond to the inquiry of RMI, but, further, in none of its correspondence, including its June 22, 2007 letter, did TDM propose any way to address the very real concern of RMI about costs of production, including pre-production review, other than to reject any responsibility to share in same.

In its timely response to TDM's June 22, 2007 letter demand, RMI laid out, as plainly as possible, its position on all the three key areas of concern and dispute – the scope of the request, confidentiality and cost. RMI further offered concrete proposals for addressing each of these in a way that accommodates TDM's need for information, the cost burden on RMI and its exposure to claims from third parties to whom RMI owes a duty of confidentiality and, thus, who have rights that cannot be trampled. RMI proposed as follows:

> Scope of Production. RMI proposed that the description of the documents produced be as follows:
>
> (a) Contracts to which RMI is a party and under which the treatment of dredge materials is one of the services to be provided;
>
> (b) Daily scow surveys/reports; and
>
> (c) Accounting report showing all amounts paid to RMI for treatment of dredge material under the contracts referenced in (a) above. Note that such amounts may be bundled or commingled with other amounts.

> Cost Estimate. RMI is willing to assemble a small team of paralegals (~$100/hr) and associate attorneys (<$200/hr) (total of 2 or 3 people) to spend one day looking through boxes. Based on this test, RMI will get a feel for how long it will take to go through the boxes and estimate how much it will cost and we can then provide an estimate for the review of the boxes. As previously proposed, RMI again proposed that TDM share 50% of all of RMI's legal fees associated with the production of documents (including, without limitation, the review of boxes) and pay 100% of the other out-of-pocket costs. Additionally, RMI proposed that TDM pay 100% of RMI's legal fees related to any motion addressing relief from any confidentiality restraints to allow production to TDM.
>
> Confidentiality. After reviewing all of the documents RMI would (1) identify any attorney-client or attorney work product privileged documents, (2) identify any third parties to whom a duty of confidentiality may be owed, and (3) identify those documents which may be subject to a third party confidentiality obligation. Any documents not subject to a privilege or confidentiality would be promptly, but at TDM's sole cost, bate stamped, copied (or scanned if TDM prefers) and delivered to TDM. Once the third parties to whom a confidentiality obligation was owed had been identified, RMI would give notice to them and give them a reasonable opportunity to respond (e.g., 30 days). RMI could also provide them with a copy of the existing protective order for their consideration. For third parties who did not respond or wanted their information to be subject to the existing protective order, any documents previously withheld with respect to such party to protect their confidentiality rights, would, subject to the protective order, be promptly, but at TDM's sole cost, bate stamped, copied (or scanned if TDM prefers) and delivered to TDM. TDM would take such steps as may be necessary to ensure that such information would be covered by the protective order. For third parties who objected to the disclosure, TDM would make a motion to compel and to lift the impediments of the confidentiality agreements and give RMI and such third parties an opportunity to be heard. The outcome of that motion would determine what happened with those documents. Again, we propose that TDM bear 100% of RMI's legal fees associated with any such motion.

(Exhibit 12 to Adler Dec.)

TDM failed to respond to this letter by phone, letter or email correspondence. TDM's counsel did eventually telephone RMI's counsel's office, but not until July 25, almost one month

later. (CJB Dec. ¶5). This is the same date that TDM's motion to compel was sent out to RMI by mail. Before that call was returned, the motion was received.

## LEGAL ARGUMENT

## POINT I

### RMI PROPERLY OBJECTED TO THE SUBPOENAS SERVED PURSUANT TO RCFC 45 AND IS ENTITLED TO THE PROTECTION OF THE RULE IN CONNECTION WITH ANY COMPELLED COMPLIANCE

Rule 45 of the United States Court of Federal Claims governs subpoenas. Specifically, RCFC 45(b) allows for service of a subpoena upon a non-party. One subsection of this rule, RCFC 45(c)(1), protects persons subject to subpoenas, establishing, in relevant part, that a party or an attorney "shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," and that the court shall enforce the duty and impose appropriate sanctions, which may include a reasonable attorney's fee. Subsection (c)(2)(B) further provides that "within 14 days after service, or before the time specified if less than 14 days, a person commanded to produce and permit inspection may serve upon the party or attorney designated in the subpoena written objection to inspection and copying of any or all of the designated materials". Upon such written objection, the party serving the subpoena "shall not" be entitled to inspection and copying except pursuant to a court order. Thus, if objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. The Rule further specifies that an order to compel "shall protect any person who is not a party . . . from significant expense resulting from the inspection and copying commanded." See McCabe v. Ernst & Young, LLP, 221 F.R.D. 423 (D.N.J. 2004)(noting that FRCP 45(c)(2)(B) provides the procedure by which a non-party is protected from costly compliance with a subpoena).

In light of this Rule, there can be no reasonable dispute that in the event of a motion to compel by a party issuing a subpoena to a non-party, and the issuance of an order compelling production, the Rules expressly provide that the court "must protect the nonparty from significant expense." Tutor-Saliba Corp. v. U.S., 32 Fed.Cl. 609, 611-12 (Ct. Cl. 1995). A non-party's legal fees specifically have been considered a cost of compliance that is reimbursable pursuant to the Rule. See First American Corp. v. Price Waterhouse LLP, 184 F.R.D. 234, 241 (S.D.N.Y. 1998)(citing Kahn v. General Motors Corp., No. 88 Civ. 2982, 1992 WL 208286 at *2 (S.D.N.Y. Aug. 14, 1992)). The critical issue is whether the subpoenas impose an undue burden.

To determine whether a subpoena presents an undue burden, the Court considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Jade Trading, LLC v. U.S., 65 Fed.Cl. 188, 190 (Ct. Cl. 2005). Application of these factors here supports the finding that it will be undue burden on RMI to comply with TDM's subpoenas as TDM has demanded and that, having objected pursuant to RCFC 45, RMI is entitled to protection.

Preliminarily, RMI qualifies for RCFC 45 protection as it promptly provided notice to TDM, through RMI's attorney's letter of May 29, 2007, that compliance with the subpoenas imposed an undue burden on RMI. This objection by letter was appropriate. It is customary that an objection pursuant to this Rule be made by letter. Tuite v. Henry, 98 F.3d 1411, 1416 (D.C. Cir. 1996), aff'd, 203 F.3d 53 (D.C. Cir. 1999)(noting that sending a letter of objection within 14 days after service of subpoena was proper pursuant to FRCP 45(c)(2)(B)). In this letter, served within 14 days of receipt of the subpoenas, and in the letters that followed, RMI outlined all of

the reasons why compliance imposes an undue burden. These reasons are consistent with the factors identified by the Court as significant to the undue burden analysis.

While RMI does not dispute that there may be documents and information in its possession relevant to the lawsuit, the subpoenas served call for tens of thousands of pages of documents dating back ten years or more. Even in the attempted narrowed form, TDM's request is broad; it seeks documents "essentially comprising" contracts and subcontracts "directly or indirectly", documents that "describe" the dredge treatment process and "indicate" the volumes of dredge materials and amounts paid to RMI for treatment of dredge. While RMI is appreciative of TDM's effort to narrow the scope of production, this restatement of the forty-six and forty-seven category subpoenas is not specific and also fails to obviate RMI's burden. The breadth of the subpoena is still expansive, implicating numerous contracts between RMI and dredging companies and documents related to millions of yards of fill material. These documents include such documents as emails, letters, notes, memorandum, spreadsheets, tug logs, price sheets, shipping manifest data, correspondence, maps, DEP and DOT engineering reports and hydrographic surveys. (Exhibit 11 to Adler Dec.). There may also be computer records.

Even though TDM vigorously belittles the method of RMI's storage of its documentation, the hurdles to production are real. TDM significantly omits to mention to the Court that the processing of dredge at RMI's operations at the Bayonne, New Jersey landfill concluded in December 2003 and the site was sold in 2005. (Valenti Dec. ¶¶3-4). Accordingly, there is nothing "negligent" or "hapless" about this off-site storage. Nor is RMI asking TDM to "clean up" anything. It is simply asking TDM to recognize that its subpoena imposes an undue burden on RMI that it should not alone be required, particularly in its financially distressed state, to bear.

Unfortunately, because of the breadth and depth of the documents sought, review of the documentation located in bankers boxes off-site cannot be avoided. In particular, RMI is subject to confidentiality provisions in connection with its contracting. These confidentiality provisions typically survive the termination of the contracts themselves. (Valenti Dec. ¶11). If RMI were to produce the documents to TDM for review pursuant to the confidentiality order in this case, and only thereafter designate "protected information", the likely scenario based upon what RMI presently knows is that the terms of the confidentiality provisions would already be breached. TDM has criticized RMI for not having already notified the parties with whom it has contracted that their confidentiality rights have been implicated by the subpoenas. This criticism is baseless. As has been explained in detail and repeatedly, RMI does not have those many years old contracts separately stored and filed. They are among the tens of thousands of pages that must be reviewed. Nonetheless, RMI has reason to believe that the broad provisions do prevent wholesale production of documents to TDM for review.

Attached as Exhibit A to the declaration of Thomas Valenti submitted herewith is an excerpt of a contract into which RMI entered with a dredging company that includes a confidentiality provision. That provision is as follows:

> 12.10 Confidentiality. (a) Each of the parties hereto acknowledge that it or its employees or Subcontractors may, in the course of performing its responsibilities under this Agreement, be exposed to or acquire information which is deemed by the other party to be both proprietary to and highly confidential (the Confidential Information"). Any and all Confidential Information obtained by a party hereto, its employees or Subcontractors, in the performance of this Agreement shall be deemed to be confidential and proprietary information. Each party hereto agrees to hold such Confidential Information in the strictest of confidence and not to disclose such Confidential Information to third parties ("Third Parties"), as hereinafter defined, or to use such Confidential Information for any purpose whatsoever other than the provision of services as contemplated by this Agreement and to advise each of

> its employees and Subcontractors who may be exposed to such proprietary and confidential information of their obligations to keep such information confidential. Third parties, as defined herein, shall include, but not be limited to a party's respective parent companies, corporations and/or partnerships, and/or joint ventures and its owned controlled affiliate, associated and subsidiary companies, corporations and partnerships, their agents, representatives or partners, officers, shareholders, directors and employees.
>
> (b) Contractor, its employees, Subcontractors, and Third Parties shall be prohibited from storing any equipment on the Site without the prior written approval of OENJ.
>
> Each party agrees and acknowledges that the confidentiality terms set forth in Section 12.10 are a material term of this Agreement, the breach of which will result in irreparable harm to the other party. The parties hereto further acknowledge that any breach of the terms and conditions of Section 12.10 may result in irreparable harm to the other party for which money damages would not be sufficient remedy. Accordingly, in the event of a breach or threatened breach of any of the terms and conditions of Section 12.10, and in addition to any other remedy provided herein by law or in equity, the damaged party shall be entitled to seek appropriate equitable relief, including injunctive relief and specific performance, in any court of competent jurisdiction.
>
> This Section shall survive the termination of this Agreement.

If this one provision is typical, it is not clear how RMI could agree to allow TDM's representatives to review RMI documents without consent of the other party to the confidentiality provisions without RMI exposing itself to a claim by the other party for irreparable harm and trampling the rights of similarly-situated third parties. The rights of RMI to be free from this risk and the rights of other parties to whom RMI owes a duty are clearly implicated. RMI is not a party to this case and has no interest in lengthening the parties' discovery time or obstructing any party. For these reasons RMI has consistently remained quite willing to produce materials in response to the subpoenas. It is, however, prevented from doing

so in the fashion that TDM demands. RMI respectfully submits that the undue burden is plainly evidenced.

The two cases cited by TDM in support of its motion do not support its request for an unrestricted order compelling RMI to comply with the broad, unduly burdensome subpoenas without protection. First, TDM cites Capital Properties, Inc. v. United States of America, 49 Fed.Cl. 607 (2001), for the proposition that a court may temper a subpoena if it imposes a genuine burden or harshness on a party. RMI agrees with this proposition. Notably, however, Capital Properties did not discuss RCFC 45 and the standard used to measure whether a non-party is entitled to the protections of that rule. Moreover, RMI is not, as was the subpoenaed party in Capital Properties, resisting a subpoena on the basis of relevancy. RMI acknowledges that TDM is entitled to obtain information from it; it has only most reasonably asserted that it should not alone bear the burden of production or be compelled to trample the rights of third parties in doing so. Thus, Capital Properties is distinguishable.

Likewise, the other case cited by TDM, Tutor-Saliba Corp. v. United States, 32 Fed.Cl. 609 (1995)[2], does not support its cause in this motion. Tutor-Saliba is the decision of the court on an application by a non-party for an award of the costs it incurred in responding to a subpoena served upon it by the plaintiff. Although there was negotiation between the plaintiff and the non-party regarding the production and costs, when the plaintiff threatened to file a motion to compel, the non-party simply supplied the documents, in the absence of an agreement for payment of costs. The application for costs followed the production. The Court specifically recognized the plain terms of RCFC 45(c)(2)(B), and the non-party's right to object to an

---

[2] TDM's brief, in fact, references a case by the name of Jade Trading, LLC v. United States of America, but provides the citation to the Tutor-Saliba case. Our research revealed numerous reported decisions in cases entitled Jade Trading, LLC v. United States of America. Thus, it is unknown which TDM may have been attempting to cite. Tutor-Saliba, however, contains discussion relevant to the issues of this motion.

unreasonable or unduly burdensome subpoena. 32 Fed.Cl. at 610-611. The court stated as follows:

> The Court's rules thus expressly provide that a non-party may be reimbursed for complying with expensive or unduly burdensome discovery requests. … However, to be eligible for an award under RCFC 45(c)(2), the award must be a condition of the court's issuance of an order compelling production by the nonparty, which would not occur unless the nonparty had filed a motion to quash or, having served written objections upon the party or attorney requesting production, the party sought an order to compel. *See* RCFC45 (c)(2)(B).

Id. at 610-611 (citations omitted). Here, that is precisely what occurred. RMI timely advised TDM that it objected to the subpoenas and could not alone bear the financial burden of responding. (See Exhibits 10, 11 and 12 to Adler Dec.). Thereafter, RMI took reasonable positions and attempted to negotiate with TDM a resolution acceptable to all parties. Its best efforts, unfortunately, failed. Hence, under these circumstances, unlike the non-party in Tutor-Saliba, RMI is entitled to an order making payment of costs a condition of compliance.

**CONCLUSION**

For the reasons set forth herein, RMI respectfully suggests that an order that reflects its last offer to TDM to share costs and address confidentiality and privilege concerns, set forth in its June 26, 2007 letter (Exhibit 12 to Adler Dec.), would be a reasonable and appropriate way to resolve the dispute between it and TDM and facilitate the production of documents and depositions.

GIORDANO, HALLERAN & CIESLA
A Professional Corporation
Attorneys for Non-Party Redevelopment Materials, Inc.

By ____________/s/____________
CATHERINE J. BICK, ESQ.

Dated: August 10, 2007

::ODMA\PCDOCS\GHCDOCS\598224\1