**Exhibit 4**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM AMERICA, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Docket No.: 06-472C |
| UNITED STATES, | ) |
| Defendant. | ) |

Room No. 603
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
March 6, 2007

The parties met, pursuant to notice of the Court, at 10:01 a.m.

BEFORE: HONORABLE THOMAS C. WHEELER
Judge

APPEARANCES: (Via Telephone)

<u>For the Plaintiff</u>:

DAVID W. DENENBERG, Esquire
MICHAEL A. ADLER, Esquire
Davidoff, Malito & Hutcher, LLP
605 Third Avenue, 34th Floor
New York, New York 10158
(212) 557-7200

<u>For the Defendant</u>:

ERICA A. FRANKLIN, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., Suite 1100
Washington, D.C. 20530
(202) 353-0517

APPEARANCES: (Cont'd.)

For the Intervenor, Donjon Marine Company, Inc.:

GARY J. CAMPBELL, Esquire
McCarter & English, LLP
225 Franklin Street
Boston, Massachusetts 02110
(617) 345-7000

P R O C E E D I N G S

(10:01 a.m.)

THE COURT: We are on the record this morning in the TDM America case, Docket No. 06-472C. I am here in chambers with my law clerk, Peggy O'Neil.

Can we have you all identify who is on the phone, please?

MR. DENENBERG: David Denenberg and Michael Adler from the firm of Davidoff, Malito & Hutcher on behalf of the Plaintiff, TDM America, LLC.

THE COURT: All right. Thank you.

MS. FRANKLIN: Erica Franklin with the Department of Justice on behalf of the United States.

THE COURT: Okay. Good morning, Ms. Franklin.

Is the Intervenor on?

MR. CAMPBELL: Yes. This is Gary Campbell with McCarter & English on behalf of the interested party, Donjon Marine.

THE COURT: All right. Thank you. Welcome to you all.

I understand that this conference this morning was requested by the Plaintiff, so, Mr. Adler or Mr. Denenberg, please go ahead.

MR. DENENBERG: This is Mr. Denenberg.

Thank you very much, Judge Wheeler, for scheduling this conference so quickly.

I've been mindful throughout this process of trying to in good faith move discovery forward and your suggestion of involving the Court where a dispute looms, and this came up February 6 and comes up again.

If I could just briefly give the history? After the status conference on November 2, on November 6 we, on behalf of TDM, served the U.S. with interrogatories and document requests.

Those interrogatories and document requests, with an extension, were first responded to in or around late December of 2006, at which point by early January a dispute loomed because the documents that we received were mostly just contract bid-type documents lacking in the detailed descriptions of the processes, the amount of dredge material treated, the amount of dredge material disposed of, the cost related, the additives amounts, the photos that the contract specifically says have to be provided regarding the processes.

The interrogatories, some of which refer to documents as the response, refer to no documents in particular, and indeed when it comes to process and amounts treated there were no documents, and the

interrogatories themselves were not verified.

We, meaning myself and Mr. Adler, spoke with Ms. Franklin and exchanged correspondence to resolve the dispute. We thought we did when the U.S., by Ms. Franklin, agreed to produce those documents and then had some documents available for inspection.

To be sure, in the middle of January we were told that West Coast and other district documents would be provided to us. New York District documents would be made available for inspection in Jersey City and in Manhattan.

When we started to do the inspection, we were told that our officers couldn't see the documents, at which point we involved Your Honor, and Your Honor on February 6 stated that our officers, in accordance with --, were able to see the documents.

After the conference with Your Honor on February 6, Ms. Franklin stated that without a two-tier protective order in place and before her making a motion to reargue, our officers were not going to be able to see the documents.

To try to get around that dispute I agreed that we would enter that two-tier protective order and then wanted my client, the designees, to see the documents, but Ms. Franklin said no, they still

couldn't see the documents because they had not been designated yet.

I suggested that she go through and designate the documents, and if she has to go through and designate the documents she might as well produce them to us rather than us going for the inspection, which she was uncomfortable with anyway the inspection, at which point Ms. Franklin requested that I try to, having seen some of the documents -- just counsel, that is -- try to detail in a letter to streamline some of the requests, which I did on February 13.

Prior to the conference on February 15, I had stated that I would seek involvement of the Court or the suggestions of the Court if discovery continued to be a problem, at which time I believe Ms. Franklin told me and I know I stated on the record on February 15 that I was told documents would be produced to us.

And by documents I mean the critical documents that we need, these detailed descriptions of the processes, the amounts of dredge material treated, the photos, the verifications of the interrogatories so we can know who would be some of the 30(b)(6) or other witnesses. We would get that within two weeks

and together, setting dates together with all the parties, deposition dates were set for this week and next week.

Then last week we sent a letter to Ms. Franklin to please get us the documents -- we want to be prepared for this week's depositions -- at which point we got a letter back that there was no promise to get us the documents in two weeks, Ms. Franklin is very busy, and the more motions that we make the more time it takes, but she'd be available for a phone call on Friday.

When we called on Friday, the first thing Ms. Franklin told our office was that if we want a date then it's a short telephone call because she won't give us a date.

It's four months since our document requests and our interrogatory requests, and the essence of what we're looking for, which is these detailed descriptions of the processes which are clearly supplemental information to the contracts, the amount of dredge materials, the invoices, which again are spelled out in these contracts, the photos, verifications of the interrogatories.

We've even shown what summary documents that we were able to obtain on line that the Army Corps of

Engineers has the summary documents district-by-district of amounts of material that they've dredged and costs either for forecasting and budgetary purposes or afterwards for summary purposes, and we haven't gotten it.

Another request was for prior art documents cited in an interrogatory response, but not produced. We just have not been able to get any of the documents, cannot take a deposition, and when we approached Your Honor we were told that we could have people involved in the inspection.

I think in good faith we agreed to the two-tier protective order and a methodology where we could get the documents. It just has led us no place.

THE COURT: Ms. Franklin, can you respond for us?

MS. FRANKLIN: I'll try to, Your Honor. That's a lot to respond to, and my primary concern is that the Plaintiff is misrepresenting events in this case to the Court.

THE COURT: Well, try to get to the meat of it here and tell us what the problem is on producing the documents and when they can be available.

MS. FRANKLIN: Sure. If I might, I would like to just state, since we are on the record, that

Plaintiff submitted to the United States interrogatories and a request for documents prior to the time the initial disclosures were due, so even in those document requests they were asking for documents to support our initial disclosures that had not yet been produced or were due.

The United States timely submitted its initial disclosures. The United States timely responded to Plaintiff's first and only --

THE COURT: When were the initial disclosures made?

MS. FRANKLIN: I don't have the date that they were submitted, but we requested an extension due to my personal leave, and we submitted the interrogatory responses on the agreed upon date of December 15.

This was early in the litigation. This was approximately one month after the initial discovery schedule was set, so based upon Rule 26 we're taking an opportunity as our investigation continues and as our document identification progresses to produce to Plaintiff on a rolling basis the documents that we locate.

In fact, and as I mentioned in the motion that I filed last evening, we have produced documents

on several occasions. We produced them on December 22, we produced more on January 17, we produced more again on February 15, and we most recently produced documents on February 23.

I have a stack of documents that has now been reviewed and is ready to process or, excuse me, ready to mail to Plaintiff today, so the United States has been diligent with its efforts in document production.

Further, when the United States received the threat from Plaintiff last week for a motion to compel based on the agreement that we made for documents in New York, I was actually in New York reviewing over 70 boxes of documents for items that the Plaintiff only identified for the United States in a letter dated February 13, approximately two weeks before he requested this conference.

THE COURT: What about these key documents that the Plaintiff has identified? How are we doing on producing those?

MS. FRANKLIN: Those documents have been located as of Friday last week. That was after a week of reviewing, as I said, 70 boxes in New York.

THE COURT: How many districts of the Corps of Engineers are involved in this?

MS. FRANKLIN: Four.

THE COURT: Okay.

MS. FRANKLIN: And an investigation has indicated that in actually Detroit we may be able to exclude some of the contracts previously identified in our interrogatory responses.

It's true I've indicated to Plaintiff that the United States will be amending its interrogatory responses based on additional investigation that has occurred since December last year. At that time we will have the amended interrogatories verified, and the new information gathered will be updated.

There is not a deadline on that. Rule 26 requires that they are seasonably amended. We anticipate that we'll be able to amend those by next week. I had hoped to amend them before that. I did not give Plaintiff a date certain that they would be amended because we continue to have new issues arising in this case. For example, in the last two weeks I filed I believe four items with the Court, three of which were prompted by the Plaintiff.

THE COURT: Well, back to the Plaintiff here. What would you like me to do for you? It sounds like the government is working ahead, if not at the schedule you had hoped for.

MR. DENENBERG: Your Honor, our request was on November 6. That's when our request was. That request clearly included detailed descriptions and process material, amounts of dredge material, the photos that are cited in these contracts.

What I just heard from Ms. Franklin were dates where documents that were given to us were the base bid-type contract documents. For all I know, because this has happened three times in the past, the supplementation that I'm going to get is again just going to be the contractual type document.

I don't see any reason why the detailed process descriptions that are referred to in the contract documents, the amounts and the invoices which show the amounts treated and the amounts of dredge material disposed, the photos, are something that after four months I still don't have and I'm being told just wait and they'll be supplemented in due course and you have to wait for us to supplement.

Supplementation should be material that you become aware of or find later on with a definitive date. At some point if you're going to supplement after discovery closes there's a real issue as to whether you're precluded from admitting that.

These are the essential information that's

not just relevant to admissible information. This is the information in a patent case that tells you infringement and damages, and instead I'm being told well, wait. When I find it I'll get it for you.

At some point there is an obligation to get it in a timely manner. The close of discovery, which originally was May, is July now. That comes fast, and I'm trying to conduct depositions that are almost meaningless to conduct unless I have documents that talk of the process.

Then when I call to get a date, and I thought before the last conference I said it on the record that I was told two weeks on the February 15 conference. I call last week to get a date. I'm told if you want us to give you a date, forget about it.

This is really not supplementation material. This is material that was specifically requested. You know, I further delineated it in a February 13 letter only at the government's request. This is material that I would think would have been part of the initial disclosures because no one could say that the process documents weren't as relevant as anything else.

It wasn't part of the initial disclosures, and it wasn't part of our responses. We don't even have verified interrogatories four months later.

That's not a supplementation issue. That's a response issue. The process, the most relevant documents for process and damage, is not a supplementation issue. We've gotten nothing.

THE COURT: Well, I think what's gone on in the past is water over the dam, and we are where we are today.

You know, I agreed to hold this conference with you all not really having any documentation before me and so I'm a little bit disadvantaged because of that. It sounds like what we need here is a schedule, hopefully an agreed upon schedule, in which the government will hopefully be able to give you prompt service.

I would be willing to have the parties submit to me as soon as you can an agreed upon schedule for when these documents that Plaintiff desires will in fact be produced, and I'd be happy also to incorporate those dates in the form of an order if that perhaps would help Ms. Franklin in dealing with her clients at the various Corps of Engineers offices.

MS. FRANKLIN: Your Honor, I would like to state that the client agencies, the personnel at the client agency, have been very cooperative so I don't

point to them as an issue. I do point to the fact that this case involves over 30 contracts.

If this case was one that involved one, two, five or even 10 contracts discovery would occur differently, but, as I said, it involves over 30 contracts in four different states.

We provided Plaintiff with an opportunity to inspect these documents. They've misrepresented to you what occurred after your order relating to the protective order and relating to officers being able to attend the production. I indicated to them our intention to file a motion to reconsider, and in order to avoid that motion they decided that they would ask us to produce the documents.

That request, which they presented to the United States, also came after two days of inspecting documents in New Jersey. They realized at that point what the document production looked like, how these documents are kept; not in any specific, detailed manner. It actually takes time to go through and find what they need.

So it's not an issue really of the cooperative nature of the agency. It's just the nature of this case, which I have been trying to help Plaintiff to appreciate.

I've indicated to the Plaintiff that we have contracted with a vendor to go and copy the documents as they are identified. That vendor was available when they inspected documents at Caven Point. We have not received the documents back in a Bates stamped form. We anticipate that we will get them tomorrow.

That is from their review of documents on February 6 and 7. Again, we provided them that entire week to review documents, and they only used a day and a half to do so.

So it's an issue of selecting the documents, which we've done, and now the vendor is in and they are scanning the documents. I just received an update this morning, and the vendor, based upon the number of documents that we've identified, which is between 70,000 and 80,000 pages, is going to take the vendor at least two weeks to scan those documents and forward them to the local contractor, who will then process them with Bates numbers and provide them to me on a rolling basis so that I can remove privileged items and produce them to Plaintiff.

THE COURT: Well, whatever the reason, it seems like time continues to pass, and the Plaintiffs are not getting the meat of the documents that they want to see.

MR. DENENBERG: Mr. Denenberg speaking. That's exactly right, Your Honor.

Here if I went to the Court and four months after you allowed discovery to begin -- it was the November 2 conference. Four days later I submit the discovery demands that we were entitled to do. Discovery had opened.

If I came to the Court and you said to me you haven't conducted one deposition. You don't even have the right documents. You know, what are you waiting for? I'm not waiting. I'm trying.

There was a conflict or a dispute a month ago because to make the documents available and then not let me review it with the resources I need to review it is the same as not making them available.

Because in good faith I tried to work out the issue rather than have your order of February 6 subject to a motion for reargument and further delay, I thought I worked out something well. I agreed to the two-tier protective order, but then my officers still weren't allowed to inspect because the government said they would need to review the documents and decide which documents were proprietary, which were attorneys' eyes only.

I said well, if you need to review the

documents in such a way then you might as well produce them. I responded to her request to try to streamline the request where I've streamlined the request, annotated to the contract of you get photos according to the contract. The photos have to show the process.

You get a detailed process description according to the contract. You get invoices that show the amount treated, the volume of dredge material treated, disposed, processed. I annotated it all.

If I took a deposition tomorrow like one was scheduled, I'd have to take it again because I would not have a single document regarding process to show a witness; not a single document regarding process except for those that we had before the case started that we got on our own.

MS. FRANKLIN: Regarding processing, we've indicated to you through interrogatories and through telephone conversations that the government is not in possession of how its contractors process documents. We have told you where you need to go to get those documents, and that is from the contractors.

MR. DENENBERG: I'm glad that Donjon is on the phone because the government, first of all, does get the documents. The contracts say they get the documents.

Donjon objected to our request and said get it from the government. The government said get it from the contractor. Donjon put in their initial disclosures and in a letter yesterday you really should get these documents from the government.

MR. CAMPBELL: Your Honor, this is Gary Campbell. Mr. Denenberg has just mischaracterized Donjon's statement blatantly. The statement --

MR. DENENBERG: Your objection, Mr. Campbell?

THE COURT: Excuse me. We'll have one at a time.

MR. CAMPBELL: The statement in our initial disclosures is that the Plaintiff should seek the contract from the United States, and I'm not sure if we went into any further detail in the initial disclosures.

Yesterday in my letter to Mr. Denenberg I explained that comment that it stemmed from an investigation by the Department of Justice, a criminal investigation that did not involve Donjon, but the FBI came in and confiscated documents. They were contract documents.

I was specific that it was contract documents. I think any other documents relating to

the process I never said to get from the United States. There was never an objection. It was merely a statement to advise TDM that we may not have all of the contract documents.

MS. FRANKLIN: Your Honor, the contracts themselves have all been provided to Plaintiff. Again, the contracts, they describe the work to be done. They describe dredge and dispose of material.

The only items required in the contract are wherever the contractor decides to dispose of material is it properly permitted. We have those permits. We're providing them. Again, the actual manner of processing is held by the contractor.

MR. DENENBERG: Your Honor, I'm reading from a contract right now, and I can't be in a situation where the contractor says get it from the government, the government says get it from the contractor, and the contracts themselves specifically say that the contractor must produce within 70 days a synopsis which includes, to read down, "a detailed description of the dredging procedure to include the identification of dredges, buckets, sculls, tugs." Then it goes even further where --

MS. FRANKLIN: That doesn't relate to processing. That's dredging.

MR. DENENBERG: Okay. "Processing. The apparent low bidder must provide a detailed description of the proposed processing technology, including, but not limited to, the following stages if applicable:

"Dewatering, addressing retention time, effluent release, method for effluent disposal, material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilizing methods incorporated and chemical treatment if any, interim storage if required, rehandling and disposal."

It's exactly in the contract that that's required to be produced within 70 days. The contractor should have it. The government should have it. That goes to the essence of these patents.

MS. FRANKLIN: That's something that's available for a 30(b)(6) deposition or a fact witness deposition, but you'll learn in practice that that is regulated by the state so the only requirement in those 70-day submittals are permits from the state and from the upland processing site where the material will be disposed.

THE COURT: Having listened to this

discourse, what I get out of this is that this is turning into a more complicated and document-intensive case than perhaps the parties envisioned or perhaps that the government envisioned.

I would say that if that's the case one answer is to apply more resources to the case so that it can move more quickly.

MS. FRANKLIN: Your Honor, respectfully, the United States has done that by employing a vendor to go on site and scan documents as they are located.

I respectfully submit that the United States was fully aware of the size of the document production in this case. We provided that to Plaintiff, but it's apparently Plaintiff who doesn't appreciate that, and for that reason they continue to pressure us, assuming that we're not being diligent about our document production efforts.

THE COURT: Well, how are you going to get all of this done by the end of July, Ms. Franklin?

MS. FRANKLIN: We're going to diligently move forward.

As I said, we've already made four productions to Plaintiff, and I think I already indicated that the documents in New York have all been located, and at this point they're being scanned.

That will take approximately two weeks to scan 80,000 pages of documents.

Once they're scanned they'll be sent back to Washington, D.C. Bates numbers will be applied, and they will be presented to Plaintiff on a rolling basis as privileged items are removed.

THE COURT: But knowing the status of the document production efforts, how did it come to be that you were scheduling depositions with the Plaintiff for this week? That doesn't seem to make any sense.

MS. FRANKLIN: I explained all the items that I'm explaining to the Court to Plaintiff on numerous previous occasions. They submitted depositions early in this case, and then they have resubmitted them again.

If they submit them I check with my witnesses and find out their availability, and then later I learned from Plaintiff that they began to appreciate the situation and they asked to change the deposition dates.

MR. DENENBERG: But it's not a question of appreciating the situation because I don't appreciate it.

I don't appreciate waiting four months to

get documents and then being told we don't have these documents and I'm reading a contract that says that they have to have the documents. I'm reading a contract that says they have to have photos of the process, detailed photos, and I can't get them.

When I scheduled the depositions and then rescheduled when I couldn't get the documents in January and then rescheduled through March it was based on an understanding that we were getting the documents at the end of February. We haven't.

You know, at some point I run out of time to conduct depositions. We have one interested party, a motion to involve other interested parties. I'm going to be at a point where I'm running out of time and have to repeat depositions because I didn't have the documents before deposition.

It doesn't make any sense for us to be penalized when we did everything possible to get the documents as soon as possible.

MS. FRANKLIN: I disagree. You haven't done everything. We made these documents available to you February 6.

MR. DENENBERG: But you wouldn't let me inspect them. You said I couldn't bring the people I needed to inspect them. We called the Judge.

MS. FRANKLIN: You were welcome to inspect the documents. You did in fact inspect the documents for two days, counsel.

MR. DENENBERG: There was an attorney inspecting them who couldn't possibly inspect them the same way that our officers could. You refused to allow the officers. The Judge said the officers should see it. You refused, saying that you still need to designate the documents proprietary.

We consented or we agreed to your protective order, so then we said please let us see it now. You said no, because I haven't gone through it and made the designations.

We said if you're going to go through it and make the designations, you might as well produce them to us, and then we even gave you a letter trying to streamline the request. Based on Mr. Adler having seen the documents, we pointed you to the documents that we're looking for the best that we could.

THE COURT: Let me try to cut through some of this and get to the bottom line. What is it that I can do for you this morning?

MR. DENENBERG: Your Honor, I would like some guidance from the Court, preferably a date where I would get these documents.

I think after four months a date where I could get these documents is fair so I can then schedule depositions and conduct depositions in --

THE COURT: Excuse me. Government counsel is telling you two weeks.

MS. FRANKLIN: Your Honor, can I clarify?

THE COURT: Yes.

MS. FRANKLIN: Two weeks is the time that it's going to take the vendor to scan, meaning to copy, 70,000 pages of selected documents.

Okay. After that, those pages will need to be assigned Bates numbers, and I will immediately begin to go through as I receive them and remove privileged items and produce them to Plaintiff, so it will not be two weeks.

THE COURT: So when will it be, do you think?

MS. FRANKLIN: I would estimate that the production may begin in as early as three weeks, and that's a target depending on what other issues arise in this case between that time.

THE COURT: Now, is that the balance of the documents? This 70,000 pages, is that the balance that you will be producing to Plaintiff?

MS. FRANKLIN: Yes.

THE COURT: Okay.

MS. FRANKLIN: However, again I want to clarify just so that I'm not misrepresented by Plaintiff again.

That will be the beginning of the production in the three weeks. All 80,000 documents will not be produced at that three week mark.

MR. DENENBERG: Your Honor, I don't think I'm misrepresenting, but I think your question to her was that she said it will begin in three weeks, and then you asked if that's the balance.

I thought the answer was yes, but now I'm hearing begin again so I don't know. When is it going to end?

THE COURT: What I understand from this is that there are as many as 80,000 pages of documents that the production will begin within three weeks, and the documents will be produced on a rolling basis thereafter. Is that correct, Ms. Franklin?

MS. FRANKLIN: That's correct, and I'd also like to assert that the documents that we're talking about, these 70,000 documents, relate to the New York District.

As I mentioned, I am doing a production today. I just did one last week. I'm reviewing

documents from other districts and producing them on a rolling basis too, so they will receive documents today, later this week, next week.

As the vendor is scanning documents in New York, I am still working here to produce documents from other districts.

THE COURT: All right. We do have some other pending matters which are going to take a little bit of time.

I notice that, for example, the government wants to provide notice of this matter to six other parties. The motion indicated that the Plaintiff had some opposition to that, but I haven't seen the opposition yet. What is the status of that, Mr. Denenberg?

MR. DENENBERG: Your Honor, the opposition was in part based on the fact that on February 15, not because of the U.S., because of Donjon and before Your Honor, there was no consent to filing the leave to file an amended complaint, and if we weren't granted an amended complaint I didn't understand why then the government would need additional time beyond your original deadline to notice additional interested parties.

With the amended complaint though I will put

this in my reply or opposition. If the amended complaint is granted, I think that I would certainly consent to the government noticing additional interested parties with the concern that I've always had in extending discovery.

Noticing six additional interested parties, I think the Plaintiff would need more depositions than the limit that was put on right now, which was only 12. It seems just from the four districts and the different people at each district in the U.S. that almost 10 depositions of just the U.S. would be needed, and then each interested party, it seems like there's two or three.

I would put that in my opposition, but that was my concern: 1) Where we were with the amended complaint; 2) that if this many interested parties are coming in the Plaintiff had a concern with the deposition limit, as well as just whether time would end up getting extended yet further.

THE COURT: My only point in raising this is when a motion comes into the Court and the motion indicates that the other side does not consent to it I can't rule on it until I hear the other side's position and so these things --

MR. DENENBERG: I agree with Your Honor. I

just found out yesterday that Donjon actually doesn't oppose the motion for leave to amend, which surprised me because I didn't know why I was doing a motion for leave to amend if there was no opposition. I never changed the wording of the amended complaint from the time I first sent it out.

MR. CAMPBELL: Your Honor? This is Mr. Campbell.

THE COURT: Just a minute, Mr. Campbell. I'm not really interested in pursuing that right now.

My point simply is that when we have all of these various issues looming in the case, different balls in the air that we have to rule upon, that it necessarily takes a little time.

I mean, I fully appreciate Plaintiff's desire to move the case along, but there's only so much we can do instantaneously. It's going to take a little time.

I think for the purposes of today's conference we have some commitments from Defendant on when documents will be produced, and I think we're going to have to live with those. You can schedule depositions to occur thereafter.

I would, as I always do, encourage you to feel free to call the Court if it's not going as any

party planned.

MR. DENENBERG: Your Honor, I guess I'm trying to understand what the commitment is. It sounds as if the New York District production will begin three weeks from now. Other districts are going to happen before then?

If it begins and it's rolling, at what point do I take depositions without having the discovery then roll after the deposition and have to take the deposition again?

THE COURT: Well, let me just recap this with Ms. Franklin.

I think I understood, Ms. Franklin, that documents from districts other than New York will start being sent out this week and that as to the New York District you thought that as many as 80,000 pages would start being produced to Plaintiff within three weeks.

Do you have any idea at this point how long that process may take until the production is completed?

MS. FRANKLIN: I wish I did, Your Honor. I'm very hesitant to make an estimate because there are a couple of factors at play, and that is that the New York vendor does continue, as they had promised,

to submit the scanned documents back to D.C.

I know that people here in this office are quick. The contractor here is very quick to place Bates stamps and provide me blow-backs of documents, but those are two steps that you're asking me to estimate. I've done my best with the first step.

I can tell you as soon as documents come into my office I begin to review them, pull privilege and start privilege logs for those, but it's hard to say when that production will end. It's hard to say.

THE COURT: Are we talking a matter of a couple of weeks or do you think a couple of months or what?

MS. FRANKLIN: I would hope not a couple of months. I would say between two and four weeks.

THE COURT: Okay.

MS. FRANKLIN: However, there's one caveat with your comment regarding documents from other districts.

I think you said that it will begin this week. It has already begun. We've already produced documents from other districts. We're just continuing that.

THE COURT: All right.

MR. DENENBERG: Again, the documents that

we've received, whether it's New York or other districts, are the bid-type contractual documents, not the supplemental material that has to be produced in 70 days that has that detailed process description, photos, which I read straight from the document before.

THE COURT: Well, I think we have a good understanding from today's conference about the documents that are of greatest interest to the Plaintiff. We have some good commitments from the Defendant on when the documents will be produced.

I simply would ask both sides to work together on this and make it happen, and let's go with that. Let's work to these commitments.

MS. FRANKLIN: Your Honor, the government is committed to doing that, to producing the documents that it has in its possession.

THE COURT: All right. Is there anything else this morning?

MR. DENENBERG: Your Honor, it's Dave Denenberg again for the Plaintiff.

I mean, again just trying to get the Court's assistance or alert the Court to issues that have come up, I want to thank yourself, Judge Wheeler, for your availability and your assistance, and I appreciate

your trying to help us get some dates so that we can then take depositions. I'll try to schedule depositions it sounds like either late this month or sometime in April.

It would help though also with respect to Donjon, since other interested parties may come in it sounds. I just wanted to ensure, since I'm reading the initial disclosures and then Mr. Campbell's letter of yesterday, where I'm getting an objection in initial disclosures that I can't get cost documents or volume documents because damages is premature and that process documents, I should go to the government to get those.

I mean, I would like clarification from the Court that I should be getting these documents from an interested party as much as the government.

MR. CAMPBELL: Your Honor?

THE COURT: Well, I think that documents should be produced by anybody who has them. If it's the same documents -- if the government has them, if the contractor has them -- the Plaintiff is within its rights to request those documents from both of those parties.

If you end up with duplicates so be it, but you're entitled to documents from whoever possesses

them.

MR. CAMPBELL: Your Honor, this is Gary Campbell. I'm not quite sure where Mr. Denenberg reads an objection on those documents.

Donjon does not object, and Donjon has stated both in telephone calls and in my letter yesterday that we will produce all discoverable material subject to any appropriate objection if we have the document.

MR. DENENBERG: When you say subject to any appropriate objection, that's where I'd like to get some resolution here. I think we should get the documents.

MR. CAMPBELL: It's subject to any objection that otherwise would apply in discovery, Mr. Denenberg.

MR. DENENBERG: Well, then your initial disclosures did submit an objection that we should get the documents from the government.

The initial disclosures did not provide process documents, and the initial disclosures refused to even categorize volume material or cost material saying that damages is premature. So those are your objections in your initial disclosures.

We don't have the documents and we don't

even have a categorization of the volume material, so that's why I'm seeking the Court's advice because we have your objections in the initial disclosures, and we don't have documents. We don't even have a categorization of the volume of material treated.

THE COURT: It sounds like a boilerplate type objection without any specific objection in mind.

MR. CAMPBELL: Your Honor, there is no objection in our initial disclosures.

Once again, it was a statement that the Plaintiff should get the documents, the contract documents, from the United States because they have copies of them all. I understand that that was a vague statement so I clarified it in my letter yesterday, informing TDM of that investigation so that we may not have possession.

We are certainly willing to give TDM any document that we have in our possession that is discoverable, and I think that's all Mr. Denenberg needs.

In yesterday's letter I specifically mentioned documents regarding quantities and that we would make those available. You're right as far as I just included the language that we are reserving our right to make any appropriate objection.

THE COURT: Let me just clarify. I think this ought to be clear to everyone, but it's not a proper objection to say that the Plaintiff should get the documents from the government.

The sole question is whether Donjon has copies of the requested documents. It doesn't matter if somebody else has them too. If you have the documents, you need to produce them.

MR. CAMPBELL: I understand that, Your Honor.

THE COURT: And the same goes for the government.

MR. DENENBERG: Thank you, Your Honor.

THE COURT: Let me just ask one final question before we close out here.

Are the parties now in agreement that the Court may go ahead and provide notice to the six other parties identified by the government?

MR. DENENBERG: Your Honor, this is Dave Denenberg. I would agree, provided the parties are in agreement, and I think they are, that the amended complaint can be filed.

THE COURT: Is there any dispute about the amended complaint at this point?

MS. FRANKLIN: Your Honor, the United States

only disputes characterizations that Plaintiff made in its motion.

THE COURT: Well, characterizations aside, do you have any objection to the amended complaint?

MS. FRANKLIN: No, Your Honor.

THE COURT: Okay. And Donjon?

MR. CAMPBELL: No, Your Honor, we do not.

THE COURT: All right. So I think what we can do also as a result of this call is that the Court will allow the filing of the amended complaint, and the Court will issue the required notices to the additional parties identified by the government.

MR. DENENBERG: Your Honor, with issuing the additional notice to the required parties the Plaintiff respectfully requests that the Court increase the number of depositions that the Plaintiff is allowed to take in this matter.

THE COURT: What are they at this point?

MR. DENENBERG: Twelve.

THE COURT: And how many would you like?

MR. DENENBERG: Based on eight to 10 of the U.S., which is all we've thought of at the time, it seems like each interested party has like a project engineer type person and then more of an accounting type person at the very least, so if it's six

additional parties I would like an increase to at least 22.

THE COURT: Let's do this. Why don't you think about that a little more carefully and discuss it with opposing counsel and perhaps submit a stipulation to the Court on what you'd like to do about the number of depositions.

MR. DENENBERG: I think that would work fine.

THE COURT: All right. Very good.

MS. FRANKLIN: Your Honor, I know you want to wrap this up. If I can just bring up one point relating to document production?

THE COURT: Sure.

MS. FRANKLIN: I'd like to take advantage of the record.

I have provided to Plaintiff's counsel the cost for producing these documents. Utilization of the vendor has increased cost. This was a cost provided to them at the time prior to their inspection of documents.

I just would like Plaintiff to confirm on the record and to the Court that it will respond to and pay invoices submitted with the production of documents from New York.

MR. DENENBERG: I don't think this issue ever even came up.

MR. ADLER: I don't think we ever got the costs. You said you'd let us know.

THE COURT: Hold on. Hold on. Was that Mr. Adler?

MR. ADLER: Yes. I'm sorry.

MS. FRANKLIN: It was with Mr. Adler that I discussed this issue because I believe I received several emails and calls from you prior to the start of the February 6 document inspection.

As I indicated in my letter prior to that inspection, I would let you know, and as soon as I did know I provided you with the cost.

MR. ADLER: Yes. I don't remember seeing the cost.

MS. FRANKLIN: I provided the cost to you verbally, and you did not dispute it.

MR. ADLER: I never got it. I never got the cost. Never.

MR. DENENBERG: Your Honor, I think since this is before your Court if it's something reasonable and it's the cost of photocopying I would assume we should pay what's reasonable in the cost of photocopying, but if it's the cost of a consultant

doing work I'm not sure that that's reasonable for us to pay for it, and we don't know what the cost is.

This is Dave Denenberg. Mr. Adler just said that he's never gotten a verbal of the cost.

MS. FRANKLIN: Your Honor, it's not a consultant fee. It's a vendor fee. The cost split with Plaintiff, meaning the government is paying a portion of it. It's .125 per page.

THE COURT: Well, again I would say that I would expect the parties to work out the cost of the document production.

If you have a problem you can bring it to me, but normally parties just pay their own cost for document production on the theory that it's going to come out about even at the end, but in some cases, and this may be one, if the document production is more one-sided -- that is that one side has to produce significantly more than another party -- often some kinds of agreements as you're discussing are made, and I would just leave it to you to work those out.

If the Plaintiff needs more detail to provide a consent I'm sure that the government will provide that, but let's try to work that out if we can.

MS. FRANKLIN: Thank you, Your Honor.

THE COURT: All right. I think that's all for today. Thanks to you all for being available. We'll go forth accordingly.

MR. DENENBERG: Thank you, Your Honor.

MR. CAMPBELL: Thank you, Your Honor.

(Whereupon, at 10:54 a.m. the hearing in the above-entitled matter was concluded.)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## REPORTER'S CERTIFICATE

DOCKET NO.: 06-472C

CASE TITLE: TDM America v. U.S.

HEARING DATE: March 6, 2007

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before U.S. Court of Federal Claims.

Date: March 6, 2007

[signature]

Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018