# DEFENDANT'S EXHIBIT 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - -x

TDM AMERICA, LLC, :

Plaintiff, :

:

-against- Index No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant, :

- and - :

DONJON MARINE COMPANY, INC.,

:

Third-Party Defendant.

:

- - - - - - - - - - - - - - - - - - - - - -x

DEPOSITION of ELLA D. SNELL, taken by Plaintiff at the offices of Davidoff, Malito & Hutcher, 605 Third Avenue, New York, New York 10158, on Friday, May 18, 2007, commencing at 9:30 o'clock a.m., before Annette Forbes, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

break or you need a few minutes, just let me know and we will break, okay?

A I understand.

09:34:47 Q Are you currently employed?

A Yes, I am.

Q Who is your employer?

A U.S. Army Corps of Engineers, New York District.

09:34:55 Q What is your title?

A Chief, contracting division.

MR. ADLER: I would like the court reporter to mark as Plaintiff's Exhibit 51 a document that says amended notice of deposition.

09:35:12 (Notice was marked as Plaintiff's Exhibit No. 51 for identification, as of this date.)

BY MR. ADLER:

09:35:44 Q I am going to ask you whether or not you have seen Plaintiff's Exhibit 51 before.

A (Perusing document.) Yes, I have.

Q Are you here today pursuant to that notice?

09:35:57 A Yes, I am.

Snell

Q Did you prepare for this deposition today?

A Not really.

09:36:05 Q Did you review any documents for this deposition today?

A No, I did not.

Q Did you meet with counsel regarding the deposition?

09:36:11 A Yes, I did.

Q How many times?

A 2.5.

Q Was Mr. Flaherty present then, too?

A No.

09:36:27 Q You had mentioned your title, is that chief, contracting?

A Division.

Q That's your title.

What are your responsibilities as chief, contracting division?

09:36:39 A I'm responsible for a number of things, but particularly awarding contracts for the Army Corps of Engineers.

Q Any specific types of contracts?

09:36:51 A Yes. Construction, supplies,

services.

Q What is involved in awarding contracts for the Army Corps of Engineers?

09:37:03 A The initial process, I get a tech data package from the customer and at that point I have to make a determination or at least coordinate with the Small Business Administration to determine whether or not we will set it aside for small business.

09:37:21 At any rate, once we get through the initial process, I publicize the action as a synopsis, what I call, to the world so that everybody sees it.

09:37:36 And from there I get them, even in that document, I tell them that I would issue a solicitation on or about a certain date.

At some point, generally within two weeks after the notice, I issue the solicitation,

09:37:49 it's posted and those firms who are interested, they will submit a bid or a proposal.

Q What happens after that point?

A If it's a bid, we have a public bid opening in my office, in my conference room.

09:38:11 If it's a proposal, it's sort of

like a close tech evaluation, it's totally different from the actions that we will be talking about today because all of these actions were done by public bids, invitations for bids.

09:38:27

And then once I have the bid opening, we make a determination of responsibility, then price reasonableness and after which we process all of the administrative clearances, including notification to the congressional office, I know the dollar value, then I make the award.

09:38:43

Q Do you have any involvement with the contracts after an award is made?

09:38:56

A Yes, to a small extent.

Q What is that extent?

A First of all, as the contracting officer, we have what you call eyes and ears of the contracting officer. These people are called CORs, contracting officer representatives.

09:39:10

And I will also have ACOs, administrative contracting officers, and they have limited contracting officer warrants where they can obligate the Government generally up to $500,000. And they only come to me when there are

09:39:24

issues that would require a determination made by me or if there is a monetary requirement that exceeds the warrants of the ACO.

09:39:38 Q How about with respect to enforcement of provisions in these contracts, do you have any responsibilities?

MS. FRANKLIN: Objection. Vague.

09:39:47 Q Do you understand the question?

A Yes.

Q You can answer it.

A It depends.

I expect my administrative contracting officer, the ACO, to take it to the end state, and they only come to me if it gets to a point where the ACO cannot make a final decision, because only I can make the final decision. But I expect them to handle the problem in the field.

09:40:16 Q Do you have any responsibilities with respect to payments to the contractors --

MS. FRANKLIN: Objection. Vague.

09:40:29 MR. ADLER: Can I finish the

question?

MS. FRANKLIN: Go ahead.

Q -- under the contracts that you have responsibility for?

09:40:34

MS. FRANKLIN: Objection. Vague.

Q You can answer.

A That's not a clear yes and no answer.

09:40:44

I do not make the payments. In fact, I never see the payments. The only regulatory requirement is that that last payment must be made by me, and I make the final payment.

09:40:59

Generally, that's sort of like a token amount, usually it's $100, maybe $1,000.

Q Who would make the other payments?

A My COR or the ACO.

Q How many years have you been in this position?

09:41:16

A This particular position, for about 15 years, will be 15 years in July.

Q How many years have you been with the Army Corps of Engineers?

A Same length of time.

09:41:29

Q Could you briefly describe your education post high school?

A Yes.

09:41:34 I have a BS degree in business administration. And I have a master's degree in procurement and contract administration from Florida Institute of Technology.

Q As part of the responsibilities, do
09:41:52 you get involved with contractors directly for dredging on behalf of the United States?

A When you say "get involved"?

Q Whatever your responsibilities are with contracts, do any of them involve contracts
09:42:08 for dredging any of the waterways on behalf of the United States?

A Yes, I am involved in those contracts.

Q Do you know whether or not some of
09:42:17 those contracts involve treatment of the dredged materials for disposal?

By that I mean the dredge materials are treated such that there is additive such as cement added to them and then they are later
09:42:31 disposed of at an upland site.

MS. FRANKLIN: Objection. Vague.

Q You can answer if you know.

09:42:44 A Okay.

Yes. I'm aware of that to a limited extent.

Q Let me show you what has been marked as Plaintiff's Exhibit 8.

09:43:31 Sorry, I'm going to show you what has been marked as Plaintiff's Exhibit 26. It's entitled Defendant United States' First Amended Responses to Plaintiff's First Set of Interrogatories.

09:43:41 Have you seen that document before?

MS. FRANKLIN: I am going to interrupt.

Do we have this from the last time?

09:43:48 MS. TZORTZATOS: Sure.

MS. FRANKLIN: Can we have a moment to get the exhibit?

Q Have you seen this document before?

A (Perusing document.) No, I have

09:45:24 not.

A No.

Q As part of your responsibilities in general, do you visit the dredging sites or processing sites?

09:50:47

A No.

Q Let me turn your attention in this document to what has been marked as Bates No. G01004 00066.

09:51:07

Just look for the last two digits, 66.

A (Perusing document.) Okay.

Q On the left-hand side, there is an entry that says item number 0003AA.

09:51:29

If you take a look at the verbiage that's in that little area below that entry, and you review it, does that provide any recollection to you as to whether or not this contract included the treatment of dredge material with an additive for upland disposal?

09:51:47

A It would indicate to me, because it's unsuitable, that they would have to go through a special process and a different disposal area.

09:52:01

But as far as the specifics, I

wouldn't know that.

09:52:10
Q Does that mean you don't know where the treated dredge material was disposed of?

MS. FRANKLIN: Objection. Lacks foundation. Misstates testimony.

Q Do you know whether or not dredge material was treated under this contract?

09:52:27
MS. FRANKLIN: Objection. Asked and answered.

A I would have to say some of the questions are not just yes or no answers.

Q Answer as best you can.

09:52:45
A I would say no.

Q No, it's not or no, you don't know?

A No, I don't know.

Q I'm going to turn your attention to Plaintiff's Exhibit 8.

09:53:10
MR. ADLER: Let the record reflect that I have provided the witness with Plaintiff's Exhibit 8.

Q And I turn your attention to Bates No. document G010200013 through 15?

09:53:43
A (Perusing document.) Is that near

officer representative, as well as an administrative contracting officer, called COR and ACO, respectively.

09:57:34 Those people are responsible for complete management of this contract until it's ready to be closed out.

That means that they will have lots of letters. They will be pay estimates. They 09:57:47 will have a lot of documents that I will never see and I don't have a need to see them as long as things are working properly.

At the end of the contract period, what they have to do, according to regulation, is 09:58:01 box up all of those documents and send them to me because I'm responsible for the final pay, as well as the final closeout of the document.

I merge all of their files with my files. They box them, we put them in a storage 09:58:21 area.

That's how the process works.

Q Do you know whether or not the contract number W912DS-07-C-0003 has ended or is it still ongoing?

09:58:45 A I don't know.

09:58:58 09:59:12 09:59:32 09:59:49 09:59:54

Q Do you know who the COR and ACO are?
A Yes. My initial COR is Salvatore Didato, D-I-D-A-T-O.
Q Who is the ACO?
A Off the top of my head, I don't remember, because what we do, we will appoint a primary ACO and an alternate. We will do the same for the COR, a primary and an alternate. Sometimes they change.
Q Without necessarily distinguishing between primary and alternate, do you know who any of them are with respect to this contract?
A Not off the top of my head.
Q In the event that you are considering making a final payment, which is when it comes to you, do you view any volume surveys or similar information to determine, to make the final payment?
MS. FRANKLIN: Objection. Vague.
Q Do you understand the question?
A Yes.
No, I do not.
Again, just to tell you how the

Snell

Q When they are submitted to you, what do you do with them?

A When they are submitted to me, I will pass them on to a technical division.

10:59:57

Q Do you know any people that you pass them on to for any of the contracts here?

MS. FRANKLIN: Objection. Vague.

11:00:09

A Not my name.

MS. TZORTZATOS: Could we have one minute?

(Whereupon, counsel confer off the record.)

10:58:33

(The record was read as follows:

"Question: Do you know how one would ascertain that information?

"Answer: I guess you would have to ask.

10:58:44

"Question: Who would I ask?

"Answer: I can't answer that question. I can talk about how things work prior to coming into an environment like this, but once we are

10:59:04

Snell

in this environment, I don't know what the protocol is for asking for additional information or documents.")

11:02:56 Q What do you mean by the "environment like this"?

A What I mean by this is that, for example, prior to, for example, Erica said, "Hey" --

11:03:11 MS. FRANKLIN: I'm going to object and caution the witness not to reveal attorney-client privileged communications.

A There is a process within DOD for

11:03:23 asking for information, for example, depending on what it says, I believe a FOIA, Freedom of Information Act, request.

If it's from an internal customer they might send an e-mail or they might come down

11:03:43 and say, "Contracting, I need this type of information."

It's pretty cleancut. When I say this environment, this environment where we are all sitting around the table and trying to resolve

11:03:58 issues with attorneys.

Snell

So when I say once we are in this type of environment, I don't know that the protocol is that you have to go through the lawyer and say I need additional information, whether you ask me for additional information. That's what I mean by the protocol.

11:04:10

Q Just so you know, I'm asking questions today and if you know the answer to the question, you must answer it.

11:04:23

A Correct.

Q You can't withhold anything.

A I understand that.

Q Your lawyer is here, she will object, do whatever she has to do for something she believes is not the way it should be.

11:04:30

I will go back to my question, have it read again. I want you to answer any knowledge that you have.

A Of course.

11:04:40

MR. ADLER: Read the question back.

(The record was read as follows:

"Question: Do you know the

11:06:27

person or persons responsible for compliance with the permits in the technical operations division for each of these contracts? If so, can you go through them and name them.")

11:06:27

MS. FRANKLIN: Can you read back the answer?

(The record was read as follows:

11:06:27

"Answer: No.)

(Discussion off the record.)

BY MR. ADLER:

Q Let's go back to Exhibit 53 and let me turn your attention to the Page 40, which is stamp Bates No. G012763, Paragraph C.

11:08:03

With respect to this contract, 0020, do you know whether or not the Army Corps of Engineers has someone who reviews the required permits and approvals for this contract as referred to in this paragraph?

11:09:05

MS. FRANKLIN: Objection. Vague. Lacks foundation.

A It's a team, not a person.

Q What is the name of that team?

11:09:22

Snell

MS. FRANKLIN: Objection.
Lacks foundation.

Q Do you know the name of that team?

11:09:30 A It's a project delivery team, the PDT, as I mentioned earlier, which consists of members from different areas of expertise.

Q From your experience at the Corps, do you have any knowledge as to what the project
11:09:51 delivery team does with respect to reviewing the required permits and approvals as referenced --

MR. FLAHERTY: Objection.

MR. ADLER: Can I finish the question first?

11:09:59 MR. FLAHERTY: I just want the witness to know I have an objection coming.

MR. ADLER: Why don't you wait until I finish?

11:10:08 MR. FLAHERTY: Please proceed.

MR. ADLER: That's not the case when you interrupt me.

MR. FLAHERTY: You have asked this question five times so far. You
11:10:14 have asked it to every witness and you

Bayonne.

Q Does that correspond to a certain contract?

A It should, but I don't have the contract. This is just the solicitation.

MR. ADLER: Give me a few minutes. I think I could probably wrap it up.

(Whereupon, counsel confer off the record.)

MR. ADLER: Thank you.

I have no further questions.

Thank you for coming.

MS. FRANKLIN: I have a couple of questions I would like to do on redirect.

CROSS-EXAMINATION

BY MS. FRANKLIN:

Q We spent a lot of time looking at Exhibit 8 today. If I could ask the witness to turn to Exhibit 8.

We will take a look at one of the pay estimate items.

I believe one of the pay estimates

you looked at was G01020 00025.

On that page my question is do you see any indication of a total to date payment?

02:24:30 A I do, yes.

Q Where do you see that?

A In the far right corner. It says total date, far right, Item G.

Q I would also like to ask if you see

02:24:45 on this document anywhere where it indicates a paid to date dollar amount?

Specifically in what we will call Section 15 at the bottom of the page?

A Yes.

02:25:09 Q What is that figure?

A $74,045,572.50.

Q I would like to turn to Exhibit 53, if you can try to locate that.

If you turn over to Bates No.

02:27:32 G012762, which is Page 39 of the document, your attention was drawn earlier to Section 1A.2, information to be submitted by the apparent low bidder within 70 days.

I believe that you testified that

02:28:01 you indicated that the technical office enforces

permits.

Can you explain what you mean by enforces?

02:28:12 MR. ADLER: Was that her testimony? Can you read it back?

I am going to object as to mischaracterizing the testimony.

A Could you repeat the question?

02:28:48 Q Earlier you were asked a question regarding the Army Corps' responsibility with regard to the permit indicated in this section.

My question to you is also, No. 1, did you indicate that the technical division

02:29:04 enforces the permits?

A They don't enforce the permits.

What they do, they ensure that the contractor submits the necessary documentation showing that they have the required documents per

02:29:19 the -- it's not our responsibility to enforce it, we just make sure that they have it before they can start work on the project.

MS. FRANKLIN: That's all I have.

02:29:31 MR. ADLER: I want to

# DEFENDANT'S EXHIBIT 9

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, NORTHEAST
NAVAL FACILITIES ENGINEERING COMMAND
10 INDUSTRIAL HIGHWAY
MAIL STOP, #82
LESTER, PA 19113-2090

IN REPLY REFER TO
4280
Code 09TC/PH
April 25, 2006

<u>MAILED VIA/ELECTRONIC TRANSMISSION</u>'jeckart@spearin.com'; 'dsmith@spearin.com'; 'Joann Pampinella'

SPEARIN, PRESTON & BURROWS, INC.
Attn: John E. Eckart, President, COO
3365 Richmond Terrace
Staten Island, NY 10303

SUBJ: CONTRACT N40085-06-C-2018; MAINTENANCE DREDGING, AT THE UNITED STATES MERCHANT MARINE ACADEMY, KINGS POINT, NY

Gentlemen:

Enclosed is a signed copy of the award for subject project. Award is being made on Item 1 Base Offer for a lump sum of $293,000 and Item 2 Base Bid for a lump sum of $2,604,000.00 for a total award of $2,897,000.00. Before your company may proceed with on-site work, you must furnish the following data:

{X} Acceptable Performance and Payments Bonds, the bonds must cite the bond premium rate. Your Performance Bond must be in the amount of **<u>$2,897,000.00</u>** as stated in Section 00700, page 54 of 62, "Notice of Bonding Requirements" and the Payment Bond must be in the amount of **<u>$2,897,000.00;</u>** (see forms attached)

{X} Acceptable Certificate of Insurance

Your Certificate of Insurance must be in the amounts and the types prescribed in Section 00700, page 47 of 623, paragraph, "Minimum Insurance Requirements" and 52.228-5, "Insurance – Work on a Government Installation". **Please note that the cancellation policy must state, "Any cancellation or any material change adversely affecting the Government's interest shall not be effective until 30 days after the insurer gives written notice to the Certificate Holder."** Should your Certificate of Insurance not be submitted correctly, it will be returned and you will not be allowed to commence with any work until it is approved. (A sample Certificate of Insurance is enclosed.)

{X} Certification as to the percentage of work to be performed by the prime contractor.

Upon receipt of **acceptable** certificates listed above, a notice to proceed with construction will be issued by this office.

Completion time for this project: The contractor shall be required to (a) commence work under this contract within 15 calendar days after award, (b) prosecute the work diligently, and (c) complete the dredging portion of the work on or before 31 May, 2006. The Contractor may transport, treat, and dispose of dredge materials after May 31, 2006, but must have all work completed in 60 days. The time stated for completion shall include final clean up.

Your point of contact for this contract is Lt Andrew Cline, the Project Manager at the Naval Weapons Station, Earle, NJ assigned to this project. Your pre-construction conference is scheduled for Thursday, April 27th at 10:00 a.m in Furuseth Hall at the USMMA. Lt. Cline will forward directions to USMMA to you. You may contact Lt. Cline at (732) 866-2031.

The following information is enclosed for your information:

a. U.S. Dept of Labor WH Publications 1321 and 1313
b. U.S Dept. of Labor OFCCP-1420
c. SF Form 25 (Performance Bond) and SF Form 25A (Payment Bond)
d. Instructions for completing Performance and Payment Bonds
e. Sample Certificate of Insurance.

Please forward the requested data to **ENGINEERING FIELD ACTIVITY - NORTHEAST, NAVAL FACILITIES ENGINEERING COMMAND, 10 INDUSTRIAL HIGHWAY, MS#82, LESTER, PA 19113-2090, ATTN: PATRICIA HEMINGWAY, CODE 09TC.**

Sincerely,

Nadalyn Schlossman
Nadalyn Schlossman
Contracting Officer

EC: 'jeckart@spearin.com'; 'dsmith@spearin.com'; 'Joann Pampinella'
francesca.buzzetta@navy.mil
Andrew.Cline@Navy.Mil
Timothy.Bramhall@Navy.Mil
Nadalyn.Schlossman@Navy.Mil
Ralph.tinari@Navy.Mil
Edward.sewester@navy.mil
Luis.Rioseco@navy.mil