**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM AMERICA, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant,<br>and<br>DONJON MARINE COMPANY, INC.,<br>Third-Party Defendant. | No. 06-472 C<br>Judge Thomas C. Wheeler |

**DEFENDANT UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGEMENT FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . ii

List of Exhibits . . . . . . . . . . iv

I. STATEMENT OF FACTS . . . . . . . . . . 2

II. ARGUMENT . . . . . . . . . . 5

A. Standards for Summary Judgment under RCFC 56. . . . . . . . . . 5

B. 28 U.S.C. § 1498 Provides a Limited Waiver of Sovereign Immunity. . . . . . . . . 7

C. The USACE Did Not Authorize or Consent to its Contractors' Alleged Use of Patented Methods for Processing Dredged Materials . . . . . . . . . . 8

1. TDM's patented processing methods are not embodied in any article delivered to and accepted by the government. . . . . . . . . . 11

2. Contract compliance did not require contractors or subcontractors to use TDM's patented processing methods. . . . . . . . . . 12

CONCLUSION . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES


Pages

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 6

*Carrier Corp. v. United States*,
534 F.2d 244 (Ct. Cl. 1976) ........ passim

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 6

*Decca Ltd. v. United States*,
640 F.2d 1156 (Ct.Cl. 1980),
*cert. denied*, 454 U.S. 819 (1981) ........ 8

*FDIC v. Meyer*,
510 U.S. 471 (1994) ........ 7

*Hughes Aircraft Co. v. United States*,
534 F.2d 889 (Ct. Cl. 1976) ........ 8, 9

*Ledford v. United States*,
297 F.3d 1378 (Fed. Cir. 2002) ........ 7

*Leesona Corp. v. United States*,
599 F.2d 958 (Ct. Cl. 1979),
*cert. denied*, 444 U.S. 991 (1979) ........ 7

*Lehman v. Nakshian*,
453 U.S. 156 (1981) ........ 7

*Linear Tech. Corp., v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004) ........ 6

*Madey v. Duke Univ.*,
307 F.3d 1351 (Fed. Cir. 2002) ........ 8

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........ 6

Pages

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
298 U.S. 178 (1936) .......... 7

*Sevenson Envtl. Servs. v. Shaw Envtl., Inc.*,
477 F.3d 1361 (Fed. Cir. 2007) .......... 9, 10

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .......... 5

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992) .......... 8

*Zoltek Corp. v. United States*,
442 F.3d 1345 (Fed. Cir. 2006) .......... 8

**STATUTES**

48 C.F.R. § 27.201-2(b) .......... 10

48 C.F.R. § 27.201-2(c) .......... 10

48 C.F.R § 52.227-1 .......... 10, 11, 14

28 U.S.C. § 1498 .......... passim

**OTHER AUTHORITIES**

RCFC 12 .......... 1

RCFC 12(c) .......... 6

RCFC 56 .......... 6

## LIST OF EXHIBITS

Page

Exhibit 1-Transcript excerpts from deposition of Bryce W. Wisemiller on May 10, 2007, and May 22, 2007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Exhibit 2-Revised Attachment A to government's responses to TDM's Interrogatories. . . . . A30

Exhibit 3-Transcript excerpts from deposition of John Bearce on May 31, 2007. . . . . . . . . . A32

Exhibit 4-Declaration of Ella D. Snell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A41

Exhibit 5-Excerpts from New York District Contract No. W912DS-07-C-0003 . . . . . . . . . . . A45

Exhibit 6-Excerpts from New York District Contract No. W912DS-06-C-0018 . . . . . . . . . . . A68

Exhibit 7-Excerpts from New York District Contract No. W912DS-05-C-0003 . . . . . . . . . . . A97

Exhibit 8-Excerpts from New York District Contract No. W912DS-05-C-0004 . . . . . . . . . . A136

Exhibit 9-Excerpts from New York District Contract No. W912DS-05-C-0020 . . . . . . . . . . A146

Exhibit 10-Excerpts from New York District Contract No. W912DS-04-C-0008 . . . . . . . . . A177

Exhibit 11-Excerpts from New York District Contract No. W912DS-04-C-0016 . . . . . . . . . A204

Exhibit 12-Excerpts from New York District Contract No. DACW51-03-C-0001. . . . . . . . A212

Exhibit 13-Excerpts from New York District Contract No. DACW51-03-C-0012. . . . . . . . A233

Exhibit 14-Excerpts from New York District Contract No. DACW51-03-C-0014. . . . . . . . A258

Exhibit 15-Excerpts from New York District Contract No. DACW51-03-C-0019. . . . . . . . A263

Exhibit 16-Excerpts from New York District Contract No. DACW51-03-C-0021. . . . . . . . A283

Exhibit 17-Excerpts from New York District Contract No. DACW51-02-C-0001 . . . . . . . . A302

Exhibit 18-Excerpts from New York District Contract No. DACW51-02-C-0002 . . . . . . . . A307

Exhibit 19-Excerpts from New York District Contract No. DACW51-02-C-0019. . . . . . . . A323

Page

Exhibit 20-Excerpts from New York District Contract No. DACW51-02-C-0022 ....... A343

Exhibit 21-Excerpts from New York District Contract No. DACW51-01-C-0006 ....... A356

Exhibit 22-Excerpts from New York District Contract No. DACW51-01-C-0023........ A417

Exhibit 23-TDM's Response to United States' Interrogatory No. 1 ................... A468

Exhibit 24-Transcript excerpts from deposition of Ella D. Snell on May 18, 2007........ A486

Exhibit 25-Transcript excerpts from deposition of John F. Tavolaro on July 10, 2007..... A491

Exhibit 26-U.S. Patent No. 5,007,590.......................................... A499

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TDM AMERICA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>DONJON MARINE COMPANY, INC.,<br><br>Third-Party Defendant. | ) | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**DEFENDANT UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant United States of America (United States, or the government) respectfully submits this Motion for Partial Summary Judgment for Lack of Subject Matter Jurisdiction pursuant to Rule 12 of the Rules of the Court of Federal Claims (RCFC). Plaintiff TDM claims that the United States Army Corps of Engineers (USACE), through its contractors, including Third-Party Defendant Donjon Marine Company, Inc., (Donjon), has manufactured or used inventions claimed in patents owned by TDM, and that this infringement falls within the ambit of the government's authorization and consent under 28 U.S.C. § 1498, rendering the government liable for the infringement of its contractors. Docket No. 37, Am. Compl., at ¶¶ 6, 17-18.

TDM's claims, however, are unsupported as the government did not provide authorization and consent for its contractors to infringe any of TDM's patents in performing the New York District USACE dredging contracts ("USACE contracts") at issue. These dredging

contracts contain a narrow authorization and consent clause that grants authorization and consent generally only as to goods delivered to the government. Moreover, in administering the USACE contracts, the government did not invoke this narrow authorization and consent because: (1) goods were not delivered to the government, (2) the contract did not direct the use of the claimed processes, and (3) the Contracting Officer did not order the use of the process by written directive. Thus, the accused method of processing and treating dredged material alleged by plaintiff to have been employed by USACE contractors, and/or their subcontractors, was not within the ambit of the authorization and consent that was granted.

Based upon the terms of the New York District USACE contracts, as well as the accepted interpretations of the authorization and consent clause referenced therein, there are no genuine issues of material fact relating to the basis for this motion. In awarding and administering these contracts, the USACE did not provide the authorization or consent required to effectuate the waiver of the United States' sovereign immunity provided by 28 U.S.C. § 1498. Without such a waiver, this Court lacks jurisdiction to adjudicate TDM's infringement claims against the government relating to these USACE contracts. Consequently, the government is entitled to dismissal of TDM's claims with respect to the contracts identified herein.

## I. STATEMENT OF FACTS

TDM asserts that it owns a number of patents relating to the processing and treatment of dredge and/or waste material, including United States Patent No. 6, 293, 731 (the'731 patent), entitled "Method for Treatment for Dredged Materials to Form a Structural Fill"; U.S. Patent No. 5,542,614 (the '614 patent), entitled "Processing of Waste Material"; U.S. Patent No. 5,794,862 (the '862 patent), entitled "Processing of Waste Material"; and U.S. Patent No. 5,007,590 (the

'590 patent), entitled "Apparatus and Method for Mixing Solid or Semi-Solid Wastes with Additives." Docket No. 37, Am. Complt., at ¶¶ 1, 15-16. TDM alleges that USACE contractors used methods of processing dredged material that infringed upon these patents, *id.* at ¶ 17-18, and that the government is liable for the alleged infringement pursuant to 28 U.S.C. § 1498, *id.* at ¶ 6 (asserting that "this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1498).

The USACE is responsible for supporting navigation by maintaining and improving the nation's waterways.[1] Maintenance of these waterways requires dredging the channels to preserve or establish specified depths and widths to ensure safe and efficient navigation by large vessels. The New York District of the USACE has responsibility for the management of navigation projects in the Port of New York and New Jersey and surrounding areas.[2] To accomplish these projects, the USACE utilizes contractors to dredge its navigation channels and to dispose of the resulting dredged material. Some dredged sediment may be disposed of without any processing or treatment with an additive. Ex. 1, Wisemiller Dep., at A10-14. For example, the characteristics of some dredged sediment may make it suitable for placement at the Historic Area Remediation Site ("HARS"). *Id.* at A10. Material disposed at the HARS does not require processing. *Id.* Similarly, based on its characteristics, some dredged material may be disposed upland without processing. *Id.* at A8-9, A10-12. Indeed, there are many different types of dredged material and "only a select portion" of those types need to be processed to solidify the material for upland disposal. *Id.* at A8-9, A11. At issue in this case are the various methods of

---

[1] USACE *Missions*, *at* http://www.usace.army.mil/missions/water.html (last visited on Oct. 31, 2007).

[2] USACE *Areas of Responsibility*, *at* http://www.nan.usace.army.mil/whoweare/resp.htm (last visited on Oct. 31, 2007).

processing used on this select portion of dredged material prior to disposal upland.

In response to a discovery request, the United States identified all of the USACE contracts awarded to contractors since 2000 that involved processing of some portion of the dredged material prior to disposal. *See* Ex. 2, U.S. Am. Resp. to TDM Interrogatory No. 10, Rev. Att. A.[3] This listing includes eighteen contracts awarded in the New York District.[4] Each of these contracts, listed in Table 1 below, incorporates by reference the narrow Authorization and Consent clause set forth in Federal Acquisition Regulation ("FAR") 52.227-1. Ex. 5 at A66; Ex. 6 at A84; Ex. 7 at A134; Ex. 8 at A145; Ex. 9 at A172; Ex. 10 at A203; Ex. 11 at A211; Ex. 12 at A229; Ex. 13 at A252; Ex. 14 at A262; Ex. 15 at A273; Ex. 16 at A297; Ex. 17 at A305; Ex. 18 at A316; Ex. 19 at A337; Ex. 20 at A350; Ex. 21 at A405; Ex. 22 at A466.

This contract clause does not provide authorization and consent for USACE contractors to infringe TDM's claimed methods of processing dredged materials unless specifically directed by the contract or contracting officer. No such specific direction was given under any of the eighteen contracts identified in Table 1. *See* Ex. 4. Consequently, this Court does not have jurisdiction pursuant to 28 U.S.C. §1498 over any infringement claims against the United States arising from the identified USACE dredging contracts. As a result, the Court must dismiss

---

[3] This motion is not directed to: (1) Los Angeles District Contract No. DACW09-D-0010-0003, (2) Jacksonville District Contract No. W912EP-04-C-0021, (3) or to dredging contracts involving other federal agencies, such as the U.S. Coast Guard, U.S. Navy, and the U.S. Merchant Marine Academy, which is the subject of ongoing discovery. *See* Ex. 2; Docket No. 91, The United States' Opposition to TDM's Motion Pursuant to RCFC 37 Against the US, at 4-5 (discussing recently discovered contracts involving non-USACE agencies).

[4] Jacksonville District Contract No. W912EP-04-C-0021 was also listed in response to Interrogatory No. 10, but did not involve processing the dredged material with an additive such as cement, as claimed by TDM's patents. *See* Ex. 3, Bearce Dep., at A36-38, A39, A40.

TDM's claims to the extent that they are based on activities carried out under any of these contracts.

**Table 1: USACE Contracts Involving Dredge Processing Subject To This Motion**

| District | Contract Number | Contractor | Processor Site Used |
|---|---|---|---|
| New York | W912DS-07-C-0003 | Donjon | Donjon |
| | W912DS-06-C-0018 | GLDD | Clean Earth |
| | W912DS-05-C-0003 | Donjon | Donjon & CEDTI |
| | W912DS-05-C-0004 | Bean | CEDTI |
| | W912DS-05-C-0020 | DonJon | Donjon |
| | W912DS-04-C-0008 | GLDD | Donjon & CEDTI |
| | W912DS-04-C-0016 | Donjon | Donjon |
| | DACW51-03-C-0001 | Donjon | OENJ |
| | DACW51-03-C-0012 | Donjon | Donjon |
| | DACW51-03-C-0014 | Jay Cashman | OENJ |
| | DACW51-03-C-0019 | Bean | Clean Earth |
| | DACW51-03-C-0021 | Donjon | OENJ |
| | DACW51-02-C-0001 | Bean | OENJ |
| | DACW51-02-C-0002 | Cruz Construction | N/A |
| | DACW51-02-C-0019 | Bean | CEDTI |
| | DACW51-02-C-0022 | Donjon | OENJ |
| | DACW51-01-C-0006 | Donjon | OENJ |
| | DACW51-01-C-0023 | GLDD | OENJ |

## II. ARGUMENT

### A. Standards for Summary Judgment under RCFC 56.

Jurisdiction is a threshold issue and the limited nature of federal court jurisdiction requires a federal court to determine, at the outset, whether it has jurisdiction, rather than to defer such determination until trial. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation omitted)). A motion for judgment on the pleadings is an

appropriate means of resolving the court's jurisdiction. *See Carrier Corp. v. United States*, 534 F.2d 244, 246-47 (Ct. Cl. 1976) (granting defendant's motion for partial summary judgment based on lack of jurisdiction). Where "matters outside the pleadings are presented to and not excluded by the court, the motion [for judgment on the pleadings] shall be treated as one for summary judgment and disposed of as provided in RCFC 56 . . . ." RCFC 12(c). In challenging this Court's jurisdiction, the United States relies upon the provisions contained in the contracts at issue, deposition testimony, discovery responses and declarations of USACE employees. Accordingly, the government's motion for lack of subject matter jurisdiction should be treated as a motion for summary judgment.

A motion for summary judgment under Rule 56 should be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Linear Tech. Corp., v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004) (record evidence is reviewed under evidentiary standard used at trial). For a question of fact to be considered genuine, the question must raise more than a "metaphysical doubt as to [a] material fact," *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), and it must be substantial, *Anderson*, 477 U.S. 242, 252 ("The existence of a mere scintilla of evidence in support of the [nonmovant's] position [is] insufficient."). Therefore, summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In moving for summary judgment, the United States asserts that its New York District contractors did not have authorization or consent

to use unlicensed patented inventions for the United States. As this element is a prerequisite to this Court's jurisdiction, *see Carrier Corp.*, 534 F.2d at 246-47, plaintiff bears the burden of establishing authorization or consent, *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189-90 (1936).

**B. <u>28 U.S.C. § 1498 Provides a Limited Waiver of Sovereign Immunity.</u>**

As sovereign, the United States is immune from lawsuits unless it so consents. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). Absent a clear and unequivocal waiver of sovereign immunity, federal courts lack jurisdiction over claims against the United States. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Ledford v. United States*, 297 F.3d 1378, 1381 (Fed. Cir. 2002).

Claims for patent infringement against the United States are governed by 28 U.S.C. § 1498(a).[5] The relevant statutory provision reads as follows:

> Whenever an invention described in and covered by a patent of the United States is *used or manufactured by or for the United States* without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture....
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and *with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.*

28 U.S.C. § 1498(a) (emphases added). This provision represents a waiver of sovereign immunity. *Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002) (stating § 1498(a)

[5]The government cannot technically infringe a patent because it has a statutory right to use any patented invention. *See Leesona Corp. v. United States*, 599 F.2d 958, 964 (Ct. Cl. 1979), *cert. denied*, 444 U.S. 991 (1979). Therefore, 28 U.S.C. § 1498(a) actually provides an action to obtain compensation for the government's rightful use. *Id.*

functions as a waiver of sovereign immunity). This waiver, however, is not unlimited. *Decca Ltd. v. United States*, 640 F.2d 1156, 1166-1167 (Ct.Cl. 1980), *cert. denied*, 454 U.S. 819 (1981) (addressing limited waiver of immunity reflected in § 1498). Rather, section 1498(a) sets forth specific conditions for the application of this waiver, and thus, conditions for the existence of this Court's jurisdiction to adjudicate patent infringement claims against the United States. As this Court has explained,

> By its express terms, 28 U.S.C. § 1498(a) vests exclusive jurisdiction in this court over patent infringement claims against the Government arising upon either one or both of the following two grounds: (1) unlicensed use or manufacture of a patented inventions by the U.S. *directly*; and/or (2) unlicensed use or manufacture of a patented invention for the U.S. and *with its authorization or consent.*

*Hughes Aircraft Co. v. United States*, 534 F.2d 889, 897 (Ct. Cl. 1976) (emphases added). As 28 U.S.C. § 1498(a) represents a waiver of sovereign immunity, its provisions must be strictly construed in favor of the government. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992); *Zoltek Corp. v. United States*, 442 F.3d 1345, 1349 (Fed. Cir. 2006).

### C. The USACE Did Not Authorize or Consent to its Contractors' Alleged Use of Patented Methods for Processing Dredged Materials.

The infringement allegations asserted by TDM fall outside the limited waiver of sovereign immunity provided by 28 U.S.C. § 1498. As stated above, there are only two grounds upon which the government can be held liable for the unlicensed use or manufacture of a patented invention. *Hughes Aircraft Co.*, 534 F.2d 889, 897. The first ground, "unlicensed use or manufacture of a patented invention by the U.S. directly," is not at issue in this litigation, as it is not disputed that the USACE did not *directly* process dredged material itself. *Id.* Indeed, TDM's Amended Complaint alleges that the USACE awarded contracts to contractors "for the

processing of contaminated dredged materials . . . ." Docket No. 37, Am. Compl. at ¶ 18. And the United States admitted this portion of the allegation. Docket No. 40, U.S. Answer to Am. Compl. at ¶ 18 (stating that USACE relied on contractors to dredge, dispose and process, as necessary, material from navigation waterways). To the extent that TDM's Amended Complaint may be viewed as asserting that the USACE directly dredged and disposed of material, such allegation has not been pursued in TDM's discovery efforts. At no time during the ten depositions of USACE witnesses did TDM's counsel raise allegations that the USACE performed its own dredging and disposal functions. Rather, discovery relating to the USACE has focused on dredging contracts awarded by it. Because it is not alleged (with regard to the 18 contracts-at-issue) that USACE did not perform its own dredging and disposal activities, the first ground for infringement liability does not exist. Consequently, there is only one remaining ground upon which jurisdiction for TDM's patent infringement claims against the United States may be based, that is, an "unlicensed use or manufacture of a patented invention *for* the U.S. and *with its authorization or consent*." *Hughes Aircraft Co.*, 534 F.2d at 897 (emphases added).

For the 18 New York District contracts, the USACE did not authorize or consent to its contractors alleged use of any patented inventions to process dredged material for disposal. Instead, the USACE expressly limited its authorization and consent by including in its contracts a standard clause, FAR 52.227-1. *See Carrier Corp.*, 534 F.2d at 247; *Sevenson Envtl. Servs. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1366-67 (Fed. Cir. 2007). FAR 52.227-1, reads as follows:

> (a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or methods whose use

> necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

FAR 52.227-1, *codified at* 48 C.F.R § 52.227-1 (hereinafter the "basic clause").[6] This basic clause is to be inserted in most contracts, including those for construction services, such as the New York District dredging and disposal contracts. 48 C.F.R. § 27.201-2(a). This basic clause grants authorization and consent to the use of patented inventions in only two circumstances: first where the invention is embodied in "any article the delivery of which is accepted by the Government," and second, where the use of the invention "necessarily results from compliance by the Contractor or a subcontractor with" the provisions of the contract or written instructions by the contracting officer. 48 C.F.R. § 52-227-1 (basic clause). Because the USACE contracts contain this explicit clause, the government's authorization and consent to liability is limited to the language of the clause, unless plaintiff can demonstrate some other source for authorization and consent. *Sevenson Envtl. Servs.*, 477 F.3d. at 1367.

Here, TDM cannot demonstrate that the government authorized or consented to any use of its asserted patent claims. As discussed below, the patents-at-issue were not embodied in any

---

[6] The Code of Federal Regulations ("the Code") also prescribes a broader alternative to the basic authorization and consent clause. 48 C.F.R.§ 52.227-1. This alternative, Alternate I, reads, "The Government authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of this contract or any subcontract at any tier" is appropriate only for research and development contracts. 48 C.F.R. § 27.201-2(b). The Code additionally prescribes Alternate II that relates to contracts for communication services with a common carrier. 48 C.F.R. § 27.201-2(c).

product delivered to and accepted by the government pursuant to the New York District dredging contracts. Additionally, any use of TDM's claimed processing methods by USACE contractors, or their subcontractors, was not necessary for compliance with the contracts or with any written instructions by the respective contracting officers. *See* Ex. 4. Because neither circumstance set forth in the USACE grant of authorization and consent exists, the contractors' alleged use of TDM's patented inventions cannot be attributed to the United States, and jurisdiction is therefore lacking.

### 1. <u>**TDM's patented processing methods are not embodied in any article delivered to and accepted by the government.**</u>

The contracts referenced in Table I do not provide for the delivery or acceptance by the Government of any article that embodies a patented invention. 48 CFR § 52.227-1 (basic clause); Exs. 5-22. In fact, TDM's asserted patent claims cover only *processes* and not articles. *See* Ex. 23, TDM Resp. to U.S. Interrogatory No. 1 (asserting only method claims in patents-in-suit). Likewise, the USACE contracts-at-issue involved only the performance of services and not the delivery of articles or products. Ex. 1 at A17-18, A28 (contracts are "performance-based"). The goal of the government in these contracts was to "remove the material from a channel" and to "dispose of it . . . ." *Id.* at A28. No articles or products were delivered to and accepted by the government in the performance of the referenced contracts. Rather, silt material was dredged and removed from the identified waterway. *Id.* As this Court explained in *Carrier Corp.*, the portion of the basic clause that addresses the circumstance in which an invention is "embodied in the structure or composition of any article the delivery of which is accepted by the government," is not applicable in contracts for service. *Carrier Corp.*, 534 F.2d at 247 n.5. The Court clarified

that this portion of the clause "is applicable to hardware and other goods procured by and delivered to the Government for its own use, generally through supply contracts." *Id.* Consequently, this portion of the basic clause is not applicable to the USACE performance-based dredging contracts.

**2. <u>Contract compliance did not require contractors or subcontractors to use TDM's patented processing methods.</u>**

The second circumstance for which the government can provide authorization and consent to the use of a patented invention also does not exist in this case. This circumstance, as set forth in the basic clause, requires that the use of the patented invention "in machinery, tools, or methods" be a use that "necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance." Here, the alleged use of TDM's patents was not necessary for such compliance by the contractor or subcontractor.

Neither the specifications, written provisions forming a part of the contracts, nor written instructions from the Contracting Officer relating the contracts-at-issue require (at the behest of the USACE) that the contractors, or their subcontractors, process dredged material in a particular manner. With regard to the New York District contracts, the contract specifications do not require the contractor to use a particular method in processing dredged material for upland disposal. Ex. 4, Snell Dec., at A42(¶4).[7] Likewise, there are no written provisions within the contracts (such as the Statement of Work) that require a contractor to use a particular method to

---

[7] Note that the attached contract documents referenced in the Snell declaration have been attached as Exhibits 5-22 for purposes of this motion.

process dredged material. *Id.* at A42(¶5). Finally, there are no specific written instructions given by the contracting officer that directs the method of processing dredged material. *Id.* at A43(¶6). At most, the contract documents or contractor submissions may contain a description of the process that was used, which does not reflect a written directive of the USACE. *Id.* at A42(¶4).

Rather, the New York District of the USACE only requires that the work be "performed in accordance with safety requirements and in an environmentally acceptable and permitted manner." A43(¶7). To the extent that permits are required, such permits are "issued, regulated, and enforced by the State agency (or agencies) where the dredging is to take place, where the processing is to occur, and where the processed material is to ultimately be placed."[8] A43(¶8).

Thus, any alleged use of TDM's patented methods to process the dredged material did not result from compliance with any USACE requirement contained in the contract specifications or other provisions or from written instructions of the Contracting Officer. Under the contracts-at-issue, the dredged material may have been processed by any number of permitted methods and resulted in any number of acceptable compositions prior to disposal. Ex. 4 at A43(¶ 10); (stating there are numerous methods to process dredged material for upland disposal). *See also* Ex. 26, '590 patent, at A503 (col. 1) (stating, in TDM patent, that "[a] number of methods for treating waste material with additives to form a physically and chemically stable end product have been proposed").

Consequently, this case is analogous to *Carrier Corp.,* where the contractor was tasked with the removal refuse from an Air Force base. 534 F.2d at 249. In that case, the Air Force

[8] The agency that issued the permits for the processing and disposal sites, and not the USACE, is responsible for enforcing the permits. Ex. 24, Snell Dep., at A487-90; Ex. 25,Tavolaro Dep., at A497.

explicitly limited its authorization and consent by setting forth FAR 52.227-1 in its contracts, as did the USACE in its dredging contracts. *Id.* at 247. The method and equipment utilized by the Air Force contractor to remove waste material from the base was not specified by the contract. *Id.* at 247-248. Likewise, the USACE contracts-at-issue permitted its contractors to chose the specific method of processing dredged material, without any directives from the contracting officers or the contract documents themselves.

Additionally, in *Carrier*, the contractor's equipment and method of removing garbage was not the only method that would have complied with the services itemized by the Air Force contract. *Id.* at 248. Likewise, the processing methods chosen by the USACE contractors were not the only acceptable methods available for processing dredged material. Therefore, in both *Carrier Corp.* and in the contracts-at-issue, the contractors' alleged use of patented technology did not "necessarily result" from compliance with the contract. Just as the *Carrier Corp.* Court concluded that the government did not provide authorization and consent for its contractor to infringe the patents-at-issue, so should this Court conclude in this case. Accordingly, the Government is entitled to dismissal of claims based on the New York District contracts.

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests the Court to issue an order dismissing the portion of TDM's infringement claims that are based upon the New York District dredging contracts.

DATED: November 8, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

s/Walter W. Brown
WALTER W. BROWN
Attorney
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0341
Facsimile: (202) 307-0345

Attorneys for the United States