Exhibit 4

**Great Lakes Dredge & Dock Company, LLC**
2122 YORK ROAD
OAK BROOK, IL USA 60523-1981
TEL: 630-574-3000

May 31, 2006

Department of the Army
New York District, Corps of Engineers
26 Federal Plaza
Jacob K. Javits Federal Building
New York, New York 10278-0090

Attention: Mr. Kenneth Peterson
Project Engineer

RE: **MAINTENANCE DREDGING OF PORT NEWARK AND PORT NEVADA PIERHEAD CHANNELS, NEWARK BAY, NEW JERSEY IFB SOLICITATION NO. W912DS-06-B-0005**

Gentlemen:

In response to your notification to Great Lakes Dredge & Dock Company that we are the apparent low bidder for the above referenced project, enclosed pleas find the information required by Contract Specification Section 0800, paragraph 1A.1.

We trust this submittal fulfills your requirements but ask that you please contract us at (630) 574-3001 with any questions or comments.

Very truly yours,

GREAT LAKES DREDGE & DOCK COMPANY

Steven F. O'Hara
Vice President

SFO/tr

PLAINTIFF'S EXHIBIT

**IFB NO. W912DS-06-B-0005**
**MAINTENANCE DREGDING**
**NEWARK BAY, NEW JERSEY**

Included in its bid submission, Great Lakes listed five processing facilities and seven upland disposal sites. This submission provides the required information for each of the facilities and the information follows the prescribed format for Paragraph 0800-1A1.

**Section 1.45.1 Information Submitted by the Apparent Low Bidder**

The apparent low bidder shall be officially notified by the Contracting Officer and instructed to submit the following information for the site(s):

*a)* *Name of the contractor identified offloading, processing and disposal sites(s)*
*b)* *Location (street address, city, state) of contractor identified sites(s)*
*c)* *Point of Contact for the contractor identified site and telephone number*
*d)* *Total capacity available at the contract identified sites for offloading, processing and placement of dredge materials for this contract.*

**Offloading & Processing Sites**

| | | |
|---|---|---|
| 1. | Site Name: | Claremont Dredge Material Processing Facility (DMPF) |
| | Location: | One Linden Avenue East<br>Jersey City, NJ 07305 |
| | Owner/Operator: | Clean Earth Dredging Technologies, Inc. |
| | Contact: | Kenneth Sykes, Operations Manager |
| | Phone: | (215) 996-4172 |
| | Site Contact: | John Huhn, Facility Manager |
| | Site Phone: | 201/395-0040 |
| | Capacity: | 4,000+ cubic yards per day |
| 2. | Site Name: | EIC Associates, Inc. |
| | Location: | 148 Doremos Avenue, Newark, NJ<br>Passaic River |
| | Operator: | EIC Associates, Inc. |
| | Contact: | Joe Branco |
| | Phone: | (973) 315-0200 |
| | Capacity: | 4,500+ cubic yards per day |

| | | |
|---|---|---|
| 3. | Site Name: | Koppers Seaboard Site |
| | Location: | Hackensack River<br>Kearny, New Jersey |
| | Owner: | Hudson County Improvement Authority |
| | Contact: | Norman Guerra |
| | Phone: | (201) 975-4555 |
| | Operator: | Great Lakes Dredge & Dock Company |
| | Contact: | Steve O'Hara |
| | Phone: | (630) 574-3001 |
| | Capacity: | 4,000+ cubic yards per day |
| 4. | Site Name: | Don Jon Marine |
| | Location: | Berths 32 & 36<br>Port Newark and Elizabeth |
| | Owner/Operator: | Don Jon Marine |
| | Contact: | Mr. Thomas Witte |
| | Phone: | (908) 964-8812 |
| | Capacity: | 4,000+ cubic yards per day |
| 5. | Site Name: | Bayshore Recycling Corporation |
| | Location: | 75 Crows Mill Road<br>Keasby, New Jersey |
| | Owner/Operator: | Bayshore Recycling Corporation |
| | Contact: | Mrs. Valerie Montecalvo |
| | Phone: | (732) 738-6000 |
| | Capacity: | 1,500 cubic yards per day |

**Disposal Sites:**

1. F.D.P. Enterprises Intermodal Container Facility
Improvement Project Secaucus Road
P.O. Box 1067
Jersey City, Hudson County, New Jersey

| | |
|---|---|
| Capacity: | 1,500,000 cubic yards |
| Owner: | F.D.P. Enterprises, LLC |
| Contractor: | Clean Earth Dredging Technologies, Inc. |
| Contact: | Steven C. Sands |
| Phone: | (215) 734-1400, Ext. 212 |

2. EnCap Meadowlands Redevelopment Project Site
c/o Decotiis, Fitzpatrick, Cole & Wisler, LLP
Glen Pointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
NJMC Kingsland, Rutherford, and Lyndhurst Landfills

| | |
|---|---|
| Capacity: | 1,500,000 cubic yards |
| Owner: | EnCap Golf Holding, LLC |
| Contact: | James T. Hockensmith, Sr. VP |
| Phone: | (201) 907-5288 |

Referred to in this document as "EnCap".

3. Koppers Seaboard Site
Hackensack River
Kearny, New Jersey

| | |
|---|---|
| Capacity: | 400,000 cubic yards |
| Owner: | Hudson County Improvement Authority |
| Contact: | Norman Guerra |
| Phone: | 201/975-4555 |
| Operator: | Great Lakes Dredge & Dock Company |
| Contact: | Steve O'Hara |
| Phone: | (630) 574-3001 |

4. Fresh Kills Landfill, Staten Island, New York

| | |
|---|---|
| Capacity: | 5,000,000+ cubic yards |
| Owner: | City of New York |
| Contact: | David Alvarez<br>NYC Economic Development Corporation |
| Phone: | (212) 312-33742 |
| Contractor: | Great Lakes Dredge & Dock Company |
| Contact: | Steve O'Hara |
| Phone: | (630) 574-3001 |

5. N.J.M.C. 1E Landfill
100 Baler Road
North Arlington, New Jersey

| | |
|---|---|
| Capacity: | 500,000 cubic yards |
| Owner: | Don Jon Marine |
| Contact: | Mr. Thomas Witte |
| Phone: | (908) 964-8812 |

Referred to in this document as "1E Site".

6. Koppers Woodbridge Site
Middlesex County, New Jersey
Capacity: 1,500,000 cubic yards
Owner: Clean Earth Dredging Technologies, Inc.
Contact: Mr. Steven Sands
Phone: (215) 734-1400 Ext. 212

Referred to in this document as "Woodbridge Site".

7. Bayshore Recycling Facility

Originally included with our bid submittal, subsequently removed from consideration as an upland disposal facility as final placement areas for Bayshore are at this time unknown.

e) *Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate, process, and/or dispose of dredged Material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and other as related to transportation, ocessing and placement of the dredged material, or any other aspects of the l er's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.*

f) *Identification of Regulatory Agency required to issue/approve items listed in e) above.*

Included in this section are the permits applicable to the proposed processing, transportation and placement of the dredged material, in response to the 2 aforementioned subsections (e and f).

**Contractor Identified Processing Facilities**

Great Lakes intends to transport the raw dredged material to either or all of the above listed offloading and processing facilities (Claremont DMPF, EIC, Koppers Seaboard, Don Jon Marine, and Bayshore Recycling Site). The permitting, development and operation of these facilities is regulated by the New Jersey Department of Environmental Protection (NJDEP), Office of Dredging & Sediment Technology. In 1997, the NJDEP adopted a technical guidance manual for dredging and dredged material management activities. The "guidance manual" is titled, The Management and Regulations of Dredging Activities and Dredged Material in New Jersey's Tidal Waters, October 1997. The guidance manual includes provisions, specifications, permitting requirements for sampling and analysis of dredged materials (raw and amended), dredging activities, handling, transfer, processing and disposal/beneficial use of dredged materials. Ancillary permits, such as air quality protection, are also issued by the NJDEP.

1. **Claremont Dredged Material Processing Facility (DMPF)**

Below is a list of all required permits or interim guideline approvals that the Claremont DMPF already possesses.

- Waterfront Development Permit/Water Quality Certificate (Re: costal zone construction and land uses): No. 0906-96-0001.6.
- NJ Pollution Discharge Elimination System / Discharge to Surface Waters (Re: discharge of dredging water contained in barges, to Claremont Channel): Permit No. NJ1034015.
- Treatment Works Approval (Re: operation of barge dewatering treatment system): No. 99-3155-4G.
- General Air Permit: No. GEN990001.
- E&S Permit: Hudson-Essex-Passaic Soil Conservation District 99-H-1386.
- Jersey City Plan Approval & Certificate of Occupancy.

**Appendix #1** to this submittal contains copies of all permits listed above.

The Claremont DMPF is not subject to any USACOE permitting requirements. Permits specific to this Contract that are pending or to be obtained are listed below:

- Issuance of NJDEP – ODST Acceptable Use Determination for the project to include processing and transshipment of material from the Newark Bay Contract at the Claremont DMPF.

2. **EIC Associates Facility**

The EIC Associates Processing Facility located in Newark New Jersey along the Passaic River currently has all state and local permits to operate its facility, as listed below:

- NJDEP Permit No. 7014-05-0003.1.

**Appendix #2** to this submittal contains copies of all permits listed above.

The EIC Associate Processing Facility is not subject to any USACOE permitting requirements. Permits specific to this Contract that are pending or to be obtained are listed below:

- Issuance of NJDEP – ODST Acceptable Use Determination for the project to include processing and transshipment of material from the Newark Bay Contract at the EIC Associates Facility.

**3. Koppers Seaboard Facility**

The Koppers Seaboard Facility has all necessary permits and approvals to operate as a processing facility for the Arthur Kill contract. All required permits or approvals specific to the Koppers Seaboard Facility are as follows:

- NJDEP Stream Encroachment Permit No. 0907-02-0003.3 FHA 040001
- NJDEP Air Quality Permit - Permit Activity ID Number PCP040001
- NJDEP Acceptable Use Determination
- HEP Soil Conservation District Permit File No. 204H-1926
- Town of Kearny Construction Permit No. 20050778

**Appendix #3** to this submittal contains copies of all permits listed above.

The Koppers Seaboard Processing Facility is not subject to any US Army Corps of Engineers Permitting requirements. Permits specific to this Contract that are pending or to be obtained are listed below:

- Issuance of NJDEP – ODST Acceptable Use Determination for the project to include processing and transshipment of material from the Newark Bay Contract at the Koppers Seaboard Facility.

**4. Don Jon Marine Processing Facility**

The Don Jon processing facility has all the necessary operating permits and has been fully operational for the past several years. Permits in hand specific to the Don Jon facility are as follows:

- NJDEP Waterfront Development Permit/Acceptable Use Determination- Permit Number 0714-98-0002.1
- NJDEP Air Quality Permit – Permit Activity ID Number PCP022002

**Appendix #4** to this submittal contains copies of all permits listed above.

The Don Jon Marine Processing Facility is not subject to any US Army Corps of Engineers Permitting requirements. Permits specific to this Contract that are pending or to be obtained are listed below:

Issuance of NJDEP – ODST Acceptable Use Determination for the project to include processing and transshipment of material from the Newark Bay Contract at the Don Jon Marine Processing Facility.

**5. Bayshore Recycling Facility**

The Bayshore Recycling Facility is fully permitted and has been operational accepting dredge spoils within the past 6 months. Permits specific to the

processing of dredge materials will be forwarded with the 70 day submission required by contract specifications. Permits specific to this Contract that are pending or to be obtained are listed below:

Issuance of NJDEP – ODST Acceptable Use Determination for the project to include processing and transshipment of material from the Newark Bay Contract at the Bayshore Recycling Facility.

**Contractor Identified Upland Disposal Sites:**

1. **FDP Intermodal Container Facility Improvement Project**
The development of the FDP Enterprises Site involves the enhancement and filling of in excess of 30 acres of uplands (including detention basins) and 52+ acres of wetlands, a respectively, on a parcel in Jersey City, New Jersey, adjacent to the Penhorn Creek, a tributary of the Hackensack River, Pursuant to permits and approvals form the New Jersey Meadowlands Commission ("NJMC"), the New Jersey Department of Environmental Protection ("NJDEP") and the U.S. Army Corp of Engineers, New York District ("USACE"), collectively the "Fill Materials Permits." As part of the project, FDP anticipates using grading fill materials in order to fill and develop the approximately 82 acres over an approximately three-year period, commencing in Fall 2003.

The project anticipates a requirement of 1,500,000 cubic yards of grading material for the fill and development project through Spring 2007. Based on discussions with the NJMC, Clean Earth Dredging Technologies, Inc. ("CEDT") proposed on behalf of FDP an Alternate Fill Criteria entitled "Categories of Acceptable Fill" for inclusion in the Fill/Stockpile Permit Application to the NJMC, issued to FDP on March 28, 2003. Amended dredge material is included as a listed category of accepted fill material in the NJMC Fill Stockpile permit. On September 24, 2003, the NJDEP Division of Remediation Management & Response issued an interim approval of a Remedial Action Workplan (RAWP) to accept fill material meeting certain chemical criteria for use as grading fill at the FDP Site. CEDT is contracted to the owner as the exclusive supplier of grading fill material to the site, including clean fill, select fill, ADM, and non-hazardous recyclable fill material meeting the requirement of the Fill Material Approvals, as amended. CEDT will also complete the on-site construction activities, including the wetlands mitigation project and the installation of water quality basins, in conjunction with the fill project.

Below is a list of all required permits or interim guideline approvals that the FDP Site already possesses.

- NJMC Conditional Zoning Certificate, including Fill/Stockpile Operations Permit, dated March 28, 2003.
- USACE Permit No. 1993-00081 for mitigation and enhancement of wetlands and filling of wetlands.

- NJDEP Water Quality Certificate No. 0906-92-006.5 dated December 20, 2000.
- NJDEP Stream Encroachment Permit no. 0906-92-0006.6 dated July 30, 2001
- Hudson-Passaic-Essex Soil conservation District approval No. 202-H-1722 dated February 6, 2003.
- NJDEP RAWP interim approval letter dated September 24, 2003.

**Appendix #5** to this submittal contains copies of all permits listed above.

A list of all permits or approval specific to this Contract that are pending or to be obtained are listed below:

- Issuance of NJDEP-ODST Acceptable Use Determination for the project to include receipt and placement of amended dredge material from the Newark Bay Maintenance Contract to the FDP Site.

2. **EnCap Golf, LLC Meadowlands Redevelopment Project Site**

The EnCap site involves capping and closure of significant landfill acreage in the NJMC Kingsland, Rutherford, and Lyndhurst Landfills, and therefore will require in excess of 3,000,000 cubic yards of suitable construction fill materials for completion. EnCap has completed their final submittals to all applicable state agencies and has received final written approval for the acceptance and placement of Stabilized Dredge Material (SDM), subject to certain operating and permit restrictions. The approvals allow in excess of 3,000,000 cubic yards of stabilized dredged material to be used at the EnCap Landfill Redevelopment as part of the final capping design for the landfill closure and redevelopment project and conversion of the site to a mixed-use commercial, residential and recreational area. The New Jersey Department of Environmental Protection (NJDEP) has notified Great Lakes that the EnCap site is fully permitted to accept SDM, and EnCap has advised that they will be ready to accept SDM from this project in August 2006. Project specific approvals will be necessary after presentation of results of testing and analyses of the sediment from the Newark Bay Contract.

A list of all required permits or interim guideline approvals that the EnCap project already possesses along with copies of permits are all included as **Appendix #6** of this submittal.

A list of all permits or approval specific to this Contract that are pending or to be obtained are listed below:

- Issuance of NJDEP-ODST Acceptable Use Determination for the project to include receipt and placement of amended dredge material from the Newark Bay Maintenance Contract to the EnCap project site.

3. **Koppers Seaboard Site**

The Koppers Seaboard Site is located in Kearny, New Jersey along the Hackensack River. This site has formerly been permitted and operated as a dredge material disposal facility for material unsuitable for HARS disposal. During the late 1990's approximately 1,100,000 cubic yards of materials was disposed of at this site. The site was previously permitted to receive approximately 3,000,000 cubic yards of material in total. In accordance with the revised and pending Remedial Action Work Plan, the site will accommodate an additional 400,000 cubic yards of processed dredge material. The dredge material will be used to cap the site in preparation for future development. Consistent with the final approved Remedial Action Work Plan, all required state and local permits and approvals will be applied for and are expected to be issued by July 25, 2006.

4. **Fresh Kills Landfill**

The Fresh Kills Landfill is located on Staten Island, New York, adjacent to the Arthur Kill Waterway. This facility is a former city landfill which was owned and operated by the New York City Department of Sanitation. The New York City Economic Development Corporation has made the Fresh Kills Landfill available for disposal of processed dredge material from the Newark Bay Contract subject to certain conditions and requirements. The processed dredge material will be beneficially used as alternate grading material at the Fresh Kills Facility.

The permit specific to this site that are pending is the New York Beneficial Use Determination to receive material from the Newark Bay Maintenance project.

5. **Don Jon Marine 1E Site**

The Don Jon Marine 1E site is a former NJMC Landfill that has been permitted to receive amended dredge spoils to cap and close out. This facility has been receiving processed dredge materials from various dredging projects in New York Harbor since 2004. All permits required to operate this facility will be provided with our 70 day submittal along with the NJDEP Acceptable Use Determination for receipt and placement of amended dredge material at this site.

6. **Koppers Woodbridge Site**

The Koppers Woodbridge Facility is located in Woodbridge, NJ along the Arthur Kill Waterway. Amended dredge material will be utilized to cap the site for future development. This facility is fully permitted to receive processed dredge material and all permits required to operate this facility , along with the NJDEP Acceptable Use Determination for receipt and placement of amended Newark Bay, will be included with our 70 day submission.

g) *Timeline for obtaining the required permits – Bar Chart for Obtaining Permits and Approvals – A bar chart indicating time(s) required fro obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule will detain the major steps (such as time to prepare the permit requires, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc.).*

See attached Project Construction Schedule **(Appendix 7)**. Any outstanding required permits and approvals for the upland disposal site(s) can be obtained and the sites fully operational within the required 70 days from the date of notice of Apparent Low Bidder. At the Kearny and EIC sites, mobilizations have begun to ensure equipment is fully operational by the end of the 70 day period. No public notice is required for any permit for processing or upland disposal with respect to this project

h) *Evidence of Anticipated Daily Production Capability – Evidence of the anticipated daily production capability (CY/day) and throughput rates for their proposed integrated system of dredging, offloading, transportation, processing, and placement for each contractor identified site(s).*

i) *Offloading, processing and disposal Site Elements Information –*

1) *State the capacity of each element of the system. This should include both he total capacity and uncommitted capacity of the disposal site(s), as well as the average daily production rate and workdays per week that the processing site will operate;*

2) *Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year;*

3) *Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles;*

The following provided responses to subsections i) and j), respectively for each processing facility and each of the associated upland disposal facilities.

1. Processing: **Claremont DMPF**
Upland Disposal: **FDP Site/EnCap Site / Fresh Kills Landfill Site/ Koppers Woodbridge Site**

Clean Earth Dredging Technologies, Inc.(CEDTI) has represented and certified its capability for processing, transportation, and disposal of up to 4,000 cubic yards per day to Great Lakes.

The maximum capacity of each element of the system is therefore as follows:

a) Dredging and Water Transportation: 6,000 CY/day
b) Processing: CEDTI Claremont DMPF can process up to 4,000 CY/day in a 2-shift operation
c) Transportation by truck from Claremont DMPF to the FDP Site: 4,000+ CY/day
   Transportation by truck from Claremont to EnCap: 4,000+CY/day
d) Transportation by barge from Claremont DMPF to Fresh Kills Landfill Site: 4,000+CY/day
e) Placement at all disposal sites: 4,000+CY/day

The hours of operation at the processing and disposal facilities are as follows:

Claremont DMPF: 24 hours per day, 7 day per week
FDP: 24 hours per day, 6 days per week, 12 hours (6:00 a.m. to 6:00 p.m.) Sunday
EnCap: 24 hours per day, 6 days per week, Sunday to be determined
Fresh Kills Landfill: 8 hours per day, 5 days per week (7:00 a.m. to 4:00 p.m. Monday through Friday)
Koppers Woodbridge: 24 hours per day, 7 days per week

Distances between elements of the system are detailed below. Figures and site maps for each disposal location are included in **Appendix 8.**

The Claremont DMP facility is located approximately eight (8) nautical miles from the Newark Bay Dredging Site.

The FDP Upland Disposal Site is located approximately seven (7) miles by road from the Claremont DMP facility.

The EnCap Upland Disposal Site is located approximately nine (9) miles by road from the Claremont DMP facility.

The Fresh Kills Landfill Upland Disposal Site is located approximately ten (10) nautical miles from the Claremont DMP Facility.

The Koppers Woodbridge site is located approximately eighteen (18) miles by road from the Claremont DMP facility.

**2.** Processing: **EIC Associates Newark Processing Facility**
Upland Disposal: **EnCap Site/Fresh Kills Landfill Site**

EIC Associates has represented its capability for processing, transportation, and disposal of 4,500 cubic yards per day for the Newark Bay.

The maximum capacity of each element of the system is therefore as follows:

a) Dredging and water transportation: 6,000 CY/day
b) Processing: EIC Associates can process up to 4,500 CY/day in a 2-shift operation
c) Transportation by truck from EIC Associates to the EnCap Site: 4,500 CY /day
d) Transportation by barge from EIC Associates to the Fresh Kills Landfill Site: 4,500 CY/day

The hours of operation at the processing and disposal facilities are as follows:

| | |
|---|---|
| EIC Associates Newark: | 24 hours per day, 7 days per week |
| EnCap Site | 24 hours per day, 6 days per week, 12 hour Sunday |
| Fresh Kills Landfill: | 8 hours per day, 5 days per week (7:00 a.m. to 4:00 p.m. Monday through Friday) |

Distances between elements of the system are detailed below. Figures and site maps for each disposal location are included in **Appendix 8.**

The EIC Associates Newark Processing Facility is located approximately two (2) nautical miles from the Newark Bay Dredging Site.

The EnCap Upland Disposal Site is located approximately seven (7) miles by road from the EIC Associates Newark Processing Facility.

The Fresh Kills Landfill Upland Disposal Site is located approximately eleven (11) nautical miles from the EIC Associates Newark Processing Facility.

3. Processing: **Koppers Seaboard Kearny Processing Facility**
Upland Disposal: **Koppers Seaboard Kearny/ EnCap Site/ Fresh Kills Landfill Site**

The Koppers Seaboard Kearny Processing Facility will be equipped to process up to 4,500 cubic yards per day for the Newark Bay Project.

The maximum capacity of each element of the system is therefore as follows:

a) Dredging and water transportation: 6,000 CY/day.
b) Processing: The Koppers Seaboard Facility can process up to 4,500 CY/day in a 2-shift operation.
c) Transportation locally within the Koppers Kearny Site: 8,000 CY/day
Transportation by truck from the Koppers Seaboard Facility to the EnCap Site: 4,500 CY/day.

d) Transportation by barge from the Koppers Seaboard Facility to the Fresh Kills Landfill Site: 4,500 CY/day.

The hours of operation at the processing and disposal facilities are as follows:

| | |
|---|---|
| Koppers Seaboard Kearny: | 24 hours per day, 7 days per week |
| EnCap Site: | 24 hours per day, 6 days per week, 12 hour Sunday |
| Fresh Kills Landfill: | 8 hours per day, 5 days per week (7:00 a.m. to 4:00 p.m. Monday through Friday) |

Distances between elements of the system are detailed below. Figures and site maps for each disposal location are included in **Appendix 8.**

The Koppers Seaboard Kearny Processing Facility is located approximately five (5) nautical miles from the Newark Bay Dredging Site.

Placement of materials within the Koppers Seaboard Kearny site is all within ½ mile of the processing plant.

The EnCap Upland Disposal Site is located approximately five (5) miles by road from the Koppers Seaboard Kearny Processing Facility.

The Fresh Kills Landfill Upland Disposal Site is located approximately fourteen (14) nautical miles from the Koppers Seaboard Kearny Processing Facility.

4. Processing: **Don Jon Marine Port Newark Processing Facility**
Upland Disposal: **Don Jon 1E Site/ EnCap Site/ Fresh Kills Landfill Site**

The Don Jon Marine Processing Facility will be equipped to process up to 4,000 cubic yards per day for the Newark Bay Project.

The maximum capacity of each element of the system is therefore as follows:

a) Dredging and water transportation: 6,000 CY/day.

b) Processing: The Don Jon Marine Facility can process up to 4,000 CY/day in a 2-shift operation.

c) Transportation by truck from the Don Jon Processing site to the Don Jon 1E Site: 4,000 CY/day.
Transportation by truck from the Don Jon Processing site to the EnCap Site: 4,000 CY/day.

d) Transportation by barge from the Don Jon Processing site to the Fresh Kills Landfill Site: 5,000 CY/day.

The hours of operation at the processing and disposal facilities are as follows:

| | |
|---|---|
| Don Jon Marine Processing: | 24 hours per day, 7 days per week |
| Don Jon Marine 1E Site: | 24 hours per day, 6 days per week, 12 hour Sunday |
| EnCap Site: | 24 hours per day, 6 days per week, 12 hour Sunday |
| Fresh Kills Landfill: | 8 hours per day, 5 days per week (7:00 a.m. to 4:00 p.m. Monday through Friday) |

Distances between elements of the system are detailed below. Figures and site maps for each disposal location are included in **Appendix 8.**

The Don Jon Processing Facility is located less than one (1) nautical mile from the Newark Bay Dredging Site.

The Don Jon 1E Disposal Site is located approximately eight (8) miles by road from the Don Jon Marine Processing Facility.

The EnCap Upland Disposal Site is located approximately five (8) miles by road from the Don Jon Marine Processing Facility.

The Fresh Kills Landfill Upland Disposal Site is located approximately eight (8) nautical miles from the Don Jon Marine Processing Facility.

5. Processing: **Bayshore Recycling Facility**

The Bayshore Recylcing Facility will be equipped to process up to 1,500 cubic yards per day for the Newark Bay Project.

The maximum capacity of each element of the system is therefore as follows:

a) Dredging and water transportation: 6,000 CY/day.
b) Processing: The Bayshore Recycling Facility can process up to 1,500 CY/day in a 1-shift operation.
c) Unloading into the Bayshore Recycling Storage Unit: 1,500 CY/day.

The hours of operation at the processing and disposal facilities are as follows:

Bayshore Recycling Facility: 10 hours per day, 5 days per week

Distances between elements of the system are detailed below. Figures and site maps for each disposal location are included in **Appendix 8.**

The Bayshore Recycling Facility is located approximately fourteen (14) nautical miles from the Newark Bay Dredging Site.

k) *Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment, and the completion of the major acceptance areas). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be complete within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the contractor identified off loading, processing and disposal site(s) that are needed to be completed within 70 calendar days from the date the Apparent Low Bidder is notified of being the Apparent Low Bidder so that the site(s) is operational, capable of processing and disposing of all the dredged material for the in-situ quantity identified in the price schedule.*

As previously referenced, we have included as **Appendix 7** a detailed Construction Schedule based on a Notice to Proceed dated August 19, 2006.

## 1A.1.a SYNOPSIS OF PROPOSED OPERATION

### DREDGING

Dredging will be accomplished using a large clamshell dredge equipped with an enclosed clamshell bucket. We anticipate using our Clamshell Dredge No. 51 for this portion of the dredging. This dredge is outfitted with clamshell buckets ranging from fourteen to eighteen cubic yards. The dredge has three spuds used for anchoring the dredge in position. The stern spud is operated by a hydraulic ram which moves the dredge from area to area.

This contract includes 1 base area plus 6 optional dredging areas which require removal of recent shoaled materials that have been deemed unsuitable for HARS disposal. This material will be dredged and then processed for disposal at an approved upland disposal facility. The clamshell dredge will cover each of these areas using an enclosed clamshell bucket with spoils loaded into hopper barges of 3,000 to 5,500 cubic yard capacity. We will dedicate four to six hopper barges to the project. Our 2,000 horsepower tugboat "McCormack Boys" will be utilized to maneuver the barges at the dredge site and to transport the barges to and from the processing location. Prior to transport of a loaded barge from the project site to a processing location, excess ponded water will be pumped from the loaded barge into another hopper barge dedicated for storage of decanted water.

The Dredge No. 51 has been utilized on many projects in the New York Harbor Area requiring upland disposal of dredge material. These projects include Port Elizabeth Pierhead Channel, Port Newark Reaches B and C, IMTT Bayonne, and Citgo Linden Terminal. Based on an average bank of material of 3 to 4 feet, 75% bucket fill factor, an 18 c.y. bucket, and an operating time efficiency of 70%, the Dredge No. 51 is capable of dredging over 6,000 cubic yards per day. Our construction schedule is based on an average of 3,500 cubic yards per day due to the limitations of the upland disposal process.

Great Lakes owns and operates several other clamshell dredges in addition to the Dredge No. 51. The Dredge No. 131 operates using a 12 cubic yard enclosed bucket. Both the dredges No. 54 and No. 55 operate using 26 cubic yard environmental buckets. One or more of these clamshell dredges are typically assigned to projects in the New York Harbor Area and could be available to be used on this project. We have included as **Appendix 9** information sheets detailing the particulars of these clamshell dredges.

All dredging activities will be supervised by personnel experienced in this type of work. To ensure quality control, the project will be staffed with a full time survey crew and survey vessel. Dredging operations will be conducted 24 hours per day and 7 days per week.

## MATERIAL PROCESSING AND DISPOSAL

Great Lakes listed five processing facilities in its bid submission for this contract. We anticipate using one or a combination of these five facilities to accomplish the dredging and disposal of non-rock material unsuitable for HARS disposal. The following describes each of these processing facilities.

### 1. Clean Earth Dredging Technologies, Inc.

The Claremont Processing Facility is operated by Clean Earth Dredging Technologies, Inc. and has been used on various Corps and Port Authority projects over the past several years. This facility possesses all required federal, state and local permits to operate in this capacity. This facility can operate 24 hours per day and 7 days per week depending on the requirements of the project. In order to process approximately 4,000 cubic yards per day, the facility will operate two shifts per day.

Once a hopper barge is loaded with material and the barge is dewatered, the barge will then be transported using the McCormack Boys to the Clean Earth Processing Facility located along the Claremont Channel in Jersey City, NJ (approximately 8 nautical miles from the dredging site).

The loaded barge will be secured along the dock face to be unloaded. Existing water depth at the dock face is approximately 25 feet at Mean Low Water. Loaded barges will draft 15 feet. The barge will be positioned to be unloaded using a hydraulic excavator equipped with a clamshell bucket. A small plate will be lowered between the dock face and the barge to catch any material which may spill from the bucket during unloading. The excavator will load dredged material into a large hopper which feeds a pug mill. The pug mill mixes the dredged material with stabilizing agents in preparation for transport to the designated upland disposal facility. Once the material is mixed in the pug mill, the material is stockpiled at the facility for curing. When curing is complete, the material is loaded using front end loaders or hydraulic excavators into dump trucks for shipment to either the FDP Site, Koppers Woodbridge, or the EnCap Site. For disposal at the Fresh Kills Site, the processed dredge material will be loaded onto a barge using front end loaders or conveyors.

### 2. EIC Associates Newark Processing Facility

The Newark Facility is operated by EIC Associates and is currently assembly stage of the operating plant. EIC Associates performed the processing of dredge material at the OENJ-Cherokee Bayonne Facility for the past several years. This facility can operate 24 hours per day and 7 days per week depending on the requirements of the project. In order to process approximately 4,500 cubic yards per day, the facility will operate two shifts per day.

Once a hopper barge is loaded with material not suitable for disposal at HARS and the barge is dewatered, the barge will then be transported using the tug McCormack Boys to

the EIC Associates Facility located along the Passaic River in Newark, NJ (approximately 2 nautical miles from the dredging site).

The loaded barge will be secured along the dock face to be unloaded. Existing water depth at the dock face is approximately 18 feet at Mean Low Water. Loaded barges will draft 15 feet. The barge will be positioned to be unloaded using a hydraulic excavator equipped with a clamshell bucket. A small plate will be lowered between the dock face and the barge to catch any material which may spill from the bucket during unloading. The excavator will load dredged material into a large hopper which feeds a pug mill. The pug mill mixes the dredged material with stabilizing agents in preparation for transport to the designated upland disposal facility. Once the material is mixed in the pug mill, the material is stockpiled at the facility for curing. When curing is complete, the material is loaded using front end loaders or hydraulic excavators into dump trucks for shipment to the EnCap Site. For disposal at the Fresh Kill Site, the processed dredge material will be loaded onto a barge using front end loaders or conveyors.

3. **Koppers Seaboard**

The Kearny Processing Facility will be operated by Great Lakes Dredge & Dock Company. This facility possesses all required permits and approvals to operate as a dredge material processing facility and is in the assembly phase for the operating equipment. This facility can operate 24 hours per day and 7 days per week depending on the requirements of the project. In order to process approximately 4,500 cubic yards per day, the facility will operate two shifts per day.

Once a hopper barge is loaded with material and the barge is dewatered, the barge will then be transported using the tug McCormack Boys to the Koppers Seaboard Processing Facility located along the Hackensack River in Kearny, NJ (approximately 5 nautical miles from the dredging site).

The loaded barge will be secured along the dock face to be unloaded. Existing water depth at the dock face is approximately 30 feet at Mean Low Water. Loaded barges will draft 15 feet.
The barge will be positioned to be unloaded using a hydraulic excavator equipped with a clamshell bucket. A small plate will be lowered between the dock face and the barge to catch any material which may spill from the bucket during unloading. The excavator will load dredged material into a large hopper which feeds a pug mill. The pug mill mixes the dredged material with stabilizing agents in preparation for transport to the designated upland disposal facility. Once the material is mixed in the pug mill, the material is stockpiled at the facility for curing. When curing is complete, the material is loaded using front end loaders or hydraulic excavators into dump trucks for shipment to the EnCap Site or to be kept at the Koppers Seaboard Site for final disposal. For disposal at the Fresh Kills Site, the processed dredge material will be loaded onto a barge using front end loaders or conveyors.

4. **Don Jon Port Newark Processing Facility**

The Port Newark Processing Facility will be operated by Don Jon Marine. This facility possesses all required permits and approvals to operate as a dredge material processing facility and has been in operation for the past couple years. This facility can operate 24 hours per day and 7 days per week depending on the requirements of the project. In order to process approximately 4,000 cubic yards per day, the facility will operate two shifts per day.

Once a hopper barge is loaded with material and the barge is dewatered, the barge will then be transported using the tug McCormack Boys to the Port Newark facility. (less than 1 nautical mile from the dredging site).

The loaded barge will be secured along the dock face where existing water depth at the dock face is approximately 45 feet at Mean Low Water. Loaded barges will draft 15 feet. The barge will be fleeted using hydraulic excavators under a chute which will drop measured amounts of stabilizing agents on top of the dredge spoils within the barge. Concurrently, another excavator equipped with a mixing head will work directly adjacent to the chute, where cement has already been placed, churning the cement/dredge spoil mixture within the barge to ensure an adequate and equal mixture. In this method the entire load of dredge spoils will be mixed with appropriate amounts of stabilizing agents.

After mixing is complete, the barge will be allowed to sit idle for a few hours while the reactions begin to occur and the material stabilizes. Once the material becomes solid enough to unload and stack on land, the barges will be unloaded using bucket equipped hydraulic excavators and material stacked within the berthing area for further curing. When curing is complete, the material is loaded using front end loaders or hydraulic excavators into dump trucks for shipment to the EnCap Site or to be kept at the Koppers Seaboard Site for final disposal. For disposal at the Fresh Kills Site, the processed dredge material will be loaded onto a barge using front end loaders or conveyors.

5. **Bayshore Recycling Facility**

The Bayshore Recycling Facility will be operated by Bayshore Recycling, Inc.. This facility possesses all required permits and approvals to operate as a dredge material processing facility. This facility can operate 24 hours per day and 7 days per week depending on the requirements of the project. In order to process approximately 1,500 cubic yards per day, the facility will operate one shift per day.

Once a hopper barge is loaded with material and the barge is dewatered, the barge will then be transported using the tug McCormack Boys to the Bayshore Recycling Facility located along the Raritan River Keasby, NJ (approximately 12 nautical miles from the dredging site).

The loaded barge will be secured along the dock face to be unloaded. Existing water depth at the dock face is approximately 15 feet at Mean Low Water. Loaded barges will draft 13 feet.

The barge will be positioned to be unloaded using a hydraulic excavator equipped with a clamshell bucket. A small plate will be lowered between the dock face and the barge to catch any material which may spill from the bucket during unloading. The excavator will load dredged material into a large hopper which feeds a pump. The dredge material is then pumped into a storage vessel that is moored at the facility. The material is later amended using various agents for beneficial reuse.

**Upland Disposal**

Great Lakes listed seven upland disposal facilities in its bid submission for this contract. As the final placement areas utilized by Bayshore Recycling are unknown, we have kept them on our list as a dredge processor but have removed them as an upland disposal facility. We anticipate using one or a combination of the six remaining facilities to accomplish the dredging and disposal of non-rock material unsuitable for HARS disposal. The following describes each of these upland disposal facilities.

**1. FDP Site**

The FDP Upland Disposal Facility is located in Jersey City, NJ and is operated by Clean Earth Dredging Technologies, Inc. This facility possesses all required federal, state and local permits to operate as an upland disposal facility for dredge material. This facility has been used for the disposal of material unsuitable for disposal at the HARS from several projects in the New York Harbor area. All of the material disposed of at this facility has been processed at the Clean Earth Processing Facility located along the Claremont Channel in Jersey City, NJ. Delivery of processed dredge material is limited to truck delivery only.

After dredge material is processed and cured, the material is loaded into dump trucks for transport from the processing facility to the FDP Site. The dump trucks will travel an approved transportation route from the processing facility to the upland disposal site to avoid contact with residential areas. The distance from the processing facility at Claremont to the FDP Site is approximately seven miles. Upon arrival at the FDP Site, each truck will be directed to a specific location and the material dumped in a designated grid. The material will then be placed and compacted using standard earth moving equipment such as bulldozers and vibratory compactors to the required specifications of the FDP Facility. The FDP Facility can operate 24 hours per day Monday through Saturday and 12 hours on Sunday.

**2. EnCap Site**

The EnCap Site is located in Jersey City, NJ and is operated by a subcontractor to the Owner of the site. This facility possesses all required federal, state and local permits to

operate as an upland disposal facility for dredge material. The site has been open and operational since July of 2004. This facility can still accommodate approximately 1,000,000 cubic yards more of dredge material.

After dredge material is processed and cured, the material is loaded into dump trucks for transport from the processing facility to the EnCap Site. The dump trucks will travel an approved transportation route from the processing facility to the upland disposal site to avoid contact with residential areas. The distance from the Claremont Processing Facility to the EnCap Site is approximately nine miles, from the EIC Processing Facility to the EnCap Site seven miles, and from the Koppers Seaboard Processing Facility to the EnCap Site is approximately five miles. Upon arrival at the EnCap site, each truck will be directed to a stockpile area and the material dumped there. EnCap's on site subcontractor will remove material from this stockpile for placement and compaction at the facility to the required specifications. The EnCap Site can operate 24 hours per day and six days per week.

### 3. Koppers Seaboard Kearny Site

The Koppers Seaboard Site is located in Kearny, NJ along the Hackensack River. This site has formerly been permitted and operated as a dredge material disposal facility for material unsuitable for HARS disposal. During the late 1990's approximately 1,100,000 cubic yards of material was disposed of at this site. The site was previously permitted to receive approximately 3,000,000 cubic yards of material in total. In accordance with the revised and pending Remedial Action Work Plan, the site will accommodate an additional 400,000 cubic yards of processed dredge material. The dredge material will be used to cap the site in preparation for future development.

Only dredge material which has been processed at the Koppers Seaboard Site will be considered for disposal at this site. After the dredge material is processed, it will be loaded into dump trucks for placement at specific locations at the facility. The dredge material will then be compacted using standard equipment such as vibratory compactors to the required specifications of the Koppers Seaboard Facility. The Koppers Seaboard Upland Disposal Facility can operate 24 hours per day and seven days per week.

### 4. Fresh Kills Landfill Site

The Fresh Kills Landfill is located on Staten Island, NY adjacent to the Arthur Kill Waterway. This facility is a former city landfill which was owned and operated by the New York City Department of Sanitation. The New York City Economic Development Corporation has made the Fresh Kills Landfill available for disposal of processed dredge material from the Arthur Kill Contract subject to certain conditions and requirements. The processed dredge material will be beneficially used as alternate grading material at the Fresh Kills Facility.

Dredge material to be disposed of at the Fresh Kills Landfill will be processed off-site at either the Clean Earth Claremont Facility, the EIC Associates Newark Facility, the

Koppers Seaboard Kearny Facility, and/or the Don Jon Marine facility. After the dredge material is processed at one of these facilities, this material will be loaded onto hopper barges using endloaders and conveyors for water transport to the Fresh Kills Landfill. The processed dredge material will be tested to ensure it meets the requirements for placement at Fresh Kills.

The loaded barge of processed dredge material will be towed by the tug McCormack Boys and delivered to the dock unloading area at Fresh Kills. The loaded barge will be secured along the dock face to be unloaded. Existing water depth at the dock face is approximately 17 feet at Mean Low Water. Loaded barges will draft 15 feet. The barge will be positioned to be unloaded using a hydraulic excavator equipped with a clamshell bucket. A small plate will be lowered between the dock face and the barge to catch any material which may spill from the bucket during unloading. The excavator will load the processed dredge material directly into dump trucks. Five to seven off-road dump trucks will be used to transport the material from the unloading dock to the disposal location within the Fresh Kills Landfill. Each truck will be directed to a specific location and the material dumped in a designated grid. The material will then be placed and compacted using standard earthmoving equipment such as bulldozers and vibratory compactors to the required specifications of the Fresh Kills Landfill Facility.

The Fresh Kills Landfill Site is located twelve nautical miles from the Clean Earth Claremont Processing Facility, eleven nautical miles from the EIC Associates Newark Processing Facility, fourteen nautical miles from the Koppers Seaboard Kearny Processing Facility, and eight nautical miles from the Don Jon Marine facility. The Fresh Kills Landfill Upland Disposal Facility will operate eight hours per day and five days per week.

**5. Don Jon Marine 1E Landfill**

The 1E site is located in Jersey City, NJ and is operated by Don Jon Marine. This facility possesses all required federal, state and local permits to operate as an upland disposal facility for dredge material. The site has been open and operational since 2004 and can still accommodate approximately 500,000 cubic yards more of dredge material.

After dredge material is processed and cured, the material is loaded into dump trucks for transport from the processing facility to the 1E Site. The dump trucks will travel an approved transportation route from the processing facility to the upland disposal site to avoid contact with residential areas. The distance from the Don Jon Marine Processing Site to the 1E Site is approximately nine miles. Upon arrival at the 1E site, each truck will be directed to a stockpile area and the material dumped there. Don Jon will remove material from this stockpile for placement and compaction at the facility to the required specifications. The Don Jon 1E Site can operate 24 hours per day and six days per week.

## 8. Koppers Woodbridge Site

The Koppers Woodbridge Site is located in Woodbridge, NJ and is operated by Clean Earth Dredging Technologies, Inc.. This facility possesses all required federal, state and local permits to operate as an upland disposal facility for dredge material. The site has been operational since 2005 and can accommodate approximately 1,500,000 cubic yards more of dredge material.

After dredge material is processed and cured, the material is loaded into dump trucks for transport from the processing facility to the Koppers Woodbridge Site. The dump trucks will travel an approved transportation route from the processing facility to the upland disposal site to avoid contact with residential areas. The distance from the Claremont Processing Facility to the Koppers Woodbridge Site is approximately fifteen miles. Upon arrival at the Koppers Woodbridge site, each truck will be directed to a stockpile area and the material dumped there. Clean Earth Dredging Technology will remove material from this stockpile for placement and compaction at the facility to the required specifications. The Koppers Woodbridge Site can operate 24 hours per day and six days per week.

# APPENDIX 1

## CLAREMONT DREDGE MATERIAL PROCESSING FACILITY PERMITS

**CLEAN EARTH DREDGING TECHNOLOGIES, INC.**
**CLAREMONT CHANNEL DREDGED MATERIAL PROCESSING FACILITY**

**PERMITS**

# WATERFRONT DEVELOPMENT PERMIT

State of New Jersey
Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Christine Todd Whitman
*Governor*

Robert C. Shinn, Jr.
*Commissioner*

May 10,1999

Mr. Craig Schantz
Senior Project Director
Consolidated Technologies, Inc.
1717 Swede Road, Suite 109
Blue Bell, PA 19422

RE: Waterfront Development Permit/Water Quality Certificate
Application No: 0906-96-0001.6
Project: Consolidated Technologies, Inc. (CTI) Dredged Material Processing Facility
City of Jersey City, Hudson County

Dear Mr. Schantz:

Enclosed, please find an approved Waterfront Development Permit/Water Quality Certificate/Acceptable Use Determination (AUD) for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Suzanne Dietrick at (609) 292-9203.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures

C: New York District Corps of Engineers
Scott Douglas, NJ Maritime Resources

Robert Byrne - City Clerk
City of Jersey City
280 Grove Street
Jersey City, New Jersey 07302

RECEIVED
MAY 14 1999

FILE COPY

98-311
Permitting

June 16, 1999

Mr. Lawrence Baier, Chief
New Jersey Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
401 East State Street, 6th Floor
Trenton, NJ 08625

RE: **CONSOLIDATED TECHNOLOGIES, INC.**
**DREDGE MATERIAL PROCESSING FACILITY**
**BLOCK 1507, LOT 10C**
**JERSEY CITY, HUDSON COUNTY, NEW JERSEY**
**WATERFRONT DEVELOPMENT PERMIT NO. 0906-96-0001.6**
**CTI PROJECT NO. 98-311-19**

Dear Mr. Baier:

Enclosed is a photocopy of the recorded Waterfront Development Permit (WDP) No. 0906-96-0001.6 issued by the Department on May 10, 1999.

Please direct any questions and/or comments to my attention. I can be reached at 610-278-9678. Thank you!

Sincerely,

CONSOLIDATED TECHNOLOGIES, INC.

Craig R. Schantz

Craig R. Schantz
Senior Project Director

Enclosure

cc. Larry Mazza HNSE

J:\1998main\Projects\8311\Correspondence\NJDEP WDP Recording Cover Ltr (6-16-99).doc

1717 Swede Road • Suite 109 • Blue Bell, Pennsylvania 19422

G0100300256

DEPARTMENT OF ENVIRONMENTAL PROTECTION

4747

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | |
|---|---|
| Permit No. 0906-96-0001.6 | Application No. 0906-96--0001.6 |

| | | |
|---|---|---|
| Issuance Date MAY 10, 1999 | Effective Date MAY 10, 1999 | Expiration Date MAY 10, 2004 |
| Name and Address of Applicant<br>Consolidated Technologies, Inc.<br>1717 Swede Road, Suite 109<br>Blue Bell, PA 19422 | Name and Address of Owner<br>Hugo Neu Schnitzer East<br>One Jersey Avenue<br>Jersey City, NJ 07302 | Name and Address of Operator<br>Consolidated Technologies, Inc.<br>1717 Swede Road, Suite 109<br>Blue Bell, PA 19422 |
| Location of Activity/Facility *(Street Address)*<br>Consolidated Technologies, Inc.<br>Dredged Material Processing Facility<br>One Linden Avenue East<br>City of Jersey City, Hudson County<br>Lot: 10C Block: 1507 | Issuing Division<br><br>Office of Dredging and Sediment Technology | ORIGINAL |
| Type of Permit Waterfront Development Permit/ Water Quality Certificate/Acceptable Use Determination (AUD) | Maximum , if applicable | |

This permit grants permission to:

Construct and operate a dredged material off-loading and processing facility located on the Hugo Neu Schnitzer East (HNSE) property on Claremont Terminal Channel. The processing facility will be located on the northwest corner of the HNSE property that is bisected by a rail line. The applicant proposes to construct approximately 1,200 feet of additional rail siding. The entire dredged material processing facility will be contained within a bituminous concrete paved area surrounded by a minimum of 6" of rolled concrete curb. The permittee proposes to utilize two types of dredged material processing operations depending on the volume of material to be processed at the facility. The processes consist of the following:

- Barge mixing operations – The dredged material will be transported via scows to the off-loading platform. Oversized debris will be removed utilizing a long reach excavator with rake. The debris will be placed directly into roll off containers, or on a temporary storage area for subsequent transport to an approved disposal or recycling facility. Decant water from within the scow will be pumped via a dewatering sump to a series of portable frac tanks for settling. The decant water will then be discharged to either Claremont Channel under the terms of a NJDPES/DSW Permit, or into a return water scow for transport and discharge back at the dredging site under a Water Quality Certificate issued for the individual dredging project. The dewatered scow will then be moved down the platform to the mixing area consisting of up to a maximum of four low profile admixture storage silos, two vertical admixture storage silos, and two long reach excavators with mounted mixing units. The additive will be introduced into the dredged material using a radial stacking additive feed conveyor. After sufficient mixing, the stabilized dredged material will be off-loaded using a clamshell crane, and placed into a surge hopper and radial stacking conveyor which will transfer the stabilized material into rail cars or trucks for transport to the final use site. A temporary stockpile area for amended dredged material will be located adjacent to the off-loading crane conveyor. This area will be contained by jersey barriers.

(Project Description continued on page 3 of 7 pages)

Prepared By: Suzanne U. Dietrick 5/10/99 Date

(See Page 7 of 7 pages for Chief's signature.)

RECEIVED MAY 14 1999

| | |
|---|---|
| Revised Date | Approved by the Department of Environmental Protection<br>Name (Print or Type) ______ Title ______<br>Signature ______ Date ______ |

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

**This permit is subject to the following general conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

- Pugmill Mixing Operations – This operation will essentially utilize the same type of equipment as the barge mixing operation with the exception of the use of a pugmill feed hopper and radial stacking conveyor in the mixing area. The dewatered dredged material will be off-loaded using a clamshell crane and placed into a hopper and fed into the pugmill for processing and then loaded onto rail cars/trucks using another radial stacking conveyor. The permittee also proposes to utilize a bulk additive receiving hopper for use when amending dredged material with Propat® and Meadowlife® biosolids.

Stormwater runoff from the active portions of the facility will be directed via a diversion swale to a sedimentation basin located on the southern end of the property. The stormwater basin has been designed to handle a 1 year, 24 hour design storm event. The discharge from the sedimentation basin will be to Claremont Channel.

The project is shown on plans consisting of two sheets entitled "Consolidated Technologies, Inc., Dredged Material Processing Facility, Jersey City, Hudson County, NJ" dated December 1998, last revised March 17,1999, and prepared by Matthew M. Seng of Earth Res Group, Inc. Sheet 1 of 2 (98-311-001) entitled "Existing Site Plan," and Sheet 2 of 2 (98-311-002A) entitled "Facility Operations-Site Plan."

This permit is authorized under, and in compliance with, the Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing; Navigational Channels (7:7E-3.7), Ports (7:7E-3.11), Dredged Material Disposal on Land (7:7E-7.12), Water Quality (N.J.A.C. 7:7E-8.4), and Stormwater Management (7:7E-8.7).

This permit is approved subject to, and in accordance with, all applicable Tidelands Grants issued to Hugo Neu Schnitzer East, Liber V, Page 219, dated February 19, 1917. Issuance of this permit does not in any way relinquish the State's ownership interest in the property, if any exists.

This permit is issued subject to and provided that the following conditions can be met to the satisfaction of the Office of Dredging and Sediment Technology. All conditions must be met prior to construction unless otherwise specified. Compliance with Administrative Conditions shall be determined once copies of all specified permits, certifications, plans, agreements, etc. have been received, not less than 30 days prior to construction, and approved by the Office of Dredging and Sediment Technology. All Physical Conditions are subject to on-site compliance inspection by the Bureau of Coastal and Land Use Enforcement. As per N.J.A.C. 7:7-1.4, you must notify the Bureau of Coastal and Land Use Enforcement, (P.O. Box 422, 401 East State Street, Floor 4, Trenton, NJ 08625-0422), in writing at least 3 days prior to commencement of construction or site preparation.

This permit shall be RECORDED in the office of the County Clerk (the REGISTRAR OF DEEDS AND MORTGAGES in the applicable counties) in the county wherein the lands included in the permit are located within ten (10) days after the receipt of the permit by the applicant and verified notice shall be forwarded to the Land Use Regulation Program immediately thereafter.

This permit is NOT VALID until the permit acceptance form has been signed by the applicant, accepting and agreeing to adhere to all permit conditions, and returned to the Office of Dredging and Sediment Technology, 6th floor Assistant Commissioner's Suite, P.O. Box 028, Trenton, New Jersey 08625.

Administrative Conditions:

1. The permittee shall allow an authorized representative of the Department the right to inspect construction pursuant to N.J.A.C. 7:7-1.5.

2. The permittee shall obtain all required local, state, and federal approvals.

3. Prior to initiating operation, the permittee shall submit a copy of an Air Quality permit or letter of no jurisdiction from the NJDEP's Bureau of New Source Review. Should you have any questions in this regard, please contact that Bureau at (609) 292-9258.

4. Prior to bringing any additives to the site, with the exception of Lime, Lime Kiln Dust, Portland Cement, Cement Kiln Dust and Meadowlife® biosolids from MCUA, the permittee must receive a Benefical Use Determination (BUD) from the NJDEP's Division of Solid Waste pursuant to N.J.A.C. 7:26-1.7(g). Should you have any questions regarding this certificate, please contact the Bureau of Resource Recovery and Technical Programs at (609) 984-6984. Further conditions regarding these additives are imposed in the AUD discussed below.

5. Prior to bringing Meadowlife® biosolids to the site, the permittee must obtain an instruction manual from MCUA for the use of biosolids in the processing facility. Conditions specified in the instruction manual regarding the handling of this additive on site shall be incorporated into the Environmental Protection Plan/Health and Safety Plan for the facility. Further conditions regarding this additive are imposed in the AUD discussed below.

Physical Conditions

1. All debris sifted from the dredged material shall be disposed of properly.

2. Until such time as the permitee receives a final and effective NJPDES/DSW permit, there shall be no discharge of decant water from the processing facility to Claremont Channel. The decant water from the portable frac tanks shall be directed into a return water scow, and transported back to the site of origin for discharge under the requirements of the Waterfront Development Permit and Water/Quality Certificate issued for the dredging project.

3. The spill plate between the work barge and the off-loading platform shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

4. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and reintroduced into the product stream.

5. Processed dredged material shall not be stored on site other than in the temporary storage area adjacent to the off-loading crane.

6. This temporary storage area shall be maintained in such a manner to prevent air borne release of the material.

7. All rail cars or trucks used to transport the processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

**Acceptable Use Determination Special Conditions**

1. All dredged material processed at the CTI facility shall have a written Acceptable Use Determination (AUD) from the NJDEP, prior to being accepted at the CTI facility for processing.

2. Any dredged material from New Jersey that is processed at the CTI facility to be used at a location out of state shall receive written authorization from the applicable State agency for transport and use at that out of state location.

3. This AUD authorizes the use of the following admixtures:

   - Coal Ash
   - Lime
   - Lime kiln dust
   - Portland cement
   - Cement kiln dust
   - Alkali activators
   - Propat®
   - Municipal solid wast incinerator ash (MSH ash)
   - Meadowlife® biosolids supplied by Middlesex County Utilities Authority

4. If the CTI facility proposes to use a different admixture other those specified above, the permittee shall amend this AUD prior to the use of the new additive. That application for amendment of the AUD must specify the proposed new additive and must include all appropriate chemical testing of that new additive.

The following conditions apply to the intended use of the processed dredged material:

- **Mine reclamation/remediation**

5. All dredged material to be processed at the CTI facility for transport and use at the Bark Camp Mine Reclamation site located in Huston Township, Clearfield County, PA shall be analyzed according to the attached document entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility."

6. In addition to the testing requirements specified in Item 5, all dredged material to be processed at the CTI facility shall comply with the sampling plan and analytical testing requirements specified in the Amended Benefical Use Order No. 40300, dated June 7, 1997, approved by the Pennsylvania Department of Environmental Protection (PADEP).

7. No raw dredged material intended for use in PA mine reclamation shall be transported to the CTI facility for processing until the dredging project receives approval from the PADEP for use of the material at the Bark Camp Mine Reclamation site.

8. All processed dredged material transported to the Bark Camp Mine Reclamation site shall comply with all conditions specified in the "Final Operating Plan for Dredge Stabilization Mine Reclamation Project at the Bark Camp Mine Facility, Huston Township, Clearfield County, Pennsylvania" dated May 21, 1998 including any amendments thereto.

- **Landfill cover/cap material**
- **Site remediation material (i.e. capping/grading material)**

9. This AUD only authorizes the use of processed dredged material at a landfill or remediation site that is under NJDEP regulatory oversight.

10. No dredged material may be transported to the CTI facility for processing and use at a landfill or remediation site until such time as a NJDEP regulatory oversight document has been issued which specifically authorizes the use of processed dredged material on the site. This regulatory document shall also include the physical and engineering placement criteria, including chemical specifications for placement.

11. All dredged material proposed for use at these locations shall be tested in accordance with the attached protocol entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility." Additional testing of the material may be required to meet other NJDEP regulatory requirements for placement of the material at these use locations.

12. The placement of processed dredged material at the use locations shall comply with the conditions specified in the NJDEP oversight document, as well as all Land Use Regulation Program (LURP) permits/authorizations issued for the use location, if applicable.

- **Structural fill material**
- **Manufactured top soil**

13. All dredged material to be processed at the CTI facility shall be analyzed according to the attached protocol for testing of the raw dredged material.

14. Any processed dredged material that is proposed for transport to a use location, other than a landfill/ remediation site or mine reclamation site, to be used as structural fill material or manufactured top soil, shall be stockpiled on the temporary amended dredged material storage area for further analyses after processing of the material.

15. All end product shall be analyzed according to the attached protocol entitled "Testing of the End Product." The results shall be submitted to the NJDEP, Office of Dredging and Sediment Technology for approval, prior to transport from the CTI facility to the use location.

16. Any end product that is intended to be used as structural fill material that meets the Residential Soil Cleanup Criteria (RSCC) as specified in Appendix A of the NJDEP's dredging technical manual, including any promulgated revisions to those criteria, is considered below regulatory concern. Therefore, the NJDEP will allow unrestricted use of any structural fill end product that meets the RSCC.

17. Any dredged material blended with Meadowlife to produce a manufactured topsoil shall not contain greater than 50% biosolids in the blended material. The manufactured topsoil shall meet RSCC, and shall be placed at the use location according to the conditions specified in the MCUA instruction manual. No manufactured topsoil may be utilized at a use location to bring a site to grade, as material covered by another material, or at depths greater than 2 feet.

18. Any end product that is above the RSCC shall not be removed from the CTI facility until such time as a use location that will accept the material has been identified to and approved by the NJDEP by CTI. At such time, the NJDEP may require additional testing of the end product to meet other regulatory requirements for placement of the material on the identified use site.

19. No end product may remain at the CTI facility for more than 120 calendar days.

**Additional AUD conditions**

20. Any major accidental release of dredged material, admixture, or end product in non-processing areas (i.e., surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action being taken to mitigate the discharge, and any other information the Department may request at the time of notification.

21. This condition applies only to processed dredged material that is intended for use as structural fill material or as manufactured topsoil. The CTI facility shall submit a semiannual report which details the following information for the preceding six months of operation of the facility:

- Source and volume of each dredging project accepted for processing at the CTI facility;
- The location (i.e. lot, block and municipality) of the use site of the end product from each dredging project, and the volume of end product transported to each use site(s), and the intended use of the material at that location;
- The admixture type and quantity used in the processing of the dredged material from the specific dredging project;
- The results of the bulk sediment chemistry analyses of the end product associated with the individual dredging project generator as per the attached protocol.

23. CTI shall also maintain daily records noting the transportation vehicle identification number, material quantity, source, and designation of all dredge material and admixtures entering and leaving the facility. The daily records shall be compiled into standard reports, which shall be submitted to the NJDEP on a semi-annual basis.

24. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any persons violation of any related permit and their conditions, and/or modifications of the Department's acceptable use criteria.

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology

May 10, 1999
Date

## ANALYTICAL TESTING REQUIREMENTS FOR DREDGED MATERIAL TO BE PROCESSED AT THE CONSOLIDCATED TECHNOLOGIES, INC. DREDGED MATERIAL PROCESSING FACILITY

May 10, 1999

The specific analytes which must be tested for are listed in the tables in Appendices A and B of the NJDEP's technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested for include semi-volatile organics, PCBs, pesticides, metals, and dioxin/furan congeners. Volatile organics compounds may be required on a case-by-case basis.

Laboratories used must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the NJDEP, Office of Quality Assurance at (609)292-3950.

## PROTOCOL FOR THE TESTING OF DREDGED MATERIAL TO BE PROCESSED AT THE CTI FACILITY

Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each composite raw sediment sample. Any water which separates from the dredged material during transport/storage (i.e. porewater) must be remixed with the solid components of the dredged material prior to forming the composite samples; the porewater must not be decanted from.the dredged material.

For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of the proposed additive(s) with a preweighted sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive(s) to composite sediment sample, by weight, will be recorded. The dredged material to be tested will be formed using the "recipe" (i.e. proportions of dredged material to additive) which replicates, to the greatest extent possible, the actual processed dredged material product.

## TESTING OF THE "END PRODUCT" PRIOR TO TRANSPORT FOR USE AS STRUCTURAL FILL*/MANUFACTURED TOPSOIL

Bulk sediment chemistry for the target analyte list found in Appendices A and B of the NJDEP's dredging technical manual must be conducted on end product prior to transport from the CTI facility to the use location. The protocol for frequency of testing, and sampling procedures of the end product is as follows:

- Collection of all samples of the end product stockpile shall conform to the NJDEP's Field Procedures Manual, May 1992.
- The manufactured topsoil shall be analyzed for goal oriented parameters (e.g. pH, organic content, and texture) as specified in the MCUA instruction manual, in addition to the bulk sediment chemistry testing discussed above.
- The end product that is derived from an individual dredging project generator that is to be utilized as structural fill or manufactured topsoil shall be analyzed every 10,000 cubic yards, and/or once per each use site (end user) if the volume of material from the dredging project generator is less than 10,000 cubic yards.
- Five discrete samples shall be collected at mid-depth of the end product stockpile. The five discrete samples shall be composited into one sample and analyzed for bulk sediment chemistry using the target analyte list.
- The results of analyses shall be submitted on a semi-annual basis as required in Condition 22 of the AUD.

*NOTE: End product testing of the material for use as structural fill is not required when the material is to be utilized on a landfill/remediation site which is currently subject to NJDEP regulatory oversight.

The dredged material product samples will be pulverized, and each sample subjected to bulk chemical analysis. In addition, the dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing, as follows:

**Note: MEP testing is not required for material to be transported and used at the Bark Camp Mine Reclamation site. Leachate quality testing of the material will be specified in the sampling plan approved by PADEP.**

Procedure

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

2. Measure an aliquot of 100 grams of each dredged material product sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples

3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.

4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24 hour extraction period. (All pH measurements eill be taken on the bottle extraction only).

5. Employ the extraction fluid separation procedure as described in EPA Method 1311 (TCLP).

6. Analyze the extract for the constituents of concern identified in the Department's October 1997 technical manual on dredging. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.

7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.

8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.

9. A final report, including the results of the sediment and dredged material product testing, will be presented to the Department in a series of nine (9) summary data tables:

   - Sediment bulk chemistry
   - Dredged material product bulk chemistry
   - Dredged material product leachate extraction steps.

# NJPDES PERMIT

98-3/1-19
Permits

# State of New Jersey

Christine Todd Whitman
*Governor*

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028 Trenton N.J. 08625-0028
Telephone: (609) 984-4426
FAX: (609) 777-1914

Robert C. Shinn, Jr.
*Commissioner*

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Craig Schantz
Consolidated Technologies, Inc.
1717 Swede Road, Suite 109
Blue Bell, Pennsylvania 19422

JUL 30 1999

Re: NJPDES/DSW Permit No. NJ0134015
Consolidated Technologies Inc. (CTI)
Jersey City, Hudson County

Enclosed is the final NJPDES/DSW permit to discharge pollutants to the Claremont Channel/Upper New York Bay issued in accordance with the New Jersey Pollutant Discharge Elimination System (NJPDES) Regulations, N.J.A.C. 7:14A-1 et seq. The facility has been classified as a minor facility by the New Jersey Department of Environmental Protection (the Department). Violation of any condition of this NJPDES permit may subject the permittee to significant penalties.

No comments were received on the draft permit.

The Department's current Discharge Monitoring Report (DMR) Instruction Manual is enclosed for your use in completing DMRs. Please note that if there is a discrepancy between the NJPDES permit and the DMR Instruction Manual, the NJPDES permit always takes precedence.

All monitoring shall be conducted in accordance with the Department's current Field Sampling Procedures Manual, which is available from the Maps and Publications Sales Office, Bureau of Revenue, P.O. Box 417, Trenton, New Jersey 08625, (609) 777-1038. (D. Morrow)

An application for renewal of this NJPDES permit must be submitted at least 180 days prior to expiration of the permit pursuant to N.J.A.C. 7:14A-4.2(e)3. Please note that as specified at N.J.A.C. 7:14A-4.4(b)3ii(1), this facility shall submit the results from a minimum of at least one acute and one chronic whole effluent toxicity test performed on the same sample(s) as part of the renewal application.

Should you have any questions regarding this action, please contact me at (609) 984-4426.

Sincerely,

Suzanne U. Dietrick for

Richard DeWan, Coordinator
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures

c: Final Permit Distribution List

New Jersey Department of Environmental Protection

# NEW JERSEY POLLUTANT DISCHARGE ELIMINATION SYSTEM

The New Jersey Department of Environmental Protection hereby grants you a NJPDES permit for the facility/activity named in this document. This permit is the regulatory mechanism used by the department to ensure your discharge will not harm the environment. By complying with the terms and conditions specified, you are assuming an important role in protecting New Jersey's valuable water resources. Your acceptance of this permit is an agreement to conform with all of its provisions when constructing, installing, modifying, or operating any facility for the collection, treatment, or discharge of pollutants to waters of the state. If you have any questions about this document, please feel free to contact the department representative listed in the permit cover letter. Your cooperation in helping us protect and safeguard our state's environment is anticipated and appreciated.

PERMIT NUMBER NJ0134015

| Permittee | Co-Permittee |
|---|---|
| CONSOLIDATED TECHNOLOGIES INC<br>DREDGE MATERIAL PROCESSING<br>1717 SWEDE RD<br>BLUE BELL NJ 19422 | |

| Property Owner | Location of Activity |
|---|---|
| HUGO NEU SCHNITZER<br>1 JERSEY AVE<br>JERSEY CITY NJ 07302 | CONSOLIDATED TECHNOLOGIES INC<br>DREDGE MATERIALS PROCESSING<br>LINDEN AVE<br>JERSEY CITY NJ 07305 |

| Current Authorization Covered By This Approval And Previous Authorization | Issuance Date | Effective Date | Expiration Date |
|---|---|---|---|
| B : IND/COMMERCIAL/THERMAL DSW | 07/30/1999 | 08/01/1999 | 07/31/2004 |

**DSN:** 001 & 002

**CLASSIFICATION:** SE2

**LATITUDE:** 40 41' 14"

**LONGITUDE:** 74 04' 47"

**RECEIVING STREAM:** Claremont Channel Upper New York Bay

By Authority of:
COMMISSIONER'S OFFICE

Debra Hammond

DEP AUTHORIZATION
DEBRA HAMMOND, BUREAU CHIEF
BUREAU OF POINT SOURCE PERMITTING REGION 2
DIVISION OF WATER QUALITY

(Terms, conditions and provisions attached hereto)

# GENERAL CONDITIONS FOR INDIVIDUAL NJPDES PERMITS

The permittee shall comply with all conditions set forth in this permit and with all the applicable requirements incorporated into this permit by reference. The permittee is required to comply with the regulations which are in effect as of the effective date of the final permit.

## Section A. GENERAL CONDITIONS

| | | |
|---|---|---|
| 1. | Penalties for Violations | N.J.A.C. 7:14-8.1 et seq. |
| 2. | Incorporation by Reference | N.J.A.C. 7:14A-2.3 |
| 3. | Toxic Pollutants | N.J.A.C. 7:14A-6.2(a)4i |
| 4. | Duty to Comply | N.J.A.C. 7:14A-6.2(a)1 & (a)4 |
| 5. | Duty to Mitigate | N.J.A.C. 7:14A-6.2(a)5 & 11 |
| 6. | Inspection and Entry | N.J.A.C. 7:14A-2.11(e) |
| 7 | Enforcement Action | N.J.A.C. 7:14A-2.9 |
| 8. | Duty to Reapply | N.J.A.C. 7:14A-4.2(e)3 |
| 9. | Signatory Requirements for Applications and Reports | N.J.A.C. 7:14A-4.9 |
| 10. | Effect of Permit/Other Laws | N.J.A.C. 7:14A-6.2(a)6 & 7 & 2.9(c) |
| 11. | Severability | N.J.A.C. 7:14A-2.2 |
| 12. | Administrative Continuation of Permits | N.J.A.C. 7:14A-2.8 |
| 13. | Permit Actions | N.J.A.C. 7:14A-2.7(c) |
| 14. | Standard Reopener Clause | N.J.A.C. 7:14A-6.2(a)10 |
| 15. | Permit Duration and Renewal | N.J.A.C. 7:14A-2.7(a) & (b) |
| 16. | Consolidation of Permit Process | N.J.A.C. 7:14A-15.5 |
| 17. | Confidentiality | N.J.A.C. 7:14A-18.2 & 2.11(g) |
| 18. | Fee Schedule | N.J.A.C. 7:14A-3.1 |
| 19. | Treatment Works Approval | N.J.A.C. 7:14A-22 & 23 |

## Section B. OPERATION AND MAINTENANCE

| | | |
|---|---|---|
| 1. | Need to Halt or Reduce not a Defense | N.J.A.C. 7:14A-2.9(b) |
| 2. | Proper Operation and Maintenance | N.J.A.C. 7:14A-6.12 |

## Section C. MONITORING AND RECORDS

| | | |
|---|---|---|
| 1. | Monitoring | N.J.A.C. 7:14A-6.5 |
| 2. | Recordkeeping | N.J.A.C. 7:14A-6.6 |
| 3. | Signatory Requirements for Monitoring Reports | N.J.A.C. 7:14A-6.9 |

## Section D. REPORTING REQUIREMENTS

| | | |
|---|---|---|
| 1. | Planned Changes | N.J.A.C. 7:14A-6.7 |
| 2. | Reporting of Monitoring Results | N.J.A.C. 7:14A-6.8 |
| 3. | Noncompliance Reporting | N.J.A.C. 7:14A-6.10 & 6.8(h) |
| | a. Hotline/Two Hour & Twenty-four Hour Reporting | N.J.A.C. 7:14A-6.10(c) & (d) |
| | b. Written Reporting | N.J.A.C. 7:14A-6.10(e) &(f) & 6.8(h) |
| 4. | Duty to Provide Information | N.J.A.C. 7:14A-2.11, 6.2(a)14 & 18.1 |
| 5. | Schedules of Compliance | N.J.A.C. 7:14A-6.4 |
| 6. | Transfer | N.J.A.C. 7:14A-6.2(a)8 & 16.2 |

## Section E. ADDITIONAL CONDITIONS

### Operator Certification

Pursuant to N.J.A.C. 7:10A-1.1 et seq., every wastewater "system" not exempt pursuant to N.J.A.C. 7:10A-1.10(b) requires a licensed operator. The operator of a "system" shall meet the requirements of the Department pursuant to the provisions of N.J.A.C. 7:10A-1.1 et seq. and any amendments thereto. The name of the proposed operator, where one is required, shall be submitted to the Department in order that his/her qualifications may be determined prior to initiating operation of the treatment works. Further information regarding this requirement may be obtained from:

NJDEP
Bureau of Revenue
Examinations and Licensing Unit
PO Box 417
Trenton, New Jersey 08625-0417
(609) 777-1012

### Operation Restrictions

The operation of a waste treatment or disposal facility shall at no time create: (a) a discharge, except as authorized by the Department in the manner and at the location(s) specified in the Part(s) III of this permit; or (b) any discharge to the waters of the State or any standing or ponded condition for water or waste, except as specifically authorized by a valid NJPDES permit.

### Sampling Points

All samples shall be taken at the monitoring points specified in this permit and all effluent samples, unless otherwise specified, shall be taken before the effluent joins or is diluted by any other wastestream, body of water or substance. Monitoring points shall not be changed without notification to and the approval of the Department.

### Monitoring and Reporting

The permittee shall report monitoring results on the Discharge Monitoring Report (DMR) forms or other monitoring report forms required by the permit or the Department at the intervals specified in the permit. Monitoring results shall be summarized and reported on the appropriate form following the completed reporting period. If a discharge does not occur during a particular reporting period, the permittee should write "NODI" across the face of the form. Unless otherwise specified or directed, signed copies of these forms shall be submitted postmarked no later than the 25th day of the calendar month following the completed reporting period to the following address:

NJDEP
Bureau of Permit Management
PO Box 029
Trenton, New Jersey 08625-0029
Attn.: Monitoring Reports

**Intermittent Discharges** (if Applicable)

The permittee is required to provide representative sampling of any regulated intermittent activity pursuant to N.J.A.C. 7:14A-6.5(a). Therefore, although a discharge may occur on an intermittent basis, it does not exempt the permittee from complying with the conditions of the permit. For example, if a permittee has a monthly monitoring and reporting requirement and the discharge occurs three separate times during the month, the permittee should obtain a sample during at least one of the discharge events occurring during the monitoring period. The permittee should report "NODI" on the DMR (or other required form) only if there are no discharge events during the entire reporting period.

**Flow Measurements**

When flow monitoring is required, appropriate flow measurement devices and methods consistent with accepted engineering/scientific practices shall be selected and used to insure the accuracy and reliability of measurements of the volume of monitored discharges. Unless specified otherwise in this permit, devices shall be installed, calibrated and maintained to insure that the accuracy of the measurements are consistent with the accepted capability of that type of device. Devices selected shall be capable of measuring flows with a maximum deviation of less than +/-10% from the true discharge rates throughout the range of expected discharge volumes. Guidance in selection, installation, calibration and operation of acceptable flow measurement devices can be obtained from the following references:

A. "A Guide to Methods and Standards for the Measurement of Water Flow", U.S. Department of Commerce, National Bureau of Standards, NBS Special Publication 421, May 1975, 97 pp. (Available from the U.S. Government Printing Office, Washington, D.C. 20402. Order by SD Catalog No. C13.10:421).

B. "Water Measurement Manual", U.S. Department of Interior, Bureau of Reclamation, Second Edition, Revised Reprint, 1974, 327 pp. (Available from the U.S. Government Printing Office, Washington, D.C. 20402. Order by Catalog No. 127.19/2:W29/2, Stock No. S/N 24003-0027.)

C. "Flow Measurement in Open Channels and Closed Conduits", U.S. Department of Commerce, National Bureau of Standards, NBS Special Publication 484, October 1977, 982 pp. (Available in paper copy or microfiche from National Technical Information Service (NTIS), Springfield, VA 22151. Order by NTIS No. PB-273 535/5ST.)

D. "NPDES Compliance Sampling Manual", U.S. Environmental Protection Agency, Office of Water Enforcement, Publication MCD-51, 1977, 140 pp. (Available from the General Services Administration (8FFS), Centralized Mailing Lists Services, Building 41, Denver Federal Center, Denver CO 80225.)

**Applicability of Numerical Limitations**

If only one analysis for a given parameter is made during any sampling period specified in this permit, the result of such analysis shall be construed as the average value of the parameter, as well as the maximum, for said sampling period. The permittee may take samples and have analysis made by a New Jersey Certified laboratory on additional occasions to those specified in this permit. If so, the average and the maximum values of all analytical results taken during the sampling period shall be reported as the applicable average and maximum values. However, for pH, minimum and maximum values are reported rather than average values.

## FACILITY INFORMATION

A. Discharge Point(s)

| DSN | Latitude | Longitude | Receiving Stream | Stream Classification |
|---|---|---|---|---|
| 001 | 40°41'14" | 74°04'47" | Claremont Channel/Upper New York Bay | SE2 |
| 002 | 40°41'14" | 74°04'47" | Claremont Channel/Upper New York Bay | SE2 |

B. Description of Facility

Consolidated Technologies, Inc. (CTI) will be operating a dredge material processing facility that amends and stabilizes dredge material from various waterbodies that are located primarily in the New York/New Jersey Harbor region. The proposed discharge from these operations will consist of the decant water from the second stage settling in on-site portable frac tanks through DSN 001. The decant water will be pumped from scows and barges into the on-site frac tanks after undergoing first stage settling and debris removal. There will also be a discharge of the site's stormwater through a separate stormwater outfall.

| DSN | Monthly Average Flow (Appl.) | Long Term Average Flow (DMR) | Description of Treatment (if any) | Licensed Operator Classification |
|---|---|---|---|---|
| 001 | 0.120 MGD | N/A | Primary (Settling Tanks) | NS * |
| 002 | 0.040 MGD | N/A | | NA |

*The permittee shall apply for a Treatment Works Approval pursuant to N.J.A.C. 7:14A-22.1 et seq.

C. Major/Minor Rating

The facility has been classified as a **minor** discharger by the New Jersey Department of Environmental Protection in accordance with the U.S. EPA rating criteria.

2. EFFLUENT LIMITATIONS AND MONITORING REQUIREMENTS

During the period beginning EDP and lasting through EDP + 5 years, the permittee is authorized to discharge the decant from the settling and/or processing of dredged material through Discharge Serial Number (DSN): 001.

There shall be no discharge of floating solids or visible foam in other than trace amounts. There shall be no visible sheen.

The abbreviation 'N/A', in the table below denotes 'Not Applicable' while the abbreviation 'NL', denotes 'Not Limited' with both monitoring and reporting required.

All analytical data shall be reported on Discharge Monitoring Reports (DMRs).

Samples taken in compliance with the specified monitoring requirements shall be taken at the outlet from the settling/portable frac tank identified as outfall DSN 001; and shall be reported quarterly.

| PARAMETER | | DISCHARGE REQUIREMENT | | | MONITORING REQUIREMENT | |
|---|---|---|---|---|---|---|
| | Units | Daily Minimum | Monthly Average | Daily Maximum | Minimum Frequency | Sample Type |
| Flow [A] | Gals/day | NA | NL | NL | Weekly | Meter |
| Total Suspended Solids (TSS) | mg/L | NA | NL | NL | Weekly | Composite |
| pH [B] | S.U. | 6.5 | NA | 8.5 | Weekly | Grab |
| Total Petroleum Hydrocarbons (TPH) | mg/L | NA | 10 | 15 | Monthly | Grab |
| Total Organic Carbon (TOC) | mg/L | NA | NL | NL | Weekly | Grab |

[A] The flow shall be monitored using a flowmeter.

[B] The pH shall not be less than 6.5 Standard Units (S.U.) OR the measured pH of the precipitation event at the time of monitoring. The precipitation event shall be reported as the influent on the Discharge Monitoring Reports (DMRs).

## 3. MODIFICATION OF MONITORING REQUIREMENTS

The permittee may request a modification of their permit to decrease monitoring frequencies for specific parameters if site specific conditions indicate applicability of such a modification. The Department will consider reducing the monitoring frequency of a limited parameter provided that the permittee has shown consistent compliance with all permit conditions for the affected parameter(s).

A monitoring frequency can be reduced as follows:

1) from weekly to monthly;
2) from monthly to quarterly; or
3) from quarterly to semi-annually or annually.

Reduction of monitoring frequency is not automatic; the Department shall determine whether or not a reduction is warranted. The Discharge Monitoring Reports (DMRs) shall be reviewed to verify consistent compliance with permit limitations and conditions for the affected parameter(s). If the Department agrees to grant the request, the Department will perform a conditional change to the permit to change the monitoring frequency of the affected parameters.

A request for a modification of the monitoring frequency should be sent to the Chief of the Bureau of Permit Management, P.O. Box 29, Trenton, New Jersey 08625. A copy of the letter should also be sent to Richard DeWan.

## 4. TOXIC POLLUTANT REOPENER CLAUSE

Pursuant to N.J.A.C. 7:14A-6.2(a)(10)(iii), the Department may modify or revoke and reissue any permit to incorporate limitations or requirements to control the discharge of toxic pollutants, including whole effluent, chronic and acute toxicity requirements, chemical specific limitations or toxicity reduction requirements, as applicable.

## ADDITIONAL REQUIREMENTS OF THIS PERMIT

### I. Effluent Characterization Study

Based on all available information provided in the application and the pre-application packages, there is insufficient data for the Department to substantiate whether or not certain pollutants are present or will be present in the proposed discharge and at what levels. The results of the Effluent Characterization Study (ECS) will be used to make a determination on whether to impose numerical limitations on these pollutants.

An ECS is required for DSN 001. Monitoring for each outfall and/or monitoring location is required in accordance with N.J.A.C. 7:14A-13.16(a)1. The parameters identified for the effluent characterization have the potential to be present in the permittee's discharge(s) due to the nature of the source of the dredged material and/or the waters from which the dredged material originated. Specific parameters for the study and the method of analysis are specified below.

### II. Compliance Date

The ECS shall be performed from EDP through EDP + 12 months in accordance with the monitoring schedule presented below. The permittee shall submit to the Department an Effluent Characterization Study Report summarizing the data collected by outfall/sampling point for each parameter detected. The permittee shall submit copies of all laboratory data sheets attached to the summary report. The final report shall be submitted to the Office of Dredging and Sediment Technology by EDP + 15 months.

### III. DSN 001

The permittee shall obtain samples for all of the parameters below at the indicated frequencies. The permittee shall sample as follows using the RQLs specified in Appendix I:

| PARAMETER | FREQUENCY | SAMPLE TYPE | RQL µg/l | EPA TEST METHOD |
|---|---|---|---|---|
| Total Organic Carbon | Twice/Monthly | Grab | NA | |
| Arsenic | Monthly | Composite | 8 | |
| Cadmium | Monthly | Composite | 4 | |
| Chromium | Monthly | Composite | 10 | |
| Copper | Monthly | Composite | 10 | |
| Lead | Monthly | Composite | 10 | |
| Mercury | Monthly | Composite | 1 | |
| Nickel | Monthly | Composite | 10 | |

| PARAMETER | FREQUENCY | SAMPLE TYPE | RQL µg/l | EPA TEST METHOD |
|---|---|---|---|---|
| Selenium | Monthly | Composite | 10 | |
| Silver | Monthly | Composite | 2 | |
| Thallium | Monthly | Composite | 10 | |
| Zinc | Monthly | Composite | 30 | |
| PCB-1242 | Quarterly | Composite | N/A | Detected by Method 608 |
| PCB-1254 | Quarterly | Composite | N/A | Detected by Method 608 |
| PCB-1221 | Quarterly | Composite | N/A | Detected by Method 608 |
| PCB-1232 | Quarterly | Composite | N/A | Detected by Method 608 |
| PCB-1260 | Quarterly | Composite | N/A | Detected by Method 608 |
| PCB-1016 | Quarterly | Composite | N/A | Detected by Method 608 |
| 2,3,7,8 Tetrachlorodibenzo-P-dioxin (1) | Quarterly | Composite | (1) | |
| Benzo(a)anthracene | Monthly | Composite | 10 | |
| Benzo(a) pyrene | Monthly | Composite | 20 | |
| 3,4 Benzofluoranthene | Monthly | Composite | N/A | |
| Benzo(k)fluoranthene | Monthly | Composite | 20 | |
| Chrysene | Monthly | Composite | 20 | |
| Dibenzo(a,h)anthracene | Monthly | Composite | 20 | |
| Fluoranthene | Monthly | Composite | 10 | |
| Indeno(1,2,3-cd)pyrene | Monthly | Composite | 20 | |

For those parameters listed as N/A, the RQL shall be five times the MDL achieved by the laboratory.

(1) The RQL shall be five times the MDL achieved by the laboratory for Method 624.

If a parameter specified above is shown to be consistently less than the recommended quantitation level (<RQL and/or not detectable) utilizing an approved methodology (in accordance with 40 CFR Part 136) and detection level, in a minimum of four consecutive analyses, the monitoring for that parameter may be discontinued from the study.

If a parameter specified above is detected in one out of the first five sets of samples in the same order of magnitude as the RQL, and the permittee has reason to believe that the detection is "unwarranted", the permittee may submit a request in writing to the Office of Dredging and Sediment Technology to request a reduction in monitoring or deletion of the parameter from the Study. However, this parameter should continue to be included in the study until a response is received from the Office of Dredging and Sediment Technology.

If the permittee or contract laboratory determines that the RQL cannot be achieved, justification for a less sensitive detection level must be submitted to the Office of Dredging and Sediment Technology and a copy should be submitted with the DMR. Pollutants that are detected but not quantified must be reported as such on the lab sheets and on the DMRs.

## IV. Best Management Practices

In order to prevent, or minimize the potential for the release of toxic substances from ancillary activities to the waters of the State through plant runoff, spillage or leaks, sludge or waste disposal or drainage from raw material storage, the permittee shall develop and implement a Best Management Practices (BMP) Plan.

These conditions apply to all permittees who use, manufacture, store, handle, or discharge any pollutant listed as toxic under Section 307 (a)(1) of the Clean Water Act and who have ancillary manufacturing operations which could result in significant amounts of these pollutants reaching waters of the State. These operations include material handling areas; plant site runoff; in-plant transfer, process and material handling areas; loading and unloading operations, and sludge and waste disposal areas. The BMP Plan shall, as a minimum, include the following:

a. BMP Committee;
b. Reporting of BMP Incidents;
c. Risk Identification and Assessment;
d. Employee training;
e. Inspections and Records;
f. Preventive Maintenance;
g. Good Housekeeping;
h. Materials Compatibility;
i. Security.

The facility shall incorporate in the BMP Plan any appropriate procedures for adequately controlling spills and leaks of hazardous substances as specified in the Discharge Prevention Containment and Countermeasures (DPCC) Plan or other preventive plans submitted to the Department. If, in the judgment of the BMP Committee, the present practices identified in these plans are adequate, they may be incorporated into the BMP Plan by reference.

Specific information concerning the development of the BMP Plan with respect to stormwater management is available in the U.S. Environmental Protection Agency's publication entitled, "Stormwater Management For Industrial Activities: Developing Pollution Prevention Plans and Best Management Practices", EPA 832-R-92-006, September 1992.

## V. Compliance Date

The BMP Plan shall be submitted to the Office of Dredging and Sediment Technology for review by EDP + 12 months and shall be implemented by EDP + 15 months.

98-311-19
Permits

# AUTHORIZATION TO DISCHARGE STORMWATER

New Jersey Natural Resources Conservation Program

N.J. Department of Environmental Protection
Bureau of Nonpoint Pollution Control
*in cooperation with the*
N.J. Department of Agriculture
State Soil Conservation Committee
and Soil Conservation Districts

NJPDES General Permit No. NJ0088323 (N.J.A.C. 7:14A-11 Appendix B)
Stormwater Discharge Associated with Construction Activity

Ch. 251 App. No. 99-H-1386 SCD RFA # 09-06-20-01 Effective Date 8/5/99

**1.** Project or Facility Name and Address:
Consolidated Technologies Inc. Dredge Material. Processing Facility
Linden Avenue, East, Jersey City, NJ

**2.** Permittee Name and Address:
Consolidated Technologies, Inc.
1717 Swede Road Suite 109
Blue Bell, PA 19422
Craig Schantz

**3.** Owner Name and Address:
Same as Permittee

**4.** Proposed Land Use (check the appropriate category(ies)):

(1) Residential Dwelling - ___ Single Family ___ Multi-Family ___ (2) Commercial Facility ___ (3) Industrial Facility X (4) Mining or Quarry ___ (5) Public School, Religious or Charitable Institution ___ (6) Other (Specify) ___

Your Request for Authorization under NJPDES General Permit No. NJ0088323 has been certified in accordance with the provisions of N.J.A.C. 7:14A and the New Jersey Stormwater Permitting Program in coordination with the New Jersey Department of Agriculture, the State Soil Conservation Committee and the Soil Conservation District.

Barry Chalofsky, P.P., Chief
Bureau of Nonpoint Pollution Control
New Jersey Department of Environmental Protection

CERTIFIED BY:

Signature Date 8/5/99

Chairman
Title

Soil Conservation District Hudson-Essex-Passaic SCD

**FOR DISTRICT USE ONLY**

**NJ Natural Resources Conservation Program**
**Expiration of Authorization to Discharge Stormwater**

Reason for Expiration:

- ☐ Project Completed (Final Report of Compliance Issued)
- ☐ Application Withdrawn by Applicant
- ☐ Application Denied by District or SSCC
- ☐ Project SESC Plan Certification Expired

Date of Expiration ___

Authorized by ___
District Official

G0100300279

# E&S PERMIT

Permits

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

New Jersey Natural Resources Conservation Program

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 0[illegible]
Telephone: (201) 364-0786

August
~~July 1,~~ 1999

RECEIVED
AUG 05 1999

Consolidated Technologies, Inc.
1717 Swede Road, Suite 109
Blue Bell, Pennsylvania 19422

Re: Consolidated Dredged Materials Recycling Facility
One Linden Avenue, East, Block 1507, Lot 10C, Jersey City
HEPSCD File No. 99-H-1386
Plan Designer: EaerthRes Group, Inc,.
Plan dated: 7/16/99

Dear Madam/Sir:

The District has completed the review of the soil erosion and sediment control plan for the above referenced project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C. 2:90-1.1 et seq., promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, N.J.S.A. 4:24-39 et seq.). Accordingly, the plan has been Certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any land disturbance or construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone numbers of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or for failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners.

Please contact the District if you require assistance implementing the certified soil erosion and sediment control plan. This certification is valid for 3-1/2 years and is limited to the controls specified in this plan. It is not authorization to engage in the proposed land use unless such use has been previously approved by the municipality or other controlling agency.

Yours truly,

James Monkowski

James Monkowski
Chairman

c: Municipal Planning Board
Municipal Construction Official
Dist. CTI Operations

New Jersey Natural Resources Conservation Program

6/8/99

99-H-1386

Certified 8-5-99

# APPLICATION FOR SOIL EROSION AND SEDIMENT CONTROL PLAN CERTIFICATION

:losed soil erosion and sediment control plan and supporting information are submitted for certification pursuant to the Soil Erosion liment Control Act, Chapter 251, P.L. 1975 as amended (NJSA 4:24-39 et seq.). An application for certification of a soil erosion and it control plan shall include the items listed on the reverse side of this form.

| | | | |
|---|---|---|---|
| Project: Dredged Materials Recycling Facility | | Project Location: Municipality: Jersey City | |
| Street Address: One Linden Avenue, East | | Block: 1507 | Lot: 10C |
| Owner(s) Name: Consolidated Technologies, Inc. | | | Phone: (610)278-9678 |
| Owner(s) Address: 1717 Swede Road, Suite 109 | | City: Blue Bell | State: PA Zip: 19422 |
| Area of Project: 9 | Total Area of Land to be Disturbed: 6 | No. Dwelling or other Units: 0 | Fee: $ 1100 |
| Prepared by*: EarthRes Group, Inc. | | | |
| PO Box 468, Pipersville | State: PA | Zip: 18947 | Phone: (215) 766-1211 |

ineering related items of the Soil Erosion and Sediment Control Plan MUST be prepared by or under the direction of and be sealed by a ssional Engineer or Architect licensed in the State of New Jersey, in accordance with NJAC 13:27-6.1 et. seq.)

| | | | |
|---|---|---|---|
| Responsible During Construction: rk Talarico | | Job Supervisor: Mark Talarico | |
| 1717 Swede Road, Suite 109 | | Address: | |
| PA Zip: 19422 | Phone: (610) 278-9678 | State: Zip: | Phone: (201)395-0040 |

applicant hereby certifies that all soil erosion and sediment control measures are designed in accordance with current Standards for Soil ion and Sediment Control in New Jersey and will be installed in accordance with those Standards and the plan as approved by the Soil Con- ation District and agrees as follows:

To notify the District in writing at least 48 hours in advance of any land disturbance activity. Failure to provide such notification may result in additional inspection fees.

To notify the District upon completion of the Project. (Note: No certificate of occupancy can be granted until a report of compliance is issued by the District.

To maintain a copy of the certified plan on the project site during construction.

4. To allow District agents to go upon project lands for inspection.

5. That any conveyance of this project or portion thereof prior to its completion will transfer full responsibility for compliance with the certified plan to any subsequent owners.

6. To comply with all terms and conditions of this application and certified plan including payment of all fees prescribed by the district fee schedule hereby incorporated by reference.

applicant hereby acknowledges that structural measures contained in the Soil Erosion and Sediment Control Plan are reviewed for adequacy reduce offsite soil erosion and sedimentation and not for adequacy of structural design. The applicant shall retain full responsibility any damages which may result from any construction activity notwithstanding district certification of the subject soil erosion and sedi- t control plan. It is understood that approval of the plan submitted with this application shall be valid only for the duration of the tial project approval granted by the municipality. All municipal renewals of this project will require resubmission and approval by the trict. In no case shall this approval extend beyond three and one half years at which time resubmission and certification by the trict will be required.

Applicant Certification:

Mark Talarico [signature] 3/25/99
Signature Date

Mark Talarico
Applicant Name (Print)

of fee, plan and supporting documents is hereby edged:

Helen Banta [signature] 6-7-99
Signature of District Official Date

3. Plan determined complete:

Helen Banta [signature] 8-5-99
Signature of District Official Date

4. Plan certified, denied or other action as noted above.
Special Remarks:

Signature of District Official Date

If other than project owner, written authorization of owner must be attached.

CC 251 APG-1/82

G0100300282

# GENERAL AIR PERMIT

98-311-99
Air Permitting

**PERMIT RESPONSE FORM**

**New Jersey Department Of Environmental Protection**
**Environmental Regulation**
**Air Quality Permitting Program**
**P.O. Box 027**
**Trenton, NJ 08625-0027**

July 20, 1999

MARK TALARICO
PROJECT MANAGER
CONSOLIDATED TECHNOLOGIES INC
1717 SWEDE ST
BLUE BELL, PA 19422

RE: General Permit (Activity ID No.: GEN990001), DREDGE MATERIAL RECYCLING FACILITY (Facility ID No.: 12115), 1 LINDEN AVE E, Jersey City, Hudson County

Dear Sir/Madam:

The Department of Environmental Protection (Department) has received your registration for the above referenced General Permit (designated Solid Receiving and Storage).

The *Effective Date of Registration* is June 4, 1999. The operational authority under this General Permit will expire five (5) years from the effective date. For those facilities that receive a Title V Operating Permit while a General Permit is effective, the expiration date of the General Permit becomes that of the Operating Permit.

Six (6) months prior to the expiration of the operational authority under this General Permit, a renewal notification and form will be sent from the Department to the Permitee. For the operational authority to remain in effect, the Permitee must complete and return the Registration renewal form, with the appropriate fees, to the Department. For those facilities that receive a Title V Operating Permit, there is no need to renew the General Permit; renewal of the General Permit will occur when the Operating Permit is renewed.

This General Permit is issued under the authority of Chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct and operate the above referenced equipment, or equipment and control devices only in accordance with all provisions of the General Permit.

Sincerely,

[signature]

Louis Mikolajczyk, Chief
Bureau of New Source Review

# JERSEY CITY SITE PLAN

98-311-19
Permits.

**RESOLUTION OF THE PLANNING BOARD OF THE CITY OF JERSEY CITY**

**APPLICANT:** **CONSOLIDATED TECHNOLOGIES, INC.**

**FOR :** **PRELIMINARY SITE PLAN APPROVAL**
**FOOT OF LINDEN AVENUE**
**BLOCK 1507, LOT 10C**

**CASE NO. :** **P99-28**

WHEREAS, the applicant, CONSOLIDATED TECHNOLOGIES, INC. per Schumann, Hanlon, Doherty, McCrossin & Paolino (Brian C. Doherty, Esq., appearing) made application to the Planning Board of the City of Jersey City, County of Hudson and State of New Jersey, for a preliminary site plan approval to wit: Calendar No. P99-28 to construct a dredge material recycling facility at the foot of Linden Avenue, Lot 10C, Block 1507 in Jersey City, New Jersey.

WHEREAS, it appears that due notice of a hearing on the above said application before the Planning Board of the City of Jersey City, on August 17, 1999, at 5:30 p.m., was duly published as prescribed in the Zoning Ordinance of the City of Jersey City; and

WHEREAS, the applicant has submitted proof that it has complied with the applicable procedural requirements including the payment of fees and public notices; and

WHEREAS, the applicant and its witnesses having been sworn and all testimony having been formally heard for this application and no objectors appearing; and

WHEREAS, after consideration of the application and the testimony presented at the meeting, the Planning Board has made the following findings of fact:

RECEIVED
OCT 07 1999
RECEIVED

## FINDINGS OF FACT

1. The applicant is a Pennsylvania based corporation which develops technologies for the beneficial reuse of various waste materials including dredge materials from the New York/New Jersey harbor.

2. The applicant proposes to construct a dredge material recycling facility at the foot of Linden Avenue on property owned by Hugo Schnitzer Neu located on Block 1507, Lot 10C in Jersey City, New Jersey.

3. The applicant's operation is a permitted use under the Greenville Industrial Redevelopment Plan. The applicant's operation is also permitted under the landowner's waterfront permit and is subject to regulations of the Department of Environmental Protection. The applicant proposes to operate the facility on a twelve hour a day, six day a week schedule. The applicant plans to commence construction of the facility prior to November 1, 1999.

4. The planning staff has reviewed the plans of the applicant and recommends approval of this site plan application provided that the applicant complies with the recommendations of the Jersey City Municipal Utilities Authority regarding a proposed connection to handle sanitary sewer system at the Claremont Avenue Catch Basin.

**NOW, THEREFORE, BE IT RESOLVED** that the Planning Board of the City of Jersey City, County of Hudson and State of New Jersey, for the foregoing reasons as well as those stated on the record by the board members which are incorporated herein by reference, approves the within application for preliminary site plan at the foot of Linden Avenue, Block 1507, Lot 10C in accordance with the site plan presented to the Planning Board of the City of Jersey City. Final approval is conditioned upon the following:

1. That the applicant comply with sewage issues raised by the Jersey City Municipal Utilities Authority;
2. That the applicant comply with obtaining the necessary permits from the New Jersey Department of Environmental Protection;
3. That as required by the NJDEP, the applicant establish an air quality monitoring schedule with the New Jersey Bureau of Air Quality or the Jersey City Planning Board staff or both.

| | |
|---|---|
| SUBJECT: | PRELIMINARY SITE PLAN<br>CONSOLIDATED TECHNOLOGIES, INC.<br>FOOT OF LINDEN AVENUE<br>BLOCK 1507, LOT 10C |
| DATED: | AUGUST 17, 1999 |
| CASE NO.: | P99-28 |
| VOTE: | 6-0 |

| COMMISSIONER: | YES | NO | ABSTAIN | ABSENT |
|---|---|---|---|---|
| Jeffrey Kaplowitz, Acting Chairman | x | | | |
| Vincent Frank, Commissioner | x | | | |
| Melissa Holloway, Commissioner | x | | | |
| Scott Seale, Commissioner | x | | | |
| Rev. Rudolph McCullers, Commissioner | x | | | |
| Carmelo Sita, Commissioner | x | | | |

WILLIAM BROMIRSKI, VICE CHAIRMAN
JERSEY CITY PLANNING BOARD

ROBERT COTTER, Secretary
JERSEY CITY PLANNING BOARD

APPROVED AS TO LEGAL FORM:

WILLIAM J. NETCHERT, ESQ.

DATE OF MEMORIALIZATION: 9/28, 1999

# PREPARED FOR:

JERSEY CITY DEPARTMENT OF HOUSING
AND ECONOMIC DEVELOPMENT
DIVISION OF CITY PLANNING
JERSEY CITY, NEW JERSEY

SITE PLAN APPROVED

CHAIRMAN, PLANNING BOARD

SECRETARY, PLANNING BOARD

DATE 9/11/89

NJDEP TWA

RECEIVED MAR 03 2000

Permitting Treatment Works Approval

State of New Jersey

[Chris]tine Todd Whitman [Gov]ernor

Department of Environmental Protection

Robert C. Shinn, Jr. Commissioner

February 28, 2000

CONSOLIDATED TECH.
1717 SWEDE ROAD, SUITE109
BLUE BELL, PA 19422

RE: TREATMENT WORKS APPROVAL NO. 99-3155-4G
DREDGE PROCESSING, 1 LINDEN AVENUE
JERSEY CITY, NEW JERSEY

Gentlemen:

There is enclosed a permit issued to you pursuant to Title 58 of the Revised Statutes of New Jersey and in consideration of your application received on September 16, 1999. The approval of the treatment works referenced above is subject to the conditions as noted on the permit.

**Within thirty (30) days after completion of the project, two (2) executed copies of the WQM005 Certification of Approval Form, enclosed shall be submitted to the sewage treatment agency for their approval prior to operation.** Please note that for direct dischargers to surface and/or ground water, submission to the sewage treatment agency is not required. One executed copy shall be forwarded to:

Bureau of Administration and Management
Division of Water Quality, PO Box 425
Trenton, New Jersey 08625-0425

Failure to submit the certification within thirty (30) days after completion of the project may be grounds for revocation of the permit. Should partial operation be required prior to completion of the entire project, approval will be under the jurisdiction of the local Authority/Municipality. If you have any questions pertaining to this approval, please contact me at (609) 633-1208.

Sincerely,

Nick Horiates

Nick Horiates, Supervising Environmental Specialist
Bureau of Administration and Management
Municipal Finance and Construction Element

WFM317
99-3155-4G
Enclosure
c: Earth Res Group, Inc
Municipal Engineer - JERSEY CITY

New Jersey is an Equal Opportunity Employer
Recycled Paper

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

e New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, [illegible]able laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are [illegible] by the permittee upon acceptance of the permit.

| RMIT NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

iis permit grants permission to:

Construct & operate 5-21,000 gallon capacity settling tanks a sediment filter and 5-21,000 gallon capacity holding tanks for treatment of standing water from dredge barges scows at the Consolidated Tech. Dredge Material Processing facility.

According to plans identified as:
"Dredge Material Processing Facility, Jersey City, Hudson County, New Jersey", prepared by Earth Res Group, Inc., dated 01/11/98, unrevised, drawing no. 98-311-004.

and according to specifications entitled:
"Barge Dewatering Treatment System", signed and sealed by Matthew M. Seng, P.E., dated 01/19/00.

SPECIAL PROVISOS:

1. That the permittee shall conform to all effluent and monitoring requirements stipulated in the NJPDES Permit for this facility or any modification thereof, unless otherwise permitted by the Department.

2. That the operation of the works shall be under the supervision of a licensed operator on the first day of operation of the works and continually thereafter in accordance with N.J.S.A. 58:11-64 and amendments thereto. The operator shall meet the requirement for N-2 classification or equivalent, pursuant to the provisions of N.J.A.C. 7:10A-1.14.

Page # 1 -- permit is continued on next page

*Local Agency approval required prior to operation*

EXPIRATION DATE: This permit shall expire if construction is not initiated by

Approved by the Department of Environmental Protection

Date

FR-004
98

*(General Conditions are on Reverse Side*

G0100300292

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

: New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same applica... ...ble laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which a... ...by the permittee upon acceptance of the permit.

| RMIT NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

iis permit grants permission to:

3. That this permit is subject to the additional general conditions specified on Attachment A (Form WFR-004A), which is incorporated herein by reference, as part of this approval.

4. That the Department's review of this industrial treatment works has been limited to the administrative aspects of the application. For the technical aspects of the project, the Department has relied upon the certification by the N.J. Licensed Professional Engineer (named below) responsible for the design of the treatment works, stating:

   a. The proposed treatment works, as designed, will enable the facility to meet all applicable Federal, State and local effluent limitations, conditions and/or requirements;

   b. The proposed treatment works or contributing facility will not dilute any portion of its waste stream for the purpose of meeting any applicable NJPDES effluent limitation or condition;

   c. The permittee currently holds a valid final NJPDES permit, General permit authorization, or for indirect dischargers, the applicant is specifically exempted by the Department.

Name of Certifying P.E. - Matthew M. Seng, P.E.
Date of Certification - 08/20/1999 ********** License No. - 38697

Disposal of treated effluent into the Claremont Channel-Upper New York Bay, in accordance with NJPDES Permit No. NJ0134015 for this facility.

Page # 2 -- this is the final page

*Local Agency approval required prior to operation*

EXPIRATION DATE: This permit shall expire if construction is not initiated by 02/28/02

Approved by the Department of Environmental Protection

Eugene J. Chebra, P.E., Bureau Chief, BAM, MWA

02/28/00
Date

WFR-004
'98

*(General Conditions are on Reverse Sid*

G0100300293

## ATTACHMENT A

### ADDITIONAL CONDITIONS FOR GENERAL INDUSTRIAL TWAs

1. That the storage and/or disposal of any sludge or residue resulting from the operation of the treatment facility approved herein shall be in conformance with the applicable requirements and provisions of N.J.A.C. 7:14A-20 et seq. and/or N.J.A.C. 7:26:1-1 et seq.

2. That no sewage or industrial wastes shall bypass treatment except in conformance with the applicable NJPDES Permit and/or N.J.A.C. 7:14A-2.5, or other applicable regulatory requirement, and that all sewage or industrial wastes arriving at the treatment works to which the approval relates shall be treated by each and every process comprising said treatment works.

3. That no wastewater shall be treated by said works or portion thereof until a professional engineer licensed to practice in this State has certified that the project has been inspected under his/her supervision and constructed according to approved plans and specifications and that the works are adequate to meet all applicable Federal, Interstate and State effluent limitations. If any changes are made, "as-built" plans and specifications shall be submitted and certified by the professional engineer responsible.

4. That any change in discharge amount, characteristics or treatment which will result in the facility to become regulated pursuant to the criteria specified in N.J.A.C. 7:14A-21.8 shall not be initiated prior to the effective date of a NJPDES/SIU permit issued by the Department.

5. That for facilities which discharge directly into surface waters and/or ground waters of the State, the permittee shall conform to all effluent and monitoring requirement stipulated in the NJPDES Permit for this facility, or any modification thereof, unless otherwise permitted by the Department.

# CERTIFICATE OF OCCUPANCY

30 MONTGO Y STREET-SUITE 411
JERSEY CIT 07302
201-547-5055

# CERTIF ATE
## IDENTIFI ION

Control #: 6490
Permit #: 20000077

*Permits*

Block : 1507 Lot : 10.C

Work Site Location: FOOT OF LINDEN AVENU

Owner in Fee: Consolidated Technologies
Address: 1717, Swede Road
Blue Bell, PA 19422
Telephone: 610

Contractor: Consolidated Technologies
Address: 1717 Swede Road
Telephone: Blue Bell, PA 19422
610

Lic. No./ Bldrs. Reg.No.:
Social Security No.: Federal Emp. No.: 23-2897350

Home Warranty No:
Type of Warranty Plan: [ ] State [ ] Private:
Use Group: F-1
Maximum Live Load: 0
Construction Classification:
Maximum Occupancy Load:
Certificate Exp Date:
Description of Work/Use: Construct A Dredge Materials Processing Facility.
Construction Cost: $350,000.00

| Tax Collector Approval | Date |
|---|---|
| Water & Sewer Approval | Date |

[ X ] CERTIFICATE OF OCCUPANCY

This serves notice that said building or structure has been constructed in accordance with the New Jersey Uniform Construction Code and is approved for occupancy.

[ ] CERTIFICATE OF APPROVAL

This serves notice that the work completed has been constructed or installed in accordance with the New Jersey Uniform Construction Code and is approved. If the permit was issued for minor work, this certificate was based upon what was visible at the time of inspection.

[ ] TEMPORARY CERTIFICATE OF OCCUPANCY/COMPLIANCE

If this is a temporary Certificate of Occupancy or Compliance the following conditions must be met no later than or the owner will be subject to fine or order to vacate.

[ ] CERTIFICATE OF CLEARANCE-LEAD ABATEMENT 5:17

This serves notice that based on written certification, lead abatement was performed as per NJAC 5:17 to the following extent:

[ ] Total removal of lead-based paint hazards in scope of work
[ ] Partial or limited time period(_____ years); see file

[ ] CERTIFICATE OF CONTINUED OCCUPANCY

This serves notice that based on a general inspection of the visible parts of the building there are no imminent hazards and the building is approved for continued occupancy.

[ ] CERTIFICATE OF COMPLIANCE

This serves notice that said potentially hazardous equipment has been installed and/or maintained in accordance with the New Jersey Uniform Construction Code and is approved for use until________

*Michael Regan · 4-14-08*
MICHAEL J. REGAN
Construction Official

U.C.C 360 (rev. 3/96)

1 - APPLICANT 2 - OFFICE 3 - TAX ASSESSOR 4 - RECYCLING

Fee ~~xxxxx~~ 150.00
Paid [X] Check No ~~xxxx~~ 01469
Collected By [illegible]

# NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

## OFFICE OF DREDGING AND SEDIMENT TECHNOLOGY

## ACCEPTABLE USE DETERMINATION

State of New Jersey
Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

December 10, 2003

Mr. Steven F. O'Hara
Great Lakes Dredge & Dock Company
2122 York Road
Oak Brook, Illinois 60523-1981

RE: Acceptable Use Determination (AUD)
Contract Area 2A of the Port Jersey 41' Navigation Channel

Dear Mr. O'Hara:

This letter is forwarded in response to your request dated December 2, 2003, for an Acceptable Use Determination (AUD) to allow for the beneficial use of the 688,000 cubic yards ($yd^3$) of dredged material from Contract Area 2A of the Port Jersey 41' Navigation Channel at the F.D.P. Enterprises site in Secaucus N.J. The 688,000 $yd^3$ of dredged material will be first processed at the Clean Earth Dredging Technologies, Inc. (CEDTI) Claremont Channel Dredged Material Processing Facility in Jersey City, N.J. prior to trucking and placement at the F.D.P. Enterprises site. This 12/2/03 request is in response to the condition of the Federal Consistency/Water Quality Certificate issued on September 18, 2003, by the New Jersey Department of Environmental Protection (Department or NJDEP) that required the identification of the upland placement site for the non-HARS material once the bidding process for the contract had been completed.

The Department has reviewed the analytical data submitted by CEDTI in support of the AUD request for placement of this material at the F.D.P. Enterprises site. A review of the data indicates that the data meet the placement criteria for the F.D.P. site established by the September 24, 2003 Remedial Action Workplan Approval. Therefore the dredged material is in compliance with the conditions stated in the NJDEP's September 24, 2003 letter that established the conditions of fill acceptance at the F.D.P. Enterprises' Secaucus site.

Therefore, this letter shall serve as the Department's Acceptable Use Determination for the placement of approximately 688,000 $yd^3$ of material dredged from the Contract Area 2A of the Port Jersey 41' Navigation Channel at the F.D.P. site in New Jersey, subject to the following conditions:

1) The material shall be amended with the CEDTI proprietary mix (10%-25% added by weight) as approved in the AUD issued to the CEDTI on May 10, 1999. CEDTI shall comply with all conditions imposed in the WDP/AUD issued on May 10, 1999 for the dredged material processing facility.

2) The material shall be placed at the F.D.P. Enterprises site consistent with the Remedial Action Workplan approval dated September 24, 2003 and any amendments, changes or modifications thereto.

3) CEDTI shall comply with all conditions imposed in the NJDEP Water Quality Certificate (File No. 0906-92-0006.5) and Stream Encroachment Permit (File No. 0906-92-0006.6) issued for the F.D.P. Enterprises site on December 20, 2000 and July 20, 2001, respectively.

4) All trucks used to transport the processed dredged material to the F.D.P. Enterprises site shall be tarped during transit.

5) The US Army Corps of Engineers shall submit a modification request of the September 18, 2003 Federal Consistency/Water Quality Certificate to include the F.D.P. Enterprises site as the upland management and placement site for this 688,000 $yd^3$ of non-HARS material. All other terms and conditions of the September 18, 2003 Federal Consistency/Water Quality Certificate for the Contract Area 2A of the Port Jersey 41' Navigation Channel remain in full force and effect.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Richard DeWan for

Suzanne U. Dietrick,
Office of Dredging and Sediment Technology

C: Richard Tomer, Chief, Regulatory Branch, U.S. Army Corps of Engineers, NY District
Richard Gimello, Executive Director, Office of Maritime Resources
Steven Sands, CEDTI (via facsimile)
Gary Greulich, NJDEP, BNFO

Kaydee McGuckin
NYSDEC
Hunters Point Plaza
47-40 21st St.
Long Island City, NY 11101

APPENDIX 2

EIC ASSOCIATES DREDGE MATERIAL PROCESSING FACILITY PERMITS

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0714-05-0003.1 WFD 050001 | Application No. 0714-05-0003.1 WFD 050001 | |
| Issuance Date December 7, 2005 | Effective Date December 7, 2005 | Expiration Date December 7, 2010 |
| Name and Address of Applicant<br>148 Doremus Avenue, LLC<br>140 Mountain Avenue, Suite 303<br>Springfield, NJ 08540 | Name and Address of Owner<br><br>Same As Applicant | Name and Address of Operator<br><br>Same as applicant |
| Location of Activity/Facility *(Street Address)*<br>148 Doremus Avenue, LLC<br>148-182 Doremus Avenue<br>Newark, Essex County<br>Lots: 12 and 14 Block: 5011 | Issuing Division<br><br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 58:10A<br>NJSA 12:5-3 |
| Type of Permit: Waterfront Development Permit | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

Redevelop the former Hess Terminal at 148 Doremus Avenue for the operation of a dredged meterial processing facility. This shall consist of the construction of a 30' X 96' pre-screening pier #1 that will be used to pre-screen the dredged material, modifying the existing 30' X 30' pier to accommodate a 30' X 96' pier #2 where the screened dredged material will removed from the barge to be processed onsite via two removable conveyors to the onsite pugmill plant, a 75' X 12.5' access road supported on piles to be used for maintenance purposes. The processed material will placed in one of three curing areas each encompassing approximately 5,000 cubic yards using existing masonry walls which will be redesigned and repaired. Material will be held in the curing areas for approximately 1-3 days before being loaded onto trucks to be transported off-site for beneficial use. Other development includes a 35' X 50' truck wheel washing basin and crushed stone cleaning pad and a 55' X 130' detention basin and vortechnic unit to treat and discharge stormwater generated onsite.

The dredged material will be transported to the facility by barge or scow by the dredger. The dredged material is off-loaded at Pier #2 using hydraulic material handlers with a clamshell bucket. The material will be fed into a hopper, which guides it into finger-deck vibratory screens in order to remove oversize (>2 inches in diameter) debris. The material is then conveyed via conveyors and twin screws into the pugmill plant for amendment. The material is then elevator-lifted to a pre-mixing chamber where pozzolonic regents will be fed into the system from a dry additive silo. The dredged materials and reagents drop to the pugmill where mixing takes place. After the material is thoroughly mixed, it will be discharged to a 10 CY surge hopper and then placed into 40-ton trucks for transport to one of three on-site curing cells. It is estimated that the facility will process on average approximately 5,000 cubic yards of treated dredged material per day.

The project is authorized under and in compliance with the following Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing Industry Use (7:7E-7.7), Port Use (7:7E-7.9), Coastal Engineering (7:7E-7.11), Dredged Material Placement on Land (7:7E-7.12), Stormwater Management (7:7E-8.7), and Traffic (7:7E-8.14).

Prepared By: Jeffrey M Thein 12/7/05
Jeffrey M. Thein Date
(See Page 6 of 8 pages for Chief's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ________ Title ________ |
| | Signature ________ Date ________ |

**The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

# APPENDIX 3

## KEARNY KOPPERS SEABOARD DREDGE MATERIAL PROCESSING FACILITY PERMITS

FROM :CASCINO ENGINEERING FAX NO. :9738820511 Jul. 09 2004 10:39AM P3

JUL 09 2004 08:21 FR LAND USE REGULATION 609 292 8115 TO 919738820511 P.02/05

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION
*(See Issuing Division below)*
PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0907-02-0003.3 FHA040001 | Application No. | |
| Issuance Date JUL 0 8 2004 | Effective Date JUL 0 8 2004 | Expiration Date JUL 0 8 2009 |
| Name and Address of Applicant<br>Great Lakes Dredge & Dock Co.<br>2122 York Road<br>Oak Brook, IL 60523 | Name and Address of Owner | Name and Address of Operator |
| Location of Activity/Facility *(Street Address)*<br>Lot: 70 (part)<br>Block: 287<br>Town of Kearny, Hudson County | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50, et. seq. |
| Type of Permit Stream Encroachment | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

Place a Pug Mill and associated conveyors on an existing concrete pad in connection with dredge materials processing facility, located 200 feet northerly of Conrail crossing Hackensack River, within Lot No. 70 (part) of Block No. 287, in the Town of Kearny, Hudson County, New Jersey.

Prepared By: Nabil Andrews
Nabil Andrews

(See page 4 for Bureau Manager's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ________ Title ________ |
| | Signature ________ Title ________ |

JUL-09-2004 09:31 9738820511 97% P.03

G0100300303