**Terms And Conditions**

**This permit is subject to the following terms and conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way any action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

9. Limit and Extent of Approval

   a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

   b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with the *Standards for Soil Erosion and Sediment Control in New Jersey* (obtainable from local Soil Conservation District offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed **permit acceptance form** has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed **construction notice** shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed **completion report** shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

**Terms And Conditions**

days after completion of the herein approved activities.

12. All excavated material and dredged spoils must be disposed of in a lawful manner outside of any regulated flood plain, open water, freshwater wetlands or adjacent transition areas, and in such a way as to not interfere with the positive drainage of the receiving area.

13. Any future development of this site will require a new Stream Encroachment Permit.

14. Prior to operation of the facility, the permittee shall receive approval of an Acceptable Use Determination submitted to the Site Remediation Program, Office of Dredging and Sediment Technology. Please Cotact Ms. Suzanne Dietrick Site Remediation Program P.O. Box 028 Trenton, NJ 08625.

15. Prior to any land disturbance on the site, the permittee shall submit a plan and receive approval of the same from Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Please contact Mr. George Nicholas Site Remediation Program P.O. Box 413 Trenton, NJ 08625.

16. Care shall be taken by the permittee during construction and operation that no herein permitted activity shall adversely affect existing remedial components, especially the slurry and sheet pile wall in the eastern area of the site.

17. Issuance of this permit is in no way construed as a relinquishment by the State of New Jersey of any tidelands right, title or interest in the subject property or in any land surrounding same.

18. The drawings hereby approved are three (3) sheets prepared by George D. Cascinu P.E.-P.P., dated June 2, 2004, last revised July 7, 2004, unless otherwise noted, entitled:

"PROPOSED PUG MILL FACILITY BLOCK 287, LOT 70 (PART) KEARNY, HUDSON COUNTY, NJ."

"SITE PLAN", sheet no. 2 of 4,

"GRADING AND DRAINAGE PLAN", sheet no. 3 of 4, dated May 27, 2004,

"DETAIL PLAN", sheet no. 4 of 4, dated May 27, 2004.

Richard C. Reilly
for Robert B. Piel, Jr., Manager
Bureau of Inland Regulation

7/8/2004
Date

# State of New Jersey

Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
*Commissioner*

**Environmental Regulation**
**Division of Air Quality**
**Air Quality Permitting Element**
**P.O.Box 027**
**Trenton, New Jersey 08625-0027**

## Air Pollution Control Pre-Construction Permit

**Permit Activity ID Number:** PCP040001
**Approval Date:** July 8th, 2004

**Facility ID Number:** 12539
**Expiration Date:** July 7th, 2009

| Mailing Address | Plant Location |
|---|---|
| Attention: Mr. Steven O'Hara | **GREAT LAKES DREDGE & DOCK CO** |
| Great Lakes Dredge & Dock Co | **NEAR FISH HOUSE RD** |
| 2122 York Rd | **Kearny Town** |
| Oak Brook, IL 60523 | **Hudson County, New Jersey** |

Dear Mr.. O'Hara:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information provided, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supersede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section D. *The permittee may be required to seek additional approvals from the Department, and perform further tests and/or air modeling, to confirm that there is no release of mercury, PCBs and/or any other air contaminants to the ambient air, that would result from the application of the stabilized dredge sediment, at its site of use.*

The Department hereby issues this permit and certificate under the authority of chapter 106, P.L. 1967(N.J.S.A 26:2C-9.2). You may construct, reconstruct, install, or modify the above referenced equipment and/or control apparatus consistent with the approval.

In addition to the facility specific requirements listed in this permit, the facility must comply with all applicable rules and requirements as well as the information contained in the approved application. The facility must also comply with any applicable requirements of the NJAC 7:27-8.1 et.seq. and other state rules summarized in the General Provisions for Pre-Construction Permits. The general provisions for pre-construction permits can be found at www.state.nj.us/dep/aqpp/applying.html. The facility should take note, however, that this website may not always contain the most up-to-date version of these provisions. It remains the facility's responsibility to keep apprised of and comply with all applicable regulations and changes thereto. A copy of current regulations can be obtained from the Department's Website at www.state.nj.us/dep/aqm/, BNA Library, or by calling or writing to your Regional Enforcement Office.

This Air Pollution Control Pre-Construction Permit and Certificate to Operate is being issued as a 5-year operating certificate.

There are a total of 96 pages in this permit including this cover page.

We are also including diskette with an electronic file. This diskette includes the inventories and permit requirements listed in the enclosed hard copy of the Air Pollution Control Permit. Upon importing this information into your Personal Computer with RADIUS software, you will have up to date information in the RADIUS format. This electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file. We encourage you to use the most recent RADIUS version. The RADIUS software, instruction, and help are available at the Department's website at www.state.nj.us/dep/aqpp .

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Preconstruction Permits at (609) 292-2137.

Approved by:

Lou Mikolajczyk, Chief
Bureau of Preconstruction Permits

C: file

State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

July 7, 2004

Mr. Steven F. O'Hara
Vice President
Great Lakes Dredge and Dock Company
2122 York Road
Oak Brook, Illinois 60523

RE: Acceptable Use Determination for Dredged Material Processing Facility
Koppers Seaboard Site
City of Kearny, Hudson County

Dear Mr. O'Hara:

The NJDEP, Office of Dredging and Sediment Technology (Office) is in receipt of your letter, dated June 11, 2004, June 29, 2004 and July 6, 2004, in which an Acceptable Use Determination (AUD) application was submitted by Great Lakes Dredge and Dock Company for the operation of a dredged material off-loading and processing facility on the pier area at the Koppers Seaboard site.

The Department hereby issues an Acceptable Use Determination approval for the Koppers Seaboard Processing Facility provided the following conditions are met:

**ACCEPTABLE USE DETERMINATION**

1. This AUD authorizes the processing and off-loading of dredged material at the subject facility provided all conditions included herein are met. No dredged material may be processed at this site unless that dredged material has received a Waterfront Development Permit and/or an Acceptable Use Determination, or a written waiver from these requirements.

2. No dredged material shall be processed at this facility unless an all required permits and approvals have been issued for the placement site if it located in the State of New Jersey.

3. Any dredged material from New Jersey that is processed at the Koppers Seaboard facility that is the placed at a location out of state shall receive written authorization from the applicable state agency for transport and use at that out of state location.

4. All dredged material processed at the Koppers Seaboard facility shall be tested in accordance with the attached protocol entitled "Protocol for the Testing of Processed Dredged Material for Use as Structural Fill". Additional testing may be required to meet other NJDEP regulatory requirements for placement of the material at a specific location.

5. This AUD only authorizes 6-12% Portland Cement as the additive used in the processing of dredged material at the facility. If another additive is to be used at the facility, Great Lakes shall submit a request to amend this AUD and receive written approval from the Department prior to



*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

its use at the facility. That application must include all relevant information found in the Department's dredging technical manual, and any subsequent amendments thereto including but not limited to: the source of additives, Material Data Safety Sheets, etc.

6. Any dredged processed at this facility shall be blended with the approved additive at the ratio used during the analytical testing of dredged material for a specific project.

Operating Conditions

7. Great Lakes shall comply with all conditions specified in the Air Pollution Control Pre-Construction Permit and Stream Encroachment Permit issued for the Koppers Seaboard processing facility.

8. There shall be no discharge of decant water at this site without prior approval of a NJPDES Discharge to Surface Water Permit (DSW) authorizing such discharge. Dredged material shall be dewatered at the dredging site.

9. Any debris removed during the dredging operation shall be loaded onto a deck scow for transport and off-loading at the Great Lakes Staten Island Yard. Debris removed prior to the processing of the material at the Koppers Seaboard site shall be placed in roll-off containers. All debris removed during a dredging project shall be disposed of at an approved construction material disposal facility.

10. Great Lakes shall install a spill plate between the dredge scow and the pier area. The spill plate shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

11. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and re-introduced in the processing operation.

12. Prior to the placement of processed dredged material in the temporary stockpile area, Great Lakes shall submit a plan to the Gary Lipsius of the Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Processed dredged material shall not be stored on site other than in the temporary storage area adjacent to the off-loading crane. Processed dredged material shall not be stored in the temporary storage area for than 96 hours.

13. The temporary storage area shall be maintained in such a manner to prevent air borne release of the material.

14. All trucks used to transport processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

15. The dredged material processing facility shall maintain daily records noting the transportation vehicle identification number (truck and scow), material quantity, source and destination for all dredged material and admixtures entering and leaving the facility. Great Lakes shall submit a semi-annual report that details this information to the Department.

16. Great Lakes shall comply with the O&M plan dated July 2, 2004, and any amendments thereto. The plan shall be kept on site and all employees involved in the dredged material processing facility shall be briefed on the contents of the plan.

17. Any major accidental release of dredged material, admixture or processed dredged material in non-processing areas (surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged, estimated quantity, nature of the discharge, location of the discharge, any action being taken to mitigate the discharge and any other information the Department may request at the time of notification.

18. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any violation of any related permit and their conditions and / or failure to comply with the Department's Acceptable Use Criteria for the end use site.

If you have any questions regarding this letter, please feel free to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology
Site Remediation and Waste Management

C: Michael Millard, NY District
Bryce Wisemiller, NY District
Angelo Trollo, NY District
Gary Lipsius, NJDEP, Site Remediation Program
Scott Douglas, NJDOT, NJMR

Mr. Mitchell Brourman, Project Manager
Beazer East Inc.
c/o Three Rivers Management Company
One Oxford Centre, Suite 3000
Pittsburgh, PA 15219

Mr. Kevin A. Conti
DeCotiis, Fitzpatrick, Cole and Wisler
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

**PROTOCOL FOR THE TESTING OF PROCESSED DREDGED MATERIAL FOR USE AS STRUCTURAL FILL**

Revision (11/99)

The specific analytes which must be tested for are listed in the tables in Appendices B, Attachment 1 of the NJDEP technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested include PCB arochlors and dioxin/furan congeners.

Laboratories selected to perform required analyses must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the Office of Quality Assurance (Phone: (609) 292-3950).

Since the dredged material will be treated with other materials that will alter its physical and chemical composition, additional tests must be performed on the end product. The required tests are as follows:

- Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each raw sediment composite. Any water which separates from the raw sediment sample during transport/storage (i.e., porewater) must be re-mixed with the solid components of the sediments prior to forming the composite samples; this porewater must not be decanted from the sediment sample.

- For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of proposed additive with a pre-weighed sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive to composite sediment sample, by weight, will be recorded. The dredged material product to be tested will be formed using the "recipe" (proportions of dredged material and proposed additive) which replicates the actual dredged material product to be used as structural fill on the site. The dredged material product will be pulverized, and each composite sample will be subjected to bulk sediment analyses.

- The dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing as follows:

**Procedure**

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

2. Measure an aliquot of 100 grams of each dredged material product composite sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the

synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples.

3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.

4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24-hour extraction period. (All pH measurements will be taken on the bottle extraction only).

5. Employ the extraction fluid separation procedure described in EPA Method 1311 (TCLP).

6. Analyze the extract for the target analytes identified in the Department's dredging technical manual. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.

7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.

8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.

A final report, including the results of the raw sediment and dredged material product testing, will be submitted to the Department in a series of nine (9) summary data tables:

- Raw sediment bulk sediment chemistry
- Dredged material product bulk sediment chemistry
- Dredged material product MEP results

New Jersey Natural Resources Conservation Program

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

A-10

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 07006
Telephone: (973) 364-0786
Fax: (973) 364-0784

September 2, 2004

Hudson County Improvement Authority
574 Summit Avenue 54th. Floor
Jersey City,NJ 07306

Re: Kopper's Pug Mill Block 287 Lot 70 (part)
Near Fishhouse Road, Kearny, NJ
HEP File No; 204-H-1926 Plan dtd: 8-2-2004

Dear Applicant:

The District has completed the review of the soil erosion and sediment control plan for the above referenced project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C.290-1.1 et. eq., promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, J.J.S.A.4-24-39 et seq.). Accordingly, the plan has been Certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any of construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone numbers of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or for failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners. Please contact the District if you require assistance implementing the certified soil erosion and sediment control plan. This certification is valid for 3-1/2 years and is limited to the controls specified in this plan. It is not authorized to engage in proposed land use unless such use has been previously approved by the municipality or other controlling agency.

Yours truly,
William Lebeda

William Lebeda.
Supervisor

New Jersey Natural Resources Conservation Program

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 6
Telephone: (973) 364-0786
Fax: (973) 364-0784

August 10, 2004

Mr. Norman Guerra, Executive Director
Hudson County Improvement Authority
547 Summit Avenue, 5th Floor
Jersey City, NJ 07306

Re: Soil Erosion and Sediment Control Plan for Koppper's Pug Mill Facility Only
Fish House Road, Kearny, N.J. Block: 287, Part of Lot: 70
District File No. 204-H-1926

Dear Mr. Guerra,

The District has received a revised drawing sheet one of one, Issue 2, dated 8/2/2004. It reflects all the changes specified in the District's Conditional Certification letter of July 12, 2004 The Plan review was completed and recommended for certification at the District Board Meeting scheduled for September 2, 2004

This letter will serve as a Temporary Certification to allow work to commence at the above project site prior to the issuance of the Certification provided all other permits have been obtained.

Please remind the agent acting on behalf of the owner they must fill out a District Start Work Notice and file it with the district at least 48 hours prior to start of the actual starting date. Reference the Districts file number in all correspondence.

Sincerely,

William Lebeda

William Lebeda, Supervisor

C: Mr. Michael Martello, Construction Official
Mr. Art Fletcher, Great Lakes Dredge & Dock
Ms. Sharon A. Mascaro, P. E., Chief Engineer, NJMC
Ms. Ileana Kafrouni, P.P., AICP, Director of land-Use Management, NJMC
Ms. George D. Cascino, P.E., P.P.

Town of Kearny
410 KEARNY AVENUE
KEARNY, NJ 07032
201 - 955-7880
www.kearnyusa.com

Permit Number: 20050748
Permit Date: 06/27/2005
Update Number:
Control Number: 31032
Application Date: 06/21/2005

# CONSTRUCTION PERMIT

## IDENTIFICATION

### OWNER/PROPERTY DETAILS

Block : 287 Lot : 70 Qualification Code: HM

| | | | |
|---|---|---|---|
| Work Site Location: | NWK/JC TPKE KEARNY | Contractor: | Williams Scotsman, Inc. |
| Owner In Fee: | H C IMPROVEMENT AUTHORITY | Address: | 170 Central Avenue<br>South Kearny NJ 07032 |
| Address: | 2 JOURNAL SQ PL-8TH FL<br>JERSEY CITY NJ 07306 | Telephone: | (973) - 589-1234 |
| Telephone: | 0 - | Lic. No. / Bldrs. Reg. No.: | |
| Use Group(s): | U | Federal Emp. No.: | 52-0665774 |

is hereby granted permission to perform the following work :

[ X ]BUILDING [ X ]PLUMBING [ ]DEMOLITION
[ X ]ELECTRICAL [ ]FIRE PROTECTION [ ]OTHER
[ ]ELEVATOR DEVICES [ ]MECHANICAL
[ ]ASBESTOS ABATEMENT [ ]LEAD HAZARD ABATEMENT
(Subchapter 8 only)

| PAYMENTS | (Office Use Only) |
|---|---|
| Building | $100.00 |
| Electrical | $899.00 |
| Plumbing | $190.00 |
| Fire Protection | |
| Elevator Devices | |
| Mechanical | |
| VolFee (DCA) | |
| AltFee (DCA) | $254.00 |
| Other Fees | |
| CO Fee | $300.00 |
| CCO Fee | |
| Minimum Fee | |
| Total | $1,743.00 |
| All Fees Waived: | No |

CRIPTION OF WORK:

Installation of (2) office trailers on Koppers Industrial Site.

ESTIMATED COST OF WORK:

| | |
|---|---|
| Cost of Construction: | 0.00 |
| Cost of Rehabilitation: | 188,000.00 |
| Cost of Demolition: | 0.00 |
| Total Cost: | $188,000.00 |

| | |
|---|---|
| **Amount to be Paid:** | **$1,743.00** |
| Check Number: | 305218 |
| Check amount: | $1,743.00 |

NOTE: If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

Michael J. Martello 6/27/05
Construction Official Date

| | |
|---|---|
| Collected by: | cn |
| Receipt No: | |
| Total Cash Amount | |
| Total Check Amount | $1,743.00 |
| Total CC Amount | |
| Grand Total | $1,743.00 |

U.C.C. F170 (rev. 1/04)

G0100300316

# REQUIRED INSPECTIONS

Construction work must be inspected in accordance with the State Uniform Construction Code Regulations N.J.A.C. 5:23-2.18. This agency will carry out such periodic inspections during the progress of work as are necessary to insure that work installed conforms with the requirements of the Uniform Construction Code.

The owner or other responsible person in charge of work must notify this agency when work is ready for any required inspections specified below. Request for inspections must be made at least 24 hours prior to the time inspection is desired. Inspections will be performed within 3 business days of the time in which they are requested. The work must not proceed in a manner which will preclude the inspection until it has been made and approval given.

☐ Required inspections for all subcodes for one- and two-family dwellings are as follows:

1. The bottom of the footing trenches before placement of footings, except that in the case of pile foundations, inspections shall be made in accordance with the requirements of the building subcode.
2. Foundations and all walls up to grade level prior to back filling.
3. Utility service, including septic.
4. All structural framing, connections, wall and roof sheathing and installation; electrical rough wiring, panel and service installation; rough plumbing. The framing inspection shall take place after the rough electrical and plumbing inspections and after the installation of the heating, ventilation and/or air conditioning duct system. The insulation inspection shall be performed after all other subcode rough inspections and prior to the installation of any interior finish material.

☐ Additional required inspections for all subcodes of construction, for other then one- and two-family dwellings, are fire suppression systems, heat producing devices and Barrier Free subcode accessibility, if applicable.

☐ Required special inspections. The applicant by accepting the permit will be deemed to have consented to these requirements:

☐ A final inspection is required for each applicable subcode area before a final Certificate of Occupancy or Approval may be issued. The final inspections include the installation of all interior and exterior finish materials, sealing of exterior joints, mechanical system and other required equipment; electrical wiring, devices and fixtures; plumbing pipes, trim and fixtures; tests required by any provision of the adopted subcodes, Barrier Free accessibility, if applicable; and verification of compliance with NJAC 5:23-3.5, "Posting structures".

☐ A complete copy of released plans must be kept on the job site.

APPENDIX 4

DON JON MARINE DREDGE MATERIAL PROCESSING FACILITY PERMITS

5 Jacke
O. Vnuled
COUT P6
MASTR FILE

State of New Jersey CONFIDENTIAL

J. McGreevey
Governor

Department of Environmental Protection

Bradley M. Campbell
Commissioner

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

March 26, 2002

Mr. Kenneth L. Woodruff
Kenneth L. Woodruff & Associates
182 Walton Drive, P. O. Box 42
Morrisville, Pennsylvania 19067-0042

RE: Waterfront Development Permit/Water Quality Certificate Modification
Permit No: 0714-98-0002.1
Project: DonJon Marine / Dredged Material Processing Facility
Location: Port Newark Berths 20 & 22

Dear Mr. Woodruff:

Enclosed, please find the modified Waterfront Development Permit/Water Quality Certificate 0714-98-0002.1 for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. Please be advised that conditions in the permit have been modified as necessary to reflect the changes proposed in your modification application.

This approval is valid for five years from the original effective date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures
C: Richard Gimello, Executive Director, Office of Maritime Resources
Lee W. Zimmerman, Senior Corporate Counsel, SK Services (East), L.C.
Steven Dorrler, Port Authority of NY and NJ

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0714-98-0002.1 | Application No. 0714-98-0002.1 | |
| Issuance Date March 26, 2001 | Effective Date May 14, 1998 | Expiration Date May 14, 2003 |
| Name and Address of Applicant<br>DonJon Marine<br>1250 Liberty Avenue<br>Hillside, New Jersey 07205 | Name and Address of Owner<br>Port Authority of NY &NJ<br>260 Kellogg Street<br>Port Newark, NJ 07114 | Name and Address of Operator<br>DonJon Marine<br>1250 Liberty Avenue<br>Hillside, NJ 07205 |
| Location of Activity/Facility *(Street Address)*<br>Algiers St. Port Newark<br>Berths 20 & 22<br>Lot n/a Block n/a | Issuing Division<br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 12:5-3<br>NJSA 58:10A |
| Type of Permit Waterfront Development<br>Water Quality Certificate / AUD | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

Construct and operate a dredged material processing facility located at Port Newark berths 20 and 22. Construction authorized by this permit includes a stormwater containment, collection and storage facility, additive storage blimps, administrative offices and infrastructure as shown on the approved drawings. Dredged material will be brought to the site by barge, sifted to remove large debris, amended with Portland cement in the barge and transported to an approved beneficial use site by barge or to an approved off-loading facility for terrestrial transport. This authorization includes the Department's Acceptable Use Determination, subject to the conditions and limitations expressed herein.

**The approved plans are in 1 sheet titled, "PLOT PLAN DREDGE MAT'L PROCESS BERTHS 20/22 – PORT NEWK FOR METAL MGMT.NE/DON JON MARINE," dated February 8, 2002, last revised March 5, 2002, and prepared by B-V Associates.**

This permit is authorized under and in compliance with the Rules on Coastal Zone Management governing: Navigation Channels (7:7E-3.7), Ports (7:7E-3.11), Dredged Material Disposal on Land (7:7E-7.12), Water Quality (7:7E-8.4) and Stormwater Management (7:7E-8.7).

Prepared By: [signature]
Lawrence J Baier

(See page 5 for Chief's signature.)

| | |
|---|---|
| Revised Date | Approved by the Department of Environmental Protection<br>Name (Print or Type) ____________ Title ____________<br>Signature ____________ Date ____________ |

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

NOV-12-2003 16:09 19083535682 98% P.03

G0100300320

State of New Jersey
Department of Environmental Protection

E. McGreevey
Governor

Bradley M. Campbell
Commissioner

# Air Pollution Control Pre-Construction Permit

| | | | |
|---|---|---|---|
| **Permit Activity ID Number:** | PCP020002 | **Facility ID Number:** | 07796 |
| **Approval Date:** | September 19th, 2002 | **Expiration Date:** | September 18th, 2007 |

| Mailing Address | Plant Location |
|---|---|
| Attention: Ms. Kerri K. Mullins<br>DonJon Marine Co., Inc.<br>1250 Liberty Avenue<br>Hillside, New Jersey 07205 | DONJON MARINA CO INC<br>140 MARSH ST<br>Newark<br>Essex County, New Jersey |

Dear Ms. Mullins:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information available, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supercede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section B, which also includes the "General Provisions" under the subject item "FC".

This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate is being issued authorizing DonJon Marine Co., Inc. to operate for 1,500 (one thousand five hundred) hours. If the source is to continue to operate past the 1,500-hours, DonJon Marine Co., Inc. ("the permittee") must submit an application for a compliance plan change pursuant to N.J.A.C. 7:27-8.19. The application must include any information required in this permit, particularly as outlined in Section E, under FC, Reference No. 6 of the conditions of this permit.

The Department will not issue a 5-year Certificate to Operate until and unless the applicant demonstrates compliance with the Conditions of Approval set forth in Section E. This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate to Operate may be revoked pursuant to N.J.A.C. 7:27-8.16 should any of the provisions of that regulation become applicable.

There are a total of 61 pages in this permit including this cover page. An electronic file version of this permit will be e-mailed to you. The electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file.

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Air Quality Engineering at (609) 292-2137.

Approved By:

Iclal Atay, Ph. D., Chief
Bureau of Air Quality Engineering

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

NOV-12-2003 16:14 19083535682 97%

G0100300321


OVERALL SITE PLAN B
DETAIL 1
TRACK CURB & TEMP PLUG
PUBLIC BERTH
BERTH 31
ASPHALT
PLAN
SECTION
TYPE E PRE-CAST
CATCH BASIN
(EXISTING)
DETAIL 2
LEGEND
REFERENCE DRAWINGS
C-V ASSOCIATES
DREDGE MATERIALS

# APPENDIX 5

## FTP INTERMODAL CONTAINER FACILITY PERMITS AND APPROVALS

**New Jersey Meadowla[nd]s Commission**
1 DeKorte Park Plaza Lyndhurst, NJ 07071 Phone: 201-460-1700 Fax: 201-372-0161
www.meadowlands.state.nj.us

# CONDITIONAL ZONING CERTIFICATE

Date Issued: March 28, 2003 File Number: 01-552 File Name: FDP/INTERMODAL CONTAINER FACIL

| SUBJECT PROPERTY | OWNER INFORMATION | APPLICANT/CONTACT INFORMATION |
|---|---|---|
| Block 1000 Lot 1 | Name Frank Folise | Applicant Frank Folise |
| Address SECAUCUS RD | Company F.D.P. Enterprises | Company F.D.P. Enterprises |
| Municipality City of Jersey City | Address 2200 Secaucus Rd. | Address 2200 Secaucus Rd. |
| | City/State North Bergen, N.J. | City/State North Bergen, N.J. |
| | Zip 07047 Phone (201) 348-6300 | Zip 07047 Phone (201) 348-6300 |

- ☒ New Building
- ☐ Additions
- ☐ Tanks
- ☐ Fences
- ☐ Recycling Areas
- ☐ Antenna
- ☐ Towers
- ☒ Site Improvements
- ☐ Interior Alteration Related to Use Change
- ☒ Fill Stockpile

**DESCRIPTION OF WORK**

This Office has recently completed its review of your zoning certificate application and related plans for a 4,536 SF gatehouse, 80 FT diameter salt dome and associated site improvements, including fill/stockpile operations, located on Block 1000, Lots 1, 6, 12, Block 1001, Lot 1, Block 1002, Lot 1, and Block 1050, Lot 1.

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

See Attachment A for conditions of approval.

This letter shall serve as your Conditional Zoning Certificate, designated CZC-01-552, and shall be valid for a period of one year.

**THIS IS NOT AN APPROVAL TO START CONSTRUCTION.** Applications must be made to the City of Jersey City for a building permit.

Please find enclosed a copy of the approved plan(s) as follows:

See Attachment B for a list of approved plans.

March 28, 2003

The applicant is hereby advised of his responsibility to investigate and obtain all federal, state and local permits which may pertain to his proposal or project. The New Jersey Meadowlands Commission will not be held liable for any damage which may result from the applicant's failure to obtain the approvals from all respective agencies having jurisdiction. This Office must receive copies of all federal, state, and local permits which may pertain to the proposal before it will issue a Certificate of Completion. If this file is related to the construction of new buildings and additions, please find enclosed a partially completed Elevation Certificate which must be completed by a Professional Land Surveyor and returned to this Office together with a signed and sealed as-built plan before a Certificate of Completion is issued.

Any person who claims to be aggrieved by this decision may request an appeal pursuant to N.J.A.C. 19:4-6.25(b). A written request for such an appeal must be filed, by certified mail, with the Office of the Chief Engineer within fifteen (15) days of the date of this decision. The request for an appeal shall specify the grounds therefore. Upon grant of the request for an appeal, the Executive Director or his designee shall transmit the matter to the Office of Administrative Law for a hearing.

If there are any questions regarding this approval, please contact Sharon A. Mascaro of this Office at (201) 460-4689.

If you should have any questions regarding the building permit process, please contact Ralph Venturini of this Office at (201) 460-4639.

RECOMMENDED BY: [signature]
*Sharon A. Mascaro, P.E.*
*Assistant Chief Engineer*

APPROVED BY: [signature]
*Sara J. Sundell, P.E., P.P.*
*Acting Chief Engineer*

cc: Michael Regan, Jersey City Construction Official
Andrew Graybush, Hudson-Essex-Passaic Soil Conservation District
Kevin Coakley, Esq.
Steven C. Sands, Clean Earth Dredging Technologies, Inc.
Robert Romano, Ernst, Ernst & Lissenden
HMMC

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

General conditions:
1. The applicant shall submit a response to the traffic report review prepared by Birdsall Engineering, Inc. dated 3/18/03, within 45 days of the date of this conditional zoning certificate, including any revisions to the plans, acceptable to the NJMC, resulting from the resolution of items in the review.
2. Under this approval, stacking of containers more than two (2) high shall not be permitted.
3. The height of the proposed fence falls under the jurisdiction of the US Customs Service for a bonded warehouse operation. If the use of the facility is changed to a use not requiring US Customs Service approval, then the fence height shall be lowered to a maximum of 8 feet including any barbed wire, in accordance with N.J.A.C. 19:4-6.18(m).

Fill/stockpile permit conditions:
1. The fill/stockpile operation shall be conducted in accordance with the approved site plan, the "Supplemental Information" prepared by Clean Earth Dredging Technologies, Inc. dated 3/17/03, and the engineering report.
2. The site shall be secured/monitored so as to prevent random dumping or unauthorized access.
3. The filled area shall not be used for any purpose other than that which is shown on the approved site plan.
4. Monthly monitoring reports shall be submitted describing the progress of the fill/stockpile operation.
5. Application for acceptance of fill material categorized as "Other Fill Material" shall be made in writing to the NJMC, a minimum of ten (10 ) days prior to proposed delivery of the material. Approval of material shall be at the sole discretion of the NJMC.
6. Upon completion of the fill operation, the site shall be cleared of all equipment and materials.
7. The designated responsible person in charge shall provide full time supervision of the fill/stockpile operation. Upon completion of the operation, both the responsible person in charge and the professional engineer preparing the site plan, shall certify that the fill/stockpile operation was conducted in accordance with the approved plan.
8. Soil Erosion and Sediment Control Plan approval by the County Soil Conservation District shall be submitted to the Commission prior to the start of earthwork operations.
9. All filling operations shall meet the requirements of the NJMC Performance Standards for noise, whereby the maximum permitted sound level on or beyond the subject property boundary line shall not exceed 76 dBA, in accordance with N.J.A.C. 19:4-6.1.

01-552
FDP/INTERMODAL CONTAINER FACIL.

CONDITIONAL ZONING C ICATE
ATTACHMENT B
March 28, 2003

Please find enclosed a copy of the approved plan(s) as follows:

All plans sheets prepared by Ernst, Ernst & Lissenden, dated 8/1/02, unless otherwise noted:

1. "Boundary and Topographic Map", Sheet 1 of 17, last revised 1/22/03.
2. "Overall Plan and Wetlands and Fill Areas Exhibit to accompany Army Corps of Engineers Permit No. 1993-00081", Sheet 2 of 17, last revised 1/22/03.
3. "Site Development Plan", Sheet 3 of 17, last revised 3/17/03.
4. "Site Development Plan", Sheet 4 of 17, last revised 1/22/03.
5. "Site Development Plan", Sheet 5 of 17, last revised 1/22/03.
6. "Landscaping Plan", Sheet 6 of 17, last revised 3/17/03.
7. "Site Lighting Plan", Sheet 7 of 17, dated 1/22/03, no revisions.
8. "Site Lighting Plan", Sheet 8 of 17, dated 1/22/03, no revisions.
9. "Plan of Fill Operation Sequence and Grid Tracking System", Sheet 9 of 17, dated 1/22/03, last revised 3/17/03.
10. "Soil Erosion and Sediment Control Notes and Details", Sheet 14 of 17, last revised 3/17/03.
11. "Wetlands Creation and Enhancement Areas Typical Sections", Sheet 15 of 17, last revised 1/22/03.
12. "Typical Section and Details", Sheet 16 of 17, last revised 1/22/03.
13. "Construction Details", Sheet 17 of 17, dated 5/24/02, last revised 3/17/03.
14. "Gatehouse and Offices", Sheet A-1, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.
15. "Salt Storage Facility", Sheet A-2, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.

# SUPPLEMENTAL INFORMATION

## APPLICATION FOR FILL/STOCKPILE OPERATION

## FDP ENTERPRISES, INC.
## INTERMODAL CONTAINER FACILITY

Block 1000, Lot 1, 6 and 12; Block 1001, Lot 1;
Block 1002, Lot 1; Block 1050, Lot 1
Secaucus Road, Jersey City, Hudson County, NJ

*(last revised 03/17/03)*

| Applicant Information: | Fill Material Contractor Information: |
|---|---|
| F.D.P. Enterprises, Inc.<br>2200 Secaucus Road<br>P.O. Box 1067<br>Secaucus, New Jersey 07096<br><br>Contact: Frank V. Folise, Principal<br><br>Phone: (201) 348-6300<br>Fax: (201) 348-6262 | Clean Earth Dredging Technologies, Inc.<br>2337 North Penn Road<br>Suite 100<br>Hatfield, Pennsylvania 19440<br><br>Contact: Steven C. Sands, President<br><br>Phone: (215) 996-4172<br>Facsimile: (215) 996-5652 |

## ENGINEERING REPORT

An Engineering Report, entitled "Soils Report for Proposed Development at Secaucus Road Site – Jersey City, New Jersey – June, 1986" prepared by James C. Anderson Associates of Mt. Holly, New Jersey is attached hereto as required. The Report provides results of a test boring program, classification of existing soils, and base recommendations for building foundations and for placement and compaction of fill material.

## SITE PLAN

A set of Construction Plans, including a Site Development Plan, has been previously submitted to the New Jersey Meadowlands Commission ("NJMC"), labeled Drawing C-869 (10 Sheets), as prepared by Mr. Robert J. Romano, P.E. of Ernst, Ernst and Lissenden, Toms River, New Jersey. One (1) additional plan Sheet is enclosed with this Application labeled "Plan for Fill Operation Sequence Grid Tracking System," Drawing C-869, Sheet 1 of 1. The purpose of this plan is discussed in further detail herein.

## SUPPLEMENTAL INFORMATION

This supplemental plan is intended to provide additional information and details regarding the proposed operation for filling and grading of the approximately 77.4 acres, including approximately 53.5 acres of wetland area at the referenced site.

The plan further details the allowable criteria for fill material to be received at the subject property. Clean Earth Dredging Technologies, Inc. ("Clean Earth-DTI") has been retained by FDP Enteprises, Inc. (FDP) as the Fill Material Contractor at the FDP Site. As such, Clean Earth-DTI will be contractually responsible for managing the entire fill operation, including testing and analysis, supply, transportation, quality assurance/quality control, placement and compaction, environmental compliance, supervision and traffic control.

Clean Earth-DTI and its sister companies own and operate fixed base soil and dredged material treatment facilities in the Tristate Area. As such, CTI has proposed the use of treated material from several of its recycling facilities, including its Class B Recycling Facility, Clean Earth of Carteret, Inc., as fill for the FDP site.

FDP and Clean Earth-DTI recently met with representatives of the New Jersey Meadowlands Commission ("NJMC") to discuss its requirements for importing of fill material to this site.

## CATEGORIES OF ACCEPTABLE FILL MATERIAL

It was agreed the following categories of material shall be accepted as fill for the FDP Site (the "Fill Material"):

1. Clean Fill – including uncontaminated inert rock, soil, gravel, sand, concrete, recycled crushed glass, clay and ceramic products. Clean Fill material shall generally meet the size limitations as per the NJDEP definition of clean fill (approximately 8 inches in diameter or less). For larger diameter or mixed graded materials, the material shall be intermixed with fine graded fill upon placement such that the proportion of material less than 1-1/2" in diameter is at least 25% greater than the void volumes of material that is greater than 1-1/2".

2. Fill From Class B Recycling Facilities – processed soil from Class B Recycling Facilities, including Clean Earth of Carteret, Inc., in Carteret, New Jersey, that meets all of the respective facilities' Class B permit standards for restricted use in non-residential sites. Such criteria shall be as listed below for Construction Fill.

3. Construction Fill – includes soil fill material that has been tested for priority pollutants that shall not exceed the Non-Residential Direct Contact Soil Cleanup Criteria ("NRDCSCC"). For such fill, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual." Sampling and analysis shall be performed at a frequency of one area composite sample per 5,000 cubic yards of material to be re-used. The analysis shall be performed on a composite sample consisting of adjacent grid samples obtained at a frequency of one sample per 1,000 cubic yards. A minimum of one (1) composite sample per project shall be analyzed.

4. Non-HARS Dredged Material Suitable for Placement at Upland Sites without Processing – includes glacial till material, clay material, sand, gravel, cobbles, and rock, including blasted rock that has been deemed to be suitable for upland placement without processing by the appropriate regulatory agencies, including NJDEP.

5. Amended Dredged Material "ADM" - includes non-rock non-HARS dredged material that has been amended with any or all of the dredge admixtures that have been approved by NJDEP for the CTI Claremont DMRF facility (excluding Municipal Incinerator Ash Residue and Propat®) that meets the NRDCSCC.

6. Other Fill Material – includes fill material not meeting the definition of any other Category of Acceptable Fill Material for FDP Site which shall be shipped directly from project sites. For such "other fill" material, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual," or by such alternate sampling frequency and protocol as shall be mutually agreed in advance by NJMC and FDP. Application for acceptance of this category

of fill material shall be made in writing to NJMC on a case-by-case basis, along with copies of all source information and analytical data reports. Approval of each such application shall be determined by NJMC upon review of the application, in its sole discretion. Any application which has not been approved or denied in writing within ten (10) days of such submittal shall be deemed to be approved.

## FILL OPERATIONS

The following Operational Considerations and restrictions shall apply to the placement of fill at the FDP Site:

1. All fill material will be transported by truck to the FDP parcel by a transportation subcontractor(s) under sequentially numbered Bills of Lading provided by Clean Earth-DTI only to approved sources of Fill Material.

2. All characterization testing, approval and transportation of the fill to the FDP Site will be the responsibility of Clean Earth-DTI or its Engineer. For fill materials requiring project- or source-specific approval from NJMC pursuant to item 6 above, Clean Earth-DTI or its Engineer shall make application to the NJMC for such approval, with approval of the application by NJMC in its sole discretion.

3. Provisions shall be made for stockpiling, re-loading, placement and compaction of these materials, including the post-placement testing and monitoring thereof by FDP or its Contractor or Engineer.

4. Material may be shipped by transportation subcontractor(s) and received at the site on a 24 hours per day, 7 days per week basis, with appropriate advance notice and scheduling with NJMC. Initial operations for receipt of fill material are expected to occur six (6) days per week, between the hours of 6:00 a.m. and 11:00 p.m. Placement of fill material will be restricted to the hours of 7:00 a.m. to 6:00 p.m. as required by NJMC. The Application for Fill/Stockpile Operation form attached as a cover hereto shall incorporate these conditions.

5. Clean Earth-DTI shall establish a gated entrance way for fill delivery truck ingress and egress at the site as detailed in the Detail Plan of Construction Entrance, on Drawing C-869, Sheet 1 of 1, attached hereto. Such entrance shall be manned by a guard/inspector at all times of receipt of fill deliveries. Only trucks carrying the approved and numbered Bills of Lading from authorized sites shall be allowed to access the fill area of the FDP Site. The guard/inspector shall inspect each load of fill material from sources other than CEI owned facilities to ensure the material meets the specifications of the acceptance of material from the particular approved source. Non-conforming material will be rejected and the load diverted from the FDP Site.

6. A grid tracking system as shown on the attached plan Drawing C-869, Sheet 1 of 1 entitled "Plan of Fill Operation Sequence and Grid Tracking System" will be implemented. Upon

delivery, each load of fill will be directed to a numbered grid for placement or stockpiling. For each day's fill placement operations, the grid locations and approximate fill elevations will be documented and cross-referenced to fill deliveries that day in a computerized Fill Tracking System. Copies of the Fill Tracking System report, will be provided to NJMC on a monthly basis, detailing the amount of fill received by source and location, the specific areas (grids) of placement and/or stockpiling occurring in the month, the approximate elevations of fill placement in each grid, and any rejected loads of material for the month.

7. Temporary haul roads in both the wetlands and uplands will be constructed as necessary to facilitate on-site truck travel. Periodic maintenance of these haul roads will be performed during the project to prevent rutting and repair soft spots. Maintenance will consist of re-grading and placing of additional stone material in areas where settlement has occurred or potholes developed. The haul roads will be constructed a minimum of 12-inches of recycled fill (stone, crushed concrete and brick) to be imported by Clean Earth-DTI and stockpiled at the site prior to activities. Spraying of water during construction will be performed as needed to suppress dust development.

8. The construction entrance and the intersection of Secaucus Road at the ingress/egress will be inspected daily to ensure cleanliness. Stone will be replaced as necessary in the Construction Entrance. A mobile street sweeper will be used as necessary to clean Secaucus Road should any material be tracked onto the public roadway.

9. Fill material meeting the more stringent of NRDCSCC and Impact to Ground Water Criteria ("IGWC") only shall be placed in areas within 50 feet of any interface between fill placement areas and surface water including wetlands, the wetland mitigation and enhancement areas, the drainage ditch along Secaucus Road, the Jersey City drainage parcel with 100 feet wide access easement in the center of the property (Block 1000, Lot 13) and Penhorn Creek and in areas underlying buildings as detailed on the attached Sheet 1 of 1 entitled "Fill Operations Sequence and Grid Tracking System."

10. Delivery of fill material is expected to take place over a three (3) to four (4) year period, commencing immediately upon receipt of all permits and approvals and upon the availability of the site to accept fill materials. Stockpiling of materials may occur in advance of actual start of placement activities in upland areas to be designated by FDP, such areas as shown on the attached Plan for Fill Operation Sequence and Grid Tracking System, Drawing C-869, Sheet 1 of 1. In the event of advance stockpiling, the soil erosion and sediment control measures applicable to stockpiles only shall be followed (i.e., installation of silt barrier and hay bales around perimeter of stockpile). Additional soil erosion and sediment control measures will be installed as detailed in the Fill Operations Sequence prior to commencement of Phase 1 Fill Activities.