Exhibit 1

Case 1:06-cv-00472-TCW Document 54 Filed 04/30/2007 Page 1 of 2

# In the United States Court of Federal Claims

No. 06-472C

(Filed: April 30, 2007)

TDM AMERICA, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

DONJON MARINE COMPANY, INC.,

Third-Party Defendant.

## DISCOVERY ORDER

In this patent infringement case, the Court has before it various discovery disputes stemming from Defendant's April 6, 2007 Motion to Quash the Deposition Notice of Alan P. Klein, and Plaintiff's April 23, 2007 Cross-Motion for Sanctions or to Compel pursuant to RCFC 37. The events underlying the disputes began in November 2006, and seemingly have escalated despite the Court's attempts to assist the parties informally. The Court has conducted three discovery conferences with counsel on February 6, 2007, February 15, 2007, and March 6, 2007 respectively.

The issues presented are: (1) whether Defendant has furnished complete and verified responses to Plaintiff's interrogatories; (2) whether Defendant has responded properly to Plaintiff's requests for production of documents, particularly as to "process" documents showing the methods used to treat dredged material in other Government contracts; (3) whether Defendant has frustrated Plaintiff's attempts to proceed with discovery depositions noticed under RCFC 30(b)(1) and 30(b)(6); and (4) whether Plaintiff should be permitted to depose Alan P. Klein, patent counsel of the U.S. Army Legal Services Agency in the Office of the Judge Advocate. Fact discovery is to be completed in this case by July 13, 2007.

Case 1:06-cv-00472-TCW Document 54 Filed 04/30/2007 Page 2 of 2

Upon considering the parties' positions, the Court directs counsel to resolve all of the pending discovery disputes within 30 days, on or before May 30, 2007. Defendant is ordered to provide complete and verified responses to Plaintiff's interrogatories, and to respond properly to all of Plaintiff's document requests, within that time. Plaintiff's depositions noticed to date shall either be taken or scheduled within this 30-day period.

Defendant's motion to quash the deposition notice of Alan P. Klein is GRANTED. Pursuant to RCFC 26(c), Defendant is not required to produce Army patent counsel for a deposition or to respond to the accompanying document requests in paragraphs 2-4 of the Notice of Deposition.

Counsel are directed to file a Joint Status Report with the Court on June 5, 2007 indicating the extent of their compliance with this Order, and identifying any remaining discovery issues. Failure to adhere to this Order may result in the imposition of sanctions under RCFC 37(b)(2).

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

Exhibit 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TDM AMERICA, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Docket No.: 06-472C |
| Defendant, | ) | |
| AND | ) | |
| DONJON MARINE CO., INC., | ) | |
| Third Party Defendant. | ) | |

Chambers 603
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
February 6, 2007

The parties met, pursuant to notice of the Court, at 10:25 a.m.

BEFORE: HONORABLE THOMAS C. WHEELER
Judge

APPEARANCES: (Via Telephone)

For the Plaintiff:

DAVID DENENBERG, Esquire
Davidoff Malito & Hutcher, LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200

APPEARANCES: (Cont'd)

For the Defendant:

ERICA A. FRANKLIN, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20005
(202) 353-0517

For the Third Party Defendant:

GARY J. CAMPBELL, Esquire
McCarter & English, LLP
265 Franklin Street
Boston, Massachusetts 02110
(617) 449-6500

P R O C E E D I N G S

(10:25 a.m.)

THE COURT: We are on the record this morning in the case of TDM America, Docket No. 06-472C. I understand that a discovery issue has arisen. Please identify for me who all is on the phone.

MR. CAMPBELL: This is Gary Campbell representing Donjon Marine, Your Honor.

THE COURT: Okay.

MS. FRANKLIN: This is Erica Franklin representing the United States.

THE COURT: All right.

MR. DENENBERG: This is David Denenberg representing the Plaintiff, TDM.

THE COURT: All right. Well, welcome to you all, and I hope we can resolve your problem this morning. Who wants to proceed with a description of the issue?

MR. DENENBERG: Your Honor, this is David Denenberg. Since I requested the phone call, I will proceed if that's okay.

THE COURT: Sure.

MR. DENENBERG: Okay. Some discovery disputes have arisen. The first dispute, which is the most time-sensitive, is pursuant to a document, an

interrogatory request, which was made back in November. At first, we received some documents after agreed-upon adjournments and the date due. Numerous documents had not been produced.

What we're looking for in this case, it is a case on patents, on processing or treatment stabilization, and I'll just say treatment of dredge material. What was requested is those contracts and summary of processing of dredge material. What we have gotten so far were just bid contracts.

What we were looking for were the documents which would set forth the processing, the amounts of dredge material being processed, the costs involved, and that had not been forthcoming, which led to a dispute which we tried to resolve over the phone back on January 12 I believe it was.

THE COURT: Has there been any objection to disclosure, or is it just a situation where you don't think you have received what you're entitled to?

MR. DENENBERG: Well, there were some objections, but what precipitated this phone call was Ms. Franklin agreed to produce the documents that we were looking for and as part of the production gave us last week, I believe it was on Tuesday, four days, February 6, 7th, 8th, and 9th, to come to a location

in New Jersey to see the New York District documents as they were kept in the ordinary course of business, those documents being described by Ms. Franklin as 22, I believe, file cabinets of documents.

So we agreed that we would come to inspect the documents at that facility and requested two officers of the party, the Plaintiff, to come with us because they are familiar, obviously have greater familiarity than myself and people in my office with respect to the documents and would be valuable to us in reviewing the documents.

Ms. Franklin then responded by e-mail on Friday that they're not allowed to participate in the document inspection because the location is a secured site. Under the rules, Federal Rule 34, the party is permitted to inspect or someone acting on behalf of the requestor's behalf is permitted to inspect.

Now, if the documents are attorney's eyes only and being produced as they're kept in the ordinary course of business, I would like to take two officers from my client to view those documents with me. To date, the documents that we have received are mostly, almost entirely, public documents which are part of public contracting procedures.

What we're looking for and have not received

to date but hopefully as part of this inspection would be supplements to those contracts which actually discuss the real issues, the treatment procedures, the amounts, the processing.

Another issue which has I guess impeded discovery has been agreement upon a protective order wherein other --

THE COURT: Excuse me, Mr. Denenberg. I'm just thinking of the best way to proceed here. If you're about to move to a different issue, I think I'd like to hear from the government and then hopefully resolve that issue before we go to another one.

MR. DENENBERG: Thank you, Your Honor. I agree.

THE COURT: Ms. Franklin, would you like to respond to the issue raised by Mr. Denenberg?

MS. FRANKLIN: Yes, Your Honor, and I'd like to clarify a couple of points. I would actually like to begin by stating for the record that Plaintiff's counsel has failed to make any good faith effort to resolve this issue prior to scheduling this teleconference.

We were given the ultimatum yesterday morning. I received an e-mail sent apparently Sunday afternoon but yesterday morning received an e-mail

stating that if I did not call or contact opposing counsel and resolve the issue by 9:30 that morning, then this conference would be scheduled.

And upon receiving that e-mail, I e-mailed back during a meeting to indicate that I was in a meeting and that I would be available at 11:00. Before I heard from Plaintiff's counsel, I heard from the clerk of the Court, indicating that this had been scheduled for today.

Nevertheless, Plaintiff is correct. We are making the documents available. We have not objected to disclosure of any relevant information. The document inspection is going on today, and only privileged documents have been pulled from the collection. Otherwise, they do remain in there as they are kept in their normal course of business.

There were some documents that were removed from the site and brought to the Federal building, Federal Plaza in Manhattan, actually for the convenience of all counsel. But today we're just addressing those documents at case in point.

THE COURT: Well, I understand from Mr. Denenberg that the main sticking point right now is whether the two officers of Plaintiff are permitted to review the documents, is that right?

MS. FRANKLIN: That's correct. And that issue does not relate to the location of the documents or to the security that is accorded to the building. That security is the same that's accorded to all government buildings, as Your Honor knows.

So the necessity for the names of individuals and the requirement that they bring ID does not relate to the government's objection to officers viewing the documents.

Our objection stems wholly from the fact that this document collection contains proprietary information, information that will be properly labeled as such, some labeled as attorney's eyes only, others accorded a lesser level of protection, in which case there is a limited number of officers, which is a debate that we're having with regard to our draft protective order, the precise number of officers that will be able to view the lower-level protected information.

MR. DENENBERG: Your Honor, some of the need for Your Honor's involvement is from an e-mail saying that officers are not permitted to participate in this document inspection when clearly under the rules they would be. The officers are in Texas.

If I'm given four days to inspect these

documents starting today, the two officers have flight arrangements and a schedule that they need to make arrangements for in order to come up and have this inspection. I'm somewhat confused by what Ms. Franklin said if the attorney's eyes only or proprietary documents have been separated out.

MS. FRANKLIN: Well, let me clarify that point right there then. Those documents have not been separated out. Only privileged documents have been removed, and that's an appropriate measure. It's not appropriate to remove other documents, so we have not removed proprietary documents. They are still part of the collection --

THE COURT: When you say --

MS. FRANKLIN: -- insofar as to say --

THE COURT: Excuse me, Ms. Franklin. When you say these are proprietary documents, are these documents proprietary to the respective contractors involved in the contracts being reviewed?

MS. FRANKLIN: That, and in addition and more of our interest I suppose in this argument, they include government proprietary documents relating to contracting, government estimates, et cetera.

THE COURT: Government estimates involved in the procurement process?

MS. FRANKLIN: That's correct.

THE COURT: Okay.

MS. FRANKLIN: And Mr. Denenberg mentioned the rule allows officers to participate. That's not true. This is governed by Rule 34, and unfortunately, it does not provide a specific indication as to whom may view documents. I asked Mr. Adler yesterday did he have any authority for his position that the officers were entitled to review documents, and he provided me with no citations.

MR. DENENBERG: But Rule 34 says the party may make the request and the party may inspect the documents or someone acting on the requestor's behalf. It's not limited in any way, as your e-mail suggests, to only attorneys.

THE COURT: Let me understand first, what is the date of this e-mail from Ms. Franklin?

MR. DENENBERG: Thursday of last week.

MS. FRANKLIN: My e-mail is actually dated --

MR. DENENBERG: Thursday at around 5.

MS. FRANKLIN: I don't think that's correct.

MR. DENENBERG: It is correct.

MS. FRANKLIN: My e-mail is dated Friday, February 2, at 11:23 a.m.

MR. DENENBERG: I'm sorry, Friday. Not Thursday, Friday.

THE COURT: All right. So this all has come upon us fairly quickly.

MS. FRANKLIN: The question was first posed to me, Your Honor, in a conference call late afternoon on the Thursday, and I indicated to opposing counsel that I would respond to them by Friday.

THE COURT: All right. Well, it seems that we do have potentially an issue that needs to be covered by your protective order, and you say you do have a draft protective order in place?

MS. FRANKLIN: That's correct. Well, it's a working draft.

THE COURT: Well, we have other standard forms of protective order available either in the Court's rules or from many other cases and so that should be a fairly easy process.

What I'm getting to here is that while I think as a general proposition Plaintiff is certainly entitled to have its officers examine documents produced under Rule 34, I also think that if there's a legitimate need for proprietary markings on documents and a need for a protective order that that process should be followed. There could well be proprietary

information either of a contractor or the government that ought to be subject to a protective order.

Having said that, all that has to be done in a reasonable good faith manner. You can't unreasonably mark documents as proprietary as a ploy to prevent Plaintiff from reviewing them. So it seems to me that you may want to consider a slight rescheduling of the document review or, alternatively, review what you can within the next four days and then come back again when it's appropriate after the protective order is in place.

MR. DENENBERG: Well, the --

MS. FRANKLIN: Well, Your Honor --

MR. DENENBERG: I'm sorry. This protective order has gone back and forth several times. The discovery requests were back in November. Here we are in February. And then last week, I was given this four-day period, so I had to act expediently.

The only two sticking points, it seems, to being on the protective order, one which both Mr. Campbell and I share, was a requirement that anyone who signs the undertaking under the protective order then can't file patents for a year, and the second sticking point was purely in the number of people that could be subject to the protective order, that being

Ms. Franklin's position that in-house counsel have a certain number, and I wanted just a number on each side because the company doesn't have or the Plaintiff doesn't have in-house counsel, but it has officers who have expertise in the field that certainly would be able to assist.

MS. FRANKLIN: Your Honor, before we debate the state of the protective order, which I believe is also prematurely brought before the Court today, I would like to address your proposal. The issue here is whether the officers will be able to attend the document inspection.

And even if we had the protective order in place, I'm not sure that that would address the United States' concerns with the inspection, because at the inspection, the documents that need to be labeled with the proper protection are not yet labeled. They will only be labeled after they are selected by opposing counsel.

So the process is that opposing counsel will go, review the documents, make his selections based on what he has informed the Court and the other parties. He's given us what he's interested in a very detailed fashion. He knows what he's looking for.

THE COURT: Well, it strikes me as odd that

the documents to be considered proprietary are not already marked in some fashion. In my experience, sensitive government estimates or bidding or proposal information or any proprietary contract information normally has a marking of some kind on it already. Isn't that the case here, or is it different?

MS. FRANKLIN: I've noticed that in a number of documents, but I have not noticed that uniformly.

MR. DENENBERG: Your Honor, just to respond to that, I mean, that really puts a burden on me that I could only come, select documents, and then they'll decide what's proprietary. It's really a resource to us to get through 22 file cabinets of documents to be able to use personnel of the party, officers of the party, to assist in finding those documents that we would request to be photocopied. I thought that they were marked proprietary already or attorney's eyes only already.

MS. FRANKLIN: For them to be marked already, we would have had to gone through the 22 file cabinets in addition to the 70 boxes at Federal Plaza and process those documents, every page. And we have not done that. Instead, we've made those documents available to you because of the number.

MR. DENENBERG: But my argument is this,

sir. If the documents were produced to me, they'd be labeled, and then I'd know what's attorney's eyes only and what is confidential so that people signing the undertaking under the protective order could see.

MS. FRANKLIN: That's correct.

MR. DENENBERG: If it's being produced as they're produced in the ordinary course of business, under the rules, that shouldn't work to my disadvantage by restricting the resources we can use to review the documents.

THE COURT: Well, let me just interject here and see if we can't reach a conclusion. I think Plaintiff has a point that he ought to be able to have the appropriate people looking at the documents. On the other hand, I can see that the government may not want to do a mass copying of 22 files of documents without knowing which ones the Plaintiff would like to review. Is there a way that we can quickly adopt a protective order and get the appropriate people admitted so that the review can go forward?

MR. DENENBERG: That would be fine with me, Your Honor.

MR. CAMPBELL: Your Honor, this is Gary Campbell.

THE COURT: Yes.

MR. CAMPBELL: I think the issue there would be once they're admitted, and what Ms. Franklin is saying is that the documents won't be segregated between attorney's eyes only and protected material so that TDM's officers would still be exposed to attorney's eyes only documents.

THE COURT: Attorney's eyes only, are these documents to which the government asserts a privilege?

MS. FRANKLIN: Not a privilege, Your Honor, just heightened protection.

THE COURT: "Heightened protection"? I'm not sure that's going to make a whole lot of difference. If it's attorney's eyes only, somebody submitted it for an attorney or maybe it was prepared by an attorney to some other lawyer. If you're not asserting a privilege, I don't see a reason to protect it.

MR. CAMPBELL: Your Honor, I think it would be akin to a bid protest case where there would be source selection information that would only be for the attorney's and not the parties.

THE COURT: Well, then that's source selection information as opposed to attorney's eyes only as I see it.

MS. FRANKLIN: Well, in our draft protective

order, we've spelled out a separate category as outside attorney's eyes, and the parties have not disputed that separate categorization.

THE COURT: Well, now would the Plaintiff's officers that we're talking about be admitted under the protective order for review of the documents?

MR. DENENBERG: Yes.

MS. FRANKLIN: For review of the documents that would not have the heightened protection of outside attorney's eyes only.

THE COURT: Well, my view of this is that there ought to be just one category of protected documents covered by the protective order. They're either protected or they're not. And privileged documents, subject to the attorney work product or attorney/client privilege, would be a separate matter. But documents that you do produce subject to a protective order ought to be in one category and reviewed by all people admitted under the protective order. I have no problem with that kind of an approach.

MR. DENENBERG: I agree with Your Honor.

THE COURT: So let's simplify this thing. We can give you fast service on a protective order, and under the provisions thereof, you can get people

admitted just within a period of two days or faster if you want to. And I think it may require a slight rescheduling of your document review but not too much, maybe a week or so. And then you can move ahead on that basis.

MR. DENENBERG: Your Honor, I agree with everything you're saying. What put this under the gun, so to say, is the dates that I was given last week, the 6th, 7th, 8th, 9th. So, in an effort to try to inspect on the dates that I was given, I have tried to make arrangements with the client to have the two officers come up. Obviously, they would sign any kind of undertaking, and whenever that process could be in, they could be up as early as Thursday.

THE COURT: Well, I understand all of that, and I don't fault any of you for bringing it to my attention very promptly. I'm happy to accommodate you. I do think, however, in order not to trample upon the government's legitimate rights to bring documents under a protective order, if you need to reschedule slightly because of this problem, I think we should do that. And just go ahead and finalize your protective order, and I really would encourage you to use just one category of protected information. Give it the same definition. Submit it to me, and I

will turn it around quickly, and then you can go forward with that. It may be a slight delay, but it won't be too lengthy, to be sure.

MS. FRANKLIN: Your Honor, I just want to understand then that in our protective order, you would not be willing to consider an outside attorney's eyes category of documents?

THE COURT: Well, bear in mind that I'm working without having seen the protective order. I'm giving you my reaction to it that it sounds like too much process for a protective order, and I don't really agree with it. If it's information that's going to be produced under Rule 34, I don't see why any separate limitation ought to be placed on it.

MR. DENENBERG: I would agree, because if it's attorney's eyes only because it's a work product or it's attorney communication --

MS. FRANKLIN: Work product? Work product?

MR. DENENBERG: -- then it wouldn't be produced at all.

THE COURT: Excuse me. We'll have one person at a time.

MR. DENENBERG: Oh, I'm sorry.

THE COURT: Go ahead, Mr. Denenberg.

MR. DENENBERG: I apologize. I would agree

with you, and I've always seen with the heightened protection, if it's a work product or if it's an attorney/client communication, then it wouldn't be produced at all, and it would be logged in a privilege log, just describing what the document that's not being produced at all is.

THE COURT: That is correct. That is consistent with the Court's view.

MR. DENENBERG: And below that, it would seem that attorneys or those people designated under the protective order should both be able to see it because they would be under the order and restrictions. So I would agree with you.

THE COURT: Yes. Did you have something further on that, Ms. Franklin?

MS. FRANKLIN: Yes, Your Honor. It's a typical part of our practice here for the government to include in its patent cases, patent infringement cases, the provision for outside attorney's eyes so that sensitive financial business and commercial information that is more sensitive than what you would categorize as simple proprietary information would be given a heightened level such that it's not equated to that of privileged material, meaning attorney work product, attorney/client privilege, or deliberative

process, but that it is accorded more protection than less sensitive material, meaning that only attorneys would be viewing it.

THE COURT: Well, if it's covered by the protective order and subject to the restrictions on disclosure, I don't see why it makes any difference.

MR. DENENBERG: I agree with Your Honor's position.

THE COURT: All right. So, as I say, Ms. Franklin, if you want to lay out your position further in a motion or response of some kind, I'd be happy to look at it, but I doubt at this point that it would change my mind. But since we're dealing with this discovery issue by telephone without my having looked at any of the pertinent documents, I'll afford you that opportunity if you wish to pursue it. But, hearing what you had to say, my better advice would be to move ahead with a protective order containing one class of protected information and see if we can't adhere to the schedule without too much delay.

MS. FRANKLIN: I just have one followup question then. Without the real opportunity to designate certain documents to be viewed only by outside attorney's eyes, would the Court have any preference or opinion regarding the number of officers

that would be able to view protected information? That's the critical dispute that we're having with the draft protective order. Even with this two-tiered program, Plaintiff requested eight officers, whereas the United States, I believe no more than two officers should view protected information. And again, this is where we have a separate category for outside attorney's eyes.

THE COURT: Well, there were --

MR. DENENBERG: Because -- I'm sorry.

THE COURT: I understood that there were two officers who would be involved in the actual document review. Are there other officers who you would like to have access under the protective order, Mr. Denenberg?

MR. DENENBERG: Your Honor, to address that point, in our last discussion, I said to both Mr. Campbell and Ms. Franklin that the way the order was set up was two officers and two in-house people I guess on the United States' side, but then three in-house counsel, which we don't have.

So I would have just agreed that if the total number that the U.S. wanted was three in-house counsel, two other in-house people for a total of five, the number of the total of five is something

that is acceptable to us.

And then, to answer your question directly, in addition to the two officers, there are three other officers, for a total of five, that we would like to be able to assist in document review, whether it's an ordinary course of business inspection or whether it was documents being produced to us, and then utilize review in that manner. So a total of five.

THE COURT: Well, it sounds reasonable to have the same number of people admitted for each side. If that's a problem for you, I would be inclined to say each side should have the same number.

MS. FRANKLIN: Whether they're counsel or not, Your Honor?

THE COURT: Yes. It's just a matter of each party having the same level of resources admitted under the protective order.

MR. CAMPBELL: And, Mr. Denenberg, you're saying the number you need now is five?

MR. DENENBERG: Yes.

MR. CAMPBELL: Okay.

THE COURT: Now are there other issues to discuss today?

MR. DENENBERG: Your Honor, I did have other issues, but these issues go to discovery that I don't

believe has been forthcoming. I do note that we have a conference call on February 13, a status conference with Your Honor. And, I mean, I can get into these other issues, but I would suggest perhaps speaking with Ms. Franklin to try to work it through. I prefer not utilizing Your Honor unless it's really necessary.

THE COURT: Well, that is commendable. I think we've dealt with the time-sensitive issue today, and you can move forward as we have discussed. And then I am aware of the conference we have scheduled for February 13, so maybe you'll be able to work those other matters out and we can reduce the issues to their essence on that date.

MR. DENENBERG: That's what I would like to try to do, Your Honor, rather than go through the few other issues.

THE COURT: All right. Is there anything else today?

MS. FRANKLIN: No, Your Honor.

MR. CAMPBELL: No, Your Honor.

THE COURT: All right. Well, thank you very much, and good luck in sorting these things out to everyone's satisfaction.

MR. CAMPBELL: Thank you, Your Honor.

MR. DENENBERG: Thank you.

THE COURT: Bye-bye.

(Whereupon, at 10:55 a.m., the hearing in the above-entitled matter was concluded.)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

REPORTER'S CERTIFICATE

DOCKET NO.: 06-472C

CASE TITLE: TDM America v. US

HEARING DATE: February 6, 2007

LOCATION: Washington DC

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before U.S. Court of Federal Claims

Date: 2/6/07

Bernadette O. Herbon

Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018