Exhibit 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TDM AMERICA, LLC, )
)
Plaintiff, )
)
v. ) Docket No. 06-472C
)
UNITED STATES, )
)
Defendant. )

Suite 603, Chambers
Court of Federal Claims
717 Madison Place NW
Washington, D.C.

Thursday
February 15, 2007

The parties met, pursuant to notice of the Court, at 2:00 p.m.

BEFORE: HONORABLE THOMAS C. WHEELER
Judge

APPEARANCES: (Via Telephone):

For the Plaintiff:

DAVID W. DENENBERG, Esquire
MICHAEL A. ADLER, Esquire
Davidoff Malito & Hutcher, LLP
603 Third Avenue, 34th Floor
New York, New York 10158
(212) 557-7200

For the Defendant:

ERICA A. FRANKLIN, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W., Suite 1100
Washington, D.C. 20530
(202) 353-0517

APPEARANCES (continued):

For the Defendant-Intervenor
DonJon Marine Company, Inc.:

GARY J. CAMPBELL, Esquire
JOHN FLAHERTY, Esquire
McCarter & English, LLP
225 Franklin Street
Boston, Massachusetts 02110
(617) 345-7000

P R O C E E D I N G S

(2:00 p.m.)

THE COURT: We're on the record this afternoon in the case of TDM America v. United States, with DonJon Marine Company as the Intervenor-Defendant. The case number is 06-472C. Why don't we first identify who all are on the phone?

MR. DENENBERG: Dave Denenberg and Michael Adler for TDM, and we're with the firm, Davidoff Malito & Hutcher.

THE COURT: All right. Thank you.

MR. CAMPBELL: Your Honor, this is Gary Campbell with McCarter & English, representing DonJon Marine, and I have with me Jack Flaherty, who is a partner in our Newark office and is one of the newest members of the Court of Federal Claims Bar.

THE COURT: Okay. Welcome to both of you.

MS. FRANKLIN: Erica Franklin with the Department of Justice, representing the United States.

THE COURT: All right. Again, thanks to all of you for being available this afternoon. We had to reschedule because of the inclement weather yesterday in Washington.

I noticed, in the pretrial scheduling order that I issued November 2, 2006, that I had this down

as a status conference not on the record. But I decided that, as a result of our conference about a week ago regarding a discovery issue, that it might be better to have the conference on the record. So that's what I decided to do.

Now, this is a general status conference to see how we're doing in moving the case along and to discuss any issues or concerns that any of you may have. I will say that I have not yet seen a protective order that I thought was going to be forthcoming from last week's conference.

(Telephonic interference.)

MR. DENENBERG: Your Honor, this is Dave Denenberg for the Plaintiff.

THE COURT: Yes.

MR. DENENBERG: On the protective order issue and issues that have arisen, with respect to discovery, the Plaintiff, on November 6, shortly after the conference before Your Honor, served document requests and interrogatories on the U.S. To date, we've received responses that were still being completed, if you will, or are incomplete.

I've been in contact often on this with Ms. Franklin to try to work it out among the parties. Ms. Franklin expressed difficulty in getting everything

because of this dealing with the entire country. And then an issue arose that involved the Court with respect to inspecting documents at two facilities, one in New Jersey, one downtown Manhattan, and we asked Your Honor to get involved because our clients weren't able to see the documents.

After Your Honor ruled with respect to the protective order, a problem continued, in that, number one, Ms. Franklin expressed a desire to brief the issue or move to reargue. And in an attempt to work it out, I was agreeable to the two-tier, protective order concept that she had spoken before Your Honor about, but I wanted my clients to see the documents.

Ms. Franklin was still concerned with the client coming down and seeing documents that she didn't want the client to see because of competitive advantage, or it would be subject to the higher tier. At that point, it was still a conflict, and to resolve that conflict, if Ms. Franklin was going through all of the documents for purposes of marking them, it seemed obvious to me, just produce the documents since you're going through it anyway. And we agreed that she would go through and produce the documents, I would send a letter trying to be more detailed, thorough, and as comprehensive as possible in terms of

the specific kinds of documents that we need.

We spoke yesterday. Ms. Franklin felt that these documents could be produced to us, rather than us inspecting it, in about two weeks. The issue for me, obviously, as Plaintiff on these process patents, or claims on processed patents, whether it's the U.S. or any interested parties, is the process utilized for treating dredged materials, which is what we're talking about as the subject matter of these patents. So when there is dredging and treatment of the dredged material, that's the process that we need to see.

So we're trying to get what the process is, what the amounts are, in terms of how much was treated, what was paid, and then how much and what was paid for disposal upland. To date, we haven't been able to get those documents themselves, and it's hard, without those documents, although we've noticed several depositions and 30(b)(6) depositions of the U.S., without those documents, and without verified interrogatories, with respect to all of the contracts that cover processing or treatment of dredged materials, to take the depositions. So that's been a holdup.

MS. FRANKLIN: Your Honor, this is Erica Franklin.

THE COURT: Yes.

MS. FRANKLIN: The short answer to your question is, since our last conference with you, the parties have been working together to refine the protective order. As Mr. Denenberg mentioned, it does include two tiers.

So, as of yesterday, we were able to finalize our proposed stipulated protective order. Today, we are attempting to finalize a joint motion, which, I presume, we'll be able to do shortly after this conference, and that will be submitted to you as early as today.

THE COURT: Okay. I take it, it will be an agreed motion to adopt a protective order.

MS. FRANKLIN: That's correct.

THE COURT: Okay.

MR. DENENBERG: Your Honor, I agree with what Ms. Franklin said, and this was, like I said, an attempt to expedite discovery so that we can move on and take depositions.

Another issue that has arose (phonetic), and this arose about a month ago, or mid-January, I informed Ms. Franklin and Mr. Campbell that the Plaintiff wants to amend the complaint, and I circulated a draft of an amended complaint which would

add two additional patents. Specifically, they are an '862 and '590 patent. Both of those patents also relate to processing of dredged material or treatment of dredged material.

Similar to the '614 patent, they relate to a land-based process, as opposed to the '731 patent, which is a barge-based process. Ms. Franklin, right at the beginning, was amenable and consented to the filing of an amended complaint.

Mr. Campbell did not consent. He requested that language be put in a stipulation or into the amended complaint somewhere to the extent that DonJon has no interest in these two additional patents. And, in trying to get a stipulation together, both myself and Ms. Franklin were uncomfortable with those kinds of statements, so we can't get an agreement, and without an agreement, we're going to have to file a motion to amend the complaint, which would include these two patents.

I really don't know how I could possibly put in a negative allegation with respect to DonJon when the allegations are that the U.S. infringes. And I don't know which contractor they would use or what the processes being used by those contracts are, given that I haven't gotten the documents that the contracts

say are given in terms of a detailed synopsis and a detailed description of the process, as well as the amounts dredged and treated and disposed upland.

MR. FLAHERTY: Your Honor, this is Jack Flaherty, McCarter & English, in Newark. If I could just address that briefly and very generally.

THE COURT: Sure.

MR. FLAHERTY: There are two basic kinds of patents that are raised in this case. The first one involves a barge pulling up to a dock with a slurry of cement that's been mixed in a separate container being pumped out and mixed into the dredged material that's sitting in the barge.

The other kinds of patents that are involved in this case, Your Honor, talk about materials being deposited into a device called a "shaker box" that vibrates back and forth to separate materials out, then some sort of dewatering, and then basically dropping into another sort of vessel.

The only operation that DonJon runs, and I'm under the impression that Mr. Denenberg knows this, the only operation that DonJon runs is one that uses a dry cement being conveyed into the wet dredged material, which is then mixed in and performs whatever wonders cement performs in dredge materials.

We certainly are not employing, at our facilities, any sort of operation under either, I believe, the '614 patent or any of these others that talk about a shaker box-type operation. I know Mr. Denenberg, in his discussions with my associate, Mr. Campbell, agreed that the stipulation to go ahead and file the amended complaint would contain language to the effect that DonJon is an interested party only as to the '731 and, at the time, the '614 is what the government asserted against us.

So he was willing, at that time, to agree to delimit his claims, to the extent they might implicate DonJon. My understanding is that the government was looking for a more specific statement as well, that, in their claims against the government, the Plaintiffs are not asserting that DonJon is practicing these other patents. And I think that's something Mr. Denenberg, based upon his prelitigation investigation, should be able to do.

THE COURT: Well, we're perhaps getting a little bit ahead of ourselves. I think that, as Mr. Denenberg indicates, if there is not an agreement on a motion for leave to file an amended complaint, well, then he needs to proceed with the motion, and then we'll just deal with it in that way.

MR. DENENBERG: And, Your Honor, let me just say this. As far as the amended complaint and the original complaint go, no specific allegations, with respect to the contractors and infringement, is made. It's made against the United States, and as Mr. Flaherty just said, the '731 is barge-based, the '614 is the land-based system, and I disagree with his descriptions, but barge-based and land-based.

DonJon already responded with an interest in the '614, which is land-based. So I don't know all of the contracts that DonJon has. I know some of them in a presuit investigation, but the government, the U.S., in response to the interrogatories, listed several contracts where DonJon is the contractor, several contracts where other contractors are the contractor.

So I don't make specific allegations against any contractor. I make the specific allegations, both in the complaint and the amended complaint, against the U.S.

THE COURT: I think that may be the way to go here. Regardless of whether you put the precise language in an amended complaint regarding whether DonJon is or is not absolved of responsibility, it doesn't make a whole lot of difference, the way I see it. The facts will come out.

MR. DENENBERG: I agree with Your Honor. That was the argument I tried to make.

THE COURT: So if you don't have agreement, why don't you go ahead and file your motion for leave, and we'll press ahead. Now, how are we doing against our schedule? It sounds like we might be a little bit behind because of the problems that you all have described.

MR. DENENBERG: An additional problem, yes, I would agree -- it's Dave Denenberg again. I'm sorry, Your Honor. An additional problem, I think, is surfacing with DonJon and Mr. Campbell. We just got their initial disclosures, which, I think, in accordance with orders of the Court, was due this week, so we got them this week. And rather than producing documents, categories of documents were generally described, and I did speak with Mr. Campbell as to when I could see those documents or get those documents.

I haven't been able to get a date yet, so I'm not sure when I can pursue that discovery as well. I will give formal document and interrogatory demands as well, so long as Your Honor says I can start that.

MR. CAMPBELL: Your Honor, this is Gary Campbell.

THE COURT: Yes.

MR. CAMPBELL: As I told Mr. Denenberg last night, I do not disagree with his ability to have access to the documents that I described, but I was unable to give him a date, as of last night, when they would be available, and I told him I am working on it with DonJon to make them available to him.

THE COURT: All right. Now, DonJon is proposing a bit of a time extension to the discovery plan, is that correct?

MR. CAMPBELL: Yes, Your Honor. In general --

THE COURT: Who is speaking here?

MR. CAMPBELL: I'm sorry. This is Gary Campbell.

THE COURT: Okay. Thanks.

MR. CAMPBELL: The parties do agree that the schedule does need to be extended, and we had agreed upon 60 days from all of the dates that were in the schedule that had been previously submitted to you before DonJon joined. And then, as are set forth in DonJon's supplement to the JPSR, that there are two aspects of our proposed schedule that the parties, all three of us, could not agree upon.

The first is the deadline for dispositive

motions. The government and DonJon believe that the parties should have the ability to file a dispositive motion after Your Honor's Markman decision comes down, and TDM does not agree with that. They think dispositive motions should be before the Markman hearing.

MR. DENENBERG: This is Dave Denenberg. May I be heard on that issue?

THE COURT: Sure.

MR. DENENBERG: Both when the original pretrial scheduling order was entered, based on the joint submission of myself and Ms. Franklin on behalf of the U.S., our position, the Plaintiff's position, remains the same, at twofold.

Number one: After expert discovery and submissions or joint submissions on claim construction, which would show where the parties differ on claim construction, at that point clearly the parties have a reason why they are submitting their respective claim-construction arguments and why they are proffering a particular claim construction. I'm sure, most of the terms, the parties end up agreeing on. There are certain key terms that the parties differ on, for infringement and validity issues, always for validity and infringement issues.

It would seem, at that point, when you're asking the Court to make their Markman determinations, that the dispositive arguments related to why you're urging this construction or that construction and what your contradispositive position would be is already there. And to submit the dispositive motions before or at the time of Markman would allow the Court to see the infringement issues, the invalidity issues, when they are making the Markman determination because the Markman determination and what's being proffered by the parties are so essential to the infringement and noninfringement, validity and invalidity arguments.

The second reason is, the way it's set up by Mr. Campbell is that, at some point, and this was in consultation with me, the way it's written is when the Judge, Your Honor, decides Markman, at that point there's 30 days to submit a dispositive motion. And then, obviously, the briefing schedules would, if I understand the rules correctly, at least, drag it out 60 days.

So, at some undeterminative date, then there is an entire briefing on dispositive motions, the arguments for which the parties were already aware of and could have submitted to Your Honor. So, at some date, there is another briefing schedule, and then I

would guess, at some date, there is a decision, and then, at some date, there is finally a trial. It really drags it out unnecessarily long and with any definitive dates for a trial.

MS. FRANKLIN: Your Honor?

THE COURT: Yes.

MS. FRANKLIN: This is Erica Franklin. I do agree and admit that, at the time of the initial scheduling order, I had agreed with Plaintiff with regard to having Markman and dispositive motions at the same time, and that is to my regret. I strongly regret doing that.

Upon reflection, I realize that's an unworkable schedule, and, further, it would be inappropriate for the Court, as well as inappropriate for the parties to expect the Court, to make Markman decisions, claim constructions, based on the inevitable effect on noninfringement or invalidity. So that would be an improper basis to categorize dispositive motions and a Markman briefing together.

THE COURT: You know, I have another case before me right now that also involves patents, with regard to soil remediation at government facilities, and my reaction to the remarks that have been made is that dispositive motions seem to make more sense at

the point when the Court has told you what, at least, in my view, the patents mean.

In other words, once you know what the patents mean, then you can take that and decide whether you have a basis for a dispositive motion. In other words, the question of whether there has been any infringement would come after the Markman hearing and decision.

MR. DENENBERG: Your Honor, Dave Denenberg. I would agree that what the triable issues of fact and infringement are depend on what the Markman ruling is. But in terms of the dispositive motion and your ability to make the dispositive argument, certainly, at the time of Markman, when the parties have decided what their positions will be, the dispositive arguments are there as well, and in a timing circumstance, not that the Court should use the dispositive motion to help determine Markman.

But it can be argued at the same time because the arguments are known then. And the Court will presumably adopt the claim construction urged by one party or another or a combination of both. But the arguments and the experts that are being utilized, all of that information is there already, and the disadvantage to Plaintiffs that I'm trying to argue

against or avoid is the indefiniteness of timing them.

MR. FLAHERTY: Your Honor, this is Jack Flaherty for DonJon. I do agree with the view expressed by the government on this. I think, unless there is agreement as to what a term might mean, that there should be a separation between the Court's decision on what terms and claims mean, a separation between that and any dispositive motions that may be presented to the Court.

Obviously, there are circumstances where there is no dispute about what a claim means, and, under those circumstances, the motion, together with claim construction, almost an agreed-upon construction, would be appropriate. But, otherwise, I think Your Honor's instincts are quite right. You need to know what the claim construction is going to be before you can decide what sort of dispositive motion to make.

MR. DENENBERG: Dave Denenberg again. If you look at the decisions, not just in this Court but so many courts, including those that go up to the Federal Circuit, it's routine that summary judgment motions or dispositive motions, which could be made at any time, are made and seek a claim interpretation ruling in so being made.

MR. FLAHERTY: This is Jack Flaherty again, Your Honor. I would not dispute that you can do them that way. I would also say, however, that that is not a universal practice. Certainly, it's not a practice here in New Jersey, and I'm sure Your Honor is probably aware that, in patent cases, judges across the country take different points of view. Some judges don't decide what the claims mean until the trial. Others want to have that determination made early.

But one thing is clear: Under patent laws, you cannot make a judgment on a motion over infringement or validity until there has been a claim construction. That's the first element that the Court must address before resolving any sort of dispositive motion that may be made. And again I agree with the government on the sequencing of that, except for those occasions where the claim language is undisputed.

THE COURT: Excuse me. I think that the procedure we're going to follow here is to take dispositive motions after the Markman hearing and after the Court's ruling. That seems to make the most sense to me, under the circumstances presented. So I think that's the way we'll move ahead.

Now, does anybody have any problem with the

60-day adjustment to the schedule proposed by DonJon?

MS. FRANKLIN: Your Honor, if I could start on that, I don't have any problem with that. I'm in agreement with it. I think it makes a lot of sense. But I do want you to know, at this point, that the United States intends to submit a second Rule 14(b) motion to notice additional potential third parties. Throughout the discovery, largely in responding to discovery requests for Plaintiffs, the United States has reviewed contracts and noticed the potential interests of six contractors -- I'm checking my list because that may be seven -- of seven additional contractors.

THE COURT: All right. You know the way to file that kind of a motion. We're past the date when you can join additional parties without leave, unless everyone agrees. We can do it that way, but, if not, you should go ahead and file a motion as soon as you can, and you ought to address the reasons why you were not able to do this before January 19.

MS. FRANKLIN: Your Honor, my understanding is that all of the parties do consent to this motion, with the Plaintiffs making some reservation with regard to the filing of their amended complaint. Dave, do you want to speak to that?

MR. DENENBERG: Your Honor, this is Dave Denenberg. On this particular issue, my concern, on behalf of the Plaintiff, continues to be, and I don't oppose anything here that, in good faith, moves it forward and avoids involvement in a court.

So I've been amenable to the 60-day extension, although Plaintiff has done everything possible, including serving its demands and notices right after the period began, and has tried to work with the U.S., in particular, to get these documents that we need, although we haven't gotten them yet. I guess I'm trying, in good faith, to understand that it takes a lot of time to get all of these documents across the country, and it takes DonJon some time to tell me when I can see these documents.

But my real concern and opposition on noticing further interested parties, at this point, is that these parties, similar to DonJon, are now going to come in and ask for another 60 days. And given the fact that the Markman hearing now is scheduled for December, sometime after that Markman ruling, there is going to be, at least, a 60-day period, I would think, for dispositive motion briefing, that pretty soon this case is not going to be set for trial until almost two years after it was started.

MS. FRANKLIN: Your Honor, this is Erica Franklin again. I would just like to point out, we actually are still early in this litigation. As a matter of fact, the Plaintiff is motioning to amend his complaint, at this point, to add two additional patents that apparently Plaintiff was aware of prior to the start of this litigation, prior to the filing of his initial complaint.

This case involves approximately 30 contracts in four separate districts of the United States. That number has been determined by the United States after discovery efforts in every state of the nation. So reviewing those contracts, trying to determine potential interests of third parties, has been somewhat of a task that the United States has been diligently taking.

Throughout that task, it has noted a number of contractors. The initial contractors noted were based upon information the government had at the time it filed its answer. I believe that we have a comprehensive list now of all of the potentially interested contractors, and I don't believe that filing a 14(b) notice at this time will cause any significant disruption to the ongoing litigation.

THE COURT: Let me just say, at this point,

that whenever you say to this Court that there is a need to move the cases along, you will generally find a sympathetic ear, and certainly I will do my best to make sure that the case moves forward expeditiously.

As Ms. Franklin notes, I think that we're still within the first year of the case, and we are making progress, and if additional parties need to be served and given the opportunity to come into the case, we'll deal with that as best we can. But we will always make sure that the case moves along.

Now, in that regard, this seems like a relatively involved case that's becoming moreso with multiple parties. If any of you ever have a desire to engage in ADR with the Court's assistance, all you need to do is say the word, and we'll be happy to accommodate you. That would be one good way to possibly expedite things, if the parties are interested.

So I think, where we are right now, I think we'll go ahead and adopt the schedule that has been proposed by DonJon, basically adding a 60-day time period to those that were initially put in place on November 2nd.

MS. FRANKLIN: Your Honor, this is Erica Franklin. I do not want to interrupt you, but I do

want to note that the government has another comment relating to the schedule in general.

THE COURT: Okay. Why don't you go ahead?

MS. FRANKLIN: Initially, the scheduling order allowed for expert discovery to begin in May and to be closed at July. And, again, upon further reflection, the government thinks it may be useful for expert discovery to continue until receipt of a Markman ruling so that the expert will be in a position to assist the government and experts, to assist all of the parties, in applying the Markman ruling, the claim construction, to noninfringement positions.

THE COURT: I think that's a reasonable proposition, and I would tend to agree with you.

MR. DENENBERG: Your Honor, this is Dave Denenberg --

THE COURT: Yes.

MR. DENENBERG: -- for Plaintiff TDM. I'm not sure I understand the request. Is that that expert discovery will be opened up after the Markman hearing?

MS. FRANKLIN: Opened up or continued through.

MR. DENENBERG: Continued through? I don't

know what that gives you. I think that the experts and the expert reports on infringement, noninfringement, again, can easily include arguments or the experts commenting and giving their proffered position both on the claim construction urged by either side, but "continued through Markman," I'm not sure what that means.

The Markman decision is issued, and then expert discovery stops that day, or is it opened up again afterwards, in which case we're adding a lot more time and expense, and I know of few cases where expert discovery has opened after Markman. As Mr. Flaherty said, there's cases where Markman is right at trial. The experts and the expert discovery certainly could cover all of the infringement and invalidity arguments on the proffered construction of Plaintiff and Defendant.

MR. FLAHERTY: Your Honor, this is John Flaherty again. I think all of these issues, obviously, are addressed to your sound discretion. But I've had some experience recently here in the District Court of New Jersey in which, as part of the Markman process, the Judge invited that there be expert participation, which is not common but not unusual, and there were experts in the field who

offered background to the Court in order to provide information that the court might find useful in arriving at a claim construction.

However, after the claim construction, there were other experts from the industry who addressed issues of prior art on validity and issues of infringement based upon the claim construction that the Court had come out with.

So it's all addressed to your sound discretion. There's good reasons either way, and I know the government has given this some thought, and, frankly, to the extent our proposal is inconsistent with the government view, we're prepared to go with the government view on that.

THE COURT: Why don't we do this? It seems to me that with all of these differing considerations, it might make sense for you all to submit a proposed schedule to me within a week from today. Why don't you think about these various considerations that you have offered, including expert discovery, dispositive motions?

I can give you my own view about all of this. First, as I've said, with respect to dispositive motions, I really think they should come after the Court's Markman decision, telling you what

the Court thinks the patents mean and how the claim should be constructed. So you might give that some serious consideration.

I think, with regard to experts, it makes sense for the experts to have the ability to revise their positions, if they so choose, based upon the Court's Markman decision. You wouldn't want to cut off an expert's involvement in the case, his or her preparation of a report, at a point when the Court has not yet resolved the Markman issues. So it seems to me that that ought to stay open until a little bit later on.

Then you also have the consideration about what to do, if anything, right now regarding potential additional intervenors, or third parties. Maybe you don't want to do anything about that just yet until we know that they are actually in the case.

But on the theory that you all know the case better than anyone, why don't you confer with one another during the next week and submit to me a proposed schedule. And if there are disagreements about that, you can just lay them out in a separate section, indicating that you cannot agree, and then I'll decide it. I think that might be better than trying to do something just sort of spur of the moment

this afternoon.

MR. DENENBERG: Your Honor, this is Dave Denenberg. This pretrial scheduling order submission; I have two questions regarding it. Number one: When would you like it submitted, just so we're clear?

THE COURT: Today is the 15th, and so I'm suggesting by close of business, February 22nd.

MR. DENENBERG: My second question, Your Honor, and I'm looking to the Court's guidance: My concern continues to be, you know, a schedule that gets drawn out, and a bunch of defendants looking to spread out all of the plaintiff's resources as well.

THE COURT: I think that after the Markman hearing and decision come out, you shouldn't just file motions for summary judgment because now is the time to do it. You ought to critically analyze the case at that point to see whether you want to try to resolve the case by dispositive motion or whether you want a trial.

MR. DENENBERG: That gets to my second question. In this scheduling order submission, at what point do we put in a trial date?

THE COURT: Well, I think we would logically do that after the Markman decision.

MR. DENENBERG: Should we schedule, like, a

pretrial scheduling conference?

THE COURT: I think that would be premature. I would like to see you take this through the Markman hearing stage because I have to look at my calendar and figure out what date works best for that. Do you have any feel at this time how much time you think you'll need for a Markman hearing? Typically, we can do them in one day, but sometimes they will take two days. I just want to get a feel.

MS. FRANKLIN: Your Honor, I think that may depend on -- well, it would depend on how many claims are being asserted, and, right now, I suppose we're to anticipate that two more patents will be included in the litigation. I don't believe that Plaintiff has indicated which claims in those patents are being asserted.

THE COURT: Well, that's a fair point. I think what I'll probably do is to look for a two-day time period that I can offer to you.

MR. DENENBERG: It would also, obviously, depend, Your Honor -- Dave Denenberg again -- Mr. Flaherty talked of experts at a Markman hearing, which would be up to you, and it's extrinsic evidence. Any party can ask to use extrinsic evidence, and part of expert discovery is not just on the dispositive issues

but on the claim-construction issues. There is always extrinsic evidence in the form of expert testimony or guidance at the Markman hearing. That could add time, as well as how many of the parties, or the interested parties, participate might also be a time issue.

THE COURT: I can tell you that, unless there were some true ambiguity that remained after looking at all of the intrinsic evidence, expert testimony would be disfavored, but I'm not precluding it. Maybe this is a case where truly ambiguities may remain. I won't prejudge that. I can just tell you that it's not something I would give a lot of weight to in a normal situation.

So, in any event, why don't you take the schedule up to the Markman hearing, and you can go ahead and include in the schedule the fact that the dispositive motions would be expected within 28 days after the Markman decision comes down. Since we don't know for sure when that date will be right now, it seems problematic to try to go beyond that. So is there anything else this afternoon?

MR. DENENBERG: The only thing I would close with -- Dave Denenberg again for Plaintiff -- is, in resolving these discovery issues, I wanted to thank the Court for being involved and so accessible, if you

will.

I'm hoping that I don't have to come to you with another discovery issue, but, like I said, the detailed information that we really need to take the depositions -- the verification of interrogatories, the actual process descriptions, and amounts of material being treated and then disposed upland -- still waits to be -- I may have to come back. I'm hoping not.

MR. FLAHERTY: Well, Your Honor, if I could just speak for DonJon on that -- this is Jack Flaherty -- it is our intention to, at least, on our side, try to expedite, to the extent we can, both providing the Plaintiff with access to materials that he identifies for us that he is interested in, and we certainly have a very real interest in getting the materials upon which the Plaintiff relies, to the extent he has suggested to the government that any activity by DonJon infringes the patent. So we'll work with the Plaintiff on both sides of that equation, Judge.

THE COURT: Well, thank you. This case strikes me as one that could quickly get out of hand, if we allow it to, and I can tell you that we're not going to let that happen. We have very capable counsel here, and I just want you to continue giving

this matter priority and being creative to work out different ways to be as efficient as you can, and I will do my level best to give you prompt service anytime you come here.

So let's move ahead in that vein, and please don't wait to contact us, if you have issues you want to discuss.

MS. FRANKLIN: Thank you, Your Honor.

ALL: Thank you very much, Your Honor.

THE COURT: Thank you. We'll hear from you on a schedule by the end of the day on the 22nd of February, and then we'll look for your agreed-upon protective order very promptly, whenever you get it finished.

ALL: Thank you, Your Honor.

THE COURT: Thanks again. Thanks for being available.

(Whereupon, at 2:45 p.m., the hearing in the above-entitled matter was concluded.)

//

//

//

//

//

//

REPORTER'S CERTIFICATE

DOCKET NO.: 06-472C
CASE TITLE: TDM America LLC v US
HEARING DATE: 2/15/07
LOCATION: Washington DC

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before US Court of Federal Claims.

Date: 2/15/07

Official Reporter
Heritage Reporting Corporation
Suite 600
1220 L Street, N.W.
Washington, D.C. 20005-4018