Exhibit 26

**U.S. Department of Justice**

Civil Division

EAF
154-06-472

Telephone: (202) 353-0517
Facsimile: (202) 307-0345

*Washington, D.C. 20530*

August 15, 2007

**VIA E-MAIL**

David W. Denenberg, Esq.
Michael A. Adler, Esq.
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158

Re: *TDM v. UNITED STATES,*
Court of Federal Claims No. 06-472

Dear Mr. Adler:

I am in receipt of your letter dated August 13, 2007. In your letter you raise a number of issues that I am willing to discuss with you further. However, in this letter I am compelled to address your unsupported allegations and blatant misrepresentations regarding the Government's discovery activities. First, you charge that the Government has indiscriminately designated the deposition transcripts of its witnesses as proprietary without referencing any particular testimony or providing reasoning for your challenge. As you will recall, in a number of instances, your examination of Government witnesses involved questions relating to proprietary processing methods and reference to proprietary documents. Appropriately, Government counsel designated the transcripts as a result of the deposition testimony that was provided.

Nevertheless, the Government acknowledges that there are portions of the testimony that may not require protection. Consequently, the Government is diligently working to review each transcript designation to determine for which portions of the testimony it may remove previous designations. In most instances, this determination requires the assistance and approval of the contractor or subcontractor for which the information relates. As you are aware, the Government witnesses have provided deposition testimony on ten separate occasions in a relatively concentrated time frame. Additionally, the Government has prepared and served responses to numerous discovery requests during that same time frame. Further, as you acknowledge in your letter, each time that your office has requested an expedited review of selected portions of these deposition transcripts for removal of previous protective designations, the Government has complied in a timely manner.

We are confused as to why you assert that "the US had mentioned earlier that it believed it had thirty (30) days to designate such testimony as proprietary...." This statement was never made by any representative of the Government. Moreover, your statement, if true, would address the initial designation of transcripts rather than the removal of previously applied designations. Equally confusing is your threat to seek court intervention "if the US does not provide a detailed and specific designation of transcript testimony" by this Friday. Again, the Government has already designated the deposition transcripts. Your request is that the Government review its designations and consider removing them. While the Protective Order does not establish a time frame for removing such designations, the Government is working to review its designations and will provide you with revised designations upon completion of the review.

Next you challenge the Government's listing of witnesses in its Initial Disclosures. Review of Court of Federal Claims Rule governing initial disclosures of individuals likely to have discoverable information will resolve this issue. *See* RCFC 26(a)(1)(A). As explained in RCFC 26(a)(1)(A), disclosure of each individual likely to have discoverable information is required to the extent that the disclosing party may use such individuals to support its claims or defenses. Therefore, RCFC 26(a)(1)(A) does not require the Government to identify every individual in the agency that is "likely to have discoverable information," as your letter suggests. Additionally, you inaccurately state that "none of the contracting officers ... for any of the relevant USACE contracts were ever identified by the US in its initial disclosures or at any subsequent time." Even as your letter acknowledges, Ms. Ella Snell, a USACE Contracting Officer for the New York District was identified in the United States' Initial Disclosures. Also disclosed were contracting personnel from the Los Angeles and Jacksonville Districts. Moreover, the identification of additional contracting officer representatives were provided during deposition testimony and you have subsequently deposed several of those representatives.

With regard to responding to interrogatories exceeding the number permitted under RCFC 33(a), the United States acknowledges that this number was increased in the Joint Discovery Plan. The United States also accepts your proposal to discuss your preference for which additional interrogatories the United States should respond. This discussion will be useful, as the Government count of TDM's interrogatories totals 123. During this discussion, we may address other issues you raised relating to the Government's responses to interrogatories.

Your next discovery issue addresses information contained on USACE Dredging Information websites and the contracts identified in this litigation involving the processing of dredged material. The United States disagrees with your assertion that information relating to these items has not been provided. Requested information has been addressed in deposition testimony and in verified interrogatory responses.

Finally, your letter addresses a nonexistent agreement to pay for TDM's copying expenses. While you are correct in asserting that the Government stated in its July 31, 2007 letter that it is amenable to discussing an arrangement for sharing costs relating to document productions in this litigation, no "representation" of an agreement has been made. Review of the

transcript from Kerri Mullins' deposition reveals that our discussion related to objections that counsel for Donjon and the Government raised relating to your untimely production of documents you received pursuant to a subpoena issued to the New Jersey Department of Environmental Protection. You will recall that you first produced these documents as you presented them to the Donjon witness during the deposition. You attempted to defend yourself by stating, "Don't expect me to get you exhibits giving me less than a day's notice." To which I responded, "You could have sent that to me, you could have offered for me to pay for it, the mail. You could have identified the document, or as Mr. Flaherty had suggested, you could have properly produced it." Mullins Transcript. at 144. The only offer made during this discussion was to assist you with the cost of mailing documents that you intended to use the next day as deposition exhibits, where such documents had not been previously produced. It is implausible that this exchange provided "guidance" to TDM that an agreement relating to sharing costs of document productions in this case had been reached.

Very truly yours,

Erica A. Franklin

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Civil Division

Exhibit 27

David W. Denenberg, Esq. (DWD-9951)
Michael A. Adler, Esq. (MAA-6626)
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue, 34th Floor
New York, New York 10158
Tel: (212) 557-7200
Fax: (212) 286-1884
**ATTORNEYS FOR PLAINTIFF**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TDM America, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-472 C |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SECOND AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION WITH DOCUMENT DEMAND**

TO: Erica A. Franklin
US Department of Justice
Civil Division
1100 L Street, NW
Suite 1100
Washington, DC 20001

**PLEASE TAKE NOTICE** that, pursuant to the Rules of the United States Court of Federal Claims ("RCFC"), Rule 30(b)(6), plaintiff TDM America, LLC ("TDM") will take the deposition upon oral examination of defendant The United States of America ("US") through one or more officers, directors, managing agents or other person who consent to testify on US's behalf concerning the categories listed in Exhibit A annexed hereto.

The deposition upon oral examination will take place on March 15, 2007 at 10:00 a.m. at the offices of Davidoff Malito & Hutcher, LLP, 444 North Capitol Street, N.W., Suite 841, Washington, D.C. 20001.

The deposition will take place before a notary public or other officer authorized by law to administer oaths.

Pursuant to Rule 30(b)(6) and 34 of the RCFC, the deponent shall produce for inspection and copying, within thirty (30) days of the date of service hereof, delivered to the law offices of Davidoff Malito & Hutcher, LLP 605 Third Avenue, 34th Floor, New York, NY 10158, all documents in his/her possession or control that were requested in plaintiff's first set of requests for production of documents and things to defendant pursuant to Rule 34 of the rules of the United States Court of Federal Claims, plaintiff's first set of interrogatories to defendant pursuant to Rule 33 of the United States Court of Federal Claims, and all documents that refer and/or relate to categories contained in Exhibit A annexed hereto.

The deposition may be videotaped. You are invited to attend.

Dated: February 21, 2007

**DAVIDOFF MALITO & HUTCHER LLP**
605 Third Avenue, 34th Floor
New York, NY 10158
212-557-7200
Attorneys for Plaintiff

David W. Denenberg (DWD-9951)
Michael A. Adler, Esq. (MAA-6626)

**Exhibit A**

Categories[1]

## I. General

1. The positions, offices, duties, responsibilities and knowledge of each of the persons listed in the US's initial disclosures;

2. All discovery responses up to and including the date of this deposition including the basis for objecting to any discovery requests to date;

3. The factual basis of any assertion, allegation and/or averment made in the US's answer to the complaint in this action;

4. The basis and nature of any information withheld on the grounds of privilege;

5. All documents produced by the US up to and including the date of this deposition;

6. The organizational, working and/or economic relationship between the US Army Corps of Engineers and any port authority and/or between the US Army Corps of Engineers in relation to the remainder of the US regarding dredging activities;

7. All documents referred to in the US's initial disclosures, but not produced by the US; and

8. The organizational structure of the United States Army Corps of Engineers.

## II. Contracts (beginning with fiscal year 1997 to the present):

9. Contracts for dredging activities;

10. Amendments to contracts for dredging activities;

11. Requests for proposals for dredging activities;

12. Solicitation proposals for dredging activities;

13. Addenda to proposals for dredging activities;

[1] The definitions set forth in Plaintiff's First Set of Interrogatories to Defendant Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims are incorporated herein by reference. The category headings are for convenience only and should not be interpreted to limit the subject matter.

14. Bids for dredging activities;

15. Amendments to any bids or proposals for dredging activities;

16. Quality control and quality assurance for dredging activities;

17. Technical sheets and other data for dredging activities;

18. Contractors' invoices, payment requests, bills and time management reports related to dredging activities;

19. The Port Authority of New York and New Jersey – Maintenance Dredging Contract MF-207A (March 1997);

20. Donjon Marine Co., Inc. – Berth Deepening Contract HH-934.553 (May 2006);

21. New York and New Jersey Harbor Kill Van Kill Channel Navigation Improvements 50 Ft. Project, IFB NO. W912DS-05-B-003;

22. Bid #W912DS-04-B-0003-0008;

23. Bid #W912DS-05-B-003 (NY & NJ Harbor, Kill Van Kill, 12/1/04);

24. Bid #W912DS-06-B-0007;

25. Bid #W912DS-04B-0006;

26. All contracts for dredging activities with ECDC Environmental, LLC;

27. All contracts for dredging activities with Clean Earth Dredge Technologies, Inc.;

28. All contracts for dredging activities with OENJ Cherokee Corporation;

29. All contracts for dredging activities with Bean Stuyvesant, LLC;

30. All contracts for dredging activities with Great Lakes Dredge & Dock Co.;

31. All contracts for dredging activities with Jay Cashman, Inc.;

32. All contracts for dredging activities with Weeks Marine Inc.;

33. All contracts for dredging activities with Donjon Marine Company, Inc.;

34. All contracts listed on attachment A of defendant's responses to plaintiff's first set of interrogatories (nos. 1-19);

35. Summaries showing quantities and qualities of dredging activities for each region and/or district within that region;

36. Total costs incurred by region and by district for dredging and treatment;

37. USACE websites and other documents that contain summaries of dredging activities and/or projected dredging amounts;

38. All documents that must be submitted under "Special Contract Requirements" (usually within 70 calendar days) that pertain to dredging activities; and

39. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents.

## III. Dredging, Dredging Methods and Processes

40. Processes, methods, manner, treatment, stabilization, retention, staging, handling, curing, remediation, fixation solidification and disposal for dredging materials at any port, harbor and/or waterway within the United States;

41. Bid solicitation proposal and amendment documents, pre-award files, contractor brochures and partnering documents;

42. Volume of dredging activities;

43. On-site inspectors and inspections for dredging activities;

44. All beneficial use determination permits (BUDs), waterside development contracts, state water quality permits and/or certificates, processing and disposal permits/requirements for the sites identified by a contractor or subcontractor on behalf of the US, dewatering permits, commercial zone permits, CZMs, and any documents submitted to the permit agencies for the issuance of these permits;

45. Summaries showing logging of dredging activities for each region and/or district within that region, that may include monthly summary reports of volumes and monthly progress reviews;

46. Photos of actual dredging activities; and

47. Quality control plans, disposal plans and de-watering quality assurance plans.

## IV. Patents

48. The patents in suit including claim term construction, all non-infringement invalidity, and unenforceability positions of defendant and the bases therefore;

49. Prior art to the patents in suit;

50. The opinion contained in the letter dated May 16, 2006 from Alan P. Klein, Intellectual Property Counsel for the Army addressed to Robert G. Fryling, Esq., Blank Rome, LLP, One Logan Square, 18th and Cherry Streets, Philadelphia, PA (19103-6998);

51. Letters and documents that mention patents, especially the ones that mention patent numbers; and

52. Any other opinions related to infringements of any of the patents in suit.

## V. Costs

53. The cost for dredging activities including license fees, if applicable; and

54. Total volumes and costs incurred by region and by district for the dredging, treatment and upland disposal of dredged materials;

55. Yearly summaries of volumes and costs for the dredging, treatment and upland disposal of dredged materials; and

56. Summaries of volumes and costs by contractors and/or subcontractors on behalf of the US for the dredging, treatment and upland disposal of dredged materials.

## VI. Other

57. Publicly disclosed summary and research & development information related to dredging activities; videos that show the processing of dredged materials carried out by any of USACE's contractors; USACE publications and media that contain segments on the processing and upland disposal of dredged materials; and other information disseminated by USACE including interviews that pertain to the processing and upland disposal of dredged materials;

58. Cornerstone Consulting; and

59. Portland Cement, Hercules Cement Company, and other cement companies.

# CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2007, I served a true and accurate copy of SECOND AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION WITH DOCUMENT DEMAND on counsel for the United States by Federal Express at the following address:

Erica A. Franklin
US Department of Justice
Civil Division
1100 L Street, NW
Suite 1100
Washington, DC 20001

and on counsel for Donjon Marine Company, Inc. by Federal Express at the following address:

Gary J. Campbell
McCarter & English LLP
225 Franklin Street
Boston, MA 02110

Michael A. Adler

Exhibit 28

# In the United States Court of Federal Claims

No. 06-472C

(Filed: February 16, 2007)

| | |
|---|---|
| TDM AMERICA, LLC, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant, | * |
| and | * |
| DONJON MARINE COMPANY, INC., | * |
| Third-Party Defendant. | * |

## ENTRY OF PROTECTIVE ORDER

On February 16, 2007, counsel for the parties filed a Joint Motion for Entry of Stipulated Protective Order, and a Proposed Protective Order. Counsel have represented that a Protective Order is necessary to ensure the protection of certain information that may be disclosed during this action. For good cause shown, the motion is GRANTED. Although the proposed order is more lengthy and detailed than those normally used, the Court hereby approves the Stipulated Protective Order submitted this day. The Court reserves the right to modify the Protective Order if the administration of it becomes overly complex or time-consuming.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>DONJON MARINE COMPANY, INC.,<br><br>Interested Party. | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**JOINT MOTION FOR ENTRY OF STIPULATED PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), plaintiff TDM America, LLC ("Plaintiff"), defendant United States, and interested party Donjon Marine Company, Inc., hereby move for entry of the attached Stipulated Protective Order, executed by counsel for each party.

Plaintiff brought this action seeking compensation for the alleged infringement of one or more claims of United States Patent Nos. 6, 293, 731 ("the'731 patent") and 5, 542, 614 ("the '614 patent"). A Protective Order is necessary to provide appropriate protection of confidential, nonpublic business and scientific information that will assist the parties and the Court in reaching an expeditious and just determination of the issues in this case. The attached Stipulated Protective Order sets forth the protections which the parties have agreed are sufficient for the production of protected material in this litigation.

For the above-stated reasons, the parties respectfully request that this motion be granted and that the attached stipulated Protective Order be entered.

***

Respectfully submitted,

DATED: February 15, 2007

s/David W. Denenberg
DAVID W. DENENBERG
MICHAEL A. ADLER
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Attorneys for Plaintiff TDM America

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

DATED: February 15, 2007

s/Erica A. Franklin
ERICA A. FRANKLIN
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345
Attorneys for Defendant United States

DATED: February 15, 2007

s/Gary J. Campbell
GARY J. CAMPBELL
MCCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6558
Facsimile: (617) 326-3097
Attorney for Interested Party Donjon Marine

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant,<br><br>and<br><br>DONJON MARINE COMPANY, INC.,<br><br>Interested Party. | No. 06-472 C<br><br>Judge Thomas C. Wheeler |

**PROPOSED STIPULATED PROTECTIVE ORDER**

It is stipulated and agreed by and between counsel for TDM America, LLC, the United States of America, and Donjon Marine Company, Inc., that the terms and conditions of this Protective Order shall govern the handling of documents, depositions, pleadings, exhibits and all other information exchanged by the parties in this Action, or provided by or obtained from non-parties in this Action. The parties have agreed and stipulated to the entry of an order pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims and their agreement is evidenced by the signatures of the attorneys of record.

**SCOPE**

1. This Protective Order shall apply to all originals and copies of documents, depositions, pleadings, exhibits and all other material or information subject to discovery in this Action, including responses to requests for production of documents, answers to interrogatories,

responses to requests for admissions, deposition testimony, expert testimony and reports, and all other discovery taken pursuant to the Rules of the United States Court of Federal Claims, as well as testimony adduced at trial, trial exhibits, matters in evidence and any other information used or disclosed at trial, hereafter furnished, directly or indirectly, by or on behalf of any party, non-party or witness in connection with this Action ("Discovery Material").

2. As used herein, "Producing Party" shall refer to any party to this Action and to any non-party who gives testimony or produces documents or other information, and "Receiving Party" shall refer to any individual who receives, is shown, or is exposed to material or information pursuant to this Protective Order.

**DESIGNATION**

3. Any Producing Party may designate all or any part of Discovery Material as "PROPRIETARY INFORMATION" or as "OUTSIDE ATTORNEYS EYES" in accordance with this Protective Order. PROPRIETARY INFORMATION" or "OUTSIDE ATTORNEYS EYES" material may be collectively referred to herein as "PROTECTED INFORMATION." The designation of any Discovery Information as PROPRIETARY INFORMATION or OUTSIDE ATTORNEYS EYES shall be deemed effective unless and until the Court orders otherwise or the Producing Party withdraws the designation.

4. Discovery Material falling into one or more of the following categories may be designated as PROPRIETARY INFORMATION: (i) proprietary research, development and/or technical information that is not publicly available and that is not expressly contained in public information; (ii) financial, business or commercial information that is not publicly available and that is not expressly contained in public information; and (iii) information categorized and

bearing Government-authorized markings, such as "FOR OFFICIAL USE ONLY (FOUO)," "Limited," "Limited Data Rights," "Restricted Rights," or other previously existing markings with similar import.

5. Discovery Material falling into one or more of the following categories may be designated as OUTSIDE ATTORNEYS EYES: (i) proprietary research, development and/or technical information that is not publicly available and that is highly sensitive; (ii) unpublished patent applications and patent prosecution documents that are not available upon request from the U.S. Patent and Trademark Office or any other patent office; and (iii) highly sensitive financial, business or commercial information that is not publicly available and that is not expressly contained in public information, such as, but not limited to, trade secrets, government cost estimates, audit reports, government analyses of proposals, bids or other financial information, and any information specifically labeled as containing sensitive business or commercial information by a bidder, offeror, or other submitter in accordance with government regulations permitting such labeling.

6. The Producing Party may designate documents or other Discovery Material as PROPRIETARY INFORMATION by placing a **"proprietary information"** legend on the document or thing. Where documents or other Discovery Material have already been labeled as "FOR OFFICIAL USE ONLY (FOUO)," "Limited," "Limited Data Rights," "Restricted Rights," the Producing Party may rely on such labels for designation of the material as PROPRIETARY INFORMATION. The Producing Party may designate documents or other Discovery Material as OUTSIDE ATTORNEYS EYES by placing an **"outside attorneys eyes"** legend on the document or thing.

7. In the event that discovery material categorized as PROPRIETARY INFORMATION or OUTSIDE ATTORNEYS EYES is produced in an electronic or other format that cannot be conveniently marked as described above, designation may be accomplished by placing a "**protected information**" or an "**outside attorneys eyes**" legend on the container or medium on which the information is stored and informing the receiving party of the designation in a cover letter.

8. Any party or non-party may designate discovery requests or responses (and the information contained therein) as PROPRIETARY INFORMATION or as OUTSIDE ATTORNEYS EYES by placing either of the following legends on the face of any such document:

> "Contains PROPRIETARY INFORMATION. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose PROPRIETARY INFORMATION is included;" or

> "Contains OUTSIDE ATTORNEYS EYES information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose OUTSIDE ATTORNEYS EYES information is included."

In the case of discovery requests or responses, a statement may also be included within the document specifying the portion(s) thereof designated as PROTECTED INFORMATION.

9. Any party or non-party may designate depositions and other testimony (including exhibits) as PROTECTED INFORMATION by so stating on the record at the time the testimony is given or in writing within 30 days after the transcript of the deposition or other testimony is prepared and received by the appropriate party. Such written notification shall identify the specific pages and lines of the transcript that contain information designated as PROTECTED

INFORMATION. The following legend shall be placed on the front of any deposition transcript (and, if videotaped, any copies of the videotape) containing PROTECTED INFORMATION:

> "Contains PROPRIETARY INFORMATION. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose PROPRIETARY INFORMATION is included;" or

> "Contains OUTSIDE ATTORNEYS EYES information. Designated parts not to be used, copied or disclosed except as authorized by Court Order or the party or parties whose OUTSIDE ATTORNEYS EYES information is included."

10. All PROTECTED INFORMATION material, or any excerpt, reproduction or paraphrase thereof, filed with the Court shall be filed in a sealed envelope or other appropriate sealed container on which the following shall be endorsed: (i) the caption of this Action; (ii) the words "PROPRIETARY INFORMATION – Restricted Access According to Court Order" or "OUTSIDE ATTORNEYS EYES – Restricted Access According to Court Order" as an indication of the nature of the content; and (iii) a statement in substantially the following form:

> "This envelope contains confidential information that is subject to the Court's Protective Order in TDM America, LLC. v. United States of America, No. 06-472 C, and is hereby filed under SEAL. This envelope shall not be opened nor the contents thereof to be displayed, revealed, or otherwise disclosed to any person except as authorized by the Protective Order or by order of this court."

The Clerk of Court is directed to maintain under seal all material filed in this Action which has been marked or designated, in whole or in part, as PROTECTED INFORMATION and filed in accordance with this Paragraph 10.

**USE**

11. All Discovery Material designated as PROTECTED INFORMATION shall be used only in preparation for, and in, the trial of this Action or any appeal therefrom and cannot be

used for any other purpose including, but not limited to, any other litigation, arbitration or claim. Nothing in this Protective Order shall preclude a Producing Party from using or disseminating its own PROTECTED INFORMATION material.

12. All material designated PROTECTED INFORMATION shall be protected from disclosure as specified herein, unless a party obtains an Order of the Court declaring that all or certain portions of such Discovery Material are not, in fact, protected.

13. Third parties and non-parties who provide information for use in this case may designate their deposition testimony, deposition of their officers or employees, and any documents or other information they produce, whether voluntarily or by subpoena, as PROTECTED INFORMATION to the same extent and in the same manner as parties to this Action and any such materials and information shall be treated by the parties to this Action in the same manner as materials and information so designated by a party. To the extent permitted by law, such third party or nonparty provider may intervene in this Action for the purpose of enforcing the provisions of this Protective Order as if they were a party.

**DISCLOSURE**

14. Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as PROPRIETARY INFORMATION may be disclosed by the Receiving Party only to the following persons:

(a) any "outside" attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings and attorneys for the Department of Justice;

(b) no more than two (2) "in-house" attorneys representing a party to this

Action, including counsel for any agency (each agency being treated as a separate "party" for purposes of this provision);

(c) support personnel for attorneys listed in sub-paragraphs (a) and (b) above, including law clerks, analysts, paralegals, secretaries, and clerical staff employed by the firm of any attorney identified in sub-paragraphs (a) or (b) and assisting in connection with this Action;

(d) any outside expert or consultant who is expressly retained or sought to be retained by any attorney described in sub-paragraphs (a) or (b) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work;

(e) no more than four (4) officers and/or project managers of each Receiving Party (including each accused agency), provided that they receive the PROTECTED INFORMATION for the sole and exclusive purpose of evaluating litigation strategy and that the total number of persons in paragraphs (b) and (e) herein does not exceed four (4);

(f) any interpreter, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony;

(g) service contractors (such as document copy services and graphic artists);

(h) any person who authored and/or was an identified original recipient of particular PROPRIETARY INFORMATION material sought to be disclosed to that person, or any deponent when the examining attorney has a good faith basis to believe the deponent is aware of the particular PROPRIETARY INFORMATION material sought to be disclosed;

(i) personnel of the Court and all appropriate courts of appellate jurisdiction; and

(j) any other person agreed to by the Producing Party in writing.

PROPRIETARY INFORMATION material shall not be disclosed to persons described in paragraphs 14(b), (d), (e) or (j) unless and until such person has executed the acknowledgment in the form attached as Exhibit A. PROPRIETARY INFORMATION material shall not be disclosed to any person unless such person is authorized to receive PROPRIETARY INFORMATION material pursuant to Paragraphs 14 and 16 of this Protective Order.

15. Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as OUTSIDE ATTORNEYS EYES may be disclosed by the Receiving Party only to the following persons:

(a) any "outside" attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings, attorneys for the Department of Justice, and Government agency counsel);

(b) support personnel for attorneys listed in sub-paragraph (a) above, including law clerks, analysts, paralegals, secretaries, and clerical staff employed by the firm of any attorney identified in sub-paragraph (a) and assisting in connection with this Action;

(c) any outside expert or consultant who is expressly retained or sought to be retained by any attorney described in sub-paragraph (a) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work;

(d) any interpreter, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony;

(e) service contractors (such as document copy services), jury consultants and graphic artists;

(f) any person who authored and/or was an identified original recipient of the

particular OUTSIDE ATTORNEYS EYES material sought to be disclosed to that person, or any deponent when the examining attorney has a good faith basis to believe the deponent is aware of the particular OUTSIDE ATTORNEYS EYES material sought to be disclosed;

(g) personnel of the Court and all appropriate courts of appellate jurisdiction; and

(h) any other person agreed to by the Producing Party in writing.

OUTSIDE ATTORNEYS EYES material shall not be disclosed to persons described in paragraphs 15(c), or (h) unless and until such person has executed the acknowledgment in the form attached as Exhibit A. OUTSIDE ATTORNEYS EYES material shall not be disclosed to any person unless such person is authorized to receive OUTSIDE ATTORNEYS EYES material pursuant to Paragraphs 15 and 16 of this Protective Order.

16. At least ten (10) days before the disclosure of any PROTECTED INFORMATION of the Producing Party is made to an individual described above in Paragraph 14, sub-paragraphs (d) or (j) or Paragraph 15, sub-paragraphs (c) or (h), an attorney for the Receiving Party shall serve a Notice on the Producing Party identifying said individual by name and including a curriculum vitae or equivalent resume setting forth such person's present residence and business address(es), current employer and job title, any company or companies by which that individual was employed during the past five (5) years, and a list of all consulting agreements or arrangements that said individual may have entered into during the past five (5) years; a list of all publications authored by the proposed expert during the past ten (10) years; past and present business relationships with any party to this action and any third party relating to the subject matter of the patents-in-suit. The lists should disclose the name and address of each

such entity for which consulting work is being, or has been, performed, and the subject matter of that consulting work. If disclosure of either the identity of the entity for which the work is being performed or the subject matter of that work, or both, is deemed proprietary by the Receiving Party or consultant, then the fact that certain information is being withheld on the basis that it is proprietary shall be disclosed by the Receiving Party or consultant, and any such information that is not deemed proprietary shall be disclosed. Such notice shall be accompanied by an executed acknowledgment from the individual to whom the disclosure is to be made, in the form of Exhibit A attached hereto. In the event that said individual enters into any subsequent consulting agreements or arrangements, the Receiving Party shall promptly notify the Producing Party of such agreements or arrangements. The Producing Party shall state any objections to the proposed disclosure of PROTECTED INFORMATION to any individual described in Paragraph 14, sub-paragraphs (d) or (j) or Paragraph 15, subparagraphs (c) or (h), and state the reasons therefore in writing to the Receiving Party within ten (10) days of receipt of the Notice. The parties shall in good faith attempt to resolve such objections. Upon the making of any such objection(s), the Producing Party shall have ten (10) days (or any additional time which may be granted by the Court or agreed to by stipulation of the parties) from sending its objection(s) in which to challenge, by filing an expedited motion or any other means acceptable to the Court, the disclosure of PROTECTED INFORMATION. Unless the Producing Party objects to the disclosure and files a motion in accordance with the Notice and timing provisions of this Paragraph 16 and Paragraph 30, the Producing Party waives its right to challenge the disclosure of PROTECTED INFORMATION to the identified individual(s), and the individual identified in the Notice shall be considered a qualified recipient of PROTECTED INFORMATION under the

terms of this Protective Order. Should the Producing Party properly object and file its objections with the Court, PROTECTED INFORMATION will not be disclosed pending resolution of the expedited motion. Before the disclosure of any PROTECTED INFORMATION of the Producing Party is made to an individual described above in Paragraph 14, sub-paragraphs (b) or (e), an attorney for the Receiving Party shall obtain from each such person an executed copy of the acknowledgment attached as Exhibit A and shall thereafter retain such executed acknowledgments at least until the Termination of this Action (defined below).

17. The recipient of any PROTECTED INFORMATION that is provided under this Protective Order shall maintain such information in a secure and safe area and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information.

**EXEMPTED MATERIALS**

18. Pursuant to procedure set forth in Paragraph 26, any party may seek to remove the restrictions set forth herein on the ground that information designated as PROTECTED INFORMATION has/had been:

(a) available to the public at the time of its production hereunder;

(b) available to the public after the time of its production through no act, or failure to act, on behalf of the Receiving Party, its counsel, representatives or experts;

(c) known to such Receiving Party, or shown to have been independently developed by such Receiving Party, prior to its production herein without use or benefit of the information;

(d) obtained outside of this Action by such Receiving Party from the Producing Party without having been designated as PROTECTED INFORMATION; provided, however, that this provision does not negate any pre-existing obligation of confidentiality;

(e) obtained by such Receiving Party after the time of disclosure hereunder from a third party having the right to disclose the same; or

(f) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or any third party without an obligation of confidentiality.

The Receiving Party shall have the burden of proof to remove the restrictions set forth herein based on grounds (a)-(f).

19. Pursuant to the procedure set forth in Paragraph 26, any party also may seek to remove the restrictions set forth herein on the ground that the information designated PROTECTED INFORMATION does not fall within the definitions of "PROPRIETARY INFORMATION" or "OUTSIDE ATTORNEYS EYES" set forth in paragraphs 4 and 5 above.

**INADVERTENT PRODUCTION/DESIGNATION**

20. The inadvertent production of documents subject to the attorney-client privilege or the attorney work-product doctrine will not waive the attorney-client privilege or the attorney work-product doctrine. In addition, the fact that a document was inadvertently produced shall not be used in any manner as evidence in support of any such alleged waiver. Upon a request from a party that has inadvertently produced any document which it believes may be subject to the attorney-client privilege or attorney work-product doctrine, each party receiving said document shall return it and all copies as soon as practicable, but not later than ten (10) business days, to the Producing Party. Nothing herein shall prevent the Receiving Party from

preparing a record for its own use containing the date, author, address(es), and topic of the document and such other information as is reasonably necessary to identify the document and describe its nature to the Court in any motion to compel production of the document or related documents. Such a record of the identity and nature of a document may not be used for any purpose other than preparation of a motion to compel in this Action. After the return of the document(s), the Receiving Party may challenge the Producing Party's claim(s) of privilege or work-product by making a motion to the Court.

21. The inadvertent failure by a party to designate Discovery Material as PROTECTED INFORMATION shall not be a waiver of such designation provided that the party who fails to make such designation informs the Receiving Party that such Discovery Material is PROTECTED INFORMATION within ten (10) days from when the failure to designate first became known to the Producing Party. The party receiving Discovery Material that the Producing Party inadvertently failed to designate as PROTECTED INFORMATION shall not be in breach of this Order for any use made of such Discovery Material before the Receiving Party is informed of the inadvertent failure to designate. Once the Receiving Party has been informed of the inadvertent failure to designate pursuant to this Paragraph 22, the Receiving Party shall take reasonable steps to, at the Producing Party's option, either ensure that all copies of any such Discovery Materials are returned promptly to the Producing Party or ensure that all copies of any such Discovery Materials are marked with the proper designation and distributed only as permitted under Paragraphs 14 through 18 of this Protective Order. If data or information has been extracted from any Discovery Materials that are subsequently re-designated pursuant to this Paragraph 21, to the extent possible, the information and/or data will be protected in accordance

with the re-designation.

## INADVERTENT DISCLOSURE

22. In the event that anyone shall inadvertently disclose PROTECTED INFORMATION, the party or person making the inadvertent disclosure shall, upon learning of the disclosure:

(a) Promptly notify the person to whom the disclosure was made that the disclosure contains PROTECTED INFORMATION;

(b) Promptly make all reasonable and necessary efforts to obtain the return of and preclude dissemination or use of the PROTECTED INFORMATION by the person to whom the disclosure was inadvertently made; and

(c) Promptly notify the producing party of the identity of the person to whom the disclosure was made, the circumstances surrounding the disclosure, and the steps that have been taken and will be taken to ensure against further dissemination or use of the PROTECTED INFORMATION.

## VIOLATION OF ORDER

23. In the event that anyone shall violate, or threaten to violate, any terms of this Order, the parties hereto agree that the aggrieved party may seek appropriate relief against such person.

## USE IN COURTROOM PROCEEDINGS

24. In the event that any PROTECTED INFORMATION is to be used in any court proceeding, mediation session or alternative dispute resolution proceeding, the Producing Party may seek an appropriate protective order from the Court before its introduction, and in any event,

it shall not lose its confidential status through such use, and the parties shall take all steps reasonably required to protect confidentiality during such use, unless the Court orders otherwise.

**THIRD PARTY REQUESTS**

25. If PROTECTED INFORMATION in the possession, custody, or control of any receiving party is sought by subpoena, request for production of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request or compulsory process of any court, administrative or legislative body, or any other person or tribunal purporting to have authority to seek such information by compulsory process or discovery request, including private parties, the receiving party to whom the process or discovery request is directed shall (i) give written notice as soon as is practicable by hand, e-mail or facsimile of such process or discovery request together with a copy thereof, to counsel for the producing party; (ii) cooperate to the extent necessary to permit the producing party to seek to quash or otherwise challenge such process or discovery request; and (iii) not make production or disclosure of such PROTECTED INFORMATION until the producing party consents in writing to production or the receiving party is ordered by a court of competent jurisdiction, explicitly or by operation of law, to produce or disclose such PROTECTED INFORMATION, so long as the order is not stayed prior to the date set for production or disclosure.

**OBJECTION TO DESIGNATIONS**

26. Any party may object to the designation by the Producing Party of any material as PROPRIETARY INFORMATION or OUTSIDE ATTORNEYS EYES. The process for making such an objection and for resolving the dispute shall be as follows:

(a) The objecting party shall notify the Producing Party in writing as to its

objections (s) to the designations. This notice shall include, at a minimum, a specific identification of the designated material objected to as well as the reason(s) for the objection.

(b) The objecting party shall thereafter have the burden of conferring either in person or by telephone with the party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute.

(c) Failing agreement, the objecting party may bring a noticed motion to the Court or by any other means acceptable to the Court for a ruling that the Discovery Material sought to be protected is not entitled to such designation. The Producing Party bears the burden to establish that the Discovery Material contains PROTECTED INFORMATION and entitled to such protection under this Protective Order.

Notwithstanding any such challenge to the designation of material as PROPRIETARY INFORMATION or OUTSIDE ATTORNEYS EYES, all such material so designated shall be treated as such and shall be subject to the provisions of this Protective Order until one of the following occurs: (a) the party who designated the material as PROPRIETARY INFORMATION or OUTSIDE ATTORNEYS EYES withdraws such designation in writing, or (b) the Court rules that the designation is not proper and that the designation be removed.

**RETURN/DESTRUCTION OF MATERIALS**

27. Not later than thirty (30) days after the Termination of this Action (defined below), all PROTECTED INFORMATION or OUTSIDE ATTORNEYS EYES material, including all copies and derivative works thereof, shall be returned to the Producing Party or, with advance written consent of the Producing Party, destroyed, except that each parties' outside counsel may maintain one copy for archival purposes. The Receiving Party with respect to any

PROTECTED INFORMATION material shall certify in writing that all such material, including PROTECTED INFORMATION material disclosed hereunder, has been returned or destroyed.

**MISCELLANEOUS PROVISIONS**

28. This stipulated Protective Order is without prejudice to the right of any party to seek further or additional protection of information for which the protection of this order is not believed by such party to be adequate. Nothing in this Protective Order shall be deemed to bar or preclude any Producing Party from seeking such additional protection, including, without limitation, an order that certain matter may not be discovered at all.

29. The entry of this Protective Order shall not be construed as a waiver of any right to object to the furnishing of information in response to discovery and, except as expressly provided, shall not relieve any party of the obligation of producing information in the course of discovery.

30. All notices required by any paragraphs of this Protective Order are to be made by facsimile or e-mail with a confirmation copy by First Class Mail to counsel representing the noticed party. The date by which a party receiving notice shall respond or otherwise take action shall be computed from the date of receipt of the notice if received at or prior to 5:00 pm EST. Any of the notice requirements herein may be waived in whole or in part, but only in a writing signed by an attorney for the Producing Party. All specified time periods are in business days.

31. Nothing in this Protective Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to this Action and, in the course thereof, relying in a general way upon his or her examination of PROTECTED INFORMATION produced or exchanged in this Action; provided, however, that in rendering such advice and in otherwise

communicating with his or her client, the attorney shall not disclose the contents of PROTECTED INFORMATION produced by any other party or non-party.

32. Execution of this Protective Order shall not constitute a waiver of the right of any party to claim in this Action or otherwise that any documents, or any portion thereof, are privileged or otherwise non-discoverable, or are not admissible in evidence in this Action or any other proceeding.

33. All persons receiving PROTECTED INFORMATION are prohibited from producing them to any other persons, except in conformance with this Protective Order. Each individual who receives PROTECTED INFORMATION agrees to subject himself/herself to the jurisdiction of this Court, or any other Court of competent jurisdiction, for the purpose of any proceedings relating to the performance under, compliance with or violation of this Protective Order.

34. For purposes of this Protective Order, "Termination of this Action" is defined to mean the exhaustion of all appeals from orders and final judgments in this Action or the settlement of this action by the parties.

35. The parties agree that the terms of this Protective Order shall survive and remain in effect after the Termination of this Action.

36. Any party may move at any time to modify the terms of this Protective Order. A party seeking to modify this Protective Order shall request only the minimum modification as is reasonably necessary to address the grounds upon which its motion to modify is based.

37. This Order may only be modified in writing, after agreement by all parties hereto, and by Order of the Court.

38. Any headings used in this Protective Order are for reference purpose only and are not to be used to construe or limit the meaning of any provision.

***

The foregoing Stipulated Protective Order is agreed to and accepted as to both form and substance.

Respectfully submitted,

DAVIDOFF MALITO & HUTCHER LLP

DATED: February 15, 2007

s/David W. Denenberg
David W. Denenberg
Michael A. Adler
605 Third Avenue - 34 Fl
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Attorneys for Plaintiff TDM America

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

DATED: February 15, 2007

s/Erica A. Franklin
ERICA A. FRANKLIN
Commercial Litigation Branch
Department of Justice
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345
Attorneys for Defendant United States

MCCARTER & ENGLISH, LLP

DATED: February 15, 2007

s/Gary J. Campbell
GARY J. CAMPBELL
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6558
Facsimile: (617) 326-3097
Attorney for Interested Party Donjon Marine

Case 1:06-cv-00472-TCW Document 24 Filed 02/16/2007 Page 21 of 22

**EXHIBIT A**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TDM America, LLC, | ) | |
| Plaintiff, | ) | No. 06-472 C |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF:** ____________________________

I, ______________________, declare and state under penalty of perjury that:

1. My address is ______________________________________.

2. My present employer is __________________________ and the address of my present employer is ____________________________________.

3. My present occupation or job description is ______________________.

4. I have received a copy of the Stipulated Protective Order in this action, which order was entered on ________________.

5. I have read and understood all of the provisions of the Stipulated Protective Order.

6. I will comply with all of the provisions of the Stipulated Protective Order.

7. I will hold in confidence, will not disclose to anyone not qualified under the Stipulated Protective Order, and will use only for purposes of this action, any PROTECTED INFORMATION that is supplied to me.

8. I will return each document and each other tangible thing that discloses or reveals any PROTECTED INFORMATION to the attorney who provided such document or other tangible thing to me. Moreover, I will deliver any copies, abstracts, summaries, notes, or other records regarding the contents of any PROTECTED INFORMATION to the attorney who provided such Proprietary Information to me.

9. I hereby submit to the jurisdiction of the United States Court of Federal Claims for the purpose of enforcement of the Stipulated Protective Order.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ______________________ ______________________________

Signature

**Exhibit 29**

**Tzortzatos, Dimitra**

**From:** Adler, Michael A.
**Sent:** Tuesday, September 04, 2007 10:55 AM
**To:** Erica.franklin@usdoj.gov; Flaherty, John; Campbell, Gary
**Cc:** Denenberg, David W.; Tzortzatos, Dimitra
**Subject:** TDM v. US
**Attachments:** Chapman_cv_2007 August 2007.pdf; 3985_001.pdf

Counsel:

Please find the attached undertaking and CV of Michael Chapman of The Analysis Group.

# MICHAEL J. CHAPMAN
**Vice President**

Phone: (202) 530-2017
Fax: (202) 530-0436
mchapman@analysisgroup.com

Analysis Group, Inc.
1899 Pennsylvania Ave. NW
Suite 200
Washington, DC 20006

Dr. Chapman, a Vice President of Analysis Group, Inc., specializes in the application of microeconomics and industrial organization to a wide variety of litigation matters and complex business problems. He has served as an economic expert in intellectual property, antitrust and commercial damages cases. In addition, he has performed research, prepared economic testimony, and provided assistance to attorneys in intellectual property, antitrust, antidumping, securities and commercial damages matters. Dr. Chapman's work spans a broad range of industries, including: pharmaceuticals, medical equipment, semiconductors, financial services, insurance, manufacturing, steel, agricultural products and consumer goods.

Dr. Chapman has taught microeconomics at the Massachusetts Institute of Technology's Sloan School of Management, the University of Michigan Business School, and the University of Wisconsin-Madison. He is currently an adjunct professor at the University of Maryland's Robert H. Smith School of Business and The McDonough School of Business at Georgetown University.

Dr. Chapman holds a Ph.D. in Economics from the Massachusetts Institute of Technology and a J.D. from the University of Michigan Law School. He also received a B.A. in Economics, Political Science, Comparative Literature and International Relations from the University of Wisconsin-Madison.

Prior to joining Analysis Group, Inc., Dr. Chapman was a Strategy Specialist with McKinsey & Company. Before that, he practiced as an International Trade Attorney with Shearman & Sterling.

## EDUCATION

| | |
|---|---|
| J.D. | University of Michigan Law School, Ann Arbor, MI |
| Ph.D., Economics | Massachusetts Institute of Technology, Cambridge, MA<br>*Majors*: Industrial Organization and International Economics |
| B.A. | University of Wisconsin – Madison, Madison, WI<br>Valedictorian, College of Letters and Science |

## PROFESSIONAL EXPERIENCE

2002 – Present Vice President, Analysis Group, Inc., Washington, D.C.

2000-2001 Strategy Specialist, McKinsey & Co., Washington, D.C.

1995-2000 Associate, Shearman & Sterling, Washington, D.C.

## TEACHING/RESEARCH EXPERIENCE

2007 Adjunct Professor, The Robert Emmet McDonough School of Business (Georgetown University)

2006-2007 Adjunct Professor, The Robert H. Smith School of Business at the University of Maryland.

- Top 15% Teaching Award Winner, 2006

2004 Senior Lecturer, MIT Sloan School of Management

1994-1995 Legal Writing Instructor, University of Michigan Law School

1994-1995 Textbook Editor, *Legal Problems of International Economic Relations, 2nd Edition* by John Jackson, William Davey, and Alan Sykes

1994-1995 Instructor, University of Michigan School of Business

Summer 1994 Instructor, University of Wisconsin – Madison, Department of Economics

1991-1993 Textbook Editor, *Macroeconomics, 6th Edition,* by Rudiger Dornbusch and Stanley Fischer

## PROFESSIONAL ASSOCIATIONS/MEMBERSHIPS

- American Economic Association
- American Bar Association
- Licensing Executives Society
- Supreme Court of the United States Bar
- Phi Beta Kappa

## ARTICLES

"Application of Game Theory to Intellectual Property Royalty Negotiations" (with John C. Jarosz), Licensing Best Practices: Strategic, Territorial and Technology Issues (2006)

"Liberalizing International Trade in Legal Services," Michigan Journal of International Law, Spring 1995 (with Paul Tauber).

Economic Integration and the Pattern of Trade, Ph.D. Dissertation (1992)

## SELECTED CASEWORK

### *LITIGATION CONSULTING*

#### TESTIFYING EXPERIENCE

- ***Elan Pharmaceuticals, Inc. et al. v. Eon Labs et al.***
  *United States District Court, Eastern District of New York (Case No. 03-CV-0006 (DLI, RLM))*
  Responsible for all aspects of analysis and report preparation in a litigation involving antitrust counterclaims concerning Skelaxin (a muscle relaxant). Analysis involved assessment of conclusions and analyses offered by an opposing expert. Expert report submitted. Deposition taken.

- ***Velcro Industries B.V. and Velcro USA Inc. v. Taiwan Paiho Limited***
  *United States District Court for New Hampshire, (Civil Action No. 1:04-cv-00242-JD)*
  Responsible for all aspects of analysis and report preparation in a litigation involving intellectual property damages concerning molded hook fasteners. Analysis involved determination of reasonable royalty damages and assessment of conclusions and analyses offered by an opposing expert. Expert report submitted. Deposition taken.

- ***Michael J. Therien v. The Trustees of the University of Pennsylvania***
  *United States District Court, Eastern District of Pennsylvania (Civil Action No. 04-4786 (BMS)*
  Responsible for all aspects of analysis and report preparation in a litigation involving damages allegedly caused by alleged failures to properly commercialize technology. Analysis involved determination of damages and assessment of conclusions and analyses offered by an opposing expert. Expert report submitted.

- ***NetRatings, Inc. v. SageMetrics Corporation***
  *United States District Court, Central District of California (CV05-4507 JFW (CWx)*
  Responsible for all aspects of analysis and report preparation in a litigation involving intellectual property damages concerning patents used in performing web analytics. Analysis involved determination of damages. Expert report submitted (jointly with John C. Jarosz).

- ***National Starch and Chemical Investment Holding Corporation, et al. v. Cargill, Inc. and MGP Ingredients, Inc.***
  *United States District Court for Delaware (C.A. No. 1443-GMS)*
  Responsible for all aspects of analysis and report preparation in a litigation involving intellectual property damages concerning patents used in high amylose maize products. Analysis involved determination of damages. Expert report submitted. Deposition taken.

- ***Satellite Tracking of People, L.L.C. v. Pro Tech Monitoring, Inc.***
  *United States District Court for the Middle District of Tennessee (Civil Action No. 3-05-0064)*
  Responsible for all aspects of analysis and report preparation in a litigation involving intellectual property damages concerning patents used in an electronic offender tracking and monitoring services. Analysis involved determination of damages. Expert report submitted.

- ***NetRatings, Inc. v. WebSideStory***
  *United States District Court, Southern District of New York (Civil Action No. 06-CV-878 (LTS) (AJP))*
  Responsible for all aspects of analysis and report preparation in a litigation involving intellectual property damages concerning patents used in performing web analytics. Analysis involved determination of damages. Expert report submitted (jointly with John C. Jarosz).

**LITIGATION SUPPORT EXPERIENCE**

- ***Chiron Corporation v. Genentech, Inc.***
  *United States District Court, Eastern District of California (Case No. S-00-1252 WBS GGH)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a patent directed to the active ingredient in Herceptin (an anti–cancer drug). Analysis involved determination of reasonable royalty and prejudgment interest damages.

- ***In Re: Cardizem CD Antitrust Litigation***
  *United States District Court, Eastern District of Michigan (Case No. 01-72806)*
  Responsible for all aspects of analysis and report preparation in an antitrust litigation concerning Cardizem CD (diltiazem hydrochloride). Analysis involved determination of the relevant antitrust market.

- ***In Re: Terazosin Hydrochloride Antitrust Litigation***
  *United States District Court, Southern District of Florida (Case No. 99-MDL-1317)*
  Responsible for all aspects of analysis and report preparation in antitrust litigation concerning Hytrin (terazosin hydrochloride). Analysis involved determination of the relevant antitrust market and calculation of damages.

- ***Dresses for Less, Inc. et al. v. CIT Group/Commercial Services, Inc. et al.***
  *United States District Court, Southern District of New York (Case No. 01 Civ. 2669 (WHP))*
  Responsible for all aspects of analysis and report preparation in an antitrust litigation involving the factoring industry. Analysis involved examination of antitrust liability issues, including market definition.

- ***R2 Technology, Inc. et al. v. Intelligent Systems Software, Inc.***
  *United States District Court, District of Delaware (Case No. 02-472-GMS)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a patent used in computer aided diagnosis (CAD) mammography equipment. Analysis involved determination of lost profit, price erosion and reasonable royalty damages.

- ***MuniAuction, Inc. et al. v. Thomson Corporation***
  *United States District Court, Western District of Pennsylvania (Case No. 01 1003)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a patent that enabled auctions to be conducted over electronic networks. Analysis involved examination of claims made for lost profit, price erosion and reasonable royalty damages.

- ***Reba Mansell et al. v. Raytheon Co. et al.***
  *United States District Court, Northern District of Texas – Dallas Division (Case No. 3-02CV-0425-M)*
  Responsible for all aspects of analysis and report preparation in a contract dispute concerning automatic vehicle locator systems. Analysis involved determination of damages owed due to an alleged breach of contract.

- ***Matsushita Electric Industrial Co. Ltd. v. Cinram International, Inc.***
  *United States District Court, District of Delaware (Case No. 01-882-SLR)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning patents directed to aspects of bonding substrates together to form optical discs, such as DVDs. Analysis involved determination of reasonable royalty and prejudgment interest damages.

- ***Plasma Physics Corporation v. National Semiconductor Corporation***
  *United States District Court, Eastern District of New York (Case No. 02-3459 (LDW/WDW))*
  Responsible for all aspects of analysis and report preparation in a litigation concerning patents used in semiconductor manufacturing. Analysis involved determination of reasonable royalty damages.

- ***Plasma Physics Corporation v. STMicroelectronics, Inc. et al.***
  *United States District Court, Eastern District of New York (Case No. 02-3475 (LDW/WDW))*
  Responsible for all aspects of analysis and report preparation in a litigation concerning patents used in semiconductor manufacturing. Analysis involved determination of reasonable royalty damages.

- ***Ira Sanders et al. v. The Mount Sinai School of Medicine et al.***
  *United States District Court, Southern District of New York (Case No. 03 CV. 7937 (JGK))*
  Responsible for all aspects of analysis and report preparation in a litigation concerning an alleged failure to perform in accordance with contractual obligations relating to the licensing of patented indications of botulinum toxin. Analysis involved determination of damages caused by the alleged breach of contract.

- ***Computer Associates International, Inc. v. Digex, Inc.***
  *Circuit Court For Prince George's County Maryland (Civil Action No. CAL03-02253)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning an alleged failure to perform in accordance with contractual obligations involving the provision of professional services. Analysis involved determination of breach of contract damages.

- ***BizProLink, LLC v. AOL Time Warner, Inc. and America Online, Inc.***
  *United States District Court, Southern District of Florida (*Civil Action No. 03-61903)
  Responsible for all aspects of analysis and report preparation in a litigation concerning an alleged failure to perform in accordance with contractual obligations involving the provision of industry-tailored online content, technology and business productivity tools. Analysis involved determination of breach of contract damages.

- ***Donner, Inc. v. American Honda Motor Co., Inc. et al.***
  *United States District Court, Eastern District of Texas, Texarkana Division (Case No.F: 03-CV-253)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a patent used in automobile entertainment systems. Analysis involved determination of reasonable royalty damages.

- ***Gary J. Colassi v. Cybex International, Inc.***
  *United States District Court, District of Massachusetts (Case Nos. 02-668-JEL/JGL and 02-11909 RWZ)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a patent used in treadmill deck suspension systems. Analysis involved determination of reasonable royalty damages.

- ***WEDECO UV Technologies, Inc. v. Calgon Carbon Corporation***
  *United States District Court, District of New Jersey (Civil Action No.: 01-924)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning a method patent used in the disinfection of potable water. Analysis involved determination of lost profits and reasonable royalty damages.

- ***Glaxo Group Ltd. et al v. Kali Laboratories, Inc.***
  *United States District Court, District of New Jersey (Civil Action No.:03-399)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning the appropriate size for a bond that was to be posted at the time of issuance of a preliminary injunction.

- ***Indiana Mills & Manufacturing, Inc. v. Dorel Industries, Inc.***
  *United States District Court, Southern District of Indiana (Case No. 1:04-CV-1102)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning alleged contract breach and patent infringement involving technology directed to automobile child restraint systems.

- ***Bavarian Nordic A/S v Acambis, PLC***
  *United States International Trade Commission (Case No. 337-TA-550)*
  Responsible for all aspects of analysis and report preparation in a proceeding concerning domestic industry definition and injury involving patents and proprietary technology directed to vaccines.

- ***Target Technology Co., LLC v. Williams Advanced Materials, Inc., et al.***
  *United States District Court, Central District of California (Case No. SACV04-1083 DOC (MLGx))*
  Responsible for all aspects of analysis and report preparation in a proceeding concerning reasonable royalty and design-around alternatives involving a patent directed to silver alloy sputtering targets for DVDs.

- ***Alpha International, Inc. v. General Foam Plastics Corp.***
  *United States District Court, Eastern District of North Carolina (Civil Action No. 4:01-CV-142-H(3))*
  Responsible for all aspects of analysis and report preparation in a litigation concerning claims of copyright infringement, trademark infringement, conversion and unjust enrichment involving the manufacture and sale of plastic toys.

- ***Bavarian Nordic A/S and Anton Mayr v. Acambis, Inc.***
  *United States District Court, District of Delaware (Case No. 05-614-SLR)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning claims of unjust enrichment and value of property associated with tortious conversion, unfair trade practices and unfair competition involving proprietary technology directed to vaccines.

- ***Applera Corporation v. Stratagene Corporation***
  *United States District Court, District Of Connecticut, Civil Action No. 3-04-cv-01881 (RNC)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning reasonable royalty and lost profits damages associated with the infringement of a patent that allows for simultaneous amplification and detection of nucleic acid using polymerase chain reaction techniques (*i.e.*, real-time PCR technology).

- ***MercExchange, L.L.C v. eBay, Inc. and Half.com, Inc.***

*United States District Court, Eastern District Of Virginia, Norfolk Division* (Civil Action No. 2:01cv736)
Involved in the preparation of a declaration assessing the appropriateness of issuing a permanent injunction in a patent case involving online auction technology in which liability has already been found.

- ***Biosynexus, Inc. v. Glaxo Group Limited and MedImmune, Inc.***
  *New York Supreme Court, County of New York (Case No. 604485/05)*
  Responsible for all aspects of analysis and report preparation in a litigation concerning the diminution of value associated with the delayed/failed development of a pediatric anti-infective drug.

- ***Geomatrix, LLC and David A. Potts v. Infiltration Systems, Inc.***
  *Connecticut Superior Court, District of Middlesex at Middleton (Case No.MMX-CV-05-4004477 S)*
  Responsible for all aspects of analysis and report preparation in a litigation involving misappropriation of trade secrets directed to leach field and septic tank technology.

***MANAGEMENT CONSULTING***

- Developed a strategy for improving the economic performance of key industries and regions in the State of Ohio.
- Developed a strategy for a large U.S. health insurer to confront and shape hospital consolidation in its core market.
- Identified and evaluated options available to a large pharmaceutical company for responding to emerging and anticipated changes on the payor side of the prescription drug market.

***LEGAL REPRESENTATIONS***

- Argued before the U.S. Court of Appeals for the Federal Circuit in an appeal of a decision by the International Trade Commission concerning large newspaper printing presses.
- Represented beryllium and uranium producers from Kazakhstan in antidumping proceedings before the U.S. Department of Commerce and International Trade Commission.
- Represented steel producers from Mexico and the People's Republic of China in antidumping proceedings before the U.S. Department of Commerce and International Trade Commission.
- Represented tomato growers from Mexico in antidumping proceeding before the U.S. Department of Commerce.
- Represented waste management company in merger proceedings before the U.S. Department of Justice.

**EXHIBIT A**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TDM America, LLC, | ) | |
| Plaintiff, | ) | No. 06-472 C |
| v. | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF:** Michael J. Chapman, Ph.D.

I, Michael J. Chapman, declare and state under penalty of perjury that:

1. My address is 7914 Edinburgh Dr., Springfield, VA 22153.

2. My present employer is Analysis Group, Inc. and the address of my present employer is 1899 Pennsylvania Ave, NW Suite 200 Washington, DC. 20006

3. My present occupation or job description is Economist.

4. I have received a copy of the Stipulated Protective Order in this action, which order was entered on February 15, 2007.

5. I have read and understood all of the provisions of the Stipulated Protective Order.

6. I will comply with all of the provisions of the Stipulated Protective Order.

7. I will hold in confidence, will not disclose to anyone not qualified under the Stipulated Protective Order, and will use only for purposes of this action, any PROTECTED INFORMATION that is supplied to me.

8. I will return each document and each other tangible thing that discloses or reveals any PROTECTED INFORMATION to the attorney who provided such document or other tangible thing to me. Moreover, I will deliver any copies, abstracts, summaries, notes, or other records regarding the contents of any PROTECTED INFORMATION to the attorney who provided such Proprietary Information to me.

9. I hereby submit to the jurisdiction of the United States Court of Federal Claims for the purpose of enforcement of the Stipulated Protective Order.

10. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: *Michael J. Chapman* *August 30, 2007*

Signature

Exhibit 30

**U.S. Department of Justice**

Civil Division

EAF
154-06-472

Telephone: (202) 353-0517
Facsimile: (202) 307-0345

*Washington, D.C. 20530*

September 13, 2007

**VIA E-MAIL**

David W. Denenberg, Esq.
Michael A. Adler, Esq.
DAVIDOFF MALITO & HUTCHER LLP
605 Third Avenue - 34 Fl
New York, New York 10158

Re: *TDM v. UNITED STATES,*
Court of Federal Claims No. 06-472

Dear Mr. Adler:

I am in receipt of your September 4, 2007 e-mail that attached the curriculum vitae and executed declaration of Michael J. Chapman, Ph.D. of The Analysis Group. The Government does not object to the disclosure of proprietary information to Dr. Chapman under the stipulated protective order in this case. However, the Government asserts that there is a conflict with respect to Dr. Chapman serving as an expert for TDM, as the managing partner of The Analysis Group, Mr. John Jarosz, is serving as the Government's expert in another case before the Court of Federal Claims involving patent infringement.

If you would like to discuss this issue, please contact me.

Very truly yours,

Erica A. Franklin

ERICA A. FRANKLIN
Attorney
Commercial Litigation Branch
Civil Division