**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM America, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant.<br><br>and<br><br>Donjon Marine Company, Inc.,<br><br>Interested Party. | Civil Action No. 06-472 C<br>Judge Thomas C. Wheeler |

**PLAINTIFF TDM AMERICA LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO RENEW ITS PREVIOUSLY-FILED MOTION PURSUANT TO RCFC 37 AGAINST THE UNITED STATES AND FOR AN ORDER DISMISSING THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO RCFC 56(f)**

Plaintiff TDM America, LLC ("TDM") respectfully submits this reply in further support of its motion to renew its previously-filed motion pursuant to RCFC 37 against defendant United States of America (the "US") and for an order dismissing the US' motion for partial summary judgment pursuant to RCFC 56(f) ("TDM's motion").

## I. Preliminary Statement

TDM's motion is predicated upon the US' disregard for this Court's December 17, 2007 Discovery Order (the "Order") and over fifteen (15) months of bad faith on the part of the US in failing to produce documents timely or to cooperate in providing discovery. The US blatantly disregarded the Order's January 15, 2008 deadline, granting itself an extension of time to comply therewith. Moreover, the US made no effort to advise the Court of its inability to comply with

the Order, even after TDM requested that Walter Brown, the US' lead attorney, do so. (See, the Declaration of Michael A. Adler dated January 24, 2008 submitted with TDM's moving papers (the "Adler Dec."), ¶¶5-6).

Instead, the US took the position that it could comply with the Order at any time after January 15, 2008 and that TDM should ask the Court for any enlargement of time to file its opposition necessitated by the US' self-granted extension. (Adler Dec., ¶¶ 5-7; Exs. C and F). Essentially, the US shifted the burden of its noncompliance onto TDM and simultaneously prejudiced TDM's ability to properly oppose the US' motion for partial summary judgment.

The US further argues that it timely identified all contract documents it provided, but neglects to admit that it still had to produce many more contract-related documents. Yet, this very position demonstrates the US' bad faith because it (i) did not comply with the Order directing it to identify <u>all</u> contract documents by January 15, 2008, and (ii) moved for summary judgment on eighteen (18) contracts, asserting no issue of fact related thereto, when it did not have all contract documents and could not produce or identify same in a timely manner.

This conduct is a clear indication of bad faith warranting sanctions. The US should have complied with discovery demands and produced all relevant contracts and contract-related documents. The US should have never filed its motion without the underlying facts (the contracts and contract related documents). Having filed its motion, the US should have complied with the Order. Being unable to comply, the US should not have granted itself an extension. Therefore, TDM's motion and the relief sought therein are wholly proper.

## II. <u>The US' Failure to Comply with the Order</u>

The Order states in relevant part:

> 10. Plaintiff's motion for Rule 37 sanctions is denied, without prejudice to being **reconsidered at a later date if the foregoing discovery matters remain unresolved.**

(Adler Dec., Ex. B at ¶ 10) (emphasis added). As set forth herein, to date such discovery matters remain unresolved.

The Order required the US to identify the documents by bates numbers that comprise the eighteen (18) contracts, as well as any amendments to the contracts, and any contractor submittals for each contract relating to treating methods or quantities of treated dredged material. (Adler Dec., Ex. B). Therefore, the US was ordered to identify all the contract documents which expressly included submittals and amendments. *Id.* If any of the contract documents were not produced, then, of course, the US should have produced them by January 15, 2008. Clearly, identifying only documents that had been produced by January 15, 2008, but omitting to identify contract documents that were not produced by January 15, 2008 - but should have been - is not complying with the Order.

The US admits that it failed to comply with the Order. (US' opposition[1], p. 2). The US states "not every document responsive to paragraph 6 of the Court's Order was produced and identified by January 15, 2008 . . ." (US' opposition, p. 2). In fact, by January 15, 2008, more than thirty-one (31) documents (comprising hundreds of pages) required by the Order were still absent from the US' production. (Adler Dec., Ex. C).[2]

Yet, the Order merely required the US to identify contracts and contract documents which were the subject of the US' motion for summary judgment. (Adler Dec., Ex. B). The US' inability to comply is demonstrative of its bad faith in moving for summary judgment. The US

---

[1] The "US' opposition" refers to the US' opposition to TDM's motion.

[2] The US was deceptive in that it only identified fifteen (15) missing documents but actually thirty-one (31) documents were missing. (Adler Dec., Ex. C). The US continues this deception when it alleges in its opposition that only three (3) documents were missing. (US' opposition, p. 2).

also refused to advise the Court of its inability to comply with the Order by January 15, 2008. (Adler Dec., ¶ 5-7). The US remained steadfast in its refusal to approach the Court even after TDM requested that it do so. *Id.* Moreover, although the US' opposition references a January 16, 2008 telephone conference with Michael Adler, attorney for TDM, it omits any mention of the fact that Walter Brown never committed to a date certain for the production of all documents. (US' opposition, p. 5 and Adler Dec., ¶6).

TDM requested that the US' motion for partial summary judgment be withdrawn (Adler Dec., ¶7), in view of the US':

(i) filing of its motion for partial summary judgment while knowing that not all relevant documents were produced and without identifying or, apparently, even reviewing all relevant documents;

(ii) failing to commit to a date by which all documents would be produced pursuant to the Order;

(iii) refusing to advise the Court of its noncompliance with the Order and need for an extension; and

(iv) long history of failing to provide timely discovery.

After all, how could the US move for summary judgment on an issue that necessitates review of the contracts and related contract documents, when the US did not even produce or identify those very documents? This is especially true because, as the US well knows, F.A.R. 52.227, the clause upon which its partial summary judgment motion is predicated, clearly implicates not only the base contracts, but all specifications and written provisions, including the submittals related thereto.[3] (Adler Dec., Ex. D at bates no. G010050784).

[3] The US' gratuitous comments that the submittals are not part of the contract are specious and irrelevant especially in view of the fact that the submittals are explicitly included in paragraph 6 of the Order.

Many of the documents identified by the US on January 15, 2008 were not produced to TDM with those bates numbers. (US' opposition, p. 6). The US itself was confused about whether these documents had been produced previously. *Id.* Moreover, the US admittedly produced other documents for the first time after January 15, 2008. (US' opposition, p. 7). In fact, the US admittedly did not complete its identification and production until February 6, 2008 – over three (3) weeks after the Court-ordered deadline. *Id.* The US' self serving 'rolling production' of documents does not remedy its failure to timely comply with the Order or its bad faith in moving for summary judgment based upon contracts it did not review or produce, and could not even timely identify. (Adler Dec., Exs. C and F). The US' protestations to the contrary are ironic given the fact that the Order was a result of TDM's second motion for sanctions against the US for its failure to identify and produce documents since the inception of this case.

**III. <u>The US' Bad Faith</u>**

The US' actions clearly evince consistent bad faith beginning with its refusal to provide timely discovery and interrogatory responses and continuing with the blatantly specious arguments contained in the US' opposition. For almost a year and a half, the US was not forthcoming with documents or interrogatory responses. (Adler Dec., Ex. A, pp. 18-23 and 41-44).

At the March 6, 2007 status conference, the US' counsel spoke of a 'rolling production.' (See Declaration of David W. Denenberg ("Denenberg Dec."), dated February 25, 2008, Ex. 1 at pp. 9, 16 and 23). Now, one (1) year later, the US' counsel still speaks of 'rolling production' and needing more time. (Adler Dec., Exs. C and F). Despite all this, the US considered it appropriate to file a motion for summary judgment on eighteen (18) US dredging contracts for

the New York district of the United States Army Corps of Engineers knowing that not all of the contracts, submittals and related documents were ever produced or identified. Therefore, the very filing of the US' motion for partial summary judgment without having produced the requisite discovery constitutes bad faith. And the US' bad faith does not stop here.

The US attempts to justify its misconduct by arguing that it complied because (i) it eventually produced and identified all documents pursuant to the Order and (ii) it identified by January 15, 2008 all documents that it already produced. Both of these arguments are meritless. First, the US' 'rolling production' and identification of documents finally and allegedly ending on February 6, 2008 – over three (3) weeks after the Court ordered deadline – does not constitute compliance. Second, attempting to justify the fact that the US could not identify documents by January 15, 2008 by arguing that it identified whatever had already been produced is nothing but circuitous reasoning, which only confirms that the US filed its motion for partial summary judgment in bad faith. And the US' bad faith does not stop here.

The US argues that TDM should have sought an enlargement of time to oppose the US' motion for partial summary judgment. In fact, it was the US' inability to properly produce and identify documents pursuant to the Order that necessitated an enlargement of time. Had the US sought leave of Court for more time to comply with the Order, the Court (and TDM) would have questioned the US' moving for summary judgment in the first place and would have provided more time for TDM to oppose such motion. The very fact that the US denies its responsibility and espouses such a ridiculous position is a further indication of bad faith. And, again, the US' bad faith does not stop here.

The US further argues that, because it would not have opposed a request by TDM for an enlargement of time, its conduct cannot be deemed bad faith. The US has it wrong. The US has

consistently acted in bad faith. Moreover, the Court issued the Order and it is up to the Court to remedy any noncompliance with that Order. The purpose of the Order was to provide TDM with all of the documents necessary to properly oppose the US' motion for partial summary judgment by a date certain -- documents the Court noted the US should have produced and identified prior to making a motion for summary judgment. (Adler Dec., Ex. B). Here, the US admittedly did not comply with the Order. (US' opposition, p. 2). Therefore, the Court can now provide a remedy for the US' disregard of the Order by granting the relief sought herein, *inter alia*, dismissal of the US' motion for partial summary judgment and imposition of Rule 37 sanctions against the US.

## IV. TDM's Motion is Not Moot

The US distorts the meaning of the Order to accommodate its noncompliance therewith. The US' sole argument is that eventually it complied with paragraph 6 of the Order. But the US self-servedly glosses over the fact that the January 15, 2008 deadline was missed. More perplexing is the US' assertion that TDM's motion is moot. TDM's motion is based upon over a year and a half of the US' failure to provide complete and timely discovery and the US' disregard of two (2) discovery orders, which orders followed TDM's motions under RCFC 37. (Adler Dec., Exs. B and G).

RCFC 56 discovery is designed to prevent a party bringing a motion for summary judgment while withholding important information which the non-movant requires to oppose the motion. RCFC 56(f). Here, this is exactly what occurred. The Order is predicated, *inter alia*, on RCFC 56 discovery. There can be no doubt that the US' failure to abide by the Order is proper grounds to dismiss the US' motion for partial summary judgment.

As a result of the US' actions, TDM was forced to rewrite the opposition many times. (Denenberg Dec., ¶4). Each rewrite changing because of additional documents produced by the US. *Id.* TDM also expended hundreds and hundreds of hours of attorney and paralegal time to navigate through the US' document production and identification because interrogatory responses were incomplete. *Id.* This time was expended before and after the Order. *Id.* The US admits it improperly identified documents by identifying documents it never produced. It took TDM much time to ascertain this and then raise this issue with the US. (Adler Dec., ¶¶ 8-9). The US' flippant response does not negate the fact that TDM incurred substantial monetary expenses as a result of the US' misconduct. Moreover, TDM incurred further expense to make the motions against the US. (Denenberg Dec., ¶4). Thus, TDM's motion is not moot.

## V. <u>A Finding of Subject Matter Jurisdiction Is Proper</u>

The Court of Federal Claims possesses the inherent authority to impose sanctions for abuses of the discovery process. *United Medical Supply Company, Inc. v. United States,* 77 Fed. Cl. 257 (Fed. Cl. 2007). RCFC 37 provides for the imposition of sanctions whenever a party abuses the discovery process or violates a court order. Sanctions are particularly appropriate against the US because the US continues to violate this Court's discovery orders. *Advanced America Services, Inc. v .The United States,* 32 Fed. Cl. 191 (Fed. Cl. 1994); *Creative Resources Group of New Jersey v. Creative Resources Group, Inc.* 212 F.R.D. 94 (E.D.N.Y. 2002).

The US argues that TDM's motion should be denied because such relief precludes the government from challenging subject matter jurisdiction under 28 USC §1498. The US asserts this would result in an unlawful waiver of sovereign immunity. However, as shown below, the US' reasoning is inherently flawed and must be rejected. Sanctions impacting subject matter

jurisdiction are routinely imposed by the courts, and such sanctions do not result in an unlawful waiver of sovereign immunity.

"Courts always have jurisdiction to determine their jurisdiction," and have the "power to compel discovery on jurisdictional issues." *Ilan-Gat Engineers, Ltd. v. Antigua Intern. Bank*, 659 F.2d 234, 240 (D.C. Cir. 1981) (*citing United States v. United Mine Worker*, 330 U.S. 258, (1947)). Upon failure by a party to provide discovery as set forth in a court order, pursuant to RCFC 37(b)(2)(A), courts are authorized to enter an "order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." RCFC 37(b)(2)(A).

"[A]n appropriate discovery sanction for refusing to respond to discovery requests on jurisdictional facts can be an adverse finding on the factual issue." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001). (*citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)). Indeed, there is "no reason why a court cannot, in an appropriate case, sanction a defendant who refuses to respond to appropriate discovery requests on a fact relevant to subject matter jurisdiction by entering an order establishing that fact as true." *Id. Gibson* further states:

> Subject matter jurisdiction cannot be established by consent of the parties, and a lack of subject matter jurisdiction is a non-waivable defect . . . But a sanction in the form of an adverse factual finding rests on neither consent nor waiver. Rather, it rests on the reasonable assumption that the party resisting discovery is doing so because the information sought is unfavorable to its interest. In such a case, the sanction merely serves as a mechanism for establishing facts that are being improperly hidden by the party resisting discovery . . .

*Id.* (internal citations omitted). In *Masi v. Steely*, the court ruled under Fed. R. Civ. P. 37(b)(2)(A) that plaintiff's residence outside of New Jersey on the date he filed the complaint

would "be taken as established" such that the "result of this sanction would be the dismissal of his claims (for lack of subject matter jurisdiction)." 242 F.R.D. 278, 286 (S.D.N.Y. 2007). The court held that a lesser sanction would not "serve Rule 37's goal of precluding disobedient parties from obtaining a benefit from disobedience." *Id.* Further, plaintiff's argument that the court could not order sanctions without a determination as to subject matter jurisdiction was rejected, based upon the court's "broad power to impose Rule 37(b) sanctions." *Id.* (*citing Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332 (2d Cir. 1997)). *See also Ilan-Gat Engineers, Ltd. v. Antigua Intern. Bank*, 659 F.2d 234, 239 (D.C. Cir. 1981) ("whatever defaults or sanctions were appropriate . . . should have been imposed on that date regardless of the merits of defendants' challenge to the court's subject matter jurisdiction"); *Pennar Software Corp. v. Fortune 500 Systems, Ltd.*, 2001 WL 1319162 at *5 (N.C. Cal. October 25, 2001); *Chilcutt v. United States*, 4 F.3d 1313, 1324 (5th Cir. 1993). (*citing Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 352 (1909)). Clearly, based on the above, the US' assertion of unlawful waiver of sovereign immunity must be rejected.

## VI. Conclusion

Based on the above, the relief sought in TDM's Motion should be granted in its entirety.

Respectfully submitted,

DAVIDOFF MALITO & HUTCHER LLP
Attorneys for Plaintiff

Dated: February 25, 2008

s/David W. Denenberg
David W. Denenberg
Michael A. Adler
605 Third Avenue – 34 Floor
New York, NY 10158
Tel: (212) 557-7200
Fax: (212) 286-1884