IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TDM America, LLC,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

and

Donjon Marine Company, Inc.,

Interested Party.

Civil Action No. 06-472 C
Judge Thomas C. Wheeler

**PLAINTIFF TDM AMERICA LLC'S FINDINGS OF UNCONTROVERTED FACTS PURSUANT TO RCFC 56(h)(1) IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. Preliminary Statement

Plaintiff TDM America, LLC ("TDM") respectfully submits its findings of uncontroverted facts pursuant to RCFC 56(h)(1) in support of its cross-motion for partial summary judgment.

The US, however, failed to file a RCFC 56(h)(1) findings of uncontroverted facts in support of the US' motion for partial summary judgment (the "US' motion"), making it impossible for TDM to respond pursuant to RCFC 56(h)(2). As stated in the accompanying memorandum, this is one of the bases for TDM's motion to strike the US' motion and/or for an order denying the US' motion.

## II. Findings of Uncontroverted Facts Applicable to All of the Contracts at Issue

1. TDM charged the US with infringement of four United States patents that are directed to methods and processes for treating[1] and/or processing dredged materials.[2] (First Amended Complaint, Docket No. 37).

2. These methods and processes are generally directed to in-situ (barge-based) and land-based techniques for solidifying and stabilizing contaminated dredged materials with an additive, such as portland cement,[3] so that the treated end product can be beneficially reused and disposed upland in an environmentally safe manner (patents-in-suit).

3. The end product of treated dredged material is important to the US because contaminated dredged material removed from a US port, harbor or other location, cannot be placed back into the ocean at the mud dumps[4] or deposited at the Historic Area Remediation Site ("HARS")[5] because federal, state and other guidelines restrict such uses of contaminated dredged material. (Denenberg Dec., Ex. 1 at pp. 34, 61-62).

---

1 This proposed findings of uncontroverted facts includes citations to pleadings and/or evidence. TDM provides the specific page numbers for the citations herein, but also relies on the entire cited reference where appropriate. As used herein the terms, "treating" and "processing" dredged material are interchangeable.

2 The four US patents-in-suit are: U.S. Patent No. 6,293,731, issued September 25, 2001 and entitled "Method for Treatment for Dredged Materials to Form a Structural Fill"; U.S. Patent No. 5,542,614, issued August 6, 1996 and entitled "Processing of Waste Material"; U.S. Patent No. 5,794,862, issued August 18, 1998 and entitled "Processing of Waste Material"; and U.S. Patent No. 5,007,590, issued April 16, 1991 and entitled "Apparatus and Method for Mixing Solid or Semi-Solid Wastes with Additives" (patents-in-suit).

3 Portland cement is a type of cement with specific characteristics, but does not imply a specific manufacturer.

4 Historically, most of the dredged material was disposed in the Atlantic Ocean, in and around an area known as New York Bight Dredged Material Site, commonly referred to as the mud dump.

5 HARS is an ocean disposal site designated in September 1997 by the US Environmental Protection Agency for placement of non-contaminated dredged material from the ports of New York and New Jersey.

4. The US' dredging contracts provide for treating dredged material with an additive as contemplated by the patents-in-suit.[6]

5. Dredging contracts are lengthy and highly technical documents, the formation of which begins with the bid process and is a detailed and lengthy process. (For example, see the Declaration of David W. Denenberg dated February 28, 2008 (the "Denenberg Dec."), Ex. 7; Ex. 30; Ex. 31; Ex. 32; Ex. 33; Ex. 34).

6. The US actively oversees its dredging contractor's work including the processing of dredged material, with quality control experts and inspectors.[7]

7. The US' procedure for awarding a dredging contract begins when the US releases an invitation for bid ("IFB"). (Denenberg Dec., Ex. 2 at pp. 9-17).

8. The IFB contains a bid template (which eventually becomes the base contract) that includes the line items for the contract. (*Id.*)

9. For the contracts at issue, the bid template typically includes a specific line item for processing, disposal and dewatering of dredged material for upland disposal.[8]

---

6 Denenberg Dec., Ex. 13 at bates nos. G01015 00428-G01015 00432; Ex. 14 at bates nos. G01010 504760-G01010 504763; Ex. 15 at bates nos. G01003 00229-G01003 00251; Ex. 16 at bates no. G01003 00467-G01003 00487; Ex. 17 at bates no. Donjon 006384; Ex. 18 at bates nos. Donjon 008608-Donjon 008610; Ex. 19 at bates nos. G01025 00996-G01025 01005; Ex. 20 at bates nos. G01025 00956-G01025 00962; Ex. 21 at bates nos. Donjon 008727-Donjon 008734; Ex. 22 at bates nos. G010125 01590-G010125 01594; Ex. 23 at bates nos. G01015 00003-G01015 00019; Ex. 24 at bates nos. G01014 07731-G01014 007749; Ex. 25 at bates nos. G01025 00243-G01025 00246; Ex. 26 at bates nos. G01025 00428-G01025 00448; Ex. 27 at bates nos. Donjon 007852-Donjon 007855; Ex. 28 at bates nos. Donjon 005436-Donjon 005439; Ex. 29 at bates nos. G01015 05150-G01015 05153 and G01015 05215-G01015 05312; Ex. 72; Ex. 73 at bates nos. G01005 05643-G01005 05645; Ex. 74; Ex. 75 at bates nos. G01006 00003-G01006 00012.

7 Denenberg Dec., Ex. 2 at pp. 9-17; Ex. 4 at bates nos. G01025 00085-G01025 00090; Ex. 5 at bates nos. G01010 05393-G01010 05398; Ex. 6 at bates nos. G01010 07203-G01010 07207; Ex. 7 at bates nos. G01010 06644-G01010 06649 and G01010 06761-G01010 06762; Ex. 8 at bates nos. G01010 11499-G01010 11504 and G01010 11580-G01010 11582; Ex. 9 at bates nos. G01010 06065-G01010 06070; Ex. 10 at G01010 05780-G01010 05784 and G01010 05938; Ex. 11 at bates nos. G003272-G003275; Ex. 12 at bates nos. G01010 03535-G01010 03540 and G01010 03702-G01010 03705; Ex. 51 at bates nos. Donjon 007791-007800 and Donjon 007682-007686; Ex. 52 at bates nos. G01010 04650-G01010 04655 and G01010 04790; Ex. 53 at bates nos. G01010 11165-G01010 11167 and G01010 11270-G01010 11275; Ex. 54 at bates nos. G01010 09326-G01010-09328 and bates nos. G01010 09433-G01010 09436; Ex. 55 at bates nos. G009227-009238; Ex. 56 at G01010 07793-G01010 07799; Ex. 57 at bates nos. G009063-G009069; Ex. 58 at bates nos. G01010 03129-G01010 03136..

10. The IFB contains, among other things, the specifications for every dredging contract. (Denenberg Dec., Ex. 2 at p. 11).

11. For each of the contracts at issue, the specifications incorporate section 00800 entitled "The Special Contract Requirements" (the "special contract requirements") and section 2900 (sometimes section 1200) entitled "The Technical Requirements Section," "The Technical Specifications Section" or "The Dredging and Disposal Section" ("the technical requirements").[9]

12. The special contract requirements and the technical requirements require contractors to submit a proposed disposal/work plan for the dredged material that includes, among other things, information regarding the processing/disposal facility, a detailed description of the methods and processes that will be used to treat the dredged material, and copies of all applicable state regulatory permits for the processing and disposal sites. (See n.9).

13. It is only after the US approves the submittals provided by a contractor in response to the special contracts requirements and/or the technical specifications that a contract will be awarded to a bidder. (Denenberg Dec., Ex. 2 at pp. 9-17).

14. Donjon's RCFC 30(b)(6) deponent, Kerri Mullins, testified, in relevant part:

---

[8] Denenberg Dec., Ex. 30 at bates no. G01005 07485; Ex. 35 at bates nos. G01004 00137-G01004 00139 and bates nos. G01004 00142-G01004 00149; Ex. 36 at bates nos. G01010 12837, G01010 12839, and G01010 12841-G01010 12843; Ex. 37 at bates nos. G01010 05260, G01010 05264, G01010 05266, and G01010 05270; Ex. 38 at bates no. G01013 11601; Ex. 39 at bates nos. G01010 12726-G01010 12732; Ex. 40 at bates nos. G01010 06793-G01010 06796; Ex. 41 at bates nos. G01010 06239-G01010 06241; Ex. 42 at bates no. G01010 05966; Ex. 43 at bates nos. G01010 04820 and G01010 04825; Ex. 44 at bates nos. G01004 00005-G01004 00009; Ex. 45 at bates nos. G01010 09500-G01010 09508; Ex. 46 at bates no. G01010 03155; Ex. 47 at bates no. G01013 02741; Ex. 48 at bates no. G0101009229; Ex. 50 at bates nos. G01014 01505-G01014 01599.

[9] Denenberg Dec., Ex. 2 at pp. 9-17; Ex. 4 at bates nos. G01025 00085-G01025 00090; Ex. 5 at bates nos. G01010 05393-G01010 05398; Ex. 6 at bates nos. G01010 07203-G01010 07207; Ex. 7 at bates nos. G01010 06644-G01010 06649 and G01010 06761-G01010 06762; Ex. 8 at bates nos. G01010 11499-G01010 11504 and G01010 11580-G01010 11582; Ex. 9 at bates nos. G01010 06065-G01010 06070; Ex. 10 at G01010 05780-G01010 05784 and G01010 05938; Ex. 11 at bates nos. G003272-G003275; Ex. 12 at bates nos. G01010 03535-G01010 03540 and G01010 03702-G01010 03705; Ex. 51 at bates nos. Donjon 007791-007800 and Donjon 007682-007686; Ex. 52 at bates nos. G01010 04650-G01010 04655 and G01010 04790; Ex. 53 at bates nos. G01010 11165-G01010 11167 and G01010 11270-G01010 11275; Ex. 54 at bates nos. G01010 09326-G01010-09328 and bates nos. G01010 09433-G01010 09436; Ex. 55 at bates nos. G009227-009238; Ex. 56 at G01010 07793-G01010 07799; Ex. 57 at bates nos. G009063-G009069; Ex. 58 at bates nos. G01010 03129-G01010 03136.

Q. In the event the IFB requires that certain material be treated with an additive for upland disposal, is Donjon required to submit a description of the processing of the dredge material in response to the IFB, via the 10-day submittal or the final submittal?

A. Yes.

* * *

Q. No[w], do you have the right to change the process, if you want to, for the treatment of dredge material?

A. Not that I know of.

(Denenberg Dec., Ex. 2 at pp. 11-18, 24, 28).

15. The US is aware of the processes for the treatment of dredged material and the disposal sites for same because a contractor who is selected as the apparent lowest bidder[10] is required to submit this information as part of a disposal/work plan pursuant to the contract specifications.[11]

16. For the years 2000-2003, the US' specifications for dredging contracts included a requirement that all dredged material be processed and disposed at the OENJ Cherokee Bayonne site in New Jersey ("OENJ"). (Denenberg Dec., Exs. 41, 45, 46, 48, 49 and 50).

---

[10] "Apparent lowest bidder" is the term used to refer to a winning bid by a contractor before that contractor is formally awarded the contract. This is because the contractor must submit additional information to the US, as required under the contract's special contract requirements and technical requirements.

[11] Denenberg Dec., Ex. 4 at bates nos. G01025 00085-G01025 00090; Ex. 5 at bates nos. G01010 05393-G001010 05398; Ex. 6 at bates nos. G01010 07203-G01010 07207; Ex. 7 at bates nos. G01010 06644-G01010 06649 and G01010 06761-G01010 06762; Ex. 8 at bates nos. G01010 11499-G01010 11504 and G01010 11580-G01010 11582; Ex. 9 at bates nos. G01010 06065-G01010 06070; Ex. 10 at G01010 05780-G01010 05784 and G01010 05938; Ex. 12 at bates nos. G01010 03535-G01010 03540 and G01010 03702-G01010 03705; Ex. 51 at bates nos. Donjon 007791-007800 and Donjon 007682-007686; Ex. 52 at bates nos. G01010 04587-G01010 04815; Ex. 53 at bates nos. G011314-G011318; Ex. 54 at bates nos. G01010 09326-G01010-09328 and bates nos. G01010 09433-G01010 09436; Ex. 55 at bates nos. G009227-G009238; Ex. 56 at G01010 07793-G01010 07799.

17. The technical requirements for the dredging contracts referred to in paragraph 16 above either (i) contractually authorize processing and disposal of dredged material at OENJ or (ii) list OENJ as an approved site for processing and disposal of dredged material. (*Id.*)

18. Section 2900 of the specifications for contract no. DACW51-C-02-0001 states in relevant part:

> **The Government has identified the following sites for the processing and disposal of "non-rock material that is unsuitable for placement at the HARS".** The Contractor shall coordinate with the operator of the disposal facility to ensure that the necessary facility requirements are included in the Contractor's bid price. **The Contractor is required to use the sites identified below.** The Contractor shall submit a schedule and the anticipated quantify to be disposed of at the disposal site at the pre-construction meeting.
>
> **1) The following site shall be the only upland site used for Item Number 001AC in the price schedule.**
>
> **Disposal Site: Bayonne Golf Course**
> **Operator: Cherokee/OENJ**
> **Location: 61 North Hook Road, Bayonne, NJ 07002**
> **Point of contact: Mr. Irving Cohen, President**
> **Phone number: 212 904-0705**
> **Location of Unloading Facility: Northeast corner of the property**

(See, for example, Denenberg Dec., Ex. 58 at bates nos. G01010 03133-G01010 03134) (emphasis added).

19. In or about early 2004, OENJ shut down its processing plant. (Denenberg Dec., Ex. 59 at pp. 135-136; Ex. 60 at pp. 18-19).

20. Subsequent US contracts and specifications for dredging contracts required the contractors to identify a processing and disposal site for US approval.[12]

---

[12] Denenberg Dec., Ex. 4 at bates nos. G01025 00085-G01025 00090; Ex. 5 at bates nos. G01010 05393-G01010 05398; Ex. 6 at bates nos. G01010 07203-G01010 07207; Ex. 7 at bates nos. G01010 06644-G01010 06649 and G01010 06761-G01010 06762; Ex. 8 at bates nos. G01010 11499-G01010 11504 and G01010 11580-G01010 11582; Ex. 9 at bates nos. G01010 06065-G01010 06070; Ex. 10 at G01010 05780-G01010 05784 and G01010

21. A standard section 00800 special contract requirements states, in relevant part:

> 1.45 The Apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder; that the contractor identified offloading, **processing** and disposal site(s) is **operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supplies/Services (Price) Schedule** and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.
>
> The contractor identified offloading, processing and disposal site(s) must have sufficient capacity to receive all the dredged material from the project site. **The apparent low bidder is required to perform all work to demonstrate that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all dredged material on that date for the in-situ quantity as per the Supply/Service (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection** and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material. Offloading, **processing** and disposal of **the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible.** Dredging, dewatering and/or **other processing (if any), transfer, transportation** and material disposal shall be performed in accordance with applicable laws and requirements of all associated permits, approvals and government authorities having jurisdiction.
>
> The Apparent Low Bidder shall be officially notified by the contracting officer and instructed to submit the following information, within 5 Calendar days from the date the Apparent Low Bidder is notified of being the low bidder, for the site(s):

05938; Ex. 12 at bates nos. G01010 03535-G01010 03540 and G01010 03702-G01010 03705; Ex. 51 at bates nos. Donjon 007791-007800 and Donjon 007682-007686; Ex. 52 at bates nos. G01010 04587-G01010 04815; Ex. 53 at bates nos. G011314-G011318; Ex. 54 at bates nos. G01010 09326-G01010-09328 and bates nos. G01010 09433-G01010 09436; Ex. 55 at bates nos. G009227-009238; Ex. 56 at G01010 07793-G01010 07799.

The Apparent Low Bidder must submit five (5) copies of:

a) Name of the contractor identified offloading, processing and disposal site(s).

Narrative of **no more than seven (7) pages** detailing the operation to move the dredged material from the dredging site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The information identified in paragraph 1A.1 shall be attached to the synopsis. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and/or disposal facility including site capacity.

b) **Evidence Demonstrating that the contractor identified offloading, processing and disposal site(s) is Permitted, Operational**, Capable of Offloading, Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government **within 70 calendar days** from the date the Apparent low bidder is notified of being the low bidder that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material for the in-situ quantity as per the Price Schedule **by calendar day 70** from the date the Apparent low bidder is notified of being the low bidder and that the offloading, **processing and/or disposal site(s) is in compliance with the New Jersey Department of Environmental Protection** and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent Low Bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

f) Processing Capabilities - **The Apparent Low Bidder must provide the following:**

1) **Provide detailed description of the proposed processing technology, including but not limited to, the following stages, if applicable:**

   a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

   b. **Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used**, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

   c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the time frame it will be used, if applicable.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

(See, for example, Denenberg Dec., Ex. 8 at bates nos. G01010 11499-G01010 11504) (emphasis added).

22. Section 01200 states, in relevant part:

> **6. SUBMITTALS: The Contractor shall submit for approval, by the Contracting Officer and/or his Representative, his progress schedule and plans for dredging, offloading, transportation, dewatering, processing, and placement of dredged material in approved upland disposal site, as specified in the Technical Proposal.** The plan shall also show the manner in which dredged material will be distributed in the disposal area. The contractor shall submit any proposed modifications to the placement area. This plan shall show areas or portions thereof to be used. Such plans shall be provided by the contractor at the Preconstruction Conference (Section 00800 - Special Contract Requirements, paragraph 34). Nevertheless, such modification, if any, may not affect the bid price.

(See, for example, Denenberg Dec., Ex. 8 at bates no. G01010 11580).

23. Contract specifications require that the apparent low bidders' submittal include, *inter alia*, a detailed description of the treatment processes and methods used for treating dredged material for upland disposal, all necessary permits, and proof that it has the ability to treat the dredged material in accordance with the detailed description of the method for treating dredged material submitted to the US. (Denenberg Dec., Ex. 8 at bates nos. G01010 11499-G01010 11504, G01010 11580).

24. The US contractually designates a specific processing/disposal site for its dredging contracts. (See, for example, Denenberg Dec., Ex. 58 at bates nos. G01010 03133-G01010 03134).

25. Each US dredging contractor must convince the US that it has the appropriate experience and knowledge in the methods and processes to treat dredged material prior to commencing any work under the contract. *(Id.)*

26. The dredging contract specifications require the apparent low bidder to demonstrate to the US that it, or its subcontractors, obtained all requisite regulatory agency (i.e., the New Jersey Department of Environmental Protection) (the "NJDEP") permits before work can commence. (See, for example, Denenberg Dec., Ex. 8 at bates nos. G01010 11499-G01010 11534).

27. The permits describe the processing of dredged material in detail, including processing requirements and equipment to be used for such processing. (See, for example, Denenberg Dec., Ex. 13). If the contractor fails to provide any part of the above information, it cannot be awarded the contracts or commence work. (Denenberg Dec., Ex. 2 at pp. 24-25; Ex. 4 at bates no. G01025 00029).

28. If the contractor fails to adhere to (i) the requirements accordant with the relevant regulatory agency permits and/or (ii) the required plans submitted for the methods and processes for treating dredged material, the contractor would be in breach. (Denenberg Dec., Ex. 1 at pp. 133-137).

29. The US' motion admits that the controlling authorization clause for the contracts at issue is FAR 52.227-1. (The US' motion, pp. 4 and 10).

30. FAR 52.227-1 (the "Authorization Clause") states:

> The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, **or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.** The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

(emphasis added).

31. The US publicly disseminated a DVD produced and distributed by the US entitled the "Beneficial Use of Dredging Material, Harbor Programs Branch/US Army CoE" (the "DVD"). (Denenberg Dec., Ex. 79).

32. The DVD was produced by the New York District of USACE and scripted by Bryce Wisemiller,[13] a project manager for the Programs and Project Management Division,

[13]Mr. Wisemiller was one of the first 30(b)(6) witnesses produced for a deposition by the US.

**SEALED PORTION**

page 12 to 26

115. This contract and the corresponding specifications contain the special contract requirements which require the contractor to describe the proposed method for treating dredged material. (Denenberg Dec., Ex.30 and Ex. 8 at bates nos. G01010 11499-G01010 11534).

116. The specifications for this contract contain technical requirements, namely Section 01200 which states, *inter alia*:

> **5. PERMITS:**
>
> **a. The contractor shall obtain and possess all permits** (as applicable), as required in accordance with Contract Clause entitled: "PERMITS AND RESPONSIBILITIES" (FAR 52.236-7), **for dewatering and/or other processing (if any),** the offload, transfer, transportation and **final disposal of all dredged materials,** and shall submit evidence of such permits and approvals to the Government. **Disposal shall be in a fully permitted facility that has been permitted by the host state to accept material as dredged under work of this contract.**
>
> * * *
>
> **6. SUBMITTALS:** The Contractor shall submit for approval, by the Contracting Officer and/or his Representative, his progress schedule and plans for dredging, offloading, transportation, **dewatering, processing and placement of dredged material in approved upland disposal site**, as specified in the Technical Proposal. The plan shall also show the manner in which dredged material will be distributed in the disposal area. The contractor shall submit any proposed modifications to the placement area. This plan shall show areas or portions thereof to be used. Such plans shall be provided by the contractor at the Preconstruction Conference (Section 00800 - Special Contract Requirements, paragraph 34).

(Denenberg Dec., Ex. 8 at bates no. G01010 11580 - G01010 11583) (emphasis added).

117. Section 1200 states, in relevant part:

> **8. PLACEMENT OF DREDGED MATERIAL**
>
> d. Any material that is deposited in areas, which were not intended to be used as disposal areas in this contract, will not be paid for and may be required to be removed and deposited at a location

**SEALED PORTION**

Page 28 to 39

(Denenberg Dec., Ex. 62 at pp. 96 through 98).

191. The specifications discussed above comprise the written provisions which are a part of contract no. 2-C-0001. (See all of the above for this contract.)

**Contract No. DACW51-02-C-0002**

192. Contract no. DACW51-02-C-0002 ("contract no. 02-C-0002") was awarded to Cruz Construction, Corp. for dredging of the Joseph G. Minish Passaic River Waterfront Park and Historic Area Newark, New Jersey. (Denenberg Dec., Ex. 80).

193. The US and TDM agree that contract no. 02-C-0002 includes the Authorization Clause. (Motion, pp. 4 and 10).

194. The US did not identify a processor for this contract, nor did it identify the project location or placement site for this contract. (Denenberg Dec., Ex. 63).

**Contract No. DACW51-02-C-0019**

195. Contract no. DACW51-02-C-0019 (contract no. 02-C-0019) was awarded to Bean Stuyvesant for dredging of the New York Harbor Kill Van Kull and Newark Bay Channels, navigation improvement contract phase II, contract 7. (Denenberg Dec., Ex. 47).

196. The US identified Clean Earth as the processor for this contract. (Denenberg Dec., Ex. 63).

197. The contract contains specific line items for the processing of dredged material that identifies OENJ as the processing/disposal site or in the alternative asks the contractor to list another site. (Denenberg Dec., Ex. 47 at bates no. G01013 02741).

198. The US and TDM agree that contract no. 02C-0019 includes the Authorization Clause. (US' motion, pp. 4 and 10).

199. The specifications for this contract state in relevant part:

**SEALED PORTION**

Page 41

205. The US and TDM agree that contract no. 02-C-0022 includes the Authorization Clause. (US' motion, pp. 4 and 10).

206. The specifications for contract no. 02-C-0022 required OENJ to be used for the processing of dredged material. (Denenberg Dec., Ex. 57).

207. Section 1200 of the specifications for this contract state in relevant part:

> TECHNICAL SPECIFICATIONS
>
> 1. WORK COVERED BY CONTRACT PRICE: The work consists of furnishing all plant, labor, materials and equipment, and performing all work in strict accordance with the specifications and drawings for the dredging of material from Newark Bay Main Channel and Port Newark Channel of Newark Bay, Hackensack & Passaic Rivers, N.J. Federal Navigation project, its processing and disposal at the OENJC site in Bayonne, N.J.
>
> * * *
>
> **6. SUBMITTALS: The contractor shall submit for approval, by the Contracting Officer and/or his Representative, his progress schedule and plans for dredging, processing, and placement of dredged material in approved OENJC upland disposal site. (G009066)**
>
> * * *
>
> **j. Disposal Plan: The contractor shall submit for approval his disposal plan at the Pre-Construction Conference (Section 00800 – 35). The disposal plan shall include all special conditions (i.e. NJDEP CZM and WQC, etc.) specific to OENJC site being used . . . . Plan also shall include any dewatering and/or processing of the dredged material that may be required before material will be brought to OENJC site for final disposal. . . . . Approval by the contracting officer or his representative is required prior to disposal site (s) preparation. (G009068-G009069).**

(*Id. at* bates nos. G009063, G009066, G009068-G009069) (emphasis added).

208. The US admits that submittals under this contract were not required. (Denenberg Dec., Ex. 70 at p. 24).

209. The specifications comprise the written provisions which are a part of contract no. 2-C-0022. (See all of the above for this contract.)

**Contract No. DACW51-01-C-0006**

210. Contract no. DACW51-01-C-0006 was awarded to Donjon for the dredging of the Kill Van Kull and Newark Bay channels navigation improvement project, phase II, area 7, contract 4, Elizabeth channel, N.J. (Denenberg Dec., Ex. 49).

211. The US identified OENJ as the processor for this contract. (Denenberg Dec., Ex. 63).

212. The US and TDM agree that contract no. 01-C-0006 includes the Authorization Clause. (US' motion, pp. 4 and 10).

213. Modification number P00014 to the base contract requires Donjon to dispose of all dredged material in accordance with section 02900. (Denenberg Dec., Ex. 77).

214. Section 2900 of the Specifications also requires the contractor to use the OENJ disposal/processing site. (Denenberg Dec., Ex. 78 at bates no. Donjon 003360).

215. The specifications and the modification comprise the written provisions/plans which are a part of contract no. 01-C-0006. (See all of the above for this contract.)

**Contract No. DACW51-01-C-0023**

216. Contract no. DACW51-01-C-0023 ("contract no. 01-C-0023") was awarded to Great Lakes Dredge & Dock for the maintenance dredging of Elizabeth pierhead channel of Newark Bay, Hackensack and Passaic Rivers federal navigation project, N.J. (Denenberg Dec., Ex. 50).

217. The US identified OENJ as the processor for this contract. (Denenberg Dec., Ex. 63).

218. The US and TDM agree that contract no. 01-C-0023 includes the Authorization Clause. (US' motion, pp. 4 and 10).

219. Great Lakes was required to use a site approved and designated by the US. Section 01200 of the specifications for contract no. 02-C-0022, entitled Technical Specifications, states in relevant part:

> 1. **Work Covered By Contract Price: The work consists** of furnishing all plant, labor, materials and equipment, and performing all work in strict accordance with the specifications and drawings for the dredging of material from Port Elizabeth Pierhead Channel of Newark Bay, Channel, its **processing and disposal at OENJC site in Bayonne, N.J. (G01010 07793).**
>
> * * *
>
> 6. **SUBMITTALS: The contractor shall submit for approval, by the Contracting Officer and/or his Representative, his progress schedule and plans for dredging, processing, and placement of dredged material in approved OENJC upland disposal site. (G009066)**

(Denenberg Dec., Ex. 56 at bates nos. G01010 07793, G01010 07795). (emphasis added).

220. The contract and the specifications all comprise the written provisions which are a part of contract no. 01-C-0023. (See all of the above for this contract.)

## IV. <u>Other</u>

221. The US did not submit a proposed findings of uncontroverted fact in support of the US' motion. (Motion for Partial Summary Judgment for Lack of Subject Matter Jurisdiction, filed by USA, Docket No. 92).

222. At the initial filing of the US' motion, the US had not produced or identified all of the contracts at issue, including all contract related documents. (Motion for Sanctions pursuant to Rule 37, Docket No. 109; Declaration, Docket No. 110; and Memorandum, Docket No. 111).

Respectfully submitted,

DAVIDOFF MALITO & HUTCHER LLP
*Attorneys for Plaintiff*

Dated: February 28, 2008

s/ David W. Denenberg
David W. Denenberg
Michael A. Adler
605 Third Avenue – 34 Floor
New York, NY 10158
Tel: (212) 557-7200
Fax: (212) 286-1884