as the average daily production (cy/day) and through-put rates (cy/day) for the each element, to include the dredging, offloading, transportation, processing and placement and for the proposed through-put of the integrated system at the "Contractors identified" site(s).

2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

4) Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the bidder proposes to perform the work and the dates on which the bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment, and the completion of dredging for by basic contract acceptance areas and/or options). The schedule shall indicate the production rate of each element, to include the dredging, offloading, transportation, processing and placement to ensure that the project will be completed within the contract's required completion date. The bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The bidder must indicate on this schedule the salient features of work for the "Contractor's identified" site(s) that are needed to be completed so the site(s) is operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS for the in-situ quantity identified in the price schedule to complete the contract within the required duration.

(d) **Synopsis of proposed operation** - Narrative of no more than seven (7) pages detailing the operation to move the Non-rock material unsuitable for placement at the HARS, HARS material and Rock material from the channel to its final resting place at the "Contractor's identified" disposal site. The synopsis shall provide suitable detail to adequately track the material from dredging, through transportation and processing to its ultimate placement. The synopsis shall include the following:

- Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and disposal facility including site capacity.

- Provide a detailed map indicating locations of offloading and loading facilities or area within the proposed property to be utilized, for each processing and disposal location, with a description of the material handling process at each disposal location.

- Provide Hours of operation, transportation and operating procedures at offloading facilities.

- Provide Facilities information: Access to offloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

- Provide a detailed description of the dredging procedure proposed to include the identification of dredges, bucket type and size, scows, tugs,

drill boats and other salient equipment to be used for the project for dredging, processing and placement.

- Submit a detailed description of the loading and transportation procedures to be utilized.

- Provide proof of the Contractor's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

**1.45.A.3 Information to be submitted by the Contractor within 35 calendar days after being informed of being low bidder**

The Contractor shall submit ten (10) copies of the following information within **35 Calendar Days** after being informed of being low bidder

a) Information submitted at the time of the Bid Opening - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence demonstrating that the "Contractor identified" site(s) will Process and Disposal Dredged Material from the project site by providing an Acceptable Use Determination (AUD) or Beneficial Use Determination (BUD) or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

c) Proof of Disposal Site Owner's approval granting the apparent low bidder the right to dispose dredged material at that site.

d) Proof of uncommitted Disposal Site(s) capacity adequate for the project.

e) Certification of the Disposal Site's availability corresponding to the current project schedule.

f) Demonstrate minimum required Disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each alternate disposal site(s).

g) Proof of apparent low bidder's experience in the proposed Disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

h) Transportation Capabilities -The Apparent Low Bidder must provide the following:

1)Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment's has current permits, licenses, registrations, or other required certifications.

2)Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

i) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed technological processing, including but not limited to, the following stages, if applicable:

- Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

- Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

- Interim storage, if required, identifying the method of storage, required and available storage capacity, and the timeframe it will be used, if applicable.

- Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent Contractor.

5) Certify processing plant's availability corresponding to the current project schedule.

**B. CONTRACTOR AIR EMISSIONS INFORMATION TO BE SUBMITTED BY CONTRACTOR**

Bidders must submit information demonstrating that their schedule and equipment comply with this solicitation's Clean Air Act compliance restriction (see section 01135).

**1.45.B.1 Information to be provided by the apparent low Bidder within 5 calendar days of being informed of being the low bidder**

The apparent low Bidder must submit ten (10) copies within **5 calendar days** of being informed of being bidder of the following information:

(a) The qualifications of the Contractor's Air Emissions Consultant (AEC) and Certification from an independent Air Emissions Consultant. Refer to Section 01135.

(b) The information for all marine based equipment to be used on this Contract. Refer to Section 01135.

(c) A written description of any air emission controls to be used by the bidder and which pieces of equipment it shall be used on.

(d) Identification and verification of any additional offsets, if any, that the Contractor will utilize during the contract.

**1.45.B.2 Information to be provided by the Contractor within 35 calendar days after being informed of being the low bidder**

The contactor must submit ten (10) copies within **35 calendar days** after being informed of being the low bidder

(a)Air Emissions Calculator. Refer to Section 01135.

(b)Certification from an independent Air Emissions Consultant. Refer to Section 01135.

(c)A written narrative describing the Contractor's quality control system to insure that the dredging operation is monitored and is within the calendar year Allowable Limit for NOx. The process that Contractor will use to make adjustments to their dredging operation during the execution of the work to insure compliance with the calendar year Allowable Limit for NOx.

(d)A written description of any air emission controls to be used by the bidder and which pieces of equipment it shall be used on.

(e)Identification and verification of any additional offsets, if any, that the bidder will utilize during the contract.

**1.46 GOVERNMENT RESIDENT MANAGEMENT SYSTEM**

a. The Government will utilize an in-house Contract Administration program entitled "Resident Management System" (RMS). The Contractor shall utilize a Government furnished CQC Programming Module. The following hardware and software are needed by the contractor to run RMS: A personal computer with Pentium II Processor (or higher) and 32 megabytes (MB) or more of random access memory (RAM), 4.0 gigabytes (GB) hard drive disk space for sole use of CQC Module, and a 3-1/2 inch high density floppy drive, Compact Disk (CD) Reader. Also needed is a HP Laser Jet III Series or better printer, a color monitor, Windows 95 or later, MS Office (Microsoft Word 97 or newer, Access 97 or newer) and computer files = 120. Connection to the Internet, minimum 28 KBPS. Electronic E-mail compatible with MS Outlook. The contractor's computer system shall be protected by virus protection software that is regularly upgraded with all issued manufacturer's updates throughout the life of the contract.

b. The Module includes a Daily CQC Reporting System form, which must also be used. This form may be in addition to other contractor desired reporting forms. However, all other such reporting forms shall be consolidated into this one Government specified Daily CQC Report Form. The contractor will also be required to complete CQC Module elements which include, but are not limited to, all Contractor Quality Control plan information such as; Prime Contractor staffing, subcontractor information showing trade, name, address, and point of contact, definable features of work, pay activities and activity information, required Quality Control tests tied to individual pay activities, planned User schooling tied to specific specification paragraphs and pay activities, Installed Property listings, Transfer Property listings, and submittal information relating to specification section, description, pay activity, and expected procurement period. The sum of all pay activities shall equal the contract amount, and all Bid Items, Options and Additives shall be separately identified, in accordance with the Bidding Schedule. Bid Items may include multiple activities, but activities may only be assigned to one such Bid Item. This module shall be completed to the satisfaction of the Contracting Officer

prior to any contract payment (except for Bonds, and Insurance, as approved by the Contracting Officer) and shall be updated as required.

c. During the course of the contract, the contractor will receive various Quality Assurance comments from the Government that will reflect corrections needed to contractor activities or reflect outstanding or future items needing attention of the contractor. The contractor will acknowledge receipt of these comments by specific number reference on his daily CQC report, and will also reflect on his daily CQC report when these items are specifically completed or corrected to permit Government verification.

-----End of section-

# PROJECT IDENTIFICATION SIGN
## CIVIL PROJECT

The graphic format for this 4' x 6' sign panel follows the legend guidelines and layout as specified below. The large 4' x 4' section of the panel in the right is to be white with black legend. The 2' x 4' section of the sign on the left with the full corps Signature (reverse version) is to be screen printed Communications Red on the white background. The castle insignia will be furnished by the Government in pressure sensitive vinyl for affixing by the Contractor. See attached sheet for fabrication and mounting guidelines.

Legend Group 1: One to two-line description of Corps relationship to project
Color: white
Typeface: 1.25" Helvetica Regular
Maximum line length: 19"

Legend Group 2: Division or District Name (optional, Place below 10.5" Reverse Signature (6" Castle)
Color: white
Typeface: 1.25" Helvetica Regular

Legend Group 3: One-to three-line project title legend describes the work being done under this contract.
Color: Black
Typeface: 3" Helvetica Bold
Maximum line length: 42"

Legend Group 4: One-to two-line identification of project or facility (civil works) or name of sponsoring department (military).
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Cross-align the first of Legend Group 4 with the first line of the Corps Signature (US Army Corps) as shown.

Legend Group 5a-b: One-to-five line identification of prime contractors including: type (architect, general contractor, etc.), corporate or firm name, city, state. Use of Legend Group 5 is optional.
Color: Black
Typeface: 1.25" Helvetica Regular
Maximum line length: 21"

All typography is flush left and rag right upper and lower case with initial capitals only as shown. Letter and word spacing to follow Corps standards as specified in *Appendix D

SAMPLE:




(Dimensions are in inches)

| Sign Type | Legend | Panel Size | Post Size | Specification Code | Mounting Height | Color Bkg/Lgd |
|---|---|---|---|---|---|---|
| CID-01 | various | 4' x 6' | 4' x 4' | HDO-3 | 48" | WH-RD/BK |

Show non-Federal local partner's name and logo - Port Authority of New York and New Jersey

* Refers to the U.S. Army Corps of Engineers, "Sign Standards Manual", EPS-310-1-6.



G007287

G01010 07210

As Construction Project Identification signs and Safety Performance signs are to be fabricated and installed as described below. The signs are to be erected at a location deignated by the contracting officer and shall conform to the size, format, and typographic standards shown on the attached sheets.

The sign panels are to be fabricated from .75" High Density Overlay Plywood. Panel preparation to follow HDD specifications provided in Appendix B. **

Sign graphics to be prepared on a white non-reflective vinyl film with positionable adhesive backing.

All graphics except for the Communications Red background with Corps signature on the project sign are to be die-cut or computer-cut non-reflective vinyl. pre-spaced legends prepared in the sizes and typefaces specified and applied to the background panel following the graphic formats shown on the attached sheets.

The 2'x4' Communications Red panel (to match PMS-032) with full Corps signature (reverse version) is to be screen printed on the white background. Identification of the District or Division may be applied under the signature with white cut vinyl letters prepared to Corps standards. Large scale reproduction artwork for the signature is provided on page 4.8 (photographically enlarge from 6.875" to 10.5"). **

Drill and insert six (6) .375" T-nuts from the front face of the HDD sign panel. Position holes as shown. Flange of T-nut to be flush with sign face.

Apply graphic panel to prepared HDD plywood panel following manufacturers' instructions.

Sign uprights to be structural grade 4"x4" treated Douglas Fir or Southern Yellow Pine. No.1 or better. Post to be 12" long. Drill six (6) .375" mounting holes in uprights to align with T-nuts in sign panel. Countersink (.5") back of hole to accept socket head cap screw (4"x.375").

Assemble sign panel and uprights. Imbed assembled sign panel and uprights in 4" hole. Local soil conditions and/or wind loading may require bolting additional 2"x4" struts on inside face of uprights to reinforce installation as shown.

Detailed specifications for HDD plywood panel preparation are provided in Appendix B.**

Shown below the mounting diagram is a panel layout grid with spaces provided for project information. Photocopy this page and use as a worksheet when preparing sign legend orders.






(Dimensions in inches)

** Refers to the U.S. Army Corps of Engineers, "Sign Standards Manual", EP-310-1-6.

Construction Project Sign
Legend Group 1: Corps Relationship

1.
2.

Legend Group 2: Divison/District Name

1.
2.

Legend Group 3: Project Title

1.
2.
3.

Legend Group 4: Facility Name

1.
2.

Legend Group 5a: Contractor/A&E

1.
2.
3.
4.
5.

Legend Group 5b: Contractor /A&E

1.
2.
3.
4.
5.

Safety Performance Sign
Legend Group 1: Project Title

1.
2.

Legend Group 2: Contractor/A&E

1.
2.

## SAFETY PERFORMANCE SIGN

The graphic format, color, size and type-faces used on the sign are to be reproduced exactly as specified below. The title with First Aid logo in the top section of the sign, and the performance record captions are standard for all signs of this type. Legend Group 2 and 3 below identify the project and the contractor and are to be placed on the sign as shown. Safety record numbers are mounted on individual metal plates and are screw-mounted to the background to allow for daily revisions to posted safety performance record.

Legend Group1: Standard two-line title "safety is a Job Requirement", with (8" od.) Safety Green First Aid logo. Color: To match PMS 347
Typeface: 3" Helvetica Bold
Color: Balck

Legend Group 2: One- to two-line project title legend describes the work being done under this contract and name of host project.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 3: One - to two-line identification: name of prime contractor and city, state address.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 4: Standard safety record captions as shown.
Color: Black

Typeface: 1.25" Helvetica Regular

Replaceable numbers are to be mounted on white .060: aluminum plates and screw-mounted to background.
Color: Black
Typeface: 3" Helvetica Regular
Plate size: 2.5"x.5"

All typography is flush left and rag right, upper and lower case with initial capitals only as shown. Letter- and word-spacing to follow Corps standards as specified in Appendix D. *




Dimensions inches.
See attached sheet for fabrication and mounting guidelines.

* Refer to the U.S. Army Corps of Engineers, "Sign Standards Manual", EPS-310-1-6.

| Sign Type | Legend Size | Panel Size | Post Size | Specifications Code | Mounting Height | Color Bkg/Lgd |
|---|---|---|---|---|---|---|
| CID-02 | various | 4'x4' | 4"x4" | HDO-3 | 48" | WH/BK-GR |






G007289

G01010 07212

US ARMY

CORPS of ENGINEERS New York District

RED CASTLE

NEW YORK HARBOR IMPROVEMENT PROJECT
S-KVK-2
CONTRACT 1

CONTRACTOR:
FUNDED BY: FEDERAL % LOCAL %
COMPLETION DATE:

FOR YOUR SAFETY

1. DO NOT ENTER DESIGNATED WORK AREAS
2. OBEY ALL VILLAGE REGULATIONS CONCERNING PROHIBITED BEACH ACTIVITIES

DISTRICT ENGINEER COL (NAME)

RED LETTER

PUBLIC SAFETY SIGN

# SECTION 00900 – WAGE RATES

Section 00900 -

WAGE RATES
General Decision Number: NY030001 05/21/2004 NY1

Superseded General Decision Number: NY020001

State: New York

Construction Types: Heavy sg 11/16/04

Counties: New York Statewide.

STATEWIDE

New York

All dredging, excpt self-propelled hopper dredges, on the Atlantic Coast and tributary waters emptying into ther Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |

* ENGI0025-001 10/01/2003

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman | $ 28.72 | 6.87+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain | $ 22.80 | 6.27+a+b |
| Boat Master | $ 23.89 | 6.87+a+b |
| Deckhand, Tug Deckhand | $ 18.78 | 5.67+a+b |
| Engineer | $ 25.37 | 6.87+a+b |
| Maintenance Engineer | $ 24.24 | 6.27+a+b |
| Mate | $ 22.64 | 6.27+a+b |
| Oiler | $ 19.24 | 5.67+a+b |
| Operator | $ 28.72 | 6.87+a+b |
| Scowman | $ 18.53 | 5.67+a+b |
| Welder | $ 23.87 | 6.27+a+b |
| Diver | | |
| Diver | $ 41.53 | 6.87+a+b |
| Standby Diver | $ 27.85 | 6.87+a+b |
| Standby Tender | $ 23.26 | 6.27+a+b |
| Tender | $ 32.11 | 6.87+a+b |

Drag Bucket Dredge
Deckhand....................$ 16.17 5.25+a+b
Engineer....................$ 21.41 6.45+a+b
Maintenance Engineer........$ 21.21 5.85+a+b
Mate........................$ 19.82 5.85+a+b
Operator....................$ 25.09 6.45+a+b

Dredging Pipeline
Cable-Laying
Control Tower Operator......$ 25.55 6.87+a+b
Diver Tender................$ 26.58 6.87+a+b
Diver.......................$ 42.42 6.87+a+b
Leverman....................$ 28.83 6.87+a+b
Line up Operator, End
Prep........................$ 18.47 5.67+a+b
Rigger......................$ 19.07 5.67+a+b

Drill Boats
Blaster.....................$ 23.81 6.45+a+b
Core Driller................$ 18.56 5.25+a+b
Driller.....................$ 23.55 6.45+a+b
Engineer....................$ 23.54 6.45+a+b
Machinist...................$ 23.30 5.85+a+b
Oiler.......................$ 20.46 5.25+a+b
Tug Captain.................$ 19.53 5.85+a+b
Tug Deckhand................$ 15.97 5.25+a+b
Tug Master..................$ 20.48 6.45+a+b
Welder......................$ 23.30 5.85+a+b

Engineer
1st.........................$ 25.55 6.87+a+b
2nd, 3rd and 4th............$ 25.23 6.87+a+b
Electrician.................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain.................$ 23.44 6.87+a+b
Tug Master..................$ 26.80 6.87+a+b

Hydraulic Dredge
Asst. Fill Placer...........$ 22.45 6.87+a+b
Boat Captain................$ 22.80 6.27+a+b
Boat Master.................$ 23.88 6.87+a+b
Chief Mate..................$ 24.47 6.87+a+b
Chief Welder................$ 25.13 6.87+a+b
Deckhand....................$ 18.78 5.67+a+b
Engineer....................$ 24.82 6.87+a+b
Fill Placer.................$ 24.47 6.87+a+b
Janitor/Porter..............$ 18.14 5.67+a+b
Leverman....................$ 28.72 6.87+a+b
Maintenance Engineer........$ 24.24 6.27+a+b
Mate........................$ 22.64 6.27+a+b
Messman.....................$ 18.14 5.67+a+b
Night Cook..................$ 18.65 5.67+a+b
Oiler.......................$ 19.24 5.67+a+b
Shoreman....................$ 18.55 5.67+a+b

Spider Barge Operator.......$ 23.66 6.27+a+b
Steward.....................$ 22.59 6.87+a+b
Welder-Dredge...............$ 23.86 6.27+a+b

Tug Boats over 1000 H.P.
with master or captain
having license endorsed
for 200 miles off shore
Tug Captain...............$ 24.34 6.87+a+b
Tug Chief Engineeer.......$ 23.60 6.27+a+b
Tug Deckhand.............$ 18.78 5.67+a+b
Tug Engineer.............$ 23.13 6.27+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

===

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

---

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

---

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations

Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

==========================================================

END OF GENERAL DECISION

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

General Decision Number: NJ030006 05/21/2004 NJ6

State: New Jersey

Construction Types: Heavy Dredging sg 11/16/04

Counties: Atlantic, Bergen, Camden, Cape May, Cumberland, Gloucester, Hudson, Mercer, Middlesex, Monmouth, Ocean, Salem and Union Counties in New Jersey.

STATEWIDE

All Dredging except self propelled hopper dredges on the Atlantic Coast and tributary waters emptying into the Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |

* ENGI0025-001 10/01/2003

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman | $ 28.72 | 6.87+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain | $ 22.80 | 6.27+a+b |
| Boat Master | $ 23.89 | 6.87+a+b |
| Deckhand, Tug Deckhand | $ 18.78 | 5.67+a+b |
| Engineer | $ 25.37 | 6.87+a+b |
| Maintenance Engineer | $ 24.24 | 6.27+a+b |
| Mate | $ 22.64 | 6.27+a+b |
| Oiler | $ 19.24 | 5.67+a+b |
| Operator | $ 28.72 | 6.87+a+b |
| Scowman | $ 18.53 | 5.67+a+b |
| Welder | $ 23.87 | 6.27+a+b |
| Diver | | |
| Diver | $ 41.53 | 6.87+a+b |
| Standby Diver | $ 27.85 | 6.87+a+b |
| Standby Tender | $ 23.26 | 6.27+a+b |
| Tender | $ 32.11 | 6.87+a+b |
| Drag Bucket Dredge | | |
| Deckhand | $ 16.17 | 5.25+a+b |

Engineer....................$ 21.41 6.45+a+b
Maintenance Engineer........$ 21.21 5.85+a+b
Mate........................$ 19.82 5.85+a+b
Operator....................$ 25.09 6.45+a+b

Dredging Pipeline
Cable-Laying
Control Tower Operator......$ 25.55 6.87+a+b
Diver Tender................$ 26.58 6.87+a+b
Diver.......................$ 42.42 6.87+a+b
Leverman....................$ 28.83 6.87+a+b
Line up Operator, End
Prep........................$ 18.47 5.67+a+b
Rigger......................$ 19.07 5.67+a+b

Drill Boats
Blaster.....................$ 23.81 6.45+a+b
Core Driller................$ 18.56 5.25+a+b
Driller.....................$ 23.55 6.45+a+b
Engineer....................$ 23.54 6.45+a+b
Machinist...................$ 23.30 5.85+a+b
Oiler.......................$ 20.46 5.25+a+b
Tug Captain.................$ 19.53 5.85+a+b
Tug Deckhand................$ 15.97 5.25+a+b
Tug Master..................$ 20.48 6.45+a+b
Welder......................$ 23.30 5.85+a+b

Engineer
1st.........................$ 25.55 6.87+a+b
2nd, 3rd and 4th............$ 25.23 6.87+a+b
Electrician.................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain.................$ 23.44 6.87+a+b
Tug Master..................$ 26.80 6.87+a+b

Hydraulic Dredge
Asst. Fill Placer...........$ 22.45 6.87+a+b
Boat Captain................$ 22.80 6.27+a+b
Boat Master.................$ 23.88 6.87+a+b
Chief Mate..................$ 24.47 6.87+a+b
Chief Welder................$ 25.13 6.87+a+b
Deckhand....................$ 18.78 5.67+a+b
Engineer....................$ 24.82 6.87+a+b
Fill Placer.................$ 24.47 6.87+a+b
Janitor/Porter..............$ 18.14 5.67+a+b
Leverman....................$ 28.72 6.87+a+b
Maintenance Engineer........$ 24.24 6.27+a+b
Mate........................$ 22.64 6.27+a+b
Messman.....................$ 18.14 5.67+a+b
Night Cook..................$ 18.65 5.67+a+b
Oiler.......................$ 19.24 5.67+a+b
Shoreman....................$ 18.55 5.67+a+b
Spider Barge Operator.......$ 23.66 6.27+a+b
Steward.....................$ 22.59 6.87+a+b

Welder-Dredge...............$ 23.86 6.27+a+b

Tug Boats over 1000 H.P.
with master or captain
having license endorsed
for 200 miles off shore
Tug Captain...............$ 24.34 6.87+a+b
Tug Chief Engineeer.......$ 23.60 6.27+a+b
Tug Deckhand.............$ 18.78 5.67+a+b
Tug Engineer.............$ 23.13 6.27+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

----------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

================================================================

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

----------------------------------------------------------------

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

----------------------------------------------------------------

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour

Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations

Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

---

END OF GENERAL DECISION

# SECTION 00901

# SAMPLE FORMS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| REPORT OF OPERATIONS-PIPELINE, DIPPER OR BUCKET DREDGES | | | | | | REPORT CONTROL SYMBOL | | |
| THRU: | | | TO: | | | FROM: | | REPORT # |
| CHARACTER OF REPORT | MAINT. | NEW WORK | DAILY | STATUS | COMPLETION | ANNUAL | DATE OR PERIOD | |
| DREDGE | NAME AND TYPE | | SIZE | PIPELINE (in. dia. disch.) | | DIPPER OR BUCKET (cu. yds. cap) | | |
| | HORSE-POWER OF | DREDGE PUMP | | SUCTION PIPE JET | | CUTTER OR BUCKET | | PROPULSION |
| | NUMBER OF CREW MEMBERS | DREDGE | SHORE | OTHER PLANT | TOTAL | WORK SCHEDULE | SHIFTS/DAY | DAYS/WEEK |
| PROJECT AND BAR | NAME AND TYPE | | | | AUTH | WIDTH | DEPTH | OVERDEPTH |
| | LOCATION (include station numbers) | | | | STA. NO.: | | Range: | |
| CHARACTER OF MATERIAL | ABSOLUTE DENSITY (GMS/liter) | | | IN PLACE DENSITY (GMS/liter) | | | VOIDS RATIO | |
| | GRAIN SIZE D MM | D MM | D MM | MM | | GEOLOGICAL CLASSIFICATION | | |
| CONTRACT ORDER | NUMBER | | | CONTRACTOR | HIRED LABOR | TOTAL NO. OF DAYS ON WHICH WORK WAS DONE | | |
| CHANNEL CONDITION | AVERAGE DEPTH | | BD | AD | MINIMUM SOUNDING | | BD | AD |
| RIVER STAGE | MINIMUM | TIME | MAXIMUM | TIME | GAUGE LOCATION | | | |
| WEATHER CONDITION | (clear, cloudy, rain, and fog) | | | VISIBILITY | | WIND (maximum, velocity, & direction) | | |

| WORK PERFORMED | | | DISTRIBUTION TIME | | |
|---|---|---|---|---|---|
| ITEM | UNIT | QUANTITY | EFFECTIVE WORKING TIME (chargeable to cost of work) | HOURS | MIN. |
| AVERAGE WIDTH OF CUT | FEET | | PUMPING OR DREDGING | | |
| TOTAL TRAVEL THIS PERIOD | FEET | | PERCENTAGE OF EFFECTIVE RENTAL TIME | | % |
| TOTAL TRAVEL TO DATE | FEET | | BOOSTER (in line) | | |
| TOTAL ADVANCE TO DATE | FEET | | NON-EFFECTIVE WORKING TIME (chargeable to cost of work) | | |
| FLOATING PIPE: | SHORE PIPE: | | | | |
| TOT. LENGTH OF DISCHARGE | FEET | | HANDLING PIPE LINES | | |
| AVERAGE LIFT | FEET | | HANDLING ANCHOR LINES | | |
| AVERAGE PUMP SPEED | R.P.M. | | CLEARING PUMP AND PIPE LINE | | |
| AVG. DREDGED/PUMP. HR. | CU. YDS. | | CLEARING CUTTER OR SUCTION HEAD | | |
| SCOWS LOADED | NUMBER | | WAITING FOR SCOWS | | |
| AVERAGE LOAD PER SCOW | CU. YDS. | | TO AND FROM WHARF OR ANCHORAGE | | |
| CUBIC YARDS REMOVED | | | CHANGING LOCATION OF PLANT ON JOB | | |
| AMOUNT DREDGED THIS PERIOD: | | | LOSS DUE TO OPPOSING NATURAL ELEMENTS | | |
| (1) GROSS (computed amount) | | | LOSS DUE TO PASSING VESSELS | | |
| (2) CREDITED (pay place) | | | SHORE LINE AND SHORE WORK | | |
| AMOUNT PREVIOUSLY DREDGED: | | | WAITING FOR BOOSTER | | |
| (1) GROSS (computed amount) | | | MINOR OPERATING REPAIRS (explain in remarks) | | |
| (2) CREDITED (pay place) | | | WAITING FOR ATTENDANT PLANT | | |
| TOTAL AMOUNT DREDGED TO DATE: | | | PREPARATION AND MAKING UP TOW | | |
| (1) GROSS (computed amount) | | | TRANSFERRING PLANT BETWEEN WORKS | | |
| (2) CREDITED (pay place) | | | LAY TIME OFF SHIFT AND SATURDAYS | | |
| ATTENDANT PLANT | | | SUNDAYS AND HOLIDAYS | | |
| ITEM | NAME OR NUMBER | HOURS | FIRE DRILL | | |
| | | | MISCELLANEOUS (explain in remarks) | | |
| | | | TOTAL NON-EFFECTIVE WORKING TIME | | |
| | | | PERCENTAGE OF NON-EFFECTIVE RENTAL TIME | | % |
| | | | TOTAL EFFECTIVE AND NON-EFFECTIVE TIME (chargeable to cost of work) | | |
| | | | PERCENTAGE OF TOTAL TIME IN PERIOD | | % |
| | | | LOST TIME (not chargeable to cost of work) | | |
| | | | MAJOR REPAIRS AND ALTERATIONS | | |
| | | | CESSATION | | |
| | | | COLLISIONS | | |
| | | | MISCELLANEOUS (explain in remarks) | | |
| NUMBER OF INSPECTIONS | BY DISTRICT PERSONNEL | | TOTAL LOST TIME | | |
| | BY DIV&OCE PERSONNEL | | PERCENTAGE OF TOTAL TIME | | % |
| CONTRACT USE ONLY | HAS ANYTHING DEVELOPED WHICH MIGHT LEAD TO A CHANGE ORDER OR CLAIM? | YES OR NO | TOTAL TIME PERIOD | | |

ENG FORM 4267

00901 - 1

G007301

G01010 07224

| ITEM | COST |
|---|---|
| DIRECT PLANT OPERATING COSTS<br>UNIFORM DAILY RATE BASIS (To be completed when submitting Status and Completion reports.)<br>CHARGES: ________ DAYS AT $ ________ PER DAY<br>(Item 19, ENG Form 22 (Costs) - adjusted to exclude plant increment cost)<br>OR<br>ACTUAL PLANT COSTS (To be completed when submitting Annual report)<br>PAYROLLS (gross)........ $<br>SUBSISTENCE & QUARTERS OR PER DIEM & MILEAGE........ $<br>FUEL ________ BARREL AT $ ________ PER BARREL........ $<br>WATER........ $<br>LUBRICANTS........ $<br>PLANT OWNERSHIP COSTS (as computed below)........ $<br>INSURANCE........ $<br>ATTENDANT PLANT........ $<br>MISCELLANEOUS........ $<br><br>SUBTOTAL -- UNIFORM DAILY RATE OR ACTUAL COSTS<br>SUBTOTAL -- PLANT UNIT COST $ ________ PER CUBIC YARD | |
| SHORE WORK<br>SUBTOTAL -- SHORE WORK COSTS $........<br>SUBTOTAL -- SHORE WORK UNIT COSTS $ ________ PER CUBIC YARD | |
| OTHER COSTS:<br>SURVEYS........ $<br>INSPECTION AND SUPERVISION........ $<br>OVERHEAD........ $<br>OTHER INDIRECT COSTS........ $<br><br>SUBTOTAL--OTHER COSTS<br>SUBTOTAL -- OTHER UNIT COST ________ PER CUBIC YARD | $ |
| GRAND TOTAL--ALL COST........<br>GRAND TOTAL--ALL UNIT COST ________ PER CUBIC YARD | $ |

| OPERATING SUPPLIES | | | | |
|---|---|---|---|---|
| COMMODITIES | CONSUMED | | INVENTORY | |
| | UNIT | QUANTITY | QUANTITY | VALUE |
| FUEL (oil) | | | | |
| LUBE (oil) | | | | |
| LUBE (grease) | | | | |
| WATER | | | | |
| | | | | |
| | | | | |
| SUBSISTENCE SUPPLIES | | | | |
| MISCELLANEOUS SUPPLIES | | | | |
| TOTAL | | | | |

| ANNUAL REPORT DATA (complete when submitting Annual report) | |
|---|---|
| COST PER RENTAL MINUTE (Based on total operating cost)........ | $ |
| TOTAL COST OF PLANT (End of F.Y. reporting period)........ | $ |
| BOOK VALUE (End of F.Y. reporting period)........ | $ |
| BALANCE IN PLANT ACCOUNT (End of F.Y. reporting period)........ | $ |
| PLANT OWNERSHIP COSTS (Actual for F.Y. reporting period)........ | |
| DESCRIPTION........ | $ |
| REPAIRS........ | $ |
| CESSATION OF WORK........ | $ |
| SMALL TOOLS, ETC........ | $ |
| TOTAL........ | $ |

REMARKS

| SUBMITTED BY (Name, title, and signature) | RECOMMENDED BY (Name, title, and sig) | APPROVED BY (Name, title, and signature) |
|---|---|---|
| | | |



G007302

G01010 07225

REPORT NO. ____________ DATE: ____________

PROJECT ____________ TIME STARTED ______ FRAME HRS. WORKED ______

LOCATION ____________ TIME FINISHED ______ FRAME IDLE ______

DRILL BOAT TYPE OF DRILL FRAMES USED ______

| DELAYS | THIS DATE | CONTRACT TO DATE |
|---|---|---|
| MOVE ON/OFF SITE - WEEKEND, DAY END | | |
| TEST FOR ROCK | | |
| OFF ROCK - NO DRILLING | | |
| WAIT OTHER FRAMES | | |
| MOVE FRAMES | | |
| CHANGE BITS & BARS | | |
| CLEAN HOLES | | |
| LOAD HOLES | | |
| MOVE TO BLAST | | |
| MOVE TO BLAST & NEW CUT | | |
| MOVE TO NEW RANGE | | |
| TRAFFIC | | |
| WEATHER | | |
| LIGHTNING | | |
| REPAIRS | | |
| GREASE | | |
| LOAD/WAIT POWDER | | |
| ANCHORS | | |
| SURVEY | | |
| OTHERS (Specify in "Remarks") | | |
| TOTAL FRAME HRS. DELAYS | | |
| TOTAL FRAME HRS. WORKED | | |
| TOTAL FRAME REV. HRS. | | |
| FRAME TIME EFFICIENCY % | | |
| NO. TIMES MOVE TO BLAST | | |
| NO. TIMES MOVE TO BLAST & NEW CUT | | |
| NO. TIMES MOVE TO NEW RANGE | | |

WEATHER ______
WIND ______
SEASON ______

ATTENDANT PLANT HOURS

REMARKS ON DELAYS

| CREW | | |
|---|---|---|
| U.S. | | |
| OTHER | | |
| TOTAL | | |
| SUPERINTENDENT | | |
| CIVIL ENGINEER | | |
| CAPTAIN | | |
| DAY FORMAN | | |
| NIGHT FORMAN | | |
| DRILLER | | |
| BLASTER | | |
| HELPER | | |
| WATCH ENGINEER | | |
| MACHINIST | | |
| OILER | | |
| MATE | | |
| DECK HAND | | |
| TUG OPERATOR | | |
| CLERK | | |
| ROD MAN | | |
| OTHERS | | |

DAILY OPERATING CONDITIONS

SECTION OR AREA (S)
CUT NUMBER (S)
CROSS RANGES (STATIONS) ______ TO ______
______ TO ______ ______ TO ______
______ TO ______ ______ TO ______

DRILLING GRADE ______ NO. OF HOLES DRILLED ______
PROJECT GRADE ______ NO. OF HOLES BLASTED ______
AVG. TOP MATERIAL ______ LBS EXPLOSIVE USED ______
AVG. FEET DRILLED ______ CAPS USED ______
BOOSTER USED ______
FUELS USED ______
BLAST HOLES ☐ LINE HOLES ☐ SPACING ______
TYPE OF DYNAMITE
TYPE OF WIRE
TYPE OF ROCK

REMARKS ON PRODUCTION OR CONDITIONS:

SUPERINTENDENT: DATE:

00901-3

G007303

G01010 07226

# DRILL LOG AND BLAST REPORT

CONTRACT NO.:
NAME OF DRILL BOAT:

Sheet -- of ---

DATE:
BLAST NO.:

FOR THIS BLAST

2 - HOUR WARNING
15 - MINUTE WARNING
5 - MINUTE WARNING
BLAST TIME

LBS. /HOLE
LBS./DELAY
LBS./BLAST
TOT. HOLES

REAL DISTANCE L.F. MAX. POWDER/DELAY
TYPE OF POWDER =

FOR THIS RANGE

| | MIN. | MAX. | | START | STOP |
|---|---|---|---|---|---|
| DEPTH | | | DRILL TIME | | |
| SPACING | | | LOADED | | |
| NO. OF HOLES | | | FIRED | | |
| HOLE DIAMETER | | | | | |

TOTAL ROCK DRILLED = LF. TOTAL POWDER LOADED= POUNDS

CONTACT SEISMIC @

| HOLE NO. | START | STOP | STATION NO. | TIDE ELV. | DEPTH TO ROCK | T.C. TOP OF ROCK | T.C. OVER ROCK | ROCK TO - 47 MLW | *TOTAL ROCK | IN HOLE DELAYS NO. | IN HOLE DELAYS TYPES | BOOSTERS | SURFACE DELAYS NO. | SURFACE DELAYS TYPES | LOADED POUNDS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

00901 - 4

* Includes Subdrill TC = Tide Correction

## CROSS SECTION

-40
-50
-60
STA. NO.

ROCK ELEV. • OVERBURDEN

SUPERINTENDENT: ______________ DATE: ______________

G007304

G01010 07227

# USACE TRANSPORTAION AND PLACEMENT LOG

**Log Number:** **Date (yy:mm:dd)**

**Project Information:**

**Trip Number:**
**Permit Number:**
**Project Name:**
**Tow Owner:**
**Inspector's Name:**
**Tug's Navigational Unit:**

**Tug and Scow Information:**

**Tug Name:**
**Tug Captain:**
**Scow Name/Number:**
**Scowman's Name:**

**Loading Information:**

**Volume of Material (Cubic yds):**
**Time Loading is Complete (hh:mm:ss):**
**Description of material:**
**A-B Load Line( )Summer( )Winter( )Winter North Atlantic**
**Scow Draft@plimsol mark for respective A-B Load Line (ft):**
**Scow Draft Forward (ft):**
**Scow Draft Aft (ft):**
**Percent Rock:**

**Placement Site Weather Conditions:**

**Wind Direction (from):**
**Wind Speed (mph):**
**Weather conditions:**
**Observed Water Depth (ft):**
**Wave Swell Height (ft):**
**Visibility (n miles):**
**Marine Mammals/Sea Turtles Sighted (Yes/No):**

**Transit/Placement Information Area:**
**Tug Position Determined By (GPS/DGPS) DGPS**
**Approximate Distance from Scow to Target Area at Time of Discharge (ft)**
**Time Scow Arrives at Project Placement Area:**
**Length of Towline at Time of Discharge (ft):**
**Scow Heading (Degrees):**
**Estimated Scow Speed (kts):**
**Distance from Tug Navigational Antenna to Tugs Towing Bit (ft):**
**Direction of Scow Relative to Tugs Towing Bit (Degrees):**

**Start Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**End Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**Post Placement Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**Comments:**

# USACE TRANSPORTATION AND PLACEMENT LOG

Log Number: ____________ Date: ____________

## Project Information

Trip Number: ____________ Tow Owner: ____________
Permit Number: ____________ Inspector's Name: ____________
Project Name: ____________ Tug's Nav. Unit: ____________

## Tug and Scow Information:

Tug Name: ____________ Scow Name/Number: ____________
Tug Captain: ____________

## Loading Information

Description of Material: ____________

| | Loading Cycle 1 Date | Time | Loading Cycle 2 Date | Time |
|---|---|---|---|---|
| Loading starts: | / / | : | / / | : |
| Loading complete: | / / | : | / / | : |
| Scow arrives at Dewatering pier: | / / | : | / / | : |
| Scow Departed Dewatering pier: | / / | : | / / | : |

Scow Draft Aft (ft): ____________

## Transit/Placement Site Weather Conditions:

Wind Speed (mph): ____________
Weather Conditions: ____________
Visibility (n miles): ____________

| | Date | Time |
|---|---|---|
| Scow Departed Dredge site: | / / | : |
| Scow arrive at OENJ: | / / | : |

Receipt acknowledge by OENJ: ____________
Signature

## Unloading Information:

| | Date | Time |
|---|---|---|
| Unloading start: | | |
| Unloading complete: | / / | : |
| Scow Departed OENJ: | / / | : |

## Comments:

____________

USACE Inspector/Date



G007306

G01010 07229

# SECTION 00902

## FEDERAL CONSISTENCY DETERMINATION/WATER QUALITY CERTIFICATIONS

**New York State Department of Environmental Conservation**
**Division of Environmental Permits, Region 2**
47-40 21ST Street, Long Island City, NY 11101-5407
**Phone:** (718) 482-4997 • **FAX:** (718) 482-4975
**Website:** www.dec.state.ny.us

Erin M. Crotty
Commissioner

April 8, 2004
HAND DELIVERED

**Re: DEC No. 2-6500-00053/00001**
**USACE NYD: New York and New Jersey Harbor Deepening Project**
**WATER QUALITY CERTIFICATION ISSUANCE**

Frank Santomauro P.E., Chief
Planning Division CENAN-PL
New York District, Corps of Engineers
Department of the Army
Jacob K. Javits Federal Building
New York, NY 10278-0090

Enclosed is the Water Quality Certification for the **New York and New Jersey Harbor Deepening** project.

Please also provide copies of this permit to all employees, contractors and agents performing any part of the permitted work.

If you have any questions or if you are in need of further assistance, please don't hesitate to contact me.

Sincerely,

Kathryn D. McGuckin
Environmental Analyst II

CC: Thomas Shea, USACE NYD
John Ferguson, NYSDEC Dredge Team Coordinator, Albany
John Cryan, DEC Division of Environmental Permits
Leigh Vogel, DEC Division of Marine Resources, Region 2
Captain J. Kaufman, DEC Division of Law Enforcement, Region 2
file/CHRON

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

| DEC PERMIT NUMBER: | PERMIT | EFFECTIVE DATE: |
|---|---|---|
| 2-6500-00053/00001 | Under the Environmental Conservation Law (ECL) | April 8, 2004 |
| **PROJECT NAME:** | | **EXPIRATION DATE(S):** |
| New York and New Jersey Harbor Deepening Project | | April 30, 2014 |

TYPE OF PERMIT ■New ☐ Renewal ☐ Modification ☐ Permit to Construct

■ **6NYCRR 608: WATER QUALITY CERTIFICATION**

| PERMIT ISSUED TO | | TELEPHONE # |
|---|---|---|
| Department of the Army, Corps of Engineers New York District ( USACE NYD ) | | 212-264-0100 |
| **ADDRESS OF PERMITTEE** | | |
| Jacob K. Javits Federal Building, New York, NY 10278-0090 | | |
| **CONTACT PERSON FOR PERMITTED WORK** | | **TELEPHONE NUMBER** |
| Frank Santomauro / Tom Shea - Project Manager | | 212-264-0223 / 212-264-5570 |
| **NAME AND ADDRESS OF PROJECT/FACILITY** | | |
| Port of New York and New Jersey | | |
| **LOCATION OF PROJECT/FACILITY** | | |
| Port of New York and New Jersey (see map - Attachment #1) | | |

| COUNTY | CITY | WATERCOURSE |
|---|---|---|
| Richmond, Kings | New York City | Arthur Kill, Kill van Kull, Anchorage Channel, Ambrose Channel, Bay Ridge Channel |

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

**DESCRIPTION OF AUTHORIZED ACTIVITY:**

**Harbor Deepening Project Construction:**

- Deepening various channels in the New York/New Jersey Harbor through the removal of approximately 42,501,000 cubic yards of material to a maintained depth of between 50 and 53 feet below the plane of mean low water (MLW). Of this total approximately 5,600,000 cubic yards will be recently accumulated (Holocene) material, approximately 31,288,000 cubic yards will be native non-rock "new work" (Pleistocene) material, and approximately 5,613,000 cubic yards will be rock.

- Deepening of channels in New York waters will occur as follows:

| Channel | Excavated Depth | Maintained Depth |
|---|---|---|
| Ambrose Channel | 56.5 feet | 53 feet |
| Anchorage Channel | 53.5 feet (55.5 feet rock) | 50 feet |
| Kill van Kull | 53.5 feet (55.5 feet rock) | 50 feet |
| Arthur Kill (Howland Hook) | 53.5 feet (55.5 feet rock) | 50 feet |
| Bay Ridge Channel | 53.5 feet (55.5 feet rock) | 50 feet |

NOTE: Excavated depth as described above includes the required 2 foot overdepth and the 1.5 foot safety clearance.

- Final placement sites for dredged material have not been proposed, and the analytical data required to support any placement of dredged material is not currently available. This information will be generated on a contract-by-contract basis prior to initiating dredging in any given contract reach area.

By acceptance of this Water Quality Certification the USACE NYD agrees that the certification is contingent upon strict compliance with the ECL, all applicable regulations, the General Conditions specified and any Special Conditions included as part of this permit.

| **REGIONAL PERMIT ADMINISTRATOR:** | **ADDRESS** |
|---|---|
| John F. Cryan | 47-40 21 Street<br>Long Island City, NY 11101 |
| **AUTHORIZED SIGNATURE** John F. Cryan | **DATE:** April 8, 2004 |

| DEC PERMIT NUMBER | PROGRAM/FACILITY NUMBER | |
|---|---|---|
| 2-6404-00257/00009 - 11 | Great Kills Yacht Club, Inc. | PAGE 2 OF 12 |

G007310

G01010 07233

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## NOTIFICATION OF OTHER PERMITTEE OBLIGATIONS

**Item A:**

**Permittee Accepts Legal Responsibility and Agrees to Indemnification**

The permittee expressly agrees to indemnify and hold harmless the Department of Environmental Conservation of the State of New York, its representatives, employees, and agents (""DEC"") for all claims, suits, actions, and damages, to the extent attributable to the permittee's acts or omissions in connection with the permittee's undertaking of activities in connection with, or operation and maintenance of, the facility or facilities authorized by the permit whether in compliance or not in compliance with the terms and conditions of the permit. This indemnification does not extend to any claims, suits, actions, or damages to the extent attributable to DEC's own negligent or intentional acts or omissions, or to any claims, suits, or actions naming the DEC and arising under Article 78 of the New York Civil Practice Laws and Rules or any citizen suit or civil rights provision under federal or state laws.

**Item B:**

**Permittee to Require it's Contractors to Comply with Permit**

The USACE NYD is responsible for informing its independent contractors, employees, agents and assigns of their responsibility to comply with this permit, including all special conditions while acting as the USACE NYD's agent with respect to the permitted activities, and such persons shall be subject to the same sanctions for violations of the Environmental Conservation Law as those prescribed for the USACE NYD

**Item C:**

**Permittee Responsible for Obtaining Other Required Permits**

The USACE NYD is responsible for obtaining any other permits, approvals, lands, easements and rights-of-way that may be required to carry out the activities that are authorized by this permit.

**Item D:**

**No Right to Trespass or Interfere with Riparian Rights**

This permit does not convey to the USACE NYD any right to trespass upon the lands or interfere with the riparian rights of others in order to perform the permitted work nor does it authorize the impairment of any rights, title, or interest in real or personal property held or vested in a person not a party to the permit.

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## GENERAL CONDITIONS

**General Condition 1:**
**Facility Inspection by the Department**

The permitted site or facility, including relevant records, is subject to inspection at reasonable hours and intervals by an authorized representative of the Department of Environmental Conservation (the Department) to determine whether the USACE NYD is complying with this permit and the ECL. Such representative may order the work suspended pursuant to ECL 71- 0301 and SAPA 401(3).

The USACE NYD shall provide a person to accompany the Department's representative during an inspection to the permit area when requested by the Department.

A copy of this permit, including all referenced maps, drawings and special conditions, must be available for inspection by the Department at all times at the project site or facility. Failure to produce a copy of the permit upon request by a Department representative is a violation of this permit.

**General Condition #2:**
**Relationship of this Permit to Other Department Orders and Determinations**

Unless expressly provided for by the Department, issuance of this permit does not modify, supersede or rescind any order or determination previously issued by the Department or any of the terms, conditions or requirements contained in such order or determination.

**General Condition #3:**
**Applications For Permit Renewals, Modifications or Transfers**

The USACE NYD must submit a separate written application to the Department for permit renewal, modification or transfer of this permit. Such application must include any forms or supplemental information the Department requires. Any renewal, modification or transfer granted by the Department must be in writing. Submission of applications for permit renewal, modification or transfer are to be submitted to:

Request for permit renewal or modification are to be submitted to:

New York State Department of Environmental Conservation
Region 2
Regional Permit Administrator
47-40 21ST Street
Long Island City, NY 11101

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

**General Condition #4:**
**Submission of Renewal Application**

The USACE NYD must submit a renewal application at least 30 days before permit expiration.

**General Condition #5:**
**Permit Transfer**

Permits are transferrable unless specifically prohibited by statute, regulation or another permit condition. Applications for permit transfer should be submitted prior to actual transfer of ownership.

**General Condition #6:**
**Permit Modifications, Suspensions and Revocations by the Department**

The Department reserves the right to modify, suspend or revoke this permit. The grounds for modification, suspension or revocation include:

a. materially false or inaccurate statements in the permit application or supporting papers;

b. failure by the USACE NYD to comply with any terms or conditions of the permit;

c. exceeding the scope of the project as described in the permit application;

d. newly discovered material information or a material change in environmental conditions, relevant technology or applicable law or regulations since the issuance of the existing permit;

e. noncompliance with previously issued permit conditions, orders of the commissioner, any provisions of the Environmental Conservation Law or regulations of the Department related to the permitted activity.

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## ADDITIONAL GENERAL CONDITIONS FOR Article 15 and 6 NYCRR Part 608

**General Condition #7:**

That the State of New York shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the State for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage.

**General Condition #8:**

Granting of this permit does not relieve the USACE NYD of the responsibility of obtaining any other permission, or approval from the U.S. Army Corps of Engineers, U.S. Coast Guard, New York State Office of General Services, or local government which may be required.

**General Condition #9:**

All necessary precautions shall be taken to preclude contamination of any wetland or waterway by suspended solids, sediments, fuels, solvents, lubricants, epoxy coatings, paints, concrete, leachate, or any other environmentally deleterious materials associated with the project.

**General Condition #10:**

Any material dredged in the conduct of the work herein permitted shall be removed evenly, without leaving large refuse piles, ridges across the bed of a waterway or floodplain or deep holes that may have a tendency to cause damage to navigable channels or to the banks of a waterway.

**General Condition #11:**

There shall be no unreasonable interference with navigation by the work herein authorized.

**General Condition #12:**

If upon the expiration or revocation of this permit, the project hereby authorized has not been completed, the USACE NYD shall, without expense to the State, and to such extent and in such time and manner as the Department of Environmental Conservation may require, remove all or any portion of the uncompleted structure or fill and restore the site to its former condition. No claim shall be made against the State of New York on account of any such removal or alteration.

**General Condition #13:**

The NYS Department of Environmental Conservation hereby certifies that the subject project will not contravene effluent limitations or other limitations or standards under Sections 301, 302, 303, 306, and 307 of the Clean Water Act of 1977 (PL 95-217) provided that all of the conditions listed herein are met.

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## SPECIAL CONDITIONS FOR DEC PERMIT No. 2-6500-00053/00001

### Permit Documents

1. The documents listed below are a part of this Water Quality Certificate:

   a. Letter and enclosure from Frank Santomauro, Chief, Planning Division, USACE NYD, dated October 24, 2003 and received by KD McGuckin, NYSDEC on October 27, 2003, requesting Water Quality Certification issuance for the New York and New Jersey Harbor Deepening Project.

   b. Documents submitted by USACE NYD in support of the request for Water Quality Certification issuance for the New York and New Jersey Harbor Deepening Project; dated January 2004 and received by the Department January 10, 2004:

      i. Volume 1: Limited reevaluation Report and Environmental Assessment on Consolidated Implementation of the New York and New Jersey Harbor Deepening Project;

      ii. Volume II A: Environmental Appendices A to C;

      iii. Volume II B: Environmental Appendices D to H;

      iv. Volume III A: Engineering and Other Appendices;

      v. Volume III B: Engineering and Other Appendices;

2. Contract Reach Check List (Attachment #2)

3. Mitigation Construction Schedule (to be submitted within 60 days of WQC issuance as per special condition #22)

4. Notice of Intent to Commence Dredging (Attachment #3)

5. Dewatering Form (Attachment #4)

6. Inspector's Form (to be submitted within 60 days of WQC issuance)

7. Notice of Completion of Dredging (Attachment #5)

## Dredging and Placement of Sediments

### Prior to the Start of Dredging of Each Contract Reach:

**8.** No dredging for any contract reach within the NY/NJ Harbor Deepening Project may commence until such time as the USACE NYD has submitted a *Request for Authorization to Proceed* and the Department has issued a written *Authorization to Proceed.*

**9.** Fifteen (15) to thirty (30) days prior to the proposed sampling date for the specified contract reach USACE NYD must submit a sampling and testing plan for HARS material to the Department for review and approval.

a. Legible map of core locations for HARS testing

b. Number of cores

c. Core length

d. Number of composites

**10.** No less than 60 days prior to the proposed sampling date for the specified contract reach USACE NYD must request a sampling and testing plan for NON-HARS material from the state regulatory agencies.

**11.** No less than ninety (90) days prior to bid advertisement of each specified contract reach USACE NYD must submit a *Request for Authorization to Proceed* along with supporting documentation as indicated on the Contract Reach Checklist included herein as Attachment #2.

a. Completed Contract Reach Checklist is to be submitted by USACE NYD along with the *Request for Authorization to Proceed.*

b. All items on the Contract Reach Checklist are to be submitted with the USACE NYD *Request for Authorization to Proceed.* If any item is not available at the time the request is submitted, USACE NYD should indicate when (date specific) the particular item will be submitted.

**12.** The USACE NYD must identify the dredge material placement location(s) for each type of material to be dredged within the specified Contract Reach and submit this information to the Department along with the *Request for Authorization to Proceed.*

a. The USACE NYD is responsible for conducting all sediment sampling and analysis as required by the selected dredge material placement location.

b. Sediment analysis data is to be submitted to both regulatory agencies (NYSDEC and NJDEP) regardless of the placement site location.

c. For dredged material placement locations located within the State of New York, the

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION



Department will issue written authorization as to suitability of the dredged material for the chosen placement location.

d. For dredged material disposal locations outside of the state of New York, letters of acceptance from the identified location and the appropriate state regulatory agency are to be provided with the *Request for Authorization to Proceed.*

**13.** The USACE NYD is to submit requests for project design modification(s) to the Department for approval no less than fifteen (15) days prior to proposed implementation of said design modification(s). In the event that USACE NYD is unsure whether a particular project design modification requires a permit modification, they can check with Department personnel via e-mail.

**14.** The USACE NYD must invite the Department to the pre-construction meeting for each Contract Reach.

a. The Department is to be given at least ten (10) business days notice of scheduled pre-construction meeting.

b. All Inspectors required by the USACE NYD (Contractor Quality Control Manager, Dredge/Disposal Inspector, and Corps Disposal Inspector) are to be present at the pre-construction meeting.

**15.** For each Contract Reach a Notice of Intent to Commence Dredging (Attachment #3) form is to be completed and submitted to the Department at least ten (10) days prior to commencement of dredging.

**During Dredging Operations**:

**16.** The Department will review each Contract Reach submission for natural resource impacts. To minimize impacts to natural resources, the USACE NYD must abide by Best Management Practices that will be determined on a contract-by-contract basis and incorporated in the *Authorization to Proceed* for each contract area. Best Management Practices include but are not limited to:

a. Seasonal windows.

b. Operational controls which include, but are not limited to: bucket type, hoist speed, barge overflow, and dewatering.

c. Placement of silt curtains to protect sensitive habitats.

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## SPECIAL CONDITIONS FOR DEC PERMIT No. 2-6500-00053/00001

### Dewatering

**17.** The USACE NYD must submit a dewatering plan with the *Request for Authorization to Proceed.*

**18.** The dredging contractor must complete and submit the attached Dewatering Form (Attachment #4) to the ACOE Field Office on a weekly basis as part of the Quality Control Report provided to the Field Office. Said Dewatering form shall be certified by the ACOE Field Office that they have witnessed the dewatering process during the preceding week. The ACOE Field Office shall submit the completed Dewatering form with appropriate certifications to the appropriate state regulatory agencies the Monday after the end of the preceding week.

### Post-Dredging/Placement

**19.** Within 90 days of the completion of dredging the USACE NYD must submit a scaleable, legible post-dredge bathymetric survey.

**20.** At the completion of the dredging of each Contract Reach the attached "Notice of Completion of Work" (Attachment #5) is to be submitted.

### Mitigation

**21.** USACE NYD is required to provide no less than 4.47 acres of tidal wetland mitigation/habitat creation in New York to compensate for losses of tidal wetlands resulting from the project.

**22.** Within 30 days of Permit issuance, USACE NYD must submit a schedule (month/year) for submittal of the items listed below for Department review and approval:

a. Confirmation of the mitigation location;

b. Results of the HTRW report;

c. Authorization from the property owner;

d. Proof of access rights;

e. Proposed disposal location(s) (including alternatives) for the excavated sediments;

f. Construction schedule (month/year) (e.g. phrag removal, excavation, planting, post-construction monitoring);

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## SPECIAL CONDITIONS FOR DEC PERMIT No. 2-6500-00053/00001

g. Five-year post-construction Mitigation Monitoring Plan based on recommended monitoring protocols in the New York State Restoration and Monitoring Guidelines (December 15, 2000).

h. Survey of existing conditions on the site, with site elevations, Mean High Water line, Mean Low Water line, and existing vegetation types clearly marked;

i. Preliminary (30%) design plans showing proposed site conditions, with site elevations, MHW, MLW, and proposed vegetation types clearly marked;

j. 'Final' (90% or 100%) design plans showing proposed site conditions, with site elevations, MHW, MLW, and proposed vegetation types clearly marked;

k. Planting list and schedule;

l. The amount (area: square feet or acres) of low marsh, high marsh, and upland area to be restored;

m. Volume of material to be removed.

**23.** All scheduled items must be submitted for Department review and approval according to the agreed upon schedule between USACE NYD, NYDEC and NJDEP (see Special Condition 22).

**24.** Within 30 days of Permit issuance and quarterly thereafter until completion of mitigation construction, the USACE NYD must submit updates that include the following information:

a. Status of the construction

b. Next steps

c. Any problems or set backs

d. Any changes to the schedule.

**25.** Mitigation monitoring must be conducted at the approved mitigation site and at an appropriate reference site per the New York State Restoration and Monitoring Guidelines (December 15, 2000).

**26.** The USACE NYD must demonstrate 85% survival of plants at the mitigation site after five growing seasons.

**27.** The USACE NYD is required to conduct an updated area of impact survey for each Contract Reach and submit it with the *Request for Authorization to Proceed.* At project completion, using the updated area of impact information, the Department will determine if there are additional habitat impacts beyond those agreed to at project onset. USACE NYD will be required to compensate for additional tidal wetlandhabitat losses, if any.

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION



## Additional Required Approvals

**28.** USACE NYD must prepare a list all piers, bulkheads, pipelines, cables, or other structures that will be impacted by the commencement of dredging for a specified contract reach and submit said list with the *Request for Authorization to Proceed.*

**29.** The USACE NYD must apply for and receive separate approvals for all pier removals, pipeline removals, and beneficial reuse options not previously approved byte Department.

## Indemnity

**30.** Item A is included by the State of New York as the permit issuing authority under the Clean Water Act. Such conditions do not, nor are they intended to, apply to, abrogate, or annul any obligation, responsibility or liability on the part of the Port Authority of New York and New Jersey to the Federal Government under the terms of a Project Cooperation Agreement (PCA) entered into by those two agencies for the Arthur Kill-Howland Hook Terminal, New York and New Jersey Project. Pursuant to that PCA, the Port Authority of New York and New Jersey remains legally responsible to hold and save the Federal Government free from all damages arising from the construction, operation, and maintenance of the Project and the local service facilities, and if the Port Authority requests such, for any Project-related betterments, including liabilities arising from Item A and General Condition 6, except for damages due to the fault or negligence of the Federal Government or its contractors. No provision of this permit shall be deemed to supercede applicable federal law with regard to appropriation of funds or liability for damages caused by the Army Corps or its agents or other representatives.

**Figure 2-1 Contract Areas for the New York and New Jersey Harbor Deepening Project**




2-6500-00053/00001
ATTACHMENT #1

G007321

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## DEC PERMIT No. 2-6500-00053/00001 - Contract Reach Checklist

**Name of Contract Reach:**________________________________________

For each Contract Reach proposed for dredging pursuant to NYSDEC WQC 2-6500-00053/00001 the Permittee must submit a *Request for Authorization to Proceed* at least ninety (90) days prior to bid advertisement for named Contract Reach. Said request is to be accompanied by the following information:

1. ☐ Request for Authorization to Proceed

**History**

2. ☐ Date of last dredge event for specified contract reach
3. ☐ Volume removed during last dredge event(s) for specified contract reach
4. ☐ Disposal location for all material removed during last dredge event(s) for specified contract reach.

**Proposed Dredging**

5. ☐ The most recent (60% or 90%) Design Plans and Specification package
6. ☐ Estimated start date of specified contract reach
7. ☐ Project depth + over dredge + safety clearance:
8. ☐ Scaled, legible hydrographic surveys that clearly and accurately depict:
   - i. ☐ Existing and new channel boundaries
   - ii. ☐ Location of top of slope
   - iii. ☐ Location of shoreline (such as mean high or mean low water line)
   - iv. ☐ General landside features in the project area such as street names, facility names, towns, rivers, etc.
   - v. ☐ Highlight areas of recent shoaling, if any (areas where recent material has accumulated since last dredge event?)
9. ☐ Results of HARS testing, including:

   **NOTE:** Sampling plan must be approved by the Department at least 120 days prior to proposed dredging date
   - i. ☐ Core log (NOTE: core log must indicate depth of Pleistocene layer and depth of overlying accumulated sediments, if any)
   - ii. ☐ Grain size analysis
   - iii. ☐ Bulk chemistry
   - iv. ☐ Bioassay results

# NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## DEC PERMIT No. 2-6500-00053/00001 - Contract Reach Checklist

10. ☐ HARS memo, if any/all material is going to HARS

11. ☐ Results of testing for non-HARS material, including:

    **NOTE:** Sampling plan must be approved by the Department at least 120 days prior to proposed dredging date

    i. ☐ Core log (NOTE: core log must indicate depth of Pleistocene layer and depth of overlying accumulated sediments, if any)

    ii. ☐ Grain size analysis

    iii. ☐ Bulk chemistry

    iv. ☐ List all piers, bulkheads, pipelines, cables, or other structures that will be impacted by the commencement of dredging for specified contract reach

12. ☐ Submit dewatering plan (location and method)

13. ☐ Estimated total volume to be removed in contract:

    i. ☐ Estimated volume going to HARS

    ii. ☐ Estimated volume going to artificial reefs

    iii. ☐ Estimated volume going upland (specify disposal location)

    iv. ☐ Estimated volume going elsewhere (specify disposal location)

**Habitat Impact**

15. ☐ Updated area of impact survey that clearly indicates:

    i. ☐ Toe of slope

    ii. ☐ Top of slope

    iii. ☐ Types of habitat impacted by the proposed dredging

16. ☐ Summary of any changes in total impact area for the proposed dredging

    i. ☐ include square footage of each habitat type impact

    ii. ☐ denote any changes (square footage) in impacts for each habitat type

# NOTICE OF INTENT TO COMMENCE DREDGING

***This competed form must be submitted to the Department no less than TEN (10) business days prior to the commencement of the subject dredging.***

New York State Department of Environmental Conservation
Division of Environmental Permits, Region 2
47-40 21st Street
Long Island City, NY 11101
Attn: KD McGuckin FAX: 718-482-4975

**Re: DEC Permit No. 2-6500-00053/00001 USACE NYD: Harbor Deepening Project**
**Name of Contract Reach:** ______________________________

Dear Ms. McGuckin:

I hereby serve notice to commence/recommence DREDGING on the referenced project on or about ______________________, 200_.

The quantity of material to be dredged is estimated to be _________cys.

This is also to certify that having read the permit, in entirety, I am fully aware of and understand the general and special conditions and agree to comply in all respects to those requirements. I further understand that prior to undertaking any modification to the authorized project, I must seek and receive approval of the Regional Permit Administrator.

Very truly yours,

| | |
|---|---|
| Signature of the Permittee | Signature of the Contractor (if any) |
| Permittee's Name (Printed) | Contractor's Name (Printed) |
| Name of Permitted Agency/Entity | Name of Company |
| Street Address | Street Address |
| City State ZIP | City State ZIP |
| Telephone | Telephone |

**NOTICE**
The permittee and contractor (if any) are required to follow all permit conditions. Violations of the permit may lead to legal action, including the imposition of substantial monetary fines and corrective work.

cc: Leigh Vogel, NYSDEC Region #2, FAX: 718-482-4502

ATTACHMENT #3

G007324

G01010 07247

# DEWATERING FORM

**Week of __________________________ (Sunday to Saturday) (SEE NOTE BELOW)**
**USACE Contract Number:______________________**
**Contract Reach: ______________________________**

Decant Scow Identification ________ Capacity________ gallons/______ cubic yards
Volume Calculation: _____Estimated ____Measured (check one) (If measured, provide calculation procedure)

| Dredge Scow Identification # | Date of discharge into decant scow | Time of initiation of discharge into decant scow | Time of cessation of discharge into decant scow | Rate of pump used to discharge into decant scow | Volume of Discharge into decant scow |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| **Last addition of decant water into decant scow:** | | **Discharge of decant water to surface waterbody:** | |
|---|---|---|---|
| Date: | | Date: | |
| Time: | | Time: | |
| | | Volume: | gallons |

**NOTE: Should more than one decant barge be used during a given week, a new dewatering form should be utilized and submitted to the ACOE Field Office.**

**CERTIFICATIONS:**

**I,______________________, as Quality Control Officer for ______________________(Company) for the above ACOE Dredging Contract, do hereby certify that the information provided in this document is true and accurate, and that I have personally observed the dewatering procedure recorded herein during the timeframe specified above. Signature:__________________________**

**I, ______________________, as ACOE Project Engineer for the above referenced contract have personally observed the dewatering procedure recorded herein during the timeframe specified above. Said procedure has complied with the conditions specified in the Federal Consistency Determination/Water Quality Certificate issued by the NJDEP for the project.**
**Signature:__________________________**

ATTACHMENT #4

G007325

G01010 07248

# NOTICE OF COMPLETION OF DREDGING

***This competed form must be submitted to the Department within TEN (10) business days of completion of the subject DREDGING.***

Date: ______________________

New York State Department of Environmental Conservation
Division of Environmental Permits, Region 2
47-40 21st Street
Long Island City, NY 11101
Attn: KD McGuckin FAX: 718-482-4975

**Re: DEC Permit No. 2-6500-00053/00001 USACE NYD: Harbor Deepening Project**
**Name of Contract Reach: ______________________________________**

Dear Ms. McGuckin:

I hereby serve notice that the DREDGING allowed by the above referenced permit has been completed as of ______________________, 200__.

The actual quantity of material dredged was ________cys. The dredged material was taken to:

1. ________ cys was taken to the Historic Area Remediation Site.
2. ________ cys used on site as per NYS DEC BUD #______________.
3. ________ cys was taken to ____________________ for beneficial reuse.
4. ________ cys was taken to_________________________ for disposal.
5. ________ cys was taken to___________________ for beach nourishment.

Very truly yours,

| | |
|---|---|
| ______________________________ Signature of the Permittee | ______________________________ Signature of the Contractor (if any) |
| ______________________________ Permittee's Name (Printed) | ______________________________ Contractor's Name (Printed) |
| ______________________________ Name of Permitted Agency/Entity | ______________________________ Name of Company |
| ______________________________ Street Address | ______________________________ Street Address |
| ______________________________ City State ZIP | ______________________________ City State ZIP |
| ______________________________ Telephone | ______________________________ Telephone |

cc: Leigh Vogel, NYS DEC Region #2, FAX: 718-482-4502

ATTACHMENT #5

G007326

95-20-1 (8/87)—9d

# New York State
# Department of Environmental Conservation

# NOTICE

The Department of Environmental Conservation (DEC) has issued permit(s) pursuant to the Environmental Conservation Law for work being conducted at this site. For further information regarding the nature and extent of work approved and any Departmental conditions on it, contact the Regional Permit Administrator listed below. Please refer to the permit number shown when contacting the DEC.

Regional Permit Administrator

John F. Cryan
47-40 21st Street
Long Island City, NY 11101
(718) 482-4997

Permit Number 2-6500-00053/00001
USACE - NYD
NEW YORK AND NEW JERSEY HARBOR DEEPENING PROJECT

Expiration Date April 30, 2014

NOTE: This notice is **NOT** a permit

State of New Jersey
Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

April 12, 2004

Mr. Frank Santomauro, P.E., Chief
Planning Division, Department of the Army
New York District, Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

RE: AMENDED Federal Consistency Determination/ISSUANCE of Water Quality Certification
File: 0000-92-0031.9
Project: NY-NJ Harbor Deepening Project

Dear Mr. Santomauro:

On June 17, 2002 the New Jersey Department of Environmental Protection (Department) issued the Federal Consistency (FC) determination as required by Section 307 of the federal Coastal Zone Management Act (16 USC 1451 et seq which constituted an umbrella approval for the Harbor Deepening Project (HDP). The Department did not issue the Water Quality Certification (WQC) for the project at that time. This was due to the absence of chemical and physical analysis of the sediments to be dredged from each contract to determine that the project would not contravene the New Jersey Surface Water Quality Standards (N.J.A.C. 7:9B), nor was it possible to determine appropriate best management practices to reduce project impacts. In a letter, dated October 24, 2003, the NY District requested a WQC for the HDP. It is the Department's understanding that a WQC must be issued by the State of New Jersey prior to the execution of the Performance Cooperation Agreement for the HDP by the NY District and Port Authority of New York and New Jersey.

The Harbor Deepening Project involves deepening various channels in the New York/New Jersey Harbor to a maintained depth of between 50 and 53 feet below the plane of mean low water (MLW) as follows:

| Channel | Excavated Depth | Maintained Depth |
|---|---|---|
| Ambrose Channel | 53 feet | 53 feet |
| Anchorage Channel | 50 feet | 50 feet |
| Kill van Kull | 50 feet | 50 feet |
| Newark Bay | 50 feet | 50 feet |
| Elizabeth Channel | 50 feet | 50 feet |
| South Elizabeth Channel | 50 feet | 50 feet |
| Arthur Kill (Howland Hook) | 50 feet | 50 feet |
| Port Jersey Channel | 50 feet | 50 feet |

The Department acknowledges that these depths do not include the allowable safety clearance, which shall not exceed 2 feet below the excavated depths, and an overdredge depth of 1.5 feet below the excavated depths. The most recent volume calculations of material anticipated to be generated by construction of this project is approximately 42,501,000 cubic yards. Of this total it is expected that

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

G007328

G01010 07251

5,600,000 cubic yards will be recently accumulated (Holocene) material, 31,288,000 cubic yards will be native non-rock "new work" (Pleistocene) material, and 5,613,000 cubic yards will be rock. The Department notes that final placement sites for any of this dredged material has not been proposed, and the analytical data required to support any placement of dredged material is not currently available. This information will be generated on a contract-by-contract basis prior to initiating dredging in any given contract area.

As discussed in the June 17, 2002 umbrella FC determination for the HDP, the NY District has agreed to submit the required additional information to demonstrate compliance with the Rules on Coastal Zone Management (N.J.A.C. 7:7E, or the Rules) to the Department during the Pre-construction, Engineering and Design (PED) Phase of the project. There is an understanding between the Department and the NY District that this required additional information would be reviewed by the Department and that Phased Consistency Determinations would be made on an incremental basis (i.e. each separate dredging contract of the HDP) as allowed under 15 CFR 930.36. The NY District has proposed that this same process be utilized in the issuance of the Water Quality Certification for the HDP project. The Department finds this approach acceptable.

**Therefore, this amendment to the 6/17/02 Federal Consistency Determination and the issuance of a Water Quality Certification shall constitute an umbrella approval of the HDP with the understanding that Phased Consistency Determination (PCD) and Water Quality Certification will be issued by the Department on EACH INDIVIDUAL DREDGING CONTRACT of the HDP as allowable under 15 CFR 930.36. These Phased Consistency Determination/WQCs shall be limited in scope to the issues identified in the following conditions, except that the Department does not waive any rights to require Supplemental Coordination under 15 CFR 930.46 should new circumstances or information relevant to the project occur. The conditions of the umbrella FC/WQC are as follows:**

1. As required by N.J.A.C. 7:7E-4.2(g), prior to initiating dredging in any contract area, the NY District shall sample and test the material to be dredged in accordance with the protocol appropriate to the placement site. A sampling and testing plan shall be coordinated with and approved by the appropriate regulatory agency. The following schedule shall be utilized by both agencies to ensure that sediment results are available for submission with the request for a PCD/WQC for each dredging contract.

   - A request for a sediment sampling plan for non-HARS material from each contract shall be forwarded to the Department and the New York Department of Environmental Conservation a **minimum of 60 days** prior to the date of sampling.

   - The NY District shall submit the HARs sampling plan (as applicable) to the Department a **minimum of 15-30 days** prior to the date of sampling. Said plan shall be utilized by the Department in evaluating HARS sediment sample results at the time of submission of the PCD/WQC for each individual dredging contract.

2. As required by N.J.A.C. 7:7E-3.5, N.J.A.C. 7:7E-4.2(g) and N.J.A.C. 7:7E-8.2, equipment and seasonal restrictions on dredging activities as necessary to minimize impacts on fisheries resources shall be determined on a contract-by-contract basis and will be incorporated in the

G007329

PCD/WQC issued for the dredging contract area. The essential fish habitat recommendations of the National Marine Fisheries Service issued in a letter from Peter D. Colosi to you dated July 27, 2001 shall serve as the baseline for the restrictions imposed in each contract.

3. **The NY District shall submit a PCD/WQC to the Department for each individual dredging contract area of the HDP at least 90 days prior to bid advertisement of said dredging contract area.** The request for a PCD/WQC by the NY District shall contain the information specified in the attached checklist. **NO INDIVIDUAL DREDGING CONTRACT AREA SHALL PROCEED TO BID ADVERTISEMENT UNTIL THE DEPARTMENT ISSUES THE PCD/WQC FOR THE INDIVIDUAL DREDGING CONTRACT AREA.**

4. Pursuant to the project specific Dredged Material Management Plan (DMMP) for the HDP included in the final LRR/EA dated January 2004, dredged material placement alternatives that include the beneficial use of material shall be given preference. Aquatic disposal of dredged material is only acceptable if alternative placement options less damaging to the environment are unavailable (N.J.A.C. 7:7E-4.2(h)).

5. The NY District shall obtain a separate Federal Consistency Determination and Water Quality Certification from the Department for the pier removals (Commerce Street Pier and Allied Signal Pier) to be completed under the HDP. Said request for a FC/WQC for this activity shall be submitted **a minimum of three months prior to bid advertisement** for this activity and shall include appropriate demolition plans and specifications. Any proposed pipeline or cable that is to be removed during the HDP shall obtain all necessary permits and approvals from the Department.

6. The following conditions will be imposed in the PCD/WQC issued for the individual dredging contract area to ensure that dredging of the sediments does not contravene New Jersey Surface Water Quality Standards (N.J.A.C. 7:9B), and that best management practices are adhered to during the contract. Additional conditions may be imposed by the Department upon review of sediment sample results submitted by the NY District for each individual contract.

5

- A "No barge overflow" condition applies to the dredging and transport of any contaminated, non-HARS, AND non –rock dredged material.
- All dredging of non-HARS suitable material shall be accomplished using a closed clam shell "environmental" bucket dredge.
- Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard.
- The dredge shall be operated so as to maximize the bite of the clamshell. This will reduce the amount of free water in the dredged material and the number of bites required to complete the job.
- The clamshell bucket shall be lifted slowly through the water column, generally 2 feet per second or less.

- All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete, except for material permitted for aquatic placement.

- The gunwales of the dredge scows shall not be rinsed or hosed during dredging.

7. The following conditions related to the dewatering procedures for non-HARS material shall be imposed in the PCD/WQC issued for each individual contract area:

- Decant water of non-HARs material shall only be discharged at a location that is in the same waterbody and in reasonable proximity to the limits of the dredging contract. The NY District shall provide the identified dewatering location for each contract at the time of submission of the PCD/WQC for the individual dredging contract.

- All decant water shall be held in the decant holding scow a minimum of 24 hours after the last addition of water to the decant holding scow. Said water contained in the decant holding scow may only be discharge after this mandatory 24 hour retention time.

- Should the contractor wish to reduce the required holding time, the contractor shall demonstrate that the reduced holding time is sufficient to meet a total suspended solids (TSS) background value of 30 mg/L. This TSS action level is consistent with the ambient TSS results presented in the NY District study entitled "2001 Total Suspended Solids and Turbidity Monitoring for Newark Bay, Kill Van Kull and Port Jersey" (September 2002). The total suspended solids shall be determined through gravimetric analysis. No discharge shall be permitted from the decant holding scow until the results of the gravimetric analysis have confirmed that the 30 mg/L background level has been achieved. No additional water shall be added to the decant holding scow between the time of sample acquisition and discharge. Upon successful demonstration that the reduced holding time is sufficient to meet the TSS background level of 30 mg/L, the monitoring of TSS may be suspended and the demonstrated settling time shall replace the 24 hour minimum. A successful demonstration of the reduced holding time efficiency shall be determined once three consecutive TSS analyses have confirmed that the 30 mg/L action level has been achieved by the reduced holding time.

  Should the contractor wish to demonstrate this reduced holding time, all records including time of last addition of decant water into the scow, time of TSS sampling and the results of TSS sampling shall be submitted to the NJDEP as soon as they become available, together with a request for a reduced holding time.

- During pumping of the decant water from the holding scow, great care shall be taken to avoid resuspending or pumping sediment which has settled in the decant holding scow.

- The dredging contractor shall complete and submit the attached Dewatering Form to the ACOE Field Office on a weekly basis as part of the Quality Control Report provided to the Field Office. Said Dewatering form shall be certified by the ACOE Field Office that they have witnessed the dewatering process during the preceding week. The ACOE Field Office shall submit the completed Dewatering form with appropriate certifications to the appropriate state agency the Monday after the end of the preceding week.

8. As required by N.J.A.C. 7:7E-8.10, the Corps shall implement the procedure for incremental air quality conformity outlined in the Statement of Conformity dated March 31, 2004. This includes the completion of additional studies during the PED Phase to ensure the implementation of technically feasible and cost-effective measures to reduce emissions and otherwise comply with appropriate air quality standards and the State Implementation Plan. A Conformity Consistency Review (CCR), will be performed at least a minimum of 180 days prior to the start of construction for each contract. The Final CCR report, which contains the detailed compliance plan including contingency plans, shall be submitted for each project element prior to the initiation of construction of those elements. In the event of project delays, a contingency plan(s) approved by the Regional Air Team shall be implemented and working in order for construction to continue as scheduled. Given that the project is in a severe non-attainment area for ozone and nitrogen oxides, the Department wishes to reemphasize the preference for real emissions reductions to offset construction-related emissions from this project.

9. The Department is currently reviewing the latest version of the Habitat Mitigation Report (January 2004), and the most recent assessment of littoral habitat impact acreage. A conditional approval of the conceptual mitigation plan will be forthcoming from the Department to allow the NY District to proceed to Pre-construction, Engineering and Design (PED) Phase of the mitigation project. The NY District shall not commence construction of the mitigation project until the Department approves in writing the Plans and Specifications for the mitigation project. The District shall comply with the following conditions related to mitigation for the loss of littoral habitat during construction of the HDP:

- The NY District shall submit a schedule for implementation of the mitigation project for the HDP **within 60 days of the date of this letter.** The results of HTRW sampling shall also be submitted within this timeframe.

- At the time of submission of the PCD/WQC for each individual contract, the NY District shall recalculate the habitat type impact using the most recent bathymetric surveys of the contract area and re-confirm the acreage of loss of habitat for the entire HDP project.

- The NY District shall utilize the attached "Checklist for Completeness" when developing the Plans and Specifications for the mitigation project. Said Plans and Specifications shall be submitted to the Department for review and written approval prior to initiation of construction.

- The NY District shall comply with the conditions specified in the attached "Coastal Wetland Mitigation Conditions" as it relates to monitoring and reporting requirements for the mitigation project.

10. At the completion of each individual dredging contract, the NY District shall submit the following information to the Department. This information shall be submitted within six months of contract completion.

- Start and finish date of contract
- Post-dredge hydrographic survey

- Completed "Notice of Completion of Work" attached.

The Department requests that the NY District provided written notification to the Department within 10 days of receipt of the umbrella FC/WQC for the Harbor Deepening Project that it has reviewed and understands the conditions specified herein as it relates to consistency with the New Jersey Coastal Management Program.

Should you have any questions in this regard, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology

C: Richard Gimello, Executive Director, New Jersey Maritime Resources
Steve Dorrler, Port Authority of New York and New Jersey
Kaydee McGuckin, NYDEC

NY & NJ Harbor Construction Contract Areas



# PCD/WQC CHECKLIST FOR HDP DREDGING CONTRACT REACH AREA

**Name of Contract Reach:** ______________________________

For each Contract Reach proposed for dredging pursuant to Federal Consistency Determination/WQC issued April 11, 2004 (DEP File(s): 0000-92-0031.9 (FC)/0000-03-0035.1 (WQC), the NY District shall submit a *Request for Phased Consistency Determination and Water Quality Certification (PCD/WQC)* at least ninety (90) days prior to bid advertisement for named Contract Reach. Said request is to be accompanied by the following information:

1. Request for PCD/WQC

**History**

2. Date of last dredge event for specified contract reach
3. Volume removed during last dredge event(s) for specified contract reach
4. Disposal location for all material removed during last dredge event(s) for specified contract reach.

**Proposed Dredging**

5. The most recent (60% or 90%) Design Plans and Specification package
6. Estimated start date of specified contract reach
7. Project depth + over dredge + safety clearance:
8. Scaled, legible hydrographic surveys that clearly and accurately depict:
   - i. Existing and new channel boundaries
   - ii. Location of top of slope
   - iii. Location of shoreline (such as mean high or mean low water line)
   - iv. General landside features in the project area such as street names, facility names, towns, rivers, etc.
   - v. Highlight areas of recent shoaling, if any (areas where recent material has accumulated since last dredge event?)

9. Results of HARS testing, including:

   **NOTE:** Sampling plan must be approved by the Department at least 120 days prior to proposed dredging date
   - i. Core log (NOTE: core log must indicate depth of Pleistocene layer and depth of overlying accumulated sediments, if any)
   - ii. Grain size analysis
   - iii. Bulk chemistry
   - iv. Bioassay results

10. HARS memo, if any/all material is going to HARS

11. Results of testing for non-HARS material, including:

    **NOTE:** Sampling plan must be approved by the Department at least 120 days prior to proposed dredging date

    i. Core log (NOTE: core log must indicate depth of Pleistocene layer and depth of overlying accumulated sediments, if any)

    ii. Grain size analysis

    iii. Applicable sediment sample results for appropriate upland placement site.

    iv. List all piers, bulkheads, pipelines, cables, or other structures that will be impacted by the commencement of dredging for specified contract reach

12. Submit dewatering plan (location and method)

13. Estimated total volume to be removed in contract:

    i. Estimated volume going to HARS

    ii Estimated volume going to artificial reefs

    iii. Estimated volume going upland (specify disposal location)

Estimated volume going elsewhere (specify disposal location)

**Habitat Impact**

14. Updated area of impact survey that clearly indicates:

    i. Toe of slope

    ii. Top of slope

    iii. Types of habitat impacted by the proposed dredging

15. Summary of any changes in total impact area for the proposed dredging include square footage of each habitat type impact

    i. denote any changes (square footage) in impacts for each habitat type

# DEWATERING FORM

**Week of ________________________ (Sunday to Saturday) (SEE NOTE BELOW)**

**USACE Contract:____________________________**

**Contract Reach:_________________________**

Decant Scow Identification ________ Capacity________ gallons/______ cubic yards

Volume Calculation:_______Estimated _______Measured (check one) (If measured, provide calculation procedure)

| Dredge Scow Identification # | Date of discharge into decant scow | Time of initiation of discharge into decant scow | Time of cessation of discharge into decant scow | Rate of pump used to discharge into decant scow | Volume of Discharge into decant scow |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Last addition of decant water into decant scow:
Date:_____
Time:_____

Discharge of decant water to surface waterbody
Date:_____
Time:_____
Volume: ________ gallons

**NOTE: Should more than one decant barge be used during a given week, a new dewatering form should be utilized and submitted to the ACOE Field Office.**

**CERTIFICATIONS:**

**I,______________________, as Quality Control Officer for _______________________(Company) for the above ACOE Dredging Contract, do hereby certify that the information provided in this document is true and accurate, and that I have personally observed the dewatering procedure recorded herein during the timeframe specified above. Signature:__________________________**

**I, ______________________, as ACOE Project Engineer for the above referenced contract have personally observed the dewatering procedure recorded herein during the timeframe specified above. Said procedure has complied with the conditions specified in the Federal Consistency Determination/Water Quality Certificate issued by the NJDEP for the project.**
**Signature:____________________________**

**NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION**

**CREATION, RESTORATION OR ENHANCEMENT FOR A TIDAL WETLAND MITIGATION PROPOSAL**

**CHECKLIST FOR COMPLETENESS**
**(4/03)**

**These are the application requirements for an administratively complete proposal package for an onsite or offsite tidal wetland mitigation proposal. Please read each section and check the box next to each area after you have fully completed the information for each requirement that applies to you.**

**Please provide five copies of the following information and plans.**

□ 1. An introduction describing the wetland mitigation proposal. The introduction must include the following:

a. The type of permit that requires you to perform wetland mitigation (include a copy of the permit);

b. How many acres of wetland mitigation are you required under N.J.A.C. 7:7E-3.27 or permit to create, enhance and/or restore;

c. The goals of the mitigation project in terms of wetlands types, values, and functions, and a discussion of how the mitigation proposal will satisfy those goals. (e.g., The goal of the wetlands mitigation project is to establish a low marsh wetland complex dominated by *Spartina alterniflora* that is flowed twice daily by the tide, etc.);

d. The reason why the mitigation site is an appropriate site for meeting the goals in (1c.) above, and the aspects of the site that will ensure the success of the mitigation project; and

e. A copy of USGS quad map(s) showing the location of the permitted activity and showing the mitigation site with the state plane coordinates of the mitigation site. The accuracy of these coordinates should be within 50 feet of the actual center point of the site. For linear mitigation projects, the applicant shall provide State plane coordinates for the end-points. For linear mitigation projects 2000 feet in length and longer, the applicant supply additional coordinates at each 1000 foot interval.

□ 2. A description (e.g., size, type, vegetation, hydrology, wildlife use, etc.) of the wetlands that are being destroyed or disturbed by the permitted activity.

- ☐ 3. Photos of the proposed mitigation site, showing topographic, vegetative, tidal streams and wetland features.

- ☐ 4. The names and addresses of all current and proposed owner(s) of the proposed mitigation site.

- ☐ 5. The lot, block, municipality and county of the proposed mitigation site. This information must be clearly visible on the front page of the proposal and must also be placed on the mitigation plans as required under item 14. In addition, provide the New Jersey Wetland/Tidelands Map number(s) for the development site and the mitigation site if it is in a different location.

- ☐ 6. A description (e.g., size, type, vegetation, hydrology, wildlife and adjacent land use etc.) of the proposed mitigation site.

- ☐ 7. A projected water budget for the proposed mitigation site. The water budget should detail the sources of water for the mitigation project as well as the water losses. The budget should include the following regional information:

    - the seasonal high water table;
    - the tidal range (low, high and spring high tide) over the course of a month;
    - elevation of existing reference wetland system in the vicinity of the project site; and,
    - the salinity range of adjacent waters;

    The projected water budget should document that an ample supply of water is available to create, enhance, or restore wetland conditions, as applicable. The water budget must contain sufficient data to show that the mitigation project will have sustained wetland hydrology indefinitely in the future.

- ☐ 8. Existing soil profiles including the location of soil borings on the proposed mitigation site.

- ☐ 9. A detailed discussion of the substrate you propose to create for the mitigation site (e.g. How will the substrate of the site be prepared? Is the soil texture appropriate for the community proposed? Is the pH appropriate?).

- ☐ 10. A landscape plan showing the proposed vegetative community on the proposed mitigation site that includes the following:

    - the species;
    - quantity of each species;
    - the spacing of all plantings;
    - the stock type (plugs, potted, seed); and

- the source of the plant material.

The wetland buffer required as part of the mitigation site under N.J.A.C. 7:7E-3.28 must also be planted. The landscape plan must identify the proper time to plant and must indicate any appropriate substitutions.

- 11. A preventive maintenance plan detailing how invasive or noxious vegetation will be controlled, and how predation of the mitigation plantings will be prevented. The plan shall explain the measures that will be taken if a problem with invasive or noxious plants or predation presents itself during the construction or monitoring period. The applicant is encouraged to install a goose fence to control problems resulting from the presence of geese in the State..

- 12. A metes and bounds description of the proposed mitigation site. The metes and bounds description shall include the wetland buffer required under N.J.A.C. 7:7E-3.28.

- 13. An estimate of the actual cost of carrying out the construction of the mitigation project. The cost estimate should include but is not limited to the value of the land, engineering costs, environmental consultant fees, attorney fees, site preparation costs, construction costs, planting costs, supervising construction fees, and monitoring costs. The cost estimate of the project will be used when determining the amount of the financial assurance required.

- 14. A site plan for the mitigation project which includes:

  i. Project location within the region;

  ii. The lot and block number of the mitigation project location;

  iii. Existing and proposed elevations and grades of the mitigation site and, when necessary off-site elevations and grades. All existing and proposed elevations and grades must be shown in at least one foot intervals. The slope shall be no greater than 10:1 along a created transition area as well as along any berms that are intended to function as water control structures or berms created along a stream;

  iv. The wetland buffer required under N.J.A.C. 7:7E-3.28 shown clearly;

  v. A detail that shows, or a statement indicating, the soil amendments and the seed stabilization mix if any to be used on the mitigation site; and

  viii. Pre and post construction plan views and cross sectional views of the mitigation site.

- 15. A construction schedule including projected dates of excavation, planting, fertilizing, etc.

- ☐ 16. A draft conservation restriction that meets the requirements of N.J.A.C. 7:7E-3B.2. Contact Virginia Kop'Kash at (609) 777-0454 or email her at gkopkash@dep.state.nj.us for a model that has been approved by the Department.

- ☐ 17. Certify the proposed mitigation will not adversely affect properties, which are listed or are eligible for listing on the National Register of Historic Places. If the mitigator before or during the course of mitigation work encounters a probable historic property that has not been listed or determined eligible for listing on the National Register, but which may be eligible for listing on the National Register, the NY District shall immediately notify the Department and proceed as directed by the Department.

**Proposal packages shall be submitted to:**

New Jersey Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, New Jersey 08625-028
Attn: Suzanne Dietrick

mitcoastalchecklist4-03
last revised 4/03

## COASTAL WETLAND MITIGATION CONDITIONS

1. The NY District shall complete and sign a Department approved conservation restriction for the mitigation site. The restriction shall be included on the deed, and recorded in the office of the County Clerk (the Registrar of Deeds and Mortgages in some counties), in the county wherein the lands of the mitigation project are located, within 10 days of approval of the wetland mitigation proposal.

2. The NY District shall notify the Department, in writing, at least thirty (30) days in advance of the start of construction of the wetland mitigation project for an on-site pre-construction meeting between the NY District, the contractor, the consultant and the Program.

3. The mitigation designer must be present during critical stages of construction of the mitigation project this includes but is not limited to herbicide applications, sub-grade inspection, final grade inspection, and planting inspection to ensure the intent of the mitigation design and their predicted wetland hydrology is realized in the landscape. Mitigation designs are not static documents and changes may be necessary to ensure success of the project. It shall be the prerogative of the mitigation consultant to make changes to the design should field conditions warrant such action.

4. Immediately following final grading of the site, a disc must be run over the site to eliminate compaction. The mitigation designer must be present to oversee this phase of the project and confirm with the Department this activity has occurred prior to planting of the site.

5. Immediately following the final grading of the mitigation site and prior to planting, the NY District shall notify the Department for a post-grading construction meeting between the NY District, contractor, consultant and the Department. The NY District must give the Program at least thirty (30) days notice prior to the date of this meeting.

6. Within 30 days following the final grading and planting of the mitigation project, the NY District shall submit a final report to the Department. The final report shall contain, at a minimum, the following information:

   a. A completed WETLAND MITIGATION PROJECT COMPLETION OF CONSTRUCTION FORM (attached) which certifies that the mitigation project has been constructed as designed and that the proposed area of wetland creation, restoration or enhancement has been accomplished;

   b. As built plans which depict final grade elevations at one foot contours and include a table of the species and quantities of vegetation that were planted including any grasses that may have been used for soil stabilization purposes;

   c. Show on the as-built plans that the boundaries of the wetland mitigation area has been visibly marked with 3 inch white PVC pipe extending 4 feet above the ground surface. The stakes must remain on the site for the entire monitoring period;

d. Photos of the constructed wetland mitigation project with a photo location map as well as the GPS waypoints in NJ state plane coordinates NAD 1983;

e. To document that the required amount of soil has been placed/replaced over the entire area of the mitigation site, provide a minimum of 6 soil profile descriptions to a depth of 20 inches. The location of each soil profile description should be depicted on the as built plan as well as provide the GPS waypoints in NJ state plane coordinates NAD 1983;

f. The NY District shall post the mitigation area with several permanent signs, which identify the site as a wetland mitigation project and that mowing, cutting, dumping and draining of the property is prohibited; and

g. The sign must also state the name of the site, a contact name and phone number.

7. If the Department determines that the mitigation project is not constructed in conformance with the approved plan, the NY District will be notified in writing and will have 60 days to submit a proposal to indicate how the project will be corrected.

8. The NY District shall monitor the mitigation project for 3 full growing seasons after the mitigation project has been constructed. The NY District shall submit monitoring reports to the Department no later than December 31st of each monitoring year (All monitoring report must include the standard items identified in the attachment and the information requested below).

9. All monitoring reports will include all the following information:

a. All monitoring reports except the final one must include documentation that it is anticipated, based on field data, that the goals of the wetland mitigation project including the transition area, as stated in the approved wetland mitigation proposal and the permit will be satisfied. If the NY District is finding problems with the mitigation project and does not anticipate the site will be a full success then recommendations on how to rectify the problems must be included in the report with a time frame in which they will be completed;

b. All monitoring reports except the final one must include field data to document that the site is progressing towards 85 percent survival and 85 percent area coverage of mitigation plantings or target hydrophytes (Target hydrophytes are non-invasive native species to the area and similar to ones identified on the mitigation planting plan). If the proposed plant community is a scrub/shrub or forested wetland or wetland buffer the NY District must also demonstrate each year with data that the woody species are thriving, increasing in stem density and height each year. If the field data shows that the mitigation project is failing to meet the vegetation survival, coverage and health goals, the monitoring report should contain a discussion of steps that will be taken to rectify the problem, including a schedule of implementation;

c. All monitoring reports except the final one must include documentation of any invasive or noxious species (see below for list of species) colonizing the site and how they are being eliminated. The NY District is required to eliminate either through hand-pulling, application of a pesticide or other Department approved method any

occurrence of an invasive/noxious species on the mitigation site during the monitoring period;

d. All monitoring reports except the final one must include documentation that demonstrates the proposed hydrologic regime as specified in the mitigation proposal appears to be met. If the NY District is finding problems with the mitigation project and does not anticipate the proposed hydrologic regime will be or has not been met then recommendations on how to rectify the problem must be included in the report along with a time frame within which it will be completed;

e. The final monitoring report must include documentation to demonstrate that the goals of the wetland mitigation project including the required wetland buffer, as stated in the approved wetland mitigation proposal and the permit, has been satisfied. Documentation for this report will also include a field wetland delineation of the wetland mitigation project based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989);

f. The final monitoring report must include documentation the site has an 85 percent survival and 85 percent area coverage of the mitigation plantings or target hydrophytes. The NY District must also document that all plant species are healthy and thriving and if the proposed plant community contains trees demonstrate that the trees are at least five feet in height;

g. The final monitoring report must include documentation demonstrating the site is less than 10 percent occupied by invasive or noxious species such as but not limited to *Phalaris arundinacea* (Reed canary grass), *Phragmities australis* (Common reed grass), *Pueraria lobata* (Kudzu), *Typha latifloia* (Broad-leaved cattail), *Typha angustifolia* (Narrowed leaved cattail), *Lythrum salicaria* (Purple loosestrife), *Ailanthus altissima* (Tree-of-heaven), *Berberis thunbergi* (Japanese barberry), *Berberis vulgaris* (Common barberry), *Elaeagnus angustifloia* (Russian olive), *Elaeagnus umbellata* (Autumn olive), *Ligustrum obtusifolium* (Japanese privet), *Ligustrum vulgare* (Common privet) and *Rosa multiforia* (Multiflora rose);

h. The final monitoring report must include documentation that demonstrates that the proposed hydrologic regime as specified in the mitigation proposal, which proves the mitigation site is a wetland has been satisfied. The documentation shall include when appropriate monitoring well data, tide gauge data, photographs and field observation notes collected throughout the monitoring period; and

10. Once the required monitoring period has expired and the NY District has submitted the final monitoring report, the Department will make the finding that the mitigation project is either a success or a failure. This mitigation project will be considered successful if the NY District demonstrates all of the following:

a. That the goals of the wetland mitigation project including acreage and the required wetland buffer, as stated in the approved wetland mitigation proposal and the permit, has been satisfied. The NY District must submit a field wetland delineation of the wetland mitigation project based on the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989) which shows the exact acreage of wetlands in the mitigation area;

b. The site has an 85 percent survival and 85 percent area coverage of the mitigation plantings or target hydrophytes which are species native to the area and similar to ones identified on the mitigation planting plan. All plant species in the mitigation area are healthy and thriving. All trees are at least five feet in height;

c. The site is less than 10 percent occupied by invasive or noxious species such as but not limited to *Phalaris arundinacea* (Reed canary grass), *Phragmities australis* (Common reed grass), *Pueraria montana* (Kudzu), *Typha latifloia* (Broad-leaved cattail), *Typha angustifolia* (Narrowed leaved cattail), *Lythrum salicaria* (Purple loosestrife), *Ailanthus altissima* (Tree-of-heaven), *Berberis thunbergi* (Japanese barberry), *Berberis vulgaris* (Common barberry), *Elaeagnus angustifloia* (Russian olive), *Elaeagnus umbellata* (Autumn olive), *Ligustrum obtusifolium* (Japanese privet), *Ligustrum vulgare* (Common privet) and *Rosa multiforia* (Multiflora rose); and,

d. The proposed hydrologic regime as specified in the mitigation proposal, which proves the mitigation site is a wetland has been satisfied.

11. If the mitigation project is considered a failure, the NY District is required to submit a revised mitigation plan to rectify the wetland mitigation site. The plan shall be submitted within 60 days of receipt of the letter from the Program indicating the wetland mitigation project was a failure. The financial surety, if required, will not be released by the Program until such time that the NY District satisfies the success criteria as stipulated in condition number 15.

12. The NY District shall assume all liability for accomplishing corrective work should the Department determine that the compensatory mitigation has not been 100% satisfactory. Remedial work may include re-grading and/or replanting the mitigation site. This responsibility is incumbent upon the NY District until such time that the Department makes the finding that the mitigation project is successful.

Share on Dep-03\Main'(V:)/LUR/FORMS/mitconditioncoastal4-03
Revised 4/03

# WETLAND MITIGATION PROJECT COMPLETION OF CONSTRUCTION FORM

THE COMPLETION OF THIS FORM IS A REQUIREMENT OF THE NJDEP AUTHORIZATION OF A WETLAND MITIGATION PROJECT. THIRTY DAYS FOLLOWING THE COMPLETION OF CONSTRUCTION OF THE WETLAND MITIGATION PROJECT, COMPLETE THIS FORM AND INCLUDE IT WITH YOUR AS-BUILT MITIGATION REPORT. SEND ALL DOCUMENTS TO THE ADDRESS REFERENCED BELOW.

THE COMPLETION OF THIS FORM HEREBY CERTIFIES THAT I, ____________________

(PRINT NAME) (SIGNATURE) (DATE)

OF THE CONSULTING FIRM: ____________________ SUPERVISED THE CONSTRUCTION OF THE REFERENCED WETLAND/STATE OPEN WATER MITIGATION PROJECT. I WAS PRESENT DURING CRITICAL STAGES OF CONSTRUCTION TO CONFIRM THAT ALL CONDITIONS OF THE MITIGATION APPROVAL WERE ADHERED TO, THAT THE ANTICIPATED HYDROLOGY WAS ACHIEVED AND HEREBY CERTIFY THAT THE PROJECT WAS CONSTRUCTED IN CONFORMANCE WITH ALL NJDEP APPROVED PLANS AND SPECIFICATIONS CITED BELOW, INCLUDING FIELD ADJUSTMENTS AGREED UPON DURING ONSITE MEETINGS WITH NJDEP MITIGATION STAFF ON THE FOLLOWING DATES: ____________________.

PERMIT NUMBER (S) ____________________

ISSUANCE DATE ____________________

NAME OF PERMITTEE ____________________

PROJECT NAME ____________________

AS-BUILT SURVEY IS IDENTIFIED AS ____________________

____________________

ADDRESS OF FIRM ____________________

____________________

TELEPHONE # ____________________

E-MAIL ADDRESS ____________________

FAX # ____________________

**SEND TO: STATE OF NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, OFFICE OF DREDGING AND SEDIMENT TECHNOLOGY, P.O. BOX 028, TRENTON, NJ 08625, ATTN: ODST**

# NOTICE OF COMPLETION OF DREDGING

Date: ____________________

New Jersey Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
401 East State Street
Trenton, NJ 08625

Attn: NJDEP, ODST, Project Manager FAX: (609) 777-1914

**Re: NJDEP Permit No.**
**Insert project title:** ____________________
**Location of Dredging:** ____________________

Dear Sir/Madam:

I hereby serve notice that the DREDGING allowed by the above referenced permit has been completed as of ____________________, 200__.

The dredged material was removed via mechanical____ or hydraulic____ dredging (check one).

The dredged material was/is being dewatered with discharge into ____________________.

The actual quantity of material dredged was ________cys. The dredged material was taken to:

8. ________ cys was taken to the Historic Area Remediation Site.
9. ________ cys used on site as per NJDEP Permit(s) #____________________ ____________________(specify the type of permit(s)).
10. ________ cys was taken to ____________________ for beneficial reuse.
11. ________ cys was taken to____________________ for disposal.
12. ________ cys was taken to____________________ for beach nourishment.

| | |
|---|---|
| **Signature of the Permittee** | **Signature of the Contractor (If any)** |
| **Permittee's Name (Printed)** | **Contractor's Name (Printed)** |
| Name of Permitted Agency/Entity | Name of Company |
| Street Address | Street Address |
| City State ZIP | City State ZIP |
| Telephone | Telephone |

** TOTAL PAGE 21 **

G007347

G01010 07270

**New York State Department of Environmental Conservation**
**Division of Environmental Permits, Region 2**
47-40 21ST Street, Long Island City, NY 11101-5407
**Phone:** (718) 482-4997 • **FAX:** (718) 482-4975
**Website:** www.dec.state.ny.us

Erin M. Crotty
Commissioner

October 15, 2004
Via Fax (212-264-0961) and US Mail

**Re: DEC Permit No. 2-6500-00053/00001 Modification #1**
**Harbor Deepening Project: Contract Reach S-KVK-2**
**AUTHORIZATION TO PROCEED**

Leonard Houston, Chief
Environmental Analysis Branch
Planning Division CENAN-PL-E
New York District, Corps of Engineers
Department of the Army
Jacob K. Javits Federal Building
New York, NY 10278-0090

The Department has received USACE NYD's request for an Authorization to Proceed with dredging at Contract Reach S-KVK-2 under Water Quality Cert 2-6500-00053/00001 and has determined that the proposed activity falls within the scope of the named WQC.

This letter is Authorization to Proceed with the proposed dredging at S-KVK-2.

**Said Authorization has the following special conditions:**

1. For protection of winter flounder, dredging of non-HARS material is prohibited between November 15 and May 31 in all contracts in NY waters west of the Bayonne Bridge.

2. Between 01 April and the end of the first week of May, a qualified biologist, selected by the Permittee and agreed upon by the Department, shall inspect Shooter's Island for the presence of nesting activity by herons or egrets. This inspection shall be conducted once each year that dredging/blasting is expected to occur within 1,000 feet of Shooter's Island. Upon completion of the inspection, Permittee shall submit a written inspection report to Dawn McReynolds at the NYS DEC Region 2 office.
    a. If no active nests are observed, avian protective measures will not be required.
    b. If nesting is confirmed, the following protective measures shall be implemented:
        i. No blasting and/or dredging activity shall occur within 1,000 feet of Shooter's Island from 1 April - 31 July.
        ii. The Permittee shall use marker buoys every 200 feet or less (except within the existing federal channel) to indicate the 1,000 foot restricted area.

G007348

G01010 07271

3. The dredging method must minimize sediment resuspension no less efficiently than an environmental bucket with the following specifications and operational restrictions:
   a. The bucket shall be constructed with sealing gaskets or overlapping sealed design at the jaws, and seals or flaps positioned at locations of vent openings to minimize the loss of material during transport through the water column and into the barge. Dredging is not to commence until the Inspector has examined said bucket and determined that it is constructed as described and properly functioning.
   b. Any seals or flaps designed and/or installed at the jaws and locations of vent openings must tightly cover these openings while the bucket is lifted through the water column and into the barge. If excessive loss of water and/or sediments from the bucket is observed from the time of its breaking the water surface to crossing the barge gunwale, the inspector shall halt dredging operations and inspect the bucket for defects. Operations shall be suspended until all necessary repairs or replacements are made.

4. Bucket hoist speed shall be limited to approximately 2 feet per second. The bucket shall be lifted in a continuous motion through the water column and into the barge.

5. The bucket shall be lowered to the level of the barge gunwales prior to the release of load.

6. There shall be no barge overflow.All other conditions, terms, and specifications of the original Water Quality Certificate remain as written. This modification is to be attached to the original Water Quality Certificate and available for inspection by the Department at all times at the project site. Copies of this permit modification are to be provided to all employees, contractors and agents performing any part of the permitted work.

If you have any questions or if you are in need of further assistance, please contact Kathryn McGuckin at 718-482-4078 or kdmcguck@gw.dec.state.ny.us.

Sincerely,

John J. Cryan

John Cryan
Regional Permit Administrator

CC: Jenine Gallo, USACE NYD, CENAN-PL-E
John Ferguson, NYSDEC Dredge Team Coordinator, Albany
KD McGuckin, NYSDEC Division of Environmental Permits
Leigh Vogel, NYSDEC Division of Marine Resources, Region 2
Captain J. Kaufman, NYSDEC Division of Law Enforcement, Region 2
Suzanne Dietrick, NJDEP Office of Dredging and Sediment Technology
file/CHRON

Hal Hawkins
Post-it® Fax Note 7671 | Date 11/17/04 | # of pages ▸ 6
To Janine Gallo | From S. Vetrick
Co./Dept. ACOE | Co. NJDEP
Phone # | Phone # (609) 292-8838
Fax # (212) 264-0961 (212) 264-2924 | Fax # (609) 777-1914

State of

Richard J. Codey
*Acting Governor*

Department of E ...bell ...Commissioner

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

November 17, 2004

Mr. Leonard Houston, Chief
Environmental Analysis Branch
Department of the Army
New York District, Corps of Engineers
Jacob K. Javits Building
Federal Building
New York, New York 10278-0090

RE: Federal Consistency Determination / Water Quality Certification
File:0000-01-1008.1 CDT 040001
Project: Harbor Deepening Project
SKVK-2 Contract Area

Dear Mr. Houston:

This letter is forwarded in response to your August 12, 2004 request, for a Federal Consistency (FC), as required by Section 307 of the federal Coastal Zone Management Act (16 USC 1451 et seq.) and Water Quality Certification (WQC) as required by Section 401 of the federal Clean Water Act (33 USC 1251 et seq.). Supporting information on the Federal Consistency Determination request was provided to the Department of Environmental Protection (Department) by submissions by the NY District dated August 27, 2004 and September 27, 2004.

The proposed project involves deepening Contract Area S-KVK-2 of the Kill Van Kull from its present maintained depth of –40 to 45 feet below the plane of mean low water (MLW) to a construction depth of –50 feet + 2.0' safety clearance + 1.5' paid overdredge (total depth=-53.5 feet below MLW). The volume of material to be removed (including overdredge) within this contract area is approximately 4.568 MCY. Of that total: 2,447,000 cy consists of rock material, 1,860,000 consists of material suitable for use in remediating the Historic Area Remediation Site (HARS), and 261,000 cy unsuitable for use as remediation material at the HARS.

The 2,447,000 cy of rock material is to be deposited at the Shark River artificial reef site. The 1,860,000 cy cubic yards of red-brown clay material and glacial till has been determined to be suitable for use as remediation material at the HARS by a Memorandum for the Record (MFR) signed by the USEPA and NY District on August 26, 2003 for glacial till material removed from areas of the NY/NJ Harbor. A similar MFR was signed by both agencies on January 26, 2000 for the Pleistocene red-brown clay removed from the Harbor.

Regarding the remaining 261,000 cy of non-HARS material, the NY District has requested that the federal consistency determination be generic in terms of the potential upland placement site(s) for this material. A subsequent amendment to the determination would be submitted to the Department by the Corps once the apparent low bidder for the contract has identified a fully permitted or approved upland placement site(s). This amendment to the determination request would need to be submitted by the Corps a minimum of two weeks prior to the award of the contract.

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

The Plans and Specifications Package, dated August 2004 seeks to allow the use of the Newark Bay Confined Disposal Facility (NBCDF) for 20,000 cy of non-HARS material that may not be able to be placed upland due to delays with the selected upland placement site and/or a delay at the processing facility accepting the material. The Department agrees with the use of the NBCDF as a contingency for the placement of up to 20,000 cy of non-HARS material that cannot be processed and placed upland as it is consistent with the intent of the NBCDF and the Rules on Coastal Zone Management. However, the decision to divert any of the 20,000 cy of non-HARS material to the NBCDF will be made on a scow-by-scow basis with verbal notification to and concurrence by the Department and the Port Authority. Concurrence shall be provided within 48 hours of notification by the Corps that material is not being processed by the upland vendor in accordance with contract specifications. During that 48 hour period the Corps, the Port Authority and the Department shall work with the Corps' contractor and the upland vendor to restore production if possible. If production rates cannot be restored and/or the deficit cannot be recovered, material may be diverted on a scow-by-scow basis as necessary to make up the deficit.

The Rules on Coastal Zone Management (N.J.A.C. 7:7E) constitute New Jersey's enforceable policies under its federally approved Coastal Zone Management Program. Contract SKVK-2 of the Harbor Deepening Project has been reviewed under the following Rules on Coastal Zone Management: Navigation Channels (7:7E-3.7), Ports (7:7E-3.11), Submerged Infrastructure Routes (7:7E-3.12), Historic and Archaeological Resources (7:7E-3.36), Special Hazards Areas (7:7E-3.41), New Dredging (7:7E-4.2(g)), Dredged Material Disposal in Water (7:7E-4.2(h)), Dredged Material Disposal on Land (7:7E-7.12), Marine Fish and Fisheries (7:7E-8.2) and Water Quality (7:7-8.4). Based on the summary of details of the SKVK-2 contract presented in the August 12, 2004 (as amended on August 27, 2004 and September 27, 2004) request for a contract specific FC/WQC, and the Department's umbrella approval of a Federal Consistency Determination/Water Quality Certificate for the entire Harbor Deepening Project dated April 12, 2004 (as amended on October 25, 2004), I have **CONDITIONALLY determined that SKVK-2 Contract Area is consistent with the Rules on Coastal Zone Management and New Jersey's federally approved Coastal Management Program, provided the Corps submits a request to amend this federal consistency, as identified in Paragraph 4 of this letter. A written response from the Department on the request for an amendment to the federal consistency determination must be received by the Corps prior to proceeding with any changes to the contract.**

I have also reviewed this Contract for potential water quality impacts. Provided that the following conditions are met, I have determined that this project is not likely to cause a violation of New Jersey's Surface Water Quality Standards (N.J.A.C. 7:9B-1.1 et seq.). **Therefore, this determination includes the State's Water Quality Certification pursuant to Section 401 of the federal Water Pollution Control Act (33 USC 1251 et seq.) subject to the following conditions:**

1. If nesting is confirmed on Shooters Island, dredging and/or blasting activity is prohibited within 1,000 feet of the island from April 1st through July 31st.

2. A "No barge overflow" condition applies to the dredging and transport of any contaminated, non-HARS, and non –rock dredged material.

3. All dredging of non-HARS suitable material shall be accomplished using a closed clamshell "environmental" bucket dredge.

G007351

4. Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard.

5. The dredge shall be operated so as to maximize the bite of the clamshell. This will reduce the amount of free water in the dredged material and the number of bites required to complete the job.

6. The clamshell shall lifted slowly through the water column, generally 2 feet per second or less.

7. All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete, except for material permitted for aquatic placement.

8. The gunwales of the dredge scows shall not be rinsed or hosed during dredging.

9. All decant water holding scows shall be water tight and of solid hull construction.

10. Decant water from non-HARS material may only be discharged within the Kill Van Kull waterbody in close proximity to the dredging contract area. Discharge to another receiving waterbody requires prior approval from the Department, and may require a NJDPES/DSW permit.

11. All decant water shall be held in the decant holding scow a minimum of 24 hours after the last addition of water to the decant holding scow. Said water contained in the decant holding scow may only be discharge after this mandatory 24 hour retention time.

12. Should the contractor wish to reduce the required holding time, the contractor shall demonstrate that the reduced holding time is sufficient to meet a total suspended solids (TSS) background value of 30 mg/L. This TSS action level is consistent with the ambient TSS results presented in the NY District study entitled "2001 Total Suspended Solids and Turbidity Monitoring for Newark Bay, Kill Van Kull and Port Jersey" (September 2002). The total suspended solids shall be determined through gravimetric analysis. No discharge shall be permitted from the decant holding scow until the results of the gravimetric analysis have confirmed that the 30 mg/L background level has been achieved. No additional water shall be added to the decant holding scow between the time of sample acquisition and discharge. Upon successful demonstration that the reduced holding time is sufficient to meet the TSS background level of 30 mg/L, the monitoring of TSS may be suspended and the demonstrated settling time shall replace the 24 hour minimum. A successful demonstration of the reduced holding time efficiency shall be determined once three consecutive TSS analyses have confirmed that the 30 mg/L action level has been achieved by the reduced holding time.

    Should the contractor wish to demonstrate this reduced holding time, all records including time of last addition of decant water into the scow, time of TSS sampling and the results of TSS sampling shall be submitted to the NJDEP as soon as they become available, together with a request for a reduced holding time.

13. During pumping of the decant water from the holding scow, great care shall be taken to avoid resuspending or pumping sediment which has settled in the decant holding scow.

14. The dredging contractor shall complete and submit the attached Dewatering Form to the ACOE Field Office on a weekly basis as part of the Quality Control Report provided to the Field Office. Said

Dewatering form shall be certified by the ACOE Field Office that they have witnessed the dewatering process during the preceding week. The ACOE Field Office shall submit the completed Dewatering form with appropriate certifications to the appropriate state agency the Monday after the end of the preceding week.

15. During pumping of the decant water from the holding scow, great care shall be taken to avoid resuspending or pumping sediment which has settled in the decant holding scow.

16. REPORTING REQUIREMENTS: At the completion of each individual dredging contract, the NY District shall submit the following information to the Department. This information shall be submitted within six months of contract completion.

- Start and finish date of contract
- Post-dredge hydrographic survey
- Completed "Notice of Completion of Work" attached.

Should you have any questions regarding this determination and certification, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology

C: Richard Gimello, Executive Director, Office of Maritime Resources
Steve Dorrler, Port Authority of NY/NJ
Harold Hawkins, NYDistrict ACOE (via facsimile)

Kathryn D. McGuckin
NY Department of Environmental Conservation
Division of Environmental Permits, Region 2
47-40 21st Street
Long Island City, NY 11101-5407

# DEWATERING FORM

**Week of ________________________ (Sunday to Saturday) (SEE NOTE BELOW)**

**USACE Contract:____________________________**

**Contract Reach:_________________________**

Decant Scow Identification _______ Capacity________ gallons/______ cubic yards

Volume Calculation:______Estimated _______Measured (check one) (If measured, provide calculation procedure)

| Dredge Scow Identification # | Date of discharge into decant scow | Time of initiation of discharge into decant scow | Time of cessation of discharge into decant scow | Rate of pump used to discharge into decant scow | Volume of Discharge into decant scow |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Last addition of decant water into decant scow:
Date:_____
Time:_____

Discharge of decant water to surface waterbody
Date:_____
Time:_____
Volume: ________ gallons

**NOTE: Should more than one decant barge be used during a given week, a new dewatering form should be utilized and submitted to the ACOE Field Office.**

**CERTIFICATIONS:**

**I,______________________, as Quality Control Officer for ______________________(Company) for the above ACOE Dredging Contract, do hereby certify that the information provided in this document is true and accurate, and that I have personally observed the dewatering procedure recorded herein during the timeframe specified above. Signature:___________________________**

**I, ______________________, as ACOE Project Engineer for the above referenced contract have personally observed the dewatering procedure recorded herein during the timeframe specified above. Said procedure has complied with the conditions specified in the Federal Consistency Determination/Water Quality Certificate issued by the NJDEP for the project.**
**Signature:____________________________**

# NOTICE OF COMPLETION OF DREDGING

Date: ______________________________

New Jersey Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
401 East State Street
Trenton, NJ 08625

Attn: NJDEP, ODST, Project Manager FAX: (609) 777-1914

Re: **NJDEP Permit No.**
**Insert project title:** ______________________
**Location of Dredging:** ______________________

Dear Sir/Madam:

I hereby serve notice that the DREDGING allowed by the above referenced permit has been completed as of ____________________, 200__.

The dredged material was removed via mechanical_____ or hydraulic____ dredging (check one).

The dredged material was/is being dewatered with discharge into ____________________.

The actual quantity of material dredged was ________cys. The dredged material was taken to:

1. ________ cys was taken to the Historic Area Remediation Site.
2. ________ cys used on site as per NJDEP Permit(s) #____________________ ____________________(specify the type of permit(s)).
3. ________ cys was taken to ____________________ for beneficial reuse.
4. ________ cys was taken to____________________ for disposal.
5. ________ cys was taken to____________________ for beach nourishment.

| | |
|---|---|
| **Signature of the Permittee** | **Signature of the Contractor (if any)** |
| **Permittee's Name (Printed)** | **Contractor's Name (Printed)** |
| Name of Permitted Agency/Entity | Name of Company |
| Street Address | Street Address |
| City State ZIP | City State ZIP |
| Telephone | Telephone |

** TOTAL PAGE.06 **

# SECTION 00903

# DEWATERING INSTRUCTIONS

# AND

# REEF SITE

# AND

# HISTORIC STRUCTURES AND OTHER MAPS