Phone Number(s) ______________________________

0001AD DEWATERING IN ACCORDANCE WITH 648,600 CY $__________ $__________
THE HOST STATE WQC AND PROCESSING & DISPOSAL)
FACILITY(IES) TERMS AND CONDITIONS FOR UPLAND PLACEMENT

0001AE DREDGING, OFFLOADING, TRANSPORTATION, 57,600 CY $__________ $__________
DELIVERY, AND PLACEMENT OF NON-ROCK
(Sand and Gravel) MATERIALS SUITABLE FOR PLACEMENT
UPLAND, EXCLUDES DEWATERING: ITEM 0001AF
AND WITHOUT PROCESSING
PLACEMENT AT THE CONTRACTOR'S IDENTIFIED
DISPOSAL FACILITY(IES); AS IN ITEM 0001AC)

Name of Site (s) ______________________________
Name of POC(s) ______________________________
Address of Site (s) ______________________________
______________________________
______________________________

Phone Number(s) ______________________________

0001AF DEWATERING IN ACCORDANCE WITH 57,600 CY $__________ $__________
THE HOST STATE WQC AND OFFLOADING & DISPOSAL
FACILITY (IES) TERMS AND CONDITIONS FOR UPLAND PLACEMENT

0001AG SUBSURFACE DRILLING AND SAMPLING 15 EA $__________ $__________

0001AH FIELD OFFICE 1 LS $__________ $__________

0001AJ DREDGING, TRANSPORTATION, DELIVERY, 68,000 CY $__________ $__________
AND PLACEMENT OF NON-ROCK
MATERIALS UNSUITABLE FOR PLACEMENT
AT THE HARS for PLACEMENT AT THE NEWARK BAY
**CONFINED DISPOSAL FACILITY**, (NBCDF).

**TOTAL BASE BID: $**______________

## OPTIONAL ITEMS

0002 ADDITIONAL COST FOR OPTIONAL 1 LS $__________ $__________
INSURANCE

0003 OPTIONAL ITEM/ DIFFERENCE IN COST, 57,600 CY $__________ $__________
TO THE PROJECT FOR PLACEMENT AT THE HARS
PLACEMENT OF NON-ROCK (sand and gravel)
MATERIALS (as in Item 0001AE and 0001AF)
(NEGATIVE NUMBER TO BE SHOWN IN PARENTHISIS)

**TOTAL BASE BID PLUS OPTIONAL ITEMS: $**______________________________

G006874

**NOTES FOR PRICE SCHEDULE:**

1 Bidders are required to bid on both the Base Bid Items and the Optional Items on the Price Schedule or their bid will be rejected.

2. The low bidder for the purpose of award will be the conforming responsible bidder offering the lowest amount for the Total Base Bid & Optional Items.

3. Any bid which is materially unbalanced as to the price for the Base Bid Item and Optional Items may be rejected. An unbalanced bid is one, which is based on price significantly less than the cost for some work and prices are significantly overstated for other work.

4. Bidders are reminded that they must bid on the issued plans and specifications as amended. Any deviations, conditions or attachments made by the bidders thereto may render the bid non-responsive and be cause for its rejection.

5. The Optional Items, if awarded, will be awarded within **240** calendar days from issuance of the Notice to Proceed date. The Government is under no obligation to award the Optional Items.

6. The Newark Bay Confined Disposal Facility (NBCDF) may not be used unless WQC conditions allow and as directed by the Contracting Officer or the Contracting Officer's Representative.

7. The apparent low bidder shall submit the documents specified Section 00800: Special Contract Requirements, **CONTRACTOR'S IDENTIFIED** Offloading, Processing and Disposal Site Compliance. If the apparent low bidder does not submit the information required to be submitted within the times specified the Contractor will be considered non-responsible and its bid rejected.

8. Bidders will identify their offloading, processing and disposal sites with their bid. Bidders will write on the blank lines provided on the Price Schedule Line Item 0001AC and 0001AE the name(s) of the site(s), POC(s), address(s) and phone(s) of their site(s) included in that line item.

9. DISPOSAL SITE COMPLIANCE
The Apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder; that the CONTRACTOR'S IDENTIFIED site(s) is operational, capable of offloading, processing and disposing of the Non rock material unsuitable for placement at the HARS on that date for the in-situ quantity as per line items CLIN 0001AC and 0001AE is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management (CZM) Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

(End of Summary of Changes)

## 1.45 CONTRACTOR IDENTIFIED OFFLOADING, PROCESSING AND DISPOSAL SITE COMPLIANCE

The Apparent low bidder must demonstrate to the **Government within 70** calendar days from the date the Apparent low bidder is notified of being the low bidder; that the contractor identified offloading, processing and disposal site(s) is operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS on that date for the in-situ quantity as **per line item 0001AC and 0001AE** and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

The contractor identified offloading, processing and disposal site(s) must have sufficient capacity to receive Non-rock material unsuitable for placement at the HARS from the project site. The Apparent low bidder is required to perform all work to demonstrate that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS on that date for the in-situ quantity as per line item **0001AC and 0001AE** and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material. Offloading, processing and disposal of the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible. Dredging, dewatering and/or other processing (if any), transfer, transportation and material disposal shall be performed in accordance with applicable law and requirements of all associated permits, approvals and government authorities having jurisdiction.

### 1.45.1 Information Submitted by the Apparent Low Bidder within 3 Calendar days

The Apparent Low bidder must submit **within 3** calendar days from the date they are notified of being the Apparent Low Bidder the following information for the site(s):

a) Name of the contractor identified offloading, processing and disposal site(s).

b) Location (street address, city, state) of the contractor identified site(s)

c) Point of Contact for the contractor identified site and telephone number

d) Total capacity available at the contractor identified site(s) for offloading, processing and placement of Dredged Material

e) Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate, process and/or dispose of dredged Material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and others as related to transportation,

processing and placement of the dredged material, or any other aspects of the bidder's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.

f) Copies of permits currently issued/approved at the time of submission.

g) Identification of Regulatory Agency required to issue/approve items listed in e) above.

h) Timeline for obtaining the required permits - Bar Chart for Obtaining Permits and Approvals - A bar chart indicating time(s) required for obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule will detail the major steps (such as time to prepare the permit request, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc).

i) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (CY /day) and throughput rates for their proposed integrated system of dredging, offloading, transportation, processing, and placement for each contractor identified site(s).

j) Offloading, processing and disposal Site Elements Information -

1) State the capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the disposal site(s, as well as the average daily production rate and workdays per week that the processing site will operate.

2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

k) Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment, and the completion of the major acceptance areas). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be completed within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the contractor identified offloading, processing and disposal site(s) that are needed to be completed **within 70 calendar** days from date the Apparent low bidder is notified of being the low bidder so that the site(s) is operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS for the in-situ quantity identified in the price schedule.

**1.45.1.A Synopsis of proposed operation**

- Narrative of no more than five (5) pages detailing the operation to move the Non-rock material unsuitable for placement at the HARS from the site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and/or disposal facility including site capacity.

2) Provide a detailed map indicating locations of offloading and loading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.

3) Provide Hours of operation, transportation and operating procedures at offloading facilities.

4) Provide Facilities information: Access to offloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges, buckets, scows, tugs and other salient equipments to be used for the project.

6) Submit a detailed description of the loading and transportation procedures to be utilized.

**1.45.2 Information to be submitted by the Apparent Low Bidder within 70 calendar days**

The Apparent Low Bidder shall submit the following information **within 70 Calendar** Days from the date the Apparent Low bidder is notified of being the low bidder.

a) Information submitted **within 3 days** of notification - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence Demonstrating that the contractor identified offloading, processing and disposal site(s) is Permitted, Operational, Capable of Offloading, Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government within **70 calendar days** from the date the Apparent low bidder is notified of being the low bidder that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS for the in-situ quantity as **per line items 0001AC and 0001AE** by **calendar day 70** from date the Apparent low bidder is notified of being the low bidder and that

the offloading, processing and/or disposal site(s) is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent low bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

c) Copies of Required Permits - The Apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government. Documentation of compliance with any other legal or regulatory requirement must be provided to the Government including Water Quality Certificates (WQC) in accordance with Section 401 of the Clean Water Act, Coastal Zone Management (CZM) consistency determinations, and State agreement pursuant to Section 307 of the Coastal Zone Management Act of 1972 as amended, for activities conducted in a state, which has a federally approved Coastal Zone Management program. WQC and CZM permits related to the dredging (as opposed to dredged material transport, disposal and placement) will be provided by the New York District U.S. Army Corps of Engineers, **Section 00902 and Section 00903**.

d) The Apparent Low Bidder must provide:

1) Proof of the contractor identified Offloading, Processing and/or Disposal Site(s) being licensed for acceptance of dredged material by all appropriate regulatory entities (permits for the site previously provided should be also included in this submission).

2) Proof of Offloading, Processing and Disposal Site(s) Owner's approval granting the apparent low bidder the right to offload, process and/or dispose dredged material at that site.

3) Proof of Disposal Site(s)uncommitted capacity adequate for the project.

4) Certification of the offloading, processing and/or disposal Site's availability corresponding to the current project schedule.

5) Proof of approval by the appropriate regulatory agencies that the dredged material for this contract is compatible for processing and/or disposal at the proposed processing and/or Disposal Site(s).

6) Demonstrate minimum required offloading, processing and disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each contractor identified disposal site(s).

7) Proof of apparent low bidder's experience in the proposed offloading, processing and disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

e) Transportation Capabilities - The Apparent Low Bidder must provide the following:

1) Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment has current permits, licenses, registrations, or other required certifications.

2) Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

f) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed processing technology, including but not limited to, the following stages, if applicable:

a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

b. Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the time frame it will be used, if applicable.

d. Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent low bidder.

5) Certify processing plant's availability corresponding to the current project schedule.

6) Provide proof of Apparent Low Bidder's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

# SECTION 00902

## FEDERAL CONSISTENCY DETERMINATION/WATER QUALITY CERTIFICATIONS

# State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

September 18, 2003

Mr. Leonard Houston, Chief
Environmental Analysis Branch
Department of the Army
New York District, Corps of Engineers
Jacob K. Javits Building
Federal Building
New York, New York 10278-0090

RE: Federal Consistency Determination / Water Quality Certification
File: 0000-03-0019.1 (CDT 030001)
Project: Port Jersey Contract Area 2A

Dear Mr. Houston:

This letter is forwarded in response to your July 24, 2003 request, which was amended on September 12, 2003, for a Federal Consistency (FC), as required by Section 307 of the federal Coastal Zone Management Act (16 USC 1451 et seq.) and Water Quality Certification (WQC) as required by Section 401 of the federal Clean Water Act (33 USC 1251 et seq.). Supporting information on the Federal Consistency Determination request was provided to the Department of Environmental Protection (Department) by submission of the Plans and Specifications package dated August 22, 2003.

The proposed project involves deepening Contract Area 2A of the Port Jersey 41' Navigation Channel Project from its present maintained depth of –38 feet below the plane of mean low water (MLW) to a construction depth of –44.5 feet MLW (-41' below MLW + 2.0' safety clearance + 1.5' allowed overdredge). The volume of material to be removed (including overdredge) within this contract area is approximately 774,300 cubic yards (cy) of material. Of that total: 86,100 cy consists of red-brown Holocene fluvial sand material suitable for use in remediating the Historic Area Remediation Site (HARS); and 688,200 cy of material is unsuitable for use as remediation material at the HARS.

The 86,100 cy of red-brown Holocene fluvial sand material is currently undergoing HARS testing and is anticipated to be acceptable for use in the remediation of the HARS. A final determination as the suitability of the use of this material at the HARS is the responsibility Corps and the USEPA and requires an amendment of this federal consistency once that determination has been made by the agencies. The Corps has requested that should this material not be found acceptable for placement at the HARS, that the material may be placed at an upland site without processing. **The Department finds this option acceptable for this fluvial sand material, provided the Corps requests an amendment to this federal consistency to place this material upland if it fails HARS testing. Any request for an amendment to the determination must include the results of bulk sediment chemistry analyses performed for HARS testing and an identified permitted upland placement site for the material.**

Regarding the remaining 688,200 cy of non-HARS suitable material, the September 12, 2003 amendment to the original July 24, 2003 letter requests that the federal consistency be generic in terms of the potential upland placement site(s) for this material. As a result, the federal consistency would provide

conditional acceptability of the material to be placed upland at a location in New Jersey based on the sediment sample results submitted for the contract. A subsequent amendment to the determination would be submitted to the Department by the Corps once the apparent low bidder for the contract has identified a final upland placement site(s). This amendment to the determination request would need to be submitted by the Corps prior to the award of the contract. Sediment sampling data for the volume of non-HARS suitable material to be removed under Contract 2A was provided to the Department by the Corps in a letter dated June 24, 2003. This data has been reviewed and the 688,200 cy of non-HARS suitable material from Contact 2A meets the Department's Non-Residential Direct Contact Soil Cleanup Criteria (NRDCSCC), with the exception of a number of composite samples that exhibited levels of Arsenic and Benzo(a) pyrene above the NRDCSCC. However, this dredged material is anticipated to be able to be placed at currently permitted upland site(s) in New Jersey at which institutional and engineering controls are incorporated into the overall remedial strategy for the site. **Therefore, the Department hereby conditionally approves the placement of 688,000 cy of non-HARS suitable material at an upland site in New Jersey contingent upon the Corps submitting a request for an amendment to this determination request once an acceptable permitted upland site is identified for this contract by the apparent low bidder.**

The Plans and Specifications Package, dated August 22, 2003 seeks to allow the use of the Newark Bay Confined Disposal Facility (NBCDF) for 68,000 cy of non-HARS suitable material (10% of total volume of non-HARS suitable material) that may not be able to be placed upland due to delays with the selected upland placement site being unable to process dredged material. The Department agrees with the use of the NBCDF as a relief valve for the placement of up to 68,000 cy of non-HARS suitable material that cannot be processed and placed upland as it is consistent with the intent of the NBCDF and the Rules on Coastal Zone Management. However, the decision to divert any of the 68,000 cy of non-HARS suitable material to the NBCDF will be made on a scow-by-scow basis with verbal notification to and concurrence by the Department and the Port Authority. Concurrence shall be provided within 48 hours of notification by the Corps that material is not being processed by the upland vendor in accordance with contract specifications. During that 48 hour period the Corps, the Port Authority and the Department shall work with the Corps' contractor and the upland vendor to restore production if possible. If production rates cannot be restored and/or the deficit cannot be recovered, material may be diverted on a scow-by-scow basis as necessary to make up the deficit.

The Rules on Coastal Zone Management (N.J.A.C. 7:7E) constitute New Jersey's enforceable policies under its federally approved Coastal Zone Management Program. Contract Area 2A of the Port Jersey -41' Navigation Channel Project (Port Jersey Project) has been reviewed under the following Rules on Coastal Zone Management: Navigation Channels (7:7E-3.7), Ports (7:7E-3.11), Submerged Infrastructure Routes (7:7E-3.12), Historic and Archaeological Resources (7:7E-3.36), Special Hazards Areas (7:7E-3.41), New Dredging (7:7E-4.2(g)), Dredged Material Disposal in Water (7:7E-4.2(h)), Dredged Material Disposal on Land (7:7E-7.12), Marine Fish and Fisheries (7:7E-8.2) and Water Quality (7:7-8.4). Based on the above summary of details of the project as presented in the July 24, 2003 and September 12, 2003 request for a FC/WQC, I have **CONDITIONALLY determined that Port Jersey Contract 2A is consistent with the Rules on Coastal Zone Management and New Jersey's federally approved Coastal Management Program, provided the Corps submits the required requests for amendments to this federal consistency, as identified in Paragraph 3 and 4 of this letter. A written response from the Department on the request for an amendment to the federal consistency must be received by the Corps prior to proceeding with any changes to the contract.**

00902 - 2

I have also reviewed this Contract for potential water quality impacts. Provided that the following conditions are met, I have determined that this project is not likely to cause a violation of New Jersey's Surface Water Quality Standards (N.J.A.C. 7:9B-1.1 et seq.). **Therefore, this determination includes the State's Water Quality Certification pursuant to Section 401 of the federal Water Pollution Control Act (33 USC 1251 et seq.) subject to the following conditions:**

1. Dredging is prohibited between February 1st through May 31st of any given year in order to protect winter flounder spawning and early life stages.

2. A "No barge overflow" condition applies to the dredging and transport of any contaminated, non-HARS, non –rock dredged material.

3. All dredging of non-HARS suitable material shall be accomplished using a closed clam shell "environmental" bucket dredge.

4. Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard.

5. The dredge shall be operated so as to maximize the bite of the clamshell. This will reduce the amount of free water in the dredged material and the number of bites required to complete the job.

6. The clamshell shall lifted slowly through the water column, generally 2 feet per second or less.

7. All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete, except for material permitted for aquatic placement.

8. The gunwales of the dredge scows shall not be rinsed or hosed during dredging.

9. All decant water holding scows shall be water tight and of solid hull construction.

10. Decant water from non-HARS material may only be discharged at Bayonne Local Redevelopment Authority berthing area located at the Military Ocean Terminal - Bayonne (MOTBY) under this Water Quality Certificate. Discharge to another receiving waterbody requires prior approval of a New Jersey Pollutant Discharge Elimination System Permit.

11. All decant water shall be held in the decant holding scow a minimum of 24 hours after the last addition of water to the decant holding scow prior to discharge.

    Should the contractor wish to reduce the required holding time, the contractor shall demonstrate that the reduced holding time is sufficient to meet a total suspended solids (TSS) action level of 60 mg/L. The total suspended solids shall be determined through gravimetric analysis. No discharge shall be permitted from the decant holding scow until the results of the gravimetric analysis have confirmed that the 60 mg/L action level has been achieved. No additional water shall be added to the decant holding scow between the time of sample acquisition and discharge. Upon successful demonstration that the reduced holding time is sufficient to meet the TSS action level of 60 mg/L, the monitoring of TSS may be suspended and the demonstrated settling time shall replace the 24 hour minimum. A

00902-3

successful demonstration of the reduced holding time efficiency shall be determined once three consecutive TSS analyses have confirmed that the 60 mg/L action level has been achieved by the reduced holding time. Should the contractor wish to demonstrate a reduced holding time, all records including time of last addition of decant water into the scow, time of TSS sampling and the results of TSS sampling shall be submitted to the NJDEP as soon as they become available, together with a request for a reduced holding time.

12. During pumping of the decant water from the holding scow, great care shall be taken to avoid resuspending or pumping sediment which has settled in the decant holding scow.

Should you have any questions regarding this determination and certification, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology

C: Richard Gimello, Executive Director, Office of Maritime Resources
Thomas Wakeman, Port Authority of NY/NJ

00902-4

SECTION 01270

MEASURMENT AND PAYMENT

PART 1 GENERAL

**1.1 LUMP SUM PAYMENT ITEMS**

Payment items for the work of this contract for which contract lump sum payments will be made are listed in the BIDDING SCHEDULE and described below. All costs for items of work, which are not specifically mentioned to be included in a particular lump sum or unit price payment item, shall be included in the listed lump sum item most closely associated with the work involved. The lump sum price and payment made for each item listed shall constitute full compensation for furnishing all plant, labor, materials, and equipment, and performing any associated Contractor quality control, environmental protection, meeting safety requirements, tests and reports, and for performing all work required for which separate payment is not otherwise provided.

1.1.1 Mobilization and Demobilization **(Item No. 0001AA)**

1.1.1.1 Payment

Payment will be made for costs associated with mobilization and demobilization, as defined in Contract Clause PAYMENT FOR MOBILIZATION AND DEMOBILIZATION section 00700 CC 252.236-7004(DEC 1991).

**1.1.1.2 Unit of Measure**
**Unit of measure: lump sum.**

1.1.2 Field Office **(Item No. 0001AH)**

1.1.2.1 Payment

Payment will be made for costs associated with operations necessary for installation, including all office equipment, system setup, maintenance services, and removal of equipment at designated area in accordance with the requirements specified in paragraph entitled "FIELD OFFICE" of Section 00800: Special Contract Requirements.

1.1.2.2 Unit of Measure
Unit of measure: lump sum.

1.1.3 Additional cost for Optional Insurance **(Item No. 0002)**

1.1.3.1 Payment

Payment will be made for costs associated with additional insurance premium provided by the contractor as per requirements specified in Section 00800.



G006886

G01010 06886

**1.1.3.2 Unit of Measure**
**Unit of measure: lump sum.**

**1.2 UNIT PRICE PAYMENT ITEMS**

Payment items for the work of this contract on which the contract unit price payments will be made are listed in the PRICE SCHEDULE and described below. The unit price and payment made for each item listed shall constitute full compensation for furnishing all plant, labor, materials, and equipment, and performing any associated Contractor quality control, environmental protection, meeting safety requirements, tests and reports, and for performing all work required for each of the unit price items.

1.2.1 Debris,Removal and Disposal **(Item No. 0001AB)**

1.2.1.1 Payment

Payment will be made for costs associated with the collection, storage and handling, and the removal from the site and proper disposal of all debris recovered from the bottom and all floating debris including cables, pilings, line, and all objects, which are unsuitable for placement in the HARS or upland disposal site or artificial reef site.

**1.2.1.2 Unit of Measurement**
**Unit of measure: ton (2,000 lbs).**

1.2.2 Dredging, Transportation, Delivery, Processing if required and Placement of Dredged Materials Unsuitable/Suitable for Placement at the HARS **(Excludes Dewatering:Item No. 0001AD AND 0001AF)**.

**-Item No. 0001AC**; Dredging, Transportation, Delivery, Processing and Disposal of Dredged Materials **Unsuitable** for Placement at the HARS, Excludes Dewatering; Placement at THE CONTRACTOR'S IDENTIFIED DISPOSAL FACILITY (IES) **(Excludes Dewatering)**.

**-Item No.0001AE**; Dredging, Transportation, Delivery, and Disposal of Dredged Materials Suitable for Placement Upland, Excludes Dewatering and Excludes Processing; Placement at THE CONTRACTOR'S IDENTIFIED DISPOSAL FACILITY (IES) **(placement upland without processing)**.

**-Item No. 0001AJ**; Dredging, Transportation, Delivery, and placement of **non-rock** materials **suitable** for placement upland, **Excludes Dewatering and Excludes Processing** (placement at the Newark Bay Confined Disposal Facility CDF).

**-Item No. 0003**; Disposal of Dredged Materials suitable for Placement at the HARS, **(Excludes Dewatering and Excludes Processing)**.

1.2.2.1 Payment

Payment will be made for costs associated with dredging, including transportation and deposition of dredge material at designated disposal sites, processing, monitoring, and other incidental thereto, including hydrographic surveys.

1.2.2.2 Measurement

The total quantity of dredged material for which payment will be made will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post-dredge survey. Available material is defined as material located within the boundaries of the dredged prism as shown on the drawings to include the required dredged depths indicated on the drawings and up to 1.5 ft allowable overdepth. Specifically, a quantity of available material will be computed between the dredge prism and the bottom surface shown by the soundings of the Government's pre-dredge survey, and a quantity of available material will be computed between the dredge prism and the bottom surface shown by the Government post-dredge survey. The difference between these two available quantities (pre-dredge and post-dredge) will constitute the quantity of material dredged. Misplaced materials (including any required removal and placement), excessive dredging, and materials falling or drawn into the cut from beyond the side slope plane or beyond the limits indicated, will be excluded from the quantities for which payment will be made. The Triangulated Irregular Network (TIN) method will be used for quantity determination.

Specifically for Item Nos. 001AC, 001AE and 001AJ

- For Non-HARS material removed with an "environmental" bucket payment will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post dredge survey for material removed. Available material for payment purposes is defined as material located within the boundaries of the dredged prism as shown on the drawings to include the required dredged depths indicated on the drawings and up to 1.5 ft allowable overdepth or to elevation –44.5 whichever is shallower. The Contractor will not be compensated for material dredged beyond elevation –44.5.

- For those areas where a conventional bucket will be used to remove Non-HARS material payment will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey (that is the post dredge survey performed upon the completion of Non-HARS material removed with an "environmental" bucket) and the post dredge survey for NON-HARS material removed with a conventional bucket. Available material payment purposes is defined as material located within the boundaries of the dredged prism as shown on the drawings to include the required dredged depths indicated on the drawings and up to 1.5 ft allowable overdepth or to elevation – 44.5 whichever is shallower. The Contractor will not be compensated for material dredged beyond elevation –44.5

**1.2.2.3 Unit of Measure**
**Unit of measure: cubic yard (cy).**

1.2.3 Dewatering in Accordance with WQCs and/or THE CONTRACTOR'S IDENTIFIED DISPOSAL FACILITY (IES) Specifications for Upland Placement **(Items No. 0001AD and 0001AF)**

1.2.3.1 Payment

Payment will be made for costs associated with dewatering, monitoring, and other incidental thereto, excluding transportation to berthing areas.

1.2.3.2 Measurement

The total quantity of dewatering material for which payment will be made will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post-dredge survey. Available material is defined as material located within the boundaries of the dredged prism as shown on the drawings to include the required dredged depths indicated on the drawings and up to 1.5 ft allowable overdepth. Specifically, a quantity of available material will be computed between the dredge prism and the bottom surface shown by the soundings of the Government's pre-dredge survey, and a quantity of available material will be computed between the dredge prism and the bottom surface shown by the Government post-dredge survey. The difference between these two available quantities (pre-dredge and post-dredge) will constitute the quantity of material dredged. Misplaced materials (including any required removal and placement), excessive dredging, and materials falling or drawn into the cut from beyond the side slope plane or beyond the limits indicated, will be excluded from the quantities for which payment will be made. The Triangulated Irregular Network (TIN) method will be used for quantity determination.

**1.2.3.3 Unit of Measure**
**Unit of measure: cubic yard (cy).**

1.2.5 Subsurface drilling and sampling **(Item No. 0001AG)**

1.2.5.1 Payment

Payment will be made for costs associated with subsurface drilling and sampling for each drill hole performed, including mobilization and demobilization of all equipment necessary to perform the required drilling sampling, and coring to a depth of 55 feet below MLW. Mobilization and demobilization will include a drill rig of complete assembly and in working order as well as the transportation of samples and cores to the Caven Point Marine Terminal. Size of sampling shall be 1-3/8 inch diameter and size of rock core shall be NX diameter core.

1.2.5.2 Measurement

The measurement for drilling drive sample drill holes including soil sampling and rock core drilling (vertical) will be the number of holes that were drilled in accordance with the specifications. Measurements will be made from mean low water.

**1.2.5.3 Unit of Measure**
**Unit of measure: each.**

-- End of Section --

**SECTION 02900** **page 1 0f 2**

**5.5 Order and Sequence of Work**

**5.5.1** The contractor is required to remove the overlying non-rock material unsuitable for placement at the HARS prior to the start of dredging the HARS materials in each area. All non-Rock dredged material capable of being removed using an "environmental" bucket shall be removed with an "environmental" bucket. If after the Contractor has used the "environmental" bucket and has not achieved **the elevations identified on the Plan Sheets**, the Contractor shall use a conventional bucket to remove the non-rock material to **the elevations required on the Plan Sheets. Use of a conventional bucket to remove upland material is restricted to those areas that did not achieve the elevations required on the Plan Sheets.**

Upon completion of dredging of non-rock material unsuitable for HARS placement w/ the environmental bucket, the contractor shall notify the contracting officer for a final inspection to insure all up-land material that can be dredged w/ the environmental bucket has been removed. This inspection shall include a survey in accordance with the survey standards listed in EC 1130-2-210, HYDROGRAPHIC SURVEYING, 1 October 1998 for Class I surveys. Removal of non-rock material unsuitable for HARS placement with a conventional bucket cannot commence until after the Contracting Officer's Representative has approved the inspection.

Upon completion of the dredging of non-rock material unsuitable for HARS placement w/ the conventional bucket, the contractor shall notify the contracting officer for a final inspection to insure all up-land material that can be dredged w/ the environmental bucket has been removed. This inspection shall include a survey in accordance with the survey standards listed in EC 1130-2-210, HYDROGRAPHIC SURVEYING, 1 October 1998 for Class I surveys. Removal of non-rock material suitable for HARS placement with a conventional bucket cannot commence until after the Contracting Officer's Representative has approved the inspection.

**6.2 Offloading, Processing And Disposal Facilities**

1) The bidders shall identify with their bids the Offloading, Processing and Disposal Facilities or site(s) for the non-ocean placement site(s) used for item number 0001AC and 0001AE in the price schedule. The Contractor shall submit a schedule and the anticipated quantity to be placed at the disposal site(s) within 3 calendar days from the date the contractor is notified as the apparent low bidder.

2) The following site shall be the only non-ocean placement site used for item number 0001AJ.
Disposal Site: Newark Bay Confined Disposal Facility (NBCDF)
Operator: Port Authority of New York and New Jersey
Location: Newark Bay
Point of contact: Mr. Atef Ahmed
Phone Number: 212 435-4271

Location of Unloading Facility: Disposal will take place above the NBCDF
The Contractor will be required to pay a management fee of $29.00 per cubic yard disposed of at the NBCDF. A management fee will be derived from volume calculation taken from a before-dredge and after-dredge bathymetric survey of the contract limit area as designated in the contract drawings and specifications based upon in-situ non-HARS sediment at the origin dredging site. The after-dredge survey will be performed for an area after the material for NBCDF disposal has been removed and before underlying material for HARS remediation or reef construction is removed. All other payment to the Port Authority of New & New Jersey shall be in accordance with the requirements specified in the NBCDF Final Operation and Management Plan.

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| | | | |
|---|---|---|---|
| 1. CONTRACT ID CODE: J | PAGE OF PAGES: 1 / 3 | | |
| 2. AMENDMENT/MODIFICATION NO. 0004 | 3. EFFECTIVE DATE 15-Oct-2003 | 4. REQUISITION/PURCHASE REQ. NO. W16ROE-3196-8552 | 5. PROJECT NO.(If applicable) |
| 6. ISSUED BY CODE DACW51<br>USA ENGINEER DISTRICT, NEW YORK<br>ATTN: CENAN-CT ROOM 1843<br>26 FEDERAL PLAZA (DACW51)<br>NEW YORK NY 10278-0090 | | 7. ADMINISTERED BY (If other than item 6) CODE<br>See Item 6 | |

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

CODE | FACILITY CODE

X 9A. AMENDMENT OF SOLICITATION NO. DACW51-03-B-0018

X 9B. DATED (SEE ITEM 11) 22-Aug-2003

10A. MOD. OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [X] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this amendment is to make changes/clarifications to the plans and specifications for "Port Jersey Channel, Contract No. 2, Bayonne, New Jersey Project."

Bid Opening Date is changed From: 16 October 2003 at 2:00 P.M., To: 30 October 2003 at 3:00 P.M. local time, room 1841.

Bidders must acknowledge receipt of this amendment by the date specified in the solicitation (or as amended) by one of the following methods: By signing Block 15 below, by separate letter, or by telegram. FAILURE TO ACKNOWLEDGE AMENDMENTS BY THE DATE AND TIME SPECIFIED MAY RESULT IN REJECTIONS OF YOUR BID IN ACCORDANCE WITH THE LATE BID, LATE MODIFICATION OF BIDS, OR LATE WITHDRAWAL OF BIDS (FAR 14.304)

All other terms and conditions remain the same.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | | | |
|---|---|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>TEL: EMAIL: | |
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>15-Oct-2003 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

G006893

G01010 06893

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

The following have been added by full text:

AMENDMENT 0004

**DACW51-03-B-0018**

**Amendment No. 4**

Bid opening date, originally scheduled for 16 October 2003 at 02:00 P.M. is hereby changed to 30 October 2003 at 03:00 P.M., local time.

1. The following changes shall be made to the specifications and plans.

**1) SPECIFICATIONS:**

SECTION 02900

1-Delete section 029000 paragraph 6.1 in their entirety, and replace it with the revised paragraph below.

**6. Dredging and Disposal of "Non-rock materials" unsuitable for placement at the HARS**

**6.1** The "non-rock" dredged material composed of the material identified in para. 2.2.1.2 item numbers 1 through 5 that are deposited within the dredging limits as shown on the contract drawings is considered unsuitable for placement at the HARS (except in CLIN 0003 if exercised).
All non-Rock dredged material capable of being removed using an "environmental" bucket shall be removed with an "environmental" bucket. If after the Contractor has used the "environmental" bucket and has not achieved **the elevations required on the Plan Sheets**, the Contractor shall use a conventional bucket to remove the non-rock material to **the elevations required on the Plan Sheets**.

Upon completion of dredging of non-rock material unsuitable for HARS placement w/ the environmental bucket, the contractor shall notify the contracting officer for a final inspection to insure all up-land material that can be dredged w/ the environmental bucket has been removed. This inspection shall include a survey in accordance with the survey standards listed in EC 1130-2-210, HYDROGRAPHIC SURVEYING, 1 October 1998 for Class I surveys. Removal of non-rock material unsuitable for HARS placement with a non-environmental bucket cannot commence until after the Contracting Officer s Representative has approved the inspection. **These dredged materials shall be disposed of at the contractor s identified offloading, processing and disposal site(s).** The Contractor Quality Control (CQC) personnel, the Contracting Officer Representatives, and USACE certified Dredge/Disposal Inspector shall jointly determine the character of materials to be disposed of at the non-ocean placement site or designated upland disposal sites.

G006894

The Corps Certified Inspector shall complete the dredge & placement log for dredged material unsuitable for HARS placement and submit it with the daily CQC report.

(End of Summary of Changes)

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 \| 3 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(If applicable) |
|---|---|---|---|
| 0005 | 29-Oct-2003 | W16ROE-3196-8552 | |

6. ISSUED BY CODE DACW51

USA ENGINEER DISTRICT, NEW YORK
ATTN: CENAN-CT ROOM 1843
26 FEDERAL PLAZA (DACW51)
NEW YORK NY 10278-0090

7. ADMINISTERED BY (If other than item 6) CODE

See Item 6

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

CODE FACILITY CODE

X 9A. AMENDMENT OF SOLICITATION NO. DACW51-03-B-0018

X 9B. DATED (SEE ITEM 11) 22-Aug-2003

10A. MOD. OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [X] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this amendment is to make changes/clarification to the specifications for "Port Jersey Channel, Contract No. 2, Bayonne, New Jersey Project".

Bid Opening Date is changed From: 30 October 2003 at 3:00 P.M. To: 04 November 2:00 P.M. local time, Room 1841.

Bidders must acknowledge receipt of this amendment by the date specified in the solicitation (or as amended) by one of the following methods: By signing Block 15 below, by separate letter, or by telegram. FAILURE TO ACKNOWLEDGE AMENDMENTS BY THE DATE AND TIME SPECIFIED MAY RESULT IN REJECTIONS OF YOUR BID IN ACCORDANCE WITH THE LATE BID, LATE MODIFICATION OF BIDS, OR LATE WITHDRAWAL OF BIDS (FAR 14.304)

All other terms and conditions remain the same.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>TEL: EMAIL: |
|---|---|

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| (Signature of person authorized to sign) | | BY (Signature of Contracting Officer) | 29-Oct-2003 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

G006896

G01010 06896

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

The following have been added by full text:
AMENDMENT 0005

## DACW51-03-B-0018

**Amendment No. 5**

Bid opening date, originally scheduled for 30 October 2003 at 03:00 P.M. is hereby changed to 4 November 2003 at 2:00 P.M., local time.

1. The following changes shall be made to the specifications.

**1) SPECIFICATIONS:**

## SECTION 02900

1-Delete section 029000 paragraph 6.2 In its entirety from amendment 3, and replace it with the revised paragraph below.

**6.2 Offloading, Processing And Disposal Facilities**

1) The bidders shall identify with their bids the Offloading, Processing and Disposal Facilities or site(s) for the non-ocean placement site(s) used for item number 0001AC and 0001AE in the price schedule. The Contractor shall submit a schedule and the anticipated quantity to be placed at the disposal site(s) within 3 calendar days from the date the contractor is notified as the apparent low bidder.

2) The following site shall be the only non-ocean placement site used for item number 0001AJ.
Disposal Site: Newark Bay Confined Disposal Facility (NBCDF)
Operator: Port Authority of New York and New Jersey
Location: Newark Bay
Point of contact: Mr. Atef Ahmed
Phone Number: 212 435-4271

Location of Unloading Facility: Disposal will take place above the NBCDF
The Contractor will be required to pay a management fee of **$36.75** per cubic yard disposed of at the NBCDF. A management fee will be derived from volume calculation taken from a before-dredge and after-dredge bathymetric survey of the contract limit area as designated in the contract drawings and specifications based upon in-situ non-HARS sediment at the origin dredging site. The after-dredge survey will be performed for an area after the material for NBCDF disposal has been removed and before underlying material for HARS remediation or reef construction is removed. All other payment to the Port Authority of New & New Jersey shall be in accordance with the requirements specified in the NBCDF Final Operation and Management Plan.

(End of Summary of Changes)