certificates, inspection reports and licenses identified in Section 19, entitled "Floating Plant and Marine Activities", paragraph 19.A.01 and 19.A.02 of EM 385-1-1 shall be submitted with the Accident Prevention Plan. If there is conflict between the Government regulations and the Seagoing Barge Act, the most stringent requirement governs. When new floating plant is brought onto the job site, said certificates and inspection reports, determining that the floating plant is in safe operating condition, shall be submitted to the Contracting Officer before it is placed in service.

b. Notwithstanding what is shown on the specifications, the Contractor shall use the following Interim Policy Guidance below:

1) The following interim policy guidance is provided for EM 385-1-1, paragraphs 01.C.04 a & b currently written as:

"Operators shall not be permitted to operate beyond the following limits:

(a) Operators of hoisting equipment, mobile construction equipment and draglines shall not be permitted to exceed 10 hours of **duty time** in any 24-hour period, including time worked at another occupation, without an interval of eight consecutive hours of rest.

(b) Operators of other equipment and motor vehicles, while **on duty**, shall not operate equipment or vehicles for a **continuous period** of more than 10 hours in any 24-hour period without at least eight consecutive hours of **rest**; nor shall any employees, while **on duty**, operate any vehicles after being in a **duty status** for more than 12 hours during any 24-hour period without at least eight consecutive hours of rest. **Variation in these requirements requires documented approval of the designated authority and notification of the Command's Safety and Occupational Health Office.**"

2) Definitions for terms highlighted in bold and underlined type above are defined as:

Duty Time, On Duty & Duty Status: those hours for which the employee is being monetarily compensated.

Continuous Period: those hours for which employee works uninterrupted, except for meal periods and breaks, at one or more specific tasks during time.

Rest (period): time period free of all restraint or duty for and free of all responsibility for work or duty.

Designated Authority: the senior person in charge or his/her appointed representative for the operation being considered. (Resident Engineer/Project Manager/Operations manager, etc.)

Command Safety and Occupational Health Office: the District Safety and Occupational Health Office having jurisdiction over the work being conducted.

Activity Hazard Analysis: a tool used to document a process by which the steps (procedures) required to accomplished a work activity are outlined, the actual or potential hazards of each step are identified, and measures for the

elimination or control of those hazards are developed.

Qualified Person: one who, by possession of a recognized degree, certificate, or professional standing, or extensive knowledge, training, and experience, has successfully demonstrated his or her ability to solve or resolve problems related to the subject matter, the work, or the project.

3) The designated authority may issue a variance to paragraphs 01.C.04 a or b. The variance must be documented and supported by an Activity Hazard Analysis and the local Command Safety and Occupational Health Office notified.

4) In addition to currently required reporting criteria, a qualified person or persons(s) shall conduct special emphasis investigations on all Class A,B,& C, marine accidents to include property damage exceeding $2,000 damage. The investigations will specifically focus on on work practices, schedules, time of day, hours on duty, rest periods, employees work schedule per pay period and other pertinent facts. The results of the investigation will be documented and sent the HQUSACE Safety and Occupational Health Office for collection and evaluation.

**1.27 PLANT**

The Contractor agrees to keep on the job sufficient plant to meet the requirements of the work. The plant shall be in satisfactory operating condition, capable of safely and efficiently performing the work as set forth in the specifications and be subject to the inspection of the Contracting Officer at all times. No reduction in the capacity of the plant employed on the work shall be made except by written permission of the Contracting Officer. The measure of the capacity of the plant shall be its actual performance on the work to which these specifications apply.

**1.28 STATE/LOCAL INCOME TAXES**

The Contractor agrees that if during the performance of this contract it is relieved of its obligation to pay state and/or local income taxes on the income from this contract, an equitable adjustment will be made. The Contractor agrees to notify the Government within thirty (30) days of its relief from such taxes.

**1.29 THE SEAGOING BARGE ACT (Revised 46 USC 2101(3),(32); 3301(4),(6); 3302 (c)(2); 3305(a),(a)(1),(3),(4); 3307(1),(3); 3309(a); 3311)**

The Seagoing Barge Act applies to this project. In the event the Contractor contemplates using plant that requires U.S. Coast Guard certification to comply with this Act, the Contractor shall submit a copy of said certificate(s) with his Accident Prevention Plan to the Contracting Officer for approval within fifteen (15) calendar days after the award of contract. No work shall commence until the Contracting Officer reviews and approves the Accident Prevention Plan. If there is conflict between the US Army Corps of Engineers Manual and the Seagoing Barge Act, the most stringent requirement governs.

**1.30 TIME EXTENSIONS: (APR 1984)**

Notwithstanding any other provisions of this contract, it is mutually understood that the time extensions for changes in the work will depend upon the extent, if any, by which the changes cause delay in the completion of the various elements of construction. The change order granting the time extension may provide that the contract completion date will be extended only for those specific elements so delayed and that the remaining contract completion dates for all other portions of the work will not be altered and may further provide for an equitable readjustment of liquidated damages under the new completion schedule. (FAR 52.212-6)

**1.31 SUPERINTENDENCE OF SUBCONTRACTORS: (JAN 1965)**

a. The Contractor shall be required to furnish the following, in addition to the superintendence required by the Contract Clauses titled, "SUPERINTENDENCE BY THE CONTRACTOR".

(1) If more than 50% and less than 70% of the value of the contract work is subcontracted, one superintendent shall be provided at the site and on the Contractor's payroll to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

(2) If 70% or more of the value of the work is subcontracted, the Contractor shall be required to furnish two such superintendents to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

b. If the Contracting Officer, at any time after 50% of the subcontracted work has been completed, finds that satisfactory progress is being made, he may waive all or part of the above requirement for additional superintendence subject to the right of the Contracting Officer to reinstate such requirement if at any time during the progress of the remaining work he finds that satisfactory progress is not being made. (DoD FAR Supplement 52.236-7008)

**1.32 INSURANCE PROCURED BY CONTRACTOR**

**1.32 A**

a. At the Government's option, to be exercised in writing no later than 120 days after contract Notice to Proceed(NTP), the Contractor shall procure and maintain during the entire period of its performance under this contract the following insurance policies:

(1) Commercial General Liability Insurance in limits of not less than Five Million Dollars ($5,000,000) combined single limit per occurrence for bodily injury, death, personal injury and property damage, including but not limited to coverage for premises-operations, products-completed operations, independent contractors, broad form property damage, property damage arising out of explosion, collapse or underground property damage hazards with a contractual liability endorsements covering the risks assumed and indemnification given by the Port Authority under the Project Cooperation Agreement for the Arthur Kill Channel,Howland Hook Marine Terminal, New York and New Jersey Project. A copy of such Agreement shall

be furnished to the insurance underwriter.

(2) Automobile Liability Insurance covering owned, non-owned, and hired auto with a limit of not less than $3,000,000 per accident.

(3) Maritime Protection and Indemnity Insurance in limits of not less than Five Million Dollars ($5,000,000) combined single limit per occurrence for bodily injury, death, and property damage including coverage for Masters and members of crews.

(4) Environmental Liability Insurance in limits of not less than Ten Million Dollars ($10,000,000) combined single limit per occurrence for bodily injury, death, and property damage indemnification given by hunder this agreement.

b. The policies described in 1, 2, 3 and 4 above shall be endorsed to include the Port Authority of New York and New Jersey (the "Port Authority") as an additional insured and shall contain a provision that the policies may not be cancelled, terminated or modified without thirty days written notice to the Contracting Officer, US Army Corps of Engineers, 26 Federal Plaza, New York, New York 10278-0090 and the General Manager, Risk Management/Treasury, The Port Authority NYNJ, **225 Park Avenue South, 12th Floor, New York, New York 10003** (Attention: Risk Management). Moreover, the Commercial Liability policy shall not contain any provisions for exclusions from liability other than provisions for exclusions from liability forming part of the standard, basic unamended and unendorsed commercial general liability policy. The policies described in 1, 2, 3 and 4 above shall include cross-liability coverage.

c. Further, the liability policies shall be specifically endorsed to prohibit the insurance carrier from raising any defense involving in any way jurisdiction of the Tribunal, immunity of the Port Authority, governmental nature of the Port Authority or the provisions of any statutes respecting suits against the Port Authority without obtaining written expressed advance permission from the General Counsel of the Port Authority.

d. The Contractor shall take out and maintain Workers Compensation Insurance (including an other states coverage) in accordance with requirements of law. The policy shall include the United States Longshoremen and Harbor Workers Compensation Act Endorsement.

e. In the event the Government exercises the option provided for in this Section, the Contractor shall furnish to the Contracting Officer and to the Port Authority at the above addresses, within five (5) calendar days of the award of the opinion, a certificate of insurance evidencing the above required insurance. The policies and the certificate of insurance evidencing required insurance shall contain an endorsement to the effect that cancellation or any material change in the policies adversely affecting the interests of the Port Authority in such insurance shall not be effective for such a period as may be prescribed by the laws of the State in which this contract is to be performed and in no event less than thirty (30) days after written notice thereof to the Contracting Officer and the Port Authority. The Contracting Officer and the Port of Authority shall have the right, upon written notice, to receive copies of the

policies required hereunder.

f. Prior to exercise of the option provided for in this Section, the Contractor will be required to submit to the Contracting Officer a certification from the Contractor's insurance carrier that the amount inserted by the Contractor in the item entitled "Additional Cost for Optional Insurance" of the Price Schedule represents only the additional premium paid by the Contractor as a direct result of the specific insurance requirements of this Section and excludes those premium costs which would have otherwise been incurred by the Contractor if the insurance option had not been exercised.

g. Prior to any exercise of the option provided for in this Section, the Contractor shall furnish a computation from his insurance carrier, which sets forth the elements of the said additional premium, including, but not limited to the following: the additional costs of the Port Authority of New York and New Jersey being named as an additional insured broken down by policy type; any other additional costs due to the insurance requirement and the nature thereof.

h. Prior to any exercise of the option provided for in this Section, the Contractor shall furnish a computation as to that amount, if any, of the premium costs of his existing insurance coverage he is allocated to the work of this contract. The Contractor shall indicate whether such attribution is pursuant to a standard formula or cost administration practice or was otherwise derived.

i. The Government reserves the right to request a further elaboration with regard to this computation at any time before exercise of the option.

j. Payment items for insurance premium procured by the Contractor under this paragraph shall be made at contract lump sum price listed in the Price schedule, **Item No. 0002**, Additional Cost for Optional Insurance, if the optional item is awarded.

**1.32 B**

The Port Authority will procure and maintain in force at its own cost an Environmental Insurance Policy covering Contractor's pollution legal liability and professional liability, including cleanup, with a limit of $20,000,000 each claim and in the aggregate and a deductible of $100,000 as it relates to the work of this Contract for dredging and disposal of dredged material. The policy will be in effect commencing on the date that the Government awards this Contract and will include the Contractor and approved subcontractors as named insureds for such period that is appropriate for the methods used by the Contractor and subcontractors for dredging and disposal of dredged material.

The Contractor and the subcontractors must refer to the policy form to determine all coverage included and excluded and to determine their rights and responsibilities as insureds under the policy form. A copy of the policy may be examined during normal business hours by the Contractor or, at the Contractor's request, by any of the subcontractors performing work for the Contractor under this Contract, at the office of the General Manager, Risk

Management/Treasury, 225 Park Avenue South, 12th Floor, New York, NY 10003. at the office of the General Manager, Risk Management/Treasury, the Port Authority (Attention: Risk Management). The Contractor and the subcontractors are responsible for payment for all losses within the deductible and losses not covered by the Environmental Insurance Policy.

The Contractor and subcontractors shall comply with all obligations as insureds under or in connection with the above policy.

**1.33 FIELD OFFICE**

a. The contractor shall furnish the following new equipment to the existing Government Office Trailer facilities located at Caven Point, NJ for use of the Contracting Officer.

* Four (4) cellular mobile phones (latest model) and monthly bills associated with the cellular phones are to be paid by the Contractor.
* Three (3) 2-line telephones with extension and intercom connection, a separate cordless station phones 900 MHz (2)line (Total 12 Units). Installation and phone company fees, and monthly local and long distance bills for the duration of this contract are to be paid by the Contractor. The Contractor shall arrange for the telephone service and instruments as follows:
* 7 separate phone lines with 12 instruments and wall jacks for voice communication.
* One (1) five line digital telephone answering machine with remote answering and access capability and voice time/day stamp.
* Four (4) 4-drawer, legal size lockable filing cabinets.
* Two (2) Shelf set, four shelves high x 12 inches deep x 3 feet long, (attachable to wall).
* One (1) Plain paper telefax machine with a dedicated telephone line and an adequate supply of paper. The supply of telefax paper shall be replenished by the Contractor as required by the Contracting Officer.
* Four (4) IBM compatible personal computers Pentium IV 1 GHz or better with computer desk with printer stand, to be supplied complete in all respects to the Contracting Officer within 10 days of notice to proceed, including for each machine:
* Computers shall be connected to a high speed internet connection with a bandwidth of at least 512 kbps DSL'cable network connection.
* Four (4) computer printers: HP Deskjet 1120C or Equal
* High-speed cache memory controller with 512 KB L2 PIPELINE BURST CACHE
* 1 GHz SYSTEM BUS
* 500 MB SDRAM or more
* (1) 3.5" 1.44 MB diskette drives with hard drive controller
* 20 GB hard drive with access time of 9 ms
* Multi I/O card
* 7 expansion slots
* Sound Card W/ SPEAKERS
* Enhanced 101 keyboard
* DOS 6.22 or higher
* 6 outlet surge protectors
* 17" SVGA high-resolution flat panel display screen color monitor with refresh rate 75 Hertz or better
* Diamond Viper V770D Video Card or better

* DVD ROM and CD writer
* 10/100 MB 3 COM Net Card with RJ45 connector (Network Connection)
* 8 MB SVGA color graphics card minimum 100MHz
* Provide paper supplies, ink cartridges, toners, etc., and maintenance as necessary for all office equipment.
* Original DOS manual and disks installed
* 3 button Mouse w/ pad
* Modem 56000 Baud v90
* Voice recognition software with 95% accuracy.
* Software 95% Scan OCR Accuracy
* CD ROM (DVD 40x/Speed) (INTERNAL)
* CD 2X6R/W (READ/WRITE CD) W/ 20 DISKS (INTERNAL)
* 100mb ZIP drive or equal, which will accept 100mb ZIP disks (internal)
* WINDOWS 2000 or Windows (latest version)
* Primavera for windows including all original disks and manuals or equivalent
* 8 Microsoft Office 2000 Professional including MS Word and Excel or latest version
* Anti-Virus software 2 types
* Communication Software
* Microstation software
* All software shall be the latest version available, compatible with hardware, and shall be provided with CD ROM disks and manuals as installed
* Computer must be completely set up with DOS and the above software operable. Setup person will give an eight-hour demonstration period to show that all components are functioning properly and answer any questions the Contracting Officer may have ABOUT ANY PROGRAM.
* ALL REQUIRED CABLES CONNECTORS AND WIRING TO CREATE THE COMPUTER NETWORK AND HARDWARE.

The following new equipment shall also be provided:

* One (1) 19" Color TV
* A weather station at the PJ Project Office to electronically record wind speed, direction and rainfall intensity on a daily basis
* One Video Cassette Recorder (VCR) VHS Format Record/Play ability
* One Digital Video Camera with interface, software, spare battery, case and charger
* One (1) Optical scanner-full page 4800 DPI Enhanced with optical character reader and OMNI PAGE PRO software SCSI interface TWAIN driver.
* One (1) Vertical filing plan rack for twelve sets of 30 inch x 48-inch plans
* One (1) Heavy duty, digital, photocopying machine, with auto document feeder, sorter, collator, enlarging/reduction ability, 8.5 x 11; 1, 8.5 x 14 and 1, 11 x 17 paper trays and an adequate supply of copy paper and printing supplies. The supply of copy paper shall be replenished by the contractor as required by the Contracting Officer
* One (1) Coat Rack
* One (1) Paper towel dispenser with towels
* One (1) Paper cup dispenser with cups
* One (1) Water cooler/heater
* One steel locking storage cabinet

The following services shall be provided to the office:

* Potable bottled water as required maintaining a daily water supply

with one spare bottle each day.

* Fire Extinguishers. Non-toxic, dry chemical, fire extinguisher meeting Underwriters Laboratories, Inc. approval for Class A, Class B, and Class C fires with a minimum rating of 10A; 20B; 10c

* Radio communication equipment including base station and two (2) portable units on the Contractor's frequency, all with desk chargers. If the Contractor's frequency is not VHF then provide, in addition to the contractor's frequency equipment, a VHF Base Station and FOUR (4) hand held VHF radios with desk chargers similar to ICOM IC-M125 (Base Station) and IC-M15 Hand Held.

* 2 pairs marine binoculars, Bushnell Powered 16X50 Insta Focus Waterproof Binocular or Equal

* Janitorial services for the two existing field office trailers at Caven Point, NJ on a daily basis including, but not limited to, sweeping, emptying baskets, weekly mopping, dusting all surfaces, servicing of toilets and washing and waxing of floors, cleaning all windows (interior and exterior) AND re-supply of paper goods and soap.

* Sufficient supply of electrical outlets.

* All utilities (water, sewer, electricity, heat, and all telephones) monthly bills are paid by the Contractor for the duration of this contract.

b. The Contractor shall provide maintenance of exterior and interior of two existing field office trailers at Caven Point, NJ to include all systems , i.e., electrical, mechanical such as HVAC, plumbing, water supply, sewer and cleaning. Cleaning shall include power washing. Payment shall be made for providing above accommodations and all costs in connection therewith shall be paid at contract lump sum price listed in the Bidding Schedule.

c. Computer Security requirements:

The Contractor will agree to accept responsibilities and comply with procedures indicated below in connection with the furnishing of Contractor-owned computers for use by the Government personnel in accordance with contract requirements.

1. The computers must be dedicated exclusively for the Government use. The Contractor will not use any computer it supplies which is designated for use by the Government. The Contractor will assure that the Central Processing Unit (CPU) is electronically isolated from the contractor's and not inter-connected via Local Area Network (LAN).

2. Normal access to the computer shall be restricted to Corps of Engineers personnel. The Contractor shall install computers in Office Trailers dedicated for Government use, whether new or existing. The Contractor must immediately notify the Government personnel when emergency access to the trailer was exercised by non-Government individuals, and what the circumstances were.

3. If the CPU hard drive fails, the Government will furnish an equivalent hard drive to the owner of the computer, and the old hard-drive will be returned to the Government. The Contractor shall not remove any hard drive nor proceed with any repair of the computer unless an authorized Government employee witnesses and approves of the repair.

4. At the time of return of the computer, the Contractor will allow the Government to first remove all information from the hard-drive.

5. The Contractor agrees to provide a written certification signed by an authorized officer of the company agreeing to the above policy.

**1.34 PRICING OF ADJUSTMENTS**

When costs are a factor in any determination of a contract price adjustment pursuant to the Changes clause or any other clause of this contract, such costs shall be in accordance with Part 31 of the Federal Acquisition Regulation and DFARS 52.215-7000 (APR 1985) as follows: In determining whether a pricing adjustment is expected to exceed $100,000, the term "pricing adjustment" shall mean "the aggregate increases and /or decreases in cost plus applicable profits."(FAR 52.236-1)

**1.35 PEFORMANCE OF WORK BY THE CONTRACTOR (1984 APR)**

The Contractor shall perform on the site, and with its own organization, work equivalent to at least twenty (20) percent of the total amount of work to be performed under the contract. This percentage may be reduced by supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government. (FAR 52.236-1)

**1.36 PARTNERSHIP IMPLEMENTATION PLAN**

To more effectively accomplish this contract, the Government proposes to form a partnership with the Contractor. This partnership would draw on the strengths of each organization in an effort to achieve a quality product within budget and on schedule. This partnership would be bilateral in make-up and participation would be totally voluntary. If mutually agreed to by both parties, a facilitator satisfactory to both parties shall be hired who would be responsible to arrange for an offsite conference location for the initial session, provide all workshop materials, and compile and distribute a completed partnering agreement to all participants within 30 calendar days of the partnering session. The conference site location will be coordinated with the Contracting Officer for approval. The Contractor should plan for attendance of approximately 15-20 individuals from the Government in addition to the Contractor's and subcontractor's personnel. The cost of the facilitator and conference facility will be shared equally by the Contractor and Government. All other costs associated partnership implementation will be borne by the Contractor. It is anticipated that subsequent partnership conference will be one day each time and will be held on a monthly basis. After the first partnering conference, the Contracting Officer will prepare the agenda of each monthly partnering conference and the Contractor will prepare the minutes no later than 48 hours after each partnering conference was held.

**1.37 PRECONSTRUCTION CONFERENCE**

a. A Preconstruction Conference will be arranged by the Contracting Officer or his Representative after award of the contract and before the commencement of work. The Contracting Officer's Representative will notify the Contractor of the time and date set for the meeting. At this conference, the Contractor shall be oriented with respect to Government procedures and line of authority, contractual, administrative, and construction matters. Additionally, a schedule of required submittals will be discussed.

b. The Contractor shall bring to this conference the following items in either completed or draft form:

- The Contractor's order of work for dredging and performing other work.
- Accident Prevention Plan. (See Contract Clauses)
- Quality Control Plan.
- Letter appointing Superintendent.
- List of Subcontractors.
- All office equipment and furniture catalogs for Government approval. All office equipment and furniture will be brought to the site for field office within 15 calendar days after Government approval.

**1.38 MISPLACED MATERIAL**

Should the Contractor, during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer or inspector, and when required shall mark or buoy such obstructions until the same are removed. Should the Contractor refuse, neglect or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer, and the cost of such removal may be deducted from any money due or to become due the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of the vessel wrecked or sunk without fault or negligence shall be limited to that provided in sections 15,19, and 20 of the River and Harbor Act of March 1899. (33 USC 410 et seq.) (DoD FAR supplement 52.236-7006)

**1.39 CHANGE OF DISPOSAL FACILITY**

a. The Government reserves the right to negotiate a change to the contract as other disposal facilities become available to the Government.

b. If such a change causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, the Contracting Officer shall make an equitable adjustment to and modify the contract in accordance with the Contract Clause, CHANGE (FAR 52.243-4).

c. Placement of non-rock and non-HARS Materials at the Newark Bay Confined Disposal Facility (NBCDF): Placement of non-rock material unsuitable for placement at the HARS at the NBCDF shall be at the direction of the Contracting Officer or the Contracting Officer's Representative. In

addition the Contracting Officer or the Contracting Officer's Representative shall identify the area to be dredged by the Contractor. Placement of the non-rock material "unsuitable for placement at the HARS" at the NBCDF will be directed on a "scow by scow" basis. See the NJDEP Federal Consistency Determination/Water Quality Certification, which accompanies.

**1.40 NOTES ON ESTIMATED ROCK ELEVATIONS**

The rock contours shown on the plans and approximate rock lines shown the cross sections were developed from the data contained in the subsurface investigations and form the basis of the Government estimate. Since this data can be subject to different interpretations, bidders are advised to perform their own independent evaluation of rock contours and approximate rock lines.

**1.41 CONTRACTOR DIVING OPERATION**

a. Diving contractors shall submit a safe practices manual that includes the requirements of EM 385-1-1, Section 30.A.11 (1) through (5) to the Command Dive Coordinator (UDC) for review and acceptance at least fifteen (15) days prior to the commencement of dive operations.

b. A dive operations plan in accordance with EM 385-1-1, Section 30.A.13 a. (1) through (11) shall be developed and implemented by the diving contractor for each dive. The plan shall be submitted to the UDC and the Safety and Occupational Health Office Dive Safety Representative for review and acceptance prior to commencing the dive. Written acceptance in the form of a memorandum or electronic mail from the UDC in required for diving operations to commence.

**1.42 FACILITIES**

(TBF)

**1.43 LABOR SURPLUS AREA EXPENDITURE REQUIREMENTS (JUL 1978)**

(This paragraph pertains only to work done within the boundaries of Richmond County, New York.)

a. The site of the construction work is located in an area determined by the Secretary of Labor to be a Labor Surplus Area. Accordingly the Contractor hereby agrees to perform a substantial portion of the contract work in this or in any other labor surplus area. "Substantial portion" means the aggregate costs that will be incurred by the Contractor and his first-tier subcontractors and suppliers, on account of manufacturing, production, or services performed in this or any labor surplus area, and the costs that will be incurred by second-tier and lower-tier subcontractors on the construction site will exceed fifty percent (50%) of the price of this contract.

b. Upon request, the Contractor shall furnish to the Contracting Officer data to substantiate that this obligation is satisfied.

c. The Contracting Officer will furnish upon request a list of labor surplus areas.

**1.44 QUANTITY SURVEYS**

a. Quantity Surveys

Quantity Surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and the in-situ volume of the dredged material removed.

b. Government Surveys

The Contracting Officer will conduct the pre-dredge survey of the contract area as close to commencement of dredging as possible.

Upon the removal of the **Non-Rock Material, Bid Item Nos. 0001AC,0001AG,0001AJ, 0001AK, and 0003,** the Government will conduct post-dredge surveys, at no expense to the Contractor, except as noted in Section 00800, Special Contract Requirements entitled "Final Examination and Acceptance". Quantity computations for the volume of Non-Rock Material removed will be based on these surveys.

c. Contractor Surveys

The Contractor shall conduct the surveys for any periods for which progress payments are requested and shall make the computations based on these surveys. All surveys accomplished by the Contractor shall be conducted under the direction of the Contracting Officer, unless the Contracting Officer waives this requirements for each specific instance. For the Contracting Officer to approve the selected survey firm or licensed surveyor, the Contractor must provide documentation indicating that modern electronic horizontal positioning and sounding system equipment will be used for the surveys to be performed as well as documentation verifying the experience of the operators using the equipment. Typical information that will be required, as a minimum, includes the name, model, and year of manufacturer of the electronic equipment, the electronic frequencies of the horizontal positioning equipment and the sounding equipment, and manufacturer's stated positioning and sounding accuracies, and capability of the equipment proposed for usage. In addition, the Contractor must provide the information that a safe and suitable vessel meeting U.S. Coast Guard requirements is available and will be used for operation in the waters where the surveys are to be performed. The Contractor shall submit credentials/qualifications as evidence that qualified, experienced staff are available and will be used for the operation of the vessel as well as the electronic positioning and sounding equipment.

d. Field Notes

Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records related to the survey including

quantity calculations and cross sectional plots to the Contracting Officer, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such materials furnished to the Contracting Officer.

**1.45 ALTERNATE DISPOSAL SITE COMPLIANCE**

ALTERNATE DISPOSAL SITE COMPLIANCE
If the Bidder selects to bid an alternate disposal site(s) the Apparent low bidder must demonstrate to the **Government within 70 calendars** from the date the Apparent low bidder is notified of being the low bidder; that the alternate disposal site(s) is operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS on that date for the in-situ quantity as per line item 0001AC and 0001AG and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material.

The alternate disposal site(s) must have sufficient capacity to receive Non-rock material unsuitable for placement at the HARS from the project site. The Apparent low bidder is required to perform all work to demonstrate that the alternate disposal site(s) is permitted, operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS on that date for the in-situ quantity as per line item 0001AC and 0001AG and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material. Disposal of the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible. Dredging, dewatering and/or other processing (if any), transfer, transportation and material disposal shall be performed in accordance with applicable law and requirements of all associated permits, approvals and government authorities having jurisdiction.

**1.45.1** Information Submitted by the Apparent Low Bidder within 3 Calendar days
If the bidder selects to bid an alternate disposal site(s) for the processing and disposal of Non-rock material unsuitable for placement at the HARS, other than the Government designated upland site, the Apparent Low bidder must submit within 3 calendar days from the date they are notified of being the Apparent Low Bidder the following information for the alternate site(s):

a) Name of the alternate site

b) Location (street address, city, state) of the alternate site

c) Point of Contact for the alternate site and telephone number

d) Total capacity available at the alternate site for placement of Dredged Material

e) Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate,



G005804

G01010 05780

process and dispose of dredged Material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and others as related to transportation, processing and placement of the dredged material, or any other aspects of the bidder's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.

f) Copies of permits currently issued/approved at the time of submission.

g) Identification of Regulatory Agency required to issue/approve items listed in e) above

h) Timeline for obtaining the required permits - Bar Chart for Obtaining Permits and Approvals - A bar chart indicating time(s) required for obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule will detail the major steps (such as time to prepare the permit request, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc).

i) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (CY /day) and throughput rates for their proposed integrated system of dredging, transportation, processing, and placement for each alternate site proposed.

j) Disposal Site Elements Information -
1) State capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the disposal site(s).

2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

k) Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment, and the completion of the major acceptance areas). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be completed within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the alternate disposal site(s) that are needed to be completed within 70 calendar days from date the Apparent low bidder is notified of being the low bidder so that the site(s) is operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS for the in-situ quantity identified in the price schedule.

**1.45.1.A** Synopsis of proposed operation - Narrative of no more than five (5) pages detailing the operation to move the Non-rock material unsuitable for placement at the HARS from the site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through transportation and processing to its ultimate placement. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, loading and unloading facilities for each disposal facility including site capacity.

2) Provide a detailed map indicating locations of loading and unloading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.

3) Provide Hours of operation, transportation and operating procedures at unloading facilities.

4) Provide Facilities information: Access to Unloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges,buckets,scows,tugs and other salient equipments to be used for the project.

6) Submit a detailed description of the loading and transportation procedures to be utilized.

**1.45.2** Information to be submitted by the Apparent Low Bidder within 70 calendar days

The Apparent Low Bidder shall submit the following information within 70 Calendar Days from the date the Apparent Low bidder is notified of being the low bidder.

a) Information submitted within 3 days of notification - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence Demonstrating that the Alternate Disposal site(s) is Permitted, Operational, Capable of Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder that the alternate disposal site(s) is permitted, operational, capable of processing and disposing of the Non-rock material unsuitable for placement at the HARS for the in-situ quantity as per line items 0001AC and 0001AG by calendar day 70 from date the Apparent low bidder is notified of being the low bidder and that the disposal site(s) is in compliance with the New Jersey Department of Environmental Protection and/or

with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent low bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

c) Copies of Required Permits - The Apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government. Documentation of compliance with any other legal or regulatory requirement must be provided to the Government Water Quality Certificates (WQC) in accordance with Section 401 of the Clean Water Act, Coastal Zone Management (CZM) consistency determinations, and State agreement pursuant to Section 307 of the Coastal Zone Management Act of 1972 as amended, for activities conducted in a state, which has a federally approved Coastal Zone Management program. WQC and CZM permits related to the dredging (as opposed to dredged material transport, disposal and placement) will be provided by the New York District U.S. Army Corps of Engineers, Section 00900.

d) The Apparent Low Bidder must provide:

1) Proof of the proposed Alternate Disposal Site(s) being licensed for acceptance of dredged material by all appropriate regulatory entities (permits for the site previously provided should be also included in this submission).

2) Proof of Disposal Site Owner's approval granting the apparent low bidder the right to dispose dredged material at that site.

3) Proof of uncommitted Disposal Site(s) capacity adequate for the project.

4) Certification of the Disposal Site's availability corresponding to the current project schedule.

5) Proof of approval by the appropriate regulatory agencies that the dredged material for this contract is compatible for processing and disposal at the proposed Disposal Site(s).

6) Demonstrate minimum required Disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each alternate disposal site(s).

7) Proof of apparent low bidder's experience in the proposed Disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

e) Transportation Capabilities - The Apparent Low Bidder must provide the following:

1) Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment's has current permits, licenses, registrations, or other required certifications.

2) Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

f) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed technological processing, including but not limited to, the following stages, if applicable:
a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

b. Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the timeframe it will be used, if applicable.

d. Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent low bidder.

5) Certify processing plant's availability corresponding to the current project schedule.

6) Provide proof of Apparent Low Bidder's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

-- End of Section --

## PROJECT IDENTIFICATION SIGN
## CIVIL PROJECT

The graphic format for this 4' x 6' sign panel follows the legend guidelines and layout as specified below. The large 4' x 4' section of the panel in the right is to be white with black legend. The 2' x 4' section of the sign on the left with the full corps Signature (reverse version) is to be screen printed Communications Red on the white background. The castle insignia will be furnished by the Government in pressure sensitive vinyl for affixing by the Contractor. See attached sheet for fabrication and mounting guidelines.

Legend Group 1: One to two-line description of Corps relationship to project
Color: white
Typeface: 1.25" Helvetica Regular
Maximum line length: 19"

Legend Group 2: Division or District Name (optional, Place below 10.5" Reverse Signature (6" Castle)
Color: white
Typeface: 1.25" Helvetica Regular

Legend Group 3: One-to three-line project title legend describes the work being done under this contract.
Color: Black
Typeface: 3" Helvetica Bold
Maximum line length: 42"

Legend Group 4: One-to two-line identification of project or facility (civil works) or name of sponsoring department (military).
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Cross-align the first of Legend Group 4 with the first line of the Corps Signature (US Army Corps) as shown.

Legend Group 5a-b: One-to-five line identification of prime contractors including: type (architect, general contractor, etc.), corporate or firm name, city, state. Use of Legend Group 5 is optional.
Color: Black
Typeface: 1.25" Helvetica Regular
Maximum line length: 21"

All typography is flush left and rag right upper and lower case with initial capitals only as shown. Letter and word spacing to follow Corps standards as specified in * Appendix D

SAMPLE:




(Dimensions are in inches)

| Sign Type | Legend | Panel Size | Post Size | Specification Code | Mounting Height | Color Bkg/Lgd |
|---|---|---|---|---|---|---|
| CID-01 | various | 4' x 6' | 4' x 4' | HDO-3 | 48" | WH-RD/BK |

Show non-Federal local partner's name and logo - Port Authority of New York and New Jersey

* Refers to the U.S. Army Corps of Engineers, "Sign Standards Manual", EPS-310-1-6.



G005809

G01010 05785

# Fabrication and Mounting Guidelines

As Construction Project Identification signs and Safety Performance signs are to be fabricated and installed as described below. The signs are to be erected at a location deignated by the contracting officer and shall conform to the size, format, and typographic standards shown on the attached sheets.

The sign panels are to be fabricated from .75" High Density Overlay Plywood. Panel preparation to follow HDD specifications provided in Appendix B. **

Sign graphics to be prepared on a white non-reflective vinyl film with positionable adhesive backing.

All graphics except for the Communications Red background with Corps signature on the project sign are to be die-cut or computer-cut non-reflective vinyl, pre-spaced legends prepared in the sizes and typefaces specified and applied to the background panel following the graphic formats shown on the attached sheets.

The 2'x4' Communications Red panel (to match PMS-032) with full Corps signature (reverse version) is to be screen printed on the white background. Identification of the District or Division may be applied under the signature with white cut vinyl letters prepared to Corps standards. Large scale reproduction artwork for the signature is provided on page 4.8 (photographically enlarge from 6.875" to 10.5"). **

Drill and insert six (6) .375" T-nuts from the front face of the HDD sign panel. Position holes as shown. Flange of T-nut to be flush with sign face.

Apply graphic panel to prepared HDD plywood panel following manufacturers' instructions.

Sign uprights to be structural grade 4"x4" treated Douglas Fir or Southern Yellow Pine. No.1 or better. Post to be 12' long. Drill six (6) .375" mounting holes in uprights to align with T-nuts in sign panel. Countersink (.5") back of hole to accept socket head cap screw (4"x.375").

Assemble sign panel and uprights. Imbed assembled sign panel and uprights in 4' hole. Local soil conditions and/or wind loading may require bolting additional 2"x4" struts on inside face of uprights to reinforce installation as shown.

Detailed specifications for HDD plywood panel preparation are provided in Appendix B.**

Shown below the mounting diagram is a panel layout grid with spaces provided for project information. Photocopy this page and use as a worksheet when preparing sign legend orders.






(Dimensions in inches)

** Refers to the U.S. Army Corps of Engineers, "Sign Standards Manual", EP-310-1-6.

Construction Project Sign

Legend Group 1: Corps Relationship

1.

2.

Legend Group 2: Division/District Name

1.

2.

Legend Group 3: Project Title

1.

2.

3.

Legend Group 4: Facility Name

1.

2.

Legend Group 5a: Contractor/A&E

1.

2.

3.

4.

5.

Legend Group 5b: Contractor /A&E

1.

2.

3.

4.

5.

Safety Performance Sign

Legend Group 1: Project Title

1.

2.

Legend Group 2: Contractor/A&E

1.

2.



G005810

G01010 05786

SAFETY PERFORMANCE SIGN

The graphic format, color, size and type-faces used on the sign are to be reproduced exactly as specified below. The title with First Aid logo in the top section of the sign, and the performance record captions are standard for all signs of this type. Legend Group 2 and 3 below identify the project and the contractor and are to be placed on the sign as shown. Safety record numbers are mounted on individual metal plates and are screw-mounted to the background to allow for daily revisions to posted safety performance record.

Legend Group1: Standard two-line title "safety is a Job Requirement", with (8" od.) Safety Green First Aid logo. Color: To match PMS 347
Typeface: 3" Helvetica Bold
Color: Balck

Legend Group 2: One- to two-line project title legend describes the work being done under this contract and name of host project.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 3: One - to two-line identification: name of prime contractor and city, state address.
Color: Black
Typeface: 1.5" Helvetica Regular
Maximum line length: 42"

Legend Group 4: Standard safety record captions as shown.
Color: Black

Typeface: 1.25" Helvetica Regular

Replaceable numbers are to be mounted on white .060: aluminum plates and screw-mounted to background.
Color: Black
Typeface: 3" Helvetica Regular
Plate size: 2.5"x.5"

All typography is flush left and rag right, upper and lower case with initial capitals only as shown. Letter- and word-spacing to follow Corps standards as specified in Appendix D. *




Dimensions inches.
See attached sheet for fabrication and mounting guidelines.

* Refer to the U.S. Army Corps of Engineers, "Sign Standards Manual", EPS-310-1-6.

| Sign Type | Legend Size | Panel Size | Post Size | Specifications Code | Mounting Height | Color Bkg/Lgd |
|---|---|---|---|---|---|---|
| CID-02 | various | 4'x4' | 4'x4' | HDO-3 | 48" | WH/BK-GR |






G005811

G01010 05787

SECTION 00900 – WAGE RATES

WORK UNDER THIS CONTRACT IS CATEGORIZED AS

BUILDING: HEAVY: X HIGHWAY: RESIDENTIAL:

THE FOLLOWING CLASSIFICATION (S) AND RATES SET FORTH IN WAGES DECISION NO.: NJ 000006

APPLY TO THIS CONTRACT:

: THOSE SPECIFICALLY DESIGNATED "BUILDING"

: X SPECIFICALLY "HEAVY"

: THOSE SPECIFICALLY DESIGNATED "HIGHWAY"

: THOSE SPECIFICALLY DESIGNATED "COMMERCIAL"

: X THOSE SPECIFICALLY DESIGNATED ANY OF THE ABOVE CATEGORIES.

ALL OTHER CLASSIFICATIONS AND RATES ARE INAPPLICABLE.

SUBJECT: Arthur Kill, Channel Navigation Improvement, Contract 1, NY and NJ: Solicitation Number DACW51-03-B-0001

1. Forwarded herewith are the General Wage Decision(s ), EO 11246 affirmative action requirements, and labor surplus area coverage for the subject solicitation:

NY020001, Modification 1, Publication Date 10/04/02; NJ020006, Modification 1, Publication Date 10/04/02

**General Decision No: NY020001 ( Dredging, Statewide)**
Modification Number 2
Publication Date: 10/04/02

**General Decision No: NJ020006 ( (Dredging, Statewide)**
Modification Number 0
Publication Date: 3/2/01

**Labor Surplus Area**:
Richmond County - yes
Union County - no
Hudson County - no, except for Union City and Jersey City

**Affirmative Action Requirements**:
Union County
Female: 6.9%
Minority: 17.3%

Hudson County
Female: 6.9%
Minority: 12.8%

Richmond County
Female: 6.9%
Minority: see below

| Trade | For Minorities |
|---|---|
| Electricians | 9.0% - 10.2% |
| Carpenters | 27.6% - 32.0% |
| Steamfitters | 12.2% - 13.5% |
| Metal Lathers | 24.6% - 25.6% |
| Painters | 22.8% - 26.0% |
| Operating Engineers | 25.6% - 26.0% |
| Plumbers | 12.0% - 14.5% |

| | |
|---|---|
| Iron Workers (Structural) | 25.9% - 32.0% |
| Elevator Constructors | 5.5% - 6.5% |
| Bricklayers | 13.4% - 15.5% |
| Asbestos Workers | 22.8% - 28.0% |
| Roofers | 6.3% - 7.5% |
| Iron Workers (Ornamental) | 22.4% - 23.0% |
| Cement Masons | 23.0% - 27.0% |
| Glaziers | 16.0% - 20.0% |
| Plasterers | 15.8% - 18.0% |
| Teamsters | 22.0% - 22.5% |
| Boilermakers | 13.0% - 15.5% |
| All Other | 16.4% - 17.5% |

Please ensure that the decision(s) are incorporated into the subject solicitation and resultant contract as set forth in FAR 22.404-6.

Note that the Davis-Bacon Act will not apply to work performed at a commercial disposal site. If other than a commercial site is anticipated, please advise.

Sandra Gaffney
District Labor Advisor

Encls: as

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

General Decision Number **NY020001 sg**
Superseded General Decision No. NY010001

State: New York

Construction Type:
DREDGING

County(ies):
STATEWIDE

New York

All dredging, excpt self-propelled hopper dredges, on the Atlantic Coast and tributary waters emptying into ther Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 03/01/2002 |
| 1 | 10/04/2002 |



G005814

G01010 05790

COUNTY(ies):
STATEWIDE

* ENGI0025D 10/01/2002

| | Rates | Fringes |
|---|---|---|
| DIPPER & CLAMSHELL DREDGE: | | |
| Operator | 28.07 | 6.45+a+b |
| Engineer | 24.72 | 6.45+a+b |
| Maintenance Engineer | 23.59 | 5.85+a+b |
| Welder | 23.22 | 5.85+a+b |
| Mate | 21.99 | 5.85+a+b |
| Boat Master | 23.24 | 6.45+a+b |
| Boat Captain | 22.15 | 5.85+a+b |
| Oiler | 18.59 | 5.25+a+b |
| Deckhand; Tug Deckhand | 18.13 | 5.25+a+b |
| Scowman | 17.88 | 5.25+a+b |
| DRAG BUCKET DREDGE: | | |
| Operator | 25.09 | 6.45+a+b |
| Engineer | 21.41 | 6.45+a+b |
| Maintenance Engineer | 21.21 | 5.85+a+b |
| Mate | 19.82 | 5.85+a+b |
| Deckhand | 16.17 | 5.25+a+b |
| HYDRAULIC DREDGES: | | |
| Leverman | 27.56 | 6.45+a+b |
| Engineer; Derrick Operator | 24.17 | 6.45+a+b |
| Chief Mate | 23.82 | 6.45+a+b |
| Chief Welder | 24.48 | 6.45+a+b |
| Maintenance Engineer | 23.59 | 5.85+a+b |
| Electrician | 23.43 | 6.45+a+b |
| Welder Dredge | 23.21 | 5.85+a+b |
| Spider Barge Operator | 23.01 | 5.85+a+b |
| Mate | 21.99 | 5.85+a+b |
| Boat Master | 23.23 | 6.45+a+b |
| Boat Captain | 21.66 | 5.85+a+b |
| Steward | 21.94 | 6.45+a+b |
| Oiler | 18.59 | 5.25+a+b |
| Deckhand | 17.90 | 5.25+a+b |
| Tug Deckhand | 18.13 | 5.25+a+b |
| Shoreman | 17.90 | 5.25+a+b |
| Assistant Cook | 18.00 | 5.25+a+b |
| Night Cook | 18.00 | 5.25+a+b |
| Messman | 17.49 | 5.25+a+b |
| Janitor/Porter | 17.49 | 5.25+a+b |
| Fill Placer | 23.82 | 6.45+a+b |
| Assistant Fill Placer | 21.80 | 6.45+a+b |
| COMPANY LEAD DREDGEMAN: | | |
| Lead Dredgeman | 27.56 | 6.45+a+b |
| TUG BOATS over 1,000 H.P. (with master or captain having license endorsed for 200 miles off shore): | | |
| Tug Master | 24.68 | 6.45+a+b |
| Tug Captain | 23.69 | 6.45+a+b |
| Tug Chief Engineer | 22.95 | 5.85+a+b |
| Tug Engineer | 22.48 | 5.85+a+b |
| Tug Deckhand | 18.13 | 5.85+a+b |

| | | |
|---|---|---|
| TUG BOATS over 1,000 H.P. (without master or captain having license endorsed for 200 miles off shore): | | |
| Tug Master | 23.23 | 6.45+a+b |
| Tug Captain | 22.15 | 5.85+a+b |
| Tug Engineer | 22.48 | 5.85+a+b |
| Tug Deckhand | 18.13 | 5.25+a+b |
| DRILL BOATS: | | |
| Engineer | 23.54 | 6.45+a+b |
| Blaster | 23.81 | 6.45+a+b |
| Driller | 23.55 | 6.45+a+b |
| Welder | 23.30 | 5.85+a+b |
| Machinist | 23.30 | 5.85+a+b |
| Tug Master | 20.48 | 6.45+a+b |
| Tug Captain | 19.53 | 5.85+a+b |
| Oiler | 20.46 | 5.25+a+b |
| Tug Deckhand | 15.97 | 5.25+a+b |
| Core Driller | 18.56 | 5.25+a+b |
| DIVERS: | | |
| Diver | 40.88 | 6.45+a+b |
| Standby Diver | 27.20 | 6.45+a+b |
| Tender | 31.46 | 6.45+a+b |
| Standby Tender | 22.61 | 5.85+a+b |
| DREDGING PIPELINE CABLE-LAYING: | | |
| Leverman | 28.18 | 6.45+a+b |
| Control Tower Operator | 24.90 | 6.45+a+b |
| Rigger | 18.42 | 5.25+a+b |
| Line up Operator, End Prep. | 17.82 | 5.25+a+b |
| Diver | 41.77 | 6.45+a+b |
| Diver Tender | 25.93 | 6.45+a+b |
| ENGINEER: | | |
| 1st | 24.90 | 6.45+a+b |
| 2nd, 3rd & 4th | 24.58 | 6.45+a+b |
| Electrician | 24.48 | 6.45+a+b |
| Electro Hydro Tech. | 20.14 | 5.85+a+b |
| Tug Master | 26,15 | 6.45+a+b |
| Tug Captain | 22.79 | 6.45+a+b |

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King Day, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation

to which welding is incidental.

---

Unlisted classifications needed for work not included within



G005816

G01010 05792

the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)(1)(ii)).

---

In the listing above, the "SU" designation means that rates listed under that identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations
Wage and Hour Division
U. S. Department of Labor
200 Constitution Avenue, N. W.
Washington, D. C. 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator
U.S. Department of Labor

200 Constitution Avenue, N. W.
Washington, D. C. 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an

interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board
U. S. Department of Labor
200 Constitution Avenue, N. W.
Washington, D. C. 20210

4.) All decisions by the Administrative Review Board are final.

END OF GENERAL DECISION

++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

General Decision Number **NJ020006 sg**

Superseded General Decision No. NJ010006
State: New Jersey
Construction Type:
DREDGING
County(ies):
STATEWIDE
All Dredging except self propelled hopper dredges, on the Atlantic Coast & tributary waters emptying into the Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 03/01/2002 |
| 1 | 10/04/2002 |

COUNTY(ies):
STATEWIDE
* ENGI0025D 10/01/2002

| | Rates | Fringes |
|---|---|---|
| DIPPER & CLAMSHELL DREDGE: | | |
| Operator | 28.07 | 6.45+a+b |
| Engineer | 24.72 | 6.45+a+b |
| Maintenance Engineer | 23.59 | 5.85+a+b |
| Welder | 23.22 | 5.85+a+b |
| Mate | 21.99 | 5.85+a+b |
| Boat Master | 23.24 | 6.45+a+b |
| Boat Captain | 22.15 | 5.85+a+b |
| Oiler | 18.59 | 5.25+a+b |
| Deckhand; Tug Deckhand | 18.13 | 5.25+a+b |
| Scowman | 17.88 | 5.25+a+b |
| DRAG BUCKET DREDGE: | | |
| Operator | 25.09 | 6.45+a+b |
| Engineer | 21.41 | 6.45+a+b |
| Maintenance Engineer | 21.21 | 5.85+a+b |
| Mate | 19.82 | 5.85+a+b |
| Deckhand | 16.17 | 5.25+a+b |
| HYDRAULIC DREDGES: | | |
| Leverman | 27.56 | 6.45+a+b |
| Engineer; Derrick Operator | 24.17 | 6.45+a+b |
| Chief Mate | 23.82 | 6.45+a+b |
| Chief Welder | 24.48 | 6.45+a+b |
| Maintenance Engineer | 23.59 | 5.85+a+b |
| Electrician | 23.43 | 6.45+a+b |
| Welder Dredge | 23.21 | 5.85+a+b |
| Spider Barge Operator | 23.01 | 5.85+a+b |
| Mate | 21.99 | 5.85+a+b |

| | | |
|---|---|---|
| Boat Master | 23.23 | 6.45+a+b |
| Boat Captain | 21.66 | 5.85+a+b |
| Steward | 21.94 | 6.45+a+b |
| Oiler | 18.59 | 5.25+a+b |
| Deckhand | 17.90 | 5.25+a+b |
| Tug Deckhand | 18.13 | 5.25+a+b |
| Shoreman | 17.90 | 5.25+a+b |
| Assistant Cook | 18.00 | 5.25+a+b |
| Night Cook | 18.00 | 5.25+a+b |
| Messman | 17.49 | 5.25+a+b |
| Janitor/Porter | 17.49 | 5.25+a+b |
| Fill Placer | 23.82 | 6.45+a+b |
| Assistant Fill Placer | 21.80 | 6.45+a+b |
| COMPANY LEAD DREDGEMAN: | | |
| Lead Dredgeman | 27.56 | 6.45+a+b |
| TUG BOATS over 1,000 H.P. (with master or captain having license endorsed for 200 miles off shore): | | |
| Tug Master | 24.68 | 6.45+a+b |
| Tug Captain | 23.69 | 6.45+a+b |
| Tug Chief Engineer | 22.95 | 5.85+a+b |
| Tug Engineer | 22.48 | 5.85+a+b |
| Tug Deckhand | 18.13 | 5.85+a+b |
| TUG BOATS over 1,000 H.P. (without master or captain having license endorsed for 200 miles off shore): | | |
| Tug Master | 23.23 | 6.45+a+b |
| Tug Captain | 22.15 | 5.85+a+b |
| Tug Engineer | 22.48 | 5.85+a+b |
| Tug Deckhand | 18.13 | 5.25+a+b |
| DRILL BOATS: | | |
| Engineer | 23.54 | 6.45+a+b |
| Blaster | 23.81 | 6.45+a+b |
| Driller | 23.55 | 6.45+a+b |
| Welder | 23.30 | 5.85+a+b |
| Machinist | 23.30 | 5.85+a+b |
| Tug Master | 20.48 | 6.45+a+b |
| Tug Captain | 19.53 | 5.85+a+b |
| Oiler | 20.46 | 5.25+a+b |
| Tug Deckhand | 15.97 | 5.25+a+b |
| Core Driller | 18.56 | 5.25+a+b |
| DIVERS: | | |
| Diver | 40.88 | 6.45+a+b |
| Standby Diver | 27.20 | 6.45+a+b |
| Tender | 31.46 | 6.45+a+b |
| Standby Tender | 22.61 | 5.85+a+b |
| DREDGING PIPELINE CABLE-LAYING: | | |
| Leverman | 28.18 | 6.45+a+b |
| Control Tower Operator | 24.90 | 6.45+a+b |
| Rigger | 18.42 | 5.25+a+b |
| Line up Operator, End Prep. | 17.82 | 5.25+a+b |
| Diver | 41.77 | 6.45+a+b |
| Diver Tender | 25.93 | 6.45+a+b |
| ENGINEER: | | |
| 1st | 24.90 | 6.45+a+b |
| 2nd, 3rd & 4th | 24.58 | 6.45+a+b |

| | | |
|---|---|---|
| Electrician | 24.48 | 6.45+a+b |
| Electro Hydro Tech. | 20.14 | 5.85+a+b |
| Tug Master | 26,15 | 6.45+a+b |
| Tug Captain | 22.79 | 6.45+a+b |

PREMIUMS: Additional 20% for hazardous material work
FOOTNOTES APPLICABLE TO ABOVE CRAFTS:
a. PAID HOLIDAYS: New Year's Day, Martin Luther King Day, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day, and Christmas Day
b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

================================================================

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)(1)(ii)).

---

In the listing above, the "SU" designation means that rates listed under that identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations
Wage and Hour Division
U. S. Department of Labor
200 Constitution Avenue, N. W.
Washington, D. C. 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator
U.S. Department of Labor

200 Constitution Avenue, N. W.
Washington, D. C. 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board
U. S. Department of Labor
200 Constitution Avenue, N. W.
Washington, D. C. 20210

4.) All decisions by the Administrative Review Board are final.

END OF GENERAL DECISION

# SECTION 00901

# SAMPLE FORMS

| REPORT OF OPERATIONS-PIPELINE, DIPPER OR BUCKET DREDGES | | | | | | | | | REPORT CONTROL SYMBOL | |
|---|---|---|---|---|---|---|---|---|---|---|
| THRU: | | | TO: | | | FROM: | | | REPORT # | |
| CHARACTER OF REPORT | MAINT. | NEW WORK | DAILY | STATUS | COMPLETION | ANNUAL | DATE OR PERIOD | | | |
| DREDGE | NAME AND TYPE | | SIZE | PIPELINE (in. dia. disch.) | | DIPPER OR BUCKET (cu. yds. cap) | | | | |
| | HORSE-POWER OF | DREDGE PUMP | | SUCTION PIPE JET | | CUTTER OR BUCKET | | PROPULSION | | |
| | NUMBER OF CREW MEMBERS | DREDGE | SHORE | OTHER PLANT | TOTAL | WORK SCHEDULE | SHIFTS/DAY | DAYS/WEEK | | |
| PROJECT AND BAR | NAME AND TYPE | | | | AUTH | WIDTH | DEPTH | OVERDEPTH | | |
| | LOCATION (include station numbers) | | | | STA. NO.: | | Range: | | | |
| CHARACTER OF MATERIAL | ABSOLUTE DENSITY (GMS/liter) | | | IN PLACE DENSITY (GMS/liter) | | | VOIDS RATIO | | | |
| | GRAIN SIZE $D_n$ | MM $D_n$ | MM $D_n$ | MM | | GEOLOGICAL CLASSIFICATION | | | | |
| CONTRACT ORDER | NUMBER | | | CONTRACTOR | HIRED LABOR | TOTAL NO. OF DAYS ON WHICH WORK WAS DONE | | | | |
| CHANNEL CONDITION | AVERAGE DEPTH | | BD | AD | MINIMUM SOUNDING | | BD | AD | | |
| RIVER STAGE | MINIMUM | TIME | MAXIMUM | TIME | GAUGE LOCATION | | | | | |
| WEATHER CONDITION | (clear, cloudy, rain, and fog) | | | VISIBILITY | | WIND (maximum, velocity, & direction) | | | | |

| WORK PERFORMED | | | DISTRIBUTION TIME | | |
|---|---|---|---|---|---|
| ITEM | UNIT | QUANTITY | EFFECTIVE WORKING TIME (chargeable to cost of work) | HOURS | MIN. |
| AVERAGE WIDTH OF CUT | FEET | | PUMPING OR DREDGING | | |
| TOTAL TRAVEL THIS PERIOD | FEET | | PERCENTAGE OF EFFECTIVE RENTAL TIME | | % |
| TOTAL TRAVEL TO DATE | FEET | | BOOSTER (in line) | | |
| TOTAL ADVANCE TO DATE | FEET | | NON-EFFECTIVE WORKING TIME (chargeable to cost of work) | | |
| FLOATING PIPE: | SHORE PIPE: | | | | |
| TOT. LENGTH OF DISCHARGE | FEET | | HANDLING PIPE LINES | | |
| AVERAGE LIFT | FEET | | HANDLING ANCHOR LINES | | |
| AVERAGE PUMP SPEED | R.P.M. | | CLEARING PUMP AND PIPE LINE | | |
| AVG. DREDGED/PUMP. HR. | CU. YDS. | | CLEARING CUTTER OR SUCTION HEAD | | |
| SCOWS LOADED | NUMBER | | WAITING FOR SCOWS | | |
| AVERAGE LOAD PER SCOW | CU. YDS. | | TO AND FROM WHARF OR ANCHORAGE | | |
| CUBIC YARDS REMOVED | | | CHANGING LOCATION OF PLANT ON JOB | | |
| AMOUNT DREDGED THIS PERIOD: | | | LOSS DUE TO OPPOSING NATURAL ELEMENTS | | |
| (1) GROSS (computed amount) | | | LOSS DUE TO PASSING VESSELS | | |
| (2) CREDITED (pay place) | | | SHORE LINE AND SHORE WORK | | |
| AMOUNT PREVIOUSLY DREDGED: | | | WAITING FOR BOOSTER | | |
| (1) GROSS (computed amount) | | | MINOR OPERATING REPAIRS (explain in remarks) | | |
| (2) CREDITED (pay place) | | | WAITING FOR ATTENDANT PLANT | | |
| TOTAL AMOUNT DREDGED TO DATE: | | | PREPARATION AND MAKING UP TOW | | |
| (1) GROSS (computed amount) | | | TRANSFERRING PLANT BETWEEN WORKS | | |
| (2) CREDITED (pay place) | | | LAY TIME OFF SHIFT AND SATURDAYS | | |
| ATTENDANT PLANT | | | SUNDAYS AND HOLIDAYS | | |
| ITEM | NAME OR NUMBER | HOURS | FIRE DRILL | | |
| | | | MISCELLANEOUS (explain in remarks) | | |
| | | | TOTAL NON-EFFECTIVE WORKING TIME | | |
| | | | PERCENTAGE OF NON-EFFECTIVE RENTAL TIME | | % |
| | | | TOTAL EFFECTIVE AND NON-EFFECTIVE TIME (chargeable to cost of work) | | |
| | | | PERCENTAGE OF TOTAL TIME IN PERIOD | | % |
| | | | LOST TIME (not chargeable to cost of work) | | |
| | | | MAJOR REPAIRS AND ALTERATIONS | | |
| | | | CESSATION | | |
| | | | COLLISIONS | | |
| | | | MISCELLANEOUS (explain in remarks) | | |
| NUMBER OF INSPECTIONS | BY DISTRICT PERSONNEL | | TOTAL LOST TIME | | |
| | BY DIV&OCE PERSONNEL | | PERCENTAGE OF TOTAL TIME | | % |
| CONTRACT USE ONLY | HAS ANYTHING DEVELOPED WHICH MIGHT LEAD TO A CHANGE ORDER OR CLAIM? | YES OR NO | TOTAL TIME PERIOD | | |

ENG FORM 4267

00901 - 1

G005823

G01010 05799

| ITEM | COST |
|---|---|
| DIRECT PLANT OPERATING COSTS | |
| UNIFORM DAILY RATE BASIS (To be completed when submitting Status and Completion reports.) | |
| CHARGES: ____ DAYS AT $ ____ PER DAY (Item 19, ENG Form 22 (Costs) - adjusted to exclude plant increment cost) | |
| OR | |
| ACTUAL PLANT COSTS (To be completed when submitting Annual report) | |
| PAYROLLS (gross) .......... $ | |
| SUBSISTENCE & QUARTERS OR PER DIEM & MILEAGE .......... $ | |
| FUEL ____ BARREL AT $ ____ PER BARREL .......... $ | |
| WATER .......... $ | |
| LUBRICANTS .......... $ | |
| PLANT OWNERSHIP COSTS (as computed below) .......... $ | |
| INSURANCE .......... $ | |
| ATTENDANT PLANT .......... $ | |
| MISCELLANEOUS .......... $ | |
| SUBTOTAL -- UNIFORM DAILY RATE OR ACTUAL COSTS | |
| SUBTOTAL -- PLANT UNIT COST $ PER CUBIC YARD | |
| SHORE WORK | |
| SUBTOTAL -- SHORE WORK COSTS $ .......... | |
| SUBTOTAL -- SHORE WORK UNIT COSTS $ PER CUBIC YARD | |
| OTHER COSTS: | |
| SURVEYS .......... $ | |
| INSPECTION AND SUPERVISION .......... $ | |
| OVERHEAD .......... $ | |
| OTHER INDIRECT COSTS .......... $ | |
| SUBTOTAL--OTHER COSTS | $ |
| SUBTOTAL -- OTHER UNIT COST PER CUBIC YARD | |
| GRAND TOTAL--ALL COST .......... | $ |
| GRAND TOTAL--ALL UNIT COST PER CUBIC YARD | |

| OPERATING SUPPLIES | | | | |
|---|---|---|---|---|
| COMMODITIES | CONSUMED | | INVENTORY | |
| | UNIT | QUANTITY | QUANTITY | VALUE |
| FUEL (oil) | | | | |
| LUBE (oil) | | | | |
| LUBE (grease) | | | | |
| WATER | | | | |
| | | | | |
| | | | | |
| SUBSISTENCE SUPPLIES | | | | |
| MISCELLANEOUS SUPPLIES | | | | |
| TOTAL | | | | |

| ANNUAL REPORT DATA (complete when submitting Annual report) | |
|---|---|
| COST PER RENTAL MINUTE (Based on total operating cost) .......... | $ |
| TOTAL COST OF PLANT (End of F.Y. reporting period) .......... | $ |
| BOOK VALUE (End of F.Y. reporting period) .......... | $ |
| BALANCE IN PLANT ACCOUNT (End of F.Y. reporting period) .......... | $ |
| PLANT OWNERSHIP COSTS (Actual for F.Y. reporting period) .......... | |
| DESCRIPTION .......... | $ |
| REPAIRS .......... | $ |
| CESSATION OF WORK .......... | $ |
| SMALL TOOLS, ETC. .......... | $ |
| TOTAL .......... | $ |

REMARKS

| SUBMITTED BY (Name, title, and signature) | RECOMMENDED BY (Name, title, and sig) | APPROVED BY (Name, title, and signature) |
|---|---|---|
| | | |

REPORT NO.
PROJECT
LOCATION
DRILL BOAT TYPE OF DRILL

DATE:
TIME STARTED FRAME HRS. WORKED
TIME FINISHED FRAME IDLE
FRAMES USED

| DELAYS | THIS DATE | CONTRACT TO DATE |
|---|---|---|
| MOVE ON/OFF SITE - WEEKEND, DAY END | | |
| TEST FOR ROCK | | |
| OFF ROCK - NO DRILLING | | |
| WAIT OTHER FRAMES | | |
| MOVE FRAMES | | |
| CHANGE BITS & BARS | | |
| CLEAN HOLES | | |
| LOAD HOLES | | |
| MOVE TO BLAST | | |
| MOVE TO BLAST & NEW CUT | | |
| MOVE TO NEW RANGE | | |
| TRAFFIC | | |
| WEATHER | | |
| LIGHTNING | | |
| REPAIRS | | |
| GREASE | | |
| LOAD/WAIT POWDER | | |
| ANCHORS | | |
| SURVEY | | |
| OTHERS (Specify in "Remarks") | | |
| TOTAL FRAME HRS. DELAYS | | |
| TOTAL FRAME HRS. WORKED | | |
| TOTAL FRAME REV. HRS. | | |
| FRAME TIME EFFICIENCY % | | |
| NO. TIMES MOVE TO BLAST | | |
| NO. TIMES MOVE TO BLAST & NEW CUT | | |
| NO. TIMES MOVE TO NEW RANGE | | |

WEATHER
WIND
SEASON

ATTENDANT PLANT HOURS

REMARKS ON DELAYS

| CREW | | |
|---|---|---|
| U.S. | | |
| OTHER | | |
| TOTAL | | |
| SUPERINTENDENT | | |
| CIVIL ENGINEER | | |
| CAPTAIN | | |
| DAY FORMAN | | |
| NIGHT FORMAN | | |
| DRILLER | | |
| BLASTER | | |
| HELPER | | |
| WATCH ENGINEER | | |
| MACHINIST | | |
| OILER | | |
| MATE | | |
| DECK HAND | | |
| TUG OPERATOR | | |
| CLERK | | |
| ROD MAN | | |
| OTHERS | | |

DAILY OPERATING CONDITIONS

SECTION OR AREA (S)
CUT NUMBER (S)
CROSS RANGES (STATIONS) TO
TO TO
TO TO

DRILLING GRADE
PROJECT GRADE
AVG. TOP MATERIAL
AVG. FEET DRILLED

NO. OF HOLES DRILLED
NO. OF HOLES BLASTED
LBS EXPLOSIVE USED
CAPS USED
BOOSTER USED
FUELS USED

BLAST HOLES ☐ LINE HOLES ☐ SPACING
TYPE OF DYNAMITE
TYPE OF WIRE
TYPE OF ROCK

REMARKS ON PRODUCTION OR CONDITIONS:

SUPERINTENDENT: DATE:

# DRILL LOG AND BLAST REPORT

CONTRACT NO.:
NAME OF DRILL BOAT:

Sheet -- of ---

DATE:
BLAST NO.:

FOR THIS BLAST

| | |
|---|---|
| 2 - HOUR WARNING | LBS. /HOLE |
| 15 - MINUTE WARNING | LBS./DELAY |
| 5 - MINUTE WARNING | LBS./BLAST |
| BLAST TIME | TOT. HOLES |
| REAL DISTANCE L.F. | MAX. POWDER/DELAY |
| TYPE OF POWDER = | |

FOR THIS RANGE

| | MIN. | MAX. | | START | STOP |
|---|---|---|---|---|---|
| DEPTH | | | DRILL TIME | | |
| SPACING | | | LOADED | | |
| NO. OF HOLES | | | FIRED | | |
| HOLE DIAMETER | | | | | |

TOTAL ROCK DRILLED = LF. TOTAL POWDER LOADED= POUNDS

CONTACT SEISMIC @

| HOLE NO. | START | STOP | STATION NO. | TIDE ELV. | DEPTH TO ROCK | T.C. TOP OF ROCK | T.C. OVER ROCK | ROCK TO - 47 MLW | *TOTAL ROCK | IN HOLE DELAYS NO. | IN HOLE DELAYS TYPES | BOOSTERS | SURFACE DELAYS NO. | SURFACE DELAYS TYPES | LOADED POUNDS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

00901 - 4

* Includes Subdrill TC = Tide Correction

## CROSS SECTION

-40
-50
-60
STA. NO.

ROCK ELEV. * OVERBURDEN

SUPERINTENDENT: ______________ DATE: ______________

G005826

G01010 05802

# USACE TRANSPORTAION AND PLACEMENT LOG

**Log Number:** **Date (yy:mm:dd)**

**Project Information:**

**Trip Number:**
**Permit Number:**
**Project Name:**

**Tow Owner:**
**Inspector's Name:**
**Tug's Navigational Unit:**

**Tug and Scow Information:**

**Tug Name:**
**Tug Captain:**

**Scow Name/Number:**
**Scowman's Name:**

**Loading Information:**

**Volume of Material (Cubic yds):**
**Time Loading is Complete (hh:mm:ss):**
**Description of material:**

**Scow Draft Forward (ft):**
**Scow Draft Aft (ft):**
**Percent Rock:**

**Placement Site Weather Conditions:**

**Wind Direction (from):**
**Weather conditions:**
**Observed Water Depth (ft):**
**Visibility (n miles):**
**Marine Mammals/Sea Turtles Sighted (Yes/No):**

**Wind Speed (mph):**
**Wave Swell Height (ft):**

**Transit/Placement Information Area:**
**Tug Position Determined By (GPS/DGPS) DGPS**
**Approximate Distance from Scow to Target Area at Time of Discharge (ft)**
**Time Scow Arrives at Project Placement Area:**
**Length of Towline at Time of Discharge (ft):**
**Scow Heading (Degrees):**
**Estimated Scow Speed (kts):**
**Distance from Tug Navigational Antenna to Tugs Towing Bit (ft):**
**Direction of Scow Relative to Tugs Towing Bit (Degrees):**

**Start Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**End Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**Post Placement Time (DOORS OPEN)**
**Tug Speed (kts):**
**Tug Heading (Degrees):** **GPS/DGPS: Latitude:** **Longitude:**

**Comments:**

# USACE TRANSPORTATION AND PLACEMENT LOG (OENJ)

Log Number:________________ Date:____________________________

## Project Information

Trip Number:______________ Tow Owner:_________________
Permit Number:______________________ Inspector's Name:_______________
Project Name: ______________________ Tug's Nav. Unit:________________

## Tug and Scow Information:

Tug Name:__________________ Scow Name/Number:_____________________
Tug Captain:_______________

## Loading Information

Description of Material:______________

______________________________________
______________________________________
______________________________________
______________________________________

| | Loading Cycle 1 Date | Time | Loading Cycle 2 Date | Time |
|---|---|---|---|---|
| Loading starts: | / / | : | / / | : |
| Loading complete: | / / | : | / / | : |
| Scow arrives at Dewatering pier: | / / | : | / / | : |
| Scow Departed Dewatering pier: | / / | : | / / | : |

Scow Draft Aft (ft):_________________

## Transit/Placement Site Weather Conditions:

Wind Speed (mph):____________________
Weather Conditions:__________________
Visibility (n miles):________________

| | Date | Time |
|---|---|---|
| Scow Departed Dredge site: | / / | : |
| Scow arrive at OENJ: | / / | : |

Receipt acknowledge by OENJ: ______________
Signature

## Unloading Information:

| | Date | Time |
|---|---|---|
| Unloading start: | | |
| Unloading complete: | / / | : |
| Scow Departed OENJ: | / / | : |

## Comments:

__________________________________________________
__________________________________________________

___________________________
USACE Inspector/Date



G005828

G01010 05804

# SECTION 00902

## DEWATERING INSTRUCTIONS
## SHARK RIVER MAP




G005830

# SECTION 00903

## FEDERAL CONSITENCY DETERMINATION/WATER QUALITY CERTIFICATIONS

Attach ment to **WQC NJ 0000-92-0031.7**
00903-ii

-----Original Message-----
From: Larry Baier [mailto:Larry.Baier@dep.state.nj.us]
Sent: Tuesday, September 17, 2002 8:19 AM
To: Wakeman, Thomas; Joesph.J.Seebode@usace.army.mil
Cc: Jennifer Sliko; Larry Baier; Richard DeWan; Suzanne Dietrick; rick.gimello@dot.state.nj.us
Subject: Re: Arthur Kill Contract No. 1 Placement

Dear Tom and Joe:
Please accept this e-mail in lieu of a formal letter regarding the disposition of material to be excavated from Arthur Kill 40-41 foot deepening Contract Areas 1A and 1B. For the record, I have reviewed the sediment data submitted by the Port Authority for these contract areas. With regard to the unconsolidated Holocene sediment, (black mud), the analytical data shows that the majority of the material is suitable for placement at the OENJC-Bayonne site and will likely be acceptable for placement at EnCap once that site is approved. The only exception is in Area 1B, Composite C, (which in actuality is a discrete location #8 in acceptance area D). That area showed concentrations of 4,4' DDD and 4,4' DDT at levels exceeding the placement criteria established for OENJC-Bayonne. Based on this data, the materail excavated from between stations 170+00 A and 165+00 A on the western half of the channel may need to be deposited in the NBCDF since there are no upland alternatives. However, based on the number of attempts to recover material from this area (23) there may be very little material to be managed. Should the Port Authority desire to pursue an alternate acceptance criteria for this material at an upland site we would entertain that request, but there are no guarantees. I also note that the Port Authority is asking the lab to review the data since it appears to be anomolous.

Regarding the Pleistocene Till, the State of New Jersey is in agrerement with the strategy put forward by the Port Atuhority to test this material for possible placement at the HARS. Should this material fail HARS testing, the material should be offered for upland placement. It is hoped that enough information can be gathered during HARS sampling and testing (particularly regarding the physical character of this material) to solicit upland placement interest. However, should upland interest be lacking, the State of New Jersey would agree to place this material in the NBCDF. Such testing for HARS placement and upland solicitation would meet the eligibility requirements for placement in the NBCDF. Therefore, we do not object to the issuance of an invitation for bids for this contract at the present time subject to the caveats expressed herein. It should also be noted that the majority of the data on the Pleistocene material, with the possible exception of Composite X in Area 1A (PCBs), shows that this material can be used in most upland applications as a raw material and does not need to be amended. A closer examination of Composite X is needed before making a final determination regarding this material.
I should also note that in exchange for allowing this project to come to New Jersey, which largely benefits New York's Howland Hook Container



G005832

G01010 05808

Terminal, the Department asks that New York find and implement a strategy that would find an upland placement site for the U.S. Gypsum project. Failure to do so will require a decision by the U.S. Army Corps of Engineers on the HARS placement of that material. whether that determination is affirmative or negative, it will more than likely result in litigation that would result in uncertainty regarding the future placement options for dredged material in the Harbor as a whole. This situation would mimic the unfortunate circumstances of 1993 through 1996, a time affectionately known as "mud lock" in the region. Such a situation would be damaging to the economies of both the Stte of New Jersey and the State of New York and would not serve the interest of the public that we all serve.

If you have questions, please do not hesitate to contact me.

Sincerely,

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology

State of New Jersey
Department of Environmental Protection

Christine Todd Whitman
*Governor*

Robert C. Shinn, Jr.
*Commissioner*

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

October 5, 2000

Mr. Frank Santomauro, P.E., Chief
Planning Division
Army Corps of Engineers, New York District
Jacob K. Javits Federal Building
New York, New York 10278-0090

RE: Federal Consistency Determination / Water Quality Certificate
File No.: 0000-92-0031.7
Arthur Kill Channel – Howland Hook Deepening to -41 feet

Dear Mr. Santomauro:

This letter is in response to two separate communications forwarded to this Office regarding the Arthur Kill to Howland Hook -41 Deepening Project. The communications with this Office entailed a letter received on September 7, 2000 from the Environmental Branch concerning the proposed mitigation for this project, and sediment sampling and test results for Contract Area 1 forwarded by the Port Authority of New York and New Jersey.

This letter shall serve to clarify that the mitigation plan proposed by the Corps titled, "FINAL MITIGATION PLAN ARTHUR KILL CHANNEL – HOWLAND HOOK MARINE TERMINAL DEEPENIFG PROJECT, 40/41 PLAN," prepared by Northern Ecological Associates, Inc. and dated March 31, 2000, is consistent with the Rules on Coastal Zone Management (N.J.A.C. 7:7E) and New Jersey's federally approved coastal zone management program. Consequently, this mitigation plan is considered to be approved under Federal Consistency Determination 0000-92-0031.7 issued for this project on November 23, 1998. The Department anticipates a close working relationship with the Corps as the design of the Rahway River mitigation site is finalized and construction initiated.

I have also taken the opportunity to review the analytical data package submitted by the Port Authority for Contract Area 1 of this project. Sampling and testing of this material was accomplished in accordance with guidance provided by this Office in a letter dated February 1, 2000 as modified during a telephone conversation on or about May 4, 2000. This material has been tested for upland placement at either the OENJC-Bayonne site or the Koppers Seaboard site in Kearny. Based on the analytical results, I have concluded that the material to be dredged from Contract Area 1 meets the placement

00903-1

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

criteria for both sites. However, at the present time the Koppers seaboard site in Kearny is inactive.

Please be further advised that the discharge of decant water is not authorized at the OENJC – Bayonne site (see Physical Condition 9 of Waterfront Development Permit 0901-92-0005.3). Any excess water in the dredged material must be either decánted at the dredging site prior to transport to the OENJC – Bayonne site or must be transported back to the dredging site and discharged under a Water Quality Certificate or other appropriate approval issued by the New York State Department of Environmental Conservation.

The Department cannot find disposal of the dredged material in the Newark Bay Confined Disposal Facility consistent with the Rules on Coastal Zone Management at the present time. N.J.A.C. 7:7E-4.2(h) (Standards relevant to the Disposal of Dredged Material in Water), provide for in water disposal only after consideration has been given to alternate placement sites and methods, which are less damaging to the environment. Based on the information provided and otherwise available to the Department, opportunity exists for the upland placement of this material at the OENJC – Bayonne site. Consequently, subaqueous disposal of the material from contract Area 1 in the Newark Bay Confined Disposal Facility has not been demonstrated to be consistent with New Jersey's approved Coastal Zone Management Program.

Should you have any questions regarding this letter please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Lawrence J. Baier
Chief
Office of Dredging and Sediment Technology

C: Beverly Fedorko, NJDEP Commissioner's Office
Richard Gimello, Executive Director, New Jersey Maritime Resources
Leonard Houston, Chief, Environmental Branch, USACOE, NY District
John Bullard, Chief, Chemical Env. Testing, Port Authority of New York and New Jersey
Bernice Malione, Supervisor, Permits and Governmental Approvals, Port Authority of NY and NJ

00903 - 2

State of New Jersey

Christine Todd Whitman
Governor

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Robert C. Shinn, Jr.
Commissioner

November 23, 1998

Mr. Frank Santomauro, P.E., Chief
Planning Division
Department of the Army
New York District, Corps of Engineers
Jacob K. Javits Building
Federal Building
New York, New York 10278-0090

RE: Federal Consistency Determination / Water Quality Certification
File: 0000-92-0031.7
Project: Arthur Kill Channel – Howland Hook Deepening Project

Dear Mr. Santomauro:

The Office of Dredging and Sediment Technology received your request for a Federal Consistency Determination, as required by Section 307 of the Federal Coastal Zone Management Act, for the Arthur Kill Channel- Howland Hook Marine Terminal Deepening Project on September 24, 1998. The target date for a decision on the federal consistency determination was extended to November 23, 1998 to allow additional time for the New York District Army Corps of Engineers (NYDCOE) to review and respond to the Department's October 6, 1998 letter. The NYDCOE concurrence was received by the Office of Dredging and Sediment Technology on November 20, 1998.

The project involves deepening the existing Arthur Kill Channel to -41 ft MLW plus 2 feet allowable overdepth from its confluence with Kill Van Kull Channel and Newark Bay down to the Howland Hook Marine Terminal (approximately 2 miles); and to 40 feet plus 2 feet of overdredge from the Howland Hook Marine Terminal to the Tesco and GATX oil facilities in Linden (approximately 1 mile). Approximately 3.25 million cubic yards (MCY) of material will be dredged for this project. Of that total, .8 MCY is expected to be rock, .35 MCY is expected to be clean unconsolidated deposits and 2.1 MCY is expected to be contaminated material.

As a result of meetings held between the Department and NYDCOE, an agreement was reached that the NYDCOE could apply for federal consistency determinations for dredging projects prior to furnishing sediment sampling results. As part of the federal consistency request, the NYDCOE agreed to submit a schedule for the submission of a sampling plan, the identification of a disposal site and the submission of sampling and testing results to the Department for review and approval prior to the initiation of dredging. This procedure was deemed necessary due to conflicts with the NYDCOE's funding requirements for dredging project. The following schedule was submitted to the NYDCOE in a letter dated October 6, 1998 and received concurrence by the NYDCOE in their November 20, 1998 letter.

At least 90 days prior to the anticipated dredging start date, the Corps shall identify the dredge material disposal or reuse site(s), provide bathymetry (not more than 6 months old) and request a sampling plan. The Department shall issue the sampling and testing plan within 30 days of receipt, and shall attempt to coordinate that sampling plan with New York State Department of Environmental Conservation (NYSDEC). Note this time frame is based upon a 30 day testing time. If the required analysis takes more than 30 days, then the lead-time must be increased accordingly.

At least 30 days prior to the anticipated dredging start date; the Corps shall provide the sediment testing results to the Department for review and approval. The Corps agrees that dredging will only commence upon receipt of the Department's approval of the material reuse or disposal site.

The Rules on Coastal Zone Management (N.J.A.C. 7:7E) constitute New Jersey's enforceable policies under its federally approved Coastal Zone Management Program. The Arthur Kill Channel – Howland Hook Federal Navigation Deepening Project has been reviewed under the following Rules on Coastal Zone Management: Navigation Channels (7:7E-3.7), Ports (7:7E-3.11), Intertidal and Subtidal Shallows (7:7E-3.15), Wetlands (7:7E-3.27), Historic and Archaeological Resources (7:7E-3.36), New Dredging (7:7E-4.2(g)), and Water Quality (7:7-8.4). Based on the above summary of details of the project as presented in the December 1997 Limited Final Reevaluation Report and Final Supplemental Environmental Impact Statement (December 1997), and the commitments made by the NYDCOE in their November 20, 1998 letter, to submit updated bathymetry surveys and sampling results for the project for review and approval by the Department; I have determined that the Arthur Kill Channel – Howland Hook Deepening Project is consistent with the Rules on Coastal Zone Management and New Jersey's federally approved Coastal Management Program.

I have also reviewed this project for potential water quality impacts. Provided that the following conditions are met, I have determined that the project is not likely to cause a violation of New Jersey's Surface Water Quality Standards (N.J.A.C. 7:9B-1.1 et seq.). Therefore, this determination includes the State's Water Quality Certification pursuant to Section 401 of the federal Water Pollution Control Act (33 USC 1341 et seq.) subject to the following conditions:

1. A "No barge overflow" condition applies to the dredging and transport of any contaminated dredged material.

2. All dredging of contaminated fine grained material shall be accomplished using a closed clam shell "environmental" bucket dredge.

3. Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard.

4. The dredge shall be operated so as to maximize the bite of the clamshell. This will reduce the amount of free water in the dredged material and the number of bites required to complete the job.

00903-4

5. The clamshell shall lifted slowly through the water column, generally 2 feet per second or less.

6. All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete, except for material permitted for subaqueous disposal.

7. The gunwales of the dredge scows shall not be rinsed or hosed during dredging.

Should you have any questions in this regard, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and [illegible] Technology
Site Remediation Program

C: Joel Pecchioli, Office of Program Coordination
Frank McDonough, NJ Department of Commerce
Beverly Fedorko, Special Assistant to the Commissioner

00903-5

New York State Department of Environmental Conservation
Division of Environmental Permits, Region 2
47-40 21ST Street, Long Island City, NY 11101-5407
Phone: (718) 482-4078 • FAX: (718) 482-4975
Website: www.dec.state.ny.us

Erin M. Crotty
Commissioner

May 10, 2001

Mark F. Lulka, Project Biologist
Planning Division - Environmental Branch
CENAN-PI-EA
US Army Corps of Engineers, New York District
26 Federal Plaza
New York, NY 10278-0090

Re: DEC No. 2-6499-00001/00002
Arthur Kill - Howland Hook 40'/41' Deepening Project
Amendment to Water Quality Cert Language

Dear Mr. Lulka:

This letter amends language in the above referenced Water Quality Cert. The following special conditions are changed as follows:

1. Special Condition 24 - Mitigation activities shall begin prior to, or concurrently with, commencement of dredging or blasting activity. At least sixty days prior to commencement of the project, the Permittee shall provide final details of the mitigation activities, including access points, haul roads, and erosion controls. Mitigation activities for the purpose of this Water Quality Cert include preliminary plans and specifications drafting, however, actual mitigation construction shall begin no later than the start of dredging/blasting for phase 2 of this project.

2. Special Condition 25.c - Mitigation site monitoring. As discussed in the Final Mitigation Plan dated March 31, 2000 , the final monitoring plan shall be modified to incorporate components of the New York State Salt Marsh Restoration and Monitoring Guidelines. Within 30 days of the effective date of this WQ Cert, Army Corps staff shall meet with Program staff to discuss the necessary modifications.

00913-6

3. Special Condition 27 - The attached "Notice of Intent to Commence Work" must be submitted to the DEC for each Contract Reach (1-4) at the start of work and upon any resumption of work after more than six months of inactivity. At the completion of the work allowed by this permit the attached "Notice of Completion of Work" is to be submitted..

Should you have any questions, please feel free to contact Kathryn D. McGuckin at the above address and phone.

Sincerely,

John F. Cryan

John F. Cryan
Regional Permit Administrator

Attachments:
Notice of Intent to Commence Work
Notice of Completion of Work

CC: S. Zahn, DEC Region 2 Marine Resources
K.D. McGuckin, DEC Region 2 Environmental Permits
DEC Region 2 Division of Law Enforcement

00903-7

# NOTICE OF INTENT TO COMMENCE WORK

Date: ____________________________

New York State
Department of Environmental Conservation
Division of Environmental Permits
47-40 21st Street
Long Island City, NY 11101
Attn: Kathryn D. McGuckin Fax: 718-482-4975

Re: DEC Permit No. 2-6499-00001/00002

Dear Ms. McGuckin:

I hereby serve notice to commence/recommence work on the Contract Reach ____ of the referenced project on or about ________________________, 200__ .

This is also to certify that having read the permit, in entirety, I am fully aware of and understand the general and special conditions and agree to comply in all respects to those requirements. I further understand that prior to undertaking any modification to the authorized project, I must seek and receive approval of the Regional Permit Administrator.

Very truly yours,

| | |
|---|---|
| ______________________________ | ______________________________ |
| Signature of the Permittee | Signature of the Contractor (if any) |
| ______________________________ | ______________________________ |
| Permittee's Name (Printed) | Contractor's Name (Printed) |
| Permittee's Address: ____________________ | Contractor's Address: ____________________ |
| ______________________________ | ______________________________ |
| ______________________________ | ______________________________ |
| Telephone # ____________________ | Telephone # ____________________ |

## NOTICE

***The permittee and his contractor (if any) are required to follow all permit conditions. Violations of the permit may lead to legal action, including the imposition of substantial monetary fines and corrective work.***

00903-8

# NOTICE OF COMPLETION OF WORK

Date: ______________________

New York State
Department of Environmental Conservation
Division of Environmental Permits
47-40 21st Street
Long Island City, NY 11101
Attn: Kathryn D. McGuckin FAX: 718-482-4975

Re: DEC Permit No. 2-6499-00001/00002

Dear Ms. McGuckin:

I hereby serve notice that all work allowed by the above referenced permit has been completed as of ______________________, 200__ .

Very truly yours,

______________________
Signature of the Permittee

______________________
Permittee's Name (Printed)

Permittee's Address: ______________________
______________________
______________________

Telephone # ______________________

______________________
Signature of the Contractor (if any)

______________________
Contractor's Name (Printed)

Contractor's Address: ______________________
______________________
______________________

Telephone # ______________________

00903-9

**New York State Department of Environmental Conservation**
**Division of Environmental Permits, Region 2**
47-40 21ST Street, Long Island City, NY 11101-5407
**Phone:** (718) 482-4997 • **FAX:** (718) 482-4975
**Website:** www.dec.state.ny.us

Environmental Conservation 30 YEARS
Erin M. Crotty
Commissioner

Mike Millard, Project Manager
Mark F. Lulka, Project Planner
US Army Corps of Engineers, Planning Division
26 Federal Plaza
New York, NY 10278-0090

April 20, 2001

Re: DEC Permit No. 2-6499-00001/00002
USACOE -- Arthur Kill - Howland Hook 40'/41' Deepening Project
6 NYCRR Part 608 Water Quality Certification
NOTICE OF PERMIT ISSUANCE

Dear Messrs. Millard and Lulka:

Enclosed is your permit for the Arthur Kill - Howland Hook 40'/41' Deepening Project. Please read all conditions carefully and be sure to notify DEC promptly if you change any of the project plans. Please also provide copies of this permit to all employees, contractors and agents performing any part of the permitted work.

This water quality certificate and its conditions were a result of a concerted effort by all involved parties to protect natural resources while allowing for timely completion of the project. Please make this document available to all bidders in color so there is no confusion about the locations of areas with restricted dredging windows. Please notify DEC of all pre-construction meetings, as Department staff would like to attend. Also, please insure that the copy of this permit kept at the site is a color copy; extra color copies have been enclosed for this purpose.

The corps mentioned in meetings on April 3rd and 6th that there is a "no float" in Contract Area 1A and that a one-week slip in the start date or execution of Contract Area 1A will increase the schedule by five months. At this time, based on the information at hand, the Department does not foresee the possibility of further adjustments to the dredging windows. Therefore, the Department requests the Corps to prepare contingency plans for completing the work in Contract Area 1A should the start date or execution of Contract Area 1A be delayed.

Please note that Special Condition No. 27 requires the Department to be notified in writing of the start of work, any resumption of work after more than six months of inactivity, and upon completion of work for each contract reach (Nos. 1 through 4).

If you have any questions, please contact Kathryn D. McGuckin at the above address, or by telephone at (718) 482-4078.

Very truly yours,

John F. Cryan

John F. Cryan
Regional Permit Administrator

cc: Capt. T. Revella
S. Zahn

A:\PermitLttr.wpd

00903-10

G005843

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

| DEC PERMIT NUMBER | EFFECTIVE DATE |
|---|---|
| 2-6499-00001/00002 | April 20, 2001 |
| **FACILITY/PROGRAM NUMBER(S)** | **EXPIRATION DATE(S)** |
| USACE Arthur Kill 40'/41' Deepening | April 20, 2006 |

# PERMIT

Under the Environmental Conservation Law (ECL)

TYPE OF PERMIT ■ New ☐ Renewal ☐ Modification ☐ Permit to Construct ☐ Permit to Operate

- ☐ Article 15, Title 5: Protection of Waters
- ☐ Article 15, Title 15: Water Supply
- ☐ Article 15, Title 15: Water Transport
- ☐ Article 15, Title 15: Long Island Wells
- ■ 6NYCRR 608: Water Quality Certification
- ☐ Article 17, Titles 7, 8: SPDES
- ☐ Article 19: Air Pollution Control
- ☐ Article 24: Freshwater Wetlands
- ☐ Article 25: Tidal Wetlands
- ☐ Article 27, Title 7; 6NYCRR 360: Solid Waste Management
- ☐ Article 27, Title 9; 6NYCRR 373: Hazardous Waste Management
- ☐ Article 34: Coastal Erosion Management
- ☐ Article 36: Floodplain Management

| PERMIT ISSUED TO | TELEPHONE NUMBER |
|---|---|
| US ARMY CORPS OF ENGINEERS | (718) 760-6617 |
| **ADDRESS OF PERMITTEE** | |
| JACOB K. JAVITS FEDERAL BUILDING, NEW YORK, NY 10278-0090 | |
| **CONTACT PERSON FOR PERMITTED WORK** | **TELEPHONE NUMBER** |
| MIKE MILLARD - PROJECT MANAGER OR<br>MARK F. LULKA - PROJECT PLANNER | (212) 264-2054<br>(212) 264-5818 |
| **NAME AND ADDRESS OF PROJECT/FACILITY** | |
| ARTHUR KILL HOWLAND HOOK MARINE TERMINAL 41'/40' DEEPENING | |
| **LOCATION OF PROJECT/FACILITY** | |
| NORTH AND WEST SHORE OF STATEN ISLAND FROM THE CONFLUENCE WITH THE KILL VAN KULL TO THE TOSCO REFINERY. | |

| COUNTY | CITY | WATERCOURSE | NYTM COORDINATES |
|---|---|---|---|
| RICHMOND | NEW YORK CITY | ARTHUR KILL | E 567.0 N 4492.0 |

**DESCRIPTION OF AUTHORIZED ACTIVITY:** Deepening and navigational improvements to the Arthur Kill/Howland Hook Channel - from 35 feet to 40 feet from GATX to Howland Hook Terminal; and, from 35 feet to 41 feet between Howland Hook and the confluence with the Kill Van Kull. Approximately 3.25 million cubic yards of sediment, rock and clay must be removed by dredging and blasting.

By acceptance of this permit, the Permittee agrees that the permit is contingent upon strict compliance with the ECL, all applicable regulations, the General Conditions specified (see page 2) and any Special Conditions included as part of this permit.

| REGIONAL PERMIT ADMINISTRATOR: | ADDRESS | |
|---|---|---|
| John F. Cryan | 47-40 21 Street<br>Long Island City, NY 11101 | |
| **AUTHORIZED SIGNATURE** | **DATE** | |
| John F. Cryan | April 20, 2001 | Page 1 of 6 |

00903-11

G005844

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## NOTIFICATION OF OTHER PERMITTEE OBLIGATIONS

**Item A: Permittee Accepts Legal Responsibility and Agrees to Indemnification**
The permittee has accepted expressly, by the execution of the application, the full legal responsibility for all damages and costs, direct or indirect, of whatever nature and by whomever suffered, for liability it incurs resulting from activity conducted pursuant to this permit or in noncompliance with this permit and has agreed to indemnify and save harmless the State from suits, actions, damages and costs of every name and description resulting from such activity.

**Item B: Permittee to Require it's Contractors to Comply with Permit**
The permittee shall require its independent contractors, employees, agents and assigns to read, understand and comply with this permit, including all special conditions, and such persons shall be subject to the same sanctions for violations of this permit as those prescribed for the permittee.

**Item C: Permittee Responsible for Obtaining Other Required Permits**
The permittee is responsible for obtaining any other permits, approvals, lands, easements and rights-of-way that may be required for this project.

**Item D: No Right to Trespass or Interfere with Riparian Rights**
This permit does not convey to the permittee any right to trespass upon the lands or interfere with the riparian rights of others in order to perform the permitted work nor does it authorize the impairment of any rights, title, or interest in real or personal property held or vested in a person not a party to the permit.

## GENERAL CONDITIONS

**General Condition 1: Facility Inspection by the Department**

The permitted site or facility, including relevant records, is subject to inspection at reasonable hours and intervals by an authorized representative of the Department of Environmental Conservation (the Department) to determine whether the permittee is complying with this permit and the ECL. Such representative may order the work suspended pursuant to ECL 71-0301 and SAPA 401(3).

The permittee shall provide a person to accompany the Department's representative during an inspection to the permit area when written or verbal notification is provided by the Department at least 24 hours prior to such inspection.

A copy of this permit, including all referenced maps, drawings and special conditions, must be available for inspection by the Department at all times at the project site. Failure to produce a copy of the permit upon request by a Department representative is a violation of this permit.

**General Condition 2: Relationship of this Permit to Other Department Orders and Determinations**
Unless expressly provided for by the Department, issuance of this permit does not modify, supersede or rescind any order or determination previously issued by the Department or any of the terms, conditions or requirements contained in such order or determination.

**General Condition 3: Request for Permit Renewals or Modifications**
The permittee must submit a separate written request to the Department for renewal, modification or transfer of this permit. Such request must include any forms or supplemental information the Department requires. Any renewal, modification or transfer granted by the Department must be in writing.
The permittee must submit a renewal request at least:

a) 180 days before expiration of permits for State Pollutant Discharge Elimination System (SPDES), Hazardous Waste Management Facilities (HWMF), major Air Pollution Control (APC) and Solid Waste Management Facilities (SWMF); and
b) 30 days before expiration of all other permit types.

Request for permit renewal or modification are to be submitted to:
NYSDEC, Regional Permit Administrator, Region 2
47-40 21ST Street, Long Island City, NY 11101

**General Condition 4: Permit Modifications, Suspensions and Revocations by the Department**
The Department reserves the right to modify, suspend or revoke this permit when:

a) the scope of the permitted activity is exceeded or a violation of any condition of the permit or provisions of the ECL and pertinent regulations is found;
b) the permit was obtained by misrepresentation or failure to disclose relevant facts;
c) new material information is discovered; or
d) environmental conditions, relevant technology, or applicable law or regulation have materially changed since the permit was issued.

| DEC PERMIT NUMBER | PROGRAM/FACILITY NUMBER | |
|---|---|---|
| 2-6499-00001/00002 | USACE Arthur Kill 40'/41' Deepening | PAGE 2 OF 6 |

00903-12

G005845

G01010 05821