
Kill Van Kull
Sepentinite Area No. 1
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set5502
Date: April '97
Spread: 0502
TIME (MILLISECONDS)
ELEVATION (ft)
VELOCITY (ft/SEC) x 1000
DISTANCE (ft)

00902-111


Kill Van Kull
Serpentinite Area No. 2
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set5503
Date: April '97
Spread: 0503
DISTANCE (ft)
TIME (MILLISECONDS)
ELEVATION (ft)
VELOCITY (ft/SEC) x 1000

00902-112


Kill Van Kull
Serpentinite Area No. 2
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set5504
Date: April '97
Spread: 0504
DISTANCE (ft)
ELEVATION (ft)
TIME (MILLISECONDS)
VELOCITY (ft/SEC) x 1000

00902-113


Kill Van Kull
Serpentinite Area No. 3
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set6601
Date: April '97
Spread: 0501
DISTANCE (ft)
TIME (MILLISECONDS)
ELEVATION (ft)
VELOCITY (ft/SEC) x 1000

00902-114


Kill Van Kull
Serpentinite Area No. 3
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set5602
Date: April '97
Spread: 0602
DISTANCE (ft)
TIME (MILLISECONDS)
ELEVATION (ft)
VELOCITY (ft/SEC) x 1000

00902-115




00902-116

G003154


Kill Van Kull
Serpentinite Area No. 3
Seismic Refraction
for: Project No. R95555
by: Woodward Clyde
Data Set6604
Date: April '97
Spread: 0604
DISTANCE (ft)
TIME (MILLISECONDS)
ELEVATION (ft)
VELOCITY (ft/SEC) x 1000

00902-117

Blank Page

00902-118

# Appendix C

00902- 119

Blank Page

00902-120

04 4/97 11:?3 CENAN-EN-MM → 2126264120 NO.837 P13

REEF MATERIAL REPORT LOG
equired by New Jersey Marine Fisheries Admin. stration

E 4/24/97 TUG D.C. LYNN COMPANY G.L.D.&D.
A. AL Dre ge Rock QTY 1500 CU. YDS.

TRUCTIONS: 1. All material must be dropped inside reef boundaries.
2. Follow route shown in red on chart.
3. Begin drop at circle.
4. Continue following loop route until drop is completed.
5. Complete required information and mail report log.

LORAN C COORDINATES:
START OF DROP: 26944 X 43650 Y
END OF DROP: 26944 X 43653 Y

Attach copy of EPS log.

CAPTAIN'S SIGNATURE [signature]




For information contact:
Bill Figley
60 -748-2020

Chart of Reef site on reverse side

00902-121

G003159

04/14/97 11:17 CENAN-EN-MM → 2125264120 NO.837 P11

# REEF MATERIAL REPORT LOG

Required by New Jersey Marine Fisheries Administration

DATE 4/25/97 TUG DcLYNN COMPANY GLD.

MATERIAL Dredge Rock QTY ________ CU. YDS.

Return to Bill Moore

INSTRUCTIONS:
1. All material must be dropped inside reef boundaries.
2. Follow route shown in red on chart.
3. Begin drop at circle.
4. Continue following loop route until drop is completed.
5. Complete required information and mail report log.

LORAN C COORDINATES:
START OF DROP: 26945 X 43650 Y
END OF DROP: 26932 X 43653 Y

Attach copy of EPS log.

CAPTAIN'S SIGNATURE Robert P [illegible]




26944
43650

SANDY HOOK REEF

0 1/4 1/2
Nautical Miles

information.
Contact:
Figley
748-2020

Chart of Reef site on reverse side

00902-122

G003160

# Page 00902-123

# Intentionally Left Blank

# SANDY HOOK REEF

*"The reef that Jackson built"*

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

____________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

<u>MAKE COPY FOR YOUR RECORDS</u>












00402-124

G003162

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

______________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-B/25

G003163

# SANDY HOOK REEF

*"The reef that Jackson built"*

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

_____________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

_______________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**












00902 - # 126

MAKE COPY FOR YOUR RECORDS

G003164

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

_____________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

______________________




Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902 - # 127

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

_____________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

______________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**




00902-@ 128

MAKE COPY FOR YOUR RECORDS

G003166

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG

**N.Y. HARBOR DEEPENING PROJECT**

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.












Targeted location (GPS)

__________ __________

Deployment date

____________

Deployment Location "GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME + WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902-V129

G003167

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location"GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-# 130

G003168

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-031

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS




00902-[illegible] 132

G003170

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-133

G003171

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

________ ________

Deployment date

________

Deployment Location"GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

BILL FIGLEY
N.J. DIVISION FISH,GAME+WILDLIFE
PO BOX 418
PORT REPUBLIC N.J. 08241

MAKE COPY FOR YOUR RECORDS












00902 -134

G003172

# SANDY HOOK REEF

*"The reef that Jackson built"*

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-135

# SANDY HOOK REEF

*"The reef that Jackson built"*

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.












Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location"GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902-[illegible] 136

G003174

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.









Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location "GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902-#5/37

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.












Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location"GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902- 138

G003176

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.









Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location"GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902-#139

G003177

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

__________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

BILL FIGLEY
N.J. DIVISION FISH, GAME+WILDLIFE
PO BOX 418
PORT REPUBLIC N.J. 08241

MAKE COPY FOR YOUR RECORDS












00902-[illegible]140

G003178

# SANDY HOOK REEF

*"The reef that Jackson built"*

**ROCK DEPLOYMENT LOG**
**N.Y. HARBOR DEEPENING PROJECT**

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location"GPS"

________ ________

Tug Captain's signature

__________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH,GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**









0 1/4 1/2
NAUTICAL MILES

<u>MAKE COPY FOR YOUR RECORDS</u>

00902-141

G003179

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG
### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.












Targeted location (GPS)

__________ __________

Deployment date

__________

Deployment Location"GPS"

__________ __________

Tug Captain's signature

____________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS

00902-~~20~~ 142

G003180

# SANDY HOOK REEF

"The reef that Jackson built"

## ROCK DEPLOYMENT LOG

### N.Y. HARBOR DEEPENING PROJECT

A LOG FORM MUST BE COMPLETED FOR EACH ROCK DEPLOYMENT ON THE SANDY HOOK REEF.

Targeted location (GPS)

________ ________

Deployment date

__________

Deployment Location "GPS"

________ ________

Tug Captain's signature

________________

Attach copy of "black box" cruise plot as proof of deployment location to this form and mail to:

**BILL FIGLEY**
**N.J. DIVISION FISH, GAME+WILDLIFE**
**PO BOX 418**
**PORT REPUBLIC N.J. 08241**

MAKE COPY FOR YOUR RECORDS












00902-03 143

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

| DEC PERMIT NUMBER<br>2-6499-00002/00004 | PERMIT<br>Under the Environmental Conservation Law (ECL) | EFFECTIVE DATE<br>January 11, 1999 |
|---|---|---|
| FACILITY/PROGRAM NUMBER(S) | | EXPIRATION DATE(S)<br>September 30, 2003 |

TYPE OF PERMIT ☐ New ☐ Renewal ■ Modification ☐ Permit to Construct ☐ Permit to Operate

- ☐ Article 15, Title 5: Protection of Waters
- ☐ Article 15, Title 15: Water Supply
- ☐ Article 15, Title 15: Water Transport
- ☐ Article 15, Title 15: Long Island Wells
- x 6NYCRR 608: Water Quality Certification
- ☐ Article 17, Titles 7, 8: SPDES
- ☐ Article 19: Air Pollution Control
- ☐ Article 24: Freshwater Wetlands
- ☐ Article 25: Tidal Wetlands
- ☐ Article 27, Title 7; 6NYCRR 360: Solid Waste Management
- ☐ Article 27, Title 9; 6NYCRR 373: Hazardous Waste Management
- ☐ Article 34: Coastal Erosion Management
- ☐ Article 36: Floodplain Management

| PERMIT ISSUED TO | | | TELEPHONE NUMBER |
|---|---|---|---|
| UNITED STATES DEPARTMENT OF THE ARMY, NEW YORK DISTRICT, CORPS OF ENGINEERS | | | |
| ADDRESS OF PERMITTEE<br>JACOB J. JAVITS FEDERAL BUILDING, NEW YORK, NY 10278-0090 | | | |
| CONTACT PERSON FOR PERMITTED WORK<br>JOHN HARTMANN, CHIEF, OPERATIONS DIVISION | | | TELEPHONE NUMBER<br>212/264-0199 |
| NAME AND ADDRESS OF PROJECT/FACILITY<br>KILL VAN KULL CHANNEL PHASE II DEEPENING | | | |
| LOCATION OF PROJECT/FACILITY<br>KILL VAN KULL CHANNEL BETWEEN UPPER BAY AND NEWARK BAY. | | | |
| COUNTY<br>RICHMOND | CITY<br>NEW YORK CITY | WATERCOURSE<br>KILL VAN KULL CHANNEL | NYTM COORDINATES |

## DESCRIPTION OF AUTHORIZED ACTIVITY

DREDGING AND BLASTING OF APPROXIMATELY 10.7 MILLION CUBIC YARDS OF BOTTOM SEDIMENT AND ROCK FROM THE KILL VAN KULL CHANNEL TO A DEPTH OF 47 FEET IN BEDROCK AND 45 FEET IN SOFT SUBSTRATES IN THE KILL VAN KULL CHANNEL BETWEEN UPPER BAY (NY) AND NEWARK BAY (NJ). DREDGED MATERIAL SUITABLE FOR OCEAN DISPOSAL WILL BE DISPOSED AS COVER MATERIAL AT THE FORMER ATLANTIC OCEAN MUD DUMP SITE ( HISTORIC AREA REMEDIATION SITE, HARS). BEDROCK MATERIAL WILL BE USED FOR CREATION OR ENHANCEMENT OF ARTIFICIAL REEFS SITES IN NEW YORK AND NEW JERSEY. DREDGED MATERIAL UNSUITABLE FOR DISPOSAL AT THE FORMER MUD DUMP SITE OR FOR USE AS REEFS WILL BE DEPOSITED AT THE NEWARK BAY CONFINED DISPOSAL FACILITY OR AT PERMITTED UPLAND SITES IN NEW JERSEY AS NEEDED.

By acceptance of this permit, the Permittee agrees that the permit is contingent upon strict compliance with the ECL, all applicable regulations, the General Conditions specified (see page 2) and any Special Conditions included as part of this permit.

| REGIONAL PERMIT ADMINISTRATOR:<br>John J. Ferguson | ADDRESS<br>47-40 21 Street<br>Long Island City, NY 11101 | |
|---|---|---|
| AUTHORIZED SIGNATURE<br>John J. Cryan | DATE<br>11 January 1999 | Page 1 of 4 |

//DEPUTY REGIONAL PERMIT ADMINISTRATOR

00903-1

G003182

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## NOTIFICATION OF OTHER PERMITTEE OBLIGATIONS

**Item A: Permittee Accepts Legal Responsibility and Agrees to Indemnification**
The permittee has accepted expressly, by the execution of the application, the full legal responsibility for all damages and costs, direct or indirect, of whatever nature and by whomever suffered, for liability it incurs resulting from activity conducted pursuant to this permit or in noncompliance with this permit and has agreed to indemnify and save harmless the State from suits, actions, damages and costs of every name and description resulting from such activity.

**Item B: Permittee to Require it's Contractors to Comply with Permit**
The permittee shall require its independent contractors, employees, agents and assigns to read, understand and comply with this permit, including all special conditions, and such persons shall be subject to the same sanctions for violations of this permit as those prescribed for the permittee.

**Item C: Permittee Responsible for Obtaining Other Required Permits**
The permittee is responsible for obtaining any other permits, approvals, lands, easements and rights-of-way that may be required for this project.

**Item D: No Right to Trespass or Interfere with Riparian Rights**
This permit does not convey to the permittee any right to trespass upon the lands or interfere with the riparian rights of others in order to perform the permitted work nor does it authorize the impairment of any rights, title, or interest in real or personal property held or vested in a person not a party to the permit.

## GENERAL CONDITIONS

**General Condition 1: Facility Inspection by the Department**
The permitted site or facility, including relevant records, is subject to inspection at reasonable hours and intervals by an authorized representative of the Department of Environmental Conservation (the Department) to determine whether the permittee is complying with this permit and the ECL. Such representative may order the work suspended pursuant to ECL 71-0301 and SAPA 401(3).
The permittee shall provide a person to accompany the Department's representative during an inspection to the permit area when written or verbal notification is provided by the Department at least 24 hours prior to such inspection.
A copy of this permit, including all referenced maps, drawings and special conditions, must be available for inspection by the Department at all times at the project site. Failure to produce a copy of the permit upon request by a Department representative is a violation of this permit.

**General Condition 2: Relationship of this Permit to Other Department Orders and Determinations**
Unless expressly provided for by the Department, issuance of this permit does not modify, supersede or rescind any order or determination previously issued by the Department or any of the terms, conditions or requirements contained in such order or determination.

**General Condition 3: Applications for Permit Renewals or Modifications**
The permittee must submit a separate written application to the Department for renewal, modification or transfer of this permit. Such application must include any forms or supplemental information the Department requires. Any renewal, modification or transfer granted by the Department must be in writing.
The permittee must submit a renewal application at least:

a) 180 days before expiration of permits for State Pollutant Discharge Elimination System (SPDES), Hazardous Waste Management Facilities (HWMF), major Air Pollution Control (APC) and Solid Waste Management Facilities (SWMF); and
b) 30 days before expiration of all other permit types.

Applications for permit renewal or modification are to be submitted to:
NYSDEC, Regional Permit Administrator, Region 2
47-40 21ST Street, Long Island City, NY 11101

**General Condition 4: Permit Modifications, Suspensions and Revocations by the Department**
The Department reserves the right to modify, suspend or revoke this permit when:

a) the scope of the permitted activity is exceeded or a violation of any condition of the permit or provisions of the ECL and pertinent regulations is found;
b) the permit was obtained by misrepresentation or failure to disclose relevant facts;
c) new material information is discovered; or
d) environmental conditions, relevant technology, or applicable law or regulation have materially changed since the permit was issued.

| PERMIT NUMBER 2-6499-00002/00004 | KILL VAN KULL CHANNEL | PAGE 2 OF 4 |
|---|---|---|

00903-2

5. That if future operations by the State of New York require an alteration in the position of the structure or work herein authorized, or if, in the opinion of the Department of Environmental Conservation it shall cause unreasonable obstruction to the free navigation of said waters or flood flows or endanger the health, safety or welfare of the people of the State, or cause loss or destruction of the natural resources of the State, the owner may be ordered by the Department to remove or alter the structural work, obstructions, or hazards caused thereby without expense to the State, and if, upon the expiration or revocation of this permit, the structure, fill, excavation, or other modification of the watercourse hereby authorized shall not be completed, the owners, shall, without expense to the State, and to such extent and in such time and manner as the Department of Environmental Conservation may require, remove all or any portion of the uncompleted structure or fill and restore to its former condition the navigable and flood capacity of the watercourse. No claim shall be made against the State of New York on account of any such removal or alteration.

6. That the State of New York shall in no case be liable for any damage or injury to the structure or work herein authorized which may be caused by or result from future operations undertaken by the State for the conservation or improvement of navigation, or for other purposes, and no claim or right to compensation shall accrue from any such damage.

7. Granting of this permit does not relieve the applicant of the responsibility of obtaining any other permission, or approval from the U.S.Army Corps of Engineers, U.S. Coast Guard, New York State Office of General Services, or local government which may be required.

8. All necessary precautions shall be taken to preclude contamination of any wetland or waterway by suspended solids, sediments, fuels, solvents, lubricants, epoxy coatings, paints, concrete, leachate, or any other environmentally deleterious materials associated with the project

9. Any material dredged in the prosecution of the work herein permitted shall be removed evenly, without leaving large refuse piles, ridges across the bed of a waterway or floodplain or deep holes that may have a tendency to cause damage to navigable channels or to the banks of a waterway.

10. There shall be no unreasonable interference with navigation by the work herein authorized.

11. If upon the expiration or revocation of this permit, the project hereby authorized has not been completed, the applicant shall, without expense to the State, and to such extent and in such time and manner as the Department of Environmental Conservation may require, remove all or any portion of the uncompleted structure or fill and restore the site to its former condition. No claim shall be made against the State of New York on account of any such removal or alteration.

12. If granted under Article 36, this permit does not signify in any way that the project will be free from flooding.

13. If granted under 6 NYCRR Part 608, the NYS Department of Environmental Conservation hereby certifies that the subject project will not contravene effluent limitations or other limitations or standards under Sections 301, 302, 303, 306, and 307 of the Clean Water Act of 1977 (PL 95-217) provided that all of the conditions listed herein are met.

## SPECIAL CONDITIONS

14. All work shall comply with project plans as described in the technical supporting documentation for the project and the July 7, 1998 (and attachment dated July 8, 1998) from Frank Santomauro (USACE) to John Ferguson (NYSDEC) addressing Kill Van Kull Water Quality Certification issues.

15. The Corps shall submit quarterly reports on the results of the biological and water quality monitoring programs. Data shall be submitted to Stephen Zahn, Marine Resources, NYSDEC, 47-40 21st street; Long Island City, NY 11101.

Pre-Dredging

16. At least thirty (30) days prior to the start of work, the Corps shall submit a plan for DEC approval describing the method of dewatering dredged material or otherwise handling water associated with dredged material that does not meet Category 1 criteria such that the Total Suspended Solids (TSS) do not exceed 200 mg/L when returned to New York waters. DEC will respond within thirty (30) days of the receipt of the plan.

17. At least thirty (30) days prior to the beginning of dredging in any contract phase, the Corps shall submit the bulk sediment chemistry results for the project site as indicated in the April 24, 1998 letter from Santomauro (USACE) to Ferguson (NYSDEC). The submittal shall include a sample site plan as well as a narrative on the sampling methods utilized.

18. At least thirty (30) days prior to the start of work, the Corps shall provide the bathymetric survey of the project area as indicated in the April 24, 1998 letter from Santomauro (USACE) to Ferguson (NYSDEC).

19. The Corps shall perform dredging site inspections at 72 hour intervals when dredging material that does not meet Category 1 criteria to determine:
   a. Dredging bucket is sealed during operations.
   b. Hoist speed does not exceed 2 feet/second
   c. TSS from barge dewatering does not exceed 200 mg/Liter.

These parameters are to be monitored daily by the contractor and noted in the QA/QC reports. Copies of said reports shall be submitted to Steven Zahn, DEC Marine Resources, with a copy of the Corps Inspection Reports on a weekly basis.

Dredging Windows

20. Dredging and blasting is prohibited during the period of March 1 - August 31 in an area within 1000 feet from the shoreline of Shooters Island.

21. Dredging is prohibited during the period of November 15 - May 31 in any portion of Contract Reach 3 determined through biological monitoring to harbor significant (as determined by NYSDEC in consultation with NMFS and the Corps) populations of Blue-claw crab or Winter flounder. Biological monitoring will be carried out as described in the June 1, 1998 letter (with attachment) and the July 7, 1998 letter (with attachment from Santomauro (USACE) to Ferguson (NYSDEC).

| DEC PERMIT NUMBER | PROGRAM/FACILITY NUMBER | |
|---|---|---|
| 2-6499-00002/00004 | KILL VAN KULL PHASE II CHANNEL DEEPENING | Page 3 of 4 |

00903-3

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION

## SPECIAL CONDITIONS

DREDGING (Cont.)

Bucket

22. Dredging of material that does not meet Category 1 criteria, excluding rock and clay, shall be conducted with a sealed, watertight bucket according to the Best Management Practices described in the Corps' July 7, 1998 letter. The bucket shall be monitored continuously during dredging to ensure a tight seal is maintained. If frequent or excessive loss of dredged material from the bucket is observed, the Corps shall halt dredging operations and closely inspect the bucket for defects. Dredging operations shall be delayed until all necessary repairs are made.

23. Bucket hoist speed shall be limited to 2 ft/s while dredging material that does not meet Category 1 criteria.

24. The bucket shall be lowered to the level of the barge gunwales prior to release of the bucket load.

Barge Overflow and De-watering

25. Barge overflow is prohibited while handling material that does not meet Category 1 criteria. Total Suspended Solids in barge de-watering effluent returned to New York waters shall not exceed 200 mg/L while handling material that does not meet Category 1 criteria.

In-Water Management of Dredged Material

26. Dredge material that does not meet Category 1 criteria will be disposed at the Newark Bay Confined Disposal Facility. The Corps shall inform the Department at least 30 days prior of any plans for alternative disposal sites.

27. Disposal of rock for artificial reef enhancement or creation in New York shall be done in consultation with Stephen Heins, Finfish and Crustaceans, NYSDEC, 205 N. Belle Meade Road, East Setauket, NY 11733.

Upland Management of Dredged Material

28. At least 30 days prior to the use of any upland management site(s) for dredged material disposal, the Corps shall identify the site(s) and submit a copy of any contract or letter of agreement showing that the dredged material may be managed under the jurisdiction of the receiving state.

29. Additional analysis of dredged material may be required if, in the Department's opinion, the initial bulk sediment chemistry (see # 17) is inadequate to support the permittee's determination that the dredged material is non-hazardous pursuant to federal or NY State (6NYCRR371) regulations. The permittee may archive the initial samples, consistent with appropriate laboratory procedures, in lieu of resampling.

Post - Dredging

30. A bathymetric survey of each completed project phase shall be submitted to the Department in triplicate within sixty (60) days of completion.

Additional Special Condition

31. Item A and General Condition 6 are included by the State of New York as the permit issuing authority under the Clean Water Act. Such conditions do not, nor are they intended to, apply to, abrogate, or annul any obligation, responsibility or liability on the part of the Port Authority of New York and New Jersey to the Federal Government under the terms of a Project Cooperation Agreement (PCA) entered into by those two agencies for the Kill Van Kull and Newark Bay Channels, New York and New Jersey Project. Pursuant to that PCA, the Port Authority of New York and New Jersey remains legally responsible to hold and save the Federal Government free from all damages arising from the construction, operation, and maintenance of the Project and the local service facilities, and if the Port Authority requests such, for any Project-related betterments, including liabilities arising from Item A and General Condition 6, except for damages due to the fault or negligence of the Federal Government or its contractors. No provision of this permit shall be deemed to supercede applicable federal law with regard to appropriation of funds or liability for damages caused by the Army Corps or its agents or other representatives.

00903-4

| DEC PERMIT NUMBER | Kill Van Kull Channel Deepening Phase II | PAGE 4 OF 4 |
|---|---|---|
| 2-6499-00002/00004 | | |

*Your coast, your future*

**NYS Waterfronts**

George E. Pataki
*Governor*

Alexander F. Treadwell
*Secretary of State*

January 28, 1998

John Sassi, P.E.
Chief, Planning Division
U.S. Army Corps of Engineers
New York District
26 Federal Plaza
New York, NY 10278-0090

Re: F-97-157
COE/NY - Phase II Deepening of Kill Van Kull & Newark Bay Channels, New York & New Jersey

Dear Mr. Sassi:

The Department of State has completed its review of the U.S. Army Corps of Engineers consistency determination with respect to the New York State Coastal Management Program, together with supporting documentation, for the proposed Phase II Deepening of Kill Van Kull and Newark Bay Channels in New York and New Jersey.

Based upon the project information submitted, the Department of State agrees with the U.S. Army Corps of Engineers consistency determination for this activity.

Thank you for your cooperation in this matter.

Sincerely,

William F. Barton for

George R. Stafford
Director

GRS:VAB:dlb

00903-5

NYS DEPARTMENT OF STATE
*Division of Coastal Resources and Waterfront Revitalization*
*Albany, NY 12231-0001*
*Voice: (518) 474-6000 Fax: (518) 473-2464*

# SECTION 01130

# ENVIRONMENTAL PROTECTION

## PART 1 GENERAL

### 1.1 SCOPE

This section covers the furnishing of all labor, material and equipment as performing all work required for the protection of the environment during construction operations except for those measures set forth in other Technical Provisions of these specifications.

### 1.2 REFERENCE

"Standard Methods for the Examination of Water, Sewage, and Industrial Wastes, Eighteenth Edition, 1992, published by American Public Health Association, 1015 Eighteenth Street, N.W., Washington, D.C. 20036".

### 1.3 GENERAL

For purpose of this specification, environmental protection is defined as the retention of the environment in its natural state to the greatest possible extent during project construction and to enhance the natural appearance in its final condition. Environment protection requires consideration of air, water, and land, and involves management of noise and solid waste, as well as other pollutants. In order to prevent, and to provide for abatement and control of, any environmental pollution arising from the construction activities in the performance of this contract, the Contractor and his subcontractors shall comply with all applicable Federal, State and local laws and regulations concerning environmental pollution control and abatement.

### 1.4 NOTIFICATION

The Contracting Officer will notify the Contractor in writing of any non-compliance with the aforementioned Federal, state, or local laws or regulations. Such notice, when delivered to the Contractor or his authorized representative at the site of the work, shall be deemed sufficient for the purpose. The Contractor shall, after receipt of such notice, immediately inform the Contracting Officer of proposed corrective action and take such action as may be approved. If the Contractor fails or refuses to comply promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. No part of the time lost due to any such stop orders shall be made the subject of a claim for extension of time or for excess costs of damages by the Contractor.

### 1.5 SUBCONTRACTOR

Compliance with the provisions of this section by subcontractors will be responsiblity of the Contractor.

### 1.6 IMPLEMENTATION

Prior to commencement of the work the Contractor will:

a. Submit in writing his proposal for implementing this section for environment protection including a noise monitoring program to insure compliance with all Federal, State, and local noise ordinances.

b. Meet with representative of the Contracting Officer to develop mutual understandings relative to compliance with this provision and administration of the environment protection program.

1.7 PROTECTION OF WATER RESOURCES

a. General. The Contractor shall not pollute the waters with trash, debris, fuels, oils, bituminous materials, calcium chloride, acids or other harmful materials. It is the responsibility of the Contractor to investigate and comply with all applicable Federal, state, county, and municipal laws concerning pollution of the water. All work under this contract shall be performed in such a manner that objectionable conditions will not be created in the waters through or adjacent to the project areas.

b. Spillage. At all times of the year, special measures shall be taken to prevent chemicals, fuels, oils, greases, bituminous materials, herbicides, and insecticides from entering the waters.

1.8 PROTECTION OF FISH AND WILDLIFE

The Contractor shall at all times perform all work and take such steps required to prevent any interference or disturbance to fish and wildlife. The Contractor will not be permitted to alter water flows or otherwise disturb native habitat adjacent to the project area which in the opinion of the Contracting Officer are critical to fish and wildlife. Fouling or polluting of water will not be permitted.

1.9 PROTECTION OF CULTURAL RESOURCES

Known archaeological and historic properties have been taken into account as required by Federal Laws. Should unanticipated archaeological materials be encountered during the course of any project activities, the Contractor shall cease work in the vicinity of the discovery. The Contractor shall immediately report the find to the Contracting Officer so that the proper authorities may be notified.

1.10 MEASUREMENT AND PAYMENT

a. Measurement. No separate measurement as such will be made for work performed under this section including a noise monitoring program to insure compliance with all Federal and State regulations, and local noise ordinances.

b. Payment. No separate payment will be made for the work covered under this section and all costs in connection therewith will be included in the applicable contract price to which the work pertains.

-- End of Section --

SECTION 01270

MEASURMENT AND PAYMENT

PART 1 GENERAL

1.1 LUMP SUM PAYMENT ITEMS

Payment items for the work of this contract for which contract lump sum Payments will be made are listed in the BIDDING SCHEDULE and described below. All costs for items of work, which are not specifically mentioned to be included in a particular lump sum or unit price payment item, shall be included in the listed lump sum item most closely associated with the work involved. The lump sum price and payment made for each item listed shall constitute full compensation for furnishing all plant, labor, materials, and equipment, and performing any associated Contractor quality control, environmental protection, meeting safety requirements, tests and reports, and for performing all work required for which separate payment is not otherwise provided.

1.1.1 Mobilization and Demobilization (Item No. 0001AA & 0001BA)

1.1.1.1 Payment

Payment will be made for costs associated with mobilization and demobilization, as defined in Contract Clause PAYMENT FOR MOBILIZATION AND DEMOBILIZATION.

1.1.1.2 Unit of Measure
Unit of measure: lump sum.

1.1.2 Field Office (Item No. 0001AG & 0001BE)

1.1.2.1 Payment

Payment will be made for costs associated with operations necessary for construction and removal of the temporary field office structure at designated area as requirements specified in Section 00800.

1.1.2.2 Unit of Measure
Unit of measure: lump sum.

1.1.3 Additional cost for Optional Insurance (Item No. 0002)

1.1.3.1 Payment

Payment will be made for costs associated with additional insurance premium provided by the contractor as requirements specified in Section 00800.

1.1.3.2 Unit of Measure

Unit of measure: lump sum.

1.2 UNIT PRICE PAYMENT ITEMS

Payment items for the work of this contract on which the contract unit price payments will be made are listed in the BIDDING SCHEDULE and described below. The unit price and payment made for each item listed

shall constitute full compensation for furnishing all plant, labor, materials, and equipment, and performing any associated Contractor quality control, environmental protection, meeting safety requirements, tests and reports, and for performing all work required for each of the unit price items.

1.2.1 Debris Removal and Disposal (Item No. 0001AB)

1.2.1.1 Payment

Payment will be made for costs associated with the collection, storage and handling, and the removal from the site and proper disposal of all debris recovered from the bottom and all floating debris. Bottom debris including cables, pilings, line, and all objects, which are unsuitable for placement in the HARS or upland disposal site or artificial reef site.

1.2.1.2 Unit of Measurement

Unit of measure: ton (2,000 lbs).

1.2.2 Dredging, Transportation, Delivery, Processing and Placement of Non-Rock Dredged Materials Unsuitable for Placement at the HARS, Excluding Dewatering: Item 0001AD (Placement at OENJ Cherokee Bayonne Landfill Remediation Site)(Item No. 0001AC); Dredging and Disposal of Non-Rock Materials Unsuitable for Placement at the HARS (Placement at NB CDF) (Item No. 0001BB)

1.2.2.1 Payment

Payment will be made for costs associated with dredging, including transportation and deposition of dredge material at designated disposal sites, processing, monitoring, and other incidental thereto, including hydrographic surveys.

1.2.2.2 Measurement

The total quantity of dredge material for which will be made will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post-dredge survey. Available material is defined as material located within the boundaries of the dredge prism "as shown on the drawings to include the required dredged depth of 47 ft below MLW and up to 1.5 ft allowable overdepth. Specifically, a quantity of available material will be computed between the dredge prism and the bottom surface shown by the soundings of the Government's pre-dredge survey, and a quantity of available material will be computed between the dredge prism and the bottom surface shown by the Government post-dredge survey. The difference between these two available quantities (pre-dredge and post-dredge) will constitute the quantity of material dredged. Misplaced materials (including any required removal and placement), excessive dredging, and materials falling or drawn into the cut from beyond the side slope plane or beyond the limits indicated, will be excluded from the quantities for which payment will be made. The Triangulated Irregular Network (TIN) method will be used for quantity determination.

1.2.2.3 Unit of Measure

Unit of measure: cubic yard.

1.2.3 Dewatering in Accordance with WQCs and OENJ Cherokee Specifications

for Upland Placement (0001AD)

1.2.3.1 Payment

Payment will be made for costs associated with dewatering, monitoring, and other incidental thereto, excluding transportation to berthing areas

1.2.3.2 Measurement

The total quantity of dewatering material for which will be made will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post-dredge survey. Available material is defined as material located within the boundaries of the dredge prism "as shown on the drawings to include the required dredged depth of 47 ft below MLW and up to 1.5 ft allowable overdepth. Specifically, a quantity of available material will be computed between the dredge prism and the bottom surface shown by the soundings of the Government's pre-dredge survey, and a quantity of available material will be computed between the dredge prism and the bottom surface shown by the Government post-dredge survey. The difference between these two available quantities (pre-dredge and post-dredge) will constitute the quantity of material dredged. Misplaced materials (including any required removal and placement), excessive dredging, and materials falling or drawn into the cut from beyond the side slope plane or beyond the limits indicated, will be excluded from the quantities for which payment will be made. The Triangulated Irregular Network (TIN) method will be used for quantity determination.

1.2.3.3 Unit of Measure

Unit of measure: cubic yard.

1.2.4 Dredging and Disposal of Non-Rock for Placement at the HARS and the Drilling, Blasting, Dredging, and Disposal of Rock Materials at the Artificial Reef (Item No. 0001AE and 0001BC)

1.2.4.1 Payment

Payment will be made for costs associated with dredging, including transportation and deposition of dredge material at the HARS, monitoring, and other incidental thereto, including hydrographic surveys.

1.2.4.2 Measurement

The total quantity of dredge material for which will be made will be by in-situ (quantity) measurement in cubic yards by computing the difference of available material between the pre-dredge survey and the post-dredge survey. Available material is defined as material located within the boundaries of the dredge prism "as shown on the drawings to include the required dredged depth of 47 ft below MLW and up to 1.5 ft allowable overdepth. Specifically, a quantity of available material will be computed between the dredge prism and the bottom surface shown by the soundings of the Government's pre-dredge survey, and a quantity of available material will be computed between the dredge prism and the bottom surface shown by the Government post-dredge survey. The difference between these two available quantities (pre-dredge and post-dredge) will constitute the quantity of material dredged. Misplaced materials (including any required removal and placement), excessive dredging, and materials falling or drawn into the cut from beyond the side slope plane or beyond the limits indicated, will be excluded from the quantities for which payment will be made. The Triangulated Irregular Network (TIN) method

will be used for quantity determination.

1.2.4.3 Unit of Measure

Unit of measure: cubic yard.

1.2.5 Subsurface drilling and sampling (Item No. 0001AF and 0001BD)

1.2.5.1 Payment

Payment will be made for costs associated with subsurface drilling and sampling for each drill holes performed, including mobilization and demobilization of all equipment necessary to perform the required drilling sampling, and coring to a depth of 55 feet below MLW. Mobilization and demobilization will include a drill rig of complete assembly and in working order as well as the transportation of samples and cores to the Caven Point Marine Terminal.

1.2.5.2 Measurement

Drilling for drive sample drill holes including soil sampling and rock core drilling (vertical) will be based upon the number of holes that were actually drilled by methods in accordance with the specifications. Measurements will be made from mean low water. Size of sampling shall be 1-3/8 inch diameter and size of rock core shall NX diameter core.

1.2.5.3 Unit of Measure

Unit of measure: each.

-- End of Section --

SECTION 01320

PROJECT SCHEDULE
NETWORK ANALYSIS SYSTEM
NYD Edition 7/97

PART 1 GENERAL

1.1 SUBMITTALS

Government approval is required for submittals with a "GA" designation; submittals having an "FIO" designation are for information only. The following shall be submitted in accordance with Section 01330 SUBMITTAL PROCEDURES:

SD-07 Schedules

Initial Project Schedule; GA A. Preliminary Project Schedule; GA A. Periodic Schedule Updates; GA A.

Four copies of the schedules showing codes, values, categories, numbers, items, etc., as required.

SD-08 Statements

Qualifications; FIO.

Documentation showing qualifications of personnel preparing schedule reports.

SD-09 Reports

Narrative Report; FIO. Schedule Reports; FIO.

Four copies of the reports showing numbers, descriptions, dates, float, starts, finishes, durations, sequences, etc., as required.

1.2 QUALIFICATIONS

The Contractor shall designate an authorized representative who shall be responsible for the preparation of all required project schedule reports. This person shall have previously created and reviewed computerized schedules. Qualifications of this individual shall be submitted to the Contracting Officer for review with the Preliminary Project Schedule submission.

PART 2 PRODUCTS (Not Applicable)

PART 3 EXECUTION

3.1 GENERAL

Pursuant to the Contract Clause, SCHEDULE FOR CONSTRUCTION CONTRACTS a Project Schedule as described below shall be prepared. The scheduling of construction shall be the responsibility of the Contractor. Contractor management

personnel shall actively participate in its development. Subcontractors and suppliers working on the project should also contribute in developing and maintaining an accurate Project Schedule. The approved Project Schedule shall be used to measure the progress of the work, to aid in evaluating time extensions, and to provide the basis of all progress payments.

3.2 BASIS FOR PAYMENT

The schedule shall be the basis for measuring Contractor progress. Lack of an approved schedule or scheduling personnel shall result in an inability of the Contracting Officer to evaluate Contractor progress for the purposes of payment. Failure of the Contractor to provide all information, as specified below, shall result in the disapproval of the entire Project Schedule submission and the inability of the Contracting Officer to evaluate Contractor progress for payment purposes. In the case where Project Schedule revisions have been directed by the Contracting Officer and those revisions have not been included in the Project Schedule, then the Contracting Officer may hold retainage up to the maximum allowed by contract, each payment period, until revisions to the Project Schedule have been made.

3.3 PROJECT SCHEDULE

The computer software system utilized by the Contractor to produce the Project Schedule shall be capable of providing all requirements of this specification. Failure of the Contractor to meet the requirements of this specification shall result in the disapproval of the schedule. Manual methods used to produce any required information shall require approval by the Contracting Officer.

3.3.1 Use of the Critical Path Method

The Critical Path Method (CPM) of network calculation shall be used to generate the Project Schedule. The Contractor shall provide the Project Schedule in either the Precedence Diagram Method (PDM) or the Arrow Diagram Method (ADM).

3.3.2 Level of Detail Required

The Project Schedule shall include an appropriate level of detail. Failure to develop or update the Project Schedule or provide data to the Contracting Officer at the appropriate level of detail, as specified by the Contracting Officer, shall result in the disapproval of the schedule. The Contracting Officer will use, but is not limited to, the following conditions to determine the appropriate level of detail to be used in the Project Schedule.

3.3.2.1 Activity Durations

Contractor submissions shall be required to follow the direction of the Contracting Officer regarding reasonable activity durations. Reasonable durations are those that allow the progress of activities to be accurately determined between payment periods. A rule of thumb, that the Contractor should

use, is that less than 2 percent of all non-procurement activities' Original Durations shall be greater than 20 days.

3.3.2.2 Procurement Activities

Tasks related to the procurement of long lead materials or equipment shall be included as separate activities in the project schedule. Long lead materials and equipment are those materials that have a procurement cycle of over 90 days. Examples of procurement process activities include, but are not limited to: submittals, approvals, procurement, fabrication, delivery, installation, start-up, and testing.

3.3.2.3 Government Activities

Government and other agencies activities that could impact progress shall be shown. These activities include, but are not limited to: approvals, inspections, utility tie-in, Government Furnished Equipment (GFE) and notice to proceed for phasing requirements.

3.3.2.4 Responsibility

All activities shall be identified in the project schedule by the party responsible to perform the work. Responsibility includes, but is not limited to, the subcontracting firm, contractor work force, or government agency performing a given task. Activities shall not belong to more than one responsible party. The responsible party for each activity shall be identified by the Responsibility Code.

3.3.2.5 Work Areas

All activities shall be identified in the project schedule by the work area in which the activity occurs. Activities shall not be allowed to cover more than one work area. The work area of each activity shall be identified by the Work Area Code.

3.3.2.6 Modification or Claim Number

Any activity that is added or changed by contract modification or used to justify claimed time shall be identified by a mod or claim code that changed the activity. Activities shall not belong to more than one modification or claim item. The modification or claim number of each activity shall be identified by the Mod or Claim Number.

3.3.2.7 Bid Item

All activities shall be identified in the project schedule by the Bid Item to which the activity belongs. An activity shall not contain work in more than one bid item. the bid item for each appropriate activity shall be identified by the Bid Item Code.

3.3.2.8 Phase of Work

All activities shall be identified in the project schedule by the phases of work in which the activity occurs. Activities

shall not be allowed to contain work in more than one phase of work. The project phase of each activity shall be by the unique Phase of Work Code.

3.3.2.9 Feature of Work

All activities shall be identified in the project schedule according to the feature of work to which the activity belongs. Feature of work refers, but is not limited to a work breakdown structure for the project. The feature of work for each activity shall be identified by the Feature of Work Code.

3.3.3 Scheduled Project Completion

The schedule interval shall extend from notice-to-proceed to the contract completion date.

3.3.3.1 Project Start Date

The schedule shall start no earlier than the date that the Notice to Proceed (NTP) was acknowledged. The Contractor shall include as the first activity in the project schedule an activity called "Start Project". The "Start Project" activity shall have: a "ES" constraint, a constraint date equal to the date that the NTP was acknowledged, and a zero day duration.

3.3.3.2 Constraint of Last Activity

Completion of the last activity in the schedule shall be constrained by the contract completion date. Calculation on project updates shall be such that if the early finish of the last activity falls after the contract completion date, then the float calculation shall reflect a negative float on the critical path. The Contractor shall include as the last activity in the project schedule an activity call "End Project". The "End Project" activity shall have: a "LF" constraint, a constraint date equal to the completion date for the project, and a zero day duration.

3.3.3.3 Early Project Completion

In the event the project schedule shows completion, the project prior to the contract completion date, the Contractor shall identify those activities that have been accelerated and/or those activities that are scheduled in parallel to support the Contractor's "early" completion. Contractor shall specifically address each of the activities noted at every project schedule update period to assist the Contracting Officer to evaluate the Contractor's ability to actually complete prior to the contract period.

3.3.4 Interim Completion Dates

Contractually specified interim completion dates shall also be constrained to show negative float if the early finish date of the last activity in that phase falls after the interim completion date.

3.3.4.1 Start Phase

The Contractor shall include as the first activity for a project phase an activity called "Start Phase X" where "X" refers to the phase of work. The "Start Phase X" activity shall have: a "ES" constraint, a constraint date equal to the date that the NTP was acknowledged, and a zero day duration.

3.3.4.2 End Phase

The Contractor shall include as the last activity in a project phase an activity called "End Phase X" where "X" refers to the phase of work. The "End Phase X" activity shall have: a "LF" constraint, a constraint date equal to the completion date for the project, and a zero day duration.

3.3.4.3 Phase X

The Contractor shall include a hammock type activity for each project phase called "Phase X" where "X:" refers to the phase of work. The "Phase X" activity shall be logically tied to the earliest and latest activities in the phase.

3.3.5 Default Progress Data Disallowed

Actual Start and Finish dates shall not be automatically updated by default mechanisms that may be included in CPM scheduling software systems. Actual Start and Finish dates on the CPM schedule shall match those dates provided from Contractor Quality Control Reports. Failure of the Contractor to document the Actual Start and Finish dates on the Daily Quality Control report for every in progress or completed activity and insure that the data contained on the Daily Quality Control reports is the sole basis for schedule updating shall result in the disapproval of the Contractor's schedule and the inability of the Contracting Officer to evaluate Contractor progress for payment purposes.

3.3.6 Out-of-Sequence Progress

Activities that have posted progress without predecessors being completed (Out-of-Sequence Progress) shall be allowed only by the case-by-case approval of the Contracting Officer. The Contracting Officer may direct that changes in schedule logic be made to correct any or all out-of-sequence work.

3.3.7 Extended Non-Work Periods

Designation of Holidays to account for non-work periods of over 5 days shall not be allowed. Non-work periods of over 5 days shall be identified by addition of activities that represent the delays. Modifications to the logic of the project schedule shall be made to link those activities that may have been impacted by the delays to the newly added delay activities.

3.3.8 Negative Lags

Lag durations contained in the project schedule shall not have a negative value.

3.4 PROJECT SCHEDULE SUBMISSIONS

The Contractor shall provide the submissions as described below. The data disk, reports, and network diagrams required for each submission are contained in paragraph SUBMISSION REQUIREMENTS.

3.4.1 Preliminary Project Schedule Submission

The Preliminary Project Schedule, defining the Contractor's planned operations for the first 60 calendar days shall be submitted for approval within 10 calendar days after Notice to Proceed is acknowledged. The approved preliminary schedule shall be used for payment purposes not to exceed 60 calendar days after Notice to Proceed.

3.4.2 Initial Project Schedule Submission

The Initial Project Schedule shall be submitted for approval within 40 calendar days after Notice to Proceed. The schedule shall provide a reasonable sequence of activities which represent work through the entire project and shall be at a reasonable level of detail.

3.4.3 Periodic Schedule Updates

Based on the result of progress meetings, specified in "Periodic Progress Meetings," the Contractor shall submit periodic schedule updates. These submissions shall enable the Contracting Officer or to assess Contractor's progress. If the Contractor fails or refuses to furnish the information and project schedule data, which in the judgement of the Contracting Officer or authorized representative, is necessary for verifying the contractor's progress, the Contractor shall be deemed not to have provided an estimate upon which progress payment may be made.

3.5 SUBMISSION REQUIREMENTS

The following items shall be submitted by the Contractor for the initial submission, and every periodic project schedule update throughout the life of the project:

3.5.1 Data Disks

Two data disks containing the project schedule shall be provided. Data on the disks shall be in the format specified in Appendix A, " Standard Data Exchange Format".

3.5.1.1 File Medium

Required data shall be submitted on 3.5 disks, formatted to hold 1.44 MB of data, under the MS-DOS Version 5.0 operating system.

3.5.1.2 Disk Label

A permanent exterior label shall be affixed to each disk submitted. The label shall indicate the type of schedule (Initial, Update, or Change), full contract number, project name, project location, data date, name and telephone number or