# EXHIBIT 14

**DONJON MARINE CO.,INC**
1250 LIBERTY AVENUE
HILLSIDE, NEWJERSEY 07205 U.S.A.

# RESPONSE to W912DS-06-B-0014
# New York and New Jersey Harbor
# Anchorage Channels Contract 3
# Navigation Improvement 50 FT Project
# S-AN-1A, Contract 3

## For New York and New Jersey

**1.45.A.3 Information Submitted by the Apparent Low Bidder within 35 Calendar Days**

**October 5, 2006**

Donjon Marine Co., Inc. is providing the enclosed information to the Department of the Army, New York District, Corps of Engineers in response to the Solicitation No. W912-06-B-0014. This proposal contains trade secrets and other commercial and/or financial information which is privileged and/or confidential. The information will not be disclosed outside the government and will not be duplicated, used or disclosed, in whole or in part, for any purpose other than to evaluate this proposal. If, however, a contract is awarded to the offeror as a result of or in connection with the submission of the enclosed information, then the government will have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the government's right to use information contained herein if it is obtained from another source without restriction. The information subject to this restriction is on all sheets within this volume.

PHONE
(908) 964-8812

FACSIMILE
(908) 964-7426

WEBSITE
www.donjon.com

**DONJON MARINE CO.,INC**
1250 LIBERTY AVENUE
HILLSIDE, NEWJERSEY 07205 U.S.A.

October 5, 2006

Ella D. Snell
Contracting Officer
US Army Corps of Engineers
New York District
26 Federal Plaza, Room 1843
New York, New York

Re: 35 Day Submittal for Solicitation Number W912DS-06-B-0014, New York and New Jersey Harbor Anchorage Channels Contract 3 Navigation Improvement 50 FT Project S-AN-1A, Contract 3 New York and New Jersey

Dear Ms. Snell,

Donjon Marine Co., Inc. (Donjon) has prepared the following response to the above referenced solicitation in accordance with Section 00800, paragraph 1.45.A.3 and 1.45.B.2. The submittal contains existing permits and a project schedule.

Each sites' permits, commitment letter and AUD or BUD are organized to provide an easy review of these materials. If you have any questions, please contact me at (908) 964-8812.

Sincerely,

Kerri K. Mullins

1.4.5.A.3 Sites and Permits

1.45.A.3

a) The spreadsheet and narrative have been revised and follow this document.

b) Donjon has enclosed the respective AUD and BUD documents along with each sites permit information.

c) Donjon has placed the commitment letter for each site within each sites section.

d) Each site has indicated the volume available for the project in their respective commitment letters and these volumes are further defined in the corresponding AUD and BUD documents.

e) The sites have addressed their availability within their commitment letters.

f) The spreadsheet outlines the production capabilities of each facility.

g) Donjon has performed numerous projects for the New York District of the US Army Corps of Engineers. The past performance of the Port Jersey contract follows this document as an example of Donjon's ability to dredge, process and place processed dredge material at numerous sites.

h) Transportation Capabilities

1) See the attached spreadsheet and listing of licensed trucks.
2) Donjon has delivered over 1.5 million cubic yards of processed dredge material to 1-E and EnCap over the past three years alone. Clean Earth has delivered a similar volume to three additional sites. Both firms have consistently met project removal schedules.

i) Processing Capabilities

1) Detailed description of the proposed technological processing

Dewatering is the first stage in the processing sequence. Barges are transported to Donjon's dewatering area where the barge of dredge material is tied along side of the decant barge. Hoses are placed into the barge of dredge material to remove any free water lying on the surface. The depth of this water and the time to remove it into the decant barge varies. At the conclusion of the removal of the free water, the barge is taken to the raking area for debris removal.

Debris removal is accomplished through the use of a rake on an excavator. The excavator combs through the dredge material to capture and remove tires, rocks, cable, pilings, etc. The debris is placed into roll-off boxes staged behind the raking area. When the debris removal is finished, the barge is taken to the cement delivery area.

The barge is measured to determine the volume of material to allow for the calculation of the amount of Type II Portland cement that will be required for treatment. Each barge is divided into sections and the amount of time required to deliver a minimum of eight percent cement by volume is determined. The barge is advanced under the delivery chute while a mixing head, mounted on another excavator is used to blend the cement throughout the barge of dredge material. The processed barge is then allowed a minimum of 24 hours to cure prior to off-loading.

Processed dredge material is then stacked in the permitted off-loading area to await loading into tri-axle dump trucks and transport to the designated receiving site. Donjon has 7,500 cubic yards of permitted storage area and Metal Management has an additional 7,500 cubic yards of permitted storage capacity.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

   Donjon has included its permits within its section. Clean Earth's permit is included in its respective section, as well.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

   Not applicable.

4) Provide proof of processing plant availability for use by the apparent Contractor.

   Donjon owns and operates it own processing system and as indicated in the Clean Earth commitment letter will also have the Clean Earth system available to support the contract.

5) Certify the processing plant's availability corresponding to the current Project schedule.

   Donjon certifies that the processing system will be available for the current project schedule.

1.45.A.3 Information to be submitted by the Apparent Low Bidder within 35 calendar days after being informed of being the Apparent Low Bidder.

| | Site 1 Meadowlands Landfill 1E | Site 2 Donjon Marine Co. Berth 36 | Site 3 Metal Management Northeast | Site 4 EnCap Golf Holdings, LLC | Site 5 Fresh Kills Landfill | Site 6 FDP Intermodal | Site 7 Keegan Landfill | Site 8 Clean Earth Dredging Tech. | Site 9 Flushing Airport site | Site 10 380 Development | Site 11 Prologis Port Reading |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (a) Total capacity available at the "Contractor Identified" sites for the placement of Dredged Material from this contract. | 212,062 | 1,500,000 | 1,500,000 | 1,300,000 | 400,000 | 30,000 | 350,000 | 1,500,000 | 159,000 | 2,000,000 | 30,000 |
| (b) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (cy/day) and throughput rates for its proposed integrated system of dredging, transportation, processing, and placement for each site identified. | 3,500 cy/day<br>single shift | 6,000 cy/day<br>single shift | 6,000 cy/day<br>two shifts | 3,500 cy/day<br>single shift | 3,500 cy/day<br>single shift | 2,000 cy/day<br>single shift | 3,500 cy/day<br>single shift | 2,500 cy/day<br>single shift | 4,000 cy/day<br>two shifts | 2,500 cy/day<br>single shift | 2,500 cy/day<br>single shift |
| © Offloading, Processing and Placement Sites Elements Information<br>1) State capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the placement sites as well as the average daily production (cy/day) and through-put rates (cy/day) for each element, to include the dredging, transportation processing and placement at the "Contractors Identified" sites. State average daily production cy/day and through-put rates (cy/day) for the proposed integrated system of the elements identified above. | 3,500 cy/day<br>single shift<br>7 days/wk | 6,000 cy/day<br>single shift<br>7 days/wk | 6,000 cy/day<br>day & night<br>7 days/wk | 3,500 cy/day<br>day & night<br>6 days/wk | 3,500 cy/day<br>single shift<br>5 days/wk | 2,000 cy/day<br>single shift<br>5 days/wk | 3,500 cy/day<br>single shift<br>7 days/wk | 2,500 cy/day<br>single shift<br>6 days/wk | 4,000 cy/day<br>24 hours<br>7 days/wk | 2,500 cy/day<br>single shift<br>6 days/wk | 2,500 cy/day<br>single shift<br>5 days/wk |
| 2) Time frame for availability for each element of the system: hours of operation in each week; months of operation in each year. | 6AM - 6PM<br>7 days/wk<br>12 months | 24 hours<br>7 days/wk<br>12 months | 24 hours<br>7 days/wk<br>12 months | 11PM-4PM<br>6 days/wk<br>12 months | 7AM - 3PM<br>5 days/wk<br>12 months | 7AM - 3PM<br>5 days/wk<br>12 months | 6AM - 6PM<br>7 days/wk<br>12 months | 6AM - 4PM<br>6 days/wk<br>12 months | 24 hours<br>7 days/wk<br>6 months | 6AM - 6PM<br>6 days/wk<br>12 months | 6AM - 6PM<br>5 days/wk<br>12 months |
| 3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles. | See MAP | | | | | | | | | | |

G0101504758

| | Site 1 Meadowlands Landfill 1E | Site 2 Donjon Marine Co. | Site 3 Metal Management | Site 4 EnCap Golf Holdings, LLC | Site 5 Fresh Kills Landfill | Site 6 FDP Intermodal | Site 7 Keegan Landfill | Site 8 Clean Earth Dredging Tech. | Site 9 Flushing Airport site | Site 10 380 Development | Site 11 Prologis Port Reading |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4) Offloading, Processing and placement Sites Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the bidder proposes to perform the work and the dates on which the bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment, and the completion of dredging by basic contract acceptance areas and/or options). The schedule shall indicate the production rate of each element, to include the dredging, offloading, transportation, processing and placement to ensure that the project will be completed within the contract's required completion date. The bidder shall consider its proposed integrated system of dredging, transportation, processing and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The bidder must indicate on this schedule the salient features of work for the "Contractor's identified" sites that are needed to be completed so the sites is operational, as defined in 1.45A, capable of processing and placing the Non-rock material unsuitable for placement at the HARS for the insitu quantity identified in the price schedule to complete the contract within the required duration. | See Attached | | | | | | | | | | |
| (d) Synopsis of proposed operation See following document | | | | | | | | | | | |
| (e) Detailed list and copies of all permits for the selected sites to demonstrate that the site is permitted and legal to operate. | Enclosed AUD | Enclosed AUD | Enclosed AUD | Enclosed AUD | Enclosed BUD | Enclosed AUD | Enclosed AUD | Enclosed AUD | Enclosed BUD | Enclosed BUD | Enclosed AUD |

(d) Synopsis of proposed operation – Narrative of no more than seven pages detailing the operation to move the dredged material from the dredging site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The synopsis shall include the following:

**1) Provide a list of names, locations, and point of contact, telephone number, loading and unloading facilities for each disposal facility including site capacity.**

| | | | |
|---|---|---|---|
| Landfill 1E | Donjon Marine Co., Inc. | Keagan Landfill | Flushing |
| 100 Baler Road | Berth 36 Processing Fac. | Bergen Ave. | Airport Site |
| North Arlington, NJ | Port Newark, NJ | Kearny, NJ | Flushing, NY |
| Kerri Mullins | Kerri Mullins | Kerri Mullins | KD McGuckin |
| (908) 964-8812 | (908) 964-8812 | (908) 964-8812 | (212)3123771 |
| 212,062 cyds | 1,500,000 cyds annually | 350,000 cyds | 160,000 cyds |

| | | |
|---|---|---|
| Clean Earth Dredging | Newark Bay Confined | 380 Development, LLC |
| Technologies, Inc. | Disposal Facility | (Former GATX) |
| Claremont DMPF | Newark Bay, NJ | 500 Western Ave. |
| Jersey City, NJ | Steve Dorrler | Ken Sikes |
| Ken Sikes | (212) 435-4273 | (215) 734-1400 |
| (215) 734-1400 | 150,000 cyds | 1,500,000 cyds |

| | |
|---|---|
| EnCap Golf Holdings, LLC | Overpeck Landfill |
| Foot of Valley Brook Road | Challenger Road |
| One DeKorte Place | Richfield Park, NJ |
| Lyndhurst, Rutherford, and North Arlington, NJ | PMK Group |
| James Hockensmith, PG | (908) 497-8900 |
| (201) 907-5288 | 300,000 cyds |
| 600,000 cyds | |

| | |
|---|---|
| Metal Management, Northeast | Fresh Kills Landfill |
| End of Calcutta Street, Berth 30 | Staten Island, NY |
| Port Newark, NJ | KD McGuckin |
| Mike Henderson | (212) 312-3771 |
| (973) 344-5575 | |
| 1,500,000 cyds annually | |

| | |
|---|---|
| FDP | Prologis – Port Reading |
| Seacus Road | Port Reading, NJ |
| Ken Sikes | Ken Sikes |
| (215) 734-1400 | (215) 734-1400 |
| 30,000 cyds | 30,000 cyds |

The Donjon processing facility also has an offloading area. The permitted offloading area is located at Berth 36 and provides storage for 7,500 cubic yards of material. Processed dredge material is offloaded utilizing a 5 cubic yard clamshell. The material is stockpiled prior to loading into triaxle dump trucks for transport to the approved placement site.

The Metal Management offloading facility mirrors Donjon's facility and is located along the same pier approximately 1,000 feet to the north. The same equipment is utilized to offload and eventually load triaxle dump trucks.

The Clean Earth facility also utilizes a 5 cubic yard clamshell to offload dredge material into their processing plant. The material leaves the processing unit and is stacked in a permitted storage area prior to loading into triaxle dump trucks for transport to an approved placement site.

Material designated for delivery to the 1E landfill is delivered to the discharge area for spreading and compaction into a cover layer or cap for the site. The placement location is further detailed in the soil erosion control permit.

Material designated for delivery to the Keagan landfill is being placed in a permitted stockpile area for later use in the construction of a site slurry wall. The soil erosion control permit details the location.

The EnCap site will utilize the processed material for construction of their site barrier layer. This material will cover significant areas of the project. A sketch is enclosed.

The Overpeck landfill will utilize the processed material for construction of their site barrier layer. Direct placement may not occur immediately as areas of the site are still actively receiving fill at this point.

The 380 Development site will utilize the material as general fill. Receiving procedures are still being discussed as to whether this material can be trucked or may be transferable from barges to off-road trucks.

Each facility's operating hours and capacity are provided in the summary spreadsheet.

The two processing facilities can receive and process barges up to 260 feet long and 53 feet wide. Larger barges have been successfully managed at Donjon's facility. The length of the vessel does not impact the in-scow processing capability or off-loading capability. Clean Earth has some limitations regarding extremely large barges, but has successfully managed barges of the size identified above.

Commencing upon receipt of notice of award for this project, Donjon will mobilize appropriate earth-moving equipment (i.e. dozers, etc.) for receipt and placement of processed dredge material at the approved site or sites. MTLM will mobilize additional off-loading equipment, as it deems necessary, to support discharging, stockpiling (if needed) and re-loading operations at its berths 30/32. A sufficient number of Tri-axle trucks will be mobilized in order to transport the

processed dredge material from the Donjon or MTLM facility to permitted New Jersey sites. Fresh Kills would receive the processed dredge material via barge for offloading directly at the site.

Upon receipt of Notice to Proceed, Donjon will mobilize its dredging equipment to the Anchorage Channel dredging area. Dewatering equipment will be mobilized to Brooklyn or any other approved location. Discharge of decant water will be in accordance with the NJDEP and NYDEC permit stipulations. Appropriate scows, tugs and dredge plant will be available to immediately initiate dredging operations upon receipt of the notice to proceed and pre-dredge survey from the USACE.

Donjon will commence dredging utilizing an environmental bucket at the appropriate area of the channel in accordance with the actual date of commencement of dredging operations and the contract specifications. Dredging operations will commence in areas not covered by the identified environmental windows dependent upon the project start date.

Dredge material will be slowly and deliberately placed into hopper barges in accordance with the Water Quality Certificate specifications. Each scow will be deliberately tracked in accordance with contract specifications. After the barge has been filled, the barge will be towed to the dewatering site in accordance with the Water Quality Certificate, i.e. decant water placed into holding scows and retained in accordance with NYDEC/NJDEP requirements prior to discharge. Each de-watered scow of dredge material will then be prepared for processing.

Processing operations will be in accordance with the Water Front Development permit, provided in this submittal. Each de-watered barge will be raked to remove debris. Debris encountered will be placed into pre-positioned roll-off boxes at berths 36 and 32. Donjon will transport the loaded roll off boxes to the NJMC landfill facility for certified weights and disposal at their permitted solid waste facility.

Each barge, upon completion of debris removal, will be advanced under the cement delivery system for addition of cement and appropriate mixing of the dredge material. Each barge, designated by name, date and barge load number, will be measured to determine the volume of dredge material in the barge prior to cement addition. This will be used to determine the appropriate volume of cement required for processing.

At the conclusion of the cement addition and mixing operation, the barge will be towed to the MTLM berth 32 or remain at berth 36 for offloading of materials destined for New Jersey sites. Each barge will be off-loaded by MTLM after considering sufficient time for curing. Barges will be offloaded into the stockpile area or directly into tri-axle trucks. Material will be tracked as

applicable. MTLM will load tri-axle trucks to transport the processed dredge material to the Overpeck, 1E, Keagan and/or the EnCap site in the Meadowlands. Each truck will receive a bill of lading to track each individual load exiting the MTLM facility. Copies of each bill of lading will be given to Donjon personnel to track the placement of these loads within the landfill sites.

Donjon is also including the Clean Earth Dredging Technologies permitted processing facility for treatment of dredged material from the project. The treated material may be managed at 1E, EnCap, Keagan, Overpeck, 380 Development site or the Fresh Kills site in accordance with the respective Acceptable Use Determination and Beneficial Use Determination stipulations for the project.

Upon arrival at the placement site, each truck will be directed to the appropriate placement location within the permitted area (existing permits supplied with this submittal). Loads will be tracked within the site in accordance with facility permit requirements.

Material destined for Fresh Kills landfill will be towed from Port Newark directly to the site docks for discharge to off-road trucks for transfer to the placement area in accordance with site permits.

**2) Provide a detailed map indicating locations of loading and unloading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.**

A map is provided for the operations described above (located at end of this section). All the New Jersey sites would receive processed dredge material by tri-axle trucks. Each truck load will be directed, by the Donjon personnel, to the off-loading location for discharge of the load. Earth moving equipment, i.e. dozers, etc. will grade the material as required. Each tri-axle will have its tires cleaned as required prior to exiting the site.

Barges delivered to the Fresh Kills site will be discharged into off-road trucks for transport to the placement area. Prior to discharge each barge will be sampled, analyzed and the analytical results reviewed. Based upon the review of each barge's analytical results, the material will be deemed appropriate for use at the Fresh Kills site or determined that further treatment and/or curing time is required.

**3) Provide Hours of operation, transportation and operating procedures at unloading facilities.**

The hours of operation for EnCap are currently 24 hours per day, Monday through Saturday, less 5 hours per day shutdown from 7:00 PM until midnight.

Trucking operations will be coordinated with receiving facility hours. Barges will be discharged at MTLM utilizing clamshells and the processed dredge material placed into a stockpile for re-loading into tri-axle trucks for transport to the designated site. Debris material will be stockpiled for loading into trucks for transport to a permitted solid waste facility.

The hours of operation for each site are provided in the summary spreadsheet.

**4) Provide Facilities information: Access to Unloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.**

MTLM is accessible via barge with vessels drafting 30 feet of water or less, length up to 600 feet, and width up to 150 feet (three barges wide per lease). MTLM is not a disposal facility and therefore does not have an O&M manual. There is no established demurrage period for off-loading the scows or barges of processed dredge material. Processing time per scow from the time of entering the Donjon berth 36 to complete discharge at MTLM at berth 32 will vary from 28 to 36 hours.

The New Jersey sites are not accessible via barge. Processed dredge material will be transported to the designated site via truck. Trucks are anticipated to enter and exit the designated facility within standard trucking protocol, 60 minutes. Placement operations are expected to occur within hours of receipt and require limited equipment support for placement, i.e. grading and compacting.

Fresh Kills will receive material via barge at the existing unloading docks. Barge lengths are not an issue; however, the barges will be limited to drafts of approximately fifteen feet mean low water per existing channel restrictions. Up to three barges will be staged for off-loading as required. Anticipated through put is anticipated to be up to 3,500 cubic yards per day.

**5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges, buckets, scows, tugs and other salient equipments to be used for the project.**

Dredging of an estimated 1,180,000 cubic yards of silt and sand material with upland disposal. Dredging of the upland material will be performed by Donjon's dredge "*Delaware Bay*" using a 16 cubic yard *Cable Arm* environmental bucket. Dredging will be performed by mechanical dredging with *Cable Arm* environmental buckets penetrating material down to refusal. Positioning of the dredges will be performed by using the most recent version of Hypack

positioning software with DGPS positioning. The 1,180,000 cubic yards of upland material will be dredged and placed in a series of eight (8) Donjon owned sealed hopper scows (1801, 1802, 2001, 2002, 2003, 2004, 107, 114)for transport to the approved dewatering area, then continuing at Donjon's berth 36 processing facility for debris removal, processing, etc.

The dredging of the sand material will utilize an 8 yard hard digging bucket to provide penetration into this material.

Scow movements of material for all these phases of work will be performed with the Donjon owned towing vessel "*Mary Alice*".

**6) Submit a detailed description of the loading and transportation procedures to be utilized.**

Upon completion of processing at berths 36 and appropriate curing of the material destined for New Jersey sites; the material will be towed to MTLM Berth 32 or remain at Berth 36 for off-loading the processed dredge material into a stockpile or directly into tri-axle trucks. Material destined for Fresh Kills will be towed to the landfill for offloading following receipt of analytical information indicating appropriate treatment has been achieved. All processed dredge material will be tracked from initial loading into a barge to the final disposal site as outlined above.

The loading and transportation of the processed dredge material will occur over a twenty-hour period in accordance with each facilitys' operating hours. Each tri-axle truck will be loaded utilizing a 10 to 12 cubic yard capacity loader, the tailgate closed securely, the top of the cargo box covered by the tarp screen and have its tires inspected. The tires will be cleaned as required to prevent any substantial tracking of material onto local streets.

Upon completion of the loading operations, including inspection and/or cleaning of tires, each tri-axle load will be assigned a bill of lading. The truck will exit MTLM's berth facilities or Donjon's facility, and proceed directly to the placement site.

After arriving at the site, the truck will provide a copy of the bill of lading to the Donjon facility personnel and proceed to the designated site and provide a copy of the bill of lading to the facility personnel. At the placement location, the tri-axle will deposit its load and exit the site via the designated transport route. The tires of the vehicle will be cleaned as required to prevent any substantial tracking of material prior to exiting. Donjon anticipates transporting approximately 4,000 cubic yards per day to the various sites.

The offloading and transportation operations at the Fresh Kills site will be performed in accordance with site and contract specifications. Traffic within the site will be structured to accommodate other site construction activities.

State of New Jersey
Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

BY:

## Air Pollution Control Pre-Construction Permit

**Permit Activity ID Number:** PCP020002
**Approval Date:** September 19th, 2002
**Facility ID Number:** 07796
**Expiration Date:** September 18th, 2007

| Mailing Address | Plant Location |
|---|---|
| Attention: Ms. Kerri K. Mullins | **DONJON MARINA CO INC** |
| DonJon Marine Co., Inc. | **140 MARSH ST** |
| 1250 Liberty Avenue | **Newark** |
| Hillside, New Jersey 07205 | **Essex County, New Jersey** |

Dear Ms. Mullins:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information available, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supercede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section E, which also includes the "General Provisions" under the subject item "FC".

This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate is being issued authorizing DonJon Marine Co., Inc. to operate for 1,500 (one thousand five hundred) hours. If the source is to continue to operate past the 1,500-hours, DonJon Marine Co., Inc. ("the permittee") must submit an application for a compliance plan change pursuant to N.J.A.C. 7:27-8.19. The application must include any information required in this permit, particularly as outlined in Section E, under FC, Reference No. 6 of the conditions of this permit.

The Department will not issue a 5-year Certificate to Operate until and unless the applicant demonstrates compliance with the Conditions of Approval set forth in Section E. This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate to Operate may be revoked pursuant to N.J.A.C. 7:27-8.16 should any of the provisions of that regulation become applicable.

There are a total of 61 pages in this permit including this cover page. An electronic file version of this permit will be e-mailed to you. The electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file.

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Air Quality Engineering at (609) 292-2137.

Approved by:

Iclal Atay, Ph. D., Chief
Bureau of Air Quality Engineering

# AIR POLLUTION CONTROL PRECONSTRUCTION PERMIT

## Table of Contents

**Facility Name: DONJON MARINA CO INC**
**Facility ID No.: 07796**
**Activity ID No.: PCP020002**


**Section A**

AUTHORIZED SOURCE OPERATIONS

**Section B**

GENERAL PROVISIONS – see Facility Specific Requirements Subject Item FC

**Section C**

ACRONYMS

**Section D**

FACILITY PROFILE (ADMINISTRATIVE INFORMATION)

**Section E**

FACILITY SPECIFIC REQUIREMENTS

**Section F**

INVENTORIES

**Section G**

PERMIT ACTION APPEAL FORM

AIR POLLUTION CONTROL PRECONSTRUCTION PERMIT

Section A

**Facility Name: DONJON MARINA CO INC**
**Facility ID No.: 07796**
**Activity ID No.: PCP020002**

## AUTHORIZED SOURCE OPERATIONS

This Preconstruction Permit and the Certificate to Operate for the following equipment is issued pursuant to N.J.A.C. 7:27-8.

**Description of Source Activity**

**Source Operation Type:** In-Situ Dredge Sediment (material) Processing Facility, consisting of a Pneumatic Conveying System, a Screw Conveyor, an In-Situ Mixing Head, an Internal Combustion Engine and Cement Storage Blimps.

**Source Operation Description:** Portland cement, conveyed through a Screw Conveyor, will be injected, one-at-a-time, at a maximum rate of 150 tons per hour (tph), into slowly moving barges filled with dredge sediment. Portland cement will be mixed with the dredge sediment using a Lang Tool Co. (LTC) Series IV Mixing Head, or equal, attached to a Hydraulic Excavator. A "Water Spray System" installed on the totally enclosed discharge spout arrangement equipped with water sprays will control potential dust emissions at the discharge point from the Screw Conveyor onto the dredge-sediment filled barge. Electrical power to the In-Situ Dredge processing facility will be supplied through an Internal Combustion Engine of 365 maximum rated KW. Portland cement will be delivered to the site in sealed pneumatic conveyance trucks and stored in blimps. The total hours of operation of the In-Situ Dredge Processing facility will not exceed 1,500 hours, corresponding up to 1,650,000 tons (wet basis) of dredge sediment processed.

**Source Operation Details:** The sources authorized by this permit shall be operated within the parameters specified in the detailed information attached to this section. Operation of the authorized sources within these parameters is required <u>in addition</u> to compliance with the conditions specified in Section E– Facility Specific Requirements of this permit.

07796 DONJON MARINA CO INC PCP020002 CD1 (Particulate Filter (Baghouse))
Print Date: 9/19/2002

| | |
|---|---|
| Make: | Fabri-Pulse or Equivalent |
| Manufacturer: | Mac, Procedair, Staclean, Am Air filter or Equivalent |
| Model: | 12-48-770 |
| Number of Bags: | 48 |
| Size of Bags (ft2 ): | 16.04 |
| Total Bag Area (ft2): | 770 |
| Bag Fabric: | Polyester |
| Fabric Weight (oz/ft): | 16 |
| Fabric Weave: | |
| Fabric Finish: | |
| Maximum Design Temperature Capability (deg F): | 150 |
| Maximum Design Air Flow Rate (acfm): | 4000 |
| Draft Type: | Suction |
| Maximum Air Flow Rate to Cloth Area Ratio: | 5.2 to 1 |
| Minimum Operating Pressure Drop (in. H2O): | 2 |
| Maximum Operating Pressure Drop (in. H2O): | 15 |
| Method of Monitoring Pressure Drop: | Magnehelic Gage |
| Maximum Inlet Temperature (deg F): | 120 |
| Minimum Inlet Temperature (deg F): | 40 |
| Dew Point of Gas Stream (deg F): | Ambient |
| Maximum Operating Exhaust Gas Flow Rate (acfm): | 4000 |
| Maximum Inlet Gas Stream Moisture Content (%): | |

07796 DONJON MARINA CO INC PCP020002 CD1 (Particulate Filter (Baghouse))
Print Date: 9/19/2002

| | |
|---|---|
| Method for Determining When Bag Replacement is Required: | Observation |
| Method for Determining When Cleaning is Required: | Timer |
| Method of Bag Cleaning: | Air Pulse |
| Is Bag Cleaning Conducted On-Line? | Yes |
| Maximum Number of Sources Using this Apparatus as a Control Device (Include Permitted and Non-permitted Sources): | 5 |
| Alternative Method to Demonstrate Control Apparatus is Operating Properly: | Visible Emissions |
| Have you attached a Particle Size Distribution Analysis? | No |
| Have you attached data from recent performance testing? | No |
| Have you attached any manufacturer's data or specifications in support of the feasibility and/or effectiveness of this control apparatus? | No |
| Have you attached a diagram showing the location and/or configuration of this control apparatus? | |
| Comments: | |

07796 DONJON MARINA CO INC PCP020002 E3 (Manufacturing and Materials Handling Equipment)
Print Date: 9/19/2002

| | |
|---|---|
| Make: | |
| Manufacturer: | Lang Tool Co. |
| Model: | LTC Series IV Blending Head |
| Type of Manufacturing and Materials Handling Equipment: | Mixing Head on Hydraulic Excavator |
| Capacity: | 1.00E+03 |
| Units: | (other units) |
| Description (if other): | Tons per Hour |
| Have you attached a diagram showing the location and/or the configuration of this equipment? | Yes |
| Have you attached any manuf.'s data or specifications to aid the Dept. in its review of this application? | Yes |
| Comments: | |

07796 DONJON MARINA CO INC PCP020002 E4 (Stationary Internal Combustion Engine)
Print Date: 9/19/2002

| | |
|---|---|
| Make: | XQ 400 Caterpillar Engine-Generator Set |
| Manufacturer: | Caterpillar |
| Model: | Engine model 3456 |
| Maximum Rated Gross Heat Input (MMBtu/hr): | 3.3 |
| Class: | |
| Duty: | |
| Description: | EPA Tier 1 & CARB Emissions Certified |
| Load Range (%): | 50 to 100 |
| Stroke: | 4 stroke-cycle diesel 6.75 inches |
| Power Output (BHP): | 546 (max) |
| Electric Output (KW): | 365 |
| Compression Ratio: | 16 to 1 |
| Ignition Type: | Turbocharged -ATAAC |
| Engine Speed (RPM): | 1800 |
| Engine Exhaust Temperature (deg F): | 750 to 850 |
| Air to Fuel Ratio at Peak Load: | |
| Lambda Factor (scfm/scfm): | |
| Brake Specific Fuel Consumption at Peak Load (Btu/BHP-hr): | 25.6 gph |
| Output Type: | |
| Heat to Power Ratio: | |
| Is the Engine Using a Turbocharger? | yes |
| Is the Engine Using an Aftercooler? | watercooled |

Is the Engine Using (check all that apply):

| | |
|---|---|
| A Prestratified Charge (PSC) | |

07796 DONJON MARINA CO INC PCP020002 E4 (Stationary Internal Combustion Engine)
Print Date: 9/18/2002

| | |
|---|---|
| A NOx Converter | |
| Air to Fuel Adjustment (AF) | |
| Ignition Timing Retard | |
| Low Emission Combustion | |
| Non-Selective Catalytic Retard (NSCR) | |
| Other | |
| Description: | |
| Have you attached a diagram showing the location and/or configuration of this equipment? | yes |
| Have you attached any manufacturer's data or specifications which may aid in the review of this application? | |
| Comments: | |

Include Emission Rates on the Potential to Emit Screen for each Contaminant in grams/BHP-hr and ppmdv @7% O2 in addition to lbs/hr and tons/yr.

AIR POLLUTION CONTROL PRE-CONSTRUCTION PERMIT

Section B

Facility Name: DONJON MARINA CO INC
Facility ID No.: 07796
Activity ID No.: PCP020002

## GENERAL PROVISIONS AND AUTHORITIES
### Preconstruction Permits

This section is now included in Facility Specific Requirements Subject Item FC.

AIR POLLUTION CONTROL PRECONSTRUCTION PERMIT

**Section C**

**Facility Name: DONJON MARINA CO INC**
**Facility ID No.: 07796**
**Activity ID No.: PCP020002**

## ACRONYMS

| | |
|---|---|
| ACFM | Actual Cubic Feet per Minute |
| BAQE, BAQEng | Bureau of Air Quality Engineering |
| BNSR | Bureau of New Source Review |
| BOP | Bureau of Operating Permits |
| BTS | Bureau of Technical Services |
| CEM | Continuous Emissions Monitor |
| CFR | Code of Federal Regulations |
| COM | Continuous Opacity Monitor |
| EPA | United States Environmental Protection Agency |
| Gal/hr | Gallons per hour |
| HAP | Hazardous Air Pollutant |
| KW | Kilowatts |
| Lb/hr | Pounds per hour |
| MMBTU/hr | Million British Thermal Units per hour |
| N.J.A.C. | New Jersey Administrative Code |
| NJDEP | New Jersey Department of Environmental Protection |
| OM&M | Operation, Maintenance and Monitoring |
| PM-10 | Particulate Matter of less than or equal to microns equivalent diameter |
| PST | Performance Specification Test |
| REO | Regional Enforcement Office – NJDEP |
| TSP | Total Suspended Particulate Matter |
| VOC | Volatile Organic Compound |

**AIR POLLUTION CONTROL PRE-CONSTRUCTION PERMIT**

**Section D**

**Facility Name: DONJON MARINA CO INC**
**Facility ID No.: 07796**
**Activity ID No.: PCP020002**

## FACILITY PROFILE

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

# New Jersey Department of Environmental Protection
## Facility Profile (General)

**Facility Name (AIMS):** DonJon Marine Dredge Materials Recovery **Facility ID (AIMS):** 07796

**Street Address:** DONJON MARINE DREDGE MATERIALS FACILITY
BERTHS 20/22
PORT NEWARK, NJ 07114

**Mailing Address:** DONJON MARINE CO, INC
1250 LIBERTY AVE
HILLSIDE, NJ 07205

**State Plane Coordinates:**

| | |
|---|---|
| **X-Coordinate:** | 41 |
| **Y-Coordinate:** | 74 |
| **Units:** | Dec. Deg. |
| **Datum:** | NAD27 |
| **Source Org.:** | DEP-Program |
| **Source Type:** | Other/Unknown |

**County:** Essex
**Location Description:** Berth 20/22 Port Newark

**Industry:**

| | |
|---|---|
| **Primary SIC:** | 5093 |
| **Secondary SIC:** | |

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Profile (General)**

**Contact Type:** Air Permit Information Contact

**Organization:** Kenneth L. Woodruff
**Org. Type:** Individually Owned
**Name:** Kenneth L. Woodruff
**NJ EIN:** 00232300761
**Title:** Consultant
**Phone:** (215) 736-2194 x
**Fax:** (215) 736-2225 x
**Other:** (215) 499-3690 x
**Type:** Mobile
**Email:** kwood@bellatlantic.net
**Mailing Address:** PO Box 42
Morrisville, PA 19067-0042

---

**Contact Type:** BAQE - Engineering

**Organization:** NJ Department of Environmental Protection
**Org. Type:** State
**Name:** Negib Harfouche, Ph.D.
**NJ EIN:**
**Title:** Principal Environmental Engineer (APC)
**Phone:** (609) 292-2137 x
**Fax:** (609) 984-6369 x
**Other:** ( ) - x
**Type:**
**Email:** nharfouc@dep.state.nj.us
**Mailing Address:** 401 East State Street
Bureau Air Quality Engineering - Floor 2
P.O.Box 027
Trenton, NJ 08625-0027

---

**Contact Type:** Consultant

**Organization:** Kenneth L. Woodruff
**Org. Type:** Individually Owned
**Name:** Kenneth L. Woodruff
**NJ EIN:** 00232300761
**Title:** Consultant
**Phone:** (215) 736-2194 x
**Fax:** (215) 736-2225 x
**Other:** (215) 499-3690 x
**Type:** Mobile
**Email:** kwood@bellatlantic.net
**Mailing Address:** PO Box 42
Morrisville, PA 19067-0042

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Profile (General)**

**Contact Type:** Fees/Billing Contact
**Organization:** DonJon Marine Co., Inc. **Org. Type:** Corporation
**Name:** Arnold Witte **NJ EIN:** 00221844615
**Title:** President
**Phone:** (908) 964-8812 x
**Fax:** (908) 964-7426 x
**Mailing Address:** 1250 Liberty Avenue, Hillside, NJ 07205
**Other:** ( ) - x
**Type:**
**Email:**

---

**Contact Type:** On-Site Manager
**Organization:** DonJon Marine Co., Inc. **Org. Type:** Corporation
**Name:** Kerri K. Mullins **NJ EIN:** 00221844615
**Title:** Facility Manager
**Phone:** (908) 964-8812 x
**Fax:** (908) 964-7426 x
**Mailing Address:** 1250 Liberty Avenue, Hillside, NJ 07205
**Other:** ( ) - x
**Type:**
**Email:**

---

**Contact Type:** Owner (Current Primary)
**Organization:** DonJon Marine Co., Inc. **Org. Type:** Corporation
**Name:** Arnold Witte **NJ EIN:** 00221844615
**Title:** President
**Phone:** (908) 964-8812 x
**Fax:** (908) 964-7426 x
**Mailing Address:** 1250 Liberty Avenue, Hillside, NJ 07205
**Other:** ( ) - x
**Type:**
**Email:**

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Profile (General)**

**Contact Type:** **Responsible Official**

**Organization:** DonJon Marine Co., Inc.

**Org. Type:** Corporation

**Name:** Kerri K. Mullins

**NJ EIN:** 00221844615

**Title:** Facility Manager

**Phone:** (908) 964-8812 x

**Mailing Address:** 1250 Liberty Avenue
Hillside, NJ 07205

**Fax:** (908) 964-7426 x

**Other:** ( ) - x

**Type:**

**Email:**



G0101505087

## AIR POLLUTION CONTROL PRE-CONSTRUCTION PERMIT

**Section E**

**Facility Name: DONJON MARINA CO INC**
**Facility ID No.: 07796**
**Activity ID No.: PCP020002**

## FACILITY SPECIFIC REQUIREMENTS

### Compliance Plan Table of Contents


| Subject Item and Name | Page Number |
|---|---|
| FC | 1 |
| **Controls:** | |
| CD1 Baghouse | 14 |
| CD2 Water Spray | 16 |
| **Equipment:** | |
| E1 Pneumatic Conveying System | 17 |
| E2 Screw Conveyor | 19 |
| E3 Mixer | 21 |
| E4 Engine Generator Set | 24 |
| **Emission Point** | |
| PT1 Baghouse Stack | 26 |
| PT2 Screw Conveyor Discharge | 27 |
| PT3 In-Situ Mixing | 28 |
| PT4 Engine-Generator Set | 29 |
| **Emission Unit** | |
| **U1 Dredged Materials In-Situ Mixing** | |
| OS Summary | 30 |
| OS1 Normal Operation of In-Situ Mixing Operation | 34 |
| OS2 Internal Combustion Engine | 37 |

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

## New Jersey Department of Environmental Protection
## Facility Specific Requirements

**Subject Item:** FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 1 | The permittee may operate the equipment authorized in this permit for only 1,500 hours from the actual startup date of operations. The permittee shall notify the Department of the actual startup date of operations. The permittee must submit a compliance plan change request to the Department pursuant to N.J.A.C. 7:27-8.19 for authorization to operate longer than the 1,500 hours. The Department may approve this request upon review of the report submitted pursuant to Ref. No. 4 under FC of the conditions of this permit. [N.J.A.C. 7:27- 8] | Monitored by hour/time monitor upon occurrence of event, based on an instantaneous determination. The permittee shall monitor the in-situ dredge processing plant startup date and sutdown date, and hours of operation, upon occurrence of event, based on instantaneous determination, during operation. [N.J.A.C. 7:27- 8] | Recordkeeping by manual logging of parameter upon occurrence of event. The permittee shall keep dredge material processing facility's startup and shutdown dates, and hours of operation on-site, for at least five (5) years, readily made available to the Department upon request. [N.J.A.C. 7:27- 8] | Submit a report: As per the approved schedule. The permittee shall submit to the NJDEP Bureau of Air Quality Engineering (BAQEng) a project summary report within sixty (60) days from the date of completion of site operations, or as part of the permittee's written request for permit compliance plan change, whichever is earliest. The project summary report shall include information as per data collected in accordance with Ref. No. 4 under FC of the conditions of this permit. [N.J.A.C. 7:27- 8] |
| 2 | The facility shall install and operate a "Water Spray System" at the bottom cement discharge end of the totally enclosed telescopic steel tube. The "Water Spray System" shall be comprised of at least six (6) nozzle system, with each nozzle capable of handling 4-gpm. Upon project startup, the water spray system will be activated at full capacity, such as all six (6) nozzle operating simultaneously, at 4-gpm per nozzle. The water flow may then be adjusted downward to a flow not to be less than 1-gpm per nozzle. The flow rate of water shall be adjusted as necessary to prevent fugitive emissions. [N.J.A.C. 7:27- 8] | Monitored by documentation of construction at the approved frequency, based on an instantaneous determination at project startup, and upon request by the Department. Documentation of construction shall consist of as-built drawings, specifications and operation logs of the "Water Spray System". Operation logs shall consist of monitoring of water spray usage once per batch, during operation. [N.J.A.C. 7:27- 8] | Recordkeeping by manual logging of parameter at the approved frequency : at project startup and once per batch.. All records and documentation of construction shall be kept on-site for at least five (5) years, readily made available to the Department upon request. [N.J.A.C. 7:27- 8] | None. |



G0101505089

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

## New Jersey Department of Environmental Protection
## Facility Specific Requirements

Subject Item: FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 3 | If visible emissions are observed at the point where cement drops on the surface of the dredge sediment in the barge, the permittee shall immediately cease operations. The permittee shall take all necessary steps to prevent the occurrence of visible emissions prior to resuming of operations (See Ref. No. CD3 of the conditions of this permit). [N.J.A.C. 7:27- 8] | Monitored by visual determination once per batch during operation, based on an instantaneous determination. [N.J.A.C. 7:27- 8] | Recordkeeping by manual logging of parameter upon occurrence of event. The permittee shall manually record the date and time when visible emissions are observed, during the injection of cement on the dredge sediment in the barge. Records shall be kept on-site for a minimum of five (5) years from the date the records are taken, and made available to the Department upon request. [N.J.A.C. 7:27- 8] | Submit a report: Upon occurrence of event. Submit a report to the Metropolitan Regional Office when visible emissions are observed within two (2) days from the time of occurrence, indicating the source of emissions, occurrence date and time, and control measures taken to stop emissions. [N.J.A.C. 7:27- 8] |
| 4 | Portland cement shall be stored only in on-site storage blimps, for the duration of equipment operations. There shall be no storage of cement in open piles. Cement shall be charged into the Pneumatic Conveying System (E1) directly from the Storage Blimp through the Screw Conveyor inlet chamber (E2). [N.J.A.C. 7:27- 8] | | | |
| 5 | There shall be no storage of raw or stabilized dredge sediment or cement in open pile, on-site, at any time, for the duration of equipment operations, as specified in the conditions of this permit. [N.J.A.C. 7:27- 8] | | | |



G0101505090

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Specific Requirements**

**Subject Item:** FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 6 | The permittee shall submit a project summary report pertaining to the operation of the in-situ dredge processing facility, to the NJDEP Bureau of Air Quality Engineering. [N.J.A.C. 7:27- 8] | Monitored by other method (provide description) continuously, based on an instantaneous determination. The permittee shall continuously monitor the operation of the in-situ dredge material processing facility, on-site, such as total amount of dredge material processed, total number of barges processed, amount of cement used, total hours of equipment operations (of E1, E2, E3 and E4), etc. [N.J.A.C. 7:27- 8] | Recordkeeping by manual logging of parameter each month during operation. Project summary report and pertaining documentation, shall be kept on-site for at least five (5) years, readily made available to the Department upon request. [N.J.A.C. 7:27- 8] | Submit a report: As per the approved schedule. The permittee shall submit project summary report to the Bureau of Air Quality Engineering, within sixty (60) days from the completion of equipment operations. The report shall indicate the date and time when in-situ dredging operations were performed and completed. The report also shall include, but not limited to, the total quantity and maximum hourly rate of as-dredged material processed, total quantity and maximum hourly rate of cement used, total hours of equipment operations, number of daily batches, and total number of as-dredge material processing hours per batch, per calendar day. [N.J.A.C. 7:27- 8] |
| 7 | Not withstanding compliance with other provisions of N.J.A.C. 7:27-1 et seq., no person shall cause, suffer, allow or permit to be emitted into the outdoor atmosphere substances in quantities which shall result in air pollution as defined at N.J.A.C. 7:27-5.1 [N.J.A.C. 7:27- 5.2(a)] | Other: Observation of plant operations. [N.J.A.C. 7:27- 8.13(a)]. | Other: Maintain a copy of all information submitted to the Department. [N.J.A.C. 7:27- 8.13(a)]. | Notify by phone: Upon occurrence of event. A person who causes a release of air contaminants in a quantity or concentration which poses a potential threat to public health, welfare or the environment or which might reasonably result in citizen complaints shall immediately notify the Department. Such notification shall be made by calling the Environmental Action Hotline at (877) 927-6337. [N.J.S.A. 26:2C-19(c)] |
| 8 | The permittee shall not construct, reconstruct, install or modify a significant source without first obtaining a preconstruction permit under N.J.A.C. 7:27-8. This does not apply when conducting only normal repair or maintenance of control apparatus or equipment as defined at N.J.A.C. 7:27-8.1 and N.J.A.C. 7:27-8.3(i) [N.J.A.C. 7:27-8.3(a)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(a)] |

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

## New Jersey Department of Environmental Protection
## Facility Specific Requirements

**Subject Item:** FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 9 | The permittee shall not operate (nor cause to be operated) a significant source without a valid operating certificate. This condition does not apply when conducting only normal repair or maintenance of control apparatus or equipment as defined at N.J.A.C. 7:27-8.1 and N.J.A.C. 7:27-8.3(i). [N.J.A.C. 7:27- 8.3(b)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(b)] |
| 10 | The permittee shall not take any action which requires a permit revision, compliance plan change, seven-day-notice change, amendment, or change to a batch plant permit, under any applicable provision at N.J.A.C. 7:27-8.17 through 8.23, without complying with that applicable provision. This condition does not apply when conducting only normal repair or maintenance of control apparatus or equipment, as defined at N.J.A.C. 7:27-8.1 and N.J.A.C. 7:27-8.3(i). The permittee shall review the provisions of N.J.A.C 7:27-8.18 through 7:27-8.21 to determine the appropriate type of request to file. [N.J.A.C. 7:27- 8.3(c)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(c)] |
| 11 | The permittee shall file a permit revision request and receive approval from the Department prior to increasing any maximum allowable emission limit, increasing actual emissions, to a rate or concentration greater than a maximum allowable emission limit, causing the emissions of a new air contaminant, using a new raw material, reconstructing equipment, changing the ground level concentration of an air contaminant in an area where the public has access, replacing the permitted source, or constructing or installing a new significant source. [N.J.A.C. 7:27- 8.18] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.18] |



G0101505092

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Specific Requirements**

**Subject Item:** **FC**

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 12 | The permittee shall file a compliance plan change request and receive approval from the Department prior to decreasing the frequency of testing monitoring, recordkeeping or reporting; changing the monitoring method; changing a level, rate or limit of an operational parameter included in the conditions; or reducing a source's potential to emit. [N.J.A.C. 7:27- 8.19] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.19] |
| 13 | At least seven days prior to proceeding with a physical or operational change that is outside the scope of activities allowed by this permit, but will not increase emissions over the allowable emissions and will not alter the stack characteristics, the permittee shall file a seven-day-notice change. The permittee may proceed with the proposed changes seven days after such notice is filed with the Department. [N.J.A.C. 7:27- 8.20] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.20] |
| 14 | The permittee shall file an amendment within 120 days of making any change of the information contained within Section D of this permit ( Facility Profile), changing the name, number or designation of any equipment or stack covered by this permit, changing the parameters of a stack in such a way to reduce the ground level concentration of an air contaminant, or correction of a typographical error that will not result in an increase of actual or allowable emissions. [N.J.A.C. 7:27- 8.21] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.21] |
| 15 | The permittee shall make this permit, together with any amendments, seven-day-notices, or other documents related to this permit, readily available for inspection on the operating premises. [N.J.A.C. 7:27- 8.3(d)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(d)] |



G0101505093

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Specific Requirements**

**Subject Item:** FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 16 | The permittee shall not use or cause to be used the equipment or control apparatus specified in this permit unless all components connected or attached to, or serving, the equipment or control apparatus, are functioning properly and are in compliance with all provisions of this permit. [N.J.A.C. 7:27- 8.3(e)] | None. | None. | As indicated in this permit Comply with the requirement: At no specified schedule. [N.J.A.C. 7:27- 8.3(e)] |
| 17 | This permit is not transferable either from the location authorized in this permit to another location, or from any one piece of control apparatus or equipment to another piece of control apparatus or equipment. [N.J.A.C. 7:27- 8.3(f)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(f)] |
| 18 | The permittee is fully responsible for compliance with N.J.A.C. 7:27-8 and with this permit and certificate, including adequate design, construction and operation of the source, even if employees, contractors, or others work on or operate the permitted source. If the Department issues any other requirement with the force of law, such as an order, which applies to the source, the permittee is also responsible for compliance with that requirement. [N.J.A.C. 7:27- 8.3(g)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(g)] |
| 19 | This permit does not relieve the permittee from the obligation to obtain all necessary permits from other governmental agencies and to comply with all other applicable Federal, State, and local rules and regulations. [N.J.A.C. 7:27- 8.3(h)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(h)] |



G0101505094

**DONJON MARINA CO INC (07796)**
**PCP020002**

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Specific Requirements**

**Subject Item:** **FC**

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 20 | The permittee shall not suffer, allow, or permit any air contaminant detectable by the sense of smell to be present in the outdoor atmosphere in such quantity and duration which is, or tends to be, injurious to human health or welfare, animal or plant life or property, or would unreasonably interfere with the enjoyment of life or property. This shall not include an air contaminant which occurs only in areas over which the permittee has exclusive use or occupancy. In determining whether an odor unreasonably interferes with the enjoyment of life or property, the Department shall consider all of the relevant facts and circumstances, including, but not limited to, the character, severity, frequency and duration of the odor, and the number of persons affected thereby. In considering these and other relevant facts and circumstances, no one factor shall be dispositive, but each shall be considered relevant in determining whether an odor interferes with the enjoyment of life and property and, if so, whether such interference is unreasonable considering all of the circumstances. [N.J.A.C. 7:27- 8.3(j)] | Other: Observation of plant operations. [N.J.A.C. 7:27- 8.3(j)]. | Other: Maintain a copy of all information submitted to the Department. [N.J.A.C. 7:27- 8.3(j)]. | Notify by phone: Upon occurrence of event. The permittee shall report any operation of the equipment which may cause a release of air contaminants in a quantity which poses a potential threat to public health, welfare, or the environment or which might reasonably result in citizen complaints. The permittee shall immediately notify the Department of any non-compliance by calling the Environmental Action Hotline at (877)927-6337. [N.J.S.A. 26:2C-19(e)] |
| 21 | The Department and its representatives have the right to enter and inspect any facility or property in accordance with N.J.A.C. 7:27-1.31. [N.J.A.C. 7:27- 8.3(m)] | None. | None. | None. |



G0101505095

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

## New Jersey Department of Environmental Protection
## Facility Specific Requirements

Subject Item: FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 22 | There shall be an affirmative defense to liability for penalties for a violation of this permit occurring as a result of an equipment malfunction, an equipment start-up, an equipment shut-down, or during the performance of necessary maintenance. The affirmative defense shall be asserted and established as required pursuant to P.L. 1993. c. 89 (adding N.J.S.A. 26:2C-19.1 through 2C-19.5) and any rules the Department promulgates thereunder, and shall meet all of the requirements thereof. There shall also be an affirmative defense to liabilities for penalties or other sanctions for noncompliance with any technology based emission limitation in this permit, if the noncompliance was due to an emergency as defined in N.J.A.C. 7:27-22.1, provided that the affirmative defense is asserted and established in compliance with 40 CFR 70.6(g) and meets all requirements thereof. [N.J.A.C. 7:27- 8.3(n)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.3(n)] |
| 23 | The permittee shall not cause or use the equipment specified in this permit in a manner that will result in the emission of any air contaminant not listed in the Conditions of Approval set forth in the "Facility Specific Requirements" at a rate equal to or higher than the applicable reporting threshold set forth at N.J.A.C. 7:27-8 Appendix I, Table A or B. [N.J.A.C. 7:27- 8.4(k)1] | None. | None. | As indicated in this permit Comply with the requirement: At no specified schedule. [N.J.A.C. 7:27- 8.4(k)1] |
| 24 | Any person to whom the Department has issued a preconstruction permit or certificate shall comply with all terms and conditions of any order related to the preconstruction permit or certificate. [N.J.A.C. 7:27- 8.13(a)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.13(a)] |



G0101505096

DONJON MARINA CO INC (07796)
PCP020002

Date: 9/19/2002

**New Jersey Department of Environmental Protection**
**Facility Specific Requirements**

Subject Item: FC

| Ref.# | Applicable Requirement | Monitoring Requirement | Recordkeeping Requirement | Submittal/Action Requirement |
|---|---|---|---|---|
| 25 | The permittee shall maintain all records required in the Conditions of Approval set forth in the "Facility Specific Requirements" for a period of five calendar years from the calendar year within which the record was generated. [N.J.A.C. 7:27- 8.13(a)] | None. | Other: Maintain records for a period of five calendar years [N.J.A.C. 7:27- 8.13(a)]. | None. |
| 26 | The Department may change the conditions of approval of any approved certificate to operate at the time of renewal of a temporary operating certificate; at the time of approval or renewal of a five-year operating certificate; or at any time during the period a certificate is in effect, if the Department determines that such change is necessary to protect human health or welfare or the environment. [N.J.A.C. 7:27- 8.13(b)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.13(a)] |
| 27 | Upon request of the Department, the permittee shall submit to the Department information relevant to the operation of equipment and control apparatus including all information specified at N.J.A.C. 7:27-8.13(c). [N.J.A.C. 7:27- 8.13(c)] | None. | None. | Demonstrate compliance: Upon occurrence of event. [N.J.A.C. 7:27- 8.13(c)] |
| 28 | If the conditions of this permit or certificate to operate require the Department to incur any of the following charges, the permittee shall reimburse the Department for the full amount of these charges: (1) The charges billed by any phone company for the maintenance of a dedicated telephone line required by this permit or the certificate to operate for the electronic transmission of data; or (2) The charges billed by any laboratory for performing the analysis of audit samples collected pursuant to testing or monitoring required by this permit or certificate to operate. [N.J.A.C. 7:27- 8.13(g)] | None. | None. | Comply with the requirement: Upon occurrence of event. [N.J.A.C. 7:27- 8.13(g)] |



G0101505097