98-3H-19
Air Permitting

# PERMIT RESPONSE FORM

**New Jersey Department Of Environmental Protection**
**Environmental Regulation**
**Air Quality Permitting Program**
**P.O. Box 027**
**Trenton, NJ 08625-0027**

July 20, 1999

MARK TALARICO
PROJECT MANAGER
CONSOLIDATED TECHNOLOGIES INC
1717 SWEDE ST
BLUE BELL, PA 19422

RE: General Permit (Activity ID No.: GEN990001), DREDGE MATERIAL RECYCLING FACILITY (Facility ID No.: 12115), 1 LINDEN AVE E, Jersey City, Hudson County

Dear Sir/Madam:

The Department of Environmental Protection (Department) has received your registration for the above referenced General Permit (designated Solid Receiving and Storage).

The *Effective Date of Registration* is June 4, 1999. The operational authority under this General Permit will expire five (5) years from the effective date. For those facilities that receive a Title V Operating Permit while a General Permit is effective, the expiration date of the General Permit becomes that of the Operating Permit.

Six (6) months prior to the expiration of the operational authority under this General Permit, a renewal notification and form will be sent from the Department to the Permitee. For the operational authority to remain in effect, the Permitee must complete and return the Registration renewal form, with the appropriate fees, to the Department. For those facilities that receive a Title V Operating Permit, there is no need to renew the General Permit; renewal of the General-Permit will occur when the Operating Permit is renewed.

This General Permit is issued under the authority of Chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct and operate the above referenced equipment, or equipment and control devices only in accordance with all provisions of the General Permit.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of New Source Review

# JERSEY CITY SITE PLAN

98-311-19
Permits.

**RESOLUTION OF THE PLANNING BOARD OF THE CITY OF JERSEY CITY**

**APPLICANT:** **CONSOLIDATED TECHNOLOGIES, INC.**

**FOR :** **PRELIMINARY SITE PLAN APPROVAL**
**FOOT OF LINDEN AVENUE**
**BLOCK 1507, LOT 10C**

**CASE NO. :** **P99-28**

**WHEREAS,** the applicant, **CONSOLIDATED TECHNOLOGIES, INC.** per **Schumann, Hanlon, Doherty, McCrossin & Paolino** (Brian C. Doherty, Esq., appearing) made application to the Planning Board of the City of Jersey City, County of Hudson and State of New Jersey, for a preliminary site plan approval to wit: Calendar No. P99-28 to construct a dredge material recycling facility at the foot of Linden Avenue, Lot 10C, Block 1507 in Jersey City, New Jersey.

**WHEREAS,** it appears that due notice of a hearing on the above said application before the Planning Board of the City of Jersey City, on August 17, 1999, at 5:30 p.m., was duly published as prescribed in the Zoning Ordinance of the City of Jersey City; and

**WHEREAS,** the applicant has submitted proof that it has complied with the applicable procedural requirements including the payment of fees and public notices; and

**WHEREAS,** the applicant and its witnesses having been sworn and all testimony having been formally heard for this application and no objectors appearing; and

**WHEREAS,** after consideration of the application and the testimony presented at the meeting, the Planning Board has made the following findings of fact:

RECEIVED
OCT 07 1999
RECEIVED

## FINDINGS OF FACT

1. The applicant is a Pennsylvania based corporation which develops technologies for the beneficial reuse of various waste materials including dredge materials from the New York/New Jersey harbor.

2. The applicant proposes to construct a dredge material recycling facility at the foot of Linden Avenue on property owned by Hugo Schnitzer Neu located on Block 1507, Lot 10C in Jersey City, New Jersey.

3. The applicant's operation is a permitted use under the Greenville Industrial Redevelopment Plan. The applicant's operation is also permitted under the landowner's waterfront permit and is subject to regulations of the Department of Environmental Protection. The applicant proposes to operate the facility on a twelve hour a day, six day a week schedule. The applicant plans to commence construction of the facility prior to November 1, 1999.

4. The planning staff has reviewed the plans of the applicant and recommends approval of this site plan application provided that the applicant complies with the recommendations of the Jersey City Municipal Utilities Authority regarding a proposed connection to handle sanitary sewer system at the Claremont Avenue Catch Basin.

**NOW, THEREFORE, BE IT RESOLVED** that the Planning Board of the City of Jersey City, County of Hudson and State of New Jersey, for the foregoing reasons as well as those stated on the record by the board members which are incorporated herein by reference, approves the within application for preliminary site plan at the foot of Linden Avenue, Block 1507, Lot 10C in accordance with the site plan presented to the Planning Board of the City of Jersey City. Final approval is conditioned upon the following:

1. That the applicant comply with sewage issues raised by the Jersey City Municipal Utilities Authority;
2. That the applicant comply with obtaining the necessary permits from the New Jersey Department of Environmental Protection;
3. That as required by the NJDEP, the applicant establish an air quality monitoring schedule with the New Jersey Bureau of Air Quality or the Jersey City Planning Board staff or both.

| | |
|---|---|
| SUBJECT: | PRELIMINARY SITE PLAN<br>CONSOLIDATED TECHNOLOGIES, INC.<br>FOOT OF LINDEN AVENUE<br>BLOCK 1507, LOT 10C |
| DATED: | AUGUST 17, 1999 |
| CASE NO.: | P99-28 |
| VOTE: | 6-0 |

| COMMISSIONER: | YES | NO | ABSTAIN | ABSENT |
|---|---|---|---|---|
| Jeffrey Kaplowitz, Acting Chairman | x | | | |
| Vincent Frank, Commissioner | x | | | |
| Melissa Holloway, Commissioner | x | | | |
| Scott Seale, Commissioner | x | | | |
| Rev. Rudolph McCullers, Commissioner | x | | | |
| Carmelo Sita, Commissioner | x | | | |

WILLIAM BROMIRSKI, VICE CHAIRMAN
JERSEY CITY PLANNING BOARD

ROBERT COTTER, Secretary
JERSEY CITY PLANNING BOARD

APPROVED AS TO LEGAL FORM:

WILLIAM J. NETCHERT, ESQ.

DATE OF MEMORIALIZATION: 9/28, 1999

# PREPARED FOR:

JERSEY CITY DEPARTMENT OF HOUSING
AND ECONOMIC DEVELOPMENT
DIVISION OF CITY PLANNING
JERSEY CITY, NEW JERSEY

SITE PLAN APPROVED

CHAIRMAN, PLANNING BOARD

SECRETARY, PLANNING BOARD

DATE

NJDEP TWA

Permitting Treatment Works Approval

RECEIVED MAR 03 2000

State of New Jersey

Christine Todd Whitman
Governor

Department of Environmental Protection

Robert C. Shinn, Jr.
Commissioner

February 28, 2000

CONSOLIDATED TECH.
1717 SWEDE ROAD, SUITE109
BLUE BELL, PA 19422

RE: TREATMENT WORKS APPROVAL NO. 99-3155-4G
DREDGE PROCESSING, 1 LINDEN AVENUE
JERSEY CITY, NEW JERSEY

Gentlemen:

There is enclosed a permit issued to you pursuant to Title 58 of the Revised Statutes of New Jersey and in consideration of your application received on September 16, 1999. The approval of the treatment works referenced above is subject to the conditions as noted on the permit.

Within thirty (30) days after completion of the project, two (2) executed copies of the WQM005 Certification of Approval Form, enclosed shall be submitted to the sewage treatment agency for their approval <u>prior to operation</u>. Please note that for direct dischargers to surface and/or ground water, submission to the sewage treatment agency is not required. One executed copy shall be forwarded to:

Bureau of Administration and Management
Division of Water Quality, PO Box 425
Trenton, New Jersey 08625-0425

Failure to submit the certification within thirty (30) days after completion of the project may be grounds for revocation of the permit. Should partial operation be required prior to completion of the entire project, approval will be under the jurisdiction of the local Authority/Municipality. If you have any questions pertaining to this approval, please contact me at (609) 633-1208.

Sincerely,

Nick Horiates

Nick Horiates, Supervising Environmental Specialist
Bureau of Administration and Management
Municipal Finance and Construction Element

WFM317
99-3155-4G
Enclosure
c: Earth Res Group, Inc
Municipal Engineer - JERSEY CITY

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

e New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, 1 ...able laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are ... by the permittee upon acceptance of the permit.

| RMIT NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE 109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

iis permit grants permission to:

Construct & operate 5-21,000 gallon capacity settling tanks a sediment filter and 5-21,000 gallon capacity holding tanks for treatment of standing water from dredge barges scows at the Consolidated Tech. Dredge Material Processing facility.

According to plans identified as:
"Dredge Material Processing Facility, Jersey City, Hudson County, New Jersey", prepared by Earth Res Group, Inc., dated 01/11/98, unrevised, drawing no. 98-311-004.

and according to specifications entitled:
"Barge Dewatering Treatment System", signed and sealed by Matthew M. Seng, P.E., dated 01/19/00.

SPECIAL PROVISOS:

1. That the permittee shall conform to all effluent and monitoring requirements stipulated in the NJPDES Permit for this facility or any modification thereof, unless otherwise permitted by the Department.

2. That the operation of the works shall be under the supervision of a licensed operator on the first day of operation of the works and continually thereafter in accordance with N.J.S.A. 58:11-64 and amendments thereto. The operator shall meet the requirement for N-2 classification or equivalent, pursuant to the provisions of N.J.A.C. 7:10A-1.14.

Page # 1 -- permit is continued on next page

*Local Agency approval required prior to operation*

EXPIRATION DATE: This permit shall expire if construction is not initiated by

Approved by the Department of Environmental Protection

______________________ ______________
Date

FR-004
98

*(General Conditions are on Reverse Side*

G0100300292

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

: New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same applica... ...ble laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which a... ...oy the permittee upon acceptance of the permit.

| RMIT NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE 109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

is permit grants permission to:

3. That this permit is subject to the additional general conditions specified on Attachment A (Form WFR-004A), which is incorporated herein by reference, as part of this approval.

4. That the Department's review of this industrial treatment works has been limited to the administrative aspects of the application. For the technical aspects of the project, the Department has relied upon the certification by the N.J. Licensed Professional Engineer (named below) responsible for the design of the treatment works, stating:

   a. The proposed treatment works, as designed, will enable the facility to meet all applicable Federal, State and local effluent limitations, conditions and/or requirements;

   b. The proposed treatment works or contributing facility will not dilute any portion of its waste stream for the purpose of meeting any applicable NJPDES effluent limitation or condition;

   c. The permittee currently holds a valid final NJPDES permit, General permit authorization, or for indirect dischargers, the applicant is specifically exempted by the Department.

Name of Certifying P.E. - Matthew M. Seng, P.E.
Date of Certification - 08/20/1999 ********** License No. - 38697

Disposal of treated effluent into the Claremont Channel-Upper New York Bay, in accordance with NJPDES Permit No. NJ0134015 for this facility.

Page # 2 -- this is the final page

*Local Agency approval required prior to operation*

EXPIRATION DATE: This permit shall expire if construction is not initiated by 02/28/02

Approved by the Department of Environmental Protection

[signature]

Eugene J. Chebra, P.E., Bureau Chief, BAM, MWA

02/28/00
Date

FR-004
98

(General Conditions are on Reverse Sid

G0100300293

# ATTACHMENT A

## ADDITIONAL CONDITIONS FOR GENERAL INDUSTRIAL TWAs

1. That the storage and/or disposal of any sludge or residue resulting from the operation of the treatment facility approved herein shall be in conformance with the applicable requirements and provisions of N.J.A.C. 7:14A-20 et seq. and/or N.J.A.C. 7:26:1-1 et seq.

2. That no sewage or industrial wastes shall bypass treatment except in conformance with the applicable NJPDES Permit and/or N.J.A.C. 7:14A-2.5, or other applicable regulatory requirement, and that all sewage or industrial wastes arriving at the treatment works to which the approval relates shall be treated by each and every process comprising said treatment works.

3. That no wastewater shall be treated by said works or portion thereof until a professional engineer licensed to practice in this State has certified that the project has been inspected under his/her supervision and constructed according to approved plans and specifications and that the works are adequate to meet all applicable Federal, Interstate and State effluent limitations. If any changes are made, "as-built" plans and specifications shall be submitted and certified by the professional engineer responsible.

4. That any change in discharge amount, characteristics or treatment which will result in the facility to become regulated pursuant to the criteria specified in N.J.A.C. 7:14A-21.8 shall not be initiated prior to the effective date of a NJPDES/SIU permit issued by the Department.

5. That for facilities which discharge directly into surface waters and/or ground waters of the State, the permittee shall conform to all effluent and monitoring requirement stipulated in the NJPDES Permit for this facility, or any modification thereof, unless otherwise permitted by the Department.

# CERTIFICATE OF OCCUPANCY

30 MONTGOMERY STREET-SUITE 411
JERSEY CITY 07302
201-547-5055

# CERTIFICATE IDENTIFICATION

Control #: 6490 Permits
Permit #: 20000077

| | | | |
|---|---|---|---|
| Block: | 1507 Lot: 10.C | Home Warranty No: | [illegible] |
| Work Site Location: | FOOT OF LINDEN AVENU | Type of Warranty Plan: | [ ] State [ ] Private: |
| Owner in Fee: | Consolidated Technologies | Use Group: | F-1 |
| Address: | 1717, Swede Road | Maximum Live Load: | 0 |
| | Blue Bell, PA 19422 | Construction Classification: | |
| Telephone: | 610 | Maximum Occupancy Load: | |
| Contractor: | Consolidated Technologies | Certificate Exp Date: | |
| Address: | 1717 Swede Road | Description of Work/Use: | Construct A Dredge Materials Processing Facility. |
| Telephone: | Blue Bell, PA 19422 | Construction Cost: | $350,000.00 |
| | 610 | Tax Collector Approval | Date |
| Lic. No./ Bldrs. Reg.No.: | | Water & Sewer Approval | Date |
| Social Security No.: | Federal Emp. No.: 23-2897350 | | |

[ X ] CERTIFICATE OF OCCUPANCY

This serves notice that said building or structure has been constructed in accordance with the New Jersey Uniform Construction Code and is approved for occupancy.

[ ] CERTIFICATE OF APPROVAL

This serves notice that the work completed has been constructed or installed in accordance with the New Jersey Uniform Construction Code and is approved. If the permit was issued for minor work, this certificate was based upon what was visible at the time of inspection.

[ ] TEMPORARY CERTIFICATE OF OCCUPANCY/COMPLIANCE

If this is a temporary Certificate of Occupancy or Compliance the following conditions must be met no later than or the owner will be subject to fine or order to vacate.

[ ] CERTIFICATE OF CLEARANCE-LEAD ABATEMENT 5:17

This serves notice that based on written certification, lead abatement was performed as per NJAC 5:17 to the following extent:

[ ] Total removal of lead-based paint hazards in scope of work

[ ] Partial or limited time period(_____ years); see file

[ ] CERTIFICATE OF CONTINUED OCCUPANCY

This serves notice that based on a general inspection of the visible parts of the building there are no imminent hazards and the building is approved for continued occupancy.

[ ] CERTIFICATE OF COMPLIANCE

This serves notice that said potentially hazardous equipment has been installed and/or maintained in accordance with the New Jersey Uniform Construction Code and is approved for use until______

Michael Regan · 4-14-08

MICHAEL J. REGAN
Construction Official

Fee 150.00
Paid [X] Check No 01469
Collected By [illegible]

U.C.C 360 (rev. 3/96)

1 - APPLICANT 2 - OFFICE 3 - TAX ASSESSOR 4 - RECYCLING

G0100300296

# NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION

# OFFICE OF DREDGING AND SEDIMENT TECHNOLOGY

# ACCEPTABLE USE DETERMINATION

State of New Jersey
Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

December 10, 2003

Mr. Steven F. O'Hara
Great Lakes Dredge & Dock Company
2122 York Road
Oak Brook, Illinois 60523-1981

RE: Acceptable Use Determination (AUD)
Contract Area 2A of the Port Jersey 41' Navigation Channel

Dear Mr. O'Hara:

This letter is forwarded in response to your request dated December 2, 2003, for an Acceptable Use Determination (AUD) to allow for the beneficial use of the 688,000 cubic yards ($yd^3$) of dredged material from Contract Area 2A of the Port Jersey 41' Navigation Channel at the F.D.P. Enterprises site in Secaucus N.J. The 688,000 $yd^3$ of dredged material will be first processed at the Clean Earth Dredging Technologies, Inc. (CEDTI) Claremont Channel Dredged Material Processing Facility in Jersey City, N.J. prior to trucking and placement at the F.D.P. Enterprises site. This 12/2/03 request is in response to the condition of the Federal Consistency/Water Quality Certificate issued on September 18, 2003, by the New Jersey Department of Environmental Protection (Department or NJDEP) that required the identification of the upland placement site for the non-HARS material once the bidding process for the contract had been completed.

The Department has reviewed the analytical data submitted by CEDTI in support of the AUD request for placement of this material at the F.D.P. Enterprises site. A review of the data indicates that the data meet the placement criteria for the F.D.P. site established by the September 24, 2003 Remedial Action Workplan Approval. Therefore the dredged material is in compliance with the conditions stated in the NJDEP's September 24, 2003 letter that established the conditions of fill acceptance at the F.D.P. Enterprises' Secaucus site.

Therefore, this letter shall serve as the Department's Acceptable Use Determination for the placement of approximately 688,000 $yd^3$ of material dredged from the Contract Area 2A of the Port Jersey 41' Navigation Channel at the F.D.P. site in New Jersey, subject to the following conditions:

1) The material shall be amended with the CEDTI proprietary mix (10%-25% added by weight) as approved in the AUD issued to the CEDTI on May 10, 1999. CEDTI shall comply with all conditions imposed in the WDP/AUD issued on May 10, 1999 for the dredged material processing facility.

2) The material shall be placed at the F.D.P. Enterprises site consistent with the Remedial Action Workplan approval dated September 24, 2003 and any amendments, changes or modifications thereto.

3) CEDTI shall comply with all conditions imposed in the NJDEP Water Quality Certificate (File No. 0906-92-0006.5) and Stream Encroachment Permit (File No. 0906-92-0006.6) issued for the F.D.P. Enterprises site on December 20, 2000 and July 20, 2001, respectively.

4) All trucks used to transport the processed dredged material to the F.D.P. Enterprises site shall be tarped during transit.

5) The US Army Corps of Engineers shall submit a modification request of the September 18, 2003 Federal Consistency/Water Quality Certificate to include the F.D.P. Enterprises site as the upland management and placement site for this 688,000 $yd^3$ of non-HARS material. All other terms and conditions of the September 18, 2003 Federal Consistency/Water Quality Certificate for the Contract Area 2A of the Port Jersey 41' Navigation Channel remain in full force and effect.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Richard DeWan for

Suzanne U. Dietrick,
Office of Dredging and Sediment Technology

C: Richard Tomer, Chief, Regulatory Branch, U.S. Army Corps of Engineers, NY District
Richard Gimello, Executive Director, Office of Maritime Resources
Steven Sands, CEDTI (via facsimile)
Gary Greulich, NJDEP, BNFO

Kaydee McGuckin
NYSDEC
Hunters Point Plaza
47-40 21st St.
Long Island City, NY 11101

# APPENDIX 2

## EIC ASSOCIATES DREDGE MATERIAL PROCESSING FACILITY PERMITS

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | |
|---|---|
| Permit No. 0714-05-0003.1 WFD 050001 | Application No. 0714-05-0003.1 WFD 050001 |

| | | |
|---|---|---|
| Issuance Date December 7, 2005 | Effective Date December 7, 2005 | Expiration Date December 7, 2010 |
| Name and Address of Applicant<br>148 Doremus Avenue, LLC<br>140 Mountain Avenue, Suite 303<br>Springfield, NJ 08540 | Name and Address of Owner<br><br>Same As Applicant | Name and Address of Operator<br><br>Same as applicant |
| Location of Activity/Facility *(Street Address)*<br>148 Doremus Avenue, LLC<br>148-182 Doremus Avenue<br>Newark, Essex County<br>Lots: 12 and 14 Block: 5011 | Issuing Division<br><br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 58:10A<br>NJSA 12:5-3 |

| | |
|---|---|
| Type of Permit: Waterfront Development Permit | Maximum Approved Capacity, if applicable |

This permit grants permission to:

Redevelop the former Hess Terminal at 148 Doremus Avenue for the operation of a dredged material processing facility. This shall consist of the construction of a 30' X 96' pre-screening pier #1 that will be used to pre-screen the dredged material, modifying the existing 30' X 30' pier to accommodate a 30' X 96' pier #2 where the screened dredged material will removed from the barge to be processed onsite via two removable conveyors to the onsite pugmill plant, a 75' X 12.5' access road supported on piles to be used for maintenance purposes. The processed material will placed in one of three curing areas each encompassing approximately 5,000 cubic yards using existing masonry walls which will be redesigned and repaired. Material will be held in the curing areas for approximately 1-3 days before being loaded onto trucks to be transported off-site for beneficial use. Other development includes a 35' X 50' truck wheel washing basin and crushed stone cleaning pad and a 55' X 130' detention basin and vortechnic unit to treat and discharge stormwater generated onsite.

The dredged material will be transported to the facility by barge or scow by the dredger. The dredged material is off-loaded at Pier #2 using hydraulic material handlers with a clamshell bucket. The material will be fed into a hopper, which guides it into finger-deck vibratory screens in order to remove oversize (>2 inches in diameter) debris. The material is then conveyed via conveyors and twin screws into the pugmill plant for amendment. The material is then elevator-lifted to a pre-mixing chamber where pozzolonic regents will be fed into the system from a dry additive silo. The dredged materials and reagents drop to the pugmill where mixing takes place. After the material is thoroughly mixed, it will be discharged to a 10 CY surge hopper and then placed into 40-ton trucks for transport to one of three on-site curing cells. It is estimated that the facility will process on average approximately 5,000 cubic yards of treated dredged material per day.

The project is authorized under and in compliance with the following Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing Industry Use (7:7E-7.7), Port Use (7:7E-7.9), Coastal Engineering (7:7E-7.11), Dredged Material Placement on Land (7:7E-7.12), Stormwater Management (7:7E-8.7), and Traffic (7:7E-8.14).

Prepared By: Jeffrey M Thein 12/7/05
Jeffrey M. Thein Date
(See Page 6 of 8 pages for Chief's signature.)

| | |
|---|---|
| Revised Date | Approved by the Department of Environmental Protection<br>Name (Print or Type) ________ Title ________<br>Signature ________ Date ________ |

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

APPENDIX 3

KEARNY KOPPERS SEABOARD DREDGE MATERIAL PROCESSING FACILITY PERMITS

FROM :CASCINO ENGINEERING FAX NO. :9738820511 Jul. 09 2004 10:39AM P3

JUL 09 2004 08:21 FR LAND USE REGULATION 609 292 8115 TO 919738820511 P.02/05

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION
*(See Issuing Division below)*
PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0907-02-0003.3 FHA040001 | Application No. | |
| Issuance Date JUL 0 8 2004 | Effective Date JUL 0 8 2004 | Expiration Date JUL 0 8 2009 |
| Name and Address of Applicant<br>Great Lakes Dredge & Dock Co.<br>2122 York Road<br>Oak Brook, IL 60523 | Name and Address of Owner | Name and Address of Operator |
| Location of Activity/Facility *(Street Address)*<br>Lot: 70 (part)<br>Block: 287<br>Town of Kearny, Hudson County | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50, et. seq. |
| Type of Permit Stream Encroachment | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

Place a Pug Mill and associated conveyors on an existing concrete pad in connection with dredge materials processing facility, located 200 feet northerly of Conrail crossing Hackensack River, within Lot No. 70 (part) of Block No. 287, in the Town of Kearny, Hudson County, New Jersey.

Prepared By: Nabil Andrews
Nabil Andrews

(See page 4 for Bureau Manager's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ____________ Title ____________ |
| | Signature ____________ Title ____________ |

JUL-09-2004 09:31 9738820511 97% P.03

G0100300303

**Terms And Conditions**

**This permit is subject to the following terms and conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way any action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

9. Limit and Extent of Approval

   a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

   b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with the *Standards for Soil Erosion and Sediment Control in New Jersey* (obtainable from local Soil Conservation District offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed **permit acceptance form** has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed **construction notice** shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed **completion report** shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

**Terms And Conditions**

days after completion of the herein approved activities.

12. All excavated material and dredged spoils must be disposed of in a lawful manner outside of any regulated flood plain, open water, freshwater wetlands or adjacent transition areas, and in such a way as to not interfere with the positive drainage of the receiving area.

13. Any future development of this site will require a new Stream Encroachment Permit.

14. Prior to operation of the facility, the permittee shall receive approval of an Acceptable Use Determination submitted to the Site Remediation Program, Office of Dredging and Sediment Technology. Please Cotact Ms. Suzanne Dietrick Site Remediation Program P.O. Box 028 Trenton, NJ 08625.

15. Prior to any land disturbance on the site, the permittee shall submit a plan and receive approval of the same from Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Please contact Mr. George Nicholas Site Remediation Program P.O. Box 413 Trenton, NJ 08625.

16. Care shall be taken by the permittee during construction and operation that no herein permitted activity shall adversely affect existing remedial components, especially the slurry and sheet pile wall in the eastern area of the site.

17. Issuance of this permit is in no way construed as a relinquishment by the State of New Jersey of any tidelands right, title or interest in the subject property or in any land surrounding same.

18. The drawings hereby approved are three (3) sheets prepared by George D. Cascino P.E.-P.P., dated June 2, 2004, last revised July 7, 2004, unless otherwise noted, entitled:

"PROPOSED PUG MILL FACILITY BLOCK 287, LOT 70 (PART) KEARNY, HUDSON COUNTY, NJ."

"SITE PLAN", sheet no. 2 of 4,

"GRADING AND DRAINAGE PLAN", sheet no. 3 of 4, dated May 27, 2004,

"DETAIL PLAN", sheet no. 4 of 4, dated May 27, 2004.

Richard C. Reilly
for Robert B. Piel, Jr., Manager
Bureau of Inland Regulation

7/8/2004
Date



G0100300306

# State of New Jersey

Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
*Commissioner*

**Environmental Regulation**
**Division of Air Quality**
**Air Quality Permitting Element**
**P.O.Box 027**
**Trenton, New Jersey 08625-0027**

## Air Pollution Control Pre-Construction Permit

**Permit Activity ID Number:** PCP040001
**Approval Date:** July 8th, 2004

**Facility ID Number:** 12539
**Expiration Date:** July 7th, 2009

| Mailing Address | Plant Location |
|---|---|
| Attention: Mr. Steven O'Hara | GREAT LAKES DREDGE & DOCK CO |
| Great Lakes Dredge & Dock Co | NEAR FISH HOUSE RD |
| 2122 York Rd | Kearny Town |
| Oak Brook, IL 60523 | Hudson County, New Jersey |

Dear Mr.. O'Hara:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information provided, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supersede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section D. *The permittee may be required to seek additional approvals from the Department, and perform further tests and/or air modeling, to confirm that there is no release of mercury, PCBs and/or any other air contaminants to the ambient air, that would result from the application of the stabilized dredge sediment, at its site of use.*

The Department hereby issues this permit and certificate under the authority of chapter 106, P.L. 1967(N.J.S.A 26:2C-9.2). You may construct, reconstruct, install, or modify the above referenced equipment and/or control apparatus consistent with the approval.

In addition to the facility specific requirements listed in this permit, the facility must comply with all applicable rules and requirements as well as the information contained in the approved application. The facility must also comply with any applicable requirements of the NJAC 7:27-8.1 et.seq. and other state rules summarized in the General Provisions for Pre-Construction Permits. The general provisions for pre-construction permits can be found at www.state.nj.us/dep/aqpp/applying.html. The facility should take note, however, that this website may not always contain the most up-to-date version of these provisions. It remains the facility's responsibility to keep apprised of and comply with all applicable regulations and changes thereto. A copy of current regulations can be obtained from the Department's Website at www.state.nj.us/dep/aqm/, BNA Library, or by calling or writing to your Regional Enforcement Office.

*New Jersey is an Equal Opportunity Employer*

This Air Pollution Control Pre-Construction Permit and Certificate to Operate is being issued as a 5-year operating certificate.

There are a total of 96 pages in this permit including this cover page.

We are also including diskette with an electronic file. This diskette includes the inventories and permit requirements listed in the enclosed hard copy of the Air Pollution Control Permit. Upon importing this information into your Personal Computer with RADIUS software, you will have up to date information in the RADIUS format. This electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file. We encourage you to use the most recent RADIUS version. The RADIUS software, instruction, and help are available at the Department's website at www.state.nj.us/dep/aqpp .

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Preconstruction Permits at (609) 292-2137.

Approved by:

Joel Leon for

Lou Mikolajczyk, Chief
Bureau of Preconstruction Permits

C: file

State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

July 7, 2004

Mr. Steven F. O'Hara
Vice President
Great Lakes Dredge and Dock Company
2122 York Road
Oak Brook, Illinois 60523

RE: Acceptable Use Determination for Dredged Material Processing Facility
Koppers Seaboard Site
City of Kearny, Hudson County

Dear Mr. O'Hara:

The NJDEP, Office of Dredging and Sediment Technology (Office) is in receipt of your letter, dated June 11, 2004, June 29, 2004 and July 6, 2004, in which an Acceptable Use Determination (AUD) application was submitted by Great Lakes Dredge and Dock Company for the operation of a dredged material off-loading and processing facility on the pier area at the Koppers Seaboard site.

The Department hereby issues an Acceptable Use Determination approval for the Koppers Seaboard Processing Facility provided the following conditions are met:

**<u>ACCEPTABLE USE DETERMINATION</u>**

1. This AUD authorizes the processing and off-loading of dredged material at the subject facility provided all conditions included herein are met. No dredged material may be processed at this site unless that dredged material has received a Waterfront Development Permit and/or an Acceptable Use Determination, or a written waiver from these requirements.

2. No dredged material shall be processed at this facility unless an all required permits and approvals have been issued for the placement site if it located in the State of New Jersey.

3. Any dredged material from New Jersey that is processed at the Koppers Seaboard facility that is the placed at a location out of state shall receive written authorization from the applicable state agency for transport and use at that out of state location.

4. All dredged material processed at the Koppers Seaboard facility shall be tested in accordance with the attached protocol entitled "Protocol for the Testing of Processed Dredged Material for Use as Structural Fill". Additional testing may be required to meet other NJDEP regulatory requirements for placement of the material at a specific location.

5. This AUD only authorizes 6-12% Portland Cement as the additive used in the processing of dredged material at the facility. If another additive is to be used at the facility, Great Lakes shall submit a request to amend this AUD and receive written approval from the Department prior to



*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

its use at the facility. That application must include all relevant information found in the Department's dredging technical manual, and any subsequent amendments thereto including but not limited to: the source of additives, Material Data Safety Sheets, etc.

6. Any dredged processed at this facility shall be blended with the approved additive at the ratio used during the analytical testing of dredged material for a specific project.

Operating Conditions

7. Great Lakes shall comply with all conditions specified in the Air Pollution Control Pre-Construction Permit and Stream Encroachment Permit issued for the Koppers Seaboard processing facility.

8. There shall be no discharge of decant water at this site without prior approval of a NJPDES Discharge to Surface Water Permit (DSW) authorizing such discharge. Dredged material shall be dewatered at the dredging site.

9. Any debris removed during the dredging operation shall be loaded onto a deck scow for transport and off-loading at the Great Lakes Staten Island Yard. Debris removed prior to the processing of the material at the Koppers Seaboard site shall be placed in roll-off containers. All debris removed during a dredging project shall be disposed of at an approved construction material disposal facility.

10. Great Lakes shall install a spill plate between the dredge scow and the pier area. The spill plate shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

11. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and re-introduced in the processing operation.

12. Prior to the placement of processed dredged material in the temporary stockpile area, Great Lakes shall submit a plan to the Gary Lipsius of the Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Processed dredged material shall not be stored on site other than in the temporary storage area adjacent to the off-loading crane. Processed dredged material shall not be stored in the temporary storage area for than 96 hours.

13. The temporary storage area shall be maintained in such a manner to prevent air borne release of the material.

14. All trucks used to transport processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

15. The dredged material processing facility shall maintain daily records noting the transportation vehicle identification number (truck and scow), material quantity, source and destination for all dredged material and admixtures entering and leaving the facility. Great Lakes shall submit a semi-annual report that details this information to the Department.

16. Great Lakes shall comply with the O&M plan dated July 2, 2004, and any amendments thereto. The plan shall be kept on site and all employees involved in the dredged material processing facility shall be briefed on the contents of the plan.

17. Any major accidental release of dredged material, admixture or processed dredged material in non-processing areas (surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged, estimated quantity, nature of the discharge, location of the discharge, any action being taken to mitigate the discharge and any other information the Department may request at the time of notification.

18. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any violation of any related permit and their conditions and / or failure to comply with the Department's Acceptable Use Criteria for the end use site.

If you have any questions regarding this letter, please feel free to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology
Site Remediation and Waste Management

C: Michael Millard, NY District
Bryce Wisemiller, NY District
Angelo Trollo, NY District
Gary Lipsius, NJDEP, Site Remediation Program
Scott Douglas, NJDOT, NJMR

Mr. Mitchell Brourman, Project Manager
Beazer East Inc.
c/o Three Rivers Management Company
One Oxford Centre, Suite 3000
Pittsburgh, PA 15219

Mr. Kevin A. Conti
DeCotiis, Fitzpatrick, Cole and Wisler
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

## PROTOCOL FOR THE TESTING OF PROCESSED DREDGED MATERIAL FOR USE AS STRUCTURAL FILL

Revision (11/99)

The specific analytes which must be tested for are listed in the tables in Appendices B, Attachment 1 of the NJDEP technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested include PCB arochlors and dioxin/furan congeners.

Laboratories selected to perform required analyses must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the Office of Quality Assurance (Phone: (609) 292-3950).

Since the dredged material will be treated with other materials that will alter its physical and chemical composition, additional tests must be performed on the end product. The required tests are as follows:

- Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each raw sediment composite. Any water which separates from the raw sediment sample during transport/storage (i.e., porewater) must be re-mixed with the solid components of the sediments prior to forming the composite samples; this porewater must not be decanted from the sediment sample.

- For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of proposed additive with a pre-weighed sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive to composite sediment sample, by weight, will be recorded. The dredged material product to be tested will be formed using the "recipe" (proportions of dredged material and proposed additive) which replicates the actual dredged material product to be used as structural fill on the site. The dredged material product will be pulverized, and each composite sample will be subjected to bulk sediment analyses.

- The dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing as follows:

**Procedure**

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

2. Measure an aliquot of 100 grams of each dredged material product composite sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the

synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples.

3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.

4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24-hour extraction period. (All pH measurements will be taken on the bottle extraction only).

5. Employ the extraction fluid separation procedure described in EPA Method 1311 (TCLP).

6. Analyze the extract for the target analytes identified in the Department's dredging technical manual. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.

7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.

8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.

A final report, including the results of the raw sediment and dredged material product testing, will be submitted to the Department in a series of nine (9) summary data tables:

- Raw sediment bulk sediment chemistry
- Dredged material product bulk sediment chemistry
- Dredged material product MEP results

New Jersey Natural Resources Conservation Program

HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 07006
Telephone: (973) 364-0786
Fax: (973) 364-0784

September 2, 2004

Hudson County Improvement Authority
574 Summit Avenue 54th. Floor
Jersey City,NJ 07306

Re: Kopper's Pug Mill Block 287 Lot 70 (part)
Near Fishhouse Road, Kearny, NJ
HEP File No; 204-H-1926 Plan dtd: 8-2-2004

Dear Applicant:

The District has completed the review of the soil erosion and sediment control plan for the above referenced project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C.290-1.1 et. eq., promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, J.J.S.A.4-24-39 et seq.). Accordingly, the plan has been Certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any of construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone numbers of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or for failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners. <u>Please contact the District if you require assistance implementing the certified soil erosion and sediment control plan. This certification is valid for 3-1/2 years and is limited to the controls specified in this plan. It is not authorized to engage in proposed land use unless such use has been previously approved by the municipality or other controlling agency.</u>

Yours truly,
William Lebeda

William Lebeda.
Supervisor

New Jersey Natural Resources Conservation Program

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

15 BLOOMFIELD AV[illegible]E
NORTH CALDWELL NJ [illegible]5
Telephone: (973) 364-0785
Fax: (973) 364-0784

August 10, 2004

Mr. Norman Guerra, Executive Director
Hudson County Improvement Authority
547 Summit Avenue, 5th Floor
Jersey City, NJ 07306

**Re: Soil Erosion and Sediment Control Plan for Koppper's Pug Mill Facility Only
Fish House Road, Kearny, N.J. Block: 287, Part of Lot: 70
District File No. 204-H-1926**

Dear Mr. Guerra,

The District has received a revised drawing sheet one of one, Issue 2, dated 8/2/2004. It reflects all the changes specified in the District's Conditional Certification letter of July 12, 2004 The Plan review was completed and recommended for certification at the District Board Meeting scheduled for September 2, 2004

This letter will serve as a Temporary Certification to allow work to commence at the above project site prior to the issuance of the Certification provided all other permits have been obtained.

Please remind the agent acting on behalf of the owner they must fill out a District Start Work Notice and file it with the district at least 48 hours prior to start of the actual starting date. Reference the Districts file number in all correspondence.

Sincerely,

William Lebeda

*William Lebeda, Supervisor*

C: Mr. Michael Martello, Construction Official
Mr. Art Fletcher, Great Lakes Dredge & Dock
Ms. Sharon A. Mascaro, P. E., Chief Engineer, NJMC
Ms. Ileana Kafrouni, P.P., AICP, Director of land-Use Management, NJMC
Ms. George D. Cascino, P.E., P.P.

Permit Number: 20050778

Town of Kearny
410 KEARNY AVENUE
KEARNY, NJ 07032
201 - 955-7880
www.kearnyusa.com

Permit Date: 06/27/2005
Update Number:
Control Number: 31032
Application Date: 06/21/2005

# CONSTRUCTION PERMIT

## IDENTIFICATION

### OWNER/PROPERTY DETAILS

Block : 287 Lot : 70 Qualification Code: HM

Work Site Location: NWK/JC TPKE KEARNY
Owner In Fee: H C IMPROVEMENT AUTHORITY
Address: 2 JOURNAL SQ PL-8TH FL
JERSEY CITY NJ 07306
Telephone: 0 -
Use Group(s): U

Contractor: Williams Scotsman, Inc.
Address: 170 Central Avenue
South Kearny NJ 07032
Telephone: (973) - 589-1234
Lic. No. / Bldrs. Reg. No.:
Federal Emp. No.: 52-0665774

is hereby granted permission to perform the following work :

[ X ]BUILDING [ X ]PLUMBING [ ]DEMOLITION
[ X ]ELECTRICAL [ ]FIRE PROTECTION [ ]OTHER
[ ]ELEVATOR DEVICES [ ]MECHANICAL
[ ]ASBESTOS ABATEMENT [ ]LEAD HAZARD ABATEMENT
(Subchapter 8 only)

DESCRIPTION OF WORK:
Installation of (2) office trailers on Koppers Industrial Site.

ESTIMATED COST OF WORK:

| | |
|---|---|
| Cost of Construction: | 0.00 |
| Cost of Rehabilitation: | 188,000.00 |
| Cost of Demolition: | 0.00 |
| Total Cost: | $188,000.00 |

NOTE: If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

MJM Cn 6/27/05
Michael J. Martello Date
Construction Official

PAYMENTS (Office Use Only)

| | |
|---|---|
| Building | $100.00 |
| Electrical | $899.00 |
| Plumbing | $190.00 |
| Fire Protection | |
| Elevator Devices | |
| Mechanical | |
| VolFee (DCA) | |
| AltFee (DCA) | $254.00 |
| Other Fees | |
| CO Fee | $300.00 |
| CCO Fee | |
| Minimum Fee | |
| Total | $1,743.00 |
| All Fees Waived: | No |

| | |
|---|---|
| **Amount to be Paid:** | $1,743.00 |
| Check Number: | 305218 |
| Check amount: | $1,743.00 |

| | |
|---|---|
| Collected by: | cn |
| Receipt No: | |
| Total Cash Amount | |
| Total Check Amount | $1,743.00 |
| Total CC Amount | |
| Grand Total | $1,743.00 |

U.C.C. F170 (rev. 1/04)

G0100300316

# REQUIRED INSPECTIONS

Construction work must be inspected in accordance with the State Uniform Construction Code Regulations N.J.A.C. 5:23-2.18. This agency will carry out such periodic inspections during the progress of work as are necessary to insure that work installed conforms with the requirements of the Uniform Construction Code.

The owner or other responsible person in charge of work must notify this agency when work is ready for any required inspections specified below. Request for inspections must be made at least 24 hours prior to the time inspection is desired. Inspections will be performed within 3 business days of the time in which they are requested. The work must not proceed in a manner which will preclude the inspection until it has been made and approval given.

☐ Required inspections for all subcodes for one- and two-family dwellings are as follows:

1. The bottom of the footing trenches before placement of footings, except that in the case of pile foundations, inspections shall be made in accordance with the requirements of the building subcode.
2. Foundations and all walls up to grade level prior to back filling.
3. Utility service, including septic.
4. All structural framing, connections, wall and roof sheathing and installation; electrical rough wiring, panel and service installation; rough plumbing. The framing inspection shall take place after the rough electrical and plumbing inspections and after the installation of the heating, ventilation and/or air conditioning duct system. The insulation inspection shall be performed after all other subcode rough inspections and prior to the installation of any interior finish material.

☐ Additional required inspections for all subcodes of construction, for other then one- and two-family dwellings, are fire suppression systems, heat producing devices and Barrier Free subcode accessibility, if applicable.

☐ Required special inspections. The applicant by accepting the permit will be deemed to have consented to these requirements:

☐ A final inspection is required for each applicable subcode area before a final Certificate of Occupancy or Approval may be issued. The final inspections include the installation of all interior and exterior finish materials, sealing of exterior joints, mechanical system and other required equipment; electrical wiring, devices and fixtures; plumbing pipes, trim and fixtures; tests required by any provision of the adopted subcodes, Barrier Free accessibility, if applicable; and verification of compliance with NJAC 5:23-3.5, "Posting structures".

☐ A complete copy of released plans must be kept on the job site.

APPENDIX 4

DON JON MARINE DREDGE MATERIAL PROCESSING FACILITY PERMITS

S Jackie
O. Vineland
OOUT PG
Master File

CONFIDENTIAL

State of New Jersey
Department of Environmental Protection

J. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

March 26, 2002

Mr. Kenneth L. Woodruff
Kenneth L. Woodruff & Associates
182 Walton Drive, P. O. Box 42
Morrisville, Pennsylvania 19067-0042

RE: Waterfront Development Permit/Water Quality Certificate Modification
Permit No: 0714-98-0002.1
Project: DonJon Marine / Dredged Material Processing Facility
Location: Port Newark Berths 20 & 22

Dear Mr. Woodruff:

Enclosed, please find the modified Waterfront Development Permit/Water Quality Certificate 0714-98-0002.1 for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. Please be advised that conditions in the permit have been modified as necessary to reflect the changes proposed in your modification application.

This approval is valid for five years from the original effective date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact me at (609) 292-8838.

Sincerely,

Lawrence J. Baier
Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures
C: Richard Gimello, Executive Director, Office of Maritime Resources
Lee W. Zimmerman, Senior Corporate Counsel, SK Services (East), L.C.
Steven Dorrler, Port Authority of NY and NJ

*New Jersey Is an Equal Opportunity Employer*
*Recycled Paper*

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0714-98-0002.1 | | Application No. 0714-98-0002.1 |
| Issuance Date March 26, 2001 | Effective Date May 14, 1998 | Expiration Date May 14, 2003 |
| Name and Address of Applicant<br>DonJon Marine<br>1250 Liberty Avenue<br>Hillside, New Jersey 07205 | Name and Address of Owner<br>Port Authority of NY &NJ<br>260 Kellogg Street<br>Port Newark, NJ 07114 | Name and Address of Operator<br>DonJon Marine<br>1250 Liberty Avenue<br>Hillside, NJ 07205 |
| Location of Activity/Facility *(Street Address)*<br>Algiers St. Port Newark<br>Berths 20 & 22<br>Lot n/a Block n/a | Issuing Division<br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 12:5-3<br>NJSA 58:10A |
| Type of Permit Waterfront Development<br>Water Quality Certificate / AUD | | Maximum Approved Capacity, if applicable |

This permit grants permission to:

Construct and operate a dredged material processing facility located at Port Newark berths 20 and 22. Construction authorized by this permit includes a stormwater containment, collection and storage facility, additive storage blimps, administrative offices and infrastructure as shown on the approved drawings. Dredged material will be brought to the site by barge, sifted to remove large debris, amended with Portland cement in the barge and transported to an approved beneficial use site by barge or to an approved off-loading facility for terrestrial transport. This authorization includes the Department's Acceptable Use Determination, subject to the conditions and limitations expressed herein.

The approved plans are in 1 sheet titled, "PLOT PLAN DREDGE MAT'L PROCESS BERTHS 20/22 – PORT NEWK FOR METAL MGMT.NE/DON JON MARINE," dated February 8, 2002, last revised March 5, 2002, and prepared by B-V Associates.

This permit is authorized under and in compliance with the Rules on Coastal Zone Management governing: Navigation Channels (7:7E-3.7), Ports (7:7E-3.11), Dredged Material Disposal on Land (7:7E-7.12), Water Quality (7:7E-8.4) and Stormwater Management (7:7E-8.7).

Prepared By: [signature]
Lawrence J Baier

(See page 5 for Chief's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ______ Title ______ |
| | Signature ______ Date ______ |

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

NOV-12-2003 16:09 19083535682 98% P.03

G0100300320

State of New Jersey
Department of Environmental Protection

E. McGreevey
Governor

Bradley M. Campbell
Commissioner

## Air Pollution Control Pre-Construction Permit

| | | | |
|---|---|---|---|
| **Permit Activity ID Number:** | PCP020002 | **Facility ID Number:** | 07796 |
| **Approval Date:** | September 19th, 2002 | **Expiration Date:** | September 18th, 2007 |

| Mailing Address | Plant Location |
|---|---|
| Attention: Ms. Kerri K. Mullins<br>DonJon Marine Co., Inc.<br>1250 Liberty Avenue<br>Hillside, New Jersey 07205 | DONJON MARINA CO INC<br>140 MARSH ST<br>Newark<br>Essex County, New Jersey |

Dear Ms. Mullins:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information available, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supercede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section B, which also includes the "General Provisions" under the subject item "FC".

This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate is being issued authorizing DonJon Marine Co., Inc. to operate for 1,500 (one thousand five hundred) hours. If the source is to continue to operate past the 1,500-hours, DonJon Marine Co., Inc. ("the permittee") must submit an application for a compliance plan change pursuant to N.J.A.C. 7:27-8.19. The application must include any information required in this permit, particularly as outlined in Section E, under FC, Reference No. 6 of the conditions of this permit.

The Department will not issue a 5-year Certificate to Operate until and unless the applicant demonstrates compliance with the Conditions of Approval set forth in Section E. This Air Pollution Control Pre-Construction Permit and Continuing Temporary Operating Certificate to Operate may be revoked pursuant to N.J.A.C. 7:27-8.16 should any of the provisions of that regulation become applicable.

There are a total of 61 pages in this permit including this cover page. An electronic file version of this permit will be e-mailed to you. The electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file.

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Air Quality Engineering at (609) 292-2137.

Approved By:

Iclal Atay, Ph. D., Chief
Bureau of Air Quality Engineering

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

NOV-12-2003 16:14 19083535682 97%

G0100300321


OVERALL SITE PLAN B
DETAIL 1
TRACK CURB & TEMP PLUG
PUBLIC BERTH
BERTH 31
ASPHALT
PLAN
SECTION
TYPE "C" PRE-CAST CATCH BASIN
(EXISTING)
DETAIL 2
LEGEND
REFERENCE DRAWINGS
DREDGE MATERIALS

# APPENDIX 5

## FTP INTERMODAL CONTAINER FACILITY PERMITS AND APPROVALS

New Jersey Meadowlands Commission
1 DeKorte Park Plaza Lyndhurst, NJ 07071 Phone: 201-460-1700 Fax: 201-372-0161
www.meadowlands.state.nj.us

# CONDITIONAL ZONING CERTIFICATE

Date Issued: March 28, 2003 File Number: 01-552 File Name: FDP/INTERMODAL CONTAINER FACIL.

| SUBJECT PROPERTY | OWNER INFORMATION | APPLICANT/CONTACT INFORMATION |
|---|---|---|
| Block: 1000 Lot: 1 | Name: Frank Folise | Applicant: Frank Folise |
| Address: SECAUCUS RD | Company: F.D.P. Enterprises | Company: F.D.P. Enterprises |
| Municipality: City of Jersey City | Address: 2200 Secaucus Rd. | Address: 2200 Secaucus Rd. |
| | City/State: North Bergen, N.J. | City/State: North Bergen, N.J. |
| | Zip: 07047 Phone: (201) 348-6300 | Zip: 07047 Phone: (201) 348-6300 |

- [x] New Building
- [ ] Additions
- [ ] Tanks
- [ ] Fences
- [ ] Recycling Areas
- [ ] Antenna
- [ ] Towers
- [x] Site Improvements
- [ ] Interior Alteration Related to Use Change
- [x] Fill Stockpile

**DESCRIPTION OF WORK**

This Office has recently completed its review of your zoning certificate application and related plans for a 4,536 SF gatehouse, 80 FT diameter salt dome and associated site improvements, including fill/stockpile operations, located on Block 1000, Lots 1, 6, 12, Block 1001, Lot 1, Block 1002, Lot 1, and Block 1050, Lot 1.

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

See Attachment A for conditions of approval.

This letter shall serve as your Conditional Zoning Certificate, designated CZC-01-552, and shall be valid for a period of one year.

**THIS IS NOT AN APPROVAL TO START CONSTRUCTION.** Applications must be made to the City of Jersey City for a building permit.

Please find enclosed a copy of the approved plan(s) as follows:

See Attachment B for a list of approved plans.

G0100300324

01-552
FDP/INTERMODAL CONTAINER FACIL.

The applicant is hereby advised of his responsibility to investigate and obtain all federal, state and local permits which may pertain to his proposal or project. The New Jersey Meadowlands Commission will not be held liable for any damage which may result from the applicant's failure to obtain the approvals from all respective agencies having jurisdiction. This Office must receive copies of all federal, state, and local permits which may pertain to the proposal before it will issue a Certificate of Completion. If this file is related to the construction of new buildings and additions, please find enclosed a partially completed Elevation Certificate which must be completed by a Professional Land Surveyor and returned to this Office together with a signed and sealed as-built plan before a Certificate of Completion is issued.

Any person who claims to be aggrieved by this decision may request an appeal pursuant to N.J.A.C. 19:4-6.25(b). A written request for such an appeal must be filed, by certified mail, with the Office of the Chief Engineer within fifteen (15) days of the date of this decision. The request for an appeal shall specify the grounds therefore. Upon grant of the request for an appeal, the Executive Director or his designee shall transmit the matter to the Office of Administrative Law for a hearing.

If there are any questions regarding this approval, please contact Sharon A. Mascaro of this Office at (201) 460-4689.

If you should have any questions regarding the building permit process, please contact Ralph Venturini of this Office at (201) 460-4639.

RECOMMENDED BY: [signature]
*Sharon A. Mascaro, P.E.*
*Assistant Chief Engineer*

APPROVED BY: [signature]
*Sara J. Sundell, P.E., P.P.*
*Acting Chief Engineer*

cc: Michael Regan, Jersey City Construction Official
Andrew Graybush, Hudson-Essex-Passaic Soil Conservation District
Kevin Coakley, Esq.
Steven C. Sands, Clean Earth Dredging Technologies, Inc.
Robert Romano, Ernst, Ernst & Lissenden
HMMC

CONDITIONAL ZONING CE ICATE
ATTACHMENT A
March 28, 2003

01-552
FDP/INTERMODAL CONTAINER FACIL.

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

General conditions:
1. The applicant shall submit a response to the traffic report review prepared by Birdsall Engineering, Inc. dated 3/18/03, within 45 days of the date of this conditional zoning certificate, including any revisions to the plans, acceptable to the NJMC, resulting from the resolution of items in the review.
2. Under this approval, stacking of containers more than two (2) high shall not be permitted.
3. The height of the proposed fence falls under the jurisdiction of the US Customs Service for a bonded warehouse operation. If the use of the facility is changed to a use not requiring US Customs Service approval, then the fence height shall be lowered to a maximum of 8 feet including any barbed wire, in accordance with N.J.A.C. 19:4-6.18(m).

Fill/stockpile permit conditions:
1. The fill/stockpile operation shall be conducted in accordance with the approved site plan, the "Supplemental Information" prepared by Clean Earth Dredging Technologies, Inc. dated 3/17/03, and the engineering report.
2. The site shall be secured/monitored so as to prevent random dumping or unauthorized access.
3. The filled area shall not be used for any purpose other than that which is shown on the approved site plan.
4. Monthly monitoring reports shall be submitted describing the progress of the fill/stockpile operation.
5. Application for acceptance of fill material categorized as "Other Fill Material" shall be made in writing to the NJMC, a minimum of ten (10 ) days prior to proposed delivery of the material. Approval of material shall be at the sole discretion of the NJMC.
6. Upon completion of the fill operation, the site shall be cleared of all equipment and materials.
7. The designated responsible person in charge shall provide full time supervision of the fill/stockpile operation. Upon completion of the operation, both the responsible person in charge and the professional engineer preparing the site plan, shall certify that the fill/stockpile operation was conducted in accordance with the approved plan.
8. Soil Erosion and Sediment Control Plan approval by the County Soil Conservation District shall be submitted to the Commission prior to the start of earthwork operations.
9. All filling operations shall meet the requirements of the NJMC Performance Standards for noise, whereby the maximum permitted sound level on or beyond the subject property boundary line shall not exceed 76 dBA, in accordance with N.J.A.C. 19:4-6.1.

01-552
FDP/INTERMODAL CONTAINER FACIL.

CONDITIONAL ZONING C FICATE
ATTACHMENT B
March 28, 2003

Please find enclosed a copy of the approved plan(s) as follows:

All plans sheets prepared by Ernst, Ernst & Lissenden, dated 8/1/02, unless otherwise noted:

1. "Boundary and Topographic Map", Sheet 1 of 17, last revised 1/22/03.
2. "Overall Plan and Wetlands and Fill Areas Exhibit to accompany Army Corps of Engineers Permit No. 1993-00081", Sheet 2 of 17, last revised 1/22/03.
3. "Site Development Plan", Sheet 3 of 17, last revised 3/17/03.
4. "Site Development Plan", Sheet 4 of 17, last revised 1/22/03.
5. "Site Development Plan", Sheet 5 of 17, last revised 1/22/03.
6. "Landscaping Plan", Sheet 6 of 17, last revised 3/17/03.
7. "Site Lighting Plan", Sheet 7 of 17, dated 1/22/03, no revisions.
8. "Site Lighting Plan", Sheet 8 of 17, dated 1/22/03, no revisions.
9. "Plan of Fill Operation Sequence and Grid Tracking System", Sheet 9 of 17, dated 1/22/03, last revised 3/17/03.
10. "Soil Erosion and Sediment Control Notes and Details", Sheet 14 of 17, last revised 3/17/03.
11. "Wetlands Creation and Enhancement Areas Typical Sections", Sheet 15 of 17, last revised 1/22/03.
12. "Typical Section and Details", Sheet 16 of 17, last revised 1/22/03.
13. "Construction Details", Sheet 17 of 17, dated 5/24/02, last revised 3/17/03.
14. "Gatehouse and Offices", Sheet A-1, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.
15. "Salt Storage Facility", Sheet A-2, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.

# SUPPLEMENTAL INFORMATION

# APPLICATION FOR FILL/STOCKPILE OPERATION

## FDP ENTERPRISES, INC.
## INTERMODAL CONTAINER FACILITY

Block 1000, Lot 1, 6 and 12; Block 1001, Lot 1;
Block 1002, Lot 1; Block 1050, Lot 1
Secaucus Road, Jersey City, Hudson County, NJ

*(last revised 03/17/03)*

| Applicant Information: | Fill Material Contractor Information: |
|---|---|
| F.D.P. Enterprises, Inc.<br>2200 Secaucus Road<br>P.O. Box 1067<br>Secaucus, New Jersey 07096<br><br>Contact: Frank V. Folise, Principal<br><br>Phone: (201) 348-6300<br>Fax: (201) 348-6262 | Clean Earth Dredging Technologies, Inc.<br>2337 North Penn Road<br>Suite 100<br>Hatfield, Pennsylvania 19440<br><br>Contact: Steven C. Sands, President<br><br>Phone: (215) 996-4172<br>Facsimile: (215) 996-5652 |

ENGINEERING REPORT

An Engineering Report, entitled "Soils Report for Proposed Development at Secaucus Road Site – Jersey City, New Jersey – June, 1986" prepared by James C. Anderson Associates of Mt. Holly, New Jersey is attached hereto as required. The Report provides results of a test boring program, classification of existing soils, and base recommendations for building foundations and for placement and compaction of fill material.

SITE PLAN

A set of Construction Plans, including a Site Development Plan, has been previously submitted to the New Jersey Meadowlands Commission ("NJMC"), labeled Drawing C-869 (10 Sheets), as prepared by Mr. Robert J. Romano, P.E. of Ernst, Ernst and Lissenden, Toms River, New Jersey. One (1) additional plan Sheet is enclosed with this Application labeled "Plan for Fill Operation Sequence Grid Tracking System," Drawing C-869, Sheet 1 of 1. The purpose of this plan is discussed in further detail herein.

SUPPLEMENTAL INFORMATION

This supplemental plan is intended to provide additional information and details regarding the proposed operation for filling and grading of the approximately 77.4 acres, including approximately 53.5 acres of wetland area at the referenced site.

The plan further details the allowable criteria for fill material to be received at the subject property. Clean Earth Dredging Technologies, Inc. ("Clean Earth-DTI") has been retained by FDP Enteprises, Inc. (FDP) as the Fill Material Contractor at the FDP Site. As such, Clean Earth-DTI will be contractually responsible for managing the entire fill operation, including testing and analysis, supply, transportation, quality assurance/quality control, placement and compaction, environmental compliance, supervision and traffic control.

Clean Earth-DTI and its sister companies own and operate fixed base soil and dredged material treatment facilities in the Tristate Area. As such, CTI has proposed the use of treated material from several of its recycling facilities, including its Class B Recycling Facility, Clean Earth of Carteret, Inc., as fill for the FDP site.

FDP and Clean Earth-DTI recently met with representatives of the New Jersey Meadowlands Commission ("NJMC") to discuss its requirements for importing of fill material to this site.

## CATEGORIES OF ACCEPTABLE FILL MATERIAL

It was agreed the following categories of material shall be accepted as fill for the FDP Site (the "Fill Material"):

1. Clean Fill – including uncontaminated inert rock, soil, gravel, sand, concrete, recycled crushed glass, clay and ceramic products. Clean Fill material shall generally meet the size limitations as per the NJDEP definition of clean fill (approximately 8 inches in diameter or less). For larger diameter or mixed graded materials, the material shall be intermixed with fine graded fill upon placement such that the proportion of material less than 1-1/2" in diameter is at least 25% greater than the void volumes of material that is greater than 1-1/2".

2. Fill From Class B Recycling Facilities – processed soil from Class B Recycling Facilities, including Clean Earth of Carteret, Inc., in Carteret, New Jersey, that meets all of the respective facilities' Class B permit standards for restricted use in non-residential sites. Such criteria shall be as listed below for Construction Fill.

3. Construction Fill – includes soil fill material that has been tested for priority pollutants that shall not exceed the Non-Residential Direct Contact Soil Cleanup Criteria ("NRDCSCC"). For such fill, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual." Sampling and analysis shall be performed at a frequency of one area composite sample per 5,000 cubic yards of material to be re-used. The analysis shall be performed on a composite sample consisting of adjacent grid samples obtained at a frequency of one sample per 1,000 cubic yards. A minimum of one (1) composite sample per project shall be analyzed.

4. Non-HARS Dredged Material Suitable for Placement at Upland Sites without Processing – includes glacial till material, clay material, sand, gravel, cobbles, and rock, including blasted rock that has been deemed to be suitable for upland placement without processing by the appropriate regulatory agencies, including NJDEP.

5. Amended Dredged Material "ADM" - includes non-rock non-HARS dredged material that has been amended with any or all of the dredge admixtures that have been approved by NJDEP for the CTI Claremont DMRF facility (excluding Municipal Incinerator Ash Residue and Propat®) that meets the NRDCSCC.

6. Other Fill Material – includes fill material not meeting the definition of any other Category of Acceptable Fill Material for FDP Site which shall be shipped directly from project sites. For such "other fill" material, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual," or by such alternate sampling frequency and protocol as shall be mutually agreed in advance by NJMC and FDP. Application for acceptance of this category

of fill material shall be made in writing to NJMC on a case-by-case basis, along with copies of all source information and analytical data reports. Approval of each such application shall be determined by NJMC upon review of the application, in its sole discretion. Any application which has not been approved or denied in writing within ten (10) days of such submittal shall be deemed to be approved.

## FILL OPERATIONS

The following Operational Considerations and restrictions shall apply to the placement of fill at the FDP Site:

1. All fill material will be transported by truck to the FDP parcel by a transportation subcontractor(s) under sequentially numbered Bills of Lading provided by Clean Earth-DTI only to approved sources of Fill Material.

2. All characterization testing, approval and transportation of the fill to the FDP Site will be the responsibility of Clean Earth-DTI or its Engineer. For fill materials requiring project- or source-specific approval from NJMC pursuant to item 6 above, Clean Earth-DTI or its Engineer shall make application to the NJMC for such approval, with approval of the application by NJMC in its sole discretion.

3. Provisions shall be made for stockpiling, re-loading, placement and compaction of these materials, including the post-placement testing and monitoring thereof by FDP or its Contractor or Engineer.

4. Material may be shipped by transportation subcontractor(s) and received at the site on a 24 hours per day, 7 days per week basis, with appropriate advance notice and scheduling with NJMC. Initial operations for receipt of fill material are expected to occur six (6) days per week, between the hours of 6:00 a.m. and 11:00 p.m. Placement of fill material will be restricted to the hours of 7:00 a.m. to 6:00 p.m. as required by NJMC. The Application for Fill/Stockpile Operation form attached as a cover hereto shall incorporate these conditions.

5. Clean Earth-DTI shall establish a gated entrance way for fill delivery truck ingress and egress at the site as detailed in the Detail Plan of Construction Entrance, on Drawing C-869, Sheet 1 of 1, attached hereto. Such entrance shall be manned by a guard/inspector at all times of receipt of fill deliveries. Only trucks carrying the approved and numbered Bills of Lading from authorized sites shall be allowed to access the fill area of the FDP Site. The guard/inspector shall inspect each load of fill material from sources other than CEI owned facilities to ensure the material meets the specifications of the acceptance of material from the particular approved source. Non-conforming material will be rejected and the load diverted from the FDP Site.

6. A grid tracking system as shown on the attached plan Drawing C-869, Sheet 1 of 1 entitled "Plan of Fill Operation Sequence and Grid Tracking System" will be implemented. Upon

delivery, each load of fill will be directed to a numbered grid for placement or stockpiling. For each day's fill placement operations, the grid locations and approximate fill elevations will be documented and cross-referenced to fill deliveries that day in a computerized Fill Tracking System. Copies of the Fill Tracking System report, will be provided to NJMC on a monthly basis, detailing the amount of fill received by source and location, the specific areas (grids) of placement and/or stockpiling occurring in the month, the approximate elevations of fill placement in each grid, and any rejected loads of material for the month.

7. Temporary haul roads in both the wetlands and uplands will be constructed as necessary to facilitate on-site truck travel. Periodic maintenance of these haul roads will be performed during the project to prevent rutting and repair soft spots. Maintenance will consist of re-grading and placing of additional stone material in areas where settlement has occurred or potholes developed. The haul roads will be constructed a minimum of 12-inches of recycled fill (stone, crushed concrete and brick) to be imported by Clean Earth-DTI and stockpiled at the site prior to activities. Spraying of water during construction will be performed as needed to suppress dust development.

8. The construction entrance and the intersection of Secaucus Road at the ingress/egress will be inspected daily to ensure cleanliness. Stone will be replaced as necessary in the Construction Entrance. A mobile street sweeper will be used as necessary to clean Secaucus Road should any material be tracked onto the public roadway.

9. Fill material meeting the more stringent of NRDCSCC and Impact to Ground Water Criteria ("IGWC") only shall be placed in areas within 50 feet of any interface between fill placement areas and surface water including wetlands, the wetland mitigation and enhancement areas, the drainage ditch along Secaucus Road, the Jersey City drainage parcel with 100 feet wide access easement in the center of the property (Block 1000, Lot 13) and Penhorn Creek and in areas underlying buildings as detailed on the attached Sheet 1 of 1 entitled "Fill Operations Sequence and Grid Tracking System."

10. Delivery of fill material is expected to take place over a three (3) to four (4) year period, commencing immediately upon receipt of all permits and approvals and upon the availability of the site to accept fill materials. Stockpiling of materials may occur in advance of actual start of placement activities in upland areas to be designated by FDP, such areas as shown on the attached Plan for Fill Operation Sequence and Grid Tracking System, Drawing C-869, Sheet 1 of 1. In the event of advance stockpiling, the soil erosion and sediment control measures applicable to stockpiles only shall be followed (i.e., installation of silt barrier and hay bales around perimeter of stockpile). Additional soil erosion and sediment control measures will be installed as detailed in the Fill Operations Sequence prior to commencement of Phase 1 Fill Activities.

**USACE Permit No. 1993-00081 For Mitigation and Enhancement of Wetlands and Filling of Wetlands**

**December 2002**

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

December 18, 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Department of the Army Permit No. 1993-00081 Issued to F. D.& P. Enterprises, Inc.

F. D. & P. Enterprises, Inc.
c/o Mr. Kevin Coakley
Connell, Foley LLP
85 Livingston Ave
Roseland, New Jersey 07068-3702

Dear Mr. Coakley:

Enclosed is a Department of the Army permit for your work.

You are required to submit to this office the dates of commencement and completion of your work. Enclosed are two forms for you to use to submit the required dates.

If for any reason, a change in your plans or construction methods is found necessary, please contact us immediately to discuss modification of your permit. Any changes must be approved before they are undertaken.

Sincerely,

Richard L. Tomer
Chief, Regulatory Branch

Enclosure

# DEPARTMENT OF THE ARMY

NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

**IMPORTANT**

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address prior to commencement of any work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Work will commence on or about: ______________________

Name, Address & Telephone Number of Contractor:

______________________ ______________________
Signature of Permittee Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

______________________
______________________
______________________

Place Stamp
Here

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

**IMPORTANT**

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address following completion or cancellation of work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Check and complete applicable item(s) listed below:

____ Work was completed on ____________________.
____ Work will not be performed on the project.
____ Deviation from work authorized in permit is explained below.
____ Other (explain) ________________________________________

____ For dredging projects, list the volume of material dredged, and the amount placed at each disposal location (if more than one).
________ cubic yards placed at ____________________________
________ cubic yards placed at ____________________________
________ cubic yards placed at ____________________________

________________________________ ________________
Signature of Permittee Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

____________________
____________________
____________________

Place Stamp
Here

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

**IMPORTANT**

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address following completion or cancellation of work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Check and complete applicable item(s) listed below:

_____ Work was completed on _______________.
_____ Work will not be performed on the project.
_____ Deviation from work authorized in permit is explained below.
_____ Other (explain) _______________________________

_____ For dredging projects, list the volume of material dredged, and the amount placed at each disposal location (if more than one).
_______ cubic yards placed at _______________
_______ cubic yards placed at _______________
_______ cubic yards placed at _______________

_______________________________ Signature of Permittee

_______________ Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

_______________
_______________
_______________

Place Stamp Here

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

# DEPARTMENT OF THE ARMY PERMIT

Permittee: F.D.& P. Enterprises, Inc.
PO Box 1067
Secaucus, NJ 07096-1067
(201) 348-6300

Permit No.: 1993-00081

Issuing Office: New York District Corps of Engineers

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description:

The permittee is authorized to discharge approximately 1.5 million cubic yards of clean fill material into a total of 53.5 acres of waters of the United States (wetlands) to create fast land to facilitate the expansion of an existing intermodal transfer facility, as shown on the plans prepared by Ernst, Ernst & Lissenden dated August 1, 2002, last revised October 25, 2002.

As mitigation for the loss of 53.5 acres of waters of the United States, the permittee shall undertake on-site and off-site mitigation activities. On-site mitigation activities shall consist of the establishment of approximately 5.4 acres of new wetlands and the enhancement of approximately 25.3 acres of existing wetla[illegible] in accordance with the permittee's plans submitted in letters dated 25 March 19[illegible] and 18 June 1998 (copies attached). Off-site mitigation activities shall consist of the purchase of 40 credit acres from an appropriate wetland mitigation bank.

The discharge of fill material into the approximately 53.5 acres of waters of the United States and all mitigation authorized by this permit shall be performed in accordance with the attached drawings and Special Conditions (A) through (J).

Project Location: IN: adjacent to Penhorn Creek, a tributary of the Hackensack River

AT: City of Jersey City, Hudson County, New Jersey

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on 17 December 2007. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification of this permit from this office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have foun[illegible] We will initiate the Federal and state coordination required to determine if the remains warrant [illegible] recovery effort or if the site is eligible for listing in the National Register of Historic Places.

PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization.

5. If a conditioned water quality certification has been issued for your project, you must comply with the conditions specified in the certification as special conditions to this permit. For your convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of your permit.

Special Conditions:

A) Prior to the onset of the construction authorized herein, the permittee shall provide USACE written verification that 40 acre-credits have been purchased from a wetland mitigation bank approved by USACE. Two copies of this verification document shall be submitted to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

B) The permittee shall comply with all of the terms and stipulations of the Water Quality Certificate issued by the New Jersey Department of Environmental Protection Number 0906-92-006.5 dated December 20, 2000.

C) The permittee shall undertake the authorized filling activities in a manner aimed at reducing impacts upon the general environment. The permittee shall not stockpile fill or other materials in a manner conducive to erosion, or in areas likely to cause high turbidity runoff during storm events. All exposed soils shall be re-vegetated, or otherwise stabilized in a timely manner, to further reduce potential adverse effects. The permittee shall fence off all wetlands and other sensitive ecological areas adjacent to both the project and on-site mitigation areas during construction periods, to prevent equipment and personnel from entering these areas.

D) The permittee shall accomplish on-site compensatory mitigation through the successful establishment of approximately 5.4 acres of wetlands, and enhancement of approximately 25.3 acres of existing wetlands on the project site in accordance with the permittee's letters of March 25, 1998 and June 18, 1998 (copies attached). The permittee shall ensure that the on-site mitigation areas meet the federal wetland criteria outlined in the report entitled "Corps of Engineers Wetlands Delineation Manual", dated January, 1987, and current USACE guidance. The permittee shall ensure that all proposed plantings as part of the compensatory mitigation activities shall have at least an eighty-five (85) percent survival rate. As part of the compensatory mitigation activities, the permittee shall ensure that all on-site wetland areas shall have an eighty-five (85) percent coverage rate of hydrophytic plants (those with a regional indicator status of FAC, FAC+, FACW +/-, or OBL in the report entitled "National List of Plant Species That Occur in Wetlands, Northeast [Region 1] ", published by the U.S. Fish and Wildlife Service). The permittee shall also ensure that the vegetation in the established on-site wetlands does not consist of more than a total of 10% areal coverage of common reed (*Phragmites australis*) and/or purple loosestrife (*Lythrum salicaria*).

E) The permittee shall provide to the New York District annual reports on the status of the on-site mitigation activities which are required by Special Condition D), prepared during the growing season, no later than October 15 in each of the following five (5) years after initiation of the filling activities authorized by this permit. These reports shall include at a minimum information as follows: