PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

1) All dominant plant species, along with their estimated relative frequency and percent cover, shall be identified by using plots measuring 10 feet by 10 feet with at least one representative plot located in each of the habitat types within the mitigation site. The location of each plot shall be identified on the plan view engineering drawing.

2) Vegetation cover maps, at a scale of one inch equals 100 feet, or larger scale, shall be prepared for each growing season.

3) Photographs showing all representative areas of the mitigation site/s shall be taken at least once each year during the period between 1 June and 15 August.

4) Surface water elevations in representative areas of the mitigation site/s shall be recorded twice a month starting in April and ending in October of each year. The location of the water elevation reading sites shall be shown on the plan view engineering drawing.

F) All grading and planting in conjunction with the on-site wetlands mitigation work required in Special Condition (D) shall be completed within three years of the efective date of this permit.

G) The permittee shall ensure that all plantings that are a part of the on-site mitigation effort required in Special Condition (D) shall have an eighty-five (85) percent survival and/or coverage rate which must be met or exceeded at the end of the second growing season following completion of the initial planting/seeding. If the eighty-five (85) percent survival rate is not met at the end of the second growing season, the permittee shall take all necessary measures to ensure the level of survival by the end of the next growing season, including re-planting and re-grading if necessary. In addition, in areas where no individual plantings are currently proposed, if appropriate and sufficient vegetation is not present by the end of the second growing season, the permittee shall take all necessary steps, including individual plantings in order to achieve a plant density comparable to the adjacent wetland.

H) The permittee shall ensure that no mowing of the on-site mitigation area shall occur.

I) The permittee shall assume all liability for accomplishing corrective work for the on-site mitigation should the New York District determine that the on-site compensatory mitigation has not met the requirements of this permit. Should success not be obtained starting with the first year after the completion of on-site mitigation construction activities, the permittee must submit a remediation plan, outlining all practicable steps taken or proposed to be taken to ensure that the success criteria outlined in Special Condition (D) above will be met by the specified due date of the next monitoring report. If the USACE does not find the on-site mitigation satisfactory, an extension of monitoring time may be required to cover any necessary remedial work.

J) The permittee shall restrict, by deed restriction or conservation easement in a form acceptable to New York District, the on-site wetlands mitigation areas of the project site to be preserved in perpetuity as a buffer, in order to ensure the area's preservation for wetland and wildlife resources. Copies of the instrument effecting such easement or deed restriction shall be submitted to the New York District USACE for approval prior to execution. An executed instrument shall be recorded with the Hudson County Registrar of Deeds within one year following the initial plantings/seedings of the mitigation sites.

PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

Further Information:

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

(X) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S. Code 403).

(X) Section 404 of the Clean Water Act (33 U.S. Code 1344).

( ) Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization:

a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.

b. This permit does not grant any property rights or exclusive privileges.

c. This permit does not authorize any injury to the property or rights of others.

d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability: In issuing this permit, the Federal Government does not assume any liability for the following:

a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

d. Design or construction deficiencies associated with the permitted work.

e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision: This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

a. You fail to comply with the terms and conditions of this permit.

b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

**PERMITTEE:** F.D.& P. Enterprises, Inc.
**PERMIT NO.:** 1993-00081

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions: General Condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

_______________________ Dec 3rd 2002
(PERMITTEE) (DATE)
F.D.& P. Enterprises, Inc.

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

_______________________ 17 December 2002
(DISTRICT ENGINEER) (DATE)
John B. O'Dowd
Colonel, U.S. Army
District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below. A copy of the permit signed by the transferee should be sent to this office.

_______________________ _______________________
(TRANSFEREE) (DATE)




**Wetland Mitigation & Impact Map**

ENVIRONMENTAL EVALUATION GROUP

Source: USGS Weehawken Quadrangle
Scale: 1" = 2,000'

Total Wetland Impact = Approx. 53.3 Acres

FIGURE 1
Intermodal Terminal Expansion Project
Block 1000, Lots 1, 5, 12, Block 1001, Lot 1
Block 1003, Lot 1, Block 1050, Lot 1
Jersey City, Hudson County, NJ

Prepared for;
FD&P Enterprises, Inc.

December 1998

SHEET 1 OF 2

WETLANDS UNIMPROVED AREAS=0.76 AC

WETLANDS CREATION AREA= 1.04+0.63+1.91+1.84=5.42 AC

WETLANDS ENHANCEMENT AREAS= 16.71+0.04+1.04+3.21 +3.79+0.25+0.17+0.10=25.31 AC

WETLANDS FILL AREAS= 32.42+16.58+1.60+0.91=51.51 AC
PLUS FUTURE DITCH FILL AREA=0.85 AC.
TOTAL WETLANDS FILL AREA=52.36 ACRE




PLANDS AREAS PRIOR TO CONSTRUCTION =20.25+0.63+1.04=21.92 AC

TOTAL EXISTING WETLANDS PRIOR TO CONSTRUCTION =100.71-21.92=78.79 AC

SHEET. 2 of 2

WETLANDS AND FILL AREAS EXHIBIT TO ACCOMPANY ARMY CORPS OF ENGINEERS PERMIT NO. 1993-00061

ERNST, ERNST & LISSENDEN
ENGINEERS & SURVEYORS

ROBERT J. ROMANO, NJPE # 25906 12-9-92 DATE

G0100300344

NJDEP Water Quality Certificate No. 0906-92-006.5

December 20, 2000

STATE OF NEW JERSEY

Army Corp

DEPARTMENT OF ENVIRONMENTAL PROTECTION
*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0906-92-0006.5 | Application No. Same as Permit No. | |
| Issuance Date DEC 2 0 2000 | Effective Date DEC 2 0 2000 | Expiration Date DEC 2 0 2005 |
| Name and Address of Applicant<br>F.D.P. Enterprises.<br>2200 Secaucus Rd<br>Jersey City, NJ 07047 | Name and Address of Owner<br>Same as applicant | Name and Address of Operator<br>Same as applicant |
| Location of Activity/Facility *(Street Address)*<br>Jersey City, Hudson County<br>1,6&12 1000<br>1 1001<br>1 1002<br>Lot 1 Block 1050 | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 58:10A-1 et seq |
| Type of Permit Water Quality Certificate | Maximum Approved Capacity, if applicable N/A | |

This permit grants permission to:

The Land Use Regulation Program (LURP) of the New Jersey Department of Environmental Protection (NJDEP) has reviewed the referenced application for an Individual Water Quality Certificate (WQC). The proposed activity involves the filling of 53.5 acres of wetlands to facilitate the construction of an intermodal terminal expansion. A WQC has been previously issued for this project under NJDEP File # 0906-92-0006.3.

This project is in compliance with the Rules on Coastal Zone Management, specifically the Special Area Rule for the Hackensack Meadowlands District (7:7E-3.45.

Prepared By: David Bean
David Bean
Bureau of Inland Regulation

(see page 6 for Manager's signature)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ______ Title ______ |
| | Signature ______ Date ______ |

*The word permit means "approval, certification, registration, etc."* (General Conditions are on the Reverse Side)

IN ADDITION TO THE GENERAL CONDITIONS PRINTED ON THE BACK OF PAGE ONE OF THIS PERMIT, THE FOLLOWING CONDITIONS SHALL ALSO APPLY:

9. Limit and Extent of Approval

a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with <u>Standards for Soil Erosion and Sediment Control in New Jersey</u> (obtainable from local Soil Conservation District Offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities

hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed permit acceptance form has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed construction notice shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed completion report shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

12. The proposed activity, is shown on the plans entitled **"Property of F.D.P. Enterprises, Block 1000 - Lots 1,6,&12, Block 1001 – Lot 1, Block 1002 – Lot 1, Block 1050 – Lot 1, Jersey City, Hudson County New Jersey"**, prepared by Ernst, Ernst & Lissenden.

**a. "Grading & Drainage Plan", sheet 1 of 4, dated August 14, 1995, last revised August 3, 1998**
**b. "Grading & Drainage Plan", sheet 2 of 4, dated August 14, 1995, last revised August 3, 1998**
**c. "Typical Section & Details", sheet 3 of 4, dated August 14, 1995, last revised September 1, 1996**

The actions shown on the above referenced plans are hereby approved with the exception of the wetland mitigation shown. See Special Condition 1 below regarding mitigation. **This authorization is valid for five years from the date of this approval. The permittee shall allow an authorized Program representative the right to inspect the construction site.**

The applicant or other affected party, if aggrieved by this decision to authorize the activities specified in this correspondence, may request a hearing on this decision by submitting a written request for an administrative hearing to the Office of Legal Affairs, Attention: Adjudicatory Hearing Requests, Department of Environmental Protection, P. O. Box 402, Trenton, New Jersey 08625-0402 within 30 days of the date of this decision.

Special Conditions:

1. This WQC requires mitigation for the disturbance of 53.5 acres of wetlands. Mitigation shall be accomplished in one of the following ways (either item a or item b immediately below):

a. In lieu of mitigation to be approved by the Land Use Regulation Program of the NJDEP, F.D.P Enterprises may submit a mitigation plan to the Army Corps of Engineers (ACOE) for the ACOE's approval. As part of this option, at the same time that F.D.P Enterprise submits any such mitigation plan to the ACOE, F.D.P Enterprises shall also submit to the NJDEP a complete copy of said mitigation plan and all proposed amendments to its mitigation plan, so that NJDEP can offer its own comments to the ACOE. NJDEP acknowledges receipt of a copy of a proposed mitigation plan submitted by F.D.P..Enterprises to the ACOE on September 10, 1996. Any ACOE approved mitigation plan shall be deemed to have met any mitigation requirement NJDEP has imposed.

b. At least six (6) months prior to construction F.D.P Enterprises shall submit a revised mitigation plan to the Land Use Regulation Program, which demonstrates, to the Department's satisfaction, that wetlands/open water mitigation area will be of equal ecological value to the wetlands and open water eliminated by project related fill, as determined through the proper use of an acceptable wetlands assessment method.

i. Construction of the wetland mitigation project must begin prior to or concurrently with permitted activities disturbing any wetlands as authorized by the permit.

ii. The permittee shall obtain a secured bond, or other surety acceptable to the Department including an irrevocable letter of credit or money in escrow, that shall be sufficient to hire an independent contractor to complete and maintain the proposed mitigation should the permittee default. The performance bond for the construction of the proposed mitigation shall be posted in an amount equal to 115 percent of the estimated cost of construction of the mitigation activity. In addition, a maintenance bond to assure the success of the mitigation shall be posted in amount equal to 30 percent of the estimated cost of construction. The performance and maintenance bond will be reviewed annually and shall be adjusted to reflect current economic factors. (<u>The Department procedures for posting and releasing the bonds are attached to the permit.</u> I anticipate using this last underlined sentence at some point in the future. At the present time the procedures are not developed);

iii. This permit DOES NOTBECOME EFFECTIVE until the permittee provides the Department with a copy of a deed restriction, that has been registered with the Hudson County Clerk (the Registrar of Deeds and Mortgages if applicable). That deed restriction will provide that no regulated activities will occur in the created wetlands area or it's associated transition area.

iv. Immediately following final grading and planting of the wetland mitigation project, F.D.P. Enterprises shall notify the Land Use Regulation Program, in writing, that the construction of the mitigation project is complete. In addition to the notice, submit photos with a photo location map of the completed project. If the mitigation project has been constructed in conformance with the approved plan, the performance

financial surety will be released within 60 days of the date that the notice of completion is received by the Program.

v. F.D.P. Enterprises shall monitor the wetland mitigation project for 3 years after the wetland mitigation project has been constructed. Monitoring reports will be submitted to the Land Use Regulation Program no later than September 15th of each monitoring year (Monitoring report requirements are attached to this authorization).

vi. The third and final monitoring report will include the following information:

1. Documentation to demonstrate that the goals of the wetland mitigation project, as stated in the approved wetland mitigation proposal and the authorization, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation project based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989);

2. Evidence to document 85 percent survival and 85 percent areal coverage of the mitigation plantings.

vii. Once the required monitoring period has expired AND the applicant has submitted the final monitoring report, the Program will make the finding (in writing and within 60 days of receipt of the monitoring report) that the mitigation project is either a success or a failure. THIS MITIGATION PROJECT WILL BE CONSIDERED SUCCESSFUL IF THE APPLICANT DEMONSTRATES THAT EMERGENT WETLANDS, OPEN WATERS AND UPLAND ISLANDS HAVE BEEN CREATED IN THE RATIO APPROVED BY MIMAC. THE SITE HAS AN 85 PERCENT SURVIVAL AND 85 PERCENT AREAL COVERAGE OF THE MITIGATION PLANTINGS AND THE MITIGATION SITE MEETS THE GOALS AS STIPULATED IN THE MITIGATION PROPOSAL. Areas dominated by Phragmites shall not be considered successful. All remaining financial surety will be released concurrent with the Program notifying the applicant that the mitigation project is a success.

viii. If the mitigation project is considered a failure, the applicant is required to submit a revised mitigation plan to rectify the wetland mitigation site. The applicant will have 60 days to submit said plan following receipt of the letter from the Program indicating the wetland mitigation project was a failure. The financial surety will not be released by the Program until such time that the applicant satisfies the success criteria as stipulated in above item.

ix. The mitigation site will be subdivided and deeded to a State agency or conservation group approved by the Program.

x. Both the enhancement and mitigation plans will be carried out prior to or concurrent with the construction of the proposed project.

xi. Both the enhancement and mitigation plans will be carried out at the permittee's expense.

3. The applicant must notify the Land Use Regulation Program, in writing, at least 14 days in advance of the start of construction of this project.

4. Any discharge of fill material shall consist of suitable material free from toxic pollutants.

5. The project must meet Soil Erosion and Sediment Control Standards and be approved by the local soil conservation district.

6. It should be noted that a Stream Encroachment Permit (file # 0906-92-0006.2) was issued jointly with the original water quality certificate which will expire on December 26, 2000. Please be advised that unless the activities proposed under the Stream Encroachment Permit have been completed or are no longer proposed, an application for a valid Stream Encroachment Permit should be submitted.

Please review this approval and note any conditions which may have been imposed and promptly return the attached acceptance form to the Department at the above address. In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies.

If you should have any question regarding this authorization, please contact David Bean of my staff at the above address or at (609) 777-0454. Be sure to include the file number in any and all correspondence.

Approved by:

Richard H. Kropp, Director
Land Use Regulation Program

12/20/00
Date

c. Municipal Clerk
Municipal Construction Official
James Cannon, USACOE, New York District
Mary Anne Theising, USEPA, Region II
Ken Scarlattelli, HMDC

NJDEP Stream Encroachment Permit No. 0906-92-0006.6

July 30, 2001

ease return recorded copy to: Kevin J. Coakley, Esq. Connell Foley LLP
Livingston Avenue
reland, New Jersey 07068

STATE OF NEW JERSEY

DEPARTMENT OF ENVIRONMENTAL PROTECTION
(See Issuing Division below)

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. ~~0909~~ 0906-92-0006.6 | | Application No. |
| Issuance Date JUL 30 2001 | Effective Date JUL 30 2001 | Expiration Date JUL 30 2006 |
| Name and Address of Applicant<br>FD&P Enterprises<br>2200 Secaucus Road<br>North Bergen, NJ 07047 | Name and Address of Owner | Name and Address of Operator |
| Location of Activity/Facility (Street Address)<br>Lot ______ Block ______ | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50<br>et. seq. |
| Type of Permit<br>Stream Encroachment | | Maximum Approved Capacity, if applicable |

This permit grants permission to:

construct two stormwater outfall structures along the westerly side of the Penhorn Creek, in connection with proposed intermodal terminal and container storage area, at a location immediately downstream of Secaucus Road crossing of said stream, within Lot Nos. 1, 6 and 12; 1; 1; 1 of Block Nos. 1000; 1001; 1002; 1050 respectively, in the City of Jersey City, Hudson County, New Jersey.

Prepared By: [signature]
Govind Ramamurthy

(See page 4 for Manager's signature.)

| | |
|---|---|
| Revised Date | Approved by the Department of Environmental Protection<br>Name (Print or Type) ______ Title ______<br>Signature ______ Date ______ |

*The word permit means "approval, certification, registration, etc."

(General Conditions are on the Reverse Side)

G0100300353

**This permit is subject to the following general conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of this permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

**STREAM ENCROACHMENT PERMIT 0909-92-0006.6**

**TERMS AND CONDITIONS:**

IN ADDITION TO THE GENERAL CONDITIONS PRINTED ON THE BACK OF PAGE ONE OF THIS PERMIT, THE FOLLOWING CONDITIONS SHALL ALSO APPLY:

9. Limit and Extent of Approval

a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with <u>Standards for Soil Erosion and Sediment Control in New Jersey</u> (obtainable from local Soil Conservation District Offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during

and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed <u>permit acceptance form</u> has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the <u>Registrar</u> of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed <u>construction notice</u> shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed <u>completion report</u> shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

12. All excavated material must be disposed of in a lawful manner outside of any regulated flood plain, open water, freshwater wetlands or adjacent transition areas, and in such a way as to not interfere with the positive drainage of the receiving area.

STREAM ENCROACHMENT PERMIT 0909-92-0006.6

TERMS AND CONDITIONS:

13. All necessary local, Federal, and other State approvals must be obtained by the applicant prior to the commencement of the herein permitted activities. Approvals from the following may be required: Hudson County Soil Conservation District

14. The drawings hereby approved are four (4) sheets prepared by Ernst, Ernst and Lissenden, dated August 14, 1995, unless otherwise noted, entitled:

"PROPERTY OF F.D.P. ENTERPRISES BLOCK 1000-LOTS 1, 6, & 12 BLOCK 1001-LOT 1 BLOCK 1002-LOT 1 BLOCK 1050-LOT 1 JERSEY CITY . HUDSON COUNTY . NEW JERSEY";

"GRADING & DRAINAGE PLAN", drawing no. 1 of 4, last revised July 19, 2001 and drawing no. 2 of 4, last revised February 14, 2001,

"TYPICAL SECTION & DETAILS", drawing no. 3 of 4, last revised February 14, 2001, and

"WETLANDS CREATION AND ENHANCEMENT AREAS TYPICAL SECTIONS", drawing no. 4 of 4, unrevised.

Christopher Jones for
Robert B. Piel, Jr., Manager
Bureau of Inland Regulation

7/30/01
Date

**Hudson-Passaic-Essex Soil Conservation District approval No. 202-H-1722**

**February 6, 2003**

New Jersey Natural Resources Conservation Program

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 07006
Telephone: (973) 364-0786
Fax: (973) 364-0784

February 6, 2003

F.,D.P. Enterprises
2200 Secaucus Road
North Bergen, NJ07047

Re: F.D.P. Enterprises Intermodal Container
Block 1000-1001-1001-1050 Lots 1, 6 & 12 2-1-1-1, Secaucus Road, Jersey City, NJ
HEP File: 202-H-1722
Plan dtd: 1-22-2003

Dear Madam/Sir:

The District has completed the review of the soil erosion and sediment control plan for the above referenced Project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C.2:90-1.1 et.seq., promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, N.J.S.A. 4:24-39 et seq.). Accordingly, the plan has been certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any land disturbance or construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or of failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners.

Please contact the District if you require assistance implementing the certified soil erosion and sediment Control plan. This certification is valid for 3-1/2 years and is limited to controls specified in this plan. It is not authorization to engage in the proposed land use unless such use has been previously approved by the municipality or other controlling agency.

Yours truly,

Richard Neidwenhuis
Chairman

03-005
permits

# State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Division of Remediation Management & Response
Northern Bureau of Field Operations
2 Babcock Place
West Orange, New Jersey 07052

Bradley M. Campbell
Commissioner

RECEIVED
SEP 29 2003
By

Clean Earth Dreging Technologies
334 South Warminster Road
Hatboro, Pennsylvania 19040
Att: Daniel Morrow

September 24,2003

Sub: Remedial Action Workplan
FDP Enterprises Site
2525 Secaucus Road, Secaucus, Hudson County
DRMR Case# 03-07-15-2327-24

Dear Mr. Morrow:

Pursuant to the Memorandum of Agreement dated July 25,2003 between FDP Enterprises LLC (FDP) and the New Jersey Department of Environmental Protection (Department), this office has received and completed its review of the referenced report dated August 2003. Based on this office's review, the following comments are offered.

The submitted report presents historical information, relevant issued permits and a conceptual plan for the filling and enhancement of approximately 83 acres of upland and wetlands at the subject location. Based on the submitted information, approximately 1.5 million cubic yards of material is to be imported to facilitate development of the property. Given the volume of material that will be required a listing of six different types of material for importation is listed in section 3 - Proposed Fill Acceptance Criteria located on page 5 of the report. Conceptually, this office has no objection to the categories established in the referenced section for importation with the following noted exception. The referenced section refers to an Alternate Fill Acceptance Criteria as defined in the table within the Proposed Alternate Fill Acceptance Criteria (PAFAC). Based on a review of the numbers listed in the PAFAC, this office finds the levels to be greater than those currently found in the limited sampling performed at the site and as such can not accept the PAFAC as specified. Given the preceding statement, this office as an interim measure will accept the importation of material that meets the Nonresidential Direct Contact Soil Cleanup Criteria (NRDCSCC) as specified on page 12 of the report or material that does not exceed the current soil levels as specified in Table 1 on page 3 of the report. Based on the specific conditions at the site, this office will pursue development of a revised PAFAC and anticipates being able to propose a revised PAFAC within four (4) weeks. This approval does not waive the requirement that FDP pursue any additional approvals required for this activity from local, county, state or federal agencies.

If you have any questions concerning the contents of this correspondence, please contact me at (973)669-3973.

Sincerely,

Gary Greulich
Supervising Env Specialist

c: Frank Folise, FDP Enterprises
Richard DeWan, NJDEP-ODST
File

# FDP ENTERPRISES INTERMODAL CONTAINER FACILITY IMPROVEMENT PROJECT

## FILL MATERIAL ACCEPTANCE CRITERIA

*(Revised 09/29/03)*

The goals of the FDP Enterprises Intermodal Container Facility Improvement Project are to cap the existing historic fill present at the site and to fill the site to grades suitable for future development. Fill materials proposed to be accepted at the site for beneficial use shall meet the Fill Acceptance Criteria contained herein. Where no Alternate Fill Acceptance Criteria is indicated, the proposed fill shall meet the NJDEP non-residential direct contact soil cleanup criteria (NRDCSCC) at a minimum. No hazardous wastes shall be accepted as fill.

The listing contained represents the combination of Tables 3-2 and 7-1 from the Department of Environmental Protection and Energy's February 3, 1992 proposed rule entitled Cleanup Standards for Contaminated Sites, N.J.A.C. 7:26D, latest version as revised 5/12/99. Please refer to the respective footnotes for more detail. Based on an evaluation of site-specific background data (historic fill) and project-specific human health impact analysis including short-term direct contact worker exposure during the construction phase only (approximately 6.5 years maximum), FDP has received Department approval for the Alternate Fill Criteria specified herein for specific constituents that may exceed the NRDCSCC for beneficial use as grading fill at the site.

| Contaminant | CASRN | Non-Residential Direct Contact Soil Cleanup Criteria (a) (b) (NRDCSCC) | Approved Alternate Fill Acceptance Criteria (AFAC) |
|---|---|---|---|
| Acenaphthene | 83-32-9 | 10000(c) | |
| Acetone (2-propanone) | 67-64-1 | 1000(d) | |
| Acrylonitrile | 107-13-1 | 5 | |
| Aldrin | 309-00-2 | 0.17 | |
| Anthracene | 120-12-7 | 10000(c) | |
| Antimony | 7440-36-0 | 340(e) | |
| Arsenic | 7440-38-2 | 20 (e) | |
| Barium | 7440-39-3 | 47000(n) | |
| Benzene | 71-43-2 | 13 | |
| Benzo(b)fluoranthene | 205-99-2 | 4 | 4.7(o) |
| Benzo(a)anthracene | 56-55-3 | 4 | [illegible] |
| Benzo(a)pyrene (BaP) | 50-32-8 | 0.66(i) | [illegible] |
| Benzo(k)fluoranthene | 207-08-9 | 4 | |
| Benzyl Alcohol | 100-51-6 | 10000(c) | |
| Beryllium | 7440-41-7 | 2 (e) | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| Bis(2-chloroethyl) ether | 111-44-4 | 3 | |
| Bis(2-chloroisopropyl)ether | 108-60-1 | 10000 (c) | |
| Bis(2-ethylhexyl) phthalate | 117-81-7 | 210 | |
| Bromodichloromethane) | 75-27-4 | 46 | |
| Bromoform | 75-25-2 | 370 | |
| Bromomethane | 74-83-9 | 1000 (d) | |
| 2-Butanone (MEK) | 78-93-3 | 1000 (d) | |
| Butylbenzyl phthalate | 85-68-7 | 10000 (c) | |
| Cadmium | 7440-43-9 | 100 | |
| Carbon tetrachloride | 56-23-5 | 4 (k) | |
| 4-Chloroaniline (*p*-Chloroaniline) | 106-47-8 | 4200 | |
| Chlorobenzene | 108-90-7 | 680 | |
| Chloroform | 67-66-3 | 28 (k) | |
| 4-Chloro-3-methylphenol | 59-50-7 | 10000 (c) | |
| Chloromethane (Methyl chloride) | 74-87-3 | 1000 (d) | |
| 2-Chlorophenol | 95-57-8 | 5200 | |
| Chromium – hexavalent (VI) | 18540-29-9 | 6100; 20 (g); (i) | |
| Chromium – trivalent (III) | 16065-83-1 | (i) | |
| Chrysene | 218-01-9 | 40 | |
| Copper | 7440-50-8 | 600 (l) | |
| Cyanide | 57-12-5 | 21000 (c) | |
| 4,4'-DDD (p,p'-TDE) | 72-54-8 | 12 | |
| 4,4'-DDE (p,p'-DDX) | 72-55-9 | 9 | |
| 4,4'-DDT | 50-29-3 | 9 | |
| Dibenz(a,h)anthracene | 53-70-3 | 0.66 (f) | |
| Dibromochloromethane | 124-48-1 | 1000 (d) | |
| Di-n-butyl phthalate | 84-74-2 | 10000 (c) | |
| Di-n-octyl phthalate | 117-84-0 | 10000 (c) | |
| 1,2-Dichlorobenzene | 95-50-1 | 10000 (c) | |
| 1,3-Dichlorobenzene | 541-73-1 | 10000 (c) | |
| 1,4-Dichlorobenzene | 106-46-7 | 10000 (c) | |
| 3,3'-Dichlorobenzidine | 91-94-1 | 8 | |
| 1,1-Dichloroethane | 75-34-3 | 1000 (d) | |
| 1,2-Dichloroethane | 107-06-2 | 24 | |
| 1,1-Dichloroethene | 75-35-4 | 150 | |
| 1,2-Dichloroethene (trans) | 156-60-5 | 1000 (d) | |
| 1,2-Dichloroethene (cis) | 156-59-2 | 1000 (d) | |
| 2,4-Dichlorophenol | 120-83-2 | 3100 | |
| 1,2-Dichloropropane | 78-87-5 | 43 | |
| 1,3-Dichloropropene(cis and trans) | 542-75-6 | 5 (k) | |
| Dieldrin | 60-57-1 | 0.18 | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| Diethylphthalate | 84-66-2 | 10000 (c) | |
| 2,4-Dimethylphenol | 105-67-9 | 10000 (c) | |
| Dimethylphthalate | 131-11-3 | 10000 (c) | |
| 2,4-Dinitrophenol | 51-28-5 | 2100 | |
| Dinitrotoluene(2,4-/2,6-mixture) | 25321-14-6 | 4 (l) | |
| Endosulfan | 115-29-7 | 6200 | |
| Endrin | 72-20-8 | [illegible]310 | |
| Ethylbenzene | 100-41-4 | 1000 (d) | |
| Fluoranthene | 206-44-0 | 10000 (c) | |
| Fluorene | 86-73-7 | 10000 (c) | |
| Heptachlor | 76-44-8 | 0.65 | |
| Hexachlorobenzene | 118-74-1 | 2 | |
| Hexachlorobutadiene | 87-68-3 | 21 | |
| Hexachlorocyclopentadiene | 77-47-4 | 7000 | |
| Hexachloroethane | 67-72-1 | 100 | |
| Indeno(1,2,3-cd)pyrene | 193-39-5 | 4 | |
| Isophorone | 78-59-1 | 10000 (c) | |
| Lead | 7439-92-1 | 600 (q) | 1240 |
| Lindane (gamma BHC) (gamma HCH) | 58-89-9 | 2 | |
| 2-Methylphenol (o-creosol) | 95-48-7 | 10000 (c) | |
| 4-Methylphenol (*p*-creosol) | 106-44-5 | 10000 (c) | |
| Methoxychlor | 72-43-5 | 5200 | |
| Mercury | 7439-97-6 | 270 | |
| 4-Methyl-2-pentanone | 108-10-1 | 1000 (d) | |
| Methylene chloride | 75-09-2 | 210 | |
| Naphthalene | 91-20-3 | 4200 | |
| Nickel | 7440-02-0 | 2400 (k) (n) | |
| Nitrobenzene | 98-95-3 | 520 | |
| N-Nitrosodiphenylamine | 86-30-6 | 600 | |
| N-Nitrosodi-n-propylamine | 621-64-7 | 0.66 (l) | |
| PCBs | 1336-36-3 | 2 | |
| Pentachlorophenol | 87-86-5 | 24 | |
| Phenol | 108-95-2 | 10000 (c) | |
| Pyrene | 129-00-0 | 10000 (c) | |
| Selenium | 7782-49-2 | 3100 (n) | |
| Silver | 7440-22-4 | 4100 (n) | |
| Styrene | 100-42-5 | 97 | |
| 1,1,1,2-Tetrachloroethane | 630-20-6 | 310 | |
| 1,1,2,2-Tetrachloroethane | 79-34-5 | 70 (k) | |
| Tetrachloroethene (PCE) | 127-18-4 | 6 (k) | |
| Thallium | 7440-28-0 | 2 (f) | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| Toluene | 108-88-3 | 1000 (d) | |
| Toxaphene | 8001-35-2 | 0.2 (k) | |
| 1,2,4-Trichlorobenzene | 120-82-1 | 1200 | |
| 1,1,1-Trichloroethane | 71-55-6 | 1000 (d) | |
| 1,1,2-Trichloroethane | 79-00-5 | 420 | |
| Trichloroethene (TCE) | 79-01-6 | 54 (k) | |
| 2,4,5-Trichlorophenol | 95-95-4 | 10000 (c) | |
| 2,4,6-Trichlorophenol | 88-06-2 | 270 | |
| Vanadium | 7440-62-2 | 7100 (n) | |
| Vinyl chloride | 75-01-4 | 7 | |
| Xylenes (Total) | 1330-20-7 | 1000 (d) | |
| Zinc | 7440-66-6 | 1500 (m) | |

**Footnotes:**

(a) Criteria are health based using an incidental ingestion exposure pathway except noted below.

(b) Criteria are subject to change based on site specific factors (e.g., aquifer classification, soil type, natural background, environmental impacts, etc.).

(c) Health based criterion exceeds the 10,000 mg/kg maximum for total organic contaminants.

(d) Health based criterion exceeds the 1000 mg/kg maximum for total volatile organic contaminants.

(e) Cleanup standard proposal was based on natural background.

(f) Health based criterion is lower than analytical limits; cleanup criterion based on practical quantitation level.

(g) Criterion based on the inhalation exposure pathway.

(h) The impact to ground water values for inorganic constituents will be developed based upon site specific chemical and physical parameters.

(i) Site specific determination required for SCC for the allergic contact dermatitis exposure pathway.

(j) Contaminant not regulated for this exposure pathway.

(k) Criteria based on inhalation exposure pathway, which yielded a more stringent criterion than the incidental ingestion exposure pathway.

(l) No criterion derived for this contaminant.

(m) Criterion based on ecological (phytotoxicity) effects.

(n) Level of the human health based criterion is such that evaluation for potential environmental impacts on a site by site basis is recommended.

(o) Level of the criterion is such that evaluation for potential acute exposure hazard is recommended.

(p) Criterion based on the USEPA Integrated Exposure Uptake Biokinetic (IEUBK) model utilizing the default parameters. The concentration is considered to protect 95% of target population (children) at a blood lead level of 10 ug/dl.

(q) Criteria were derived from a model developed by the Society for Environmental Geochemistry and Health (SEGH) and were designed to be protective for adults in the workplace.

(r) Insufficient information available to calculate impact to ground water criteria.

(s) Criterion based on new drinking water standard.

(t) Total concentrationof PAHs with this footnote shall not exceed 200mg/kg.

# APPENDIX 6

## ENCAP/MEADOWLANDS REDEVELOPEMENT PERMITS AND APPROVALS

**ENCAP/MEADOWLANDS REDEVELOPMENT PROJECT**
**PERMITS AND APPROVALS FOR PHASE I**

1. US ARMY CORPS OF ENGINEERS SECTION 404/SECTION 10 PERMIT
APRIL 5, 2001

2. US ARMY CORPS OF ENGINEERS PERMIT MODIFICATION
AUGUST 30, 2002

3. US ARMY CORPS OF ENGINEERS WETLAND MITIGATION PLAN APPROVAL
SEPTEMBER 3, 2002

4. US COAST GUARD ADVANCE APPROVAL
APRIL 18, 2000

5. US COAST GUARD ADVANCE APPROVAL
APRIL 5, 2002

6. NJDEP AVON LANDFILL REMEDIAL ACTION WORKPLAN/CLOSURE PLAN APPROVAL
SEPTEMBER 18, 2001

7. NJDEP AVON LANDFILL REMEDIAL ACTION WORKPLAN/CLOSURE PLAN & MAJOR LANDFILL DISRUPTION APPROVAL AMENDMENT
NOVEMBER 8, 2002

8. NJDEP LYNDHURST AND RUTHERFORD LANDFILLS RAW/CP APPROVAL
OCTOBER 29, 2002

9. NJDEP KINGSLAND LANDFILL CLOSURE PLAN AMENDMENT APPROVAL
JANUARY 27, 2003 (AMENDED APRIL 23, 2003)

10. NJDEP AVON, LYNDHURST AND RUTHERFORD LANDFILLS INTERIM FILL STOCKPILE PLAN
JANUARY 23, 2003

11. NJDEP FILL PROTOCOL APPROVAL, MATERIALS BELOW BARRIER LAYER
DECEMBER 18, 2001

12. NJDEP FILL PROTOCOL APPROVAL, MATERIALS ABOVE BARRIER LAYER
NOVEMBER 7, 2002

212352

13. FILL CAPACITY APPROVAL
FEBRUARY 7, 2003

14. NJDEP ACCEPTABLE USE DETERMINATION
JANUARY 17, 2003

15. NJDEP AVON LANDFILL GAS VENTING SYSTEM PERMIT
NOVEMBER 7, 2001

16. NJDEP LYNDHURST AND RUTHERFORD LANDFILLS GAS VENTING SYSTEMS PERMIT
NOVEMBER 8, 2001

17. NJDEP LAND USE MULTIPLE PERMIT, AVON, LYNDHURST AND RUTHERFORD LANDFILLS
DECEMBER 28, 2000

18. NJDEP MODIFICATION TO STREAM ENCROACHMENT PERMIT
JULY 19, 2002

19. NJDEP PERMIT COMPLIANCE STATEMENT APPROVAL FOR LAND USE MULTIPLE PERMIT
AUGUST 15, 2002

20. NJDEP MULTIPLE PERMIT, BUCKLEY BROADCASTING RADIO TOWERS
JUNE 26, 2002

21. NJDEP MULTIPLE PERMIT, ROSE CITY RADIO TOWERS
JULY 23, 2002

22. NJDEP BUREAU OF TIDELANDS MANAGEMENT INTERIM LICENSE
SEPTEMBER 8, 2000

23. NJDEP KINGSLAND LANDFILL ACCEPTABLE USE DETERMINATION
APRIL 17, 2003

24. BCSCD SESC PLAN CERTIFICATION FOR THE LYNDHURST SPORT COMPLEX
DATED AUGUST 5, 2003

(1)

# DEPARTMENT OF THE ARMY PERMIT

rmittee: Hackensack Meadowlands Development Commission
One DeKorte Park Plaza
Lyndhurst, New Jersey 07071 (201) 460-1700

EnCap Golf Holdings, LLC
100 North Tampa Street, Suite 2150
Tampa, Florida 33602 (813) 222-3656

Permit No.: 2000-00381

Issuing Office: New York District, U.S. Army Corps of Engineers

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description:

The project area includes the Avon, Lyndhurst, Rutherford and Kingsland landfills. tivities described in this permit are authorized in each of the seven work areas amed below. Authorized activities are subject to the attached drawings and Special onditions (A) through (U).

(1). Avon Landfill - Discharge dredged or fill material into 3.43 acres of waters of the United States to facilitate remedial landfill closure activities, and the upgrade of existing culverts.

(2). Lyndhurst Landfill - Discharge dredged or fill material into 4.06 acr of waters of the United States to facilitate remedial landfill closure activities, an the upgrade of existing culverts.

(3). Rutherford Landfill - Discharge dredged or fill material into 1.11 acres c waters of the United States to facilitate remedial landfill closure activities.

(4). Vehicular Haul Road - Discharge dredged or fill material into 0.3 acres waters of the United States to facilitate the construction and installation of vehicular haul road across Berry's Creek.

(5). Dredging Area - Dredge approximately 43,000 cubic yards of sediment from a 1, foot long by approximately 90 to 140 foot wide area for the creation of a ba mooring area with a maximum depth of -14 feet below the plane of Mean Low Wate the mouth of Berry's Creek along the Hackensack River.

(6). Barge Mooring Area - Regrade up to 1.0 acre of existing intertidal/sub shallows and uplands to create up to 1.5 acres of intertidal and subtidal shal Install two (2) 180 linear foot sections of steel sheet bulkheading. Tempor install the following: twenty one (21) concrete filled, 24 inch diameter mooring dolphins; two (2) 40 foot long by 90 foot long floating barge platfo 330 foot long by 40 foot wide stake boat; and six (6) 24 inch diameter steel m dolphins.

EDITION OF SEP 82 IS OBSOLETE. (33 CFR 325 (

...lands Development Commission, EnCap Golf H
... into waters of the United States, dre
... barge and associated s

ERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

.IT NO.: 2000-00381

(7). Wetland Mitigation Area - Perform approximately 30 acres of wetland enhancement at a ratio of 3:1, to compensate for permanent wetland impacts associated with the 3.9 acres of fill identified above. Mitigation will be performed along Berry's Creek and adjacent to the Rutherford Landfill in high marsh and low marsh areas and in approximately 2 acres of intertidal and subtidal shallows. Mitigation to be performed in this area is in addition to mitigation to be performed in intertidal/subtidal shallows in the Barge Mooring Area identified above.

Project Location: IN: Hackensack River and Berry's Creek

AT: Township of Lyndhurst, Borough of North Arlington, and Borough of Rutherford, Bergen County, New Jersey

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on December 31, 2007. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the ..r mitted activity, although you may make a good faith transfer to a third party in compliance with ..eral Condition 4 below. Should you wish to cease to maintain the authorized activity or should you ..ire to abandon it without a good faith transfer, you must obtain a modification of this permit from ..s office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and state coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

4. If you sell the property associated with this permit, you must obtain the signature of the ne owner in the space provided and forward a copy of the permit to this office to validate the transfe of this authorization.

5. If a conditioned water quality certification has been issued for your project, you must comply wit the conditions specified in the certification as special conditions to this permit. For you convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any tim deemed necessary to ensure that it is being or has been accomplished in accordance with the terms ar conditions of your permit.

Special Conditions:

(a) On or before August 1, 2001, and prior to commencing any constructi activities authorized by this permit, the permittees shall submit to the New Yo District Corps of Engineers a detailed comprehensive schedule of all authoriz construction activities associated with the Remedial Action Work Plan/Closure Pla (RAW/CP) for the Avon, Lyndhurst and Rutherford landfills, and the wetland mitigat plan for our review. In addition, on or before August 15, 2001, and prior commencing any construction activities associated with the RAW/CP's or the wetl mitigation plan, representatives of the permittees shall meet with representati f the New York District. The purpose of this pre-construction meeting is tablish full and complete understanding of all permit requirements including chedule of all phases of the RAW/CP construction and the wetland mitigation pl

so as to insure compliance with all of the terms and conditions of this permit. This group of representatives may be reconvened by the New York District when necessary during construction activities to review progress and share information.

(B) Prior to commencing construction or fill activities as authorized by this permit at the Avon, Lyndhurst, or Rutherford landfills, the permittees shall submit to the New York District verification that the RAW/CP for those work areas that have received approval from the New Jersey Department of Environmental Protection (NJDEP) to perform the landfill remediation activities. This verification submittal shall include the RAW/CP approvals and shall depict all temporary and permanent fill locations in wetlands and waters of the United States (including acreages) for each area. Construction activities within wetlands and waters of the United States associated with each NJDEP approved RAW/CP submittal shall not begin until the permittees have received written notice from the New York District to proceed. The verification submittals shall be provided to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

(C) Prior to commencing construction or fill activities as authorized by this permit, the permittees shall submit two copies of a detailed wetland mitigation plan to the New York District to the same address that appears in Special Condition (B). Construction activities within the wetland mitigation area shall not begin until the permittees have received written notice to proceed from the New York District. In addition, the construction activities associated with the wetland mitigation plan shall begin prior to or concurrent with the other construction or fill activities as authorized by this permit. A copy of the permittee's final wetland mitigation plan and all associated monitoring reports shall be submitted to the National Marine Fisheries Service at the following address:

U.S. Department of Commerce
National Marine Fisheries Service
Attention: Stanley Gorski
Magruder Road, Building 74
Sandy Hook Laboratory
Highlands, New Jersey 07732

(D) The permittees shall ensure that all plantings associated with the wetland mitigation effort meet the federal wetland criteria outlined in the "U.S. Army Corps of Engineers Wetlands Delineation Manual", dated January 1987. All enhanced wetland areas shall have an eighty-five (85) percent survival and coverage rate of hydrophytic plants (those with a regional indicator status of FAC, FAC+, FACW +/-, or OBL in the "National List of Plant Species That Occur in Wetlands, Northeast [Region 1]" published by the U.S. Fish and Wildlife Service). If the eighty-five (85) percent survival and coverage rate is not met at the end of the second growing season following each phase, the permittee shall take all necessary measures to ensure such a level of survival and coverage by the end of the next growing season, including re-planting and re-grading if necessary. In addition, in areas where no individual plantings are proposed, if appropriate and sufficient vegetation is not

naturally present by the end of the second growing season, the permittees shall take all necessary steps, including individual plantings, in order to achieve a plant density that would meet the goal and objectives of the wetland enhancement plan.

(E) The permittees shall provide to the New York District as-built construction drawings of the wetland enhancement areas at the mitigation site and those areas along the Hackensack River and Berry's Creek adjacent to the temporary barge mooring area. The as-built drawings shall include all aspects of the final grading elevations and planting arrangements of the wetland mitigation sites. The date as-built construction drawings shall be provided will be determined by the New York District at the pre-construction meeting identified in Special Condition (A). All enhanced wetlands and Waters of the United States located within the designated wetland mitigation areas shall be dedicated solely for the purposes of compensating wetland impacts associated with the activities authorized by this permit.

(F) The permittees shall provide to the New York District annual reports on the status of the wetland enhancement activities, prepared during the growing season, no later than October 15 of each of the five (5) years following commencement of the work authorized by this permit. All data for each report must be collected between June 15 and September 15 of the same year it is submitted. These reports shall include the following at a minimum:

i. All plant species (along with their estimated relative frequency and percent cover) shall be identified by using plots measuring 1 meter square with at least one representative plot located in each habitat ecotone within the mitigation site. The location of each plot shall be identified on the plan view of the as-built engineering drawings for the project.

ii. Vegetation cover maps, at a scale of one inch equals 100 feet or larger scale, shall be prepared for each growing season.

iii. Photographs showing all representative areas of the mitigation site shall be taken at least once each year during the period between June 15 and September 15.

(G) The permittees shall accomplish corrective work as directed by the New York District, should the District determine that the wetland mitigation has not achieved the established wetland enhancement goals set forth in Special Condition (D) above. If the New York District does not find the wetland mitigation has achieved these goals, an extension of monitoring time may be required to cover any necessary remedial work. Should the New York District determine that the intended performance standards for the site have not been achieved, corrective plans, including revised construction drawings detailing the corrective work to be performed, shall be submitted to the District for review and approval within 60 days of the permittees' receiving a written notice of deficiencies from the District. If corrective measures are required, the permittees shall provide as-built construction drawings within 60 days of completing the additional work.

(H) The permittees shall execute a conservation easement on the wetland mitigation site located between Berry's Creek and the Rutherford landfill haul road as indicated in the drawing entitled "Proposed Mitigation Area, Brownfield

PERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

Remediation Project, Bergen County, New Jersey", Sheet 24 of 25, to guarantee the site's preservation for wetland and wildlife resources in perpetuity. The conservation easement, in a form approved by the New York District, shall be executed and recorded with the Bergen County Registrar of Deeds by December 31, 2005. A copy of the easement shall be provided to the New York District within 1 month after the date of recording.

(I) The permittees shall not undertake any dredging activities between April 1 and June 30 of any calendar year.

(J) During project construction, the permittees shall avoid to the maximum extent practicable those areas utilized by New Jersey State threatened and endangered species to ensure that impacts to these species are minimal.

(K) The permittees shall undertake the authorized filling activities in a manner aimed at reducing impacts upon the general environment. In addition, the permittees shall not stockpile fill or other materials in a manner conducive to erosion, or in areas likely to cause high turbidity runoff during storm events. The permittees shall use all practicable measures during construction (e.g. silt fences, hay bales, erosion control netting, vegetative stabilization) to stabilize all exposed soils immediately upon the completion of each phase of the grading activities in each area. The permittees shall install appropriate temporary fencing around all wetlands and other sensitive ecological areas during construction periods, to prevent equipment and personnel from entering these areas.

(L) In accordance with a schedule to be determined by the New York District at the pre-construction meeting identified in Special Condition (A), the permittees shall restore all temporary impacted wetlands and waters of the United States to pre-construction grade and reseed with native wetland vegetation where appropriate.

(M) Within 15 days prior to the initiation of dredging under this permit, four engineering-size, certified and sealed copies and one electronic file copy of pre-dredge surveys of all areas to be dredged, containing digital data in State Plan coordinates (NAD83/feet [MLW], shall be provided to the New York District. These surveys must have the authorized and intended dredge areas outlined, and a calculation of the total volume of dredged material to be removed. The surveys shall be delivered via express mail service or hand delivered to the same address that appears in Special Condition (B).

(N) Within 30 days of completing the dredging activities, the permittees shall submit four, engineering size, certified and sealed copies and one electronic file copy of post-dredge surveys, containing digital data in State Plane coordinates (NAD83/feet [MLW]), to the New York District. These surveys must have the authorized and actual dredged areas outlined, and exact volume calculations of dredged material that has been removed from the Hackensack River and Berry's Creek. These surveys shall be delivered via express mail service or hand delivered to the same address that appears in Special Condition (B).

(O) (1) No less than thirty (30) days before commencement of construction in the Dredging or Barge Mooring Area, the permittees shall notify the United States Coast Guard office (USCG) of the project's start and completion dates, the hours

PERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

of the day the work will be performed, the names of the vessels on-scene, the VHF radio channel(s) for monitoring, and the project's point of contact available 24 hours a day. The permittees shall also contact the USCG Activities New York Facility Inspection Branch at (718) 354-4116 to schedule a facility inspection.

(2) Prior to the commencement of construction in the Dredging or Barge Mooring Area, the permittees shall inform local waterway users of the conduct of the project, using the "Local Notice to Mariners". Information required to be provided in the Local Notice to Mariners can be found at HTTP://www.navcen.uscg.mil. This information may be faxed to (617) 223-8073.

(3) The permittees shall advise the National Oceanic and Atmospheric Administration (NOAA) of the project completion date and specifications so that NOAA may initiate the appropriate chart corrections. This information may be faxed to (301) 713-4516.

(4) The permittees shall verify, in writing, compliance with all notices to USCG and NOAA as described above, within five (5) days of each such notice. Verification shall be delivered to the same address that appears in Special Condition (B).

(5) Outdoor lighting shall be located or shielded so that it is not confused with any aids to navigation and does not interfere with navigation on adjacent waterway.

(P) All dredging activities shall be undertaken in such a manner as to avoid large refuse piles, ridges across the bed of the waterway or deep holes that may have a tendency to cause injury to adjacent channels or wharves.

(Q) The permittees shall respond to all reasonable requests for information from the New York District, and shall provide necessary field support during field investigations and permit compliance inspections.

(R) Within ninety (90) days of cessation of operations at the processed dredged material treatment facility, the permittees shall remove all structures associated with the processed dredged material treatment facility from waters of the United States. Structures to be removed include the crane barge platforms and piles, associated barges, and steel/concrete mooring dolphins including dolphins associated with the temporary stake barge mooring area. In addition, the permittees shall remove the two 180 linear foot steel sheet bulkheads unless the permittees can demonstrate to the satisfaction of New York District that the bulkheads should be incorporated into the overall redevelopment or remediation of the site.

(S) The permittees shall display a copy of this permit on all vessels engaged in dredging, transporting and disposal of dredged material authorized by this permit.

(T) The permittees understands and agrees that, if future operations by the United States require the removal, relocation, or other alteration, of the structure or work herein authorized, or if, in the opinion of the Secretary of

the Army or his authorized representative, said structure or work shall cause unreasonable obstruction to the free navigation of the navigable waters, the permittee will be required, upon due notice from the Corps of Engineers, to remove, relocate, or alter the structural work or obstructions caused thereby, without expense to the United States. No claim shall be made against the United States on account of any such removal or alteration.

(U) The permittees shall comply with all of the conditions and stipulations contained within the attached New Jersey Department of Environmental Protection Water Quality Certificate and Coastal Zone Consistency Determination dated December 28, 2000 (Permit No. 0200-00-0001.2 and Permit No. 0200-00-0001.1) and amended January 3, 2001.

**Further Information:**

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

(X) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S. Code 403).

(X) Section 404 of the Clean Water Act (33 U.S. Code 1344).

( ) Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization:

a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.

b. This permit does not grant any property rights or exclusive privileges.

c. This permit does not authorize any injury to the property or rights of others.

d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability: In issuing this permit, the Federal Government does not assume any liability for the following:

a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

d. Design or construction deficiencies associated with the permitted work.

e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision: This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

a. You fail to comply with the terms and conditions of this permit.

PERMITTEE: Hackensa Meadowlands Development Com ssion, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions: General Condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

4-03-01

RMITTEE) (DATE)
n Steinberg, Executive Director
kensack Meadowlands Development Commission

4-3-01

(PERMITTEE) (DATE)
William H. Gauger, President
EnCap Golf Holdings, LLC

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

5 April 01

(DISTRICT ENGINEER) (DATE)

William H. Pearce
Colonel, Corps of Engineers
District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and d below. A copy of the permit signed by the transferee should be sent to this office.

2

DEPARTMENT OF THE ARMY
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

AUG 30 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Request for Permit Modification of Department of the Army Permit Number 2000-00381-1

Mr. Jeffery W. Cappola
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Dear Mr. Cappola:

In accordance with the provisions of Section 10 of the Rivers and Harbors Act of 1899 (33 USC 403) and Section 404 of the Clean Water Act (33 USC 1344), the New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC, were issued Department of the Army (DA) Permit Number 2000-00381 by the District Engineer on April 5, 2001. This permit authorized remedial landfill closure activities as part of a New Jersey Department of Environmental Protection (NJDEP) approved Brownfield Redevelopment Project for the existing Avon, Rutherford, Lyndhurst and Kingsland landfills. The project area included approximately 752 acres in the Township of Lyndhurst, the Borough of North Arlington, and the Borough of Rutherford, Bergen County, New Jersey.

A subsequent permit modification dated August 1, 2001 authorized the extension of a required preconstruction meeting from August 15, 2001 to August 31, 2001 with the New York District Corps of Engineers to occur. This became known as Department of the Army Permit No 2000-00381-1.

On October 3, 2001, the New York District received a request to modify the permit which would result in the discharge of additional fill material into waters of the United States. This revision would be consistent with the permittee's remedial landfill closure plans for the Avon, Lyndhurst and Rutherford landfills which were approved by the NJDEP. As part of these revisions, three additional adjacent sites designated as the Buckley Broadcasting site, the Viola site, and the UPS site would be remediated as part of the overall Brownfield Redevelopment Project. Additional activities associated with the permit modification request included: the relocation of a previously authorized haul road over Berry's Creek; the construction and installation of a new haul road over Fish Creek; and the removal of a deteriorated tide gate located at the mouth of Bucks Creek. On January 7, 2002, the New York District, Corps of Engineers issued a jurisdictional determination for these three additional adjacent sites which increased the overall Brownfield Redevelopment Project area to 860.59 acres. In addition, the permittee indicated that based on the revised remedial landfill

closure plans, the construction and installation of a processed dredged material treatment facility, barge mooring area, and the associated dredging activities within Berry's Creek and the Hackensack River would no longer be required.

The permittee's revised remedial landfill closure plans for the Avon, Lyndhurst and Rutherford landfills, are designated on the construction drawings entitled, "HMDC/EnCap Redevelopment Project, Revised and Temporary Wetland Impact Areas", Sheets 1 through 8, prepared by Dru Associates, Inc., and dated May 3, 2002, "Meadowlands Golf Redevelopment Project, Lyndhurst and Rutherford Landfill Remediation Design, Regulatory Submission, Lyndhurst and Rutherford, New Jersey, Over All Plan", Sheets C-00 through C-20, prepared by Paulus, Sokolowski and Sartor, LLC, dated June 8, 2001, and last revised April 26, 2002, "Box Culvert Conceptual Design for Berry's Creek, Fish Creek, and Van Winkle Ditch", Sheets 1, 2, 3, and 5, prepared by Stephen H. Mitchell, dated March 22, 2002, "Berry's Creek Bridge Plan and Profile, Elevation and Section", Figure 4, prepared by Harding ESE, dated May 21, 2002, and "WOR Radio 710 AM, 1440 Broadway, New York, New York, 10018, WOR Tower Relocation", Sheets T-1, EC-1, and C-1 through C-5, prepared by Aerial Spectrum, dated May 7, 2002. These landfill closure plans indicate that as a result of the reduction in wetland fill acreages and the inclusion of the landfill closure activities for the three additional sites, the amount of permanent fill in tidal waters of the United States and adjacent tidal wetlands has increased approximately 1.08 acres from 8.9 acres to 9.98 acres. Approximately 21.48 acres of tidal waters of the United States and adjacent tidal wetlands would be temporarily disturbed during the implementation of the remedial landfill closure activities and restored upon completion of the project.

The activities associated with the remediation of the Buckley Broadcasting site will include: the relocation of the three existing and active radio transmission towers; associated guy anchors and copper radials, a transmission facility, and access roads. The remedial activities associated with the Viola site will include: capping a portion of the existing Viola Ditch and relocating it to an adjacent area to maintain tidal flow to Van Winkle Ditch; and the relocation of five Rose City radio transmission towers (currently situated in uplands) to an upland area located off site. The remedial activities associated with the Buckley Broadcasting site and the Viola site will be included as part of the Lyndhurst landfill closure plan. The remedial activities associated with the UPS site including the relocation of a previously authorized vehicular haul road over Berry's Creek, the construction and installation of a new vehicular haul road bridge over Fish Creek, and the demolition and removal of an existing deteriorated tide gate located at the mouth of Bucks Creek will be part of the Rutherford landfill closure plan.

Based upon our review of the revised remedial landfill closure plans and associated permanent impacts, and the elimination of the barge mooring area and dredging activities within the Hackensack River and Berry's Creek, and the associated

compensatory mitigation which included the establishment of intertidal and subtidal shallows within the barge mooring area and the wetland mitigation area, the New York District Corps of Engineers has concluded that the proposed activities associated with the remediation of the Buckley Broadcasting site, the Viola site, and the UPS site would not be contrary to the general public interest. Therefore, the subject permit is hereby specifically modified to reflect the following:

<u>(1). Avon Landfill</u> - Discharge dredged or fill material into approximately 0.85 acres of waters of the United States to facilitate remedial landfill closure activities, upgrade existing culverts at Bucks Creek and demolish and remove from jurisdictional waters of the United States an existing deteriorated tide gate from Bucks Creek.

<u>(2). Lyndhurst Landfill</u> - Discharge dredged or fill material into approximately 6.56 acres of waters of the United States to facilitate the following remedial landfill closure activities which include the placement of an impervious cap over approximately 770 linear feet of Viola Ditch, and relocate and restore approximately 560 linear feet of the ditch to allow tidal flow to Van Winkle Ditch; upgrade existing culverts (Van Winkle Ditch); the placement of an impervious cap over the former Buckley Broadcasting site, and relocate the existing active WOR radio station to a site located between the Rutherford Landfill haul road and New Jersey Transit's active Bergen Railroad Line adjacent to Fish Creek. WOR radio station relocation activities will include the discharge of fill material into wetlands and waters of the United States to facilitate the construction and installation of three (3) approximately 700 foot high WOR radio transmission towers with nine (9) associated guy anchors, three (3) permanent access roads including two (2) culverted road crossings, and an associated transmission building with associated paved parking area totalling approximately 125 feet wide by 210 feet long. Eight (8) temporary access roads impacting approximately 1.5 acres of waters of the United States shall be constructed and installed to allow construction equipment access to the site. Upon completion of the installation activities the temporary access roads shall be removed, and the temporarily impacted wetlands shall be restored to pre-construction elevations and reseeded with native vegetation where appropriate.

<u>(3). Rutherford Landfill</u> - Discharge dredged or fill material into 2.57 acres of waters of the United States to facilitate remedial landfill closure activities, relocate a previously authorized vehicular haul road across Berry's Creek, and construct and install a vehicular haul road across Fish Creek. Upgrade existing culverts at Fish Creek and Berry's Creek.

<u>(4). Wetland Mitigation Area</u> - Perform approximately 30 acres of wetland enhancement at a ratio of 3:1, to compensate for permanent wetland impacts associated with the 9.98 acres of fill identified above.

As a result the revised activities associated with the DA permit modification, Special Conditions "I", "M", "N", "O", "P", "R", and "S" will no longer be required due to the elimination of the construction activities associated with the processed dredged material treatment facility, associated barge mooring area, and the dredging activities within the Hackensack River and Berry's Creek. In addition, Special Condition "E" and "U" are hereby modified to reflect the following:

(E) The permittees shall provide to the New York District as-built construction drawings of the wetland enhancement areas at the mitigation site. The as-built drawings shall include all aspects of the final grading elevations and planting arrangements of the wetland mitigation site, and shall be provided to the New York District Corps of Engineers 60 days from the initial planting completion date specified in the detailed project construction schedule. All enhanced wetlands and Waters of the United States located within the designated wetland mitigation area shall be dedicated solely for the purposes of compensating wetland impacts associated with the activities authorized by this permit. The as-built drawings shall be provided to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

(U) The permittees shall comply with all of the conditions and stipulations contained within the attached New Jersey Department of Environmental Protection Water Quality Certificate and Coastal Zone Consistency Determination Permit No. 0200-00-0001.2 and 0200-00-0001.1 dated December 28, 2000, amended January 3, 2001, and August 15, 2002, Permit No. 0256-02-0003.1 dated June 27, 2002, Permit No. 0200-00-0005.1, dated July 19, 2002, and Permit No. 0232-02-0001.1, dated July 23, 2002.

All other permit conditions to which the authorized work was made subject shall remain in effect. This letter shall be added to all copies of the permit, including those at the site.

If any questions should arise concerning this matter, please contact James H. Cannon, of my staff, at (212) 264-0185.

Sincerely,

"For and in behalf of"
John B. O'Dowd
Colonel, U.S. Army
District Engineer

Enclosures

Cf: NJMC
NJDEP
CENAN-OP-RH

(3)

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

SEP 03 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Permit Application Number 2000-00381 by Hackensack Meadowlands Development Commission and EnCap Golf Holdings, LLC

Mr. Jeffery W. Cappola
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Dear Mr. Cappola:

On April 5, 2001, the New York District Corps of Engineers issued a Department of the Army permit (DA) to the Hackensack Meadowlands Development Commission and EnCap Golf Holdings, LLC authorizing the discharge of fill material into approximately 8.9 acres of wetlands and waters of the United States to perform remedial landfill closure activities as part of a New Jersey Department of Environmental Protection (NJDEP) approved Brownfield Redevelopment Project for the existing Avon, Rutherford, Lyndhurst and Kingsland landfills. The project area included approximately 752 acres in the Township of Lyndhurst, the Borough of North Arlington, and the Borough of Rutherford, Bergen County, New Jersey.

On January 7, 2002, the New York District, Corps of Engineers issued a jurisdictional determination for the inclusion of three additional adjacent parcels located within the Lyndhurst Landfill (the Buckley Broadcasting site, the UPS site, the Viola site) and totaling approximately 108.59 acres. The inclusion of the three sites increased the Brownfield Redevelopment Project from 752 acres to 860.59 acres.

A subsequent permit modification dated August 30, 2002, authorized additional work associated with the remedial landfill closure activities for the Brownfield Redevelopment Project. This permit modification included the remediation of the Buckley Broadcasting site, the UPS site, and the Viola site. Additional authorized activities included the relocation of a previously authorized haul road; the construction and installation of a new haul road, and the removal of a deteriorated tide gate. In addition, the permittee's indicated that based on the revised remedial landfill closure plans, the construction and installation of a processed dredged material treatment facility, barge mooring area, and the associated dredging activities within Berry's Creek and the Hackensack River would no longer be required. As a result of the permit modification authorization

the impacts to wetlands and waters of the United States associated with the Brownfield Redevelopment project was increased from 8.9 acres to 9.98 acres.

On May 9, 2002, the New York District Corps of Engineers received the permittee's final wetland mitigation plan in accordance with Special Condition (C) of the above referenced permit authorization. The wetland mitigation report entitled "Final Wetlands Mitigation Plan", dated June 2001, and revised May 6, 2002, and the associated drawings entitled "Final Wetlands Mitigation Plan for Meadowlands Golf Redevelopment Project, Borough of Rutherford, Bergen County New Jersey, USACE Permit #2000-00238, Prepared for EnCap Holdings, LLC and the New Jersey Meadowlands Commission", Sheets C-1 through C-9, prepared by Paulus Sokolowski and Sartor, LLC, dated May 26, 2001 and last revised May 8, 2002 indicates approximately 48.01 acres of enhancements activities would take place along Berry's Creek, including the restoration of approximately 21.48 acres of wetlands temporarily disturbed as part of the remedial landfill closure activities.

Based on our review of the above referenced compensatory wetland mitigation plan, it has been determined that the referenced plan complies with Special Condition "C" of the subject authorization. It has been additionally determined that the 1.08 acres of additional wetland impacts associated with the August 30, 2002 permit modification authorization would be adequately compensated as part of the permittee's wetland mitigation plan. You are therefore authorized to begin work under the terms and conditions of the above referenced DA permit authorization.

If any questions should arise concerning this matter, please contact James H. Cannon, of my staff, at (212) 264-0185.

Sincerely,

Richard L. Tomer

Richard L. Tomer
Action Chief, Regulatory Branch

Cf: NJMC
NJDEP
CENAN-OP-RH



G0100300381

(4)

U.S. Department of Transportation
United States Coast Guard

Commander
First Coast Guard District

Battery Park Building
New York, NY 10004-5073
Staff Symbol: obr
Phone: (212) 668-7165
FAX: (212) 668-7967

16211/NV-472

April 18, 2000

Mr. Jeffrey W. Cappola
DeCotiis, Fitzpatrick & Gluck, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd
Teaneck, NJ 07666

Re: HMDC Landfill Remediation and Redevelopment Project

Dear Mr. Cappola:

This responds to your letter dated 28 March 2000, regarding the referenced project.

Our examination indicates that there is sufficient factual support for concluding that Berry's Creek is a navigable water of the United States subject to general Coast Guard bridge jurisdiction. Although subject to Coast Guard bridge jurisdiction, this project has been placed in the Advance Approval category as per 33 CFR 115.70. In addition, because the Army Corps of Engineers will be processing an individual Section 10/404 permit for this action the Coast Guard will not need to conduct a public review process. A Coast Guard bridge permit will not be required. This Advance Approval determination is valid for five years from the date of this letter. If construction does not commence within this time period, you must contact this office for reaffirmation of this authorization.

Coast Guard approval does not relieve the applicant of the responsibility to ensure compliance with any applicable federal, state or local requirement for the proposed action.

Although this project will not require a bridge permit, other areas of Coast Guard jurisdiction apply. The following stipulations must be met:

a. The lowest portion of the superstructure of the bridge across the waterway should clear the 100 year flood height elevation.

b. The requirement to display permanent navigation lights at this bridge is waived. The waiver may be rescinded at any time in the future should nighttime navigation through this bridge be increased to a level determined by the District Commander to warrant lighting (generally four or more passages per week between the hours of sunset and sunrise).

c. Upon completion of construction, the bridge owner shall submit "as-built" drawings showing clearances through the bridge and sufficient data to permit this office to prepare a completion report. This report is used for Coast Guard and other mariner publications.

d. Any spillage of oil or oil-based products construction must be promptly reported to the Coast Guard by calling 1-800-424-8802.

e. Transfer of ownership of this bridge or project will require reconfirmation of this authorization by this office prior to completion of construction.

f. Please advise this office upon commencement and completion of construction.

If you have any questions, please call this office at the above number.

Sincerely,

Gary Kassof
Bridge Administrator
First Coast Guard District
By direction of the District Commander

Copy: ACOE, Steve Schumach

U.S. Department of Transportation

United States Coast Guard

Commander
First Coast Guard District

One South Street
Battery Park Building
New York, NY 10004-5073
Staff Symbol: obr
Phone: (212) 668-7165
FAX: (212) 668-7967

RECEIVED
APR - 8 2002

16590

April 5, 2002

Mr. Jeffrey W. Cappola
DeCotiis, Fitzpatrick & Gluck, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd
Teaneck, NJ 07666

Re: HMDC Landfill Remediation and Redevelopment Project

Dear Mr. Cappola:

We have reviewed your letter dated March 15, 2002 regarding proposed changes to bridge design and location of the referenced project.

From the information that you have provided we have concluded that our letter dated April 18, 2000 placing this project in our Advance Approval is still valid. All conditions of that letter remain in effect.

Should you need further assistance, please contact me at the telephone number or address above.

Sincerely,

Gary Kassof
Bridge Administrator
First Coast Guard District
By direction of the District Commander

Encl: CG ltr dtd 18 April 2000

Copy: ACOE