Avon Approval

6

State of New Jersey
Department of Environmental Protection

ALD T. DIFRANCESCO
*Acting Governor*

Robert C. Shinn, Jr.
Commissioner

Bureau of Case Management
P.O. Box 028
401 East State Street
Trenton, NJ 08625-0028
Telephone: (609) 633-1455
Facsimile: (609) 633-1439

**Certified Mail**
**Return Receipt Requested**
**No. 7000 1670 7837 0954**

SEP 18 2001

Jeffery W. Cappola, Attorney
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

Dear Mr. Cappola:

lot 16 lot 29

Re: Lyndhurst & Berry's Creek Redevelopment Project and EnCap Golf Holdings, LLC (EnCap)
Avon Sanitary Landfill - Block 231 Lots 14 and 15, Block 233 Lot 14 and Block 235 Lot 30
Township of Lyndhurst, Bergen County
Comprehensive Site List ID No. NJD069291656
Memorandum of Agreement (MOA) effective 20 March 2000 & Amendment effective 5 June 2001

The New Jersey Department of Environmental Protection (Department or NJDEP) conducted expedited reviews on each of the following documents concerning the remediation/closure of the Avon Sanitary Landfill by EnCap:

- Revised Remedial Action Workplan/Closure Plan and Major Landfill Disruption Permit Application, IT Corporation, 29 September 2000
- Response to the NJDEP's Draft Comments on the Remedial Action Workplan/Closure Plan, IT Corporation, 20 November 2000
- Remedial Action Workplan/Closure Plan Addendum, Paulus, Sokolowski and Sartor, Inc., May 2001
- Additional Supporting Documentation to the Remedial Action Workplan/Closure Plan Addendum, Paulus, Sokolowski and Sartor, Inc., June 2001
- Remedial Action Workplan/Closure Plan Addendum: Supplemental Technical Information, Paulus, Sokolowski and Sartor, Inc., July 2001
- Remedial Action Workplan/Closure Plan Addendum: Submission of Requested Supporting Documentation, Paulus, Sokolowski and Sartor, Inc., 31 July 2001

Collectively, these documents represent the certified Remedial Action Workplan/Closure Plan (RAW/CP) and Major Landfill Disruption Permit Application (MLD) that EnCap submitted for NJDEP review. Based on its review, the Department hereby approves the RAW/CP and MLD subject to the conditions contained herein. EnCap is notified that this Approval supercedes the NJDEP's 19 December 2000 letter. EnCap is also notified at in instances where numerous revisions, additions or subsequent explanations are provided on any particular posal, this Approval applies to the most recent and/or complete version of the proposals submitted by EnCap. Furthermore, EnCap is advised that this Approval does not apply to the RAW/CP dated 1 August 2000.

The NJDEP evaluated the RAW/CP for consistency with the *Brownfields and Contaminated Site Remediation Act*, N.J.S.A. 58:10B-1 et seq., *Solid Waste Management Act*, N.J.S.A. 13:1E-1 et seq., *Spill Compensation and Control Act*, N.J.S.A. 58:10-23.11a et seq. and *Water Pollution Control Act*, 58:10A-1 et seq. Conformance with the *Technical Requirements for Site Remediation* (TRSR), N.J.A.C. 7:26E-1 et seq. and the *Solid Waste Regulations*, N.J.A.C. 7:26-1 et seq. was also evaluated during the Department's review of the RAW/CP.

**Project Summary**

The Lyndhurst and Berry's Creek Redevelopment Project involves the proper remediation/closure of four landfills within the Hackensack Meadowlands District to improve the existing environmental conditions while providing for beneficial reuse and development of the sites. EnCap proposes recreational, commercial and residential end uses for the parcels involved in the project. Development plans include construction of golf courses, a hotel/ conference center, spa, commercial buildings, office buildings and active adult residential units with potential for other public recreational facilities to be added. The success of the project will require effective communication/ coordination and implementation of the RAW/CP and MLD in accordance with all of the federal, state, and local approvals/ permits.

EnCap originally entered into the MOA to obtain the NJDEP's oversight for the closure and remediation of the Avon, Lyndhurst and Rutherford Landfills. The MOA was subsequently amended to provide for NJDEP oversight for the Kingsland Landfill and several other parcels within the project area. The Department's Site Remediation Program (SRP) and Division of Solid and Hazardous Waste (DSHW) are working closely together to provide the oversight necessary to ensure that the closure, remediation and redevelopment project is conducted in accordance with all applicable federal, state and local laws, regulations and ordinances. To facilitate this project, the NJDEP applied an innovative oversight process that included expedited reviews of EnCap's submittals and participation in numerous technical meetings to guide EnCap's preparation of the applications and documents. Early in the process, the Department established that the project should include 1) active collection of landfill gases, 2) construction of an impermeable cap and 3) full containment/collection of leachate and contaminated ground water.

The RAW/CP proposes to install a passive collection system for landfill gases that is capable of being upgraded to an active collection system if warranted by future monitoring. The RAW/CP also proposes to install a multi-layered cap system that includes an impermeable geosynthetic liner and to construct an intermediate-depth leachate collection trench around the perimeter of the landfill. Based on the most recent design modifications and the site-specific ground water model, EnCap predicts a 96-98 percent reduction in leachate generation and indicates that the proposed remediation/closure will mitigate impacts to the surface waters adjacent to the site. As detailed in this correspondence, the NJDEP is satisfied that EnCap's proposed remediation/closure is technically sound and may proceed subject to the conditions described herein. The following activities are also proposed for the site:

- Installation of soil erosion and sediment control measures,
- Dust suppression, odor control and air monitoring programs during the construction phase,
- Establishment of institutional controls (i.e. - a Deed Notice and a Classification Exception Area),
- Operation and maintenance of all engineering controls, and
- Long-term performance and compliance monitoring.

## Conditions

### 1. General Clarification

The issuance of this Approval should not be construed as an indication that the Department accepts all of the statements, conclusions and recommendations contained in the RAW/CP. The NJDEP does not consider it necessary to illustrate its point by listing each case where this condition applies. However, it must be noted that the RAW/CP often characterizes, describes or utilizes the existing database in a manner that does not reflect the Department's position regarding the adequacy of the available data. In addition, some sections of the RAW/CP claim that the NJDEP previously approved certain proposals when no such approval was issued. The Department has made a site-specific determination to approve the RAW/CP and MLD subject to the terms contained herein based on the final remedial/closure design proposed by EnCap and to facilitate implementation of the overall project for the benefit of human health and safety and the environment.

### 2. Reservation of Rights

Certain proposals in the RAW/CP are intended to satisfy performance-based criteria within estimated/calculated time periods. In its submittals, EnCap seeks NJDEP concurrence with these time periods prior to implementation of the RAW/CP. The NJDEP acknowledges that the time period estimates/calculations are based on site-specific data and were developed through the application of acceptable methodologies. However, the NJDEP clarifies that following implementation, EnCap will have to ultimately demonstrate that the estimates/calculations are correct, that the engineering controls performed as predicted and that the remedial objectives for the site have been achieved. Some contingencies have been integrated into the RAW/CP to reflect the Department's requirements concerning this matter, with the most notable example pertaining to the operation, maintenance and monitoring of the leachate management system. In addition, the Department has stipulated terms within this correspondence to further clarify its requirements on certain proposals.

### 3. Compliance Statement

EnCap shall implement the RAW/CP in conformance with all applicable federal, state and local laws, regulations and ordinances, including any/all required permits. In the event that the terms and conditions of a permit are more stringent than the terms and conditions established by this Approval, then the more stringent permit requirement shall prevail. Conversely, if the terms and conditions of this Approval are more stringent than a permit requirement, then the more stringent Approval requirements shall prevail.

### 4. Extent of Landfill Remediation/Closure

The NJDEP notes that EnCap has not volunteered to remediate/close a portion of the Avon Landfill that extends onto Block 231 Lot 13 and Block 233 Lot 13 of the Lyndhurst municipal tax maps because these parcels are not part of EnCap's project development plans. Therefore, remediation/closure of this portion of the Avon Landfill is not proposed in the RAW/CP and MLD. The NJDEP hereby confirms its intention to independently pursue the person(s) potentially responsible for the closure of this portion of the Avon Landfill and the remediation of any contaminants above the applicable remediation standards that are on or emanating from the identified parcels.

### 5. Lyndhurst, Rutherford and Kingsland Landfills, Viola Area and Other Miscellaneous Parcels

This Approval letter applies specifically to the Avon Landfill RAW/CP. The NJDEP's approval of remedial/closure activities for all other landfills, areas and parcels along with any applicable conditions, will be forwarded to EnCap under separate cover once the Department completes its review of current and/or future submittals for those portions of the project.

**6. Ecological Evaluation, Investigation and Risk Assessment**

The ecological evaluation contained in the RAW/CP is not consistent with the NJDEP's regulations, policies and procedures for assessing ecological impacts. These inconsistencies are mostly due to the limited size of the available database and use of samples that were collected from areas that have been impacted by the site as reference samples. EnCap contends that these reference samples represent background contaminant levels and that current site-related impacts are miniscule. Regardless of EnCap's characterization of site-related impacts, the criteria for selecting reference sample locations to establish background contaminant levels require that the site have no influence on the locations evaluated. Accordingly, the NJDEP does not agree that the samples collected from Berry's Creek and the Hackensack River are reference samples that would support EnCap's contention that the presence of background contamination negates the need for further ecological investigation/risk assessment.

Nonetheless, EnCap is conducting the project pursuant to the NJDEP's Voluntary Cleanup Program and has not volunteered to complete the ecological investigation/risk assessment portion of the Remedial Investigation. Accordingly, the NJDEP is not requiring EnCap to conduct toxicity testing or further ecological investigation/assessment provided that leachate and contaminated ground water discharges to surface water are mitigated to the extent predicted by EnCap in the RAW/CP. However, the NJDEP clarifies that this Approval shall not be construed as release from liability for any person responsible for conducting an ecological investigation/risk assessment on potential contaminant impacts to ecological receptors.

**7. Sediment Remediation**

The RAW/CP establishes that the landfill has impacted the sediments, that certain contaminant levels exceed sediment-screening criteria and that an ecological risk assessment has not been conducted. However, the RAW/CP concludes that remediating sediment contamination to an ecologically based standard is not warranted or feasible due to background contamination and influences from off-site urban/industrial sources. The NJDEP does not agree with this conclusion since EnCap has not performed an acceptable background investigation or ecological investigation/risk assessment.

At the same time, the NJDEP notes that EnCap proposes to remove contaminated sediments from Buck's Creek for construction/drainage improvement purposes. These contaminated sediments will be consolidated back onto the landfill and then capped by the landfill cover system. Consistent with Condition 6 above, the Department will not require EnCap to conduct extensive remediation of contaminated sediments and does not expect EnCap to return the waterway system in the project area to pristine conditions. For the purposes of this remediation/closure project, the remedial emphasis will be limited to removal of sediments from the drainage ditches (e.g. - Buck's Creek) to eliminate/reduce exposure and to control and/or eliminate future impacts from the landfill. This latter aspect shall not be limited to controlling/eliminating impacts from discharges of leachate and contaminated ground water; it must also prevent site-related impacts from surface erosion and runoff.

The NJDEP clarifies that this decision is being rendered with the expressed understanding that all future approvals, including any future No Further Action (NFA) letter, will specifically state that the full extent of potential sediment contamination was not remediated by EnCap. Furthermore, this Approval shall not be construed as a release from liability for any person that is potentially responsible for the remediation of sediment contamination that is not remediated by EnCap.

8. **Natural Resource Issues**

The SRP and DSHW are not in a position to evaluate potential historic natural resource injuries or EnCap's conclusion that it will not cause any further natural resource injuries through the implementation of its proposed RAW/CP. If EnCap wants to resolve this issue with the Department, please provide the NJDEP with written notice to this effect and the matter will be referred to the NJDEP's Office of Natural Resource Restoration. Otherwise, EnCap may proceed with implementation of the RAW/CP subject to the terms/conditions contained in this Approval and with the understanding that natural resource issues are not addressed and that natural resource injuries will be expressly excluded from future approvals, including any NFA letter.

9. **Property Owner Consent**

EnCap proposes to implement a Restricted Use Remedial Action that relies on the establishment of engineering and institutional controls. The Department requires that EnCap provide written property owner consent to the engineering and institutional controls as a stipulation to this Approval. This requirement applies to all real property that will be restricted as a result of the remediation/closure of the Avon Landfill. The written consent of the property owner shall be provided to this office prior to implementing the on-site activities.

10. **Use of Recyclable Materials**

The NJDEP clarifies that this Approval does not apply to the *Protocol for Review and Certification of Recyclable Materials* (protocol) dated May 2001. The Department will relay its requirements regarding the acceptance criteria, sampling/analytical procedures and other aspects concerning the placement of recyclable materials via separate correspondence. In the meantime, EnCap is notified that no recyclable materials shall be brought to the Avon Landfill until the Department renders a written determination regarding the protocol.

11. **Landfill Disruption Approval**

The disruption of waste during the construction shall be conducted in accordance with N.J.A.C. 7:26-2.11.

12. **Landfill Gas Control**

The proposal to install a passive landfill gas venting system that is capable of being upgraded to an active recovery system is acceptable subject to the terms of Condition 3, above.

13. **Landfill Cover System (multi-layer cap)**

EnCap proposes to construct a multi-layered engineered cap system that consists of the following layers in ascending order (i.e. – from existing grade to end use grade):

- Grading and Shaping Layer: The thickness of this layer will vary across the site depending on the amount of material required to achieve the required subgrade elevations necessary to support the cap and drainage.
- Barrier Layer: 40mil Very Flexible Polyethylene (VFPE) geomembrane.
- Geocomposite Drainage Layer: Biplanar/Triplanar drainage net heat-bonded on both sides to non-woven geotextile.
- Low Permeability Soil Material (LPSM): Twelve (12) inches thick with a hydraulic permeability that will not be greater than (i.e. – not more permeable than) $1x10^{-4}$ centimeters per second.
- Common Fill Material: A minimum of six (6) inches thick on the side slopes and a minimum of eighteen (18) inches thick on the top of the landfill.
- Growing Medium: A minimum of six (6) inches thick and comprised of material capable of supporting the intended vegetative cover for the landfill.

The proposed design is approved subject to the terms described in Condition 10, above. In addition, the RAW/CP does not specify the actual non-woven geotextile fabric that will be utilized for the drainage layer. EnCap must notify the NJDEP of the selected fabric prior to constructing the drainage layer.

With respect to the materials that will be utilized for the LPSM and common fill, EnCap proposes to conduct additional testing and/or provide certifications that these materials do not exceed the NJDEP's Residential Direct Contact Soil Cleanup Criteria (RDSCC). The NJDEP clarifies that the materials shall not exceed the RDSCC and shall not have the potential to leach contaminants that would impact surface waters at levels that would contravene the applicable Surface Water Quality Standards, N.J.A.C. 7:9B-1 et seq. Also, the RAW/CP does not identify the sampling procedures or analytical methods to be utilized to test the materials and demonstrate that contaminants do not exceed the specified criteria. Accordingly, EnCap shall submit a sampling/analysis plan for NJDEP review/approval prior to accepting LPSM and common fill materials.

Further, the NJDEP notes that the final design for the proposed golf course for the Avon West and the office/time share/residential structures proposed for Avon East have not been submitted for review/approval. Said review is required to ensure that elements of the final design such as landscape features do not include trees/shrubs with root systems that may potentially penetrate deep into the cap, clog/damage the drainage layer and/or breach the barrier layer. The same concerns apply to the methods that will be utilized to support the structures on Avon East. Also, all buildings shall be equipped with engineering controls to eliminate potential migration of contaminants and landfill gases into the building interiors. Final designs/plans shall be submitted and receive NJDEP approval prior to construction of the golf course and buildings.

**14. Surface Water Management Plan**

The surface water management plan is acceptable provided that the materials to be placed above the barrier layer do not have the potential to leach contaminants that would impact surface waters at levels that would contravene the applicable Surface Water Quality Standards, N.J.A.C. 7:9B-1 et seq.

**15. Leachate/Contaminated Ground Water Disposal**

EnCap proposes to dispose the leachate/contaminated ground water that will be generated during the construction and operation of the leachate management system at the appropriate local publicly owned treatment works (POTW). This proposal is acceptable to the NJDEP provided that EnCap acquires the applicable permits before it begins construction of intermediate-depth leachate collection trench and complies with any/all permit conditions. EnCap shall develop an alternate leachate disposal method if it cannot acquire the applicable permits.

**16. Deed Notice**

The draft Deed Notice provided by EnCap is sufficient to satisfy the administrative requirements established by the TRSR, N.J.A.C. 7:26E-6.2(a)16 with the stipulation that considerable revisions will be required to develop the final Deed Notice that must be included in the Remedial Action Report. In addition, written property owner consent must still be provided (see condition 9, above) and consist of a copy of the draft deed notice signed by the property owner as well as a separate written statement of consent.

**17. Ground Water Classification Exception Area/Well Restriction Area (CEA/WRA)**

The Department has notified EnCap that the horizontal boundary for the CEA/WRA as depicted on Figure 1 of the most recent public notice letter is not consistent with the horizontal boundary previously established by EnCap and approved by the NJDEP (see Figure 4-1 of the 29 September 2000 submittal). To accurately represent the CEA/WRA, the southwestern horizontal boundary must extend to Kingsland Creek instead of



G0100300390

coinciding with the Avon Landfill property boundary. EnCap shall revise Figure 1 to accurately depict the horizontal boundary of the CEA/WRA as approved by the Department and re-issue the letter to the local authorities within ten (10) calendar days from receipt of this correspondence. Documentation that proper notice of the accurate CEA/WRA pursuant to N.J.A.C. 7:26E-6.2(a)17.v has been sent to the local authorities shall be provided to the NJDEP within fifteen (15) calendar days from receipt of this correspondence.

**18. Leachate Management System (LMS)**

The proposed LMS consists of a leachate collection trench that will be installed around the entire perimeter of the landfill. The trench will be five feet wide with the bottom of the trench set at 0.0 feet above mean sea level (MSL) and a slotted PVC pipe at an invert elevation of 0.5 feet above MSL. The LMS design also includes pump stations and force mains that will divert the collected leachate to the local POTW for treatment/discharge. EnCap indicates that following the installation of the trench and the multi-layered cap, operation of the LMS will reduce the ground water mound to approximate elevations of 2.0 feet above MSL in the center of the landfill and 1.0 foot above MSL in the vicinity of the trench. The Department approves the proposed design subject to the terms described with respect to the post-remediation monitoring of the LMS. The NJDEP also requires that the LMS be installed and operational prior to the placement of any materials that will be brought to the site for the purpose of constructing the multi-layer cover system.

**19. Landfill Closure Certification**

EnCap shall comply with the closure certification requirements established by the Solid Waste Regulations, N.J.A.C. 7:26-2A.9(d)10.

**Post-Remediation/Closure Care Plan**

Throughout the project, the Department has maintained that both the TRSR, N.J.A.C. 7:26E-1 et seq. and Solid Waste Regulations, N.J.A.C. 7:26-1 et seq. apply to this remediation/closure project. The NJDEP has also instructed EnCap to develop a post-remediation/closure care plan that satisfies the requirements of both regulations. The most recent version of the RAW/CP is based on the TRSR and states that the Solid Waste Regulations, N.J.A.C. 7:26-2A.9(e)i. do not apply. This statement is not consistent with the NJDEP's position and is confusing since some of the post-remediation/closure proposals specifically reference the Solid Waste Regulations.

However, the Department performed its own comparative analysis of the post-remediation/closure care plan and determined that while strict conformance to the Solid Waste Regulations is not demonstrated, the main regulatory objectives are achieved. The terms/conditions that apply to the NJDEP's approval of the post-remediation/closure care plan are described below:

**a. Initiation of Post-Remediation/Closure Care Period**

EnCap indicates that the post-remediation/closure care period will begin once the remediation activities are completed and defines this milestone as "seeding at the final grades". Once the seeding is performed, a Remedial Action Report (RAR) and a request for an NFA letter will be submitted for the site. However, interpretation of the actual start of the post-remediation/closure care period is difficult. Depending on the section of the RAW/CP reviewed, EnCap is proposing to initiate these activities following installation of the multi-layered cover system or following NJDEP issuance of the NFA approval letter. These two milestones are not the same. Accordingly, the NJDEP clarifies that the post-remediation/closure care period shall commence once the multi-layered cover system is installed, which shall be depicted in the schedule as the final step for completing all of the construction activities required by the RAW/CP.

**b. LMS Contingency Plan**

As stated in Condition 18 above, the remedial objective of the LMS is to reduce the ground water mound to 2.0 feet above MSL in the center of the landfill and 1.0 foot above MSL in the vicinity the collection trench. Once the LMS achieves this objective, the pumps will be turned off and ground water elevations will be monitored from a total of twenty-four (24) monitor wells/piezometers. Monitoring will consist of quarterly ground water level measurements during the construction phase and the first five (5) years of the post-remediation/closure care period. The monitoring frequency will then be reduced to an annual basis.

Once the pumps are turned off, EnCap shall implement the following contingencies that are keyed to the future monitoring results:

- During the initial five (5) year period after the pumps are turned off, EnCap shall turn the pumps back on if the mound level exceeds 3.0 feet above MSL for four (4) consecutive quarters in the center of the landfill. Pumping may again cease once the ground water levels return to the remedial objective of 2.0 feet above MSL.
- Once the monitoring converts to the annual frequency and if the results of an annual monitoring event indicate that the ground water elevation in the center of the landfill reaches 3.0 feet above MSL, EnCap shall revert to quarterly monitoring for a total of four quarters. In addition, EnCap shall turn the pumps back on if the mound level exceeds 3.0 feet above MSL for four (4) consecutive quarters in the center of the landfill. Pumping may again cease once the ground water levels return to the remedial objective of 2.0 feet above MSL. Quarterly monitoring shall be conducted for the first year after the pumps are turned off and then reduced to the annual frequency if the first year of quarterly data do not indicate that the ground water levels are again at 3.0 feet above MSL.
- If the monitoring data establish that the ground water elevation in the center of the landfill has reached four (4) feet above MSL at any time after the pumps have been turned off, EnCap shall immediately resume pumping and notify the Department. The frequency and duration of monitoring required in this event shall be determined in the event that this situation actually occurs. In addition, if water levels rise such that re-activation of the LMS is needed, EnCap should evaluate the reasons for the rise by running the groundwater flow model again and correlating the model with recent water-level data. The goal of this effort would include identifying possible leaks in the landfill cap and, if any are identified, developing a plan to repair the cap and/or proposing continued long-term operation of the LMS.

**c. Reporting**

every 2 yrs

In the event that the LMS contingencies must be implemented, EnCap shall provide a separate report of the data to the Department prior to submittal of the proposed biennial monitoring/certification report. Also, if the data indicate that water levels will likely exceed 3.0 feet above MSL prior to collecting all four rounds of water-level data, EnCap shall provide these data to the Department. A footnote shall be added to the Project Schedule indicating that a monitoring report(s) shall be submitted to the Department, in addition to those proposed every two years, as needed.

**d. Additional Ground Water Model Simulation**

sfied

The NJDEP requested EnCap to perform an additional ground water model simulation to predict the conditions that will exist once the multi-layer cap is installed and the LMS is no longer operational. The 31 July 2001 component of the RAW/CP indicates that this simulation was performed and that a sensitivity analysis was conducted to assess percent reduction of leachate discharge. The two assumptions that EnCap made for the model are listed. However, the submittal does not provide the sensitivity factors that were utilized in generating the model. Also, EnCap does not indicate whether or not the model predicts that



G0100300392

ground water elevations will reach 3.0 feet above MSL after the LMS operations have ceased and if so, when. EnCap shall submit the additional information and a full evaluation of the simulation within thirty (30) calendar days from receipt of this Approval.

e. **Landfill Gas Venting System Monitoring**

The RAW/CP states that landfill gas monitoring can be discontinued if the cited criteria are met for at least one year. In addition to the requirements, terms and conditions to be established by the air permit/certificate, the NJDEP clarifies that EnCap may petition the Department to discontinue landfill gas monitoring should the cited criteria are met for at least one year.

f. **Certification of Completion of Post-Remediation/Closure Care Period**

The proposal to have both the owner/operator and a NJ licensed Professional Engineer certify the submittal is acceptable. The owner/operator shall also certify the document pursuant to the TRSR, N.J.A.C. 7:26E-1.5 and the *Procedures for Department Oversight of the Remediation of Contaminated Sites*, N.J.A.C. 7:26E-1.2.

g. **Biennial Certification Requirements**

EnCap indicates that "a developer" will inspect/certify that the remediation remains protective. The Biennial Certification shall comply with the TRSR, specifically N.J.A.C. 7:26E-6.4(g). In the event that the person obligated to provide the Biennial Certification changes in the future, the person who is relinquishing the obligation and the person who is assuming the obligation shall do so pursuant to N.J.A.C. 7:26E-6.4(h).

**h. Decontamination Plan**

The current decontamination plan is conceptual and lacking adequate details. A revised decontamination plan shall be prepared and submitted for NJDEP review/approval. Details concerning decontamination procedures, decontamination station design/location(s) and residuals management shall be described. The plan must ensure that equipment used in the remediation/closure and construction are properly decontaminated prior to leaving the site, including without limitation, before exiting onto public roadways such as Valley Brook Avenue. The revised decontamination plan shall be submitted for NJDEP review/approval within thirty (30) calendar days from receipt of this Approval.

**22. Implementation Schedule**

The Department requires that EnCap provide a single, comprehensive implementation schedule that is specific to the Avon Landfill RAW/CP and identifies all of the tasks, subtasks, associated timelines, project milestones and/or future submittal dates pursuant to the TRSR, specifically N.J.A.C. 7:26E-6.5. The implementation schedule shall be submitted for NJDEP review/approval within thirty (30) calendar days from receipt of this Approval.

**23. Notification**

EnCap shall notify the assigned case manager a minimum of two (2) weeks prior to initiation of field activities. The assigned case manager shall also be contacted in the event that suspected hazardous materials are encountered during project implementation. EnCap shall also report any such incidents to the Department's hotline by calling 877-WARN DEP.

**4. Health and Safety Plan (HASP)**

EnCap and its contractors are responsible for ensuring that the HASP covers all activities and conforms to the industry (*29 CFR 1910*) and construction (*29 CFR 1926*) standards established by OSHA.

This Approval will be effective upon NJDEP receipt of an executed original of the enclosed Acceptance Form. If you have any questions, please contact Mr. Michael Kenney, Case Manager at (609) 633-0739 or via email at *mkenney@dep.state.nj.us*.

Sincerely,

Michael S. Kenney, Case Manager
Bureau of Case Management

Thomas Sherman, Assistant Director
Office of Permitting & Technical Programs

Enclosure

c: Steve Tiffinger, Bergen County Department of Health Services
Alan Steinberg, Hackensack Meadowlands Development Commission
John Sartor, Paulus, Sokolowski and Sartor, Inc.
Sue Boyle, Assistant Commissioner - SRP
John Castner, Director - DSHW
Teruo Sugihara, BEERA
Jeff Story, BGWPA
Nelson Hausman, BLRM
Mary Anne Goldman, BLRM
Richard DeWan, ODST
Ruth Foster, OPP&PC
Quddus Qayyum, BNSR
Gwen Zervas, BCM
Ernest Hahn, ONRR
Barker Hamill, Chief - BSDW

7

State of New Jersey

Department of Environmental Protection

. McGreevey
Governor

Avon

Bradley M. Campbell
Commissioner

Bureau of Case Management
P.O. Box 028
401 East State Street
Trenton, NJ 08625-0028
Telephone: (609) 633-1455
Facsimile: (609) 633-1439

RECEIVED
NOV 25 2002

**Certified Mail**
**Return Receipt Requested**
**No. 7001 1940 0002 4793 8221**

NOV 8 2002

Jeffery W. Cappola, Attorney
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

Dear Mr. Cappola:

Re: Lyndhurst & Berry's Creek Redevelopment Project and EnCap Golf Holdings, LLC (EnCap)
Avon Sanitary Landfill - Block 231 Lots 14 and 15, Block 233 Lot 14 and Block 235 Lot 30
Township of Lyndhurst, Bergen County
Comprehensive Site List ID No. NJD069291656
Memorandum of Agreement (MOA) effective 20 March 2000 & Amendment effective 5 June 2001

The New Jersey Department of Environmental Protection (Department or NJDEP) hereby authorizes the addition of a cushion layer to the design for the multi-layer cap. Therefore, condition 13 of the Department's 18 September 2001 approval letter for the Remedial Action Workplan/Closure Plan (RAW/CP) and Major Landfill Disruption Permit Application (MLD) is amended as follows:

**13. Landfill Cover System (multi-layer cap)**

EnCap shall construct a multi-layered engineered cap system that consists of the following layers in ascending order (i.e. – from existing grade to end use grade):

Grading and Shaping Layer: The thickness of this layer will vary across the sites depending on the amount of material required to achieve the required subgrade elevations necessary to support the cap and drainage.
Cushion Layer: A six (6) inch thick layer of material that is no coarser than a poorly graded sand (SP) and is free of rocks, fractured stones, debris, cobbles and solid waste.
Barrier Layer: 40mil linear low density polyethylene (LLDPE) geomembrane.
Geocomposite Drainage Layer: Biplanar/Triplanar drainage net heat-bonded on both sides to non-woven geotextile.
Low Permeability Soil Material (LPSM): Twelve (12) inches thick with a hydraulic permeability that will not be greater than (i.e. – not more permeable than) $1x10^{-4}$ centimeters per second.
Common Fill Material: A minimum of six (6) inches thick on the side slopes and a minimum of eighteen (18) inches thick on the top of the landfill.
Growing Medium: A minimum of six (6) inches thick and comprised of material capable of supporting the intended vegetative cover for the landfill.

This letter also confirms that EnCap has satisfied the following conditions established by the 18 September 2001 approval letter for the RAW/CP and MLD:

Condition 17: The outstanding requirements for the ground water classification exception area and well restriction area were satisfied via EnCap's 31 October 2001 submittal.

Condition 20.d: The outstanding requirement for the ground water model sensitivity analysis was satisfied via EnCap's 31 October 2001 submittal.

Conditions 21 and 22: The outstanding requirements regarding the implementation schedule and decontamination plan were satisfied by EnCap due to the inclusion of these items in the submittals that comprised the Revised RAW/CP and MLD for the Lyndhurst and Rutherford Landfills. Therefore, conditions 23 and 24 of the NJDEP's 29 October 2002 approval letter shall also apply to the Avon Sanitary Landfill.

Unless specifically discussed above, all other conditions/requirements established by the NJDEP's 18 September 2001 approval letter for the Avon Sanitary Landfill RAW/CP and MLD, including the remaining narrative portion of condition 13, shall remain in full force and effect. If you have any questions, please contact Mr. Michael Kenney, Case Manager at (609) 633-0739 or via email at *mkenney@dep.state.nj.us*.

Sincerely,

Michael S. Kenney, Case Manager
Bureau of Case Management

Thomas Sherman, Assistant Director
Office of Permitting & Technical Programs

c: Steve Tiffinger, Bergen County Department of Health Services
Robert Ceberio, New Jersey Meadowlands Commission
Richard Gimello, NJDOT - Office of Maritime Resources
John Sartor, Paulus, Sokolowski and Sartor, Inc.
Evan Van Hook, Assistant Commissioner - SRP
John Castner, Director - DSHW
Stephanie Brand, DOL
Teruo Sugihara, BEERA
Jeff Story, BGWPA
Nelson Hausman, BLRM
Mary Anne Goldman, BLRM
Richard DeWan, OD&ST
Ruth Foster, OPP&PC
Quddus Qayyum, BNSR
John Sacco, ONRR
Gwen Zervas, BCM



G0100300396

2nd L+R Approval

(8)

E. McGreevey
Governor

State of New Jersey
Department of Environmental Protection

Bureau of Case Management
P.O. Box 028
401 East State Street
Trenton, NJ 08625-0028
Telephone: (609) 633-1455
Facsimile: (609) 633-1439

Bradley M. Campb
Commissioner

RECEIVED
OCT 31 2002

**Certified Mail**
**Return Receipt Requested**
**No. 7001 1940 0002 4793 8238**

OCT 29 2002

Jeffery W. Cappola, Attorney
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

Dear Mr. Cappola:

Re: Lyndhurst & Berry's Creek Redevelopment Project and EnCap Golf Holdings, LLC (EnCap)
<u>Lyndhurst Sanitary Landfill, Lyndhurst Recreation Complex, Rose City Area & Viola Area</u> - Block 231 Lots 9, 10, 11 and 12, Block 233 Lots 1, 5, 6.01, 6.02, 9 (partial), 10, 11, 12 and 15, 16.01, 16.02, 17 & 18, Township of Lyndhurst, Bergen County
<u>Rutherford Sanitary Landfill, Rutherford Haul Road and Northern Node</u> - Portions of Block 220 Lots 1 through 12, Block 220 Lots 14, 15.01, 15.02 & 15.03
Borough of Rutherford, Bergen County
Comprehensive Site List ID No. NJD069291656
Memorandum of Agreement (MOA) effective 20 March 2000 with Amendments effective 5 June 2001 & 26 September 2002

The New Jersey Department of Environmental Protection (Department or NJDEP) conducted expedited reviews on each of the following documents concerning the remediation/closure of the above referenced parcels by EnCap:

- Revised Remedial Action Workplan/Closure Plan & Major Landfill Disruption Permit Approval Application, Paulus, Sokolowski and Sartor, Inc., April 2002
- Supplemental Information - Revised Remedial Action Workplan/Closure Plan & Major Landfill Disruption Permit Approval Application, Paulus, Sokolowski and Sartor, Inc., June 2002
- Supplemental Information Package - Revised Remedial Action Workplan/Closure Plan & Major Landfill Disruption Permit Approval Application, Paulus, Sokolowski and Sartor, Inc., July 2002
- Viola Ditch Construction Methods, EnCap Golf Holdings, LLC, 30 July 2002
- Additional Supplemental Information Package - Revised Remedial Action Workplan/Closure Plan & Major Landfill Disruption Permit Approval Application, Paulus, Sokolowski and Sartor, Inc., August 2002

Collectively, these documents represent the Revised Remedial Action Workplan/Closure Plan (RAW/CP) and Major Landfill Disruption Approval Application (MLD) that EnCap certified and submitted for NJDEP review. [illegible] on its review, the Department hereby approves the Revised RAW/CP and MLD (hereafter referred to as "Revised Plan") subject to the conditions contained herein. EnCap is notified that in instances where n[illegible]rous revisions, additions or subsequent explanations are provided on any particular proposal, this approval applies to the most recent and/or complete version of the proposals submitted by EnCap.

The NJDEP evaluated the Revised Plan for consistency with the *Brownfields and Contaminated Site Remediation Act*, N.J.S.A. 58:10B-1 et seq., *Solid Waste Management Act*, N.J.S.A. 13:1E-1 et seq., *Spill Compensation and Control Act*, N.J.S.A. 58:10-23.11a et seq. and *Water Pollution Control Act*, 58:10A-1 et seq. Conformance with the *Technical Requirements for Site Remediation* (TRSR), N.J.A.C. 7:26E-1 et seq. and the *Solid Waste Regulations*, N.J.A.C. 7:26-1 et seq. was also evaluated during the Department's review of the Revised Plan.

## A. Project Summary

The Lyndhurst and Berry's Creek Redevelopment Project involves plans to properly remediate/close four landfills and other miscellaneous parcels within the New Jersey Meadowlands District. The project will improve the existing environmental conditions while providing for beneficial reuse and development of the sites. EnCap proposes recreational, commercial and residential end uses for the parcels involved in the project. Based on information provided by EnCap, development plans include construction of golf courses, a hotel/conference center, spa, commercial buildings, retail space, office buildings and residential units with potential for other public recreational facilities to be added. The success of the project will require effective communication/coordination and implementation of the Revised Plan in accordance with all of the federal, state, and local approvals/permits.

EnCap originally entered into the MOA to obtain the NJDEP's oversight for the closure and remediation of the Avon, Lyndhurst and Rutherford Landfills. The MOA was subsequently amended to provide for NJDEP oversight for the Kingsland Landfill and several other parcels within the project area. Elements of the Department's Site Remediation Program (SRP) are working closely together to provide the oversight necessary to ensure that the closure, remediation and redevelopment project is conducted in accordance with all applicable federal, state and local laws, regulations and ordinances. To facilitate this project, the NJDEP applied an innovative oversight process that included expedited reviews of EnCap's submittals and participation in numerous technical meetings to guide EnCap's preparation of the applications and documents. The NJDEP approved the Avon Sanitary Landfill RAW/CP and MLD on 18 September 2001. The Department's approval for the RAW/CP and MLD for the Lyndhurst and Rutherford Sanitary Landfills was issued on 13 December 2001. However, based on EnCap's decision to submit a revised design for the above referenced parcels, the NJDEP is issuing this approval of the Revised Plan. This approval supersedes the Department's 13 December 2001 approval.

Early in the process, the NJDEP established that the project should include 1) active collection of landfill gases, 2) construction of an impermeable cap and 3) full containment/collection of leachate and contaminated ground water for the landfills. Based on the data EnCap obtained during its investigation of the referenced areas, EnCap proposes to install a passive landfill gas venting system, excavate/consolidate contaminated soil and waste material, construct engineered cover systems, install leachate collection systems, and install vertical hydraulic barrier (VHB) walls. The designs for the various engineering controls are specific to the individual areas that EnCap identifies in the Revised Plan.

Based on its review of the Revised Plan, the Department has determined that the remediation/closure activities, which also include the following activities, may proceed subject to the conditions described within this approval:

- Installation of soil erosion and sediment control measures,
- Dust suppression, odor control and air monitoring programs during the construction phase,
- Establishment of institutional controls (i.e. - a Deed Notice and a Classification Exception Area),
- Operation and maintenance of all engineering controls, and
- Long-term performance and compliance monitoring.

## B. Conditions

### 1. General Clarification

The issuance of this approval should not be construed as an indication that the Department accepts all of the statements, conclusions and recommendations contained in the Revised Plan. The NJDEP does not consider it necessary to illustrate its point by listing each case where this condition applies. However, it must be noted that EnCap often characterizes, describes or utilizes the existing database in a manner that does not reflect the NJDEP's position regarding the adequacy of the available data. In addition, some sections of the Revised Plan claim that the NJDEP previously approved certain proposals when no such approval was issued. The Department has made a site-specific determination to approve the Revised Plan subject to the terms contained herein based on the proposed remedial/closure design and to facilitate implementation of the overall project for the benefit of human health and safety and the environment.

### 2. Reservation of Rights

Certain proposals in the Revised Plan are intended to satisfy performance-based criteria within estimated/calculated time periods and EnCap seeks NJDEP concurrence with these time periods as part of this approval. The Department acknowledges that the time period estimates/calculations are based on site-specific data and were developed through the application of acceptable methodologies. However, the Department clarifies that following implementation, EnCap will have to ultimately demonstrate that the estimates/calculations are correct, that the engineering controls performed as predicted, and that the remedial objectives for the sites have been achieved. Some contingencies have been integrated into the Revised Plan to reflect the Department's requirements regarding this matter, with the most notable example pertaining to the operation, maintenance and monitoring of the leachate management system. In addition, the Department has stipulated terms within this correspondence to further clarify its requirements on certain proposals.

### 3. Compliance Statement

EnCap shall implement the Revised Plan in conformance with all applicable federal, state and local laws, regulations and ordinances, including any/all required permits. In the event that the terms, conditions and/or requirements of a permit are more stringent than this approval, then the more stringent permit requirements shall prevail. Conversely, if the terms, conditions and/or requirements of this approval are more stringent than those specified by a permit, then the requirements of this approval shall prevail.

### 4. Media of Concern and Applicable Remediation Standards

EnCap's remediation/closure activities are limited to soil, ground water, landfill waste materials, landfill leachate and landfill gas emissions at the referenced blocks/lots. In many instances, EnCap's remediation/closure activities are further limited to a portion of the referenced blocks/lots. Therefore, the NJDEP hereby reserves the right to pursue any person(s) potentially responsible for the remediation/closure of those portions of the project area that are not addressed by EnCap and where contaminants above the applicable remediation standards may exist on, or be emanating from, the referenced parcels.

In addition, EnCap proposes to apply the narrative standards that it has developed and presented in the Revised Plan. As a condition of this Approval, the NJDEP clarifies that the following criteria/standards shall also be considered as the applicable remediation standards for the referenced sites:

a. Soil

Contamination above the NJDEP's Nonresidential Direct Contact Soil Cleanup Criteria (NRDCSCC) will remain at the sites and be addressed by a Restricted Use Remedial Action that involves the establishment of engineering and institutional controls.

b. Ground Water

The applicable remediation standards are the Class II-A ground water quality criteria pursuant to the Ground Water Quality Standards, N.J.A.C. 7:9-6.

c. Surface Water and Sediments

The Revised Plan establishes that the landfills have impacted the surface waters and sediments within the project area and that certain contaminant levels exceed surface water quality standards and/or sediment-screening criteria. The Revised Plan also establishes that EnCap did not conduct a complete ecological risk assessment pursuant to the TRSR. In addition, EnCap suggests that surface water and sediment remediation will be achieved by the proposed engineering controls. The Department clarifies that except for a portion of Viola Ditch, the remediation of surface water and sediment is not addressed by EnCap and is outside the scope of this approval. In addition, the proposed remediation of Viola Ditch is not intended to achieve numerical standards for these environmental media. Further clarification on the remediation of Viola Ditch is also provided later in this correspondence.

This approval is being issued with the expressed understanding that all future approvals, including any future No Further Action (NFA) letters, will specifically state that the full extent of potential impacts to environmentally sensitive areas and receptors was not investigated or remediated by EnCap. Also, this approval shall not be construed as a release from liability for any person that is potentially responsible for remediation that EnCap does not conduct.

d. Air

The applicable remediation standards for landfill gas (LFG) emissions are established by the Department's 8 November 2001 Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment – Construction of New Source for the Passive LFG System at the Lyndhurst and Rutherford Landfills. EnCap shall conform to the requirements of said permit and the applicable laws/regulations regarding potential air impacts from landfill gas emissions.

5. Leachate Management System (LMS)

The proposed LMS consists of leachate collection trenches that will be constructed inside the VHB walls to be installed around the perimeter of the landfills. The trench will be five feet wide with the bottom of the trench set at 0.0 feet NAVD88 and a perforated PVC pipe set at an invert elevation of 0.5 feet NAVD88. Spacing between the VHB wall and LMS will average thirty (30) feet. Based on localized site conditions, the spacing will generally range between twenty (20) and forty (40) feet with certain site conditions potentially requiring greater spacing. However, even in these limited instances the maximum distance between the VHB wall and the LMS shall not exceed sixty (60) feet. The LMS design also includes pump stations and force mains that will divert the collected leachate/ground water to the local POTW for subsequent treatment/discharge. The operation of the LMS is intended to eventually reduce the ground water mounds within the containment areas and, in combination with the other engineering controls, establish hydraulic control of the leachate and contaminated ground water.

The NJDEP accepts the proposed design subject to the terms/conditions described throughout this approval. In addition, EnCap shall submit the final, detailed plans for all of the LMS pump stations to the NJDEP a minimum of thirty (30) calendar days prior to construction of the LMS. The plans shall include the size and volume of each wet well, pipe inverts, bottom elevations, pump sizing and pumping rates (including the calculations used to support the design decisions), and pump control elevations. EnCap shall receive NJDEP approval of these detailed plans prior to constructing the pump stations.

The LMS operational period shall coincide with the length of time required for EnCap to demonstrate compliance with the remedial objectives defined in Condition B.22.c of this approval and shall not necessarily be linked to a prearranged date. In summary, EnCap shall achieve and maintain the remedial objectives for these sites. If the performance monitoring of the LMS indicates that the remedial objectives are not achieved or cannot be maintained, then EnCap shall modify and/or continue the operation of the LMS until compliance is achieved/ maintained. Due to EnCap's decision to revise the cover system design by eliminating the use of a continuous impermeable synthetic liner for the barrier layer, the LMS operational period shall be viewed as indeterminate. Please refer to Condition B.22 of this approval for further details regarding the remedial objectives for these sites.

The LMS shall be installed and operational prior to the placement of any material that does not meet the unrestricted use criteria <u>unless</u> EnCap receives prior written authorization from the Department. The unrestricted use criteria and the methods/procedures that shall be employed to determine whether or not a material contains contaminants above the unrestricted use criteria shall be described in the NJDEP's pending Fill Protocol Approval for final cover materials.

This provision is integrated into this approval in recognition of the separate, ongoing negotiations between EnCap and the NJDEP regarding the use of processed dredged material (PDM) and other recyclable materials as fill material at the sites. In further recognition of these negotiations, efforts are currently underway to develop an acceptable Interim Storage Plan. This plan will detail information including, without limitation, the type and volume of materials proposed for staging, the contaminant types/concentrations, the staging area locations, and the temporary engineering controls for the locations. Certain requirements for the placement of PDM prior to LMS installation/operation are already specified in the NJDEP's 18 December 2001 Fill Protocol Approval. Additional requirements/clarification on PDM placement prior to LMS installation/operation will be specified in the Department's pending approval of the Interim Storage Plan.

**6. Vertical Hydraulic Barrier (VHB) Wall**

The bottom of the VHB wall shall be installed to an elevation that corresponds to the top of the varved clay or to a maximum depth of -12 feet NAVD88, whichever is encountered first. The top of the VHB wall shall be set at an elevation of +3 feet NAVD88. In addition, the joints between the individual sheets shall be sealed with the manufacturer's recommended hydrophylic caulk to minimize leakage and reduce the hydraulic transmissivity of the VHB to between $1x10^{-7}$ and $1x10^{-10}$ centimeters/second (cm/sec). Mactec's Responsibility

**7. Ground Water Remediation**

The proposed ground water remedy consists mainly of source containment/hydraulic control and pumping leachate and contaminated ground water to the local publicly owned treatment works (POTW) for subsequent treatment/ discharge. Other areas are being addressed by source removal (i.e. - excavation/consolidation of contaminated soils/waste materials) or phytoremediation. Long-term monitoring will be conducted at the various areas that comprise the sites. These remedial approaches are acceptable subject to the terms and conditions contained in this approval. However, the NJDEP clarifies that the approved ground water remedial action is not natural remediation pursuant to the TRSR, N.J.A.C. 7:26E-6.3(d) and (e). Also, site conditions prevent sentinel well installation so all existing/proposed wells shall be deemed performance wells, not sentinel or compliance wells.



G0100300401

**8. Ecological Evaluation, Investigation and Risk Assessment**

EnCap's position on potential ecological impacts from the sites is documented in the Final Remedial Investigation (RI) Report dated September 2001, the previous RAW/CP and MLD, as well as the Revised Plan. In summary, EnCap concludes that most of the current, site-related ecological impacts are miniscule and/or cannot be differentiated from regional influences from Berry's Creek and the Hackensack River. EnCap also concludes that the presence of background contamination negates the need for further ecological investigation/ risk assessment. However, EnCap also concludes that a portion of the Viola Ditch requires remediation and proposes a remedial action that eliminates the existing tidal creek after an improved, alternate channel is constructed to enhance surface water drainage/flow through this part of the project area.

Based on its review of the referenced submittals, the Department does not view the ecological risk assessment (ERA) as complete. Due to the noted limitations associated with the existing database (see condition B.1) and the use of data from Berry's Creek and the Hackensack River as reference samples, the NJDEP does not agree that EnCap's conclusions are fully supported. The NJDEP considers it highly probable that there are both site-related and regional contributions to the potential ecological impacts within the study area. At the same time, it is the NJDEP's position that the subject sites have had some influence on the reference sample locations that EnCap selected to establish background contaminant levels. However, the Department's policies regarding the selection of reference sample locations require that the site(s) being investigated have no influence on the reference sample locations. Therefore, the samples collected from Berry's Creek and the Hackensack River shall not be considered reference samples. Accordingly, the Department cannot endorse any conclusions that are based on rationale that includes such data.

Notwithstanding the above, EnCap is conducting the project pursuant to the Department's Voluntary Cleanup Program and has not volunteered to complete the ecological investigation/risk assessment portion of the RI. Accordingly, the NJDEP is not requiring EnCap to conduct toxicity testing or further ecological investigation/ assessment <u>provided</u> that leachate and contaminated ground water discharges to surface water are mitigated to the extent that EnCap predicts in the Revised Plan. However, the NJDEP clarifies that this approval shall not be construed as release from liability for any person responsible for conducting an ecological investigation/risk assessment on potential contaminant impacts to ecological receptors or any remediation that is warranted based on the results of that investigation/assessment.

**9. Natural Resource Issues**

The SRP is not in a position to evaluate potential historic natural resource injuries or EnCap's conclusion that it will not cause any further natural resource injuries through the implementation of its proposed Revised Plan. If EnCap wants to resolve this issue with the Department, please provide the NJDEP with written notice to this effect, and the matter will be referred to the NJDEP's Office of Natural Resource Restoration. Otherwise, EnCap may proceed with implementation of the Revised Plan subject to the terms/conditions contained in this approval and with the understanding that natural resource issues are not addressed and that natural resource injuries will be expressly excluded from future approvals, including any NFA letters.

**10. Property Owner Consent**

EnCap proposes to implement a Restricted Use Remedial Action that relies on the establishment of engineering and institutional controls. The Department requires that EnCap provide written property owner consent to the engineering and institutional controls as a stipulation to this approval. This requirement applies to all real property that will be restricted as a result of the remediation/closure of the parcels referenced at the beginning of this Approval. The written consent of the property owner(s) shall be provided to this office prior to EnCap implementing the on-site activities.

**11. Deed Notice**

The draft Deed Notice provided by EnCap partially satisfies the administrative requirements established by the TRSR, N.J.A.C. 7:26E-6.2(a)16. Considerable effort will be required to develop a final Deed Notice that satisfies the administrative and technical requirements of the TRSR and Solid Waste Regulations, N.J.A.C. 7:26-1 et seq. for inclusion in the Remedial Action Report (RAR). In addition, written property owner consent shall be provided (see Condition B.10, above) and consist of a copy of the draft deed notice signed by the property owner as well as a separate, written statement of consent.

**12. Use of Recyclable Materials**

The use of recyclable materials to construct the various layers of the cover systems for the sites is discussed throughout the Revised Plan. The terms, conditions and requirements for use of recyclable materials for all layers except the low permeability material (LPM) layer, common fill layer and vegetative growth layer are stated in the NJDEP's 18 December 2001 approval of the *Protocol for Review and Certification of Recyclable Materials* (protocol approval). The NJDEP's requirements for the use of recyclable materials to construct the LPM, common fill and vegetative growth layers shall be specified in the Department's pending Fill Protocol Approval for final cover material.

**13. Landfill Disruption Approval**

The disruption of waste during the construction shall be conducted in accordance with N.J.A.C. 7:26-2.11.

**14. Landfill Gas Control**

The proposal to install a passive LFG venting system is acceptable subject to the terms of Conditions 3 and 4.d, above.

**15. Landfill Cover Systems**

EnCap proposes to construct the following cover systems on certain areas of the referenced parcels. The proposed cover designs are described below in ascending order (i.e. - from existing grade to final grade) and are approved subject to the terms described in Condition B.12, above and as otherwise conditioned in this approval. The Department clarifies that the grading and shaping layers described below are included in the project to promote/facilitate the placement of dredged materials on the subject sites and to achieve the subgrade elevations that EnCap has established for development of the sites.

**a. Processed Dredged Material (PDM) Cover System**

This system is approved for the Lyndhurst Landfill (including the Rose City and Viola Areas), Rutherford East Landfill, Rutherford West Landfill and the Rutherford Northern Node:

Grading and Shaping Layer: Comprised mainly of PDM, the thickness of this layer will vary across the sites depending on the amount of material required to achieve the required subgrade elevations.
PDM Cap Layer: One (1) foot thick with permeability not greater than (i.e. - not more permeable than) $1 \times 10^{-5}$ cm/sec.
Sacrificial PDM Layer: One (1) foot thick with permeability not greater than $1 \times 10^{-5}$ cm/sec.
Common Fill Material: Eighteen (18) inches thick.
Growing Medium: A six (6) inch layer of material that is capable of supporting the intended vegetative cover.



G0100300403

PDM utilized to construct the Sacrificial PDM Layer or placed in areas that are not equipped with an LMS and a VHB wall shall not contain contamination above the NJDEP's non-residential direct contact soil cleanup criteria (NRDCSCC) or leach contaminants that may impact ground water or surface water. This approval presumes that EnCap will demonstrate compliance with this condition/requirement by submitting the bulk sediment chemistry data and Multiple Extraction Procedure (MEP) data that shall be obtained pursuant to the Acceptable Use Determination (AUD) for the sites. The MEP data shall establish that contaminant levels in the MEP extracts do not exceed New Jersey's Class II-A Ground Water Quality Criteria and/or the applicable Surface Water Quality Standards.

**b. Multi-layer Cover System**

The system described below is approved as a contingency for the PDM cover system due to potential uncertainties associated with the volume and availability of PDM:

Grading and Shaping Layer: Comprised mainly of PDM, the thickness of this layer will vary across the sites depending on the amount of material required to achieve the required subgrade elevations.
Cushion Layer: A six (6) inch thick layer of material that is no coarser than a poorly graded sand (SP) and is free of rocks, fractured stones, debris, cobbles and solid waste.
Barrier Layer: 40mil linear low density polyethylene (LLDPE) geomembrane.
Geocomposite Drainage Layer: Biplanar/Triplanar drainage net that will be heat-bonded on both sides to non-woven geotextile.
Low Permeability Material (LPM): Twelve (12) inches thick with a hydraulic permeability that will not be greater than (i.e. - not more permeable than) $1x10^{-4}$ centimeters per second (cm/sec).
Common Fill Material: A six (6) inch thick layer.
Growing Medium: A six (6) inch layer of material that is capable of supporting the intended vegetative cover.

**c. Soil Cover System**

The system described below is approved for the Lyndhurst Recreation Complex:

Grading and Shaping Layer: The thickness of this layer will vary across the site depending on the amount of material required to achieve the required subgrade elevations.
Common Fill Material: An eighteen (18) inch thick layer.
Growing Medium: A six (6) inch layer of material that is capable of supporting the intended vegetative cover.

In addition, the materials utilized to construct this cover system shall satisfy the requirements specified in Condition 15.f, below.

**d. Pavement Cover System**

The system described below is approved for roadway on the Rutherford Haul Road:

Grading and Shaping Layer: The thickness of this layer will vary depending on the amount of material required to achieve the subgrade elevations and be compacted to achieve the required density specifications.
Dense Graded Aggregate Sub-base: A twelve (12) inch thick layer per NJDOT specifications.
Prime Coat: In accordance with NJDOT specifications.
Bituminous Stabilized Base Course: A two (2) inch thick layer of mix # 1-2 per NJDOT specifications.
Tack Coat: In accordance with NJDOT specifications.
Bituminous Concrete Surface Course: A two (2) inch thick layer of mix # 1-4 per NJDOT specifications.

e. Edge Details

EnCap has revised the edge details for all of the various cover system designs. EnCap will either achieve a minimum two-foot thick final cover along the site perimeters/property boundaries or a minimum one-foot thick final cover that includes the use of a geotextile filter fabric in the design. Additional excavation/consolidation of waste material and/or contaminated soil has been proposed as required by the NJDEP. Therefore, the edge details described on page 5-21 of the April 2002 submittal are acceptable.

f. Criteria for Placement of LPM, Common Fill and Growing Medium

With respect to the LPM, common fill and growing medium, the Department prefers that EnCap utilize certified clean fill from virgin sources. However, EnCap prefers to have the option to utilize materials from alternate sources. Therefore, the Department's pending Fill Protocol Approval for final cover material shall establish:

- the types of materials that EnCap may consider for constructing these layers,
- the procedures that EnCap shall employ to identify potential alternate sources,
- the testing requirements that EnCap shall satisfy to demonstrate that the materials do not exceed the unrestricted use soil cleanup criteria (URUSCC) for final cover material, and
- the definition for the URUSCC that shall apply to the final cover material for these sites.

g. Additional Concerns Associated with Designs

The final designs for the proposed golf courses and structures have not been submitted for review/approval. Said review is required so the NJDEP may ensure that elements of the final designs such as landscape features do not include trees/shrubs with root systems that may potentially penetrate deep into the cap, clog/damage the drainage layer, and/or breach the barrier layer.

In addition, EnCap has specifically designed the final cover layer so that no more than a two-foot thickness will be achieved across the sites. Based on this design and the materials that EnCap plans to consider for use in constructing the final cover, additional topsoil will likely be required to facilitate landscaping. Additional stability analysis may/will be required prior to placement of any amount of soil/material greater than that necessary to conform to the current design. Also, this approval shall not be construed as an indication that the NJDEP is satisfied that the final cover will support vegetative growth. Therefore, the Department emphasizes that it is EnCap's responsibility to establish and maintain the required vegetative cover for these sites.

EnCap shall provide detailed plans on the construction methods that will be utilized for installing engineering supports for the various structures (e.g. - driving pilings to support future buildings). In addition, all buildings shall be equipped with engineering controls to eliminate potential migration of contaminants and landfill gases into the building interiors. Final designs/plans shall be submitted, and receive NJDEP approval, prior to construction of the golf courses and buildings.

16. Stability and Settlement

The Revised Plan contains discussions and calculations regarding the stability analyses conducted to support the proposed designs as well as the settlement that will occur as a result of placing materials at these sites. As stated in the August 2002 submittal, ground improvements are envisioned as part of the proposed activities for these s. However, EnCap has not determined what method(s) shall be utilized for this task. Therefore, EnCap decide what method will be utilized and submit a detailed ground improvement plan and/or staged filling

plan along with an updated instrumentation program for the sites. Said plan shall be submitted a minimum of thirty (30) calendar days prior to the scheduled start date for these activities and be approved by the NJDEP prior to implementation. With regard to the northeast portion of the Lyndhurst East along Berry's Creek, the ground improvement and/or staged filling plan shall ensure that a factor of safety of 1.5 is achieved and shall include the required monitoring plan.

**17. Landfill Closure Certification**

EnCap shall comply with the closure certification requirements established by the Solid Waste Regulations, N.J.A.C. 7:26-2A.9(d)10.

**18. Ground Water Classification Exception Area/Well Restriction Area (CEA/WRA)**

The CEA/WRA is acceptable.

**19. Surface Water Management Plan**

The surface water management plan is acceptable provided that the materials to be placed above the barrier layer meet the criteria established by Condition 15.f, above.

**20. Leachate/Contaminated Ground Water Disposal**

EnCap proposes to dispose the leachate/contaminated ground water that will be generated during the construction and operation of the LMS at the appropriate local POTW. This proposal is acceptable to the NJDEP provided that EnCap acquires the applicable permits before it begins construction of leachate collection trench and complies with any/all permit conditions. EnCap shall develop an alternate leachate disposal method if it cannot acquire the applicable permits.

**21. Phytoremediation**

The phytoremediation plan described in Section 5.11 and Appendix P of the Revised Plan consists of planting grass, shrub, and tree species with the plants being grown in clean, imported material. As such, much of the vegetation does not directly remediate, but rather isolates the contaminants from potential human receptors. This approach assumes that the clean imported material will remain uncontaminated over time. It must also be recognized that the plantings on the lower slope intended to accomplish phytoremediation will only really do so during the growing season. Notwithstanding these limitations, the phytoremediation plan is approved.

**22. Post-Remediation/Closure Care Plan**

Throughout the project, the Department has maintained that both the TRSR, N.J.A.C. 7:26E-1 et seq. and Solid Waste Regulations, N.J.A.C. 7:26-1 et seq. apply to this remediation/closure project. The post-remediation/closure care plan presented in the Revised Plan is intended to satisfy the requirements of the TRSR and the Solid Waste Regulations, N.J.A.C. 7:26-2A.9(e)i. The NJDEP has performed a comparative analysis of the post-remediation/ closure care plan and determined that while strict conformance to both the TRSR and the Solid Waste Regulations is not demonstrated, the main regulatory objectives are achieved. Therefore, the plan is approved subject to the terms/conditions described below:

**a. Post-Remediation/Closure Care Period and No Further Action (NFA) Requests**

The Revised Plan states that the thirty (30) year post-remediation/closure care period will begin following seeding of the final grades. The Revised Plan also states that EnCap will prepare a RAR and request NFAs from the NJDEP for six (6) distinct "sub-sites" once seeding is complete.

With regard to RAR submittals and NFA requests, EnCap may submit a single, comprehensive RAR or six (6) separate RARs provided each submittal documents full compliance with all of the requirements established by the Department for each area(s) of the site for which EnCap submits an NFA request. Furthermore, given the scope/extent of remediation/closure that will be completed upon seeding at final grades, any NFA approval issued by the NJDEP will be for soils only. Any NFA approval shall also require that all engineering/institutional controls be monitored and maintained pursuant to the *Brownfields and Contaminated Site Remediation Act,* N.J.S.A. 58:10B-1. The duration of the post-remediation care period is discussed below.

**b. Duration of the Post-Remediation/Closure Care Period**

The Revised Plan proposes to limit the post-remediation/closure care period to the initial thirty (30) years after completion of the remediation/closure activities (i.e. - upon completion of seeding final grades). The Department issues this approval with the expressed understanding that the post-remediation/closure care period shall be as follows:

- The post-remediation/closure care period is established pursuant to the *Brownfields and Contaminated Site Remediation Act,* N.J.S.A. 58:10B-1 et seq. and the *Solid Waste Management Act,* N.J.S.A. 13:1E-1 et seq.
- The engineering controls (e.g. - cover systems and VHB walls) shall be maintained as long as waste materials and/or contamination above the restricted use standards remain at the sites.
- The institutional controls (e.g. - Deed Notice) established for these sites shall be maintained as long as waste materials and/or contamination above the unrestricted use standards remain at the sites.
- The post-remediation/closure care period for the LMS shall be deemed indeterminate at this time. Consistent with applicable laws/regulations, EnCap may petition the NJDEP to terminate the LMS post-remediation/closure care period. Any such petition shall be fully supported by the post-remediation/closure monitoring data that verify that the remedial objectives established in Condition B.22.c, have been achieved and shall continue to be maintained without operation of the LMS.

**c. LMS Contingency Plan**

As summarized in Condition B.5 above, the remedial objective of the LMS is to reduce the ground water mounds to achieve and maintain hydraulic control of the leachate/ground water contamination at the sites. EnCap shall continue to operate the LMS until the following remedial objectives are achieved for the areas listed below:

| | |
|---|---|
| Lyndhurst Landfill: | LMS turn-off elevation at 1.5 feet NAVD88 |
| Rutherford East: | LMS turn-off elevation at 3.0 feet NAVD88 |
| Rutherford West: | LMS turn-off elevation at 1.5 feet NAVD88 |

Quarterly ground water elevation monitoring shall be initiated upon completion of the remediation/closure activities and continue for the first five (5) years of the post-remediation/closure care period. This approach requires that EnCap complete the installation of the monitor well network for each of the respective areas prior to the initiation of the respective post-remediation/closure care periods.

Once four (4) consecutive quarters of ground water level elevations demonstrate that an LMS has achieved the remedial objective (or "turn off" elevation) for the respective areas, that LMS may be turned off. If the "turn off" elevation is achieved during the first five (5) years of the post-remediation/closure period for an area, then quarterly monitoring shall continue until the first five (5) years have elapsed. Monitoring may then be reduced to an annual basis provided that the ground water elevations do not rise above the "turn on" elevations listed below. If the "turn off" elevation is not achieved within the first five (5) years of the post-remediation/closure care period, EnCap shall continue operating the LMS and conduct quarterly monitoring while the current LMS design is re-evaluated. Determinations on the need for upgrading, modifying or expanding the LMS system for a particular area would be rendered by the NJDEP following its review of EnCap's report on the re-evaluation of the current LMS design (discussed further in last paragraph of this condition).

Once the LMS is turned off, monitoring would continue in accordance with the monitoring frequency in effect at that time. If the ground water level measurements obtained from any well exceeds the following "turn-on" elevations at any time after ceasing operation of the LMS, then EnCap shall immediately turn the LMS back on for the subject area. EnCap shall also revert to the quarterly monitoring frequency if it is conducting annual monitoring when the ground water level exceeded the "turn on" elevation.

| | |
|---|---|
| Lyndhurst Landfill: | LMS turn-on elevation at 2.5 feet NAVD88 |
| Rutherford East: | LMS turn-on elevation at 4.0 feet NAVD88 |
| Rutherford West: | LMS turn-on elevation at 2.5 feet NAVD88 |

LMS operation may again cease once four (4) consecutive quarters of ground water level measurements demonstrate that the LMS has again achieved the turn-off elevations for each of the subject areas. At this point, the monitoring frequency may be reduced to an annual basis once again. Annual monitoring would continue for the duration of the post-remediation/closure care period.

EnCap may petition the Department for a ground water NFA once it demonstrates that the remedial objective for a particular LMS has been achieved and maintained. The NJDEP will render a determination as to whether or not a ground water NFA is appropriate based upon its review of all pertinent information relating to ground water contamination.

Should EnCap be unable to achieve and/or maintain the respective "turn-off" elevations, EnCap shall fully evaluate the reasons, run the ground water flow model again and correlate the model with recent water-level data. The goal of this effort would include identifying possible leaks in the landfill cap or VHB wall and, if any are identified, developing a plan to repair the cap or wall and/or proposing continued long-term operation of the LMS.

**d. Reporting**

In the event that the LMS contingencies must be implemented, EnCap shall provide a separate report of the data to the Department prior to submittal of the proposed biennial monitoring/certification report.

e. **Ground Water Quality Sampling/Analytical Requirements**

EnCap shall submit a detailed ground water sampling/analysis plan for the proposals contained in Section 7.2.4.1 of the Revised Plan. The plan shall be submitted for NJDEP review/approval a minimum of sixty (60) calendar days prior to the initiation of the post-remediation/closure care period for the Lyndhurst Recreation Complex and Rutherford Northern Node. A copy of Figure 7-1 from the Revised Plan is enclosed to depict the monitoring wells that shall be subject to the required sampling/analysis. The plan shall detail the sampling procedures, analytical methodologies, report format/content and quality assurance/quality control (QA/QC) requirements in conformance with the TRSR. The sampling/analysis to be performed on the LMS effluent (i.e. - POTW sampling/analysis) shall also be provided in the plan.

f. **Landfill Gas Venting System Monitoring**

The Revised Plan contains proposals to monitor the passive landfill gas venting system to comply with the requirements, terms, and conditions established by the air permit/certificate. These proposals include plans to conduct perimeter monitoring to evaluate potential off-site migration of subsurface landfill gases wherever there is a continuous unsaturated zone of greater than three feet between the landfill and any foundation supported structures. The perimeter monitoring proposal also provides contingencies to install additional gas monitoring probes and immediately implement a remedial plan upon discovery of a subsurface gas migration hazard. The proposal also states that the perimeter monitoring may be reduced or discontinued upon petition to the Department. The plan is acceptable provided that EnCap:

- submits a map depicting the locations for the initial landfill gas monitoring wells for NJDEP approval,
- does not reduce or discontinue the monitoring until/unless the NJDEP approves the petition, and
- notifies the assigned case manager in the event that a subsurface gas migration hazard is detected.

g. **Certification of Completion of Post-Remediation/Closure Care Period**

The proposal to have both the owner/operator and a NJ-licensed Professional Engineer certify the submittal is acceptable. The owner/operator shall also certify the document pursuant to the TRSR, N.J.A.C. 7:26E-1.5 and the *Procedures for Department Oversight of the Remediation of Contaminated Sites*, N.J.A.C. 7:26E-1.2.

h. **Biennial Certification Requirements**

EnCap indicates that "a developer" will inspect/certify that the remediation remains protective. The Biennial Certification shall comply with the TRSR, specifically N.J.A.C. 7:26E-6.4(g). In the event that the person obligated to provide the Biennial Certification changes in the future, the person who is relinquishing the obligation and the person who is assuming the obligation shall do so pursuant to N.J.A.C. 7:26E-6.4(h).

**23. Decontamination Plan**

The decontamination plan is acceptable provided that EnCap monitors the scrubber/decontamination pads to ensure that the rinse waters do not overflow and discharge to the ground water or surface water. No potentially contaminated vehicle and/or equipment shall leave the site except through the designated decontamination areas (Figure 1, Attachment E of the August 2002 submittal) and shall do so only after proper decontamination. The proposed decontamination of personnel and hand tools (Section 1.2, Appendix R of the April 2002 submittal) is generally acceptable. However, EnCap and its contractors shall conform to detailed procedures to be described in a Health and Safety Plan that conforms to the industry (29 CFR 1910) and construction (29 CFR 1926) [illegible]dards established by OSHA.

**24. Implementation Schedule**

The proposed schedule is adequate for the purpose of authorizing EnCap to proceed with the project activities.

**25. Notification**

EnCap shall notify the assigned case manager a minimum of two (2) weeks prior to initiation of field activities. The assigned case manager shall also be contacted in the event that suspected hazardous materials are encountered during project implementation. EnCap shall also report any such incidents to the Department's hotline by calling 1-877-WARN DEP.

**26. Health and Safety Plan (HASP)**

EnCap and its contractors are responsible for ensuring that the HASP covers all activities and conforms to the industry (29 CFR 1910) and construction (29 CFR 1926) standards established by OSHA.

**27. Instrumentation Plan**

Appendix U of the April 2002 submittal contains an instrumentation plan that EnCap intends to implement during the performance of the closure, remediation and redevelopment of the subject sites. The Department clarifies that a detailed engineering evaluation was not conducted on the Instrumentation Plan. In addition, EnCap and its contractors shall be responsible for conducting the project in accordance with prevailing professional standards and ensuring that the structural integrity/operation of the structures/infrastructure on and/or adjacent to the sites are not compromised by the planned activities. EnCap shall also upgrade/modify the Instrumentation Plan as warranted once the ground improvement and/or staged filling plans are developed (see Condition B.16, above).

**28. Portion of Viola Ditch**

The Revised Plan describes the planned improvements for a portion of the tidal creek that EnCap designates as the Viola Ditch. EnCap partially supports this proposal with conclusions from its ERA. The Department clarifies that although EnCap has not conducted a complete/acceptable ERA for the subject sites (see condition B.8), the proposal is approved due to the documented presence of waste materials in the sediments and the anticipated hydrologic improvements associated with the enhanced channel. This decision also facilitates implementation of the overall project for the benefit of human health and safety and the environment.

**29. Wetlands**

EnCap proposes to remove exposed/visible waste materials from the wetland areas around the perimeter of the landfill areas for esthetic purposes and then restore the disturbed areas. However, EnCap does not propose to conduct complete remediation/closure in the wetlands. While the NJDEP views this limited activity as appropriate, this Approval confirms that this activity does not represent full remediation of the subject wetlands and does not warrant consideration for a future NFA approval. Also, this approval shall not be construed as a release from liability for any person that is potentially responsible for the remediation of contamination that is not remediated by EnCap.

**30. Acceptance Form**

This Approval will be effective upon NJDEP receipt of an executed original of the enclosed Acceptance Form.

If you have any questions, please contact Mr. Michael Kenney, Case Manager at (609) 633-0739 or via email at *mkenney@dep.state.nj.us.*

Sincerely,

Michael S. Kenney, Case Manager
Bureau of Case Management

Thomas Sherman, Assistant Director
Office of Permitting & Technical Programs

Enclosures

c: Steve Tiffinger, Bergen County Department of Health Services
Robert Ceberio, New Jersey Meadowlands Commission
Richard Gimello, NJDOT - Office of Maritime Resources
John Sartor, Paulus, Sokolowski and Sartor, Inc.
Evan Van Hook, Assistant Commissioner - SRP
John Castner, Director - DSHW
Stephanie Brand, DOL
Teruo Sugihara, BEERA
Jeff Story, BGWPA
Nelson Hausman, BLRM
Mary Anne Goldman, BLRM
Richard DeWan, OD&ST
Ruth Foster, OPP&PC
Quddus Qayyum, BNSR
John Sacco, ONRR
Gwen Zervas, BCM

(9)

State of New Jersey

Department of Environmental Protection

.cGreevey
...vernor

Division of Solid and Hazardous Waste
Post Office Box 414
Trenton, NJ 08625-0414
Tel. #609-984-6880
Fax. #609-633-9839

Bradley M. Campb...
Commissioner

JAN 27 2003

Jeffrey W. Cappola, Esquire
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Center West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Re: Closure Plan and Post-Closure Plan Approval
Kingsland Park Sanitary Landfill
Solid Waste Facility Number 0232000081 (0232B/02323C)
Lyndhurst/North Arlington, Bergen County

Dear Mr. Cappola:

Enclosed please find the Closure Plan and Post-Closure Plan Approval for the above referenced landfill. The Approval is issued to EnCap Golf Holdings, LLC and forwarded to you as their agent, under this cover. The Approval is for Closure and Post-Closure Care. Conditions have been incorporated within this Approval that must be complied with in order for the Approval to remain valid. The Department will consider amendment or modification of the specific terms of this Approval if a written request is submitted by certified mail within twenty (20) calendar days of the date of this Approval. Said written request must clearly state the proposed amendment or modification and the factual basis for the request.

We have received the revised financial data and estimates that were submitted to Mr. John Edwards along with a cover letter from John A. Sartor, of Paulus, Sokolowski and Sartor, LLC. dated January 14, 2002. We will complete our review of the financial plan with the revisions and convey the Department's position to you under separate cover.

In the event you have any questions concerning this correspondence or the Approval, please contact Mr. John Edwards, of my staff, at (609) 984-6650 or E-mail: john.t.edwards@dep.state.nj.us.

Sincerely,

Thomas Sherman
Assistant Director
Office of Permitting and
Technical Programs

TS:JTE/file:encapkingslandcpacov103

c: R. Ceberio, NJMC
J. Hockensmith, EnCap
J. Sartor, PS&S
E. VanHook, NJDEP
S. Brand, DAG, DOL
J. Castner, NJDEP
W. Skacel, NJDEP
F. Coolick, NJDEP
DeWan, NJDEP
Kenney, NJDEP

State of New Jersey
Department of Environmental Protection

cGreevey
overnor

Bradley M. Campbell
Commissioner

Division of Solid and Hazardous Waste
P.O. Box 414
Trenton, New Jersey 08625-0414
Tel. #609-984-6880
Fax. #609-633-9839

# CLOSURE AND POST-CLOSURE PLAN APPROVAL

Under the provisions of N.J.S.A. 13:1E-1 et seq., known as the Solid Waste Management Act, this Amended Solid Waste Closure and Post-Closure Approval and Disruption Approval is hereby issued to:

**ENCAP GOLF HOLDINGS, LLC**

| | |
|---|---|
| FACILITY TYPE: | Class I Sanitary Landfill |
| FACILITY NUMBER: | 0232000081 (0232B/0232C) |
| MUNICIPALITY | Lyndhurst |
| LOT NO.(S): | 1.01, 1.02 |
| BLOCK NO.(S): | 236 |
| MUNICIPALITY | North Arlington |
| LOT NO.(S): | 1 |
| BLOCK.(S): | 194:195:197 |
| LOT NO. | 1,2, 3 |
| BLOCK NO. | 198 |
| COUNTY: | Bergen |
| CLOSURE YEAR: | 2003 |
| POST-CLOSURE PERIOD: | 30 years, 2004-2033 |

This Approval is subject to compliance with all conditions specified herein and all regulations promulgated by the Department of Environmental Protection.

This Approval shall not prejudice any claim the state may have to riparian land, nor does it permit the registrant to fill or alter or allow to be filled or altered in any way, lands that are deemed to be riparian, wetlands, stream encroachment areas or flood plains, or that are within the Coastal Area Facility Review Act (CAFRA) zone or are subject to the Pinelands Protection Act of 1979, nor shall it allow the discharge of pollutants to waters of this state without prior acquisition of the necessary grants, permits or approvals from the Department of Environmental Protection.

January 27, 2003
Date

Thomas Sherman
Assistant Director
Office of Permitting and Technical Programs



G0100300415

(10)

State of New Jersey
Department of Environmental Protection
Bureau of Case Management
P.O. Box 028
401 East State Street
Trenton, NJ 08625-0028
Telephone: (609) 633-1455
Facsimile: (609) 633-1439

s E. McGreevey
*Governor*

Bradley M. [illegible]bel
Commissioner

RECEIVED
JAN 27 2003

Certified Mail
Return Receipt Requested
No. 7002 2410 0002 5952 6379

JAN 23 2003

Jeffery W. Cappola, Attorney
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

Dear Mr. Cappola:

Re: Lyndhurst & Berry's Creek Redevelopment Project and EnCap Golf Holdings, LLC (EnCap)
Avon, Lyndhurst, and Rutherford Sanitary Landfills
Township of Lyndhurst and Borough of Rutherford, Bergen County
Comprehensive Site List ID No. NJD069291656
Memorandum of Agreement (MOA) effective 20 March 2000 with Amendments effective 5 June 2001 & 26 September 2002
Revised Interim Fill Stockpile Plan (Stockpile Plan) dated 31 December 2002

The New Jersey Department of Environmental Protection (Department or NJDEP) has reviewed the Stockpile Plan and determined that it is acceptable subject to the following conditions/clarification:

**Conditions/Clarification**

1. **Slope Stability of Stockpiles**

As supported by the stability calculations provided in Attachment C and as stated on Sheet No. ISP-02, the stockpiles are restricted to a maximum height of fifteen (15) feet and side slope angles that are not steeper than four (4) feet horizontal to one (1) foot vertical (4H:1V).

2. **Fill Capacity Agreement**

This approval to stockpile processed dredged material (PDM), processed sewerage sludge, and recyclable materials is contingent on EnCap executing the Fill Capacity Agreement that is currently being negotiated with the Department. In other words, stockpiling shall not be implemented until both parties have signed said agreement. In addition, the Stockpile Plan includes statements about daily delivery requirements on the volume of materials needed by EnCap. This approval does not endorse or contest the volume estimates presented by EnCap.

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

3. **Property Owner Consent**

Pursuant to the terms and conditions of the Remedial Action Workplan/Closure Plan (RAW/CP) approvals for the referenced landfills, EnCap shall obtain/provide written consent from the property owner(s) prior to conducting any of the six (6) tasks outlined on page 1 of Attachment A.

4. **Proposed Location**

The proposed location for the containment facility is acceptable to the NJDEP. However, the location includes the area that is currently occupied by the former American Fuel Harvester East (AFHE) RD&D project. The Department clarifies that this approval is contingent on the removal (i.e. – proper disposal) of all material generated by the AFHE project prior to the construction of the containment facility. The recycled concrete utilized to construct the base for AFHE's test area is exempted from this condition and may remain at the site.

5. **Permeability Requirements of Barrier Layer**

The Stockpile Plan states that the PDM used to construct the PDM barrier layer for the containment area will have a <u>minimum</u> permeability of $1x10^{-5}$ centimeters per second (cm/sec). The Department requires that the PDM barrier layer have a <u>maximum</u> permeability of $1x10^{-5}$ cm/sec.

6. **Instrumentation and Monitoring Program**

EnCap proposes to implement and maintain an instrumentation and monitoring program to verify that the Jersey City Municipal Utility Authority (JCMUA) aqueducts are not adversely affected. This proposal is acceptable provided that EnCap implements an NJDEP-approved instrumentation and monitoring program prior to placement of any fill materials within the containment area. Additional comments regarding the geotechnical monitoring requirements for the project are presented in comment 13, below.

7. **Storm Water Requirements**

   a. **Pumping to Local Publicly Owned Treatment Works (POTW)**

   EnCap shall prepare/submit the design for the pumping system that will be employed as a contingency to prevent peak storm water flow from exceeding the capacity of the detention basin. The design must be approved by NJDEP and installed prior to placing any fill materials within the containment area.

   b. **Storm Water Permitting**

   EnCap shall prepare a storm water permit application and submit it to the Bureau of Non-Point Source Pollution (BNPSP). If necessary, EnCap shall make any design changes that may be specified/required to obtain an approved storm water permit from the BNPSP. Construction of the containment area shall not commence until an approved storm water permit is obtained.

   c. **Emergency Spillway**

   The emergency spillway shall be eliminated from the proposed design unless the approved storm water permit specifically authorizes this design feature.

d. Use of Storm Water for Dust Suppression

EnCap's proposal to use storm water for dust suppression purposes is approved for application within the containment facility. Use of the storm water to suppress dust generated by operations/activities conducted elsewhere at the sites is prohibited.

## 8. Dust Suppression, Odor Control, and Air Monitoring

Implementation of the Stockpile Plan shall be subject to the dust suppression, odor control, and air monitoring requirements established by the approved RAW/CPs for the referenced sites. In summary, dust, odor, and vapor emissions generated during the operation of this facility shall be suppressed, controlled and monitored to ensure the protection of human health and the environment.

## 9. Processed Sewerage Sludge (PSS)

Placement of PSS shall conform to the terms/conditions specified in the RAW/CP and Fill Protocol approvals issued by the NJDEP.

## 10. Decontamination Requirements

All trucks and equipment shall be properly decontaminated prior to exiting the containment area in accordance with the Decontamination Plan that has been approved for the project.

## 11. Reuse of Containment Area Construction Material

EnCap states that the PDM used to construct the containment area will be removed once stockpiling is no longer necessary and that this PDM will then be used for construction of the final cover. This proposal is unacceptable. EnCap shall leave this PDM intact once the facility has served its purpose and integrate this PDM into the shaping/grading layer for the Lyndhurst Landfill.

## 12. Incorporation of 15 October 2002 Proposals

The proposals contained in the 15 October 2002 letter from Jeffrey W. Cappola are hereby incorporated into the NJDEP's approval of the Stockpile Plan. The figures included with the 31 December 2002 submittal shall be revised to provide details concerning the location of the scale house and scales that will be employed to document the weight/volume of materials entering the facility. The figures shall also be revised to provide the details for the decontamination area (e.g. – decon water collection/storage facilities, scrubber pads, and rumble strips).

In response to the request made at the end of the 15 October 2002 correspondence, EnCap is advised that PDM may be placed in a controlled manner prior to having the leachate management system operational <u>provided</u> that:

- The PDM meets the criteria for placement outside a containment area as established by the Fill Protocol approved by the NJDEP on 18 December 2001.
- Installation of the vertical hydraulic barrier wall, leachate management system, and/or other engineering controls is expedited for those areas to minimize the length of time of potential exposure.
- Placement of PDM is conducted pursuant to the terms/conditions of the NJDEP-approved RAW/CPs.

13. **Geotechnical Monitoring Plan dated 28 October 2002**

During its review of the Stockpile Plan, this office identified that EnCap included conceptual geotechnical monitoring proposals for structures on/adjacent to the Avon, Lyndhurst and/or Rutherford Landfills in a Supplemental Information Package regarding the Kingsland Park Landfill. As suggested in the introductory section of the monitoring plan, EnCap must provide detailed plans depicting the locations, depths, and designs for the proposed monitoring activities as future appendices to this Geotechnical Monitoring Plan. To assist in the preparation of a complete/acceptable plan, the NJDEP is providing the following comments/clarification on the 28 October 2002 submittal:

a. **Implementation**

EnCap must implement an NJDEP-approved monitoring plan prior to commencing any of the proposed filling activities, including the stockpiling of any materials within the containment facility.

b. **JCMUA Aqueducts**

EnCap proposes to forward this plan to the NJDEP once it is finalized and agreed to by the JCMUA. This proposal is acceptable provided the plan is approved by NJDEP prior to implementation.

c. **Williams Pipeline**

EnCap shall develop/submit a monitoring plan for the Williams Pipeline. This plan shall be approved by the owner/operator of the pipeline and the Department prior to implementation of any of the approved remediation/closure activities proximal to this natural gas pipeline.

d. **Inclinometers and Piezometers**

EnCap shall comply with all requirements established by the Rules for Well Construction, Maintenance and Sealing of Abandoned Wells, N.J.A.C. 7:9D-1 et seq. In addition, the details for the installation and construction of inclinometers shall be revised. Any inclinometer that will be installed through the varved clay shall be equipped with an outer casing that is installed into the top of the clay. The smaller diameter inclinometer casing shall then be installed down through the outer casing and into the firm stratum beneath the varved clay. Please contact the Bureau of Water Allocation at 609-292-2957 with any questions regarding the permitting and drilling requirements.

If you have any questions, please contact Mr. Michael Kenney, Case Manager at (609) 633-0739 or via email at *mkenney@dep.state.nj.us*.

Sincerely,

Michael S. Kenney

Michael S. Kenney, Case Manager
Bureau of Case Management

Fill Protocol Approval below barrier layer

(11)

State of New Jersey
Department of Environmental Protection
Division of Solid and Hazardous Waste
P.O. Box 414
Trenton, New Jersey 08625-0414
Tel. # (609) 984-6900
Fax. # (609) 633-9839

D T. DIFRANCESCO
Acting Governor

Robert C. Shinn, Jr.
Commissioner

December 18, 2001

Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick & Gluck, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Re: Protocol for Review and Certification of Recyclable Materials At the Avon Sanitary Landfill
Protocol for Review and Certification of Recyclable Materials At the Lyndhurst and Rutherford Landfills

Dear Mr. Cappola:

The New Jersey Department of Environmental Protection (Department or NJDEP) has reviewed the above referenced Protocols for Review and Certification of Recyclable Materials at the Avon, Lyndhurst and Rutherford Landfill Sites (Fill Protocols) dated May 2001 and July 2001. The submitted documents were prepared by Sadat Associates, Inc. for EnCap Golf Holdings, LLC. EnCap has proposed the use of dredged material, as well as other "recyclable materials" as part of these Fill Protocols. The Protocols are nearly identical. Because of their similarity, this letter, in its entirety, applies to both documents, unless otherwise specified.

The Department issued a Remedial Action Workplan/Closure Plan Approval on September 18, 2001 for the Avon Sanitary Landfill. The Department issued a Remedial Action Workplan/Closure Plan Approval for the Lyndhurst and Rutherford Landfills on December 13, 2001. The plans contained in these Remedial Action Workplans/Closure Plans (RAW/CP) represent the fill material needs of the landfills for closure.

The Fill Protocols set forth a plan for the acceptance and use of processed dredge and recyclable materials at the landfills, in accordance with the Solid Waste Regulations for beneficial use of recyclable material (N.J.A.C. 7:26-1.7(g)). The proposal establishes the procedures for mpling, characterizing, and determining the acceptability of fill materials for the project. As art of this process, EnCap's Review Engineer would review requests to provide fill and approve those that meet the acceptability criteria contained in the Protocols. The Review Engineer would then provide the Department with information regarding the placement of the material.

In furtherance of the Department's goals, 2.5 million cubic yards (CY), as measured in the scow at the offloading facility, of processed dredge material (PDM) will be beneficially used in the closure of these landfills. Up to 700,000 cubic yards, as measured by truck volumes, of other recyclable materials and 250,000 tons of processed sewage sludge (as described below) may be used to augment and/or supplement the PDM. This will allow for a constant supply of material for construction and provide materials with varied engineering properties for use as necessary.

After much consideration of this matter, the Department approves the use of the Fill Protocols for the Avon, Rutherford and Lyndhurst Landfills. ~~As detailed below, EnCap shall submit a comprehensive addendum to the Fill Protocols which addresses the issues outlined in this Approval. This Approval is the result of a site specific determination by the Department and is subject to the following conditions;~~

## A. RECYCLABLE MATERIALS

1. EnCap shall place a minimum of 2.5 million scow CY of processed/amended dredged material (PDM) for use in the proper closure/remediation of these landfills under the referenced RAW/CP Approvals as a condition of this Approval. Should this entire amount of PDM exceed the actual filling volumes available at the landfills, EnCap shall make alternate arrangements for the use of the PDM in a manner consistent with applicable approvals and regulations, and as approved by the Department.

2. EnCap is authorized to accept a maximum of 700,000 truck CY of Recyclable Materials, exclusive of processed sewage sludge, as specified in item A.5 of this section for the entire length of time that filling activities approved under the RAW/CP are being implemented for the Avon, Rutherford and Lyndhurst Landfills. The use of this material shall be in accordance with the conditions set forth in Items C.1 and C.3, below. Of this total amount, 350,000 truck CY of recyclable materials shall be held in abeyance for construction activities that require their specific use. EnCap may use the remaining 350,000 truck CY of recyclables to address any interruption in the delivery of PDM.

3. EnCap is authorized to accept a maximum of 250,000 tons of domestic, dewatered, wet air - oxidized processed sewage sludge (hereinafter referred to as "processed sewage sludge"). The material shall be accepted for the length of time that filling activities approved under the RAW/CP are being implemented for the Avon, Rutherford and Lyndhurst Landfills.

4. Hazardous materials and materials containing free product as defined by the Technical Requirements for Site Remediation, N.J.A.C. 7:26E-1.8 shall not be accepted for use at the landfills.

5. This Approval applies to the following materials:
   a. Processed Dredge Material (PDM),
   b. Recycled Masonry Brick, Block and Glass,
   c. Recycled Asphalt,
   d. Construction and Demolition (C&D) Screenings,
   e. Water Treatment Plant Residuals,
   f. Chipped Tires,
   g. Construction Site Fill,
   h. Material obtained from Areas of Concern defined in N.J.A.C. 7:26E-3.9(a-f)
   i. Processed sewage sludge (as defined in Item A-3)

6. EnCap shall submit a Protocol Addendum for the use of processed sewage sludge to the NJDEP Bureau of Landfill & Recycling Management (BLRM). This Protocol Addendum shall contain a plan for the use of the material and shall clearly state its specific operational, handling and placement requirements. Consideration must be given to the special placement and handling needs of this material. The processed sewage sludge shall be analyzed for total contaminants and leachability to demonstrate compliance with the criteria outlined in Sections B and C, below. X change paragraph Sadat address

The placement of processed sewage sludge shall be restricted to a maximum thickness of 4 inches and shall not be placed on side slope areas unless an engineering analysis is performed that demonstrates the suitability of its intended use. Any special processing (mixing, blending, etc.) required for the placement of sludge shall be included in the Addendum. If the sludge is to be placed only in specific areas, a site plan showing the proposed locations shall also be submitted. Sewage sludge not meeting the criteria set forth in Item A-3 is strictly prohibited.

7. Tire chips shall conform to the standard sizes established by ASTM. Tire chips shall not be in direct contact with any of the geosynthetic materials being used for the engineering controls. The use of tire chips above the geomembrane cap and/or outside the vertical hydraulic barrier walls is prohibited, unless otherwise specifically approved by the Department. Should EnCap wish to pursue this option, an acceptable sampling/analysis plan for the use of tire chips above the cap and/or outside of the vertical barrier walls must be included in the addendum. Data obtained from implementation of the plan shall be submitted to the Department for review. Final approval for placement above the liner/outside the containment wall will be determined upon completion of this future review. X Sadat address

## B. MATERIAL CHARACTERIZATION

1. When proposed for use below the geomembrane cap, Items A.5a through A.5h shall be sampled, analyzed and characterized in accordance with the provisions of the Fill Protocols. The testing of recyclable materials proposed for use above the geomembrane and outside of the capped areas shall be addressed in an Addendum to the Protocols (see Section C below).

All testing shall be performed by either a New Jersey Certified Laboratory or a NJDEP-approved Laboratory.

## C. MATERIAL PLACEMENT

### 1. Fill Materials Above and Outside of the Geomembrane Cap

a. The use of any recyclables above and outside of the geomembrane cap is prohibited until such a time as the Department receives the Protocol Addendum and issues an Approval.

b. The Department clarifies that "clean fill" shall be defined as certified clean fill materials from virgin sources and/or materials that satisfy the requirements/ criteria described in Item 1.c, below.

c. With respect to the low permeability soil material (LPSM), common fill and growing medium, the Department prefers that EnCap utilize certified clean fill from virgin sources. If EnCap prefers to utilize materials from alternate sources, EnCap shall submit a detailed sampling and analysis plan as a Protocol Addendum for NJDEP review/approval. Said plan shall (1) identify the types of material that EnCap proposes to utilize for these layers. (2) The plan shall also establish the sampling frequencies, sampling procedures and laboratory methods to be employed to demonstrate that the materials do not exceed the more stringent of the Department's Residential Direct Contact Soil Cleanup Criteria (RDCSCC) and Impact to Ground Water Soil Cleanup Criteria (IGWSCC). (3) The plan shall also include a provision for the Department to review and approve of all data for materials to be used for the LPSM, common fill and growing medium layers unless EnCap uses certified clean fill from virgin sources. Sadat to address

### 2. Fill Materials Below the Geomembrane Cap

For areas equipped with a Leachate Management System (LMS), the materials placed beneath the geomembrane cap shall not exceed the Non-Residential Direct Contact Soil Cleanup Criteria (NRDCSCC) or the Alternate Acceptance Criteria (AAC), as applicable.

### 3. Processed Dredge Material (PDM) Outside of the Geomembrane Cap

In areas not equipped with an LMS, it shall be demonstrated that the PDM does not contain contamination above the NJDEP's non-residential direct contact soil cleanup criteria (NRDCSCC) and will not leach contaminants that may impact ground water or surface water. This Approval presumes that compliance with this condition/ requirement will be demonstrated by submittal of the bulk chemistry and Multiple Extraction Procedure (MEP) data that must be obtained pursuant to the Acceptable Use Determination (AUD) for the site. The MEP data shall establish that contaminant levels in the MEP extracts do not exceed the New Jersey's Class II-A Ground Water Quality Criteria and/or Surface Water Quality Standards.

Stockpile plan

**E. STORAGE & HANDLING**

1. PDM and other materials that meet the RDCSCC may be stockpiled, where appropriate, at the project site. Measures shall be taken to control soil and wind erosion. ~~Prior to acceptance of these materials, EnCap shall provide the Department with notification of the intent to stockpile materials, which shall include the type and volume of the material, staging area location and the temporary engineering controls to be employed at the staging site.~~

2. Materials that exceed the RDCSCC shall not be accepted for use as fill or construction of the various cover systems until the LMS for that specific section of the project area has been installed and is operational. EnCap may request authorization from the Department to allow staging of fill materials. This is in recognition of the separate, ongoing negotiations between EnCap and the NJDEP regarding the use of processed dredge material (PDM) and other recyclable materials (i.e. - negotiations that are not described in the subject RAW/CP or existing protocol submittals). Issuance of such a written authorization shall be based upon NJDEP review of a future submittal from EnCap detailing information that shall include, without limitation, the type and volume of materials proposed for staging, contaminant types/concentrations, staging area location(s) and the temporary engineering controls for the staging area location(s).

**F. ADDITIONAL CLARIFICATION**

1. Section 6.1 of the Protocols indicates that EnCap may use "comparable requirements" to those specified by the Technical Requirements for Site Remediation, N.J.A.C. 7:26E-2. However, the Protocols do not identify/define these "comparable requirements". Therefore, EnCap shall conform to the requirements specified by N.J.A.C. 7:26E-2.

2. The RAW/CPs for the subject sites and the Protocols use the term "common fill". The RAW/CPs describe "common fill" as a discreet layer in the engineered cover systems that will be constructed at the sites whereas the Protocols describe "common fill" as being synonymous with fill from construction sites. For the purposes of this Approval, EnCap is authorized to accept "common fill" as described in the Protocols for placement in the shaping and grading layers to be constructed at the sites until the Addendum is approved.

3. EnCap indicates that it will require that soils from jurisdictions other than New Jersey be sampled/analyzed via EPA equivalents to the Technical Requirements for Site Remediation. This proposal is unacceptable because the EPA does not have regulations that are the equivalent to the Technical Requirements for Site Remediation. Therefore, sampling and analyses from jurisdictions other than New Jersey shall also conform to the Technical Requirements for Site Remediation and a letter shall be obtained from the appropriate agency of the state of origin confirming the classification of the material and authorizing its reuse.

4. Physical properties of recyclable materials, such as gradation, permeability, strength, etc. can vary significantly for each type and source of material. Accordingly, the Department has not reviewed the appropriate physical characteristics or engineering properties of the proposed materials or assessed their suitability for structural fill. It is the sole responsibility of EnCap

and its designated engineer to ensure that the specific recyclable materials satisfy the requirements for use as structural fill in load bearing design situations.

5. The Department clarifies that the quality criteria contained in this Approval supersedes the quality criteria contained in conditions 13 and 14 of the September 18, 2001 Remedial Action Workplan/Closure Plan Approval for the Avon Sanitary Landfill.

6. The Department and EnCap have negotiated a Memorandum of Agreement (MOA) governing the use of processed dredge materials, recyclable materials and processed sewage sludge at the landfills, and the provisions of that Memorandum of Agreement are incorporated into this Protocol by reference. If there is an interruption in the delivery of PDM, and EnCap has exhausted the 350,000 cubic yard allotment of recyclable materials to be utilized during interruptions as set forth in the MOA, the procedure set forth in the MOA for approval to accept additional recyclable materials shall govern. For each cubic yard of additional recyclables EnCap is permitted to accept pursuant to the procedure set forth in the MOA, Encap's obligation to accept 2.5 million cubic yards of PDM shall be reduced by one cubic yard.

Should you have any questions, please contact Mary Anne Goldman at (609) 984-6650 or by e-mail at mgoldman@dep.state.nj.us.

Sincerely,

Thomas Sherman, Assistant Director
Office of Permitting & Technical Programs

c. Steve Tiffinger, Bergen County Department of Health Services
Alan Steinberg, New Jersey Meadowlands Commission
John Sartor, Paulus, Sokolowski and Sartor, Inc.
Sue Boyle, Assistant Commissioner - SRP
John Castner, Director - DSHW
Teruo Sugihara, BEERA
Jeff Story, BGWPA
Mary Anne Goldman, BLRM
Nelson Hausman, BLRM
Michael Kenney, BCM
Richard DeWan, ODST
Ruth Foster, OPP&PC
Gwen Zervas, BCM