Fill Protocol Approval for barrier layer + above material

(12)

State of New Jersey
Department of Environmental Protection

James E. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

Division of Solid and Hazardous Waste
P.O. Box 414
Trenton, New Jersey 08625-0414
Tel. # (609) 984-6900
Fax. # (609) 984-9839

Jeffery W. Cappola, Attorney
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

NOV 7 2002

Dear Mr. Cappola:

Re: Lyndhurst & Berry's Creek Redevelopment Project and EnCap Golf LLC (EnCap)
Avon, Lyndhurst & Rutherford Sanitary Landfills, Lyndhurst Recreation Complex and Viola Area
Township of Lyndhurst & Borough of Rutherford, Bergen County
Comprehensive Site List ID No. NJD069291656
Memorandum of Agreement (MOA) effective 20 March 2000 & Amendment effective 5 June 2001
Addendum - Protocol for Review and Certification of Recyclable Materials dated June 2002
Fill Protocol correspondence dated 25 July 2002

The New Jersey Department of Environmental Protection (Department or NJDEP) has reviewed the referenced submittals and discussed the various proposals with EnCap's representatives during several technical meetings and/or conference calls. Based on the Department's review of the referenced submittals, the acceptance of fill material for the final cover and processed dredged material (PDM) barrier layer shall be in accordance with this protocol approval. Please be advised that the main goal of this fill protocol approval is to ensure that the materials utilized to construct the final cover at the referenced sites meet the applicable remediation standards that provide for a remedial action that is protective of human health and the environment.

This correspondence establishes the types of fill materials that the Department will allow EnCap to use for completing the final cover systems for these sites. It also establishes the sampling/testing procedures to be employed for evaluating potential fill materials and the criteria that shall be applied to determine whether or not the fill materials are acceptable.

To clearly relay its requirements, the NJDEP describes two separate protocols in this approval. The first part of this approval applies specifically to the material that will be used for the final cover, which consists of the low permeability soil material, the common fill, and the growth/vegetative layers. The second part (page 6) of this approval applies specifically to the upper (or final barrier layer) two feet of processed dredged material (PDM) to be placed at the sites. The Department's 18 December 2001 protocol approval letter establishes the protocol for acceptance of material to be used below the barrier layer or cap (e.g. – the shaping and grading layer).

The protocol that the NJDEP approved on 18 December 2001 and this protocol approval are site-specific and shall only be applied to the referenced sites.

## Protocol for Final Cover Fill Material

### A. Applicable Remediation Standards

For the final cover to be deemed protective, all authorized materials utilized to construct the final cover shall satisfy the requirements for unrestricted use soil cleanup criteria (URUSCC). The Department clarifies that the URUSCC for this site shall be the more stringent of the Residential Direct Contact Soil Cleanup Criteria (RDCSCC) and Impact to Ground Water Soil Cleanup Criteria (IGWSCC). For the inorganic contaminants without IGWSCC, synthetic precipitation leaching procedure (SPLP, USEPA Method 1312) shall be performed on the material. The SPLP data shall then be compared to the applicable Class II-A Ground Water Quality Standards, N.J.A.C. 7:9-6 and the applicable Surface Water Quality Criteria (see enclosed table).

Relative to dioxin, the Department will utilize the 1 part per billion dioxin TEQ action level established by the U.S. Environmental Protection Agency (USEPA) as the limit where material would be precluded from being placed at the facility. It is recognized that this concentration is much higher than the actual health-based criterion. Nevertheless, the existing policy for the Department's Site Remediation Program is to defer to the USEPA with respect to the dioxin action level. However, if this policy or action level were to change, EnCap or its successors would be required to make a corresponding change to the dioxin criterion used at this facility.

### B. Types of Acceptable Fill Materials

1. Certified Clean Material. Please refer to the Technical Requirements for Site Remediation, N.J.A.C. 7:26E-6.4 (b)1 through 6.4 (b)3 for details on the requirements that apply to this material.

2. Processed Sewage Sludge (PSS) from the Passaic Valley Sewerage Commissioners (PVSC) for use as a soil additive if dewatered and appropriately mixed with clean soil in order to reduce contaminants such as copper to unrestricted use soil concentrations. In addition, best management practices shall be employed to minimize to the greatest extent possible any objectionable odors.

3. Clean Tested Soil (CTS) obtained from sources other than those described at N.J.A.C. 7:26E-6.3(b)2.iv. Due to the relatively large degree of uncertainty regarding soil quality from sources such as construction sites, roadway projects and known/suspected contaminated sites, the NJDEP is only willing to consider such sources after they have been thoroughly evaluated by an iterative, reliable process. This process shall ultimately demonstrate to the Department's satisfaction that any fill material obtained from a given source does not contain contaminants in excess of the applicable remediation standards set forth in Section A of this protocol approval. In addition, CTS shall not contain solid waste, be comprised of any material that is classified as hazardous, contain free or residual product and/or have objectionable odors. For the purposes of this protocol, decontaminated recycled soil from a permitted facility shall be handled as CTS. Further clarification on the procedures/requirements that shall apply to identifying potential sources for CTS and demonstrating compliance with this protocol approval are described later in this correspondence.

4. Masonry Fines (MF) obtained from Class B recycling facilities for use as a soil additive or by itself as the lower 1 foot (or 1.5 feet in developed areas) of the common fill layer.

5. Unprocessed Dredged Material (UDM) are the sediments, sands, clays, rocks, tills, etc. (removed from a water body) that do not require treatment because the contaminant concentrations associated with them are below the URUSCC levels. Such materials may be used on site without environmental restriction.

C. Sampling Frequencies and Testing Protocols

All sampling and analyses shall conform to the Technical Requirements for Site Remediation, N.J.A.C. 7:26E-2 and the Field Sampling Procedures Manual (FSPM). A Quality Assurance Project Plan (QAPP) demonstrating compliance with the Technical Requirements and this protocol addendum shall be submitted for NJDEP review/approval prior to acceptance of any fill materials that will be utilized for constructing the final cover. Certified clean material is exempt from this requirement provided that item C.1, below is satisfied.

1. Certified Clean Material

Certified clean material is material from commercial or non-commercial sources. Such material does not need to be subjected to additional testing provided the fill provider certifies the fill material meets the URUSCC and supplies the data that supports the certification. For the purposes of this protocol, decontaminated recycled soil shall be handled as CTS as outlined in C.3 below.

2. Processed Sewage Sludge (PSS)

The available data from the PVSC shall be provided to the Site Remediation Program. In addition, PSS shall be evaluated based on the analytical results of one (1) weekly composite sample for a total of twelve (12) weeks. Seven (7) daily grab samples shall be homogenized to form the one (1) weekly composite. The composite sample shall be submitted for laboratory analyses of priority pollutant semi-volatile organic compounds plus 25 (PP SVOC+25), PP metals not currently sampled, Cyanide (CN) and PP pesticides/ PCBs. PP volatile organic compound plus 15 (PP VOC+15) analyses are not required for PSS.

SPLP (USEPA Method 1312) shall also be performed on each weekly composite sample. Laborato[illegible] analyses performed on the resulting leachate shall be for CN and PP metals only.

This protocol assumes that the sludge is relatively consistent in composition over time, which may not necessarily be the case. Consequently, EnCap shall continue to monitor the monthly PVSC data and provide copies to the Site Remediation Program. If the concentration for any metal reported by PVSC increases by thirty percent (30%) or more from the previous 6 month moving average for that same metal, then one (1) weekly composite shall be analyzed as outlined above. The SPLP testing shall also be conducted. This additional sampling shall continue on a weekly basis until the metal sampled by the PVSC is once again reported to be back in compliance. Note that exceedances of the RDCSCC and the IGWSCC by the PVSC results will be assumed applicable to the material associated with that result.

If PSS does not meet applicable criteria of this protocol approval, mixes of PSS with other approved materials may be considered by the Department and will require separate review/approval of bench scale test results of proposed mixes.

3. Clean Tested Soils (CTS)

CTS from sources with documentation that there is no known history or evidence of potential contamination either on or adjacent to the site may be evaluated based on one (1) composite sample for every 2,500 cubic yards or less. One (1) discrete grab sample shall be collected for every 500 cubic yards and homogenized to form the one (1) composite sample. The composite sample shall be submitted for laboratory analyses of priority pollutant semi-volatile organic compounds plus 25 (PP SVOC+25), PP metals, CN and PP pesticides/ PCBs. Composite sampling shall not be conducted to determine VOC content. Instead, each of the discrete grab samples shall be subject to immediate screening upon collection using a suitable ph[illegible] ionization detector (PID)/flame ionization detector (FID) equipped instrument and be subject to vi[illegible] inspection. The discrete sample with the highest PID/FID reading or alternatively, when no difference in

PID/FID readings is observed, the discrete sample with the greatest visual evidence of contamination shall then be submitted to the laboratory for PP VOC+15 analysis. Methanol preservation is to be used provided the water content of the subsample is below 50%. SPLP (USEPA Method 1312) shall also be performed on each composite sample. Laboratory analyses performed on the resulting leachate shall be for CN and PP metals only.

In order to determine that the soil at a site could qualify as CTS, a qualified environmental professional, independent [1] of the Review Engineer, shall conduct a site evaluation visit and provide the information detailed in enclosed Form CTS-1, (revised) <u>Site Evaluation to Determine Potential for Clean Soil</u>. A qualified professional is considered a registered New Jersey Professional Engineer, Certified Hazardous Materials Manager or Certified Subsurface Evaluator with relevant experience in the environmental field. The results of the site evaluation shall be documented in Form CTS-1 to determine whether the site could be considered a candidate source.

The site evaluation shall include an assessment of past land use and a determination that the site or relevant portion thereof has not been the subject of an Area of Concern (AOC) pursuant to N.J.A.C. 7:26-3.9 (a)-(f). The Site Evaluation findings and certification shall be issued and sealed by a registered Professional Engineer (PE) or Certified Hazardous Materials Manager.

CTS from sources with a known history or evidence of potential contamination either on or adjacent to the site shall be tested at a rate of one (1) composite per every 1,000 cubic yards or less. Sampling and analyses shall conform to the same protocol described above except that one (1) discrete sample shall be collected for every 200 cubic yards and composited for testing (except for VOCs) as described above. EnCap, through its Review Engineer, shall review the results of the Form CTS-1 and recommend an appropriate sampling frequency. EnCap may elect to require a sampling frequency of one composite per 1,000 cubic yards, in which case EnCap may proceed to review the sampling results for conformance with the requirements of this protocol. If EnCap wishes to recommend a lesser sampling frequency than one composite per 1,000 cubic yards, EnCap may submit the Form CTS-1 and supporting information to the NJDEP Bureau of Case Management for a determination of a sampling frequency of one composite per 2,500 cubic yards (or less on a case-by-case basis). **Generally, the Department will attempt to review and respond to CTS testing frequency variances within five business days of their receipt.**

If there is reason to suspect, based on existing data, site history, point of origin, or similar evidence that dioxin is a potential contaminant of concern, dioxin testing shall be similarly done at the same rate applied to the other analyses for a given material using a Department approved methodology.

4. Masonry Fines (MF) obtained from Class B recycling facilities

MF shall be evaluated based on the results of one (1) composite sample for every 2,500 cubic yards or less. Five (5) discrete grab samples (1 for every 500 cubic yards) shall be homogenized to form one (1) composite sample. The composite sample shall be submitted for laboratory analyses of priority pollutant semi-volatile organic compounds plus 25 (PP SVOC+25), PP metals, CN and PP pesticides/ PCBs. PP volatile organic compound plus 15 (PP VOC+15) analyses are not required for MF.

SPLP (USEPA Method 1312) shall also be performed on the composite sample formed to represent every

[1] The qualified environmental professional/Professional Engineer/Certified Hazardous Materials Manager shall have no affiliation with the Review Engineer or any person or corporate entity with an ownership interest in the Review Engineer.

2,500 cubic yards or less of MF. Laboratory analyses performed on the resulting leachate shall be for CN and PP metals only.

5. Unprocessed Dredged Material (UDM)

Substantiation that the contaminants are below URUSCC shall be provided by one of the following:

a. *Testing as described in the testing protocol for clean tested soils pursuant to this fill protocol approval.*

b. Existing data determined to be adequate by the Department. However, the Department reserves the right to require additional testing of UDM on a job-by-job basis.

c. Other justification that is accepted by the Department.

**D. Confirmation Testing and Quality Control**

In order to ensure the process above is correctly instituted, the Department or its representatives shall have the authority to have confirmatory testing performed on demand of materials that are on site. Should the Department exercise this authority, EnCap shall be responsible for the associated costs, including without limitation sampling and analytical costs.

The following procedure for review/certification shall apply:

1. <u>Review by Owner's Engineer</u>

The Review Engineer engaged by EnCap shall be authorized to review and approve acceptance recyclable materials at the EnCap site.

2. <u>Review Procedure</u>

In order for material to be approved by the Review Engineer, the source of the material shall provide the information and certifications contained in the Clean Materials Certification and Approval Form (Appendix A).

The Review Engineer shall review the information on the Clean Materials Certification and Approval Form, and approve the specific material subject to the criteria of this protocol. The Review Engineer shall certify that the material meets the required criteria and sign and seal the form. The sealed Clean Materials Certification and Approval Form shall be remitted as follows: one copy to the source of the material, one copy to EnCap, one copy to NJMC, one copy to NJDEP, Division of Solid and Hazardous Waste, and one copy to the Division of Responsible Party Site Remediation.

3. <u>Material Documentation</u>

A bill of lading shall accompany all material received at the site for the final cover system. The bill of lading for clean tested soil, masonry fines and unprocessed dredged material shall also reference the Clean Materials Certification and Approval Form. No material shall be accepted that exceeds the quantities corresponding to the Clean Materials Certification and Approval Form. EnCap or its construction manager shall maintain a Clean Materials Log that shall identify the Clean Materials Certification and Approval Form, truck delivery information (name of trucker, vehicle license, qu[illegible]y received) and area deposited on the site.

4. Record Plan Information

EnCap shall be responsible for providing a record plan identifying the location of recyclable materials and cross-referencing each Clean Materials Certification and Approval Form. To identify the locations and quantities for each specific type of recyclable material used, a grid system shall be employed. The vertical and horizontal location of each material shall be delineated. This information shall be presented in the "as built" certification documents following the completion of the construction activities. The as built information shall be referred to in the Deed Notice for the entire site.

**E. Ability to Petition NJDEP for a Reduction in Sampling Frequency and Parameters**

EnCap may petition the NJDEP for a reduction in the sampling frequency and/or parameters as outlined in this protocol approval after a sufficient database has been established to support such a request.

**Protocol for "Sacrificial" PDM Layer and PDM Barrier Layer**

This protocol shall apply to the upper (or final barrier layer) two feet of PDM wherever the PDM cover system is constructed on these sites. Consistent with the PDM cap design for the Lyndhurst Landfill, Rutherford Landfill and other areas of these sites, the final two feet of PDM shall consist of a one-foot thick "sacrificial" PDM layer that shall be underlain by a one-foot thick PDM barrier layer. The Department has determined that the requirements established in Section C.3 of the 18 December 2001 protocol approval letter (i.e. - requirements for PDM placed outside of the geomembrane cap) shall also apply to the PDM utilized to construct the "sacrificial" PDM layer and PDM barrier layer.

If you have any questions, please contact Nelson Hausman at (609) 984-6650 or via email at *Nelson.Hausman@dep.state.nj.us.*

Sincerely,

Thomas Sherman, Assistant Director
Office of Permitting and Technical Programs

c: Steve Tiffinger, Bergen County Department of Health Services
Robert Ceberio, New Jersey Meadowlands Commission
John Sartor, Paulus, Sokolowski and Sartor, Inc.
Joseph D'Andrea, L. Robert Kimball & Associates
Teruo Sugihara, BEERA
Jeff Story, BGWPA
Nelson Hausman, BLRM
Mary Anne Goldman, BLRM
Richard DeWan, ODST
Ruth Foster, OPP&PC
Michael Kenney, BCM
Gwen Zervas, BCM
Richard Gimello, NJDOT – Office of Maritime Resources

Enclosure

(13)

# State of New Jersey

DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
RICHARD J. HUGHES JUSTICE COMPLEX
25 MARKET STREET
PO BOX 093
TRENTON, NJ 08625-0093
E-Mail: brandste@law.dol.lps.state.nj.us
(609)984-4863

JAMES E. MCGREEVEY
*Governor*

DAVID SAMSON
*Attorney General*

DOUGLAS K. WOLFSON
*Assistant Attorney General*
*Director*

February 7, 2003

Eric Wisler, Esq.
DeCotiis, Fitzpatrick, Cole and Wisler
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RECEIVED FEB 10 2003

Re: EnCap Golf Course Project
Fill Capacity Approval

Dear Eric:

Enclosed is a final Fill Capacity Approval addressing your comments on the last draft and DEP's comments on the Term Sheet and Specifications. This represents the Department's final effort to reach accomodation on the terms. It has thus been signed by Commissioner Campbell.

Please read through the documents carefully as changes have been made throughout. A few items should be explained:

1. While we recognize that EnCap seeks to use 6,000 cu yds of dredge per day during certain periods, EnCap has also recognized that the total may be made up from different contracts and sources. Thus, your "Rider 8A" is not acceptable. We have, however, accounted for this issue in paragraph 9d and in the term sheet.

2. We have deleted the "Placement" section from the specifications. The items included in that sections are not matters relevant to EnCap's arrangement with the Dredger/Processor, and thus do not belong in that doucment.

PDM meeting the Physical and Chemical specifications set forth earlier in the document can be managed in such a way to meet the performance requirements you seek, provided it is managed properly by your remediation contractor.

3. We decided it was not necessary to attach the schedule to the Agreement. We have simply incorporated what was needed from the schedule into the text of the Agreement.

Please have your client execute the enclosed and return it to me. If you have any questions, please feel free to call.

Sincerely yours,

DAVID SAMSON
ATTORNEY GENERAL OF NEW JERSEY

By: Stefanie A. Brand
Stefanie A. Brand
Deputy Attorney General
In Charge of Litigation

cc: Evan Van Hook
Richard Gimello

(14)

State of New Jersey

James E. McGreevey
Governor

Department of Environmental Protection
Office of Dredging and Sediment Technology
Site Remediation Program
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

RECEIVED
JAN 2 3

January 17, 2003

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Gluck & Cole
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Acceptable Use Determination (AUD)
Applicant: EnCap Golf Holdings, LLC
Project: Placement of Dredged Material and Processed Dredged Material (PDM) as part of the Remediation and Proper Closure of the Avon, Lyndhurst and Rutherford Landfills

Dear Mr. Cappola:

The above referenced AUD dated November 1, 2002 was received by the New Jersey Department of Environmental Protection's (NJDEP or the Department) Office of Dredging and Sediment Technology (OD&ST or the Office) on November 8, 2002. Your application requests an approval to utilize dredged material (DM) and Processed Dredged Material (PDM) on the above referenced Avon, Lyndhurst and Rutherford Landfills as part of the Revised Remedial Action Workplan/Closure Plan (RAW/CP) and Major Landfill Disruption Approval Application Approval (s) issued by the NJDEP on October 29, 2002. Your application is hereby approved subject to the conditions contained herein.

**Project Description**

This application requests authorization to utilize dredged material and processed dredged material from the New York/New Jersey Harbor as part of the described remediation/closure. This Acceptable Use Determination Approval (AUD Approval) is only for the placement of the DM and PDM pursuant to Appendix E of the NJDEP Technical Manual entitled *The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters*. EnCap Golf Holdings, LLC (EnCap) entered into a Memorandum of Agreement (MOA) effective on March 20, 2000 (amended on June 5, 2001 and September 26, 2002) to remediate the Avon, Lyndhurst and Rutherford Landfills. The above referenced RAW/CPs provide that the placement of PDM and DM shall be accommodated during the implementation of remedial/closure activities of the Avon, Lyndhurst and Rutherford Landfills. EnCap has proposed a remedy to properly close these landfills that utilizes processed dredged material (and other approved recyclables) as a shaping and grading layer as part of the engineering controls at these landfills. PDM will also be used to construct the barrier layer which will divide the lower shaping and grading layers from the upper cover system which will consist of a vegetative fill layer and a growth layer. The Fill Protocol Approval dated December 18, 2001 sets forth the conditions upon which PDM and other specified recyclables may be accepted for placement under the barrier layer and the November 7, 2002 Fill Protocol Approval Addendum sets forth the conditions upon which materials may be accepted at these sites for use above the barrier layer (cover systems) and outside of the containment systems (engineering controls.)

This AUD Approval is only for the placement of PDM and DM at the referenced sites. Any Processor of dredged material and/or dredger is required to obtain a separate AUD to either process dredged material and/or to bring dredged material to this site from a specific, permitted project. In particular, the Processor's AUD will contain the bulk of the technical and regulatory information required pursuant to Appendix E of the NJDEP's Dredging Technical Manual in order to be allowed to bring PDM (or DM) to the EnCap site.

## ACCEPTABLE USE DETERMINATION CONDITIONS

1. This AUD Approval is for the placement of a minimum of 3,219,600 cubic yards ($yd^3$) of processed dredged material at the Avon, Lyndhurst and Rutherford Landfills. Should EnCap accept any dredged material that does not require processing prior to placement below the barrier layer, this volume of unprocessed dredged material will count towards this permitted volume. Any processed or unprocessed dredged material accepted at this site for placement above the barrier layer and/or outside of the containment/engineering controls will not count towards the 3,219,600 $yd^3$ permitted capacity.

2. EnCap shall implement the preventative measures for dust suppression during the placement of dredged material at the above referenced sites in full accordance with the RAW/CP approvals and the Soil Erosion and Sediment Control Plan Approval.

3. All dredged material, either processed or unprocessed, that will be delivered to the site(s) shall have an AUD from the NJDEP, OD&ST prior to being accepted at the EnCap site.

4. All dredged material, either processed or unprocessed shall be analyzed according to the protocol specified in the December 18, 2001 and November 7, 2002 Fill Protocol Approvals.

5. As stated in item #1 above, this AUD Approval is for the placement of a minimum of 3,219,600 $yd^3$ of processed dredged material at this site. Any proposed changes in this volume will require a formal written modification request and subsequent written approval by the NJDEP prior to delivery and placement at this site.

6. The permittee shall comply with all conditions and requirements of the Remedial Action Workplan Approvals (RAWPs) and/or Closure Plan Approvals as previously issued by the NJDEP and any amendments thereto.

7. Any major accidental release of (processed) dredged material or end product in areas in non-placement areas (i.e. surface waters of the state, etc.) at this site shall be immediately reported to the NJDEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action taken to mitigate the discharge and any other information the Department may request at the time of the notification.

8. EnCap Golf Holdings, LLC shall submit a semiannual report which details the preceding six months of operation/placement at this site. This report shall contain, but not be limited too, volumes of material placed as well as location(s) of placement.

9. A Construction Schedule was provided with the AUD application. Please be advised that the approved Construction Schedule is a component/requirement of the previously referenced RAWPs and/or Closure Plan Approvals and is not subject to this AUD approval.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Suzanne U. Dietrick, Acting Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, Executive Director, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers
Richard Gimello, Executive Director, NJMR

(15)

# PERMIT RESPONSE FORM

**New Jersey Department Of Environmental Protection**
**Environmental Regulation**
**Air Quality Permitting Program**
**P.O. Box 027**
**Trenton, NJ 08625-0027**

November 07, 2001

James Hockensmith
Glenpointe Centre West
500 Frank W. Burr Blvd
Teaneck, NJ 07666

RE: Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment, ENCAP GOLF HOLDINGS LLC (Facility ID No.: 02800), Bergen County, Activity: Construction of New Source (Permit Activity ID No.: PCP010001)

Dear Sir/Madam:

On 07/16/2001, the Department of Environmental Protection (Department) received your application for a "Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment" (designated Avon Landfill Gas Vent System). On 10/29/2001, the Department approved this permit application with an effective start date of 10/29/2001 and an effective end date (expiration date) of 10/28/2006.

The Department hereby issues this permit and certificate to you under the authority of chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct, install or alter the control apparatus or equipment as indicated on the application referenced above. You may also operate the equipment in accordance with the attached conditions.

Enclosed you will find a diskette that contains an electronic version of this approved permit. This electronic version of the application MUST NOT be modified and used in submitting future permit modifications or amendments applications. All future modifications and amendments MUST be submitted to the Department using a NEW RADIUS application showing only the new or modified changes to the permit.

If you have any questions regarding this document, please contact the Bureau of New Source Review at (609) 292-6716. Questions regarding the Certificate to Operate should be directed to the Regional Office.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of New Source Review

16

## PERMIT RESPONSE FORM

**New Jersey Department Of Environmental Protection**
**Environmental Regulation**
**Air Quality Permitting Program**
**P.O. Box 027**
**Trenton, NJ 08625-0027**

November 08, 2001

James Hockensmith
ENCAP Golf Holdings
Glenpointe Centre West
500 Frank W. Burr Blvd
Teaneck, NJ 07666

RE: Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment, ENCAP GOLF HOLDINGS LLC (Facility ID No.: 02800), Bergen County, Activity: Construction of New Source (Permit Activity ID No.: PCP010002)

Dear Sir/Madam:

On 08/29/2001, the Department of Environmental Protection (Department) received your application for a "Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment" designated Lyndhurst-Rutherford LFG). On 10/29/2001, the Department approved this permit application with an effective start date of 10/29/2001 and an effective end date (expiration date) of 10/28/2006.

The Department hereby issues this permit and certificate to you under the authority of chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct, install or alter the control apparatus or equipment as indicated on the application referenced above. You may also operate the equipment in accordance with the attached conditions.

Enclosed you will find a diskette that contains an electronic version of this approved permit. This electronic version of the application MUST NOT be modified and used in submitting future permit modifications or amendments applications. All future modifications and amendments MUST be submitted to the Department using a NEW RADIUS application showing only the new or modified changes to the permit.

If you have any questions regarding this document, please contact the Bureau of New Source Review at (609) 292-6716. Questions regarding the Certificate to Operate should be directed to the Regional Office.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of New Source Review

EMD.DOC
18/01 4:44 PM

(17)

# State of New Jersey

Christine Todd Whitman
Governor

Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028 Trenton, NJ 08625
(609) 292-1250 FAX (609) 777-1914

Robert C. Shinn, Jr.
Commissioner

December 28, 2000

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick & Gluck
Glenpointe Centre West, 500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Waterfront Development Permit/Water Quality Certificate
Application No: 0200-00-0001.2
Stream Encroachment Permit Application: 0200-00-0001.1
Project: EnCap Golf Brownfield Redevelopment Project

Dear Mr. Cappola:

Enclosed, please find an approved Waterfront Development Permit/Water Quality Certificate, Coastal Zone Consistency and Stream Encroachment Permit for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures
C: Alan Steinberg, Esq. Executive Director, HMDC
James Cannon, USACE, New York District
Richard Gimello, Executive Director, NJ Maritime Resources
Michael Kenney, NJDEP, SRP
Marlen Dooley, Deputy Commissioner, NJDEP
Ken Sass, NJDEP, Tidelands

New Jersey is an Equal Opportunity Employer
Recycled Paper

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0200-00-0001.2<br>0200-00-0001.1 | | Application No. 0200-00-0001.2<br>0200-00-0001.1 |
| Issuance Date December 28, 2000 | Effective Date December 28, 2000 | Expiration Date December 28, 2005 |
| Name and Address of Applicant<br>EnCap Golf LLC c/o<br>Mr. Jeffrey Cappola, Esq.<br>500 Frank Burr Blvd.<br>Glenpointe Centre West<br>Teaneck, N.J. 07061 | Name and Address of Owner<br>Alan Steinberg, Executive Director<br>Hackensack Meadowlands<br>Development Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator<br>EnCap Golf LLC c/o<br>Mr. Jeffrey Cappola, Esq.<br>500 Frank Burr Blvd.<br>Glenpointe Centre West<br>Teaneck, N.J. 07061 |
| Location of Activity/Facility<br>Borough of Rutherford, Town of Lyndhurst, Boro of North Arlington<br><br>Lot: See Note Block: See Note | Issuing Division<br><br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |
| Type of Permit Waterfront Development,<br>Water Quality Certificate<br>Stream Encroachment Permit,<br>Coastal Zone Consistency | | Maximum Approved Capacity,<br>If applicable |

This permit grants permission to:

The Hackensack Meadowlands Development Commission (HMDC) and EnCap, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the Hackensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from the deepening of the New York/New Jersey harbor complex. To facilitate the remediation of these landfills and to transport capping material it is necessary to dredge a mooring area in the Hackensack River and Berry's Creek and then construct a bulkhead(s) and a dredged material processing facility. In addition, a series of roads and bridges will be constructed across these landfills in order to transport capping material. It is this construction of roads and bridges as well as the implementation of the cap(s) on these landfill that will have wetland impacts as described in the Multiple Permit Application and the subsequent submission dated November 18, 2000. This permit also legalizes prior fill placed in state owned tidelands as approved under Tideland Application No. 00-0278-T in accordance with N.J.A.C 7:7-2.3(g).

Note: Township of Lyndhurst: Block 231, Lots 9 - 16; Block 233, Lots 10, 11, 12, 13, 14, 15, 29 and 30.
Borough of Rutherford: Block 219.01, Lots 74.04 and 76.02; Block 220, Lots 1 - 12, 14, 15.01, 15.02 and 15.03.
Borough of North Arlington: Block 192, Lot 4; Block 193, Lot1; Block 194, Lot 1; Block 197, Lot1; Block 198, Lots 1, 2 and 3; Block 236, Lot 1.01.

Prepared By: [signature]
Richard DeWan

(See page 5 for Chief's signature.)

Approved by the Department of Environmental Protection

Name (Print or Type) ____________________ Title ____________________

Signature ____________________ Date ____________________

(18)

RECEIVED
JUL 25 2002

State of New Jersey
Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

James E. McGreevey
Governor

Bradley M. Campbell
Commissioner

July 19, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Gluck & Cole
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Modification to Stream Encroachment Permit and Water Quality Certification
**Application No: 0200-00-0005.1**
Applicant: EnCap Golf Holdings, LLC
Project: Construction of Bridge across Berry's Creek and the remediation of additional properties not previously approved

Dear Mr. Cappola:

Enclosed, please find an approved Modification to the Stream Encroachment Permit and Water Quality Certificate for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baer

Lawrence J. Baer, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers

*New Jersey is an Equal Opportunity Employer*
Recycled Paper

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0200-02-0005.1 | Application No. 0200-02-0005.1 | |
| Issuance Date: July 19, 2002 | Effective Date: July 19, 2002 | Expiration Date: July 19, 2007 |
| Name and Address of Applicant<br>EnCap Golf Holdings, LLC<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 | Name and Address of Owner<br>New Jersey Meadowlands Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator:<br>EnCap Golf Holdings, LLC<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 |
| Location of Activity/Facility: Township of Lyndhurst: Block 231, Lots 9 (portion), 15, 16 (portion) Block 233, Lots 1,5,6.01,6.02, 9 (portion), 16.01 (portion), 16.02, 17, 18 Block 235, Lots 29 (portion) and 30 Rutherford: Block 220, Lot 15.02 | Issuing Division:<br>Office of Dredging and Sediment Technology | Statute(s): NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |
| Type of Permit: Modification to the Stream Encroachment Permit and Water Quality Certificate | Maximum Approved Capacity, if applicable | |

**This permit modification grants permission to:** The New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the Hackensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from the New York/New Jersey harbor complex. To facilitate the remediation of these landfills, EnCap proposes to construct a bridge across Berry's Creek in a location different from the previously approved location and to perform remedial activities in areas not previously approved in the area known as the Viola Tract (Viola Area.) Wetland Impacts include approximately 0.67 acres of temporary impacts and 0.03 acres of permanent impacts on Block 233, Lots 1, 5, 6.01, 6.02, 16.01 (portion), 16.02, 17 and 18. There will also be 0.30 acres of temporary impacts on Block 233, Lot 9 (portion), 0.04 acres of temporary impacts on Block 220, Lot 15.02, and 0.13 acres of temporary impacts and 0.01 acres of permanent wetland impacts on Block 231, Lot 9. All of these lots and blocks are located in the township of Lyndhurst. The previously approved Wetland Mitigation Plan has enough capacity to address these areas at a 3:1 ratio. A Tidelands License was issued for these properties on April 8, 2002. This permit does *NOT* include remedial activities in the Viola Ditch, which is subject to a separate permit action.

Please note that the Plans submitted on behalf of this application indicate that other remedial activities will also be occurring on additional lots and blocks that are not included as part of this permit. This is part of the overall strategy that was previously agreed upon wherein the applicant would submit one set of plans for all reviews; both permitting and as part of the Site Remediation case oversight. Therefore, while certain plans will be cited as part of this approval, the approval is limited to activities only on those above referenced lots and blocks (Township of Lyndhurst: Block 231, Lots 15, 16 (portion), Block 233, Lot 9 (portion), 29 (portion), 30 and Township of Rutherford: Block 220, Lot 15.02) found within the cited plans.

Prepared By: [signature]
Richard DeWan

(See page 9 for Chief's signature.)

Approved by the Department of Environmental Protection

Name (Print or Type) ____________________ Title ____________________

Signature ____________________ Date ____________________

**The word permit means "approval, certification, registration, etc."*

*(General Conditions are on Page Two)*

G0100300442

State of New Jersey
Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

mes E. McGreevey
*Governor*

Bradley M. Campbel
Commissioner

August 15, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Gluck & Cole
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Permit Compliance Statement for the existing Multiple Permit for Waterfront Development, Stream Encroachment Permits, Water Quality Certificate and Coastal Zone Consistency Determination
**Application No: 0200-00-0001.2 and 0200-00-0001.1**
Applicant: EnCap Golf Holdings, LLC
Project: Changes in remedial activities and updated, detailed plans and specifications

Dear Mr. Cappola:

The New Jersey Department of Environmental Protection (NJDEP or the Department) issued a conditionally approved Multiple Permit (Multiple Permit) on December 28, 2000. This Permit required that no changes in plans or specifications shall be made without prior written permission from the NJDEP. In a submission dated May 17, 2002, received by the NJDEP Office of Dredging and Sediment Technology (OD&ST or the Office) on May 29, 2002, EnCap Golf Holdings, LLC (EnCap) presented the proposed changes in this project from those originally permitted on December 28, 2000 as well as detailed plans that have been developed subsequent to the original approval. The May, 2002 submission was supplemented with additional technical information on August 14, 2002. This letter constitutes the approval of the May 2002 technical submission entitled: *Waterfront Development and Stream Encroachment Permit Compliance Statement* as well as the information provided in the August 14, 2002 supplemental package.

The previous Multiple Permit included the construction of waterfront infrastructure in support of a dredged material off-loading and processing facility to facilitate the closure of the Avon, Rutherford and Lyndhurst Landfills. However, while (processed) dredged material will still be utilized in the proper closure of these landfills, the material will not be transported by water but will be processed at facilities outside of the project site and will be transported by trucks to the various landfills. Therefore, the previously approved waterfront infrastructure will not be constructed.

Several activities have been identified in the *Waterfront Development and Stream Encroachment Permit Compliance Statement* requiring NJDEP permit approval subsequent to the issuance of the existing Multiple Permit. These activities include but are not limited too: Updated Grading Plans, Location of Drainage Outfalls, Vertical Hydraulic Barrier Walls, Leachate Collection Systems, Landfill Gas Venting Systems, Haul Roadways to support Remedial Activities, Culvert Replacements, Viola Ditch Improvements, Demolition of existing Buckley Radio Transmission Towers and Tide Gate Removal. These proposed activities are consistent with the Revised Remedial Action Workplan/Closure Plan for the Lyndhurst and Rutherford Landfills.

*New Jersey is an Equal Opportunity Employer*
Recycled Paper

1. Updated Grading Plans

The proposal is to raise the existing site grades to the remedial design grades with dredged materials and/or recyclables. The proposal is to use dredged materials/recyclables as part of the shaping and grading layer under a geomembrane liner/cap on the Avon Landfill. It is proposed that dredged material will be utilized to shape the landfill for proper drainage. Also, processed dredged material (PDM) will be used as the barrier layer at the Lyndhurst and Rutherford Landfills. The proposed modifications of this capping system are remedial activities that will lead to an improvement in water quality through the reduction in leachate generation and discharging into Berry's Creek and other surface water bodies. Therefore, these modifications are compliant with the "Finfish Migratory Pathways" rule, N.J.A.C. 7:7E-3.5(c). Additionally, pursuant to 7:7E-3.3(b), EnCap will be submitting and implementing a Soil Erosion and Sediment Control Plan pursuant to the "Standards for Soil Erosion and Sediment control in New Jersey" published by the New Jersey State Soil Conservation Committee (N.J.A.C. 2:90-1.1 et. seq.) Therefore, the revised grading plans for the project area demonstrate compliance with the existing permits.

2. New or Modified Drainage Outfalls

The May 2002 Revised Remedial Action Workplan/Closure Plan (RAW/CP) presented a modified stormwater management plan and a new drainage outfall design. All potential runoff from the Avon Landfill will be collected and directed to outfall structures located along Buck's Creek at the toe of the southern slope. Further, additional properties (Rose City Tract) are now included as part of the Lyndhurst Landfill remediation that were not included in the previous Multiple Permit. The proposed activities on the Rose City Tract have been approved under NJDEP Permit No. 0232-02-0001.1. All storm water from this additional property included in the remedial activities will be collected and directed in the same manner as all other storm water from the previously approved landfill areas. Therefore, the proposal is in compliance with the existing permit.

3. Leachate Collection System and Vertical Hydraulic Barrier Walls

For the Avon Landfill, there is no change in the previous proposed remedial activities with respect to the location or depth of the leachate management system (LMS.) Regarding the Lyndhurst and Rutherford Landfills, with the inclusion of the additional properties, the LMS will be modified to include these areas. The capping and inclusion of these additional areas within the Vertical Hydraulic Barrier Walls (VHB) and LMS will serve to improve water quality by: 1) reducing the amount of leachate discharging into Berry's Creek and 2) controlling contaminated storm water runoff. Therefore, these proposed modifications to the VHB and LMS meets the conditions established by N.J.A.C. 7:7E-3.5(c) and are in compliance with the existing Waterfront Development and Stream Encroachment Permits.

4. Landfill Gas Venting Systems

The existing Multiple Permit allows for the installation and operation of a passive landfill gas venting system designed to be upgraded into an active gas collection system, if necessary for all three landfills. Presently, vertical redevelopment is contemplated on portions of the Lyndhurst Landfill, a portion of the Rutherford West Landfill and the Rutherford Northern Node. To support this vertical redevelopment, an under-slab active venting system (USAVS) will be designed, permitted and installed in conjunction with the building foundation systems to manage the landfill gas emissions (LFG) under the structures. These additional pipes are necessary to implement the approved remediation for this site and therefore are in compliance with the existing Multiple Permit.

5. Haul Roadways in Support of Remedial Activities

Minor changes in the previously approved roadway alignments to accommodate the remedial actions have been submitted as part of the Revised RAW/CP for these three landfills. Final roadway improvement design and traffic evaluations are in progress and will be submitted to the New Jersey Meadowlands Commission under the Zoning Certificate application process. These modifications to the previously approved roadways in support of the implementation of a remedial action are in compliance with the existing Multiple Permit.

6. Culvert Improvements

The Van Winkle Ditch, Fish Creek and Berry's Creek culverts will be replaced in-kind. The Buck's Creek culvert at Valley Brook Avenue will be reconstructed with a 2.5' x 6' elliptical pipe culvert resulting in increased water capacity through this new culvert. These proposed modifications are in compliance with N.J.A.C. 7:7E-3.5(b).

7. Demolition of the Existing Buckley Radio Transmission Towers

The relocation of these towers was approved in a previously issued Waterfront Development and Stream Encroachment Permit No. 0256-02-0003.1 WFD 02001. The existing towers will be demolished to support the implementation of the Lyndhurst Landfill remedial action. The tower superstructures and underground copper grid system will be removed and remedial activities to occur at this location include the installation of the passive LFG venting system, LMS, VHB and the landfill cover system. These activities are in compliance with the existing Multiple Permit.

8. Tide Gate Removal

The existing 30" pipe within Buck's Creek at the eastern tip of the Avon landfill will be removed and the culvert crossing will be excavated and opened to create a channel subject to tidal inundation along lower Berry's Creek to the Valley Brook Avenue culvert crossing. Buck's Creek will be lined with geomembrane and a minimum of 18" of clean, common fill cover which will be planted with vegetation tolerant of tidal inundation. These details are reflected in the plans submitted with the various permit applications as well as the Revised RAW/CP. Reconstruction of this portion of Buck's Creek will restore tidal flow characteristics of Buck's Creek which is compliant with the existing Multiple Permit. Further, the removal of the tide gate is also compliant with N.J.A.C. 7:7E-3.5(b) in that removing the existing tide gates and opening the channel to tidal flow will remove an existing physical barrier to the movement of fish along Finfish migratory pathways.

9. Viola Ditch Improvements

The proposed realignment and reconfiguration of the Viola Ditch as part of the grading plan for the Lyndhurst Landfill was the subject of intensive evaluation and discussion under the SRP Case team review of the Revised RAW/CP. It was determined by that process that this remedial action proposal is acceptable. Therefore, the proposal as it pertains to compliance with the Rules under the Waterfront Development and Stream Encroachment Permits is acceptable.

The authorized activities are as shown on the following sheets: for the Lyndhurst and Rutherford Landfills: *Overall Plan,* (Sheet No. C-00), dated 6/8/01, revised 4/26/02; *100-Year Flood Plain Plan,* (Sheet No. C-01) dated 4/16/02, revised 4/26/02; Grading & Utilities Key Plan (Sheet No. C-2) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan A (Sheet No. C-3) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan B (Sheet No. C-4) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan C (Sheet No. C-5) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan D (Sheet No. C-6) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan E (Sheet No. C-7) Grading & Utilities Plan F (Sheet No. C-8) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan G (Sheet No. C-9) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan H (Sheet No. C-10) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan I (Sheet No. C-11) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan J (Sheet No. C-12) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan K (Sheet No. C-13) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan L (Sheet No. C-14) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan M (Sheet No. C-15) dated 6/8/01, revised 4/26/02; Grading & Utilities Plan N (Sheet No. C-16) dated 6/8/01, revised 4/26/02; *Site Details* (Sheet No. C-17) dated 6/8/01, revised 4/26/02; *Site Details* (Sheet No. C-18) dated 6/8/01, revised 4/26/02; *Site Details* (Sheet No. C-19) dated 6/8/01, revised 4/26/02; *Site Details* (Sheet No. C-20) dated 6/8/01, revised 4/26/02. For the Avon Landfill: *Overall Plan* (Sheet C-0) dated 5/9/01; *Details* (Sheet C-11) dated 5/9/01; *Details* (Sheet C-12) dated 5/9/01; *Details* (Sheet C-13) dated 5/9/01. Also, *Buck's Creek Improvements at Valley Brook Avenue* dated August 14, 2002 and *Buck's Creek Improvements at Eastern Tip, Tide Gate Removal* dated August 14, 2002.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, Executive Director, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers
John Sartor, PS&S/Keyspan

(2)

RECEIVED
JUL 3 2002

James E. McGreevey
Governor

State of New Jersey
Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028, Trenton, NJ 08625
(609) 292-1250 FAX (609) 777-1914

Bradley M. Campbell
Commissioner

June 26, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, FitzPatrick, Gluck & Cole, LLP
Glenpointe Centre West 500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Waterfront Development Permit, Stream Encroachment Permit, Water Quality Certification and Coastal Zone Consistency Determination
Application No: 0256-02-0003.1 WFD 020001
Applicant: EnCap Golf Holdings, LLC and Buckley Broadcasting Corporation
Project: Relocation of WOR Radio 710 AM radio towers to facilitate the remediation of a former landfill as part of the Meadowlands Golf Redevelopment

Dear Mr. Cappola:

Enclosed, please find an approved Waterfront Development Permit, Water Quality Certificate, Stream Encroachment Permit and Coastal Zone Consistency Determination for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Thomas O' Connor, Esq.
Robert Ceberio, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, New York District, US Army Corps of Engineers

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | |
|---|---|
| Permit No. 0256-02-0003.1 WFD 020001 | Application No. 0256-02-0003.1 WFD 020001 |

| | | |
|---|---|---|
| Issuance Date: June 27, 2002 | Effective Date: June 27, 2002 | Expiration Date: June 27, 2007 |
| Name and Address of Applicant<br>EnCap Golf Holdings LLC c/o Mr. Jeffrey Cappola, Esq.<br>500 Frank Burr Blvd.<br>Glenpointe Centre West<br>Teaneck, N.J. 07061 | Name and Address of Owner<br>New Jersey Meadowlands Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator<br>Buckley Broadcasting Corp. c/o Mr. Thomas O'Connor, Esq.<br>300 Lighting Way<br>Secaucus, N.J. 07601 |
| Location of Activity/Facility: Township of Lyndhurst: Block 231, Lots 9 & 10<br>Borough of Rutherford: Block 220, Lots 8, 9, 10, 11 and 12 | Issuing Division:<br>Office of Dredging and Sediment Technology | Statute(s): NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |

| | |
|---|---|
| Type of Permit Waterfront Development, Water Quality Certificate, Stream Encroachment Permit, Coastal Zone Consistency | Maximum Approved Capacity, if applicable |

**This permit grants permission to:** The New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the Hackensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from the New York/New Jersey harbor complex. To facilitate the remediation of these landfills, EnCap and Buckley Broadcasting Corp. (Buckley) propose to remove the WOR Radio 710 AM radio towers from the current location in the Township of Lyndhurst, Block 231, Lots 9 and 10, which is a landfill, and cap that site as part of the landfill remediation for the Meadowlands Golf Redevelopment Project. The proposed site for the construction of the new radio towers is located at Block 220, Lots 8, 9, 10, 11 and 12 in the Borough of Rutherford, approximately 3,000 feet from the existing tower location. According to the application, the purpose and need for this project is to facilitate the implementation of a remediation/closure plan for the Lyndhurst Landfill. The proposed activities are as follows: 1) the construction of three (3) 700' guyed towers, each with a 10' x 15' accessory (detuning) building, each in a 50' x 50' compound. The compound will be contained in an 8' high chain-link fence. 2) Three (3) guy anchors per tower. Each guy anchor will be approximately 480' from its respective tower and will be contained in a 20' x 20' fenced compound. 3) A 35' x 70' transmission (TX) building in a 125' x 210' compound. The TX building will have a power and telecommunications connection from the nearest public utility. 4) Each tower will have radio transmission, power and telecommunications connections. 5) Permanent access roads will be installed from the public access to the TX building and tower compounds. 6) Three permanent culverts will be constructed at locations shown on Sheet C-1 in Section 10 of the application. 7) Each guy anchor compound will have a temporary construction access road connection to the public way or construction access to the project. 8) The relocation will also include a future sewer and water supply connection to the TX building. Wetland Impacts include 1.583 acres of temporary impacts and 1.210 acres of permanent impacts. The previously approved Wetland Mitigation Plan has enough capacity to address these areas at a 3:1 ratio. A Tidelands License was issued for these properties on April 8, 2002. These radio towers transmit 24 hours a day, seven days a week and provide a benefit of broadcasting the public of emergency notices. The copper radial grounding system is required to be inundated with water at all times which requires that they be embedded 1" below surface. Finally, the towers must be located as close as possible to the original tower location because of the frequency to its receptors and must be outside of the flight paths of Teterboro and Newark airports. After evaluating 17 potential sites, the alternative analysis determined that this site is the best location for these towers.

Prepared By: [signature]
Richard DeWan

(See page 10 for Chief's signature.)

RECEIVED
JUL 25 2002

McGreevey
Governor

State of New Jersey
Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

July 23, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick & Gluck
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Waterfront Development Permit, Stream Encroachment Permit, Water Quality Certification and Coastal Zone Consistency Determination
**Application No: 0232-02-0001.1 WFD - 020001 FHA - 020001**
Applicant: EnCap Golf Holdings, LLC
Project: Removal of Five (5) radio towers and associated facilities and performance of remediation activities on the parcel known as the Rose City tract in Lyndhurst.

Dear Mr. Cappola:

Enclosed, please find an approved to the Waterfront Development Permit, Stream Encroachment Permit, Water Quality Certification and Coastal Zone Consistency Determination for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0232-02-0001.1 WFD 020001 FHA 020001 | Application No. 0232-02-0001.1 WFD 020001 FHA 020001 | |
| Issuance Date: July 23, 2002 | Effective Date: July 23, 2002 | Expiration Date: July 23, 2007 |
| Name and Address of Applicant<br>EnCap Golf Holdings, LLC<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 | Name and Address of Owner<br>New Jersey Meadowlands Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator:<br>~~EnCap Golf Holdings, LLC~~<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 |
| Location of Activity/Facility:<br>Township of Lyndhurst: Block 233, Lots 15 and 16.01 | Issuing Division:<br>Office of Dredging and Sediment Technology | Statute(s): NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |
| Type of Permit: Waterfront Development Permit, Stream Encroachment Permit, Water Quality Certification and Coastal Zone Consistency Determination | Maximum Approved Capacity, if applicable | |

This permit modification grants permission to: The New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the ckensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from e New York/New Jersey harbor complex. To facilitate the remediation of these landfills, EnCap proposes to remove the xisting 5 radio towers and associated facilities currently located at a portion of the Lyndhurst Landfill, which is known as the Rose City Tract, and to perform remedial activities in this area. Wetland Impacts include approximately 1 acre of temporary impacts by remedial activities in this area. There will be no permanent impacts when this activity is completed. The previously approved Wetland Mitigation Plan states that all wetlands temporarily impacted will be restored to equal or better conditions. The Wetlands Mitigation Plan was approved in USACE Permit No. 2000-00381. A Tidelands License was issued for these properties on April 8, 2002.

Please note that the Plans submitted on behalf of this application indicate that other remedial activities will also be occurring on additional lots and blocks that are not included as part of this permit. This is part of the overall strategy that was previously agreed upon wherein the applicant would submit one set of plans for all reviews; both permitting and as part of the Site Remediation case oversight. Therefore, while certain plans will be cited as part of this approval, the approval is limited to activities only on those above referenced lots and blocks (Township of Lyndhurst: Block 233, Lots 15 and 16.01) found within the cited plans.

Prepared By: [signature]
Richard DeWan

(See page 9 for Chief's signature.)

Approved by the Department of Environmental Protection

Name (Print or Type) ____________________ Title ____________________

Signature ____________________ Date ____________________

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

(22)

# State of New Jersey

Christine Todd Whitman
Governor

Department of Environmental Protection
Land Use Regulation Program
Bureau of Tidelands Management
P.O. Box 439
Trenton, New Jersey 08625-0439
Tel. # 609-292-2573
Fax. # 609-633-6493

Robert C. Shinn, Jr.
Commissioner

RECEIVED
H.M.D.C.
SEP 08 2000
LAND USE MANAGEMENT/
LEGAL AFFAIRS

September 7, 2000

Mr. Andrew R Davis
Director of Land Use Management & Legal Affairs
Hackensack Meadowlands Development Commission
One DeKorte Park Plaza
Lyndhurst, NJ 07071-3799

RE: HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, tidelands interim license, (uplands, bridges and culverts), Fish Creek, Berry's Creek and tributaries, Lots 5, 6, 12, 14, 15.02 and 15.03, Block 220 in the Borough of East Rutherford and Lots 11, 12 and 14, Block 231 and Lots 11 and 14, Block 233 I the Borough of Lyndhurst, Bergen County

FILE: #00-0278-T

Dear Mr. Davis:

The Tidelands Resource Council at its meeting on September 7, 2000 approved the issuance of a 7 year interim license (lease) at a consideration of $56,500.00 per annum plus a charge of $600.00 for the processing of this application. The license is subject to ownership of the parcels, as well as obtaining all required permits.

The action of the Council is not official until the minutes of the meeting are fully approved. However, we understand you wish to expedite this license. Therefore, in accordance with the action taken above, please forward to this office the following checks, made payable to the Treasurer - State of New Jersey:

(1) $56,500.00 representing payment of the license (lease) consideration for the first year.
(2) $ 600.00 representing the license (lease) instrument processing fee.

Separate checks are required for accounting purposes. Please send these checks to the attention of the Bureau of Tidelands Management at the above address.

Upon receiving the checks, the license (lease) will be processed for delivery.

Sincerely,

Jo Ann Cubberley C.P. (ASPRS)
Manager
Bureau of Tidelands Management

New Jersey is an Equal Opportunity Employer
Recycled Paper

# State of New Jersey

mes E. McGreevey
*Governor*

Department of Environmental Protection
Office of Dredging and Sediment Technology
Site Remediation Program
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

(23)

Bradley M. Campbell
Commissioner

April 17, 2003

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Cole & Wisler
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Acceptable Use Determination (AUD)
Applicant: EnCap Golf Holdings, LLC
Project: Placement of Dredged Material and Processed Dredged Material (PDM) as part of the Proper Closure of the Kingsland Landfill

Dear Mr. Cappola:

The above referenced AUD application dated March 31, 2003 was received by the New Jersey Department of Environmental Protection's (NJDEP or the Department) Office of Dredging and Sediment Technology (OD&ST or the Office) on April 1, 2003. Your application requests an approval to utilize dredged material (DM) and Processed Dredged Material (PDM) on the above referenced Kingsland Landfill as part of the Closure Plan and Post Closure Plan Approval(s) issued by the NJDEP on January 27, 2003. Your application is hereby approved subject to the conditions contained herein.

**Project Description**

This application requests authorization to utilize dredged material and processed dredged material from the New York/New Jersey Harbor as part of the approved described closure/post-closure of the Kingsland Landfill. This Acceptable Use Determination Approval (AUD Approval) is only for the placement of the DM and PDM pursuant to Appendix E of the NJDEP Technical Manual entitled *The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters*. EnCap Golf Holdings, LLC (EnCap) entered into a Memorandum of Agreement (MOA) effective on March 20, 2000 (amended on June 5, 2001 and September 26, 2002) to remediate the Avon, Lyndhurst, Rutherford and Kingsland Landfills. The Remedial Action Workplans/Closure Plans (RAW/CPs) associated with those landfills provide that the placement of PDM and DM shall be accommodated during the implementation of remedial/closure activities. An AUD Approval was issued for the Avon, Lyndhurst and Rutherford Landfills on January 17, 2003. Subsequent to the issuance of the RAW/CPs for the Avon, Lyndhurst and Rutherford Landfills, EnCap proposed a remedy to complete the proper closure of the Kingsland landfill utilizing processed dredged material (and other approved recyclables) as part of the final cover system as described in Section 2 of the 1/27/03 Closure Plan and Post-Closure Plan Approval. The Fill Protocol Approval dated December 18, 2001 sets forth the conditions upon which PDM and other specified recyclables may be accepted for placement as part of this cover system and the November 7, 2002 Fill Protocol Approval Addendum sets forth the conditions upon which materials may be accepted at these sites for use above the barrier layer (cover systems) and outside of the containment systems (engineering controls.)

This AUD Approval is only for the placement of PDM and DM at the Kingsland Landfill. Any Processor of dredged material and/or dredger is required to obtain a separate AUD to either process dredged material and/or to bring dredged material to this site from a specific, permitted project. In particular, the Processor's AUD will contain the bulk of the technical and regulatory information required pursuant to Appendix E of the NJDEP's Dredging Technical Manual in order to be allowed to bring PDM (or DM) to the EnCap site.

ACCEPTABLE USE DETERMINATION CONDITIONS

1. This AUD Approval is for the placement of 200,000 cubic yards ($yd^3$) of processed dredged material at the Kingsland Landfill. No additional volumes of either processed dredged material or dredged material may be accepted without first obtaining NJDEP written authorization to do so at the Kingsland Landfill.

2. This AUD Approval does not authorize EnCap or any other entity to accept any other material at the Kingsland Landfill.

3. EnCap shall implement the preventative measures for dust suppression during the placement of (processed) dredged material at the above referenced sites in full accordance with the Closure Plan and Post-Closure Plan approvals and the Soil Erosion and Sediment Control Plan Approval from the Bergen County Soil Conservation District.

4. All dredged material, either processed or unprocessed, that will be delivered to the site(s) shall have an AUD from the NJDEP, OD&ST prior to being accepted at any of the 4 Landfill sites (Avon, Rutherford, Lyndhurst or Kingsland.)

5. All dredged material, either processed or unprocessed shall be analyzed according to the protocols specified in the December 18, 2001 and November 7, 2002 Fill Protocol Approvals.

6. As stated in item #1 above, this AUD Approval is for the placement of 200,000 $yd^3$ of processed dredged material at this site. Any proposed changes in this volume will require a formal written modification request and subsequent written approval by the NJDEP prior to delivery and placement at this site.

7. The permittee shall comply with all conditions and requirements of the Closure Plan and Post-Closure Plan Approval for the Kingsland Landfill as previously issued by the NJDEP and any amendments thereto.

8. Any major accidental release of (processed) dredged material or end product in areas in non-placement areas (i.e. surface waters of the state, etc.) at this site shall be immediately reported to the NJDEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action taken to mitigate the discharge and any other information the Department may request at the time of the notification.

9. EnCap Golf Holdings, LLC shall submit a semiannual report which details the preceding six months of operation/placement at this site. This report shall contain, but not be limited too, volumes of material placed as well as location(s) of placement.

10. A Construction Schedule was provided with the AUD application. Please be advised that the approved Construction Schedule is a component/requirement of the previously referenced RAWPs and/or Closure Plan Approvals and is not subject to this AUD approval.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Acting Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, Executive Director, NJMC
Michael Kenney, NJDEP, BCM
John Edwards, NJDEP, DS&HW
James Cannon, NY District, US Army Corps of Engineers
Richard Gimello, Executive Director, NJMR

New Jersey Natural Resources Conservation Program

BERGEN COUNTY SOIL CONSERVATION DISTRICT

2t

700 Kinderkamack Road
Suite 106
Oradell, New Jersey 07649
Telephone (201) 261-4407
Fax (201) 261-7573

August 5, 2003

Encap Golf Holdings
c/o DeCotis, Fitzpatrick, Gluck & Hyden
Glenpointe Centre West, 500 Frank W. Burr Blvd.
Teaneck, NJ 07666

RE: Lyndhurst Sports Complex
862 Valley Brook Avenue
Block 233, Lots 1,5,6.01,6.02,16.02,17 & 18
Lyndhurst, NJ
Our File #03-B7474

Dear Sir/Madam:

Pursuant to N.J.S.A. 4:24-39 et seq., the N.J. Soil Erosion and Sediment Control Act, the Bergen County Soil Conservation District hereby certifies the Soil Erosion and Sediment Control Plan for the above referenced project, subject to the following:

1. That the applicant carries out all land disturbance activities in accordance with the Standards for Soil Erosion and Sediment Control in New Jersey as promulgated by the State Soil Conservation Committee.

2. The applicant must notify the District office, by mail, at least 48 hours prior to initial land disturbance.

3. The owner/applicant must obtain a District-issued Report of Compliance prior to issuance of any Certificate of Occupancy by the municipality. The District requires advance notice of at least one week for the issuance of a Report of Compliance.

4. Changes in the certified plan relating to, or that will effect land disturbance on the site, must be submitted to the District office for reevaluation and approval.

5. A copy of the certified plan and a copy of these provisions must be kept on the job site at all times.

Failure to comply with any of the above conditions may result in the issuance of a Stop Work Order.

This approval is limited to the soil erosion, sedimentation and related stormwater management controls specified in the plan. It is not authorization to engage in the proposed land use unless such has been previously approved by the municipality or other controlling agency.

RECEIVED
AUG 7 2003

Sincerely yours,

Ronald E. Binaghi, Jr.
District Supervisor

STATE DEPARTMENT OF AGRICULTURE, STATE DEPARTMENT OF ENVIRONMENTAL PROTECTION, COOK COLLEGE OF RUTGERS UNIVERSITY, AND UNITED STATES NATURAL RESOURCES CONSERVATION SERVICE, COOPERATING.

New Jersey Natural Resources Conservation Program

| For District Use Only |
|---|
| Application Number 03B7474 |
| $2450 |
| Certified |
| AUG 05 2003 |

# APPLICATION FOR SOIL EROSION AND SEDIMENT CONTROL PLAN CERTIFICATION

The enclosed soil erosion and sediment control plan and supporting information are submitted for certification pursuant to the Soil Erosion and Sediment Control Act, Chapter 251, P.L. 19 as amended (NJSA 4:24-39 et. seq.) An application for certification of a soil erosion and sediment control plan shall include the items listed on the reverse side of this form.

| | | | |
|---|---|---|---|
| Name of Project PROPOSED ATHLETIC FIELDS & PARKING Lyndhurst Sports Complex | | Project Location: Municipality Lyndhurst | |
| Project Street Address 862 Valley Brook Avenue | | Block 233 | Lot 6.01, 6.02, 16.02, 17 & 18, 1 & 5 |
| Project Owner(s) Name EnCap Golf Holdings, LLC % DeCotis, Fitzpatrick, Gluck, & Hyden | | | Phone # 201.907.5288 Fax # 201.928.0183 |
| Project Owner(s) Street Address (No P.O. Box Numbers) GLEN POINTE CENTRE WEST 500 FRANK W. BURR BLVD | | City TEANECK | State NJ Zip 07666 |
| Total Area of Project (Acres) 17.3 | Total Area or Land to be Disturbed (Acres) 16 | No. Dwelling or other Units 2 | Fee $ 2,450 |
| Plans Prepared by* Langan Engineering and Environmental Services, Inc. | | | Phone # 201.794.6900 Fax # 201.794.0366 |
| Street Address River Drive Center 1 | | City Elmwood Park | State NJ Zip 07407 |

(Engineering related items of the Soil Erosion and Sediment Control Plan MUST be prepared by or under the direction of and be sealed by a Professional Engineer or Architect licensed in the State of New Jersey, in accordance with NJAC 13:27-6.1 et. seq.)

Agent Responsible During Construction James T. Hockensmith

Street Address

City State Zip Phone 201-907-5288 Fax # 201-928-0588

The applicant hereby certifies that all soil erosion and sediment control measures are designed in accordance with current Standards for Soil Erosion and Sediment Control In New Jersey and will be installed in accordance with those Standards and the plan as approved by the Soil Conservation District and agrees as follows:

1. To notify the District in writing at least 48 hours in advance of any land disturbance activity. Failure to provide such notification may result in additional inspection fees.
2. To notify the District upon completion of the Project (Note: No certificate of occupancy can be granted until a report of compliance is issued by the District.
3. To maintain a copy of the certified plan on the project site during construction.
4. To allow District agents to go upon project lands for inspection.
5. That any conveyance of this project or portion thereof prior to its completion will transfer full responsibility for compliance with the certified plan to any subsequent owners.
6. To comply with all terms and conditions of this application and certified plan including payment of all fees prescribed by the district fee schedule hereby incorporated by reference.

The applicant hereby acknowledges that structural measures contained in the Soil Erosion and Sediment Control Plan are reviewed for adequacy to reduce offsite soil erosion and sedimentation and not for adequacy of structural design. The applicant shall retain full responsibility for any damages which may result from any construction activity notwithstanding district certification of the subject soil erosion and sediment control plan. It is understood that approval of the plan submitted with this application shall be valid only for the duration of the initial project approval granted by the municipality. All municipal renewals of this project will require submission and approval by the district. In no case shall the approval extend beyond three and one half years at which time resubmission and certification will be required. Soil Erosion and Sediment Control Plan certification is limited to the controls specified in the plan. It is not authorization to engage in the proposed land use unless such use has been previously approved by the municipality or other controlling agency.

1. Applicant Certification: [signature] Signature 4/2/03 Date

Applicant Name (Print) James T. Hockensmith

2. Receipt of fee, plan and supporting documents is hereby acknowledged: [signature] Signature of District Official 6/5/03 Date

3. Plan determined complete: [signature] Signature of District Official 8/5/03 Date

4. Plan certified, denied or other actions noted. Special Remarks: [signature] Signature of District Official 8/5/03 Date

* If other than project owner, written authorization of owner must be attached.

SSCC 251 APIO 4/99

G0100300456

# APPENDIX 7

## CONSTRUCTION SCHEDULE

| Activity ID | Activity Description | Orig Dur | Early Start | Early Finish | Budgeted Quantity | Budgeted Cost |
|---|---|---|---|---|---|---|
| 1 | Notice of Apparent Low Bidder | 0 | 23MAY06 | | 0 | 0 |
| 2 | Pre-Award Review | 70 | 24MAY06* | 01AUG06 | 0 | 0 |
| 3 | Facility Construction | 50 | 01JUN06* | 20JUL06 | 0 | 0 |
| 4 | Sampling Plan Application to NJDEP | 7 | 23MAY06 | 29MAY06 | 0 | 0 |
| 5 | Material Sampling and Testing | 45 | 01JUN06* | 15JUL06 | 0 | 0 |
| 6 | Material AUD Review and Permitting | 8 | 16JUL06 | 23JUL06 | 0 | 0 |
| 7 | Anticipated Award | 0 | 09AUG06 | | 0 | 0 |
| 8 | Anticipated NTP | 0 | 19AUG06 | | 0 | 0 |
| 9 | Allowed Work Period Base | 65 | 19AUG06 | 22OCT06 | 0 | 0 |
| 10 | Allowed Work Period All Options | 64 | 23OCT06 | 25DEC06 | 0 | 0 |
| 11 | Dredge Mobilization | 5 | 19AUG06 | 23AUG06 | 1 | 945,000 |
| 12 | Dredging Base, Shoal 1 | 49 | 24AUG06 | 11OCT06 | 170,420 | 10,054,780 |
| 13 | Dredging Option Shoal 1A | 3 | 09OCT06 | 11OCT06 | 9,955 | 686,605 |
| 14 | Dredging Option Shoal 2 | 7 | 12OCT06 | 18OCT06 | 21,950 | 1,338,950 |
| 15 | Dredging Option Shoal 3 | 12 | 19OCT06 | 30OCT06 | 40,615 | 2,477,515 |
| 16 | Dredging Option Shoal 4 | 6 | 30OCT06 | 04NOV06 | 19,150 | 1,149,000 |
| 17 | Dredging Option Shoal 5 | 11 | 05NOV06 | 15NOV06 | 36,605 | 2,123,000 |
| 18 | Dredging Option Shoal 6 | 25 | 16NOV06 | 10DEC06 | 84,990 | 4,759,440 |




Start Date 23MAY06
Finish Date 25DEC06
Data Date 23MAY06
Run Date 31MAY06 12:31

Early Bar
Float Bar
Progress Bar
Critical Activity

N808 Sheet 1 of 1

Great Lakes Dredge & Dock Company
Newark Bay and Pierhead Channels 06
Classic Schedule Layout

| Date | Revision | Checked | Approved |
|---|---|---|---|
| | | | |

© Primavera Systems, Inc.

APPENDIX 8

SITE MAP FOR PROCESSING AND DISPOSAL LOCATIONS


NJMC
IE
LANDFILL
ENCAP
DISPOSAL
SITE
FDP
DISPOSAL
SITE
KEARNY
PROCESSING
& DISPOSAL
FACILITY
HOBOKEN
NEWARK
HACKENSACK
JERSEY CITY
EIC
PROCESSING
SITE
NEWARK BAY
PROJECT
LOCATION
CLAREMONT
PROCESSING
FACILITY
DON JON
PROCESSING
FACILITY
UPPER BAY
KILL VAN KULL
THE NARROWS
KOPPERS
WOOD BRIDGE
DISPOSAL
SITE
FRESH KILLS
LANDFILL
BAYSHORE
PROCESSING
& DISPOSAL
FACILITY
OFF MAP
GREAT LAKES DREDGE AND DOCK COMPANY
2122 YORK ROAD, OAK BROOK IL 60523
CIVIL ENGINEERING : ESTIMATING DIVISION
Phone: (630) 574-3000
Fax: (630) 574-2909
PROJECT
NEWARK BAY CHANNELS
PROJECT FACILITIES LOCATIONS

APPENDIX 9

CLAMSHELL DREDGE INFORMATION SHEETS

fleet
equipment info from GLD&D 2001/17

# Clamshell (Grab)
## *Dredge No. 51*



Dredge No. 51 *at work deepening the approach channel to Baltimore Harbor.*

**Dredge No. 51** is suitable for smaller maintenance and capital projects, such as pier dredging and pipeline crossings.

**Applications**
- Open channel excavation
- Pier and dock excavation
- Pipeline crossings and tunnel excavations
- New work in harbors and routine maintenance dredging

**Operation**
*Dredge No. 51* operates with
- 15- and 18-yd³ (12- and 14-m³) buckets for mud excavation
- 14-yd³ (11-m³) bucket for firmer material
- 7- and 9-yd³ (5- and 7-m³) buckets for sand and hard materials

The dredge works in conjunction with Great Lakes' fleet of 2,000- and 3,000-yd³ (1,530- and 2,300-m³) bottom dump barges on projects involving off-shore disposal

The dredge features state-of-the-art GPS positioning equipment.

### *Specifications - Dredge No. 51*

**Certification**
ABS Ocean Loadline

| | Imperial | Metric |
|---|---|---|
| **Dimensions** | | |
| Hull | 148 x 43 x 8 ft | 45 x 13 x 2.4 m |
| Draft | 6.3 ft | 1.9 m |
| Bucket Size | 7 to 18 yd³ | 5 to 14 m³ |
| **Performance** | | |
| Digging Depth | | |
| On Spuds | 58 ft | 18 m |
| On Anchors | 120 ft | 37 m |
| Linepull | 80,000 lb @ 360 fpm | 356 kN @ 110 mpm |
| Stallpull | 140,000 lb | 623 kN |
| **Power Data** | | |
| Installed Power | 1,890 hp | 1,410 kW |
| Fuel Capacity | 13,500 gal | 51,100 l |

fleet

equipment info from GLD&D 2001/14

# Clamshell (Grab)
## *Dredge No. 54*



Dredge No. 54 *in the Kill Van Kull, New York Harbor*

**The built-in capabilities** and power of this dredge make it one of the largest, most powerful dredges of its kind.

**Applications**
- Harbor deepening work
- Maintenance dredging
- Open channel excavation
- Pier and dock excavation
- Pipeline crossings and tunnel excavations

**Operation**
Dredge No. 54 operates with:
- 30-yd³ (24-m³) bucket for mud excavation
- 21-yd³ (16-m³) bucket for firmer material
- 12-yd³ (9-m³) bucket for sand and hard materials

The dredge works in conjunction with Great Lakes' fleet of 3,000- to 7,200-yd³ dump barges on projects involving off-shore bottom-dump disposal. The company also has specialized hydraulic unloaders that can pump material to upland disposal sites.

The control systems of this dredge feature state-of-the-art GPS positioning and production monitoring equipment.



**Dredge No. 54** *is equipped with a shrouded environmental bucket to minimize release of contaminated sediments during dredging operations.*

**fleet info © Great Lakes Dredge & Dock Company**
Richard Adams, Graphics Engineer • Richard Lowry, Editor
2122 York Road, Oak Brook, Illinois 60523 • 630.574.3000 *fax* 630.574.2909 • www.gldd.com



*Between Jobs: Dredge No. 54 under way to next project.*

## *Specifications - Dredge No. 54*

**Certification**
ABS International Loadline

| | Imperial | Metric |
|---|---|---|
| **Dimensions** | | |
| Hull | 185 x 60 x 11 ft | 56 x 18 x 3.4 m |
| Draft | 6.1 ft | 1.9 m |
| Bucket Size | 12 to 30 yd³ | 9 to 24 m³ |
| **Performance** | | |
| Digging Depth | | |
| On Spuds | 74 ft | 24 m |
| On Anchors | 150 ft | 46 m |
| Linepull | 107,000 lb @ 360 fpm | 476 kN @ 110 mpm |
| Stallpull | 175,000 lb | 780 kN |
| **Power Data** | | |
| Installed Power | 2,340 hp | 1,750 kW |
| Fuel Capacity | 39,400 gal | 149,130 l |