04-007
permits

State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250 (609) 777-1914

Bradley M. Campbell
Commissioner

July 8, 2004

Mr. Dan Morrow
Clean Earth Dredging Technologies, Inc.
334 South Warminster Road
Hatboro, Pa. 19040

RE: Waterfront Development Permit/Water Quality Certificate
Application No(s): 0906-04-0004.1 WFD 040001 18 Upland
Project: Clean Earth Dredging Technologies, Inc.

Dear Mr. Morrow:

Enclosed, please find an approved Waterfront Development Permit/Water Quality Certificate for the above referenced project. Please review this permit and note any conditions which may have been imposed, and promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Suzanne Dietrick

Suzanne Dietrick, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

Enclosures
C: Bureau of Coastal and Land Use Enforcement – Toms River Office
NY District, US Army Corps of Engineers, Regulatory Branch
Robert Byrne, City Clerk, City of Jersey City

**This permit is subject to the following general conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

Pugmill Mixing Operations – This operation utilizes the same type of equipment as the barge mixing operation with the exception of the use of a pugmill feed hopper and radial stacking conveyor in the mixing area. The dewatered dredged material off-loaded using a clamshell crane and placed into a hopper and fed into the pugmill for processing and then loaded onto rail cars/trucks using another radial stacking conveyor. The permittee also proposes to utilize a bulk additive receiving hopper for use when amending dredged material with Propar® and Meadowlife® biosolids or other approved bulk additives.

Stormwater runoff from the active portions of the facility is directed via site gradient to a sedimentation basin located on the southern end of the property. The stormwater basin has been designed to handle a 1 year, 24 hour design storm event. The discharge from the sedimentation basin will be to Claremont Channel.

The project is shown on plans consisting of two sheets entitled "Consolidated Technologies, Inc., Dredged Material Processing Facility, Jersey City, Hudson County, NJ" dated December 1998, last revised March 23, 2004, and prepared by Matthew M. Seng of Earth Res Group, Inc. Sheet 1 of 2 (98-311-001) entitled "Existing Site Plan," and Sheet 2 of 2 (98-311-002A) entitled "Facility Operations-Site Plan."

This permit is authorized under, and in compliance with, the Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing; Navigational Channels (7:7E-3.7), Ports (7:7E-3.11), Dredged Material Disposal on Land (7:7E-7.12), Water Quality (N.J.A.C. 7:7E-8.4), and Stormwater Management (7:7E-8.7).

This permit is approved subject to, and in accordance with, all applicable Tidelands Grants issued to Hugo Neu Schnitzer East, Liber V, Page 219, dated February 19, 1917. Issuance of this permit does not in any way relinquish the State's ownership interest in the property, if any exists.

This permit is issued subject to and provided that the following conditions can be met to the satisfaction of the New Jersey Department of Environmental Protection (NJDEP) Office of Dredging and Sediment Technology. Compliance with Administrative conditions shall be determined once copies of all specified permits, certifications, plans, agreements, etc. have been received, not less than 30 days prior to construction, and approved by the NJDEP Office of Dredging and Sediment Technology. All Physical Conditions are subject to on-site compliance inspection by the NJDEP Bureau of Coastal and Land Use Enforcement. As per N.J.A.C. 7:7-1.4, you must notify the NJDEP Bureau of Coastal and Land Use Enforcement, (1510 Hooper Avenue, Toms River, NJ 08753), in writing at least 3 days prior to commencement of construction or site preparation.

This permit shall be RECORDED in the office of the County Clerk (the REGISTRAR OF DEEDS AND MORTGAGES in the applicable counties) in the county wherein the lands included in the permit are located within ten (10) days after the receipt of the permit by the applicant and verified notice shall be forwarded to the NJDEP Office of Dredging and Sediment Technology immediately thereafter.

This permit is NOT VALID until the permit acceptance form has been signed by the applicant, accepting and agreeing to adhere to all permit conditions, and returned to the NJDEP Office of Dredging and Sediment Technology, 6th floor P.O. Box 028, Trenton, New Jersey 08625.

## ADMINISTRATIVE CONDITIONS

1. The permittee shall allow an authorized representative of the NJDEP the right to inspect construction pursuant to N.J.A.C. 7:7-1.5.

2. The permittee shall obtain all required local, state and federal approvals.

3. Prior to bringing any additives to the site, with the exception of Lime, Lime Kiln Dust, Portland Cement, Slag Cement (GranCem®) Kiln Dust and Meadowlife® biosolids from MCUA, the permittee must receive a Beneficial Use Determination (BUD) from the NJDEP's Division of Solid Waste pursuant to N.J.A.C. 7:26-1.7(g). Should you have any questions regarding this certificate, please contact the Bureau of Resource Recovery and Technical Programs at (609) 984-6984. Further conditions regarding these additives are imposed in the AUD discussed below.

4. The permittee received a NJPDES Discharge to Surface Water (DSW) permit for the discharge of the decant water into the Claremont Channel effective August, 1, 1999 with an expiration date of August 31, 2004. A NJPDES DSW renewal application shall be submitted prior to the expiration date.

5. Prior to bringing Meadowlife® biosolids to the site, the permittee must obtain an instruction manual from MCUA for the use of biosolids in the processing facility. Conditions specified in the instruction manual regarding the handling of this additive on site shall be incorporated into the Environmental Protection Plan/Health and Safety Plan for the facility. Further conditions regarding this additive are imposed in the AUD discussed below.

Physical Conditions

1. All debris sifted from the dredged material shall be disposed of properly.

2. The spill plate between the work barge and the off-loading platform shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

3. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and reintroduced into the product stream.

4. Processed dredged material shall not be stored on site other than in the designated storage area adjacent to the off-loading crane as identified in the referenced Site Plans. Any additional storage areas must first obtain written authorization from this Office prior to processed dredged material storage. Any additional storage areas may also include containment measures.

5. All temporary storage areas shall be maintained in such a manner to prevent air borne release of the material.

6. All rail cars or trucks used to transport the processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

## Acceptable Use Determination Special Conditions

1. All dredged material processed at the CEDTI facility shall have a written Acceptable Use Determination (AUD) from the NJDEP, prior to being accepted at the CEDTI facility for processing.

2. Any dredged material from New Jersey that is processed at the CEDTI facility to be utilized at a location out of state shall receive written authorization from the applicable State agency and/or the receiving facility for transport and use at that out of state location.

3. This AUD authorizes the use of the following admixtures:

   Coal Ash
   Lime
   Lime kiln dust
   Portland cement
   Slag Cement (GranCem®)
   Cement kiln dust
   Alkali activators
   Propat®
   Municipal solid waste incinerator ash (MSH ash)
   Meadowlife® biosolids supplied by Middlesex County Utilities Authority

4. If the CEDTI facility proposes to use a different admixture other those specified above, the permittee shall amend this AUD prior to the use of the new additive. That application for amendment of the AUD must specify the proposed new additive and must include all appropriate chemical testing of that new additive.

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

The following conditions apply to the intended use of the processed dredged material:

**Mine reclamation/remediation**

5. All dredged material to be processed at the CEDTI facility for transport and use at the Bark Camp Mine Reclamation site located in Huston Township, Clearfield County, PA shall be analyzed according to the attached document entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility."

6. In addition to the testing requirements specified in Item 5, all dredged material to be processed at the CEDTI facility for shipment to Pennsylvania shall comply with the sampling plan and analytical testing requirements specified in the Amended Beneficial Use Order No. 40300, dated June 7, 1997, approved by the Pennsylvania Department of Environmental Protection (PADEP).

7. No raw dredged material intended for use in PA mine reclamation shall be transported to the CEDTI facility for processing until the dredging project receives approval from the PADEP for use of the material at the Bark Camp Mine Reclamation site.

8. All processed dredged material transported to the Bark Camp Mine Reclamation site shall comply with all conditions specified in the "Final Operating Plan for Dredge Stabilization Mine Reclamation Project at the Bark Camp Mine Facility, Huston Township, Clearfield County, Pennsylvania" dated May 21, 1998 including any amendments thereto.

- **Landfill cover/cap material**
- **Site remediation material (i.e. capping/grading material)**

9. This AUD only authorizes the use of processed dredged material at a landfill or remediation site that is under NJDEP regulatory oversight.

10. No dredged material may be transported to the CEDTI facility for processing and use at a landfill or remediation site until such time as a NJDEP regulatory oversight document has been issued which specifically authorizes the use of processed dredged material on the site. This regulatory document shall also include the physical and engineering placement criteria, including chemical specifications for placement.

11. All dredged material proposed for use at these locations shall be tested in accordance with the attached protocol entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility." Additional testing of the material may be required to meet other NJDEP regulatory requirements for placement of the material at these use locations.

12. The placement of processed dredged material at the use locations shall comply with the conditions specified in the NJDEP oversight document, as well as all Land Use Regulation Program (LURP) permits/authorizations issued for the use location, if applicable.

- **Structural fill material**
- **Manufactured top soil**

13. All dredged material to be processed at the CEDTI facility shall be analyzed according to the attached protocol for testing of the raw dredged material.

14. Any processed dredged material that is proposed for transport to a use location, other than a landfill/ remediation site or mine reclamation site, to be used as structural fill material or manufactured top soil, shall be stockpiled on the temporary amended dredged material storage area for further analyses after processing of the material.

15. All end product shall be analyzed according to the attached protocol entitled "Testing of the End Product." The results shall be submitted to the NJDEP, Office of Dredging and Sediment Technology for approval, prior to transport from the CEDTI facility to the use location.

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

16. Any end product that is intended to be used as structural fill material that meets the Residential Soil Cleanup Criteria (RSCC) as specified in Appendix A of the NJDEP's dredging technical manual, including any promulgated revisions to those criteria, is considered below regulatory concern. Therefore, the NJDEP will allow unrestricted use of any structural fill end product that meets the RSCC.

17. Any dredged material blended with Meadowlife to produce a manufactured topsoil shall not contain greater than 50% biosolids in the blended material. The manufactured topsoil shall meet RSCC, and shall be placed at the use location according to the conditions specified in the MCUA instruction manual. No manufactured topsoil may be utilized at a use location to bring a site to grade, as material covered by another material, or at depths greater than 2 feet.

18. Any end product that is above the RSCC shall not be removed from the CEDTI facility until such time as a use location that will accept the material has been identified to and approved by the NJDEP by CEDTI. At such time, the NJDEP may require additional testing of the end product to meet other regulatory requirements for placement of the material on the identified use site.

19. No end product may remain at the CEDTI facility for more than 120 calendar days.

**Additional AUD Conditions**

20. Any major accidental release of dredged material, admixture, or end product in non-processing areas (i.e., surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action being taken to mitigate the discharge, and any other information the Department may request at the time of notification.

21. This condition applies only to processed dredged material that is intended for use as structural fill material or as manufactured topsoil. The CEDTI facility shall submit a semiannual report which details the following information for the preceding six months of operation of the facility:

- Source and volume of each dredging project accepted for processing at the CEDTI facility;
- The location (i.e. lot, block and municipality) of the use site of the end product from each dredging project, and the volume of end product transported to each use site(s), and the intended use of the material at that location;
- The admixture type and quantity used in the processing of the dredged material from the specific dredging project;
- The results of the bulk sediment chemistry analyses of the end product associated with the individual dredging project generator as per the attached protocol if required.

22. CEDTI shall also maintain daily records noting the transportation vehicle identification number, material quantity, source, and designation of all dredge material and admixtures entering and leaving the facility. The daily records shall be compiled into standard reports, which shall be maintained at the facility for review at any time..

23. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any persons violation of any related permit and their conditions, and/or modifications of the Department's acceptable use criteria.

7/8/04
DATE

Suzanne U Dietrick, Chief
Office of Dredging and Sediment Technology

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

## ANALYTICAL TESTING REQUIREMENTS FOR DREDGED MATERIAL TO BE PROCESSED AT THE CLEAN EARTH DREDGING TECHNOLOGIES, INC. DREDGED MATERIAL PROCESSING FACILITY

**July 2, 2004**

The specific analytes which must be tested for are listed in the tables in Appendices A and B of the NJDEP's technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested for include semi-volatile organics, PCBs, pesticides, metals, and dioxin/furan congeners. Volatile organics compounds may be required on a case-by-case basis.

Laboratories used must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the NJDEP, Office of Quality Assurance at (609)292-3950.

## PROTOCOL FOR THE TESTING OF DREDGED MATERIAL TO BE PROCESSED AT THE CEDTI FACILITY

Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each composite raw sediment sample. Any water which separates from the dredged material during transport/storage (i.e. porewater) must be remixed with the solid components of the dredged material prior to forming the composite samples; the porewater must not be decanted from the dredged material.

For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of the proposed additive(s) with a preweighted sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive(s) to composite sediment sample, by weight, will be recorded. The dredged material to be tested will be formed using the "recipe" (i.e. proportions of dredged material to additive) which replicates, to the greatest extent possible, the actual processed dredged material product.

The dredged material product samples will be pulverized, and each sample subjected to bulk chemical analysis. In addition, the dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing, as follows:

**Note: MEP testing is not required for material to be transported and used at the Bark Camp Mine Reclamation site. Leachate quality testing of the material will be specified in the sampling plan approved by PADEP.**

Procedure

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

2. Measure an aliquot of 100 grams of each dredged material product sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples
3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.
4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24 hour extraction period. (All pH measurements will be taken on the bottle extraction only).
5. Employ the extraction fluid separation procedure as described in EPA Method 1311 (TCLP).
6. Analyze the extract for the constituents of concern identified in the Department's October 1997 technical manual on dredging. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.
7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.
8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.
9. A final report, including the results of the sediment and dredged material product testing, will be presented to the Department in a series of nine (9) summary data tables:
   - Sediment bulk chemistry
   - Dredged material product bulk chemistry
   - Dredged material product leachate extraction steps.

## TESTING OF THE "END PRODUCT" PRIOR TO TRANSPORT FOR USE AS STRUCTURAL FILL*/MANUFACTURED TOPSOIL

Bulk sediment chemistry for the target analyte list found in Appendices A and B of the NJDEP's dredging technical manual must be conducted on end product prior to transport from the CTI facility to the use location. The protocol for frequency of testing, and sampling procedures of the end product is as follows:

- Collection of all samples of the end product stockpile shall conform to the NJDEP's Field Procedures Manual, May 1992.
- The manufactured topsoil shall be analyzed for goal oriented parameters (e.g. pH, organic content, and texture) as specified in the MCUA instruction manual, in addition to the bulk sediment chemistry testing discussed above.
- The end product that is derived from an individual dredging project generator that is to be utilized as structural fill or manufactured topsoil shall be analyzed every 10,000 cubic yards, and/or once per each use site (end user) if the volume of material from the dredging project generator is less than 10,000 cubic yards.
- Five discrete samples shall be collected at mid-depth of the end product stockpile. The five discrete samples shall be composited into one sample and analyzed for bulk sediment chemistry using the target analyte list.
- The results of analyses shall be submitted on a semi-annual basis as required in Condition 22 of the AUD.

*NOTE: End product testing of the material for use as structural fill is not required when the material is to be utilized on a landfill/remediation site which is currently subject to NJDEP regulatory oversight.

04-007
permits

NOV 19 2004

**Environmental Regulation**
**Division of Air Quality**
**Air Quality Permitting Element**
**P.O. Box 027**
**Trenton, New Jersey 08625-0027**

**Air Pollution Control Preconstruction Permit**
**General Permit**

**Permit Activity ID Number: GEN040001**
**Approval Date: 11/15/2004**

**Facility ID Number: 12115**
**Expiration Date: 11/14/2009**

| Mailing Address | Plant Location |
|---|---|
| DAN MORROW<br>ENVIRONMENTAL MANAGER<br>CLEAN EARTH DREDGING TECHNOLOGIES INC<br>334 S WARMINSTER RD<br>HATBORO, PA 19040 | CEDTI - DREDGED MATERIAL RECYCLING FACILITY<br>1 E LINDEN AVE<br>Jersey City<br>Hudson County, New Jersey |

November 17, 2004

Dear Mr./Ms. DAN MORROW:

The Department of Environmental Protection (Department) has received your registration for the above referenced General Permit (designated (BULK STORAGE SILO).

The ***Effective Date of Registration*** is November 17, 2004. The operational authority under this General Permit will expire five (5) years from the effective date. For those facilities that receive a Title V Operating Permit while a General Permit is effective, the expiration date of the General Permit becomes that of the Operating Permit.

Six (6) months prior to the expiration of the operational authority under this General Permit, a renewal notification and form will be sent from the Department to the Permittee. For the operational authority to remain in effect, the Permittee must complete and return the Registration renewal form, with the appropriate fees, to the Department. For those facilities that receive a Title V Operating Permit, there is no need to renew the General Permit; renewal of the General Permit will occur when the Operating Permit is renewed.

This General Permit is issued under the authority of Chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct and operate the above referenced equipment, or equipment and control devices only in accordance with all provisions of the General Permit.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of Preconstruction Permits

04-007
permits

NOV 19 2004

**Environmental Regulation**
**Division of Air Quality**
**Air Quality Permitting Element**
**P.O. Box 027**
**Trenton, New Jersey 08625-0027**

**Air Pollution Control Preconstruction Permit**
**General Permit**

**Permit Activity ID Number: GEN040002**
**Approval Date: 11/15/2004**

**Facility ID Number: 12115**
**Expiration Date: 11/14/2009**

| Mailing Address | Plant Location |
|---|---|
| DAN MORROW<br>ENVIRONMENTAL MANAGER<br>CLEAN EARTH DREDGING TECHNOLOGIES INC<br>334 S WARMINSTER RD<br>HATBORO, PA 19040 | CEDTI - DREDGED MATERIAL RECYCLING FACILITY<br>1 E LINDEN AVE<br>Jersey City<br>Hudson County, New Jersey |

November 17, 2004

Dear Mr./Ms. DAN MORROW:

The Department of Environmental Protection (Department) has received your registration for the above referenced General Permit (designated (BULK STORAGE SILO- 2).

The ***Effective Date of Registration*** is November 17, 2004. The operational authority under this General Permit will expire five (5) years from the effective date. For those facilities that receive a Title V Operating Permit while a General Permit is effective, the expiration date of the General Permit becomes that of the Operating Permit.

Six (6) months prior to the expiration of the operational authority under this General Permit, a renewal notification and form will be sent from the Department to the Permittee. For the operational authority to remain in effect, the Permittee must complete and return the Registration renewal form, with the appropriate fees, to the Department. For those facilities that receive a Title V Operating Permit, there is no need to renew the General Permit; renewal of the General Permit will occur when the Operating Permit is renewed.

This General Permit is issued under the authority of Chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct and operate the above referenced equipment, or equipment and control devices only in accordance with all provisions of the General Permit.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of Preconstruction Permits

**TESTING OF THE "END PRODUCT" PRIOR TO TRANSPORT FOR USE AS STRUCTURAL FILL*/MANUFACTURED TOPSOIL**

Bulk sediment chemistry for the target analyte list found in Appendices A and B of the NJDEP's dredging technical manual must be conducted on end product prior to transport from the CTI facility to the use location. The protocol for frequency of testing, and sampling procedures of the end product is as follows:

- Collection of all samples of the end product stockpile shall conform to the NJDEP's Field Procedures Manual, May 1992.
- The manufactured topsoil shall be analyzed for goal oriented parameters (e.g. pH, organic content, and texture) as specified in the MCUA instruction manual, in addition to the bulk sediment chemistry testing discussed above.
- The end product that is derived from an individual dredging project generator that is to be utilized as structural fill or manufactured topsoil shall be analyzed every 10,000 cubic yards, and/or once per each use site (end user) if the volume of material from the dredging project generator is less than 10,000 cubic yards.
- Five discrete samples shall be collected at mid-depth of the end product stockpile. The five discrete samples shall be composited into one sample and analyzed for bulk sediment chemistry using the target analyte list.
- The results of analyses shall be submitted on a semi-annual basis as required in Condition 22 of the AUD.

*NOTE: End product testing of the material for use as structural fill is not required when the material is to be utilized on a landfill/remediation site which is currently subject to NJDEP regulatory oversight.

2. Measure an aliquot of 100 grams of each dredged material product sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples
3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.
4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24 hour extraction period. (All pH measurements will be taken on the bottle extraction only).
5. Employ the extraction fluid separation procedure as described in EPA Method 1311 (TCLP).
6. Analyze the extract for the constituents of concern identified in the Department's October 1997 technical manual on dredging. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.
7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.
8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.
9. A final report, including the results of the sediment and dredged material product testing, will be presented to the Department in a series of nine (9) summary data tables:
   - Sediment bulk chemistry
   - Dredged material product bulk chemistry
   - Dredged material product leachate extraction steps.

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

**ANALYTICAL TESTING REQUIREMENTS FOR DREDGED MATERIAL TO BE PROCESSED AT THE CLEAN EARTH DREDGING TECHNOLOGIES, INC. DREDGED MATERIAL PROCESSING FACILITY**

**July 2, 2004**

The specific analytes which must be tested for are listed in the tables in Appendices A and B of the NJDEP's technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested for include semi-volatile organics, PCBs, pesticides, metals, and dioxin/furan congeners. Volatile organics compounds may be required on a case-by-case basis.

Laboratories used must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the NJDEP, Office of Quality Assurance at (609)292-3950.

**PROTOCOL FOR THE TESTING OF DREDGED MATERIAL TO BE PROCESSED AT THE CEDTI FACILITY**

Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each composite raw sediment sample. Any water which separates from the dredged material during transport/storage (i.e. porewater) must be remixed with the solid components of the dredged material prior to forming the composite samples; the porewater must not be decanted from the dredged material.

For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of the proposed additive(s) with a preweighted sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive(s) to composite sediment sample, by weight, will be recorded. The dredged material to be tested will be formed using the "recipe" (i.e. proportions of dredged material to additive) which replicates, to the greatest extent possible, the actual processed dredged material product.

The dredged material product samples will be pulverized, and each sample subjected to bulk chemical analysis. In addition, the dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing, as follows:

**Note: MEP testing is not required for material to be transported and used at the Bark Camp Mine Reclamation site. Leachate quality testing of the material will be specified in the sampling plan approved by PADEP.**

Procedure

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

16. Any end product that is intended to be used as structural fill material that meets the Residential Soil Cleanup Criteria (RSCC) as specified in Appendix A of the NJDEP's dredging technical manual, including any promulgated revisions to those criteria, is considered below regulatory concern. Therefore, the NJDEP will allow unrestricted use of any structural fill end product that meets the RSCC.

17. Any dredged material blended with Meadowlife to produce a manufactured topsoil shall not contain greater than 50% biosolids in the blended material. The manufactured topsoil shall meet RSCC, and shall be placed at the use location according to the conditions specified in the MCUA instruction manual. No manufactured topsoil may be utilized at a use location to bring a site to grade, as material covered by another material, or at depths greater than 2 feet.

18. Any end product that is above the RSCC shall not be removed from the CEDTI facility until such time as a use location that will accept the material has been identified to and approved by the NJDEP by CEDTI. At such time, the NJDEP may require additional testing of the end product to meet other regulatory requirements for placement of the material on the identified use site.

19. No end product may remain at the CEDTI facility for more than 120 calendar days.

**Additional AUD Conditions**

20. Any major accidental release of dredged material, admixture, or end product in non-processing areas (i.e., surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action being taken to mitigate the discharge, and any other information the Department may request at the time of notification.

21. This condition applies only to processed dredged material that is intended for use as structural fill material or as manufactured topsoil. The CEDTI facility shall submit a semiannual report which details the following information for the preceding six months of operation of the facility:

- Source and volume of each dredging project accepted for processing at the CEDTI facility;
- The location (i.e. lot, block and municipality) of the use site of the end product from each dredging project, and the volume of end product transported to each use site(s), and the intended use of the material at that location;
- The admixture type and quantity used in the processing of the dredged material from the specific dredging project;
- The results of the bulk sediment chemistry analyses of the end product associated with the individual dredging project generator as per the attached protocol if required.

22. CEDTI shall also maintain daily records noting the transportation vehicle identification number, material quantity, source, and designation of all dredge material and admixtures entering and leaving the facility. The daily records shall be compiled into standard reports, which shall be maintained at the facility for review at any time..

23. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any persons violation of any related permit and their conditions, and/or modifications of the Department's acceptable use criteria.

7/8/04
DATE

Suzanne U Dietrick, Chief
Office of Dredging and Sediment Technology

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

The following conditions apply to the intended use of the processed dredged material:

**Mine reclamation/remediation**

5. All dredged material to be processed at the CEDTI facility for transport and use at the Bark Camp Mine Reclamation site located in Huston Township, Clearfield County, PA shall be analyzed according to the attached document entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility."

6. In addition to the testing requirements specified in Item 5, all dredged material to be processed at the CEDTI facility for shipment to Pennsylvania shall comply with the sampling plan and analytical testing requirements specified in the Amended Beneficial Use Order No. 40300, dated June 7, 1997, approved by the Pennsylvania Department of Environmental Protection (PADEP).

7. No raw dredged material intended for use in PA mine reclamation shall be transported to the CEDTI facility for processing until the dredging project receives approval from the PADEP for use of the material at the Bark Camp Mine Reclamation site.

8. All processed dredged material transported to the Bark Camp Mine Reclamation site shall comply with all conditions specified in the "Final Operating Plan for Dredge Stabilization Mine Reclamation Project at the Bark Camp Mine Facility, Huston Township, Clearfield County, Pennsylvania" dated May 21, 1998 including any amendments thereto.

- **Landfill cover/cap material**
- **Site remediation material (i.e. capping/grading material)**

9. This AUD only authorizes the use of processed dredged material at a landfill or remediation site that is under NJDEP regulatory oversight.

10. No dredged material may be transported to the CEDTI facility for processing and use at a landfill or remediation site until such time as a NJDEP regulatory oversight document has been issued which specifically authorizes the use of processed dredged material on the site. This regulatory document shall also include the physical and engineering placement criteria, including chemical specifications for placement.

11. All dredged material proposed for use at these locations shall be tested in accordance with the attached protocol entitled "Analytical Testing Requirements for Dredged Material to be Processed at the Consolidated Technologies, Inc. Dredged Material Processing Facility." Additional testing of the material may be required to meet other NJDEP regulatory requirements for placement of the material at these use locations.

12. The placement of processed dredged material at the use locations shall comply with the conditions specified in the NJDEP oversight document, as well as all Land Use Regulation Program (LURP) permits/authorizations issued for the use location, if applicable.

- **Structural fill material**
- **Manufactured top soil**

13. All dredged material to be processed at the CEDTI facility shall be analyzed according to the attached protocol for testing of the raw dredged material.

14. Any processed dredged material that is proposed for transport to a use location, other than a landfill/ remediation site or mine reclamation site, to be used as structural fill material or manufactured top soil, shall be stockpiled on the temporary amended dredged material storage area for further analyses after processing of the material.

15. All end product shall be analyzed according to the attached protocol entitled "Testing of the End Product." The results shall be submitted to the NJDEP, Office of Dredging and Sediment Technology for approval, prior to transport from the CEDTI facility to the use location.

4. The permittee received a NJPDES Discharge to Surface Water (DSW) permit for the discharge of the decant water into the Claremont Channel effective August, 1, 1999 with an expiration date of August 31, 2004. A NJPDES DSW renewal application shall be submitted prior to the expiration date.

5. Prior to bringing Meadowlife® biosolids to the site, the permittee must obtain an instruction manual from MCUA for the use of biosolids in the processing facility. Conditions specified in the instruction manual regarding the handling of this additive on site shall be incorporated into the Environmental Protection Plan/Health and Safety Plan for the facility. Further conditions regarding this additive are imposed in the AUD discussed below.

Physical Conditions

1. All debris sifted from the dredged material shall be disposed of properly.

2. The spill plate between the work barge and the off-loading platform shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

3. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and reintroduced into the product stream.

4. Processed dredged material shall not be stored on site other than in the designated storage area adjacent to the off-loading crane as identified in the referenced Site Plans. Any additional storage areas must first obtain written authorization from this Office prior to processed dredged material storage. Any additional storage areas may also include containment measures.

5. All temporary storage areas shall be maintained in such a manner to prevent air borne release of the material.

6. All rail cars or trucks used to transport the processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

**Acceptable Use Determination Special Conditions**

1. All dredged material processed at the CEDTI facility shall have a written Acceptable Use Determination (AUD) from the NJDEP, prior to being accepted at the CEDTI facility for processing.

2. Any dredged material from New Jersey that is processed at the CEDTI facility to be utilized at a location out of state shall receive written authorization from the applicable State agency and/or the receiving facility for transport and use at that out of state location.

3. This AUD authorizes the use of the following admixtures:

   Coal Ash
   Lime
   Lime kiln dust
   Portland cement
   Slag Cement (GranCem®)
   Cement kiln dust
   Alkali activators
   Propat®
   Municipal solid waste incinerator ash (MSH ash)
   Meadowlife® biosolids supplied by Middlesex County Utilities Authority

4. If the CEDTI facility proposes to use a different admixture other those specified above, the permittee shall amend this AUD prior to the use of the new additive. That application for amendment of the AUD must specify the proposed new additive and must include all appropriate chemical testing of that new additive.

Consolidated Technologies, Inc.
File No.: 0906-04-0004.1

Pugmill Mixing Operations – This operation utilizes the same type of equipment as the barge mixing operation with the exception of the use of a pugmill feed hopper and radial stacking conveyor in the mixing area. The dewatered dredged material off-loaded using a clamshell crane and placed into a hopper and fed into the pugmill for processing and then loaded onto rail cars/trucks using another radial stacking conveyor. The permittee also proposes to utilize a bulk additive receiving hopper for use when amending dredged material with Propat® and Meadowlife® biosolids or other approved bulk additives.

Stormwater runoff from the active portions of the facility is directed via site gradient to a sedimentation basin located on the southern end of the property. The stormwater basin has been designed to handle a 1 year, 24 hour design storm event. The discharge from the sedimentation basin will be to Claremont Channel.

The project is shown on plans consisting of two sheets entitled "Consolidated Technologies, Inc., Dredged Material Processing Facility, Jersey City, Hudson County, NJ" dated December 1998, last revised March 23, 2004, and prepared by Matthew M. Seng of Earth Res Group, Inc. Sheet 1 of 2 (98-311-001) entitled "Existing Site Plan," and Sheet 2 of 2 (98-311-002A) entitled "Facility Operations-Site Plan."

This permit is authorized under, and in compliance with, the Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing: Navigational Channels (7:7E-3.7), Ports (7:7E-3.11), Dredged Material Disposal on Land (7:7E-7.12), Water Quality (N.J.A.C. 7:7E-8.4), and Stormwater Management (7:7E-8.7).

This permit is approved subject to, and in accordance with, all applicable Tidelands Grants issued to Hugo Neu Schnitzer East, Liber V, Page 219, dated February 19, 1917. Issuance of this permit does not in any way relinquish the State's ownership interest in the property, if any exists.

This permit is issued subject to and provided that the following conditions can be met to the satisfaction of the New Jersey Department of Environmental Protection (NJDEP) Office of Dredging and Sediment Technology. Compliance with Administrative conditions shall be determined once copies of all specified permits, certifications, plans, agreements, etc. have been received, not less than 30 days prior to construction, and approved by the NJDEP Office of Dredging and Sediment Technology. All Physical Conditions are subject to on-site compliance inspection by the NJDEP Bureau of Coastal and Land Use Enforcement. As per N.J.A.C. 7:7-1.4, you must notify the NJDEP Bureau of Coastal and Land Use Enforcement, (1510 Hooper Avenue, Toms River, NJ 08753), in writing at least 3 days prior to commencement of construction or site preparation.

This permit shall be RECORDED in the office of the County Clerk (the REGISTRAR OF DEEDS AND MORTGAGES in the applicable counties) in the county wherein the lands included in the permit are located within ten (10) days after the receipt of the permit by the applicant and verified notice shall be forwarded to the NJDEP Office of Dredging and Sediment Technology immediately thereafter.

This permit is NOT VALID until the permit acceptance form has been signed by the applicant, accepting and agreeing to adhere to all permit conditions, and returned to the NJDEP Office of Dredging and Sediment Technology, 6th floor P.O. Box 028, Trenton, New Jersey 08625.

## ADMINISTRATIVE CONDITIONS

1. The permittee shall allow an authorized representative of the NJDEP the right to inspect construction pursuant to N.J.A.C. 7:7-1.5.

2. The permittee shall obtain all required local, state and federal approvals.

3. Prior to bringing any additives to the site, with the exception of Lime, Lime Kiln Dust, Portland Cement, Slag Cement (GranCem®) Kiln Dust and Meadowlife® biosolids from MCUA, the permittee must receive a Beneficial Use Determination (BUD) from the NJDEP's Division of Solid Waste pursuant to N.J.A.C. 7:26-1.7(g). Should you have any questions regarding this certificate, please contact the Bureau of Resource Recovery and Technical Programs at (609) 984-6984. Further conditions regarding these additives are imposed in the AUD discussed below.

**This permit is subject to the following <u>general conditions:</u>**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

98-311-19
Permits

# AUTHORIZATION TO DISCHARGE STORMWATER

New Jersey Natural Resources Conservation Program

N.J. Department of Environmental Protection
Bureau of Nonpoint Pollution Control
*in cooperation with the*
N.J. Department of Agriculture
State Soil Conservation Committee
and Soil Conservation Districts

NJPDES General Permit No. NJ0088323 (N.J.A.C. 7:14A-11 Appendix B)
Stormwater Discharge Associated with Construction Activity

Ch. 251 App. No. 99-H-1386 SCD RFA # 09-06-20-01 Effective Date 8/5/99

1. Project or Facility Name and Address:
Consolidated Technologies Inc. Dredge Material. Processing Facility
Linden Avenue, East, Jersey City, NJ

2. Permittee Name and Address:
Consolidated Technologies, Inc.
1717 Swede Road Suite 109
Blue Bell, PA 19422
Craig Schantz

3. Owner Name and Address:
Same as Permittee

4. Proposed Land Use (check the appropriate category(ies)):
(1) Residential Dwelling - ___ Single Family ___ Multi-Family ___ (2) Commercial Facility ___ (3) Industrial Facility X (4) Mining or Quarry ___ (5) Public School, Religious or Charitable Institution ___ (6) Other (Specify) ___

Your Request for Authorization under NJPDES General Permit No. NJ0088323 has been certified in accordance with the provisions of N.J.A.C. 7:14A and the New Jersey Stormwater Permitting Program in coordination with the New Jersey Department of Agriculture, the State Soil Conservation Committee and the Soil Conservation District.

Barry Chalofsky, P.P., Chief
Bureau of Nonpoint Pollution Control
New Jersey Department of Environmental Protection

CERTIFIED BY:

Signature ___ Date 8/5/99

Chairman
Title

Soil Conservation District
Hudson-Essex-Passaic SCD

**FOR DISTRICT USE ONLY**

**NJ Natural Resources Conservation Program**
**Expiration of Authorization to Discharge Stormwater**

Reason for Expiration:

- ☐ Project Completed (Final Report of Compliance Issued)
- ☐ Application Withdrawn by Applicant
- ☐ Application Denied by District or SSCC
- ☐ Project SESC Plan Certification Expired

Date of Expiration ___

Authorized by ___
District Official

G0100300537

NJDEP TWA

RECEIVED MAR 03 2000

Permitting Treatment Works Approval

State of New Jersey

Department of Environmental Protection

[Chris]tine Todd Whitman
[Gov]ernor

Robert C. Shinn, Jr.
Commissioner

February 28, 2000

CONSOLIDATED TECH.
1717 SWEDE ROAD, SUITE109
BLUE BELL, PA 19422

RE: TREATMENT WORKS APPROVAL NO. 99-3155-4G
DREDGE PROCESSING, 1 LINDEN AVENUE
JERSEY CITY, NEW JERSEY

Gentlemen:

There is enclosed a permit issued to you pursuant to Title 58 of the Revised Statutes of New Jersey and in consideration of your application received on September 16, 1999. The approval of the treatment works referenced above is subject to the conditions as noted on the permit.

Within thirty (30) days after completion of the project, two (2) executed copies of the WQM005 Certification of Approval Form, enclosed shall be submitted to the sewage treatment agency for their approval prior to operation. Please note that for direct dischargers to surface and/or ground water, submission to the sewage treatment agency is not required. One executed copy shall be forwarded to:

Bureau of Administration and Management
Division of Water Quality, PO Box 425
Trenton, New Jersey 08625-0425

Failure to submit the certification within thirty (30) days after completion of the project may be grounds for revocation of the permit. Should partial operation be required prior to completion of the entire project, approval will be under the jurisdiction of the local Authority/Municipality. If you have any questions pertaining to this approval, please contact me at (609) 633-1208.

Sincerely,

Nick Horiates

Nick Horiates, Supervising Environmental Specialist
Bureau of Administration and Management
Municipal Finance and Construction Element

WFM317
99-3155-4G
Enclosure
c: Earth Res Group, Inc
Municipal Engineer - JERSEY CITY

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

e New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, ...cable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are ...by the permittee upon acceptance of the permit.

| R... NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ...ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

...is permit grants permission to:

Construct & operate 5-21,000 gallon capacity settling tanks a sediment filter and 5-21,000 gallon capacity holding tanks for treatment of standing water from dredge barges scows at the Consolidated Tech. Dredge Material Processing facility.

According to plans identified as:
"Dredge Material Processing Facility, Jersey City, Hudson County, New Jersey", prepared by Earth Res Group, Inc., dated 01/11/98, unrevised, drawing no. 98-311-004.

and according to specifications entitled:
"Barge Dewatering Treatment System", signed and sealed by Matthew M. Seng, P.E., dated 01/19/00.

SPECIAL PROVISOS:

1. That the permittee shall conform to all effluent and monitoring requirements stipulated in the NJPDES Permit for this facility or any modification thereof, unless otherwise permitted by the Department.

2. That the operation of the works shall be under the supervision of a licensed operator on the first day of operation of the works and continually thereafter in accordance with N.J.S.A. 58:11-64 and amendments thereto. The operator shall meet the requirement for N-2 classification or equivalent, pursuant to the provisions of N.J.A.C. 7:10A-1.14.

Page # 1 -- permit is continued on next page

*Local Agency approval required prior to operation

...XPIRATION DATE: This permit shall expire if construction is not initiated by

...pproved by the Department of Environmental Protection

Date



(General Conditions are on Reverse Side

PO BOX 425
Trenton, New Jersey 08625-0425

# PERMIT TO CONSTRUCT AND OPERATE* TREATMENT WORKS

: New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same applica- ...ble laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which ... by the permittee upon acceptance of the permit.

| RMIT NO. | ISSUANCE DATE | DESIGN FLOW |
|---|---|---|
| 99-3155-4G | 02/28/00 | 0.1200 M.G.D. |

| ME & ADDRESS OF APPLICANT | LOCATION OF ACTIVITY/FACILITY | NAME & ADDRESS OF OWNER |
|---|---|---|
| CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE109<br>BLUE BELL<br>PA 19422 | JERSEY CITY<br>HUDSON COUNTY | CONSOLIDATED TECH.<br>1717 SWEDE ROAD, SUITE1<br>BLUE BELL<br>PA 19422 |

is permit grants permission to:

3. That this permit is subject to the additional general conditions specified on Attachment A (Form WFR-004A), which is incorporated herein by reference, as part of this approval.

4. That the Department's review of this industrial treatment works has been limited to the administrative aspects of the application. For the technical aspects of the project, the Department has relied upon the certification by the N.J. Licensed Professional Engineer (named below) responsible for the design of the treatment works, stating:

   a. The proposed treatment works, as designed, will enable the facility to meet all applicable Federal, State and local effluent limitations, conditions and/or requirements;

   b. The proposed treatment works or contributing facility will not dilute any portion of its waste stream for the purpose of meeting any applicable NJPDES effluent limitation or condition;

   c. The permittee currently holds a valid final NJPDES permit, General permit authorization, or for indirect dischargers, the applicant is specifically exempted by the Department.

Name of Certifying P.E. - Matthew M. Seng, P.E.
Date of Certification - 08/20/1999 ********** License No. - 38697

Disposal of treated effluent into the Claremont Channel-Upper New York Bay, in accordance with NJPDES Permit No. NJ0134015 for this facility.

Page # 2 -- this is the final page

*Local Agency approval required prior to operation*

EXPIRATION DATE: This permit shall expire if construction is not initiated by 02/28/02

Approved by the Department of Environmental Protection

[signature]

Eugene J. Chebra, P.E., Bureau Chief, BATM, MWA

02/28/00
Date

FR-004
98

*(General Conditions are on Reverse Sid.*

G0100300541

ATTACHMENT A

ADDITIONAL CONDITIONS FOR
GENERAL INDUSTRIAL TWAs

1. That the storage and/or disposal of any sludge or residue resulting from the operation of the treatment facility approved herein shall be in conformance with the applicable requirements and provisions of N.J.A.C. 7:14A-20 et seq. and/or N.J.A.C. 7:26:1-1 et seq.

2. That no sewage or industrial wastes shall bypass treatment except in conformance with the applicable NJPDES Permit and/or N.J.A.C. 7:14A-2.5, or other applicable regulatory requirement, and that all sewage or industrial wastes arriving at the treatment works to which the approval relates shall be treated by each and every process comprising said treatment works.

3. That no wastewater shall be treated by said works or portion thereof until a professional engineer licensed to practice in this State has certified that the project has been inspected under his/her supervision and constructed according to approved plans and specifications and that the works are adequate to meet all applicable Federal, Interstate and State effluent limitations. If any changes are made, "as-built" plans and specifications shall be submitted and certified by the professional engineer responsible.

4. That any change in discharge amount, characteristics or treatment which will result in the facility to become regulated pursuant to the criteria specified in N.J.A.C. 7:14A-21.8 shall not be initiated prior to the effective date of a NJPDES/SIU permit issued by the Department.

5. That for facilities which discharge directly into surface waters and/or ground waters of the State, the permittee shall conform to all effluent and monitoring requirement stipulated in the NJPDES Permit for this facility, or any modification thereof, unless otherwise permitted by the Department.

# CERTIFICATE OF OCCUPANCY

30 MONTGO[illegible]Y STREET-SUITE 411
JERSEY CIT[illegible] 07302
201-547-5055

# CERTIF[illegible]ATE
## IDENTIFI[illegible]ION

Control #: 6490
Permit #: 20000077

[illegible]

Block: 1507 Lot: 10.C

Work Site Location: FOOT OF LINDEN AVENU

Owner in Fee: Consolidated Technologies
Address: 1717, Swede Road
Blue Bell, PA 19422
Telephone: 610

Contractor: Consolidated Technologies
Address: 1717 Swede Road
Telephone: Blue Bell, PA 19422
610

Lic. No./ Bldrs. Reg.No.:
Social Security No.: Federal Emp. No.: 23-2897350

Home Warranty No:
Type of Warranty Plan: [ ] State [ ] Private:
Use Group: F-1
Maximum Live Load: 0
Construction Classification:
Maximum Occupancy Load:
Certificate Exp Date:
Description of Work/Use: Construct A Dredge Materials Processing Facility.
Construction Cost: $350,000.00

| | | | |
|---|---|---|---|
| Tax Collector Approval | | Date | |
| Water & Sewer Approval | | Date | |

[ X ] CERTIFICATE OF OCCUPANCY

This serves notice that said building or structure has been constructed in accordance with the New Jersey Uniform Construction Code and is approved for occupancy.

[ ] CERTIFICATE OF APPROVAL

This serves notice that the work completed has been constructed or installed in accordance with the New Jersey Uniform Construction Code and is approved. If the permit was issued for minor work, this certificate was based upon what was visible at the time of inspection.

[ ] TEMPORARY CERTIFICATE OF OCCUPANCY/COMPLIANCE

If this is a temporary Certificate of Occupancy or Compliance the following conditions must be met no later than or the owner will be subject to fine or order to vacate.

[ ] CERTIFICATE OF CLEARANCE-LEAD ABATEMENT 5:17

This serves notice that based on written certification, lead abatement was performed as per NJAC 5:17 to the following extent:

[ ] Total removal of lead-based paint hazards in scope of work

[ ] Partial or limited time period(_____ years); see file

[ ] CERTIFICATE OF CONTINUED OCCUPANCY

This serves notice that based on a general inspection of the visible parts of the building there are no imminent hazards and the building is approved for continued occupancy.

[ ] CERTIFICATE OF COMPLIANCE

This serves notice that said potentially hazardous equipment has been installed and/or maintained in accordance with the New Jersey Uniform Construction Code and is approved for use until ______

Michael Regan · 4-17-08

MICHAEL J. REGAN
Construction Official

U.C.C 360 (rev. 3/96)

Fee ~~XXXX~~ 150.00
Paid [X] Check No ~~XXXX~~ 01469
Collected By [illegible]

1 - APPLICANT 2 - OFFICE 3 - TAX ASSESSOR 4 - RECYCLING

G0100300544

APPENDIX 3

# APPENDIX 3

## PERMITS FOR KOPPER SEABOARD PROCESSING FACILITY

# STATE OF NEW JERSEY
# DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0907-02-0003.3 FHA040001 | Application No. | |
| Issuance Date JUL 0 8 2004 | Effective Date JUL 0 8 2004 | Expiration Date JUL 0 8 2009 |
| Name and Address of Applicant<br>Great Lakes Dredge & Dock Co.<br>2122 York Road<br>Oak Brook, IL 60523 | Name and Address of Owner | Name and Address of Operator |
| Location of Activity/Facility *(Street Address)*<br>Lot: 70 (part)<br>Block: 287<br>Town of Kearny, Hudson County | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50, et. seq. |
| Type of Permit Stream Encroachment | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

Place a Pug Mill and associated conveyors on an existing concrete pad in connection with dredge materials processing facility, located 200 feet northerly of Conrail crossing Hackensack River, within Lot No. 70 (part) of Block No. 287, in the Town of Kearny, Hudson County, New Jersey.

Prepared By: Nabil Andrews
Nabil Andrews

(See page 4 for Bureau Manager's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ______________ Title ______________ |
| | Signature ______________ Title ______________ |

**Stream Encroachment Permit No. 0907-02-0003.3 FHA040001** **Page 2 of 4**

**Terms And Conditions**

**This permit is subject to the following terms and conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way any action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

9. Limit and Extent of Approval

   a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

   b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with the *Standards for Soil Erosion and Sediment Control in New Jersey* (obtainable from local Soil Conservation District offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed **permit acceptance form** has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed **construction notice** shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed **completion report** shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

**Terms And Conditions**

days after completion of the herein approved activities.

12. All excavated material and dredged spoils must be disposed of in a lawful manner outside of any regulated flood plain, open water, freshwater wetlands or adjacent transition areas, and in such a way as to not interfere with the positive drainage of the receiving area.

13. Any future development of this site will require a new Stream Encroachment Permit.

14. Prior to operation of the facility, the permittee shall receive approval of an Acceptable Use Determination submitted to the Site Remediation Program, Office of Dredging and Sediment Technology. Please Cotact Ms. Suzanne Dietrick Site Remediation Program P.O. Box 028 Trenton, NJ 08625.

15. Prior to any land disturbance on the site, the permittee shall submit a plan and receive approval of the same from Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Please contact Mr. George Nicholas Site Remediation Program P.O. Box 413 Trenton, NJ 08625.

16. Care shall be taken by the permittee during construction and operation that no herein permitted activity shall adversely affect existing remedial components, especially the slurry and sheet pile wall in the eastern area of the site.

17. Issuance of this permit is in no way construed as a relinquishment by the State of New Jersey of any tidelands right, title or interest in the subject property or in any land surrounding same.

18. The drawings hereby approved are three (3) sheets prepared by George D. Cascino P.E.-P.P., dated June 2, 2004, last revised July 7, 2004, unless otherwise noted, entitled:

"PROPOSED PUG MILL FACILITY BLOCK 287, LOT 70 (PART) KEARNY, HUDSON COUNTY, NJ."

"SITE PLAN", sheet no. 2 of 4,

"GRADING AND DRAINAGE PLAN", sheet no. 3 of 4, dated May 27, 2004,

"DETAIL PLAN", sheet no. 4 of 4, dated May 27, 2004.

Richard C. Reilly (signature)
for Robert B. Piel, Jr., Manager
Bureau of Inland Regulation

7/8/2004
Date

** TOTAL PAGE.05 **

# State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection

Bradley M. Campbell
*Commissioner*

**Environmental Regulation**
**Division of Air Quality**
**Air Quality Permitting Element**
**P.O.Box 027**
**Trenton, New Jersey 08625-0027**

## Air Pollution Control Pre-Construction Permit

**Permit Activity ID Number:** PCP040001 **Facility ID Number:** 12539
**Approval Date:** July 8th, 2004 **Expiration Date:** July 7th, 2009

| Mailing Address | Plant Location |
|---|---|
| Attention: Mr. Steven O'Hara<br>Great Lakes Dredge & Dock Co<br>2122 York Rd<br>Oak Brook, IL 60523 | GREAT LAKES DREDGE & DOCK CO<br>NEAR FISH HOUSE RD<br>Kearny Town<br>Hudson County, New Jersey |

Dear Mr.. O'Hara:

The New Jersey Department of Environmental Protection (Department) has reviewed the referenced air pollution control permit application. On the basis of the information provided, the Department concludes that the application satisfies all applicable requirements of the New Jersey Air Pollution Control regulations codified at N.J.A.C. 7:27 et seq.. This Air Pollution Control Permit shall supersede any existing Air Pollution Control Permits issued for the specified source. This permit allows for inspection and evaluation of the equipment by the Department to assure conformance with all provisions of N.J.A.C. 7:27 et seq. and any other applicable federal requirements codified at 40 CFR 52, 60, 61 and 63.

The equipment that is authorized to be installed and operated under this approval is described in Section A, Source Operations. Equipment at the facility referenced by this Permit shall be operated in accordance with the Conditions of Approval set forth in the attached document titled "Facility Specific Requirements" in Section D. *The permittee may be required to seek additional approvals from the Department, and perform further tests and/or air modeling, to confirm that there is no release of mercury, PCBs and/or any other air contaminants to the ambient air, that would result from the application of the stabilized dredge sediment, at its site of use.*

The Department hereby issues this permit and certificate under the authority of chapter 106, P.L. 1967(N.J.S.A 26:2C-9.2). You may construct, reconstruct, install, or modify the above referenced equipment and/or control apparatus consistent with the approval.

In addition to the facility specific requirements listed in this permit, the facility must comply with all applicable rules and requirements as well as the information contained in the approved application. The facility must also comply with any applicable requirements of the NJAC 7:27-8.1 et.seq. and other state rules summarized in the General Provisions for Pre-Construction Permits. The general provisions for pre-construction permits can be found at www.state.nj.us/dep/aqpp/applying.html. The facility should take note, however, that this website may not always contain the most up-to-date version of these provisions. It remains the facility's responsibility to keep apprised of and comply with all applicable regulations and changes thereto. A copy of current regulations can be obtained from the Department's Website at www.state.nj.us/dep/aqm/, BNA Library, or by calling or writing to your Regional Enforcement Office.

This Air Pollution Control Pre-Construction Permit and Certificate to Operate is being issued as a 5-year operating certificate.

There are a total of 96 pages in this permit including this cover page.

We are also including diskette with an electronic file. This diskette includes the inventories and permit requirements listed in the enclosed hard copy of the Air Pollution Control Permit. Upon importing this information into your Personal Computer with RADIUS software, you will have up to date information in the RADIUS format. This electronic file should not be used to prepare a permit modification application if and when you would need to submit one to the Department. A permit modification application should always be prepared using a new and blank RADIUS file. We encourage you to use the most recent RADIUS version. The RADIUS software, instruction, and help are available at the Department's website at www.state.nj.us/dep/aqpp .

If, in your judgement as an applicant for an air pollution control permit, the Department is imposing any unreasonable Condition of Approval, you may contest the Department's decision and request a contested case hearing pursuant to the Administrative Code at N.J.A.C. 1:1. All requests for contested case hearings must be received in writing by the Department within twenty (20) calendar days of the date you receive this permit approval and must contain the information specified in Section F (Permit Action Appeal Form).

If you have any questions on this matter, please call Dr. Negib Harfouche of the Bureau of Preconstruction Permits at (609) 292-2137.

Approved by:

Joel Leon for

Lou Mikolajczyk, Chief
Bureau of Preconstruction Permits

C: file

James E. McGreevey
*Governor*

State of New Jersey
Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

July 7, 2004

Mr. Steven F. O'Hara
Vice President
Great Lakes Dredge and Dock Company
2122 York Road
Oak Brook, Illinois 60523

RE: Acceptable Use Determination for Dredged Material Processing Facility
Koppers Seaboard Site
City of Kearny, Hudson County

Dear Mr. O'Hara:

The NJDEP, Office of Dredging and Sediment Technology (Office) is in receipt of your letter, dated June 11, 2004, June 29, 2004 and July 6, 2004, in which an Acceptable Use Determination (AUD) application was submitted by Great Lakes Dredge and Dock Company for the operation of a dredged material off-loading and processing facility on the pier area at the Koppers Seaboard site.

The Department hereby issues an Acceptable Use Determination approval for the Koppers Seaboard Processing Facility provided the following conditions are met:

**ACCEPTABLE USE DETERMINATION**

1. This AUD authorizes the processing and off-loading of dredged material at the subject facility provided all conditions included herein are met. No dredged material may be processed at this site unless that dredged material has received a Waterfront Development Permit and/or an Acceptable Use Determination, or a written waiver from these requirements.

2. No dredged material shall be processed at this facility unless an all required permits and approvals have been issued for the placement site if it located in the State of New Jersey.

3. Any dredged material from New Jersey that is processed at the Koppers Seaboard facility that is the placed at a location out of state shall receive written authorization from the applicable state agency for transport and use at that out of state location.

4. All dredged material processed at the Koppers Seaboard facility shall be tested in accordance with the attached protocol entitled "Protocol for the Testing of Processed Dredged Material for Use as Structural Fill". Additional testing may be required to meet other NJDEP regulatory requirements for placement of the material at a specific location.

5. This AUD only authorizes 6-12% Portland Cement as the additive used in the processing of dredged material at the facility. If another additive is to be used at the facility, Great Lakes shall submit a request to amend this AUD and receive written approval from the Department prior to



*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

its use at the facility. That application must include all relevant information found in the Department's dredging technical manual, and any subsequent amendments thereto including but not limited to: the source of additives, Material Data Safety Sheets, etc.

6. Any dredged processed at this facility shall be blended with the approved additive at the ratio used during the analytical testing of dredged material for a specific project.

Operating Conditions

7. Great Lakes shall comply with all conditions specified in the Air Pollution Control Pre-Construction Permit and Stream Encroachment Permit issued for the Koppers Seaboard processing facility.

8. There shall be no discharge of decant water at this site without prior approval of a NJPDES Discharge to Surface Water Permit (DSW) authorizing such discharge. Dredged material shall be dewatered at the dredging site.

9. Any debris removed during the dredging operation shall be loaded onto a deck scow for transport and off-loading at the Great Lakes Staten Island Yard. Debris removed prior to the processing of the material at the Koppers Seaboard site shall be placed in roll-off containers. All debris removed during a dredging project shall be disposed of at an approved construction material disposal facility.

10. Great Lakes shall install a spill plate between the dredge scow and the pier area. The spill plate shall be maintained at all times to ensure that any dredged material that falls on the spill plate is directed back into the barge.

11. Any raw or processed dredged material accidentally spilled on the processing area shall be immediately cleaned up and re-introduced in the processing operation.

12. Prior to the placement of processed dredged material in the temporary stockpile area, Great Lakes shall submit a plan to the Gary Lipsius of the Site Remediation Program which addresses all potential site remediation issues including potential excavation and soil reuse issues. Processed dredged material shall not be stored on site other than in the temporary storage area adjacent to the off-loading crane. Processed dredged material shall not be stored in the temporary storage area for than 96 hours.

13. The temporary storage area shall be maintained in such a manner to prevent air borne release of the material.

14. All trucks used to transport processed dredged material shall be tarped pursuant to the applicable State DOT requirements or applicable regulatory agency requirements.

15. The dredged material processing facility shall maintain daily records noting the transportation vehicle identification number (truck and scow), material quantity, source and destination for all dredged material and admixtures entering and leaving the facility. Great Lakes shall submit a semi-annual report that details this information to the Department.

16. Great Lakes shall comply with the O&M plan dated July 2, 2004, and any amendments thereto. The plan shall be kept on site and all employees involved in the dredged material processing facility shall be briefed on the contents of the plan.

17. Any major accidental release of dredged material, admixture or processed dredged material in non-processing areas (surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged, estimated quantity, nature of the discharge, location of the discharge, any action being taken to mitigate the discharge and any other information the Department may request at the time of notification.

18. The Department reserves the right to revise or terminate this authorization at any time as a response to any: complaints, violations of this authorization or its conditions, any violation of any related permit and their conditions and / or failure to comply with the Department's Acceptable Use Criteria for the end use site.

If you have any questions regarding this letter, please feel free to contact me at (609) 292-8838.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology
Site Remediation and Waste Management

C: Michael Millard, NY District
Bryce Wisemiller, NY District
Angelo Trollo, NY District
Gary Lipsius, NJDEP, Site Remediation Program
Scott Douglas, NJDOT, NJMR

Mr. Mitchell Brourman, Project Manager
Beazer East Inc.
c/o Three Rivers Management Company
One Oxford Centre, Suite 3000
Pittsburgh, PA 15219

Mr. Kevin A. Conti
DeCotiis, Fitzpatrick, Cole and Wisler
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

**PROTOCOL FOR THE TESTING OF PROCESSED DREDGED MATERIAL FOR USE AS STRUCTURAL FILL**
Revision (11/99)

The specific analytes which must be tested for are listed in the tables in Appendices B, Attachment 1 of the NJDEP technical manual entitled "The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters" (October 1997). The compounds to be tested include PCB arochlors and dioxin/furan congeners.

Laboratories selected to perform required analyses must be certified by the Department for the particular analytical method to be performed. Please verify current certification status with the Office of Quality Assurance (Phone: (609) 292-3950).

Since the dredged material will be treated with other materials that will alter its physical and chemical composition, additional tests must be performed on the end product. The required tests are as follows:

- Bulk sediment chemistry, grain size, total organic carbon, and percent moisture analyses must be performed on each raw sediment composite. Any water which separates from the raw sediment sample during transport/storage (i.e., porewater) must be re-mixed with the solid components of the sediments prior to forming the composite samples; this porewater must not be decanted from the sediment sample.

- For each composite sediment sample, a sample of the processed dredged material product will be created by combining measured amounts of proposed additive with a pre-weighed sample of the sediments to be dredged. The mixing time will, to the greatest extent possible, replicate the residence time in the blending facility/operation to be used in the actual full-scale project. The ratio of proposed additive to composite sediment sample, by weight, will be recorded. The dredged material product to be tested will be formed using the "recipe" (proportions of dredged material and proposed additive) which replicates the actual dredged material product to be used as structural fill on the site. The dredged material product will be pulverized, and each composite sample will be subjected to bulk sediment analyses.

- The dredged material product samples will be pulverized, and each sample subjected to a modified Multiple Extraction Procedure (EPA Method 1320) testing as follows:

**Procedure**

1. Prepare a synthetic acid rain extraction fluid of pH 4.2 water using a 60%/40% blend of sulfuric acid, to be used as the leachate fluid.

2. Measure an aliquot of 100 grams of each dredged material product composite sample and place into separate glass TCLP vessels. Measure a 25 gram aliquot of each dredged material product sample and place in separate zero-headspace extractors (ZHE) for analysis of volatile organics. Measure an aliquot of the

synthetic acid rain extraction fluid equal to 20 times the weight of each of the solid samples.

3. Combine the solid phase sample and the synthetic acid rain fluid in the TCLP extractor and begin agitation. Record the pH within 5-10 minutes after agitation has started.

4. Agitate the mixture for 24 hours, maintaining the temperature at 20-40 C (68-104 F). Record the pH at the end of the 24-hour extraction period. (All pH measurements will be taken on the bottle extraction only).

5. Employ the extraction fluid separation procedure described in EPA Method 1311 (TCLP).

6. Analyze the extract for the target analytes identified in the Department's dredging technical manual. Dioxin/furans shall only be analyzed in the first and seventh extraction steps.

7. Repeat steps 3 through 6, six additional times. Do not allow the solid sample to dry before weighing.

8. Report the initial and final pH of each extraction and the concentration of each listed constituent of concern in each extract.

A final report, including the results of the raw sediment and dredged material product testing, will be submitted to the Department in a series of nine (9) summary data tables:

- Raw sediment bulk sediment chemistry
- Dredged material product bulk sediment chemistry
- Dredged material product MEP results

New Jersey Natural Resources Conservation Program

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 07006
Telephone: (973) 364-0786
Fax: (973) 364-0784

September 2, 2004

Hudson County Improvement Authority
574 Summit Avenue 54th. Floor
Jersey City,NJ 07306

Re: Kopper's Pug Mill Block 287 Lot 70 (part)
Near Fishhouse Road, Kearny, NJ
HEP File No; 204-H-1926 Plan dtd: 8-2-2004

Dear Applicant:

The District has completed the review of the soil erosion and sediment control plan for the above referenced project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C.290-1.1 et. eq., promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, J.J.S.A.4-24-39 et seq.). Accordingly, the plan has been Certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any of construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone numbers of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or for failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners. <u>Please contact the District if you require assistance implementing the certified soil erosion and sediment control plan. This certification is valid for 3-1/2 years and is limited to the controls specified in this plan. It is not authorized to engage in proposed land use unless such use has been previously approved by the municipality or other controlling agency.</u>

Yours truly,
William Lebeda

William Lebeda.
Supervisor

New Jersey Natural Resources
Conservation Program

**HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT**

15 BLOOMFIELD AV[illegible]E
NORTH CALDWELL NJ [illegible]6
Telephone: (973) 364-0786
Fax: (973) 364-0784

August 10, 2004

Mr. Norman Guerra, Executive Director
Hudson County Improvement Authority
547 Summit Avenue, 5th Floor
Jersey City, NJ 07306

Re: Soil Erosion and Sediment Control Plan for Koppper's Pug Mill Facility Only
Fish House Road, Kearny, N.J. Block: 287, Part of Lot: 70
District File No. 204-H-1926

Dear Mr. Guerra,

The District has received a revised drawing sheet one of one, Issue 2, dated 8/2/2004. It reflects all the changes specified in the District's Conditional Certification letter of July 12, 2004 The Plan review was completed and recommended for certification at the District Board Meeting scheduled for September 2, 2004

This letter will serve as a Temporary Certification to allow work to commence at the above project site prior to the issuance of the Certification provided all other permits have been obtained.

Please remind the agent acting on behalf of the owner they must fill out a District Start Work Notice and file it with the district at least 48 hours prior to start of the actual starting date. Reference the Districts file number in all correspondence.

Sincerely,

William Lebeda

William Lebeda, Supervisor

C: Mr. Michael Martello, Construction Official
Mr. Art Fletcher, Great Lakes Dredge & Dock
Ms. Sharon A. Mascaro, P. E., Chief Engineer, NJMC
Ms. Ileana Kafrouni, P.P., AICP, Director of land-Use Management, NJMC
Ms. George D. Cascino, P.E., P.P.

Town of Kearny
410 KEARNY AVENUE
KEARNY, NJ 07032
201 - 955-7880
www.kearnyusa.com

Permit Number: 20050778
Permit Date: 06/27/2005
Update Number:
Control Number: 31032
Application Date: 06/21/2005

# CONSTRUCTION PERMIT

## IDENTIFICATION

### OWNER/PROPERTY DETAILS

Block : 287 Lot : 70 Qualification Code: HM

| | | | |
|---|---|---|---|
| Work Site Location: | NWK/JC TPKE KEARNY | Contractor: | Williams Scotsman, Inc. |
| Owner In Fee: | H C IMPROVEMENT AUTHORITY | Address: | 170 Central Avenue |
| Address: | 2 JOURNAL SQ PL-8TH FL | | South Kearny NJ 07032 |
| | JERSEY CITY NJ 07306 | Telephone: | (973) - 589-1234 |
| Telephone: | 0 - | Lic. No. / Bldrs. Reg. No.: | |
| Use Group(s): | U | Federal Emp. No.: | 52-0665774 |

is hereby granted permission to perform the following work :

[ X ]BUILDING [ X ]PLUMBING [ ] DEMOLITION
[ X ]ELECTRICAL [ ]FIRE PROTECTION [ ] OTHER
[ ]ELEVATOR DEVICES [ ]MECHANICAL
[ ]ASBESTOS ABATEMENT [ ]LEAD HAZARD ABATEMENT
(Subchapter 8 only)

RIPTION OF WORK:

Installation of (2) office trailers on Koppers Industrial Site.

ESTIMATED COST OF WORK:

| | |
|---|---|
| Cost of Construction: | 0.00 |
| Cost of Rehabilitation: | 188,000.00 |
| Cost of Demolition: | 0.00 |
| Total Cost: | $188,000.00 |

| PAYMENTS | (Office Use Only) |
|---|---|
| Building | $100.00 |
| Electrical | $899.00 |
| Plumbing | $190.00 |
| Fire Protection | |
| Elevator Devices | |
| Mechanical | |
| VolFee (DCA) | |
| AltFee (DCA) | $254.00 |
| Other Fees | |
| CO Fee | $300.00 |
| CCO Fee | |
| Minimum Fee | |
| Total | $1,743.00 |
| All Fees Waived: | No |

| | |
|---|---|
| Amount to be Paid: | $1,743.00 |
| Check Number: | 305218 |
| Check amount: | $1,743.00 |

NOTE: If construction does not commence within one (1) year of date of issuance, or if construction ceases for a period of six (6) months, this permit is void.

Michael J. Martello
Construction Official

Date 6/27/05

| | |
|---|---|
| Collected by: | cn |
| Receipt No: | |
| Total Cash Amount | |
| Total Check Amount | $1,743.00 |
| Total CC Amount | |
| Grand Total | $1,743.00 |

U.C.C. F170 (rev. 1/04)

G0100300560

# REQUIRED INSPECTIONS

Construction work must be inspected in accordance with the State Uniform Construction Code Regulations N.J.A.C. 5:23-2.18. This agency will carry out such periodic inspections during the progress of work as are necessary to insure that work installed conforms with the requirements of the Uniform Construction Code.

The owner or other responsible person in charge of work must notify this agency when work is ready for any required inspections specified below. Request for inspections must be made at least 24 hours prior to the time inspection is desired. Inspections will be performed within 3 business days of the time in which they are requested. The work must not proceed in a manner which will preclude the inspection until it has been made and approval given.

☐ Required inspections for all subcodes for one- and two-family dwellings are as follows:

1. The bottom of the footing trenches before placement of footings, except that in the case of pile foundations, inspections shall be made in accordance with the requirements of the building subcode.
2. Foundations and all walls up to grade level prior to back filling.
3. Utility service, including septic.
4. All structural framing, connections, wall and roof sheathing and installation; electrical rough wiring, panel and service installation; rough plumbing. The framing inspection shall take place after the rough electrical and plumbing inspections and after the installation of the heating, ventilation and/or air conditioning duct system. The insulation inspection shall be performed after all other subcode rough inspections and prior to the installation of any interior finish material.

☐ Additional required inspections for all subcodes of construction, for other then one- and two-family dwellings, are fire suppression systems, heat producing devices and Barrier Free subcode accessibility, if applicable.

☐ Required special inspections. The applicant by accepting the permit will be deemed to have consented to these requirements:

☐ A final inspection is required for each applicable subcode area before a final Certificate of Occupancy or Approval may be issued. The final inspections include the installation of all interior and exterior finish materials, sealing of exterior joints, mechanical system and other required equipment; electrical wiring, devices and fixtures; plumbing pipes, trim and fixtures; tests required by any provision of the adopted subcodes, Barrier Free accessibility, if applicable; and verification of compliance with NJAC 5:23-3.5, "Posting structures".

☐ A complete copy of released plans must be kept on the job site.

Governor
Jon S. Corzine

Chair
Susan Bass Levin

Commissioners
James A. Anzevino
Michael J. Gonnelli
Leonard R. Kaiser
Mia M. Macri
Eleanore S. Nissley
Arleen F. Walther

Executive Director
Robert R. Ceberio

**New Jersey Meadowlands Commission**

*Administration Building: One DeKorte Park Plaza Phone: 201-460-1700 Fax: 201-460-1722*
*Meadowlands Environment Center: Two DeKorte Park Plaza Phone: 201-460-8300 Fax: 201-842-0630*
*Lyndhurst, NJ 07071* *www.njmeadowlands.gov*

July 10, 2006

Art Fletcher, P.E.
Division Engineer
Dredge & Dock Company
2122 York Road
Oak Brook, IL 60523-1981

Re: HCIA/Great Lakes Dredge & Dock Dredge Processing Facility
File: 04-319

Dear Mr. Fletcher,

As per our telephone conversation on July 7, 2006 and a $500 dollar check received on July 10, 2006 requesting a one year extension to the zoning certificate approvals for the proposed 20.25 acre pug mill and temporary processed dredge material stockpile facility located at Newark/ Jersey City Turnpike, Block 287, Lot 70, in Town of Kearny, New Jersey.

In accordance with N.J.A.C. 19:4-4.6, we are hereby granting a one year extension to the zoning certificate approval, CZC-04-319 dated May 6, 2005. Please be advised that unless the construction has commenced before May 6, 2007, the zoning certificate will expire.

If you should have any questions, please contact Kam Chan of this Office at 201-460-4673.

Sincerely,

Sharon A. Mascaró, P.E.
Chief Engineer

cc: Michael J. Martello, Kearny Construction Official

# New Jersey Meadowlands Commission

1 DeKorte Park Plaza Lyndhurst, NJ 07071 Phone: 201-460-1700 Fax: 201-372-0161

www.njmeadowlands.gov


# CONDITIONAL ZONING CERTIFICATE (REVISED)

May 06, 2005

File # 04-319, HCIA/Great Lakes Dredge & Dock Dredge Processing Facility

Block 287, Lot 70

Newark/Jersey City Turnpike

Town of Kearny

| OWNER | APPLICANT/CONTACT |
|---|---|
| | Art Fletcher |
| H C IMPROVEMENT AUTHORITY | Great Lakes Dredge and Dock Co., Inc. |
| 574 Summit Avenue, 5th Floor | 2122 York Road |
| Jersey City, NJ | Oak Brook, IL |
| 07306 | 60523-1981 |

☐ New Building ☐ Tanks ☐ Recycling Areas ☐ Towers ☐ Interior Alteration related to Use Change

☐ Additions ☐ Fences ☐ Antenna ☒ Site Improvements

This Office has recently completed its review of your zoning certificate application and related plans for the proposed 20.25 acres pug mill and temporary processed dredge material stockpile facility including the location of two office trailers, temporary wastewater facility, proposed 4-inch diameter water main to the proposed flush hydrant and proposed 2-inch diameter water main to the office trailers

Based on our review, we have determined that the application conditionally complies with the Commission's Intermodal B Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the condition(s) listed in Attachment A.

This letter shall serve as your Conditional Zoning Certificate, designated CZC-04-319 (Revised), and shall be valid for a period of one year.

THIS IS NOT AN APPROVAL TO START CONSTRUCTION. Applications must be made to the Town of Kearny for a building permit.

Please find enclosed a copy of the approved plan(s). A description of the approved plan(s) are listed in Attachment B.

The applicant is hereby advised of his responsibility to investigate and obtain all federal, state and local permits which may pertain to his proposal or project. The New Jersey Meadowlands Commission will not be held liable for any damage which may result from the applicant's failure to obtain the approvals from all respective agencies having jurisdiction. This Office must receive copies of all federal, state, and local permits which may pertain to the proposal before it will issue a Certificate of Completion. If this file is related to the construction of new buildings and additions, please find enclosed a partially completed Elevation Certificate which must be completed by a Professional Land Surveyor and returned to this Office together with a signed and sealed as-built plan before a Certificate of Completion is issued.

Any person who claims to be aggrieved by this decision may request an appeal pursuant to N.J.A.C. 19:4-4.19. A written request for such an appeal must be filed, by certified mail, with the Executive Director within fifteen (15) days of the date of this decision. The request for an appeal shall specify the grounds therefore. Upon grant of the request for an appeal, the Executive Director or his designee shall transmit the matter to the Office of Administrative Law for a hearing.

If there are any questions regarding this approval, please contact Kam Chan of this Office at (201) 460-4673.

If you should have any questions regarding the building permit process, please contact Ralph Venturini of this Office at (201) 460-4639.

RECOMMENDED BY: Kam Chan

*Kam Chan*
*Staff Engineer*

APPROVED BY: [signature]

*Sharon A. Mascaro, P.E.*
*Chief Engineer*

cc:

Michael J. Martello, Kearny Construction Official

HMMC

Norman Guerra, HCIA

Theodore Schwarz, Esq.

Suzanne Dietrick, NJDEP

Gary Lipsius, NJDEP

G0100300563

# APPENDIX 4

# APPENDIX 4

## FDP PERMITS

New Jersey Meadowla[illegible]s Commission
1 DeKorte Park Plaza Lyndhurst, NJ 07071 Ph[illegible]e: 201-460-1700 Fax: 201-372-0161
www.meadowlands.state.nj.us

# CONDITIONAL ZONING CERTIFICATE

*Date Issued* March 28, 2003 *File Number* 01-552 *File Name* FDP/INTERMODAL CONTAINER FACIL

**SUBJECT PROPERTY**

Block 1000 Lot 1
Address SECAUCUS RD
Municipality City of Jersey City

**OWNER INFORMATION**

Name Frank Folise
Company F.D.P. Enterprises
Address 2200 Secaucus Rd.
City/State North Bergen, N.J.
Zip 07047 Phone (201) 348-6300

**APPLICANT/CONTACT INFORMATION**

Applicant Frank Folise
Company F.D.P. Enterprises
Address 2200 Secaucus Rd.
City/State North Bergen, N.J.
Zip 07047 Phone (201) 348-6300

- [x] New Building
- [ ] Additions
- [ ] Tanks
- [ ] Fences
- [ ] Recycling Areas
- [ ] Antenna
- [ ] Towers
- [x] Site Improvements
- [ ] Interior Alteration Related to Use Change
- [x] Fill Stockpile

**DESCRIPTION OF WORK**

This Office has recently completed its review of your zoning certificate application and related plans for a 4,536 SF gatehouse, 80 FT diameter salt dome and associated site improvements, including fill/stockpile operations, located on Block 1000, Lots 1, 6, 12, Block 1001, Lot 1, Block 1002, Lot 1, and Block 1050, Lot 1.

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

See Attachment A for conditions of approval.

This letter shall serve as your Conditional *Zoning Certificate*, designated CZC-01-552, and shall be valid for a period of one year.

**THIS IS NOT AN APPROVAL TO START CONSTRUCTION. Applications must be made to the City of Jersey City for a building permit.**

Please find enclosed a copy of the approved plan(s) as follows:

See Attachment B for a list of approved plans.

The applicant is hereby advised of his responsibility to investigate and obtain all federal, state and local permits which may pertain to his proposal or project. The New Jersey Meadowlands Commission will not be held liable for any damage which may result from the applicant's failure to obtain the approvals from all respective agencies having jurisdiction. This Office must receive copies of all federal, state, and local permits which may pertain to the proposal before it will issue a Certificate of Completion. If this file is related to the construction of new buildings and additions, please find enclosed a partially completed Elevation Certificate which must be completed by a Professional Land Surveyor and returned to this Office together with a signed and sealed as-built plan before a Certificate of Completion is issued.

Any person who claims to be aggrieved by this decision may request an appeal pursuant to N.J.A.C. 19:4-6.25(b). A written request for such an appeal must be filed, by certified mail, with the Office of the Chief Engineer within fifteen (15) days of the date of this decision. The request for an appeal shall specify the grounds therefore. Upon grant of the request for an appeal, the Executive Director or his designee shall transmit the matter to the Office of Administrative Law for a hearing.

If there are any questions regarding this approval, please contact Sharon A. Mascaro of this Office at (201) 460-4689.

If you should have any questions regarding the building permit process, please contact Ralph Venturini of this Office at (201) 460-4639.

RECOMMENDED BY: *[signature]*
*Sharon A. Mascaro, P.E.*
*Assistant Chief Engineer*

APPROVED BY: *[signature]*
*Sara J. Sundell, P.E., P.P.*
*Acting Chief Engineer*

cc: Michael Regan, Jersey City Construction Official
Andrew Graybush, Hudson-Essex-Passaic Soil Conservation District
Kevin Coakley, Esq.
Steven C. Sands, Clean Earth Dredging Technologies, Inc.
Robert Romano, Ernst, Ernst & Lissenden
HMMC