01-552

FDP/INTERMODAL CONTAINER FACIL.

**CONDITIONAL ZONING CE FICATE**

**ATTACHMENT A**

March 28, 2003

Based on our review, we have determined that the application conditionally complies with the Commission's Zoning Regulations, and we are therefore approving your Conditional Zoning Certificate with the following condition(s):

General conditions:

1. The applicant shall submit a response to the traffic report review prepared by Birdsall Engineering, Inc. dated 3/18/03, within 45 days of the date of this conditional zoning certificate, including any revisions to the plans, acceptable to the NJMC, resulting from the resolution of items in the review.
2. Under this approval, stacking of containers more than two (2) high shall not be permitted.
3. The height of the proposed fence falls under the jurisdiction of the US Customs Service for a bonded warehouse operation. If the use of the facility is changed to a use not requiring US Customs Service approval, then the fence height shall be lowered to a maximum of 8 feet including any barbed wire, in accordance with N.J.A.C. 19:4-6.18(m).

Fill/stockpile permit conditions:

1. The fill/stockpile operation shall be conducted in accordance with the approved site plan, the "Supplemental Information" prepared by Clean Earth Dredging Technologies, Inc. dated 3/17/03, and the engineering report.
2. The site shall be secured/monitored so as to prevent random dumping or unauthorized access.
3. The filled area shall not be used for any purpose other than that which is shown on the approved site plan.
4. Monthly monitoring reports shall be submitted describing the progress of the fill/stockpile operation.
5. Application for acceptance of fill material categorized as "Other Fill Material" shall be made in writing to the NJMC, a minimum of ten (10 ) days prior to proposed delivery of the material. Approval of material shall be at the sole discretion of the NJMC.
6. Upon completion of the fill operation, the site shall be cleared of all equipment and materials.
7. The designated responsible person in charge shall provide full time supervision of the fill/stockpile operation. Upon completion of the operation, both the responsible person in charge and the professional engineer preparing the site plan, shall certify that the fill/stockpile operation was conducted in accordance with the approved plan.
8. Soil Erosion and Sediment Control Plan approval by the County Soil Conservation District shall be submitted to the Commission prior to the start of earthwork operations.
9. All filling operations shall meet the requirements of the NJMC Performance Standards for noise, whereby the maximum permitted sound level on or beyond the subject property boundary line shall not exceed 76 dBA, in accordance with N.J.A.C. 19:4-6.1.

Please find enclosed a copy of the approved plan(s) as follows:

All plans sheets prepared by Ernst, Ernst & Lissenden, dated 8/1/02, unless otherwise noted:

1. "Boundary and Topographic Map", Sheet 1 of 17, last revised 1/22/03.
2. "Overall Plan and Wetlands and Fill Areas Exhibit to accompany Army Corps of Engineers Permit No. 1993-00081", Sheet 2 of 17, last revised 1/22/03.
3. "Site Development Plan", Sheet 3 of 17, last revised 3/17/03.
4. "Site Development Plan", Sheet 4 of 17, last revised 1/22/03.
5. "Site Development Plan", Sheet 5 of 17, last revised 1/22/03.
6. "Landscaping Plan", Sheet 6 of 17, last revised 3/17/03.
7. "Site Lighting Plan", Sheet 7 of 17, dated 1/22/03, no revisions.
8. "Site Lighting Plan", Sheet 8 of 17, dated 1/22/03, no revisions.
9. "Plan of Fill Operation Sequence and Grid Tracking System", Sheet 9 of 17, dated 1/22/03, last revised 3/17/03.
10. "Soil Erosion and Sediment Control Notes and Details", Sheet 14 of 17, last revised 3/17/03.
11. "Wetlands Creation and Enhancement Areas Typical Sections", Sheet 15 of 17, last revised 1/22/03.
12. "Typical Section and Details", Sheet 16 of 17, last revised 1/22/03.
13. "Construction Details", Sheet 17 of 17, dated 5/24/02, last revised 3/17/03.
14. "Gatehouse and Offices", Sheet A-1, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.
15. "Salt Storage Facility", Sheet A-2, prepared by Mario Cammarano, P.E., R.A., dated 3/19/03, no revisions.

# SUPPLEMENTAL INFORMATION

## APPLICATION FOR FILL/STOCKPILE OPERATION

## FDP ENTERPRISES, INC.
## INTERMODAL CONTAINER FACILITY

Block 1000, Lot 1, 6 and 12; Block 1001, Lot 1;
Block 1002, Lot 1; Block 1050, Lot 1
Secaucus Road, Jersey City, Hudson County, NJ

*(last revised 03/17/03)*

| Applicant Information: | Fill Material Contractor Information: |
|---|---|
| F.D.P. Enterprises, Inc.<br>2200 Secaucus Road<br>P.O. Box 1067<br>Secaucus, New Jersey 07096<br><br>Contact: Frank V. Folise, Principal<br><br>Phone: (201) 348-6300<br>Fax: (201) 348-6262 | Clean Earth Dredging Technologies, Inc.<br>2337 North Penn Road<br>Suite 100<br>Hatfield, Pennsylvania 19440<br><br>Contact: Steven C. Sands, President<br><br>Phone: (215) 996-4172<br>Facsimile: (215) 996-5652 |

## ENGINEERING REPORT

An Engineering Report, entitled "Soils Report for Proposed Development at Secaucus Road Site – Jersey City, New Jersey – June, 1986" prepared by James C. Anderson Associates of Mt. Holly, New Jersey is attached hereto as required. The Report provides results of a test boring program, classification of existing soils, and base recommendations for building foundations and for placement and compaction of fill material.

## SITE PLAN

A set of Construction Plans, including a Site Development Plan, has been previously submitted to the New Jersey Meadowlands Commission ("NJMC"), labeled Drawing C-869 (10 Sheets), as prepared by Mr. Robert J. Romano, P.E. of Ernst, Ernst and Lissenden, Toms River, New Jersey. One (1) additional plan Sheet is enclosed with this Application labeled "Plan for Fill Operation Sequence Grid Tracking System," Drawing C-869, Sheet 1 of 1. The purpose of this plan is discussed in further detail herein.

## SUPPLEMENTAL INFORMATION

This supplemental plan is intended to provide additional information and details regarding the proposed operation for filling and grading of the approximately 77.4 acres, including approximately 53.5 acres of wetland area at the referenced site.

The plan further details the allowable criteria for fill material to be received at the subject property. Clean Earth Dredging Technologies, Inc. ("Clean Earth-DTI") has been retained by FDP Enteprises, Inc. (FDP) as the Fill Material Contractor at the FDP Site. As such, Clean Earth-DTI will be contractually responsible for managing the entire fill operation, including testing and analysis, supply, transportation, quality assurance/quality control, placement and compaction, environmental compliance, supervision and traffic control.

Clean Earth-DTI and its sister companies own and operate fixed base soil and dredged material treatment facilities in the Tristate Area. As such, CTI has proposed the use of treated material from several of its recycling facilities, including its Class B Recycling Facility, Clean Earth of Carteret, Inc., as fill for the FDP site.

FDP and Clean Earth-DTI recently met with representatives of the New Jersey Meadowlands Commission ("NJMC") to discuss its requirements for importing of fill material to this site.

## CATEGORIES OF ACCEPTABLE FILL MATERIAL

It was agreed the following categories of material shall be accepted as fill for the FDP Site (the "Fill Material"):

1. Clean Fill – including uncontaminated inert rock, soil, gravel, sand, concrete, recycled crushed glass, clay and ceramic products. Clean Fill material shall generally meet the size limitations as per the NJDEP definition of clean fill (approximately 8 inches in diameter or less). For larger diameter or mixed graded materials, the material shall be intermixed with fine graded fill upon placement such that the proportion of material less than 1-1/2" in diameter is at least 25% greater than the void volumes of material that is greater than 1-1/2".

2. Fill From Class B Recycling Facilities – processed soil from Class B Recycling Facilities, including Clean Earth of Carteret, Inc., in Carteret, New Jersey, that meets all of the respective facilities' Class B permit standards for restricted use in non-residential sites. Such criteria shall be as listed below for Construction Fill.

3. Construction Fill – includes soil fill material that has been tested for priority pollutants that shall not exceed the Non-Residential Direct Contact Soil Cleanup Criteria ("NRDCSCC"). For such fill, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual." Sampling and analysis shall be performed at a frequency of one area composite sample per 5,000 cubic yards of material to be re-used. The analysis shall be performed on a composite sample consisting of adjacent grid samples obtained at a frequency of one sample per 1,000 cubic yards. A minimum of one (1) composite sample per project shall be analyzed.

4. Non-HARS Dredged Material Suitable for Placement at Upland Sites without Processing – includes glacial till material, clay material, sand, gravel, cobbles, and rock, including blasted rock that has been deemed to be suitable for upland placement without processing by the appropriate regulatory agencies, including NJDEP.

5. Amended Dredged Material "ADM" - includes non-rock non-HARS dredged material that has been amended with any or all of the dredge admixtures that have been approved by NJDEP for the CTI Claremont DMRF facility (excluding Municipal Incinerator Ash Residue and Propat®) that meets the NRDCSCC.

6. Other Fill Material – includes fill material not meeting the definition of any other Category of Acceptable Fill Material for FDP Site which shall be shipped directly from project sites. For such "other fill" material, the sampling plan, collection, preservation and handling for the sampling and analysis will be performed in accordance with New Jersey's Technical Requirements for Site Remediation at N.J.A.C. 7:26E and the latest edition of the "New Jersey Department of Environmental Protection, Hazardous Waste Programs, Field Sampling Procedures Manual," or by such alternate sampling frequency and protocol as shall be mutually agreed in advance by NJMC and FDP. Application for acceptance of this category

of fill material shall be made in writing to NJMC on a case-by-case basis, along with copies of all source information and analytical data reports. Approval of each such application shall be determined by NJMC upon review of the application, in its sole discretion. Any application which has not been approved or denied in writing within ten (10) days of such submittal shall be deemed to be approved.

## FILL OPERATIONS

The following Operational Considerations and restrictions shall apply to the placement of fill at the FDP Site:

1. All fill material will be transported by truck to the FDP parcel by a transportation subcontractor(s) under sequentially numbered Bills of Lading provided by Clean Earth-DTI only to approved sources of Fill Material.

2. All characterization testing, approval and transportation of the fill to the FDP Site will be the responsibility of Clean Earth-DTI or its Engineer. For fill materials requiring project- or source-specific approval from NJMC pursuant to item 6 above, Clean Earth-DTI or its Engineer shall make application to the NJMC for such approval, with approval of the application by NJMC in its sole discretion.

3. Provisions shall be made for stockpiling, re-loading, placement and compaction of these materials, including the post-placement testing and monitoring thereof by FDP or its Contractor or Engineer.

4. Material may be shipped by transportation subcontractor(s) and received at the site on a 24 hours per day, 7 days per week basis, with appropriate advance notice and scheduling with NJMC. Initial operations for receipt of fill material are expected to occur six (6) days per week, between the hours of 6:00 a.m. and 11:00 p.m. Placement of fill material will be restricted to the hours of 7:00 a.m. to 6:00 p.m. as required by NJMC. The Application for Fill/Stockpile Operation form attached as a cover hereto shall incorporate these conditions.

5. Clean Earth-DTI shall establish a gated entrance way for fill delivery truck ingress and egress at the site as detailed in the Detail Plan of Construction Entrance, on Drawing C-869, Sheet 1 of 1, attached hereto. Such entrance shall be manned by a guard/inspector at all times of receipt of fill deliveries. Only trucks carrying the approved and numbered Bills of Lading from authorized sites shall be allowed to access the fill area of the FDP Site. The guard/inspector shall inspect each load of fill material from sources other than CEI owned facilities to ensure the material meets the specifications of the acceptance of material from the particular approved source. Non-conforming material will be rejected and the load diverted from the FDP Site.

6. A grid tracking system as shown on the attached plan Drawing C-869, Sheet 1 of 1 entitled "Plan of Fill Operation Sequence and Grid Tracking System" will be implemented. Upon

delivery, each load of fill will be directed to a numbered grid for placement or stockpiling. For each day's fill placement operations, the grid locations and approximate fill elevations will be documented and cross-referenced to fill deliveries that day in a computerized Fill Tracking System. Copies of the Fill Tracking System report, will be provided to NJMC on a monthly basis, detailing the amount of fill received by source and location, the specific areas (grids) of placement and/or stockpiling occurring in the month, the approximate elevations of fill placement in each grid, and any rejected loads of material for the month.

7. Temporary haul roads in both the wetlands and uplands will be constructed as necessary to facilitate on-site truck travel. Periodic maintenance of these haul roads will be performed during the project to prevent rutting and repair soft spots. Maintenance will consist of re-grading and placing of additional stone material in areas where settlement has occurred or potholes developed. The haul roads will be constructed a minimum of 12-inches of recycled fill (stone, crushed concrete and brick) to be imported by Clean Earth-DTI and stockpiled at the site prior to activities. Spraying of water during construction will be performed as needed to suppress dust development.

8. The construction entrance and the intersection of Secaucus Road at the ingress/egress will be inspected daily to ensure cleanliness. Stone will be replaced as necessary in the Construction Entrance. A mobile street sweeper will be used as necessary to clean Secaucus Road should any material be tracked onto the public roadway.

9. Fill material meeting the more stringent of NRDCSCC and Impact to Ground Water Criteria ("IGWC") only shall be placed in areas within 50 feet of any interface between fill placement areas and surface water including wetlands, the wetland mitigation and enhancement areas, the drainage ditch along Secaucus Road, the Jersey City drainage parcel with 100 feet wide access easement in the center of the property (Block 1000, Lot 13) and Penhorn Creek and in areas underlying buildings as detailed on the attached Sheet 1 of 1 entitled "Fill Operations Sequence and Grid Tracking System."

10. Delivery of fill material is expected to take place over a three (3) to four (4) year period, commencing immediately upon receipt of all permits and approvals and upon the availability of the site to accept fill materials. Stockpiling of materials may occur in advance of actual start of placement activities in upland areas to be designated by FDP, such areas as shown on the attached Plan for Fill Operation Sequence and Grid Tracking System, Drawing C-869, Sheet 1 of 1. In the event of advance stockpiling, the soil erosion and sediment control measures applicable to stockpiles only shall be followed (i.e., installation of silt barrier and hay bales around perimeter of stockpile). Additional soil erosion and sediment control measures will be installed as detailed in the Fill Operations Sequence prior to commencement of Phase 1 Fill Activities.

**USACE Permit No. 1993-00081 For Mitigation and Enhancement of Wetlands and Filling of Wetlands**

**December 2002**

DEPARTMENT OF THE ARMY
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

December 18, 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Department of the Army Permit No. 1993-00081 Issued to F. D.& P. Enterprises, Inc.

F. D. & P. Enterprises, Inc.
c/o Mr. Kevin Coakley
Connell, Foley LLP
85 Livingston Ave
Roseland, New Jersey 07068-3702

Dear Mr. Coakley:

Enclosed is a Department of the Army permit for your work.

You are required to submit to this office the dates of commencement and completion of your work. Enclosed are two forms for you to use to submit the required dates.

If for any reason, a change in your plans or construction methods is found necessary, please contact us immediately to discuss modification of your permit. Any changes must be approved before they are undertaken.

Sincerely,

Richard L. Tomer
Chief, Regulatory Branch

Enclosure

DEPARTMENT OF THE ARMY
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

**IMPORTANT**

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address prior to commencement of any work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Work will commence on or about: ______________________________
Name, Address & Telephone Number of Contractor:

______________________________ ______________________________
Signature of Permittee Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

______________________ Place Stamp Here
______________________
______________________

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

IMPORTANT

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address following completion or cancellation of work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Check and complete applicable item(s) listed below:

_____ Work was completed on ____________________.
_____ Work will not be performed on the project.
_____ Deviation from work authorized in permit is explained below.
_____ Other (explain) ______________________________

_____ For dredging projects, list the volume of material dredged, and the amount placed at each disposal location (if more than one).
_______ cubic yards placed at ____________________
_______ cubic yards placed at ____________________
_______ cubic yards placed at ____________________

______________________________ ______________________
Signature of Permittee Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

---

______________________
______________________
______________________

Place Stamp
Here

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

REPLY TO
ATTENTION OF:

CENAN-OP-RH

**IMPORTANT**

This letter must be completed and mailed to the Harbor Supervision & Compliance Section at the above address following completion or cancellation of work authorized under the permit.

Permittee: F.D.&P. Enterprises, Inc. Permit No. 1993-00081

Date Permit Issued: 17 December 2002 Expiration Date: 17 December 2007

Waterway: Hackensack River

City & State: Jersey City, New Jersey

Check and complete applicable item(s) listed below:

____ Work was completed on ____________________

____ Work will not be performed on the project.

____ Deviation from work authorized in permit is explained below.

____ Other (explain) ______________________________________

____ For dredging projects, list the volume of material dredged, and the amount placed at each disposal location (if more than one).

________ cubic yards placed at ____________________

________ cubic yards placed at ____________________

________ cubic yards placed at ____________________

______________________________ ____________________
Signature of Permittee Date

Fold this form into thirds, with the bottom third facing outward. Tape it together and mail to the address below or FAX to (212) 264-4260.

---

____________________
____________________
____________________

Place Stamp
Here

Department of the Army
New York District Corps of Engineers
Jacob K. Javits Federal Building
ATTN: CENAN-OP-RH
New York, New York 10278-0090

# DEPARTMENT OF THE ARMY PERMIT

Permittee: F.D.& P. Enterprises, Inc.
PO Box 1067
Secaucus, NJ 07096-1067
(201) 348-6300

Permit No.: 1993-00081

Issuing Office: New York District Corps of Engineers

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description:

The permittee is authorized to discharge approximately 1.5 million cubic yards of clean fill material into a total of 53.5 acres of waters of the United States (wetlands) to create fast land to facilitate the expansion of an existing intermodal transfer facility, as shown on the plans prepared by Ernst, Ernst & Lissenden dated August 1, 2002, last revised October 25, 2002.

As mitigation for the loss of 53.5 acres of waters of the United States, the permittee shall undertake on-site and off-site mitigation activities. On-site mitigation activities shall consist of the establishment of approximately 5.4 acres of new wetlands and the enhancement of approximately 25.3 acres of existing wetla[illegible] in accordance with the permittee's plans submitted in letters dated 25 March 19[illegible] and 18 June 1998 (copies attached). Off-site mitigation activities shall consist of the purchase of 40 credit acres from an appropriate wetland mitigation bank.

The discharge of fill material into the approximately 53.5 acres of waters of the United States and all mitigation authorized by this permit shall be performed in accordance with the attached drawings and Special Conditions (A) through (J).

Project Location: IN: adjacent to Penhorn Creek, a tributary of the Hackensack River

AT: City of Jersey City, Hudson County, New Jersey

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on 17 December 2007. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification of this permit from this office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and state coordination required to determine if the remains warrant recovery effort or if the site is eligible for listing in the National Register of Historic Places.



1145-2-303b (Hackensack River/F. D. & P. Enterprises, Inc./Discharge fill material into waters of the United States)

PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization.

5. If a conditioned water quality certification has been issued for your project, you must comply with the conditions specified in the certification as special conditions to this permit. For your convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of your permit.

Special Conditions:

A) Prior to the onset of the construction authorized herein, the permittee shall provide USACE written verification that 40 acre-credits have been purchased from a wetland mitigation bank approved by USACE. Two copies of this verification document shall be submitted to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

B) The permittee shall comply with all of the terms and stipulations of the Water Quality Certificate issued by the New Jersey Department of Environmental Protection Number 0906-92-006.5 dated December 20, 2000.

C) The permittee shall undertake the authorized filling activities in a manner aimed at reducing impacts upon the general environment. The permittee shall not stockpile fill or other materials in a manner conducive to erosion, or in areas likely to cause high turbidity runoff during storm events. All exposed soils shall be re-vegetated, or otherwise stabilized in a timely manner, to further reduce potential adverse effects. The permittee shall fence off all wetlands and other sensitive ecological areas adjacent to both the project and on-site mitigation areas during construction periods, to prevent equipment and personnel from entering these areas.

D) The permittee shall accomplish on-site compensatory mitigation through the successful establishment of approximately 5.4 acres of wetlands, and enhancement of approximately 25.3 acres of existing wetlands on the project site in accordance with the permittee's letters of March 25, 1998 and June 18, 1998 (copies attached). The permittee shall ensure that the on-site mitigation areas meet the federal wetland criteria outlined in the report entitled "Corps of Engineers Wetlands Delineation Manual", dated January, 1987, and current USACE guidance. The permittee shall ensure that all proposed plantings as part of the compensatory mitigation activities shall have at least an eighty-five (85) percent survival rate. As part of the compensatory mitigation activities, the permittee shall ensure that all on-site wetland areas shall have an eighty-five (85) percent coverage rate of hydrophytic plants (those with a regional indicator status of FAC, FAC+, FACW +/-, or OBL in the report entitled "National List of Plant Species That Occur in Wetlands, Northeast [Region 1] ", published by the U.S. Fish and Wildlife Service). The permittee shall also ensure that the vegetation in the established on-site wetlands does not consist of more than a total of 10% areal coverage of common reed (*Phragmites australis*) and/or purple loosestrife (*Lythrum salicaria*).

E) The permittee shall provide to the New York District annual reports on the status of the on-site mitigation activities which are required by Special Condition D, prepared during the growing season, no later than October 15 in each of the following five (5) years after initiation of the filling activities authorized by this permit. These reports shall include at a minimum information as follows:

1) All dominant plant species, along with their estimated relative freque[ncy] and percent cover, shall be identified by using plots measuring 10 feet by 10 fe[et] with at least one representative plot located in each of the habitat types within the mitigation site. The location of each plot shall be identified on the plan view engineering drawing.

2) Vegetation cover maps, at a scale of one inch equals 100 feet, or larger scale, shall be prepared for each growing season.

3) Photographs showing all representative areas of the mitigation site/s shall be taken at least once each year during the period between 1 June and 15 August.

4) Surface water elevations in representative areas of the mitigation site/s shall be recorded twice a month starting in April and ending in October of each year. The location of the water elevation reading sites shall be shown on the plan view engineering drawing.

F) All grading and planting in conjunction with the on-site wetlands mitigation work required in Special Condition (D) shall be completed within three years of the efective date of this permit.

G) The permittee shall ensure that all plantings that are a part of the on-site mitigation effort required in Special Condition (D) shall have an eighty-five (85) percent survival and/or coverage rate which must be met or exceeded at the end of the second growing season following completion of the initial planting/seeding. If the eighty-five (85) percent survival rate is not met at the end of the second growing season, the permittee shall take all necessary measures to ensure the level of survival by the end of the next growing season, including re-planting a[nd] re-grading if necessary. In addition, in areas where no individual plantings a[re] currently proposed, if appropriate and sufficient vegetation is not present by the end of the second growing season, the permittee shall take all necessary steps, including individual plantings in order to achieve a plant density comparable to the adjacent wetland.

H) The permittee shall ensure that no mowing of the on-site mitigation area shall occur.

I) The permittee shall assume all liability for accomplishing corrective work for the on-site mitigation should the New York District determine that the on-site compensatory mitigation has not met the requirements of this permit. Should success not be obtained starting with the first year after the completion of on-site mitigation construction activities, the permittee must submit a remediation plan, outlining all practicable steps taken or proposed to be taken to ensure that the success criteria outlined in Special Condition (D) above will be met by the specified due date of the next monitoring report. If the USACE does not find the on-site mitigation satisfactory, an extension of monitoring time may be required to cover any necessary remedial work.

J) The permittee shall restrict, by deed restriction or conservation easement in a form acceptable to New York District, the on-site wetlands mitigation areas of the project site to be preserved in perpetuity as a buffer, in order to ensure the area's preservation for wetland and wildlife resources. Copies of the instrument effecting such easement or deed restriction shall be submitted to the New York District USACE for approval prior to execution. An executed instrument shall be recorded with the Hudson County Registrar of Deeds within one year following the initial plantings/seedings of the mitigation sites.

PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

Further Information:

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

(X) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S. Code 403).

(X) Section 404 of the Clean Water Act (33 U.S. Code 1344).

( ) Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization:

a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.

b. This permit does not grant any property rights or exclusive privileges.

c. This permit does not authorize any injury to the property or rights of others.

d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability: In issuing this permit, the Federal Government does not assume any liability for the following:

a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

d. Design or construction deficiencies associated with the permitted work.

e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision: This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

a. You fail to comply with the terms and conditions of this permit.

b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

PERMITTEE: F.D.& P. Enterprises, Inc.
PERMIT NO.: 1993-00081

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions: General Condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

(PERMITTEE) Dec 3rd 2002 (DATE)
F.D.& P. Enterprises, Inc.

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

(DISTRICT ENGINEER) 17 December 2002 (DATE)
John B. O'Dowd
Colonel, U.S. Army
District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below. A copy of the permit signed by the transferee should be sent to this office.

(TRANSFEREE) (DATE)




# Wetland Mitigation & Impact Map

ENVIRONMENTAL EVALUATION GROUP

Source: USGS Weehawken Quadrangle
Scale: 1" = 2,000'

Total Wetland Impact = Approx. 53.3 Acres

FIGURE 1
Intermodal Terminal Expansion Project
Block 1000, Lots 1, 8, 12; Block 1001, Lot 1
Block 1002, Lot 1, Block 1010, Lot 1
Jersey City, Hudson County, NJ

Prepared for:
FD&P Enterprises, Inc.

December 1998

SHEET 1 OF 2

WETLANDS UNIMPROVED AREAS=0.76 AC

WETLANDS CREATION AREA= 1.04+0.63+1.91+1.84=5.42 AC

WETLANDS ENHANCEMENT AREAS= 16.71+0.04+1.04+3.21 +3.79+0.25+0.17+0.10=25.31 AC

WETLANDS FILL AREAS= 32.42+16.58+1.60+0.91=51.51 AC

PLUS FUTURE DITCH FILL AREA=0.85 AC.
TOTAL WETLANDS FILL AREA=52.36 ACRE




WETLANDS AND FILL AREAS EXHIBIT TO ACCOMPANY ARMY CORPS OF ENGINEERS PERMIT NO. 1993-00061

ERNST, ERNST & LISSENDEN
ENGINEERS & SURVEYORS
P.O. Box 391 ... Toms River, New Jersey ...
ROBERT J. ROMANO, NJPE # 25906
12-9-02
DATE

PLANDS AREAS PRIOR TO CONSTRUCTION =20.25+0.63+1.04=21.92 AC

TOTAL EXISTING WETLANDS PRIOR TO CONSTRUCTION =100.71-21.92=78.79 AC

SHEET 2 OF 2

G0100300586

**NJDEP Water Quality Certificate No. 0906-92-006.5**

**December 20, 2000**

Army Corp

STATE OF NEW JERSEY

DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| Permit No. | 0906-92-0006.5 | Application No. | Same as Permit No. |
|---|---|---|---|

| Issuance Date | Effective Date | Expiration Date |
|---|---|---|
| DEC 2 0 2000 | DEC 2 0 2000 | DEC 2 0 2005 |

| Name and Address of Applicant | Name and Address of Owner | Name and Address of Operator |
|---|---|---|
| F.D.P. Enterprises.<br>2200 Secaucus Rd<br>Jersey City, NJ 07047 | Same as applicant | Same as applicant |

| Location of Activity/Facility *(Street Address)* | Issuing Division | Statute(s) |
|---|---|---|
| Jersey City, Hudson County<br>Lot 1,6&12 Block 1000<br>Lot 1 Block 1001<br>Lot 1 Block 1002<br>Lot 1 Block 1050 | Land Use Regulation Program | NJSA 58:10A-1 et seq |

| Type of Permit | Water Quality Certificate | Maximum Approved Capacity, if applicable | N/A |
|---|---|---|---|

This permit grants permission to:

The Land Use Regulation Program (LURP) of the New Jersey Department of Environmental Protection (NJDEP) has reviewed the referenced application for an Individual Water Quality Certificate (WQC). The proposed activity involves the filling of 53.5 acres of wetlands to facilitate the construction of an intermodal terminal expansion. A WQC has been previously issued for this project under NJDEP File # 0906-92-0006.3.

This project is in compliance with the Rules on Coastal Zone Management, specifically the Special Area Rule for the Hackensack Meadowlands District (7:7E-3.45.

Prepared By: [signature]
David Bean
Bureau of Inland Regulation

(see page 6 for Manager's signature)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ______ Title ______ |
| | Signature ______ Date ______ |

**The word permit means "approval, certification, registration, etc."*

(General Conditions are on the Reverse Side)

IN ADDITION TO THE GENERAL CONDITIONS PRINTED ON THE BACK OF PAGE ONE OF THIS PERMIT, THE FOLLOWING CONDITIONS SHALL ALSO APPLY:

9. Limit and Extent of Approval

a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with <u>Standards for Soil Erosion and Sediment Control in New Jersey</u> (obtainable from local Soil Conservation District Offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities

hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed permit acceptance form has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed construction notice shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed completion report shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

**12. The proposed activity, is shown on the plans entitled "Property of F.D.P. Enterprises, Block 1000 - Lots 1,6,&12, Block 1001 – Lot 1, Block 1002 – Lot 1, Block 1050 – Lot 1, Jersey City, Hudson County New Jersey", prepared by Ernst, Ernst & Lissenden.**

**a. "Grading & Drainage Plan", sheet 1 of 4, dated August 14, 1995, last revised August 3, 1998**
**b. "Grading & Drainage Plan", sheet 2 of 4, dated August 14, 1995, last revised August 3, 1998**
**c. "Typical Section & Details", sheet 3 of 4, dated August 14, 1995, last revised September 1, 1996**

**The actions shown on the above referenced plans are hereby approved with the exception of the wetland mitigation shown. See Special Condition 1 below regarding mitigation. This authorization is valid for five years from the date of this approval. The permittee shall allow an authorized Program representative the right to inspect the construction site.**

The applicant or other affected party, if aggrieved by this decision to authorize the activities specified in this correspondence, may request a hearing on this decision by submitting a written request for an administrative hearing to the Office of Legal Affairs, Attention: Adjudicatory Hearing Requests, Department of Environmental Protection, P. O. Box 402, Trenton, New Jersey 08625-0402 within 30 days of the date of this decision.

Special Conditions:

1. This WQC requires mitigation for the disturbance of 53.5 acres of wetlands. Mitigation shall be accomplished in one of the following ways (either item a or item b immediately below):

a. In lieu of mitigation to be approved by the Land Use Regulation Program of the NJDEP, F.D.P Enterprises may submit a mitigation plan to the Army Corps of Engineers (ACOE) for the ACOE's approval. As part of this option, at the same time that F.D.P Enterprise submits any such mitigation plan to the ACOE, F.D.P Enterprises shall also submit to the NJDEP a complete copy of said mitigation plan and all proposed amendments to its mitigation plan, so that NJDEP can offer its own comments to the ACOE. NJDEP acknowledges receipt of a copy of a proposed mitigation plan submitted by F.D.P. Enterprises to the ACOE on September 10, 1996. Any ACOE approved mitigation plan shall be deemed to have met any mitigation requirement NJDEP has imposed.

b. At least six (6) months prior to construction F.D.P Enterprises shall submit a revised mitigation plan to the Land Use Regulation Program, which demonstrates, to the Department's satisfaction, that wetlands/open water mitigation area will be of equal ecological value to the wetlands and open water eliminated by project related fill, as determined through the proper use of an acceptable wetlands assessment method.

i. Construction of the wetland mitigation project must begin prior to or concurrently with permitted activities disturbing any wetlands as authorized by the permit.

ii. The permittee shall obtain a secured bond, or other surety acceptable to the Department including an irrevocable letter of credit or money in escrow, that shall be sufficient to hire an independent contractor to complete and maintain the proposed mitigation should the permittee default. The performance bond for the construction of the proposed mitigation shall be posted in an amount equal to 115 percent of the estimated cost of construction of the mitigation activity. In addition, a maintenance bond to assure the success of the mitigation shall be posted in amount equal to 30 percent of the estimated cost of construction. The performance and maintenance bond will be reviewed annually and shall be adjusted to reflect current economic factors. (<u>The Department procedures for posting and releasing the bonds are attached to the permit.</u> I anticipate using this last underlined sentence at some point in the future. At the present time the procedures are not developed);

iii. This permit DOES NOTBECOME EFFECTIVE until the permittee provides the Department with a copy of a deed restriction, that has been registered with the Hudson County Clerk (the Registrar of Deeds and Mortgages if applicable). That deed restriction will provide that no regulated activities will occur in the created wetlands area or it's associated transition area.

iv. Immediately following final grading and planting of the wetland mitigation project, F.D.P. Enterprises shall notify the Land Use Regulation Program, in writing, that the construction of the mitigation project is complete. In addition to the notice, submit photos with a photo location map of the completed project. If the mitigation project has been constructed in conformance with the approved plan, the performance

financial surety will be released within 60 days of the date that the notice of completion is received by the Program.

v. F.D.P. Enterprises shall monitor the wetland mitigation project for 3 years after the wetland mitigation project has been constructed. Monitoring reports will be submitted to the Land Use Regulation Program no later than September 15th of each monitoring year (Monitoring report requirements are attached to this authorization).

vi. The third and final monitoring report will include the following information:

1. Documentation to demonstrate that the goals of the wetland mitigation project, as stated in the approved wetland mitigation proposal and the authorization, have been satisfied. Documentation will also include a field wetland delineation of the wetland mitigation project based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989);

2. Evidence to document 85 percent survival and 85 percent areal coverage of the mitigation plantings.

vii. Once the required monitoring period has expired AND the applicant has submitted the final monitoring report, the Program will make the finding (in writing and within 60 days of receipt of the monitoring report) that the mitigation project is either a success or a failure. THIS MITIGATION PROJECT WILL BE CONSIDERED SUCCESSFUL IF THE APPLICANT DEMONSTRATES THAT EMERGENT WETLANDS, OPEN WATERS AND UPLAND ISLANDS HAVE BEEN CREATED IN THE RATIO APPROVED BY MIMAC. THE SITE HAS AN 85 PERCENT SURVIVAL AND 85 PERCENT AREAL COVERAGE OF THE MITIGATION PLANTINGS AND THE MITIGATION SITE MEETS THE GOALS AS STIPULATED IN THE MITIGATION PROPOSAL. Areas dominated by Phragmites shall not be considered successful. All remaining financial surety will be released concurrent with the Program notifying the applicant that the mitigation project is a success.

viii. If the mitigation project is considered a failure, the applicant is required to submit a revised mitigation plan to rectify the wetland mitigation site. The applicant will have 60 days to submit said plan following receipt of the letter from the Program indicating the wetland mitigation project was a failure. The financial surety will not be released by the Program until such time that the applicant satisfies the success criteria as stipulated in above item.

ix. The mitigation site will be subdivided and deeded to a State agency or conservation group approved by the Program.

x. Both the enhancement and mitigation plans will be carried out prior to or concurrent with the construction of the proposed project.

xi. Both the enhancement and mitigation plans will be carried out at the permittee's expense.

3. The applicant must notify the Land Use Regulation Program, in writing, at least 14 days in advance of the start of construction of this project.

4. Any discharge of fill material shall consist of suitable material free from toxic pollutants.

5. The project must meet Soil Erosion and Sediment Control Standards and be approved by the local soil conservation district.

6. It should be noted that a Stream Encroachment Permit (file # 0906-92-0006.2) was issued jointly with the original water quality certificate which will expire on December 26, 2000. Please be advised that unless the activities proposed under the Stream Encroachment Permit have been completed or are no longer proposed, an application for a valid Stream Encroachment Permit should be submitted.

Please review this approval and note any conditions which may have been imposed and promptly return the attached acceptance form to the Department at the above address. In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies.

If you should have any question regarding this authorization, please contact David Bean of my staff at the above address or at (609) 777-0454. Be sure to include the file number in any and all correspondence.

Approved by:

[signature]
Richard H. Kropp, Director
Land Use Regulation Program

12/20/00
Date

c. Municipal Clerk
Municipal Construction Official
James Cannon, USACOE, New York District
Mary Anne Theising, USEPA, Region II
Ken Scarlattelli, HMDC

**NJDEP Stream Encroachment Permit No. 0906-92-0006.6**

**July 30, 2001**

ease return recorded copy to: Kevin J. Coakley, Esq. Connell Foley LLP
Livingston Avenue
seland, New Jersey 07068

STATE OF NEW JERSEY

DEPARTMENT OF ENVIRONMENTAL PROTECTION
*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. ~~0909~~ 9905-92-0006.6 | Application No. | |
| Issuance Date JUL 30 2001 | Effective Date JUL 30 2001 | Expiration Date JUL 30 2006 |
| Name and Address of Applicant<br>FD&P Enterprises<br>2200 Secaucus Road<br>North Bergen, NJ 07047 | Name and Address of Owner | Name and Address of Operator |
| Location of Activity/Facility *(Street Address)*<br>Lot ________ Block ________ | Issuing Division<br>Land Use Regulation Program | Statute(s)<br>NJSA 13:1D-1<br>NJSA 58:10A-1<br>NJSA 58:16A-50<br>et. seq. |
| Type of Permit<br>Stream Encroachment | Maximum Approved Capacity, if applicable | |

This permit grants permission to:

construct two stormwater outfall structures along the westerly side of the Penhorn Creek, in connection with proposed intermodal terminal and container storage area, at a location immediately downstream of Secaucus Road crossing of said stream, within Lot Nos. 1, 6 and 12; 1; 1; 1 of Block Nos. 1000; 1001; 1002; 1050 respectively, in the City of Jersey City, Hudson County, New Jersey.

Prepared By: [signature]
Govind Ramamurthy

(See page 4 for Manager's signature.)

| Revised Date | Approved by the Department of Environmental Protection |
|---|---|
| | Name (Print or Type) ____________ Title ____________ |
| | Signature ____________ Date ____________ |

**The word permit means "approval, certification, registration, etc."*

(General Conditions are on the Reverse Side.)

G0100300595

**This permit is subject to the following general conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of this permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

STREAM ENCROACHMENT PERMIT 0909-92-0006.6

TERMS AND CONDITIONS:

IN ADDITION TO THE GENERAL CONDITIONS PRINTED ON THE BACK OF PAGE ONE OF THIS PERMIT, THE FOLLOWING CONDITIONS SHALL ALSO APPLY:

9. Limit and Extent of Approval

a. This approval grants permission to the applicant and/or its agents to undertake an activity regulated by the State of New Jersey as described by the text of this permit and as detailed by the herein approved plans. Any construction, grading, removal of vegetation, or other activity at this site within or affecting a regulated flood plain, other than specifically approved by this permit or as detailed by the approved drawings, shall require additional approvals from the Department. The commencement of such regulated activities without the appropriate approvals shall be in violation of State law.

b. All activities authorized by this permit shall be completed within five years of the issuance date as listed on the first page of this document. At that time, this approval, if not previously revoked, shall automatically become null and void, and none of the activities referenced herein may commence or continue until a new approval has been granted by the Department.

10. Method of Construction

a. All activities approved by this permit shall be performed under the supervision and direction of a Professional Engineer licensed in the State of New Jersey, and shall be undertaken using the best management practices available. Furthermore, the site shall be subject to inspection at any time by representatives of the Department to ensure the continuous application of the provisions of this permit.

b. During the course of construction, neither the applicant nor its agents shall cause or permit any unreasonable interference with the free flow of the stream by placing or dumping any materials, equipment, debris or structures within or adjacent to the stream corridor. Upon completion or abandonment of the work, the applicant and/or its agents shall remove and dispose of in a lawful manner all excess materials, equipment and debris from the stream corridor and adjacent lands.

c. All activities authorized by this permit shall be stabilized in accordance with <u>Standards for Soil Erosion and Sediment Control in New Jersey</u> (obtainable from local Soil Conservation District Offices), or equal engineering specifications, to prevent eroded soil and sediment from entering adjacent waterways and wetlands at any time during

and subsequent to construction. The Department reserves the right to order the suspension of any activity if unacceptable levels of erosion or turbidity result from the same. Furthermore, the applicant shall maintain the stream corridor as shown on the approved drawing/s for either such time as is required for the channel and/or banks to become reasonably stabilized, or for one year after completion of the project (as evidenced by a Certificate of Completion), whichever period of time is longer.

11. Responsibilities of Applicant

a. The granting of this permit does not in any way relieve the applicant and/or its agents from the responsibility for damages caused by any construction or activities hereby approved, nor does the Department accept responsibility for any structural designs.

b. No construction authorized by this permit may begin until the enclosed permit acceptance form has been signed by the applicant and is returned to the Department. By signing and submitting this form, the applicant accepts this permit in its entirety and agrees to adhere to all of its terms and conditions. Please be advised that this permit may be declared null and void should it be determined that adequate measures had not been taken by the applicant and/or its agents to ensure the continuous implementation of these terms and conditions.

c. Within ten (10) days of the receipt of this permit by the applicant, this permit shall be recorded in its entirety in the office of the County Clerk or the Registrar of Deeds and Mortgages for each county where this permit is located. Verified notice of this action shall be forwarded to the Department immediately thereafter.

d. The enclosed construction notice shall be completed by the applicant or its agent and submitted to the Department at least fourteen (14) days prior to the commencement of the herein approved activities.

e. The enclosed completion report shall be completed by a Professional Engineer licensed in the State of New Jersey and submitted to the Department within thirty (30) days after completion of the herein approved activities.

12. All excavated material must be disposed of in a lawful manner outside of any regulated flood plain, open water, freshwater wetlands or adjacent transition areas, and in such a way as to not interfere with the positive drainage of the receiving area.

STREAM ENCROACHMENT PERMIT 0909-92-0006.6

TERMS AND CONDITIONS:

13. All necessary local, Federal, and other State approvals must be obtained by the applicant prior to the commencement of the herein permitted activities. Approvals from the following may be required: Hudson County Soil Conservation District

14. The drawings hereby approved are four (4) sheets prepared by Ernst, Ernst and Lissenden, dated August 14, 1995, unless otherwise noted, entitled:

"PROPERTY OF F.D.P. ENTERPRISES BLOCK 1000-LOTS 1, 6, & 12 BLOCK 1001-LOT 1 BLOCK 1002-LOT 1 BLOCK 1050-LOT 1 JERSEY CITY . HUDSON COUNTY . NEW JERSEY";

"GRADING & DRAINAGE PLAN", drawing no. 1 of 4, last revised July 19, 2001 and drawing no. 2 of 4, last revised February 14, 2001,

"TYPICAL SECTION & DETAILS", drawing no. 3 of 4, last revised February 14, 2001, and

"WETLANDS CREATION AND ENHANCEMENT AREAS TYPICAL SECTIONS", drawing no. 4 of 4, unrevised.

Christopher Jones for
Robert B. Piel, Jr., Manager
Bureau of Inland Regulation

7/30/01
Date

**Hudson-Passaic-Essex Soil Conservation District approval No. 202-H-1722**

**February 6, 2003**

**Arthur S. Fletcher**

**Subject:** FW:

-----Original Message-----
From: Dan Morrow [mailto:morrowd@cleanearthinc.com]
Sent: Friday, July 28, 2006 2:48 PM
To: Arthur S. Fletcher
Cc: Sands Steve
Subject: RE:

Art,

I just confirmed that the property owner of the FDP Site has already submitted the renewal application for the Soil Conservation District approval that will expire in August.

Thanks,
Dan

# HUDSON-ESSEX-PASSAIC SOIL CONSERVATION DISTRICT

New Jersey Natural Resources Conservation Program

15 BLOOMFIELD AVENUE
NORTH CALDWELL NJ 07006
Telephone: (973) 364-0786
Fax: (973) 364-0784

February 6, 2003

F.,D.P. Enterprises
2200 Secaucus Road
North Bergen, NJ07047

Re: F.D.P. Enterprises Intermodal Container
Block 1000-1001-1001-1050 Lots I, 6 & 12 2-1-
-1-1, Secaucus Road, Jersey City, NJ
HEP File: 202-H-1722
Plan dtd: 1-22-2003

Dear Madam/Sir:

The District has completed the review of the soil erosion and sediment control plan for the above referenced Project and hereby reports that the plan meets the Standards for Soil Erosion and Sediment Control in New Jersey (N.J.A.C.2:90-1.1 et.seq:, promulgated pursuant to the New Jersey Soil Erosion and Sediment Control Act, N.J.S.A. 4:24-39 et seq.). Accordingly, the plan has been certified by the Hudson-Essex-Passaic Soil Conservation District subject to the following conditions:

- The District must be notified by mail 48 hours prior to the commencement of any land disturbance or construction activity.
- A copy of the certified plan must be kept on the job site at all times.
- The applicant or contractor must request a final inspection (once landscaping and final soil stabilization is complete) prior to seeking a temporary or permanent Certificate of Occupancy.
- The District must be provided with written notification of any conveyance of this project, subject property, or portions thereof, including individual residential lots if applicable. Said notice must provide the names, addresses, and telephone of subsequent owners.
- The District must be informed of address and or telephone number changes of owners, agents responsible for site construction, and job supervisors.

Please be advised that the Soil Erosion and Sediment Control Act authorizes the issuance of stop construction orders and penalties of up to $3000 per day for violations of the certified plan or of failure to comply with the aforementioned requirements. Please be further advised that any conveyance of this project or portions thereof will transfer full responsibility for compliance with the certified plan to subsequent owners.

Please contact the District if you require assistance implementing the certified soil erosion and sediment Control plan. This certification is valid for 3-1/2 years and is limited to controls specified in this plan. It is not authorization to engage in the proposed land use unless such use has been previously approved by the municipality or other controlling agency.

Yours truly,

Richard Neidwonitus
Chairman

03-005
perm:16

# State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Division of Remediation Management & Response
Northern Bureau of Field Operations
2 Babcock Place
West Orange, New Jersey 07052

Bradley M. Campbell
Commissioner

RECEIVED
SEP 2 9 2003
By ____________

Clean Earth Dreging Technologies
334 South Warminster Road
Hatboro, Pennsylvania 19040
Att: Daniel Morrow

Sub: Remedial Action Workplan
FDP Enterprises Site
2525 Secaucus Road, Secaucus, Hudson County
DRMR Case# 03-07-15-2327-24

September 24,2003

Dear Mr. Morrow:

Pursuant to the Memorandum of Agreement dated July 25,2003 between FDP Enterprises LLC (FDP) and the New Jersey Department of Environmental Protection (Department), this office has received and completed its review of the referenced report dated August 2003. Based on this office's review, the following comments are offered.

The submitted report presents historical information, relevant issued permits and a conceptual plan for the filling and enhancement of approximately 83 acres of upland and wetlands at the subject location. Based on the submitted information, approximately 1.5 million cubic yards of material is to be imported to facilitate development of the property. Given the volume of material that will be required a listing of six different types of material for importation is listed in section 3 - Proposed Fill Acceptance Criteria located on page 5 of the report. Conceptually, this office has no objection to the categories established in the referenced section for importation with the following noted exception. The referenced section refers to an Alternate Fill Acceptance Criteria as defined in the table within the Proposed Alternate Fill Acceptance Criteria (PAFAC). Based on a review of the numbers listed in the PAFAC, this office finds the levels to be greater than those currently found in the limited sampling performed at the site and as such can not accept the PAFAC as specified. Given the preceding statement, this office as an interim measure will accept the importation of material that meets the Nonresidential Direct Contact Soil Cleanup Criteria (NRDCSCC) as specified on page 12 of the report or material that does not exceed the current soil levels as specified in Table 1 on page 3 of the report. Based on the specific conditions at the site, this office will pursue development of a revised PAFAC and anticipates being able to propose a revised PAFAC within four (4) weeks. This approval does not waive the requirement that FDP pursue any additional approvals required for this activity from local, county, state or federal agencies.

If you have any questions concerning the contents of this correspondence, please contact me at (973)669-3973.

Sincerely,

Gary Greulich
Supervising Env Specialist

c: Frank Folise, FDP Enterprises
Richard DeWan, NJDEP-ODST
File

## FDP ENTERPRISES INTERMODAL CONTAINER FACILITY IMPROVEMENT PROJECT

## FILL MATERIAL ACCEPTANCE CRITERIA

*(Revised 09/29/03)*

The goals of the FDP Enterprises Intermodal Container Facility Improvement Project are to cap the existing historic fill present at the site and to fill the site to grades suitable for future development. Fill materials proposed to be accepted at the site for beneficial use shall meet the Fill Acceptance Criteria contained herein. Where no Alternate Fill Acceptance Criteria is indicated, the proposed fill shall meet the NJDEP non-residential direct contact soil cleanup criteria (NRDCSCC) at a minimum. No hazardous wastes shall be accepted as fill.

The listing contained represents the combination of Tables 3-2 and 7-1 from the Department of Environmental Protection and Energy's February 3, 1992 proposed rule entitled Cleanup Standards for Contaminated Sites, N.J.A.C. 7:26D, latest version as revised 5/12/99. Please refer to the respective footnotes for more detail. Based on an evaluation of site-specific background data (historic fill) and project-specific human health impact analysis including short-term direct contact worker exposure during the construction phase only (approximately 6.5 years maximum), FDP has received Department approval for the Alternate Fill Criteria specified herein for specific constituents that may exceed the NRDCSCC for beneficial use as grading fill at the site.

| Contaminant | CASRN | Non-Residential Direct Contact Soil Cleanup Criteria (a) (b) (NRDCSCC) | Approved Alternate Fill Acceptance Criteria (AFAC) |
|---|---|---|---|
| Acenaphthene | 83-32-9 | 10000(c) | |
| Acetone (2-propanone) | 67-64-1 | 1000(d) | |
| Acrylonitrile | 107-13-1 | 5 | |
| [redacted] | | | |
| Arsenic | 7440-38-2 | 20 (e) | |
| Barium | 7440-39-3 | 47000(n) | |
| Benzene | 71-43-2 | 13 | |
| [redacted] | | | |
| Benzo(k)fluoranthene | 207-08-9 | 4 | |
| Benzyl Alcohol | 100-51-6 | 10000(c) | |
| Beryllium | 7440-41-7 | 2 (e) | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| Bis(2-chloroethyl)ether | 111-44-4 | [illegible] | |
| Bis(2-chloroisopropyl)ether | 108-60-1 | 1000 (c) | |
| Bis(2-ethylhexyl) phthalate | 117-81-7 | 210 | |
| Bromodichloromethane) | 75-27-4 | 46 | |
| Bromoform | 75-25-2 | 370 | |
| Bromomethane | 74-83-9 | 1000 (d) | |
| 2-Butanone (MEK) | 78-93-3 | 1000 (d) | |
| Butylbenzylphthalate | 85-68-7 | 10000 (c) | |
| Cadmium | 7440-43-9 | 100 | |
| Carbon tetrachloride | 56-23-5 | 4 (k) | |
| 4-Chloroaniline (*p*-Chloroaniline) | 106-47-8 | 4200 | |
| Chlorobenzene | 108-90-7 | 680 | |
| Chloroform | 67-66-3 | 28 (k) | |
| 4-Chloro-3-methylphenol | 59-50-7 | 10000 (c) | |
| Chloromethane (Methyl chloride) | 74-87-3 | 1000 (d) | |
| 2-Chlorophenol | 95-57-8 | 5200 | |
| Chromium – hexavalent (VI) | 18540-29-9 | 6100; 20 (g); (l) | |
| Chromium – trivalent (III) | 16065-83-1 | (l) | |
| Chrysene | 218-01-9 | [illegible] | |
| Copper | 7440-50-8 | 600 (m) | |
| Cyanide | 57-12-5 | [illegible] | |
| 4,4'-DDD (p,p'-TDE) | 72-54-8 | 12 | |
| 4,4'-DDE (p,p'-DDX) | 72-55-9 | 9 | |
| 4,4'-DDT | 50-29-3 | 9 | |
| Dibenz(a,h)anthracene | 53-70-3 | [illegible] | |
| Dibromochloromethane | 124-48-1 | 1000 (d) | |
| Di-n-butyl phthalate | 84-74-2 | 10000 (c) | |
| Di-n-octyl phthalate | 117-84-0 | 10000 (c) | |
| 1,2-Dichlorobenzene | 95-50-1 | 10000 (c) | |
| 1,3-Dichlorobenzene | 541-73-1 | 10000 (c) | |
| 1,4-Dichlorobenzene | 106-46-7 | 10000 (c) | |
| 3,3'-Dichlorobenzidine | 91-94-1 | [illegible] | |
| 1,1-Dichloroethane | 75-34-3 | 1000 (d) | |
| 1,2-Dichloroethane | 107-06-2 | 24 | |
| 1,1-Dichloroethene | 75-35-4 | 150 | |
| 1,2-Dichloroethene (trans) | 156-60-5 | 1000 (d) | |
| 1,2-Dichloroethene (cis) | 156-59-2 | 1000 (d) | |
| 2,4-Dichlorophenol | 120-83-2 | 3100 | |
| 1,2-Dichloropropane | 78-87-5 | 43 | |
| 1,3-Dichloropropene(cis and trans) | 542-75-6 | 5 (k) | |
| Dieldrin | 60-57-1 | 0.18 | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| Diethyl phthalate | 84-66-2 | 10000 (c) | |
| 2,4-Dimethylphenol | 105-67-9 | 10000 (c) | |
| Dimethyl phthalate | 131-11-3 | 10000 (c) | |
| 2,4-Dinitrophenol | 51-28-5 | 2100 | |
| Dinitrotoluene(2,4-/2,6-mixture) | 25321-14-6 | 4 (l) | |
| Endosulfan | 115-29-7 | 6200 | |
| Endrin | 72-20-8 | 310 | |
| Ethylbenzene | 100-41-4 | 1000 (d) | |
| Fluoranthene | 206-44-0 | 10000 (c) | |
| Fluorene | 86-73-7 | 10000 (c) | |
| Heptachlor | 76-44-8 | 0.65 | |
| Hexachlorobenzene | 118-74-1 | 2 | |
| Hexachlorobutadiene | 87-68-3 | [illegible] | |
| Hexachlorocyclopentadiene | 77-47-4 | [illegible] | |
| Hexachloroethane | 67-72-1 | 100 | |
| Indeno(1,2,3-cd)pyrene | 193-39-5 | 4 | |
| Isophorone | 78-59-1 | 10000 (c) | |
| Lead | 7439-92-1 | 600 (q) | 1240 |
| Lindane (gamma BHC) (gamma HCH) | 58-89-9 | [illegible] | |
| 2-Methylphenol (o-creosol) | 95-48-7 | 10000 (c) | |
| 4-Methylphenol (*p*-creosol) | 106-44-5 | 10000 (c) | |
| Methoxychlor | 72-43-5 | 5200 | |
| Mercury | 7439-97-6 | 270 | |
| 4-Methyl-2-pentanone | 108-10-1 | 1000 (d) | |
| Methylene chloride | 75-09-2 | 210 | |
| Naphthalene | 91-20-3 | 4200 | |
| Nickel | 7440-02-0 | 2400 (k) (n) | |
| Nitrobenzene | 98-95-3 | 520 | |
| N-Nitrosodiphenylamine | 86-30-6 | 600 | |
| N-Nitrosodi-n-propylamine | 621-64-7 | 0.66 (l) | |
| PCBs | 1336-36-3 | 2 | |
| Pentachlorophenol | 87-86-5 | [illegible] | |
| Phenol | 108-95-2 | 10000 (c) | |
| Pyrene | 129-00-0 | 10000 (c) | |
| Selenium | 7782-49-2 | 3100 (n) | |
| Silver | 7440-22-4 | [illegible] (n) | |
| Styrene | 100-42-5 | 97 | |
| 1,1,1,2-Tetrachloroethane | 630-20-6 | 310 | |
| 1,1,2,2-Tetrachloroethane | 79-34-5 | 70 (k) | |
| Tetrachloroethene (PCE) | 127-18-4 | 6 (k) | |
| Thallium | 7440-28-0 | 2 (f) | |

| Contaminant | CASRN | (NRDCSCC ) | (AFAC) |
|---|---|---|---|
| [redacted] | | | |
| [redacted] | | | |
| [redacted] | | | |
| 1,1,1-Trichloroethane | 71-55-6 | 1000 (d) | |
| 1,1,2-Trichloroethane | 79-00-5 | 420 | |
| Trichloroethene (TCE) | 79-01-6 | 54 (k) | |
| [redacted] | | | |
| [redacted] | | | |
| Vanadium | 7440-62-2 | 7100 (n) | |
| Vinyl chloride | 75-01-4 | 7 | |
| [redacted] | | | |
| [redacted] | | | |

**Footnotes:**

(a) Criteria are health based using an incidental ingestion exposure pathway except noted below.
(b) Criteria are subject to change based on site specific factors (e.g., aquifer classification, soil type, natural background, environmental impacts, etc.).
(c) Health based criterion exceeds the 10,000 mg/kg maximum for total organic contaminants.
(d) Health based criterion exceeds the 1000 mg/kg maximum for total volatile organic contaminants.
(e) Cleanup standard proposal was based on natural background.
(f) Health based criterion is lower than analytical limits; cleanup criterion based on practical quantitation level.
(g) Criterion based on the inhalation exposure pathway.
(h) The impact to ground water values for inorganic constituents will be developed based upon site specific chemical and physical parameters.
(i) Site specific determination required for SCC for the allergic contact dermatitis exposure pathway.
(j) Contaminant not regulated for this exposure pathway.
(k) Criteria based on inhalation exposure pathway, which yielded a more stringent criterion than the incidental ingestion exposure pathway.
(l) No criterion derived for this contaminant.
(m) Criterion based on ecological (phytotoxicity) effects.
(n) Level of the human health based criterion is such that evaluation for potential environmental impacts on a site by site basis is recommended.
(o) Level of the criterion is such that evaluation for potential acute exposure hazard is recommended.
(p) Criterion based on the USEPA Integrated Exposure Uptake Biokinetic (IEUBK) model utilizing the default parameters. The concentration is considered to protect 95% of target population (children) at a blood lead level of 10 ug/dl.
(q) Criteria were derived from a model developed by the Society for Environmental Geochemistry and Health (SEGH) and were designed to be protective for adults in the workplace.
(r) Insufficient information available to calculate impact to ground water criteria.
(s) Criterion based on new drinking water standard.
(t) Total concentrationof PAHs with this footnote shall not exceed 200mg/kg.

APPENDIX 5

# APPENDIX 5

## ENCAP GOLF

(1)

# DEPARTMENT OF THE ARMY PERMIT

rmittee: Hackensack Meadowlands Development Commission
One DeKorte Park Plaza
Lyndhurst, New Jersey 07071 (201) 460-1700

EnCap Golf Holdings, LLC
100 North Tampa Street, Suite 2150
Tampa, Florida 33602 (813) 222-3656

Permit No.: 2000-00381

Issuing Office: New York District, U.S. Army Corps of Engineers

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description:

The project area includes the Avon, Lyndhurst, Rutherford and Kingsland landfills. ctivities described in this permit are authorized in each of the seven work areas ied below. Authorized activities are subject to the attached drawings and Special Conditions (A) through (U).

(1). Avon Landfill - Discharge dredged or fill material into 3.43 acres of waters of the United States to facilitate remedial landfill closure activities, and the upgrade of existing culverts.

(2). Lyndhurst Landfill - Discharge dredged or fill material into 4.06 acr of waters of the United States to facilitate remedial landfill closure activities, an the upgrade of existing culverts.

(3). Rutherford Landfill - Discharge dredged or fill material into 1.11 acres c waters of the United States to facilitate remedial landfill closure activities.

(4). Vehicular Haul Road - Discharge dredged or fill material into 0.3 acres waters of the United States to facilitate the construction and installation of vehicular haul road across Berry's Creek.

(5). Dredging Area - Dredge approximately 43,000 cubic yards of sediment from a 1, foot long by approximately 90 to 140 foot wide area for the creation of a ba mooring area with a maximum depth of -14 feet below the plane of Mean Low Wate the mouth of Berry's Creek along the Hackensack River.

(6). Barge Mooring Area - Regrade up to 1.0 acre of existing intertidal/sub shallows and uplands to create up to 1.5 acres of intertidal and subtidal shal Install two (2) 180 linear foot sections of steel sheet bulkheading. Tempor install the following: twenty one (21) concrete filled, 24 inch diameter mooring dolphins; two (2) 40 foot long by 90 foot long floating barge platfo 330 foot long by 40 foot wide stake boat; and six (6) 24 inch diameter steel m dolphins.



-wlands Development Commission, EnCap Golf H
into waters of the United States, dre

ERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

IT NO.: 2000-00381

(7). Wetland Mitigation Area - Perform approximately 30 acres of wetland enhancement at a ratio of 3:1, to compensate for permanent wetland impacts associated with the 3.9 acres of fill identified above. Mitigation will be performed along Berry's Creek and adjacent to the Rutherford Landfill in high marsh and low marsh areas and in approximately 2 acres of intertidal and subtidal shallows. Mitigation to be performed in this area is in addition to mitigation to be performed in intertidal/subtidal shallows in the Barge Mooring Area identified above.

Project Location: IN: Hackensack River and Berry's Creek

AT: Township of Lyndhurst, Borough of North Arlington, and Borough of Rutherford, Bergen County, New Jersey

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on December 31, 2007. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the mitted activity, although you may make a good faith transfer to a third party in compliance with ral Condition 4 below. Should you wish to cease to maintain the authorized activity or should you re to abandon it without a good faith transfer, you must obtain a modification of this permit from office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and state coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization.

5. If a conditioned water quality certification has been issued for your project, you must comply with the conditions specified in the certification as special conditions to this permit. For your convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of your permit.

Special Conditions:

(A) On or before August 1, 2001, and prior to commencing any constructi activities authorized by this permit, the permittees shall submit to the New Yo District Corps of Engineers a detailed comprehensive schedule of all authoriz construction activities associated with the Remedial Action Work Plan/Closure Pla (RAW/CP) for the Avon, Lyndhurst and Rutherford landfills, and the wetland mitigati plan for our review. In addition, on or before August 15, 2001, and prior commencing any construction activities associated with the RAW/CP's or the wetla mitigation plan, representatives of the permittees shall meet with representati f the New York District. The purpose of this pre-construction meeting is ablish full and complete understanding of all permit requirements including t edule of all phases of the RAW/CP construction and the wetland mitigation pl

so as to insure compliance with all of the terms and conditions of this permit. This group of representatives may be reconvened by the New York District when necessary during construction activities to review progress and share information.

(B) Prior to commencing construction or fill activities as authorized by this permit at the Avon, Lyndhurst, or Rutherford landfills, the permittees shall submit to the New York District verification that the RAW/CP for those work areas that have received approval from the New Jersey Department of Environmental Protection (NJDEP) to perform the landfill remediation activities. This verification submittal shall include the RAW/CP approvals and shall depict all temporary and permanent fill locations in wetlands and waters of the United States (including acreages) for each area. Construction activities within wetlands and waters of the United States associated with each NJDEP approved RAW/CP submittal shall not begin until the permittees have received written notice from the New York District to proceed. The verification submittals shall be provided to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

(C) Prior to commencing construction or fill activities as authorized by this permit, the permittees shall submit two copies of a detailed wetland mitigation plan to the New York District to the same address that appears in Special Condition (B). Construction activities within the wetland mitigation area shall not begin until the permittees have received written notice to proceed from the New York District. In addition, the construction activities associated with the wetland mitigation plan shall begin prior to or concurrent with the other construction or fill activities as authorized by this permit. A copy of the permittee's final wetland mitigation plan and all associated monitoring reports shall be submitted to the National Marine Fisheries Service at the following address:

U.S. Department of Commerce
National Marine Fisheries Service
Attention: Stanley Gorski
Magruder Road, Building 74
Sandy Hook Laboratory
Highlands, New Jersey 07732

(D) The permittees shall ensure that all plantings associated with the wetland mitigation effort meet the federal wetland criteria outlined in the "U.S. Army Corps of Engineers Wetlands Delineation Manual", dated January 1987. All enhanced wetland areas shall have an eighty-five (85) percent survival and coverage rate of hydrophytic plants (those with a regional indicator status of FAC, FAC+, FACW +/-, or OBL in the "National List of Plant Species That Occur in Wetlands, Northeast [Region 1]" published by the U.S. Fish and Wildlife Service). If the eighty-five (85) percent survival and coverage rate is not met at the end of the second growing season following each phase, the permittee shall take all necessary measures to ensure such a level of survival and coverage by the end of the next growing season, including re-planting and re-grading if necessary. In addition, in areas where no individual plantings are proposed, if appropriate and sufficient vegetation is not

PERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

naturally present by the end of the second growing season, the permittees shall take all necessary steps, including individual plantings, in order to achieve a plant density that would meet the goal and objectives of the wetland enhancement plan.

(E) The permittees shall provide to the New York District as-built construction drawings of the wetland enhancement areas at the mitigation site and those areas along the Hackensack River and Berry's Creek adjacent to the temporary barge mooring area. The as-built drawings shall include all aspects of the final grading elevations and planting arrangements of the wetland mitigation sites. The date as-built construction drawings shall be provided will be determined by the New York District at the pre-construction meeting identified in Special Condition (A). All enhanced wetlands and Waters of the United States located within the designated wetland mitigation areas shall be dedicated solely for the purposes of compensating wetland impacts associated with the activities authorized by this permit.

(F) The permittees shall provide to the New York District annual reports on the status of the wetland enhancement activities, prepared during the growing season, no later than October 15 of each of the five (5) years following commencement of the work authorized by this permit. All data for each report must be collected between June 15 and September 15 of the same year it is submitted. These reports shall include the following at a minimum:

i. All plant species (along with their estimated relative frequency and percent cover) shall be identified by using plots measuring 1 meter square with at least one representative plot located in each habitat ecotone within the mitigation site. The location of each plot shall be identified on the plan view of the as-built engineering drawings for the project.

ii. Vegetation cover maps, at a scale of one inch equals 100 feet or larger scale, shall be prepared for each growing season.

iii. Photographs showing all representative areas of the mitigation site shall be taken at least once each year during the period between June 15 and September 15.

(G) The permittees shall accomplish corrective work as directed by the New York District, should the District determine that the wetland mitigation has not achieved the established wetland enhancement goals set forth in Special Condition (D) above. If the New York District does not find the wetland mitigation has achieved these goals, an extension of monitoring time may be required to cover any necessary remedial work. Should the New York District determine that the intended performance standards for the site have not been achieved, corrective plans, including revised construction drawings detailing the corrective work to be performed, shall be submitted to the District for review and approval within 60 days of the permittees' receiving a written notice of deficiencies from the District. If corrective measures are required, the permittees shall provide as-built construction drawings within 60 days of completing the additional work.

(H) The permittees shall execute a conservation easement on the wetland mitigation site located between Berry's Creek and the Rutherford landfill haul road as indicated in the drawing entitled "Proposed Mitigation Area, Brownfield

PERMITTEE: Hackensack Meadowlands Development Commission,
EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

Remediation Project, Bergen County, New Jersey", Sheet 24 of 25, to guarantee the site's preservation for wetland and wildlife resources in perpetuity. The conservation easement, in a form approved by the New York District, shall be executed and recorded with the Bergen County Registrar of Deeds by December 31, 2005. A copy of the easement shall be provided to the New York District within 1 month after the date of recording.

(I) The permittees shall not undertake any dredging activities between April 1 and June 30 of any calendar year.

(J) During project construction, the permittees shall avoid to the maximum extent practicable those areas utilized by New Jersey State threatened and endangered species to ensure that impacts to these species are minimal.

(K) The permittees shall undertake the authorized filling activities in a manner aimed at reducing impacts upon the general environment. In addition, the permittees shall not stockpile fill or other materials in a manner conducive to erosion, or in areas likely to cause high turbidity runoff during storm events. The permittees shall use all practicable measures during construction (e.g. silt fences, hay bales, erosion control netting, vegetative stabilization) to stabilize all exposed soils immediately upon the completion of each phase of the grading activities in each area. The permittees shall install appropriate temporary fencing around all wetlands and other sensitive ecological areas during construction periods, to prevent equipment and personnel from entering these areas.

(L) In accordance with a schedule to be determined by the New York District at the pre-construction meeting identified in Special Condition (A), the permittees shall restore all temporary impacted wetlands and waters of the United States to pre-construction grade and reseed with native wetland vegetation where appropriate.

(M) Within 15 days prior to the initiation of dredging under this permit, four engineering-size, certified and sealed copies and one electronic file copy of pre-dredge surveys of all areas to be dredged, containing digital data in State Plan coordinates (NAD83/feet [MLW], shall be provided to the New York District. These surveys must have the authorized and intended dredge areas outlined, and a calculation of the total volume of dredged material to be removed. The surveys shall be delivered via express mail service or hand delivered to the same address that appears in Special Condition (B).

(N) Within 30 days of completing the dredging activities, the permittees shall submit four, engineering size, certified and sealed copies and one electronic file copy of post-dredge surveys, containing digital data in State Plane coordinates (NAD83/feet [MLW]), to the New York District. These surveys must have the authorized and actual dredged areas outlined, and exact volume calculations of dredged material that has been removed from the Hackensack River and Berry's Creek. These surveys shall be delivered via express mail service or hand delivered to the same address that appears in Special Condition (B).

(O) (1) No less than thirty (30) days before commencement of construction in the Dredging or Barge Mooring Area, the permittees shall notify the United States Coast Guard office (USCG) of the project's start and completion dates, the hours

PERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

of the day the work will be performed, the names of the vessels on-scene, the VHF radio channel(s) for monitoring, and the project's point of contact available 24 hours a day. The permittees shall also contact the USCG Activities New York Facility Inspection Branch at (718) 354-4116 to schedule a facility inspection.

(2) Prior to the commencement of construction in the Dredging or Barge Mooring Area, the permittees shall inform local waterway users of the conduct of the project, using the "Local Notice to Mariners". Information required to be provided in the Local Notice to Mariners can be found at HTTP://www.navcen.uscg.mil. This information may be faxed to (617) 223-8073.

(3) The permittees shall advise the National Oceanic and Atmospheric Administration (NOAA) of the project completion date and specifications so that NOAA may initiate the appropriate chart corrections. This information may be faxed to (301) 713-4516.

(4) The permittees shall verify, in writing, compliance with all notices to USCG and NOAA as described above, within five (5) days of each such notice. Verification shall be delivered to the same address that appears in Special Condition (B).

(5) Outdoor lighting shall be located or shielded so that it is not confused with any aids to navigation and does not interfere with navigation on adjacent waterway.

(P) All dredging activities shall be undertaken in such a manner as to avoid large refuse piles, ridges across the bed of the waterway or deep holes that may have a tendency to cause injury to adjacent channels or wharves.

(Q) The permittees shall respond to all reasonable requests for information from the New York District, and shall provide necessary field support during field investigations and permit compliance inspections.

(R) Within ninety (90) days of cessation of operations at the processed dredged material treatment facility, the permittees shall remove all structures associated with the processed dredged material treatment facility from waters of the United States. Structures to be removed include the crane barge platforms and piles, associated barges, and steel/concrete mooring dolphins including dolphins associated with the temporary stake barge mooring area. In addition, the permittees shall remove the two 180 linear foot steel sheet bulkheads unless the permittees can demonstrate to the satisfaction of New York District that the bulkheads should be incorporated into the overall redevelopment or remediation of the site.

(S) The permittees shall display a copy of this permit on all vessels engaged in dredging, transporting and disposal of dredged material authorized by this permit.

(T) The permittees understands and agrees that, if future operations by the United States require the removal, relocation, or other alteration, of the structure or work herein authorized, or if, in the opinion of the Secretary of

the Army or his authorized representative, said structure or work shall cause unreasonable obstruction to the free navigation of the navigable waters, the permittee will be required, upon due notice from the Corps of Engineers, to remove, relocate, or alter the structural work or obstructions caused thereby, without expense to the United States. No claim shall be made against the United States on account of any such removal or alteration.

(U) The permittees shall comply with all of the conditions and stipulations contained within the attached New Jersey Department of Environmental Protection Water Quality Certificate and Coastal Zone Consistency Determination dated December 28, 2000 (Permit No. 0200-00-0001.2 and Permit No. 0200-00-0001.1) and amended January 3, 2001.

**Further Information:**

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

(X) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S. Code 403).

(X) Section 404 of the Clean Water Act (33 U.S. Code 1344).

( ) Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization:

a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.

b. This permit does not grant any property rights or exclusive privileges.

c. This permit does not authorize any injury to the property or rights of others.

d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability: In issuing this permit, the Federal Government does not assume any liability for the following:

a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

d. Design or construction deficiencies associated with the permitted work.

e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision: This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

a. You fail to comply with the terms and conditions of this permit.

PERMITTEE: Hackensack Meadowlands Development Commission, EnCap Golf Holdings, LLC

PERMIT NO.: 2000-00381

b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions: General Condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

Alan Steinberg — 4-03-01

(PERMITTEE) (DATE)

Alan Steinberg, Executive Director
Hackensack Meadowlands Development Commission

William H. Gauger III — 4-3-01

(PERMITTEE) (DATE)

William H. Gauger, President
EnCap Golf Holdings, LLC

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

William H. Pearce — 5 April 01

(DISTRICT ENGINEER) (DATE)

William H. Pearce
Colonel, Corps of Engineers
District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below. A copy of the permit signed by the transferee should be sent to this office.