②

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

AUG 3 0 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Request for Permit Modification of Department of the Army Permit Number 2000-00381-1

Mr. Jeffery W. Cappola
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Dear Mr. Cappola:

In accordance with the provisions of Section 10 of the Rivers and Harbors Act of 1899 (33 USC 403) and Section 404 of the Clean Water Act (33 USC 1344), the New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC, were issued Department of the Army (DA) Permit Number 2000-00381 by the District Engineer on April 5, 2001. This permit authorized remedial landfill closure activities as part of a New Jersey Department of Environmental Protection (NJDEP) approved Brownfield Redevelopment Project for the existing Avon, Rutherford, Lyndhurst and Kingsland landfills. The project area included approximately 752 acres in the Township of Lyndhurst, the Borough of North Arlington, and the Borough of Rutherford, Bergen County, New Jersey.

A subsequent permit modification dated August 1, 2001 authorized the extension of a required preconstruction meeting from August 15, 2001 to August 31, 2001 with the New York District Corps of Engineers to occur. This became known as Department of the Army Permit No 2000-00381-1.

On October 3, 2001, the New York District received a request to modify the permit which would result in the discharge of additional fill material into waters of the United States. This revision would be consistent with the permittee's remedial landfill closure plans for the Avon, Lyndhurst and Rutherford landfills which were approved by the NJDEP. As part of these revisions, three additional adjacent sites designated as the Buckley Broadcasting site, the Viola site, and the UPS site would be remediated as part of the overall Brownfield Redevelopment Project. Additional activities associated with the permit modification request included the relocation of a previously authorized haul road over Berry's Creek; the construction and installation of a new haul road over Fish Creek; and the removal of a deteriorated tide gate located at the mouth of Bucks Creek. On January 7, 2002, the New York District, Corps of Engineers issued a jurisdictional determination for these three additional adjacent sites which increased the overall Brownfield Redevelopment Project area to 860.59 acres. In addition, the permittee indicated that based on the revised remedial landfill

closure plans, the construction and installation of a processed dredged material treatment facility, barge mooring area, and the associated dredging activities within Berry's Creek and the Hackensack River would no longer be required.

The permittee's revised remedial landfill closure plans for the Avon, Lyndhurst and Rutherford landfills, are designated on the construction drawings entitled, "HMDC/EnCap Redevelopment Project, Revised and Temporary Wetland Impact Areas", Sheets 1 through 8, prepared by Dru Associates, Inc., and dated May 3, 2002, "Meadowlands Golf Redevelopment Project, Lyndhurst and Rutherford Landfill Remediation Design, Regulatory Submission, Lyndhurst and Rutherford, New Jersey, Over All Plan", Sheets C-00 through C-20, prepared by Paulus, Sokolowski and Sartor, LLC, dated June 8, 2001, and last revised April 26, 2002, "Box Culvert Conceptual Design for Berry's Creek, Fish Creek, and Van Winkle Ditch", Sheets 1, 2, 3, and 5, prepared by Stephen H. Mitchell, dated March 22, 2002, "Berry's Creek Bridge Plan and Profile, Elevation and Section", Figure 4, prepared by Harding ESE, dated May 21, 2002, and "WOR Radio 710 AM, 1440 Broadway, New York, New York, 10018, WOR Tower Relocation", Sheets T-1, EC-1, and C-1 through C-5, prepared by Aerial Spectrum, dated May 7, 2002. These landfill closure plans indicate that as a result of the reduction in wetland fill acreages and the inclusion of the landfill closure activities for the three additional sites, the amount of permanent fill in tidal waters of the United States and adjacent tidal wetlands has increased approximately 1.08 acres from 8.9 acres to 9.98 acres. Approximately 21.48 acres of tidal waters of the United States and adjacent tidal wetlands would be temporarily disturbed during the implementation of the remedial landfill closure activities and restored upon completion of the project.

The activities associated with the remediation of the Buckley Broadcasting site will include: the relocation of the three existing and active radio transmission towers; associated guy anchors and copper radials, a transmission facility, and access roads. The remedial activities associated with the Viola site will include: capping a portion of the existing Viola Ditch and relocating it to an adjacent area to maintain tidal flow to Van Winkle Ditch; and the relocation of five Rose City radio transmission towers (currently situated in uplands) to an upland area located off site. The remedial activities associated with the Buckley Broadcasting site and the Viola site will be included as part of the Lyndhurst landfill closure plan. The remedial activities associated with the UPS site including the relocation of a previously authorized vehicular haul road over Berry's Creek, the construction and installation of a new vehicular haul road bridge over Fish Creek, and the demolition and removal of an existing deteriorated tide gate located at the mouth of Bucks Creek will be part of the Rutherford landfill closure plan.

Based upon our review of the revised remedial landfill closure plans and associated permanent impacts, and the elimination of the barge mooring area and dredging activities within the Hackensack River and Berry's Creek, and the associated

compensatory mitigation which included the establishment of intertidal and subtidal shallows within the barge mooring area and the wetland mitigation area, the New York District Corps of Engineers has concluded that the proposed activities associated with the remediation of the Buckley Broadcasting site, the Viola site, and the UPS site would not be contrary to the general public interest. Therefore, the subject permit is hereby specifically modified to reflect the following:

(1). Avon Landfill - Discharge dredged or fill material into approximately 0.85 acres of waters of the United States to facilitate remedial landfill closure activities, upgrade existing culverts at Bucks Creek and demolish and remove from jurisdictional waters of the United States an existing deteriorated tide gate from Bucks Creek.

(2). Lyndhurst Landfill - Discharge dredged or fill material into approximately 6.56 acres of waters of the United States to facilitate the following remedial landfill closure activities which include the placement of an impervious cap over approximately 770 linear feet of Viola Ditch, and relocate and restore approximately 560 linear feet of the ditch to allow tidal flow to Van Winkle Ditch; upgrade existing culverts (Van Winkle Ditch); the placement of an impervious cap over the former Buckley Broadcasting site; and relocate the existing active WOR radio station to a site located between the Rutherford Landfill haul road and New Jersey Transit's active Bergen Railroad Line adjacent to Fish Creek. WOR radio station relocation activities will include the discharge of fill material into wetlands and waters of the United States to facilitate the construction and installation of three (3) approximately 700 foot high WOR radio transmission towers with nine (9) associated guy anchors, three (3) permanent access roads including two (2) culverted road crossings, and an associated transmission building with associated paved parking area totalling approximately 125 feet wide by 210 feet long. Eight (8) temporary access roads impacting approximately 1.5 acres of waters of the United States shall be constructed and installed to allow construction equipment access to the site. Upon completion of the installation activities the temporary access roads shall be removed, and the temporarily impacted wetlands shall be restored to pre-construction elevations and reseeded with native vegetation where appropriate.

(3). Rutherford Landfill - Discharge dredged or fill material into 2.57 acres of waters of the United States to facilitate remedial landfill closure activities, relocate a previously authorized vehicular haul road across Berry's Creek, and construct and install a vehicular haul road across Fish Creek. Upgrade existing culverts at Fish Creek and Berry's Creek.

(4). Wetland Mitigation Area - Perform approximately 30 acres of wetland enhancement at a ratio of 3:1, to compensate for permanent wetland impacts associated with the 9.98 acres of fill identified above.

As a result the revised activities associated with the DA permit modification, Special Conditions "I", "M", "N", "O", "P", "R", and "S" will no longer be required due to the elimination of the construction activities associated with the processed dredged material treatment facility, associated barge mooring area, and the dredging activities within the Hackensack River and Berry's Creek. In addition, Special Condition "E" and "U" are hereby modified to reflect the following:

(E) The permittees shall provide to the New York District as-built construction drawings of the wetland enhancement areas at the mitigation site. The as-built drawings shall include all aspects of the final grading elevations and planting arrangements of the wetland mitigation site, and shall be provided to the New York District Corps of Engineers 60 days from the initial planting completion date specified in the detailed project construction schedule. All enhanced wetlands and Waters of the United States located within the designated wetland mitigation area shall be dedicated solely for the purposes of compensating wetland impacts associated with the activities authorized by this permit. The as-built drawings shall be provided to the following address:

Chief, Regulatory Branch
New York District U.S. Army Corps of Engineers
Jacob K. Javits Federal Building
New York, New York 10278-0090

(U) The permittees shall comply with all of the conditions and stipulations contained within the attached New Jersey Department of Environmental Protection Water Quality Certificate and Coastal Zone Consistency Determination Permit No. 0200-00-0001.2 and 0200-00-0001.1 dated December 28, 2000, amended January 3, 2001, and August 15, 2002, Permit No. 0256-02-0003.1 dated June 27, 2002, Permit No. 0200-00-0005.1, dated July 19, 2002, and Permit No. 0232-02-0001.1, dated July 23, 2002.

All other permit conditions to which the authorized work was made subject shall remain in effect. This letter shall be added to all copies of the permit, including those at the site.

If any questions should arise concerning this matter, please contact James H. Cannon, of my staff, at (212) 264-0185.

Sincerely,

"For and in behalf of"
John B. O'Dowd
Colonel, U.S. Army
District Engineer

Enclosures

Cf: NJMC
NJDEP
CENAN-OP-RH

(3)

**DEPARTMENT OF THE ARMY**
NEW YORK DISTRICT, CORPS OF ENGINEERS
JACOB K. JAVITS FEDERAL BUILDING
NEW YORK, N.Y. 10278-0090

SEP 03 2002

REPLY TO
ATTENTION OF:
Regulatory Branch

SUBJECT: Permit Application Number 2000-00381 by Hackensack Meadowlands Development Commission and EnCap Golf Holdings, LLC

Mr. Jeffery W. Cappola
DeCotiis, Fitzpatrick, Gluck, Hayden & Cole
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, New Jersey 07666

Dear Mr. Cappola:

On April 5, 2001, the New York District Corps of Engineers issued a Department of the Army permit (DA) to the Hackensack Meadowlands Development Commission and EnCap Golf Holdings, LLC authorizing the discharge of fill material into approximately 8.9 acres of wetlands and waters of the United States to perform remedial landfill closure activities as part of a New Jersey Department of Environmental Protection (NJDEP) approved Brownfield Redevelopment Project for the existing Avon, Rutherford, Lyndhurst and Kingsland landfills. The project area included approximately 752 acres in the Township of Lyndhurst, the Borough of North Arlington, and the Borough of Rutherford, Bergen County, New Jersey.

On January 7, 2002, the New York District, Corps of Engineers issued a jurisdictional determination for the inclusion of three additional adjacent parcels located within the Lyndhurst Landfill (the Buckley Broadcasting site, the UPS site, the Viola site) and totaling approximately 108.59 acres. The inclusion of the three sites increased the Brownfield Redevelopment Project from 752 acres to 860.59 acres.

A subsequent permit modification dated August 30, 2002, authorized additional work associated with the remedial landfill closure activities for the Brownfield Redevelopment Project. This permit modification included the remediation of the Buckley Broadcasting site, the UPS site, and the Viola site. Additional authorized activities included the relocation of a previously authorized haul road; the construction and installation of a new haul road, and the removal of a deteriorated tide gate. In addition, the permittee's indicated that based on the revised remedial landfill closure plans, the construction and installation of a processed dredged material treatment facility, barge mooring area, and the associated dredging activities within Berry's Creek and the Hackensack River would no longer be required. As a result of the permit modification authorization

the impacts to wetlands and waters of the United States associated with the Brownfield Redevelopment project was increased from 8.9 acres to 9.98 acres.

On May 9, 2002, the New York District Corps of Engineers received the permittee's final wetland mitigation plan in accordance with Special Condition (C) of the above referenced permit authorization. The wetland mitigation report entitled "Final Wetlands Mitigation Plan", dated June 2001, and revised May 6, 2002, and the associated drawings entitled "Final Wetlands Mitigation Plan for Meadowlands Golf Redevelopment Project, Borough of Rutherford, Bergen County New Jersey, USACE Permit #2000-00238, Prepared for EnCap Holdings, LLC and the New Jersey Meadowlands Commission", Sheets C-1 through C-9, prepared by Paulus Sokolowski and Sartor, LLC, dated May 26, 2001 and last revised May 8, 2002 indicates approximately 48.01 acres of enhancements activities would take place along Berry's Creek, including the restoration of approximately 21.48 acres of wetlands temporarily disturbed as part of the remedial landfill closure activities.

Based on our review of the above referenced compensatory wetland mitigation plan, it has been determined that the referenced plan complies with Special Condition "C" of the subject authorization. It has been additionally determined that the 1.08 acres of additional wetland impacts associated with the August 30, 2002 permit modification authorization would be adequately compensated as part of the permittee's wetland mitigation plan. You are therefore authorized to begin work under the terms and conditions of the above referenced DA permit authorization.

If any questions should arise concerning this matter, please contact James H. Cannon, of my staff, at (212) 264-0185.

Sincerely,

Richard L. Tomer

Richard L. Tomer
Action Chief, Regulatory Branch

Cf: NJMC
NJDEP
CENAN-OP-RH



G0100300623

(14)

# State of New Jersey

James E. McGreevey
*Governor*

Department of Environmental Protection
Office of Dredging and Sediment Technology
Site Remediation Program
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

RECEIVED JAN 2 3

January 19, 2003

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Gluck & Cole
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Acceptable Use Determination (AUD)
Applicant: EnCap Golf Holdings, LLC
Project: Placement of Dredged Material and Processed Dredged Material (PDM) as part of the Remediation and Proper Closure of the Avon, Lyndhurst and Rutherford Landfills

Dear Mr. Cappola:

The above referenced AUD dated November 1, 2002 was received by the New Jersey Department of Environmental Protection's (NJDEP or the Department) Office of Dredging and Sediment Technology (OD&ST or the Office) on November 8, 2002. Your application requests an approval to utilize dredged material (DM) and Processed Dredged Material (PDM) on the above referenced Avon, Lyndhurst and Rutherford Landfills as part of the Revised Remedial Action Workplan/Closure Plan (RAW/CP) and Major Landfill Disruption Approval Application Approval (s) issued by the NJDEP on October 29, 2002. Your application is hereby approved subject to the conditions contained herein.

**Project Description**

This application requests authorization to utilize dredged material and processed dredged material from the New York/New Jersey Harbor as part of the described remediation/closure. This Acceptable Use Determination Approval (AUD Approval) is only for the placement of the DM and PDM pursuant to Appendix E of the NJDEP Technical Manual entitled *The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters*. EnCap Golf Holdings, LLC (EnCap) entered into a Memorandum of Agreement (MOA) effective on March 20, 2000 (amended on June 5, 2001 and September 26, 2002) to remediate the Avon, Lyndhurst and Rutherford Landfills. The above referenced RAW/CPs provide that the placement of PDM and DM shall be accommodated during the implementation of remedial/closure activities of the Avon, Lyndhurst and Rutherford Landfills. EnCap has proposed a remedy to properly close these landfills that utilizes processed dredged material (and other approved recyclables) as a shaping and grading layer as part of the engineering controls at these landfills. PDM will also be used to construct the barrier layer which will divide the lower shaping and grading layers from the upper cover system which will consist of a vegetative fill layer and a growth layer. The Fill Protocol Approval dated December 18, 2001 sets forth the conditions upon which PDM and other specified recyclables may be accepted for placement under the barrier layer and the November 7, 2002 Fill Protocol Approval Addendum sets forth the conditions upon which materials may be accepted at these sites for use above the barrier layer (cover systems) and outside of the containment systems (engineering controls.)

This AUD Approval is only for the placement of PDM and DM at the referenced sites. Any Processor of dredged material and/or dredger is required to obtain a separate AUD to either process dredged material and/or to bring dredged material to this site from a specific, permitted project. In particular, the Processor's AUD will contain the bulk of the technical and regulatory information required pursuant to Appendix E of the NJDEP's Dredging Technical Manual in order to be allowed to bring PDM (or DM) to the EnCap site.

## ACCEPTABLE USE DETERMINATION CONDITIONS

1. This AUD Approval is for the placement of a minimum of 3,219,600 cubic yards ($yd^3$) of processed dredged material at the Avon, Lyndhurst and Rutherford Landfills. Should EnCap accept any dredged material that does not require processing prior to placement below the barrier layer, this volume of unprocessed dredged material will count towards this permitted volume. Any processed or unprocessed dredged material accepted at this site for placement above the barrier layer and/or outside of the containment/engineering controls will not count towards the 3,219,600 $yd^3$ permitted capacity.

2. EnCap shall implement the preventative measures for dust suppression during the placement of dredged material at the above referenced sites in full accordance with the RAW/CP approvals and the Soil Erosion and Sediment Control Plan Approval.

3. All dredged material, either processed or unprocessed, that will be delivered to the site(s) shall have an AUD from the NJDEP, OD&ST prior to being accepted at the EnCap site.

4. All dredged material, either processed or unprocessed shall be analyzed according to the protocol specified in the December 18, 2001 and November 7, 2002 Fill Protocol Approvals.

5. As stated in item #1 above, this AUD Approval is for the placement of a minimum of 3,219,600 $yd^3$ of processed dredged material at this site. Any proposed changes in this volume will require a formal written modification request and subsequent written approval by the NJDEP prior to delivery and placement at this site.

6. The permittee shall comply with all conditions and requirements of the Remedial Action Workplan Approvals (RAWPs) and/or Closure Plan Approvals as previously issued by the NJDEP and any amendments thereto.

7. Any major accidental release of (processed) dredged material or end product in areas in non-placement areas (i.e. surface waters of the state, etc.) at this site shall be immediately reported to the NJDEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action taken to mitigate the discharge and any other information the Department may request at the time of the notification.

8. EnCap Golf Holdings, LLC shall submit a semiannual report which details the preceding six months of operation/placement at this site. This report shall contain, but not be limited too, volumes of material placed as well as location(s) of placement.

9. A Construction Schedule was provided with the AUD application. Please be advised that the approved Construction Schedule is a component/requirement of the previously referenced RAWPs and/or Closure Plan Approvals and is not subject to this AUD approval.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Suzanne U. Dietrick, Acting Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, Executive Director, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers
Richard Gimello, Executive Director, NJMR

16

**PERMIT RESPONSE FORM**

**New Jersey Department Of Environmental Protection**
**Environmental Regulation**
**Air Quality Permitting Program**
**P.O. Box 027**
**Trenton, NJ 08625-0027**

November 08, 2001

James Hockensmith
ENCAP Golf Holdings
Glenpointe Centre West
500 Frank W. Burr Blvd
Teaneck, NJ 07666

RE: Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment, ENCAP GOLF HOLDINGS LLC (Facility ID No.: 02800), Bergen County, Activity: Construction of New Source (Permit Activity ID No.: PCP010002)

Dear Sir/Madam:

On 08/29/2001, the Department of Environmental Protection (Department) received your application for a "Permit to Construct, Install, or Alter, and Certificate to Operate Control Apparatus or Equipment" designated Lyndhurst-Rutherford LFG). On 10/29/2001, the Department approved this permit application an effective start date of 10/29/2001 and an effective end date (expiration date) of 10/28/2006.

The Department hereby issues this permit and certificate to you under the authority of chapter 106, P.L. 1967 (N.J.S.A. 26:2C-9.2). You may construct, install or alter the control apparatus or equipment as indicated on the application referenced above. You may also operate the equipment in accordance with the attached conditions.

Enclosed you will find a diskette that contains an electronic version of this approved permit. This electronic version of the application MUST NOT be modified and used in submitting future permit modifications or amendments applications. All future modifications and amendments MUST be submitted to the Department using a NEW RADIUS application showing only the new or modified changes to the permit.

If you have any questions regarding this document, please contact the Bureau of New Source Review at (609) 292-6716. Questions regarding the Certificate to Operate should be directed to the Regional Office.

Sincerely,

Louis Mikolajczyk, Chief
Bureau of New Source Review

MD.DOC
18/01 4:44 PM

(18)

State of New Jersey

[...]es E. McGreevey
Governor

RECEIVED
JUL 25 2002

Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

July 19, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Gluck & Cole
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Modification to Stream Encroachment Permit and Water Quality Certification
**Application No: 0200-00-0005.1**
Applicant: EnCap Golf Holdings, LLC
Project: Construction of Bridge across Berry's Creek and the remediation of additional properties not previously approved

Dear Mr. Cappola:

Enclosed, please find an approved Modification to the Stream Encroachment Permit and Water Quality Certificate for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, NY District, US Army Corps of Engineers

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0200-02-0005.1 | Application No. 0200-02-0005.1 | |
| Issuance Date: July 19, 2002 | Effective Date: July 19, 2002 | Expiration Date: July 19, 2007 |
| Name and Address of Applicant<br>EnCap Golf Holdings, LLC<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 | Name and Address of Owner<br>New Jersey Meadowlands Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator:<br>EnCap Golf Holdings, LLC<br>c/o Mr. Jeffrey Cappola,<br>500 Frank Burr Blvd.<br>Teaneck, N.J. 07666 |
| Location of Activity/Facility: Township of Lyndhurst: Block 231, Lots 9 (portion), 15, 16 (portion) Block 233, Lots 1,5,6.01,6.02, 9 (portion), 16.01 (portion), 16.02, 17, 18 Block 235, Lots 29 (portion) and 30 Rutherford: Block 220, Lot 15.02 | Issuing Division:<br>Office of Dredging and Sediment Technology | Statute(s): NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |
| Type of Permit: Modification to the Stream Encroachment Permit and Water Quality Certificate | Maximum Approved Capacity, if applicable | |

**This permit modification grants permission to:** The New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the Hackensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from the New York/New Jersey harbor complex. To facilitate the remediation of these landfills, EnCap proposes to construct a bridge across Berry's Creek in a location different from the previously approved location and to perform remedial activities in areas not previously approved in the area known as the Viola Tract (Viola Area.) Wetland Impacts include approximately 0.67 acres of temporary impacts and 0.03 acres of permanent impacts on Block 233, Lots 1, 5, 6.01, 6.02, 16.01 (portion), 16.02, 17 and 18. There will also be 0.30 acres of temporary impacts on Block 233, Lot 9 (portion), 0.04 acres of temporary impacts on Block 220, Lot 15.02, and 0.13 acres of temporary impacts and 0.01 acres of permanent wetland impacts on Block 231, Lot 9. All of these lots and blocks are located in the township of Lyndhurst. The previously approved Wetland Mitigation Plan has enough capacity to address these areas at a 3:1 ratio. A Tidelands License was issued for these properties on April 8, 2002. This permit does *NOT* include remedial activities in the Viola Ditch, which is subject to a separate permit action.

Please note that the Plans submitted on behalf of this application indicate that other remedial activities will also be occurring on additional lots and blocks that are not included as part of this permit. This is part of the overall strategy that was previously agreed upon wherein the applicant would submit one set of plans for all reviews; both permitting and as part of the Site Remediation case oversight. Therefore, while certain plans will be cited as part of this approval, the approval is limited to activities only on those above referenced lots and blocks (Township of Lyndhurst: Block 231, Lots 15, 16 (portion), Block 233, Lot 9 (portion), 29 (portion), 30 and Township of Rutherford: Block 220, Lot 15.02) found within the cited plans.

Prepared By: [signature]
Richard DeWan

(See page 9 for Chief's signature.)

Approved by the Department of Environmental Protection

Name (Print or Type) ______________________ Title ______________________

Signature ______________________ Date ______________________

*The word permit means "approval, certification, registration, etc."*

*(General Conditions are on Page Two)*

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | | |
|---|---|---|
| Permit No. 0256-02-0003.1 WFD 020001 | Application No. 0256-02-0003.1 WFD 020001 | |
| Issuance Date: June 27, 2002 | Effective Date: June 27, 2002 | Expiration Date: June 27, 2007 |
| Name and Address of Applicant<br>EnCap Golf Holdings LLC c/o Mr. Jeffrey Cappola, Esq.<br>500 Frank Burr Blvd.<br>Glenpointe Centre West<br>Teaneck, N.J. 07061 | Name and Address of Owner<br>New Jersey Meadowlands Commission<br>1 Dekorte Park Plaza<br>Lyndhurst, N.J. 07071 | Name and Address of Operator<br>Buckley Broadcasting Corp. c/o<br>Mr. Thomas O'Connor, Esq.<br>300 Lighting Way<br>Secaucus, N.J. 07601 |
| Location of Activity/Facility: Township of Lyndhurst: Block 231, Lots 9 & 10<br>Borough of Rutherford: Block 220, Lots 8, 9, 10, 11 and 12 | Issuing Division:<br>Office of Dredging and Sediment Technology | Statute(s): NJSA 12:5-3<br>NJSA 58:10A<br>NJSA 58-16A-50 et seq. |
| Type of Permit Waterfront Development, Water Quality Certificate, Stream Encroachment Permit, Coastal Zone Consistency | Maximum Approved Capacity, if applicable | |

**This permit grants permission to:** The New Jersey Meadowlands Commission (NJMC) and EnCap Golf Holdings, LLC to undertake a Brownfield redevelopment project that involves the remediation of three landfills within the Hackensack Meadowlands District. The remedial strategy envisioned for these landfills is capping with dredged materials from the New York/New Jersey harbor complex. To facilitate the remediation of these landfills, EnCap and Buckley Broadcasting Corp. (Buckley) propose to remove the WOR Radio 710 AM radio towers from the current location in the Township of Lyndhurst, Block 231, Lots 9 and 10, which is a landfill, and cap that site as part of the landfill remediation for the Meadowlands Golf Redevelopment Project. The proposed site for the construction of the new radio towers is located at Block 220, Lots 8, 9, 10, 11 and 12 in the Borough of Rutherford, approximately 3,000 feet from the existing tower location. According to the application, the purpose and need for this project is to facilitate the implementation of a remediation/closure plan for the Lyndhurst Landfill. The proposed activities are as follows: 1) the construction of three (3) 700' guyed towers, each with a 10' x 15' accessory (detuning) building, each in a 50' x 50' compound. The compound will be contained in an 8' high chain-link fence. 2) Three (3) guy anchors per tower. Each guy anchor will be approximately 480' from its respective tower and will be contained in a 20' x 20' fenced compound. 3) A 35' x 70' transmission (TX) building in a 125' x 210' compound. The TX building will have a power and telecommunications connection from the nearest public utility. 4) Each tower will have radio transmission, power and telecommunications connections. 5) Permanent access roads will be installed from the public access to the TX building and tower compounds. 6) Three permanent culverts will be constructed at locations shown on Sheet C-1 in Section 10 of the application. 7) Each guy anchor compound will have a temporary construction access road connection to the public way or construction access to the project. 8) The relocation will also include a future sewer and water supply connection to the TX building. Wetland Impacts include 1.583 acres of temporary impacts and 1.210 acres of permanent impacts. The previously approved Wetland Mitigation Plan has enough capacity to address these areas at a 3:1 ratio. A Tidelands License was issued for these properties on April 8, 2002. These radio towers transmit 24 hours a day, seven days a week and provide a benefit of broadcasting the public of emergency notices. The copper radial grounding system is required to be inundated with water at all times which requires that they be embedded 1" below surface. Finally, the towers must be located as close as possible to the original tower location because of the frequency to its receptors and must be outside of the flight paths of Teterboro and Newark airports. After evaluating 17 potential sites, the alternative analysis determined that this site is the best location for these towers.

Prepared By: [signature]
Richard DeWan

(See page 10 for Chief's signature.)

G0100300630

(7)

RECEIVED
JUL 3 2002

James E. McGreevey
Governor

State of New Jersey
Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028 Trenton, NJ 08625
(609) 292-1250 FAX (609) 777-1914

Bradley M. Campbell
Commissioner

June 26, 2002

Mr. Jeffrey Cappola, Esq.
DeCotiis, FitzPatrick, Gluck & Cole, LLP
Glenpointe Centre West 500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Waterfront Development Permit, Stream Encroachment Permit, Water Quality Certification and Coastal Zone Consistency Determination
Application No: 0256-02-0003.1 WFD 020001
Applicant: EnCap Golf Holdings, LLC and Buckley Broadcasting Corporation
Project: Relocation of WOR Radio 710 AM radio towers to facilitate the remediation of a former landfill as part of the Meadowlands Golf Redevelopment

Dear Mr. Cappola:

Enclosed, please find an approved Waterfront Development Permit, Water Quality Certificate, Stream Encroachment Permit and Coastal Zone Consistency Determination for the above referenced project. Please review this permit and note any conditions which may have been imposed, and have the applicant promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Lawrence J. Baier

Lawrence J. Baier, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Thomas O' Connor, Esq.
Robert Ceberio, NJMC
Michael Kenney, NJDEP, BCM
James Cannon, New York District, US Army Corps of Engineers

State of New Jersey
Department of Environmental Protection
Office of Dredging and Sediment Technology
Site Remediation Program
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

mes B. McGreevey
*Governor*

Bradley M. Campbell
Commissioner

23

April 17, 2003

Mr. Jeffrey Cappola, Esq.
DeCotiis, Fitzpatrick, Cole & Wisler
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, N.J. 07666

RE: Acceptable Use Determination (AUD)
Applicant: EnCap Golf Holdings, LLC
Project: Placement of Dredged Material and Processed Dredged Material (PDM) as part of the Proper Closure of the Kingsland Landfill

Dear Mr. Cappola:

The above referenced AUD application dated March 31, 2003 was received by the New Jersey Department of Environmental Protection's (NJDEP or the Department) Office of Dredging and Sediment Technology (OD&ST or the Office) on April 1, 2003. Your application requests an approval to utilize dredged material (DM) and Processed Dredged Material (PDM) on the above referenced Kingsland Landfill as part of the Closure Plan and Post Closure Plan Approval(s) issued by the NJDEP on January 27, 2003. Your application is hereby approved subject to the conditions contained herein.

**Project Description**

This application requests authorization to utilize dredged material and processed dredged material from the New York/New Jersey Harbor as part of the approved described closure/post-closure of the Kingsland Landfill. This Acceptable Use Determination Approval (AUD Approval) is only for the placement of the DM and PDM pursuant to Appendix E of the NJDEP Technical Manual entitled *The Management and Regulation of Dredging Activities and Dredged Material in New Jersey's Tidal Waters*. EnCap Golf Holdings, LLC (EnCap) entered into a Memorandum of Agreement (MOA) effective on March 20, 2000 (amended on June 5, 2001 and September 26, 2002) to remediate the Avon, Lyndhurst, Rutherford and Kingsland Landfills. The Remedial Action Workplans/Closure Plans (RAW/CPs) associated with those landfills provide that the placement of PDM and DM shall be accommodated during the implementation of remedial/closure activities. An AUD Approval was issued for the Avon, Lyndhurst and Rutherford Landfills on January 17, 2003. Subsequent to the issuance of the RAW/CPs for the Avon, Lyndhurst and Rutherford Landfills, EnCap proposed a remedy to complete the proper closure of the Kingsland landfill utilizing processed dredged material (and other approved recyclables) as part of the final cover system as described in Section 2 of the 1/27/03 Closure Plan and Post-Closure Plan Approval. The Fill Protocol Approval dated December 18, 2001 sets forth the conditions upon which PDM and other specified recyclables may be accepted for placement as part of this cover system and the November 7, 2002 Fill Protocol Approval Addendum sets forth the conditions upon which materials may be accepted at these sites for use above the barrier layer (cover systems) and outside of the containment systems (engineering controls.)

This AUD Approval is only for the placement of PDM and DM at the Kingsland Landfill. Any Processor of dredged material and/or dredger is required to obtain a separate AUD to either process dredged material and/or to bring dredged material to this site from a specific, permitted project. In particular, the Processor's AUD will contain the bulk of the technical and regulatory information required pursuant to Appendix E of the NJDEP's Dredging Technical Manual in order to be allowed to bring PDM (or DM) to the EnCap site.

**ACCEPTABLE USE DETERMINATION CONDITIONS**

1. This AUD Approval is for the placement of 200,000 cubic yards ($yd^3$) of processed dredged material at the Kingsland Landfill. No additional volumes of either processed dredged material or dredged material may be accepted without first obtaining NJDEP written authorization to do so at the Kingsland Landfill.

2. This AUD Approval does not authorize EnCap or any other entity to accept any other material at the Kingsland Landfill.

3. EnCap shall implement the preventative measures for dust suppression during the placement of (processed) dredged material at the above referenced sites in full accordance with the Closure Plan and Post-Closure Plan approvals and the Soil Erosion and Sediment Control Plan Approval from the Bergen County Soil Conservation District.

4. All dredged material, either processed or unprocessed, that will be delivered to the site(s) shall have an AUD from the NJDEP, OD&ST prior to being accepted at any of the 4 Landfill sites (Avon, Rutherford, Lyndhurst or Kingsland.)

5. All dredged material, either processed or unprocessed shall be analyzed according to the protocols specified in the December 18, 2001 and November 7, 2002 Fill Protocol Approvals.

6. As stated in item #1 above, this AUD Approval is for the placement of 200,000 $yd^3$ of processed dredged material at this site. Any proposed changes in this volume will require a formal written modification request and subsequent written approval by the NJDEP prior to delivery and placement at this site.

7. The permittee shall comply with all conditions and requirements of the Closure Plan and Post-Closure Plan Approval for the Kingsland Landfill as previously issued by the NJDEP and any amendments thereto.

8. Any major accidental release of (processed) dredged material or end product in areas in non-placement areas (i.e. surface waters of the state, etc.) at this site shall be immediately reported to the NJDEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action taken to mitigate the discharge and any other information the Department may request at the time of the notification.

9. EnCap Golf Holdings, LLC shall submit a semiannual report which details the preceding six months of operation/placement at this site. This report shall contain, but not be limited too, volumes of material placed as well as location(s) of placement.

10. A Construction Schedule was provided with the AUD application. Please be advised that the approved Construction Schedule is a component/requirement of the previously referenced RAWPs and/or Closure Plan Approvals and is not subject to this AUD approval.

Should you have any questions in this regard, please do not hesitate to contact Richard DeWan at (609) 984-4426.

Sincerely,

Suzanne U. Dietrick, Acting Chief
Office of Dredging and Sediment Technology
Site Remediation Program

C: Robert Ceberio, Executive Director, NJMC
Michael Kenney, NJDEP, BCM
John Edwards, NJDEP, DS&HW
James Cannon, NY District, US Army Corps of Engineers
Richard Gimello, Executive Director, NJMR

New Jersey Natural Resources Conservation Program

BERGEN COUNTY SOIL CONSERVATION DISTRICT

2t

700 Kinderkamack Road
Suite 106
Oradell, New Jersey 07649
Telephone (201) 261-4407
Fax (201) 261-7573

August 5, 2003

Encap Golf Holdings
c/o DeCotis, Fitzpatrick, Gluck & Hyden
Glenpointe Centre West, 500 Frank W. Burr Blvd.
Teaneck, NJ 07666

RE: Lyndhurst Sports Complex
862 Valley Brook Avenue
Block 233, Lots 1,5,6.01,6.02,16.02,17 & 18
Lyndhurst, NJ
Our File #03-B7474

Dear Sir/Madam:

Pursuant to N.J.S.A. 4:24-39 et seq., the N.J. Soil Erosion and Sediment Control Act, the Bergen County Soil Conservation District hereby certifies the Soil Erosion and Sediment Control Plan for the above referenced project, subject to the following:

1. That the applicant carries out all land disturbance activities in accordance with the Standards for Soil Erosion and Sediment Control in New Jersey as promulgated by the State Soil Conservation Committee.
2. The applicant must notify the District office, by mail, at least 48 hours prior to initial land disturbance.
3. The owner/applicant must obtain a District-issued Report of Compliance prior to issuance of any Certificate of Occupancy by the municipality. The District requires advance notice of at least one week for the issuance of a Report of Compliance.
4. Changes in the certified plan relating to, or that will effect land disturbance on the site, must be submitted to the District office for reevaluation and approval.
5. A copy of the certified plan and a copy of these provisions must be kept on the job site at all times.

Failure to comply with any of the above conditions may result in the issuance of a Stop Work Order.

This approval is limited to the soil erosion, sedimentation and related stormwater management controls specified in the plan. It is not authorization to engage in the proposed land use unless such has been previously approved by the municipality or other controlling agency.

RECEIVED
AUG 7 2003

Sincerely yours,

Ronald E. Binaghi, Jr.
District Supervisor

New Jersey Natural Resources Conservation Program

**For District Use Only**

Application Number 0387474

$2450

Certified

AUG 05 2003

# APPLICATION FOR SOIL EROSION AND SEDIMENT CONTROL PLAN CERTIFICATION

The enclosed soil erosion and sediment control plan and supporting information are submitted for certification pursuant to the Soil Erosion and Sediment Control Act, Chapter 251, P.L. 15 as amended (NJSA 4:24-39 et. seq.) An application for certification of a soil erosion and sediment control plan shall include the items listed on the reverse side of this form.

| | | |
|---|---|---|
| Name of Project PROPOSED ATHLETIC FIELDS & PARKING Lyndhurst Sports Complex | Project Location: Municipality Lyndhurst | |
| Project Street Address 862 Valley Brook Avenue | Block 233 | Lot 6.01, 6.02, 16.02, 17 & 18, 1 & 5 |
| Project Owner(s) Name EnCap Golf Holdings, LLC c/o DeCotiis, Fitzpatrick, Gluck, & Hyden | | Phone # 201.907.5288 Fax # 201.928.0183 |
| Project Owner(s) Street Address (No P.O. Box Numbers) GLEN POINTE CENTRE WEST 500 FRANK W. BURR BLVD | City TEANECK | State NJ Zip 07666 |

| | | | |
|---|---|---|---|
| Total Area of Project (Acres) 17.3 | Total Area or Land to be Disturbed (Acres) 16 | No. Dwelling or other Units 2 | Fee $ 2,450 |

| | | | |
|---|---|---|---|
| Plans Prepared by* Langan Engineering and Environmental Services, Inc. | | | Phone # 201.794.6900 Fax # 201.794.0366 |
| Street Address River Drive Center 1 | City Elmwood Park | State NJ | Zip 07407 |

Engineering related items of the Soil Erosion and Sediment Control Plan MUST be prepared by or under the direction of and be sealed by a Professional Engineer or Architect licensed in the State of New Jersey, in accordance with NJAC 13:27-6.1 et. seq.)

Agent Responsible During Construction James T. Hockensmith

Street Address

City State Zip Phone 201-907-5288 Fax # 201-928-0588

The applicant hereby certifies that all soil erosion and sediment control measures are designed in accordance with current Standards for Soil Erosion and Sediment Control in New Jersey and will be installed in accordance with those Standards and the plan as approved by the Soil Conservation District and agrees as follows:

1. To notify the District in writing at least 48 hours in advance of any land disturbance activity. Failure to provide such notification may result in additional inspection fees.
2. To notify the District upon completion of the Project (Note: No certificate of occupancy can be granted until a report of compliance is issued by the District.
3. To maintain a copy of the certified plan on the project site during construction.
4. To allow District agents to go upon project lands for inspection.
5. That any conveyance of this project or portion thereof prior to its completion will transfer full responsibility for compliance with the certified plan to any subsequent owners.
6. To comply with all terms and conditions of this application and certified plan including payment of all fees prescribed by the district fee schedule hereby incorporated by reference.

The applicant hereby acknowledges that structural measures contained in the Soil Erosion and Sediment Control Plan are reviewed for adequacy to reduce offsite soil erosion and sedimentation and not for adequacy of structural design. The applicant shall retain full responsibility for any damages which may result from any construction activity notwithstanding district certification of the subject soil erosion and sediment control plan. It is understood that approval of the plan submitted with this application shall be valid only for the duration of the initial project approval granted by the municipality. All municipal renewals of this project will require submission and approval by the district. In no case shall the approval extend beyond three and one half years at which time resubmission and certification will be required. Soil Erosion and Sediment Control Plan certification is limited to the controls specified in the plan. It is not authorized to engage in the proposed land use unless such use has been previously approved by the municipality or other controlling agency.

1. Applicant Certification*
   [signature] 4/2/03
   Signature Date

   Applicant Name (Print) James T. Hockensmith

2. Receipt of fee, plan and supporting documents is hereby acknowledged:
   [signature] 6/5/03
   Signature of District Official Date

3. Plan determined complete:
   [signature] 8/5/03
   Signature of District Official Date

4. Plan certified, denied or other actions noted. Special Remarks:
   [signature] 8/5/03
   Signature of District Official Date

*Other than project owner, written authorization of owner must be attached

G0100300636

APPENDIX 6

# APPENDIX 6

## PROLOGIS PORT READING BUSINESS PARK SITE

#04-015
Permits -
WDP

# State of New Jersey

Richard J. Codey
*Acting Governor*

Department of Environmental Protection
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625
(609) 292-1250
FAX (609) 777-1914

Bradley M. Campbell
Commissioner

Mr. Glenn Stock
Associate Vice President
Construction Services
Catellus Commercial Development Corporation
3615 Windridge Drive
Doylestown, PA 18901

January 7, 2004

RE: Waterfront Development Permit/Water Quality Certificate/Freshwater Wetlands Statewide General Permit #6, 10B, 11, and 27/Transition Area Averaging Plan/Special Activity Transition Area Waiver/Acceptable Use Determination

| | |
|---|---|
| File No(s): | 1225-04-0008.1 & .2 |
| Applicant: | Catellus Construction Corporation, Port Reading - Woodbridge I&II, LLC |
| Project: | Port Reading Business Park |
| Location: | Block: 1095 Lot(s): 1,2,4 / Block: 1095-C Lot(s): 12, 13, 14, 15, 16B /Block 1095D Lot: i and 1R (Woodbridge Township) Block: 1/ Block: 267, Lots 1 and 4 (Carteret Borough) |

Dear Mr. Stock:

Enclosed, please find an approved Waterfront Development Permit/Water Quality Certificate/Freshwater Wetlands Statewide General Permit #6, 10B, 11, and 27/Transition Area Averaging Plan/Special Activity Transition Area Waiver/Acceptable Use Determination for the above referenced project. Please review this permit and note any conditions which may have been imposed, and promptly complete and return the enclosed "Acceptance of Revocable Construction Permit/s" form to the Department at the above address. This approval is valid for five years from the date of the permit and all terms and conditions of the permit/s are detailed therein. Please note that the permittee must give notice of initiation of construction using the enclosed "Construction Report" form. Notice must be given at least 14 days prior to initiation of construction. Upon completion of construction, the "Completion Report" form must also be completed and submitted to the above address.

Any person who considers himself and herself aggrieved by this permit decision may request a hearing by addressing a written request for such hearing to the following address: Office of Legal Affairs, Department of Environmental Protection, P.O. Box 402, Trenton, New Jersey 08625-0402, Attention Adjudicatory Hearing Requests. This written request must include a completed copy of the attached Administrative Hearing Request Checklist and all information identified in Section III of that list.

In order to promote inter-governmental cooperation in the management of our natural resources, a copy of this decision shall be shared with appropriate local and federal agencies. Should you have any questions in this regard, please do not hesitate to contact me at (609) 292-9203.

Sincerely,

Suzanne U. Dietrick

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology
Site Remediation Program

*New Jersey is an Equal Opportunity Employer*
*Recycled Paper*

Enclosures

C: Bureau of Coastal and Land Use Enforcement – Trenton
Sophie Ettinger - New York District Corps of Engineers
Bureau of Tidelands Management
Mark Walters, SRWM, BCM
Robert Hayton, SRWM BCM
Damian Friebel, LURP

Charles Scott
New Jersey State Historic Preservation Office
P.O. Box 404
Station Plaza 5
501 East State Street, Floor 3
Trenton, NJ 08625

Municipal Clerk – Borough of Woodbridge
One Main Street
Woodbridge, NJ 07095

Municipal Clerk - Borough of Carteret
61 Cooke Avenue
Carteret, NJ 07008

Honorable Frank G. Pelzman
Mayor, Township of Woodbridge
One Main Street
Woodbridge, NJ 07095

Honorable Daniel J. Reiman
Mayor, Borough of Carteret
61 Cooke Avenue
Carteret, NJ 07008

# ADJUDICATORY HEARING REQUEST CHECKLIST AND TRACKING FORM

I. Permit Being Appealed:

______________________________

Facility Name

______________________________ ______________________________

Issuance Date of Final Permit Decision — Permit Number

II. Person Requesting Hearing:

______________________________ ______________________________

Name/Organization — Name of Attorney (if applicable)

______________________________ ______________________________

______________________________ ______________________________

______________________________ ______________________________

Address — Address of Attorney

______________________________ ______________________________

Telephone Number — Telephone Number of Attorney

III. Please include the following information as part of your request:

A. The date the permittee received the permit;
B. A copy of the Denial of Permit and a list of all issues being appealed;
C. The legal and factual questions at issue;
D. A statement as to whether you raised each legal and factual issue during the public comment period;
E. An estimate of the amount of time required for the hearing;
F. A request, if necessary, for a barrier-free hearing location for disabled persons;
G. A clear indication of any willingness to negotiate a settlement with the Department prior to the Department's processing of your hearing request to the Office of Administrative Law; and
H. This form, completed, signed and dated with all of the information listed above, including attachments, to:
   1. Office of Legal Affairs
      ATTENTION: Adjudicatory Hearing Requests
      Department of Environmental Protection
      401 East State Street
      PO Box 402, Trenton, New Jersey 08625-0402
   2. Lawrence Baier, Chief
      Office of Dredging and Sediment Technology
      401 East State Street
      PO Box 028, Trenton, New Jersey 08625-0029
   3. Any other person named on the permit (if you are a permittee under that permit).
   4. The permittee(s) (if you are a person seeking consideration as a party to the action).

IV. Signature: ______________________________ Date: ____________

G0100300641

# CONSTRUCTION REPORT

Mail To:

State of New Jersey
Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625

NJDEP Project Manager: ______________________

Permit Number(s): ______________________

______________________

______________________

Date Issued: ______________________

Applicant: ______________________

Name of Project: ______________________

Municipality/County: ______________________

Date Construction
Is to Begin: ______________________

I hereby give notice that construction will begin on the above noted project on the date stated above (must give at least 14 days notice). Also, as required by condition 7 of the stream encroachment permit, a copy of the above referenced permit/s along with all approved drawings shall be available for inspection at the project site throughout construction.

Engineer's Signature and Seal: ______________________

N.J. License Number: ______________________

Date: ______________________

# COMPLETION REPORT

Mail To:

State of New Jersey
Department of Environmental Protection
Site Remediation Program
Office of Dredging and Sediment Technology
P.O. Box 028
Trenton, NJ 08625

NJDEP Project Manager: ______________________

Permit Number(s): ______________________

______________________

______________________

Date Issued: ______________________

Applicant: ______________________

Name of Project: ______________________

Municipality/County: ______________________

Date of Completion: ______________________

The undersigned hereby certifies that all activities approved by the Department within the above referenced permit/s have been constructed and completed in accordance with the plans approved therein, that said project is in compliance with all terms and conditions of the same, and that all unauthorized encroachments have been removed.

Engineer's Signature and Seal: ______________________

N.J. License Number: ______________________

Date: ______________________

STATE OF NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*(See Issuing Division below)*

# PERMIT*

The New Jersey Department of Environmental Protection grants this permit in accordance with your application, attachments accompanying same application, and applicable laws and regulations. This permit is also subject to the further conditions and stipulations enumerated in the supporting documents which are agreed to by the permittee upon acceptance of the permit.

| | |
|---|---|
| Permit No. 1225-04-0008.1 & .2<br>WFD 040001 IP Upland/FWW040006 FWTW4L/<br>FWW040005 FWTW1/FWW040004 FWGP11/<br>FWW040003 FWGP27/FWW040002 FWGP10B/<br>FWW040001 FWGP6 | Application No. 1225-04-0008.1 & .2<br>WFD 040001 IP Upland/FWW040006 FWTW4L/<br>FWW040005 FWTW1/FWW040004 FWGP11/<br>FWW040003 FWGP27/FWW040002 FWGP10B/<br>FWW040001 FWGP6 |

| | | |
|---|---|---|
| Issuance Date JANUARY 7, 2005 | Effective Date JANUARY 7, 2005 | Expiration Date JANUARY 6, 2010 |
| Name and Address of Applicant<br>Catellus Construction Corporation Port Reading - Woodbridge I & II, LLC<br>201 Mission Street, 2nd Floor<br>San Francisco, California 94105 | Name and Address of Owner<br>Same as applicant | Name and Address of Operator<br>Same As Applicant |
| Location of Activity/Facility *(Street Address)*<br>Port Reading Business Park<br>Port Reading Avenue @ Key Court<br>Port Reading, Middlesex County<br><br>Block: 1095 Lot(s): 1,2,4 / Block: 1095-C Lot(s): 12, 13, 14, 15, 16B /Block 1095D Lot:1 and 1R (Woodbridge Township)<br>Block:1/ Block: 267, Lots 1 and 4 (Carteret Borough) | Issuing Division<br><br>Office of Dredging and Sediment Technology | Statute(s)<br>NJSA 58:10A<br>NJSA 12:5-3 |

This permit grants permission to:

Construct a 3,183,947 square feet warehouse facility and 74, 516 square feet office complex on a 292 -acre site located on Port Reading Avenue. Two former industrial sites previously owned by Beazer East, Inc. and PSE&G will be remediated as part of the redevelopment of the site. Support facilities will consist of car/truck parking areas and stormwater facilities. A new county road approximately 4,950' long and 70' wide will be constructed at Tappen Street on Port Reading Avenue to connect to Industrial Avenue on the southern portion of the site. This will allow for access from the Port Reading Business Park to Industrial Avenue and the New Jersey Turnpike Interchange #12.

The project initially requires the remediation of the site through the implementation of a Remedial Action Workplan (RAWP) approved for the Beazer site on February 4, 1999. Approval of RAWP for the PSE&G parcel must be obtained by Catellus Development Corporation prior to initiation of construction on this portion of the site. Generally, the RAWP calls for the use of a maximum of 800,000 cubic yards of amended dredged material (ADM) or recycled materials as cap material on the site along with asphalt pavement and buildings to prevent migration of contaminants. Other remedial measures are proposed on both sites to address contamination prior to the redevelopment of the site.

The project will disturb (through filling) 5.54 acres of freshwater wetlands (2.0 acres), transition area (3.46) as part of the redevelopment plan. A mitigation requirement for impacts to wetlands associated with the Freshwater Wetlands Statewide General Permit #27 has been incorporated as a condition of the permit. Impacts associated with the other disturbances authorized by the general permit #6, 10B, 11 and transition area averaging plan do not require mitigation.

(Project Description continued on Page 3)

Prepared By: Suzanne U. Dietrick [signature] 1/7/05
Suzanne U. Dietrick Date

(See Page 13 of 13 pages for Chief's signature.)

| | |
|---|---|
| Revised Date | Approved by the Department of Environmental Protection<br>Name (Print or Type) ______________ Title<br>______________<br>Signature ______________ Date |

*The word permit means "approval, certification, registration, etc."* *(General Conditions are on Page Two)*

**This permit is subject to the following general conditions:**

1. This permit is revocable, or subject to modification or change at any time, pursuant to the applicable regulations, when in the judgement of the Department of Environmental Protection of the State of New Jersey such revocation, modification or change shall be necessary.

2. The issuance of the permit shall not be deemed to affect in any way action by the Department of Environmental Protection of the State of New Jersey on any future application.

3. The works, facilities, and/or activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

4. No change in plans or specifications shall be made except with the prior written permission of the Department of Environmental Protection of the State of New Jersey.

5. The granting of this permit shall not be construed to in any way affect the title or ownership of property, and shall not make the Department of Environmental Protection or the State a party in any suit or question of ownership.

6. This permit does not waive the obtaining of Federal or other State or local government consent when necessary. This permit is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

7. A copy of this permit shall be kept at the work site, and shall be exhibited upon request of any person.

8. In cases of conflict, the conditions of this permit shall supersede the plans and/or engineering data.

Approved Plans

The approved plans consist of the following:

- Figure 3 - "Freshwater Wetland General Permit Map" dated September 2, 2003, last revised September 7, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (Eight Sheets)
- Figure 5 - "Transition Area Averaging Plan Map" dated August 31, 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (Eight Sheets)
- Figure 7 - "Mean High Water Line and UWFDA Boundary Map", dated August 30., 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet)
- Figure 7A - Existing Waterfront Development Area Evaluation dated August 30., 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (Two Sheets). Note: Designation of existing forested area for the site depicted on this figure has been modified as shown on Figure 10 .
- Figure 7B - "Proposed Waterfront Development Area Evaluation" dated August 30, 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet)
- Figure 8 - "Existing Forested Area within Waterfront Development Area and Historic Fill Map" dated August 30, 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet)
- Figure 10 - "Reforestation Plan" dated September 1, 2004, last revised October 20, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet).
- Figure 11 - "Proposed Public Access Route" dated August 31, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet).
- Figure 12 - "Site Plan" dated August 31, 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (One Sheet)
- "Preliminary Site Plan for Port Reading Business Park" dated April 8, 2004, and prepared by Daphne A. Galvin, P.E. of Shoor Depalma.

The project is authorized under, and in compliance with, the Rules on Coastal Zone Management (N.J.A.C. 7:7E) governing: Coastal High Hazard Area (N.J.A.C. 7:7E-3.18), Filled Water's Edge (N.J.A.C. 7:7E-3.23), Flood Hazard Areas (N.J.A.C. 7:7E-3.25),Wetlands (N.J.A.C. 7:7E-3.27), Historical and Archaeological Resources (N.J.A.C. 7:7E-3.36), Special Hazard Areas (N.J.A.C. 7:7E-3.41), Special Urban Areas (N.J.A.C. 7:7E-3.43), Impervious/Vegetative Cover Requirements (N.J.A.C. 7:7E-5 et. seq.), Rule on Location of Linear Development (N.J.A.C. 7:7E-6.1), Basic Location Rule (N.J.A.C. 7:7E-6.2), Secondary Impacts (N.J.A.C. 7:7E-6.3), Stormwater Management (N.J.A.C.7:7E-8.7), Public Access to the Waterfront (N.J.A.C. 7:7E-8.11), and Traffic (N.J.A.C. 7:7E-8.14). This project is authorized under, and in compliance with the Freshwater Wetlands Protection Act Rules (N.J.A.C. 7:7A).

This permit is approved, subject to Catellus Commercial Development Corporation obtaining all required tidelands conveyances for the project as applied for on May 10, 2000. The Bureau of Tidelands Management has assigned said tidelands application dated 5/10/00 File No. #00-0198 –T through 00-0201-T. Issuance of this permit does not in any way relinquish the State's ownership interest in the property, if any exists. ✓

This permit is issued subject to and provided that the following conditions can be met to the satisfaction of the Office of Dredging and Sediment Technology. All conditions must be met prior to construction unless otherwise specified. Compliance with Administrative conditions shall be determined once copies of all specified permits, certifications, plans, agreements, etc. have been received, not less than 30 days prior to construction, and approved by the Office of Dredging and Sediment Technology. All Physical Conditions are subject to on-site compliance inspection by the Bureau of Coastal and Land Use Enforcement. As per N.J.A.C. 7:7-1.4, you must notify the Bureau of Coastal and Land Use Enforcement, (401 E. State Street, Trenton, NJ 08625), in writing at least 3 days prior to commencement of construction or site preparation. ✓

This permit shall be RECORDED in the office of the County Clerk (the REGISTRAR OF DEEDS AND MORTGAGES in the applicable counties) in the county wherein the lands included in the permit are located within ten (10) days after the receipt of the permit by the applicant and verified notice shall be forwarded to the Office of Dredging and Sediment Technology immediately thereafter.

This permit is NOT VALID until the permit acceptance form has been signed by the applicant, accepting and agreeing to adhere to all permit conditions, and returned to the Office of Dredging and Sediment Technology, 6th floor Assistant Commissioner's Suite, P.O. Box 028, Trenton, New Jersey 08625.

<u>ADMINISTRATIVE CONDITIONS</u>

1. The permittee shall allow an authorized representative of the NJDEP the right to inspect construction pursuant to N.J.A.C. 7:7-1.5.

2. The permittee shall obtain all required local, state and federal approvals.

3. **The following conditions must be met prior to initiation of construction:**

   - **The permittee shall receive Army Corps of Engineers authorization for the project. Said authorization shall be forwarded to the Office of Dredging and Sediment Technology (Office) upon receipt by the permittee. If it is determined that the ACOE will not pursue jurisdiction over of the proposed development, or any portion thereof, the permittee shall submit of letter from the ACOE stating no interest.**

   - **The permittee shall obtain all required tidelands conveyances for the project as applied for on May 10, 2000.** ✓

   - **An approved Remedial Action Workplan (RAWP) from the Site Remediation Waste Management Program for the former PSE&G site. A copy of the approved RAWP shall be forwarded to the Office prior to any site disturbance.**

4. Within 30 days of the effective date of this permit, Catellus Development Corporation shall perform a supplemental traffic study of the proposed development using the trip generation rates in the Institute of Transportation Trip Generation Manual. Said traffic study results shall be submitted to the Department within 60 days of the effective date of the permit. The Department reserves the right to initiate a modification of the permit should the updated traffic study indicate the need for mitigation measures or other corrective measures to be implemented to ensure that traffic levels at any affected intersection remain t capacity Level D or better (N.J.A.C. 7:7E-8.14(d)). ✓

5. The permittee is responsible for obtaining all necessary approvals from any applicable agencies, including but not necessarily limited to Soil Conservation District Office.

6. The permittee shall comply with all conditions of the RAWP issued for the Beazer site as approved by the Site Remediation Program on February 4, 1999.

**PHYSICAL CONDITIONS**

1. During initial site activities, the permittee shall maintain a minimum of 150 feet of the existing vegetation as a buffer along any portion of the site that has direct frontage on Port Reading Avenue. This buffer shall be maintained until remediation of the balance of the site has neared completion. Approval from the Office shall be received prior to clearing of this buffer.

2. The permittee shall provide for 4.95 acres of tree plantings as depicted on the approved plan entitled "Figure 10, Reforestation Plan" dated October 20, 2004. This area of tree plantings shall be protected from any future development by a recorded conservation restriction as required for the mitigation area. Said tree planting shall comply with all conditions specified in N.J.A.C. 7:7E-5.4(d) and (e).

3. As part of the final development of the site, the permittee shall provide for a 50-foot vegetative buffer consisting of a landscaped berm along portions of the site that has direct frontage on Port Reading Avenue. Any landscaping on the berm shall include the use of mixed, native vegetative species, with sufficient size and density to create a solid visual screen within five years from the date of planting.

4. The applicant must have a weighted 79.5% TSS removal for the site for water quality. The submitted calculations show only 77.7 % TSS removal. The applicant may install a vortechnics water quality treatment device designed to achieve 50% TSS removal for the 2.3 acres of roadway proposed to be untreated or increase the permanent pool volume for the proposed wet pond to be equal or greater then 201,204 cu. ft. which is 2.4 times greater then the volume generated by the water quality storm event.

5. The applicant must submit a complete set of grading and utility plans for the site. Full details of the water quality treatment devices and outlet structure of the basin must be provided.

6. The applicant must submit a Low Impact development checklist for the entire site, including but not limited to addressing; disconnecting rooftop and minimizing parking and addressing areas of non disturbance to be deed restricted as preservation areas.

7. The applicant must make specific arrangements to ensure the continuous maintenance and efficient operation of all proposed water quality measures on site. This includes, but is not limited to, the cleaning and inspection of all water quality inlets and all structural water quality treatment devices at least twice a year and after every major storm, and the continuous implementation of appropriate soil conservation practices within any grassed swales, storm water outfall structures and other similar appurtenances throughout the site in order to limit soil erosion and sediment discharge into adjacent waterways.

8. No construction can take place on this site until the above requested information is submitted and the stormwater management proposals for this site are approved by the Land Use Regulation Program.

**SHPO Conditions**

Port Reading Railroad Yard and Coal Transfer Facilities (McMyler Coal Dumper)

9. The project permittee and any representatives or successors at the project site shall investigate alternatives to *avoid* impacts to the McMyler Coal Dumper, and implement the plan that most successfully avoids impacts to the structure and provides for its long term preservation in situ. A comprehensive alternatives analysis shall be provided to the SHPO, ODST, and the USACE for review and approval.

10. Should the SHPO, the ODST, and the USACE determine that impacts to the McMyler Coal Dumper cannot be avoided, the project permittee and any representatives or successors shall explore means to *minimize and/or mitigate* impacts and implement the plan that most successfully minimizes impacts to the structure and provides for its long term preservation. In this event, when plans to minimize and/or mitigate impacts to the structure have been approved by the SHPO, ODST and the USACE, these actions to minimize and/or mitigate impacts shall be undertaken by the permittee and/or its successors and representatives. Alternatives investigated shall include, in priority order, relocation and reconstruction within the project area, within the jurisdiction of the Port Authority of New York and New Jersey, and within the area or jurisdiction of another recipient. If relocation and reconstruction within the project area or within the jurisdiction of the Port Authority of New York and New Jersey is determined by PA signatories to be unfeasible, the project permittee and/or its successors shall develop a detailed marketing plan building upon historic and structural evaluations. This marketing plan shall be developed and implemented in consultation with the Historic Preservation Office and other PA signatories.

Tasks associated with both in situ preservation and relocation and reconstruction shall include assessing the character defining features and delineating the core elements that comprise the historic structure, evaluating the physical and structural condition of the coal dumper and associated components, and identifying any salvageable elements (external and internal components) that could appropriately be separated from the core historic structure. The preservation or disposal of components separated from the core historic structure would be a distinct element of the consultation regarding relocation and reconstruction.

The marketing plan shall identify individuals, agencies, organizations, etc. that may have an interest in the McMyler Coal Dumper and/or knowledge and ideas regarding long term preservation, interpretation, and other forms of outreach. An initial list of contacts shall be provided to the SHPO, with updates provided as additional parties are added and contacted. Alternatives analyses shall be submitted to the SHPO throughout the process together with full documentation of correspondence, electronic mail and records of telephone conversations. The process shall include identifying potential recipients of both the core historic structure and separable historic components.

Mitigation measures to be evaluated by the permittee and/or its successors in conjunction with the relocation and reconstruction of the McMyler Coal Dumper shall include but not be limited to:

- Salvage and relocation of elements and equipment for curation and display at railroad, maritime, and/or other museums; and

- Development of an exhibit or exhibits for museum display and/or other appropriate venues, focusing specifically on the history of the McMyler Coal Dumper and the general history of the Port Reading railroad yard and coal transfer facilities; and

- Development and distribution of other outreach materials focusing specifically on the history of the McMyler Coal Dumper, the Port Reading railroad yard and coal transfer facilities, and the evolution of the site from a natural to an industrial transportation environment, and, for a portion of the project area, a pre-industrial environment, within the context of New York Harbor; and

- Recordation of the McMyler Coal Dumper and associated pier and trestle systems prior to project implementation to *HABS/HAER Standards Documentation Level 1* (as presented in the 1990 *Secretary of the Interior's Standards and Guidelines for Architectural and Engineering Documentation: HABS/HAER Standards* (Originally published in the *Federal Register*, Vol. 48, No. 190, Thursday, September 29, 1983, pp. 44730-34]); and

- Recordation of the Port Reading Railroad Yard and Coal Terminal Facility Buildings and Structures prior to project implementation to *HABS/HAER Standards Documentation Level 2* (as presented in the 1990 *Secretary of the Interior's Standards and Guidelines for Architectural and Engineering Documentation: HABS/HAER Standards* [Originally published in the *Federal Register*, Vol. 48, No. 190, Thursday, September 29, 1983, pp. 44730-34]).

11. Until the permittee and any successors have undertaken all measures to satisfy the project conditions relevant to the McMyler Coal Dumper contained in this permit, *and* the permittee and/or any successors have received written notification from the SHPO that these measures have been adequate to avoid, minimize, and/or mitigate impacts to the structure, project actions or related activities that could impact the McMyler Coal Dumper shall not be initiated.

**FRESHWATER WETLAND STATEWIDE GENERAL PERMIT #6, 10B, 11, 27 CONDITIONS:**

**Special Conditions**

1. The wetlands affected by the General Permit No. 6, 10B, 11 and 27 are of intermediate resource value and the standard transition area or buffer required adjacent to these wetlands is 50 feet. These General Permits include a transition area waiver, which allows encroachment only in that portion of the transition area, which has been determined by the Department to be necessary to accomplish the regulated activities. Any additional regulated activities conducted within the standard transition area on-site shall require a separate transition area waiver from the Program. Regulated activities within a transition area are defined at N.J.A.C. 7:7A-6.2. Please refer to the Freshwater Wetlands Protection Act (N.J.S.A.13:9B-1 et seq.) and implementing rules for additional information.

2. This permit limits the amount of rip-rap or other energy dissipating material for the road crossing covered under the General Permit #10B (Minor Road Crossing) to a maximum of 200 cy of fill below the top of bank or high water mark. The permittee may request a modification of this condition to allow for additional fill above this amount, provided a County's approval of the Soil Erosion and Sediment Control Plan for the site clearly indicates a need for additional fill beyond the 200 cy of fill. A copy of said approval shall be provided to the Department as part of the request to modify this condition.

3. This permit limits the amount of rip-rap or other energy dissipating material for the road crossing covered under the General Permit #11 (Outfalls and Intake Structures) to a maximum of 27 cy of fill for the two outfall from Building 2 and 3, and 32.4 cy of of fill for the outfall from Building 6. The amount of fill identified above is required to meet Standards for Erosion and Sediment Control in New Jersey (N.J.A.C. 2:90).

4. Any wetlands or transition areas that are to be excavated for construction of the stormwater outfalls shall be backfilled to pre-existing conditions. If feasible, the uppermost 18" of the excavation shall be backfilled with original topsoil. The area above the excavation shall be replanted with indigenous wetlands species.

**General Conditions**

1. All fill and other earth work on the lands encompassed within this permit authorization shall be stabilized in accordance with "Standards for Soil Erosion and Sediment Control in New Jersey" to prevent eroded soil from entering adjacent waterways or wetlands at any time during and subsequent to construction.

2. This permit is revocable, or subject to modification or change at any time, when in judgement of the Department of Environmental Protection of the State of New Jersey, such revocation, modification or change shall be necessary.

3. The issuance of this permit shall not be deemed to affect in any way other actions by the Department on any future application.

4. The activities shown by plans and/or other engineering data, which are this day approved, subject to the conditions herewith established, shall be constructed and/or executed in conformity with such plans and/or engineering data and the said conditions.

5. No change in plans or specifications shall be made except with the prior written permission of the Department.

6. The granting of this authorization shall not be construed to affect the title or ownership of the property, and shall not make the Department or the State a party in any suit or question of ownership of the property.

7. This authorization is not valid and no work shall be undertaken until such time as all other required approvals and permits have been obtained.

8. A copy of this authorization shall be kept at the work site and shall be exhibited upon request of any person.

9. The Office of Dredging and Sediment Technology has not reviewed this application for consistency with the Areawide Water Quality Management Plan and the issuance of this permit shall not be construed as an approval of any wastewater management plan for this project or site. There shall be no construction of any sewage generating structures unless and until the proposed development has been found to be consistent with the appropriate areawide water quality management plan.

## TRANSITION AREA AVERAGING PLAN CONDITIONS

Based upon a review of the submitted information, the Department has determined that the proposed modified transition area boundary line as shown on the plan map entitled "Transition Area Averaging Plan Map" dated August 31, 2004, last revised September 3, 2004, and prepared by Vincent Shea, P.E. of Environmental Resources Management (Eight Sheets) will continue to meet the purposes and functions of a transition area as detailed in the Act and implementing rules providing the following conditions are met:

1. The transition area shall be reduced by 102,286 square feet (2.44 acres) and compensated by an expansion of the transition area in other areas of the site by 120,225 square feet (2.76 acres) surface area as shown on the referenced plan.

2. The transition area shall not be reduced to less than 20 feet in width at any location as shown on the referenced plan.

3. The applicant shall sign a Department approved deed restriction for the modified transition area on the subject parcel(s) in accordance with N.J.A.C. 7:7A-6.1(h). The restriction shall be included on the deed, and recorded in the office of the County Clerk (the REGISTRAR OF DEEDS AND MORTGAGES), in the county wherein the lands included in the waiver are located. The restriction shall run with the land and be binding upon all successive owners. All individual lot surveys shall show the approved wetlands and transition area boundaries. **Any regulated activities undertaken on the site before a copy of the recorded restriction is submitted to the Department will be considered in violation of the Freshwater Wetlands Protection Act.**

SPECIAL ACTIVITY TRANSITION AREA WAIVER FOR LINEAR DEVELOPMENT CONDITIONS:

1. The transition area shall not be reduced to less than 20 feet in width as shown on the referenced plan.

ACCEPTABLE USE DETERMINATION CONDITIONS

1. Prior to construction, the permittee shall submit, for review and approval from the Office, an Operations and Maintenance Manual for the site prepared in accordance with the standards at N.J.A.C. 7:26-2.10(b) 9 and Appendix E of the Department's Dredging Manual. This O&M Manual shall include, at a minimum, 1) the preventative measures to be implemented for dust suppression during the placement of dredged material on the site and 2) the grid system to be utilized to monitor the placement of the material on the site.

2. All processed dredged material or recycled material used on the site shall meet the placement criteria specified for the PSE&G and/or Beazer site as established by the Site Remediation Program. Any dredged material placed at the site shall receive an AUD from the Department authorizing its placement at this site. Placement of recycled materials at the site shall be authorized separately by the SRWM, Bureau of Case Management.

3. This AUD limits the amount of processed dredged material and other material as approved by the SRP to the elevations provided in the approved grading plan entitled "Grading, Drainage and Utility Plan, Port Reading Business Park" dated April 8, 2004, and prepared by Daphne A. Galvin, P.E. of Schoor Depalma.. This equates to the placement of approximately 800,000 cy of dredged material or other material on the site. Any proposed changes in the amount of fill to be accepted at the site above the approved grading plan will require a formal modification of the permit pursuant to N.J.A.C. 7:7-4.10.

4. Any major accidental release of dredged material, admixture, or end product in non-processing areas (i.e., surface waters of the state, interstate roadways, etc.) shall be immediately reported to the DEP Emergency Response 24-Hour Hotline at (609) 292-7172. The report must specify the type of substance discharged in estimated quantity, the nature of the discharge, the location of the discharge, any action being taken to mitigate the discharge, and any other information the Department may request at the time of notification.

5. Catellus Commerical Development Corporation shall submit a semiannual report which details the following information for the preceding six months of operation of the facility:

6 month reports

- Source and volume of each dredging project accepted at the site
- The most recent site plan, including current elevations, showing the location on the site where each dredging project was placed (i.e. grid system).
- The results of the bulk sediment chemistry analyses of the end product associated with the individual dredging project generator as per the attached protocol.

6. The Department reserves the right to revise or terminate this authorization at any time as a response to any complaints, violations of this authorization or its conditions, any persons violation of any related permit and their conditions, and/or modifications of the Department's acceptable use criteria.

MITIGATION CONDITIONS

The following special conditions must be met for the activity to be authorized under these permits:

1. **The mitigation project must be conducted prior to or concurrent with the construction of the approved project.**

2. Mitigate for the loss of 0.5 acres emergent and coastal through an on-site creation/enhancement project as shown on the conceptual plans entitled, "Conceptual Wetland Mitigation Plan" dated October 10, 2004, last revised November 30,2004, and prepared by Mark Gallagher of Princeton Hydro LLC. The plan calls for the enhancement of 3.0 acres of non-tidal wetlands and the creation of an addition 0.79 acres of wetlands. This equates to a ratio of 6:1 for enhancement and a 1.58:1 for creation. In the event there is a conflict between the permit conditions and the approved mitigation plans and proposal the permit conditions take precedent.

3. For an on-site or off-site individual mitigation project the permittee must submit a mitigation proposal to the Land Use Regulation Program, to create, enhance or restore an area of freshwater/coastal wetlands of equal ecological value to those, which will be lost by the authorized activity for review and approval. Attached to this permit is a list of the necessary information that must be included in that on-site or off-site mitigation proposal or go to the following web page for the latest version of this checklist http://www.state.nj.us/dep/landuse/forms/chkmitig.doc If the permittee is proposing to construct a wetland creation or restoration project, two acres of creation or restoration must be performed for each acre disturbed and the mitigation area must, in addition to this, include a 50 foot transition area. The slope of the created transition area must be fairly flat and therefore have a slope no greater than 10:1. If the permittee is proposing to construct a wetland enhancement project, the ratio of wetlands enhanced to wetlands disturbed shall be sufficient to replace loss of ecological value from the permitted project and shall be approved by the Program. The following conditions and information must be adhered to when performing mitigation.

   a. Submit for review and approval a conceptual plan showing the location and proposed hydrology of the mitigation site.

   b. Once the Program has approved the conceptual plan of the mitigation project the permittee must submit a final design of the mitigation project and include all the items listed on the attached on-site/off-site mitigation proposal checklist.

4. In accordance N.J.A.C. 7:7A-15.13, obtain a secured bond, or other financial surety acceptable to the Department including an irrevocable letter of credit or money in escrow, that shall be sufficient to hire an independent contractor to complete and maintain the proposed mitigation should the permittee default. The financial surety for the construction of the mitigation project shall be posted in an amount equal to 115 percent of the estimated cost of the construction. In addition, financial surety to assure the success and maintenance of the mitigation project shall be posted in an amount equal to 30 percent of the estimated cost of construction. The Department will review the financial surety annually and the permittee shall adjust the surety to reflect current economic factors. Please be advised if a governmental body is performing the mitigation the need for financial assurance is waived.

5. The permittee shall complete and sign the Department approved conservation restriction for the mitigation site (copy attached). The restriction shall be included on the deed, and recorded in the office of the County Clerk (the Registrar of Deeds and Mortgages in some counties), in the county wherein the lands of the mitigation project are located, within 10 days of approval of the wetland mitigation proposal. Immediately following the filing of the conservation restriction a copy must be sent to the Program for verification.

6. The permittee shall notify the Land Use Regulation Program, in writing, at least thirty (30) days in advance of the start of construction of the wetland mitigation project for an on-site pre-construction meeting between the permittee, the contractor, the consultant and the Program.

7. The mitigation designer must be present during critical stages of construction of the mitigation project this includes but is not limited to herbicide applications, sub-grade inspection, final grade inspection, and planting inspection to ensure the intent of the mitigation design and their predicted wetland hydrology is realized in the landscape. Mitigation designs are not static documents and changes may be necessary to ensure success of the project. It shall be the prerogative of the mitigation consultant to make changes to the design should field conditions warrant such action.

8. Immediately following final grading of the site, a disc must be run over the site to eliminate compaction. The mitigation designer must be present to oversee this phase of the project and confirm with the Department this activity has occurred prior to planting of the site.

9. Immediately following the final grading of the mitigation site and prior to planting, the permittee shall notify the Program for a post-grading construction meeting between the permittee, contractor, consultant and the Program. The permittee must give the Program at least thirty (30) days notice prior to the date of this meeting.

10. Within 30 days following the final grading and planting of the mitigation project, the permittee shall submit a final report to the Land Use Regulation Program. The final report shall contain, at a minimum, the following information:

   a. A completed WETLAND MITIGATION PROJECT COMPLETION OF CONSTRUCTION FORM (attached) which certifies that the mitigation project has been constructed as designed and that the proposed area of wetland creation, restoration or enhancement has been accomplished;

   b. As built plans which depict final grade elevations at one foot contours and include a table of the species and quantities of vegetation that were planted including any grasses that may have been used for soil stabilization purposes;

   c. Show on the as-built plans that the boundaries of the wetland mitigation area has been visibly marked with 3 inch white PVC pipe extending 4 feet above the ground surface. The stakes must remain on the site for the entire monitoring period;

   d. Photos of the constructed wetland mitigation project with a photo location map as well as the GPS waypoints in NJ state plane coordinates NAD 1983;

   e. To document that the required amount of soil has been placed/replaced over the entire area of the mitigation site, provide a minimum of 6 soil profile descriptions to a depth of 20 inches. The location of each soil profile description should be depicted on the as built plan as well as provide the GPS waypoints in NJ state plane coordinates NAD 1983;

   f. Submit soil test results demonstrating at least 8% organic carbon content (by weight) was incorporated into the A-horizon for sandy soil and for all other soil types 12% organic content or if manmade top soil was used it consisted of equal volumes of organic and mineral materials;

   g. The permittee shall post the mitigation area with several permanent signs, which identify the site as a wetland mitigation project and that mowing, cutting, dumping and draining of the property is prohibited; and

   h. The sign must also state the name of the permittee, LURP permit number along with a contact name and phone number.

11. If the Program determines that the mitigation project is not constructed in conformance with the approved plan, the permittee will be notified in writing and will have 60 days to submit a proposal to indicate how the project will be corrected. No financial surety will be released by the Program until the permittee demonstrates that the mitigation project is constructed in conformance with the approved plan, all soil has been stabilized and there is no active erosion.

12. The permittee shall monitor the mitigation project for 5 full growing seasons if it is a proposed forested or scrub/shrub wetland and 3 full growing seasons for an emergent wetland or State open water after the mitigation project has been constructed. The permittee shall submit monitoring reports to the Land Use Regulation Program no later than December 31st of each monitoring year (All monitoring report must include the standard items identified in the attachment and the information requested below).

13. All monitoring report will include all the following information (see attached monitoring report checklist):

a. All monitoring reports except the final one must include documentation that it is anticipated, based on field data, that the goals of the wetland mitigation project including the transition area, as stated in the approved wetland mitigation proposal and the permit will be satisfied. If the permittee is finding problems with the mitigation project and does not anticipate the site will be a full success then recommendations on how to rectify the problems must be included in the report with a time frame in which they will be completed;

b. All monitoring reports except the final one must include field data to document that the site is progressing towards 85 percent survival and 85 percent area coverage of mitigation plantings or target hydrophytes (Target hydrophytes are non-invasive native species to the area and similar to ones identified on the mitigation planting plan). If the proposed plant community is a scrub/shrub or a forested wetland the permittee must also demonstrate each year with data that the woody species are thriving, increasing in stem density and height each year. If the field data shows that the mitigation project is failing to meet the vegetation survival, coverage and health goals, the monitoring report should contain a discussion of steps that will be taken to rectify the problem, including a schedule of implementation;

c. All monitoring reports except the final one must include documentation of any invasive or noxious species (see below for list of species) colonizing the site and how they are being eliminated. The permittee is required to eliminate either through hand-pulling, application of a pesticide or other Department approved method any occurrence of an invasive/noxious species on the mitigation site during the monitoring period;

d. All monitoring reports except the final one must include documentation that demonstrates the proposed hydrologic regime as specified in the mitigation proposal appears to be met. If the permittee is finding problems with the mitigation project and does not anticipate the proposed hydrologic regime will be or has not been met then recommendations on how to rectify the problem must be included in the report along with a time frame within which it will be completed;

e. The final monitoring report must include documentation to demonstrate that the goals of the wetland mitigation project including the required transition area, as stated in the approved wetland mitigation proposal and the permit, has been satisfied. Documentation for this report will also include a field wetland delineation of the wetland mitigation project based on techniques as specified in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989);

f. The final monitoring report must include documentation the site has an 85 percent survival and 85 percent area coverage of the mitigation plantings or target hydrophytes. The permittee must also document that all plant species are healthy and thriving and if the proposed plant community contains trees demonstrate that the trees are at least five feet in height;

g. The final monitoring report must include documentation demonstrating the site is less than 10 percent occupied by invasive or noxious species such as but not limited to *Phalaris arundinacea* (Reed canary grass), *Phragmities australis* (Common reed grass), *Pueraria lobata* (Kudzu), *Typha latifloia* (Broad-leaved cattail), *Typha angustifolia* (Narrowed leaved cattail), *Lythrum salicaria* (Purple loosestrife), *Ailanthus altissima* (Tree-of-heaven), *Berberis thunbergi* (Japanese barberry), *Berberis vulgaris* (Common barberry), *Elaeagnus angustifiola* (Russian olive), *Elaeagnus umbellata* (Autumn olive), *Ligustrum obtusifolium* (Japanese privet), *Ligustrum vulgare* (Common privet) and *Rosa multiforia* (Multiflora rose);

h. The final monitoring report must include documentation that demonstrates that the proposed hydrologic regime as specified in the mitigation proposal, which proves the mitigation site is a wetland has been satisfied. The documentation shall include when appropriate monitoring well data, stream gauge data, photographs and field observation notes collected throughout the monitoring period; and

i. The final monitoring report must include documentation that the site contains hydric soils or there is evidence of reduction occurring in the soil throughout the delineated wetlands.

14. Once the required monitoring period has expired and the permittee has submitted the final monitoring report, the Program will make the finding that the mitigation project is either a success or a failure. This mitigation project will be considered successful if the permittee demonstrates all of the following:

a. That the goals of the wetland mitigation project including acreage and the required transition area, as stated in the approved wetland mitigation proposal and the permit, has been satisfied. The permittee must submit a field wetland delineation of the wetland mitigation project based on the Federal Manual for Identifying and Delineating Jurisdictional Wetlands (1989) which shows the exact acreage of State open waters, emergent, scrub/shrub and/or forested wetlands in the mitigation area;

b. The site has an 85 percent survival and 85 percent area coverage of the mitigation plantings or target hydrophytes which are species native to the area and similar to ones identified on the mitigation planting plan. All plant species in the mitigation area are healthy and thriving. All trees are at least five feet in height;

c. The site is less than 10 percent occupied by invasive or noxious species such as but not limited to *Phalaris arundinacea* (Reed canary grass), *Phragmities australis* (Common reed grass), *Pueraria montana* (Kudzu), *Typha latifloia* (Broad-leaved cattail), *Typha angustifolia* (Narrowed leaved cattail), *Lythrum salicaria* (Purple loosestrife), *Ailanthus altissima* (Tree-of-heaven), *Berberis thunbergi* (Japanese barberry), *Berberis vulgaris* (Common barberry), *Elaeagnus angustifiola* (Russian olive), *Elaeagnus umbellata* (Autumn olive), *Ligustrum obtusifolium* (Japanese privet), *Ligustrum vulgare* (Common privet) and *Rosa multiforia* (Multiflora rose);

d. The site contains hydric soils or there is evidence of reduction occurring in the soil; and,

e. The proposed hydrologic regime as specified in the mitigation proposal, which proves the mitigation site is a wetland has been satisfied.

15. All remaining financial surety, if required, will be released concurrent with the Program notifying the permittee that the mitigation project is a success.

16. If the mitigation project is considered a failure, the permittee is required to submit a revised mitigation plan to rectify the wetland mitigation site. The plan shall be submitted within 60 days of receipt of the letter from the Program indicating the wetland mitigation project was a failure. The financial surety, if required, will not be released by the Program until such time that the permittee satisfies the success criteria as stated in condition number 15.

17. The permittee shall assume all liability for accomplishing corrective work should the Program determine that the compensatory mitigation has not been 100% satisfactory. Remedial work may include re-grading and/or replanting the mitigation site. This responsibility is incumbent upon the permittee until such time that the Department makes the finding that the mitigation project is successful.

1/7/05
DATE

Suzanne U. Dietrick, Chief
Office of Dredging and Sediment Technology

State of New Jersey
Department of Environmental Protection

Richard J. Codey
*Acting Governor*

Bradley M. Campbell
Commissioner

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
#7002 2410 0002 5962 3481

July 8, 2005

Mr. Glenn Stock
Catellus Commercial Development Corporation
50 Middlesex Avenue
Carteret, New Jersey 07008

Re: Port Reading Redevelopment Site
Former PSE&G Site
Block 1095, Lots 1, 2 and 4
Block 1095C, Lots 12, 13, 14 and 16B
Woodbridge Township
Materials Acceptance Plan, June 2005
Request for Approval of Fill Material/Soil Reuse Proposal, June 2005
PA/SI Oliver Leasehold, March 2005

Dear Mr. Stock:

The New Jersey Department of Environmental Protection has completed its review of the above referenced reports and has the following comments:

The Material Acceptance Plan (MAP) is found to be acceptable except for the Site Specific Materials Acceptance Criteria for certain contaminants found in Table 3. Please be advised that the materials acceptance criteria for Barium, Cadmium, Cyanide, Mercury, Nickel, Selenium, Silver and Vanadium shall be either the concentrations found at the former PSE&G Site ("Site") or the Residential Direct Contact Soil Cleanup Criteria ("RDCSCC") for that contaminant. For example Mercury was found at the Site at a concentration of 15 ppm, 1 ppm over the RDCSCC. The material acceptance criteria for Mercury shall be 15 ppm. Silver was not identified as a contaminant at the Site so the acceptance criteria shall be the RDCSCC.

The Request for Approval of Fill Material/Soil Reuse Proposal dated June 29, 2005 is therefore approved so long as it complies as with the MAP as modified by the above paragraph.

The PA/SI for the Oliver Leasehold is hereby approved.

If you have any questions please call me at (609) 633-0744.

Sincerely,

Robert Hayton
Case Manager
Bureau of Case Management

c. Vincent Ciuffo, Township of Woodbridge Health Department
Steve MacGregor, NJDEP
Greg Rapp, NJDEP
Suzanne Dietrick, NJDEP

C4:C15
Permits
MAP - PSE+G

KEY ENVIRONMENTAL INCORPORATED

RECEIVED
JUN 17 2005
BY______

June 14, 2005

Mr. Robert Hayton
Case Manager, Bureau of Case Management
New Jersey Department of Environmental Protection
401 East State Street, 5th Floor
P.O. Box 028
Trenton, NJ 08625-0028

SUBJECT: **Materials Acceptance Plan (MAP)**
**Former PSE&G Site**
**Block 1095, Lots 1, 2 and 4, and,**
**Block 1095C, Lots 12, 13, 14 and 16B**
**Port Reading, New Jersey**

Dear Mr. Hayton:

On behalf of Catellus Construction Corporation as Construction Manager and Agent for Port Reading Woodbridge II, LLC (Catellus) Key Environmental Incorporated (KEY) is providing this Materials Acceptance Plan (MAP) for the former Public Service Electric and Gas (PSE&G) parcel of the Port Reading Redevelopment (PRR) Site to the New Jersey Department of Environmental Protection (NJDEP). The MAP proposes a framework for the acceptance of fill materials necessary to complete the Surface Cover Component of the NJDEP approved Remedial Action Workplan (RAW). A MAP has been recently approved by the NJDEP for the adjoining Former Koppers parcel of the PRR Site. The proposed MAP for the PSE&G parcel has been patterned to be consistent with the former Koppers Site (Koppers) MAP. The following discussion identifies areas of the PSE&G MAP where there are differences with the Koppers MAP and provides justifications for these variations.

<u>Sampling Frequency</u> – The NJDEP-approved Koppers MAP specifies that fill sources be sampled at a frequency in accordance with N.J.A.C. 7:26E 6.4 (d) ii. Less frequent sampling is subject to NJDEP approval. At the Koppers Site, less frequent sampling of fill materials has been approved by the NJDEP for several sources based on the characteristics (volume, homogeneity, etc) of the sources of fill. For example, all proposed sources of fill at the Former Koppers Site have been greater than 1,000 cubic yards. Therefore, consistent with N.J.A.C. 7:26E 6.4 (d) iii, less frequent sampling is being proposed for the PSE&G MAP since all fill sources will be greater than 1,000 cubic yards.

<u>Contaminant Concentrations</u> – Site Specific Materials Acceptance Criteria (SSMAC) contained in the both the Koppers and PSE&G MAP have been developed on the basis of applicable NJDEP soil cleanup criteria and the concentrations of contaminants that have been previously detected on-site. For both Sites, if an Impact to Groundwater Soil Cleanup Criteria (IGWSCC) is available for an organic contaminant, then in no case will fill sources be allowed to be placed on-Site if the contaminant concentration is greater than its respective IGWSCC. However, where the concentration of contaminants for a proposed fill source are lower than the IGWSCC, then

Rosslyn Farms Industrial Park • 1200 Arch Street • Suite 200 • Carnegie, PA 15106 • (412) 279-3363 Fax: (412) 279-4332

the SSMAC allows contaminants to be placed up to the greater of their respective direct contact soil cleanup criteria or to their existing on-site maximum concentration. Therefore, in this case, the SSMAC have been revised based on the known concentration of contaminants at the PSE&G Site. Since the concentrations differ between the PSE&G and former Koppers Sites, the SSMAC proposed are different for those contaminants.

Regarding inorganic constituents (where there are no IGWSCC standards), the Koppers MAP has the higher of the residential standards or the maximum concentration detected on-Site (with the exception of lead, arsenic and total\hexavalent chromium which have been approved at 550, 60 and 101\240 ppm respectively). For the PSE&G Site, we have proposed the higher of the non residential (restricted use) standard or, if the constituent has been detected on-Site, the maximum concentration (with the exception of arsenic, and total\hexavalant chromium) that has been detected on-Site. Thus, the PSE&G MAP varies from the Koppers MAP for several inorganic constituents. However, the proposed SSMAC for these constituents are consistent with the approved RAW and are protective for non residential\restricted use.

Please note that, consistent with the Koppers MAP, fill with contaminant concentrations above the Residential Direct Contact Soil Cleanup Criteria (RDCSCC) will be placed under an engineering control unless an alternate NJDEP approval is obtained and documented in the deed restriction. This requirement is more protective than the RAW and the requirements of N.J.A.C. 7:26 E for restricted use sites.

The SSMAC for total PCB's is slightly higher than the Koppers MAP because PCB's have been detected on the PSE&G Site at much higher concentrations than the proposed SSMAC. Note that the maximum proposed SSMAC for total PCB's is an order of magnitude less that it's IGWSCC. Also note that in all cases, if the total PCB concentrations are greater than RDCSCC, then this fill will be placed under an acceptable engineering control and documented in the deed restriction. This requirement is more protective than the RAW and the requirements of N.J.A.C 7:26 E for restricted use sites.

I hope that the above clarifies the substantive changes in the PSE&G MAP relative to the Koppers MAP. Should you have any questions, please feel free to call me at (207) 772-8100. If necessary we can meet with the Department at any time to discuss the MAP or any project issue.

Sincerely,

KEY ENVIRONMENTAL, INC.

Peter Sawchuck

Peter Sawchuck, P.E.
Project Manager

Attachment

cc: Glenn Stock - Catellus

KEY ENVIRONMENTAL INCORPORATED

Sandy Stevens - Catellus
David Robinson - ERM
Steve Link - ET Environmental
Steve Sands - Clean Earth
Dan Bobrowicz - Catellus

KEY ENVIRONMENTAL INCORPORATED

RECEIVED
JUN 17 2005
BY

From: Origin ID: (412)279-0677
MR. STEVE RUFFING (bja)
KEY ENVIRONMENTAL, INC
1200 Arch Street, Suite 200

Carnegie, PA 15106

FedEx Express
E

Ship Date: 16JUN05
Actual Wgt: 2 LB
System#: 5554074/INET2000
Account#: S *********

REF: 05-078-MAP

Delivery Address Bar Code

SHIP TO: (215)734-1400 BILL SENDER
MR. STEVEN C. SANDS
CLEAN EARTH
334 SOUTH WARMINSTER ROAD
2ND FLOOR
HATBORO, PA 19040

STANDARD OVERNIGHT FRI
Deliver By: 17JUN05

TRK# 7905 4780 7885 FORM 0201

PHL A2

19040 -PA-US

NX QFWA

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.**

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# REVISION 00
# MATERIAL ACCEPTANCE PLAN
# FORMER PSE&G SITE
# PORT READING, NEW JERSEY

***Prepared for:***

**Catellus Construction Corporation**
**as Construction Manager and Agent for**
**Port Reading - Woodbridge II, LLC**
201 Mission Street
San Francisco, California 94105

***Prepared by:***

**Key Environmental, Inc.**
456 Route 22 West, Suite D
Whitehouse Station, New Jersey 08889

**June 2005**

## CERTIFICATIONS

In accordance with 7.26E - 1.5, Catellus Construction Corporation is hereby submitting the following signatures and notarized certification, for this Materials Acceptance Plan.

**TYPE OF DOCUMENT:** Materials Acceptance Plan Revision 00

**CASE NAME:** Port Reading Redevelopment Site

**CASE NUMBER(s):** #NJL800466120 / #MS00004920 (PSE&G Property);

**CASE ADDRESS:** 600, 610 and 730 Port Reading Avenue, Woodbridge Block 1095 Lots 1, 2 & 4, Block 1095-C Lots 12, 13 &14, & 16-B

A. The following certification shall be signed by the highest ranking individual with overall responsibility for implementing the remediation of a Site:

"I certify under penalty of the law that the information provided in this document is true, accurate and complete. I am aware that there are significant civil penalties for knowingly submitting false, inaccurate or incomplete information and that I am committing a crime of the fourth degree if I make a written false statement that I do not believe to be true. I am also aware that if I knowingly direct or authorize the violation of any statute, I am personally liable for the penalties."

**PRINTED NAME:** Sandra H. Stevens **TITLE:** Vice President, Environmental Services

**SIGNATURE:** Sandra H. Stevens **DATE:** 6/9/05

**NOTARY SIGNATURE:** ______________________ **DATE:** ______________

## TABLE OF CONTENTS

**LIST OF TABLES** .......... ii

**LIST OF FIGURES** .......... iii

**LIST OF FORMS** .......... iii

**APPENDIX A** .......... iii

**1.0 INTRODUCTION** .......... 1-1

1.1 PROJECT/SITE OVERVIEW .......... 1-1

1.2 SURFACE COVER .......... 1-2

1.2.1 Port Facility End-Use .......... 1-2
1.2.2 Commercial Development End-Use .......... 1-2

1.3 DOCUMENT ORGANIZATION .......... 1-3

**2.0 MATERIAL ACCEPTANCE PLAN** .......... 2-1

2.1 SURFACE COVER AND GRADING FILL REQUIREMENTS .......... 2-1

2.2 SURFACE COVER AND GRADING FILL MATERIALS .......... 2-2

2.2.1 Surface Cover Protective Layer .......... 2-3
2.2.2 Surface Cover Barrier Layer .......... 2-3
2.2.3 Grading Fill .......... 2-3

2.3 CHEMICAL CRITERIA - SITE-SPECIFIC MAXIMUM MATERIAL ACCEPTANCE CRITERIA (SSMAC) .......... 2-4

2.4 BENEFICIAL USE OF FILL MATERIAL .......... 2-4

2.5 POTENTIALLY ACCEPTABLE FILL MATERIALS .......... 2-5

2.5.1 Categories of Acceptable Fill Material .......... 2-5

2.5.1.1 Soil Materials .......... 2-5
2.5.1.2 Non-Soil Materials .......... 2-5

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of San Francisco } ss.

On June 9, 2005 (Date) before me, Emily Molina (Name and Title of Officer (e.g., "Jane Doe, Notary Public")),
personally appeared Sandra H. Stevens (Name(s) of Signer(s))

☒ personally known to me
☐ proved to me on the basis of satisfactory evidence

EMILY MOLINA
Commission # 1485321
Notary Public - California
San Francisco County
My Comm. Expires Dec 9, 2007

to be the person~~(s)~~ whose name~~(s)~~ is~~/are~~ subscribed to the within instrument and acknowledged to me that ~~he~~/she~~/they~~ executed the same in ~~his~~/her~~/their~~ authorized capacity~~(ies)~~, and that by ~~his~~/her~~/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

WITNESS my hand and official seal.

Emily Molina
Signature of Notary Public

### OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: ______________________

Document Date: ______________________ Number of Pages: ________

Signer(s) Other Than Named Above: ______________________

**Capacity(ies) Claimed by Signer**

Signer's Name: ______________________

☐ Individual
☐ Corporate Officer — Title(s): ______________________
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ______________________

Signer Is Representing: ______________________

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org Prod. No. 5907 Reorder: Call Toll-Free 1-800-876-6827

2.5.2 Procedure for Review and Certification of Fill ........ 2-6

2.5.2.1 Registration of Fill Material Sources ........ 2-7
2.5.2.2 Material Characterization ........ 2-7

2.5.2.2.1 Potential Fill Source Due Diligence ........ 2-7
2.5.2.2.2 Type and Frequency of Testing ........ 2-8

2.5.2.2.2.1 Virgin Soil or Virgin Non-Soil Fill Material ........ 2-9
2.5.2.2.2.2 Clean Fill Soil and Construction Fill ........ 2-9
2.5.2.2.2.3 Recycled Soil From Class B Recycling Facilities ........ 2-10
2.5.2.2.2.4 Other Soil ........ 2-10
2.5.2.2.2.5 Clean Fill (non-soil) ........ 2-11
2.4.2.2.2.6 Dredged Material ........ 2-11

2.5.2.3 Sampling Methodology ........ 2-11
2.5.2.4 Approval or Conditional Approval of Fill ........ 2-12

2.6 GEOTECHNICAL CRITERIA FOR STRUCTURAL FILL ........ 2-12

2.7 OTHER FILL CRITERIA ........ 2-13

**3.0 OPERATIONS CONSIDERATIONS AND FILL MATERIAL DOCUMENTATION ........ 3-1**

3.1 OPERATIONAL CONSIDERATIONS ........ 3-1

3.2 FILL MATERIAL DOCUMENTATION ........ 3-1

3.3 FILL PLACEMENT INFORMATION AND REPORTING ........ 3-2

**4.0 SUMMARY AND CONCLUSIONS ........ 4-1**


**LIST OF TABLES**


1 Flow Chart for Source Approval
2 Sampling and Analyses Requirements
3 Site Specific Material Acceptance Criteria

## LIST OF FIGURES

1-1 Site Location Map

## LIST OF FORMS

FORM 1 - Source Acceptance Form
Material Characterization Request Form

## APPENDIX A

RAW-D3 Surface Cover Plan
RAW-D4 Surface Cover Cross Section and Details
2-1 Areas of Concern and Sub-Site Locations
3-2 Results of Sampling Locations for Sub-Sites 2 (MPR-8 Area)
3-3 Results of Sampling Locations for Sub-Sites 2, 3, 7, 8, and 17
3-4 Results of Sampling Locations for Sub-Sites 5 and 9
3-5 Results of Sampling Locations for Sub-Sites 6, 13
3-6 Results of Sampling Locations for Sub-Site 15
3-7 Results of Sampling Locations for Sub-Site 16
3-8 Results of Sampling Location for Sub-Site 18
Figure 1 Site Grid Drawing

# 1.0 INTRODUCTION

This Material Acceptance Plan (MAP) has been prepared, as requested by the New Jersey Department of Environmental Protection (NJDEP) to provide a framework for the acceptance of materials necessary to implement the Surface Cover component of the remediation of the Former PSE&G Site. In September 2004, Catellus and the NJDEP entered into an Memorandum of Agreement with the NJDEP in which Catellus has primary responsibility to complete the Site remediation components in accordance with an NJDEP-approved Remedial Action Workplan (RAW)[1]. The NJDEP's approval of this MAP will establish formal guidelines for the protocol and Site Specific Material Acceptance Criteria (SSMAC) that will be used to accept or reject fill materials at the Site that will be used to construct the Surface Cover and used as grading fill in conjunction with the Brownfield redevelopment of the Site as an industrial facility. The MAP has been prepared to be consistent with the NJDEP-approved Materials Acceptance Plan[2] for the adjacent Former Koppers Site NJDEP-approved RAW.

## 1.1 PROJECT/SITE OVERVIEW

Catellus Construction Corporation, as Construction Manager and Agent for Port Reading – Woodbridge II, L.L.C. (Catellus) is developing plans for the Port Reading Business Park, which will include the Brownfield redevelopment of the Public Service Electric and Gas (PSE&G) property, along with the adjacent Former Koppers property, which Catellus both recently acquired. The PSE&G property is 229-acres in size on Block 1095C, Lots 1, 2 and 4 and Block 1095C, Lots 12, 13, 14 and 16B in Woodbridge Township. Site investigations and development of remediation plans for the PRR Site were previously conducted pursuant to a Memorandum of Agreement (MOA) entered into between the NJDEP and OENJ Cherokee (OENJ). In October 2004, Catellus and the NJDEP entered into a separate MOA in which Catellus agreed to complete the remaining remediation requirements for the PRR Site. The NJDEP Case number MOA assigned to the PSE&G property is MS00004920. The NJDEP case number used prior to the MOA is NJL800466120. The location of the Site is shown on Figure 1-1.

The Surface Cover is one component of the proposed remedial action. In addition, but not addressed as part of this MAP, several Area of Concern (AOC) specific remediations will be conducted at the Site, included the removal of PCB contaminated soils, TPH contaminated soils, and remediation of a portion of the Site's wetlands and ditches. Details of the proposed remedial actions, including a summary of remedial investigations, the remedial design, permitting, and implementation, are provided in the NJDEP-approved RAW.

[1] January, 2005, Key Environmental, Inc., Remedial Action Workplan, Public Service Electric and Gas Portion of the Port Reading Redevelopment Site, Woodbridge, New Jersey.
[2] April 2005, Key Environmental, Inc. Materials Acceptance Plan Revision 03, Former Koppers Site, Port Reading, New Jersey.