# EXHIBIT 39

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NO. W912DS-05-B-0010-0006 | 2. TYPE OF SOLICITATION [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 27-Sep-2005 | PAGE OF PAGES 1 OF 110 |
|---|---|---|---|---|

**IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.**

| 4. CONTRACT NO. W912DS-05-C-0020 | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|

| 7. ISSUED BY CODE W912DS | 8. ADDRESS OFFER TO (If Other Than Item 7) CODE |
|---|---|
| USA ENGINEER DISTRICT, NEW YORK<br>ATTN:CENAN-CT ROOM 1843<br>26 FEDERAL PLAZA<br>NEW YORK NY 10278 | **See Item 7** |
| TEL: 212-264-0238 FAX: 212-264-3013 | TEL: FAX: |

| 9. FOR INFORMATION CALL: | A. NAME MYRLANDE LEE | B. TELEPHONE NO. (Include area code) (NO COLLECT CALLS) 917-790-8080 |
|---|---|---|

**SOLICITATION**

**NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".**

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date):*

Maintenance Dredging of the Arthur Kill Reach of the New York and New Jersey Channels.

THIS REQUIREMENT IS PURSUANT TO FAR SUBPART 19.10-SMALL BUSINESS COMPETITIVENESS DEMONSTRATION PROGRAM.

This is an unrestricted procurement.
Estimated Value: Greater than $10,000,000.00.
NAICS CODE: 237990. SIZE STANDARD: $28.5 Million.
Contract Speicialist: ALAN P. LINK, (917) 790-8176.
Technical POC: SOON B. LEW, (917) 790-8531.

IMPORTANT: Bonds, Powers of Attorney, statements of authenticity and continuing validity, and all related documents MUST NOT bear computer printed or generated signatures and/or seals generated as part of a document, as opposed to being affixed to the document AFTER its generation, will not be accepted. Submission of such documents may render the bid or offer non-responsive and ineligible for award. Please review all bonds and accompanying documents required to be submitted.

11. The Contractor shall begin performance within 5 calendar days and complete it within 45 calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory, [ ] negotiable. *(See* 00800, Para. 1 *.)*

| 12 A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)* [X] YES [ ] NO | 12B. CALENDAR DAYS 10 |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 1 copies to perform the work required are due at the place specified in Item 8 by 02:00 PM *(hour)* local time 29 Jun 2005 *(date).* If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than 120 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

## SOLICITATION, OFFER, AND AWARD (Continued)

*(Construction, Alteration, or Repair)*

**OFFER** ***(Must be fully completed by offeror)***

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*
DONJON MARINE CO INC
1250 LIBERTY AVENUE
HILLSIDE NJ 07205

15. TELEPHONE NO. *(Include area code)*
908-964-8812

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*
**See Item 14**

CODE 9S939 | FACILITY CODE

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ________ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS: SEE SCHEDULE OF PRICES

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS

*(The offeror acknowledges receipt of amendments to the solicitation — give number and date of each)*

| AMENDMENT NO. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | |

| 20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)* | 20B. SIGNATURE | 20C. OFFER DATE |
|---|---|---|
| | | |

**AWARD** ***(To be completed by Government)***

21. ITEMS ACCEPTED:

# SEE SCHEDULE

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| **$6,675,706.25** | **See Schedule** |

| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* | ITEM | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO ☐ 10 U.S.C. 2304(c) ☐ 41 U.S.C. 253(c) |
|---|---|---|

| 26. ADMINISTERED BY CODE | 27. PAYMENT WILL BE MADE BY: CODE |
|---|---|
| **See Item 7** | |

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return ______ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work, requisitions identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications or incorporated by reference in or attached to this contract.

☐ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

31A. NAME OF CONTRACTING OFFICER *(Type or print)*
RAYNETTE GURNEY / Added by SUMI
TEL: 917-790-8076 EMAIL: raynette.gurney@usace.army.mil

| 30B. SIGNATURE | 30C. DATE | 31B. UNITED STATES OF AMERICA | 31C. AWARD DATE |
|---|---|---|---|
| | | BY Raynette H. Gurney | 27-Sep-2005 |

NSN 7540-01-155-3212 **STANDARD FORM 1442 BACK** (REV. 4-85)

G012725

G01010 12725

Section 00010 - Solicitation Contract Form

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | | | | | |
| | Mobilization and Demobilization<br>FFP<br>Mobilization and Demobilization | | | | |
| | | | | NET AMT | $0.00 |
| | Funded Amount | | | | $0.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001AA | | 1 | Lump Sum | $1,450,000.00 | $1,450,000.00 |
| | Mobilization and Demobilization<br>FFP<br>Mobilization and Demobilization | | | | |
| | | | | NET AMT | $1,450,000.00 |
| | ACRN AA Funded Amount | | | | $51,523.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0002 | | 101,965 | Cubic Yard | $51.25 | $5,225,706.25 |
| | Dredging, Transportation, Processing and<br>FFP<br>Placement (Shoals A, B and C). Estimated Quantity. | | | | |
| | | | | NET AMT | $5,225,706.25 |
| | Funded Amount | | | | $0.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0003 | | 1,315 | Cubic Yard | $48.00 | $63,120.00 |

OPTION Option A1
FFP
Dredging, Transportation, Processing and Placement (Shoal A1). Estimated Quantity.

NET AMT $63,120.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0004 | | 570 | Cubic Yard | $51.25 | $29,212.50 |

OPTION Option B1
FFP
Dredging, Transportation, Processing and Placement (Shoal B1). Estimated Quantity.

NET AMT $29,212.50

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0005 | | 79,180 | Cubic Yard | $47.40 | $3,753,132.00 |

OPTION Option D
FFP
Dredging, Transportation, Processing and Placement (Shoal D). Estimated Quantity.

NET AMT $3,753,132.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0006 | | 8,870 | Cubic Yard | $47.40 | $420,438.00 |

OPTION Option E
FFP
Dredging, Transportation, Processing and Placement (Shoal E). Estimated Quantity.

NET AMT $420,438.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0007 | | 7,445 | Cubic Yard | $47.05 | $350,287.25 |

OPTION Option F
FFP
Dredging, Transportation, Processing and Placement (Shoal F). Estimated Quantity.

NET AMT $350,287.25

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0008 | | 20,790 | Cubic Yard | $47.15 | $980,248.50 |

OPTION

Option F1
FFP
Dredging, Transportation, Processing and Placement (Shoal F1). Estimated Quantity.

NET AMT $980,248.50

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0009 | | 19,640 | Cubic Yard | $47.05 | $924,062.00 |

OPTION

Option G
FFP
Dredging, Transportation, Processing and Placement (Shoal G). Estimated Quantity.

NET AMT $924,062.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0010 | | 655 | Cubic Yard | $47.00 | $30,785.00 |

OPTION

Option G1
FFP
Dredging, Transportation, Processing and Placement (Shoal G1). Estimated Quantity.

NET AMT $30,785.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0011 | | 3,705 | Cubic Yard | $46.95 | $173,949.75 |

OPTION Option H
FFP
Dredging, Transportation, Processing and Placement (Shoal H). Estimated Quantity.

NET AMT $173,949.75

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0012 | | 8,720 | Cubic Yard | $46.75 | $407,660.00 |

OPTION Option I
FFP
Dredging, Transportation, Processing and Placement (Shoal I). Estimated Quantity.

NET AMT $407,660.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0013 | | 25,185 | Cubic Yard | $46.60 | $1,173,621.00 |

OPTION Option J
FFP
Dredging, Transportation, Processing and Placement (Shoal J). Estimated Quantity.

NET AMT $1,173,621.00

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0014 | | 2,020 | Cubic Yard | $46.50 | $93,930.00 |

OPTION

Option K
FFP
Dredging, Transportation, Processing and Placement (Shoal K). Estimated Quantity.

| | |
|---|---|
| NET AMT | $93,930.00 |
| Funded Amount | $0.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0015 | | 10,050 | Cubic Yard | $48.50 | $487,425.00 |

OPTION

Option L
FFP
Dredging, Transportation, Processing and Placement (Shoal L). Estimated Quantity.

| | |
|---|---|
| NET AMT | $487,425.00 |
| Funded Amount | $0.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0016 | | 3,515 | Cubic Yard | $45.15 | $158,702.25 |

OPTION Option M
FFP
Dredging, Transportation, Processing and Placement (Shoal M). Estimated Quantity.

NET AMT $158,702.25

Funded Amount $0.00

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0017 | | 4,440 | Cubic Yard | $45.05 | $200,022.00 |

OPTION Option N
FFP
Dredging, Transportation, Processing and Placement (Shoal N). Estimated Quantity.

NET AMT $200,022.00

Funded Amount $0.00

FOB: Destination

PAGE 2 CONTINUATION SHEET
**Page 2 " Continuation Sheet," SF 1442**

**Project: Maintenance Dredging of Arthur Kill Reach of New York and New Jersey Channels.**

Solicitation Number: W912DS-05-B-0010
Contract Number: W912DS-05-C-0020
Contractor: DonJon Marine

**Block 21, ITEMS ACCEPTED**
Accepted **ALL CLINs (including options if exercised)**

**CLINS ACCEPTED FOR OBLIGATION PURPOSES: CLINs 0001AA, and 0002.**

**CLINS NOT OBLIGATED: CLIN 0003, CLIN 0004, CLIN 0005, CLIN 0006, CLIN 0007, CLIN 0008, CLIN 0009, CLIN 0010, CLIN 0011, CLIN 0012, CLIN 0013, CLIN 0014, CLIN 0015, CLIN 0016, CLIN 0017.**

**Amendments: 0001 dated 5/16/05, 0002 dated 6/1/05, 0003 dated 6/8/05, 0004 dated 6/14/05, 0005 6/17/05, 0006 6/21/05 respectively. The sum of $51,523.00 is available for FY 05.**

Wage Decision No: NJ030006 dated 05/06/2005 and NY030006 dated 05/06/2005
Bid Verification Letter 19 September 2005.
Subcontracting Plan approved 26 September 2005

BLOCK 22, AMOUNT:
Total Award Amount: Fifteen Million, Nine Hundred And Twenty Two Thousand Three Hundred and One Dollar and Fifty Cents ($15,922,301.50).

PURCHASE REQUEST: W16ROE -5258-8867

ACCOUNTING AND APPROPRIATION DATA

AA: 96X31230000 082421 2530G7293L012520 NA 96303
AMOUNT: $51,523.00

| | |
|---|---|
| Total Contract Award: | $6,675,706.25 |
| Total Obligated at Award: | $ **51,523.00 (This is a continuing Contract)** |
| Total Remaining Un-obligated Amount: | $6,624,183.25 |

BIDDING INSTRUCTIONS

**OFFLOADING, PROCESSING, AND DISPOSAL SITES INFORMATION (TO BE PROVIDED BY BIDDERS):**

**Name of Site(s) See Attached Page for Off loading and Disposal site Information**

Name of POC(s)____________________________________

____________________________________

Address of Site(s)____________________________________

____________________________________

Telephone Number(s)____________________________________

____________________________________

**NOTES FOR PRICE SCHEDULE:**

NOTE 1: Bidders are required to bid on all items on the Price Schedule or their bid will be rejected.

NOTE 2: The low bidder for the purpose of award will be the conforming responsible bidder offering the lowest amount for the total bid price of the Basic Work (items 0001AA and 0002) and all Options (items 0003 thru 0017).

NOTE 3: Any bid that is materially unbalanced may be rejected. An unbalanced bid is one, which is based on price significantly less than the cost for some work and prices are significantly overstated for other work.

NOTE 3a. Additional description to CLIN 0002 through CLIN 0017 is as follows: "Removal of material except ledge rock lying above the plane of minus 35 feet below mean low water with 2 feet allowable overdepth from the Federal Navigation Channel as shown on the contract drawings, and with placement of dredged material at an approved/permitted upland disposal site furnished by the contractor.

NOTE 4: Bidders are reminded that they must bid on the issued plans and specifications as amended. Any deviations, conditions, or attachments made by the bidders thereto may render the bid non-responsive and be a cause for rejection.

NOTE 5: The apparent low bidder shall submit the documents specified in Section 00800, Paragraph 1A (Contractor Identified Offloading, Processing, and Disposal Site Compliance). If the apparent low bidder does not submit the information required to be submitted within the time specified, the Contractor will be considered non-responsible, and its bid rejected.

NOTE 6: Disposal Site Compliance: The Apparent Low Bidder must demonstrate to the Government **within 70 calendar days** from the date the apparent low bidder is notified of being the low bidder, that the CONTRACTOR's IDENTIFIED site(s) is operational and capable of offloading, processing, and disposing of the dredged material on that date for the estimated quantity as per the bid schedule, is in compliance with the New Jersey Department of Environmental Protection and/or with the State of New York Department of State Coastal Management (CZM) Program Policies or other host state compliance as appropriate for the offloading, processing, and disposal of dredged material.

NOTE 7: Bidders will identify their offloading, processing, and disposal sites with their bid. Bidders will write on the blank lines provided on the Price Schedule the name(s) of the site(s), POC(s), address(es), and phone(s) of their site(s) included in that line item.

NOTE 8: The Government has 30 days from the date of the receipt by the Contractor of the Notice to Proceed (Basic Work) to exercise the Options (A1, B1, D, E, F, F1, G, G1, H, I, J, K, L, M and N), if they are exercised at all. Even if exercised, the Options listed above may not be exercised in numerical order.

NOTE 9: Note that the 90-day rule may apply to this contract if the sediment testing and permitting are delayed. The "90-day" rule references 29 CFR 1.6 (c)(3)(iv) as set forth in FAR 22.404-6(b)(6) provides that if a contract to which a general wage determination has been applied is not awarded within 90 days after bid opening, any modification to that wage determination published prior to the contract award shall be effective unless the agency obtains an extension of this 90-day period from the Administrator, US Department of Labor.

Offloading Processing and Disposal Sites Information(to be provided by bidders)

Metal Management Northeast
(Offloading and Loading)
Berth 30 & 32
Port Newark, New Jersey
Name of POC: Warren Jennings
Telephone Number: (973) 344-5575 EXT 108

Donjon Marine Co., Inc
(Processing Offloading & Loading)
Berth 36
Port Newark, New Jersey
Name of POC: Kerri Mullings
Telephone Number: (908)964-8812

Clean Earth Dredging Technology
(Processing Offloading & Loading)
1 Linden Ave East
Jersey City, New Jersey
Name of POC: Ken Sykes
Telephone Number: (215) 734-1400

Landfill IE
(Disposal Site)
100 Baler Road
North Arlington, New Jersey
Name of POC: Kerri Mullins
Telephone Number: (732)331-2403

FDP Enterprises
(Disposal Site)
2525 Secaucus Road
Jersey City, New Jersey
Name of POC: Ken Sykes
Telephone Number: (215) 734-1400

Catellus – Port Reading Site
(Disposal Site)
50 Middlesex Avenue
Carteret, New Jersey
Name of POC: Stantho Tzitoros
Telephone Number: (732) 331-2403

Newark Bay Confined Disposal Facility

Encap Golf Holdings

(Disposal Site)
Newark Bay
Name of POC: Steve Dorrler
Telephone Number: (212) 435-4273

Altamire Development LLC
(Disposal Site)
301 W. Clay
Houston, Texas 77019
Name of POC: Erik R. Sunde
Jay P. Nelkin
Telephone Number: (731)9422039

(Disposal Site)
End of Valley Brook Road
Lyndhurst, Rutherford and North
Arlington, New Jersey
Name of POC: James Hockensmith
Telephone Number: (814)937-8179

Section 00100 - Bidding Schedule/Instructions to Bidders

SECTION 00100 CLAUSES
Section 00100 - Bidding Schedule/Instructions to Bidders

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.214-3 | Amendments To Invitations For Bids | DEC 1989 |
| 52.214-4 | False Statements In Bids | APR 1984 |
| 52.214-5 | Submission Of Bids | MAR 1997 |
| 52.214-6 | Explanation To Prospective Bidders | APR 1984 |
| 52.214-12 | Preparation Of Bids | APR 1984 |
| 52.214-18 | Preparation of Bids-Construction | APR 1984 |
| 52.214-19 | Contract Award-Sealed Bidding-Construction | AUG 1996 |
| 52.214-34 | Submission Of Offers In The English Language | APR 1991 |
| 52.214-35 | Submission Of Offers In U.S. Currency | APR 1991 |
| 52.225-12 | Notice of Buy American Act Requirement - Construction Materials Under Trade Agreements | JAN 2004 |
| 52.232-38 | Submission of Electronic Funds Transfer Information with Offer | MAY 1999 |

CLAUSES INCORPORATED BY FULL TEXT

52.214-5000 APPARENT CLERICAL MISTAKES (MAR 1995)—EFARS

(a) For the purpose of initial evaluations of bids, the following will be utilized in the resolving arithmetic discrepancies found on the face of bidding schedule as submitted by the bidder:

(1) Obviously misplaced decimal points will be corrected;

(2) Discrepancy between unit price and extended price, the unit price will govern;

(3) Apparent errors in extension of unit prices will be corrected;

(4) Apparent errors in addition of lump-sum and extended prices will be corrected.

(b) For the purpose of bid evaluation, the government will proceed on the assumption that the bidder intends his bid to be evaluated on basis of the unit prices, the totals arrived at by resolution of arithmetic discrepancies as provided above and the bid will be so reflected on the abstract of bids.

(c) These correction procedures shall not be used to resolve any ambiguity concerning which bid is low.

(End of statement)

52.217-5 EVALUATION OF OPTIONS (JUL 1990)

Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s).

(End of provision)

52.222-23 NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE EQUAL EMPLOYMENT OPPORTUNITY FOR CONSTRUCTION (FEB 1999)

(a) The offeror's attention is called to the Equal Opportunity clause and the Affirmative Action Compliance Requirements for Construction clause of this solicitation.

(b) The goals for minority and female participation, expressed in percentage terms for the Contractor's aggregate workforce in each trade on all construction work in the covered area, are as follows:

| Goals for minority participation for each trade | Goals for female participation for each trade |
|---|---|
| SEE SECTION 00900 WAGE RATE DETERMINATION | 6.9% |

These goals are applicable to all the Contractor's construction work performed in the covered area. If the Contractor performs construction work in a geographical area located outside of the covered area, the Contractor shall apply the goals established for the geographical area where the work is actually performed. Goals are published periodically in the Federal Register in notice form, and these notices may be obtained from any Office of Federal Contract Compliance Programs office.

(c) The Contractor's compliance with Executive Order 11246, as amended, and the regulations in 41 CFR 60-4 shall be based on (1) its implementation of the Equal Opportunity clause, (2) specific affirmative action obligations required by the clause entitled "Affirmative Action Compliance Requirements for Construction," and (3) its efforts to meet the goals. The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade. The Contractor shall make a good faith effort to employ minorities and women evenly on each of its projects. The transfer of minority or female employees or trainees from Contractor to Contractor, or from project to project, for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, Executive Order 11246, as amended, and the regulations in 41 CFR 60-4. Compliance with the goals will be measured against the total work hours performed.

(d) The Contractor shall provide written notification to the Deputy Assistant Secretary for Federal Contract Compliance, U.S. Department of Labor, within 10 working days following award of any construction subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the --

(1) Name, address, and telephone number of the subcontractor;

(2) Employer's identification number of the subcontractor;

(3) Estimated dollar amount of the subcontract;

(4) Estimated starting and completion dates of the subcontract; and

(5) Geographical area in which the subcontract is to be performed.

(e) As used in this Notice, and in any contract resulting from this solicitation, the "covered area" is Staten Island, Richmond County, NYC, NY

(End of provision)

52.233-2 SERVICE OF PROTEST (AUG 1996)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from Contracting Officer, US Army Corps of Engineers, 26 Federal Plaza, Room 1814, New York, NY 10278-0090.

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of provision)

52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of those provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a solicitation provision may be accessed electronically at this/these address(es):

http://farsite.hill.af.mil

(End of provision)

52.252-3 ALTERATIONS IN SOLICITATION (APR 1984)

Portions of this solicitation are altered as follows:

52.252-5 AUTHORIZED DEVIATIONS IN PROVISIONS (APR 1984)

(a) The use in this solicitation of any Federal Acquisition Regulation (48 CFR Chapter 1) provision with an authorized deviation is indicated by the addition of"(DEVIATION)" after the date of the provision.

(b) The use in this solicitation of any (48 CFR Chapter ) provision with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of provision)

Section 00600 - Representations & Certifications

SECTION 00600 CLAUSES
Section 00600 - Representations & Certifications

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.203-11 | Certification And Disclosure Regarding Payments To Influence Certain Federal Transactions | APR 1991 |
| 52.219-2 | Equal Low Bids | OCT 1995 |
| 52.222-38 | Compliance With Veterans' Employment Reporting Requirements | DEC 2001 |
| 252.209-7001 | Disclosure of Ownership or Control by the Government of a Terrorist Country | MAR 1998 |
| 252.225-7031 | Secondary Arab Boycott Of Israel | APR 2003 |

CLAUSES INCORPORATED BY FULL TEXT

52.203-2 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (APR 1985)

(a) The offeror certifies that --

(1) The prices in this offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to –

(i) Those prices,

(ii) The intention to submit an offer, or

(iii) The methods of factors used to calculate the prices offered:

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

(b) Each signature on the offer is considered to be a certification by the signatory that the signatory --

(1) Is the person in the offeror's organization responsible for determining the prices offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision; or

(2) (i) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) of this provison Thomas D. Witte Exec Vice President (insert full name of person(s) in the offeror's organization responsible for determining the prices offered in this bid or proposal, and the title of his or her position in the offeror's organization);

(ii) As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) above have not participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) above; and

(iii) As an agent, has not personally participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) of this provision.

(c) If the offeror deletes or modifies subparagraph (a)(2) of this provision, the offeror must furnish with its offer a signed statement setting forth in detail the circumstances of the disclosure.

(End of clause)

52.204-3 TAXPAYER IDENTIFICATION (OCT 1998)

(a) Definitions.

"Common parent," as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

"Taxpayer Identification Number (TIN)," as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the IRS. If the resulting contract is subject to the payment reporting requirements described in Federal Acquisition Regulation (FAR) 4.904, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) Taxpayer Identification Number (TIN).

___ TIN:. 22-184-4615

___ TIN has been applied for.

___ TIN is not required because:

___ Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a fiscal paying agent in the United States;

___ Offeror is an agency or instrumentality of a foreign government;

___ Offeror is an agency or instrumentality of the Federal Government.

(e) Type of organization.

___ Sole proprietorship;

___ Partnership;

___ Corporate entity (not tax-exempt);

X Corporate entity (tax-exempt);

___ Government entity (Federal, State, or local);

___ Foreign government;

___ International organization per 26 CFR 1.6049-4;

___ Other ______________________________

(f) Common parent.

X Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

___ Name and TIN of common parent:

Name ______________________________

TIN ______________________________

(End of provision)

52.204-5 WOMEN-OWNED BUSINESS (OTHER THAN SMALL BUSINESS) (MAY 1999)

(a) Definition. Women-owned business concern, as used in this provision, means a concern that is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of its stock is owned by one or more women; and whose management and daily business operations are controlled by one or more women.

(b) Representation. [Complete only if the offeror is a women-owned business concern and has not represented itself as a small business concern in paragraph (b)(1) of FAR 52.219-1, Small Business Program Representations, of this solicitation.] The offeror represents that it ( ) is a women-owned business concern.

(End of provision)

52.209-5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (DEC 2001)

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that-

(i) The Offeror and/or any of its Principals-

(A) Are ( ) are not (X ) presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have ( ) have not ( X ), within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(C) Are ( ) are not ( X ) presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in paragraph (a)(1)(i)(B) of this provision.

(ii) The Offeror has ( ) has not (X ), within a three-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

This Certification Concerns a Matter Within the Jurisdiction of an Agency of the United States and the Making of a False, Fictitious, or Fraudulent Certification May Render the Maker Subject to Prosecution Under Section 1001, Title 18, United States Code.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

(End of provision)

52.219-1 SMALL BUSINESS PROGRAM REPRESENTATIONS (APR 2002)

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is 237990.

(2) The small business size standard is $28.5 million.

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations. (1) The offeror represents as part of its offer that it ( ) is, ( X ) is not a small business concern.

(2) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents, for general statistical purposes, that it ( ) is, ( ) is not a small disadvantaged business concern as defined in 13 CFR 124.1002.

(3) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a women-owned small business concern.

(4) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a veteran-owned small business concern.

(5) (Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (b)(4) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a service-disabled veteran-owned small business concern.

(6) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents, as part of its offer, that--

(i) It ( ) is, ( ) is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal office, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and

(ii) It ( ) is, ( ) is not a joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (b)(6)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. (The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture:____________.) Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

(c) Definitions. As used in this provision--

Service-disabled veteran-owned small business concern--

(1) Means a small business concern--

(i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

"Small business concern," means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and the size standard in paragraph (a) of this provision.

Veteran-owned small business concern means a small business concern--

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

"Women-owned small business concern," means a small business concern --

(1) That is at least 51 percent owned by one or more women; in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(d) Notice.

(1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small, HUBZone small, small disadvantaged, or women-owned small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to section 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall--

(i) Be punished by imposition of fine, imprisonment, or both;

(ii) Be subject to administrative remedies, including suspension and debarment; and

(iii) Be ineligible for participation in programs conducted under the authority of the Act.

(End of provision)

52.219-22 SMALL DISADVANTAGED BUSINESS STATUS (OCT 1999)

(a) General. This provision is used to assess an offeror's small disadvantaged business status for the purpose of obtaining a benefit on this solicitation. Status as a small business and status as a small disadvantaged business for general statistical purposes is covered by the provision at FAR 52.219-1, Small Business Program Representation.

(b) Representations.

(1) General. The offeror represents, as part of its offer, that it is a small business under the size standard applicable to this acquisition; and either--

___ (i) It has received certification by the Small Business Administration as a small disadvantaged business concern consistent with 13 CFR 124, Subpart B; and

(A) No material change in disadvantaged ownership and control has occurred since its certification;

(B) Where the concern is owned by one or more disadvantaged individuals, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(C) It is identified, on the date of this representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration(PROONet); or

___ (ii) It has submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(2)___ For Joint Ventures. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements at 13 CFR 124.1002(f) and that the representation in paragraph (b)(1) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: ___________.]

(c) Penalties and Remedies. Anyone who misrepresents any aspects of the disadvantaged status of a concern for the purposes of securing a contract or subcontract shall:

(1) Be punished by imposition of a fine, imprisonment, or both;

(2) Be subject to administrative remedies, including suspension and debarment; and

(3) Be ineligible for participation in programs conducted under the authority of the Small Business Act.

(End of provision)

52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

The offeror represents that --

(a) ( X ) It has, ( ) has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation;

(b) (X ) It has, ( ) has not, filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

(End of provision)

52.223-13 CERTIFICATION OF TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

(a) Executive Order 13148, of April 21, 2000, Greening the Government through Leadership in Environmental Management, requires submission of this certification as a prerequisite for contract award.

(b) By signing this offer, the offeror certifies that--

(1) As the owner or operator of facilities that will be used in the performance of this contract that are subject to the filing and reporting requirements described in section 313 of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023) and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106), the offeror will file and continue to file for such facilities for the life of the contract the Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of EPCRA and section 6607 of PPA; or

(2) None of its owned or operated facilities to be used in the performance of this contract is subject to the Form R filing and reporting requirements because each such facility is exempt for at least one of the following reasons: (Check each block that is applicable.)

( X ) (i) The facility does not manufacture, process, or otherwise use any toxic chemicals listed in 40 CFR 372.65;

( ) (ii) The facility does not have 10 or more full-time employees as specified in section 313.(b)(1)(A) of EPCRA 42 U.S.C. 11023(b)(1)(A);

( ) (iii) The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

( ) (iv) The facility does not fall within the following Standard Industrial Classification (SIC) codes or their

corresponding North American Industry Classification System sectors:

(A) Major group code 10 (except 1011, 1081, and 1094.

(B) Major group code 12 (except 1241).

(C) Major group codes 20 through 39.

(D) Industry code 4911, 4931, or 4939 (limited to facilities that combust coal and/or oil for the purpose of generating power for distribution in commerce).

(E) Industry code 4953 (limited to facilities regulated under the Resource Conservation and Recovery Act, Subtitle C (42 U.S.C. 6921, et seq.), 5169, 5171, or 7389 (limited to facilities primarily engaged in solvent recovery services on a contract or fee basis); or

( ) (v) The facility is not located within the United States or its outlying areas.

(End of clause)

52.226-2 HISTORICALLY BLACK COLLEGE OR UNIVERSITY AND MINORITY INSTITUTION REPRESENTATION (MAY 2001)

(a) Definitions. As used in this provision--

Historically black college or university means an institution determined by the Secretary of Education to meet the requirements of 34 CFR 608.2. For the Department of Defense, the National Aeronautics and Space Administration, and the Coast Guard, the term also includes any nonprofit research institution that was an integral part of such a college or university before November 14, 1986.

Minority institution means an institution of higher education meeting the requirements of Section 1046(3) of the Higher Education Act of 1965 (20 U.S.C. 1067k, including a Hispanic-serving institution of higher education, as defined in Section 316(b)(1) of the Act (20 U.S.C. 1101a)).

(b) Representation. The offeror represents that it--

( ) is ( X ) is not a historically black college or university;

( ) is ( X ) is not a minority institution.

(End of provision)

252.247-7022 REPRESENTATION OF EXTENT OF TRANSPORTATION BY SEA (AUG 1992)

(a) The Offeror shall indicate by checking the appropriate blank in paragraph (b) of this provision whether transportation of supplies by sea is anticipated under the resultant contract. The term supplies is defined in the Transportation of Supplies by Sea clause of this solicitation.

(b) Representation. The Offeror represents that it:

X (1) Does anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

____ (2) Does not anticipate that supplies will be transported by sea in the performance of any contract or subcontract resulting from this solicitation.

(c) Any contract resulting from this solicitation will include the Transportation of Supplies by Sea clause. If the Offeror represents that it will not use ocean transportation, the resulting contract will also include the Defense FAR Supplement clause at 252.247-7024, Notification of Transportation of Supplies by Sea.

(End of provision)

Section 00700 - Contract Clauses

SECTION 00700 CLAUSES
CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.202-1 Alt I | Definitions (Dec 2001) --Alternate I | MAY 2001 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-7 | Anti-Kickback Procedures | JUL 1995 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | JAN 1997 |
| 52.203-10 | Price Or Fee Adjustment For Illegal Or Improper Activity | JAN 1997 |
| 52.203-12 | Limitation On Payments To Influence Certain Federal Transactions | JUN 2003 |
| 52.204-4 | Printed or Copied Double-Sided on Recycled Paper | AUG 2000 |
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment | JUL 1995 |
| 52.211-18 | Variation in Estimated Quantity | APR 1984 |
| 52.214-26 | Audit and Records--Sealed Bidding | OCT 1997 |
| 52.214-27 | Price Reduction for Defective Cost or Pricing Data - Modifications - Sealed Bidding | OCT 1997 |
| 52.214-28 | Subcontracting Cost Or Pricing Data--Modifications--Sealed Bidding | OCT 1997 |
| 52.214-29 | Order Of Precedence--Sealed Bidding | JAN 1986 |
| 52.219-4 | Notice of Price Evaluation Preference for HUBZone Small Business Concerns | JAN 1999 |
| 52.219-8 | Utilization of Small Business Concerns | OCT 2000 |
| 52.219-9 Alt I | Small Business Subcontracting Plan (Jan 2002) Alternate I | OCT 2001 |
| 52.219-14 | Limitations On Subcontracting | DEC 1996 |
| 52.219-16 | Liquidated Damages-Subcontracting Plan | JAN 1999 |
| 52.222-3 | Convict Labor | JUN 2003 |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation | SEP 2000 |
| 52.222-6 | Davis Bacon Act | FEB 1995 |
| 52.222-6 | Davis Bacon Act | FEB 1995 |
| 52.222-7 | Withholding of Funds | FEB 1988 |
| 52.222-8 | Payrolls and Basic Records | FEB 1988 |
| 52.222-9 | Apprentices and Trainees | FEB 1988 |
| 52.222-10 | Compliance with Copeland Act Requirements | FEB 1988 |
| 52.222-11 | Subcontracts (Labor Standards) | FEB 1988 |
| 52.222-12 | Contract Termination-Debarment | FEB 1988 |
| 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations. | FEB 1988 |
| 52.222-14 | Disputes Concerning Labor Standards | FEB 1988 |
| 52.222-15 | Certification of Eligibility | FEB 1988 |
| 52.222-21 | Prohibition Of Segregated Facilities | FEB 1999 |
| 52.222-26 | Equal Opportunity | APR 2002 |
| 52.222-27 | Affirmative Action Compliance Requirements for Construction | FEB 1999 |
| 52.222-35 | Equal Opportunity For Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans | DEC 2001 |
| 52.222-36 | Affirmative Action For Workers With Disabilities | JUN 1998 |
| 52.222-37 | Employment Reports On Special Disabled Veterans, Veterans Of The Vietnam Era, and Other Eligible Veterans | DEC 2001 |

| | | |
|---|---|---|
| 52.223-14 | Toxic Chemical Release Reporting | AUG 2003 |
| 52.225-11 | Buy American Act--Construction Materials Under Trade Agreements | JAN 2004 |
| 52.226-1 | Utilization Of Indian Organizations And Indian-Owned Economic Enterprises | JUN 2000 |
| 52.227-1 | Authorization and Consent | JUL 1995 |
| 52.227-2 | Notice And Assistance Regarding Patent And Copyright Infringement | AUG 1996 |
| 52.227-4 | Patent Indemnity-Construction Contracts | APR 1984 |
| 52.228-11 | Pledges Of Assets | FEB 1992 |
| 52.228-14 | Irrevocable Letter of Credit | DEC 1999 |
| 52.228-15 | Performance and Payment Bonds--Construction | JUL 2000 |
| 52.229-3 | Federal, State And Local Taxes | APR 2003 |
| 52.232-5 | Payments under Fixed-Price Construction Contracts | SEP 2002 |
| 52.232-23 | Assignment Of Claims | JAN 1986 |
| 52.232-27 | Prompt Payment for Construction Contracts | OCT 2003 |
| 52.233-1 | Disputes | JUL 2002 |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.236-5 | Material and Workmanship | APR 1984 |
| 52.236-6 | Superintendence by the Contractor | APR 1984 |
| 52.236-7 | Permits and Responsibilities | NOV 1991 |
| 52.236-15 | Schedules for Construction Contracts | APR 1984 |
| 52.236-16 | Quantity Surveys | APR 1984 |
| 52.236-17 | Layout of Work | APR 1984 |
| 52.236-21 | Specifications and Drawings for Construction | FEB 1997 |
| 52.236-26 | Preconstruction Conference | FEB 1995 |
| 52.242-13 | Bankruptcy | JUL 1995 |
| 52.242-14 | Suspension of Work | APR 1984 |
| 52.243-1 Alt I | Changes--Fixed Price (Aug 1987) - Alternate I | APR 1984 |
| 52.243-5 | Changes and Changed Conditions | APR 1984 |
| 52.244-6 | Subcontracts for Commercial Items | APR 2003 |
| 52.246-1 | Contractor Inspection Requirements | APR 1984 |
| 52.246-12 | Inspection of Construction | AUG 1996 |
| 52.247-34 | F.O.B. Destination | NOV 1991 |
| 52.249-2 | Termination For Convenience Of The Government (Fixed-Price) | SEP 1996 |
| 52.249-2 Alt I | Termination for Convenience of the Government (Fixed-Price) (Sep 1996) - Alternate I | SEP 1996 |
| 52.249-10 | Default (Fixed-Price Construction) | APR 1984 |
| 52.253-1 | Computer Generated Forms | JAN 1991 |
| 252.201-7000 | Contracting Officer's Representative | DEC 1991 |
| 252.203-7001 | Prohibition On Persons Convicted of Fraud or Other Defense-Contract-Related Felonies | MAR 1999 |
| 252.203-7002 | Display Of DOD Hotline Poster | DEC 1991 |
| 252.204-7003 | Control Of Government Personnel Work Product | APR 1992 |
| 252.204-7004 Alt A | Required Central Contractor Registration Alternate A | NOV 2003 |
| 252.205-7000 | Provision Of Information To Cooperative Agreement Holders | DEC 1991 |
| 252.209-7000 | Acquisition From Subcontractors Subject To On-Site Inspection Under The Intermediate Range Nuclear Forces (INF) Treaty | NOV 1995 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | MAR 1998 |
| 252.219-7003 | Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (DOD Contracts) | APR 1996 |
| 252.225-7012 | Preference For Certain Domestic Commodities | FEB 2003 |

| | | |
|---|---|---|
| 252.232-7003 | Electronic Submission of Payment Requests | JAN 2004 |
| 252.236-7000 | Modification Proposals-Price Breakdown | DEC 1991 |
| 252.236-7002 | Obstruction of Navigable Waterways | DEC 1991 |
| 252.236-7008 | Contract Prices-Bidding Schedules | DEC 1991 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.243-7002 | Requests for Equitable Adjustment | MAR 1998 |
| 252.244-7000 | Subcontracts for Commercial Items and Commercial Components (DoD Contracts) | MAR 2000 |
| 252.246-7000 | Material Inspection And Receiving Report | MAR 2003 |
| 252.247-7023 | Transportation of Supplies by Sea | MAY 2002 |
| 252.247-7024 | Notification Of Transportation Of Supplies By Sea | MAR 2000 |

52.211-10 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)

The Contractor shall be required to (a) commence work under this contract within five (5) calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than 45 calendar days after the Contractor receives the notice to proceed. The time stated for completion shall include final cleanup of the premises. See Section 00800, Paragraph 1, for options exercised periods of performance.

(End of clause)

52.211-12 LIQUIDATED DAMAGES--CONSTRUCTION (SEP 2000)

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $1,450.00 for each calendar day of delay until the work is completed or accepted.

(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

(End of clause)

52.211-18 VARIATION IN ESTIMATED QUANTITY (APR 1984)

If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. If the quantity variation is such as to cause an increase in the time necessary for completion, the Contractor may request, in writing, an extension of time, to be received by the Contracting Officer within 10 days from the beginning of the delay, or within such further period as may be granted by the Contracting Officer before the date of final settlement of the contract. Upon the receipt of a written request for an extension, the Contracting Officer shall ascertain the facts and make an adjustment for extending the completion date as, in the judgement of the Contracting Officer, is justified.

52.219-4 NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS (JAN 1999)

(a) Definition. HUBZone small business concern, as used in this clause, means a small business concern that appears on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration.

(b) Evaluation preference. (1) Offers will be evaluated by adding a factor of 10 percent to the price of all offers, except--

(i) Offers from HUBZone small business concerns that have not waived the evaluation preference;

(ii) Otherwise successful offers from small business concerns;

(iii) Otherwise successful offers of eligible products under the Trade Agreements Act when the dollar threshold for application of the Act is exceeded (see 25.402 of the Federal Acquisition Regulation (FAR)); and

(iv) Otherwise successful offers where application of the factor would be inconsistent with a Memorandum of Understanding or other international agreement with a foreign government.

(2) The factor of 10 percent shall be applied on a line item basis or to any group of items on which award may be made. Other evaluation factors described in the solicitation shall be applied before application of the factor.

(3) A concern that is both a HUBZone small business concern and a small disadvantaged business concern will receive the benefit of both the HUBZone small business price evaluation preference and the small disadvantaged business price evaluation adjustment (see FAR clause 52.219-23). Each applicable price evaluation preference or adjustment shall be calculated independently against an offeror's base offer.

These individual preference amounts shall be added together to arrive at the total evaluated price for that offer.

(c) Waiver of evaluation preference. A HUBZone small business concern may elect to waive the evaluation preference, in which case the factor will be added to its offer for evaluation purposes. The agreements in paragraph (d) of this clause do not apply if the offeror has waived the evaluation preference.

___ Offeror elects to waive the evaluation preference.

(d) Agreement. A HUBZone small business concern agrees that in the performance of the contract, in the case of a contract for

(1) Services (except construction), at least 50 percent of the cost of personnel for contract performance will be spent for employees of the concern or employees of other HUBZone small business concerns;

(2) Supplies (other than procurement from a nonmanufacturer of such supplies), at least 50 percent of the cost of manufacturing, excluding the cost of materials, will be performed by the concern or other HUBZone small business concerns;

(3) General construction, at least 15 percent of the cost of the contract performance incurred for personnel will be will be spent on the concern's employees or the employees of other HUBZone small business concerns; or

(4) Construction by special trade contractors, at least 25 percent of the cost of the contract performance incurred for personnel will be spent on the concern's employees or the employees of other HUBZone small business concerns.

(e) A HUBZone joint venture agrees that in the performance of the contract, the applicable percentage specified in paragraph (d) of this clause will be performed by the HUBZone small business participant or participants.

(f) A HUBZone small business concern nonmanufacturer agrees to furnish in performing this contract only end items manufactured or produced by HUBZone small business manufacturer concerns. This paragraph does not apply in connection with construction or service contracts.

(End of clause)

52.228-1 BID GUARANTEE (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.-

(c) The amount of the bid guarantee shall be 20 percent of the bid price or $3,000,000.00, whichever is less.-

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.-

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

(End of clause)

52.236-1 PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization, work equivalent to at least 40 percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government.

(End of clause)

52.236-4 PHYSICAL DATA (APR 1984)

Data and information furnished or referred to below is for the Contractor's information. The Government shall not be responsible for any interpretation of or conclusion drawn from the data or information by the Contractor.

(a) The indications of physical conditions on the drawings and in the specifications are the result of site investigations by hydrographic surveys and individual inspections.

(b) Weather conditions: SEE SECTION 00800, PARAGRAPH 6a.

(c) Transportation facilities: SEE SECTION 00800, PARAGRAPH 6d.

(d) ANY ADDITIONAL INFORMATION CAN BE FOUND IN SECTION 00800, PARAGRAPH SIX.

(End of clause)

52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at this/these address (es):

http://farsite.hill.af.mil

(End of clause)

52.252-4 ALTERATIONS IN CONTRACT (APR 1984)

Portions of this contract are altered as follows:

(End of clause)

52.252-6 AUTHORIZED DEVIATIONS IN CLAUSES (APR 1984)

(b) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the date of the clause.

(c) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR Chapter 1) clause with an authorized deviation is indicated by the addition of "(DEVIATION)" after the name of the regulation.

(End of Clause)

252.236-7001 CONTRACT DRAWINGS, MAPS, AND SPECIFICATIONS (AUG 2000)

(a) The Government will provide to the Contractor, without charge, one set of contract drawings and specifications, except publications incorporated into the technical provisions by reference, in electronic or paper media as chosen by the Contracting Officer.

(b) The Contractor shall--

(1) Check all drawings furnished immediately upon receipt;

(2) Compare all drawings and verify the figures before laying out the work;

(3) Promptly notify the Contracting Officer of any discrepancies;

(4) Be responsible for any errors that might have been avoided by complying with this paragraph (b); and

(5) Reproduce and print contract drawings and specifications as needed.

(c) In general--

(1) Large-scale drawings shall govern small-scale drawings; and

(2) The Contractor shall follow figures marked on drawings in preference to scale measurements.

(d) Omissions from the drawings or specifications or the misdescription of details of work that are manifestly necessary to carry out the intent of the drawings and specifications, or that are customarily performed, shall not relieve the Contractor from performing such omitted or misdescribed details of the work. The Contractor shall perform such details as if fully and correctly set forth and described in the drawings and specifications.

(e) The work shall conform to the specifications and the contract drawings identified on the following index of drawings:

Title File Drawing No.
(SEE SECTION 00800, PARAGRAPH 5)

(End of clause)

252.236-7004 PAYMENT FOR MOBILIZATION AND DEMOBILIZATION (DEC 1991)

(a) The Government will pay all costs for the mobilization and demobilization of all of the Contractor's plant and equipment at the contract lump sum price for this item.

(1) 60 percent of the lump sum price upon completion of the contractor's mobilization at the work site.

(2) The remaining 40 percent upon completion of demobilization.

(b) The Contracting Officer may require the Contractor to furnish cost data to justify this portion of the bid if the Contracting Officer believes that the percentages in paragraphs (a) (1) and (2) of this clause do not bear a reasonable relation to the cost of the work in this contract.

(1) Failure to justify such price to the satisfaction of the Contracting Officer will result in payment, as determined by the Contracting Officer, of --

(i) Actual mobilization costs at completion of mobilization;

(ii) Actual demobilization costs at completion of demobilization; and

(iii) The remainder of this item in the final payment under this contract.

(2) The Contracting Officer's determination of the actual costs in paragraph (b)(1) of this clause is not subject to appeal.

252.247-7023 TRANSPORTATION OF SUPPLIES BY SEA (MAY 2002)

(a) Definitions. As used in this clause --

(1) "Components" means articles, materials, and supplies incorporated directly into end products at any level of manufacture, fabrication, or assembly by the Contractor or any subcontractor.

(2) "Department of Defense" (DoD) means the Army, Navy, Air Force, Marine Corps, and defense agencies.

(3) "Foreign flag vessel" means any vessel that is not a U.S.-flag vessel.

(4) "Ocean transportation" means any transportation aboard a ship, vessel, boat, barge, or ferry through international waters.

(5) "Subcontractor" means a supplier, materialman, distributor, or vendor at any level below the prime contractor whose contractual obligation to perform results from, or is conditioned upon, award of the prime contract and who is performing any part of the work or other requirement of the prime contract.

(6) "Supplies" means all property, except land and interests in land, that is clearly identifiable for eventual use by or owned by the DoD at the time of transportation by sea.

(i) An item is clearly identifiable for eventual use by the DoD if, for example, the contract documentation contains a reference to a DoD contract number or a military destination.

(ii) "Supplies" includes (but is not limited to) public works; buildings and facilities; ships; floating equipment and vessels of every character, type, and description, with parts, subassemblies, accessories, and equipment; machine tools; material; equipment; stores of all kinds; end items; construction materials; and components of the foregoing.

(7) "U.S.-flag vessel" means a vessel of the United States or belonging to the United States, including any vessel registered or having national status under the laws of the United States.

(b)(1) The Contractor shall use U.S.-flag vessels when transporting any supplies by sea under this contract.

(2) A subcontractor transporting supplies by sea under this contract shall use U.S.-flag vessels if--

(i) This contract is a construction contract; or

(ii) The supplies being transported are--

(A) Noncommercial items; or

(B) Commercial items that--

(1) The Contractor is reselling or distributing to the Government without adding value (generally, the Contractor does not add value to items that it contracts for f.o.b. destination shipment);

(2) Are shipped in direct support of U.S. military contingency operations, exercises, or forces deployed in humanitarian or peacekeeping operations; or

(3) Are commissary or exchange cargoes transported outside of the Defense Transportation System in accordance with 10 U.S.C. 2643.

(c) The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign-flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that --

(1) U.S.-flag vessels are not available for timely shipment;

(2) The freight charges are inordinately excessive or unreasonable; or

(3) Freight charges are higher than charges to private persons for transportation of like goods.

(d) The Contractor must submit any request for use of other than U.S.-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date necessary to meet its delivery schedules. The Contracting Officer will process requests submitted after such date(s) as expeditiously as possible, but the Contracting Officer's failure

to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract. Requests shall contain at a minimum --

(1) Type, weight, and cube of cargo;

(2) Required shipping date;

(3) Special handling and discharge requirements;

(4) Loading and discharge points;

(5) Name of shipper and consignee;

(6) Prime contract number; and

(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile message or letters will be sufficient for this purpose.

(e) The Contractor shall, within 30 days after each shipment covered by this clause, provide the Contracting Officer and the Maritime Administration, Office of Cargo Preference, U.S. Department of Transportation, 400 Seventh Street SW., Washington, DC 20590, one copy of the rated on board vessel operating carrier's ocean bill of lading, which shall contain the following information:

(1) Prime contract number;

(2) Name of vessel;

(3) Vessel flag of registry;

(4) Date of loading;

(5) Port of loading;

(6) Port of final discharge;

(7) Description of commodity;

(8) Gross weight in pounds and cubic feet if available;

(9) Total ocean freight in U.S. dollars; and

(10) Name of the steamship company.

(f) The Contractor shall provide with its final invoice under this contract a representation that to the best of its knowledge and belief--

(1) No ocean transportation was used in the performance of this contract;

(2) Ocean transportation was used and only U.S.-flag vessels were used for all ocean shipments under the contract;

(3) Ocean transportation was used, and the Contractor had the written consent of the Contracting Officer for all non-U.S.-flag ocean transportation; or

(4) Ocean transportation was used and some or all of the shipments were made on non-U.S.-flag vessels without the

written consent of the Contracting Officer. The Contractor shall describe these shipments in the following format:

| ITEM DESCRIPTION | CONTRACT LINE ITEMS | QUANTITY |
|---|---|---|
| | | |
| | | |
| | | |
| TOTAL | | |

(g) If the final invoice does not include the required representation, the Government will reject and return it to the Contractor as an improper invoice for the purposes of the Prompt Payment clause of this contract. In the event there has been unauthorized use of non-U.S.-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use.

(h) In the award of subcontracts for the types of supplies described in paragraph (b)(2) of this clause, the Contractor shall flow down the requirements of this clause as follows:

(1) The Contractor shall insert the substance of this clause, including this paragraph (h), in subcontracts that exceed the simplified acquisition threshold in part 2 of the Federal Acquisition Regulation.

(2) The Contractor shall insert the substance of paragraphs (a) through (e) of this clause, and this paragraph (h), in subcontracts that are at or below the simplified acquisition threshold in part 2 of the Federal Acquisition Regulation.

(End of clause)

Section 00800 - Special Contract Requirements

SECTION 00800

Section 00800
Special Contract Requirements
Table Of Contents


1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE)....................1
2. PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)....................7
3. SUBMITTAL OF WORK TO BE PERFORMED BY THE CONTRACTOR....................7
4. LIQUIDATED DAMAGES - CONSTRUCTION (Sept 2000)....................7
5. CONTRACT DRAWINGS, MAPS AND SPECIFICATIONS (aug 2000)....................8
6. PHYSICAL CONDITIONS....................9
7. TIME EXTENSIONS (Sept 2000)....................30
8. LAYOUT OF WORK (APRIL 1984)....................31
9. DATUM AND BENCH MARKS....................31
10. ESTIMATED QUANTITIES....................33
11. VARIATION IN ESTIMATED QUANTITIES - DREDGING (JAN 1985)....................34
12. HEAD PROTECTION (HARD HATS)....................35
13. SIGNAL LIGHTS (FEB 1983)....................35
14. REVERSE SIGNAL ALARM....................35
15. FLOATING PIPELINES....................36
16. MISPLACED MATERIAL (JAN 1965)....................37
17. CONTINUITY OF WORK (APR 1965)....................37
18. FINAL EXAMINATION AND ACCEPTANCE (APR. 1965)....................37
19. SHOALING (APR 1965)....................38
20. INSPECTION (APR 1965)....................38
21. ACCOMMODATIONS FOR GOVERNMENT INSPECTORS....................39
22. EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (1985 JAN OCE).................... 40
23. FUEL USAGE....................41
24. OIL TRANSFER OPERATIONS....................41
25. WAGE RATES....................41
26. LABOR-ADDITIONAL REQUIREMENTS....................41
27. NOTICE TO MARINERS....................41
28. ENVIRONMENTAL LITIGATION (1974 NOV OCE)....................42
29. NOISE LEVEL CRITERIA....................42
30. CERF IMPLEMENTATION (83 Jun 1 OCE)....................43
31. THE SEAGOING BARGE ACT (46 USC 395 ET SEQ.)....................43
32. PERFORMANCE EVALUATION OF CONTRACTOR (APR 1984)....................43
33. PRICING OF ADJUSTMENTS (APR 1984)....................44
34. PRECONSTRUCTION CONFERENCE....................45
35. BID GUARANTEE....................45
36. QUANTITY SURVEYS....................46
37. SAFETY SIGN....................47
38. PROJECT SIGN....................48
39. EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS....................48
40. SCHEDULING AND DETERMINATION OF PROGRESS....................48
SPECIAL PROHIBITION ON EMPLOYMENT....................50
42. SUPERINTENDENCE OF SUBCONTRACTS (JAN 1965)....................51
43. PROCEDURES FOR SUBMISSION AND PAYMENT OF ALL CONTRACT PAYMENTS....................51
44. SUBMISSION OF CLAIMS....................54

45. SAFETY REQUIREMENTS FOR OPERATIONS ADJACENT TO POWER LINES. ............................54
46. CRANE AND DRAGLINE SAFETY REQUIREMENTS ............................................................54
47. OPERATOR QUALIFICATIONS FOR FLOATING CRANES AND FLOATING
DERRICKS (Safety and Health Requirement, EM385-1-1, Section 16.C) .............................55
48. ACCIDENT PREVENTION PLAN................................................................................ 55
ALTERATIONS IN CONTRACT (APR 1984)......................................................................55
50. ~~DELETED~~ ..................................................................................................................56
51. DREDGING AND DREDGE RELATED MARINE WORK
..........................................................57

**SECTION 00800**

***SPECIAL CONTRACT REQUIREMENTS***

**1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE)**

The Contractor will be required to commence work under this contract within five (5) calendar days after the date of receipt by him of the notice to proceed, to prosecute said work diligently and to complete the **basic work** (approx.101,965 CY) ready for use not later than **forty-five (45) calendar days** after the date of receipt by him of the notice to proceed. There are fifteen (15) options (additional 196,100 CY) to the contract ranging from approximately 655 CY to 79,180 CY. The time for contract completion of each additional option will be determined by allowing a rate of one (1) calendar day for each 3,500 cubic yards removed. Options will range from one (1) calendar day to twenty-three (23) calendar days, if exercised.

The Government has 30 days from the date of the receipt by the Contractor of the Notice to Proceed (Basic Work) to exercise the Options (A1, B1, D, E, F, F1, G, G1, H, I, J, K, L, M and N), if they are exercised at all. Even if exercised, the Options listed above may not be exercised in numerical order.

Should the total quantity of material exceed the limit established in the clause entitled "Variations in Estimated Quantities," additional time will be allowed at the rate of one (1) calendar day for each 3,500 cubic yards in excess of the established limit. The time stated for completion shall include final clean up. (EFARS 52.2/9110 (a))

The contractor is required to maintain a production rate of 3,500 cubic yards per calendar day.

The work is estimated to cost between $6,000,000.00 and $16,000,000.00.

The estimated volume to be dredged is 298,065 cubic yards (basic 101,965 CY plus 196,100 CY for options), based on the January/February 2005 survey.

**The contractor will be solely responsible for coordinating, obtaining, and complying with all the offloading, transportation, dewatering, processing and disposal permits/requirements of the site(s) identified by the contractor. The Water Quality Certificate(s) and CZM concurrent(s) will be obtained by the Government for the dredging aspect of the project.**

**1A. CONTRACTOR IDENTIFIED OFFLOADING, PROCESSING AND DISPOSAL SITE COMPLIANCE**

The Apparent low bidder must demonstrate to the Government within 70 calendar days from the date the Apparent low bidder is notified of being the low bidder; that the contractor identified offloading, processing and disposal site(s) is operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supplies/Services (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material.

The contractor identified offloading, processing and disposal site(s) must have sufficient capacity to receive all the dredged material from the project site. The apparent low bidder is required to perform all work to demonstrate that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material on that date for the in-situ quantity as per the Supply/Service (Price) Schedule and is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as

appropriate for the disposal of dredged material. Offloading, processing and disposal of the dredged material shall be in a fully permitted facility that has been permitted by the host state, with beneficial reuse wherever possible. Dredging, dewatering and/or other processing (if any), transfer, transportation and material disposal shall be performed in accordance with applicable laws and requirements of all associated permits, approvals and government authorities having jurisdiction.

**1A.1. Information Submitted by the Apparent Low Bidder**

**The Apparent Low Bidder shall be officially notified by the contracting officer and instructed to submit the following information, within 5 Calendar days from the date the Apparent Low Bidder is notified of being the low bidder, for the site(s):**

The Apparent Low bidder must submit five (5) copies of

a) Name of the contractor identified offloading, processing and disposal site(s).

b) Location (street address, city, state) of the contractor identified site(s)

c) Point of Contact for the contractor identified site and telephone number

d) Total capacity available at the contractor identified site(s) for offloading, processing and placement of Dredged Material for this contract.

e) Detailed list of all permits and approvals that are required for the selected site to demonstrate that the site is legal to receive, operate, process and/or dispose of dredged material and their status. Permits and approvals that shall be provided by the Apparent Low Bidder to the Government include placement site permits as applicable and others as related to transportation, processing and placement of the dredged material, or any other aspects of the bidder's proposed disposition of the dredged material including any and all permits, authorizations, contracts, agreements, licenses, rights-of-entry.

f) Copies of permits currently issued/approved at the time of submission.

g) Identification of Regulatory Agency required to issue/approve items listed in e) above.

h) Timeline for obtaining the required permits - Bar Chart for Obtaining Permits and Approvals - A bar chart indicating time(s) required for obtaining all permits/approvals required by the bidder for each item of work as described by the bidder. The schedule will detail the major steps (such as time to prepare the permit request, the date it will be submitted to the regulatory agency, time for agency review, public coordination, etc).

i) Evidence of Anticipated Daily Production Capability - Evidence of the anticipated daily production capability (CY /day) and the output rates for their proposed integrated system of dredging, offloading, transportation, processing, and placement for each contractor identified site(s).

j) Offloading, processing and disposal Site Elements Information –

    1) State the capacity of each element of the system. This should include both the total capacity and uncommitted capacity of the disposal site(s), as well as the average daily production rate and workdays per week that the processing site will operate.

    2) Time frame for availability for each element of the system: hours of operation in each day; days of operation in each week; months of operation in each year.

    3) Location of each element of the system: Descriptions with reference maps; Distances between the elements, measured in miles.

k) Offloading, Processing and Disposal Site(s) Construction Activity Schedule and Project Construction Schedule - A schedule showing the order in which the apparent low bidder proposes to perform the work and the dates on which the apparent low bidder contemplates starting and completing the salient features of work (including acquiring materials, plant and equipment...etc). The schedule shall indicate that the production rate of the facility is sufficient to ensure that the project will be completed within the contract's required completion date. The apparent low bidder shall consider its proposed integrated system of dredging, transportation, processing, and placement. The schedule shall be in the form of a progress chart of suitable scale to indicate approximately the percentage of work scheduled for completion by any given date during the period. The apparent low bidder must indicate on this schedule the salient features of work for the contractor identified offloading, processing and disposal site(s) that are needed to be completed within 70 calendar days from date the Apparent low bidder is notified of being the low bidder so that the site(s) is operational, capable of processing and disposing of all the dredged material for the in-situ quantity identified in the price schedule.

**1A.1.a Synopsis of proposed operation**

Narrative of **no more than seven (7) pages** detailing the operation to move the dredged material from the dredging site to its final resting place that the apparent low bidder has identified. The synopsis shall provide suitable detail to adequately track the material from dredging, through offloading, transportation and processing to its ultimate placement. The information identified in paragraph 1A.1 shall be attached to the synopsis. The synopsis shall include the following:

1) Provide a list of the names, locations, and point of contact, telephone number, offloading and loading facilities for each processing and/or disposal facility including site capacity.

2) Provide a detailed map indicating locations of offloading and loading facilities or area within the proposed property to be utilized, for each disposal location, with a description of the material handling process at each disposal location.

3) Provide hours of operation, transportation and operating procedures at offloading facilities.

4) Provide Facilities information: Access to offloading facilities, Acceptable scow size, Disposal Site O&M manual, demurrage time to unload scow or trucks, anticipated processing time and placement materials, and other facility restriction if any.

5) Provide a detailed description of the dredging procedure proposed to include the identification of dredges, buckets, scows, tugs and other salient equipments to be used for the project.

6) Submit a detailed description of the loading and transportation procedures to be utilized.

**1A.2 Information to be submitted by the Apparent Low Bidder within 70 calendar days**

The Apparent Low Bidder shall submit five (5) copies of the following information within **70 Calendar days** from the date the Apparent Low bidder is notified of being the low bidder.

a) Information submitted as directed by Contracting Officer notification - All the information provided previously must also be included in the final package, revised as necessary.

b) Evidence Demonstrating that the contractor identified offloading, processing and disposal site(s) is Permitted, Operational, Capable of Offloading, Processing and Disposing Dredged Material from the project site - The apparent low bidder must demonstrate to the Government **within 70 calendar days** from the date the Apparent low bidder is notified of being the low bidder that the contractor identified offloading, processing and disposal site(s) is permitted, operational, capable of processing and disposing of all the dredged material for the in-situ quantity as per

the Price Schedule **by calendar day 70** from the date the Apparent low bidder is notified of being the low bidder and that the offloading, processing and/or disposal site(s) is in compliance with the New Jersey Department of Environmental Protection and/or with the New York State Department of State Coastal Zone Management Program Policies or other host state compliance as appropriate for the offloading, processing and disposal of dredged material. Any sampling and testing required for obtaining permits required for dredged material transportation, processing or placement will be at the cost of the Apparent Low Bidder. The Apparent Low Bidder must provide to the Government proof that the material to be taken from the project site to the Apparent Low Bidder's upland site(s) meets any regulatory testing requirements.

c) Copies of Required Permits - The Apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government. Documentation of compliance with any other legal or regulatory requirement must be provided to the Government including Water Quality Certificates (WQC) in accordance with Section 401 of the Clean Water Act, Coastal Zone Management (CZM) consistency determinations, and State agreement pursuant to Section 307 of the Coastal Zone Management Act of 1972 as amended, for activities conducted in a state, which has a federally approved Coastal Zone Management program. WQC and CZM permits related to the dredging (as opposed to dredged material transport, disposal and placement) will be provided by the New York District U.S. Army Corps of Engineers in **Section 00900-D.**

d) The Apparent Low Bidder must provide:

1) Proof of the contractor identified Offloading, Processing and/or Disposal Site(s) being licensed for acceptance of dredged material by all appropriate regulatory entities (permits for the site previously provided should be also included in this submission).

2) Proof of Offloading, Processing and Disposal Site(s) Owner's approval granting the apparent low bidder the right to offload, process and/or dispose dredged material at that site.

3) Proof of Disposal Site(s) uncommitted capacity adequate for the project.

4) Certification of the offloading, processing and/or disposal Site's availability corresponding to the current project schedule.

5) Proof of approval by the appropriate regulatory agencies that the dredged material for this contract is compatible for processing and/or disposal at the proposed processing and/or Disposal Site(s).

6) Demonstrate minimum required offloading, processing and disposal Site(s) production capability to ensure that the project will be completed within the contract requirement. The Apparent low bidder shall provide the estimated daily production rates for processing and disposal for each contractor identified disposal site(s).

7) Proof of apparent low bidder's experience in the proposed offloading, processing and disposal Site(s) operations, or, provide supplemental information demonstrating ability to execute the proposed disposal method, if no direct experience is applicable.

e) Transportation Capabilities - The Apparent Low Bidder must provide the following:

1) Provide proof and certification that sufficient transportation capabilities are available to ensure that the project will be completed within the contract requirement. Provide proof that the proposed transportation equipment has current permits, licenses, registrations, or other required certifications.

2) Provide proof of the apparent low bidder's experience in the proposed dredged material transportation or provide supplemental information demonstrating the ability to execute the proposed transportation method, if no direct experience is applicable.

f) Processing Capabilities - The Apparent Low Bidder must provide the following:

1) Provide detailed description of the proposed processing technology, including but not limited to, the following stages, if applicable:

   a. Dewatering, addressing retention time, any limitations on return of effluent, limitations on location for effluent release, proposed method for effluent disposal, if applicable. Debris removal, addressing the methods of removal and disposal.

   b. Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).

   c. Interim storage, if required, identifying the method of storage, required and available storage capacity, and the time frame it will be used, if applicable.

   d. Rehandling of material (if any) used in the processing of dredged material affecting the project.

2) Provide any permits and/or licenses applicable to the proposed process, if any.

3) Provide any patented or proprietary permissions applicable to the proposed process, if any.

4) Provide proof of processing plant availability for use by the apparent low bidder.

5) Certify processing plant's availability corresponding to the current project schedule.

6) Provide proof of Apparent Low Bidder's experience in the proposed processing method or, provide supplemental information demonstrating ability to execute the proposed processing method, if no direct experience is applicable.

## 2. PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization and equipment, work equivalent to at least forty (40) percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performance of the work, the Contractor requests a reduction and the Contracting Officer and/or his Representative determines that the reduction would be to the advantage of the Government. (FAR 52.236-01)

## 3. SUBMITTAL OF WORK TO BE PERFORMED BY THE CONTRACTOR

The Contractor shall furnish the Contracting Officer and/or his Representative, within ten (10) days after award, items of work he will perform with his own forces and the estimated cost of those items. The percentage of work that must be performed by the Contractor is stated in paragraph 2, entitled: "PERFORMANCE OF WORK BY THE CONTRACTOR."

**4. LIQUIDATED DAMAGES - CONSTRUCTION (SEPT 2000)**

a. If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of **$1,450.00** for each calendar day of delay until the work is completed or accepted.

b. If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

**5. CONTRACT DRAWINGS, MAPS AND SPECIFICATIONS (AUG 2000)**

(a.) The Government will provide to the Contractor, without charge, one set of contract drawings and specifications, except publications incorporated into the technical provisions by reference, in electronic or paper media as chosen by the Contracting Officer.

(b.) The Contractor shall-

(1) Check all drawings furnished immediately upon receipt;

(2) Compare all drawings and verify the figures before laying out the work;

(3) Promptly notify the Contracting Officer or Contracting Officer's Representative of any discrepancies;

(4) Be responsible for any errors that might have been avoided by complying with this paragraph (b); and

(5) Reproduce and print contract drawings and specifications as needed.

(c.) In general-

(1) Large-scale drawings shall govern small-scale drawings; and

(2) The Contractor shall follow figures marked on drawings in preference to scale measurements.

(d.) Omissions from the drawings or specifications or the misdescription of details of work which are manifestly necessary to carry out the intent of the drawings and specifications, or that are customarily performed, shall not relieve the Contractor from performing such omitted or misdescribed details of work. The Contractor shall perform such details as if fully and correctly set forth and described in the drawings and specifications.

(e.) The work shall conform to the following contract drawings and maps, all of which form a part of these specifications and are available in the office of the District Engineer, U.S. Army Corps of Engineers, New York District, 26 Federal Plaza, New York, N.Y. 10278-0090:

| CONTRACT DRAWING | *DESCRIPTION* |
|---|---|
| File Number 1267 (Sheets A, B and 1 – 16) | Maintenance Dredging – Arthur Kill Reach of the New York and New Jersey Channels |
| A | Index |
| B | Location and Vicinity Maps |
| 1 - 3 | Layout, Channel Coordinates, Bench Marks and Cross Section |
| 4 – 16 | Sounding Maps |

(f.) The Contractor shall check all drawings furnished him immediately upon their receipt and shall promptly notify the Contracting Officer or Contracting Officer's Representative of any discrepancies. Figures marked on drawings shall in general be followed in preference to scale measurements unless dimensions are specified. Large-scale drawings shall in general govern over small-scale drawings. Information and data provided in contract specifications shall govern over similar information and data specified in contract drawings. The Contractor shall compare all drawings and verify the figures before laying out the work and will be responsible for any errors which might have thereby been avoided (DOD FAR Suppl. 52.236-7002).

## 6. PHYSICAL CONDITIONS

The information and data furnished or referred to below are not intended as representations or warranties but are furnished for information only. It is expressly understood that the Government will not be responsible for the accuracy thereof or for any deduction, interpretation or conclusion drawn by the Contractor.

a. WEATHER CONDITIONS. The site of the work is not exposed to direct offshore wind, ocean wave and swell action and the Contractor's operations are not likely to be affected by ordinary storms.

(1) Fog. An examination of the records of the U.S. Weather Bureau at John F. Kennedy International Airport, NY, discloses an average of 31 days per year on which dense fog (visibility of 1/4 mile or less) occurs in the New York Harbor area. The maximum number of days in which dense fog occurred in any year was 45 in 1959. The maximum number of days in which dense fog occurred in any month was 4 days in June.

(2) Winds. Wind conditions in the New York Harbor areas, based on the records of the U.S. Weather Bureau at John F. Kennedy International Airport, NY are given below:

| Month | Average Wind Speed (MPH) | Maximum 3 Hour Wind Velocity (MPH) | Maximum Consecutive Hours in Which Wind Velocity Exceeded 30 MPH | 35 MPH |
|---|---|---|---|---|
| JAN | 13 | 52 | 9 | 3 |
| FEB | 14 | 41 | 18 | 6 |
| MAR | 14 | 40 | 12 | 6 |
| APR | 13 | 44 | 6 | 6 |
| MAY | 12 | 35 | 3 | 0 |
| JUN | 11 | 29 | 0 | 0 |
| JUL | 11 | 28 | 0 | 0 |
| AUG | 10 | 31 | 0 | 0 |
| SEP | 11 | 31 | 3 | 0 |
| OCT | 11 | 37 | 3 | 3 |
| NOV | 12 | 40 | 12 | 6 |
| DEC | 13 | 44 | 18 | 15 |

Weather conditions exceeding in severity the conditions described above or average wind speeds over 35 miles per hour will be considered unusually severe weather if delays are caused thereby to operations under the contract.

b. ICE. Icing within the project vicinity is not anticipated. However, in the event that icing does occur, this will be considered to be unusually severe weather.

c. TIDES. The mean range of tides, mean range of spring tides, and irregular fluctuations due to wind and atmospheric pressure near the project site are listed below:

| | At Perth Amboy | At Elm Park | At Fort Hamilton |
|---|---|---|---|
| **Mean Range** | **5.1 ft** | **4.9 ft** | **4.7 ft** |
| Mean Range-Spring | 6.1 ft | 5.9 ft | 5.7 ft |

Irregular fluctuations due to wind and atmospheric pressure have varied from about 12.0 ft. above mean low water to about 3.6 feet below mean low water at Perth Amboy; from about 10.9 feet above MLW to about 3.5 feet below MLW at Elm Park; from about 10.9 feet above MLW to about 3.9 feet below MLW at Fort Hamilton.

d. TRANSPORTATION FACILITIES. A controlling depth of at least 35 feet at mean low water is accessible to the project site by water. First class highways serve the project vicinity.

e. BRIDGE AND UTILITY CROSSINGS. A search of the regulatory files within New York District, Corps of Engineers disclosed the existence of the following submarine pipelines and/or structures:

**The Contractor shall take all necessary precautions to prevent damage to these structures. The Contractor is required to coordinate with the owners, if such action is necessary, to mark the structures or move the cables in order to avoid interference with dredging operations.**

| ITEM NO. | PERMIT NO. | DESCRIPTION |
|---|---|---|
| 1 | 4129/5 (NYE 3) | Install a submarine oil pipeline, Arthur Kill, between Kreischerville, Staten Island, New York, and Port Reading, New Jersey. Permit issued to: Defense Plant Corporation, c/o War Emergency Pipelines, Inc., 70 Pine Street, New York, N.Y. All assets of D.P.C. in big and little inch pipe lines transferred and sold to Texas Eastern Transmission Corp. on 19 Nov 47 Shreveport, LA.<br>Date: 06/2/1943 |
| 2 | 4705A | A temporary submarine pipe line on the natural bottom in Arthur Kill between Gulfport, Staten Island, New York, and Linden, Union County, New Jersey, is hereby revised to "to lay and maintain until 30 June 1955, two (2) temporary submarine pipe lines on the natural bottom in Arthur Kill, between Gulfport, Staten Island, New York, and Linden, Union County, New Jersey." Permit issued to The Arundel Corporation, Pier 3 Foot Fulton Street, Brooklyn , N.Y.<br>Date: 01/14/1955 |
| 3 | 4705 | To lay and maintain until 30 June 1955, a temporary submarine pipe line on the natural bottom, Arthur Kill, between Gulfport, Staten Island, New York, and Linden, Union County, New Jersey, and marked, 800.6 (Arthur Kill-Arundel Corp-Submerged Dredge Pipeline. Permit issued to: The Arundel Corporation, Pier 3, Foot Fulton Street, Brooklyn , N.Y.<br>Date: 10/29/1954 |
| 4 | 6863 | Install three (3) submarine pipelines not less than 52 feet below mean low water, Arthur Kill, between Linden, Union County, New Jersey and Staten |

| | | |
|---|---|---|
| | | Island, Richmond County, New York, and marked: 1507-24 (Arthur Kill – Colonial Pipeline Co. – Submarine Pipe line between Linden & Staten Island. Permit issued to: Colonial Pipeline Company, 3390 Peachtree Road, N.E., Atlanta, GA 30326<br>Date: 07/30/1964 |
| 5 | 6890 | Richmond Creek, Arthur Kill, Richmond Avenue, Staten Island, New York, Brooklyn Union Gas Co. – Submarine pipeline in Richmond Creek. Permit issued to: Brooklyn Union Gas Company, 195 Montague Street, Brooklyn 1, New York.<br>Date: 09/18/1964 |
| 6 | | Install two (2) 30-inch-diameter steel submarine pipelines at a depth of forty-seven (47) feet below mean low water. Between Linden, Union County, N.J. and Staten Island, Richmond County, N.Y., - 285/70a (Arthur Kill – Texas Eastern Transmission Corp-2 Subm Gas Pipelines. Permit issued to: Texas Eastern Transmission Corporation, P. O. Box 1612, Shreveport, Louisiana.<br>Date: 08/03/1959 |
| 7 | 9402 | 16" petroleum product pipeline and placement of rip-rap over exposed sections of the pipe between Union County, N.J. & Richmond County, N.Y. Permit issued to: Texas Eastern Transmission Corporation, P. O. Box 1612, Shreveport, LA 71130<br>Date: 08/29/1975 |
| 8 | | Install two (2) submarine pipelines not less than 52 feet below mean low water, - Arthur Kill, near the mouth of Piles Creek, between Linden, Union County, New Jersey, and Staten Island, Richmond County, New York, and marked 1507-24 (Arthur Kill – Long Island Pipe Line Corp. – Submarine Pipelines between Linden & Staten Island). Permit issued to: Long Island Pipe Line Corporation, 30 Rockefeller Plaza, New York, N.Y. 10020<br>Date: 07/30/1964 |
| 9 | 4127/5<br>(NYE 3) | Install two (2) submarine oil pipe lines, Arthur Kill and Piles Creek, between Linden, New Jersey, and Gulfport, Staten Island, New York, and file marked Permits 4127/2. Permit issued to: Defense Plant Corporation, c/o War Emergency Pipelines, Inc., 70 Pine Street, New York, N.Y. All assets of Defense Plant Corp. sold to Texas Eastern Transmission Corp., Shreveport, Louisiana on 19 Nov. 1947.<br>Date: 06/03/1943 |
| 10 | 180/111 | Relay your submarine oil pipe lines, across Arthur Kill, New York and New Jersey Channels, Linden, New Jersey, at a point 11.5 miles above the mouth, file marked U.S. Engineer Office, Second Dist., New York, Oct. 6, 1936, A.K. 180/105", perform the necessary dredging operations in connection therewith, and during such operations maintain five temporary pipe lines on the natural bottom of the existing channel. Permit issued to: Standard Oil Company of New Jersey, 26 Broadway, New York, N.Y.<br>Date: 10/31/1936 |

| | | |
|---|---|---|
| 11 | 2476 | Relocate nine (9) submarine cables in a trench, between Carteret, New Jersey and Travis, Staten Island, New York, and file marked 800.6 (A.K.-NJ Bell Tp Co.-Subm.Cables-Btwn S.I. & Carteret, NJ)2. Permit issued to: New Jersey Bell Telephone Company, 540 Broad Street, Newark 1, New Jersey.<br>Date: 04/25/1946 |
| 12 | | Install submarine pipe line on the natural bottom in Pikes Creek, Grasselli, NJ. Permit issued to:<br>Date: 07/1949 |
| 13 | Arthur Kill 166/15 | Lay five submarine telephone cables at Arthur Kill, N.Y. Elizabeth, N.J. Permit issued to New York Telephone Co., 15 Dey Street, New York City.<br>Date: 03/24/1924 |
| 14 | | Proposed submerged pipe across Arthur Kill, NY at Grasselli, NJ, counties of Union, Richmond, states of New Jersey and New York. Application by American Shipyard Company.<br>Date: 09/08/1964 |
| 15 | Arthur Kill 130/2 and 130/3 | Lay a submarine cable, at a depth of 27 feet below Arthur Kill, between Bayway, N.J. and Steep Point, N.Y. in the Baltimore & Ohio Railroad Bridge. Permit issued to: Staten Island Rapid Transit Co., 295 Broadway, New York, N.Y.<br>Date: 05/10/1917 |
| 16 | Arthur Kill 179/3 | Lay one (1) 8-inch wrought steel pipe in a trench at a depth of not less than 40 feet below the plane of mean low water in the natural and dredged channels of Arthur Kill from a point about 1300 feet below or south of the mouth of Old Place Creek, Old Place, S.I., N.Y., to a point 300 feet south of or below the mouth of Morses Creek, Bayway, N.J., marked Arthur Kill 179/3. Permit issued to: The Tide-Water Pipe Company, Limited, 11 Broadway, New York.<br>Date: 05/29/1919 |
| 17 | | Install a temporary bridge to be removed entirely from the waterway. Staten Island, Borough of Richmond, New York, N.Y. Permit issued to: Island Corporation.<br>Date: 09/29/1960 |
| 18 | | Install burial cables over Piles Creek, Arthur Kill to Linden, Union County, NJ. Permit issued to: Public Service Electric & Gas.<br>Date: 07/02/1962 |
| 19 | 41 7 | Install eleven (11) submarine cables in a trench, Arthur Kill, between the Borough of Carteret, Middlesex County, New Jersey, and Travisville, Staten Island, New York, 800.6 (Arthur Kill-N.J. BELL Telephone Co-11 Subcables). Permit issued to: New Jersey Bell Telephone Company, 540 Broad Street, Newark 1, N.J. |

| | | |
|---|---|---|
| | | Date: 11/21/1955 |
| 20 | | Install a 30-inch diameter submarine gas pipe line five (5) feet below existing creek bottom at two (2) locations Piles Creek, City of Linden, Union County, New Jersey, and marked: 285/70a (Arthur Kill-Texas Eastern Transmission Corp-Sub'm Oil Pipe line). Permit issued to: Texas Eastern Transmission Corporation, P. O. Box 1612, Shreveport 94, Louisiana.<br>Date: 07/06/1959 |
| 21 | | Fill over the pipeline across Arthur Kill, between Woodbridge Township, Middlesex County, New Jersey and Kreischerville, Richmond County, Staten Island, New York. Permit issued to: Socony Mobil Oil Company, Inc., P. O. Box 989, Plainfield, N.J.<br>Date: 06/26/1959 |
| 22 | | Relocate the northerly end of 12-inch diameter submarine pipe line; Arthur Kill, between Woodbridge Township, Middlesex County, New Jersey, and Kreischerville, Richmond County, Staten Island, New York. Permit issued to: Socony Mobil Oil Company, Inc., 1024 South Avenue, Plainfield, N.J.<br>Date: 03/20/1958 |
| 23 | 414 | Install a 12-inch diameter submarine pipe line, Arthur Kill, between Woodbridge Township, Middlesex County, New Jersey, and Kreischerville, Richmond County, Staten Island, N.Y., and marked 800.6 (Arthur Kill – Socony Mobile Oil Co., Inc. – Subm Pipe Line), subject to the following conditions. Permit issued to: Socony Mobil Oil Company, Inc., 26 Broadway, New York 4, N.Y.<br>Date: 05/25/1955 |
| 24 | 750 | Lay five submarine telephone cables of about 3½ inches diameter each on the bottom after the projected 30-foot channel is completed in Arthur Kill, N.Y. and N.J. at Elizabeth, N.J. from the foot of Marshall Street, City of Elizabeth, N.J., practically at right angles to the channel, to Howland Hook, Borough of Richmond, City of New York, Arthur Kill 166/15. Permit issued to: New York Telephone Co., 15 Dey Street, New York City.<br>Date: 03/14/1924 |
| 25 | 9208 | Inspect and repair two known sections of its 12¾ inch diameter pipe. Additional areas requiring replacements may also be discovered during inspection. Existing pipeline supports will also be rehabilitated. The purpose is to avoid rupture of the pipeline in Arthur Kill at Staten Island, Richmond County, NY to Linden, Union County, NJ 1522-15 (Sohio Pipe Line Co.-Arthur Kill-repair of existing pipeline-between Staten Island, New York and Linden, New Jersey. Permit issued to: Sohio Pipe Line Company, P. O. Box 188, Vandalia, Ohio 45377.<br>Date: 04/10/1975 |
| 26 | 4073 | Install a 24-inch diameter submarine gas pipe line in a trench at a minimum depth of forty-seven (47) feet below mean low water between the United |

| | | |
|---|---|---|
| | | States Pierhead and Bulkhead Lines; in Arthur Kill, at a point approximately 1.2 miles south of Goethals Bridge between Linden, New Jersey, and Gulfport, Staten Island, New York, and marked 800.6 (Arthur Kill-Transcontinental Gas Pipe Line Corp.-24" gas pipe line). Permit issued to: Transcontinental Gas Pipe Line Corporation, 2100 Niels Esperson Building, Houston 2, Texas.<br>Date: 07/06/1951 |
| 27 | 4651 | Install two (2) temporary submarine cables; across Arthur Kill, between the Borough of Carteret, Middlesex County, New Jersey, and Travis, Staten Island, New York, and marked: 800-6 (Arthur Kill, N.J.-Bell Telephone Co. Subm. Cable). Permit issued to: New Jersey Bell Telephone Company, 540 Broad Street, Newark 1, N.J.<br>Date: 07/22/1954 |
| 28 | 351 | Lay a submarine cable at a depth of 27 feet below mean low water in Arthur Kill, between Bayway, N.J. and Steep Point, S.I., under the draw of the Baltimore & Ohio Railroad Bridge marked Arthur Kill 130/2 and 130/3. Permit issued to: Staten Island Rapid Transit Co., 295 Broadway, New York, N. Y.<br>Date: 05/10/1917 |
| 29 | | Replace an existing 12-inch pipe line with a 16-inch, in Arthur Kill, between Linden, N.J. and Gulfport, Staten Island, N.Y., and titled "Proposed Replacement Pipeline Crossing of Arthur Kill at Piles Creek." Permit issued to: Texas Eastern Transmission Corporation, P. O. Box 1612, Shreveport 94, Louisiana.<br>Date: 06/09/1950 |
| 30 | 8861 | Install four 10" submarine pipelines and to dredge approximately 30,000 cubic yards. Which is to be disposed of in accordance with condition in and across the Rahway River and Arthur Kill across the Federal Project Channel at Middlesex and Union Counties, New Jersey and Richmond County, New York in accordance with the plans and drawings attached hereto and marked 1522-15. Permit issued to: Northville Industries Corp., 425 Broad Hollow Road, Melville, New York 11746 |
| 31 | 4317 | Install a 12-inch diameter pipe line; in Arthur Kill, between Staten Island, New York, and Elizabeth, New Jersey, and marked 800.6 (Arthur Kill-Esso Standard Oil Co.-Pipe line). Permit issued to: Esso Standard Oil Company, 15 West 51st Street, New York 19, N.Y.<br>Date: 10/06/1952 |
| 32 | Arthur Kill 141/53 | Relay a section of submarine telephone cable in a trench at a depth of five (5) feet below the dredged bottom, in Arthur Kill, adjacent to the General American Tank and Storage Terminal, at Carteret, Middlesex County, New Jersey, in accordance with the plans shown on the drawing attached hereto and file marked Arthur Kill 141/51. Permit issued to: New Jersey Bell Telephone Company, 540 Broad Street, Newark, New Jersey. |

| | | |
|---|---|---|
| | | Date: 11/7/1941 |
| 33 | Arthur Kill 141/37 | Lay and maintain nine armored submarine telephone cables each about 3¾ inches in diameter in Arthur Kill or Staten Island Sound, N.Y. and N.J. between Carteret, N.J. and Linelenville, Borough of Richmond, City of New York, at a point about 900 feet northerly of the ferry slip at Carteret, N.J. Permit issued to: New York Telephone Company, 1060 Broad Street, Newark, N.J.<br>Date: 07/21/1927 |
| 34 | 2685 | Install a submarine oil pipe line in Arthur Kill and Piles Creek, between Linden, New Jersey and Gulfport, Staten Island, New York, 800.6 (A.K.-Defense Plant Op-halfport-Pipelines). Permit issued to: Defense Plant Corporation c/o War Emergency Pipelines, Inc., P.O. Box 271, Plainfield, New Jersey. All assets of Defense Plant Corp. sold to Texas Eastern Transmission Corp. Shreveport, Louisiana on 19 Nov. 1947 (See letter dated 27 Feb. 1948 from Ballard, Spahr, Andrews & Ingersoll.<br>Date: 3/2/1944 |
| 35 | 2879 | Install a 6-inch pipe line in a trench with top of pipe at a minimum depth of 42 feet below mean low water between channel lines, in Arthur Kill and Piles Creek, between Gulfport, Staten Island, New York, and the City of Linden, Union County, New Jersey. Permit issued to: The Tide-Water Pipe Company, Ltd., 54 Boylston Street, Bradford, PA.<br>Date: 9/24/1946 |
| 36 | 5795 | Install two (2) 30-inch diameter steel submarine pipelines at a depth of forty-seven (47) feet below mean low water, in Arthur Kill, between Linden, Union County, N.J., and Staten Island, Richmond County, N.Y. Permit issued to: Texas Eastern Transmission Corporation, P. O. Box 1612, Shreveport, Louisiana<br>Date: 8/3/1959 |
| 37 | 6813 | Authorized by the Secretary of the Army to install a temporary submerged pipeline at a minimum depth of thirty-five (35) feet below mean low water in Arthur Kill, between Linden, New Jersey and Staten Island, New York, in accordance with the attached plans. Permit issued to: American Shipyard Company, 12 South Twelfth Street, Philadelphia, PA 19107.<br>Date: 9/15/1964 |
| 38 | 8875 | Install two power cables and one hose on the existing river bottom; under Arthur Kill, at the Outerbridge Crossing, Staten Island, N.Y., in accordance with the plans and drawings attached hereto and marked 1522-15 (Arthur Kill – Interstate Sanitation Commission – submarine cables and hose @ Outerbridge Crossing. Permit issued to: Interstate Sanitation Commission, 10 Columbus Circle, Room 1620, New York, New York 10019.<br>Date: 6/29/1973 |
| 39 | | Install two (2) temporary submarine cables across Arthur Kill, between the Borough of Carteret, Middlesex County, New Jersey and Travis, Staten Island, New York. Permit issued to: New Jersey Bell Telephone |



G012772

G01010 12772