| | | |
|---|---|---|
| | | Company, 510 Broad Street, Newark 1, N.J. |
| 40 | | Install a 24-inch diameter submarine gas pipe line in a trench at a minimum depth of forty-seven (47) feet below mean low water between the United States Pierhead and Bulkhead Lines, in Arthur Kill, at a point approximately 1.2 miles south of Goethals Bridge between Linden, New Jersey, and Gulfport, Staten Island, New York. Permit issued to: Transcontinental Gas Pipe Line Corporation, 2100 Niels Laperson Building, Houston 2, Texas.<br>Date: 07/06/1951 |
| 41 | 8861 | Install four 10" submarine pipelines and to dredge approximately 33,000 cubic yds. Which is to be disposed of in accordance with condition (as) in and across the Rahway River and Arthur Hill across the Federal Project Channel at Middlesex and Union Counties, New Jersey and Richmond County, New York in accordance with the plans and drawings attached hereto and marked 5522-15 (Arthur Kill and Rahway River -- submarine Pipelines across Federal Channel – Northville Industries Corp.). Permit issued to: Northville Industries Corp., 425 Broad Hollow Road, Melville, New York 11746.<br>Date: 02/12/1973 |
| 42 | 2603A | Install two (2) submarine oil pipe lines in Arthur Kill between Kreischerville, Staten Island, New York and Port Reading, New Jersey. Permit issued to: Defense Plant Corporation, c/o War Emergency Pipeline, Inc., P. O. Box 271, Plainfield, New Jersey.<br>Date: 03/02/1944 |
| 43 | Arthur Kill 180/111<br>180-1-114 | Relay your submarine oil pipe lines, across Arthur Kill, New York and New Jersey Channels, at Linden, New Jersey, at a point 11.5 miles above the mouth,U.S. Engineer Office, Second Dist., New York, Oct. 6, 1936, A.K. 180/105. Permit issued to: Standard Oil Company of New Jersey, 26 Broadway, New York, N.Y.<br>Date: 10/31/1936 |
| 44 | | Install a 6-inch pipe line in a trench with top of pipe at a minimum depth of 42 feet below mean low water between channel lines in Arthur Kill and Piles Creek, between Gulfport, Staten Island, New York, and the City of Linden, Union County, and file marked 800.6 (Arthur Kill-Tide-Water Pipe Co., Ltd.-Sub.Pipe Line). Permit issued to: The Tide-Water Pipe Company, Ltd., 54 Boylston Street, Bradford, PA.<br>Date: 09/24/1945 |
| 45 | | Dredge to a depth of twelve (12) feet below mean low water; the dredged material to be disposed of at an approved Government dumping ground under a permit to be obtained from the Supervisor of New York Harbor; in Arthur Kill, at Richmond County, Staten Island, N.Y., 1507-24 (Arthur Kill-Texas Eastern Cryogenic, Inc.-dredge @ Prall's Island). Permit issued to: Texas Eastern Cryogenic, Inc., P.O. Box 1612, Texas Eastern Building, Shreveport, Louisiana 71102.<br>Date: 07/18/1968 |

| | | |
|---|---|---|
| 46 | | Install eleven (11) submarine cables in a trench, in Arthur Kill, between the Borough of Carteret, Middlesex County, New Jersey, and Travis, Staten Island, New York, 800.6 (Arthur Kill-N.J. Bell Telephone C-11 Subcables). Permit issued to: New Jersey Bell Telephone Company, 540 Broad Street, Newark 1, N.J.<br>Date: 11/21/1955 |
| 47 | 16017 | Install two steel pipelines, each 30 inches in diameter at a depth of approximately 20 feet below the bottom of the federal channel in the Arthur Kill at Linden, Union County, N.J. Permit issued to: Cogen Technologies Linden Ventures LTD. Partnership, 1600 Smith St., Suite 5000, Houston, TX 77002.<br>Date: 02/08/1994 |
| 48 | 402 | War Emergency Pipe Lines in Arthur Kill between Kreischerville and Port Reading. Install a submarine oil pipe line in Arthur Kill between Kreischerville, Staten Island, New York, and Port Reading, New Jersey. The file number of the permit is: Permits 4129/5.<br>Date: 05/22/1945 |
| 49 | | Install an 8" submarine pipe line at a depth of 47 feet below mean low water, within the Federal project channel limit lines; across Arthur Kill, approximately 1,000 feet downstream of Goethals Bridge, between Staten Island, New York, and the City of Linden, Union County, New Jersey, 800.6 (Arthur Kill-TIDE-WATER PIPE CO., LTD-Sub pipe line @ Staten Island, N.Y. & Linden, N.J.). Permit issued to: The Tide-Water Pipe Company, Limited, 17 Battery Place, New York 4, N.Y.<br>Date: 02/01/1957 |
| 50 | | Install two (2) 8-inch and one (1) 12-inch permanent pipe lines in an existing trench at a depth of forth-seven (47) feet below mean low water, and to install two (2) temporary 8-inch pipe lines, to be removed when the permanent lines have been installed, in Arthur Kill, between Bayway, County of Union, New Jersey, and the Borough of Richmond, Staten Island, N.Y., 800-6 (Arthur Kill-Esso Standard Oil Co-Pipe lines @ Staten Island, N.Y. Elizabeth, N.J.<br>Date: 11/26/1956 |
| 51 | 2603 | Laying of a 10-inch pipe line parallel to and on the west side of the existing pipe line in Arthur Kill at a point near Port Reading, New Jersey, was completed on 21 April 1944. Permit issued to: War Emergency Pipelines, Inc., P. O. Box 271, Plainfield, N.J.<br>Date: 04/28/1944 |
| 52 | 95-04860 | Install approximately 5,500 linear feet of buried 12-inch diameter petroleum products pipeline to replace an existing pipeline which will be abandoned in-place in Arthur Kill between Township of Woodbridge, Middlesex County, New Jersey and Borough of Staten Island, Richmond County, New York, 1145-2-303b (Arthur Kill – Colonial Pipeline Company – Pipeline). Permit issued to: Colonial Pipeline Company, P. O. |

| | | |
|---|---|---|
| | | Box 18855, Atlanta, GA 31126-0855.<br>Date: 07/18/1995 |
| 53 | | Install a 12-inch diameter pipe line, in Arthur Kill, between Staten Island, New York, and Elizabeth, New Jersey, and marked: 800.6 (Arthur Kill-Esso Standard Oil Co.-Pipe line). Permit issued to: Esso Standard Oil Company, 15 West 51st Street, New York 19, N.Y.<br>Date: 10/06/1952 |
| 54 | 7436 | Install three (3) aerial cables Piles Creek, Arthur Kill Linden Union County, NJ. Permit issued to: Public Service Electric & Gas. |
| 55 | | 12 inch diameter petroleum pipeline, Arthur Kill across Piles/Winans Creek near Linden, Union County, N.J. Permit issued to: Sohio Pipe Line Company. |
| 56 | 176 | 5-8 inch pipelines from Morses Creek, Linden, Union County, NJ to Gulfport Reach, Staten Island. Permit issued to: Standard Oil Company.<br>Date: 12/20/1912 |
| 57 | | Replace existing 12 inch pipe with a 16 inch pipe 42 feet below mean water in Arthur Kill, between Linden, N.J. and Gulfport, Staten Island. Permit issued to: Texas Eastern Transmission Corporation.<br>Date: 06/09/1950 |
| 58 | | 26 inch diameter pipeline installed 29 feet below mean water between Linden, N.J. and Merrill's Creek, Staten Island in the vicinity of Prall's Island. Permit issued to: Construction Aggregates Corporation.<br>Date: 11/02/1967 |
| 59 | | 6-8 inch diameter pipelines installed between Morse Creek, Linden, N.J., and Gulfport Reach, Staten Island, NY. Permit issued to: The Tide-Water Pipe Company, Ltd.<br>Date: 8/15/1913 |
| 60 | | 1-12-3/4 inch diameter pipeline extending from a point near Linden, New Jersey, designated as Woods Avenue Junction across to Gulfport, Staten Island, NY including a crossing of the Arthur Kill, to the Gulf Refining Company. Permit issued to: The Texas Pipeline Company.<br>Date: 4/26/1955 |
| 61 | 8881 | An outfall sewer extending 300 feet offshore of the mean high water line terminating as a 11'6" by 9'4" box culvert with an invert elevation of 1.57 ft. above mean low water in Arthur Kill at Arthur Kill Road, Rossville, Staten Island, Richmond County, New York. Permit issued to: Kaufman & Broad Homes, Inc. |

| | | |
|---|---|---|
| | | Date: 7/10/1973 |
| 62 | 79-277 | Install a 6 inch thick concrete filled nylon tube mat over in existing 12 inch diameter petroleum pipeline crossing at a minimum depth of 39 feet below the plans of Mean Low Water to maintain adequate cover over the common carrier pipe at one mile south of the Goethals Bridge, Gulfport, Staten Island, N.Y. to Linden, N.J. Permit issued to: Sohio Pipe Line Company.<br>Date: 7/17/1981 |
| 63 | 9236 | Install steel reinforcement of an existing pipeway at Sewaren plant, Middlesex County, New jersey, 23 new concrete filled pilings. Permit issued to: Shell Oil Company.<br>Date: 4/29/1978 |
| 64 | | One (1) 26 inch high pressure natural gas pipeline that crosses the Arthur Kill at a location of 600 feet north of the northern bank of Piles Creek, Union County, New Jersey at an approximate depth of 50 feet below MLW to Staten Island, Richmond County, NY. Owner: Williams-Transco. |
| 65 | 285/70A | Place fill over the pipeline across Arthur Kill, between Woodbridge Township, Middlesex County, New Jersey and Kreischerville, Richmond County, Staten Island, New York. Issued to Socony Mobil Oil Company on Mar. 19 1959. |
| 66 | 4129/5 | Install submarine oil pipeline. Installation of oil pipeline between Kreischerville, Staten Island and New Jersey. Issued to Defense Plant Corporation in 1943. Sold and transferred to Texas Eastern Transmission Corporation in 1947. |
| 67 | | To install a cathodic protection on the existing 12 inch submarine pipeline crossing Piles Creek and Arthur Kill to Gulfport, Staten Island issued to Texas Pipe Line Company on Sep. 2, 1955. |
| 68 | 285/70a | Proposed two 30" submarine gas pipelines from Piles Creek, New Jersey to Gulf Port, Staten Island issued to Texas Eastern Transmission Corporation in 1959. |
| 69 | | To install a submarine oil pipeline in Arthur Kill and Piles Creek between Linden, New Jersey and Gulf Port, Staten Island. Issued to Defense Plant Corporation on Mar. 2, 1944. |
| 70 | 16017 | To install two 30" pipelines at least 65' below MLW in Arthur Kill from Linden, New Jersey to Gulf Port, Staten Island (aprox. 50' apart), issued to Cogen Technologies Linden Ventures, LTD Partnership on Feb. 8, 1991. |
| 71 | | To install a submarine pipeline, south of Piles Creek, between Linden, New Jersey and Gulf Port, Staten Island issued to Colonial Pipeline Company in Jul.1964. |
| 72 | | To replace existing 12" pipeline with a new 16" line between Linden, New Jersey and Gulf Port, Staten Island to Texas Eastern Transmission Corporation on Jun. 9, 1950. |

| | | |
|---|---|---|
| 73 | 9208 | To repair sections of 12 ¾" pipeline between Linden, New Jersey (north of Piles Creek), and Gulf Port, Staten Island to Sohio Pipeline Company on Apr. 10, 1975. |
| 74 | 1427/5 | To install 2 submarine oil pipelines between Linden, New Jersey (Piles Creek), and Gulf Port, Staten Island issued to Defense Plant Corporation in June 1943 and sold to Texas Eastern Transmission Corporation in 1947. |
| 75 | 3769 | To replace submarine 12" with a 16" pipeline crossing Arthur Kill at Piles Creek between Linden, New Jersey and Gulf Port, Staten Island issued to Texas Eastern Transmission Corporation in 1950. |
| 76 | | To relocate 9 submarine cables in a trench between Carteret, New Jersey and Travis, Staten Island issued to New Jersey Bell Telephone Company on Apr. 25 1946. |
| 77 | 141/37 | To lay 9 armored submarine telephone cables between Carteret, New Jersey and Staten Island issued to New York Telephone Company on Jul. 21, 1927. |
| 78 | 141/53 | To relay a section of telephone submarine cable in a trench at a depth of 5' below the dredged bottom, in Arthur Kill, adjacent to the General American Tank and Storage Terminal, at Carteret, Middlesex County, New Jersey issued to New Jersey Bell Telephone Company on Nov. 7, 1941. |
| 79 | 2603 | The laying of a 10" pipeline at a point near Port Reading, New Jersey crossing Arthur Kill to Staten Island issued to War Emergency Pipelines, Inc. on Apr. 28 1944. |
| 80 | 180/111 | Relay submarine oil pipelines crossing Arthur Kill at Linden, New Jersey at a point 11.5 miles above the mouth issued to Standard Oil Company of New Jersey on Oct. 31 1936. |
| 81 | 179/4 | To lay 8" steel pipe in a trench at a depth of not less than 40' below MLW in Arthur Kill from a point about 1,300' below or south of the mouth of Old Place Creek, Staten Island, New York to a point 300' south of or below the mouth of Morses Creek, Bayway, New Jersey issued to Tidewater Pipe Company on May 29 1919. |
| 82 | 5196 | Install 8" submarine pipeline at a depth of 47' below MLW across Arthur Kill aprox. 1,000' downstream of Goethals Bridge between Staten Island and Linden, New Jersey issued to Tidewater Pipe Company on Feb. 1 1957. |
| 83 | 176 | To lay pipeline crossing Arthur Kill south of Morses Creek, New Jersey to Staten Island issued to Standard Oil Company on Dec. 20 1912. |
| 84 | | To install 12" diameter pipeline crossing Arthur Kill between Staten Island, New York and Elizabeth, New Jersey (south of Morses Creek), issued to Esso Standard Oil Company on Oct. 6 1952. |
| 85 | 55/16 | Repair of a pipeline crossings crossing Arthur Kill south of Morses Creek, New Jersey to Staten Island issued to the Tide Water Pipe Company on |

| | | |
|---|---|---|
| | | Sep. 20 1929. |

e. CHANNEL TRAFFIC. Vessel traffic in the Arthur Kill Reach of the New York and New Jersey Channels project vicinity is heavy. Traffic consists of seagoing bulk and general cargo freighters, tankers, container ships, auto carriers and miscellaneous small craft. Vessel traffic may cause some delay to the dredging required in these specifications.

f. OBSTRUCTION OF CHANNEL. The Government **will not** undertake to keep the area free from vessels or other obstructions except to the extent of such regulations, if any, as may be prescribed by the Secretary of the Army in accordance with the provisions of section 7 of the Rivers and Harbors Act in such manner as to obstruct navigation as little as possible, and in case the contractor's plant so obstructs the channel as to make difficult or endanger the passage of vessels, said plant shall be promptly moved on the approach of any vessel to such an extent as may be necessary to afford a practicable passage. Upon the completion of the work the Contractor shall promptly remove his plant, including ranges, buoys, piles and other marks placed by him under the contract in navigable waters or on shore.

g. NAVIGATION AIDS. The Contractor shall not relocate or move any aids to navigation that have been established by the U.S. Coast Guard. If it becomes necessary to have any aids to navigation moved in order to complete dredging operations under this contract, the Contractor shall notify the appropriate Coast Guard Office, with a copy to the Contracting Officer and/or his Representative, not less than 15 days prior to the need for movement. The Contractor shall notify the appropriate Coast Guard Office of the approximate time of completion of dredging.

h. LOCATION. The site of the work to be performed under these specifications is the Arthur Kill Reach of the NY & NJ Channels located between the Outerbridge Crossing, river mile 14, extending to the Gulfport Reach, river mile 23.

i. LAYING OF SUBMERGED PIPELINES AND OBSTRUCTIONS OF CHANNEL. Should it become necessary in the performance of this contract to close a channel to lay submerged pipeline across a navigable channel, the Contractor shall notify the Contracting Officer or Contracting Officer's Representative in writing to be received in the District office at least ten working days prior to the desired closure date. This notification shall furnish the following:

(1) Location (Channel Centerline Stationing) and depth (above the top of the pipeline) at which the submerged line will be placed;

(2) The desired length of time the channel is to be closed for installation of the pipeline;

(3) The date and hour placement or removal will commence;

(4) The date and hour of anticipated completion; and

(5) The name and telephone number of the person to be contacted for information and response to any emergency condition.

The Coast Guard has indicated that the requirements of navigation may make it necessary to establish times other than those requested. IT SHALL BE THE CONTRACTOR'S RESPONSIBILITY TO COORDINATE HIS PLANS WITH THE COAST GUARD SUFFICIENTLY IN ADVANCE OF THE PLANNED CLOSING TO PREVENT DELAY TO THE DREDGING OPERATIONS AND COMPLY WITH THE COAST GUARD REQUIREMENTS.

j. BRIDGE-TO-BRIDGE RADIO-TELEPHONE EQUIPMENT. In order that radio-telephone communication may be made with passing vessels, all dredges engaged in work under the contract shall be equipped with and operate bridge-to-bridge radio-telephone equipment on VHF Channel 13 (156.65 MHz

with low power output having a communication range of approximately ten (10) miles). The Federal Communication Commission has approved the frequency.

**7. TIME EXTENSIONS (SEPT 2000)**

Time extensions for contract changes will depend upon the extent, if any, by which the changes cause delay in completion of the various elements of construction. The change order granting the time extension may provide that the contract completion date will be extended only for those specific elements related to the changed work and that the remaining contract completion dates for all other portions of the work will not be altered. The change order also may provide an equitable readjustment of liquidated damages under the new completion schedule.

**8. LAYOUT OF WORK (APRIL 1984)**

The Government will provide the basic horizontal control data (coordinated triangulation stations) in the area. The Contractor shall compute and establish in the field all range points required for the proper discharge of his functions. The Contractor shall be responsible for the accuracy of the range points and its computations. The Contractor shall furnish, at his own expense, all stakes, templates, platforms, equipment, range markers, tide staffs and labor as may be required in laying out any part of the work. The Contractor will be held responsible for the execution of the work to such lines and grades as required or indicated by the Contracting Officer or his representative. It shall be the responsibility of the Contractor to maintain and preserve all established stakes, markers...etc.

**Contractor shall contact the New York District Survey Section at (212) 264-0180 or at (212) 264-0181 for any future reference to horizontal control data.**

**9. DATUM AND BENCH MARKS**

The plane of reference of mean low water as used in these specifications is that determined by the following benchmark and tide gauges:

DESIGNATION - J 37
PID - KV0210
NAD 83(1986) - 40 34 42. (N) 074 12 52. (W) SCALED
NGVD1929 – 12.814'

DESCRIBED BY COAST AND GEODETIC SURVEY 1952

AT CARTERET, ABOUT 0.5 MILE NORTHEAST ALONG ROOSEVELT AVENUE FROM THE COLUMBUS SCHOOL, SET VERTICALLY IN THE SOUTHEAST FACE AT EAST CORNER OF BENJAMIN MOORE WAREHOUSE, 1 FOOT SOUTHWEST OF EAST CORNER OF BUILDING, 54 FEET NORTHWEST OF CENTER LINE OF ROOSEVELT AVENUE AND ABOUT 2 FEET ABOVE BLACK TOP APRON AROUND BUILDING.

**DESIGNATION - L 37**
PID - KV0223
NAD 83(1986)- 40 36 17. (N) 074 12 32. (W) SCALED
NGVD1929 – 8.372'

DESCRIBED BY COAST AND GEODETIC SURVEY 1952

ABOUT 0.7 MILE SOUTH ALONG THE SOUND SHORE RAILROAD FROM THE POST OFFICE AT GRASSELLI, ABOUT 0.7 MILES NORTH OF A BRIDGE OVER RAHWAY RIVER AND THE UNION-MIDDLESEX COUNTY LINE, AT A PRIVATE ROAD CROSSING, AT THE SINCLAIR OIL COMPANY STORAGE TANKS, SET IN THE TOP OF THE NORTHEAST CORNER OF A 6 BY 10-FOOT CONCRETE SLAB, 72 FEET WEST OF WEST RAIL OF MAIN TRACK, 13 FEET NORTHWEST OF CENTER LINE OF PRIVATE ROAD WHICH CROSSES TRACK, 75 FEET NORTHEAST AND ACROSS A BLACK TOP ROAD FROM THE NORTHEAST FACE OF STORAGE TANK NO. 8, 33 FEET NORTH OF CENTER LINE OF BLACK TOP ROAD, ABOUT LEVEL WITH TRACK.

**DESIGNATION - P 37**
PID - KV0227
NAD 83(1986)- 40 38 16. (N) 074 12 02. (W) SCALED
NGVD1929 – 12.107'

DESCRIBED BY COAST AND GEODETIC SURVEY 1952

AT ELIZABETHPORT, ALONG SOUTH FRONT STREET, IN THE TOP OF THE CONCRETE FOUNDATION OF THE SOUTHWEST COLUMN OF THE FIRST GOETHALS BRIDGE PIER NORTHWEST OF SOUTH FRONT STREET, 1 1/2 FEET NORTH OF THE CORNER OF THE FOUNDATION AND 3 FEET ABOVE THE GROUND.

**DESIGNATION - D 37**
PID - KV0199
NAD 83(1986)- 40 32 51. (N) 074 15 35. (W) SCALED
NGVD1929 – 40.230'

DESCRIBED BY COAST AND GEODETIC SURVEY 1952

ABOUT 1.65 MILES NORTH ALONG STATE STREET FROM ITS UNDERPASS UNDER OUTER BRIDGE AT PERTH AMBOY, IN THE TOP OF THE NORTHEAST END OF THE STATE STREET OVERPASS OVER THE NEW YORK AND LONG BRANCH RAILROAD, 30 FEET EAST OF CENTER LINE OF STREET AND ABOUT 4 FEET BELOW LEVEL OF STREET.

The contractor may contact the New York District Survey Section at (212) 264-0180/0181 for assistance in establishing the location of the bench marks and the tide gages.

## 10. 10. ESTIMATED QUANTITIES

The total estimated quantities of material necessary to be removed from the specified limits to complete the work described in this specifications are computed from the volume computations of the condition survey performed in the project area in Jan/Feb 2005.

These volumes were computed as follows:

| | |
|---|---|
| Channel to Grade | 76,855 CY |
| Channel Overdepth | 93,520 CY |
| Slope to Grade | 82,850 CY |
| Slope Overdepth | 44,840 CY |
| Total Available | 298,065 CY |

Estimated Contract Quantity: 298,065 CY including options, if exercised.

Distribution of Base Work and Optional Areas:

| SECTION | GRADE (Chl plus Side Slopes) | OVERDEPTH (Chl plus Slide Slopes) | GRADE PLUS OD |
|---|---|---|---|
| BASE WORK | | | |
| Shoals A, B & C | 41,195 | 60,770 | 101,965 |
| OPTIONS | | | |
| Option A1 | 145 | 1,170 | 1,315 |
| Option B1 | 100 | 470 | 570 |
| Option D | 58,730 | 20,450 | 79,180 |
| Option E | 5,040 | 3,830 | 8,870 |
| Option F | 3,025 | 4,420 | 7,445 |
| Option F1 | 9,480 | 11,310 | 20,790 |
| Option G | 7,490 | 12,150 | 19,640 |
| Option G1 | 235 | 420 | 655 |
| Option H | 1,565 | 2,140 | 3,705 |
| Option I | 4,840 | 3,880 | 8,720 |
| Option J | 19,025 | 6,160 | 25,185 |
| Option K | 900 | 1,120 | 2,020 |

| | | | |
|---|---|---|---|
| Option L | 4,680 | 5,370 | 10,050 |
| Option M | 1,125 | 2,390 | 3,515 |
| Option N | 2,130 | 2,310 | 4,440 |
| TOTAL | 159,705 | 138,360 | 298,065 |

**The Government will survey the project prior to starting work.**

Above estimated quantities were computed from the data shown on the contract drawings. The quantities that may be removed and paid for will be computed by the Triangulated Irregular Network (TIN) method or average end area method as indicated in the Technical Specifications, Section 01200, paragraph 12 entitled "MEASUREMENT AND PAYMENT."

**11. VARIATION IN ESTIMATED QUANTITIES - DREDGING (JAN 1985)**

Where the quantity of a pay item in this contract is an estimated quantity and where the actual quantity of material within the required dredging prism varies more than fifteen percent (15%) above or below the stated estimated quantity within the required dredging prism, an equitable adjustment in the contract unit price will be made upon the demand of either party. The equitable adjustment will be based upon any increase or decrease in costs due solely to the variations above one-hundred fifteen percent (115%) or below eighty-five percent (85%) of the estimated quantity. An adjustment in the contract unit price will also apply to that part of the actual quantity of allowable overdepth material above one-hundred fifteen percent (115%) or below eighty-five percent (85%) of the estimated quantity. (EFARS 52.2/9110(1))

**12. HEAD PROTECTION (HARD HATS)**THE ENTIRE WORK SITE UNDER THIS CONTRACT IS DESIGNATED AS A HARD HAT AREA.

The Contractor shall post the area in accordance with the requirements of paragraph 07.C.03, EM 325-1-1, and shall ensure that all prime and subcontractor personnel, vendors, and visitors utilize hard hats while within the project area. (DO 385-1-3 4 Nov. 77)

**13. SIGNAL LIGHTS (FEB 1983)**

The Contractor shall display signal lights and conduct his operations in accordance with the General Regulations of the Coast Guard governing lights and day signals to be displayed by towing vessels with tows on which no light signals can be displayed. Vessels working on wrecks, dredges, and vessels engaged in laying cables or pipe or in submarine or bank protection operations, lights to be displayed on dredge pipelines, and day signals to be displayed by vessels of more than 65 feet in length moored or anchored in a fairway or channel, and the passing by other vessels of floating plant working in navigable channels, as approved by the Commandant, U.S. Coast Guard with respect to vessels on the high seas (33 CAR 81 App. A-72 COLREGS, Part C), vessels in inland waters (33-CFR 93.18 - 93.31a), and vessels in western rivers (33 CFR 95.5.51 - 95.70)), as applicable. (DAEN-PRP Ind dtd. 12 Sep. 83)

**14. REVERSE SIGNAL ALARM**

a. All construction equipment, except light service trucks, panels, pickup trucks, station wagons, crawler-type cranes, power shovels and draglines, whether moving alone or in combination shall be equipped with reverse signal alarms. The alarm shall be mounted on the rear of the equipment and shall be protected or

constructed as to withstand severe wear and tear, adverse weather and unfavorable environmental working conditions and shall be certified by the manufacturer to fully meet the following performance standards.

b. The alarm shall produce a relatively pure tone which shall peak within the American National Stds. Inst. standard octave pass band of 600 to 2400 cycles per second and shall produce a 0.2 to 0.5 second audible warning within the initial three (3) feet of backward movement of the vehicle on which it is mounted and at regular intervals, not to exceed three (3) seconds throughout the backward movement. The alarm shall automatically stop when backward movement ceases. The sound intensity of the alarm shall range from and not exceed 90-100 db (decibels) at a horizontal distance of five feet from the alarm.

c. Actuation of the alarm shall be automatic by direct connections to any part of the equipment that moves or acts in a manner distinctive only to the rearward movement of the vehicle with no manual controls of any kind between the source of actuation and the alarm. Where application of this requirement to specific types of the equipment has impractical application, other means of actuation may be used upon written approval of the Contracting Officer and/or his Representative or his representative.

d. The use of the alarm shall be in the addition to prescribed requirements for signalmen.

**15. FLOATING PIPELINES**

Floating pipelines, used as access ways, shall be equipped with walkways and guardrails. In accordance with EM 385-1-1, the walkway shall be securely anchored to the pipeline and a guardrail equivalent in strength to a wood rail 2 in. x 4 in. shall be provided on at least one side of the walkway and shall be secured to uprights at intervals of not more then 8 feet and of not less than 36 inches, nor more than 42 inches in height above the walkway. Floating pipelines not equipped with walkways shall be barricaded to positively prevent personal access.

**16. ISPLACED MATERIAL (JAN 1965)**

Should the Contractor during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer and/or his Representative may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer and/or his Representative or inspector, and when required shall mark or buoy such obstruction until the same are removed. Should he refuse, neglect, or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer and/or his Representative, and the cost of such removal may be deducted from any money due or to become due to the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of a vessel wrecked or sunk without fault or negligence shall be limited to that provided in Sections 15, 19, and 20 of the Rivers and Harbors Act of March 3, 1899 (33 USC. 410 et seq.) (DOD FARS SUPPL. 52.236-7006).

**17. CONTINUITY OF WORK (APR 1965)**

No payment will be made for work done in any area designated by the Contracting Officer and/or his Representative until the full depth required under the contract is secured in the whole of such area, unless prevented by ledge rock; nor will payment be made for excavation in any area not adjacent to and in prolongation of areas where full depth has been secured except by decision of the Contracting Officer or Contracting Officer's Representative. Should any such nonadjacent area be excavated to full depth during the operations carried on under the contract, payment for all work therein may be deferred until the required depth has been made in the area intervening. The Contractor may be required to suspend dredging at any time when for any reason the gauges or ranges cannot be seen or properly followed. (EFARS 52.2/9110(C)

**18. FINAL EXAMINATION AND ACCEPTANCE (APR. 1965)**

a. As soon as practicable after the completion of the entire work or any section thereof (if the work is divided into sections), as in the opinion of the Contracting Officer and/or his Representative, will not be subject to damage by further operation under the contract, such work will be thoroughly examined at the cost and expense of the Government by sounding or by sweeping, or both, as determined by the Contracting Officer and/or his Representative. Should any shoals, lumps, or other lack of contract depth be disclosed by this examination, the Contractor will be required to remove same by dredging at the contract rate for dredging or by other method approved by the contracting officer, but if the bottom is soft and the shoal areas are small and form no material obstruction to navigation, the removal of such shoal may be waived by the discretion of the Contracting Officer and/or his Representative. The Contractor or his authorized representative will be notified when soundings and/or sweepings are to be made, and will be required to accompany the survey party. When the area is found to be in a satisfactory condition, it will be accepted finally. Should more than two soundings or sweeping operations by the Government over an area be necessary by reason of work for the removal of shoals disclosed at a prior sounding or sweeping operations, this work will be charged against the Contractor. The rate for each day in which the Government plant is engaged in such sounding or sweeping operations and/or is en route to or from the site or held, for the Contractor's convenience, at or near the site for these operations shall be $1,850 except on Saturday, Sunday and Holidays when the rate shall be $2,125.

b. Final acceptance of the whole or a part of the work and the deductions or corrections of deductions made thereon will not be reopened after having once been made, except on evidence of collusion, fraud, or obvious error, and the acceptance of a completed section shall not change the time of payment of the retained percentages of the whole or any part of the work.

c. The entire area area within the contract limits will be surveyed for final examination and acceptance.

**19. SHOALING (APR 1965)**

If, before the contract is completed, shoaling occurs in any section previously accepted, including shoaling in the finished channel, because of the natural lowering of the side slopes, re-dredging at the contract price, within the limit of available funds, may be done if agreeable to both the Contractor and the Contracting Officer and/or his Representative.

**20. INSPECTION (APR 1965)**

The inspectors will assess whether the gauges, ranges, location marks and limit marks are maintained in proper order; but the presence of the inspector shall not relieve the Contractor of the responsibility for the proper execution of the work in accordance with the specifications. The Contractor will be required:

a. To furnish, on the request of the Contracting Officer and/or his Representative or any inspector, the use of such boats, boatmen, laborers, a part of the ordinary and usual equipment and crew of the dredging plant as may be reasonably necessary in inspecting and supervising the work. However, the Contractor will not be required to furnish such facilities for the surveys prescribed in the clause entitled: "Final Examination and Acceptance."

b. To furnish, on the request of the Contracting Officer or the Contracting Officer's Representative or any inspector, suitable transportation from all points on shore designated by the Contracting Officer and/or his Representative to and from the various pieces of plant and to and from the placement area. Should the Contractor refuse, neglect, or delay compliance with these requirements, the specific facilities may be furnished and maintained by the Contracting Officer or Contracting Officer Representative, and the cost thereof will be deducted from any amounts due or to become due to the Contractor.

**21. ACCOMMODATIONS FOR GOVERNMENT INSPECTORS**

The Contractor shall furnish regularly to Government inspectors onboard the dredge or other craft upon which they are employed a suitable separate room for an office. The room shall be fully equipped and maintained to the satisfaction of the Contracting Officer and/or his Representative; it shall be properly heated, ventilated, and lighted, and shall have a desk which can be locked, and a chair for each inspector, and washing conveniences. In addition, the Contractor shall provide a suitable sleeping area for use by the Government inspector when weather or sea conditions preclude safe transfer to shore. The entire cost to the Contractor for furnishing, equipping and maintaining the foregoing accommodations shall be included in the contract price. If the Contractor fails to meet these requirements, the Contracting Officer and/or his Representative will secure the facilities referred to above, and the cost thereof will be deducted from payments to the Contractor.

**22. EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (1985 JAN OCE)**

a. Allowable costs for construction of marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data when the Government can determine both ownership and operating costs for each piece of equipment or equipment groups of similar serial and series from the contractor's accounting records. When both ownership and operating costs cannot be determined from the contractor's accounting records, equipment costs shall be based upon the applicable provision of EP 1110-1-8, "Construction Equipment Ownership and Operating Expense Schedule," Region I.

   Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the contracting officer. For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule. For forward pricing, the schedule effect at the time of negotiations shall apply. For retrospective pricing, the schedule in effect at the time the work was performed shall apply.

b. Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and FAR 31.205-36 substantiated by certified copies of paid invoices. Rates for equipment rented from an organization under common control, lease-purchase or sale-leaseback arrangements will be determined using the schedule except that rental costs leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated leases are allowable. Costs for major repairs and overhaul are unallowable.

c. When actual equipment costs are proposed and the total amount of the pricing action is over $25,000, cost or pricing data shall be submitted on Standard Form 1411, "Contract Pricing Proposal Cover Sheet." By submitting cost or pricing data, the contractor grants to the contracting officer or an authorizing representative the right to examine those books, records, documents and other supporting data that will permit evaluation of the proposed equipment costs. After price agreement the contractor shall certify that the equipment costs or pricing data submitted are accurate, complete and current. (EFARS 52.2/9108(f))

**23. FUEL USAGE**

The Contractor shall furnish the Contracting Officer and/or his Representative a report, to be received on or before the last day of the calendar month, listing the totals of fuels consumed by the dredging plant, supporting vessels, and other construction equipments. The report shall list the quantities of different fuels separately. The report shall cover the period from the 25th of the preceding month to the 25th of the current month.

**24. OIL TRANSFER OPERATIONS**

The Contractor shall assure that oil transfer operations to or from his plant comply with all Federal, state, municipal laws, codes and regulations (See Attachment F of Section 00900 for regulation on "Oil and Hazardous Material Transfer Operations" - 33 CFR 156). Particular attention is invited to 33 CFR Subchapter O, Pollution. The Contractor shall incorporate in the accident prevention program (Section 01351, paragraph 3), submitted in compliance with Section 00700, contract clause "ACCIDENT PREVENTION," sufficient information to demonstrate that all fuel transfers will be made in compliance with 33 CFR 156 and any other applicable laws, codes and regulations. (NAP-1/81)

**25. WAGE RATES**

The attached schedule of wage rates contains rates applicable to all work under this contract (see Section 00900, Attachment B).

**26. LABOR-ADDITIONAL REQUIREMENTS**

Fringe benefits statement: The method of payment of applicable fringe benefits will be indicated on DD From 879, Statement of Compliance, and attached to each weekly payroll.

**27. NOTICE TO MARINERS**

The Contractor shall, prior to commencement of work, notify the 3rd Coast Guard District, Aids to Navigation Officer, of his proposed operations including location and duration of operations and request that the information be published in the "Notice to Mariners." This notification must be in sufficient time so that it appears in the Notice at least 15 days prior to the commencement of the dredging operation.

**28. ENVIRONMENTAL LITIGATION (1974 NOV OCE)**

a. If the performance of all or any part of the work is suspended, delayed, or interrupted due to an order of a court of competent jurisdiction as a result of environmental litigation, as defined below, the Contracting Officer and/or his Representative, at the request of the Contractor, shall determine whether the order is due in any part to the acts or omissions of the Contractor or a Subcontractor at any tier not required by the terms of this contract. If it is determined that the order is not due in any part to acts or omissions of the Contractor or a Subcontractor at any tier other than as required by the terms of this contract, such suspension, delay, or interruption shall be considered as if ordered by the Contracting Officer and/or his Representative in the administration of this contract under the terms of Section I, contract clause entitled "SUSPENSION OF WORK." The period of such suspension, delay or interruption shall be considered unreasonable, and an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) as provided in that clause, subject to all the provisions thereof.

b. The term "environmental litigation," as used herein, means a lawsuit alleging that the work will have an adverse effect on the environment or that the Government has not duly considered, either substantively or procedurally, the effect of the work on the environment. (EFARS 52.2/9109 (j))

**29. NOISE LEVEL CRITERIA**

Maximum sound pressure levels measured at the booster pumps, engine generators and vehicles including muffler and exhaust components, shall not exceed decibel values prescribed by Federal, State and local codes and regulations. The foregoing applies with the pumps under normal operating conditions at not less than 50% full rated

load. Test will be performed at no additional cost to the Government by the Contractor, or the pump engine and generator manufacturer or by an approved testing agency having proven capability in noise measurements and using approved measurement equipment and acceptable measurement procedures. Test data will be submitted to the Contracting Officer for approval 5 days after the commencement of dredging operations. Should the sound pressure (noise) level test data indicate a need for sound reduction, the Contractor will provide necessary enclosures, baffles or any other appropriate means around booster pumps and engine generators including muffler and exhaust components, so as to attain noise levels which do not exceed those prescribed by aforementioned regulations. Details of the proposed enclosure or baffling arrangement shall be submitted to the Contracting Officer for approval. Such details will be accomplished by calculations, which indicate anticipated compliance of sound pressure (noise) levels with codes and regulations noted herein before. All this is especially enforceable where these booster and engine generators locations are in bathing areas.

**30. CERF IMPLEMENTATION (83 JUN 1 OCE)**

If the work specified in this contract is performed by a hopper dredge(s), the owner must have an active Basic Ordering Agreement (BOA) for the hopper dredge(s) on file with the Corps of Engineers. The Contractor shall be obligated to make the hopper dredge(s) available to serve in the Corps of Engineers Reserve Fleet (CERF) at any time that the hopper dredge(s) is performing work under this contract. When the Contracting Officer and/or his Representative is notified of the decision to activate the dredge(s) into the CERF, he shall take appropriate action to release the dredge(s). He may then extend or terminate the contract to implement whichever action is in the best interest of the Government. The CERF contract shall also be subject to the following condition:

a. The Director of Civil Works may require the contractor to perform emergency dredging at another CONUS (48 contiguous states) site for a period of time equal to the remaining time under this contract at the date of notification plus up to ninety (90) days at the previously negotiated rate which appears on the schedule of prices in the BOA.

b. The Chief of Engineers may require the contractor to perform emergency dredging at an OCONUS (Outside CONUS which includes Alaska, Hawaii, Puerto Rico, the Virgin Islands, or U.S. Trust Territories) site for a period of time equal to the time remaining under this contract at the date of notification plus up to one hundred eighty (180) days at the negotiated rate which appears on the schedule of prices in the BOA.

c. The CERF shall be activated by the Chief of Engineers or the Director of Civil Works; then the Ordering Contracting Officer and/or his Representative will notify the contractor. From the time of notification, the selected hopper dredge(s) must depart for the emergency assignment within seventy-two (72) hours for CONUS or ten (10) days for OCONUS assignments.

d. A confirming delivery order will be issued pursuant to the Basic Ordering Agreement (BOA) by the Ordering Contracting Officer and/or his Representative. Such delivery order shall utilize the schedule of rates in the BOA for the specific hopper dredges(s).

e. If during the time period specified in a, b, or c, above, a CERF vessel(s) is still required, the contract performance may be continued for additional time by mutual agreement. (EFARS 52.2/9112)

**31. THE SEAGOING BARGE ACT (46 USC 395 ET SEQ.)**

The Seagoing Barge Act applies to this project. In the event the low bidder contemplates using plant that requires U.S. Coast Guard certification to comply with this Act, the low bidder shall within five (5) calendar days after bid opening submit a copy of said certificate to the Contracting Officer and/or his Representative. Failure to produce the certificate within the required time shall subject the bidder to a determination of none responsibility.

**32. PERFORMANCE EVALUATION OF CONTRACTOR (APR 1984)**

a. As a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluation may be prepared at any time during contract performance when determined to be in the best interest of the Government.

b. The format for the evaluation will be DD Form 2626, and the Contractor will be rated either outstanding, satisfactory, or unsatisfactory in the areas of Contractor Quality Control, Timely Performance, Effectiveness of Management, Compliance with Labor Standards, and Compliance with Safety Standards. The Contractor will be advised of any unsatisfactory rating, either in an individual element or in the overall rating, prior to completing the evaluation, and all Contractor comments will be maintained as part of the official record. Performance Evaluation Reports will be available to all DOD contracting offices for their future use in determining Contractor responsibility, in compliance with FAR 36.201 (c). (DEAN-PRP Ltr dtd 30 Apr 84)

**33. PRICING OF ADJUSTMENTS (APR 1984)**

When costs are a factor in any determination of a contract price adjustment pursuant to the Changes clause or any other clause of this contract, such costs shall be in accordance with Part 31 of the Federal Acquisition Regulation and the DOD FAR Supplement in effect on the date of this contract (DOD FAR SUPP 52.243.7001) costs shall be in accordance with Part 31 of the Federal Acquisition Regulation.

**34. PRECONSTRUCTION CONFERENCE**

A preconstruction conference will be arranged by the Contracting Officer and/or his Representative after award of contract and before commencement of work. The Contracting Officer's representative will notify the Contractor of the time and date set for the meeting. At this conference, the Contractor shall be oriented with respect to Government procedures and line of authority, contractual, administrative, and construction matters.

The contractor shall bring to this conference the following items in either completed or draft form:

a. The Contractor's order of work for dredging and performing other work, including disposal area plan.

b. Accident Prevention Plan (advance copies required, see Section 01351) including the Hazard Analysis as per Section 01351.

c. Quality Control Plan (see Section 01451).

d. Letter appointing Superintendent.

e. List of subcontractors

**35. BID GUARANTEE**

a. The offeror (bidder) shall furnish a separate bid bond, or United States bonds, Treasury notes or other public debt obligation of the United States, in the proper amount, by the time set for opening of bids. Failure to do so may be cause for rejection of the bid. The Contracting Officer and/or his Representative will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

b. If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or give a bond(s) as required by the solicitation within the time specified, the Contracting Officer and/or his Representative may terminate the contract for default.

c. Unless otherwise specified in the bid, the bidder will (1) allow the number of days as indicated in paragraph 13D of Standard Form 1442 for acceptance of its bid and (2) give bond within 5 days after receipt of the forms by the bidder.

d. In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid. The bid bond, or bonds or notes of the United States, is available to offset the difference.

**36. QUANTITY SURVEYS**

a. Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.

b. The Government shall conduct the original and final surveys and make the computations based on them. The Contractor shall conduct the survey for any periods for which progress payments are requested and shall make the computations based on these surveys. These surveys conducted by the Contractor shall be conducted under the direction of a representative of the Contracting Officer, unless the Contracting Officer waives this requirement in a specific instance.

c. Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the Contracting Officer and/or his Representative, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the Contracting Officer and/or his Representative. (FAR 52.236-16)

d. Contractor's participation in surveys: In accordance with agency policy guidance, the preferred methods of performance of all hydrographic quantity surveys shall be (in descending order):

(1) The Government will perform quantity surveys by using qualified in-house crews, if available.

(2) The Government will provide quantity surveys by contracting directly with qualified independent hydrographic survey contractors.

(3) The Government will permit, only in exceptional circumstances, the use of dredging contractor's surveys if the Contracting Officer and/or his Representative determine that such surveys are adequate and reasonable for payment purposes.

If it is determined by the Contracting Officer that it is impractical for Government personnel to perform the original and final surveys and the Government wishes the Contractor's surveys to be used, the following will be required from the Contractor:

(a) Acceptance of all monumentation and transponder locations.

(b) Witness by a Corps of Engineers representative of all calibration procedures such as vertical and horizontal control.

(c) Corps of Engineers observation of raw data collection.

(d) Submittal of both unedited as well as edited versions of survey maps.

(e) Subsequent acceptance of edited survey map after determination by Corps survey personnel that editing was conducted in accordance with U.S. Army Corps of Engineers specifications and guidelines. (FAR 52.236-16 - ALTERNATE I, APR 1984)

e. The Contractor is obligated to participate in all stages of data collection during the performance of Before and After Dredge Surveys. Any disagreements with the data collection process shall immediately be brought to the attention of the Contracting Officer or his representative who will determine the necessary

corrective measures, if any. Failure to be present during the survey data collection disqualifies the Contractor from any such related claims.

**37. SAFETY SIGN**

The Contractor shall construct a safety sign at a location directed by the Contracting Officer and/or his Representative. The sign shall be 6 feet by 4 feet and shall conform to the requirements as specified in Section 00900, Attachment E, Project Identification and Safety Signs. The Corps of Engineers castle logo (an 8.5" x 11" red decal) to be used on the sign will be Government furnished. The Contractor will be given this logo at the time of the preconstruction conference.

The decal shall receive a thin coat of clear spar varnish after application. The sign shall be erected as soon as possible and within 5 calendar days after the date of the receipt of the Notice to Proceed. The data required by the sign shall be corrected daily. No separate payment will be made for erecting and maintaining the safety sign and all costs in connection therewith will be considered the obligation of the contractor. Upon completion of the project, the Contractor shall remove the sign from the work site.

**38. PROJECT SIGN**

The Contractor shall furnish and erect a project sign at a location directed by the Contracting Officer or Contracting Officer's Representative. The project sign shall conform with all requirements as specified in Section 00900, Attachment E, Project Identification and Safety Signs. The Corps of Engineers' castle logo and other logos (8.5" x 11") to be used on the sign will be Government furnished. The Contractor will be given these logos at the time of the preconstruction conference.

The decal(s) shall receive a thin coat of clear spar varnish after application. The Contractor shall maintain the sign in good condition throughout the construction period. No separate payment will be made for erecting and maintaining the project sign, and all costs in connection therewith will be considered the obligation of the Contractor. Upon completion of the project, the Contractor shall remove the sign from the work site.

**39. EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS**

Notwithstanding the clause of this contract entitled "Subcontracts," the Contractor shall not enter into a first-tier subcontract for an estimated or actual amount of $1 million or more without obtaining in writing from the Contracting Officer and/or his Representative a clearance that the proposed subcontractor is in compliance with the equal opportunity requirements and therefore is eligible for award.

**40. SCHEDULING AND DETERMINATION OF PROGRESS**

In accordance with the contract provisions, the Contractor shall, within five (5) days after receipt of Notice to Proceed by him or as otherwise determined by the Contracting Officer and/or his Representative, submit for approval a practicable progress schedule. The progress schedule shall be in the form of a chart graphically indicating the sequence proposed to accomplish each work feature of operation (Eng. Form 2454 or an acceptable equivalent -e.g., computer-generated from a commercially-available project management software package). The chart shall be prepared to show the starting and completion dates of all work features on a linear horizontal time scale beginning with date of the receipt of the Notice to Proceed and indicating calendar days to completion. Each activity in construction shall be represented by an arrow. The head to tail arrangement of arrows shall flow from left to right. Each arrow representing an activity shall be annotated to show the activity description and duration. Contractor shall indicate on the chart the important work features or operations that are critical to the timely overall completion of the project. Key dates for such important work features and portions of work features are milestone dates and shall be so indicated on the chart. This schedule will be the medium through which the timeliness of the

Contractor's construction effort is appraised. When changes are authorized that result in contract time extensions, the Contractor shall submit a modified chart for approval by the Contracting Officer and/or his Representative. The terms of Section 00700, Contract Clause entitled: SCHEDULES FOR CONSTRUCTION CONTRACTS, with reference to overtime, extra shifts, etc., may be invoked when the Contractor fails to start or complete work features or portions of same by the time indicated by the milestone dates on the approved progress chart, or when it is apparent to the Contracting Officer from the Contractor's actual progress that these dates will not be met. Neither on the chart nor on the periodic charts which the Contractor is required to prepare and submit, as described in paragraph, SCHEDULES FOR CONSTRUCTION CONTRACTS of the Contract Clauses, shall the actual progress to be entered include or reflect any materials which may be on the site, but are not yet installed or incorporated in the work. For payment purposes only, an allowance will be made by the Contracting Officer and/or his Representative of up to 100 percent of the invoiced cost of materials or equipment delivered to the site but not incorporated into the construction, pursuant to Section 00700, Contract Clause entitled: "PAYMENT UNDER FIXED-PRICE CONSTRUCTION CONTRACTS." The making of such an allowance will be contingent upon a determination by the Contracting Officer and/or his Representative that the Contractor's compliance with the quality control requirements of the contract is more than satisfactory.

When the contractor submits his progress schedule, he will include in the submission a progress curve reflecting the intended schedule for completing the work. The progress curve (S-Curve) will be plotted to reflect Cumulative Progress (Percent) based on placement along the y-axis and Time along the x-axis. The progress curve will be furnished at the same time the progress schedule is submitted for approval and updated monthly by the Contractor.

**41. SPECIAL PROHIBITION ON EMPLOYMENT**

a. Definitions: "Arising out of a contract with the Department of Defense," as used in this clause, means any act in connection with (1) attempting to obtain, (2) obtaining, or (3) performing a contract or subcontract of any agency, department or component of the Department of Defense.

b. "Convictions of fraud or any other felony," as used in this clause, means any conviction for fraud or a felony in violation of state or Federal criminal statutes, whether entered on a verdict or plea, including a plea of nolo contendere, for which sentence has been imposed.

c. Section 941, Title IX, Pub. L. 99-500 (10 U.S.C. 2408) prohibits a person who is convicted of fraud or any other felony arising out of a contract with the Department of Defense from working in a management or supervisory capacity on any defense contract, or serving on the board of directors of any defense contractor, for a period, as determined by the Secretary of Defense, of not less than one (1) year from the date of conviction. Defense contractors are subject to a criminal penalty of not more than $500,000 if they are convicted of knowingly employing a person under a prohibition or allowing such person to serve on their board of directors.

d. The Contractor agrees not to knowingly employ any person, convicted of fraud or any other felony arising out of a contract with the Department of Defense contract or subcontract or allow such person to serve on its board of directors from the date the Contractor learns of the conviction until one (1) year has expired from the date of conviction. However, if the person has also been debarred pursuant to FAR subpart 9.4, the above prohibition shall extend for the period of debarment, but in no event shall the prohibition be less than (1) year from the date of conviction.

e. If the Contractor knowingly employs a convicted person in a management or supervisory capacity on any defense contract or subcontract or knowingly allows such person to serve on its board of directors within the prohibited period, the Government may consider, in addition to the criminal penalties contained in Section 941 of Pub. L. 99-500, other available remedies, such as suspension or debarment and may direct the cancellation of this contract at no cost to the Government, or terminate this contract for default.

f. The Contractor agrees to include the substance of this clause, including this paragraph (e), appropriately modified to reflect the identity and relationship of the parties, in all subcontracts exceeding $25,000.

## 42. SUPERINTENDENCE OF SUBCONTRACTS (JAN 1965)

a. The Contractor shall be required to furnish the following, in addition to the superintendence required by the Contract Clauses entitled: "Superintendence by the Contractor."

(1) If more than 50% and less than 70% of the value of the contract work is subcontracted, one superintendent shall be provided at the site and on the Contractor's payroll to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

(2) If 70% or more of the value of the work is subcontracted, the Contractor shall be required to furnish two such superintendents to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

b. If the Contracting Officer, at any time after 50% of the subcontracted work has been completed, finds that satisfactory progress is being made, he may waive all or part of the above requirement for additional superintendence subject to the right of the Contracting Officer to reinstate such requirement if at any time during the progress of the remaining work he finds that satisfactory progress is not being made. (DOD FAR Supplement 52.236-7008)

## 43. PROCEDURES FOR SUBMISSION AND PAYMENT OF ALL CONTRACT PAYMENTS

In addition to the requirements contained in the Contract Clause entitled "Payments Under Fixed-Price Construction Contracts" and to implement the requirements of the Prompt Payment Act Amendments of 1988, P.L. 100-496, the following shall apply to all payments made under this contract:

a. At the time of submission of the progress chart, the contractor shall submit for approval by the Contracting Officer or his authorized representative a breakdown of the contract work which shall be to the degree of detail required by the Contracting Officer or his representative to effect reasonable progress payments. The Contracting Officer or his representative shall review this breakdown within 30 calendar days after receipt and either advise the contractor that it is approved or disapproved, and if disapproved the reasons for disapproval. Only after the breakdown is approved shall any payment invoice be accepted from the contractor and any payment made to him. The Contracting Officer can determine it is in the best interest of the Government to make payment without an approved breakdown, however, in no case shall more than 10% of the contract amount be paid unless the breakdown is approved.

b. The contractor shall submit his request for payment by submission of a proper invoice to the office or person(s) designated in paragraph "c". For purposes of payment a "proper invoice" is defined as the following:

(1) An estimate of the work completed in accordance with the approved breakdown indicating the percentage of work of each item and the associated costs.

(2) A properly completed ENG Form 93 and 93a (where required).

(3) All contractual submissions indicated elsewhere in this contract to be submitted with payment, such as updated progress schedules, updated submittal registers, etc.

The following certification executed by a responsible official of the organization authorized to bind the firm. A "responsible official" would be either a corporate officer, partner, or owner, in the case of a sole proprietorship:

I hereby certify, to the best of my knowledge and belief, that:

(1) The amounts requested are only for performance in accordance with the specifications, terms and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract requirements and the requirements of Chapter 39 of Title 31, United States Code; and

(3) This request for progress payments does not include any amounts, which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

(4) All required prime and subcontractor payrolls have been submitted.

________________________________

(Name)

________________________________

(Title)

________________________________

(Date)

c. The Government shall designate the office or person(s) who shall first receive the invoice submissions and the Contractor shall be notified at the preconstruction conference. In addition, the contractor shall at the same time submit one copy of the detailed breakdown and the ENG Form 93 and 93a Form to the Project Engineer.

d. The Government representative shall return any request for payment, which is deemed defective within 7 days of receipt and shall specify the defects. Telephone calls with MFR or E-mail notification of the Contractor about the defective invoice shall be considered sufficient notice to the Contractor. If the defect concerns a disagreement as to the amount of work performed and or the amount of the payment being submitted, the Government and the contractor's representative should meet to resolve the differences and reach agreement. Upon agreement, the contractor shall submit a new breakdown and ENG Form 93 (and 93a) and any other submissions requiring correction. These will be incorporated with the previous submittal and will then constitute a proper invoice.

e. If agreement cannot be reached, the Government shall determine the proper amount per Contract Clause entitled: "Payments Under Fixed-Price Construction Contracts" and process the payment accordingly. In this event, "a proper invoice" for Prompt Payment Act purposes will not have been submitted to the Government.

f. The Government shall pay the contractor in accordance with the following time frames:

(1) Progress Payments. From the date a "Proper invoice" is received, in accordance with subparagraphs "b" and "d" of this clause, the Government will issue a check within 14 calendar days.

(2) Reduction in Retaining Payment. If during the course of the contract, a reduction in retainage payment is required, the Government shall issue a check within 30 calendar days after the

approval of the release to the contractor by the Contracting Officer or his authorized representative.

(3) Final Payment. A final payment request shall not be considered valid until the contractor has fulfilled all contract requirements including all administrative items, payrolls, warranties, etc. and has submitted a release of claims. When the contractor has fulfilled all contract requirements and a "proper invoice" has been submitted, the Government shall issue a check within 30 days from the date of acceptance of the project by the Contracting Officer.

**44. SUBMISSION OF CLAIMS**

The following shall be submitted to the Contracting Officer at the following address: U.S. Army Corps of Engineers, New York District, 26 Federal Plaza, New York, New York 10278-0090:

a. Claims referencing or mentioning the Contact Disputes Act of 1978.
b. Requests for a written decision by the Contracting Officer.
c. Claims certified in accordance with the Contract Disputes Act of 1978.

No other Government representative is authorized to accept such requests. A copy shall also be provided to the Authorized Representative of the Contracting Officer.

The Contractor shall also provide The Contracting Officer with a copy of any requests for additional time, money or interpretation of contract requirements which were provided to the Authorized Representative of the Contracting Officer and which have not been resolved after 90 days.

**45. SAFETY REQUIREMENTS FOR OPERATIONS ADJACENT TO POWER LINES.**

When it is necessary to transport or operate machinery or equipment under or adjacent to overhead power lines, the requirements of paragraph 11.E - OPERATING ADJACENT TO OVERHEAD LINES, in the Corps of Engineers Manual, EM 385-1-1, dated 3 November 2003, entitled "Safety & Health Requirements Manual" and referred to in the Accident Prevention Provision of General Provisions, shall govern.

**46. CRANE AND DRAGLINE SAFETY REQUIREMENTS**

In addition to meeting all applicable requirements of OSHA standards and Section 16 of the Corps of Engineers Manual, EM 385-1-1, dated 3 November 2003, all cranes used in performing the work set forth in these specifications shall be equipped with geared boom hoists or otherwise provided with mechanisms which will prevent the booms from falling free. Cranes that are equipped with booms that can be lowered either by gravity or by power shall have the mechanisms for operating the booms by gravity made inoperative so that the booms cannot be lowered by gravity. The booms of all cranes and draglines shall also be equipped with shock absorbing type back stops to prevent them from overtopping.

All crane operators must meet the EM 385-1-1 qualification requirements.

**47. OPERATOR QUALIFICATIONS FOR FLOATING CRANES AND FLOATING DERRICKS (SAFETY AND HEALTH REQUIREMENT, EM385-1-1, SECTION 16.C)**

All floating cranes and floating derricks may be only operated by qualified operators. Operators shall be designated as qualified by a source which qualifies crane and derrick operators (e.g. an independent testing and qualifying company, a union, a governmental agency, a qualified consultant (can be an in-house resource)).

Qualification shall be written (or oral) and practical operating examination unless the operator is licensed by a state or city licensing agency for the particular type of crane or derrick. Proof of qualification of crane and derrick operators shall be provided to the Contracting Officer's representative prior to the start of work.

**48. ACCIDENT PREVENTION PLAN**

The Contractor is required to submit to the Contracting Officer or Contracting Officer Representative an accident prevention plan at the preconstruction conference. The accident prevention plan must be in accordance with all federal safety standards as specified in EM 385-1-1, dated 3 November, 2003, entitled "Safety & Health Requirements Manual". Guidelines For Preparation Of The Accident Prevention Plan is located in Section 0900, Attachment H.

**49. ALTERATIONS IN CONTRACT (APR 1984)**

Portions of the contract are altered as follows:

a. Add the following sentence to paragraph "a" of Section 00700, Contract Clause: Insurance – Work on a Government Installation: "Insurance Coverage shall be as specified in 28.307 of the Federal Acquisition Regulation".

b. The following clause is incorporated as part of the contract: "By entering into this contract the Contractor certifies that neither it, nor any person or firm who has an interest in the Contractor's firm, is a person, or firm ineligible in accordance with FAR subpart "9.4" (DEAN-PRP EFAR Acquisition Letter 85-1 dated 11 Sept 85)

**50. DELETED**

**51. DREDGING AND DREDGE RELATED MARINE WORK**

The Contractor shall comply with the provisions of EM 385-1-1. If the Contractor is a currently accepted participant in the Dredging Contractors of America (DCA)/ Unites States Army Corps of Engineers (USACE) Dredging Safety Management Program (DSMP), as determined by the DCA/USACE Joint Committee, and holds a current valid Certificate of Compliance for both the Contractor Program and the Dredge(s) to be used to perform the work required under this contract, the Contractor may, in lieu of the submission of an Accident Prevention Plan (APP),
(1) make available for review, upon request, the Contractor's current Safety Management System (SMS) documentation,
(2) submit to the Contracting Officer the current valid Company Certificate of Compliance for its SMS,
(3) submit the current dredge(s) Certificate of Compliance based on third party audit, and
submit for review and acceptance, site-specific addenda to the SMS as specified in the solicitation."

---

CLAUSES INCORPORATED BY FULL TEXT

52.232-5001 CONTINUING CONTRACTS (MAR 1995)—EFARS

(a) This is a continuing contract, as authorized by Section 10 of the River and Harbor Act of September 22, 1922 (33 U.S. Code 621). The payment of some portion of the contract price is dependent upon reservations of funds

from future appropriations, and from future contribution to the project having one or more non-federal project sponsors. The responsibilities of the Government are limited by this clause notwithstanding any contrary provision of the "Payments to Contractor" clause or any other clause of this contract.

(b) The sum of $1,000 has been reserved for this contract and is available for payments to the contractor during the current fiscal year. It is expected that Congress will make appropriations for future fiscal years from which additional funds together with funds provided by one or more non-federal project sponsors will be reserved for this contract.

(c) Failure to make payments in excess of the amount currently reserved, or that may be reserved from time to time, shall not entitle the contractor to a price adjustment under the terms of this contract except as specifically provided in paragraphs (f) and (i) below. No such failure shall constitute a breach of this contract, except that this provision shall not bar a breach-of-contract action if an amount finally determined to be due as a termination allowance remains unpaid for one year due solely to a failure to reserve sufficient additional funds therefore.

(d) The Government may at any time reserve additional funds for payments under the contract if there are funds available for such purpose. The contracting officer will promptly notify the contractor of any additional funds reserved for the contract by issuing an administrative modification to the contract.

(e) If earnings will be such that funds reserved for the contract will be exhausted before the end of any fiscal year, the contractor shall give written notice to the contracting officer of the estimated date of exhaustion and the amount of additional funds which will be needed to meet payments due or to become due under the contract during that fiscal year. This notice shall be given not less than 45 nor more than 60 days prior to the estimated date of exhaustion.

(f) No payments will be made after exhaustion of funds except to the extent that additional funds are reserved for the contract. The contractor shall be entitled to simple interest on any payment that the contracting officer determines was actually earned under the terms of the contract and would have been made except for exhaustion of funds. Interest shall be computed from the time such payment would otherwise have been made until actually or constructively made, and shall be at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41, 85 STAT 97, as in effect on the first day of the delay in such payment.

(g) Any suspension, delay, or interruption of work arising from exhaustion or anticipated exhaustion of funds shall not constitute a breach of this contract and shall not entitle the contractor to any price adjustment under the "Suspension of Work" clause or in any other manner under this contract.

(h) An equitable adjustment in performance time shall be made for any increase in the time required for performance of any part of the work arising from exhaustion of funds or the reasonable anticipation of exhaustion of funds.

(i) If, upon the expiration of sixty (60) days after the beginning of the fiscal year following an exhaustion of funds, the Government has failed to reserve sufficient additional funds to cover payments otherwise due, the contractor, by written notice delivered to the contracting officer at any time before such additional funds are reserved, may elect to treat his right to

proceed with the work as having been terminated. Such a termination shall be considered a termination for the convenience of the Government.

(j) If at any time it becomes apparent that the funds reserved for any fiscal year are in excess of the funds required to meet all payments due or to become due the contractor because of work performed and to be performed under the contract during the fiscal year, the Government reserves the right, after notice to the contractor, to reduce said reservation by the amount of such excess.

(End of clause)

LABOR WAGE RATE DECISIONS

General Decision Number: NJ030006 12/03/2004 NJ6 NJ02/17/05

State: New Jersey

Construction Types: Heavy Dredging

Counties: Atlantic, Bergen, Camden, Cape May, Cumberland, Gloucester, Hudson, Mercer, Middlesex, Monmouth, Ocean, Salem and Union Counties in New Jersey.

STATEWIDE

All dredging except self-propelled hopper dredging on the Atlantic Coast and tributary waters emptying into the Atlantic Ocean

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |
| 2 | 12/03/2004 |

* ENGI0025-001 10/01/2004

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman | $ 29.37 | 7.35+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain | $ 23.45 | 6.75+a+b |
| Boat Master | $ 24.54 | 7.35+a+b |
| Deckhand, Tug Deckhand | $ 19.63 | 6.15+a+b |
| Engineer | $ 25.77 | 7.35+a+b |
| Maintenance Engineer | $ 24.89 | 6.75+a+b |
| Mate | $ 23.29 | 6.75+a+b |
| Oiler | $ 19.69 | 6.15+a+b |
| Operator | $ 29.37 | 7.35+a+b |
| Scowman | $ 19.18 | 6.15+a+b |
| Welder | $ 24.52 | 6.75+a+b |
| Diver | | |
| Diver | $ 41.53 | 6.87+a+b |

Standby Diver...............$ 27.85 6.87+a+b
Standby Tender.............$ 23.26 6.27+a+b
Tender......................$ 32.11 6.87+a+b
Drag Bucket Dredge
Deckhand...................$ 16.17 5.25+a+b
Engineer...................$ 21.41 6.45+a+b
Maintenance Engineer........$ 21.21 5.85+a+b
Mate........................$ 19.82 5.85+a+b
Operator...................$ 25.09 6.45+a+b
Dredging Pipeline Cable-Laying
Control Tower Operator......$ 25.55 6.87+a+b
Diver Tender................$ 26.58 6.87+a+b
Diver.......................$ 42.42 6.87+a+b
Leverman...................$ 28.83 6.87+a+b
Line up Operator, End Prep..$ 18.47 5.67+a+b
Rigger......................$ 19.07 5.67+a+b
Drill Boats
Blaster.....................$ 23.81 6.45+a+b
Core Driller................$ 19.00 5.25+a+b
Driller.....................$ 23.55 6.45+a+b
Engineer....................$ 23.54 6.45+a+b
Machinist...................$ 23.30 5.85+a+b
Oiler.......................$ 20.46 5.25+a+b
Tug Captain.................$ 19.53 5.85+a+b
Tug Deckhand................$ 15.97 5.25+a+b
Tug Master..................$ 20.48 6.45+a+b
Welder......................$ 23.30 5.85+a+b
Engineer
1st.........................$ 25.55 6.87+a+b
2nd, 3rd and 4th............$ 25.23 6.87+a+b
Electrician.................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain.................$ 23.44 6.87+a+b
Tug Master..................$ 26.80 6.87+a+b
Hydraulic Dredge
Asst. Fill Placer...........$ 23.10 7.35+a+b
Boat Captain................$ 23.45 6.75+a+b
Boat Master.................$ 24.53 7.35+a+b
Chief Mate..................$ 25.12 7.35+a+b
Chief Welder................$ 25.78 7.35+a+b
Deckhand....................$ 19.63 6.15+a+b
Engineer....................$ 25.22 7.35+a+b
Fill Placer.................$ 25.12 7.35+a+b
Janitor/Porter..............$ 18.79 6.15+a+b
Leverman....................$ 29.37 7.35+a+b
Maintenance Engineer........$ 24.89 6.75+a+b
Mate........................$ 23.29 6.75+a+b
Messman.....................$ 18.79 6.15+a+b
Night Cook..................$ 19.30 6.15+a+b
Oiler.......................$ 19.69 6.15+a+b
Shoreman....................$ 19.20 6.15+a+b
Spider Barge Operator.......$ 24.31 6.75+a+b
Steward.....................$ 23.24 7.35+a+b
Welder-Dredge...............$ 24.51 6.75+a+b
Tug Boats over 1000 H.P.

with master or captain
having license endorsed
for 200 miles off shore
Tug Captain................$ 24.99 7.35+a+b
Tug Chief Engineeer........$ 24.25 6.75+a+b
Tug Deckhand..............$ 19.63 6.15+a+b
Tug Engineer..............$ 23.78 6.75+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

===

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

---

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

---

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial

contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations

Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

================================================================

END OF GENERAL DECISION

IFB No. W912DS-05-B-0010, Amendment No.6, Maintenance Dredging – Arthur Kill Reach of the NY & NJ Channels

General Decision Number: NY030001 12/03/2004 NY1

Superseded General Decision Number: NY020001

State: New York

Construction Types: Heavy Dredging

Counties: New York Statewide.
STATEWIDE

New York

All dredging, excpt self-propelled hopper dredges, on the Atlantic Coast and tributary waters emptying into ther Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |
| 2 | 12/03/2004 |

* ENGI0025-001 10/01/2004

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman............. | $ 29.37 | 7.35+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain................ | $ 23.45 | 6.75+a+b |
| Boat Master................. | $ 24.54 | 7.35+a+b |
| Deckhand, Tug Deckhand...... | $ 19.63 | 6.15+a+b |
| Engineer.................... | $ 25.77 | 7.35+a+b |
| Maintenance Engineer........ | $ 24.89 | 6.75+a+b |
| Mate........................ | $ 23.29 | 6.75+a+b |
| Oiler....................... | $ 19.69 | 6.15+a+b |
| Operator.................... | $ 29.37 | 7.35+a+b |
| Scowman..................... | $ 19.18 | 6.15+a+b |
| Welder...................... | $ 24.52 | 6.75+a+b |
| Diver | | |
| Diver....................... | $ 41.53 | 6.87+a+b |
| Standby Diver............... | $ 27.85 | 6.87+a+b |
| Standby Tender.............. | $ 23.26 | 6.27+a+b |
| Tender...................... | $ 32.11 | 6.87+a+b |
| Drag Bucket Dredge | | |
| Deckhand.................... | $ 16.17 | 5.25+a+b |
| Engineer.................... | $ 21.41 | 6.45+a+b |
| Maintenance Engineer........ | $ 21.21 | 5.85+a+b |
| Mate........................ | $ 19.82 | 5.85+a+b |
| Operator.................... | $ 25.09 | 6.45+a+b |
| Dredging Pipeline Cable-Laying | | |
| Control Tower Operator...... | $ 25.55 | 6.87+a+b |
| Diver Tender................ | $ 26.58 | 6.87+a+b |

Diver........................$ 42.42 6.87+a+b
Leverman....................$ 28.83 6.87+a+b
Line up Operator, End Prep..$ 18.47 5.67+a+b
Rigger.......................$ 19.07 5.67+a+b
Drill Boats
Blaster......................$ 23.81 6.45+a+b
Core Driller................$ 19.00 5.25+a+b
Driller......................$ 23.55 6.45+a+b
Engineer....................$ 23.54 6.45+a+b
Machinist...................$ 23.30 5.85+a+b
Oiler........................$ 20.46 5.25+a+b
Tug Captain.................$ 19.53 5.85+a+b
Tug Deckhand................$ 15.97 5.25+a+b
Tug Master..................$ 20.48 6.45+a+b
Welder.......................$ 23.30 5.85+a+b
Engineer
1st..........................$ 25.55 6.87+a+b
2nd, 3rd and 4th............$ 25.23 6.87+a+b
Electrician.................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain.................$ 23.44 6.87+a+b
Tug Master..................$ 26.80 6.87+a+b
Hydraulic Dredge
Asst. Fill Placer...........$ 23.10 7.35+a+b
Boat Captain................$ 23.45 6.75+a+b
Boat Master.................$ 24.53 7.35+a+b
Chief Mate..................$ 25.12 7.35+a+b
Chief Welder................$ 25.78 7.35+a+b
Deckhand....................$ 19.63 6.15+a+b
Engineer....................$ 25.22 7.35+a+b
Fill Placer.................$ 25.12 7.35+a+b
Janitor/Porter..............$ 18.79 6.15+a+b
Leverman....................$ 29.37 7.35+a+b
Maintenance Engineer........$ 24.89 6.75+a+b
Mate........................$ 23.29 6.75+a+b
Messman.....................$ 18.79 6.15+a+b
Night Cook..................$ 19.30 6.15+a+b
Oiler.......................$ 19.69 6.15+a+b
Shoreman....................$ 19.20 6.15+a+b
Spider Barge Operator.......$ 24.31 6.75+a+b
Steward.....................$ 23.24 7.35+a+b
Welder-Dredge...............$ 24.51 6.75+a+b
Tug Boats over 1000 H.P.
with master or captain
having license endorsed
for 200 miles off shore
Tug Captain.................$ 24.99 7.35+a+b
Tug Chief Engineeer........$ 24.25 6.75+a+b
Tug Deckhand...............$ 19.63 6.15+a+b
Tug Engineer...............$ 23.78 6.75+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

---

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

---

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

---

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations

Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

================================================================

END OF GENERAL DECISION

<u>AMENDMENT 0001 CHANGES</u>
**Amendment No. 1**
**IFB No. W912DS-05-B-0010**
**Maintenance Dredging- Arthur Kill Reach of the NY & NJ Channels**

This amendment is issued for the following reasons:

Revise the Wage Rates
Revise the Grain Size Analyses
Revise the paragraph on permits

IFB No. W912DS-05-B-0010, Amendment No.6, Maintenance Dredging – Arthur Kill Reach of the NY & NJ Channels

Revise the Bid Opening Date

## Revise the Wage Rate

Replace the Wage Rates with the attached Davis-Bacon Act wage decisions NY030001 modification dated 6 May 2005 and NJ030006 modification dated 6 May 2005.

## Grain Size Analyses

Paragraph 3.b. of Section 1200 shall be revised to read
" Results of grain size analyses performed on 14 samples collected within the project area are averaged to be 14% sand, 45% silt and 41% clay."

## Permits

Paragraph 5.a. of Section 01200 shall be revised to read
" ....Copies of dredging Water Quality Certificates and CZM consistency determinations are attached in Section 0900. These permits are subject to revision."

**Revise Bid Opening Date**

The bid opening date has been changed; the revised bid opening date is 2:00 PM, 02 June 2005.

All other terms and conditions remain the same.

**Wage Rates:**

Solicitations affected by the 90-day rule are not listed above: "90-day" rule: 29 CFR 1. 6 ( c ) (3)(iv), as set forth in FAR 22.404-6(b)(6) provides that if a contract to which a general wage determination has been applied is not awarded within 90 days after bid opening, any modification to that wage determination published prior to contract award shall be effective unless the agency obtains an extension of this 90-day period from the Administrator, US Department of Labor

GENERAL DECISION: **NJ20030006 05/06/2005 NJ6**

Date: May 6, 2005
General Decision Number: **NJ20030006 05/06/2005** s 5/9/05

State: New Jersey

Construction Types: Heavy Dredging

Counties: Atlantic, Bergen, Camden, Cape May, Cumberland, Gloucester, Hudson, Mercer, Middlesex, Monmouth, Ocean, Salem and Union Counties in New Jersey.

STATEWIDE

All dredging except self-propelled hopper dredging on the Atlantic Coast and tributary waters emptying into the Atlantic Ocean

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |
| 2 | 12/03/2004 |
| 3 | 05/06/2005 |

* ENGI0025-001 10/01/2004

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman | $ 28.97 | 7.80+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain | $ 23.05 | 7.20+a+b |
| Boat Master | $ 24.14 | 7.80+a+b |
| Deckhand, Tug Deckhand | $ 18.83 | 6.60+a+b |
| Engineer | $ 25.37 | 7.80+a+b |
| Maintenance Engineer | $ 24.49 | 7.20+a+b |
| Mate | $ 22.89 | 7.20+a+b |
| Oiler | $ 19.29 | 6.60+a+b |
| Operator | $ 28.97 | 7.80+a+b |
| Scowman | $ 18.78 | 6.60+a+b |
| Welder | $ 24.12 | 7.20+a+b |
| Diver | | |
| Diver | $ 41.53 | 6.87+a+b |
| Standby Diver | $ 27.85 | 6.87+a+b |
| Standby Tender | $ 23.26 | 6.27+a+b |
| Tender | $ 32.11 | 6.87+a+b |
| Drag Bucket Dredge | | |
| Deckhand | $ 16.17 | 5.25+a+b |
| Engineer | $ 21.41 | 6.45+a+b |

Maintenance Engineer........$ 21.21 5.85+a+b
Mate.......................$ 19.82 5.85+a+b
Operator...................$ 25.09 6.45+a+b
Dredging Pipeline Cable-Laying
Control Tower Operator......$ 25.55 6.87+a+b
Diver Tender...............$ 26.58 6.87+a+b
Diver......................$ 42.42 6.87+a+b
Leverman...................$ 28.83 6.87+a+b
Line up Operator, End Prep..$ 18.47 5.67+a+b
Rigger.....................$ 19.07 5.67+a+b
Drill Boats
Blaster....................$ 23.81 6.45+a+b
Core Driller...............$ 19.00 5.25+a+b
Driller....................$ 23.55 6.45+a+b
Engineer...................$ 23.54 6.45+a+b
Machinist..................$ 23.30 5.85+a+b
Oiler......................$ 20.46 5.25+a+b
Tug Captain................$ 19.53 5.85+a+b
Tug Deckhand...............$ 15.97 5.25+a+b
Tug Master.................$ 20.48 6.45+a+b
Welder.....................$ 23.30 5.85+a+b
Engineer
1st........................$ 25.55 6.87+a+b
2nd, 3rd and 4th...........$ 25.23 6.87+a+b
Electrician................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain................$ 23.44 6.87+a+b
Tug Master.................$ 26.80 6.87+a+b
Hydraulic Dredge
Asst. Fill Placer..........$ 22.70 7.80+a+b
Boat Captain...............$ 23.05 7.20+a+b
Boat Master................$ 24.13 7.80+a+b
Chief Mate.................$ 24.72 7.80+a+b
Chief Welder...............$ 25.38 7.80+a+b
Deckhand...................$ 19.23 6.60+a+b
Engineer...................$ 24.82 7.80+a+b
Fill Placer................$ 24.72 7.80+a+b
Janitor/Porter.............$ 18.39 6.60+a+b
Leverman...................$ 28.97 7.80+a+b
Maintenance Engineer........$ 24.49 7.20+a+b
Mate.......................$ 22.89 7.20+a+b
Messman....................$ 18.39 6.60+a+b
Night Cook.................$ 18.90 6.60+a+b
Oiler......................$ 19.29 6.60+a+b
Shoreman...................$ 18.80 6.60+a+b
Spider Barge Operator.......$ 23.91 7.20+a+b
Steward....................$ 22.84 7.80+a+b
Welder-Dredge..............$ 24.11 7.20+a+b
Tug Boats over 1000 H.P.
with master or captain
having license endorsed
for 200 miles off shore
Tug Captain................$ 24.59 7.80+a+b
Tug Chief Engineer.........$ 23.85 7.20+a+b
Tug Deckhand...............$ 19.23 6.60+a+b

Tug Engineer...............$ 23.38 7.20+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

----------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

================================================================

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)(1)(ii)).

----------------------------------------------------------------

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

----------------------------------------------------------------

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the

response from this
initial contact is not satisfactory, then the process described
in 2.) and
3.) should be followed.

With regard to any other matter not yet ripe for the formal
process
described here, initial contact should be with the Branch of
Construction
Wage Determinations. Write to:

Branch of Construction Wage Determinations
Wage and Hour Division
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an
interested party
(those affected by the action) can request review and
reconsideration from
the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR
Part 7).
Write to:

Wage and Hour Administrator
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, DC 20210

The request should be accompanied by a full statement of the
interested
party's position and by any information (wage payment data,
project
description, area practice material, etc.) that the requestor
considers
relevant to the issue.

3.) If the decision of the Administrator is not favorable, an
interested
party may appeal directly to the Administrative Review Board
(formerly the
Wage Appeals Board). Write to:

Administrative Review Board
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

END OF GENERAL DECISION

*****************************************

General Decision Number: **NY030001 05/06/2005** NY1

Superseded General Decision Number: NY020001 sg 5/9/05

State: New York

Construction Types: Heavy Dredging

Counties: New York Statewide.
STATEWIDE

New York

All dredging, except self-propelled hopper dredges, on the Atlantic Coast and tributary waters emptying into the Atlantic Ocean.

| Modification Number | Publication Date |
|---|---|
| 0 | 06/13/2003 |
| 1 | 05/21/2004 |
| 2 | 12/03/2004 |
| 3 | 05/06/2005 |

* ENGI0025-001 10/01/2004

STATEWIDE

| | Rates | Fringes |
|---|---|---|
| Company Lead Dredgeman | | |
| Lead Dredgeman............. | $ 28.97 | 7.80+a+b |
| Dipper & Clamshell Dredge | | |
| Boat Captain................ | $ 23.05 | 7.20+a+b |
| Boat Master................. | $ 24.14 | 7.80+a+b |
| Deckhand, Tug Deckhand...... | $ 18.83 | 6.60+a+b |
| Engineer.................... | $ 25.37 | 7.80+a+b |
| Maintenance Engineer........ | $ 24.49 | 7.20+a+b |
| Mate........................ | $ 22.89 | 7.20+a+b |
| Oiler....................... | $ 19.29 | 6.60+a+b |
| Operator.................... | $ 28.97 | 7.80+a+b |
| Scowman..................... | $ 18.78 | 6.60+a+b |
| Welder...................... | $ 24.12 | 7.20+a+b |
| Diver | | |
| Diver....................... | $ 41.53 | 6.87+a+b |
| Standby Diver............... | $ 27.85 | 6.87+a+b |
| Standby Tender.............. | $ 23.26 | 6.27+a+b |
| Tender...................... | $ 32.11 | 6.87+a+b |
| Drag Bucket Dredge | | |
| Deckhand.................... | $ 16.17 | 5.25+a+b |
| Engineer.................... | $ 21.41 | 6.45+a+b |
| Maintenance Engineer........ | $ 21.21 | 5.85+a+b |
| Mate........................ | $ 19.82 | 5.85+a+b |

Operator...................$ 25.09 6.45+a+b
Dredging Pipeline Cable-Laying
Control Tower Operator......$ 25.55 6.87+a+b
Diver Tender...............$ 26.58 6.87+a+b
Diver.......................$ 42.42 6.87+a+b
Leverman...................$ 28.83 6.87+a+b
Line up Operator, End Prep..$ 18.47 5.67+a+b
Rigger.....................$ 19.07 5.67+a+b
Drill Boats
Blaster.....................$ 23.81 6.45+a+b
Core Driller...............$ 19.00 5.25+a+b
Driller....................$ 23.55 6.45+a+b
Engineer...................$ 23.54 6.45+a+b
Machinist..................$ 23.30 5.85+a+b
Oiler.......................$ 20.46 5.25+a+b
Tug Captain................$ 19.53 5.85+a+b
Tug Deckhand...............$ 15.97 5.25+a+b
Tug Master.................$ 20.48 6.45+a+b
Welder.....................$ 23.30 5.85+a+b
Engineer
1st.........................$ 25.55 6.87+a+b
2nd, 3rd and 4th...........$ 25.23 6.87+a+b
Electrician................$ 25.68 6.87+a+b
Electro Hydro Technician....$ 20.79 6.27+a+b
Tug Captain................$ 23.44 6.87+a+b
Tug Master.................$ 26.80 6.87+a+b
Hydraulic Dredge
Asst. Fill Placer..........$ 22.70 7.80+a+b
Boat Captain...............$ 23.05 7.20+a+b
Boat Master................$ 24.13 7.80+a+b
Chief Mate.................$ 24.72 7.80+a+b
Chief Welder...............$ 25.38 7.80+a+b
Deckhand...................$ 19.23 6.60+a+b
Engineer...................$ 24.82 7.80+a+b
Fill Placer................$ 24.72 7.80+a+b
Janitor/Porter.............$ 18.39 6.60+a+b
Leverman...................$ 28.97 7.80+a+b
Maintenance Engineer........$ 24.49 7.20+a+b
Mate........................$ 22.89 7.20+a+b
Messman....................$ 18.39 6.60+a+b
Night Cook.................$ 18.90 6.60+a+b
Oiler.......................$ 19.29 6.60+a+b
Shoreman...................$ 18.80 6.60+a+b
Spider Barge Operator.......$ 23.91 7.20+a+b
Steward....................$ 22.84 7.80+a+b
Welder-Dredge..............$ 24.11 7.20+a+b
Tug Boats over 1000 H.P.
with master or captain
having license endorsed
for 200 miles off shore
Tug Captain................$ 24.59 7.80+a+b
Tug Chief Engineer.........$ 23.85 7.20+a+b
Tug Deckhand...............$ 19.23 6.60+a+b
Tug Engineer...............$ 23.38 7.20+a+b

PREMIUMS: Additional 20% for hazardous material work

FOOTNOTES APPLICABLE TO ABOVE CRAFTS:

a. PAID HOLIDAYS: New Year's Day, Martin Luther King, Jr.'s Birthday, Memorial Day, Good Friday, Independence Day, Labor Day, Veterans' Day, Thanksgiving Day and Christmas Day

b. VACATION: Seven percent (7%) of the straight time rate multiplied by the total hours worked.

---

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

---

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29CFR 5.5 (a) (1) (ii)).

---

In the listing above, the "SU" designation means that rates listed under the identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

---

WAGE DETERMINATION APPEALS PROCESS

1.) Has there been an initial decision in the matter? This can be:

* an existing published wage determination
* a survey underlying a wage determination
* a Wage and Hour Division letter setting forth a position on a wage determination matter
* a conformance (additional classification and rate) ruling

On survey related matters, initial contact, including requests for summaries of surveys, should be with the Wage and Hour Regional Office for the area in which the survey was conducted because those Regional Offices have responsibility for the Davis-Bacon survey program. If the response from this initial contact is not satisfactory, then the process described in 2.) and 3.) should be followed.

With regard to any other matter not yet ripe for the formal process described here, initial contact should be with the Branch of Construction Wage Determinations. Write to:

Branch of Construction Wage Determinations

Wage and Hour Division

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

2.) If the answer to the question in 1.) is yes, then an interested party (those affected by the action) can request review and reconsideration from the Wage and Hour Administrator (See 29 CFR Part 1.8 and 29 CFR Part 7). Write to:

Wage and Hour Administrator

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

The request should be accompanied by a full statement of the interested party's position and by any information (wage payment data, project description, area practice material, etc.) that the requestor considers relevant to the issue.

3.) If the decision of the Administrator is not favorable, an interested party may appeal directly to the Administrative Review Board (formerly the Wage Appeals Board). Write to:

Administrative Review Board

U.S. Department of Labor

200 Constitution Avenue, N.W.

Washington, DC 20210

4.) All decisions by the Administrative Review Board are final.

---

END OF GENERAL DECISION

************************************************

<u>AMENDMENT #4</u>

*Amendment No. 4*

**IFB No. W912DS-05-B-0010**

# Maintenance Dredging- Arthur Kill Reach of the NY & NJ Channels

## Bids to be opened on 21 June 2005 at 2:00 PM

This amendment is issued for the following reasons:

Add the Continuing Contract Clause
Add the "Dredging Equipment Monitoring" Section

***Continuing Contract Clause***

The Continuing Contract Clause has been added by full text to Section 00800 of the specifications.

***Dredging Equipment Monitoring***

The dredging equipment monitoring requirement has been added to the specification as Section 02900 by full text.

All other terms and conditions remain the same.

**The following have been added by full text:**

***************************************************

## SECTION 02900
## DREDGING EQUIPMENT MONITORING

**1 Scow monitoring equipment, software, and website**

The contractor is required, at his/her own expense, to have all scows or other vessels used to transport dredged material to designated placement locations (HARS, artificial reefs, and upland or other locations in the New York Bight or Lower Bay) equipped with scow monitoring equipment and software, through a contractor (i.e. scow monitoring contractor) not owned or affiliated with the dredging company. Scow monitoring equipment must be installed on any scow used to transport dredged material prior to ANY dredged material being placed in the scow. All scow monitoring data collection must begin prior to ANY dredged material being placed in the scow.

The following specifications are associated with and required for the scow monitoring equipment, software, and website:

- A self-contained "black box" unit must be installed on all scows, and must be capable of recording on a 24-hour basis, latitude and longitude positions of the scow, through DGPS technology, and scow draft, using a water pressure sensor, at variable sampling rates ranging from one position and draft value every 6 seconds to one position and draft value every ten minutes, according to NY District requirements.

- Any tugs used to transport dredged material to designated locations (HARS, artificial reefs, and/or upland or other locations in the New York Bight or Lower Bay) and all dredges used on the project must be equipped with satellite real-time tracking and messaging system maintained by the scow monitoring contractor.

- Primary Scow Monitoring systems, consisting of laptop computers with scow monitoring software, onboard all tugs used to transport dredged material, must allow data, being collected by the "black box" units on the scows being towed, to be viewed in real-time by U.S. Army Corps of Engineers, New York District certified, Inspectors of Open Water Placement of Dredged Material (NYD Inspectors) and by towing vessel crew members when used for offshore placement trips. Primary Scow Monitoring system data must be automatically transmitted from upland scows to the dredge for storage and additional transmission to the scow monitoring contractor's computer for posting on the scow monitoring website.

- Backup Scow Monitoring system, used for offshore placement trips, consisting of laptop computers with scow monitoring software, onboard all tugs used to transport dredged material, must allow the DGPS position of the tug to be viewed on the computer screen, along with an estimated position of the scow based on the towing distance and angular offset of the scow from the course line of the tug.

- Laptop computer scow monitoring software must also include an electronic version of the Transportation and Placement Log Form (TPLF) to be completed by the NYD Inspector during each placement trip.