# EXHIBIT 48

| SOLICITATION, OFFER, AND AWARD (Construction, Alteration, or Repair) | 1. SOLICITATION NO. DACW51-02-B-0013-0004 | 2. TYPE OF SOLICITATION [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 21-Jun-2002 | PAGE OF PAGES 1 OF 48 |
|---|---|---|---|---|

**IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.**

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|
| DACW51-02-C-0022 | W16ROE-2123-0215-0001 | |

| 7. ISSUED BY CODE DACW51 | 8. ADDRESS OFFER TO (If Other Than Item 7) CODE |
|---|---|
| USA ENGINEER DISTRICT, NEW YORK<br>ATTN: CENAN-CT ROOM 1843<br>26 FEDERAL PLAZA (DACW51)<br>NEW YORK NY 10278-0090 | **See Item 7** |
| TEL: (212)264- FAX: (212)264-3013 | TEL: FAX: |

| 9. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. (Include area code) (NO COLLECT CALLS) |
|---|---|---|
| | INA J OHRWASHEL | 212-264-0154 |

**SOLICITATION**

**NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".**

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date):*

MAINTENANCE DREDGING OF NEWARK BAY MAIN CHANNEL
AND PORT NEWARK CHANNELS,
NEWARK BAY, NEW JERSEY

UNRESTRICTED

NAICS CODE 234990

TECHNICAL MANAGER - LEO STROGACH 212-264-9032
CONTRACAT SPECIALIST - INA J. OHRWASHEL 212-264-0154

BID OPENING WILL BE HELD IN ROOM 1841

THIS IS A CIVIL WORKS PROGRAM AND IS NOT FUNDED BY THE DEPARTMENT OF DEFENSE

11. The Contractor shall begin performance within 5 calendar days and complete it within 35 calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [ ] mandatory, [ ] negotiable. *(See __________ .)*

| 12 A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)* [X] YES [ ] NO | 12B. CALENDAR DAYS 10 |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 1 copies to perform the work required are due at the place specified in Item 8 by 11:00 AM *(hour)* local time 23 Jul 2002 *(date).* If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

## SOLICITATION, OFFER, AND AWARD (Continued)

*(Construction, Alteration, or Repair)*

**OFFER** *(Must be fully completed by offeror)*

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*
DONJON MARINE CO INC
1250 LIBERTY AVENUE
HILLSIDE NJ 07205

CODE 9S939 | FACILITY CODE

15. TELEPHONE NO. *(Include area code)*
908-964-8812

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*

**See Item 14**

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _______ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS | SEE SCHEDULE OF PRICES

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS

*(The offeror acknowledges receipt of amendments to the solicitation -- give number and date of each)*

| AMENDMENT NO. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | | | | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*

20B. SIGNATURE

20C. OFFER DATE

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED:

# SEE SCHEDULE

22. AMOUNT
**$3,567,150.00**

23. ACCOUNTING AND APPROPRIATION DATA
**See Schedule**

24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* | ITEM Block 26

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO
☐ 10 U.S.C. 2304(c) ☐ 41 U.S.C. 253(c)

26. ADMINISTERED BY CODE E3R0205
OPS-SUPPORT-MGMT SUPPORT
26 FEDERAL PLAZA RM 1934
NEW YORK NY 10278

27. PAYMENT WILL BE MADE BY: CODE
USACE, FINANCE CENTER MILLINGTON
5722 INTEGRITY DRIVE AT
MILLINGTON TN 38054-5005

*CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE*

☐ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return ______ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work, requisitions identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications or incorporated by reference in or attached to this contract.

☒ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation, is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

REF:

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

30B. SIGNATURE | 30C. DATE

31A. NAME OF CONTRACTING OFFICER *(Type or print)*
ELLA D SNELL / CHIEF, CONTRACTING DIVISION
TEL: 212-264-0238 EMAIL: ella.d.snell@usace.army.mil

31B. UNITED STATES OF AMERICA
BY Ella D. Snell

31C. AWARD DATE
10-Sep-2002

NSN 7540-01-155-3212 **STANDARD FORM 1442 BACK** (REV. 4-85)

G007929

G01010 09227

Section SF 30 - BLOCK 14 CONTINUATION PAGE

ITEMS

SECTION SF 30 BLOCK 14 (CONTINUATION)

SF 1442 Block 21, Items Accepted (continued)

DACW51-02-C-0020, entitled "**Maintenance Dredging of Newark Bay Main Channel And Port Newark Channels, Newark Bay, New Jersey**

1. Amendment 0001 dated 11 July 02; Amendment 0002 dated 31 July 02; Amendment 0003 dated 14 August 2002; and Amendment 0004 dated 20 August 02.

2. Wage Rate Decision No. NJ020006 dated 03/01/2002

3. Award Amount: Three Million Five Hundred Sixty Seven Thousand One Hundred and Fifty Dollars ($3,567,150.00)

4. Accounting Classification

   LINE ITEMS PURCHASE REQUEST:

| | | | |
|---|---|---|---|
| Line Item 0002 | 96 NA X 3123.0000 E3 X 082421 021550 96303 2500 | FC7410 | $ 200,000.00 |
| Line Item 0003 | 96 NA X 3123 0000 E3 X 082421 099990 96303 2500 | 5LL058 | $ 400,000.00 |
| Line Item 0004 | 96 NA X 3123.0000 E3 X 082421 012550 96303 2500 | FC741G | $ 622,800.00 |
| Line Item 0005 | 96 NA X 3123.0000 E3 X 082421 099990 96303 2500 | 5LL058 | $1,415,700.00 |
| Line Item 0006 | 96 NA X 3123.0000 E3 X 082421 012550 96303 2500 | FC741G | $ 644,930.00 |

**TOTAL AWARD AMOUNT: $ 3,567,150.00**

5. Confirmation letter dated 6 Sepember 2002 confiming Item #0004 Insurance Procured by Contracto $0.00 dollar amount.

Section 00010 - Solicitation Contract Form

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0001 | | 1 | Lump Sum | $600,000.00 | $600,000.00 |

Mobilizationand Demobilization
FFP
MAINTENANCE DREDGING (PORT NEWARK) (PA). This line item incorporate line items 0001 ($200,000.00) and 0002 ($400,000.00).
PURCHASE REQUEST NUMBER: W16ROE-2123-0215-0001

| | |
|---|---|
| NET AMT | $600,000.00 |
| ACRN AB Funded Amount | $200,000.00 |
| ACRN AC Funded Amount | $400,000.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0002 | | 45,000 | Cubic Yard | $45.30 | $2,038,500.00 |

Removal and disposal
FFP
of all materials
PURCHASE REQUEST NUMBER: W16ROE-2123-0215-0001

| | |
|---|---|
| NET AMT | $2,038,500.00 |
| ACRN AB Funded Amount | $622,800.00 |
| ACRN AD Funded Amount | $1,415,700.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0003 | | 20,500 | Cubic Yard | $45.30 | $928,650.00 |

removal and disposal of
FFP
all material
PURCHASE REQUEST NUMBER: W16ROE-2123-0215-0001

| | |
|---|---|
| NET AMT | $928,650.00 |
| ACRN AA Funded Amount | $283,720.00 |
| ACRN AC Funded Amount | $644,930.00 |

FOB: Destination

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0004 | | 1 | | | NSP |

Insurance Procured by Contractor
FFP
(Section 00800, PARA 53)

| | |
|---|---|
| NET AMT | |
| Funded Amount | $0.00 |

FOB: Destination

Section 00700 - Contract Clauses

CLAUSES INCORPORATED BY REFERENCE

| | | |
|---|---|---|
| 52.202-1 Alt I | Definitions (Dec 2001) --Alternate I | MAY 2001 |
| 52.203-3 | Gratuities | APR 1984 |
| 52.203-5 | Covenant Against Contingent Fees | APR 1984 |
| 52.203-7 | Anti-Kickback Procedures | JUL 1995 |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity | JAN 1997 |
| 52.203-10 | Price Or Fee Adjustment For Illegal Or Improper Activity | JAN 1997 |
| 52.203-12 | Limitation On Payments To Influence Certain Federal Transactions | JUN 1997 |
| 52.204-4 | Printed or Copied Double-Sided on Recycled Paper | AUG 2000 |
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment | JUL 1995 |
| 52.211-13 | Time Extensions | SEP 2000 |
| 52.211-18 | Variation in Estimated Quantity | APR 1984 |
| 52.214-26 | Audit and Records--Sealed Bidding | OCT 1997 |
| 52.214-27 | Price Reduction for Defective Cost or Pricing Data - Modifications - Sealed Bidding | OCT 1997 |
| 52.214-28 | Subcontracting Cost Or Pricing Data--Modifications--Sealed Bidding | OCT 1997 |
| 52.214-29 | Order Of Precedence--Sealed Bidding | JAN 1986 |
| 52.219-8 | Utilization of Small Business Concerns | OCT 2000 |
| 52.219-9 Alt I | Small Business Subcontracting Plan (Jan 2002) Alternate I | OCT 2001 |
| 52.219-16 | Liquidated Damages-Subcontracting Plan | JAN 1999 |
| 52.222-3 | Convict Labor | AUG 1996 |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation | SEP 2000 |
| 52.222-6 | Davis Bacon Act | FEB 1995 |
| 52.222-7 | Withholding of Funds | FEB 1988 |
| 52.222-8 | Payrolls and Basic Records | FEB 1988 |
| 52.222-9 | Apprentices and Trainees | FEB 1988 |
| 52.222-10 | Compliance with Copeland Act Requirements | FEB 1988 |
| 52.222-11 | Subcontracts (Labor Standards) | FEB 1988 |
| 52.222-12 | Contract Termination-Debarment | FEB 1988 |
| 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations. | FEB 1988 |
| 52.222-14 | Disputes Concerning Labor Standards | FEB 1988 |
| 52.222-15 | Certification of Eligibility | FEB 1988 |
| 52.222-21 | Prohibition Of Segregated Facilities | FEB 1999 |
| 52.222-26 | Equal Opportunity | APR 2002 |
| 52.222-27 | Affirmative Action Compliance Requirements for Construction | FEB 1999 |
| 52.222-35 | Equal Opportunity For Special Disabled Veterans, Veterans of the Vietnam Era and Other Eligible Veterans | DEC 2001 |
| 52.222-36 | Affirmative Action For Workers With Disabilities | JUN 1998 |
| 52.222-37 | Employment Reports On Special Disabled Veterans, Veterans Of The Vietnam Era and Other Eligible Veterans | DEC 2001 |
| 52.223-6 | Drug Free Workplace | MAY 2001 |
| 52.223-14 | Toxic Chemical Release Reporting | OCT 2000 |
| 52.225-13 | Restrictions on Certain Foreign Purchases | JUL 2000 |

| | | |
|---|---|---|
| 52.226-1 | Utilization Of Indian Organizations And Indian-Owned Economic Enterprises | JUN 2000 |
| 52.227-1 | Authorization and Consent | JUL 1995 |
| 52.227-2 | Notice And Assistance Regarding Patent And Copyright Infringement | AUG 1996 |
| 52.228-1 | Bid Guarantee | SEP 1996 |
| 52.228-15 | Performance and Payment Bonds--Construction | JUL 2000 |
| 52.229-3 | Federal, State And Local Taxes | JAN 1991 |
| 52.229-5 | Taxes--Contracts Performed In U S Possessions Or Puerto Rico | APR 1984 |
| 52.232-5 | Payments under Fixed-Price Construction Contracts | MAY 1997 |
| 52.232-17 | Interest | JUN 1996 |
| 52.232-23 Alt I | Assignment of Claims (Jan 1986) - Alternate I | APR 1984 |
| 52.232-27 | Prompt Payment for Construction Contracts | FEB 2002 |
| 52.232-33 | Payment by Electronic Funds Transfer--Central Contractor Registration | MAY 1999 |
| 52.233-1 | Disputes | DEC 1998 |
| 52.233-3 | Protest After Award | AUG 1996 |
| 52.236-2 | Differing Site Conditions | APR 1984 |
| 52.236-3 | Site Investigation and Conditions Affecting the Work | APR 1984 |
| 52.236-5 | Material and Workmanship | APR 1984 |
| 52.236-6 | Superintendence by the Contractor | APR 1984 |
| 52.236-7 | Permits and Responsibilities | NOV 1991 |
| 52.236-8 | Other Contracts | APR 1984 |
| 52.236-9 | Protection of Existing Vegetation, Structures, Equipment, Utilities, and Improvements | APR 1984 |
| 52.236-10 | Operations and Storage Areas | APR 1984 |
| 52.236-11 | Use and Possession Prior to Completion | APR 1984 |
| 52.236-12 | Cleaning Up | APR 1984 |
| 52.236-13 | Accident Prevention | NOV 1991 |
| 52.236-15 | Schedules for Construction Contracts | APR 1984 |
| 52.236-17 | Layout of Work | APR 1984 |
| 52.236-21 | Specifications and Drawings for Construction | FEB 1997 |
| 52.236-26 | Preconstruction Conference | FEB 1995 |
| 52.242-13 | Bankruptcy | JUL 1995 |
| 52.242-14 | Suspension of Work | APR 1984 |
| 52.243-4 | Changes | AUG 1987 |
| 52.244-6 | Subcontracts for Commercial Items | MAY 2002 |
| 52.246-12 | Inspection of Construction | AUG 1996 |
| 52.249-2 | Termination For Convenience Of The Government (Fixed-Price) | SEP 1996 |
| 52.249-10 | Default (Fixed-Price Construction) | APR 1984 |
| 52.253-1 | Computer Generated Forms | JAN 1991 |
| 252.203-7001 | Prohibition On Persons Convicted of Fraud or Other Defense-Contract-Related Felonies | MAR 1999 |
| 252.203-7002 | Display Of DOD Hotline Poster | DEC 1991 |
| 252.204-7003 | Control Of Government Personnel Work Product | APR 1992 |
| 252.204-7004 | Required Central Contractor Registration | NOV 2001 |
| 252.205-7000 | Provisions Of Information To Cooperative Agreement Holders | DEC 1991 |
| 252.209-7000 | Acquisition From Subcontractors Subject To On-Site Inspection Under The Intermediate Range Nuclear Forces (INF) Treaty | NOV 1995 |
| 252.209-7004 | Subcontracting With Firms That Are Owned or Controlled By The Government of a Terrorist Country | MAR 1998 |

| | | |
|---|---|---|
| 252.225-7031 | Secondary Arab Boycott Of Israel | JUN 1992 |
| 252.226-7001 | Utilization of Indian Organizations and Indian-Owned Economic Enterprises-DoD Contracts | SEP 2001 |
| 252.236-7000 | Modification Proposals-Price Breakdown | DEC 1991 |
| 252.236-7001 | Contract Drawings, Maps, and Specifications | AUG 2000 |
| 252.236-7002 | Obstruction of Navigable Waterways | DEC 1991 |
| 252.243-7001 | Pricing Of Contract Modifications | DEC 1991 |
| 252.243-7002 | Requests for Equitable Adjustment | MAR 1998 |
| 252.247-7023 | Transportation of Supplies by Sea | MAR 2000 |
| 252.247-7024 | Notification Of Transportation Of Supplies By Sea | MAR 2000 |

CLAUSES INCORPORATED BY FULL TEXT

52.211-10 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)

The Contractor shall be required to (a) commence work under this contract within 5 calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than 50 (fifty) calendar days if both the Basic and Optional works are awarded.
If option not exercised, the completion of the work is thirty-five(35) days.

*The Contracting Officer shall specify either a number of days after the date the contractor receives the notice to proceed, or a calendar date.

(End of clause)

52.211-12 LIQUIDATED DAMAGES--CONSTRUCTION (SEP 2000)

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of $1,270.00 [Contracting Officer insert amount] for each calendar day of delay until the work is completed or accepted.

(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

(End of clause)

52.219-4 NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS (JAN 1999)

(a) Definition. HUBZone small business concern, as used in this clause, means a small business concern that appears on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration.

(b) Evaluation preference. (1) Offers will be evaluated by adding a factor of 10 percent to the price of all offers, except--

(i) Offers from HUBZone small business concerns that have not waived the evaluation preference;

(ii) Otherwise successful offers from small business concerns;

(iii) Otherwise successful offers of eligible products under the Trade Agreements Act when the dollar threshold for application of the Act is exceeded (see 25.402 of the Federal Acquisition Regulation (FAR)); and

(iv) Otherwise successful offers where application of the factor would be inconsistent with a Memorandum of Understanding or other international agreement with a foreign government.

(2) The factor of 10 percent shall be applied on a line item basis or to any group of items on which award may be made. Other evaluation factors described in the solicitation shall be applied before application of the factor.

(3) A concern that is both a HUBZone small business concern and a small disadvantaged business concern will receive the benefit of both the HUBZone small business price evaluation preference and the small disadvantaged business price evaluation adjustment (see FAR clause 52.219-23). Each applicable price evaluation preference or adjustment shall be calculated independently against an offeror's base offer.

These individual preference amounts shall be added together to arrive at the total evaluated price for that offer.

(c) Waiver of evaluation preference. A HUBZone small business concern may elect to waive the evaluation preference, in which case the factor will be added to its offer for evaluation purposes. The agreements in paragraph (d) of this clause do not apply if the offeror has waived the evaluation preference.

____ Offeror elects to waive the evaluation preference.

(d) Agreement. A HUBZone small business concern agrees that in the performance of the contract, in the case of a contract for

(1) Services (except construction), at least 50 percent of the cost of personnel for contract performance will be spent for employees of the concern or employees of other HUBZone small business concerns;

(2) Supplies (other than procurement from a nonmanufacturer of such supplies), at least 50 percent of the cost of manufacturing, excluding the cost of materials, will be performed by the concern or other HUBZone small business concerns;

(3) General construction, at least 15 percent of the cost of the contract performance incurred for personnel will be will be spent on the concern's employees or the employees of other HUBZone small business concerns; or

(4) Construction by special trade contractors, at least 25 percent of the cost of the contract performance incurred for personnel will be spent on the concern's employees or the employees of other HUBZone small business concerns.

(e) A HUBZone joint venture agrees that in the performance of the contract, the applicable percentage specified in paragraph (d) of this clause will be performed by the HUBZone small business participant or participants.

(f) A HUBZone small business concern nonmanufacturer agrees to furnish in performing this contract only end items manufactured or produced by HUBZone small business manufacturer concerns. This paragraph does not apply in connection with construction or service contracts.

(End of clause)

52.225-9 BUY AMERICAN ACT—CONSTRUCTION MATERIALS (MAY 2002)

(a) Definitions. As used in this clause--

Component means an article, material, or supply incorporated directly into a construction material.

Construction material means an article, material, or supply brought to the construction site by the Contractor or a subcontractor for incorporation into the building or work. The term also includes an item brought to the site preassembled from articles, materials, or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, that are discrete systems incorporated into a public building or work and that are produced as complete systems, are evaluated as a single and distinct construction material regardless of when or how the individual parts or components of those systems are delivered to the construction site. Materials purchased directly by the Government are supplies, not construction material.

Cost of components means--

(1) For components purchased by the Contractor, the acquisition cost, including transportation costs to the place of incorporation into the end product (whether or not such costs are paid to a domestic firm), and any applicable duty (whether or not a duty-free entry certificate is issued); or

(2) For components manufactured by the Contractor, all costs associated with the manufacture of the component, including transportation costs as described in paragraph (1) of this definition, plus allocable overhead costs, but excluding profit. Cost of components does not include any costs associated with the manufacture of the end product.

Domestic construction material means--

(1) An unmanufactured construction material mined or produced in the United States; or

(2) A construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of the same class or kind for which nonavailability determinations have been made are treated as domestic.

Foreign construction material means a construction material other than a domestic construction material.

United States means the 50 States and the District of Columbia, U.S. territories and possessions, Puerto Rico, the Northern Mariana Islands, and any other place subject to U.S. jurisdiction, but does not include leased bases.

(b) Domestic preference. (1) This clause implements the Buy American Act (41 U.S.C. 10a-10d) by providing a preference for domestic construction material. The Contractor shall use only domestic construction material in performing this contract, except as provided in paragraphs (b)(2) and (b)(3) of this clause.

(2) This requirement does not apply to the construction material or components listed by the Government as follows: [Contracting Officer to list applicable excepted materials or indicate "none"]

(3) The Contracting Officer may add other foreign construction material to the list in paragraph (b)(2) of this clause if the Government determines that

(i) The cost of domestic construction material would be unreasonable. The cost of a particular domestic construction material subject to the requirements of the Buy American Act is unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent;

(ii) The application of the restriction of the Buy American Act to a particular construction material would be impracticable or inconsistent with the public interest; or

(iii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities of a satisfactory quality.

(c) Request for determination of inapplicability of the Buy American Act. (1)(i) Any Contractor request to use foreign construction material in accordance with paragraph (b)(3) of this clause shall include adequate information for Government evaluation of the request, including--

(A) A description of the foreign and domestic construction materials;

(B) Unit of measure;

(C) Quantity;

(D) Price;

(E) Time of delivery or availability;

(F) Location of the construction project;

(G) Name and address of the proposed supplier; and

(H) A detailed justification of the reason for use of foreign construction materials cited in accordance with paragraph (b)(3) of this clause.

(ii) A request based on unreasonable cost shall include a reasonable survey of the market and a completed price comparison table in the format in paragraph (d) of this clause.

(iii) The price of construction material shall include all delivery costs to the construction site and any applicable duty (whether or not a duty-free certificate may be issued).

(iv) Any Contractor request for a determination submitted after contract award shall explain why the Contractor could not reasonably foresee the need for such determination and could not have requested the determination before contract award. If the Contractor does not submit a satisfactory explanation, the Contracting Officer need not make a determination.

(2) If the Government determines after contract award that an exception to the Buy American Act applies and the Contracting Officer and the Contractor negotiate adequate consideration, the Contracting Officer will modify the contract to allow use of the foreign construction material. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration is not less than the differential established in paragraph (b)(3)(i) of this clause.

(3) Unless the Government determines that an exception to the Buy American Act applies, use of foreign construction material is noncompliant with the Buy American Act.

(d) Data. To permit evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the Contractor shall include the following information and any applicable supporting data based on the survey of suppliers:

Foreign and Domestic Construction Materials Price Comparison

| Construction material description | Unit of measure | Quantity | Price (dollars) \1\ |
|---|---|---|---|
| Item 1 | | | |
| Foreign construction material.... | ..................... | ..................... | ..................... |
| Domestic construction material... | ..................... | ..................... | ..................... |
| Item 2 | | | |
| Foreign construction material.... | ..................... | ..................... | ..................... |
| Domestic construction material... | ..................... | ..................... | ..................... |

---

Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued).
List name, address, telephone number, and contact for suppliers surveyed. Attach copy of response; if oral, attach summary.
Include other applicable supporting information.

(End of clause)

52.236-1 PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization, work equivalent to at least forty percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government.

00800

## SECTION 00800
## SPECIAL PROVISIONS
## TABLE OF CONTENTS

PARAGRAPH TITLE PAGE

1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE) ........ **Error! Bookmark not defined.**
2. PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984) .. **Error! Bookmark not defined.**
3. SUBMITTAL OF WORK TO BE PERFORMED BY THE CONTRACTOR ........... **Error! Bookmark not defined.**
4. LIQUIDATED DAMAGES - CONSTRUCTION (APR 1984) ........ **Error! Bookmark not defined.**
5. CONTRACT DRAWINGS, MAPS AND SPECIFICATIONS (aug 2000) ............... **Error! Bookmark not defined.**
6. PHYSICAL CONDITIONS ........ **Error! Bookmark not defined.**
7. TIME EXTENSIONS ........ **Error! Bookmark not defined.**
8. LAYOUT OF WORK (APRIL 1984) ........ **Error! Bookmark not defined.**
9. DATUM AND BENCH MARKS ........ **Error! Bookmark not defined.**
10. ESTIMATED QUANTITIES ........ **Error! Bookmark not defined.**
11. VARIATION IN ESTIMATED QUANTITIES - DREDGING (JAN 1985) ............. **Error! Bookmark not defined.**
12. HEAD PROTECTION (HARD HATS) ........ **Error! Bookmark not defined.**
13. SIGNAL LIGHTS (FEB 1983) ........ **Error! Bookmark not defined.**
14. REVERSE SIGNAL ALARM ........ **Error! Bookmark not defined.**
15. FLOATING PIPELINES ........ **Error! Bookmark not defined.**
16. MISPLACED MATERIAL (JAN 1965) ........ **Error! Bookmark not defined.**
17. CONTINUITY OF WORK (APR 1965) ........ **Error! Bookmark not defined.**
18. FINAL EXAMINATION AND ACCEPTANCE (APR. 1965) ........ **Error! Bookmark not defined.**
19. SHOALING (APR 1965) ........ **Error! Bookmark not defined.**
20. INSPECTION (APR 1965) ........ **Error! Bookmark not defined.**
21. FIELD OFFICE ........ **Error! Bookmark not defined.**
22. ACCOMMODATIONS FOR GOVERNMENT INSPECTORS ...... **Error! Bookmark not defined.**
23. EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (1985 JAN OCE) ........ **Error! Bookmark not defined.**
24. FUEL USAGE ........ **Error! Bookmark not defined.**
25. OIL TRANSFER OPERATIONS ........ **Error! Bookmark not defined.**
26. WAGE RATES ........ **Error! Bookmark not defined.**
27. LABOR-ADDITIONAL REQUIREMENTS ........ **Error! Bookmark not defined.**
28. NOTICE TO MARINERS ........ **Error! Bookmark not defined.**

29. ENVIRONMENTAL LITIGATION (1974 NOV OCE).... **Error! Bookmark not defined.**
30. NOISE LEVEL CRITERIA ........ **Error! Bookmark not defined.**
31. CERF IMPLEMENTATION (83 Jun 1 OCE)........ **Error! Bookmark not defined.**
32. THE SEAGOING BARGE ACT (46 USC 395 ET SEQ.). **Error! Bookmark not defined.**
33. PERFORMANCE EVALUATION OF CONTRACTOR (APR 1984) ... **Error! Bookmark not defined.**
34. PRICING OF ADJUSTMENTS (APR 1984)........ **Error! Bookmark not defined.**
35. PRECONSTRUCTION CONFERENCE ........ **Error! Bookmark not defined.**
36. BID GUARANTEE ........ **Error! Bookmark not defined.**
37. QUANTITY SURVEYS........ **Error! Bookmark not defined.**
38. SAFETY SIGN ........ **Error! Bookmark not defined.**
39. PROJECT SIGN ........ **Error! Bookmark not defined.**
40. EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS .... **Error! Bookmark not defined.**
41. SCHEDULING AND DETERMINATION OF PROGRESS ........ **Error! Bookmark not defined.**
42. SPECIAL PROHIBITION ON EMPLOYMENT ........ **Error! Bookmark not defined.**
43. SUPERINTENDENCE OF SUBCONTRACTS (JAN 1965) ........ **Error! Bookmark not defined.**
44. PROCEDURES FOR SUBMISSION AND PAYMENT OF ALL CONTRACT PAYMENTS ........ **Error! Bookmark not defined.**
45. SUBMISSION OF CLAIMS ........ **Error! Bookmark not defined.**
46. SAFETY REQUIREMENTS FOR OPERATIONS ADJACENT TO POWER LINES. **Error! Bookmark not defined.**
47. CRANE AND DRAGLINE SAFETY REQUIREMENTS **Error! Bookmark not defined.**
48. Operator Qualifications for Floating Cranes and Floating Derricks (Safety and Health Requirement, EM385-1-1, Section 16.C) ........ **Error! Bookmark not defined.**
49. ACCIDENT PREVENTION PLAN ........ **Error! Bookmark not defined.**
50. ALTERATIONS IN CONTRACT (APR 1984)........ **Error! Bookmark not defined.**
51. BID GUARANTEE ........ **Error! Bookmark not defined.**
52. CONTINUING CONTRACTS (1985 JAN HQ USACE).. **Error! Bookmark not defined.**

# SECTION 00800

## SPECIAL PROVISIONS

### 1. COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (1965 APRIL OCE)

a. The Contractor will be required to commence operations under this contract within **five (5)** calendar days after the date of receipt by him of the notice to proceed, to prosecute said work diligently and to complete the Basic Work ready for use not later than **thirty-five (35)** calendar days after the date of receipt by him of the notice to proceed, and the Optional Work (if awarded) not later than **fifteen (15)** additional calendar days. Should the total quantity of material to be paid for and actually removed under the contract exceed the limit established in the clause entitled "Variations in Estimated Quantities," additional time will be allowed at the rate of **one (1)** calendar day for each **1,600** cubic yards in excess of the established limit. The time stated for completion shall include final cleanup. (EFARS 52.2/9110 (a))

The work is estimated to cost between $1,000,000.00 and $5,000,000.00. The estimated volume to be dredged in the Basic Work is 55,000 cubic yards, and 23,300 cubic yards in the Optional Work (if awarded).

b. **THE CONTRACTOR IS REQUIRED TO COMPLY WITH THE FOLLOWING DREDGING/PLACEMENT RESTRICTIONS AND MONITORING REQUIREMENTS:**

DREDGING/PLACEMENT RESTRICTIONS IMPOSED BY THE NEW JERSEY WATER QUALITY CERTIFICATE AND COASTAL ZONE MANAGEMENT CONSISTENCY (See Section 00900, Attachment F).

### 2. PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization and equipment, work equivalent to at least forty (40) percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performance of the work, the Contractor requests a reduction and the Contracting Officer and/or his Representative determines that the reduction would be to the advantage of the Government. (FAR 52.236-01)

### 3. SUBMITTAL OF WORK TO BE PERFORMED BY THE CONTRACTOR

The Contractor shall furnish the Contracting Officer and/or his Representative, within five (5) days after award, items of work he will perform with his own forces and the estimated cost of those items. The percentage of work that must be performed by the Contractor is stated in paragraph H-2, entitled: "PERFORMANCE OF WORK BY THE CONTRACTOR."

**4. LIQUIDATED DAMAGES - CONSTRUCTION (APR 1984)**

a. If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of **$1,270.00** for each calendar day of delay until the work is completed or accepted.

b. If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.

**5. CONTRACT DRAWINGS, MAPS AND SPECIFICATIONS (AUG 2000)**

a. The Government will provide to the contractor, without charge, one set of contract drawings and specifications, except publications incorporated into the technical provisions by reference, in electronic or paper media as chosen by the contracting officer.

b. The Contractor shall-

(1)Check all drawings furnished immediately upon receipt;

(2) Compare all drawings and verify the figures before laying out the work;

(3) Promptly notify the Contracting officer of any discrepancies;

(4) Be responsible for any errors that might have been avoided by complying with this paragraph (b).

(5) Reproduce and print contract drawings and specifications as needed.

c. In general—

(1) Large-scale drawings shall govern small scale drawings; and

(2) The Contractor shall follow figures marked on drawings in preference to scale measurements.

d. Omissions from the drawings or specifications or the misdescription of details of work that are manifestly necessary to carry out the intent of the drawings and specifications, or that are customarily performed, shall not relieved the contractor from performing such omitted or misdescribed details of the work. The contractor shall perform such details as if fully and correctly set forth and described in the drawings and specifications.

e. The work shall conform to the specifications and the contract drawings identified on the following index of drawings:

| CONTRACT DRAWING | DESCRIPTION | DATE |
|---|---|---|
| File Number 858 (Sheets 1 - 4) | Maintenance Dredging of Newark Bay Main Channel and Port Newark Channels of Newark Bay, Hackensack and Passaic Rivers New | March 2002 |



G007943

G01010 09241

Jersey Federal Navigation Project

| | |
|---|---|
| 1 | Index |
| 2 | Layout of Dredging Area |
| 3 | Soundings of Dredging Area |
| 4 | Soundings of Dredging Area |

f. The Contractor shall check all drawings furnished him immediately upon their receipt and shall promptly notify the Contracting Officer or Contracting Officer's Representative of any discrepancies. Figures marked on drawings shall in general be followed in preference to scale measurements unless dimensions are specified. Large-scale drawings shall in general govern over small-scale drawings. Information and data provided in contract specifications shall govern over similar information and data specified in contract drawings. The Contractor shall compare all drawings and verify the figures before laying out the work and will be responsible for any errors which might have thereby been avoided (DOD FAR Suppl. 52.236-7002).

## 6. PHYSICAL CONDITIONS

The information and data furnished or referred to below are not intended as representations or warranties but are furnished for information only. It is expressly understood that the Government will not be responsible for the accuracy thereof or for any deduction, interpretation or conclusion drawn by the Contractor.

a. WEATHER CONDITIONS. The site of the work is not exposed to severe wind and wave action and the Contractor's operations are not likely to be affected by ordinary storms. Real-time data are available on the World Wide Web at http://www.nws.fsu.edu/B/buoy?station=45N.

(1) Fog. An examination of the records of the U.S. Weather Bureau at Newark International Airport, New Jersey, discloses an average of 31 days per year on which dense fog (visibility of 1/4 mile or less) occurs in the New York Harbor area. The maximum number of days in which dense fog occurred in any year was 45 in 1959. The maximum number of days in which dense fog occurred in any month was 4 days in June.

Fog Information for 1999 from Port Series, based on Newark

| Month | Heavy Fog Days (visibility < 1.4 mile) |
|---|---|
| JAN | 2.1 |
| FEB | 1.6 |
| MAR | 1.4 |
| APR | 1.1 |
| MAY | 1.6 |
| JUN | 1.1 |
| JUL | 0.4 |
| AUG | 0.5 |
| SEP | 0.8 |
| OCT | 1.9 |
| NOV | 1.7 |
| DEC | 1.7 |

(2) Winds. Wind conditions for Newark International Airport, based on historical data maintained by the National Weather Service's National Buoy Center[1] (http://www.ndbc.noaa.gov/station_page.phtml?$station=44025) are as follows:

Wind conditions for Newark International Airport, based on 55 years of data!

| Month | Average Wind Speed (MPH) | Peak One-Minute Wind Gust (MPH) |
|---|---|---|
| JAN | 11.2 | 52 |
| FEB | 11.5 | 46 |
| MAR | 11.9 | 45 |
| APR | 11.2 | 50 |
| MAY | 10 | 50 |
| JUN | 9.5 | 58 |
| JUL | 8.9 | 52 |
| AUG | 8.7 | 46 |
| SEP | 9 | 51 |
| OCT | 9.4 | 48 |
| NOV | 10.2 | 82 |
| DEC | 10.8 | 55 |

Weather conditions exceeding in severity the conditions described above or average wind speeds over 30 miles per hour (26 kts) will be considered unusually severe weather if delays are caused thereby to operations under the contract.

b. ICE. Icing within the project vicinity is not anticipated. However, in the event that icing does occur, this will be considered to be unusually severe weather.

c. TIDES. The mean range of tides, mean range of spring tides, and irregular fluctuations due to wind and atmospheric pressure for each of the dredging areas are shown in the table below:

Tides, Based on Bayonne Bridge, from 2001 Tide Tables

| | | |
|---|---|---|
| Mean Tide Level | 2.73 | ft |
| Mean Range | 5 | ft |
| Spring Range | 6.05 | ft |

Tidal Currents Based on Bayonne Bridge, from 2001 Tidal Current Tables

| | | |
|---|---|---|
| Max. Flood | 1.9 | kts |
| Max. Ebb | 1.4 | kts |

d. TRANSPORTATION FACILITIES AND CHANNEL TRAFFIC. A controlling depth of at least 40 feet at mean low water is accessible to the project site.

[1] Based on NDBC Buoy 44025, which is 33 nm south of Islip, NY.



G007945

G01010 09243

e. BRIDGE AND UTILITY CROSSINGS. A search of the regulatory files within New York District, Corps of Engineers disclosed the existence of the following submarine pipelines and/or structures:

| ITEM NO. | PERMIT NO. | DESCRIPTION |
|---|---|---|
| 1 | 800.6 | 6 October 1952: (2) 8" DIA. pipes and (1) 12" DIA. pipe in Newark Bay - ESSO Standard Oil Co., between Howland Hook, Staten Island, NY and xxx. El. 50' below MLW. |
| 2 | 1522-15 | 5 March 1974: 8" DIA. pipeline (Exxon Co.) in Hudson & Union Counties, NJ; connecting Bayonne, NJ and xxx by the C.R.R. Bridge. El. 50' below MLW. |
| 3 | 1522-15 | 12 October 1973: 14" DIA. pipeline (Amerada Hess Corp.) between cities of Bayonne and Newark, Hudson and Essex Counties, NJ. North of and parallel to Lehigh Valley R.R. Bridge. El. 42' below MLW. |
| 4 | 1522-15 | 7 October 1980: 12" DIA. pipe for Texas Pipeline Co. between Bayonne NJ and Port Ivory, NY. El. 42' below MLW. |
| 5 | 2610A & 610B | 4 September 1943: (2) War Emergency Oil Pipes between Howland Hook, Richmond County, NY and Bayonne, Hudson County, NJ. El. 42' below MLW. |
| 6 | 4019 | 9 April 1945: (7) submarine cables between the cities of Elizabeth and Bayonne, NJ (The Central R.R. co. of NJ - Aerial Cable - Submarine Cable & Air line). El. 45' below MLW. |
| 7 | 4130A | 31 December 1971: 12" DIA. pipeline rerouting part of existing Texas Pipe Co. |

| | | |
|---|---|---|
| | | line, marked as 1507-24 between Howland Hook, Staten Island, NY and Bayonne, NJ. El. 50' below MLW. |
| 8 | 4345 | 4 December 1952: (2) 8" DIA. pipes marked as 800.6 Newark Bay-Tidewater Pipe Co.-Submarine Pipeline between Staten Island, NY and Bayonne, NJ. |
| 9 | 4888 | 2 September 1955: Cathodic protection for Item 2 of this list. |
| 10 | 5639 | 8 January 1959: 12" DIA. pipe lowered in Newark Bay at Best Foods Inc. Warf at Bayonne, Hudson County, NJ. El. 42.5' below MLW. |
| 11 | 5658 | 5 February 1959: 12" DIA. pipe crossing modified by Permit No. 4130A on 31 December 1971 (see Item 7 of this list). |
| 12 | 6364 | 12 January 1962: (2) 8" DIA. pipes marked as "285/702 Newark Bay-Public Service Electric and Gas Co.-Submarine Pipeline between Newark and Bayonne". South from and parallel to Lehigh Valley R.R. Bridge. El. 52' below MLW. |
| 13 | 7399 | 30 January 1967: Marked as "1507-24 Newark Bay-Texas Pipeline Co." protective cover over pipeline in Bayonne at its crossing with Newark Bay Channel at mile 0.6. El. 38' below MLW. |
| 14 | 8800 | 19 February 1974: Temporary pipes, previously connected to 1522-15, were removed. Check current status. |
| 15 | Appl. # 98-01910-J2 | Submarine fiber optic communication cable by Metromedial Fiber Network Services, Inc. |
| 16 | 8417 | Temporary 27-inch diameter pipeline |

| | | |
|---|---|---|
| | | approximately 13,000 ft. long at a min depth of 35 ft. in Newark, NJ, by Atlantic, Gulf and Pacific Co. |
| 17 | 4130/5 | Submarine oil pipeline between Howland Hook, SI, NY and Bayonne, NJ by Defense Plant Corp. |
| 18 | 1507-24 | Temporary submerged pipeline and dolphins in the vicinity of the Lehigh Valley RB by Gahagan Dredging Corp. |
| 19 | 11610 | 12-inch petroleum products pipeline between Bayonne, NJ and Port Ivory, NY by The Texas Pipeline Co. |
| 20 | 1955 | (2) 12-3/4" OD pipelines between Linden, NJ to SI, NY to Bayonne, NJ by The Texas Pipeline Co. |
| 21 | 4317 | 12" diameter pipeline between SI, NY and Elizabeth, NJ by Esso Standard Oil Co. |
| 22 | 14649 | 12" diameter natural gas pipeline between Elizabeth and Bayonne, NJ by Public Service Electric & Gas Co. |
| 23 | 12552 | Submarine cables cathodic protecttion at Bayonne NJ by The Texas Pipeline Co. |
| 24 | 4017 | Aerial power cable and (7) submarine cables at a min depth of 45 ft below MLW between Elizabeth and Bayonne, NJ by The Central Railroad Co of NJ |
| 25 | 8739 | 14" submarine pipeline in a trench at a min depth of 42 ft. below MLW between Bayonne and Newark, NJ by Amerada Hess Corp. |
| 26 | 4411 | Submarine cable on natural bottom between Bergen Point, Bayonne, NJ and Light Tower No. 12A, thence to Light Tower No. 2. |

| | | |
|---|---|---|
| 27 | 7741 | 12" pipeline at a min depth of 50 ft. below MLW between Howland Hook, SI, NY and Bayonne, NJ by the Texas Pipeline Co. |

f. OBSTRUCTION OF CHANNEL. The Government will not undertake to keep the area free from vessels or other obstructions except to the extent of such regulations, if any, as may be prescribed by the secretary of the army in accordance with the provisions of Section 7 of the Rivers and Harbors Act in such manner as to obstruct navigation as little as possible, and in case the contractor's plant so obstructs the channel as to make difficult or endanger the passage of vessels, said plant shall be promptly moved on the approach of any vessel to such an extent as may be necessary to afford a practicable passage. Upon the completion of the work the Contractor shall promptly remove his plant, including ranges, buoys, piles and other marks placed by him under the contract in navigable waters or on shore.

g. NAVIGATION AIDS. The Contractor shall not relocate or move any aids to navigation that have been established by the U.S. Coast Guard. If it becomes necessary to have any aids to navigation moved in order to complete dredging operations under this contract, the Contractor shall notify the appropriate Coast Guard Office, with a copy to the Contracting Officer and/or his Representative, not less than 15 days prior to the need for movement. The Contractor shall notify the appropriate Coast Guard Office of the approximate time of completion of dredging.

h. LOCATION. The site of the work to be performed under these specifications is the Newark Bay Federal Navigation Channel, located between Bayonne and Newark, NJ, approximately two miles northward from the confluence with the Kill Van Kull Channel.

i. LAYING OF SUBMERGED PIPELINES AND OBSTRUCTIONS OF CHANNEL. Should it become necessary in the performance of this contract to close a channel to lay submerged pipeline across a navigable channel, the Contractor shall notify the Contracting Officer or Contracting Officer's Representative in writing to be received in the District office at least

ten working days prior to the desired closure date. This notification shall furnish the following:

(1) Location (Channel Centerline Stationing) and depth (above the top of the pipeline) at which the submerged line will be placed;

(2) The desired length of time the channel is to be closed for installation of the pipeline;

(3) The date and hour placement or removal will commence;

(4) The date and hour of anticipated completion; and

(5) The name and telephone number of the person to be contacted for information and response to any emergency condition.

The Coast Guard has indicated that the requirements of navigation may make it necessary to establish times other than those requested. IT SHALL BE THE CONTRACTOR'S RESPONSIBILITY TO COORDINATE HIS PLANS WITH THE COAST GUARD SUFFICIENTLY IN ADVANCE OF THE PLANNED CLOSING TO PREVENT DELAY TO THE DREDGING OPERATIONS AND COMPLY WITH THE COAST GUARD REQUIREMENTS.

j. BRIDGE-TO-BRIDGE RADIO-TELEPHONE EQUIPMENT: In order that radio-telephone communication may be made with passing vessels, all dredges engaged in work under the contract shall be equipped with and operate bridge-to-bridge radio-telephone equipment on VHF Channel 13 (156.65 MHz with low power output having a communication range of approximately ten (10) miles). The Federal Communication Commission has approved the frequency.

**7. TIME EXTENSIONS**

Time extensions for contract changes will depend upon the extent, if any, by which the changes cause delay in completion of the various elements of construction. The change order granting the time extension may provide that the contract completion date will be extended only for those specific elements related to the changed work and that the remaining contract completion dates for all other portions of the work will not be altered. The change order also may provide an equitable readjustment of liquidated damages under the new completion schedule.

**8. LAYOUT OF WORK (APRIL 1984)**

The Government will provide the basic horizontal control data (coordinated triangulation stations) in the area. The Contractor shall compute and establish in the field all range points required for the proper discharge of his functions. The Contractor shall be responsible for the accuracy of the range points and its computations. The Contractor shall furnish, at his own expense, all stakes, templates, platforms, equipment,

range markers, tide staffs and labor as may be required in laying out any part of the work. The Contractor will be held responsible for the execution of the work to such lines and grades as required or indicated by the Contracting Officer or his representative. It shall be the responsibility of the Contractor to maintain and preserve all established stakes, markers...etc. The Contractor may be required to suspend dredging at any time when for any reason the gauges or ranges cannot be seen or properly followed. (EFARS 52.2/9110(c)

**9. DATUM AND BENCH MARKS**

The plane of reference of mean low water as used in these specifications is that determined by the following benchmark and tide gauges:

**BENCH MARK STAMPING:** NB25A 70

**NJM**

| | NAD27 | NAD83 |
|---|---|---|
| **North** | 669516.330 | 669284.023 |
| **East** | 2145604.100 | 591598.771 |

**ELEVATION:** 9.70 (NGVD 1929)

**AGENCY/DISK TYPE:** U.S.ARMY BRONZE DISK

**SETTING CLASSIFICATION:** Concrete Abutment

The contractor may contact the New York District Survey Section at (212) 264-0180 for assistance in establishing the location of the bench marks and the tide gages.

**10. ESTIMATED QUANTITIES**

The total estimated quantities of material necessary to be removed from the specified limits to complete the work described in this specifications are computed from the volume computations of the condition survey performed in the project area in March 2002.

These volumes were computed as follows:

| | Basic Work | Optional Work |
|---|---|---|
| Channel to Grade | 35,215 | 14,165 |
| Channel Overdepth | 10,585 | 5,865 |
| Slope to Grade | 2,940 | 1,350 |
| Slope Overdepth, | 1,030 | 795 |
| | ------------ | -------------- |
| Total Available | 49,770 | 22,175 |
| Expected Shoaling by July 2002 | 5,230 | 1,125 |
| | ------------ | -------------- |
| Estimated Contract Quantity | 55,000 | 23,300 |

**The Government will survey the project prior to starting work.**

Above estimated quantities were computed from the data shown on the contract drawings. The quantities that may be removed and paid for will be computed by the Triangulated Irregular Network (TIN) method or average end area method.

## 11. VARIATION IN ESTIMATED QUANTITIES - DREDGING (JAN 1985)

Where the quantity of a pay item in this contract is an estimated quantity and where the actual quantity of material within the required dredging prism varies more than fifteen percent (15%) above or below the stated estimated quantity within the required dredging prism, an equitable adjustment in the contract unit price will be made upon the demand of either party. The equitable adjustment will be based upon any increase or decrease in costs due solely to the variations above one-hundred fifteen percent (115%) or below eighty-five percent (85%) of the estimated quantity. An adjustment in the contract unit price will also apply to that part of the actual quantity of allowable overdepth material above one-hundred fifteen percent (115%) or below eighty-five percent (85%) of the estimated quantity. (EFARS 52.2/9110(1))

## 12. HEAD PROTECTION (HARD HATS)

**THE ENTIRE WORK SITE UNDER THIS CONTRACT IS DESIGNATED AS A HARD HAT AREA.** The Contractor shall post the area in accordance with the requirements of paragraph 07.C.03, EM 325-1-1, and shall ensure that all prime and subcontractor personnel, vendors, and visitors utilize hard hats while within the project area. (DO 385-1-3 4 Nov. 77)

## 13. SIGNAL LIGHTS (FEB 1983)

The Contractor shall display signal lights and conduct his operations in accordance with the General Regulations of the Coast Guard governing lights and day signals to be displayed by towing vessels with tows on which no light signals can be

displayed. Vessels working on wrecks, dredges, and vessels engaged in laying cables or pipe or in submarine or bank protection operations, lights to be displayed on dredge pipelines, and day signals to be displayed by vessels of more than 65 feet in length moored or anchored in a fairway or channel, and the passing by other vessels of floating plant working in navigable channels, as approved by the Commandant, U.S. Coast Guard with respect to vessels on the high seas (33 CAR 81 App. A-72 COLREGS, Part C), vessels in inland waters (33-CFR 93.18 - 93.31a), and vessels in western rivers (33 CFR 95.5.51 - 95.70)), as applicable. (DAEN-PRP Ind dtd. 12 Sep. 83)

**14. REVERSE SIGNAL ALARM**

a. All construction equipment, except light service trucks, panels, pickup trucks, station wagons, crawler-type cranes, power shovels and draglines, whether moving alone or in combination shall be equipped with reverse signal alarms. The alarm shall be mounted on the rear of the equipment and shall be protected or constructed as to withstand severe wear and tear, adverse weather and unfavorable environmental working conditions and shall be certified by the manufacturer to fully meet the following performance standards.

b. The alarm shall produce a relatively pure tone which shall peak within the American National Stds. Inst. standard octave pass band of 600 to 2400 cycles per second and shall produce a 0.2 to 0.5 second audible warning within the initial three (3) feet of backward movement of the vehicle on which it is mounted and at regular intervals, not to exceed three (3) seconds throughout the backward movement. The alarm shall automatically stop when backward movement ceases. The sound intensity of the alarm shall range from and not exceed 90-100 db (decibels) at a horizontal distance of five feet from the alarm.

c. Actuation of the alarm shall be automatic by direct connections to any part of the equipment that moves or acts in a manner distinctive only to the rearward movement of the vehicle with no manual controls of any kind between the source of actuation and the alarm. Where application of this requirement to specific types of the equipment has impractical application, other means of actuation may be used upon written approval of the Contracting Officer and/or his Representative or his representative.

d. The use of the alarm shall be in the addition to prescribed requirements for signalmen.

**15. FLOATING PIPELINES**

Floating pipelines, used as access ways, shall be equipped with walkways and guardrails. In accordance with EM 385-1-1, the walkway shall be securely anchored to the pipeline and a guardrail equivalent in strength to a wood rail 2 in. x 4 in. shall be provided on at least one side of the walkway and shall

be secured to uprights at intervals of not more then 8 feet and of not less than 36 inches, nor more than 42 inches in height above the walkway. Floating pipelines not equipped with walkways shall be barricaded to positively prevent personal access.

**16. MISPLACED MATERIAL (JAN 1965)**

Should the Contractor during the progress of the work, lose, dump, throw overboard, sink, or misplace any material, plant, machinery, or appliance, which in the opinion of the Contracting Officer and/or his Representative may be dangerous to or obstruct navigation, the Contractor shall recover and remove the same with the utmost dispatch. The Contractor shall give immediate notice, with description and location of such obstructions, to the Contracting Officer and/or his Representative or inspector, and when required shall mark or buoy such obstruction until the same are removed. Should he refuse, neglect, or delay compliance with the above requirements, such obstructions may be removed by the Contracting Officer and/or his Representative, and the cost of such removal may be deducted from any money due or to become due to the Contractor, or may be recovered under his bond. The liability of the Contractor for the removal of a vessel wrecked or sunk without fault or negligence shall be limited to that provided in Sections 15, 19, and 20 of the Rivers and Harbors Act of March 3, 1899 (33 USC. 410 et seq.) (DOD FARS SUPPL. 52.236-7006).

**17. CONTINUITY OF WORK (APR 1965)**

No payment will be made for work done in any area designated by the Contracting Officer and/or his Representative until the full depth required under the contract is secured in the whole of such area, unless prevented by ledge rock; nor will payment be made for excavation in any area not adjacent to and in prolongation of areas where full depth has been secured except by decision of the Contracting Officer or Contracting Officer's Representative. Should any such nonadjacent area be excavated to full depth during the operations carried on under the contract, payment for all work therein may be deferred until the required depth has been made in the area intervening. The Contractor may be required to suspend dredging at any time when for any reason the gauges or ranges cannot be seen or properly followed. (EFARS 52.2/9110(C)

**18. FINAL EXAMINATION AND ACCEPTANCE (APR. 1965)**

a. As soon as practicable after the completion of the entire work such work will be thoroughly examined at the cost and expense of the Government by sounding or by sweeping, or both, as determined by the Contracting Officer and/or his

Representative. Should any shoals, lumps, or other lack of contract depth be disclosed by this examination the Contractor will be required to remove same by dredging at the contract rate for dredging or by other method approved by the contracting officer, but if the bottom is soft and the shoal areas are small and form no material obstruction to navigation, the removal of such shoal may be waived by the discretion of the Contracting Officer and/or his Representative. The Contractor or his authorized representative will be notified when soundings and/or sweepings are to be made, and will be required to accompany the survey party. When the area is found to be in a satisfactory condition, it will be accepted finally. Should more than two soundings or sweeping operations by the Government over an area be necessary by reason of work for the removal of shoals disclosed at a prior sounding or sweeping operations, this work will be charged against the Contractor. The rate for each day in which the Government plant is engaged in such sounding or sweeping operations and/or is en route to or from the site or held, for the Contractor's convenience, at or near the site for these operations shall be $1,850 except on Saturday, Sunday and Holidays when the rate shall be $2,125.

b. Final acceptance of the whole or a part of the work and the deductions or corrections of deductions made thereon will not be reopened after having once been made, except on evidence of collusion, fraud, or obvious error, and the acceptance of a completed section shall not change the time of payment of the retained percentages of the whole or any part of the work.

c. The entire area within the contract limits will be surveyed for final examination and acceptance.

**19. SHOALING (APR 1965)**

If, before the contract is completed, shoaling occurs in any section previously accepted, including shoaling in the finished channel, because of the natural lowering of the side slopes, re-dredging at the contract price, within the limit of available funds, may be done if agreeable to both the Contractor and the Contracting Officer and/or his Representative.

**20. INSPECTION (APR 1965)**

The presence of the inspector shall not relieve the Contractor of the responsibility for the proper execution of the work in accordance with the specifications. The Contractor will be required:

a. To furnish, on the request of the Contracting Officer and/or his Representative or any inspector, the use of such boats, boatmen, laborers, a part of the ordinary and usual equipment and crew of the dredging plant as may be reasonably necessary in inspecting and supervising the work. However, the Contractor will not be required to furnish such facilities for the surveys prescribed in the clause H-18, entitled: "Final Examination and Acceptance."

b. To furnish, on the request of the Contracting Officer or the Contracting Officer's Representative or any inspector, suitable transportation from all points on shore designated by the Contracting Officer and/or his Representative to and from the various pieces of plant and to and from the placement area. Should the Contractor refuse, neglect, or delay compliance with these requirements, the specific facilities may be furnished and maintained by the Contracting Officer or Contracting Officer Representative, and the cost thereof will be deducted from any amounts due or to become due to the Contractor.

## 21. FIELD OFFICE

a. The Contractor shall provide at the job site a separate 40-foot by 12-foot field office for the exclusive use by the Government representatives. The Contracting Officer or his representative will designate the desired location. The trailer shall be well constructed and properly ventilated and shall contain a closet and door, windows which shall be capable of being locked, one (1) desk and one (1) file cabinet which can be locked, two (2) chairs, telephone services, one (1) plan rack and drawing board with stool. The furniture may be of temporary nature. The Contractor shall also provide drinking water, electricity, heat, toilet facilities, and janitorial and maintenance services. The field office shall be removed from the project site when and as directed by the Contracting Officer.

b. No separate payment will be made for providing the above accommodations and all costs in connection therewith will be considered the obligation of the Contractor.

## 22. ACCOMMODATIONS FOR GOVERNMENT INSPECTORS

The Contractor shall furnish regularly to Government inspectors onboard the dredge or other craft upon which they are employed a suitable separate room for an office. The room shall be fully equipped and maintained to the satisfaction of the Contracting Officer and/or his Representative; it shall be properly heated, ventilated, and lighted, and shall have a desk which can be locked, and a chair for each inspector, and washing conveniences. In addition, the Contractor shall provide a suitable sleeping area for use by the Government inspector when weather or sea conditions preclude safe transfer to shore. The entire cost to the Contractor for furnishing, equipping and maintaining the foregoing accommodations shall be included in the contract price. If the Contractor fails to meet these requirements, the Contracting Officer and/or his Representative will secure the

facilities referred to above, and the cost thereof will be deducted from payments to the Contractor.

**23. EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (1985 JAN OCE)**

a. Allowable costs for construction equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data when the Government can determine both ownership and operating costs for each piece of equipment or equipment groups of similar serial and series from the contractor's accounting records. When both ownership and operating costs cannot be determined from the contractor's accounting records, equipment costs shall be based upon the applicable provision of EP 1110-1-8, "Construction Equipment Ownership and Operating Expense Schedule," Region I.

Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the contracting officer. For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule. For forward pricing, the schedule effect at the time of negotiations shall apply. For retrospective pricing, the schedule in effect at the time the work was performed shall apply.

b. Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and FAR 31.205-36 substantiated by certified copies of paid invoices. Rates for equipment rented from an organization under common control, lease-purchase or sale-leaseback arrangements will be determined using the schedule except that rental costs leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated leases are allowable. Costs for major repairs and overhaul are unallowable.

c. When actual equipment costs are proposed and the total amount of the pricing action is over $25,000, cost or pricing data shall be submitted on Standard Form 1411, "Contract Pricing Proposal Cover Sheet." By submitting cost or pricing data, the contractor grants to the contracting officer or an authorizing representative the right to examine those books, records, documents and other supporting data that will permit evaluation of the proposed equipment costs. After price agreement the contractor shall certify that the equipment costs or pricing data submitted are accurate, complete and current. (EFARS 52.2/9108(f))

**24. FUEL USAGE**

The Contractor shall furnish the Contracting Officer and/or his Representative a report, to be received on or before the last day of the calendar month, listing the totals of fuels consumed by the dredging plant, supporting vessels, and other construction equipments. The report shall list the quantities of different fuels separately. The report shall cover the period from the 25th of the preceding month to the 25th of the current month.

**25. OIL TRANSFER OPERATIONS**

The Contractor shall assure that oil transfer operations to or from his plant comply with all Federal, state, municipal laws, codes and regulations (See attachment I of Section 00900 for regulation on "Oil and Hazardous Material Transfer Operations" - 33 CFR 156). Particular attention is invited to 33 CFR Subchapter O, Pollution. The Contractor shall incorporate in the accident prevention program (Section 00800 S-3), submitted in compliance with Section 00700, contract clause "ACCIDENT PREVENTION," sufficient information to demonstrate that all fuel transfers will be made in compliance with 33 CFR 156 and any other applicable laws, codes and regulations. (NAP-1/81)

**26. WAGE RATES**

The attached schedule of wage rates contains rates applicable to all work under this contract (see Section 00900, Attachment B).

**27. LABOR-ADDITIONAL REQUIREMENTS**

Fringe benefits statement: The method of payment of applicable fringe benefits will be indicated on DD From 879, Statement of Compliance, and attached to each weekly payroll.

**28. NOTICE TO MARINERS**

The Contractor shall, prior to commencement of work, notify the 3rd Coast Guard District, Aids to Navigation Officer, of his proposed operations including location and duration of operations and request that the information be published in the "Notice to Mariners." This notification must be in sufficient time so that it appears in the Notice at least **15 days** prior to the commencement of the dredging operation.

**29. ENVIRONMENTAL LITIGATION (1974 NOV OCE)**

a. If the performance of all or any part of the work is suspended, delayed, or interrupted due to an order of a court of competent jurisdiction as a result of environmental litigation, as defined below, the Contracting Officer and/or his Representative, at the request of the Contractor, shall determine whether the order is due in any part to the acts or omissions of the Contractor or a Subcontractor at any tier not required by the terms of this contract. If it is determined that the order is not due in any part to acts or omissions of the Contractor or a Subcontractor at any tier other than as required by the terms of this contract, such suspension, delay, or interruption shall be considered as if ordered by the Contracting Officer and/or his Representative in the administration of this contract under the terms of Section I, contract clause entitled "SUSPENSION OF WORK." The period of such suspension, delay or interruption shall be considered unreasonable, and an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) as provided in that clause, subject to all the provisions thereof.

b. The term "environmental litigation," as used herein, means a lawsuit alleging that the work will have an adverse effect on the environment or that the Government has not duly considered, either substantively or procedurally, the effect of the work on the environment. (EFARS 52.2/9109 (j))

**30. NOISE LEVEL CRITERIA**

Maximum sound pressure levels measured at the booster pumps, engine generators and vehicles including muffler and exhaust components, shall not exceed decibel values prescribed by Federal, State and local codes and regulations. The foregoing applies with the pumps under normal operating conditions at not less than 50% full rated load. Test will be performed at no additional cost to the Government by the Contractor, or the pump engine and generator manufacturer or by an approved testing agency having proven capability in noise measurements and using approved measurement equipment and acceptable measurement

procedures. Test data will be submitted to the Contracting Officer for approval 5 days after the commencement of dredging operations. Should the sound pressure (noise) level test data indicate a need for sound reduction, the Contractor will provide necessary enclosures, baffles or any other appropriate means around booster pumps and engine generators including muffler and exhaust components, so as to attain noise levels which do not exceed those prescribed by aforementioned regulations. Details of the proposed enclosure or baffling arrangement shall be submitted to the Contracting Officer for approval. Such details will be accomplished by calculations, which indicate anticipated compliance of sound pressure (noise) levels with codes and regulations noted herein before. All this is especially enforceable where these booster and engine generators locations are in bathing areas.

**31. CERF IMPLEMENTATION (83 JUN 1 OCE)**

If the work specified in this contract is performed by a hopper dredge(s), the owner must have an active Basic Ordering Agreement (BOA) for the hopper dredge(s) on file with the Corps of Engineers. The Contractor shall be obligated to make the hopper dredge(s) available to serve in the Corps of Engineers Reserve Fleet (CERF) at any time that the hopper dredge(s) is performing work under this contract. When the Contracting Officer and/or his Representative is notified of the decision to activate the dredge(s) into the CERF, he shall take appropriate action to release the dredge(s). He may then extend or terminate the contract to implement whichever action is in the best interest of the Government. The CERF contract shall also be subject to the following condition:

a. The Director of Civil Works may require the contractor to perform emergency dredging at another CONUS (48 contiguous states) site for a period of time equal to the remaining time under this contract at the date of notification plus up to ninety (90) days at the previously negotiated rate which appears on the schedule of prices in the BOA.

b. The Chief of Engineers may require the contractor to perform emergency dredging at an OCONUS (Outside CONUS which includes Alaska, Hawaii, Puerto Rico, the Virgin Islands, or U.S. Trust Territories) site for a period of time equal to the time remaining under this contract at the date of notification plus up to one hundred eighty (180) days at the negotiated rate which appears on the schedule of prices in the BOA.

c. The CERF shall be activated by the Chief of Engineers or the Director of Civil Works; then the Ordering Contracting Officer and/or his Representative will notify the contractor. From the time of

notification, the selected hopper dredge(s) must depart for the emergency assignment within seventy-two (72) hours for CONUS or ten (10) days for OCONUS assignments.

d. A confirming delivery order will be issued pursuant to the Basic Ordering Agreement (BOA) by the Ordering Contracting Officer and/or his Representative. Such delivery order shall utilize the schedule of rates in the BOA for the specific hopper dredges(s).

e. If during the time period specified in a, b, or c, above, a CERF vessel(s) is still required, the contract performance may be continued for additional time by mutual agreement. (EFARS 52.2/9112)

**32. THE SEAGOING BARGE ACT (46 USC 395 ET SEQ.)**

The Seagoing Barge Act applies to this project. In the event the low bidder contemplates using plant that requires U.S. Coast Guard certification to comply with this Act, the low bidder shall within five (5) calendar days after bid opening submit a copy of said certificate to the Contracting Officer and/or his Representative. Failure to produce the certificate within the required time shall subject the bidder to a determination of nonresponsibility.

**33. PERFORMANCE EVALUATION OF CONTRACTOR (APR 1984)**

a. As a minimum, the Contractor's performance will be evaluated upon final acceptance of the work. However, interim evaluation may be prepared at any time during contract performance when determined to be in the best interest of the Government.

b. The format for the evaluation will be DD Form 2626, and the Contractor will be rated either outstanding, satisfactory, or unsatisfactory in the areas of Contractor Quality Control, Timely Performance, Effectiveness of Management, Compliance with Labor Standards, and Compliance with Safety Standards. The Contractor will be advised of any unsatisfactory rating, either in an individual element or in the overall rating, prior to completing the evaluation, and all Contractor comments will be maintained as part of the official record. Performance Evaluation Reports will be available to all DOD contracting offices for their future use in determining Contractor responsibility, in compliance with FAR 36.201 (c). (DEAN-PRP Ltr dtd 30 Apr 84)

**34. PRICING OF ADJUSTMENTS (APR 1984)**

When costs are a factor in any determination of a contract price adjustment pursuant to the Changes clause or any other clause of this contract, such costs shall be in accordance with Part 31 of the Federal Acquisition Regulation and the DOD FAR Supplement in effect on the date of this contract (DOD FAR SUPP 52.243.7001) costs shall be in accordance with Part 31 of the Federal Acquisition Regulation.

## 35. PRECONSTRUCTION CONFERENCE

A pre-construction conference will be arranged by the Contracting Officer and/or his Representative after award of contract and before commencement of work. The Contracting Officer's representative will notify the Contractor of the time and date set for the meeting. At this conference, the Contractor shall be oriented with respect to Government procedures and line of authority, contractual, administrative, and construction matters. Additionally, a schedule of required submittals will be discussed (see Section J, Attachment J).

The contractor shall bring to this conference the following items in either completed or draft form:

a. The Contractor's order of work for dredging and performing other work, including disposal area plan.

b. Accident Prevention Plan (advance copies required, see Section 01351) including the Hazard Analysis.

c. Quality Control Plan (see Section 01451).

d. Letter appointing Superintendent.

e. List of subcontractors

## 36. BID GUARANTEE

a. The offeror (bidder) shall furnish a separate bid bond, or United States bonds, Treasury notes or other public debt obligation of the United States, in the proper amount, by the time set for opening of bids. Failure to do so may be cause for rejection of the bid. The Contracting Officer and/or his Representative will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

b. If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or give a bond(s) as required by the solicitation within the time specified, the Contracting Officer and/or his Representative may terminate the contract for default.

c. Unless otherwise specified in the bid, the bidder will (1) allow the number of days as indicated in paragraph 13D of Standard Form 1442 for acceptance of its bid and (2) give bond within 10 days after receipt of the forms by the bidder.

d. In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid. The bid bond, or bonds or notes of the United States, is available to offset the difference.

## 37. QUANTITY SURVEYS

a. Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.

b. The Government shall conduct the original and final surveys and make the computations based on them. The Contractor shall conduct the survey for any periods for which progress payments are requested and shall make the computations based on these surveys. These surveys conducted by the Contractor shall be conducted under the direction of a representative of the Contracting Officer, unless the Contracting Officer waives this requirement in a specific instance.

c. Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the Contracting Officer and/or his Representative, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the Contracting Officer and/or his Representative. (FAR 52.236-16)

d. Contractor's participation in surveys: In accordance with agency policy guidance, the preferred methods of performance of all hydrographic quantity surveys shall be (in descending order):

(1) The Government will perform quantity surveys by using qualified in-house crews, if available.

(2) The Government will provide quantity surveys by contracting directly with qualified independent hydrographic survey contractors.

(3) The Government will permit, only in exceptional circumstances, the use of dredging contractor's surveys if the Contracting Officer and/or his Representative determine that such surveys are adequate and reasonable for payment purposes.

If it is determined by the Contracting Officer that it is impractical for Government personnel to perform the original and final surveys and the Government wishes the Contractor's surveys to be used, the following will be required from the Contractor:

(a) Acceptance of all monumentation and transponder locations.

(b) Witness by a Corps of Engineers representative of all calibration procedures such as vertical and horizontal control.

(c) Corps of Engineers observation of raw data collection.

(d) Submittal of both unedited as well as edited versions of survey maps.

(e) Subsequent acceptance of edited survey map after determination by Corps survey personnel that editing was conducted in accordance with U.S. Army Corps of Engineers specifications and guidelines. (FAR 52.236-16 - ALTERNATE I, APR 1984)

e. The Contractor is obligated to participate in all stages of data collection during the performance of Before and After Dredge Surveys. Any disagreements with the data collection process shall immediately be brought to the attention of the Contracting Officer or his representative who will determine the necessary corrective measures, if any. **Failure to be present during the survey data collection disqualifies the Contractor from any such related claims.**

**38. SAFETY SIGN**

The Contractor shall construct a safety sign at a location directed by the Contracting Officer and/or his Representative. The sign shall be 6 feet by 4 feet and shall conform to the requirements as specified in Section 00900 J, Attachment G, Project Identification and Safety Signs. The Corps of Engineers castle logo (an 8.5" x 11" red decal) to be used on the sign will be Government furnished. The Contractor will be given this logo at the time of the pre-construction conference.

The decal shall receive a thin coat of clear spar varnish after application. The sign shall be erected as soon as possible and within 5 calendar days after the date of the receipt of the Notice to Proceed. The data required by the sign shall be corrected daily. No separate payment will be made for erecting and maintaining the safety sign and all costs in connection therewith will be considered the obligation of the contractor. Upon completion of the project, the Contractor shall remove the sign from the work site.

**39. PROJECT SIGN**

The Contractor shall furnish and erect a project sign at a location directed by the Contracting Officer or Contracting Officer's Representative. The project sign shall conform with all requirements as specified in Section J, Attachment G, Project Identification and Safety Signs. The Corps of Engineers' castle logo and other logos (8.5" x 11") to be used on the sign will be Government furnished. The Contractor will be given these logos at the time of the pre-construction conference.
The decal(s) shall receive a thin coat of clear spar varnish after application. The Contractor shall maintain the sign in good condition throughout the construction period. No separate payment will be made for erecting and maintaining the project sign, and all costs in connection therewith will be considered the obligation of the Contractor. Upon completion of the project, the Contractor shall remove the sign from the work site.

**40. EQUAL OPPORTUNITY PREAWARD CLEARANCE OF SUBCONTRACTS**

Notwithstanding the clause of this contract entitled "Subcontracts," the Contractor shall not enter into a first-tier subcontract for an estimated or actual amount of $1 million or more without obtaining in writing from the Contracting Officer and/or his Representative a clearance that the proposed subcontractor is in compliance with the equal opportunity requirements and therefore is eligible for award.

**41. SCHEDULING AND DETERMINATION OF PROGRESS**

In accordance with the contract provisions, the Contractor shall, within five (5) days after receipt of Notice to Proceed by him or as otherwise determined by the Contracting Officer and/or his Representative, submit for approval a practicable progress schedule. The progress schedule shall be in the form of a chart graphically indicating the sequence proposed to accomplish each work feature of operation (Eng. Form 2454 or an acceptable equivalent -e.g., computer-generated from a commercially-available project management software package). The chart shall be prepared to show the starting and completion dates of all work features on a linear horizontal time scale beginning with date of the receipt of the Notice to Proceed and indicating calendar days to completion. Each activity in construction shall be represented by an arrow. The head to tail arrangement of arrow's shall flow from left to right. Each arrow representing an activity shall be annotated to show the activity description and duration. Contractor shall indicate on the chart the important work features or operations that are critical to the timely overall completion of the project. Key dates for such important work features and portions of work features are milestone dates and shall be so indicated on the chart. This schedule will be the medium through which the timeliness of the Contractor's construction effort is appraised. When changes are authorized that result in contract time extensions, the Contractor shall submit a modified chart for approval by the Contracting Officer and/or his Representative. The terms of Section 00700, Contract Clause entitled: SCHEDULES FOR CONSTRUCTION CONTRACTS, with reference to overtime, extra shifts, etc., may be invoked when the Contractor fails to start or complete work features or portions of same by the time indicated by the milestone dates on the approved progress chart, or when it is apparent to the Contracting Officer from the Contractor's actual progress that these dates will not be met. Neither on the chart nor on the periodic charts which the Contractor is required to prepare and submit, as described in paragraph, SCHEDULES FOR CONSTRUCTION CONTRACTS of the Contract Clauses, shall the actual progress to be entered include or reflect any materials which may be on the site, but are not yet installed or incorporated in the work. For payment purposes only, an allowance will be made by the Contracting Officer and/or his Representative of up to 100 percent of the invoiced cost of materials or equipment delivered to the site but not incorporated into the construction, pursuant to Section 00700, Contract Clause entitled: "PAYMENT UNDER FIXED-

PRICE CONSTRUCTION CONTRACTS." The making of such an allowance will be contingent upon a determination by the Contracting Officer and/or his Representative that the Contractor's compliance with the quality control requirements of the contract is more than satisfactory.

When the contractor submits his progress schedule, he will include in the submission a progress curve reflecting the intended schedule for completing the work. The progress curve (S-Curve) will be plotted to reflect Cumulative Progress (Percent) based on placement along the y-axis and Time along the x-axis. The progress curve will be furnished at the same time the progress schedule is submitted for approval and updated monthly by the Contractor.

## 42. SPECIAL PROHIBITION ON EMPLOYMENT

a. Definitions: "Arising out of a contract with the Department of Defense," as used in this clause, means any act in connection with (1) attempting to obtain, (2) obtaining, or (3) performing a contract or subcontract of any agency, department or component of the Department of Defense.

"Convictions of fraud or any other felony," as used in this clause, means any conviction for fraud or a felony in violation of state or Federal criminal statutes, whether entered on a verdict or plea, including a plea of nolo contendere, for which sentence has been imposed.

b. Section 941, Title IX, Pub. L. 99-500 (10 U.S.C. 2408) prohibits a person who is convicted of fraud or any other felony arising out of a contract with the Department of Defense from working in a management or supervisory capacity on any defense contract, or serving on the board of directors of any defense contractor, for a period, as determined by the Secretary of Defense, of not less than one (1) year from the date of conviction. Defense contractors are subject to a criminal penalty of not more than $500,000 if they are convicted of knowingly employing a person under a prohibition or allowing such person to serve on their board of directors.

c. The Contractor agrees not to knowingly employ any person, convicted of fraud or any other felony arising out of a contract with the Department of Defense contract or subcontract or allow such person to serve on its board of directors from the date the Contractor learns of the conviction until one (1) year has expired from the date of conviction. However, if the person has also been debarred pursuant to FAR subpart 9.4, the above prohibition shall extend for the period of debarment, but in no event shall the prohibition be less than (1) year from the date of conviction.

d. If the Contractor knowingly employs a convicted person in a management or supervisory capacity on any defense contract or subcontract or knowingly allows such person to serve on its board of directors within the prohibited period, the Government may consider, in addition to the criminal penalties contained in Section 941 of Pub. L. 99-500, other

available remedies, such as suspension or debarment and may direct the cancellation of this contract at no cost to the Government, or terminate this contract for default.

e. The Contractor agrees to include the substance of this clause, including this paragraph (e), appropriately modified to reflect the identity and relationship of the parties, in all subcontracts exceeding $25,000.

## 43. SUPERINTENDENCE OF SUBCONTRACTS (JAN 1965)

a. The Contractor shall be required to furnish the following, in addition to the superintendence required by the Contract Clauses entitled: "Superintendence by the Contractor."

(1) If more than 50% and less than 70% of the value of the contract work is subcontracted, one superintendent shall be provided at the site and on the Contractor's payroll to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

(2) If 70% or more of the value of the work is subcontracted, the Contractor shall be required to furnish two such superintendents to be responsible for coordinating, directing, inspecting and expediting the subcontract work.

b. If the Contracting Officer, at any time after 50% of the subcontracted work has been completed, finds that satisfactory progress is being made, he may waive all or part of the above requirement for additional superintendence subject to the right of the Contracting Officer to reinstate such requirement if at any time during the progress of the remaining work he finds that satisfactory progress is not being made. (DOD FAR Supplement 52.236-7008)

## 44. PROCEDURES FOR SUBMISSION AND PAYMENT OF ALL CONTRACT PAYMENTS

In addition to the requirements contained in the Contract Clause entitled "Payments Under Fixed-Price Construction Contracts" and to implement the requirements of the Prompt Payment Act Amendments of 1988, P.L. 100-496, the following shall apply to all payments made under this contract:

a. At the time of submission of the progress chart, the contractor shall submit for approval by the Contracting Officer or his authorized representative a breakdown of the contract work which shall be to the degree of detail required by the Contracting Officer or his representative to effect reasonable progress payments. The Contracting Officer or his representative shall review this breakdown within 30 calendar days after receipt and either advise the contractor that it is approved or disapproved, and if disapproved the reasons for disapproval. Only after the breakdown is approved shall any payment invoice be accepted from the contractor and any payment made to him. The

Contracting Officer can determine it is in the best interest of the Government to make payment without an approved breakdown, however, in no case shall more than 10% of the contract amount be paid unless the breakdown is approved.

b. The contractor shall submit his request for payment by submission of a proper invoice to the office or person(s) designated in paragraph "c". For purposes of payment a "proper invoice" is defined as the following:

(1) An estimate of the work completed in accordance with the approved breakdown indicating the percentage of work of each item and the associated costs.

(2) A properly completed ENG Form 93 and 93a (where required).

(3) All contractual submissions indicated elsewhere in this contract to be submitted with payment, such as updated progress schedules, channel surveys, updated submittal registers, etc.

The following certification executed by a responsible official of the organization authorized to bind the firm. A "responsible official" would be either a corporate officer, partner, or owner, in the case of a sole proprietorship:

I hereby certify, to the best of my knowledge and belief, that:

(1) The amounts requested are only for performance in accordance with the specifications, terms and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract requirements and the requirements of Chapter 39 of Title 31, United States Code; and

(3) This request for progress payments does not include any amounts, which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.

(4) All required prime and subcontractor payrolls have been submitted.

________________________________________
(Name)

________________________________________
(Title)

________________________________________
(Date)

c. The Government shall designate the office or person(s) who shall first receive the invoice submissions and the Contractor shall be notified at the pre-construction conference. In addition, the contractor shall at the same time submit one copy of the detailed breakdown and the ENG Form 93 and 93a Form to the Project Engineer.

d. The Government representative shall return any request for payment, which is deemed defective within 7 days of receipt and shall specify the defects. Telephone calls with MFR or E-mail notification of the Contractor about the defective invoice shall be considered sufficient notice to the Contractor. If the defect concerns a disagreement as to the amount of work performed and or the amount of the payment being submitted, the Government and the contractor's representative should meet to resolve the differences and reach agreement. Upon agreement, the contractor shall submit a new breakdown and ENG Form 93 (and 93a) and any other submissions requiring correction. These will be incorporated with the previous submittal and will then constitute a proper invoice.

e. If agreement cannot be reached, the Government shall determine the proper amount per Contract Clause entitled: "Payments Under Fixed-Price Construction Contracts" and process the payment accordingly. In this event, "a proper invoice" for Prompt Payment Act purposes will not have been submitted to the Government.

f. The Government shall pay the contractor in accordance with the following time frames:

(1) Progress Payments. From the date a "Proper invoice" is received, in accordance with subparagraphs "b" and "d" of this clause, the Government will issue a check within 14 calendar days.

(2) Reduction in Retaining Payment. If during the course of the contract, a reduction in retainage payment is required, the Government shall issue a check within 30 calendar days after the approval of the release to the contractor by the Contracting Officer or his authorized representative.

(3) Final Payment. A final payment request shall not be considered valid until the contractor has fulfilled all contract requirements including all administrative items, payrolls, warranties, etc. and has submitted a release of claims. When the contractor has fulfilled all contract requirements and a "proper invoice" has been submitted, the Government shall issue a check within 30 days from the date of acceptance of the project by the Contracting Officer.

**45. SUBMISSION OF CLAIMS**

The following shall be submitted to the Contracting Officer at the following address: U.S. Army Corps of Engineers, New York District, 26 Federal Plaza, New York, New York 10278-0090:

a. Claims referencing or mentioning the Contact Disputes Act of 1978.

b. Requests for a written decision by the Contracting Officer.

c. Claims certified in accordance with the Contract Disputes Act of 1978.

No other Government representative is authorized to accept such requests. A copy shall also be provided to the Authorized Representative of the Contracting Officer.

The Contractor shall also provide The Contracting Officer with a copy of any requests for additional time, money or interpretation of contract requirements which were provided to the Authorized Representative of the Contracting Officer and which have not been resolved after 90 days.

**46. SAFETY REQUIREMENTS FOR OPERATIONS ADJACENT TO POWER LINES.**

When it is necessary to transport or operate machinery or equipment under or adjacent to overhead power lines, the requirements of paragraph 11.E - OPERATING ADJACENT TO OVERHEAD LINES, in the Corps of Engineers Manual, EM 385-1-1, dated 3 September 1996, entitled "Safety & Health Requirements Manual" and referred to in the Accident Prevention Provision of General Provisions, shall govern.

**47. CRANE AND DRAGLINE SAFETY REQUIREMENTS**

In addition to meeting all applicable requirements of OSHA standards and Section 16 of the Corps of Engineers Manual, EM 385-1-1, dated 3 September 1996, all cranes used in performing the work set forth in these specifications shall be equipped with geared boom hoists or otherwise provided with mechanisms, which

will prevent the booms from falling free. Cranes that are equipped with booms that can be lowered either by gravity or by power shall have the mechanisms for operating the booms by gravity made inoperative so that the booms cannot be lowered by gravity. The booms of all cranes and draglines shall also be equipped with shock absorbing type back-stops to prevent them from overtopping.

All crane operators must meet the EM 385-1-1 qualification requirements.

**48. OPERATOR QUALIFICATIONS FOR FLOATING CRANES AND FLOATING DERRICKS (SAFETY AND HEALTH REQUIREMENT, EM385-1-1, SECTION 16.C)**

All floating cranes and floating derricks may be only operated by qualified operators. Operators shall be designated as qualified by a source, which qualifies crane and derrick operators (e.g. an independent testing and qualifying company, a union, a governmental agency, a qualified consultant (can be an in-house resource)). Qualification shall be written (or oral) and practical operating examination unless the operator is licensed by a state or city licensing agency for the particular type of crane or derrick. Proof of qualification of crane and derrick operators shall be provided to the Contracting Officer's representative prior to the start of work.

**49. ACCIDENT PREVENTION PLAN**

The Contractor is required to submit to the Contracting Officer or Contracting Officer Representative an accident prevention plan at the pre-construction conference. The accident prevention plan must be in accordance with all federal safety standards as specified in EM 385-1-1, dated 3 September 1996, entitled "Safety & Health Requirements Manual".

**50. ALTERATIONS IN CONTRACT (APR 1984)**

Portions of the contract are altered as follows:

a. Add the following sentence to paragraph "a" of Section 00700, Contract Clause: Insurance - Work on a Government Installation: "Insurance Coverage shall be as specified in 28.307 of the Federal Acquisition Regulation".

b. The following clause is incorporated as part of the contract: "By entering into this contract, the Contractor certifies that neither it, nor any person or firm who has an interest in the Contractor's firm, is a person, or firm ineligible in accordance with FAR subpart "9.4" (DEAN-PRP EFAR Acquisition Letter 85-1 dated 11 Sept 85)

**51. BID GUARANTEE**

Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may cause for rejection of the bid.

a. The offereor (bidder) shall furnish a bid guarantee in the form of a firm commitment, such as a bid bond, postal money order, certified check, cashiers check irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The contracting officer and/or his Representatives will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreement), as required by the bid as accepted.

b. If the successful bidder, upon acceptance of it's bid by the Government within the period specified for acceptance, as required by the solicitation within the time specified, the contracting officer and/or his Representative may terminate the contract for default.

c. Unless otherwise specified in the bid, the bidder will (1) allow the number of days as indicated in paragraph 13D of standard Forms 1442 for acceptance of its bid and (2) give bond within 10 days after receipt of the forms by the bidder.

d. In the event the contract is terminated for default, the bidder is liable for nay cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

**52. CONTINUING CONTRACTS (1985 JAN HQ USACE)**

a. This is a continuing contract, as authorized by Section 10 of the Rivers and Harbors Act of September 22, 1922 (33 U.S. Code 621). The payment of some portion of the contract price is dependent upon reservation of funds from future

appropriations. The responsibilities of the Government are limited by this clause notwithstanding any contract provisions of the "Payments to Contractor" clause or any other clause of this contract.

b. (1) The sum of **$100,000.00** has been reserved for this contract and will be obligated as needed to the Contractor for payments during the 2002 fiscal year. It is expected that Congress will make appropriations for the 2003 fiscal year from which additional funds will be reserved for this contract.

(2) Failure to make payments in excess of the amount currently reserved, or that may be reserved from time to time, shall not entitle the Contractor to a price adjustment under terms of this contract except as specifically provided in paragraphs (d) and (e) below. No such failure shall constitute a breach of this contract, except that this provision shall not bar a breach-of-contract action if an amount finally determined to be due as a termination allowance remains unpaid for one year due to a failure to reserve sufficient additional funds therefore.

c. (1) The Government may at any time reserve additional funds for payments under the contract if there are available funds for such a purpose. The Contracting Officer will promptly notify the Contractor of any change order to the contract.

(2) If earnings will be such that funds reserved for the contract will be exhausted before the end of any fiscal year, the Contractor shall give written notice to the Contracting Officer of the estimated date of exhaustion and the amount of additional funds which will be needed to meet payments due or to become due under the contract during that fiscal year. This notice shall be given not less than 45 days or more than 60 days prior to the estimated date of exhaustion.

d. (1) No payments will be made after exhaustion of funds except to the extent that additional funds are reserved for the contract. The Contractor shall be entitled to simple interest on any payment that the Contracting Officer determines was actually earned under the terms of the contract and would have been made except for exhaustion of funds. Interest shall be computed for the time such payment would otherwise have been made until actually or constructively

made, and shall be at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41, 83 STAT 97, for the Renegotiation Board, as in effect on the first day of the delay in such payment.

(2) Any suspension, delay, or interruption of work arising from exhaustion or anticipated exhaustion of funds shall not constitute a breach of this contract and shall not entitle the Contractor to any price adjustment under the "Suspension of Work" clause or in any other manner under this contract.

(3) An equitable adjustment in performance time shall be made for any increase in the time required for performance of any part of the work arising from exhaustion of funds of the reasonable anticipation of exhaustion of funds.

e.If, upon the expiration of sixty (60) days after the beginning of the fiscal year following an exhaustion of funds, the Government has failed to reserve sufficient additional funds to cover payments otherwise due, the Contractor, by written notice delivered to the Contracting Officer at any time before such additional funds are reserved, may elect to treat his right to proceed with the work as having terminated. Such a termination shall be considered a termination for the convenience of the Government.

f.If at any time it becomes apparent that the funds reserved for any fiscal year are in excess of the funds required to meet all payments due or to become due to the Contractor because of work performed and to be performed under this contract during the fiscal year, the Government reserves the right, after notice to the Contractor, to reduce said reservation by the amount of such excess.

ACCOUNTING AND APPROPRIATION DATA

| | | | | |
|---|---|---|---|---|
| AA: | 96X31230000 082421 | 2500FC741G012550 | NA | 96303 |
| COST CODE: | 000000000000 | | | |
| AMOUNT: | $283,720.00 | | | |

| | | | | |
|---|---|---|---|---|
| AB: | 96X31230000 082421 | 25005LL058099990 | NA | 96303 |
| COST CODE: | 000000000000 | | | |
| AMOUNT: | $822,800.00 | | | |

AC: 96 NA X 3123.0000 E3 x 08 2421 099990 96303 2500 5LL058
AMOUNT: $1,044,930.00

AD: 96 NA X 3123.0000 E3082421 012550 96303 2500 FC741G
AMOUNT: $1,415,700.00