# EXHIBIT 61

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - -x

TDM AMERICA, LLC, :

Plaintiff, :

:

-against- Index No. 06-472 C

THE UNITED STATES OF AMERICA,

Defendant, :

- and - :

DONJON MARINE COMPANY, INC.,

:

Third-Party Defendant.

:

- - - - - - - - - - - - - - - - - - - - -x

DEPOSITION of ELLA D. SNELL, taken by Plaintiff at the offices of Davidoff, Malito & Hutcher, 605 Third Avenue, New York, New York 10158, on Friday, May 18, 2007, commencing at 9:30 o'clock a.m., before Annette Forbes, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

documents, you need to give us more information.

Q Go to page 12763, which is the next page, and there is an item in the paragraph that begins with a lower case C, Copies of Required Permits.

"The apparent low bidder shall provide copies of all required permits and approvals for dewatering and/or other processing (if any), the transfer, transportation and final disposal of all dredged materials, and shall submit evidence of such permits and approvals to the Government."

I'm not going to read the rest of the paragraph.

Do you have any knowledge as to whom these required permits are submitted to in the Army Corps of Engineers for this contract?

A By name?

Q If you know by name, if you know by office.

A I don't know by name.

But these documents would be submitted to what we call the requirement activity.

.0:48:44 10:49:03 10:49:19 10:49:39 10:50:00

In this case I beleive that this is activities for what we call operations division. They would go to the operations division of the project delivery team, PDT, they would take a look at them and make an evaluation.

Q Do you know who is in charge of the operations division for the New York district?

A Yes.

Q Who is that?

A The division chief is Thomas Creamer, C-R-E-A-M-E-R.

He is not involved in this process.

Q To your knowledge, do you know if that's the division or person that would be involved in reviewing the permits and approvals that are referenced in Paragraph C?

A I know that he would be a part of the team or he would have his representative and that would be possibly John Tavolaro.

Q Do you ever at any time get involved in reviewing the permits?

A No.

Q Turn to Page 41, which is Bates No. 12764.

person or persons responsible for compliance with the permits in the technical operations division for each of these contracts? If so, can you go through them and name them.")

11:06:27

MS. FRANKLIN: Can you read back the answer?

(The record was read as follows:

11:06:27

"Answer: No.)

(Discussion off the record.)

BY MR. ADLER:

Q Let's go back to Exhibit 53 and let me turn your attention to the Page 40, which is stamp Bates No. G012763, Paragraph C.

11:08:03

With respect to this contract, 0020, do you know whether or not the Army Corps of Engineers has someone who reviews the required permits and approvals for this contract as referred to in this paragraph?

11:09:05

MS. FRANKLIN: Objection. Vague. Lacks foundation.

A It's a team, not a person.

Q What is the name of that team?

11:09:22

MS. FRANKLIN: Objection.
Lacks foundation.

Q Do you know the name of that team?

11:09:30 A It's a project delivery team, the PDT, as I mentioned earlier, which consists of members from different areas of expertise.

Q From your experience at the Corps, do you have any knowledge as to what the project

11:09:51 delivery team does with respect to reviewing the required permits and approvals as referenced --

MR. FLAHERTY: Objection.

MR. ADLER: Can I finish the question first?

11:09:59 MR. FLAHERTY: I just want the witness to know I have an objection coming.

MR. ADLER: Why don't you wait until I finish?

11:10:08 MR. FLAHERTY: Please proceed.

MR. ADLER: That's not the case when you interrupt me.

MR. FLAHERTY: You have asked this question five times so far. You

11:10:14 have asked it to every witness and you

C E R T I F I C A T E

STATE OF_______________________________:

COUNTY/CITY OF_____________________________:

Before me, this day, personally appeared ELLA D. SNELL, who, being duly sworn, states that the foregoing transcript of his/her Deposition, taken in the matter, on the date, and at the time and place set out on the title page hereof, constitutes a true and accurate transcript of said deposition.

________________________

ELLA D. SNELL

SUBSCRIBED and SWORN to before me this__________

day of ____________, 2007, in the jurisdiction aforesaid.

______________________ ______________________

My Commission Expires Notary Public

# EXHIBIT 62

UNITED STATES COURT OF FEDERAL CLAIMS

TDM AMERICA, LLC
Plaintiff,

-vs-

THE UNITED STATES OF AMERICA
Defendant,
and
DONJON MARINE COMPANY, INC.
Interested Party

CASE NO. 06-472-C

COPY

Oral deposition of JAMES P. THOMAS was taken, pursuant to notice, held at the offices of Knipes-Cohen Associates, 400 Market Street, 11th Floor, Philadelphia, Pennsylvania 19106, on Friday, June 22, 2007 beginning at or about 10:30 a.m., before Debra J. Veneziale, Court Reporter and Notary Public, there being present:

\- - -

JOB NO. 12824

David Feldman Worldwide

From File to Trial.

805 Third Avenue, 8th Floor
New York, NY 10022
(800) 642-1099

600 Anton Boulevard, 11th Floor
Costa Mesa, CA 92626
(866) DFW-1380

- - -

(Whereupon, a short break was taken at this time.)

- - -

BY MR. ADLER:

Q. Just a couple of quick things. With respect to the time that you visited the OENJ facility, in a broad sense was it similar to the Clean Earth facility in the sense you had an homogenizer and then -- you had a screen and a homogenizer and a blender and a mixer?

A. I would say it was similar, yes.

Q. So, can you describe in a little more detail what you saw?

A. I spent very little time at the processing area there at OENJ. It's a very busy place.

Q. Did you see any diagrams of schematics of their operation?

A. I can't recall.

Q. Do you have any pictures of their operation?

A. No.

Q. Do you know if any diagrams of schematics of the operations were submitted to

the Government, governing agencies?
A. Not that I know of. This site was unique in contrast to Clean Earth. This was actually a site provided for -- listed by the Government as permitted and operational.
Q. And what did you mean by that?
A. What I mean is that these contracts would list OENJ as the site of choice for disposal of upland material, and we would have the option of either going there or finding an alternate site.
Q. Why did the Government this as the process of choice?
MS. SPRING: Objection; misstates the testimony.
BY MR. ADLER:
Q. You can answer the question.
A. I'm sorry, did you say answer the question?
Q. Yes.
A. Because it was their job to provide the disposal sites for this material.
Q. You had mentioned that the OENJ -- the processing by OENJ for that contract was different than the contracts in which Clean

Earth was the processor because with the OENJ facility OENJ was designated by the Government. So, why that difference?

A. Well, the --

MS. SPRING: Same objection.

THE WITNESS: Clean Earth was an up and coming entity and they were getting into the business and they were providing, you know, an alternate service to OENJ. So, for business reasons it was less of a monopoly to give the contractors or give us or anybody I wanted to deal with Clean Earth a choice in where they sent this material.

BY MR. ADLER:

Q. And did the Government have to approve the processors for each of these contracts that you had?

A. I guess what I'm alluding to is OENJ was preapproved by the Government. They didn't have to prove to us, a prime contractor, that it was an approved site. It was predetermined that it was approved.

Q. And the Clean Earth sites, they were approved after they went through a process?

A. Yes.

SIGNATURE PAGE

I have read the foregoing deposition and the answers given by me are true and correct, to the best of my knowledge and belief.

________________________
JAMES P. THOMAS

________________________
WITNESS TO SIGNATURE

________________________
ADDRESS

My Commission Expires