# EXHIBIT 66

US Army Corps
of Engineers
New York District
Operations Division

# QUALITY ASSURANCE PLAN

## NEWARK BAY,

## PORT NEWARK AND PORT NEWARK PIERHEAD CHANNELS,

## NEW JERSEY

**Contract No. W912DS-06-C-0018**

**CONTRACTOR: GREAT LAKES DREDGE & DOCK COMPANY**

| | |
|---|---|
| **Contracting Officer:** | Raynette Gurney, Contracting Division |
| **Contracting Officer's Representative:** | John F. Tavolaro, Chief, Operations Support Branch |
| **Technical Manager:** | Randall G. Hintz, Chief, Technical Support Section |
| **Project Engineer:** | Kenneth L. Peterson, Technical Support Section |
| **Project Inspector/QA Representative:** | Vincent Bertolino, Jr., Technical Support Section |
| **Project Inspector/QA Representative:** | Joseph Humet, Technical Support Section |

## A. PURPOSE

The role of the Army Corps of Engineers in construction is to achieve quality of work excellence and safeguard the interests of the government and other agencies which it represents. This is achieved by implementing contract administration and a Quality Assurance program.

The role of the contractor is to deliver the specified quality product in the specified time while complying with all contract requirements.

The contractor is responsible for inspections and testing through his Quality Control program.

The Quality Assurance program will provide the management oversight of the contractor Quality Control Safety Program by government personnel. Inspection, testing, and surveying at appropriate times will insure that the contractor has achieved through dredging, his contract obligation of achieving a navigational channel depth elevation of -40 feet Mean Low Water (MLW) plus 1 foot overdepth.

## B. REFERENCES

ER 415-1-302, Inspection and Work Records
ER 1180-1-6, Construction Quality Management
Contract Documents
Contractor Quality Control (CQC) Plan

## C. PROJECT DESCRIPTION

The contract provides for the maintenance dredging of portions of the Port Newark and Port Newark Pierhead Channels. The areas to be dredged to a depth of -40 feet MLW plus 1 foot overdepth are delineated on the contract plans.

## D. QUALITY ASSURANCE DUTIES AND RESPONSIBILITIES

1. Contracting Officer - Raynette Gurney

2. Contracting Officer's Representative – John Tavolaro

3. The following individuals are assigned to implement the QA program and manage the contract. They are:

   John F. Tavolaro – Chief, Operations Support Branch
   Randall G. Hintz – Chief, Technical Support Section
   Kenneth L. Peterson – Project Engineer
   Vincent Bertolino, Jr. – Project Inspector/QA Representative
   Joseph Humet – Project Inspector/QA Representative

The duties and responsibilities of the Project Engineer and Project Inspector are as follows:

a) Overall responsibility for quality assurance of the project.

b) Prepare the quality assurance plan and revise as needed.

c) Be well informed and familiar with the specifications, drawings and contract documents.

d) Post all amendments and modifications, and insure that all contract documents are accurate and current.

e) At the Pre-Construction meeting, address that the Contractor Quality Control (CQC) needs to be submitted and accepted prior to the start of construction.

f) Review the CQC plan, and insure that the plan is adequate and conforms to the specifications requirements and contract documents.

g) Review and monitor Submittal Register to insure that all required submittals are forwarded by the contractor and accepted as required by the government.

h) Monitor project progress by conducting a weekly meeting to address all issues and resolve any conflicts.

i) Ensure all work performed is in compliance with applicable regulatory requirements (Water Quality Certificate, Coastal Zone Management, etc...)

j) Prepare government letters, as necessary, to contractors to clarify and enforce contract clauses and project requirements.

k) Prepare memorandums for record to annotate conditions which may affect progress, claims and delay to the contract.

l) Conduct follow-up inspections as necessary to insure the contractor's QC and Safety personnel are on site and their programs are being executed as accepted. Follow-up inspections shall be scheduled to ensure project oversight. A monthly QA field staff schedule is prepared in advance to ensure that adequate QA surveillance is provided.

m) Prepare daily Quality Assurance (QA) reports.

n) Review and accept contractor's accident prevention plan and safety program.

o) Participate in partnering.

p) Maintain a deficiency tracking system, and follow up with all deficiencies until they are corrected and resolved.

q) Review contractor's quality control (CQC) daily reports for accuracy. Ensure that all inspections, tests and surveying is documented in CQC report.

r) Review contractor's schedule constantly and make sure that project completion is on track.

s) Prepare RFPs and Modifications as required.

t) Prepare contractor progress payments.

General Duties and Responsibilities:

Quality Assurance: The purpose of Quality Assurance is to insure the effectiveness and accuracy of the contractor's control for producing the quality of work required. The Project Inspector has the responsibility of making sure Quality Assurance is being implemented on the project. The following Quality Assurance activities are imperative to assure a functional system:

Prior to award of the contract, the Project Inspector shall review the contract documents to familiarize himself to the needed requirements of an effective Contractor's Quality Control Plan.

During the Pre-Construction Conference, the Project Inspector shall address the requirements of an effective Contractor Quality Control Plan; that the contractor's representative understands all requirements, and that the CQC plan is submitted prior to the start of any construction activities.

Once the CQC plan has been submitted, the Project Inspector shall review it to insure that the plan is adequate and conforms to the requirements of the contract documents.

During the construction of the project, the Project Inspector will assure that all CQC inspections and tests are documented in the daily CQC reports.

Deficiencies/compliance: The intent of the CQC provision of the contract is to insure technical compliance with the contract requirements in regard to the quality of materials and workmanship specified. Deficiencies, when first noted will be included in the daily QA report. If the deficiencies continue to occur, the contractor will be notified by letter that the necessary actions will be taken to insure compliance with contract requirements. The contract provides means by which contractor compliance may be enforced.

Implementation of any enforcement action requires careful consideration and complete timely historical documentation to preclude claims against the government. Listed below are actions to be considered in administering all contracts:

a) Withholding payment for deficient work. The quality of work must be examined prior to determining amount of payment to be made.

b) Withholding retainage for lack of satisfactory progress. Ten percent retainage is to be held for the period of unsatisfactory progress. For progress to be

satisfactory it must be both on schedule (including time extensions recognized) and in conformance to quality requirements. Interim surveys may be utilized to support progress payments, however, only USACE After-Dredge Surveys may be used for final payment purposes.

c) Government providing quality control services. If quality control services are not being performed satisfactory by the contractor, any additional costs to the government for providing these services will be deducted from payment due to the contractor.

d) Stop the work: The contracting officer or his authorized representative may direct the contractor to stop any item or feature of work particularly if the defective work is to be enclosed, is to support further construction, or will become inaccessible if further work proceeds. Directives to stop should cite the deficiency, the pertinent specification section, and direct that no further work is to be done that will interfere with the deficiency correction.

e) Contractor Performance Appraisal: The contractor may be responsive to a warning from the authorized representative of the contracting officer that if he refuses to correct deficiencies in his quality control system, an unsatisfactory performance rating will be recommended. Documentation supporting such actions must be developed from the beginning which call the contractor's attention to his deficient actions. Interim unsatisfactory appraisals should be recommended if performance has been unsatisfactory at any stage of the work prior to completion. The significance of this action should be explained to the contractor as well as the exact reasons for such action.

Specialized Assistance: If at any time during the life of this contract, the project inspector anticipates a need for expertise not available at the site, he will request assistance from the Project Engineer and/or the Chief, Technical Support Section. This assistance may be required for actual problems or training sessions.

Review and Revision: This QA plan will be reviewed and revised if necessary, at least every 90 days.

## E. CONTRACT ADMINISTRATION DUTIES

Under this contract, the following contract administration items will be handled by the project team personnel:

a) Review and analysis of contractor and user requests and engineering problems to determine contract requirements. Prepare scope of work for required changes, receive contractor's proposal, negotiate and write final draft of modifications. Findings and subsequent recommendations will be timely and accurate so as to preclude further questions or inquiry in no more than 2 to 4 instances per year. Initiation and processing of change orders will be done in a timely manner in order to prevent any unnecessary delays to construction progress or unnecessary cost to the government. Final drafts associated with these change orders, including adjustment, necessary for change and resume of negotiations will be

prepared in adequate detail and with sufficient accuracy to prevent questions or ambiguity.

b) Review and analyze contractor claims and make recommendations to supervisors. Findings of fact and resulting recommendations will be in sufficient detail and clarity and presented completely and accurately so as to prevent further inquiry.

c) Review progress charts and network analysis system for approval, prepare progress reports, special and periodic reports required by higher echelons for information and control.

d) Monitor contractor's progress with approved schedules to insure timely completion of project. Draft letter to contractor advising him if he is more than 5% behind schedule requesting revised schedule or reasons.

e) Review partial monthly contractor payment estimates. Coordinate and resolve with contractor as to items of pay, recommend retainage per district office requirements and regulations; insure contractor has submitted a list of deficiencies with scheduled correction date and list of inspections with payment.

f) Prepare documents, technical memoranda, and correspondence pertaining to contract activities. Draft complete and accurate correspondence.

g) Study and review plans and specifications prior to receipt of Bids for clarifications and errors. Make recommendations with a view to minimize the contract modifications.

h) Review proposed contract documents and make recommendations.

**OVERALL DISTRICT POLICY**

In accordance with New York District policies, the following additional comments are incorporated into this plan:

Quality Assurance Activities In The Field - Includes check, inspections and tests of the products, which comprise the construction, the processes used in the work and the finished work. These activities are to assure that defective work or materials are not incorporated in the construction.

Quality Assurance Procedures - Ascertain the contractor has established:

a) Adequate Quality Control procedures and program.

b) That materials and workmanship not conforming to contract requirements are corrected.

c) Complete daily reports of work in progress are maintained.

Importance of Quality Assurance Reports - QA reports constitute a part of official government records and may be used as evidence in court or in other legal action. Daily reports should be factual, concise, thorough, neat, accurate, legible and free from personal opinion.

Withhold Payment - Failure of the contractor to perform in accordance with the items of the contract may be justification for withholding payment. Failure to provide quality standard (CQC plan), to build quality standards (inspection and testing) and to document performance may be cause for withholding payments. Each is a contract requirement, as is the end product, Quality Construction.

## QUALITY ASSURANCE ORGANIZATION CHART

Raynette Gurney
Contracting Officer (KO)
|
John F. Tavolaro
Contracting Officers Representative (COR)
Chief, Operations Support Branch
|
Randall G. Hintz
Chief, Technical Support Section
|
Kenneth Peterson
Project Engineer

| | |
|---|---|
| Vincent Bertolino, Jr<br>Project Inspector | Joseph Humet<br>Project Inspector |

## DEFINABLE FEATURES OF WORK

The following is a list of Definable Features of Work applicable to this project.

- Dredging (Environmental Bucket)
- Dewatering Upland Material
- Processing Upland Material
- Debris
- Transportation
- Non-rock Upland Material
- Disposal
- Non-rock Upland Material
- Hydrographic Surveying
- Scow Safety and Protocol

1. Dredging:

The material from this project is comprised of non-rock soft material mainly soft, fine-grained material which will require to be dewatered and processed prior to disposal at the

Upland Sites. Dewatering, processing and disposal will be discussed as separate definable features of work.

The defining characteristics of the bucket shall be as follows:

a) All dredging shall be accomplished using a closed "environmental" bucket. (NJDEP WQC Special Condition (S.C.) #1)

b) The bucket shall be provided with welded steel covers and rubber seals specifically designed and installed by the bucket manufacturer to minimize leakage from the closed bucket.

c) The closed bucket shall be equipped with vertical side plates, with rubber seals, which overlap or some method to reduce sediment loss at closure and shall act as an enclosure to eliminate redeposit of soil from the bucket.

d) The bucket shall be equipped with a switch, with signal fight in the control station, to verify bucket closure and seal. (NJDEP WQC S.C. #3)

e) The bucket will be designed to produce a flat cut and to minimize suspension during closing and lifting.

When working in this material, the Contractor shall employ the following best management practices:

a) The dredge shall be operated so as to control the rate of descent of the bucket so as to maximize the vertical cut of the clamshell bucket while not penetrating the sediment beyond the vertical dimension of the open bucket (i.e. overfilling the bucket). This will reduce the amount of free water in the dredged material, will avoid overfilling the bucket, and minimize the number of dredge bucket cycles needed to complete the dredging contract. The dredging contractor shall use appropriate software and sensors on the dredging equipment to ensure consistent compliance with this condition during the entire dredging operation. The Project Inspector shall monitor the operation of the software and sensors during inspections. Any malfunction of the software and sensors on the dredge at any time shall be immediately reported to the Contracting Officer's Representative by the dredging contractor and shall be immediately repaired to working order. (NJDEP WQC S.C. # 2)

b) To minimize the loss of material during the excavation the bucket lift speed shall not exceed 2 feet per second. (NJDEP WQC S.C. #4)

c) Dredged material shall be placed deliberately in the barge in order to prevent spillage of material overboard. (NJDEP WQC S.C. #5)

d) No barge overflow shall be permitted during the dredging and transport of any contaminated dredged material. (NJDEP WQC S.C. #6)

e) The dredge shall be operated so as to maximize the bite of the environmental bucket. This will reduce the amount of free water in the dredged material and the number of the bites required for completing the job.

f) All barges or scows used to transport sediment shall be of solid hull construction or be sealed with concrete. (NJDEP WQC S.C. #7)

g) After the material is placed in the solid hull construction scow, it will be dewatered and processed to stabilize the material prior to disposal at the Upland Sites.

h) The gunwales of the dredge scows shall not be rinsed or hosed during dredging except to the extent necessary to ensure the safety of workers maneuvering the dredge scow. (NJDEP WQC S.C. #8)

2. Dewatering Upland Material:

a) All decant water holding scows shall be water tight and of solid hull construction. (NJDEP WQC S.C. #9)

b) Decant water from this project may only be discharged within the Newark Bay in close proximity to the dredging contract area. Discharge to another receiving waterbody requires prior approval from the Department, and may require a New Jersey Discharge Pollution Elimination System/Discharge to Surface Water (NJDPES/DSW) permit. (NJDEP WQC S.C. #10)

c) All decant water shall be held in the decant holding scow a minimum of 24 hours after the last addition of water to the decant holding scow. Said water contained in the decant holding scow may only be discharge after this mandatory 24 hour retention time. (NJDEP WQC S.C. #11)

- Should the contractor wish to reduce the required holding time, the contractor shall demonstrate that the reduced holding time is sufficient to meet a total suspended solids (TSS) background value of 30 mg/L. This TSS action level is consistent with the ambient TSS results presented in the NY District study entitled "NY and NJ Harbor Deepening Project - Total Suspended Solids (TSS) Monitoring, Interim Report" (January 2006). The total suspended solids shall be determined through gravimetric analysis. No discharge shall be permitted from the decant holding scow until the results of the gravimetric analysis have confirmed that the 30 mg/L background level has been achieved. No additional water shall be added to the decant holding scow between the time of sample acquisition and discharge. Upon successful demonstration that the reduced holding time is sufficient to meet the TSS background level of 30 mg/L, the monitoring of TSS may be suspended and the demonstrated settling time shall replace the 24 hour minimum. A successful demonstration of the reduced holding time efficiency shall be determined once three consecutive TSS analyses have confirmed that the 30 mg/L action level has been achieved by the reduced holding time.

d) Should the contractor wish to demonstrate this reduced holding time, all records including time of last addition of decant water into the scow, time of TSS sampling and the results of TSS sampling shall be submitted to the NJDEP as soon as they become available, together with a request for a reduced holding time. (NJDEP WQC S.C. #12)

e) During pumping of the decant water from the holding scow, great care shall be taken to avoid resuspending or pumping sediment which has settled in the decant holding scow. (NJDEP WQC S.C. #13)

f) The dredging contractor shall complete and submit the attached Dewatering Form to the NY District Contracting Officers' Representative on a weekly basis as part of the Quality Control Report provided to the NY District. Said Dewatering form shall be certified by the Project inspector/Project Engineer that they have witnessed the dewatering process during the preceding week. The District shall submit the completed Dewatering form with appropriate certifications by fax to the Office of Dredging and sediment Technology for the preceding week. (NJDEP WQC S.C. #14)

g) Project Inspectors and Project Engineer team members shall perform inspections of the dredging contract a **minimum of four times a week** using the attached WQC Field Inspector form. The NY District shall submit the completed inspection forms to the NJDEP on at least a weekly basis. Note: The WQC Field Inspection form is being updated to reflect conditions specified in this authorization and will be forwarded to the District prior to the initiation of dredging under this contract. (NJDEP WQC S.C. #15)

h) REPORTING REQUIREMENTS: At the completion of this contract, the NY District shall submit the following information to the NJDEP. This information shall be submitted within six months of contract completion. (NJDEP WQC S.C. #16)

- Start and finish date of contract
- Post-dredge hydrographic survey
- Completed "Notice of Completion of work" attached.
- In the event that the New York District does not dredge all of the areas identified in the consistency determination, the New York district shall identify those areas that were dredged, the amount of material removed from each area, and the depth achieved by the project.

3. Processing Upland Material:

There are two sites approved for processing material under this contract. They are as follows:

- CEDTI Facility
- GLDD Koppers Processing Facility

Scows which have been dewatered arrive at the processing site. Debris in the scow, if any, is removed. The volume of dredged material is calculated for each scow based on depth measurements taken and averaged.

4. Debris:

Debris will be removed from the scow after it arrives at the processing site.

All debris will be removed and placed in a dumpster at the site.

The contractor will annotate the QC report when debris has been removed from the scow. The QA representative will observe and verify the debris being removed.

5. Transportation

After the dredged material has been processed, it will be unloaded from the scow into trucks for transport to the upland disposal sites. The trucks will be equipped with a tarp which will provide cover for all material during transport.

# EXHIBIT 67

FEB. 9. 2006 5:04PM DONJON MARINE NO. 927 P. 1
02/09/2006 12:35 #121 P.002/003

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 2

2. AMENDMENT/MODIFICATION NO.: P00014
3. EFFECTIVE DATE: 09-Feb-2006
4. REQUISITION/PURCHASE REQ. NO.: SEE SCHEDULE
5. PROJECT NO. (If applicable)

6. ISSUED BY CODE W912DS
USA ENGINEER DISTRICT, NEW YORK
ATTN: CENAN-CT ROOM 1843
26 FEDERAL PLAZA
NEW YORK NY 10278

7. ADMINISTERED BY (If other than item 6) CODE
USAED NEW YORK
1 CHAPEL AVE, PORT LIBERTY CAVEN POINT YER
JERSEY CITY NJ 07305

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
DONJON MARINE CO INC
1250 LIBERTY AVENUE
HILLSIDE NJ 07205

CODE 9S939 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
X 10A. MOD. OF CONTRACT/ORDER NO. W912DS-05-C-0003
X 10B. DATED (SEE ITEM 13) 08-Mar-2005

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER (Specify type of modification and authority)
FAR 52.243-1, Changes Fixed Price, Alternate III

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to include an Alternate Upland Disposal Facility in connection with Arthur Kill Contract II (Areas 2 & 3) at Arthur Kill Channel.

All work and services shall be in accordance with the terms and conditions of the basic contract and any modifications issued thereto.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)
Thomas D. Witte Executive Vice-Pres.

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
RAYNETTE GURNEY / ADDED BY SUSR
TEL: 917-790-8078 EMAIL: raynette.gurney@usace.army.mil

15B. CONTRACTOR/OFFEROR
[signature]
(Signature of person authorized to sign)

15C. DATE SIGNED
2-9-06

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED
09-Feb-2006

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

G0101503608

W912DS-05-C-0003
P00015
Page 2 of 2

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

The following have been added by full text:

ALTERNATE UPLAND DISPOSAL SITE:

A. SCOPE OF WORK:
Amend the specification to include an alternate facility for the transportation, processing and disposal of non-HARS material (or upland material) from within Area F of the subject contract.

B. CHANGE IN CONTRACT DRAWINGS:
There is no change to the Drawings as a result of this modification.

C. CHANGE IN CONTRACT SPECIFICTIONS:
Change the Specifications to the extent necessary to include Biogenesis Sediment Washing Technology Facility (BGW Facility) for the processing and disposal of a portion of the non-HARS (upland) material of the subject contract.

The source of the material to be transported to the BGW Facility located in Keasbey, Middlesex County will be from Acceptance Area F.

D. CHANGE IN CONTRACT PRICE:
Total contract price is unchanged.

E. CHANGE IN CONTRACT TIME:
The contract completion date shall remain unchanged by this modification.

F. CLOSING STATEMENT:
In consideration of this modification, agreed to herein as complete equitable adjustment for this change, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to aforesaid change with no exception.

(End of Summary of Changes)

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 3

2. AMENDMENT/MODIFICATION NO.: P00020
3. EFFECTIVE DATE: 25-Jul-2006
4. REQUISITION/PURCHASE REQ. NO.: SEE SCHEDULE
5. PROJECT NO. (If applicable)

6. ISSUED BY CODE W912DS
USA ENGINEER DISTRICT, NEW YORK
ATTN: CENAN-CT ROOM 1843
26 FEDERAL PLAZA
NEW YORK NY 10278-0900

7. ADMINISTERED BY (If other than item 6) CODE E3M1000
CONSTRUCTION DIVISION
USACE NEW YORK DISTRICT ATTN: CENAN-CO-C
NEW YORK NY 10278

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
DONJON MARINE CO INC
1250 LIBERTY AVENUE
HILLSIDE NJ 07205

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
X 10A. MOD. OF CONTRACT/ORDER NO. W912DS-05-C-0003
X 10B. DATED (SEE ITEM 13) 29-Dec-2004

CODE 9S939 FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [ ] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
**See Schedule**

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[X] D. OTHER (Specify type of modification and authority)
IAW EFAR 52.232-5001 "Continuing Contracts Clause"

E. IMPORTANT: Contractor [ ] is not, [X] is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Modification Control Number: e3ct9as30644

a. The purpose of this modification is to make additional funds available to the contractor for Clins 0004AB and 0004AD in the amount of $8,000,000.00.

b. Per continuing Contracts Clause and modification P00020 of this contract, the amount of $64,404,587.76 was made available for payment of the basic contract work.

By reason of this modification, the amount available for payment of contract work is hereby increased by $8,000,000.00 from $64,404,587.76 to $72,404,587.76.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
RAYNETTE GURNEY / CONTRACTING OFFICER
TEL: (917)790-8076 EMAIL: raynette.gurney@usace.army.mil

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY (signature)
(Signature of Contracting Officer)

16C. DATE SIGNED 25-Jul-2006

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

SECTION SF 30 - BLOCK 14 CONTINUATION PAGE

The following have been added by full text:
OBLIGATED FUNDS

Obligated Funds

| | |
|---|---|
| Total Base Bid Contract Amount: | $54,117,882.65 |
| Total Amount of Optional Items: | $19,866,755.26 |
| Total Amount of Contract plus Options: | $73,984,637.91 |
| | |
| Initial Obligation (Basic contract): | $ 1,000,000.00 |
| Amount Funded via P00001: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00002: | $ 4,300,000.00 |
| Amount Funded via P00003: | $ 88,687.50 (Funding Option 2) |
| Amount Funded via P00004: | $10,000,000.00 |
| Amount Funded via P00005: | $ 973,612.00 (Funding Option 6) |
| Amount Funded via P00006: | $ 3,445,361.76 (Funding Option 3) |
| Amount Funded via P00007: | $ 5,000,000.00 |
| Amount Funded via P00008: | $ 5,500,000.00 |
| Amount Funded via P00009: | $ 2,580,000.00 |
| Amount Funded via P00010: | $ 5,963,358.00 |
| Amount Funded via P00011: | $ 340,000.00 (Funding Options 7, 8 & 9) |
| Amount Funded via P00012: | $ 9,000,000.00 |
| Amount Funded via P00013: | $ 1,100,000.00 (Funding Option 4) |
| Amount Funded via P00014: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00015: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00016: | $ 8,321,000.00 |
| Amount Funded via P00017: | $ 1,194,920.00 (Funding Option 5) |
| Amount Funded via P00018: | $ 2,198,163.00 |
| Increase in Total Contract Amount via P00019: | $ 3,399,485.50 (Change in Clin Quantities) |
| Amount Funded via P00020: | $ 8,000,000.00 (Funding Option 4) |
| | |
| Total Amount Funded to Base: | $ 57,262,006.50 |
| Total Amount Funded to Options: | $ 15,142,581.26 |
| Total Funded to Date: | $ 72,404,587.76 |
| | |
| Amount Remaining to be Funded from Base: | $ 255,361.65 |
| Amount Remaining to be Funded from Options: | $ 4,724,174.00 |



SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

SECTION SF 30 - BLOCK 14 CONTINUATION PAGE

The following have been added by full text:

OBLIGATED FUNDS

| | |
|---|---|
| Obligated Funds | |
| Total Base Bid Contract Amount: | $54,117,882.65 |
| Total Amount of Optional Items: | $19,866,755.26 |
| Total Amount of Contract plus Options: | $73,984,637.91 |
| | |
| Initial Obligation (Basic contract): | $ 1,000,000.00 |
| Amount Funded via P00001: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00002: | $ 4,300,000.00 |
| Amount Funded via P00003: | $ 88,687.50 (Funding Option 2) |
| Amount Funded via P00004: | $10,000,000.00 |
| Amount Funded via P00005: | $ 973,612.00 (Funding Option 6) |
| Amount Funded via P00006: | $ 3,445,361.76 (Funding Option 3) |
| Amount Funded via P00007: | $ 5,000,000.00 |
| Amount Funded via P00008: | $ 5,500,000.00 |
| Amount Funded via P00009: | $ 2,580,000.00 |
| Amount Funded via P00010: | $ 5,963,358.00 |
| Amount Funded via P00011: | $ 340,000.00 (Funding Options 7, 8 & 9) |
| Amount Funded via P00012: | $ 9,000,000.00 |
| Amount Funded via P00013: | $ 1,100,000.00 (Funding Option 4) |
| Amount Funded via P00014: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00015: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00016: | $ 8,321,000.00 |
| Amount Funded via P00017: | $ 1,194,920.00 (Funding Option 5) |
| Amount Funded via P00018: | $ 2,198,163.00 |
| Increase in Total Contract Amount via P00019: | $ 3,399,485.50 (Change in Clin Quantities) |
| Amount Funded via P00020: | $ 8,000,000.00 (Funding Option 4) |
| | |
| Total Amount Funded to Base: | $ 57,262,006.50 |
| Total Amount Funded to Options: | $ 15,142,581.26 |
| Total Funded to Date: | $ 72,404,587.76 |
| | |
| Amount Remaining to be Funded from Base: | $ 255,361.65 |
| Amount Remaining to be Funded from Options: | $ 4,724,174.00 |

SECTION 00800 - SPECIAL CONTRACT REQUIREMENTS

Accounting and Appropriation

Summary for the Payment Office

As a result of this modification, the total funded amount for this document was increased by $8,000,000.00 from $64,404,587.76 to $72,404,587.76.

SUBCLIN 0004AB:

AD: 96X88620000 082421 3230HC82J5076329 NA 96303 was increased by $6,000,000.00 from $9,638,705.70 to $15,638,705.70

SUBCLIN 0004AD:

AD: 96X88620000 082421 3230HC82J5076329 NA 96303 was increased by $2,000,000.00 from $0.00 to $2,000,000.00
The contract ACRN AD has been added.

(End of Summary of Changes)

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 \| 3 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00021 | 13-Nov-2006 | SEE SCHEDULE | |

6. ISSUED BY CODE W912DS

USA ENGINEER DISTRICT, NEW YORK
ATTN: CENAN-CT ROOM 1843
26 FEDERAL PLAZA
NEW YORK NY 10278-0090

7. ADMINISTERED BY (If other than item 6) CODE E3M1000

CONSTRUCTION DIVISION
USACE NEW YORK DISTRICT ATTN: CENAN-CO-C
NEW YORK NY 10278

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

DONJON MARINE CO INC
1250 LIBERTY AVENUE
HILLSIDE NJ 07205

CODE 9S939 FACILITY CODE

| | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED (SEE ITEM 11) |
| X | 10A. MOD. OF CONTRACT/ORDER NO. W912DS-05-C-0003 |
| X | 10B. DATED (SEE ITEM 13) 29-Dec-2004 |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

See Schedule

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) IAW EFAR 52.232-5001 "Continuing Contracts Clause" |

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Modification Control Number: e3ct8aad0747

a. The purpose of this modification is to make additional funds available to the contractor for CLINS 0003AD and 0004AD. In the amount of $4,970,296.65.

b. Per continuing Contracts Clause and modification P00020 of this contract, the amount of $72,404,587.76 was made available for payment of the basic contract work.

c. By reason of this modification, the amount available for payment of contract work is increased by $4,970,296.65 from $72,404,587.76 to $77,374,884.41.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
RAYNETTE GURNEY / CONTRACTING OFFICER
TEL: (917)790-8076 EMAIL: raynette.gurney@usace.army.mil

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| (Signature of person authorized to sign) | | BY Raynette H. Gurney (Signature of Contracting Officer) | 13-Nov-2006 |

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

SECTION SF 30 - BLOCK 14 CONTINUATION PAGE

The following have been modified:
OBLIGATED FUNDS

Obligated Funds

| | |
|---|---|
| Total Base Bid Contract Amount: | $54,117,882.65 |
| Total Amount of Optional Items: | $19,866,755.26 |
| Total Amount of Contract plus Options: | $73,984,637.91 |
| | |
| Initial Obligation (Basic contract): | $ 1,000,000.00 |
| Amount Funded via P00001: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00002: | $ 4,300,000.00 |
| Amount Funded via P00003: | $ 88,687.50 (Funding Option 2) |
| Amount Funded via P00004: | $10,000,000.00 |
| Amount Funded via P00005: | $ 973,612.00 (Funding Option 6) |
| Amount Funded via P00006: | $ 3,445,361.76 (Funding Option 3) |
| Amount Funded via P00007: | $ 5,000,000.00 |
| Amount Funded via P00008: | $ 5,500,000.00 |
| Amount Funded via P00009: | $ 2,580,000.00 |
| Amount Funded via P00010: | $ 5,963,358.00 |
| Amount Funded via P00011: | $ 340,000.00 (Funding Options 7, 8 & 9) |
| Amount Funded via P00012: | $ 9,000,000.00 |
| Amount Funded via P00013: | $ 1,100,000.00 (Funding Option 4) |
| Amount Funded via P00014: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00015: | $ 0.00 (Admin. Mod.) |
| Amount Funded via P00016: | $ 8,321,000.00 |
| Amount Funded via P00017: | $ 1,194,920.00 (Funding Option 5) |
| Amount Funded via P00018: | $ 2,198,163.00 |
| Increase in Total Contract Amount via P00019: | $ 3,399,485.50 (Change in Clin Quantities) |
| Amount Funded via P00020: | $ 8,000,000.00 (Funding Option 4) |
| Amount Funded via P00021 | $ 4,970,296.65 (Funding CLINS 0003AD and 0004AD) |
| | |
| Total Amount Funded to Base: | $ 57,262,006.50 |
| Total Amount Funded to Options: | $ 15,142,581.26 |
| Total Funded to Date: | $ 72,404,587.76 |
| | |
| Amount Remaining to be Funded from Base: | $ 255,361.65 |
| Amount Remaining to be Funded from Options: | $ 4,724,174.00 |

SECTION 00800 - SPECIAL CONTRACT REQUIREMENTS

Accounting and Appropriation

Summary for the Payment Office

SUBCLIN 0003AD:

AD: 96X88620000 082421 3230HC82J5076329 NA 96303 was increased by $3,570,000.00 from $0.00 to $3,570,000.00
The contract ACRN AD has been added.

AB: 96X31220000 082421 323050461D076329 NA 96303 was increased by $1,130,800.00 from $0.00 to $1,130,800.00
The contract ACRN AB has been added.

SUBCLIN 0004AD:

AB: 96X31220000 082421 323050461D076329 NA 96303 was increased by $269,496.65 from $0.00 to $269,496.65
The contract ACRN AB has been added.

(End of Summary of Changes)

# EXHIBIT 68

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J — PAGE 1 OF 2 PAGES

2. AMENDMENT/MODIFICATION NO.: P00004

3. [illegible]FECTIVE DATE: 23-Sep-2004

4. REQUISITION/PURCHASE REQ. NO.: SEE SCHEDULE

5. PROJECT NO. (If applicable):

6. ISSUED BY — CODE: W912DS
USA ENGINEER DISTRICT, NEW YORK
ATTN:CENAN-CT ROOM 1843
26 FEDERAL PLAZA
NEW YORK NY 10278

7. ADMINISTERED BY (If other than item 6) — CODE: E3M1130
ADMINISTRATICE SERVICES SECT.
USACOE-NYD 26 FEDERAL PLAZA CENAN-CO-CA
NEW YORK NY 10278-0090

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
GREAT LAKES DREDGE & DOCK COMPANY
BRADLEY HANSEN
2122 YORK ROAD
OAKBROOK IL 60523-1989

CODE 1BSU5 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MOD. OF CONTRACT/ORDER NO. W912DS-04-C-0008

X 10B. DATED (SEE ITEM 13) 17-Feb-2004

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☒ is required to sign this document and return 3 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

The purpose of this modification is to provide (1) additional permitted processing site and (2) additional permitted disposal sites for the Upland Material.

Port Jersey Channel Navigation Improvement Project, Contract 2, Area 2A

a. DESCRIPTION: Add (1) additional permitted processing site and (2) additional permitted disposal sites for Upland Material to the existing permitted sites in the contract.

b. CONTRACT AMOUNT: The contract amount remains unchanged as a result of this modification. The contract amount is $37,320,650.00

c. CONTRACT DURATION: This modification shortens the contract completion date. The contract completion date is changed to 14 February 2005.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print): Steven F. O'Hara, Vice President

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print): ELLA D SNELL / CHIEF, CONTRACTING DIVISION
TEL: 212-264-0238 EMAIL: ella.d.snell@usace.army.mil

15B. CONTRACTOR/OFFEROR: [signature] (Signature of person authorized to sign)

15C. DATE SIGNED: 24 Sept 04

16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer)

16C. DATE SIGNED: 23-Sep-2004

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

G0101106350

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

The following have been added by full text:

SCOPE

Contract No. W912DS-04-C-0008
Modification R-0001, A00001
Standard Form 30
Page 2 of 2

D. SCOPE OF WORK: To provide (1) additional permitted processing site at DonJon facility at Berth 36 in Port Newark NJ and (2) additional permitted disposal sites at NJ Meadowlands Commission 1E Landfill in North Arlington NJ and Encap Golf Holdings site in Lyndhurst NJ for the Upland Material.

E. Contract Specifications: Contract Specification Section 02900, paragraph 6.2 Offloading, Processing and Disposal Facilities – Revise the Price Schedule Section 00010 as follows:

(1) Item 0001AC: Dredging, Offloading, Transportation, Delivery, Processing and Placement of Non-Rock Materials Unsuitable for Placement at the Hars, excludes Dewatering: Item 0001AD, Placement at the Contractor's Identified Processing and Disposal Facility (ies).

Add the following site:

Name of Site: DonJon Processing Facility, Berth 36
Name of POC: Mr. Tom Witte
Address of Site: Berth 36, Port Newark, NJ

(2) Item 0001AE: Dredging, Offloading, Transportation, Delivery and Placement of Non-Rock (Sand and Gravel) Materials Suitable for Placement Upland, excludes Dewatering: Item 0001AF and without Processing Placement at the Contractor's Identified Processing and Disposal Facility (ies) as in Item 0001AC.

Add the following site:

Name of Site: DonJon Processing Facility, Berth 36
Name of POC: Mr. Tom Witte
Address of Site: Berth 36, Port Newark, NJ

F. Contract Drawings: There are no changes to the contract drawings.

G. It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor and his suppliers for all the costs and markups directly and indirectly attributable to the change described herein, for all delays related thereto, and for performance of the change within the time frame stated.

(End of Summary of Changes)

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

| 1. CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|
| | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(If applicable)* |
|---|---|---|---|
| P00004 | See 16.C | R0001 | |

**6. ISSUED BY** CODE

Department of the Army
U.S. Army Engineer District, New York
26 Federal Plaza
New York, NY 10278-0090

**7. ADMINISTERED BY** *(If other than Item 6)* CODE

U.S. Army Engineer District, NY
Metro New York Area Office
Ft. Hamilton, New York

**8. NAME AND ADDRESS OF CONTRACTOR** *(No., street, county, State and ZIP Code)*

Great Lakes Dredge & Dock
2122 York Road
Oak Brook, Illinois 60523

CODE | FACILITY CODE

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

X 10A. MODIFICATION OF CONTRACTS/ORDER NO.
W912DS-04-C-0008

10B. DATED *(SEE ITEM 13)*
17 Feb 2004

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

**12. ACCOUNTING AND APPROPRIATION DATA** *(If required)*

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| (✓) | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. FAR 52.243-4 CHANGES CLAUSE |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation date, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER *(Specify type of modification and authority)* |

**E. IMPORTANT:** Contractor ☐ is not, ☒ is required to sign this document and return 3 copies to the issuing office.

**14. DESCRIPTION OF AMENDMENT/MODIFICATION** *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Port Jersey Channel Navigation Improvement Project, Contract 2, Area 2A

a. DESCRIPTION: Add (1) additional permitted processing site and (2) additional permitted disposal sites for Upland Material to the existing permitted sites in the contract.

b. CONTRACT AMOUNT: The contract amount remains unchanged as a result of this modification. The contract amount is $37,320,650.00.

c. CONTRACT DURATION: This modification shortens the contract completion date. The contract completion date is changed to 14 February 2005.

See page 2 for continuation

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | | 16A. NAME AND TITLE OF CONTRACTING OFFICER *(Type or print)* Ella D. Snell, Chief Contracting Division Contracting Officer | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR (Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY (Signature of Contracting Officer) | 16C. DATE SIGNED 23 Sep 04 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105-02

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

USAPPC V2.00

Contract No. W912DS-04-C-0008
Modification R-0001, A00001
Standard Form 30
Page 2 of 2

D. SCOPE OF WORK: To provide (1) additional permitted processing site at DonJon facility at Berth 36 in Port Newark NJ and (2) additional permitted disposal sites at NJ Meadowlands Commission 1E Landfill in North Arlington NJ and Encap Golf Holdings site in Lyndhurst NJ for the Upland Material.

E. Contract Specifications: Contract Specification Section 02900, paragraph 6.2 Offloading, Processing and Disposal Facilities – Revise the Price Schedule Section 00010 as follows:

(1) Item 0001AC: Dredging, Offloading, Transportation, Delivery, Processing and Placement of Non-Rock Materials Unsuitable for Placement at the Hars, excludes Dewatering: Item 0001AD, Placement at the Contractor's Identified Processing and Disposal Facility (ies).

Add the following site:

Name of Site: DonJon Processing Facility, Berth 36
Name of POC: Mr. Tom Witte
Address of Site: Berth 36, Port Newark, NJ

(2) Item 0001AE: Dredging, Offloading, Transportation, Delivery and Placement of Non-Rock (Sand and Gravel) Materials Suitable for Placement Upland, excludes Dewatering: Item 0001AF and without Processing Placement at the Contractor's Identified Processing and Disposal Facility (ies) as in Item 0001AC.

Add the following site:

Name of Site: DonJon Processing Facility, Berth 36
Name of POC: Mr. Tom Witte
Address of Site: Berth 36, Port Newark, NJ

F. Contract Drawings: There are no changes to the contract drawings.

G. It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor and his suppliers for all the costs and markups directly and indirectly attributable to the change described herein, for all delays related thereto, and for performance of the change within the time frame stated.

# BASIC CHANGE DOCUMENT (BCD)



| MOD SERIAL NO. | CONTRACT NO. | INCEPTION DATE | DATE COMPLETED |
|---|---|---|---|
| R0001 | W912DS-04-C-0008 NA | 09 Sep 2004 | 09 Sep 2004 |

PROJECT Port Jersey II (Contract 2)
LOCATION Port Jersey Channel

CONTRACTOR
Great Lakes Dredge & Dock Company

PART A. 1. DESCRIPTION OF CHANGE — 2. SPEC/DWG

Addition of Processing & Disposal Sites

1. Addition of (1) Processing & (2) Disposal Sites for Upland
To provide (1) additional processing site at DonJon facility at Berth 36 in Port Newark and (2) additional disposal sites at NJ Meadowlands Commission 1E Landfill in North Arlington NJ and Encap Golf Holdings Site in Lyndhurst NJ for the Upland Material.

Specification Paragraph: 02900, para 6.2
Initial Estimate: $0.00 Time Extension: -137 Days

CHANGE IN DRAWINGS
There are no changes to the contract drawings.

CHANGE IN SPECIFICATIONS
Specification Section 02900 paragraph 6.2 Offloading, Processing and Disposal Facilities - Revise this
paragraph to include the addition of the DonJon processing site at Berth 36, Port Newark

3. TIME EXTENSION ☐ YES ☒ NO CALENDAR DAYS -137 4. TOTAL $0.00

5. NECESSITY FOR CHANGE *(Attach a copy of Directive letter of authority from OCE or Using Service and brief statement as to necessity of contract action. Include any special construction requirements or known quantitities. Include any information regarding status of work in progress and future activities that will be affected by this change).*

1. Addition of (1) Processing & (2) Disposal Sites for Upland
To provide additional capacity for the processing and disposal of upland material.

Ref Spe Section 0800 Par 1.39

PART B. 1. CONTROL DATES

| ITEM REQUIRED | YES | NO | DATE REQUIRED | ACTION REQUIRED BY |
|---|---|---|---|---|
| PLANS | | X | | |
| SPECIFICATIONS | | X | | |
| COST ESTIMATE | X | | 14 Sep 2004 | SGuirgui |
| MODIFICATION | X | | 19 Sep 2004 | RConetta |

2. FUNDS STATUS
- FUNDS RESERVED ☐
- FUNDS COMMITTED ☐
- NOT AVAILABLE ☐
- FUNDS BEING REQUESTED ☐
- DESIGN FUNDS REQUESTED ☐

| REQUESTED BY | RECOMMENDED APPROVAL BY | CHANGE APPROVED BY |
|---|---|---|
| Salvatore DiDato<br>Team Leader | Ron Conetta<br>Resident Engineer | Ron Conetta<br>Resident Engineer |

RMS FORM 747

G0101106354

REC'D. CONTRACTING DIV
CORPS OF ENGINEERS
NEW YORK DISTRICT

SEP 22 3 51 PM '04

# BASIC CHANGE DOCUMENT (BCD)



| MOD SERIAL NO. | CONTRACT NO. | INCEPTION DATE | DATE COMPLETED |
|---|---|---|---|
| R0001 | W912DS-04-C-0008 NA | 09 Sep 2004 | 09 Sep 2004 |
| PROJECT Port Jersey II (Contract 2)<br>LOCATION Port Jersey Channel | | CONTRACTOR<br>Great Lakes Dredge & Dock Company | |

PART A. 1. DESCRIPTION OF CHANGE (Continued)

and the 2 disposal sites at 1E Landfill in North Arlington NJ and Encap Golf Holdings in Lyndhurst NJ for Upland Material.