# EXHIBIT 18

Welcome to the US Army Corps of Engineers
Navigation Data Center

NDC Home
Back
Data

# Dredging Information System

## Number of Contracts, Cubic Yards, and Total Bid Dollars by Type of Material Disposal and Fisc

| | | FY | | | | |
|---|---|---|---|---|---|---|
| DISPTYPE | Data | 2000 | 2001 | 2002 | 2003 | |
| Beach Nourishment | Contracts | 31 | 39 | 28 | 28 | |
| | Cubic Yards (Bid) | 13,913,578 | 25,330,073 | 11,679,137 | 11,465.600 | |
| | Dollars (Bid) | $76,278,927 | $124,321,650 | $73,422,901 | $70,604,727 | $: |
| Confined | Contracts | 22 | 18 | 20 | 17 | |
| | Cubic Yards (Bid) | 29,577,783 | 12,310,036 | 22,772,591 | 12,989,979 | |
| | Dollars (Bid) | $83,689,515 | $53,329,854 | $87,857,386 | $56,374,834 | $: |
| Underwater Confined | Contracts | 2 | 2 | 3 | 1 | |
| | Cubic Yards (Bid) | 422,000 | 1,274,470 | 3,037,400 | 958,000 | |
| | Dollars (Bid) | $2,815,777 | $6,185,200 | $7,779,120 | $2,417,303 | $: |
| Mixed Modes | Contracts | 11 | 16 | 11 | 9 | |
| | Cubic Yards (Bid) | 11,446,158 | 37,690,000 | 20,233,172 | 8,653,414 | |
| | Dollars (Bid) | $39,239,989 | $147,144,105 | $210,342,999 | $71,158,686 | $: |
| Overboard & Open Wate | Contracts | 45 | 45 | 47 | 70 | |
| | Cubic Yards (Bid) | 55,427,368 | 86,454,312 | 80,949,400 | 95,889,350 | |
| | Dollars (Bid) | $153,371,744 | $186,228,633 | $130,112,325 | $204,529,441 | $1: |
| Open Water & Upland | Contracts | 15 | 7 | 9 | 4 | |
| | Cubic Yards (Bid) | 15,758,050 | 6,974,600 | 22,798,000 | 6,407,000 | |
| | Dollars (Bid) | $39,380,925 | $14,339,473 | $169,574,860 | $42,495,259 | $1: |
| Beach Nour and Upland | Contracts | 1 | 2 | 5 | 6 | |
| | Cubic Yards (Bid) | 400,000 | 1,109,430 | 4,520,100 | 2,316,500 | |
| | Dollars (Bid) | $2,179,146 | $3,562,381 | $42,670,477 | $8,682,326 | : |
| Upland | Contracts | 18 | 24 | 24 | 25 | |
| | Cubic Yards (Bid) | 12,427,801 | 14,940,173 | 36,000,178 | 18,106,224 | |
| | Dollars (Bid) | $53,200,253 | $90,935,840 | $206,436,689 | $66,795,398 | $1: |
| Wetland Nour or Creatio | Contracts | 3 | 7 | 5 | 4 | |
| | Cubic Yards (Bid) | 10,700,000 | 28,628,142 | 7,160,000 | 11,425,000 | |
| | Dollars (Bid) | $32,694,260 | $114,727,257 | $16,725,500 | $14,810,000 | $ |
| Undefined | Contracts | 16 | 15 | 14 | 12 | |
| | Cubic Yards (Bid) | 7,636,200 | 8,047,540 | 20,404,382 | 10,380,900 | |
| | Dollars (Bid) | $104,968,712 | $49,352,303 | $68,706,842 | $62,392,733 | $: |
| Total Contracts | | 164 | 175 | 166 | 176 | |
| Total Cubic Yards (Bid) | | 157,765,938 | 222,758,776 | 229,554,360 | 178,591,967 | 1: |
| Total Dollars (Bid) | | $587,819,249 | $790,126,695 | $1,013,629,099 | $600,260,707 | $6 |

Fiscal Year = 1 October to 30 September

**Material Disposal** - manner in which dredge material is placed.
**Beach Nourishment** - beach restoration in which hydraulically pumped dredge material is directly placed onto an eroded beach.
**Confined** - placement of dredged material within diked nearshore or upland confined placement facilities that enclose and isolate the dredged material from adjacent waters.
**Mixed** - dredging operation that uses more than one dredged material placement alternative.

TDM006578

# EXHIBIT 19

P R O P R I E T A R Y

IN THE UNITED STATES COURT

OF FEDERAL CLAIMS

-----------------------------x

TDM AMERICA, LLC,

Plaintiff,

vs. No. 06-472

THE UNITED STATES OF AMERICA,

Defendant.

and

DONJON MARINE COMPANY, INC.,

Interested Party.

-----------------------------x

September 19, 2007
9:41 a.m.

Deposition of BRYCE W. WISEMILLER, held at the offices of Davidoff Malito & Hutcher LLP, 605 Third Avenue, New York, New York, pursuant to Notice, before Theresa Tramondo, a Notary Public of the State of New York.

APPEARANCE OF COUNSEL:
FOR PLAINTIFF TDM AMERICA:
DAVIDOFF MALITO & HUTCHER LLP
BY: MICHAEL A. ADLER, ESQ.
DIMITRA TZORTZATOS, ESQ.
605 Third Avenue
New York, New York 10158
(212) 557-7200
maa@dmlegal.com

FOR DEFENDANT THE UNITED STATES OF AMERICA and WITNESS:
U.S. DEPARTMENT OF JUSTICE
BY: ERICA A. FRANKLIN, ESQ.
1100 L Street N.W.
Washington, DC 20530
(202) 353-0517
erica.franklin@usdoj.gov



APPEARANCE OF COUNSEL (CONT'D):

FOR DEFENDANT U.S. ARMY CORPS OF ENGINEERS:
U.S. ARMY CORPS OF ENGINEERS
BY: RITA M. FANG, ESQ.
26 Federal Plaza
New York, New York 10278
(917) 790-8062
rita.m.fang@usace.army.mil

FOR INTERESTED PARTY DONJON MARINE COMPANY, INC.:
McCARTER ENGLISH
BY: JOHN E. FLAHERTY, ESQ.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4056
(973) 622-444
Jflaherty@mccarter.com



BRYCE W. WISEMILLER,
called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:
EXAMINATION BY
MR. ADLER:
MR. ADLER: Please mark this as Plaintiff's Exhibit 151.
(Plaintiff's Exhibit 151, document entitled "Third Amended Notice of Rule 30(b)(6) Deposition With Document Demand," marked for identification, as of this date.)
Q. State your name for the record please.
A. Bryce Wade, W-A-D-E, Wisemiller.
Q. What is your address?
A. Business address, U.S. Army Corps of Engineers, New York District, 26 Federal Plaza, New York, New York 10278.
Q. Good morning, Mr. Wisemiller. I know you've had previously depositions in this case, so welcome back.
As you know, my name is Michael



Wisemiller - Proprietary
Adler, and I am here with Dimitra Tzortzatos. We represent the plaintiff in this case, TDM America, LLC. The ground rules are similar as we discussed the last time. Any time you want to break, let us know, and we will give you a break. The only responses that can be transcribed on the transcript are those that are audible, so please make sure that your answers are understood and are verbal. If at any time you don't understand something, just say so, and I will attempt to clarify or rephrase it.
Do you understand that?
A. Yes.
Q. Let the record reflect that I'm providing the witness with Plaintiff's Exhibit 151, entitled "Third Amended Notice of Rule 30(b)(6) Deposition With Document Demand."
Mr. Wisemiller, please review what has been marked as Exhibit 151. Please advise me whether or not you've seen this exhibit prior to today.
A. Yes, I have.

Wisemiller - Proprietary
Q. Are you here pursuant to this notice of deposition?
A. Yes.
MS. FRANKLIN: I would like to just clarify. This witness is here subject to objections submitted by the United States on about May 25, 2007.
I would also like to go ahead and request an opportunity for the witness to review his testimony today, and this transcript shall be designated as "proprietary" insofar as if there is any testimony regarding processes of subcontractors or contractors.
Q. Mr. Wisemiller, are you aware that today you're here to represent the United States for this deposition?
A. Insofar as the New York District activities with this lawsuit is my understanding.
Q. Therefore, when I ask you "the U.S." or I say "you" during the deposition, which I assure you will occur many times, I don't mean you personally. I mean you here



Wisemiller - Proprietary
in your representative capacity today.
A. I understand that.
Q. If you do have a different feeling and you wish to express that, you may feel free to do so, and that's fine, but you're here as a representative of the U.S.
Did you prepare for today's deposition?
A. Yes.
Q. How did you go about preparing for today's deposition?
A. I reviewed the past exhibits that we had done on the prior two depositions.
Q. Anything else?
A. Reviewed this Exhibit 151, for example; talked to some of the co-workers in our agency.
Q. When you talked to the co-workers of the agency, was counsel present?
A. Not always.
Q. So who were the co-workers that you spoke to?
A. Oh, gee, Hal Hawkins. He's given a deposition. John Tavolaro, Sam, Salvatore



Wisemiller - Proprietary
Didato. He goes by Sammy. Mark Kucera, a project engineer. I don't recall anyone else specifically by name on that.
Q. With respect to the documents, did you review any documents other than those that have already been marked as exhibits?
A. Not specifically related to preparing for this case. There may be other documents of projects which I personally work on that may have some informational value to this case.
Q. With respect to preparing for this deposition, do you recall about when you spoke to Mr. Hal Hawkins?
A. I speak to Mr. Hawkins many times a day. I think the last time I spoke to him specifically related to this case was, actually, I guess asking him questions as to how his deposition went after last time. I did ask him some questions about one of our contracts yesterday.
Q. When you asked him about how this deposition went, did he respond?
A. Yes.



Wisemiller - Proprietary
Q. Do you recall his response?
MS. FRANKLIN: Objection.
A. It went well he said.
Q. And which contract did you discuss with him?
A. I don't know by contract number offhand. I'd have to look at a sheet, but it was one of the Kill Van Kull and Newark Bay deepening contracts.
Q. Do you recall what you discussed with him?
A. Yes.
Q. What was that?
A. I was asking him questions related to the contract, which was referred to as Contract Area 7, that was done in 2001, approximately, 2002.
Q. What were you discussing?
A. The contract options and how they were laid out and our arrangements with our project sponsor.
Q. What is the project sponsor?
A. The project sponsor for that project is the Port Authority of New York and

Page 10

Wisemiller - Proprietary
New Jersey.
Q. And what specifically did you discuss?
A. The contract options on that contract.
Q. Which options?
A. I am sorry. There are two options. It was the second option.
Q. Which relates?
A. Which relates to the placement site location.
Q. Do you recall what that was; do you recall where the placement site location was?
A. The base contract had the placement site for the material which was unsuitable for HARS, Historic Area Remediation Site. The placement site identified under the basic on that contract was OENJ Cherokee Bayonne. The second option related to the cost differential for taking that material to the Newark Bay CDF instead of to the OENJ Bayonne processing facility.
Q. Do you recall your discussions with John Tavolaro?

Page 11

Wisemiller - Proprietary
MS. FRANKLIN: Objection.
Q. With respect to preparing for this deposition?
A. It was via e-mail, and counsel was involved providing information relating to counsel.
Q. How about your conversations with respect to preparing for today's deposition that you had with Sam Didato?
A. It related to the placement of material unsuitable for the HARS at the OENJ Cherokee Bayonne site from the KVK Area 7 Contract.
Q. When you said it relates to the -- I think you said the upland disposal -- is that what you mentioned -- where was that?
A. I just said in Bayonne.
Q. Oh, Bayonne it was.
How about do you recall your conversations with Mark Kucera that you had with respect to preparing for today's deposition?
A. My discussion with Mark Kucera related to the dredging that was done related

Page 12

Wisemiller - Proprietary
to a waterfront development contract known as Minish Park Contract Number 2.
MS. FRANKLIN: I am going to caution the witness not to testify regarding any communications that involve attorney-client privilege.
Q. Did that Minish contract include treatment of dredge material with an additive such as Portland cement.
A. I believe the objection that counsel raised, this is related to discussions with counsel.
Q. I am asking you generally. Did the contract with respect to Minish --
A. Oh, I'm trying not to break rules.
Q. You're entitled to ask, and I don't want to confuse you.
A. My understanding is that there was some form of processing done of the materials that were dredged on that contract. It was less than a thousand cubic yards, and it was done approximately five years ago.
Q. Do you know who the contractor was?
A. Cruz Construction, C-R-U-Z.

Page 13

Wisemiller - Proprietary
Q. Do you know if there is any relationship --
A. The prime contractor, I mean.
Q. Do you know who the --
Do you know whether or not Cruz Construction was also the entity that actually treated the dredge material?
A. I do not.
Q. Do you know where the treatment of dredge material occurred?
A. My understanding, talking to Mr. Kucera, was that the processing of the material occurred on site in ditches that were constructed or that were there as part of the construction activity that they were doing with the bulkhead and waterfront development.
Q. Do you know whether or not the material was treated in a Pugmill, P-U-G-M-I-L-L?
A. That is not my understanding.
Q. Now, as you are aware, you personally testified earlier in this case on two days, May 10th and May 22nd of this year.