# EXHIBIT 1

PROJECT COOPERATION AGREEMENT
BETWEEN
THE DEPARTMENT OF THE ARMY
AND
THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
FOR CONSTRUCTION OF THE
THE KILL VAN KULL AND NEWARK BAY CHANNELS NEW YORK AND NEW JERSEY

THIS AGREEMENT is entered into this 13TH day of JAN, 1999, by and between the DEPARTMENT OF THE ARMY (hereinafter the "Government"), represented by the Assistant Secretary of the Army (Civil Works), and THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY (hereinafter the, "PORT AUTHORITY" represented by the Executive Director of the Port Authority.

WITNESSETH, THAT:

WHEREAS, construction of the Kill Van Kull and Newark Bay Channels, New York and New Jersey Project was authorized by Supplemental Appropriation Act of 1985, P.L. 99-88; Section 202(a) of the Water Resources Act of 1986, P.L. 99-662, as amended by, Section 301(b)(12) of the Water Resources Development Act of 1996, P.L. 104-303.

WHEREAS, the Government and the Port Authority desire to enter into a Project Cooperation Agreement for construction of the Kill Van Kull and Newark Bay Channels, New York and New Jersey Project (hereinafter the "Project", as defined in Article I.A. of this Agreement);

WHEREAS, Section 101 of the Water Resources Development Act of 1986, Public Law 99-662, as amended, specifies the cost-sharing requirements applicable to this Project;

WHEREAS, Section 221 of the Flood Control Act of 1970, Public Law 91-611, as amended, and Section 101 of the Water Resources Development Act of 1986, Public Law 99-662 (codified as amended at 42 U.S.C. § 1962d-5b), provide, *inter alia*, that the Secretary of the Army shall not commence construction of any water resources project, or separable element thereof, until each non-Federal sponsor has entered into a written agreement to furnish its required cooperation for the project or separable element;

WHEREAS, Section 902 of Public Law 99-662 establishes the maximum amount of costs for the authorized Project and sets forth procedures for adjusting such maximum amount;

WHEREAS, the Government and the Port Authority have the full authority and capability to perform as hereinafter set forth and intend to cooperate in cost-sharing and financing of the Project in accordance with the terms of this Agreement and the authorization of its Board of

Commissioners, a copy of which is attached hereto; and

WHEREAS, the Government and the Port Authority, in connection with this Agreement, desire to foster a "partnering" strategy to foster a working relationship between the Government and the Port Authority through a mutually developed formal strategy of commitment and communication embodied herein, which creates an environment where trust and team work prevent disputes, foster a cooperative bond between the Government and the Port Authority, and facilitate the completion of a successful project; and

WHEREAS, the Comprehensive Plan for the Development of Port of New York enacted by the legislatures of New York and New Jersey provides at New York Unconsolidated Laws Ch. 153 S1, and the Laws of New Jersey 1922, Chap. 9 §1.

"That there should be urged upon the federal authorities improvements of channels so as to give access for that type of waterborne commerce adapted to the various forms of development which the respective shore fronts and adjacent lands of the port would best lend themselves to;" and

WHEREAS, the Port Authority has determined that its entering into of this Agreement is in furtherance of said legislative mandate and the Government's agreement to contract for the construction of the general navigation features in consultation with the Port Authority as set forth in this Agreement and the anticipated resulting contracts for the work described in this Agreement and the performance thereof are intended to constitute a material benefit to the Port Authority; and

WHEREAS, the parties recognize that the Port Authority believes that there is a critical need to initiate and complete the Project and have pledged to take all steps necessary and reasonable to complete the Project as expeditiously as possible
and to work together in seeking all necessary approvals and appropriations toward that goal, and

WHEREAS, the Government realizes that the Port Authority will be seeking the necessary appropriations from Congress to complete the Project as expeditiously as possible and that the Port Authority will consider the Project a priority in undertaking such efforts, and

WHEREAS, Section 11 of the River and Harbor Act, approved March 3, 1925 (43 Stat. 1197, 33 U.S.C. §561) authorizes the Secretary, in his discretion, to accept and expend funds advanced by local interests for authorized river and harbor projects, and

WHEREAS, Section 4 of the River and Harbor Act, approved March 4, 1915 (38 STAT 1053, 33 U.S.C. §560), authorizes the Secretary, in his discretion, to receive and expend contributed funds for any authorized work of public improvement of rivers and harbors whenever such work and expenditure may be considered by the Chief of Engineers as advantageous to the interests of navigation; and,

WHEREAS, the Port Authority desires to accelerate construction of the general navigation features of the Project and toward that end may undertake the construction of in channel cells as a Regional Dredged Disposal Facility which will be available for the disposal of certain dredged material from the Project, subject to compliance with the requirements of all applicable environmental laws, subject to issuance of all necessary permits, and subject to a determination that it is economically feasible to utilize the in channel cells in lieu of other methods of disposal of dredged material.

WHEREAS, the parties understand that as the Project continues it may be desirable for the parties to supplement or amend this Agreement to reflect the responsibilities for the conduct of certain project work and any changes in the Project, including costs.

NOW, THEREFORE, the Government and the Port Authority agree as follows:

ARTICLE I -DEFINITIONS AND GENERAL PROVISIONS

For purposes of this Agreement:

A. The term "Project" shall mean the general navigation features and all lands, easements, rights-of-way, relocations, or removals that the Government, in accordance with Article III of this Agreement, determines to be necessary for the construction, operation, or maintenance of the general navigation features, but shall not include aids to navigation or the local service facilities.

B. The term "general navigation features" shall mean the deepening from 40 to 45 feet below mean low water of the Kill Van Kull and Newark Bay Channels including any over depth dredging, as generally described in the Limited Reevaluation Report dated April 1997, as modified in December 1997 pursuant to approval and direction provided by the Assistant Secretary of the Army, (Civil Works) in October 1997; and including possible dredged material disposal facilities, land-based and aquatic dredged material disposal, facilities that are necessary for the disposal of dredged material required for project construction.

C. The term "local service facilities" shall mean the facilities that are necessary to realize the benefits of the general navigation features, as specifically described in, and required of the Port Authority by the Limited Reevaluation Report.

D. The term "total cost of construction of the general navigation features" shall mean all costs incurred by the Port Authority or the Government in accordance with the terms of this Agreement directly related to construction of the general navigation features. Subject to the provisions of this Agreement, the term shall include, but is not necessarily limited to: continuing planning and engineering costs incurred after October 1, 1985; advanced engineering and design costs; preconstruction engineering and design costs including the value of the PED Coordination

Team Activities in accordance with Article II.H. of this Agreement; engineering and design costs during construction; the costs of investigations to identify the existence and extent of hazardous substances in accordance with Article XV.A.1 of this Agreement; costs of historic preservation activities in accordance with Articles XVIII.A. and XVIII.D.1 of this Agreement; actual construction costs, supervision, administration costs; costs of participation in the Project Coordination Team in accordance with Article V of this Agreement; costs of contract dispute settlements or awards; incidental costs of removals accomplished by the Port Authority before the end of the period of construction or during any subsequent period of construction in accordance with Article II.O. of this Agreement; direct and incidental costs of removals accomplished by the Government before the end of the period of construction or during any subsequent period of construction in accordance with Article II.N. of this Agreement; and costs of audit in accordance with Articles X.B. and X.C. of this Agreement; costs of dredged material disposal facilities including land-based and aquatic dredged material disposal facilities necessary for the disposal of dredged material as required by this Agreement. The term does not include the value of any lands, easements, rights-of-way, relocations, or any direct costs of removals accomplished by the Port Authority; any financial obligations for operation or maintenance of the general navigation features, any costs assigned to existing navigation features pursuant to Article II E. of this Agreement; any costs due to betterments; or any costs of dispute resolution under Article VII of this Agreement; any costs of aids to navigation; any costs of additional insurance coverage requested by the Port Authority pursuant to Article XX of this Agreement; or any costs of construction, operation or maintenance of the local service facilities.

E. The term "financial obligation for construction" shall mean a financial obligation of the Government that results or would result in a cost that is or would be included in the total cost of construction of the general navigation features.

F. The term "non-Federal proportionate share" shall mean the ratio of the Port Authority's total cash contribution required in accordance with Article II.G. of this Agreement to total financial obligations for construction, as projected by the Government.

G. The term "period of construction" shall mean the time from the date the Government first notifies the Port Authority in writing, in accordance with Article VI.B. of this Agreement, of the scheduled date for issuance of the solicitation for the first contract for construction of the general navigation features to the date that the U.S. Army Engineer for the New York District (hereinafter the "District Engineer") notifies the Port Authority in writing of the Government's determination that construction of the general navigation features is complete, other than construction of any Project dredged or excavated material disposal facility for which a construction contract has not been awarded at the time of the written notice.

H. The term "highway" shall mean any public highway, roadway, street, or way, including any bridge thereof.

I. The term "bridge over navigable waters of the United States" shall mean a lawful bridge over the navigable waters of the United States, including approaches, fenders, and appurtenances thereto, which is used and operated for the purpose of carrying railroad traffic, or both railroad and highway traffic, or if a State, county, municipality, or other political subdivision is the owner or joint owner thereof, which is used and operated for the purpose of carrying highway traffic.

J. The term "relocation" shall mean providing a functionally equivalent facility, to the owner of an existing utility, cemetery, highway, railroad (including any bridge thereof), or public facility, excluding existing bridges over navigable waters of the United States, when such action is required in accordance with applicable legal principles of just compensation or providing a functionally equivalent facility when such action is specifically provided for, and is identified as a relocation, in the authorizing legislation for the Project or any report referenced therein. Providing a functionally equivalent facility may take the form of alteration, lowering, raising, or replacement and attendant demolition of the affected facility or part thereof.

K. The term "removal" shall mean eliminating an obstruction (other than a bridge over the navigable waters of the United States) where the Government determines, after consultation with the Port Authority, that: 1) elimination is necessary for the construction, operation, or maintenance of the general navigation features, including the borrowing of material or the proper disposal of dredged or excavated material associated therewith; 2) elimination must be accomplished before the end of the period of construction or during a subsequent period of construction; 3) the Port Authority, the State of New York or the State of New Jersey, or the Government has the legal capability to accomplish elimination of the obstruction at the expense of the owner or operator thereof. The term also shall mean the elimination of an obstruction to the construction, operation, or maintenance of the general navigation features when such elimination is specifically provided for, and is identified as a removal, in the authorizing legislation for the Project or any report referenced therein.

L. The term "fiscal year" shall mean one fiscal year of the Government. The Government fiscal year begins on October 1 and ends on September 30.

M. The term "betterment" shall mean a change in the design and construction of an element of the general navigation features accomplished at the request of the Port Authority resulting from the application of standards that the Government determines exceed those that the Government would otherwise apply for accomplishing the design and construction of that element.

N. The term "dredged or excavated material disposal facility" shall mean the improvements necessary on lands, submerged lands, easements, or rights-of-way to enable the proper disposal of dredged or excavated material associated with the construction, operation, or maintenance of the other general navigation features. Such improvements may include but are not necessarily limited to, retaining dikes, wasteweirs, bulkheads, embankments, monitoring

features, stilling basins, or de-watering pumps or pipes.

O. The term "over-depth" shall mean additional depth required to accomplish advanced maintenance, if any, and to compensate for dredging inaccuracies.

P. The term "utility" shall mean that which the states of New York or New Jersey, pursuant to generally applicable state law, defines as a public utility.

Q. The term "PED Coordination Team Activities" shall mean the oversight of issues related to preconstruction engineering and design, including scheduling of report and work products; development of plans and specifications; anticipated real property and relocation requirements for construction or implementation of the Project; contract awards and modifications; contract costs; the Government's cost projections; anticipated requirements and needed capabilities for performance of operation, maintenance, repair, replacement and rehabilitation of the Project; and other related matters.

R. The term "subsequent period of construction" shall mean the time from the date the Government first notifies the Port Authority in writing of the scheduled date for issuance of the solicitation for the contract for construction, after the period of construction or any other subsequent period of construction, of a Project dredged or excavated material disposal facility to the date that the District Engineer notifies the Port Authority in writing of the Government's determination that construction of the Project dredged or excavated material disposal facility is complete.

S. The term "the requirements of all applicable environmental laws" shall mean compliance with all applicable public laws and regulations of the Government relating to the protection of the environment. These shall include, but not be limited to, the environmental requirements necessary to achieve compliance with the National Environmental Policy Act, Clean Water Act, Endangered Species Act, Fish and Wildlife Coordination Act, National Historic Preservation Act, and the Clean Air Act.

## ARTICLE II -OBLIGATIONS OF THE PARTIES

A. The Government, subject to receiving funds appropriated by the Congress of the United States (hereinafter the "Congress") and using those funds and funds provided by the Port Authority, shall, in consultation with the Port Authority, expeditiously construct the general navigation features (including alteration, lowering, raising, or replacement and attendant removal of existing bridges over navigable waters of the United States), applying those procedures applied to Federal projects, pursuant to Federal laws, regulations, and policies.

1. The Government shall afford the Port Authority the opportunity to review and comment on the solicitations for all contracts, including relevant plans and specifications, prior

to the Government's issuance of such solicitations. The Government shall not issue the solicitation for any contract until the Port Authority has confirmed in writing its willingness to proceed with the Project and the local service facilities. In the case of any disagreement regarding the aforesaid, however, no bids will be solicited until the parties have had the opportunity to meet and attempt to resolve any differences. The Government shall afford the Port Authority the opportunity to review and comment on all proposed contract modifications, including change orders. The Government also shall afford the Port Authority the opportunity to review and comment on all contract claims prior to resolution thereof. The Government shall consider in good faith the comments of the Port Authority, but the contents of solicitations, award of contracts, execution of contract modifications, resolution of contract claims, and performance of all work on the general navigation features (whether the work is performed under contract or by Government personnel), shall be exclusively within the control of the Government.

2. Throughout the period of construction and during any subsequent period of construction, the District Engineer shall furnish the Port Authority with a copy of the Government's Written Notice of Acceptance of Completed Work for each contract for the general navigation features.

3. Notwithstanding paragraph A.1. of this Article, if the award of any contract for construction of the general navigation features would result in cumulative financial obligations for construction exceeding $732,743,000, the Government and the Port Authority agree to defer award of that contract and all subsequent contracts for construction of the general navigation features until such time as the Government and the Port Authority agree to proceed with further contract awards for the general navigation features, but in no event shall the award of contracts be deferred for more than Ninety (90) days. Notwithstanding this general provision for deferral of contract awards, the Government, after consultation with the Port Authority, may award a contract or contracts after the Assistant Secretary of the Army (Civil Works) makes a written determination that the award of such contract or contracts must proceed in order to comply with law or to protect human life or property from imminent and substantial harm.

B. The Port Authority may request the Government to accomplish betterments. Such requests shall be in writing and shall describe the betterments requested to be accomplished. If the Government in its sole discretion elects to accomplish the requested betterments or any portion thereof, it shall so notify the Port Authority in a writing that sets forth any applicable terms and conditions, which must be consistent with this Agreement. This writing shall hold and save the Government free from damages due to the construction, operation, or maintenance of the betterments, except for damages due to the fault or negligence of the Government or its contractors. Both the parties shall sign this writing. In the event of conflict between such a writing and this Agreement, this Agreement shall control. The Port Authority shall be solely responsible for all costs due to the requested betterments and shall pay all such costs in accordance with Article VI.C. of this Agreement.

C. In accordance with Article III of this Agreement, the Port Authority shall provide all lands, easements, or rights-of-way that the Government determines the Port Authority must provide for the construction, operation, or maintenance of the general navigation features, including the borrowing of material or the disposal of dredged or excavated material associated therewith, and shall perform or ensure performance of all relocations that the Government determines to be necessary for the construction, operation, or maintenance of the general navigation features.

D. The Port Authority may request the Government to provide lands, easements, or rights-of-way or to perform relocations, for the general navigation features on behalf of the Port Authority. Such requests shall be in writing and shall describe the services requested to be performed. If in its sole discretion the Government elects to perform the requested services or any portion thereof, it shall so notify the Port Authority in a writing that sets forth any applicable terms and conditions, which must be consistent with this Agreement. In the event of conflict between such a writing and this Agreement, this Agreement shall control. The Port Authority shall be solely responsible for all costs of the requested services and shall pay all such costs in accordance with Article VI.C. of this Agreement. Notwithstanding the provision of lands, easements, or rights-of-way, or performance of relocations by the Government, the Port Authority shall be responsible, as between the Government and the Port Authority, for the costs of cleanup and response in accordance with Article XV.D of this Agreement.

E. The Government shall assign all costs associated with the dredging of material from the dimensions, including over-depth, of any existing navigation feature to the costs of operation and maintenance of the existing navigation feature. The Government, in accordance with Federal laws, regulations, and policies, shall assign all costs included or to be included in the total cost of construction of the general navigation features to one or more of the following depth increments: dredging to a depth not in excess of 20 feet; dredging to a depth in excess of 20 feet but not in excess of 45 feet; and dredging to a depth in excess of 45 feet. The Government shall include any costs associated with over-depth dredging accomplished as part of the general navigation features in the costs assigned to the authorized Project Depth.

F. The Port Authority shall contribute a share of the total cost of construction of the general navigation features as follows: 10 percent of that portion of the total cost of construction of the general navigation features assigned to dredging to a depth not in excess of 20 feet; plus 25 percent of that portion of the total cost of construction of the general navigation features assigned to dredging to a depth in excess of 20 feet but not in excess of 45 feet; plus 50 percent of that portion of the total cost of construction of the general navigation features assigned to dredging to a depth in excess of 45 feet.

G. If the Government projects that the value of the Port Authority's PED Coordination Team Activities; contributions under paragraph O. of this Article, and contributions under Articles V, X.B., X.C., and XV.A.1. of this Agreement will be less than its share required by paragraph F. of this Article, the Port Authority shall provide a cash contribution, in accordance

with Article VI.B. of this Agreement, in the amount necessary to meet its share required by paragraph F. of this Article.

H. The Government shall perform a final accounting in accordance with Article VI.D. of this Agreement to determine the value of the Port Authority's PED Coordination Team Activities; the Port Authority's contributions provided in accordance with paragraphs B., D., G., and O. of this Article, the amount of funds contributed or advanced in accordance with paragraphs Q and R of this Article, and the Port Authority's contributions provided in accordance with Articles V, XB., X.C., and XV.A.1. of this Agreement and to determine whether the Port Authority has met its obligations under paragraphs B., D., and F. of this Article. The final accounting also shall determine an amount equal to 10 percent of the total cost of construction of the general navigation features (hereinafter the "10 percent amount"). In the event there is a subsequent period of construction, the Government shall amend the final accounting in accordance with Article VI.E.5 of this Agreement.

I. Before furnishing the Port Authority with the results of the final accounting, the Government shall afford credit against the 10 percent amount for the value, as determined in accordance with Article IV of this Agreement, of lands, easements, rights-of-way, relocations, provided before the end of the period of construction; provided, however, that such credit shall not exceed the 10 percent amount. In accordance with Article VI.E. of this Agreement, the Port Authority shall, over a period not to exceed 30 years, pay an amount equal to the 10 percent amount reduced by such credit (hereinafter the "principal amount"), with interest. In accordance with Article VI.E.4. of this Agreement, the Government also shall afford credit against the principal amount for the value, as determined in accordance with Article IV of this Agreement, of the lands, easements, rights-of-way, relocations, provided after the period of construction.

J. Subject to applicable Federal laws and regulations, the Port Authority, at no cost to the Government and in a timely manner, shall construct the local service facilities, and shall be responsible for taking all actions to enable such construction. The Government shall have no responsibility under this Agreement for the construction of the local service facilities or the construction of any other facilities provided by the Port Authority or a third party.

K. In accordance with Article VIII.A. of this Agreement, the Port Authority, at no cost to the Government, shall operate and maintain the local service facilities. The Port Authority shall maintain the Port Authority berths at Port Newark and the Elizabeth Marine Terminal at 45 feet commensurate with the realization of the benefits of the general navigation features but in any event a depth of 45 feet will be maintained at no less than five berths at these facilities. The Government shall have no responsibility under this Agreement for the operation or maintenance of the local service facilities or the operation or maintenance of any other facilities provided by the Port Authority or a third party.

L. The Government shall operate and maintain the general navigation features in accordance with Article VIII.B. of this Agreement.

M. The Port Authority shall not use Federal funds to meet its obligations for the Project under this Agreement unless the Federal granting agency verifies in writing that the expenditure of such funds is expressly authorized by statute.

N. The Government shall accomplish all removals that neither the Port Authority nor the State of New York or the State of New Jersey has the legal capability to accomplish where both the Port Authority and either the States of New York or the State of New Jersey, whichever is appropriate, make a written request for the Government to accomplish such removals, and shall accomplish all removals that the Government is expressly required to accomplish in the authorizing legislation for the Project or any report referenced therein.

1. In the event a court determines that the owner of an obstruction is entitled to payment of just compensation as the result of elimination of the obstruction, such removal shall be reclassified as part of the Port Authority's responsibility to provide lands, easements, and rights-of-way, or to perform relocations, as appropriate, pursuant to Article II.C. of this Agreement.

2. All costs incurred by the Government in accomplishing removals shall be included in the total cost of construction of the general navigation features and shared in accordance with the provisions of this Agreement.

O. The Port Authority shall accomplish all removals, other than those removals specifically assigned to the Government by paragraph N. of this Article, in accordance with the provisions of this paragraph.

1. The Government, at least 90 days prior to the award of the first construction contract, shall provide the Port Authority with general written descriptions, including maps as appropriate, of such removals, in detail sufficient to enable the Port Authority to fulfill its obligations under this paragraph, and shall provide the Port Authority with a written notice to proceed with accomplishing such removals. Unless the Government agrees to a later date in writing, prior to the issuance of the solicitation for each Government contract for construction, operation, or maintenance of the general navigation features, or prior to the Government incurring any financial obligation for construction, operation, or maintenance of the general navigation features that it elects to perform with its own forces, the Port Authority shall accomplish all removals set forth in such descriptions that the Government determines to be necessary for that work.

2. In the event a court determines that the owner of an obstruction is entitled to payment of just compensation as the result of elimination of the obstruction, such removal shall be reclassified as part of the Port Authority's responsibility to provide lands, easements, and rights-of-way, or to perform relocations, as appropriate, pursuant to Article II.C. of this Agreement.

3. The documented incidental costs incurred by the Port Authority in accomplishing removals, shall be included in the total cost of construction of the general navigation features, subject to an audit in accordance with Article X.C. of this Agreement to determine reasonableness, allocability, and allowability of costs, and shared in accordance with the provisions of this Agreement. Incidental costs may include legal and administrative costs (such as owner or operator notification costs, public notice or hearing costs, attorney's fees, and litigation costs) incurred by the Port Authority in accomplishing removals, but shall not include any costs that the Port Authority or the State of New York or State of New Jersey has the legal capability to require of, assign to, or recover from the owner or operator of the obstruction.

P. Notwithstanding any other provision of this Agreement, neither party shall have any obligation under this Agreement with respect to provision of any dredged or excavated material disposal facility that is not a part of the Project, or with respect to the provision of lands, easements, rights -of-way, relocations, required therefor.

Q. The Port Authority may offer in writing to prepay a portion or all of its required cash contribution and the 10 percent amount during the period of construction or a subsequent period of construction, as applicable, to the Government for construction of the Project. This offer shall be limited to an amount that does not exceed the most current estimate of the total of the Port Authority's required cash contribution and the 10 percent amount for the Project, as determined by the Government in coordination with the Port Authority, less any funds previously contributed by the Port Authority. Upon receipt of such offer or offers, the Government, subject to receiving such approvals and concurrences as customarily are required for contributed funds, may accept the funds or such portion thereof as the Government determines to be necessary to meet the costs of construction of the general navigation features of the Project pursuant to Section 4 of the River and Harbor Act of 1915. Any funds contributed by the Port Authority pursuant to this paragraph shall be contributed gratuitously and without any expectation of reimbursement by the Government unless specifically directed by Congress in appropriations acts. Any contributed funds which are not expended by the Government on the Project shall be refunded to the Port Authority, subject to the availability of funds. If the Government elects to accept such funds, it shall notify the Port Authority of such acceptance in a writing that sets forth any applicable terms and conditions, including use of such funds by the Government, and that is consistent with this Agreement. In the event of a conflict between this Agreement and any such writing, this Agreement shall control.

R. The Port Authority may offer in writing to advance available funds to the Government for construction. Thereafter, the Government, subject to receiving such approvals and concurrences as customarily are required for advanced funds, may accept the funds, or such portion thereof as the Government determines to be necessary to meet the costs of construction, pursuant to Section 11 of the River and Harbor Act of 1925. The Government shall notify the Port Authority of such acceptance in a writing that sets forth any applicable terms and conditions, which must be consistent with this Agreement. In the event of a conflict between this Agreement

and any such writing, this Agreement shall control.

S. Any funds which are contributed in accordance with Article II. Q. of this Agreement, and any funds which are advanced in accordance with Article II. R. of this Agreement, shall be used by the Government to accelerate construction of the general navigation features of the Project. The parties shall confer and agree on how any such advanced funds can best be employed for that purpose.

T. As Federal appropriations are made available to pay the Federal share of construction of the Project, the Government shall afford credit for funds contributed and advanced during the period of construction in accordance with paragraphs II.Q. and II.R. of this Article against the Port Authority's required cash contribution and the 10 percent amount. The Government shall credit this amount, contributed and advanced during the period of construction, toward the Port Authority's 10 percent amount and the required cash contribution for the remainder of the period of construction. If after the final accounting at the end of the period of construction, it is determined that the Port Authority has contributed and advanced funds in excess of its required cash contributions for the general navigation features constructed during the period of construction and the principal amount as determined by Article II.I. of this Agreement equals $0, the Government shall not reimburse the Port Authority for any such excess funds contributed and advanced during the period of construction (hereinafter the "excess contributed and advanced funds") in accordance with paragraphs II.Q. and II.R. of this Article unless specifically directed by Congress in appropriations acts. At the request of the Port Authority, the Government may apply these excess contributed and advanced funds against the non-Federal share of the costs of construction of the general navigation features during a subsequent period of construction, in accordance with paragraph U. of this Article.

U. As Federal appropriations are made available to pay the Federal share of construction of the Project, the Government shall afford credit for the aforesaid excess contributed and advanced funds or for funds contributed and advanced during a subsequent period of construction in accordance with paragraphs II.Q. and II.R. of this Article against the Port Authority's required cash contribution and the 10 percent amount of the cost of a subsequent period of construction. The Government shall credit this amount toward the Port Authority's 10 percent amount and required cash contribution for the remainder of the subsequent period of construction. If after reconciling the final accounting at the end of a subsequent period of construction in accordance with Article VI.E.5. of this Agreement, it is determined that the Port Authority has contributed and advanced funds in excess of its required cash contributions for the general navigation features constructed during the subsequent period of construction and the principal amount as determined by Article II.I. of this Agreement equals $0, the Government shall not reimburse the Port Authority for any such excess funds contributed and advanced during the period of construction or during a subsequent period of construction in accordance with paragraphs II.Q. and II.R. of this Article unless specifically directed by Congress in appropriations acts.

ARTICLE III -LANDS, RELOCATIONS, AND PUBLIC LAW 91-646 COMPLIANCE

A. The Government, after consultation with the Port Authority, shall determine the lands, easements, or rights-of-way necessary for the construction, operation, or maintenance of the Project, including those lands, easements, or rights-of-way necessary for the borrowing of material, the proper disposal of dredged or excavated material, relocations, and including those lands, easements, or rights-of-way that the Government determines to be subject to the navigation servitude. The Government at least 90 days prior to the award of the first construction contract, shall provide the Port Authority with general written descriptions, including maps as appropriate, of all the lands, easements, or rights-of-way that the Government determines the Port Authority must provide, in detail sufficient to enable the Port Authority to fulfill its obligations under this paragraph, and shall provide the Port Authority with a written notice to proceed with acquisition of such lands, easements, or rights-of-way. Prior to the end of the period of construction, or the subsequent period of construction, as applicable, the Port Authority shall acquire all lands, easements, or rights-of-way necessary for the construction of the general navigation features, as set forth in such descriptions. Furthermore, prior to issuance of the solicitation for each Government contract for construction, operation, or maintenance of the general navigation features or prior to the Government incurring any financial obligation for construction, operation, or maintenance it elects to perform with its own forces, the Port Authority shall acquire all lands, easements, or rights-of-way the Government determines the Port Authority must provide for that work and shall provide the Government with authorization for entry thereto.

B. The Government, after consultation with the Port Authority, shall determine the relocations necessary for the construction, operation, or maintenance of the general navigation features, including those necessary to enable the borrowing of material or the proper disposal of dredged or excavated material. The Government at least 90 days prior to the award of the first construction contract shall provide the Port Authority with general written descriptions, including maps as appropriate, of such relocations in detail sufficient to enable the Port Authority to fulfill its obligations under this paragraph, and shall provide the Port Authority with a written notice to proceed with such relocations. Unless the Government agrees to a later date in writing, prior to issuance of the solicitation for each Government contract for construction, operation, or maintenance of the general navigation features or prior to the Government incurring any financial obligation for construction, operation, or maintenance it elects to perform by its own forces, the Port Authority shall prepare or ensure the preparation of plans and specifications for, and perform or ensure the performance of, all relocations the Government determines to be necessary for that work.

C. Until the Government furnishes the Port Authority with the results of the final accounting pursuant to Article VI.D. of this Agreement, or the credit afforded pursuant to Article II.I. of this Agreement equals the 10 percent amount, whichever occurs later, the Port Authority in a timely manner shall provide the Government with such documents as are sufficient to enable the Government to determine the value of any contribution provided pursuant to paragraph A.,or

B., of this Article. Upon receipt of such documents the Government in a timely manner shall afford credit for the value of such contribution in accordance with Article II.I. of this Agreement.

D. The Port Authority shall comply with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646, as amended by Title IV of the Surface Transportation and Uniform Relocation Assistance Act of 1987 (Public Law 100-17), and the Uniform Regulations contained in 49 C.F.R. Part 24, in acquiring lands, easements, or rights-of-way necessary for the construction, operation, or maintenance of the general navigation features, including those necessary for relocations, the borrowing of material, or the proper disposal of dredged or excavated material, and shall inform all affected persons of applicable benefits, policies, and procedures in connection with said Act.

## ARTICLE IV -CREDIT FOR VALUE OF LANDS, RELOCATIONS

A. The Port Authority shall receive credit in accordance with Article II.I. of this Agreement for the value of the lands, easements, or rights-of-way that the Port Authority must provide pursuant to Article III of this Agreement, and for the value of the relocations that the Port Authority must perform or for which it must ensure performance pursuant to Article III of this Agreement. However, the Port Authority shall not receive credit for the value of any lands, easements, rights-of-way, relocations, that have been provided previously as an item of cooperation for another Federal project. The Port Authority also shall not receive credit for the value of lands, easements, rights-of-way, relocations, to the extent that such items are provided using Federal funds unless the Federal granting agency verifies in writing that such credit is expressly authorized by statute.

B. For the sole purpose of affording credit in accordance with this Agreement, the value of lands, easements, and rights-of-way, including those necessary for relocations, other than those the Government acquires on behalf of the Port Authority pursuant to Article II.D. of this Agreement, shall be the fair market value of the real property interests, plus certain incidental costs of acquiring those interests, as determined in accordance with the provisions of this paragraph.

1. <u>Date of Valuation</u>. The fair market value of lands, easements, or rights-of-way owned by the Port Authority on the effective date of this Agreement shall be the fair market value of such real property interests as of the date the Port Authority provides the Government with authorization for entry thereto. The fair market value of lands, easements, or rights-of-way acquired by the Port Authority after the effective date of this Agreement shall be the fair market value of such real property interests at the time the interests are acquired.

2. <u>General Valuation Procedure</u>. Except as provided in paragraph B.3. or B.4. of this Article, the fair market value of lands, easements, or rights-of-way shall be determined in accordance with paragraph B.2.a. of this Article, unless thereafter a different amount is

determined to represent fair market value in accordance with paragraph B.2.b. of this Article.

a. The Port Authority shall obtain, for that real property interest, an appraisal that is prepared by a qualified appraiser who is acceptable to the Port Authority and the Government. The Port Authority shall provide the Government with the appraisal no later than 6 months after the Port Authority provides the Government with an authorization for entry for such real property interest, or, in the event an authorization for entry is not required, no later than the end of the period of construction or the end of the subsequent period of construction, as the case may be. The appraisal must be prepared in accordance with the applicable rules of just compensation, as specified by the Government consistent with current Government practices and procedures. The fair market value shall be the amount set forth in the Port Authority's appraisal, if such appraisal is approved by the Government. In the event the Government does not approve the Port Authority's appraisal, the Port Authority may obtain a second appraisal, and the fair market value shall be the amount set forth in the Port Authority's second appraisal, if such appraisal is approved by the Government. In the event the Government does not approve the Port Authority's second appraisal, the Port Authority chooses not to obtain a second appraisal, or the Port Authority does not provide the first appraisal as required in this paragraph, the Government shall obtain an appraisal, and the fair market value shall be the amount set forth in the Government's appraisal, if such appraisal is approved by the Port Authority. In the event the Port Authority does not approve the Government's appraisal, the Government, after consultation with the Port Authority, shall consider the Government's and the Port Authority's appraisals and determine an amount based thereon, which shall be deemed to be the fair market value.

b. Where the amount paid or proposed to be paid by the Port Authority for the real property interest exceeds the amount determined pursuant to paragraph B.2.a. of this Article, the Government, at the request of the Port Authority, shall consider all factors relevant to determining fair market value and, in its sole discretion, after consultation with the Port Authority, may approve in writing an amount greater than the amount determined pursuant to paragraph B.2.a. of this Article, but not to exceed the amount actually paid or proposed to be paid. If the Government approves such an amount, the fair market value shall be the lesser of the approved amount or the amount paid by the Port Authority, but no less than the amount determined pursuant to paragraph B.2.a. of this Article.

3. <u>Eminent Domain Valuation Procedure</u>. For lands, easements, or rights-of-way acquired by eminent domain proceedings instituted after the effective date of this Agreement, the Port Authority shall, prior to instituting such proceedings, submit to the Government notification in writing of its intent to institute such proceedings and an appraisal of the specific real property interests to be acquired in such proceedings. The Government shall have 60 days after receipt of such a notice and appraisal within which to review the appraisal, if not previously approved by the Government in writing.

a. If the Government previously has approved the appraisal in writing, or if the Government provides written approval of, or takes no action on, the appraisal within such

60-day period, the Port Authority shall use the amount set forth in such appraisal as the estimate of just compensation for the purpose of instituting the eminent domain proceeding.

b. If the Government provides written disapproval of the appraisal, including the reasons for disapproval, within such 60-day period, the Government and the Port Authority shall consult in good faith to promptly resolve the issues or areas of disagreement that are identified in the Government's written disapproval. If, after such good faith consultation, the Government and the Port Authority agree as to an appropriate amount, then the Port Authority shall use that amount as the estimate of just compensation for the purpose of instituting the eminent domain proceeding. If, after such good faith consultation, the Government and the Port Authority cannot agree as to an appropriate amount, then the Port Authority may use the amount set forth in its appraisal as the estimate of just compensation for the purpose of instituting the eminent domain proceeding..

c. For lands, easements, or rights-of-way acquired by eminent domain proceedings instituted in accordance with sub-paragraph B.3. of this Article, fair market value shall be either the amount of the court award for the real property interests taken, to the extent the Government determined such interests are necessary for the construction, operation, and maintenance of the general navigation features, or the amount of any stipulated settlement or portion thereof that the Government approves in writing.

4. Incidental Costs. For lands, easements, or rights-of-way acquired by the Port Authority within a five-year period preceding the effective date of this Agreement, or at any time after the effective date of this Agreement, the value of the interest shall include the documented incidental costs of acquiring the interest, as determined by the Government consistent with current Government practices and procedures, subject to an audit in accordance with Article X.C. of this Agreement to determine reasonableness, allocability, and allowability of costs. In the event the Government modifies its determination made pursuant to Article III.A. of this Agreement, the Port Authority shall receive credit for the documented incidental costs associated with preparing to acquire lands, easements, or rights-of-way identified in the original determination, subject to an audit in accordance with Article X.C. of this Agreement to determine reasonableness, allocability, and allowability of costs. Such incidental costs shall include, but not necessarily be limited to, closing and title costs, appraisal costs, survey costs, attorney's fees or cost of internal legal staff, plat maps, and mapping costs, as well as the actual amounts expended for payment of any Public Law 91-646 relocation assistance benefits provided in accordance with Article III.E. of this Agreement.

C. For the sole purpose of affording credit in accordance with this Agreement, the value of lands, easements, and rights-of-way, including those necessary for relocations, that the Government acquires on behalf of the Port Authority pursuant to Article II.D. of this Agreement, shall be the fair market value of the real property interests, plus certain incidental costs of acquiring those interests, as determined in accordance with the provisions of this paragraph.

1. The fair market value of such real property interests shall be the amount paid by the Government.

2. The value of the interest shall include the documented incidental costs of acquiring the interest. Such incidental costs shall include, but not necessarily be limited to, closing and title costs, appraisal costs, survey costs, attorney's fees or cost of internal legal staff, plat maps, and mapping costs, as well as the actual amounts expended for payment of any Public Law 91-646 relocation assistance benefits.

D. After consultation with the Port Authority, the Government shall determine the value of relocations in accordance with the provisions of this paragraph.

1. For a relocation other than a highway or a utility, the value shall be only that portion of relocation costs that is necessary to provide a functionally equivalent facility, reduced by depreciation, as applicable, and by the salvage value of any removed items.

2. For a relocation of a highway, the value shall be only that portion of relocation costs that would be necessary to accomplish the relocation in accordance with the design standard that the States of New York or New Jersey would apply under similar conditions of geography and traffic load, reduced by the salvage value of any removed items.

3. For a relocation of a utility, the value shall be that portion of relocation costs borne by the Port Authority that is necessary to provide a functionally equivalent facility, reduced by depreciation, as applicable, and by the salvage value of any removed items.

4. Relocation costs shall include, but not necessarily be limited to, actual costs of performing the relocation, planning, engineering and design costs; supervision and administration costs; and documented incidental costs associated with performance of the relocation, but shall not include any costs due to betterments, as determined by the Government, nor any additional cost of using new material when suitable used material is available. Relocation costs shall be subject to an audit in accordance with Article X.C. of this Agreement to determine reasonableness, allocability, and allowability of costs.

## ARTICLE V -PROJECT COORDINATION TEAM

A. To provide for consistent and effective communication, the Port Authority and the Government, not later than 30 days after the effective date of this Agreement, shall appoint named senior representatives to a Project Coordination Team. Thereafter, the Project Coordination Team shall meet regularly but no less than once a month, until the end of the period of construction and during each subsequent period of construction. The Government's Project Manager and a counterpart named by the Port Authority shall co-chair the Project Coordination Team.

B. The Government's Project Manager and the Port Authority's counterpart shall keep the Project Coordination Team informed of the progress of construction and of significant pending issues and actions, and shall seek the views of the Project Coordination Team on matters that the Project Coordination Team generally oversees.

C. Until the end of the period of construction and during each subsequent period of construction, the Project Coordination Team shall generally oversee the Project, including but not necessarily limited to matters related to design; plans and specifications; scheduling; real property, relocation, and removal requirements; real property acquisition; contract awards or modifications; contract costs; the Government's cost projections; final inspection of the entire Project or functional portions of the Project; preparation of the management plan for proposed dredged or excavated material disposal; anticipated requirements for operation and maintenance of the general navigation features; and other Project-related matters. The Project Coordination Team also shall generally oversee the coordination of schedules for the Project and the local service facilities. Oversight of the Project shall be consistent with a project management plan developed by the Government after consultation with the Port Authority.

D. The Project Coordination Team may make recommendations that it deems warranted to the District Engineer on Project-related matters that the Project Coordination Team generally oversees, including suggestions to avoid potential sources of dispute. The Government in good faith shall consider the recommendations of the Project Coordination Team. The Government, having the legal authority and responsibility for construction of the general navigation features, has the discretion to accept or reject, in whole or in part, the Project Coordination Team's recommendations.

E. The costs of participation by the parties in the Project Coordination Team shall be included in the total cost of construction of the general navigation features and shared in accordance with the provisions of this Agreement.

## ARTICLE VI -METHOD OF PAYMENT

A. Until the Government furnishes the Port Authority with the results of the final accounting, the Government shall maintain current records of contributions provided by the parties and current projections of the total cost of construction of the general navigation features and costs due to additional work under Article II.B. or Article II.D. of this Agreement. At least quarterly, the Government shall provide the Port Authority with a report setting forth all contributions provided to date and the current projections of the total cost of construction of the general navigation features, of the portion of the total cost of construction of the general navigation features assigned to each depth increment in accordance with Article II.E. of this Agreement, of total costs due to additional work under Article II.B. or Article II.D. of this Agreement, of the maximum amount of the total cost of construction of the general navigation

features determined in accordance with Article XIX of this Agreement, of the Port Authority's total cash contributions required in accordance with Articles II.B., II.D., II.G. and VI.B. of this Agreement, of the non-Federal proportionate share, of the estimated funds required from the Port Authority for the upcoming fiscal year, of the credit to be afforded in accordance with Articles II.T. and II.U. of this Agreement, of the credit to be afforded pursuant to Article II.I. of this Agreement for the value of lands, easements, rights-of way, relocations, contributed before the end of the period of construction and during any subsequent period of construction of the 10 percent amount, of the principal amount, and of the installments to be paid in accordance with paragraph E.2. of this Article. Thereafter, until the outstanding portion of the principal amount equals $0, the Government, at least annually, shall provide the Port Authority with a report setting forth the outstanding portion of the principal amount and the current projection of the remaining installments to be paid in accordance with this Article. The total cost of construction of the general navigation features which includes an adjustment for price level changes from November 1996 to the estimated midpoint of construction of January, 2004, as required by Engineering Regulation ER-5-7-1(FR), is projected to be $732,743,000 which includes inflation to the midpoint of construction. The Port Authority's cash contribution required under Article II.G. of the Agreement is projected to be $183,186,000. These amounts are subject to adjustment and are not to be construed as the total financial responsibilities of the Government and the Port Authority. Calculated by the total first cost method, based on November 1996 price levels, the total cost of construction of the general navigation features was estimated to be $591,863,000, and the Port's share of these costs would have been $147,966,000.

B. The Port Authority shall provide the cash contribution required by the terms of this Agreement in accordance with the following provisions.

1. Not less than 30 calendar days prior to the scheduled date for the issuance of the solicitation for the first construction contract, the Government shall notify the Port Authority in writing of such scheduled date and the funds the Government determines to be required from the Port Authority to meet the Port Authority's proportionate share of financial obligations for construction incurred prior to the commencement of the period of construction. The Port Authority shall pay to the Government that amount 10 days prior to the solicitation of the first construction contract.

2. Not less than 30 calendar days prior to the scheduled date for the issuance of the solicitation for any construction contract, the Government shall notify the Port Authority, in writing, of such scheduled date and the funds the Government determines to be required from the Port Authority for the Government to meet its anticipated legal payment obligations pursuant to this agreement and the terms of that construction contract. The Government shall notify the Port Authority of the total estimated amount of said construction contract and the amount that the Government estimates it will, upon execution of the contract, legally obligate itself to pay for the work then authorized. Not later than 10 calendar days before the solicitation of the contract the Port Authority shall provide the Government with the full amount of its proportionate share of the amount required by the Government to meet its legal obligation to pay for the authorized

work. In the case of subsequently authorized work and additional obligations undertaken by the Government under any construction contract, the Government shall notify the Port Authority no later than 30 days prior to its undertaking of additional obligations of the additional amount the Government estimates it will obligate itself for and the Port Authority's proportionate share of said obligation, after consideration of the funds contributed and advanced in accordance with Articles II.Q. and II.R. of this Agreement and for whioh credit shall be afforded in accordance with Articles II.T. and II.U. of this Agreement. The Port Authority shall, within 20 days of receipt of such notification, and prior to the Government assuming the obligation, provide the Government with its proportional share.

3. The Government shall draw from the funds provided by the Port Authority such sums as the Government deems necessary to cover: (a) the non-Federal proportionate share of financial obligations for construction incurred prior to the commencement of the period of construction; (b) the non-Federal proportionate share of financial obligations for construction as they are incurred during the period of construction or during any subsequent period of construction, as applicable; and (c) additional financial obligations for construction of the Project that may be liquidated with the funds contributed and advanced in accordance with Articles II.Q., II.R. and II.S. of this Agreement as they are incurred during the period of construction or during any subsequent period of construction, as applicable.

4. In the event the Government determines that pursuant to the terms hereof, the Port Authority must provide additional funds to meet its cash contribution, the Government shall notify the Port Authority in writing of the additional funds required. Within 60 calendar days thereafter, the Port Authority shall provide the Government with the full amount of the additional required funds.

5. Any funds required to be paid to the Government pursuant to this Agreement shall be paid by delivering a check payable to "FAO, USAED New England" to the District Engineer or an Electronic Funds Transfer in accordance with procedures established by the Government.

C. In advance of the Government incurring any financial obligation associated with additional work under Article II.B. or II.D. of this Agreement, the Port Authority shall provide the Government with the full amount of the funds required to pay for such additional work, as provided for in paragraph B.5. of this Article.

D. After completion of the construction of the general navigation features or termination of this Agreement, and upon resolution of all relevant proceedings, claims, and appeals, the Government shall conduct a final accounting and furnish the Port Authority with the results of the final accounting.

1. The final accounting shall determine the total cost of construction of the general navigation features, each party's contribution provided thereto (including any credits

afforded to the Port Authority pursuant to this Agreement), and each party's required share thereof. The final accounting also shall determine total costs due to additional work under Article II.B. or II.D. of this Agreement and the Port Authority cash contribution provided pursuant to Article II. B. or II.D. of this Agreement.

a. In the event the final accounting shows that the total contribution provided by the Port Authority (including any credits afforded the Port Authority pursuant to this Agreement) is less than its required share of the total cost of construction of the general navigation features plus costs due to additional work under Article II.B. or II.D. of this Agreement, the Port Authority shall, no later than 90 calendar days after receipt of written notice, make a cash payment to the Government of whatever sum is required to meet the Port Authority's required share of the total cost of construction of the general navigation features plus costs due to additional work under Article II.B. or II.D. of this Agreement.

b. In the event the final accounting shows that the total contribution provided by the Port Authority (including any credits afforded the Port Authority pursuant to this Agreement) exceeds its required share of the total cost of construction of the general navigation features plus costs due to additional work under Article II.B. or II.D. of this Agreement, the Government shall, subject to the availability of funds, refund the excess to the Port Authority no later than 90 calendar days after the final accounting is complete except for the amount of excess contribution that was contributed in accordance with Articles II.Q. and II.R. of this Agreement and for which credit was not afforded as required by Articles II.T. and II.U. of this Agreement. In the event existing funds are not available to refund the excess to the Port Authority, the Government shall seek such appropriations as are necessary to make the refund.

2. The final accounting also shall determine the 10 percent amount and the value, as determined in accordance with Article IV of this Agreement, of lands, easements, rights-of-way, relocations, provided before the end of the period of construction.

E. The Port Authority shall pay the principal amount required by Article II.I. of this Agreement in accordance with the provisions of this paragraph.

1. Before furnishing the Port Authority with the results of the final accounting, the Government shall calculate the principal amount and the annual installments, which installments shall be substantially equal. At the time the Government furnishes the Port Authority with the results of the final accounting, the Government shall notify the Port Authority in writing of the principal amount and the annual installments. The Government shall recalculate the annual installments at five year intervals and shall notify the Port Authority in writing of the recalculated annual installments. In calculating or recalculating the annual installments, the Government shall amortize the principal amount over a period of years (hereinafter the "payment period"), beginning on the date the Government notifies the Port Authority of the principal amount, using an interest rate determined by the Secretary of the Treasury. In the case of the initial calculation, the interest rate shall be determined by the Secretary of the Treasury taking

into consideration the average market yields on outstanding marketable obligations of the United States with remaining periods to maturity comparable to the payment period during the month preceding the fiscal year in which the Government awards the first contract for construction of the general navigation features, plus a premium of one-eighth of one percentage point for transaction costs. In the case of recalculations, the interest rate shall be determined by the Secretary of the Treasury taking into consideration such average market yields during the month preceding the fiscal year in which the sixth installment is to be paid, and thereafter during the month preceding the fiscal year in which each fifth installment is to be paid, plus a premium of one-eighth of one percentage point for transaction costs.

2. The Port Authority shall pay the installments calculated or recalculated pursuant to paragraph E.1. of this Article each year on the anniversary of the date the Government notifies the Port Authority of the principal amount, over a period not to exceed the payment period, as provided for in paragraph B.5. of this Article.

3. Notwithstanding paragraph E.2. of this Article, the Port Authority, in its sole discretion, may prepay the principal amount, in whole or in part, at any time, including applying any credits afforded under Articles II.T and II.U of this Agreement and not otherwise applied to other required contributions . Notwithstanding paragraph E.1. of this Article, there shall be no charges for interest on any portion of the principal amount prepaid within 90 days after the Government notifies the Port Authority of the principal amount.

4. After the Government furnishes the Port Authority with the results of the final accounting, the Government shall afford credit against the principal amount for the value, as determined in accordance with Article IV of this Agreement, of lands, easements, rights-of-way or relocations, provided after the period of construction; and the value of the Port Authority's credits afforded in accordance with Articles II.T and II.U of this Agreement and not otherwise applied against other required contributions for the general navigation features; provided, however, that the amount of credit afforded pursuant to this paragraph shall not exceed the principal amount. Credit shall be afforded against the portion of the principal amount that is outstanding at the time the credit is afforded. If the credit exceeds the portion of the principal amount outstanding at the time credit is afforded, the Government shall afford the excess credit against the portion of the principal amount that the Port Authority has paid at the time the credit is afforded, by refunding such portion to the Non-Federal Sponsor, subject to the availability of funds. In the event existing funds are not available to refund such portion to the Port Authority, the Government shall seek such appropriations as are necessary to make the refund.

5. In the event there is a subsequent period of construction, the Government, after completion of the construction of the applicable dredged or excavated material disposal facility or facilities, and upon resolution of all relevant proceedings, claims, and appeals, shall amend the final accounting, including recalculating the 10 percent amount, recalculate the principal amount and the principal amount outstanding, and, if the payment period has not elapsed, recalculate the annual installments by amortizing the principal amount outstanding over the remaining portion

of the repayment period, and shall furnish the Port Authority with the results of the amended final accounting and the aforesaid recalculations. Thereafter, if the payment period has not elapsed, the Port Authority shall pay the aforesaid recalculated installments in lieu of the previously calculated installments. If the payment period has elapsed, the Port Authority, not later than 90 days after being furnished the aforesaid results, shall pay to the Government any principal amount outstanding as provided for in paragraph B.5. of this Article.

F. The Port Authority, at a time or times directed by the District Engineer, shall make the contributed funds offered in accordance with Article II. Q. of this Agreement, and the advanced funds offered in accordance with Article II.R. of this Agreement available to the Government through the funding mechanism provided in paragraph B.5. of this Article. Thereafter, the Government, subject to the availability of funds, and to the extent that the contributed and advanced funds have not been expended for construction, shall refund any contributed and advanced funds that the Government determines are not necessary to meet the costs of construction. Any repayment of contributed and advanced funds that are used to meet the costs of construction shall be in accordance with paragraph D. of this Article, but shall be subject to the requirement that such repayment must be specifically directed by Congress in appropriations acts.

G. The amount of credit afforded in accordance with Article II of this Agreement is not subject to interest charges, nor is it subject to adjustment to reflect changes in price level between the signing of this Agreement, the time the funds are accepted, the time the work is performed using the funds contributed and advanced under this Agreement, and the time the credit is afforded.

H. If at any time during the period of construction or any subsequent period of construction the Government, after consideration of the funds contributed in accordance with Article II.Q. of this Agreement and advanced in accordance with Article II.R. of this Agreement, and for which credit shall be afforded in accordance with Article II. H. or Article II. I. of this Agreement, determines that additional funds will be needed from the Port Authority to cover the non-Federal proportionate share of projected financial obligations for construction for the current fiscal year, the Government shall notify the Port Authority in writing of the additional funds required together with an explanation of why additional funds are required, and the Port Authority, no later than 30 calendar days from receipt of such notice, shall make the additional required funds available through the payment mechanisms specified in paragraph B.5. of this Article.

## ARTICLE VII -DISPUTE RESOLUTION

A. As a condition precedent to a party bringing any suit for breach of this Agreement, that party must first notify the other party in writing of the nature of the purported breach and seek in good faith to resolve the dispute through negotiation. If the parties cannot resolve the

dispute through negotiation, they agree to the following method of non-binding alternative dispute resolution with a qualified third party acceptable to both parties. The parties, however, reserve the right to mutually agree to another form of dispute resolution for any particular dispute.

B. Disputes between the Government and the Port Authority with respect to this Agreement, or to any breach thereof, shall be resolved by the methods hereinafter set forth. For the purposes of the following subparagraphs, a dispute is defined to mean a determination by the Government or the Port Authority, that the Government and the Port Authority have failed to timely agree on any action required of the Government or Port Authority under this Agreement or with respect to this Agreement. The existence of a dispute shall not excuse the parties from performance pursuant to this Agreement.

1. Within a period of 7 working days of written notice by either party of the existence of a dispute, the Government and the Port Authority, through the Project Coordination Team, shall meet and confer to resolve the matter.

2. If the Government and the Port Authority, acting through the Project Coordination Team, are unable to resolve the dispute, the dispute shall be referred to the Government's District Engineer and the Chief Engineer of the Port Authority for resolution.

3. Should the Government's District Engineer and the representative of the Port Authority fail to resolve the dispute within 20 working days, the Government and the Port Authority shall, within an additional 20 working days, refer the dispute to the American Arbitration Association or to another arbitration service mutually agreeable to the parties. The parties agree that time is of the essence in resolving disputes relating to this Agreement and that the Port Authority and Government shall expedite the presentation of disputes for arbitration. The Government and Port Authority shall present disputes to American Arbitration Association or the mutually agreed on arbitration service, within 15 working days of referral of the dispute for arbitration. American Arbitration Association, or the mutually agreed on arbitration service, shall decide the dispute within 20 working days after presentation. All costs incurred in presenting a dispute, including the costs of any arbitration service, shall be shared equally between the parties as such costs are incurred.

4. The Government and Port Authority agree that the form of arbitration shall be non-binding. In the event arbitration fails to resolve any dispute, the parties reserve the right to bring suit and have the matter resolved by any court of competent jurisdiction. The parties agree that participation in the arbitration process shall be a condition precedent to the filing of any such suit.

ARTICLE VIII - OPERATION AND MAINTENANCE

A. Subject to applicable Federal laws and regulations and for so long as the Project remains authorized, and commensurate with the Government's operation and maintenance of the general navigation features, the Port Authority shall operate and maintain the local service facilities as set forth in this Agreement in a manner compatible with the authorized purposes of the Project. The Port Authority, as between the Government and the Port Authority, shall be responsible for taking all actions to enable such operation and maintenance.

B. The Government, as it determines necessary, and consistent with the authorized purposes of the Project, shall operate and maintain the general navigation features and shall be responsible for all financial obligations for operation and maintenance of the general navigation features.

C. The Port Authority hereby authorizes the Government to enter, at reasonable times and in a reasonable manner, upon property that the Port Authority now or hereafter owns or controls for access to the general navigation features for the purpose of inspection and, if necessary, for the purpose of operating and maintaining the general navigation features. Nothing contained herein, however, shall convey to the Government any interest in real property owned or controlled by the Port Authority.

ARTICLE IX -INDEMNIFICATION

The Port Authority shall hold and save the Government free from damages due to the construction, operation, or maintenance of the Project, and the local service facilities, except for damages due to the fault or negligence of the Government or its contractors.

ARTICLE X -MAINTENANCE OF RECORDS AND AUDIT

A. Not later than 60 calendar days after the effective date of this Agreement, the Government and the Port Authority shall develop procedures for keeping books, records, documents, or other evidence pertaining to costs and expenses incurred pursuant to this Agreement. These procedures shall incorporate, and apply as appropriate, the standards for financial management systems set forth in the Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments at 32 C.F.R. Section 33.20. The Government and the Port Authority shall maintain such books, records, documents, or other evidence in accordance with these procedures and for a minimum of three years after completion of the accounting for which such books, records, documents, or other evidence were required. To the extent permitted under applicable Federal laws and regulations, the Government and the Port Authority shall each allow the other to inspect such books, documents, records, or other evidence.

B. Pursuant To 32 C.F.R. Section 33.26, the Port Authority is responsible for complying with the Single Audit Act of 1984, 31 U.S.C. Sections 7501-7507, as implemented by Office of Management and Budget (OMB) Circular No. A-133 and Department of Defense Directive 7600.10. Upon request of the Port Authority and to the extent permitted under applicable Federal laws and regulations, the Government shall provide to the Port Authority and independent auditors any information necessary to enable an audit of the Government's activities under this Agreement. The costs of any non-Federal audits performed in accordance with this paragraph before the Government furnishes the Port Authority with the results of the final accounting shall be allocated in accordance with the provisions of OMB Circulars A-87 and A-133, and such costs as are allocated to the Project shall be included in the total cost of construction of the general navigation features and shared in accordance with the provisions of this Agreement.

C. In accordance with 31 U.S.C. Section 7503, the Government may conduct audits in addition to any audit that the Port Authority is required to conduct under the Single Audit Act. Any such Government audits shall be conducted in accordance with Government Auditing Standards and the cost principles in OMB Circular No. A-87 and other applicable cost principles and regulations. The costs of Government audits performed in accordance with this paragraph before the Government furnishes the Port Authority with the results of the final accounting shall be included in the total cost of construction of the general navigation features and shared in accordance with the provisions of this Agreement.

## ARTICLE XI -FEDERAL AND STATE LAWS

In the exercise of their respective rights and obligations under this Agreement, the Port Authority and the Government agree to comply with all applicable Federal and State laws and regulations, including, but not limited to, Section 601 of the Civil Rights Act of 1964, Public Law 88-352 (42 U.S.C. 2000d), as implemented by Department of Defense Directive 5500.11 and Army Regulation 600-7, entitled "Nondiscrimination on the Basis of Handicap in Programs and Activities Assisted or Conducted by the Department of the Army".

## ARTICLE XII -RELATIONSHIP OF PARTIES

A. In the exercise of their respective rights and obligations under this Agreement, the Government and the Port Authority each act in an independent capacity, and neither is to be considered the officer, agent, or employee of the other.

B. In the exercise of its rights and obligations under this Agreement, neither party shall provide, without the consent of the other party, any contractor with a release or take any other action that waives or purports to waive any rights the other party may have to seek relief or

redress against that contractor either pursuant to any cause of action that the other party may have or for violation of any law.

ARTICLE XIII -OFFICIALS NOT TO BENEFIT

No member of or delegate to the Congress, nor any resident commissioner, shall be admitted to any share or part of this Agreement, or to any benefit that may arise therefrom.

ARTICLE XIV -TERMINATION OR SUSPENSION

A. If at any time the Port Authority fails to fulfill its obligations under Article II.B., II.D., II.G., II.J., II.K., VI, or VIIIA. of this Agreement, the Assistant Secretary of the Army (Civil Works) shall terminate this Agreement or suspend future performance under this Agreement unless he determines that continuation of work on the general navigation features is in the interest of the United States or is necessary in order to satisfy agreements with any other non-Federal interests in connection with the Project.

B. If the Government fails to receive annual appropriations in amounts sufficient to meet its share of scheduled expenditures for the general navigation features for the then-current or upcoming fiscal year, the Government shall so notify the Port Authority in writing, and 60 calendar days thereafter either party may elect without penalty to terminate this Agreement or to suspend future performance under this Agreement. In the event that either party elects to suspend future performance under this Agreement pursuant to this paragraph, such suspension shall remain in effect until such time as the Government receives sufficient appropriations or until either the Government or the Port Authority elects to terminate this Agreement, whichever occurs first.

C. In the event that either party elects to terminate this Agreement pursuant to this Article or Article XVI of this Agreement, both parties shall conclude their activities relating to the Project and proceed to a final accounting in accordance with Article VI.D. of this Agreement.

D. Any termination of this Agreement or suspension of future performance under this Agreement in accordance with this Article or Article XVI of this Agreement shall not relieve the parties of liability for any obligation previously incurred. Any delinquent payment shall be charged interest at a rate, to be determined by the Secretary of the Treasury, equal to 150 per centum of the average bond equivalent rate of the 13-week Treasury bills auctioned immediately prior to the date on which such payment became delinquent, or auctioned immediately prior to the beginning of each additional 3-month period if the period of delinquency exceeds 3 months.

ARTICLE XV - HAZARDOUS SUBSTANCES

A. After execution of this Agreement and upon direction by the District Engineer, the Port Authority shall perform, or cause to be performed, any investigations for hazardous substances that the Government or the Port Authority determines to be necessary to identify the existence and extent of any hazardous substances regulated under the Comprehensive Environmental Response, Compensation, and Liability Act (hereinafter "CERCLA"), 42 U.S.C. Sections 9601-9675, that may exist in quantities, in, on, or under lands, easements, or rights-of-way that the Government determines, pursuant to Article III of this Agreement, to be necessary for the construction, operation, or maintenance of the general navigation features. However, for lands, easements, or rights-of-way that the Government determines to be subject to the navigation servitude, only the Government shall perform such investigations unless the District Engineer provides the Port Authority with prior specific written direction, in which case the Port Authority shall perform such investigations in accordance with such written direction.

1. All actual costs incurred by the Port Authority or the Government before the end of the period of construction or during any subsequent period of construction for such investigations for hazardous substances shall be included in the total cost of construction of the general navigation features and shared in accordance with the provisions of this Agreement, subject to an audit in accordance with Article X.C. of this Agreement to determine reasonableness, allocability, and allowability of costs.

2. All actual costs incurred by the Port Authority after the period of construction, other than during a subsequent period of construction, for such investigations for hazardous substances shall be considered incidental costs under Article IV.B.4. and be credited pursuant to Article II.I. of this Agreement, subject to an audit in accordance with Article XI.C of this Agreement to determine reasonableness, allocability, and allowability of costs.

3. All actual costs incurred by the Government after the period of construction, other than during a subsequent period of construction, for such investigations for hazardous substances shall be considered financial obligations for operation and maintenance of the general navigation features and shared in accordance with Article VIII.B. of this Agreement.

B. The Port Authority may perform, or cause to be performed, any investigations it determines to be necessary to identify the existence and extent of any hazardous substances regulated under CERCLA that may exist in, on, or under lands, easements, or rights-of-way necessary solely for the construction, operation, or maintenance of the local service facilities. However, for any of those lands that the Government determines to be subject to the navigation servitude, the Port Authority must obtain prior written instructions from the District Engineer regarding the method of testing and must perform such investigations only in accordance with those instructions. Those instructions must conform with applicable regulations. The costs of any investigations performed under this paragraph shall be borne entirely by the Port Authority. The Government shall have no obligation under this Agreement for the costs of any

investigations performed under this paragraph. Nothing herein, however, shall exculpate or relieve the Government from any responsibility or liability it might have for having caused or contributed to the presence of any hazardous substances.

C. In the event it is discovered through any investigation for hazardous substances or other means that hazardous substances regulated under CERCLA exist in, on, or under any lands, easements, or rights-of-way that the Government determines, pursuant to Article III of this Agreement, to be necessary for the construction, operation, or maintenance of the general navigation features, the Port Authority and the Government shall, in addition to providing any other notice required by applicable law, provide prompt written notice to each other, and the Port Authority shall not proceed with the acquisition of the real property interests until both parties agree that the Port Authority should proceed. In the event it is discovered through any means that hazardous substances regulated under CERCLA exist in, on, or under any lands, easements, or rights-of-way necessary for the construction, operation, or maintenance of the local service facilities, the Port Authority and the Government shall, in addition to providing any other notice required by applicable law, provide prompt written notice to each other.

D. The Government and the Port Authority shall determine whether to initiate construction, operation, or maintenance of the general navigation features, or, if already in construction, operation, or maintenance, whether to continue with construction, operation, or maintenance of the general navigation features, suspend future performance under this Agreement, or terminate this Agreement for the convenience of the Government, in any case where hazardous substances regulated under CERCLA are found to exist in, on, or under any lands, easements, or rights-of-way that the Government determines, pursuant to Article III of this Agreement, to be necessary for the construction, operation, or maintenance of the general navigation features. Should the Government and the Port Authority determine to initiate or continue with construction, operation, or maintenance after considering any liability that may arise under CERCLA, the Port Authority shall be responsible, as between the Government and the Port Authority, for the costs of clean-up and response, to include the costs of any studies and investigations necessary to determine an appropriate response to the contamination. Such costs shall not be considered a part of the total cost of construction of the general navigation features. Nothing herein shall prevent the Port Authority from recovering the costs of clean up and response along with other damages from any responsible parties. In the event the Port Authority fails to provide any funds necessary to pay for clean up and response costs or to otherwise discharge the Port Authority's responsibilities under this paragraph upon direction by the Government, the Government may, in its sole discretion, either terminate this Agreement for the convenience of the Government, suspend future performance under this Agreement, or continue work on the general navigation features. The Government shall have no obligation under this Agreement for the costs of any clean-up and response, to include the costs of any studies and investigations necessary to determine an appropriate response to the contamination, on lands, easements, or rights-of-way necessary solely for the local service facilities.

E. The Port Authority and the Government shall consult with each other in accordance

with Article V of this Agreement in an effort to ensure that responsible parties bear any necessary clean up and response costs as defined in CERCLA. Any decision made pursuant to paragraph D. of this Article shall not relieve any third party from any liability that may arise under CERCLA.

F. To the maximum extent practicable, the Government and the Port Authority shall perform their responsibilities under this Agreement in a manner that will not cause liability to arise under CERCLA, or any other applicable law.

ARTICLE XVI -NOTICES

A. Any notice, request, demand, or other communication required or permitted to be given under this Agreement shall be deemed to have been duly given if in writing and either delivered personally or by telegram or mailed by first-class, registered, or certified mail, as follows:

If to the Port Authority:

Executive Director
The Port Authority of New York and New Jersey
67 West
One World Trade Center
New York, NY 10048

If to the Government:

Deputy District Engineer - PPMD
U.S. Army Corps of Engineers-New York District
26 Federal Plaza
New York, New York 10278-0090

B. A party may change the address to which such communications are to be directed by giving written notice to the other party in the manner provided in this Article.

C. Any notice, request, demand, or other communication made pursuant to this Article shall be deemed to have been received by the addressee at the earlier of such time as it is actually received or seven calendar days after it is mailed.

ARTICLE XVII -CONFIDENTIALITY

To the extent permitted by the laws governing each party, the parties agree to maintain the confidentiality of exchanged information when requested to do so by the providing party.

ARTICLE XVIII - HISTORIC PRESERVATION

A. The costs of identification, survey, and evaluation of historic properties incurred before the end of the period of construction or during a subsequent period of construction shall be included in the total cost of construction of the general navigation features and shared in accordance with Articles II.F. and II.I. of this Agreement.

B. The costs of identification, survey, and evaluation of historic properties incurred after the period of construction, other than during a subsequent period of construction, shall be considered financial obligations for operation and maintenance of the general navigation features and shared in accordance with Article VIII.B. of this Agreement.

C. As specified in Section 7(a) of Public Law 93-291 (16 U.S.C. Section 469c(a)), the costs of mitigation and data recovery activities associated with historic preservation shall be borne entirely by the Government and shall not be included in the total cost of construction of the general navigation features, up to the statutory limit of one percent of the total amount authorized to be appropriated to the Government for the construction of the general navigation features.

D. The Government shall not incur costs for mitigation and data recovery that exceed the statutory one percent limit specified in paragraph C. of this Article unless and until the Assistant Secretary of the Army (Civil Works) has waived that limit in accordance with Section 208(3) of Public Law 96-515 (16 U.S.C. Section 469c-2(3)).

1. Any costs of mitigation and data recovery that exceed the one percent limit and are incurred before the end of the period of construction or during a subsequent period of construction shall be included in the total cost of construction of the general navigation features and shall be shared in accordance with Articles II.F. and II.I. of this Agreement.

2. Any costs of mitigation and data recovery that exceed the one percent limit and are incurred after the period of construction, other than during a subsequent period of construction, shall be considered financial obligations for operation and maintenance of the general navigation features and shared in accordance with Article VIII.B. of this Agreement.

ARTICLE XIX -SECTION 902 PROJECT COST LIMITS

The Port Authority has reviewed the provisions set forth in Section 902 of Public Law 99-662, as amended, and understands that Section 902 establishes the maximum cost of the authorized Project. Notwithstanding any other provision of this Agreement, the Government shall not make a new Project financial obligation, make a Project expenditure, or afford credit toward total cost of construction of the general navigation features for the value of any contribution provided by the Port Authority, if such obligation, expenditure, or credit would

result in the total cost of construction of the general navigation features plus the value of any contribution provided by the Port Authority pursuant to Article III of this Agreement exceeding this maximum amount, unless otherwise authorized by law. On the effective date of this Agreement, this maximum amount is estimated to be $ 1,322,000,000, as calculated in accordance with ER 1105-2-100 using October 1, 1996 price levels and allowances for projected future inflation. The Government shall adjust this maximum amount in accordance with Section 902.

## ARTICLE XX - INSURANCE REQUIREMENTS

The Government agrees to provide as an optional bid item in any contract entered into to construct the General Navigation features of the Project that the contractor shall take out and maintain Comprehensive General Liability Insurance including but not limited to Operations and Completed Operations Coverage, Maritime Protection and Indemnity Insurance, and Environmental Liability Insurance, which policy shall name the Port Authority as a named insured and shall contain a provision that the policy may not be canceled, terminated or modified without fifteen days written advance notice to the Government and Port Authority. The Port Authority shall be responsible for all additional costs associated with this optional bid item, and such contract costs shall not be included in the total cost of the general navigation features of the Project. Moreover, the Government's Contracting Officer may decline to include such insurance requirements in any individual contract for construction of the general navigation features of the Project where the Contracting Officer reasonably determines that the inclusion of such insurance requirements may result in a restriction in full and open competition, as defined by the Federal Acquisition Regulation, or other applicable procurement regulations. The policies required shall be for not less than the following limits:

| | |
|---|---|
| Commercial General Liability Insurance: | $5 million each occurrence aggregate |
| Maritime Protection & Indemnity Insurance: | $5 million each occurrence aggregate |
| Environmental Liability Insurance: | $10 million each occurrence aggregate |
| Worker's Compensation Insurance and Jones Act coverage | |



TDM003982