**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| TDM AMERICA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant.<br><br>and<br><br>DONJON MARINE COMPANY, INC.,<br><br>Interested Party. | Civil Action No. 06-472 C<br>Judge Thomas C. Wheeler |

**TDM AMERICA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER QUASHING DEFENDANT UNITED STATES' NOTICE OF A RULE 30(b)(6) DEPOSITION TO PLAINTIFF TDM AMERICA, LLC**

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ..... 1

II. FACTS RELATED TO THE MOTION ..... 3

A. The July 11, 2008 30(b)(6) Notice ..... 3

B. TDM was Already Deposed and the US had Ample Opportunity to Question on These Very Topics ..... 5

C. Prior Art was Extensively Covered ..... 6

1. In-situ Remediation Prior to the Year 2000 ..... 6

2. Ex-situ Remediation Prior to the Year 2000 ..... 6

3. ARCHON® ..... 6

4. Other ..... 7

D. Document Retention ..... 7

E. This Court Limited 30(b)(6) Depositions of TDM ..... 8

III. ARGUMENT ..... 8

A. RCFC 26 Provides Relief for Duplicative, Harassing and Oppressive Discovery Practices ..... 8

B. On December 17, 2007, This Court Ordered Completion of RCFC 30(b)(6) Depositions of TDM ..... 10

IV. CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Boston Edison Company v. United States,* ........................................ 9
75 Fed.Cl. 557, 561 (Fed. Cl. 2007)

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* ........................................10
244 F.3d 189, 193 (1st Cir. 2001)

**Rules**

RCFC 26 ........................................8

RCFC 26(c) ........................................1, 9

RCFC 30(b)(1) ........................................2, 11

RCFC 30(b)(6) ........................................ 2,3,7,8,9,10

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

TDM AMERICA, LLC,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

and

DONJON MARINE COMPANY, INC.,

Interested Party.

Civil Action No. 06-472 C
Judge Thomas C. Wheeler

## TDM AMERICA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER QUASHING DEFENDANT UNITED STATES' NOTICE OF A RULE 30(b)(6) DEPOSITION TO PLAINTIFF TDM AMERICA, LLC

Plaintiff TDM America, LLC ("TDM") respectfully submits this memorandum in support of its motion pursuant to RCFC 26(c) for a protective order quashing defendant United States' (the "US") notice of RCFC 30(b)(6) deposition to plaintiff TDM America, LLC dated July, 11, 2008 (the "July 11, 2008 30(b)(6) notice").

### I. Preliminary Statement

The July 11, 2008 30(b)(6) notice is directed to two topics: (i) prior art and (ii) TDM's search, location and retention of documents (collectively "document retention"). (See August 29, 2008 Declaration of Michael Adler (the "Adler Dec.") at Ex. A). TDM's basis for seeking a protective order to quash the July 11, 2008 30(b)(6) notice is for good cause shown. First, with respect to the prior art topics, several of the prior deposition notices to TDM by interested party Donjon Marine Company, Inc. ("Donjon"), to which the US was invited, attended and examined,

explicitly included prior art. Indeed, substantial in-depth deposition testimony was elicited and given on prior art during several RCFC 30(b)(1) and RCFC 30(b)(6) depositions of TDM. Yet another deposition directed to prior art would be duplicative, cumulative, unduly burdensome and harassing. The US was present for each of these depositions and had ample opportunities to inquire about prior art.

Second, with respect to document retention topics, deposition testimony could have, and was, taken during the prior depositions. In fact, as shown below, deposition testimony was taken on document retention although document retention was not specifically identified as a separate category in Donjon's numerous notices of deposition. Moreover, such questions are more appropriately answered through interrogatory responses. TDM even provides the US with a sworn declaration from a TDM officer addressing its document retention policies and practices. (See August 29, 2008 Declaration of Rick Redle (the "Redle Dec.") at ¶5). This parallels the exact manner in which the US provided discovery to TDM for contracts other than the eighteen (18) New York contracts and this Court so countenanced that method of responding to discovery.[1] Thus, the US should have no objection. Moreover, TDM should not be saddled with the unnecessary expenses that it would suffer because of the US' desire to obtain information belatedly and in a piecemeal fashion through yet another RCFC 30(b)(6) deposition of TDM.

Belating basic RCFC 30(b)(6) depositions until now, rather than taking such discovery during any of the previous six depositions during which TDM made witnesses available for depositions, prejudices TDM by having to produce yet another TDM witness for yet another day. TDM is a small Texas-based company with minimal employees. (Redle Dec. at ¶¶ 3-4). Producing yet another employee for a deposition would impose a severe hardship on TDM's

1 See this Court's December 17, 2007 and April 4, 2008 Orders. (Adler Dec., Exs. B-C).

operations. (Redle Dec. at ¶4). TDM also will incur substantial financial harm from duplicative travel and other expenses for no justifiable reason. (Redle Dec. at ¶4). As such, the July 11, 2008 30(b)(6) notice as it presently stands is harassing and should be quashed.

## II. Facts Related to the Motion

### A. The July 11, 2008 30(b)(6) Notice

The US served TDM with the July 11, 2008 30(b)(6) notice seeking to take TDM's deposition, yet again, on the following matters:

1. With respect to documents produced in response to INTERESTED PARTY DONJON MARINE COMPANY, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF (NOS. 1-45),

   a. any and all document retention/destruction policies that would relate to any of the documents requested below pursuant to RCFC 34;
   b. the location of the documents requested below pursuant to RCFC 34;
   c. the organization, indexing and/or filing of the documents requested below pursuant to RCFC 34;
   d. the method of search for the documents requested below pursuant to RCFC 34;
   e. the completeness of the documents produced pursuant to RCFC 34; and
   f. the authenticity of the documents produced pursuant to RCFC 34.

2. With respect to documents produced in response to INTERESTED PARTY DONJON MARINE COMPANY, INC.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF (NOS. 1-4)

   a. any and all document retention/destruction policies that would relate to any of the documents requested below pursuant to RCFC 34;
   b. the location of the documents requested below pursuant to RCFC 34;
   c. the organization, indexing and/or filing of the documents requested below pursuant to RCFC 34;
   d. the method of search for the documents requested below pursuant to RCFC 34;
   e. the completeness of the documents produced pursuant to RCFC 34; and
   f. the authenticity of the documents produced pursuant to RCFC 34.

3. With respect to documents produced in response to DEFENDANT UNITED STATES' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF (NOS. 1-12),

   a. any and all document retention/destruction policies that would relate to any of the documents requested below pursuant to RCFC 34;
   b. the location of the documents requested below pursuant to RCFC 34;
   c. the organization, indexing and/or filing of the documents requested below pursuant to RCFC 34;
   d. the method of search for the documents requested below pursuant to RCFC 34;
   e. the completeness of the documents produced pursuant to RCFC 34; and
   f. the authenticity of the documents produced pursuant to RCFC 34.[2]

4. All ex-situ remediation projects performed or contracted by UTEX or a subsidiary thereof, or any predecessors in interest, prior to the year 2000, including the dates of each project, the type of chemical fixation, stabilization and/or solidification process involved in each project (if any), the material(s) fixed, stabilized and/or solidified (if any), and the approximate revenues of UTEX and/or the UTEX subsidiary(ies) involved in each project;

5. All in-situ remediation projects performed or contracted by UTEX or a subsidiary thereof, prior to the year 2000, including the dates of each project, the type of chemical fixation, stabilization and/or solidification process involved in each project (if any), the material(s) fixed, stabilized and/or solidified (if any), and the approximate revenues of UTEX and/or the UTEX subsidiary(ies) involved in each project;

6. The ARCHON® chemical fixation and stabilization/solidification systems developed and operated by UTEX and its subsidiaries, referenced in the "Statement of Qualifications" of UTEX Environmental Services, L.L.C., produced by TDM at TDM 008502-008590.[3]

(Adler Dec. at Ex. A).

---

[2] Topics 1-3 are collectively referred to herein as "document retention."
[3] Topics 4-6 are collectively referred to herein as "prior art."

### B. TDM Was Already Deposed And The US Had Ample Opportunity To Question On These Very Topics

TDM and its witnesses were already deposed for six days. Specifically, Irfan Toor, a TDM employee, was deposed on September 4, 2007. (Adler Dec. at Ex. D). Scott Crawford, another TDM employee, was deposed on September 5, 2007. (Adler Dec. at Ex. E). Rick Redle, TDM's senior vice president, was deposed on October 23, 2007 and then again on March 14, 2008. (Adler Dec. at Exs. F-G). Ritchie Studer, inventor, was deposed on October 24, 2007 and then again on March 14, 2008. (Adler Dec. at Exs. H-I). There is no reason why the US could not have inquired about any of the noticed categories during these six days. The US was invited to examine the witnesses and, indeed, did so, as it was present during each and every one of these depositions. To date, the US has not explained the sudden need for such discovery again nor why it could not have sought the information at these earlier depositions.

Notably, with respect to the prior art topics contained in the July 11, 2008 30(b)(6) notice, TDM and its witnesses were extensively questioned on prior art and the earlier notices of deposition all noticed topics on prior art as detailed below:

- Notice of deposition of Rick Redle - topics 15, 16, 17, and 27. (Adler Dec. at Ex. J).
- Notice of deposition of Ritchie G. Studer – topics 15, 16, 17 and 25. (Adler Dec at Ex. K).
- Notice of deposition of Dr. Irfan Toor – topics 15, 16, 17 and 25. (Adler Dec. at Ex. L).
- Notice of deposition of Scott Crawford – topics 15, 16, 17, and 25. (Adler Dec. at Ex. M).
- Notice of deposition pursuant to RCFC 30(b)(6) – topics 16, 17, and 24. (Adler Dec. at Ex. N).

### C. Prior Art Was Extensively Covered

The above-referenced depositions extensively covered prior art, including ARCHON®, which is specifically mentioned as a topic by the US in the July 11, 2008 30(b)(6) deposition notice. The US was present at these depositions and provided with the opportunity to question each witness.

#### 1. In-situ Remediation Prior to the Year 2000[4]

- Deposition of Irfan Toor dated September 4, 2007, pp. 69, 122-126, 130-133. (Adler Dec. at Ex. D).
- Depositions of Ritchie Studer dated October 24, 2007 and March 14, 2008, pp. 186-189, 385-394. (Adler Dec. at Exs. H-I).

#### 2. Ex-situ Remediation Prior to the Year 2000

- Deposition of Irfan Toor dated September 4, 2007, pp. 57, 58, 69. (Adler Dec. at Ex. D).
- Deposition of Scott Crawford dated September 5, 2007, pp. 34-37. (Adler Dec. at Ex. E).
- Deposition of Rick Redle dated October 23, 2007, p. 140. (Adler Dec. at Ex. F).
- Depositions of Ritchie Studer dated October 24, 2007 and March 14, 2008, pp. 72-73, 185-186, 190-201, 203-212, 382-385, 394-397. (Adler Dec. at Exs. H-I).

#### 3. ARCHON®

- Deposition of Rick Redle dated October 23, 2007 pp. 156, 157, 262. (Adler Dec. at Ex. F).
- Deposition of Irfan Toor dated September 4, 2007, pp. 31-36 and 69. (Adler Dec. at Ex. D).

[4] TDM used its best efforts to categorize the deposition testimony according to the noticed topics. Much of the testimony is related to more than one topic. Further, TDM reserves its right to identify additional testimony in its reply should same be necessary.

- Deposition of Scott Crawford dated September 5, 2007, pp. 16, 18, 23, 44, 100, 107 and 129. (Adler Dec. at Ex. E).

#### 4. Other

- Depositions of Ritchie Studer dated October 24, 2007 and March 14, 2008, pp. 53-58, 61-66, 68-73, 185, 190-193, 196-197, 198-199, 201-212, 363, 365-366, 371-379, 384-386, 388-389, 394-397. (Adler Dec. at Exs. H-I).

Moreover, Irfan Toor and Ritchie Studer were specifically designated as TDM's RCFC 30(b)(6) witnesses on prior art. Thus, prior art was a topic explored in depth at previous TDM depositions. Indeed, prior art was a topic addressed numerous times to numerous TDM witnesses. There is no justifiable reason to force TDM to attend an additional deposition to answer duplicative questions regarding prior art.

### D. Document Retention

Document retention was a topic within the scope of many noticed topics, such as topics on document production and on discovery responses. TDM witnesses were questioned regarding this topic and the US was present and provided ample opportunity to examine. The following portions of the above-referenced depositions expressly covered document retention:

- Deposition of Rick Redle dated March 14, 2008, pp. 321, 323, 326-327, 333, 339, 422, 425-426; 457. (Adler Dec. at Ex. G).
- Deposition of Ritchie Studer dated October 24, 2007, pp. 8-9. (Adler Dec. at Ex. H).

This topic could easily be addressed again through interrogatory responses. TDM's senior vice president, Rick R, Redle, testified that all documents responsive to discovery requests or related to this action and the patents-in-suit were already provided to TDM's counsel for production. (Adler Dec. at Ex. G, Deposition of Rick Redle dated March 14, 2008, pp. 321, 323, 326-327,

333, 339, 422, 425-426; 457). Mr. Redle also swears in his accompanying declaration that (i) all responsive documents have been produced, (ii) TDM has no written document retention or destruction policy, and (iii) no documents or files related to this action or the patents-in-suit have been destroyed. (Redle Dec. at ¶5).

### E. <u>This Court Limited 30(b)(6) Depositions of TDM</u>

On December 17, 2007, this Court issued a discovery order that, *inter alia*, limited the additional RCFC 30(b)(6) depositions of TDM's witnesses to an additional eight hours. (Adler Dec. at Ex. B). These additional depositions were conducted on March 14, 2008 and the US attended and participated. (Adler Dec. at Exs. G and I). In addition, on April 4, 2008, this Court issued a discovery order requiring TDM to seek leave of court to depose any US witnesses regarding documents that are only now being made available to TDM although such documents were requested by TDM over a year ago. (Adler Dec. at Ex. C). Thus, TDM is required to obtain leave of court to take discovery on matters that were unknown to TDM at the time it deposed US witnesses. Based upon the circumstances, it would be inequitable to permit the US to conduct a RCFC 30(b)(6) deposition of TDM without having the US also request such discovery by leave of Court.

## III. <u>Argument</u>

### A. RCFC 26 Provides Relief For Duplicative, <u>Harassing And Oppressive Discovery Practices</u>

RCFC 26 states in relevant part:

> c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and **for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:**

**(1) that the disclosure or discovery not be had;**

(2) that the disclosure or discovery maybe had only on specified terms and conditions, including a designation of the time or place;

(3) **that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;**

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

RCFC 26(c) tempers the breadth of discovery by authorizing the court, for good cause shown, to issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *Boston Edison Company v. United States,* 75 Fed.Cl. 557, 561 (Fed. Cl. 2007). Here, the July 11, 2008 deposition notice unduly burdens plaintiff and imposes additional expenses upon plaintiff to appear for a noticed deposition on topics already covered. (Redle Dec. at ¶4). TDM is a small company run by a handful of people and any RCFC 30(b)(6) witness must travel from Texas imposing a great burden on TDM. (Redle Dec. at ¶¶3-4).

As shown above, TDM was subjected to numerous depositions on prior art by each of its four witnesses. Deponents were specifically designated as RCFC 30(b)(6) witnesses on prior art. The US had ample opportunity to delve into prior art and document retention on each of these occasions. To the extent that the US is dissatisfied with the prior questioning on these topics, it does not entitle them to take that discovery again. Courts generally quash discovery where, as here, it is belated, duplicative, cumulative or unduly burdensome, particularly where the party was already deposed. See *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001). Here, TDM was deposed several times.

Nothing in the July 11, 2008 30(b)(6) notice justifies why an additional TDM deposition must be taken now or even why the noticed topics could not have been investigated during the prior depositions of TDM and its employees. There is no doubt that the US could have - and should have - deposed TDM's witnesses on the noticed topics during the TDM depositions.

Likewise, document retention policies are more appropriately answered as interrogatories. TDM even offered to provide the US with a sworn declaration from a TDM officer providing responses to questions regarding document retention policies and practices. (Adler Dec. at Ex. B). There is no justifiable need to force TDM to expend further money flying a witness from Texas just to ask about document retention policies. Under these circumstances, compelling TDM to produce a witness for another day is duplicative, cumulative and harassing.

### B. On December 17, 2007, This Court Ordered Completion of RCFC 30(b)(6) Depositions of TDM

On December 17, 2007, this Court issued a discovery order that, *inter alia*, limited the additional RCFC 30(b)(6) depositions of TDM's witnesses to an additional eight hours. (Adler Dec. at Ex. B). These additional depositions were conducted on March 14, 2008 and the US attended and participated. TDM even allowed extended time, despite this Court's ordered limitation and the US acknowledged the courtesy. (Adler Dec., Ex. I at p. 454, 460-461). The US now, seven months later, serves TDM with another RCFC 30(b)(6) notice on topics that were addressed at the prior depositions and/or could easily be answered by interrogatory responses. This, after TDM already provided two RCFC 30(b)(6) witnesses for a total of twelve hours each and made two other witnesses available for depositions and after the Court's December 17, 2007 order. (Adler Dec. at Exs. D-I). For each of these depositions, the US could have and actually did examine the witnesses.

In addition, on April 4, 2008, this Court issued a discovery order requiring TDM to seek leave of court to depose any US witnesses regarding documents that are only now being made available to TDM although such documents were requested by TDM over a year ago. (Adler Dec. at Ex. C). Thus, TDM is required to obtain leave of court to take discovery on matters that were unknown to TDM at the time it deposed US witnesses. Here, the US had ample opportunity to depose TDM's witnesses and, as shown above, the topics it is noticing have already been addressed in these prior depositions. It would be inequitable to permit the US to conduct a RCFC 30(b)(6) deposition of TDM without having the US also request such discovery by leave of Court. The US should first prove its urgent need for this deposition, especially in light of the fact that TDM was already deposed several times on these topics and has offered cost-effective alternative methods for providing the US such discovery.

## IV. <u>Conclusion</u>

Based upon the foregoing, TDM seeks an order quashing the July 11, 2008 30(b)(6) deposition notice in its entirety.

Respectfully submitted,

DAVIDOFF MALITO & HUTCHER LLP
*Attorneys for Plaintiff*

Dated: August 29, 2008

s/David W. Denenberg
David W. Denenberg
Michael A. Adler
605 Third Avenue – 34 Floor
New York, NY 10158
Tel: (212) 557-7200
Fax: (212) 286-1884