# EXHIBIT N

# THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TDM AMERICA, LLC,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant<br>and<br>DONJON MARINE COMPANY, INC.<br>Interested Party. | Case No. 06-472 C<br>Judge Thomas C. Wheeler |

## NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

**PLEASE TAKE NOTICE** that pursuant to Rule 30(b)(6) of the Rules of the United States Court of Federal Claims, beginning at 9:30AM on July 2, 2007 or on a date to be mutually agreed upon by the parties, and continuing from day to day thereafter until completed or adjourned by mutual consent of the parties, at the offices of McCarter & English, LLP, 100 Mulberry Street, Newark, NJ 07102, attorneys for interested party, Donjon Marine Company, Inc. ("Donjon") will take the deposition upon oral examination of plaintiff TDM America LLC ("TDM") by or through one or more officers, directors, managing agents or other persons designated by TDM, with respect to all matters listed in Exhibit A hereto. The deposition will be taken before an officer authorized to administer oaths and will be recorded by stenographic or other means permitted by the Rules of Court.

Dated: May 29, 2007

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By: Gary Campbell APN
Gary J. Campbell
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6500
Facsimile: (617) 607-9200
E-mail:gcampbell@mccarter.com
*Attorney for Donjon Marine Company, Inc.*

*Of counsel:*

John E. Flaherty
Andrew P. Nemiroff
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
E-mail:jflaherty@mccarter.com

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. The term "Donjon" shall refer to interested party Donjon Marine Co., Inc.

2. "TDM," "You" and "Your" shall mean and refer to Plaintiff TDM America, LLC, and its officers, directors, employees, agents, representatives, attorneys, affiliates, successors, and assigns, and to persons and entities acting or purporting to act on behalf of TDM.

3. "UTEX" shall mean and refer to UTEX Holdings, LLC, and its officers, directors, employees, agents, representatives, attorneys, affiliates, successors, and assigns, and to persons and entities acting or purporting to act on behalf of UTEX .

4. The "United States" shall mean and refer to Defendant the United States of America.

5. "Patents in suit" shall mean and refer to United States Patent Nos. 5,542,614 (the "'614 patent") and 6,293,731 (the "'731 patent") and any other patent identified in the Complaint that You allege or believe is infringed by Donjon dredging activities.

6. "Donjon Dredging Activities" shall mean, in addition to dredging, all of Donjon's activities relating to dredging and/or any treatment of dredged material by Donjon and/or upland disposal of dredged material by Donjon. "Treatment" as used herein shall mean processing, stabilization, retention, staging, handling, curing, reuse, remediation, fixation, solidification, and/or disposal.

7. "Lawsuit" shall mean and refer to TDM America, LLC v. The United States of America, Civil No. 06-472 C.

8. "Complaint" shall mean and refer to the Complaint or any Amended Complaint filed by TDM in the Lawsuit.

9. "UTEX's Administrative Claim" shall mean and refer to the administrative claim submitted by UTEX to the United States Army which alleges infringement of the '731 and '614 patents by three contractors, including Donjon.

10. "Person" or "Persons" means all natural persons, individuals, corporations, partnerships or other business associations, and all other legal entities, including all members, officers, predecessors, assigns, divisions, affiliates and subsidiaries.

11. "Claim chart" shall mean and refer to existing charts comparing each claim of the applicable patent to the product or process accused of infringing that claim on an element by element (for apparatus claims) or step by step (for method claims) basis.

12. "Claim construction" shall mean and refer to and refer to the interpretation of the words in the claims so as to determine their meaning and scope.

13. "Prior art" shall refer to all categories of prior art recited in 35 U.S.C. § 102 and as used in 35 U.S.C. § 103.

## RULE 30(b)(6) TOPICS

1. All steps taken by TDM or UTEX to investigate Donjon's dredging activities prior to the filing of the Lawsuit;

2. Knowledge of Donjon's dredging activities;

3. The photographs taken by TDM of Donjon's Dredging Activities including, but not limited to, the basis for identification and labeling of items in said photos;

4. Preparation and submission of UTEX's Administrative Claim submitted by UTEX to the United States Army which alleges infringement of the '731 and '614 patents by three contractors, including Donjon;

5. Information supplied to David W. Denenberg or others to assist in the preparation and submission of the April 4, 2005 letter to Senator Orrin Hatch;

6. The organizational structure of TDM, including responsibilities and knowledge of each employee of TDM;

7. The corporate relationship between TDM, UTEX and ITEX Enterprises, Inc.;

8. TDM's acquisition of the patents in suit;

9. TDM's interest in the patents in suit;

10. Chain of title for the patents in suit;

11. All allegations and averments by TDM in the Complaint and First Amended Complaint related to the '614 and '731 patents;

12. All infringement and validity positions and the bases therefore for the patents in suit;

13. The patents in suit, including claim construction and claim charts relating to Donjon dredging activities;

14. The purported date of conception, date of invention and reduction to practice of the alleged invention covered by the patents in suit;

15. The inventor notebooks or other documents related to the '731 patents;

16. Results of all prior art searches conducted on the patents in suit before and after filing of the Lawsuit;

17. All prior art of the patents in suit;

18. Knowledge of Donjon's earliest actual and/or constructive notice of the patents in suit;

19. Contracts and licensing relating to the patents in suit;

20. Correspondence or interaction with third parties that resulted in the acquisition by TDM or UTEX of copies of permits issued to Donjon or Metals Management;

21. Calculation of all damages or monetary relief claimed by TDM and basis therefor;

22. All responses to Donjon's Interrogatories;

23. All responses to Donjon's Requests for Production;

24. The pre-September 2001 use of cement to stabilize and/or solidify soil, including, but not limited to, dredge material.

**CERTIFICATE OF SERVICE**

I hereby certify that on 29 May 2007, I served a true and accurate copy of NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6) upon the attorney of record for each party by hand delivery upon:

David Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue - 34th Floor
New York, NY 10158

And by overnight mail at the following address:

Erica A. Franklin, Esq.
Attorney
Commercial Litigation Branch
Civil Division
1100 L Street, NW
Washington, DC, 20001

By: ______________________

# EXHIBIT O

DAVIDOFF MALITO & HUTCHER LLP
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

(212) 557-7200
FAX (212) 286-1884
WWW.DMLEGAL.COM

GARDEN CITY
200 GARDEN CITY PLAZA
GARDEN CITY, N.Y. 11530
(516) 248-6400

MELVILLE
105 MAXESS RD., SUITE 124S
MELVILLE, NY 11747
(631) 574-4510

ALBANY
150 STATE STREET
ALBANY, N.Y. 12207
(518) 465-8230

WASHINGTON, D.C.
444 NORTH CAPITOL STREET, N.W.
WASHINGTON, D.C. 20001
(202) 347-1117

WRITER'S DIRECT: (646) 428-3210
E-MAIL: dwd@dmlegal.com

August 20, 2008

**BY EMAIL (Walter.Brown2@usdoj.gov)**
**AND REGULAR MAIL**

Walter W. Brown
US Department of Justice
Civil Division
1100 L Street, NW - Suite 1100
Washington, DC 20001

**Re: TDM America, LLC v. The United States of America, et al**
**Case No. 06-472C (Judge Thomas J. Wheeler)**
**Our Ref: 7683.001**

Dear Mr. Brown:

I am writing regarding a number of outstanding discovery issues for the referenced matter.

**I. Informal Discovery of USACE Districts**

For months, TDM and the US discussed informal discovery of several USACE districts and the corresponding declarants regarding contracts that included processing of dredged materials. One informal discussion took place for the San Francisco district which proved to be successful for all parties. TDM requested informal discovery regarding additional contracts from the New York district, the Navy and Coast Guard, Jacksonville, New England, Seattle and Honolulu districts (collectively the "additional districts"). Please provide dates for informal discovery of the additional districts.

**II. The US' Document Production**

The US advised that it is uncertain if all documents will be produced by September 5, 2008. Pursuant to the court order, all documents were to have been completely produced already. As always, TDM accommodated the US' requests for additional time. However, TDM

requires production of all documents as soon as possible and, in any event, no later than September 5, 2008. If you require more time, please call so that we may discuss this issue before the September 5, 2008 conference call.

**III. The US' Rule 30(b)(6) Notice of Deposition**

TDM believes that there is no justification for this notice as it is designed to be cumulative and harassing. The noticed topics were covered in previous 30(b)(6) depositions. Those depositions, now completed, were the subject of two court orders setting dates and time limits. Each party had an opportunity to attend and examine and, indeed, did so. For example, topics 4-6 are covered by several topics of Donjon's Rule 30(b)(6) notice and was extensively examined during the depositions of TDM. Topics 1-3 merely go to document production and retention, which was also covered in the depositions of TDM. Because there is very little with respect to retention policies, there is little need of a full deposition. As I am sure you can appreciate, this type of inquiry is more suitable for an interrogatory. This office is willing to accommodate the US by providing a declaration on the issue of document retention to be followed by informal discovery, if required. This tracks the manner in which the US provided discovery for contracts other than the eighteen (18) New York contracts. Thus, the US should have no objection.

**IV. The US' Recent Interrogatory and Document Requests**

TDM is endeavoring to provide responses to the interrogatories and document requests by September 5, 2008. TDM further confirms that all responsive documents that TDM is aware of as of this date have been produced.

Thank you for your attention to this matter. Please call me with any questions or comments.

Very truly yours,

David W. Denenberg

DWD:lsh

cc: Joshua Brady, Esq. (by email)
John Flaherty, Esq. (by email)
Gary Campbell, Esq. (by email)

# EXHIBIT P

U.S. Department of Justice

Civil Division

WWB
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

Telephone: (202) 307-0341
Facsimile: (202) 307-0345

*Washington, DC 20530*

August 25, 2008

**BY FACSIMILE AND E-MAIL**

David W. Denenberg, Esq.
Davidoff Malito & Hutcher LLP
605 Third Avenue, 34th Floor
New York, New York 10158

Re: *TDM America, LLC v. United States*
Court of Federal Claims No. 06-0472C

Dear Mr. Denenberg:

I write in response to your letter of August 20, 2008, which addresses a number of discovery issues. I have provided our responses to these issues below, in the order presented in your letter.

## I. Informal Discovery of USACE Districts

Your letter first addresses the status of ongoing efforts for the parties to resolve discovery issues related to recently identified USACE contracts involving treatment through informal discovery. As I indicated during our telephone conference on August 19, 2008, we will consider informal discovery for the districts requested in your letter, provided that the individual USACE districts listed in your letter (New York, Jacksonville, New England, Seattle, and Honolulu) are amenable to such discovery and that there are clear ground rules on how such discovery would be conducted. As I have previously stated, the government has and will only enter such informal discovery if it represents a genuine effort to resolve discovery issues and thereby eliminate the need for formal discovery.

Your letter also raises the possibility of informal discovery relating to the U.S. Navy and U.S. Coast Guard, which I don't recall being discussed prior to our recent conference. This request presumably relates to three contracts awarded by these agencies that involved treatment of dredged material. While these contracts do not involve the USACE, we will nonetheless discuss methods to resolve outstanding discovery issues. Given that we agree that these contracts involve smaller treatment amounts than the USACE contracts-at-issue, we discussed in our telephone conference the possibility that the parties could stipulate to certain facts and would further discuss potential factual stipulations. In that vein, I note that the government recently produced additional documents relating to the two Navy contracts-at-issue.

## II. The Government's Document Production

Your letter also addresses the status of the government's document production. While the government has produced documents for all of the recently identified contracts, it has not completed its document production for three Jacksonville District contracts that were recently identified as involving the use of a flocculent and therefore may have involved some form of treatment of dredged material. For these contracts, the government has already produced several thousand pages, which comprise the entire files kept by the Contracting Division in that district. More recently, the Jacksonville District discovered additional files kept by its Construction-Operations Division.

Specifically, by letter of July 15, 2008, the government informed TDM counsel that it had uncovered over 20 banker's boxes of additional documents relating to Contract No. W912EP-04-C-0003. To limit the production of irrelevant documents, the government provided a list of all file labels for the 04-C-0003 contract to TDM, for it to choose what files it wanted produced. TDM counsel subsequently provided a list of requested files on July 30, 2008.

Since that time, government counsel has endeavored to copy and produce all of the additional Jacksonville documents. During this time, counsel has discovered that the additional banker's boxes did not all relate to the identified 04-C-0003 contract and, in fact, included archived files for the two other identified contracts: Contract Nos. DACW17-01-C-0007 and DACW17–00-C-0034. Additionally, other boxes were determined to relate to Contract No. DACW17-03-C-0011, a contract that did not involve the use of a flocculent or any processing of dredged material.

Government counsel has since been endeavoring to copy and produce these additional files. During this process, government counsel discovered that three boxes relating to the 00-C-0034 contract were inadvertently destroyed as part of USACE's document destruction policy in Jacksonville's Records Holding Area. Two other boxes from the Records Holdings Area for this contract were preserved and are in the process of being produced. The files for the other two identified contracts (the 04-C-0003 and 01-C-0007 contracts) have been preserved in their entirety. The government will continue to produce the documents on a rolling basis and is hopeful that it will complete its production of the additional Jacksonville files by September 5, 2008.

With regard to the inadvertently destroyed files, the involved Jacksonville District personnel have executed declarations (which are attached), explaining how this isolated incident occurred. As these declarations indicate, the files were the subject of planned destruction based on their age, in accordance with the USACE's document destruction policy. Unfortunately, those involved in collecting the files for part of the litigation were unaware of the documents' planned destruction, and conversely, those involved in the destruction were unaware that the files were to be preserved as the subject of litigation. As the declarations indicate, Jacksonville personnel are searching their files and contacting the relevant contractor to find copies of destroyed files.

Moreover, the government is reviewing its remaining documents for details of the flocculent use as well as asking for similar information and documentation from the contractor.

## III. The Government's Rule 30(b)(6) Notice of Deposition

Your letter also addresses the Government Rule 30(b)(6) notice to TDM, which was served on July 11, 2008. TDM asserts that "there is no justification for this notice as it is designed to be cumulative and harassing." We disagree entirely. The government served this notice specifically so it could address topics it believes were not addressed by Donjon's earlier Rule 30(b)(6) notice. Though your letter broadly asserts otherwise, it provides no details of how the government's topics overlap with Donjon's topics. Indeed, for Topics 1-3, TDM appears to concede that these topics were not included in Donjon's notice.

We also disagree with TDM's contention that "this type of inquiry is more suitable for an interrogatory." As I indicated during our recent conference, the government has the right to notice and take depositions, just like any other party. In this instance, the government wishes to ask detailed questions of TDM personnel on the noticed topics, particularly those relating to its responses to Donjon's and the government's document requests. Accordingly, your offer to provide a "declaration on the issue of document retention to be followed by informal discovery, if required" is insufficient because the government would appear to have no right to question or discuss all of the topics with a knowledgeable TDM witness. Likewise, I disagree that this tracks how the government provided informal discovery on certain USACE contracts. The government has never failed to provide a witness or witnesses in response to any TDM notice of deposition.

Accordingly, the government expects TDM to provide knowledgeable witnesses and their available dates for deposition, in accordance with Federal Rules of Civil Procedure and the Rules of the U.S. Court of Federal Claims.

## IV. The Government's Recent Interrogatory and Document Requests

You additionally address the government's First Set of Document Requests (Nos. 1-12), served on July 11, 2008, and Second Set of Interrogatories (Nos. 17-18), served on July 14, 2008. TDM has not provided any written responses to this discovery and instead has requested (and received) an extension until September 5, 2008. We acknowledge your statements that (1) TDM "is endeavoring to provide responses" to this discovery and (2) that "all responsive documents that TDM is aware of as of this date have been produced." However, as I have previously stated, we remain concerned that TDM may possess additional documents, as evidenced by TDM's recent production of documents on August 20, 2008. For example, we note that very few documents have been produced relating to TDM's Archon® technology and the projects referenced in TDM's Statement of Qualifications, produced at Bates Nos. TDM 008502 to 008614.

We request that TDM update us on the status of its responses well before the September 5, 2008, hearing, so that we may discuss these issues with the Court. Pursuant to earlier correspondence, the government also requests that TDM supplement its responses to our First Set of Interrogatories (Nos. 1-16), which have not been supplemented since April 2007.

Let me know if you have questions regarding any of these matters. I often will be unavailable for much of the upcoming two weeks, but will be checking e-mail regularly. Accordingly, please communicate with me *via* e-mail and include Joshua Brady on all such communications.

Very truly yours,

Walter W. Brown
Attorney
Commercial Litigation Branch
Civil Division

Enclosures
cc (by e-mail): John E. Flaherty, Esq.
Gary J. Campbell, Esq.