# In the United States Court of Federal Claims

No. 06-472C

(Filed: September 17, 2008)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *
                                            *
TDM AMERICA, LLC,                           *
                                            *
            Plaintiff,                      *
                                            *  Patent infringement case; Subject
v.                                          *  Matter Jurisdiction;
                                            *  Authorization and Consent of the
THE UNITED STATES,                          *  United States; Contract
                                            *  Performance Methods and
            Defendant,                      *  Locations Approved by the
                                            *  Government; 28 U.S.C. § 1498;
and                                         *  FAR ¶ 52.227-1.
                                            *
DONJON MARINE COMPANY, INC.,                *
                                            *
            Third-Party Defendant.          *
                                            *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* *

*David W. Denenberg,* with whom was *Michael A. Adler,* Davidoff Malito & Hutcher LLP, New York, New York, for Plaintiff.

*Walter W. Brown*, with whom were *Gregory G. Katsas,* Acting Assistant Attorney General, and *John J. Fargo,* Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., and *Joshua B. Brady,* Of Counsel, for Defendant.

*Gary J. Campbell,* McCarter & English LLP*,* Boston, Massachusetts, for Third-Party Defendant.

## ORDER REGARDING SUBJECT MATTER JURISDICTION

WHEELER, Judge.

In this patent case, Plaintiff TDM America, LLC ("TDM") claims that the United States Army Corps of Engineers ("USACE") and other federal agencies, through their contractors, including Third-Party Defendant Donjon Marine Company, Inc. ("Donjon"), infringed four patents owned by TDM for the processing and treatment of dredged material removed from navigable waterways. There are many contracts potentially at issue, and

indeed much of TDM's discovery has been aimed at determining the identity of federal contracts that may have infringed TDM's patents.

On November 8, 2007, Defendant filed a pleading styled as a "motion for partial summary judgment for lack of subject matter jurisdiction" as to eighteen USACE contracts awarded by the agency's New York District. Defendant asserts that the Authorization and Consent clause in these eighteen contracts, set forth in Federal Acquisition Regulation ("FAR") ¶ 52.227-1, did not authorize contractors to infringe TDM's claimed methods of processing unless specifically directed by the contract or the Contracting Officer. Therefore, Defendant argues that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1498(a) (2006) to decide infringement claims against the United States where such direction is lacking. Following a period of discovery to allow review of contract provisions, TDM filed an opposition and cross-motion for partial summary judgment on February 28, 2008. Thereafter, the parties filed their responses and replies with accompanying declarations and exhibits. Together, the parties submitted 11,395 pages of exhibits for the Court's review. The Court heard oral argument on July 30, 2008.

In considering Defendant's motion based upon a lack of government authorization under 28 U.S.C. § 1498(a), that statute acts as an affirmative defense rather than a jurisdictional bar. See e.g., Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1381-82 (Fed. Cir. 2002) (citing Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 554 (Fed. Cir. 1990)). Accordingly, Defendant's motion should be resolved by summary judgment under Rule 56 of the Court of Federal Claims ("RCFC") rather than as a motion to dismiss under RCFC 12(b)(1).

For the reasons explained below, Defendant's motion for partial summary judgment is DENIED, and Plaintiff's cross-motion for partial summary judgment is GRANTED.

Background[1]

USACE is responsible for maintaining and improving the nation's waterways for navigation. To that end, USACE employs contractors to dredge and process contaminated materials from navigation channels throughout the United States. TDM owns patents for the processing and treatment of dredged materials. TDM's patents include U.S. Patent No. 6,293,731, issued September 25, 2001, entitled "Method for Treatment for Dredged Materials to Form a Structural Fill"; U.S. Patent No. 5,794,862, issued August 18, 1998, entitled "Processing of Waste Material"; U.S. Patent No. 5,542,614, issued August 6, 1996, entitled "Processing of Waste Material"; and U.S. Patent No. 5,007,590, issued April 16, 1991,

---

[1] The facts set forth in this opinion do not constitute findings of fact by the Court. The facts cited are either undisputed, or accepted by the Court after considering the allegations and evidence submitted by the parties.

entitled "Apparatus and Method for Mixing Solid or Semi-Solid Wastes with Additives." On June 21, 2006, TDM filed suit against the United States in this Court alleging that USACE contractors, including Donjon, infringed its patented methods of processing dredged material during performance of USACE contracts. TDM seeks to hold the Government liable for the contractors' actions under 28 U.S.C. § 1498.

During discovery, Defendant identified all USACE contract awards since 2000 that involved the processing of dredged material prior to disposal. Eighteen of these contracts were awarded by the USACE's New York District, which covers the Port of New York and New Jersey and surrounding areas. It is these eighteen contracts that are at issue in Defendant's motion for partial summary judgment.

Thirteen of the contracts at issue contain section 800, entitled "Special Contract Requirements." Section 800 requires the contractor to submit to USACE a detailed description of the proposed process for treating dredged material, all applicable state regulatory permits necessary for the processing of dredged materials, and the name and location of the facility.[2] The contractor must submit and receive USACE approval of the proposed process *prior* to contract award. (See, e.g., Pl.'s Ex. 2 at 9-17). Contractors for eleven of the thirteen contracts provided this mandatory information.

---

[2] For example, the relevant portion of section 800 to Contract Number W912DS-05-C-0004 for the deepening of the Kill Van Kull Channel at the New York/New Jersey Harbor states:

   i. Processing Capabilities- The Apparent Low Bidder must provide the following:

      1) Provide a detailed description of the proposed technological processing, including but not limited to, the following stages, if applicable:

         – Dewatering, addressing retention time, any limitations on return of effluent, limitations on locations for effluent release, proposed method for effluent disposal, if applicable . . . .

         – *Material treatment, specifying the method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any).*

      2) *Provide any permits and/or licenses applicable to the proposed process, if any.*

      3) *Provide any patented or proprietary permissions applicable to the proposed process, if any.*

(Pl.'s Ex. 38 at 1667-68) (emphasis added). Section 800 as included in Contract No. 912DS-05-C-0004 is representative of the language appearing in the remaining twelve contracts and does not differ in any material way.

Nine of the contracts at issue include a Technical Provision in section 2900, entitled "Dredging and Disposal." Among other things, section 2900 identifies sites for the processing and disposal of dredged material.[3] Five contracts contain language expressly requiring the contractor to process and dispose of dredged material at USACE's pre-approved OENJ (Cherokee) Processing Group site in Bayonne, New Jersey. (See, e.g., Pl.'s Ex. 58 at 3133-34). An additional four contracts listed OENJ as the approved processing facility but allowed the contractor to use an alternate facility upon USACE's approval. Of these four, two contractors operated out of the pre-authorized OENJ facility (Def.'s Reply, at 9-10), and two received USACE approval for an alternate facility following submission of the site location and a description of the proposed treatment process.

On November 8, 2007, Defendant filed its motion for partial summary judgment, arguing that USACE did not provide authorization and consent for its contractors to infringe any of TDM's patents in performing the New York District dredging contracts, and therefore, the Court has no jurisdiction to hear TDM's infringement claims under 28 U.S.C. § 1498(a). Defendant argues that each of the eighteen contracts includes a narrow authorization and consent clause set forth in FAR ¶ 52.227-1, waiving liability only in the following circumstances:

> (a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) [e]mbodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or; (2) [u]sed in machinery, tools, or methods *whose use necessarily results from compliance by the Contractor* or a

---

[3] Paragraph 6.2 of section 2900 states, in relevant part:

    6.2    Disposal Facilities

*The Government has identified the following sites for the processing and disposal of non-rock dredged material.* The Contractor shall coordinate with the operator of the disposal facility to ensure that the necessary facility requirements are included in the Contractor's bid price. *The Contractor is required to use the sites identified below. . .*

    1)    *The following site shall be the only upland site sued for Item Number 001AC in the price schedule.*

Disposal site:    Bayonne Landfill Remediation Site
Operator:    Cherokee/OENJ
Location:    61 North Hook Road, Bayonne, NJ 07002

(Pl.'s Ex. 9 at 6404) (emphasis added).

>    subcontractor with (i) *specifications or written provisions forming a part of this contract* or (ii) *specific written instructions* given by the Contracting Officer directing the manner of performance.

FAR ¶ 52.227-1 (emphasis added).

On June 20, 2008, TDM filed its opposition and cross-motion to Defendant's motion for partial summary judgment. TDM concedes that the contracts contain this FAR provision but disputes the contention that USACE did not authorize or consent to the dredging processes. According to TDM, contractors in each of the eighteen contracts used the methods for treating dredged materials to comply with the specifications and written provisions included in their contracts. TDM argues that the Government authorized, consented to, and was fully aware of the processes for treatment of the dredged material, and, in many cases, dictated where the processing would occur. As a result, TDM contends that the Government may be held liable for its contractors' actions as a matter of law.

## Standards for Decision

Defendant's motion pursuant to 28 U.S.C. § 1498(a) raises an affirmative defense rather than a jurisdictional bar. Toxgon Corp., 312 F.3d at 1382; Manville, 917 F.2d at 554 (citing Sperry Gyroscope Co. v. Arma Eng'g Co., 271 U.S. 232, 235-36 (1926)); Crater Corp. v. Lucent Techs. Inc., 255 F.3d 1361, 1364 (Fed. Cir. 2001). A defense under section 1498(a) should be resolved as a motion for summary judgment under RCFC 56 and not as a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1). See Toxgon Corp., 312 F.3d at 1382. An RCFC 12(b)(1) motion cannot be converted into a motion for summary judgment because the burdens of proof and analyses differ. See id. at 1383. Accordingly, the Court must decide Defendant's "motion for partial summary judgment for lack of subject matter jurisdiction" under the summary judgment standard.

Summary judgment is appropriate only when (1) no genuine issue of material fact exists, and (2) the moving party is entitled to judgment as a matter of law. See RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001). Summary judgment will not be granted if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Eli Lilly and Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001). In reviewing cross-motions for summary judgment, the Court must conduct an independent analysis for each motion and resolve any doubt on factual issues in favor of each party opposing summary judgment. The benefit of all presumptions and inferences runs in favor of the non-moving party. Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001).

The parties' cross-motions also call upon the Court to interpret the relevant contract provisions. Contract interpretation begins with the plain language of the agreement. Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993) (citing Gould, Inc. v. United States, 935 F.2d. 1271, 1274 (Fed. Cir.1991)). "If the provisions are clear and unambiguous, a court will give them their plain and ordinary meaning and will not resort to parol evidence." Barseback Kraft AB v. United States, 121 F.3d 1475, 1479 (Fed. Cir.1997). A contract must be considered as a whole and interpreted in such a manner as to harmonize and give reasonable meaning to all of its parts. McAbee Constr., Inc. v.United States, 97 F.3d 1431, 1434-35 (Fed. Cir. 1996). Courts prefer an interpretation that gives meaning to all contract parts over an interpretation that leaves a portion of the contract useless, inexplicable, void, or superfluous. Gould, 935 F.2d at 1274.

The facts material to the issue of government authorization and consent are not in dispute. The parties agree that each of the eighteen contracts incorporated the authorization and consent clause set forth in FAR ¶ 52.227-1. The Court must determine whether summary judgment is appropriate as a matter of law.

## Discussion

In order to establish jurisdiction over this patent infringement case, the Court must determine whether USACE contractors had "authorization or consent of the Government" for their alleged infringement of Plaintiff's patents. 28 U.S.C. 1498(a) sets out this Court's jurisdiction over patent claims arising from government contacts:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation *for the Government* and *with the authorization or consent of the Government,* shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498(a) (emphasis added).

Defendant concedes and the Court agrees that the contractors' alleged infringement occurred "for the benefit of the United States." (Def.'s Reply at 41). Defendant argues, however, that USACE never authorized or consented to the alleged infringing activity in the contracts at issue. In its view, USACE expressly limited its authorization and consent by including in each of the contracts FAR ¶ 52.227-1. Thus, USACE waived its liability only for use of the patents that "necessarily result" from compliance with contract specifications or written instructions under FAR ¶ 52.227-1(a)(2)(i), (ii).[4] Defendant claims that the alleged use of TDM's patents was not necessary in order to comply with either contract specifications or any written instructions from the Contracting Officers, and therefore FAR ¶ 52.227-1(a)(2)(i) and(ii) do not apply.

TDM counters that USACE authorized, consented to, and was fully aware of the treatment processes used to dredge material under the contracts. TDM points to the inclusion of section 800 in thirteen of the contracts, which required the contractors to submit a proposed plan describing the processing method prior to awarding of the contract. For the remaining contracts, TDM asserts that USACE knew of the processing methods because all of the contracts either required the contractors to use the OENJ facility for processing or seek prior approval of an alternate site.

The United States Court of Appeals for the Federal Circuit recently addressed these issues in Sevenson Environmental Services v. United States ("Sevenson"). See 477 F.3d 1361, 1365 (Fed. Cir. 2007). In Sevenson, the holder of several U.S. patents for hazardous waste remediation sued a contractor in Federal District Court for patent infringement during the performance of two USACE contracts for cleanup and remediation work at a lead-contaminated parcel of land. Id. at 1363. The Federal Circuit affirmed the District Court's grant of summary judgment on the grounds that USACE authorized and consented to the accused activity. Id. at 1367. Both contracts contained an explicit authorization and consent clause limiting the scope of liability to accused methods "whose use necessarily results from compliance by the Contractor or subcontractor with (i) specifications or written provisions forming a part of this contract." Id. at 1367. However, the Court found the clause "broad enough" to waive immunity in that case. See id. Key to the Court's ruling was the inclusion in both contracts of a requirement that the contractor (1) develop a "Work Plan" detailing the work to be performed and (2) obtain its approval by the Contracting Officer prior to performance of the contract. Id. at 1363-64. On these facts, the Federal Circuit held that the contractor's Work Plan constituted a "specification" forming part of the contract such that the contractor's alleged infringement necessarily resulted from compliance with the contract's specifications. Id. at 1367.

---

[4] FAR ¶ 52.227-1(a)(1) also limits liability to "any article the delivery of which is accepted by the Government." Defendant maintains that this provision does not apply to the present case because the contracts pertained to the performance of services and not the delivery of articles. Plaintiff does not contest this argument.

In accordance with Sevenson, the Court concludes here that the section 800 submittals describing the method of processing are "specifications or written provisions forming a part of [the] contract." Defendant's attempt to distinguish Sevenson and argue to the contrary is unpersuasive, as the facts in Sevenson directly mirror those in the case at hand. First, the authorization or consent clause in Sevenson is identical to the clause contained in the contracts at issue in this case. Compare Sevenson, 477 F.3d at 1363 with FAR ¶ 52.227-1. Second, like the Work Plan in Sevenson, each section 800 contract expressly requires the contractor to provide prior to contract award a "detailed description of the proposed technological processing," including "method of treatment, additives used during the processing, mechanical processing used, decontamination methods incorporated, stabilization methods incorporated, and chemical treatment (if any)." (See, e.g., Pl.'s Ex. 38 at 1667-68). Defendant's contention that the section 800 submittals served only "to determine whether the contractor could perform the work and do so in an environmentally acceptable manner," (Def.'s Reply at 44), ignores the plain language of the contract. Finally, USACE did in fact approve the proposed processing site and detailed descriptions provided in each required section 800 submittal as the USACE did in Sevenson.

Once the Court has determined that the section 800 submittals form part of the contract, it is clear that the alleged infringing method of dredging "necessarily resulted from compliance" with performance of those contracts containing section 800. For example, Section 800 of Contract No. -0004 required that all work "be in accordance with the drawings and specifications or instructions attached hereto. . . ." (Pl.'s Ex. 38 at 1639). The Contracting Officer had authority to "assure that the work [was] being performed in compliance with the plans and specifications." Id. at 1646. If the contractor deviated from the proposed processing methods described in the section 800 submittals, that contractor would have been in breach of the contract.

For the contracts that did not contain section 800, the Government's authorization of and consent to the alleged infringing activity is even more clear. The remaining five contracts all include section 2900, which requires the contractor to use the OENJ site for processing or to seek prior approval from USACE to select an alternate site. Defendant points out correctly that these contracts call for approval of the processing *site* and not the specific processing *method*. However, FAR ¶ 52.227-1 does not require such explicit direction by the Government. FAR ¶ 52.227-1 provides that Government authorization and consent occurs when the alleged infringing activity *necessarily resulted* from contract compliance. Here, use of a particular site *necessarily resulted* in the contractor's adoption of the processing method offered at that particular site. Had a contractor decided unilaterally to use a processing facility other than OENJ, it would have been in breach of contract. Given that USACE contractually required its contractors to process and dispose of dredged materials at OENJ or to seek prior approval of an alternate facility, the Court finds that the accused method necessarily resulted from compliance with the contract.

Defendant's attempt to escape these facts by analogizing this case to Carrier Corp. v. United States ("Carrier") fails. See 534 F.2d 244 (Ct. Cl. 1976). Carrier involved a contract for the collection of refuse from Andrews Air Force Base in which the contractor employed a patented refuse container during performance of the contract. Id. at 246-47. The Court of Claims declined to find Government authorization or consent based on (1) the general availability of noninfringing equipment on the open market that the contractor could have used, and (2) the fact that use of the patented equipment was not required by the contract specifications or written instructions of the Contracting Officer. Id. at 248.

In contrast to Carrier, contractors in the present case could not have performed their obligations after selecting from one of many non-infringing alternatives. If a contractor bound by a section 800 contract failed to use the specific processing site and method described in its section 800 submittals, that contractor would have been in breach. For the remaining non-section 800 contracts, each contractor had to use the OENJ facility and OENJ process or seek approval to process dredged material elsewhere. USACE cannot authorize or direct a contractor to process material at a particular site and then escape liability for its authorization. Such a result is precisely what 28 U.S.C. § 1498(a) seeks to prevent.

## Conclusion

Based upon the foregoing, the Court finds that the Government authorized and consented to the alleged infringing activity for each of the eighteen contracts at issue. Defendant's motion for partial summary judgment is DENIED, and Plaintiff's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge