# In the United States Court of Federal Claims

No. 06-472C

(Filed: August 16, 2011)

```
*******************************  *
                                 *
                                 *
TDM AMERICA, LLC,                *
                                 *  RCFC 60(b); Motion for Relief
                                 *  From Judgment; Patent and
                                 *  Trademark Office's Ex Parte
              Plaintiff,         *  Reexamination of Patents;
                                 *  Meaning of "Newly Discovered
v.                               *  Evidence;" Whether PTO's
                                 *  Determination Would Alter the
THE UNITED STATES,               *  Outcome of the Case.
                                 *
              Defendant.         *
                                 *
*******************************  *
```

*David W. Denenberg*, with whom was *Michael A. Adler*, Davidoff Malito & Hutcher LLP, Garden City, New York, for Plaintiff.

*Walter W. Brown*, with whom were *Tony West*, Assistant Attorney General, and *John Fargo*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., *Steven O. Fortney*, Of Counsel, for Defendant.

OPINION AND ORDER ON PLAINTIFF'S
<u>MOTION FOR RELIEF FROM JUDGMENT</u>

WHEELER, Judge.

In this patent infringement case, Plaintiff TDM America, LLC (TDM) has filed a motion for relief from judgment under Rule 60(b) of the Court. The patents-in-suit, U.S. Patent Nos. 5,542,614 (the '614 patent) and 5,794,862 (the '862 patent), describe methods for treating dredged and waste materials in a land-based process. TDM contends that contractors for the U.S. Army Corps of Engineers and other federal agencies have infringed these patents in processing and treating contaminated materials for beneficial reuse. Previously, on February 20, 2009, the Court issued its *Markman*

claim construction decision interpreting the disputed claim terms.[1]  TDM America, LLC v. United States, 85 Fed. Cl. 774 (2009).  On April 27, 2010, the Court granted summary judgment of non-infringement in favor of Defendant.  TDM America, LLC v. United States, 92 Fed. Cl. 761 (2010).  TDM now argues in its motion for relief from judgment that the Court should modify its construction of the terms "accumulating a batch" and "weighing" in the patents based upon an *ex parte* reexamination by the United States Patent and Trademark Office (PTO).  The terms "accumulating a batch" and "weighing" were among a host of disputed claim terms addressed in the Court's *Markman* claim construction decision.

TDM appealed the Court's summary judgment decision to the United States Court of Appeals for the Federal Circuit.  While the appeal was pending, the Federal Circuit granted TDM's motion to stay the appellate proceedings to allow this Court to consider and rule upon TDM's motion for relief from judgment.  TDM America, LLC v. United States, Fed. Cir. No. 2010-5138 (Order, June 2, 2011).  The Court received TDM's motion and supporting brief on April 21, 2011, Defendant's opposition on May 24, 2011, and TDM's reply on June 29, 2011.  TDM also furnished a 1,226-page appendix to the Court comprised mainly of the record of the *ex parte* proceedings before the PTO.  The Court heard oral argument on July 20, 2011.  TDM's motion is now ready for decision.

## History of Proceedings

TDM filed a complaint on June 21, 2006, and an amended complaint on February 15, 2007 alleging that dredge treatment activities of the United States and its contractors infringed four TDM-owned patents.  From the beginning, this case has been vigorously contested, particularly regarding the scope of TDM's discovery, and the large number of disputed claim terms.  TDM voluntarily dismissed its claims as to U.S. Patent Nos. 5,007,590 and 6,293,731 (the '731 patent) on October 29, 2008 and April 24, 2009 respectively, but it continues to allege the infringement of claims 1, 2, and 4 of the '614 patent and claims 2, 3, and 4 of the '862 patent.  The '862 patent is a continuation of the '614 patent.  With TDM's narrowing of the claims, the two dredge treatment facilities at issue are the Claremont Channel Facility (Clean Earth Facility) and the OENJ Cherokee Corporation Facility, both located in New Jersey.

In the February 20, 2009 *Markman* claim construction decision, the Court addressed the disputed claim terms from three of the patents, the '731 patent, the '614 patent, and the '862 patent.  The 23 terms construed in the *Markman* decision were the following: "processing," "waste material," "vibrating screen box," "vibrating," "dropping," "location below," "mixer," "accumulating a batch," "weighing," "additive," "processing terminus," "homogenizer," "mixing and homogenizing," "preamble,"

---

[1] The Court followed the claim construction procedures established in Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).

"containment receptacle," "free water," "additive slurry," "mixing container," "pumping," "mixing assembly," "substantially homogeneous material," "curing," and "structural fill material."  TDM America, 85 Fed. Cl. at 790-810.

Following the *Markman* proceedings, Defendant moved for summary judgment on June 5, 2009, contending that the treatment processes used at both the Clean Earth and OENJ facilities failed to meet the "batch" and "weighing" limitations contained in all of the asserted claims, and therefore that no infringement of TDM's '614 patent or '862 patent had occurred.  On July 16, 2009, TDM responded and filed a cross-motion for summary judgment of infringement.  Each of these motions was accompanied by proposed findings of uncontroverted fact and many supporting exhibits.  On September 11, 2009, Defendant filed its response and reply brief.

Before filing the final reply brief, TDM moved the Court to stay the action pending the PTO's reexamination of the '614 and '862 patents.  In its October 30, 2009 motion, TDM informed the Court that *ex parte* requests for reexamination had been filed with the PTO.  The *ex parte* requests sought to invalidate the patents based upon prior art that the PTO had not considered during the prosecution of the '614 and '862 patents.  On December 8, 2009, the Court denied TDM's motion to stay without prejudice, ordering that the case proceed as to the pending cross-motions for summary judgment.  The Court observed:

> Cross-motions for summary judgment are pending before the Court, with only Plaintiff's reply brief yet to be filed.  In the interest of judicial economy and efficiency, the Court wishes to dispose of these cross-motions without delay. . . .  If the Court's ruling on these cross-motions is not dispositive of the merits of this case, and upon request of a party, the Court would be amenable to reconsidering a stay of this matter at that time until a reexamination of the '614 patent and the '862 patent is complete.

TDM America, Order, Dec. 8, 2009.  TDM filed its reply brief on January 8, 2010, and the Court heard oral argument on February 24, 2010.  Thereafter, the Court granted Defendant's motion for summary judgment.  TDM America, 92 Fed. Cl. 761.

In the February 20, 2009 *Markman* decision, the Court provided constructions of the "batch" and "weighing" limitations.  The claim language for the "batch" limitation in all of the asserted claims for the '614 and '862 patents reads "accumulating a batch of waste material in the mixer."[2]  TDM America, 85 Fed. Cl. at 795; Pl.'s Ex. A at A9; Pl.'s

---

[2] The only difference in the claim language for "batch" is that the '614 patent uses the words "said mixer" instead of "the mixer."

Ex. B at A18. [3]  The Court agreed with Defendant's proposed construction that "batch" means "a discrete amount of material." Id. at 796.  The Court noted that this definition "contrast[s] sharply with the notion of a continuous process in which material flows constantly into and out of a mixer during the treatment process."  Id.  The Court rejected TDM's broader interpretation that "accumulating a batch" means "accumulating, loading or gathering a certain amount of waste material in the mixer."  Id. at 795.  A complete explanation of the term "accumulating a batch" is found in the Court's *Markman* decision.  Id. at 795-96.

Similarly, the claim language for "weighing" in all of the asserted claims for the '614 patent and the '862 patent reads "weighing the batch of waste material to determine an amount of additive to be added to the waste material."[4]  Id. at 796; Pl.'s Ex. A at A9; Pl.'s Ex. B at A18.  The Court construed these limitations to require that the weighing occur in the mixer where the batch is accumulated, and that it occur by direct, or scale, measurement.  Id. at 797.  The Court ruled that the "weighing" step "must occur in the mixer" because "[t]he plain language of the patent indicates that the weighing step occurs after the waste material drops into the mixer."  Id.  The Court rejected TDM's contention that "weighing" means "[d]etermining the weight, by any means, of the amount of waste material added to the mixer to determine how much of any basic material should be added to the waste material."  Id. at 796.  The Court noted that TDM's proposed construction "does not limit the method or location of the weighing, so long as it takes place at some point in the process."  Id.  A complete explanation of the term "weighing" is found in the Court's *Markman* decision.  Id. at 796-97.

In the summary judgment phase, the Court applied these constructions to the Clean Earth and OENJ processes.  The Court concluded that neither of these processes met the "batch" limitation of the patents because the Clean Earth and OENJ processes involved the continuous flow of material.  TDM America, 92 Fed. Cl. at 768-775.  The Court also found that neither process involved weighing of the batch in the mixer.  Id.  The Court examined the "batch" and "weighing" requirements from the standpoint of literal infringement, and also under the doctrine of equivalents.  Id.  The Court granted summary judgment of non-infringement to Defendant.

### The PTO's *Ex Parte* Reexamination of the Patents

On June 5, 2009, an unidentified third party filed with the PTO requests for *ex parte* reexamination of the '614 and '862 patents.  (Pl.'s Ex. C at A20; Pl.'s Ex. D at A379-80.)  Pursuant to 35 U.S.C. §§ 301-302 (2006), the requesting party argued that

---

[3] The exhibit and page numbers cited in this opinion refer to the 1,226-page appendix that TDM submitted with its motion for relief from judgment.
[4] The only difference in the claim language for "weighing" is that the '614 patent uses the words "said batch" and "said waste material" instead of "the batch" and "the waste material."

prior art presented substantial questions of patentability of the '614 and '862 patents. (Pl.'s Ex. C at A29-113; Pl.'s Ex. D at A381-475.) The reexamination of both patents focused on the publications and video characterizing the waste treatment process of Chemfix Technologies, Inc. The chief document describing this process was EPA Publication No. EPA/540/5-89/011a entitled "Technology Evaluation Report Chemfix Technologies, Inc. Solidification/Stabilization Process, Clackamas, Oregon, Volume I" (Chemfix II). (Pl.'s Ex. E at A1031-1164.) This publication contains a demonstration and evaluation of the Chemfix process in March 1989, conducted as part of the Environmental Protection Agency's Superfund Innovative Technology Evaluation Program. Id. at A1047.

On August 21, 2009, the PTO's patent examiner, Joseph A. Kaufman, granted the request for reexamination for all claims in both patents. (Pl.'s Ex. C at A156-72; Pl.'s Ex. D at A508-26.) Thereafter, TDM filed statements in both reexaminations asserting that the cited documents did not present substantial new questions of patentability. (Pl.'s Ex. C at A174-85; Pl.'s Ex. D at A528-41.) On December 8, 2009, the requesting party filed a reply in support of the reexamination of the '862 patent. (Pl.'s Ex. D at A551-65.) In the PTO's proceedings that followed, only TDM met with and made arguments to the patent examiner. See 37 C.F.R. 1.550(g) ("The active participation of the *ex parte* reexamination requester ends with the reply . . . and no further submissions on behalf of the reexamination requester will be acknowledged or considered.").

The Chemfix II publication describes the Chemfix process as "a mobile, self-contained, continuous processing unit." (Pl.'s Ex. E at A1056.) The "innovative features" include "the continuous nature of the process," allowing waste material to be treated more quickly and inexpensively. Id. At the beginning of the process, waste material is placed into a feed hopper and then transferred on a conveyer belt to a weigh feeder, which is the only weighing device in the process. Id. at A1058-59, ¶¶ 3.4.1, 3.4.2. The weigh feeder "continually weighs" material as it enters the homogenizer. Id. at 1059, ¶ 3.4.2. After material enters the weigh feeder, an electronic water control system "adds water to the waste at a predetermined rate as the waste passes into the homogenizer." Id. at A1059, ¶ 3.4.4. The homogenizer then mixes the waste material and water. Id. at ¶ 3.4.5. The material then moves to the mixer, a Chemfix-designed pugmill, where dry or liquid reagent treatment additives are supplied by a separate feeder or pump in proportion to the waste material. Id. at A1059-60, ¶¶ 3.4.6, 3.4.9-10. The waste material and reagent are mixed before being discharged from the mixer. Id. at A1060, ¶ 3.4.10.

The patent examiner issued his first office action in the reexamination on March 12, 2010. On the '614 patent, the examiner rejected claims 1-4 as obvious based upon the Chemfix II publication. (Pl.'s Ex. C at A195-208.) The examiner observed that the Chemfix II publication "best shows the claimed invention with its clear recitations and figures." Id. at A202. The examiner found that Chemfix II taught almost all elements in
<p></p>
<p></p>

<p></p>

<p></p>

claims 1-4 of the '614 patent, including the "batch" and "weighing" limitations.  Id. at A201.  On the '862 patent, the examiner rejected all claims, finding that the Chemfix II publication anticipated claims 2-4 and rendered obvious claims 1 and 5-7.  (Pl.'s Ex. D at A567-80.)

In response to the examiner's rejection of the '614 and '862 patent claims, TDM argued that the Chemfix II publication did not teach or suggest the "batch" or "weighing" limitations.  (Pl.'s Ex. C at A214-15; Pl.'s Ex. D at A586-87.)  TDM asserted that the Chemfix process is a continuous process, and thus cannot accumulate a "batch."  TDM cited references in the Chemfix II publication that describe the process as "a continuous process," "a continuous operation," and "a continuous processing unit."  Id. at A214, A586.  By contrasting its own process with the continuous process in Chemfix II, TDM's arguments before the examiner were directly contrary to the arguments TDM made to this Court to show patent infringement.  Despite TDM's arguments, the examiner maintained his position in a June 17, 2010 final office action.  (Pl.'s Ex. C at A260-71; Pl.'s Ex. D at A658-70.)  The examiner rejected claims 1-4 of the '614 patent, finding that Chemfix II did in fact teach the "batch" and "weighing" claim process steps.  (Pl.'s Ex. C at A267-68.)  For the same reason, the examiner also maintained the rejection of all claims of the '862 patent.  (Pl.'s Ex. D at A665-66.)

On July 22, 2010, three PTO examiners conducted an in-person interview with TDM representatives, including its counsel of record in this case, Mr. David Denenberg.  (Pl.'s Ex. C at A274; Pl.'s Ex. D at A676.)  Three days before this interview, for the '862 patent, TDM submitted an informal statement of issues to be discussed.  (Pl.'s Ex. D at A672-73.)  As a result of this interview with TDM, the patent examiners reversed their position and determined that the patent claims were valid.  The Interview Summary for the '614 patent stated:

> The examiners concur with Patent Owner's [TDM's] representatives that there is no batch formed in the mixer that is weighed.  In Chemfix II, the weighing occurs before the homogenizer.  The claims will be given favorable consideration pending an update/review of the prior art after arguments are submitted.

(Pl.'s Ex. C at A274.)  The Interview Summary for the '862 patent contained similar language, but expressed reservations about claims 2-4:

> The examiners concur with Patent Owner's [TDM's] representatives that there is no batch formed in the mixer that is weighed.  In Chemifx II, the weighing occurs before the homogenizer.  However, claims 2-4 will be considered as to whether the court's final finding that the additive cannot be water is binding upon the office.  If it is not binding, the examiner will maintain the rejection of claims 2-4.  The remaining claims will be given

favorable consideration pending an update/review of the prior art after arguments are submitted.

(Pl.'s Ex. D at A676.)

On August 31, 2010, the examiner issued a Notice of Intent to Issue *Ex Parte* Reexamination Certificate for the '614 patent. (Pl.'s Ex. C A362-66.) The patent examiners also conducted a telephone interview with TDM representatives on August 31, 2010 to address again claims 2-4 of the '862 patent. Examiner Kauffman's summary of the interview indicates that TDM's arguments were not persuasive and that the rejection of claims 2-4 would be maintained. (Pl.'s Ex. D at A739.) In the September 10, 2010 Advisory Action, examiner Kauffman allowed claims 1 and 5-7 of the '862 patent, but maintained the rejection of claims 2-4 because the claimed "'additive' clearly includes water." (Pl.'s Ex. D at A743-44.) Regarding the allowed claims, the examiner noted that TDM's arguments were persuasive because "Chemfix II does not teach weighing a batch in the mixer . . . ." Id. at A744. Following extensive further proceedings, including a TDM appeal to the Board of Patent Appeals and Interferences, examiner Kauffman issued on February 21, 2011 a Notice of Intent to Issue *Ex Parte* Reexamination Certificate confirming all claims of the '862 patent. (Pl.'s Ex. D at A1023-26.) Regarding claims 2-4, the examiner stated:

> Patent Owner's [TDM's] declaration and supporting evidence regarding the fact that water would not have been considered an additive have been considered and found persuasive. While additives are clearly known, employing them in the process as claimed would not have been obvious. Therefore, the claims are patentable over the prior art references cited in the Request.

(Pl.'s Ex. D at A1025.) Thus, in the course of the lengthy *ex parte* reexamination process from June 5, 2009 through February 21, 2011, the PTO examiners reversed their initial rejection of the claims in the '614 and '862 patents and ultimately accepted the claims in their entirety. To preserve the validity of its patents, TDM made a 180-degree turn from the patent infringement arguments it made to this Court. The final determination of the patent examiners is consistent with the Court's claim construction, and would not require any alteration to either of the Court's prior decisions.

Discussion

A motion for relief from judgment under Rule 60(b) is "one for extraordinary relief entrusted to the discretion of the Court . . . which may be granted only in extraordinary circumstances." Sioux Tribe of Indians v. United States, 14 Cl. Ct. 94, 101 (1987), aff'd, 862 F.2d 275 (Fed. Cir. 1988). TDM has moved for relief from judgment under Rule 60(b)(2), or alternatively under Rule 60(b)(6). The Court can relieve a party

from judgment under Rule 60(b)(2) due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b)." The Court has defined "newly discovered evidence" to be limited to "evidence of facts which existed at the time of decision and of which the aggrieved party was excusably ignorant . . . ." Yachts America, Inc. v. United States, 8 Cl. Ct. 278, 281 (1985), aff'd, 779 F.2d 656 (Fed. Cir. 1985) (citing Brown v. Pa. R.R. Co., 282 F.2d 522, 526 (3d Cir. 1960)). Rule 60(b)(6) permits the Court to grant relief from judgment for "any other reason that justifies relief."

When seeking relief under Rule 60(b)(2), a party must show "(1) that the evidence was actually 'newly discovered,' that is, it must have been discovered subsequent to trial; (2) that the movant exercised due diligence; and (3) that the evidence is material, not merely impeaching or cumulative, and that a new trial would probably produce a different result." Yachts America, 8 Cl. Ct. at 281 (quoting Warner v. Transamerica Insurance Co., 739 F.2d 1347, 1353 (8th Cir. 1984)); see also Venture Indus. Corp v. Autoliv ASP, Inc., 457 F.3d 1322, 1328 (Fed. Cir. 2006) (noting that evidence is "material" when it "clearly would have produced a different result if presented before the original judgment.").

The Court has carefully reviewed TDM's motion and the record of the PTO's *ex parte* reexamination, and finds that TDM's motion must be denied. Central to the Court's analysis is the fact that the Chemfix II process described in the PTO's *ex parte* reexamination is very similar to the Clean Earth and OENJ processes challenged in TDM's infringement suit. In reaching its decision that the '614 and '862 patents are valid, the PTO's examiners ruled that the alleged prior art of the Chemfix II process is different from the process described in the patents. As repeatedly shown in the PTO's 1,226-page record, the Chemfix II process is continuous, and therefore does not "accumulate a batch" in the mixer or perform any "weighing" in the mixer. These Chemfix II characteristics are the same as the Clean Earth and OENJ processes, and the reason that the Court found no infringement of TDM's patents.

Patent examiner Kaufman initially ruled that the claims in the '614 and '862 patents were invalid because of the prior art allegations of the Chemfix II process. Ultimately, however, examiner Kaufman and the other PTO examiners reversed course and concluded that the claims in the '614 and '862 patents were valid. The PTO's final position is consistent with this Court's *Markman* claim construction decision, and with the summary judgment ruling of non-infringement in favor of Defendant. Since the PTO's reexamination position would not alter the outcome of this case, the Court finds that the evidence of the PTO's reexamination is not "material." Yachts America, 8 Cl. Ct. at 281-82.

Defendant contends that TDM's motion also should fail because it is not based upon "newly discovered evidence." (Def.'s Opp'n, May 24, 2011, at 22.) Specifically,

Defendant asserts that the PTO's final determinations on the '614 and '862 patents did not occur until August 31, 2010 and February 21, 2011 respectively, well after the Court's April 27, 2010 summary judgment decision.  Id.  Under Rule 60(b)(2), "newly discovered evidence" must exist at the time of the Court's original decision.  Yachts America, 8 Cl. Ct. at 281.  TDM counters that, although the reexamination proceedings were not complete at the time of the Court's summary judgment decision, the facts to which the reexamination pertained were in existence before the Court's decision.  (Pl.'s Reply Mem., June 29, 2011, at 15-16.)  TDM relies on a Fifth Circuit case, Chilson v. Metropolitan Transit Authority, in which the court held that an audit completed after judgment but revealing facts that existed at the time of trial constituted "newly discovered evidence."  796 F.2d 69, 73 (5th Cir. 1986).  The Court also notes that the Federal Circuit has taken judicial notice of *ex parte* reexamination decisions.  See St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc., 2011 WL 66166, at *5 n1 (Fed. Cir. Jan. 10, 2011) ("[T]his court can take judicial notice of the reexamination record.").  On the basis of these authorities, the Court will treat the *ex parte* proceedings as "newly discovered evidence."

TDM argues that the patent examiner is a person of ordinary skill in the art whose construction of the asserted patent claims is entitled to significant weight.  Citing St. Clair Intellectual Property Consultants, 2011 WL 66166, at *4-6, TDM contends that the examiner's comments, findings and conclusions are highly material, and constitute intrinsic evidence for purposes of claim construction.  (Pl.'s Mem., Apr. 21, 2011, at 23.)  TDM notes that intrinsic evidence is the preferred evidence for claim construction, and therefore the reexamination file is significant to the outcome of the litigation.  Bell & Howell Documents Mgmt. v. Altek Sys., 132 F.3d 701, 705-06 (Fed. Cir. 1997); Chemical Separation Tech., Inc. v. United States, 51 Fed. Cl. 771, 776 (2002).

The Court does not disagree with these general guidelines advanced by TDM, but must temper their application in this case.  In the 1,226-page appendix, the PTO's examiners made many observations about the Chemfix II process and the validity of the '614 and '862 patents, but in reversing course during the proceedings, the earlier examiner observations are not consistent with the later observations.  Thus, in evaluating any of the PTO examiner statements, it is important to know when the statements were made.  In its motion for relief from judgment, TDM habitually cites to many of the earlier examiner comments, which were later reversed and thus carry no weight.  The final PTO position is consistent with the Court's position, and would not cause the Court to alter the outcome of the case.

The Court also cannot embrace TDM's position because of the contradictory arguments of TDM's counsel before this Court and the PTO examiners.  In arguing for patent infringement before this Court, TDM asserted a broad construction of the terms "accumulating a batch" and "weighing" to show that the Clean Earth and OENJ continuous processes infringed upon TDM's '614 and '862 patents.  However, in order to

preserve the validity of the patents in the PTO's *ex parte* reexamination process, TDM vigorously argued just the opposite, that "accumulating a batch" and "weighing" had much more restrictive meanings. During the PTO reexamination, TDM had to show that the prior art of the continuous Chemfix II process was different from the '614 and '862 patents. As Defendant points out, by virtue of TDM's arguments before the PTO to save the validity of the patents, TDM should be estopped from claiming any construction broader than the Court's constructions of the "batch" and "weighing" limitations. (Def.'s Opp'n, May 24, 2011, at 27.) Regardless of whether TDM should be subject to estoppel, TDM's unabashed contradictory arguments have diminished TDM's credibility in the eyes of the Court. See Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

Finally, the Court is not enamored with the less than robust procedures followed by the PTO in *ex parte* reexaminations. After the party requesting reexamination files a reply brief, the requesting party has no further participation in the reexamination proceedings. See 37 C.F.R. 1.550(g) ("The active participation of the ex parte reexamination requester ends with the reply . . . and no further submissions on behalf of the reexamination requester will be acknowledged or considered."). Thus, after December 8, 2009, when the requester filed its reply brief, only TDM and its counsel had interaction with the PTO's examiners. Not surprisingly, the PTO reversed course after these interactions with TDM to confirm the validity of the '614 and '862 patents.

Patent examiners are tasked to give patent claims their "broadest reasonable construction consistent with the specifications." In re Suitco Surface, Inc., 603 F.3d 1255, 1259 (Fed. Cir. 2010); In re Zletz, 893 F.2d 319, 321 (Fed. Cir. 1989). The "broadest reasonable construction rule" applies to reexaminations as well as initial examinations. In re Hiniker Co., 150 F.3d 1362, 1368 (Fed. Cir. 1998). In contrast, courts are tasked with determining the "proper construction of claim language." See Atlantic Thermoplastics Co. v. Faytex Corp., 970 F.2d 834, 846 (Fed. Cir. 1992) (observing that in "accommodating the demands of the [PTO] administrative process and recognizing the capabilities of the trial courts, this court treats claims differently for patentability as opposed to validity and infringement."). To the extent that TDM can cite any PTO statement from the reexamination process that is inconsistent with the Court's claim construction, such PTO statement could well be explained by the differing claim construction standards that apply at the PTO. The Court did not see anything in the lengthy PTO reexamination record that would cause any change to the *Markman* claim construction ruling, or the summary judgment decision in favor of Defendant. TDM has not established any "extraordinary circumstances" warranting relief from judgment. Sioux Tribe of Indians, 14 Cl. Ct. at 101.

## Conclusion

For the foregoing reasons, TDM's motion for relief from judgment is DENIED. For purposes of the appeal pending before the Federal Circuit, the pleadings relating to TDM's motion, and the exhibits A through G, pages A1 – A1226, are hereby added to the Court's record. In accordance with the Federal Circuit's June 2, 2011 Order, the parties are directed to inform the Federal Circuit of this Court's disposition of TDM's motion for relief from judgment.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge